# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
DONALD A. STERN
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD

ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
HUGH C. CONROY, JR.
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
MEYER H. FEDIDA
CAROLINE F. HAYDAY
JOHN V. HARRISON
RESIDENT COUNSEL

Writer's Direct Dial:  +1 (212) 225-2790
E-Mail:  ldassin@cgsh.com

June 10, 2014

VIA ECF

Hon. Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

    Re:  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542; Response to JBR, Inc.'s June 5, 2014 Letter

Dear Judge Broderick:

    I write on behalf of defendant Keurig Green Mountain ("Keurig") in response to the June 5 letter plaintiff JBR, Inc. ("JBR") filed in *TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 1:14-cv-00905-VSB (S.D.N.Y. Mar. 10, 2014) ("*TreeHouse*"), (ECF No. 47).  Keurig will oppose JBR's request for expedited discovery and a preliminary injunction, and will move to stay discovery pending resolution of Keurig's motions to dismiss.[1]

    "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal citation omitted).  A plaintiff seeking such relief must show (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable injury; (3) the balance of hardships favors the plaintiff; and (4) an injunction would not disserve the public interest.  *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).  JBR fails on all counts.

    First, JBR has no likelihood of success on the merits.  The antitrust laws are designed to encourage competition, not prevent it.  JBR ignores this, and asks this Court to take the unprecedented step of preventing the release of a competitor's new product.  (JBR claims it is only seeking to enjoin the introduction of the "lock-out feature," ignoring that the technology

---

[1] To the extent it is not already included in the agenda for the June 19 status conference, Keurig respectfully requests that its planned motion for a stay of discovery be included in item six of the agenda, which covers Rule 26(f) disclosures and motions for expedited discovery.

Hon. Vernon S. Broderick
Page 2

that enables the brewer to communicate with the portion packs is core to the brewer's functiontionality.)  But even a monopolist (which Keurig is not) has "the right to redesign its products to make them more attractive to buyers" and has "no duty to help [competitors] survive or expand."  *Cal. Computer Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979).  It is up to consumers, not competitors or courts, to decide whether product innovation is worthwhile.[2]

Second, JBR cannot show irreparable harm, "the single most important prerequisite for the issuance of a preliminary injunction," which "the moving party must first demonstrate . . . is likely before the other requirements for the issuance of an injunction will be considered."  *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94 Civ. 2120 (LMM), 1994 WL 202730, at *2 (S.D.N.Y. May 23, 1994) (internal citations omitted).  Without irreparable harm, there is no need for further proceedings.  *See, e.g.*, *Stoner v. N.Y.C. Ballet Co.*, No. 99 Civ. 0196 (BSJ), 2001 WL 1505492, at *1-2 (S.D.N.Y. Nov. 26, 2001).  JBR argues that it will lose business, but it is well established that "money damages are adequate compensation for the loss of . . . business."  *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).[3]  Nor is there any urgency.  After 2.0 is launched, as TreeHouse's CEO points out, sales of "competitive cups" are expected to grow (Ex. A (excerpt) at 6-8), in light of the installed base of over 30 million Keurig 1.0 brewers (*JBR* Compl. ¶ 17).  Competitors can also sell to new buyers of 1.0 brewers made by Keurig (which will be sold at least into 2015) and others, *see* Stifel, *Updated Thoughts on Keurig 2.0 and F1Q14* at 3 (Jan. 30, 2014) (cited in *TreeHouse* Compl. ¶ 65).  TreeHouse and JBR will be able to sell to these 30 million-plus customers through myriad channels, including "online mecca" Amazon.com, *TreeHouse* Compl. ¶ 281, where JBR alleges that its packs are a "'#1 Best Seller.'"  *JBR* Compl. ¶ 117.[4]

---

[2] JBR also seeks to enjoin Keurig from enforcing the terms of its distributor contracts, most of which have been in place for several years, well before JBR ever sold a single coffee portion pack.  JBR cannot claim these contracts are causing it irreparable harm, particularly in light of its successful entry into portion packs while these contract terms were in place.  *See* Mem. of Points & Authorities in Supp. of Pl.'s Mot. For Prelim. Inj. at 3 (*TreeHouse*, ECF No. 47-2) ("JBR PI Mem.") (noting JBR's success since beginning its portion pack sales); *see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 390 (S.D.N.Y. 2003) ("plaintiff's six-year delay in filing the complaint . . . argues against a finding of irreparable harm").  JBR also seeks to enjoin Keurig from making alleged false and disparaging statements, but these claims fail, among other reasons, because competitors must counter marketing with their own marketing, not a lawsuit.  *See Multivideo Labs, Inc. v. Intel Corp.*, No. 99 Civ. 3908 (DLC), 2000 WL 12122, at *15 (S.D.N.Y. Jan. 7, 2000).

[3] JBR vaguely insinuates, without providing corroborating facts, that 2.0 threatens its viability.  JBR PI Mem. at 18-19.  This is not credible given the installed base and sales channels available, particularly for JBR, a 35-year old company with 300+ employees that cannot argue its "lack of a track record" prevents estimation of future sales.  *See Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011).

[4] As Judge Mueller explained in granting Keurig's request for a stay, JBR's own actions demonstrate a lack of urgency.  "If plaintiff's needs are as urgent as it describes . . . plaintiff could have moved for a temporary restraining order initially or could have filed the motion for a preliminary injunction and not have waited for more than a month after the complaint was filed."  Order Granting Def.'s Mot. to Stay at 4, *JBR, Inc. v. Keurig Green Mountain, Inc.*, No. 2:14-cv-00677-KJM-CKD (E.D. Cal. May 2, 2014),

Third, the balance of harms favors Keurig. It has built Keurig 2.0 brewers at a development and production cost in excess of one hundred million dollars to date, and would suffer competitively if it could not launch the superior product it has spent years developing. *See, e.g.*, *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995) (noting the "considerable hardship" inherent in "enjoin[ing] an entire product line").

Fourth, allowing a competitor to stifle innovation by preventing a new product introduction is squarely against the public interest. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (cautioning that courts applying the antitrust laws must carefully "safeguard the incentive to innovate"). If 2.0 lacks innovation as JBR has alleged, consumers will not buy it. JBR's real concern seems to be that consumers *will* buy 2.0 machines rather than alternatives such as 1.0 brewers made by Keurig or others. The public interest will not be served by preventing consumers from buying a new and innovative product.

For the same reasons, JBR's request for expedited discovery should be denied, and discovery should be stayed pending resolution of the motions to dismiss. As the Supreme Court noted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007), discovery in antitrust cases can be expensive and burdensome. Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (internal citation omitted).

JBR has indicated that it seeks discovery on almost every aspect of Keurig's business, including Keurig's dealings with third parties and its internal strategy and product development. This would impose a substantial burden on Keurig, third parties, and this Court, and does not make sense when basic deficiencies in the complaints warrant their dismissal. *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (internal citation omitted) ("[A] stay of discovery is appropriate" when a motion to dismiss "appears to have substantial grounds" or "does not appear to be without foundation in law."). Accordingly, courts routinely stay discovery in major antitrust litigation, and a stay is appropriate here.[5]

Respectfully submitted,

/s/ Lev L. Dassin

Lev L. Dassin

cc: All counsel of record, via ECF

---

attached as Ex. B; *see also, e.g.*, *JSC*, 295 F. Supp. 2d at 390 ("six-week delay between filing the complaint and seeking the preliminary injunction" suggested no irreparable harm).

[5] *See, e.g.*, Order Granting Mot. to Stay All Discovery, *In re Initial Public Offering Antitrust Litig.*, No. 01 Civ. 2014 (WHP) (S.D.N.Y. May 23, 2002), attached as Ex. C; *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2002 WL 88278 (S.D.N.Y. Jan. 22, 2002).