**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE: KEURIG GREEN MOUNTAIN**
**SINGLE-SERVE COFFEE ANTITRUST**
**LITIGATION**
_____

**THIS DOCUMENT RELATES TO:**
**ALL INDIRECT PURCHASER ACTIONS**

**No. 1:14-md-02542-VSB**


**F.R.C.P. 23(g) APPLICATION OF KAPLAN FOX & KILSHEIMER LLP, PEARSON,**
**SIMON & WARSHAW, LLP AND WOLF HALDENSTEIN ADLER FREEMAN &**
**HERZ LLP TO SERVE AS INTERIM CLASS COUNSEL FOR THE PROPOSED**
**INDIRECT PURCHASER CLASSES**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

III.    ARGUMENT ...................................................................................................... 3

      A.      Designation of the Three Firms to Serve as Interim Co-Lead Counsel for
            the Indirect Purchaser Classes Will Promote the Efficient Litigation of
            these Cases ................................................................................................ 3

      B.      The Firms' Proposed Leadership Structure Satisfies Fed. R. Civ. Proc. 23(g) ...... 5

           1.      Rule 23(g)(1)(A)(i): the Firms Actively Investigated the Indirect
                 Purchaser Claims ........................................................................ 6

           2.      Rule 23(g)(1)(A)(ii)-(iii): the Firms Have Substantial Expertise
                 Litigating Antitrust Class Actions and the Types of Claims
                 Asserted in the Indirect Purchaser Cases ..................................... 6

           3.      The Firms are Willing and Able to Commit Significant Time and
                 Resources to this Case. .............................................................. 13

           4.      Other Factors Supporting the Firms' Appointment as Interim Co-
                 Lead Counsel ............................................................................. 15

IV.     CONCLUSION.................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006) ................................................................... 4

*In re Aluminum Warehousing Antitrust Litig.*,
    Case No. 1:13-md-02481-KBF (S.D.N.Y.) ................................................... 4

*In re Bear Stearns Cos., Inc. Securities, Derivative and ERISA Litig.*,
    MDL No. 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)............................ 5

*In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*,
    No. 1:14-md-2508-HSM-WBC (E.D. Tenn. May 20, 2014)........................... 5

*In re Crude Oil Commodity Futures Litig.*,
    *2012 WL 569195* (S.D.N.Y. Feb. 14, 2012) ............................................... 4

*In re Domestic Drywall Antitrust Litig.*,
    No. 2:13-md-02437-MMB (E.D. Pa. May 7, 2013) ....................................... 5

*In re Lipitor Antitrust Litig.*,
    No. 3:12-cv-02389-PGS-DEA (D.N.J. Aug. 10, 2012) ................................ 5

*In re Mun. Derivatives Antitrust Litig.*,
    252 F.R.D. 184 (S.D.N.Y. 2008) .................................................................. 4

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
    2006 WL 2038650 (E.D.N.Y. Feb. 24, 2006)................................................ 4

**Rules**

Fed. R. Civ. P. 23(g) ...................................................................................... 3

Fed. R. Civ. P. 23(g)(1)(A)(i) ......................................................................... 5

Fed. R. Civ. P. 23(g)(1)(A)(ii)........................................................................ 6

Fed. R. Civ. P. 23(g)(1)(A)(iii) ...................................................................... 6

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................ 15

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2011)....................................................... 3, 4, 5, 15

## I.      INTRODUCTION

Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Pearson, Simon & Warshaw LLP ("Pearson Simon") and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") (collectively, "the Firms") respectfully request that this Court appoint the Firms as interim class counsel[1] for the proposed classes[2] of indirect purchasers of Keurig K-Cups pursuant to Fed. R. Civ. Proc. 23(g).   The Firms satisfy the requisite criteria for selecting interim class counsel. They have substantial expertise in litigating antitrust class actions, and are widely recognized as leaders in the field.   They are willing and able to commit significant time and resources to this litigation, and they have demonstrated the ability and resources to litigate antitrust class actions effectively and efficiently.   Plaintiffs in all nine of the currently-pending indirect purchaser class action cases support this application.[3]

---

[1] On May 28, 2014, prior to the Judicial Panel on Multidistrict Litigation's transfer of the related actions to this Court, Southern District of California District Judge Dana M. Sabraw entered an order (attached as Exhibit A to the Declaration of Robert N. Kaplan (the "Kaplan Declaration") in support of this application) in *Schroeder v. Keurig Green Mountain, Inc. et al.*, Case No. 3:14-cv-00678 (S.D. Cal.), appointing Wolf Haldenstein to serve as interim co-lead counsel for the indirect purchaser cases filed in that court.   The Firms believe that it is appropriate that this Court enter a new order appointing the Firms as interim co-lead counsel.   If this Court decides that, in lieu of entering a new order, it is appropriate to modify Judge Sabraw's May 28, 2014 order by appointing all three Firms in place of Wolf Haldenstein, Wolf Haldenstein consents, and all the Firms are amenable, to a modification of Judge Sabraw's order.

[2] Plaintiffs in the indirect purchaser cases anticipate seeking certification of a nationwide class as well as separate subclasses related to plaintiffs' claims under state antitrust and consumer-protection statutes.   *See, e.g.*, Class Action Complaint in *Daly et al. v. Keurig Green Mountain, Inc.*, Civ. Action No. 14-cv-3018 (filed Apr. 28, 2014), at ¶¶ 115-116, 124-170 (the "*Daly* Complaint").

[3] The following nine indirect purchaser cases are currently pending (and, to the extent not yet transferred from other districts, are expected to soon be transferred to this Court pursuant to the J.P.M.L.'s June 3, 2014 transfer order): *Schroeder, et al v. Keurig Green Mountain, Inc. et al.,* No. 3:14-cv-00678-DMS-KSC (S.D.Cal.); *Gray, et al v. Keurig Green Mountain, Inc., et al.,* No. 3:14-cv-00696-DMS-KSC (S.D.Cal.); *Hudson, et al v. Keurig Green Mountain, Inc., et al.,* No. 3:14-cv-00976-DMS-KSC (S.D.Cal.); *Rehma v. Keurig Green Mountain, Inc., et al.,* No.3:14-

## II.    BACKGROUND

In mid-February 2014, TreeHouse Foods, Inc. ("TreeHouse," a competitor of defendant Keurig Green Mountain, Inc. ("Keurig")[4]) filed an antitrust action against Keurig alleging that Keurig had foreclosed competition in the market for Compatible Cups (*i.e.*, pre-measured servings of un-brewed coffee, tea, cocoa or other beverages, including Keurig's "K-Cups" and cups designed to be compatible with Keurig's single-serve brewing machines). *TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 14-cv-000905-VSB (S.D.N.Y. Feb. 11, 2014). The Firms closely reviewed the allegations in the TreeHouse complaint (which, together with another complaint recently filed by Keurig competitor the Rogers Family Company, *JBR, Inc. (d/b/a Rogers Family Company) v. Keurig Green Mountain, Inc.*, 1:14-cv-04242-VSB (S.D.N.Y. Mar. 13, 2014) are referred to collectively as the "Competitor Actions") and began an intensive investigation into potential antitrust claims.

Beginning in March 2014 with Wolf Haldenstein's filing in the Southern District of California of the first complaint on behalf of indirect purchasers, the Firms have pursued actions on behalf of classes of indirect purchasers of Compatible Cups alleging that defendant Keurig violated federal and state antitrust and consumer-protection laws through an aggressive, multi-faceted scheme that included, *inter alia*: eliminating (through acquisition) potential competitors; entering exclusionary agreements with distributors and retailers of Compatible Cups following

---

cv-01131-DMS-KSC (S.D.Cal.); *Nelson v. Keurig Green Mountain, Inc., et al.,* No. 3:14-cv-01143-DMS-KSC (S.D.Cal.); *Daly, et al v. Keurig Green Mountain, Inc.,* No. 1:14-cv-03018-VSB (S.D.N.Y.); *Bartlett, et al v. Keurig Green Mountain, Inc.,* No. 1:14-cv-03790-VSB (S.D.N.Y.); *Ramey v. Keurig Green Mountain, Inc., et al.,* No. 1:14-cv-04071-UA (S.D.N.Y.); and *Williams v. Keurig Green Mountain, Inc., et al.,* No. 2:14-cv-12032-MFL-MKM (S.D.Mich.)

[4] Keurig Green Mountain, Inc. was formerly known as Green Mountain Coffee Roasters, Inc. and the successor to Keurig, Inc., which are the two entities named as defendants in the *TreeHouse* complaint.

the expiration of Keurig's K-Cup patents in 2012; allegedly coercing its distributors to not sell competing products; halting the sale of existing Keurig brewers to pave the way for a new product designed to work solely with Keurig's K-Cups; and filing sham patent lawsuits against competing manufacturers (such as TreeHouse and the Rogers Family Company) to foreclose them from the Compatible Cup market.[5]   Keurig's alleged antitrust violations acted to keep prices for Keurig's K-Cups at a supra-competitive level and limit the choices of consumers, including all those included in the proposed classes of indirect purchasers.

A number of antitrust actions (including those brought by direct purchasers, referred to here as the "Direct Purchaser Actions") were filed against Keurig in a number of districts throughout the United States.  On June 3, 2014, the Judicial Panel on Multidistrict Litigation (the "Panel") transferred the related antitrust cases to this Court for coordinated pre-trial proceedings.  Even before the Panel acted, the Firms worked together to coordinate their activities on behalf of indirect purchasers, and coordinate those efforts with those plaintiffs in the Competitor and Direct Purchaser Actions.  These efforts have demonstrated the ability of all plaintiffs' counsel to work together, and have already reduced duplication of effort and inefficiency.

## III.    ARGUMENT

### A.    Designation of the Three Firms to Serve as Interim Co-Lead Counsel for the Indirect Purchaser Classes Will Promote the Efficient Litigation of these Cases

Federal Rule of Civil Procedure 23(g) provides that "the court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."   The MANUAL FOR COMPLEX LITIGATION (FOURTH) (2011) (the "Manual") recommends that, early in complex cases like this one, the court select and authorize attorneys to

---

[5] *See, e.g.*, *Daly* Complaint, at ¶¶ 12, 32-114.

act on behalf of other counsel and their clients, with the attorneys designated as interim co-lead counsel assuming "a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel." Manual, at § 10.22. The goal is to determine who best will represent the interests of the class, and who best will be able to accomplish the goals of efficiency and economy in doing so. *See In re Crude Oil Commodity Futures Litig.,* 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

The proposed three-firm leadership structure for the indirect purchaser cases is appropriate here given the critical work that each Firm has performed, the efficient and collaborative manner in which they have developed these claims, and the substantial amount of complex work that lies ahead. *See* Manual, at § 10.224 (noting that "it may be appropriate and possibly even beneficial for several firms to divide work among themselves" as co-lead counsel). Appointment of three firms to lead the indirect purchaser cases is within this Court's discretion, and courts in the Second Circuit have long recognized that such a structure is an effective organizational model in complex antitrust class actions like this one. *See, e.g.*, Case Management Order No. 2, ECF No. 261 (entered Mar. 6, 2014) in *In re Aluminum Warehousing Antitrust Litig.*, Case No. 1:13-md-02481-KBF (S.D.N.Y.) (appointing three interim co-lead counsel for each of two separate classes of purchasers); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing three firms); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58-59 (E.D.N.Y. 2006) (appointing four firms as interim co-lead counsel "given the complexity of the case"); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 2006 WL 2038650, at *2 (E.D.N.Y. Feb. 24, 2006) (noting the

"broad[] array of the legal theories . . . [and] the enormous stakes potentially at issue in the litigation" and appointing three firms as interim co-lead counsel).[6]

> **B.      The Firms' Proposed Leadership Structure Satisfies Fed. R. Civ. Proc. 23(g)**

Rule 23(g)(1)(A) lists the mandatory factors that courts must consider in appointing class counsel, which are regularly used to guide courts' appointment of interim class counsel. *See In re Bear Stearns Cos., Inc. Securities, Derivative and ERISA Litig.*, 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009) (explaining that it is "generally accepted that the considerations set out in Rule 23(g)(1)(C) [*sic*], which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification").  These four factors are: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.[7]  Each of these four mandatory

---

[6] Numerous courts outside the Second Circuit have approved three-firm leadership structures in comparable antitrust class actions.  *See, e.g.*, Kaplan Declaration Ex. B, Consolidation and Designation of Counsel Order, at 1-2, *In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 1:14-md-2508-HSM-WBC (E.D. Tenn. May 20, 2014) (appointing three firms as interim co-lead counsel); Kaplan Declaration Ex. C, Pretrial Order No. 3, at 5-6, *In re Domestic Drywall Antitrust Litig.*, No. 2:13-md-02437-MMB (E.D. Pa. May 7, 2013) (same); Kaplan Declaration Ex. D, Case Management Order No. 1, at 9, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389-PGS-DEA (D.N.J. Aug. 10, 2012) (same); and Kaplan Declaration D-1, Order Appointing Interim Co-Lead Counsel and Liaison Counsel for Direct Purchaser Plaintiffs and Appointing Interim Co-Lead Counsel and Liaison Counsel for Indirect Purchaser Plaintiffs, at 2, *In re Lithium Ion Batteries Antitrust Litig.*, MDL No. 2420, Case No. 13-md-2420-YGR (N.D. Cal. May 17, 2013) (appointing three firms as interim co-lead counsel for a direct purchaser class and three firms as interim co-lead counsel for an indirect purchaser class).

[7] Echoing Rule 23(g)'s mandatory factors, the Manual lists various items for courts to consider in selecting lead counsel in class actions, including: "qualifications, functions, organization, and compensation of designated counsel; whether there has been full disclosure of all agreements and understandings among counsel; would-be designated attorneys' competence for assignments; whether there are clear and satisfactory guidelines for compensation and reimbursement, and

factors supports appointment of the Firms as interim co-lead counsel for the proposed indirect purchaser classes.

1. Rule 23(g)(1)(A)(i): the Firms Actively Investigated the Indirect <u>Purchaser Claims</u>

The Firms actively investigated the claims at issue in the indirect purchaser cases, and devoted significant time researching and developing the legal, factual and economic bases for plaintiffs' claims. The Firms closely analyzed the complaints in the Competitor Actions to evaluate the extent that those allegations supported plaintiffs' claims and theories in the indirect purchaser actions. They also undertook substantial research into the relevant product market, efforts that included the review and analysis of industry reports, market data and publicly-available information from other litigation involving Keurig and the Compatible Cup Market. As reflected in the complaints filed by the Firms, they engaged in substantial research related to the legal claims of indirect purchasers under federal antitrust laws and state antitrust and consumer-protection statutes. The investigation done by the Firms in crafting indirect purchaser claims for relief arising from the known facts of defendant Keurig's conduct, as well as coordinated efforts undertaken with other plaintiffs' counsel to work with defendants to negotiate a proposed protective order and ESI protocol, satisfies the first criteria under Rule 23(g) for selection as class counsel for the proposed classes of indirect purchaser plaintiffs.

2. Rule 23(g)(1)(A)(ii)-(iii): the Firms Have Substantial Expertise Litigating Antitrust Class Actions and the Types of Claims <u>Asserted in the Indirect Purchaser Cases</u>

---

whether the arrangements for coordination among counsel are fair, reasonable, and efficient; whether designated counsel fairly represent the various interests in the litigation . . . ; the attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court . . . ." Manual, at § 10.224.

"[C]ounsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," Fed. R. Civ. P. 23(g)(1)(A)(ii), as well as their "knowledge of the applicable law," Fed. R. Civ. P. 23(g)(1)(A)(iii), support the proposed leadership structure here.  As detailed below, each of the Firms is well-qualified to litigate this matter effectively on behalf of the indirect purchaser classes, with successful track records in large, complex antitrust class actions:

**<u>Kaplan Fox</u>:** For more than 40 years, Kaplan Fox has been a leader in representing those injured by violations of antitrust law, recovering billions of dollars for its clients. Headquartered in New York and with offices across the nation, the firm is regularly chosen by courts to act as lead or co-lead counsel, and the firm is widely recognized for its effective handling of antitrust actions.  *See* Kaplan Fox Firm Resume (attached as Exhibit E to the Kaplan Declaration).

Recently, partners Robert Kaplan and Gregory Arenson (two of the Kaplan Fox attorneys who will be working on this matter) were listed by defense and corporate counsel as two of the top 75 plaintiffs' attorneys in the U.S. for all disciplines, making Kaplan Fox one of the few law firms with two attorneys listed.  *See* http://lawprofessors. typepad.com/files/dc-188012-v2-trial_lawyer_kingpins1.xls.  And in 2013, the *National Law Journal* chose the firm for its "Litigation       Boutique       Hot       List."       *See*       http:www.kaplanfox.com/ templates/kaplanfox/images/content/pdfs/aba-ces-march2013.pdf.  The *Legal 500* ranks Kaplan Fox – whose lawyers include former federal and state prosecutors as well as attorneys who joined Kaplan Fox from some of the country's most prestigious defense firms – as one of the top U.S. antitrust firms, and many of the firm's lawyers have been designated numerous times by

their peers as New York or Pennsylvania "Super Lawyers" or "Super Lawyers Rising Stars" for

their antitrust, securities and class action litigation work.

The firm has been involved in some of the largest and most important antitrust cases in

history, litigating issues which resulted in significant changes in antitrust law.  Kaplan Fox's

significant antitrust achievements include:

> *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.):
> Kaplan Fox was one of three co-lead counsel appointed to represent a class of
> direct purchasers alleging that the Archer Daniels Midland Company and a
> number of its competitors conspired to fix the price of high fructose corn syrup.
> Kaplan Fox was actively involved in all aspects of this case from its inception to
> the eve of trial.  In particular, after the district court granted summary judgment
> for the defendants, Partner Gregory Arenson successfully argued the case before
> the U.S. Court of Appeals for the Seventh Circuit, with Judge Posner writing a
> seminal antitrust law opinion reversing the trial court's decision.  *See In re High
> Fructose Corn Syrup Antitrust Litig*., 295 F.3d 651 (7th Cir. 2002). The case
> settled shortly before trial, with Kaplan Fox and its co-counsel obtaining $531
> million for the class.

> *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.D. Pa.):  Kaplan Fox was one
> of four co-lead counsel against the leading manufacturers of flat glass (used in
> everything from house windows to car windshields).  The firm was significantly
> involved in all aspects of the case, including partner Robert Kaplan's successful
> argument before the U.S. Court of Appeals for the Third Circuit, which issued a
> groundbreaking summary judgment opinion that is routinely cited in antitrust
> cases throughout the federal courts.  *See In re Flat Glass Antitrust Litig*., 385 F.3d
> 350 (3d. Cir. 2004).  *Flat Glass* settled on the eve of trial, with Kaplan Fox and its
> co-counsel recovering a total of $121 million for the class.

> *In re Air Cargo Shipping Services Antitrust Litigation*, 06-md-1775 (E.D.N.Y.):
> Kaplan Fox is one of four co-lead counsel for direct purchasers in this pending
> antitrust class action against the world's major providers of air cargo shipping
> services.  To date, Kaplan Fox and its co-counsel have recovered over $800
> million in settlements for the proposed class.  As co-lead counsel, Kaplan Fox is
> actively involved in all aspects of this complicated case, which has included
> extensive discovery and class certification proceedings.

In addition to the *Air Cargo* litigation, Kaplan Fox is currently serving as co-lead counsel

in a number of other pending antitrust class actions, including *In re Cast Iron Soil Pipe and

Fittings Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.), *In re Ductile Iron Pipe Fittings*

*Antitrust Litigation*, 12-cv-00711 (D.N.J.), *In re Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328 (E.D. La.) and *In re Neurontin Antitrust Litigation*, Master File No. 02-1390 (D.N.J.).  Kaplan Fox is also highly experienced in other types of class action litigation, including acting as lead or co-lead counsel in securities cases such as *In re Bank of America Securities, Derivative & Employment Retirement Income Security Act (ERISA) Litigation*, 09-MD-2058 (S.D.N.Y) (PKC), where the firm and its co-counsel secured a landmark $2.43 billion settlement on behalf of its institutional clients and other class members.

**Pearson Simon**:  Pearson Simon specializes in complex litigation and class actions in both state and federal court, including federal multidistrict litigation.  Its attorneys have extensive experience in antitrust, securities, consumer protection, and unlawful employment practices.  The firm handles both national and multi-national class actions that present cutting edge issues in both substantive and procedural areas.  *See* Pearson Simon Firm Resume (attached as Exhibit F to the Kaplan Declaration).

Pearson Simon partner Bruce L. Simon is a renowned litigator who specializes in complex cases involving antitrust, securities, and consumer protection laws.  In 2013, Mr. Simon was chosen by the *Daily Journal* as one of the Top 100 attorneys in California.  He also received the California Lawyer of the Year Award from *California Lawyer Magazine* for his work in the *TFT-LCD* case.  In *TFT-LCD*, after reaching settlements with several defendants totaling over $405 million, Mr. Simon and his trial team tried the case to an $87 million dollar verdict (before trebling) against Toshiba.

Pearson Simon and their co-counsel have already conducted a significant investigation in this action.  They reviewed publically available information, including S.E.C. filings by Keurig; reviewed agreements between Keurig and its horizontal competitors; interviewed consumers who

9

purchased the products at issue herein; conducted investigations at brick-and-mortar point-of-sale sites and reviewed online marketing materials; reviewed materials filed in related patent and competitor proceedings; researched and reviewed the antitrust and consumer protection laws of all fifty-six United States jurisdictions to determine whether they allow private indirect purchaser actions, and to determine the elements and requirements of those statutes; analyzed whether those state statutes include a citizenship requirement to bring the claim, whether they include a notice requirement, and whether they may be brought in federal court; researched the extra-territorial application of the various state laws in an indirect purchaser class action; and, transmitted notices to the Attorney General of each state where notice is required.  They also retained the services of an economic expert who reviewed the *Bartlett* complaint before it was filed.

Pearson Simon has demonstrated they are willing to commit the resources and time necessary to litigate a complex class action such as this one, as they have done in many other cases, including its recent leadership roles such as:

> *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y. Case No. 13-MD-2476). PSW attorneys represents the Los Angeles County Employee Retirement Association ("LACERA") in a class action on behalf of all purchasers and sellers of Credit Default Swaps ("CDS") against thirteen of the world's largest banks. The lawsuit alleges that the banks along with other defendants who control the market infrastructure for CDS trading have conspired for years to restrain the efficient trading of CDS, thereby inflating the cost to trade CDS.  The action has been consolidated with nine other class action lawsuits that are assigned to the Honorable Denise Cote of the Southern District of New York.  On December 13, 2013, Judge Cote appointed Pearson Simon as Co-Lead Counsel for the plaintiff class and its client, LACERA as lead plaintiff for the class.

> *In re Lithium Ion Batteries Antitrust Litigation,* Northern District of California, Case No. 4:13-md-02420-YGR.  PSW attorneys currently serve as interim co-lead counsel for direct purchaser plaintiffs in this multidistrict class action litigation arising from the price-fixing of lithium ion batteries.  The case involves allegations of collusive activity by a cartel made up of the world's largest manufacturers of lithium ion batteries, which are used in everything from cellular

phones to cameras, laptops and tablet computers.  Pearson Simon, along with its co-counsel, organized a leadership structure of three firms, winning appointment by Judge Gonzalez Rogers as co-lead counsel for the putative class of direct purchasers on May 17, 2013.

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, Northern District of California, MDL No. 1827.  PSW partner Bruce L. Simon served as co-lead counsel for the direct purchaser plaintiffs in *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal., MDL No. 1827), a multidistrict litigation arising from the price-fixing of thin film transistor liquid crystal display panels.  Over $405 million in settlements had already been approved before trial.  Mr. Simon served as co-lead trial counsel, successfully marshaled numerous witnesses, and presented the opening argument.  On July 3, 2012, PSW obtained a jury verdict of $87 million before trebling against the sole remaining defendant in the case, Toshiba Corporation and its related entities.  PSW later settled with Toshiba and AU Optronics to bring the total to $473 million in settlements.

As these examples amply illustrate, the attorneys at Pearson Simon have substantial expertise litigating antitrust class actions and are all willing and able to commit to the time and resource consuming project of leading this case, as they have done many times previously.

**Wolf Haldenstein:** As more fully demonstrated by its firm resume (attached as Exhibit G to the Kaplan Declaration), Wolf Haldenstein is a nationally recognized class action firm with extensive experience and expertise in antitrust, financial and other complex class litigation. Founded not later than 1888, Wolf Haldenstein has offices in Chicago, New York City and San Diego.  The firm's Class Action Litigation Group consists of 40 attorneys and 8 paraprofessional assistants.  Wolf Haldenstein's Antitrust Practice Group is headed by Fred Taylor Isquith, who has over 40 years of experience litigating complex class actions.

Wolf Haldenstein has served as lead or co-lead counsel in numerous antitrust and other complex class actions in federal courts throughout the country.  The firm recently served as co-lead class counsel in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, MDL No. 1486 (N.D. Cal.), which resulted in $320 million in settlements for the class.  In approving the settlements, Judge Hamilton praised lead counsel for doing "an exceptionally good job at organizing and managing the case" and achieving "exceptional results."  Judge Hamilton also commented: "I have cases a fraction of the size of this one that take up more of my time just

because counsel are not acting as cooperatively and professionally as you are."   Wolf Haldenstein also served as co-lead counsel and liaison counsel in *In re Toys "R" Us Antitrust Litigation*, 98 MDL 1211, 191 F.R.D. 347, 351 (E.D.N.Y. 2000), in which Judge Gerson noted: "Class counsel are highly skilled and experienced and can fairly and adequately represent the interests of the class."

The firm's qualifications to serve as class counsel have been recognized by the courts in other cases as well.  In *In re Aon ERISA Litigation (Smith v. AON)*, No. 1:04-C-6875 (N.D. Ill. May 3, 2005), for example, the court appointed Wolf Haldenstein interim class counsel, noting, "Wolf meets [the Rule 23(g)] criteria . . . . Wolf is experienced in handling complex, large-scale class actions.  Wolf's Class Action Litigation Group consists of 30 attorneys experienced in complex class action suits."  Kaplan Declaration Ex. H, at 2.  *See also In re Luxottica Group, S.p.A. Securities Litigation*, 2004 U.S. Dist. LEXIS 21130, at * 13 (E.D.N.Y. Oct. 22, 2004) ("The court has no reason to doubt the experience and expertise of Wolf Haldenstein"); *In re Comdisco Securities Litigation*, 150 F. Supp. 2d 943, 951 (N.D. Ill. 2001) (noting that Wolf Haldenstein's credentials "are impeccable").

Wolf Haldenstein currently serves as co-lead or interim co-lead class counsel in several pending antitrust class actions, including *McDonough v. Toys "R" Us, Inc.*, No. 06-0242 (E.D. Pa.) (resale price maintenance); *Schoenbaum v. E.I. DuPont de Nemours & Co.*, No. 05-CV-01108 (E.D. Mo.) (monopolization and restraint of trade); *In re Apple & AT&TM Antitrust Litig.*, No. C-07-5152-JW (N.D. Cal.) (Section 2 aftermarket monopolization); and *The Shane Group, Inc. et al., v. Blue Cross Blue Shield of Michigan*, No. 02:10-cv-14360 (E.D. Mich.) (price-fixing through the use of most-favored-nations contract clauses).  Wolf Haldenstein also currently serves on the Plaintiffs' Steering Committee and has acted as Interim Liaison Counsel in *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, MDL No. 2031 (N.D. Ill.), *In re Text Messaging Antitrust Litigation*, MDL No. 1997 (N.D. Ill.) (horizontal price fixing), and *In re Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328 (E. D. La) (attempted monopolization).

Wolf Haldenstein attorneys have also been involved in the following significant antitrust class actions, among others: *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL No. 997 (N.D. Ill.); *In re Packaged Ice Antitrust Litigation*, MDL 1952 (E.D. Mich.);  *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL No. 1536 (D.D.C.); *In re Cathode Ray Tube Antitrust Litigation*, No. 07-C-5944-SC (N.D. Cal.); *In re Graphic Processing Units Antitrust Litigation*, No. 07-CV-1823-WHA (N.D. Cal.); *In re Air Cargo Shipping Antitrust Litigation*, No. 06-MD-1775 CBA/VVP (E.D.N.Y); *In re International Air Transportation and Surcharge Antitrust Litigation*, No. 06-M-1793 CRB (N.D. Cal.); *In re Publication Paper Antitrust Litigation*, No. 04-MD-1631 SRU (D. Conn.); *In re New Motors Vehicles Canadian Export Antitrust Litigation*, MDL No. 1532 (D. Me.); *In re Carbon Black Antitrust Litigation*, MDL No. 1543 (D. Mass.); *In re Rubber Chemicals Antitrust Litigation*, No. C 03 1496 (D. Conn.); *In re Urethane Antitrust Litigation*, MDL No. 1616 (D. Kan.); and *In re Plastic Additives Antitrust Litigation*, MDL No. 1547 (E.D. Pa.).[8]

> 3.  Rule 23(g)(1)(A)(iv): The Firms are Willing and Able to Commit Significant Time and Resources to this Case

The Firms also have the financial resources and manpower required to litigate this case to a successful conclusion.  This is demonstrated not only by the extensive work that they already have done in this case, but also by their noteworthy accomplishments in the prior matters described above.  Each Firm is a recognized leader in the antitrust class action field with a proven ability to litigate these types of cases from beginning to end.   Kaplan Fox, with over two dozen lawyers practicing throughout the nation, recently settled an antitrust class action against Pfizer, Inc. for $190 million after twelve years of litigation.  Kaplan Fox's team in that long-running case was led by partners Richard Kilsheimer and Robert Kaplan, both of whom will be playing active roles in this case.  Pearson Simon has acted as co-lead counsel in a number of labor- and

---

[8] Wolf Haldenstein has a diverse commercial practice.  Its litigation department, in addition to representing the firm's clients in real estate, corporate and healthcare, also has extensive class action experience in the areas of antitrust, securities, consumer and labor laws.

resource-intensive antitrust actions, including, most recently, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) ("*TFT-LCD*"), which after more than five years of litigation proceeded to a five-and-a-half week trial and resulted in a jury verdict of $87 million before trebling.  Along with its co-lead counsel, Pearson Simon managed over 50 firms that had filed direct purchaser cases, and the firm managed the massive discovery in *TFT-LCD*, including a huge document database. Pearson Simon undertook tremendous risk and expense in prosecuting a large antitrust class action over a period of five years.  Pearson Simon managed discovery of nearly 8 million documents, consisting of over 40 million pages, and oversaw as many as 136 document reviewers working concurrently.  Approximately 1.5 million foreign language documents were identified, and nearly half were reviewed by foreign language reviewers and that work was overseen by Pearson Simon.  The direct purchaser class served 184 sets of discovery requests and three written depositions, responded to 75 sets of requests propounded by defendants, and engaged in extensive discovery motion practice before a special master.  Counsel took and defended more than 130 depositions:  50 in San Francisco, 40 elsewhere across the country, and 41 outside of the United States.  In all, counsel for direct purchaser plaintiffs incurred in excess of $11 million in costs and contributed well over 250,000 hours of work to the case.   Wolf Haldenstein is a large and successful law firm with more than 70 attorneys practicing in various concentrations of the law, including more than 35 attorneys (and eight paralegals) in its Complex Litigation Group.  Wolf Haldenstein has both the ability and the willingness to expend the financial and manpower resources necessary to prosecute this litigation on behalf of the proposed class.  *See* Kaplan Declaration Ex. H, *In re Aon ERISA Litigation*, at 2 ("Wolf is a large firm, with offices in New York, Chicago, [and] San Diego… Wolf thus has the resources necessary to adequately represent the putative class members in this

case.").   Accordingly, "the resources that counsel will commit to representing the class" also support the proposed leadership structure.  Fed. R. Civ. P. 23(g) (1) (A) (IV).

### 4. Other Factors Supporting the Firms' Appointment as Interim Co-Lead Counsel

Rule 23(g) also provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g) (1) (B).  Here, there are at least two additional reasons supporting the Firms' appointment as interim co-lead counsel.

First, counsel for the indirect purchaser plaintiffs have consulted among themselves and reached consensus on the Firms' proposed appointment as interim co-lead counsel, thus avoiding a contested leadership motion and streamlining the leadership structure.  Such "private ordering" is one of the "matter[s] pertinent to counsel's ability to fairly and adequately represent the interests of the class," and is a common (and preferable) approach in the selection of class counsel.  *See* Manual, at § 21.272 ("There are several methods for selecting among competing applicants.  By far the most common is the so-called 'private ordering' approach: The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests.")

Second, the Firms' "ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court" supports their appointment as interim co-lead counsel.  Manual, at § 10.224.  That other highly-respected plaintiffs' counsel have chosen not to seek leadership roles here and to support the Firms' appointment serves as further testament to the confidence that those lawyers have in the Firms' ability to steer this litigation on a prudent

15

course.   The Firms (who have acted as co-counsel in prior class actions) have a history of working cooperatively and collegially with one another, with defense lawyers, and with other plaintiffs' counsel, and they will do so here to effectively litigate this case.   Indeed, the Firms have worked together previously on other antitrust actions in leadership roles, and will be able to do so here efficiently and without duplication of effort.  The Firms bring enormous antitrust and class action experience to this case and there will be a synergy created by working together especially given the complexities of this litigation.

## IV.   CONCLUSION

For the foregoing reasons, the Firms respectfully request that the Court grant their application for appointment as interim co-lead counsel for the proposed indirect purchaser class.

Dated:  June 13, 2014                     Respectfully submitted,

/s/ *Robert N. Kaplan*
Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Lauren I. Dubick
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
rkilsheimer@kaplanfox.com
garenson@kaplanfox.com
ldubick@kaplanfox.com

Bruce L. Simon
Robert G. Retana
Aaron M. Sheanin
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
bsimon@pswlaw.com
rretana@pswlaw.com

asheanin@pswlaw.com

Fred Taylor Isquith
Thomas H. Burt
**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLC**
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
isquith@whafh.com
burt@whafh.com

*Proposed Interim Co-Lead Counsel for the Indirect
Purchaser Classes*

Elizabeth C. Pritzker
Bethany L. Caracuzzo
Shiho Yamamoto
**PRITZKER | LAW**
633 Battery Street, Suite 110
San Francisco, California 94111
Telephone: (415) 692-0772
ecp@pritzker-law.com
bc@pritzker-law.com
sy@pritzker-law.com

Arthur N. Bailey
**ARTHUR N. BAILEY & ASSOCIATES**
111 West Second Street
Jamestown, New York 14701
Telephone: (716) 664-2967
artlaw@windstream.net

*Counsel for Plaintiffs William Daly, Michael J. Flanagan,
Darlene M. Kennedy and John Lohin*

Michelle L. Kranz
David W. Zoll
**ZOLL, KRANZ & BORGESS, LLC**
6620 West Central Avenue, Suite 100
Toledo, Ohio 43616
Telephone: (419) 841-9623
michelle@toledolaw.com
david@toledolaw.com

*Counsel for Plaintiffs Shirley Schroeder, Constance*

*Werthe, Amy Gray, Armando Herrera, Mary Hudson,*
*Patricia Hall and Brier Miller Minor*

Patrick M. Ryan
William I. Edlund
Robert H. Bunzel
John F. McLean
**BARTKO, ZANKEL, BUNZEL & MILLER**
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415)-956-1900
rbunzel@bzbm.com
bedlund@bzbm.com
jmclean@bzbm.com
pryan@bzbm.com

Steven A. Hart
Brian H. Eldridge
Elizabeth A. Schieber
Kyle Pozan
**SEGAL MCCAMBRIDGE SINGER & MAHONEY**
233 S. Wacker Drive, Suite 5500
Chicago, Illinois 60606
Telephone: (312) 645-7800
shart@smsm.com
beldridge@smsm.com
eschieber@smsm.com
kpozan@smsm.com

P. John Brady
Daniel D. Owen
G. Gabriel Zorogastua
**POLSINELLI**
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
Telephone: (816) 753-1000
jbrady@polsinelli.com
dowen@polsinelli.com
gzorogastua@polsinelli.com

*Counsel for Plaintiffs Yelda Mesbah Bartlett, Lavinia*
*Simona Biasell, Holly Ann Buss, Teena Marie Johnson, Lori*
*Jo Kirkhart, Tracy Elizabeth Moreno, David Wayne Nation,*
*Gregory Rose, Lauren Jill Schneider and Rhett Tanselle*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system.  I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Robert N. Kaplan*
Robert N. Kaplan