Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel.  415.442.1000
Fax: 415.442.1001
www.morganlewis.com



Morgan Lewis
COUNSELORS AT LAW

**Dan Johnson, Jr.**
Partner
415.442.1392
djj@morganlewis.com

June 16, 2014

**VIA ECF**

Honorable Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY  10007

Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, MDL 2542 (S.D.N.Y.); Rel. Case No. 1:14-cv-04242-VSB

Dear Judge Broderick:

     I write on behalf of Plaintiff JBR, Inc.(d/b/a Rogers Family Company) ("Rogers") in response to the June 10 letter[1] Keurig Green Mountain, Inc. ("Keurig") filed in 1:14-md-02542-VSB (Dkt. No. 2), in which Keurig states it will oppose Rogers' request for expedited discovery and will seek a stay of discovery pending the resolution of Keurig's motion to dismiss.[2]  Keurig's proposed motion to stay is in reality an opposition to Rogers' motion for preliminary injunction; a courtesy copy has been filed with this court.  We acknowledge that the content of, and attachments to, this letter may be somewhat beyond the normal course, but, given the recent transfer of this case to this Court, the prior history of this case in the transferor court, and the urgency of the relief Rogers seeks (given the imminent actions of Keurig as explained more fully below), we believe this treatment was warranted.  Rogers wants to ensure that the Court is fully informed of all of the history and issues at play in this litigation when the parties are before the Court at the conference this coming Thursday.

     As a preliminary matter, Keurig's proposal is directly at odds with Section II.A of the Southern District of New York's Standing Order for the Pilot Project Regarding Case Management Techniques for Complex Civil Cases, which allows for the "discovery of documents, electronically stored information, and tangible things" while a motion to dismiss is pending.  And, it is contrary to the precedent of this Court allowing parties to conduct expedited discovery related to a motion for preliminary injunction despite a pending a motion to dismiss.  *See, e.g.*, *Standard Investment Chartered, Inc. v. Nat'l Assoc. of Secs. Dealers, Inc.,* No. 07-civ-2014, 2007 WL 1121734, at *3 (S.D.N.Y. Apr. 11, 2007) ("[G]ranting a discovery stay pending disposition of a merely 'arguable' motion to dismiss when there is a demonstrated need for exigent relief completely undermines the purpose of temporary remedies, whether dispositive, as in the case of a preliminary injunction, or not, in the case of discovery.").

     There is a reason Keurig wants a stay; it plans to begin shipping new Keurig 2.0 brewers incorporating lock-out features the week of August 24 and officially launch its product for sale on September 28, and any delay in discovery allows it to continue with this plan.  As discussed in its Motion for Preliminary Injunction, Keurig is meeting with customers and using the pending release to convince customers to stop doing business with Rogers.  *See* Motion for Preliminary Injunction (attached as Exhibit B to Rogers' June 5 letter to this Court, *TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.,* 1:14-cv-00905-VSB (Dkt. No. 47-2 at 15, 19).  It bears emphasis that Keurig's letter completely ignores these

---

[1] Although the letter is dated June 10, Rogers was not served this letter until June 11.
[2] Rogers joins TreeHouse in its arguments in its June 13 letter (Dkt. No. 5).

Almaty   Beijing   Boston   Brussels   Chicago   Dallas   Dubai*   Frankfurt   Harrisburg   Houston   Irvine   London   Los Angeles   Miami
Moscow   New York   Palo Alto   Paris   Philadelphia   Pittsburgh   Princeton   San Francisco   Tokyo   Washington   Wilmington
DB2/ 25152450.5
*In association with Mohammed Buhashem Advocates & Legal Consultants

Hon. Vernon S. Broderick
June 16, 2014
Page 2

**Morgan Lewis**
COUNSELORS AT LAW

sworn statements. Keurig also misstates the relief Rogers seeks. Rogers seeks only to prevent Keurig from promoting and introducing this lock-out feature of its Keurig 2.0 brewers. In its June 10 letter Keurig states – without any support – that "the technology that enables the brewer to communicate with the portion packs is core to the brewer's functionality," yet provides no explanation or justification for why it would be necessary for the Keurig 2.0 brewer to lock-out non-licensed portion packs altogether. Discovery is needed to prove that this assertion is false.

Rogers retained expert Larry Stewart, see Declaration of Larry Stewart (attached as Exhibit A), to examine the new Keurig portion packs since the Keurig 2.0 brewer is not available. Based on that review, Rogers understands that the Keurig 2.0 brewer will use a filtered light source to illuminate a fluorescent ink applied to the label on the lid of their portion packs and a camera equipped with a filter to detect fluorescence from the ink. If the brewer fails to detect the fluorescent ring, as will be the case for non-licensed portion packs, the brewer will not brew that portion pack. Despite what Keurig claims, this outer fluorescent ring does not relay any recipe, portion size, temperature, or other information to the Keurig 2.0 brewer, and thus cannot be attributed to Keurig's purported advanced innovation or to safety or quality concerns. Its sole purpose appears to be to determine whether or not a portion pack is licensed. There is an entirely separate fluorescent circle on the surface of some portion packs that is used to convey additional information to the Keurig 2.0 brewer about the size or contents of the portion pack. Rogers does not seek to prevent Keurig from introducing this separate technology to the market. Rogers seeks only to prevent Keurig from implementing the lock-out of competitors' products. Rogers' understanding and requested injunction is consistent with previous comments Keurig's CEO Brian Kelley made to investors – stating that the Keurig 2.0 might brew non-licensed portion packs "a few times before they no longer work."[3] Similarly, one of Rogers' customers informed Rogers that Keurig had explained to it that an override function would be available for the lock-out technology "if a consumer complained enough." Keurig's contradictory statements belie the professed inability of the Keurig 2.0 brewer to function without a lock-out feature and underscore the need for expedited discovery that will provide evidence to resolve the preliminary injunction motion.

Ironically, Keurig states that the antitrust laws were "designed to encourage competition, not to prevent it" and implores the Court to allow "consumers, not competitors or the courts, to decide whether product innovation is worthwhile." The antitrust laws do not permit Keurig to impose a "feature" whose sole function is to lock out all competing, non-licensed portion packs, nor do they allow the monopolist Keurig to create market confusion and threaten competitors' customers that non-licensed portion packs will no longer be marketable upon Keurig 2.0's introduction, thereby convincing those customers not to purchase inventory that Keurig will soon render obsolete.

Keurig's argument that Rogers "cannot show irreparable harm" ignores the sworn declarations filed with Rogers' Motion for Preliminary Injunction. As explained in these declarations, Keurig launched a marketing blitz, visiting each of the nation's largest retailers informing them that the Keurig 2.0 brewer will not operate with non-licensed portion packs, sending the clear message that retailers would be wasting valuable shelf-space if they continue to offer these non-licensed products or use non-licensed manufacturers for their private label products. This aggressive marketing of the lockout feature of its forthcoming 2.0 brewer already has cost and continues to cost Rogers significant business opportunities,[4] despite several potential customers expressly stating that they strongly prefer the quality and environmental responsibility of Rogers' product. Under these circumstances, Keurig's other anticompetitive conduct – requiring distributors

---

[3] Dan D'Ambrosio, *With K-Cup Patent Expired, Others Try to Cash In*, USA Today (Oct. 29, 2013), http://www.usatoday.com/story/money/business/2013/10/29/life-after-the-k-cup-patent/3307187/ (attached as Exhibit B).
[4] On April 8, 2014, due to concerns over compatibility with the 2.0, Kroger abruptly withdrew from a private label agreement with Rogers, electing to use Keurig instead. Business relations with Costco Wholesale US – Rogers' largest customer – may also be in jeopardy, as it purportedly "has decided not to purchase for resale any single-serve portion pack coffees that would not work with the Keurig 2.0 brewer" and Costco Canada has already cited the 2.0 as the reason it will not do further business with Rogers. Most recently, customer Wakefern has ended Rogers' development of its private label organic coffee portion packs after meeting with a Keurig representative and discussing the Keurig 2.0 launch.

DB2/ 25152450.5

Morgan Lewis
COUNSELORS AT LAW

Hon. Vernon S. Broderick
June 16, 2014
Page 3

to enter into exclusive agreements and making false, disparaging statements to retailers, distributors and consumers about Rogers' products, takes on new significance and also must be enjoined.[5]

Keurig also claims without factual support that the test for balancing harm favors it. The law is clear that the ability to lockout competitors is not a legitimate interest in balancing harms. *See Xerox Corp. v. MediaSciences Int'l, Inc.*, 511 F. Supp. 2d 372, 388 (S.D.N.Y. 2007) ("[P]roduct redesign, when it suppresses competition and is without other justification, can be violative of the antitrust laws"); *U.S. v. Microsoft Corp.*, 253 F.3d 34, 65 (D.C. Cir. 2001) ("Judicial deference to product innovation…does not mean that a monopolist's product design decisions are per se lawful.").

Keurig also presents this Court with the false premise that Rogers seeks to deny consumers the choice between the Keurig 2.0 brewers and prior generation Keurig brewers. However, it is Keurig that has repeatedly told the market that it "will replace [it]s current lineup of both K-Cup and Vue brewers" with the 2.0 brewer by early 2015.[6] Rogers only seeks to protect consumers' access to non-licensed portion packs in Keurig's new brewers and compete on equal footing in the portion pack market, so that consumers may decide whether Keurig's innovation truly offers a benefit.

Rogers has propounded 6 interrogatories, 14 requests for production, and a 30(b)(6) deposition notice with 15 topics, all of which are narrowly tailored to focus on the specific issues and facts needed by this Court to determine the merits of a motion for preliminary injunction. Delaying the discovery necessary for a prompt resolution of a motion for preliminary injunction is in line with Keurig's clear strategy to allow it to continue its campaign to drive customers away from non-licensed products and launch its Keurig 2.0 brewer as planned. Keurig's arguments for a discovery stay are unsupported by factual evidence, law, and are contrary to this Court's procedures. In order to end Keurig's conduct prior to the 2.0 launch, Rogers can complete the discovery and briefing, and requests that this Court schedule argument on its motion, prior to September 28.

Sincerely,

By: /s/ Daniel Johnson, Jr.
Daniel Johnson, Jr. (pro hac vice to be filed)

MORGAN, LEWIS & BOCKIUS LLP
One Market Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
djjohnson@morganlewis.com

*Attorney for JBR, Inc.* (d/b/a Rogers Family Company)

cc:  All Counsel of record


Attachments

---

[5] Keurig's protest that its false and disparaging statements to Rogers' customers and potential customers are mere "marketing" that must be countered with Rogers' own marketing misrepresents the law. See *Multivideo Labs, Inc. v. Intel Corp.,* No. 99-civ-3908, 2000 WL 502866, at *16 (S.D.N.Y. Apr. 27, 2000) (explaining that courts consider whether "the challenged statements tend to mislead or confuse consumers"); *see also Merck Eprova AG v. ProThera, Inc.*, No. 08-civ-35, 2010 WL 9098310, at *6 (S.D.N.Y. Oct. 20, 2010) (same).
[6] See Transcript, GMCR Q4 2013 Earnings Call, Nov. 20, 2013, available at
http://www.morningstar.com/earnings/PrintTranscript.aspx?id=60483466 (attached as Exhibit C).

DB2/ 25152450.5