**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
                                  :

IN RE: KEURIG GREEN MOUNTAIN SINGLE-   :     No. 1:14-md-02542 (VSB)
SERVE COFFEE ANTITRUST LITIGATION     :

                                  :     *Applies to: No. 14 Civ. 905*
                                  :     *No. 14 Civ. 4242*
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO COMPETITOR PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... i

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

ARGUMENT .................................................................................................................... 4

    I.     Expedited Discovery is Inappropriate in this Case ............................................... 4

          A.     Plaintiffs Do Not Properly Allege Irreparable Harm .............................. 5

          B.     Plaintiffs Have A Low Likelihood of Success on the Merits ................... 9

          C.     Plaintiffs Articulate No Connection Between the Expedited Discovery Sought and the Avoidance of Immediate Injury.................... 13

          D.     Plaintiffs' Alleged Urgency Does Not Outweigh Harm to Keurig If Expedited Discovery Is Granted ...................................................... 14

    II.    Plaintiffs' Requests for Expedited Discovery Should Be Denied Because They Are Overbroad .......................................................................................... 16

    III.   Plaintiffs' Request For Reconsideration of the Stay of General Discovery Is Improper .................................................................................................. 20

CONCLUSION ............................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
No. 94 Civ. 2120 (LMM) (AJP), 1996 WL 101277 (S.D.N.Y. Mar. 7, 1996) ...................... 21

*Ayyash v. Bank Al-Madina*,
233 F.R.D. 325 (S.D.N.Y. 2005) ................................................................................... 5, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 15

*Brooks v. Macy's, Inc.*,
No. 10 Civ. 5304 (BSJ) (HBP), 2011 WL 1362191 (S.D.N.Y. Apr. 8, 2011) ...................... 22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ........................................................................................................ 11

*Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*,
601 F. 2d 48 (2d Cir. 1979) ............................................................................................. 11

*California Computer Products, Inc. v. International Business Machines Corp.*,
613 F.2d 727 (9th Cir. 1979) .......................................................................................... 11

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
479 U.S. 104 (1986) .................................................................................................... 11-12

*Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-cv-02031, 2012 WL 511485 (W.D. Ark. Feb. 15, 2012). ...................................... 11

*Dexter 345 Inc. v. Cuomo*,
663 F.3d 59 (2d Cir. 2011) ................................................................................................. 6

*Don King Products, Inc. v. Hopkins*,
No. 04 Civ. 9705 (PKL), 2004 WL 2997800 (S.D.N.Y. Dec. 23, 2004) ................................ 4

*Ellsworth Associates, Inc. v. United States*,
917 F. Supp. 841 (D.D.C. 1996) ..................................................................................... 20

*Gidatex, S.r.L. v. Campaniello Importers, Ltd.*,
13 F. Supp. 2d 417 (S.D.N.Y. 1998) ............................................................................... 14

*Global Discovery Travel Services, LLC v. Trans World Airlines, Inc.*,
960 F. Supp. 701 (S.D.N.Y. 1997) .................................................................................. 11

*Grand River Enterprises Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007) ................................................................................................. 6

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*,
No. 13 Civ. 07789 (LGS) (S.D.N.Y. Mar. 4, 2014) ................................................21

*In re Graphics Processing Units Antitrust Litigation*,
No. C 06-07417 WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ...................21

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litigation*,
No. 3:12-cv-03515-B (N.D. Tex. Feb. 26, 2013) ...................................................21

*In re Refrigerant Compressors Antitrust Litigation*,
No. 2:09-md-02042-SFC (E.D. Mich. May 26, 2010)..............................................21

*In re Term Commodities Cotton Futures Litigation*,
No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013) ....................21

*Integrated Systems & Power, Inc. v. Honeywell International, Inc.*,
No. 09 Civ. 5874 (RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) ...............................21

*Irish Lesbian & Gay Organization v. Giuliani*,
918 F. Supp. 728 (S.D.N.Y. 1996) ...........................................................................4

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979)........................................................................................6

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)......................................................................................3

*Lanvin Inc. v. Colonia, Inc.*,
739 F. Supp. 182 (S.D.N.Y. 1990) ...........................................................................6

*Lentjes Bischoff GmbH v. Joy Environmental Technologies, Inc.*,
986 F. Supp. 183 (S.D.N.Y. 1997) ...........................................................................5

*Litwin v. Oceanfreight, Inc.*,
865 F. Supp. 2d 385 (S.D.N.Y. 2011)..................................................................5, 16

*Mitra v. State Bank of India*,
No. 03 CIV. 6331 (DAB), 2005 WL 2143144 (S.D.N.Y. Sept. 6, 2005)..............................19

*National Elevator Cab & Door Corp. v. H&B, Inc.*,
282 F. App'x 885 (2d Cir. 2008) ..............................................................................6

*North Atlantic Operating Co., Inc. v. Evergreen Distributors, LLC*,
293 F.R.D. 363 (E.D.N.Y. 2013) ............................................................................14

*Notaro v. Koch*,
95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................................4

*Novo Nordisk A/S v. Becton Dickinson & Co.*,
    997 F. Supp. 470 (S.D.N.Y. 1998) ..................................................................8

*Omega Environmental, Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ......................................................................10

*OMG Fidelity, Inc. v. Sirius Technologies, Inc.*,
    239 F.R.D. 300 (N.D.N.Y. 2006) ..................................................................20

*Park West Radiology v. Carecore National LLC*,
    240 F.R.D. 109 (S.D.N.Y. 2007) ..........................................................5-6, 14

*Petereit v. S.B. Thomas, Inc.*,
    63 F.3d 1169 (2d Cir. 1995) ...........................................................................6

*Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*,
    No. CIV. A. 98-CV-2782, 1998 WL 404820 (E.D. Pa. July 15, 1998)...........16, 19

*Poughkeepsie Savings Bank v. Morash*,
    No. 89 Civ. 1778 (SWK), 1989 WL 40008 (S.D.N.Y. Apr. 14, 1989) ...............4

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993)..........................................................................................11

*Raza v. City of New York*,
    No. 13 Civ. 3448-PKC-JMA, 2013 WL 6177392 (E.D.N.Y. Nov. 22, 2013).........19

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)..............................................................................7

*Riggs v. Termeer*,
    No. 03 Civ. 4014 MP, 2003 WL 21345183 (S.D.N.Y. June 9, 2003) ................5

*Rosecliff, Inc. v. Telos Acquisition Partners, L.P.*,
    No. 94 Civ. 9104 (JFK), 1995 WL 3024 (S.D.N.Y. Jan. 3, 1995) ...................4

*Special Situations Cayman Fund, L.P. v. Dot Com Entertainment Group, Inc.*,
    No. 03 Civ. 0811E(F), 2003 WL 23350128 (W.D.N.Y. Dec. 5, 2003).............5

*Standard Investment Chartered, Inc. v. National Ass'n of Securities Dealers, Inc.*,
    No. 07 Civ. 2014 (SWK), 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007) .............20

*Tampa Electric Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961).......................................................................................10

*Ticor Title Insurance Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999)...............................................................................6

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,
   60 F.3d 27 (2d Cir. 1995).................................................................7

*Tough Traveler, Ltd. v. Outbound Products*,
   60 F.3d 964 (2d Cir. 1995)...............................................................14

*Town of Concord v. Boston Edison Co.*,
   915 F.2d 17 (1st Cir. 1990) (Breyer, C.J.) ......................................12

*Transunion Corp. v. PepsiCo, Inc.*,
   811 F.2d 127 (2d Cir. 1987) (*per curiam*) ......................................21

*Treehouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*,
   No. 1:14-cv-00905-VSB (S.D.N.Y. Feb. 11, 2014) ...........................2

*Verizon Communications v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)........................................................................10

*Wills v. Amerada Hess Corp.*,
   379 F.3d 32 (2d Cir. 2004) (Sotomayor, J.).....................................20

*Xelus, Inc. v. Servigistics., Inc.*,
   371 F. Supp. 2d 387 (W.D.N.Y. 2005) .............................................7

Defendant Keurig Green Mountain, Inc. ("Keurig") respectfully submits this memorandum in opposition to the motion for expedited discovery brought by TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively "TreeHouse") and JBR, Inc. ("JBR," together with TreeHouse, the "Competitor Plaintiffs," or for the limited purpose of this brief, "Plaintiffs").

## INTRODUCTION

The Competitor Plaintiffs seek expedited discovery in support of their possible motions for a preliminary injunction. This request should be denied for numerous reasons. First, as Plaintiffs themselves acknowledge, irreparable harm is a critical prerequisite for their motion. Yet Plaintiffs are suffering no irreparable harm, and no amount of discovery from Keurig will alter this fact. Second, Plaintiffs are fundamentally complaining about increased competition, but this is not a viable claim under the antitrust laws. Accordingly, Plaintiffs have no likelihood of success on the merits of their potentially forthcoming motion. Third, the expedited discovery sought is not closely connected to the alleged injury that Plaintiffs assert will occur when the Keurig 2.0 brewer is shipped to retail stores. Indeed, Plaintiffs never explain precisely what the alleged urgent harm of having Keurig 2.0 brewers on retail shelves is, much less attempt to relate that harm to the requested discovery. Fourth, Plaintiffs' alleged need for expedited discovery does not outweigh the harm to Keurig that would be caused by pushing discovery in advance of motions to dismiss (and, in some cases, of complaints being filed) in this large multidistrict litigation. Finally, the discovery requests should be denied because, despite the Court's instruction, the requests remain overbroad.

## BACKGROUND

In November 2013 Keurig announced that, in 2014, it would launch the Keurig 2.0 brewer.  Compl. ¶ 85.[1]  Keurig indicated that this brewer would include proprietary technology and would work only with Keurig-licensed portion packs.  JBR Compl. ¶¶ 85-87.  Three months later, on February 11, 2014, TreeHouse filed its complaint.[2]  One month after that, on March 13, 2014, JBR filed its complaint.

The Plaintiffs' complaints contain largely identical allegations.  Both allege an installed base of 30 million current generation Keurig coffee brewers.  *See* TreeHouse Compl. ¶ 66; JBR Compl. ¶ 17.  Both allege that Plaintiffs successfully began selling "portion packs" years ago, while competing with Keurig.  TreeHouse Compl. ¶ 147; JBR Compl. ¶ 35.  Both allege that they sell their products through "online mecca" Amazon as well as other channels.  *See* TreeHouse Compl. ¶ 281; JBR Compl. ¶ 117.  Both allege that the Keurig 2.0 brewer is not innovative and will not be attractive to consumers.  *See* TreeHouse Compl. ¶ 25; JBR Compl. ¶ 11.  And both assert claims based on the forthcoming 2.0 brewer, as well as contracts that Keurig has had in place for years.  *See, e.g.*, TreeHouse Compl. ¶ 212 (referencing a December 20, 2011 contract when discussing the alleged "system of exclusionary agreements"); JBR Compl. ¶ 76 (complaining of a March 26, 2012 letter enforcing challenged contracts).

One month after filing its complaint, five months after Keurig's announcement of the 2.0 brewer, and years after much of the challenged conduct, JBR filed a motion for a preliminary injunction in the Eastern District of California.  *JBR* ECF No. 19.  That court stayed the *JBR*

---

[1]      *JBR, Inc. v. Keurig Green Mountain, Inc.*, No. 2:14-cv-00677-KJM-CKD (E.D. Cal. Mar. 13, 2014) ("JBR Compl.").  Further citations to the *JBR* docket will be styled as "*JBR* ECF No. [X]."  Short names will be used where possible for clarity.

[2]      Complaint, *TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 1:14-cv-00905-VSB (S.D.N.Y. Feb. 11, 2014) ("TreeHouse Compl.").  Further citations to the *Treehouse* docket will be styled as "*TreeHouse* ECF No. [X]".

2

action, noting that "if plaintiff's needs are as urgent as it describes . . . plaintiff . . . could have filed the motion for a preliminary injunction concurrent with its complaint and not have waited for more than a month after the complaint was filed to seek a preliminary injunction." *JBR* ECF No. 41 at 4.

Following transfer to this Court, JBR raised by letter dated June 5, 2014 the issue of its preliminary injunction motion. MDL ECF No. 12. As this Court noted at the June 19 status conference, no preliminary injunction has been filed in the Southern District of New York. Hr'g Tr. 45:14-15, June 19, 2014 ("June 19 Hr'g Tr.").

TreeHouse, for its part, seeks discovery to "decide whether [it] should file a preliminary injunction before August." Hr'g Tr. 19:15-21, May 1, 2014, *TreeHouse* ECF No. 39 ("May 1 Hr'g Tr."). The fact that TreeHouse is now suggesting that it is suffering irreparable injury, *see* Pl. Mem. at 8-9, MDL ECF No. 28, is particularly striking in light of recent statements made by TreeHouse's Chief Executive Officer to the investment community. Specifically, TreeHouse has stated that its already-robust sales of portion packs are expected to grow in light of the large and growing installed base of current generation Keurig brewers as well as increasing sales of compatible coffee brewers sold by some of Keurig's competitors. MDL ECF No. 2-1 (excerpt) at 6-8 (noting "[w]e mentioned on the last call that we have added more capacity again, in light of the volumes we have got running" and that there are "five new single-serve coffee brand-name appliances that are coming to the market in the fourth quarter").[3]

In their motion before this Court, the Competitor Plaintiffs assert that their possible future motion for a preliminary injunction must be resolved before the Keurig 2.0 brewer

---

[3] The Court may take judicial notice of this document. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (noting that "a district court may take judicial notice of the contents of relevant public disclosure documents," including "documents that bear on the adequacy of" securities filings).

becomes available on retail shelves.  But Plaintiffs do not explain why this is so, nor do they articulate a cognizable theory by which they are suffering irreparable injury.  Instead, Plaintiffs suggest that a mere loss of business constitutes irreparable injury.  Pl. Mem. at 8.  As discussed below, this is an incorrect statement of the law:  A loss of business alone does not constitute irreparable injury because it can be compensated by money damages.  Because Plaintiffs have not alleged irreparable injury, and for the other reasons set forth below, the Competitor Plaintiffs' motion should be denied.

## ARGUMENT

### I.  Expedited Discovery is Inappropriate in this Case

Courts in this district employ two tests to determine whether to grant a request for expedited discovery and, under either test, the Competitor Plaintiffs' motion should be denied. The *Notaro* test requires a party seeking expedited discovery to show "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted."  *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); *see also Don King Prods., Inc. v. Hopkins*, No. 04 Civ. 9705 (PKL), 2004 WL 2997800, at *2 (S.D.N.Y. Dec. 23, 2004) (denying expedited discovery request under *Notaro* test); *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 730-31 (S.D.N.Y. 1996) (same); *Rosecliff, Inc. v. Telos Acquisition Partners, L.P.*, No. 94 Civ. 9104 (JFK), 1995 WL 3024, at *2 (S.D.N.Y. Jan. 3, 1995) (same); *Poughkeepsie Sav. Bank v. Morash*, No. 89 Civ. 1778 (SWK), 1989 WL 40008, at *10 (S.D.N.Y. Apr. 14, 1989) (same).  Plaintiffs fail on every one of these requirements.

Some courts have applied a related standard to expedited discovery requests, and

evaluated such requests for reasonableness and good cause.  This version of the test requires a

court to use its discretion to determine whether a request for expedited discovery is reasonable in

light of all the surrounding circumstances of the case.  *See Ayyash v. Bank Al-Madina*, 233

F.R.D. 325, 326-27 (S.D.N.Y. 2005).  But, even under this variant on the standard, the courts

have focused on similar factors.  *See, e.g.*, *Litwin v. Oceanfreight, Inc.*, 865 F. Supp. 2d 385, 402

(S.D.N.Y. 2011) (finding that plaintiff's request for expedited discovery satisfied neither

standard); *Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp., Inc*., No. 03 Civ.

0811E(F), 2003 WL 23350128, at *1 (W.D.N.Y. Dec. 5, 2003) (noting similarity between the

two standards).

### A.  Plaintiffs Do Not Properly Allege Irreparable Harm

Plaintiffs concede that in order to obtain expedited discovery they must show a

"significant risk of irreparable harm."  Pl. Mem. at 12.  Under well-established law, a plaintiff

seeking expedited discovery must make a plausible showing of irreparable injury before

imposing the expense and burden of such discovery.  *See, e.g.*, *Park W. Radiology v. Carecore*

*Nat'l LLC*, 240 F.R.D. 109, 114 (S.D.N.Y. 2007).  As the court explained in denying a motion

for expedited discovery in *Riggs v. Termeer*, No. 03 Civ. 4014 MP, 2003 WL 21345183, at *1

(S.D.N.Y. June 9, 2003), even if that case had not involved application of the Private Securities

Litigation Reform Act, "plaintiffs would not have been entitled to expedited discovery under

normal standards" because "[n]o showing of irreparable harm is demonstrated to warrant

expedited discovery at this stage."  *See also, e.g.*, *Lentjes Bischoff GmbH v. Joy Envtl. Techs.,*

*Inc.*, 986 F. Supp. 183, 189 (S.D.N.Y. 1997) (denying expedited discovery in connection with a

preliminary injunction because plaintiff failed to show irreparable injury).

Competitor Plaintiffs incorrectly argue that the irreparable injury standard can be

satisfied simply by alleging a loss of market share.  Pl. Mem. at 8.  But it is well established that "money [is] adequate compensation for the loss of . . . business" and that "*irreparable injury* means injury for which a monetary award *cannot* be adequate compensation."  *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (emphasis added); *see also Park W. Radiology*, 240 F.R.D. at 114 (finding no irreparable injury where "damages can be determined on the basis of past sales of that product and of current and expected future market conditions") (internal quotation and citation omitted); *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (affirming denial of a preliminary injunction for lack of irreparable injury where a history of operations "will enable the Plaintiffs to calculate any money damages to which they might be entitled, including lost profits, based on previous rent figures").  Even the loss of an entire "line of business . . . is insufficient to show irreparable harm."  *Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 194 (S.D.N.Y. 1990) (citations omitted) (holding that licensee's losses from inability to produce and market perfume could be determined).

The cases that Plaintiffs cite are not to the contrary.  For example, in *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007), the court affirmed the denial of the plaintiff's request for a preliminary injunction because the plaintiff could not show irreparable harm and the court further noted that a preliminary injunction is an "extraordinary and drastic remedy."  481 F.3d at 62 (citation omitted).  Similarly, in *Petereit v. S.B. Thomas, Inc.*, the Second Circuit vacated an injunction because "lost profits [were] readily determinable" and "injunctive relief where an adequate remedy at law exists is inappropriate."  63 F.3d 1169, 1185-86 (2d Cir. 1995).  The other cases that Plaintiffs cite all hinged on fact-specific issues that are not present here.  In *National Elevator Cab & Door Corp. v. H&B, Inc.*, 282 F. App'x 885, 887 (2d Cir. 2008), and *Ticor Title Insurance Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999), for

example, the parties had contracts that specifically stated that money damages would not be sufficient and that the plaintiff was entitled to an injunction in the event of a breach, which is plainly not the situation here.  Plaintiffs' remaining cases, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004), *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995), and *Xelus, Inc. v. Servigistics., Inc.*, 371 F. Supp. 2d 387 (W.D.N.Y. 2005), all turned on the inability of the court or the parties to articulate a way of calculating damages.  These cases are not applicable here, where Plaintiffs are established competitors with sales track records.  TreeHouse Compl. ¶ 147 (alleging that TreeHouse began selling portion packs in 2010); JBR Compl. ¶ 35 (alleging that JBR began selling portion packs in 2011).  Contrary to Plaintiffs' assertions, these cases do not indicate that the simple loss of business constitutes irreparable injury.

Here, there is no reason to believe that Competitor Plaintiffs will be irreparably harmed by the introduction of the next generation of Keurig brewers.  Competitor Plaintiffs' effort to portray the introduction of the 2.0 brewer as an "imminent threat" is inconsistent with the allegations in Plaintiffs' own complaints.  Pl. Mem. at 9.  When the 2.0 brewer launches, Competitor Plaintiffs will remain free to sell their products to users of the installed base of "over 30 million Single-Serve Brewers" in homes and businesses, JBR Compl. ¶ 17.  They will be able to sell to these customers  through myriad distribution channels, including "online mecca" Amazon.com, TreeHouse Compl. ¶ 281, where JBR alleges that its packs are a "'#1 Best Seller,'" JBR Compl. ¶ 117.  Plaintiffs can also sell to new buyers of Keurig's own current-generation brewers (which will be sold at least into 2015) and to buyers of other compatible brewers made by some of Keurig's competitors.  *See* Stifel, Updated Thoughts on Keurig 2.0 and F1Q14 at 3 (Jan. 30, 2014) (cited in TreeHouse Compl. ¶ 65); JBR Compl. ¶ 18.

Indeed, statements by its own executives demonstrate that TreeHouse anticipates continued sales *growth* after the launch of the Keurig 2.0 system. During a presentation at a global industry conference on May 28, 2014—more than four months after TreeHouse filed its Complaint—the Chief Executive Officer of publicly-owned TreeHouse reported that the company expected its competitive cup business to grow notwithstanding the introduction of the 2.0 brewer, in light of the large and growing installed base of current-generation Keurig brewers and growth in sales of compatible brewers made by competitors to Keurig. S*ee* MDL ECF No. 2-1 at 6-7 ("We mentioned on the last call that we have added more capacity again, in light of the volumes we have got running. So it has turned into a very big win for us . . . . [A]s we sell in new products and we get the demand, we put in capacity. Since pretty much day one, our lines have been running at almost their full capacity"); *see id.* at 8 (noting that there are "five new single-serve coffee brand-name appliances that are coming to the market in the fourth quarter"). TreeHouse also anticipates producing its own 2.0 compatible cups in "months, not years." *Id.* at 8. Thus, even though, as Plaintiffs note, their existing portion packs were "designed for use with current or prior generation Keurig brewers," Pl. Mem. at 15, and not for use with the new 2.0 brewer, TreeHouse believes it will be able to design portion packs for the new brewer in the near term. In sum, these statements about growth opportunities available to Competitor Plaintiffs are consistent with the Complaints and are fundamentally inconsistent with a showing of irreparable injury.

Moreover, TreeHouse and JBR are not new enterprises whose likely success is difficult to predict. Thus, they cannot rely on cases suggesting that losses for new market entrants may be difficult to quantify. *See, e.g.*, *Novo Nordisk A/S v. Becton Dickinson & Co.*, 997 F. Supp. 470, 473 (S.D.N.Y. 1998) (money damages difficult to calculate where product market had existed for

fewer than two years) (cited at Pl. Mem. at 9).  TreeHouse is a major public company that has

sold portion packs since 2010 and whose fiscal health is well-publicized.  TreeHouse Compl. ¶

147; *see also* TreeHouse Foods, Form 8-K, June 30, 2014 (announcing TreeHouse's purchase of

Flagstone Foods for $860 million).  JBR, in turn, is a well-established business that began selling

coffee in 1979 and began its "OneCup" line of portion packs in 2011.  JBR Compl. ¶¶ 5, 35.

JBR now claims to have 341 employees, with operations in the United States and abroad, and it

claims to own coffee farms in Panama and Mexico, as well as a purchasing operation that buys

coffee from more than 12 countries.  Rogers Decl. ¶ 2, MDL ECF No. 28-2.  Simply put, neither

Competitor Plaintiff is a new entrant to the coffee business.

JBR claims that it has lost business with three U.S. customers—Kroger, BJ's, and

Wakefern—along with Costco Canada.  Pl. Mem. at 7-8.  But Competitor Plaintiffs do not

seriously argue that it would be impossible to ascertain the value of the loss of these business

relationships.  Pl. Mem. at 8-9 (citing cases, but making no factual assertions about the

impossibility of money damages here).  Nor could they: TreeHouse and JBR can plainly identify

the "several instances" where JBR claims to have "lost business" and quantify the alleged losses

sustained.  Pl. Mem. at 3.  Moreover, in two of these three instances of JBR allegedly losing U.S.

business, JBR suggests that the loss is a *partial* one:  JBR indicates that two of the three retailers,

Kroger and Wakefern, selected Keurig over JBR *to supply their private label coffee*.  Pl. Mem. at

7.  JBR does not allege that Kroger and Wakefern have stopped stocking JBR brand portion

packs.  In short, a partial or even complete loss of business with a handful of retailers is not the

sort of alleged damage that is impossible to quantify.

### B.  Plaintiffs Have A Low Likelihood of Success on the Merits

As we previewed for the Court in our letter of March 10, 2014, *TreeHouse* ECF No. 16,

and as we will discuss in more detail in our motion to dismiss, Plaintiffs' request for expedited

discovery should also be denied because Plaintiffs are unlikely to succeed on the merits of their

planned future motion for a preliminary injunction.  As noted in our March 10 letter, the

complaints on their face demonstrate that Plaintiffs are complaining because they would like to

free ride on Keurig's efforts, innovation, R&D, and engineering.  But the antitrust laws do not

guarantee a right to free ride on the innovation of others.  *See, e.g.*, *Verizon Commc'ns v. Law*

*Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-08 (2004).

Plaintiffs' so-called "exclusive dealing" claims are also facially deficient.  *See Tampa*

*Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961).  Plaintiffs do not allege that they have

been substantially foreclosed from the market, nor could they.  Plaintiffs allege, for example, that

Keurig has 500 exclusive contracts with office coffee distributors, but Plaintiffs do not allege

that they could not reach customers through other channels of distribution, nor do they even

allege how many distributors there are in total across the thousands of cities in the United States.

In fact, the complaints affirmatively allege that Plaintiffs' products are available through a wide

variety of channels.  TreeHouse Compl. ¶¶ 281, 294.  Plaintiffs also fail to state a

monopolization claim because they concede that their "sales have grown."  TreeHouse Compl.

¶¶ 153-54.  Increasing sales are inconsistent with foreclosure.  *Omega Envtl., Inc. v. Gilbarco,*

*Inc.*, 127 F.3d 1157, 1164 (9th Cir. 1997).[4]

---

[4]  In their brief in support of their motion for expedited discovery, Plaintiffs refer in particular to
their so-called "sham litigation" claims as their claims most likely to survive a motion to dismiss.
Pl. Mem. at 16-17.  Keurig understands that these claims are not part of Plaintiffs' potentially
forthcoming preliminary injunction motion.  However, we note that Plaintiffs do not come close
to stating a monopolization claim on this basis.  The Complaints assert that Keurig lost two prior
patent lawsuits but, even if true, this is plainly not enough to show that the patent lawsuits
themselves were objectively baseless, nor that the mere bringing of the cases resulted in Keurig
securing a monopoly.  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49, 60-61 n.5 (1993).  Plaintiffs do not allege, for example, that they sought (much less

In addition, Plaintiffs' claims related to the Keurig 2.0 brewer should be dismissed because the antitrust laws do not dictate how and when a company may innovate or introduce new products. "[Defendant], assuming it was a monopolist, had the right to redesign its products to make them more attractive to buyers whether by reason of lower manufacturing cost and price or improved performance. It was under no duty to help [its competitors] survive or expand." *Cal. Computer Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979). Plaintiffs' request for a mandatory injunction to preclude a new product offering is unprecedented.[5]

Put another way, the antitrust laws do not permit competitors "to insulate themselves from the impact of competition." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 55 (2d Cir. 1979). If Plaintiffs lose sales because consumers prefer the new Keurig system, those losses do not constitute antitrust injury. *See, e.g., Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 115 (1986) (holding that a loss is "not of concern under the antitrust laws" when it "result[s] only from continued competition"); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977). And if, as JBR alleges, JBR Compl. ¶ 262, the Keurig 2.0 system is an "underwhelming innovation," Competitor Plaintiffs should have no concern, because no one will buy the machine. We note, however, that the allegations in the complaints

---

recovered) fees in the prior litigation, yet had Plaintiffs truly believed the prior litigation to have been filed in bad faith, they surely would have filed a fee application. Nor do Plaintiffs allege that the prior litigation harmed overall competition.

[5] As noted in our letter of March 10, there are numerous other reasons why the Complaints should be dismissed, including because they are based on unduly narrow alleged product markets. *See, e.g., Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997). In fact, another court recently dismissed a complaint alleging a market that failed to include "all products that are reasonably interchangeable with the K-cup brewers and coffee packs." *Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-02031, 2012 WL 511485, at *5 (W.D. Ark. Feb. 15, 2012).

about the supposed lack of innovation in the 2.0 brewer are in strong contrast to recent

statements by TreeHouse's Chief Executive Officer, who said:

> [The Keurig 2.0 brewer] is really going to be an evolutionary change in technology. And we have come to realize that if this is in fact a device-driven category, then there will be one technological change after another . . . . I think that the real matter is that there is an extraordinary promise here. . . . I only have to go back to think about when there was one microwavable oven -- microwave oven in the entire neighborhood where I grew up, and it was extraordinarily a novelty. It was very expensive. It had the barest of functionalities. And now it's become a household appliance across virtually all demographic portions of our population. As the [coffee brewers] have improved and developed greater functionality, it leads to a greater array of diversity of features and benefits.

MDL ECF No. 2-1 at 8.

Competition for customer sales is *encouraged* by the antitrust laws. *See Cargill, Inc.*,

479 U.S. at 117 ("[I]t is in the interest of competition to permit dominant firms to engage in

vigorous competition, including price competition."); *Town of Concord v. Bos. Edison Co*., 915

F.2d 17, 22 (1st Cir. 1990) (Breyer, C.J.) (listing "better products" as one of antitrust law's

"basic goals"). Yet lost sales are exactly what Competitor Plaintiffs point to in seeking

expedited discovery. As noted above, JBR points to some loss of business with three U.S.

customers—Kroger, BJ's, and Wakefern—along with Costco Canada. Pl. Mem. at 7-8. Notably,

TreeHouse offers not a single example of lost business, asserting only that is "suffering similar

injury"—a strained claim in light of the company's recent public statements regarding growth in

its private-label coffee business. Pl. Mem. at 7; MDL ECF No. 2-1.

Because Plaintiffs are unlikely to succeed on the merits of their "potentially forthcoming"

motion for a preliminary injunction, *see* Pl. Mem. at 1, their request for expedited discovery

should be denied.

### C. Plaintiffs Articulate No Connection Between the Expedited Discovery Sought and the Avoidance of Immediate Injury

Competitor Plaintiffs' request for expedited discovery should be denied for the independent reason that the discovery sought has little to do with avoiding any identified harm. Only the most tenuous chain of reasoning can justify, for example, the Competitor Plaintiffs' request that Keurig provide them with the opportunity cost of staff time spent on developing the Keurig 2.0 technology, *see* MDL ECF No. 28-3 at Req. No. 7, or for documents regarding Keurig's training, policies, and procedures regarding any communications about competition in "Portion Packs," *see id.* at Req. No. 4.

The connection between the discovery sought and the harm to be avoided is also lacking because Plaintiffs do not specify the precise injury to be avoided. Plaintiffs repeatedly assert that it is "imperative that Rogers' motion and TreeHouse's potential motion for a preliminary injunction be resolved prior to Keurig shipping the Keurig 2.0 to retailers at the end of August." Pl. Mem. at 9. But Plaintiffs never explain exactly what is going to happen when the 2.0 brewer arrives on retail shelves, how this will cause irreparable injury, and how the particular discovery sought would avoid that. Without any explanation of the urgent harm that allegedly will arise from having the 2.0 brewer on retail shelves, it is impossible for Plaintiffs to establish the close connection required between the requested discovery and their claimed threatened harm.

Further, as discussed below, Plaintiffs' requests are substantially overbroad. By making such broad requests, the Competitor Plaintiffs have sacrificed any claim to be seeking discovery closely tied to their alleged urgent injuries. As such, the requests are unreasonable. *See Ayyash*, 233 F.R.D. at 326-27.

13

**D. Plaintiffs' Alleged Urgency Does Not Outweigh Harm to Keurig If Expedited Discovery Is Granted**

Plaintiffs also cannot demonstrate that the claimed urgency of their need for discovery outweighs harm to Keurig. Specifically, Plaintiffs' unhurried approach to their preliminary injunction motions renders their timing arguments suspect. Courts are rightly wary of preliminary injunction requests filed after a delay. *See Park W. Radiology*, 240 F.R.D. at 112 (noting that two six-month delays in filing a preliminary injunction "undercut[] plaintiffs' assertions of irreparable harm"); *see also Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (vacating preliminary injunction where district court had not considered plaintiff's nine months of "manifest delay in bringing the action and in making the motion"); *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (denying preliminary injunction and expedited discovery where plaintiff delayed at least eight months in bringing suit, and observing that, "[w]hile delay may not warrant the denial of ultimate relief, it may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency upon which the availability of the remedy is predicated") (internal quotation marks omitted).

Here, JBR did not file its motion for preliminary injunction until two months after TreeHouse filed its complaint, and TreeHouse waited nearly three months to indicate, at the May 1 status conference, that it was even considering seeking expedited relief. *See* May 1 Hr'g Tr. 19:20-22. As the court in the Eastern District of California recognized, this kind of delay denotes a lack of exigency. *See JBR* ECF No. 41 at 4 (granting Motion to Stay despite JBR's pending preliminary injunction because "if plaintiff's needs are as urgent as it describes . . . plaintiff could have moved for a temporary restraining order initially or could have filed the motion for preliminary injunction concurrent with its complaint"); *see also N. Atl. Operating*

14

*Co., Inc. v. Evergreen Distribs., LLC*, 293 F.R.D. 363, 368 n.6 (E.D.N.Y. 2013) (exigency a key factor in determining whether request for expedited discovery is reasonable).

Competitor Plaintiffs now make arguments based on the timing of the shipment of the 2.0 brewer to retail stores. *See, e.g.*, Pl. Mem. at 9. But Plaintiffs fail to explain any reason why the presence of the 2.0 brewer as an option available to consumers on retail shelves is a watershed moment for them. After the launch of 2.0, Competitor Plaintiffs will still be free to sell their products to the users of "over 30 million Single-Serve Brewers" in homes and businesses, JBR Compl. ¶ 17. Plaintiffs can also sell to new buyers of Keurig's own current generation brewers (which will be sold at least into 2015, including during the critical holiday season) and other brewers compatible with their packs. *See* Stifel, Updated Thoughts on Keurig 2.0 and F1Q14 at 3 (Jan. 30, 2014) (cited in TreeHouse Compl. ¶ 65); JBR Compl. ¶ 18. Thus, there is no urgent danger arising around the launch date. Competitor Plaintiffs also argue that they are already suffering ongoing harm. JBR Compl. ¶ 122. But, if this is true, Plaintiffs could have sought relief long ago. They took no such steps, however, and now seek an extraordinary remedy on a compressed time schedule.

On the other side of the balance, Keurig will suffer if it is forced to provide expedited discovery in advance of a motion to dismiss. As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007), discovery in antitrust cases can be expensive. For this reason, the Supreme Court held that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (internal quotation omitted). Moreover, even if the complaints could survive a motion to dismiss —and we believe they cannot—it would be burdensome on Keurig to engage in piecemeal discovery

with the Competitor Plaintiffs, rather than conducting discovery according to an orderly and agreed-upon plan covering all parties. The Judicial Panel on Multidistrict Litigation centralized these actions in this district in large part because of the need for orderly discovery. *See* Transfer Order at 2, MDL ECF. No. 1 (centralizing all actions in SDNY, over the objections of competitor plaintiffs, because "given the number of involved actions . . . and the complexity of the issues raised in this litigation," centralization would "enable pretrial proceedings to be conducted in a manner that will lead to the just and expeditious resolution of all related actions"). To engage in fragmented discovery of potentially large sets of documents on an expedited basis would be unnecessarily expensive and burdensome for Keurig. *See, e.g.*, MDL ECF No. 28-3 at Req. Nos. 3, 10 (requesting communication and pricing documents).

## II. **Plaintiffs' Requests for Expedited Discovery Should Be Denied Because They Are Overbroad**

This Court should deny Plaintiffs' requests for the independent reason that the requests are overbroad and unreasonable. *See Litwin*, 865 F. Supp. 2d at 402 (denying expedited discovery in part because "[t]he sheer volume and breadth of plaintiff's discovery requests . . . renders them unreasonable"); *Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, No. CIV. A. 98-CV-2782, 1998 WL 404820, at *2-3 (E.D. Pa. July 15, 1998) (case cited by Plaintiffs which *denied* expedited discovery that was "wholly overbroad in scope").

Plaintiffs claim to have narrowed their requests in light of the Court's admonition at the June 19 status conference that some of JBR's original discovery requests were overly broad, Pl. Mem. at 14; June 19 Hr'g Tr. 16:24-17:3, but in fact Plaintiffs have not meaningfully narrowed many of these requests and, in some cases, have actually expanded them. For example, Plaintiffs continue to seek "[a] physical working sample of each model, version and/or prototype of the Keurig 2.0 Brewer," MDL ECF No. 28-3 at Req. No. 1, which is very similar to their overly

broad request for "[a]ll models and prototypes of the Keurig 2.0 Brewer." In addition, Plaintiffs

have now added a request for "[u]ser manuals for each model, version and/or prototype." *Id.* at

Req. No. 2.[6]

Plaintiffs make numerous other overbroad requests. For example, Plaintiffs add a new

request for materials such as *six-year-old* pricing documents that are wholly irrelevant to the

subject matter of the potential preliminary injunction. *See* MDL ECF No. 28-3 at Req. No. 10

("Documents sufficient to show the pricing of Keurig's Single-Serve Brewers and its K-Cups

from 2008 to the present.").[7] Plaintiffs also seek documents relating to the testing and evaluation

of the "performance" of *any type* of Portion Pack in Keurig 2.0 Brewers. *Id.* at Req. No. 8. This

could effectively encompass any testing of the Keurig 2.0 brewer and thus extends well beyond

material needed for Plaintiffs' potential preliminary injunction motion.

Nor are Plaintiffs' requests consistent with TreeHouse's claim at the last conference that

it would be "laser focused on the launch of Keurig 2.0." June 19 Hr'g Tr. 20:6-7. For example,

Plaintiffs demand documents and testimony regarding not only the 2.0 brewer but also future

"brewer model(s) in addition to the 2.0." *See* MDL ECF No. 28-3 at Req. No. 11. Likewise,

Request for Production Number 3 remains a true "blunderbuss," June 19 H'rg Tr. 18:19, that is

entirely untethered to the 2.0 and covers "training, policies and procedures regarding

communications concerning Competitive Portion Packs, including customer service, sales,

marketing, social media, and public relations training materials; form letters to suppliers,

licensees, licensors, customers, distributors, or consumers; and example scripts, talking points,

---

[6] Plaintiffs appear to have abandoned the interrogatories that they raised in their earlier letter, Ltr. to Judge Broderick from JBR, *TreeHouse*, June 5, 2014, ECF No. 47, presumably because they familiarized themselves with S.D.N.Y Local Rule 33.3, which limits the use of interrogatories.

[7] In addition to new Request 10, other requests that appear to have been added in this version include Request 7 (product development costs), Request 12 (documents related to lifespan of brewers) and Request 13 (documents related to ink suppliers and other vendors).

and PowerPoint presentations used to guide communications to potential and actual customers, media outlets, and consumers." MDL ECF No. 28-3 at Req. No. 3.

In addition, Plaintiffs continue to seek a deposition under Federal Rule of Civil Procedure 30(b)(6). In doing so, Plaintiffs fail to meet the even more demanding standard for receiving such discovery at this stage of the litigation. *See* MDL ECF No. 16 § II.A (creating a default presumption that depositions should be stayed pending resolution of a motion to dismiss). The 30(b)(6) deposition that Plaintiffs are seeking would impose substantial burden on Keurig to prepare for at such an early stage.

Nor have Plaintiffs appreciably narrowed the scope of their proposed deposition, which remains substantially overbroad. Indeed, Plaintiffs' revised 30(b)(6) deposition notice appears to seek *more* material than the prior version. For example, Plaintiffs enumerate seven aspects of the "design and features of 2.0" that they wish to cover, and then add that the request is "not limited to" those items. MDL ECF No. 28-4 at Topic No. 1. Plaintiffs also add a number of new topics and fail meaningfully to narrow other proposed 30(b)(6) topics. *See, e.g.*, MDL ECF No. 28-4 at Topic No. 3 (new request related to the cost of development). *Compare, e.g.*, MDL ECF No. 28-4 at Topic No. 2 ("Compatibility of the Keurig 2.0 Brewer with Competitive Portion Packs . . . ."), *with TreeHouse* ECF No. 47-4, Pl.'s Notice of Rule 30(b)(6) Dep. at Topic No. 2 ("Compatibility of the Keurig 2.0 Brewer with Non-Licensed Portion Packs . . . ."), *and* MDL ECF No. 28-4 at Topic 5 ("Keurig's share of Portion Pack sales in the United States, . . . and any efforts to recapture lost sales and/or share of Portion Packs."), *with TreeHouse* ECF No. 47-4, at Topic No. 5 ("Keurig's share of Portion Pack sales . . . in the United States, . . . and any efforts to recapture lost sales and/or share of Portion Packs."), *and* MDL ECF No. 28-4 at Topic 6 ("Keurig's training, policies and procedures regarding use of Competitive Portion Packs in

Keurig Brewers . . . . ”), *with TreeHouse* ECF No. 47-4, at Topic No. 10 (“Keurig’s training,

policies and procedures regarding use of Non-Licensed Portion Packs in Keurig Brewers . . . .”),

*and* MDL ECF No. 28-4 at Topic No. 7 (“The basis for Keurig’s claims regarding the quality,

consistency, flavor, safety, or compatibility of Competitive Portion Packs when used with Keurig

Brewers . . . . ”), *with TreeHouse* ECF No. 47-4, at Topic No. 11 (“The basis for Keurig’s claims

regarding the quality, consistency, safety, or compatibility of Non-Licensed Portion Packs when

used with Keurig Brewers . . . .”), *and* MDL ECF No. 28-4 at Topic 8 (“Keurig’s testing,

analysis or evaluation relating to the performance, safety and compatibility of Portion Packs in

current Keurig Brewers and the Keurig 2.0 Brewers . . . .”), *with TreeHouse* ECF No. 47-4, at

Topic No. 9 (“Keurig’s quality, consistency, safety, and/or compatibility testing and approval

process for licensed and Non-Licensed Portion Packs, as well as any testing actually performed

on Non-Licensed Portion Packs.”).[8]

     None of the cases that Plaintiffs cite allows such broad discovery.  In fact, courts *denied*

expedited discovery in two cases that Plaintiffs cite for the proposition that such discovery is

typically appropriate.  *See Mitra v. State Bank of India*, No. 03 CIV. 6331 (DAB), 2005 WL

2143144, at *7 (S.D.N.Y. Sept. 6, 2005); *Phila. Newspapers*, 1998 WL 404820, at *2-3.  In *Raza*

*v. City of New York*, No. 13 Civ. 3448-PKC-JMA, 2013 WL 6177392, at *11 (E.D.N.Y. Nov. 22,

2013), the court substantially limited the requested discovery to the “specific information

---

[8] The proposed 30(b)(6) deposition also largely repeats the overbroad document requests.
*Compare, e.g.*, MDL ECF No. 28-4 at Topic No. 1 (“[T]he default settings used by Keurig 2.0
Brewers . . . .”), *with* MDL ECF No. 28-3 at Request No. 14 (“Documents sufficient to show the
default settings used by the Keurig 2.0 Brewers.”), *and* MDL ECF No. 28-4 at Topic No. 3 (“The
cost of developing the Lock-Out in Keurig 2.0 . . . .”), *with* MDL ECF No. 28-3 at Request No. 7
(“Documents sufficient to show the cost of developing the Lock-Out in Keurig 2.0 . . . .”), *and*
MDL ECF No. 28-4 at Topic No. 9 (“Keurig’s plans to sell any brewer model(s) in addition to
the Keurig 2.0 brewer after the introduction of the Keurig 2.0 brewer . . . .”), *with* MDL ECF No.
28-3 at Request No. 11 (“Documents sufficient to show Keurig’s plans to sell any brewer
model(s) in addition to Keurig 2.0 Brewers after the introduction of the Keurig 2.0 Brewer . . . .”).

necessary to Plaintiffs' claims and [in order to] minimize the potential burden on Defendants."[9]
And, in the case perhaps most cited by Plaintiffs, *OMG Fidelity, Inc. v. Sirius Technologies, Inc.*,
239 F.R.D. 300, 304-05 (N.D.N.Y. 2006), a magistrate decision from the Northern District of
New York, the magistrate simply ruled that "exceedingly pointed" discovery could proceed
pending a motion to dismiss based on his "assessment as to the likelihood of defendant's total
success on a motion to dismiss" and his notation that matters concerning the pace of discovery
are entrusted under Fed. R. Civ. P. 26(d) to the "court's sound discretion." *Id.* at 302, 305.  The
discovery here is not "exceedingly pointed" and the Court has already ruled that general
discovery will not proceed pending the motion to dismiss.  In sum, the cases cited by Plaintiffs
provide the Court with no reason to grant their overbroad request for expedited discovery.

### III. Plaintiffs' Request For Reconsideration of the Stay of General Discovery Is Improper

    Competitor Plaintiffs also appear to be seeking to reopen this Court's decision to stay
general discovery pending a decision on the motion to dismiss.  Pl. Mem. at 16-23.  That
decision, taken at the June 19 status conference, was well within this Court's discretion and
appropriate for an antitrust litigation of this scope and size.  June 19 Hr'g Tr. 25:6-7; *see also id.*
31:15-16.  Indeed, Plaintiffs themselves acknowledged this decision in the Joint Electronic
Discovery Submission.  MDL ECF No. 41 at 31 (noting that "the Court has stayed discovery").

    Plaintiffs now characterize the Court's ruling as "completely unreasonable."  Pl. Mem. at
13.  But "[i]t is axiomatic that the trial court enjoys wide discretion in its handling of pre-trial
discovery," *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 51 (2d Cir. 2004) (Sotomayor, J.), and

---

[9] Similarly, in *Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996),
the court let the discovery go forward because it was "narrowly tailored," and in *Standard
Investment Chartered, Inc. v. National Ass'n of Securities Dealers, Inc.*, No. 07 Civ. 2014
(SWK), 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007), the court found that a Magistrate Judge
did not abuse her discretion.

may stay discovery pending its decision on a motion to dismiss, *see Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (*per curiam*).

Keurig will not address this issue in detail in the context of this briefing on Plaintiffs' motion for expedited discovery.  We note only that, particularly in light of the scope and complexity of this antitrust MDL, the Court's decision to stay discovery was well within its "considerable discretion" under Rule 26(c).  *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 Civ. 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (staying discovery in antitrust case pending motion to dismiss); *see, e.g.*, *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 07789 (LGS) (S.D.N.Y. Mar. 4, 2014) (ECF No. 145) (staying discovery "pending the resolution of the anticipated motion to dismiss" in antitrust action subject to Pilot Project)[10]; *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738, at *5-7 (S.D.N.Y. May 8, 2013) (staying discovery pending motion to dismiss in antitrust action subject to Pilot Project); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94 Civ. 2120 (LMM) (AJP), 1996 WL 101277, at *2 (S.D.N.Y. Mar. 7, 1996) (antitrust case noting discovery stay may be appropriate, *inter alia*, "where a party has filed (or sought leave to file) a dispositive motion such as a motion to dismiss").[11]  "Because an application to stay discovery pending the resolution of a dispositive motion is addressed to the

---

[10] Plaintiffs cite the Pilot Project Rules, MDL ECF No. 16, but these rules do not prevent the Court from staying discovery where doing so is appropriate.  The section cited by Plaintiffs, § II.A, begins "Unless the Court orders otherwise . . . ."

[11] This is the same approach taken in other jurisdictions with respect to large multidistrict antitrust litigations.  *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) (concluding "that first resolving the motions to dismiss is the better course" because "[a]fter full ventilation of the viability *vel non* of the complaint, we will all be in a much better position to evaluate how much, if any, discovery to allow"); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, No. 3:12-cv-03515-B (N.D. Tex. Feb. 26, 2013) (ECF No. 37) (staying discovery in antitrust MDL); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042-SFC (E.D. Mich. May 26, 2010) (ECF No. 152 at 10) (same).

court's discretion, there will rarely be controlling facts or precedents that would warrant

reconsideration." *Brooks v. Macy's, Inc.*, No. 10 Civ. 5304 (BSJ) (HBP), 2011 WL 1362191, at

*2 (S.D.N.Y. Apr. 8, 2011) (citation omitted).

## **CONCLUSION**

For all of these reasons, Keurig respectfully requests that this Court deny the Competitor

Plaintiffs' Motion for Expedited Discovery in its entirety.


Dated:  July 7, 2014
New York, New York

> CLEARY GOTTLIEB STEEN & HAMILTON
>
>
> By:    *s/ Lev L. Dassin*
>     **Lev L. Dassin**
>     One Liberty Plaza
>     New York, New York 10006
>     Telephone:   (212) 225-2790
>     *ldassin@cgsh.com*
>
>
>     **George S. Cary**
>     **Leah Brannon**
>     2000 Pennsylvania Avenue, NW
>     Washington, DC 20006
>     Telephone:   (202) 974-1500
>     *gcary@cgsh.com*
>     *lbrannon@cgsh.com*
>
>     BUCHANAN INGERSOLL & ROONEY
>
>     **Wendelynne J. Newton**
>     *wendelynne.newton@bipc.com*
>     One Oxford Centre
>     301 Grant Street, 20th Floor
>     Pittsburgh, Pennsylvania 15219
>     Telephone:   (412) 562-8932

*Attorneys for Defendant Keurig Green Mountain, Inc., f/k/a Green Mountain Coffee Roasters, Inc., and as successor to Keurig, Incorporated*