Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel. 415.442.1000
Fax: 415.442.1001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Dan Johnson, Jr.**
Partner
415.442.1392
djj@morganlewis.com

APPLICATION GRANTED
SO ORDERED _____
VERNON S. BRODERICK
U.S.D.J.  7/10/2014

July 9, 2014

**VIA ECF**

Honorable Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, MDL 2542 (S.D.N.Y.)

Dear Judge Broderick:

We respectfully request permission to file the attached reply to Keurig's opposition to Plaintiffs' motion for expedited discovery, which we felt was necessary to correct Keurig's misstatements concerning the relevant law and facts.

Sincerely,

By:  /s/ Daniel Johnson, Jr.
         Daniel Johnson, Jr. (admitted *pro hac vice*)

   MORGAN, LEWIS & BOCKIUS LLP
   One Market Spear Street Tower
   San Francisco, CA 94105-1126
   Tel: 415.442.1000
   Fax: 415.442.1001
   djjohnson@morganlewis.com

   *Attorney for JBR, Inc.* (d/b/a Rogers Family Company)

DB2/ 25203234.1

Almaty   Beijing   Boston   Brussels   Chicago   Dallas   Dubai*   Frankfurt   Harrisburg   Houston   Irvine   London   Los Angeles   Miami
Moscow   New York   Palo Alto   Paris   Philadelphia   Pittsburgh   Princeton   San Francisco   Tokyo   Washington   Wilmington
*In association with Mohammed Buhashem Advocates & Legal Consultants

# Morgan Lewis
COUNSELORS AT LAW

Hon. Vernon S. Broderick
July 9, 2014
Page 2


By: /s/ Aldo A. Badini

WINSTON & STRAWN LLP

Aldo A. Badini
Susannah P. Torpey
200 Park Avenue
New York, New York 10166
Tel: 212-294-6700
Fax: 212-294-4700
abadini@winston.com
storpey@winston.com

Dan K. Webb (admitted pro hac vice)
35 West Wacker Drive
Chicago, IL 60601
Tel: 312.558.5600
Fax: 312.558.5700
dwebb@winston.com

*Attorneys for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc.*


cc: All Counsel of record

Attachments

DB2/ 25203234.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                 :     ECF Case

IN RE: KEURIG GREEN MOUNTAIN SINGLE    :
SERVE COFFEE ANTITRUST LITIGATION        :     1:14-md-2542-VSB-HBP
                                                 :
                                                 :     MDL No. 2542
------------------------------------------------------------------X

JBR, INC. (D/B/A ROGERS FAMILY COMPANY),

                           Plaintiff                    1:14-cv-04242-VSB-HBP
       v.

KEURIG GREEN MOUNTAIN, INC. (F/K/A GREEN
MOUNTAIN COFFEE ROASTERS, INC. AND AS
SUCCESSOR TO KEURIG, INC.),

                           Defendant.
------------------------------------------------------------------X

TREEHOUSE FOODS, INC. BAY VALLEY FOODS,
LLC, AND STURM FOODS, INC.,

                           Plaintiffs                 1:14-cv-00905-VSB-HBP
       v.

GREEN MOUNTAIN COFFEE ROASTERS, INC. AND
KEURIG, INC.

                           Defendant.
------------------------------------------------------------------X

**COMPETITOR PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR EXPEDITED DISCOVERY**

DB2/ 25201591

Plaintiff JBR, Inc. (d/b/a Rogers Family Company) ("Rogers") and Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively "TreeHouse") (collectively the "Competitor Plaintiffs") submit this brief reply in support of their motion for expedited discovery (Dkt. No. 27) ("Pl. Mem.") to address the most serious misstatements of law and fact in Defendant Keurig Green Mountain, Inc.'s ("Keurig") opposition (Dkt. No. 48) ("Opp.").[1]

### I. Keurig Misstates the Law Regarding the Requirements for Obtaining Expedited Discovery, and Competitor Plaintiffs Have Met the Correct Standard.

#### A. Competitor Plaintiffs Do Not Concede that Finding of Irreparable Harm is Required to Obtain Expedited Discovery – It is Not.

Keurig incorrectly claims that "Plaintiffs *concede* that in order to obtain expedited discovery they must show a 'significant risk of irreparable harm.'" Opp. at 5 (emphasis added). Keurig seeks to rely upon an outdated standard that, as Competitor Plaintiffs explained in their opening papers, courts in this district have criticized and largely rejected because it improperly conflates the standard for expedited discovery with that required for preliminary injunction, which does require a showing of irreparable harm. *See* Pl. Mem. at 10-11. Instead, courts in this district "generally assess requests for expedited discovery under the 'flexible' standard of reasonableness and good cause' set forth in *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 327 (S.D.N.Y. 2005)," which does not require a showing of a significant risk of irreparable harm. *See id.* at 10-11.

#### B. In Any Case, Market Share and Loss of an Entire Line of Business are Sufficient to Show Irreparable Harm.

Keurig incorrectly characterizes Competitor Plaintiffs' claim of irreparable harm as being

---

[1] Lack of a response in this Reply to any argument offered by Defendant does not indicate agreement.

limited to the loss of business that can easily and adequately be compensated by monetary award and contends that an alleged "loss of market share" is not sufficient. Opp. at 5-6. Keurig's position is contrary to binding, Second Circuit law: "It is well-established that a movant's loss of current or future market share may constitute irreparable harm. . . . And if a plaintiff demonstrates, by pointing to a meaningful loss of market share, a likelihood of irreparable harm in one of the markets in which it operates, such a showing is not undermined by the fact that the plaintiff happens to operate in other markets as well." *Grand River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 67 (2d Cir. 2007) (rejecting district court's finding that movant's loss of current or future market share would not constitute irreparable harm, though ultimately holding that district court had not abused its discretion in denying request for preliminary injunction on other grounds). The cases upon which Keurig seeks to rely are not to the contrary and are easily distinguishable here, where damages would not be calculated based upon any contractual arrangements, the markets at issue are young and dynamic, and Rogers' OneCup business accounts for over 40% of its revenue. Opp. at 6; *see Jackson Dairy, Inc. v. H.H. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (where damages could be easily calculable because claims arose from the breach of a distributorship agreement); *Park West Radiology v. CareCore Nat'l LLC*, 240 F.R.D. 109, 113 (S.D.N.Y. 2007) (where business line at issue was new investment that was not "ongoing business representing many years of effort and the livelihood . . . of its owners."); *Dexter 345 Inc. v. Cuomo,* 633 F.3d 59, 63 (2d Cir. 2011) (finding, without a discussion of market share, that potential loss of one business line was not sufficient to establish irreparable harm where there was a long history from which to establish monetary damages); *Lanvin, Inc. v. Colonia, Inc.,* 739 F. Supp. 182, 194 (S.D.N.Y. 1990) (finding that "10% of the business at issue is … too low to demonstrate irreparable harm").

Moreover, Keurig does not (and could not) address that Rogers has alleged – and submitted testimonial evidence to support – that the loss of Rogers' OneCup business would result in the loss of over 40% of the company's revenue and risk the ongoing viability of the company, which clearly constitutes irreparable harm. Pl. Mem. at 9.

Although Keurig claims that Competitor Plaintiffs will remain free to sell their Portion Packs to users of the installed base through internet retailer Amazon.com, Opp. at 7,[2] Keurig does not (and cannot) dispute that Competitor Plaintiffs already are foreclosed from the office market as a result of Keurig's exclusive dealing contracts and have begun to be shut out of the important retailer segments of the market as a result of Keurig's threats of a lock-out in the forthcoming 2.0, which Keurig publicly claims "will replace [Keurig's] current lineup of both K-Cup and Vue brewers" by 2015. Pl. Mem. at 6. Thus, by 2015, consumers will have no choice of whether they prefer the current line-up of Keurig brewers or the Keurig 2.0 brewer, and once consumers have purchased the Keurig 2.0 brewers, they will be forced to purchase Keurig portion packs, regardless of which portion pack consumers actually prefer.[3] Indeed, even consumers in the installed base who intend to continue using their current Keurig brewers for as long as they last will be forced to purchase Keurig portion packs when shopping in stores Keurig has persuaded not to carry Competitive Portion Packs through the threat of the lock-out feature. Based on this campaign, Rogers already has lost and continues to lose significant customers in

---

[2]  Although Keurig claims that Competitor Plaintiffs retain the ability to sell to consumers "through myriad distribution channels," it fails to specify or offer any evidence to support this conclusory, self-serving contention.

[3]  Even if consumers ultimately prefer the Keurig 2.0 brewer to other single-serve brewers on the market, Keurig may not leverage its monopoly in the brewer market to maintain its monopoly in another market – the portion packs market. *See In re Evic Class Action Litig.,* No. 00-civ-3811-RMB, 2002 U.S. Dist. LEXIS 14049, at *55 (S.D.N.Y. Jul. 31, 2002) (recognizing that the Second Circuit has affirmed the viability of monopoly leveraging claims).

the retail markets, as these retailers are required to make long-term purchasing decisions based upon future market conditions.  Pl. Mem. at 6-7.

Keurig's actions thus already have resulted in substantial foreclosure of the market to Competitor Plaintiffs, which will be significantly increased if Keurig's anticompetitive conduct is not enjoined.  That Competitor Plaintiffs may still have certain less effective channels through which it may reach some consumers is an insufficient defense under the antitrust laws and does not preclude a showing of irreparable harm.[4]  *See United States v. Dentsply Int'l, Inc.,* 399 F.3d 181, 188 (3d Cir. 2005) (finding monopolist's exclusive dealing arrangements anticompetitive even though competitors had ability to reach consumers through direct sales).

## II. Competitor Plaintiffs' Discovery is Urgent and Time-Sensitive.

Keurig's statement that "Plaintiffs [ ] cannot demonstrate that the claimed urgency of their need for discovery outweighs harm to Keurig" is unfounded.  Competitor Plaintiffs have demonstrated that they already have lost business and continue to lose business.  Pl. Mem. at 6-7.  Keurig relies on the fact that "[Rogers] did not file its motion for preliminary injunction until two months after TreeHouse filed its complaint.  Opp. at 14.  In fact, Rogers' preliminary injunction was filed less than two weeks after it first learned of its loss of a significant customer, grocer giant Kroger, as a result of Keurig's threats based upon the lock-out feature of Keurig 2.0.  Pl. Mem. at 6-7.

Competitor Plaintiffs' sense of urgency stems from the imminent introduction of the

---

[4]  Keurig's contention that "Plaintiffs also fail to state a monopolization claim because they concede that their 'sales have grown'" *(*Opp. at 10) is a misstatement of the law.  Courts recognize that a defendant may still have and abuse its monopoly power (and indeed have more incentive to do so) where it faces declining market share.  *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 795-96 (1946) (finding monopolization despite decline in market share from 90.7% to 68%); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 273 n.11 (2d Cir. 1979) (declining market share not dispositive).

Keurig 2.0 and the extensive marketing campaign and promotion Keurig already is undertaking to promote the lock-out feature of Keurig 2.0.  Keurig's statement that "Plaintiffs never explain exactly what is going to happen when the Keurig 2.0 brewer arrives on retail shelves, how this will cause irreparable injury, and how the particular discovery sought would avoid that" is preposterous.  Opp. at 13.  Rogers has provided sworn testimony that retailers are already pulling business away from Rogers due to the impending introduction of the Keurig 2.0 brewer.  Compl. Pl. Mem. at 6-7.  Once the Keurig 2.0 brewer arrives on retail shelves, inevitably additional retailers and distributors will begin purchasing only portion packs that are compatible with the Keurig 2.0 brewer.  As explained above, the Keurig 2.0 brewer causes irreparable harm due to Competitor Plaintiffs' loss of market share to the extent of risking business viability, and the expedited discovery would avoid irreparable harm by supporting a preliminary injunction that enjoins Keurig from introducing the lock-out feature.

### III. Competitor Plaintiffs' Requests are Reasonable, Limited, and Narrowly Tailored to Issues Necessary to Resolve a Preliminary Injunction Motion.

Keurig also incorrectly states that Competitor Plaintiffs' request for expedited discovery "has little to do with avoiding any identified harm."  Opp. at 13.  During a preliminary injunction hearing, a court "must consider three factors: "(1) irreparable harm absent injunctive relief, (2) either a likelihood of success on the merits or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Mister Softee, Inc. v. Tsirkos,* No. 14-civ-1975-LTS, 2014 WL 2535114, at *4 (S.D.N.Y. Jun. 5, 2014).  The discovery sought is, in fact, narrowly tailored to discover evidence needed to establish irreparable harm or the likelihood of success on the merits in connection with the harm caused by (1) Keurig's promotion and implementation of the lock-out feature in the Keurig 2.0, (2) Keurig's

enforcement of exclusive anticompetitive agreements, and (3) Keurig's statements to potential customers and/or consumers that Competitive Portion Packs will damage Keurig brewers.[5]

### A. Documents Requests

Keurig's restatement of the allegedly overbroad document requests is inaccurate. Each of Competitor Plaintiffs' requests seeks a discrete body of documents directly relevant to the preliminary injunction elements and would not require Keurig to undertake broad search and review of its electronic databases. For example, Keurig states that Competitor Plaintiffs request "Keurig's training, policies, and procedures regarding any communications about competition in "Portion Packs," *see* Opp. at 13, yet the actual request is for "documents *sufficient to show* Keurig's training, policies, and procedures regarding communications concerning *Competitive Portion Packs*," *see* Dkt. No. 28-3 at Req. No. 3. These requests only seek information relating to how Keurig handles communications relating to Competitive Portion Packs, including through false, disparaging statements.

Keurig criticizes Competitor Plaintiffs for "not meaningfully narrow[ing] many of these requests and, in some cases, [ ] actually expand[ing] them," Opp. at 16, yet fails to acknowledge that the initial requests were served only on behalf of Rogers, whereas the revised requests reflect requests on behalf of TreeHouse and Rogers and thus significantly reduce the burden and scope than would be required if Competitor Plaintiffs served separate requests. Moreover, Competitor Plaintiffs have significantly narrowed the document requests. *Compare* TreeHouse Dkt. No. 47-4, Req. Nos. 2 and 3 *with* Dkt. No. 28-3, Req. No. 3. In arguing that the requests

---

[5] Keurig's arguments that certain requests are "entirely untethered to the 2.0," Opp. at 17, ignores the fact that Rogers seeks a preliminary injunction for not only the lock-out technology of the Keurig 2.0, but also the anticompetitive conduct related to Keurig's exclusive agreements and Keurig's disparaging statements about Rogers' products. Those requests that Keurig describes as "true blunderbuss" relate specifically to these central preliminary injunction issues.

should be further narrowed, Keurig fails to allege that the requested discovery would be burdensome to provide.

For example, Keurig complains that Competitor Plaintiffs seek a "physical working sample of each model, version, and/or prototype of the Keurig 2.0 Brewer," Opp. at 16-17, yet this request is necessary to reveal evidence of Keurig's development of its new brewer and any earlier versions that may not have included the lock-out feature or included a mechanism for deactivating it.

Similarly, Keurig states that a request for pricing documents from 2008 to the present is "wholly irrelevant to the subject matter of the potential preliminary injunction." Opp. at 17. Inconsistently, however, Keurig has argued that the Competitor Plaintiffs have failed properly to define a relevant market, an issue which can be proven, in part, through this pricing data. Lastly, Keurig challenges the request "relating to the testing and evaluation of the 'performance' of *any type* of Portion Pack in Keurig 2.0 Brewers" stating that this "could effectively encompass any testing of the Keurig 2.0 brewer." *Id.* Keurig has no basis for stating that this request "extends well beyond material needed for Plaintiffs' potential preliminary injunction motion." As indicated in the request, Competitor Plaintiffs are interested solely in the analysis of performance of Portion Packs in the Keurig 2.0 brewer and seeks such analysis for a meaningful comparison of the performance between K-Cups and Competitive Portion Packs and to challenge Keurig's statements to the market challenging the safety and quality of Competitive Portion Packs.

### B. 30(b)(6) Deposition

In an effort to lessen the burden of discovery on Keurig, Competitor Plaintiffs decided to forego interrogatories and focus on a 30(b)(6) deposition of narrow scope. Contrary to what Defendant suggests, 30(b)(6) depositions are commonly used in addition to document requests to

seek further clarification of documents produced and obtain additional information regarding the topics not contained in the documents. Tellingly, Keurig makes no argument that these deposition topics are irrelevant to preliminary injunction issues.

### IV. Keurig Has Failed to Support a Blanket Stay of Discovery Under the Case Law

Keurig fails entirely to respond to Competitor Plaintiffs' arguments opposing a blanket stay of discovery pending the as yet unfiled motions to dismiss. Rather, Keurig responds to a "straw man" argument that the Court may *never* stay discovery. Competitor Plaintiffs never made that assertion; rather, we showed that Keurig has not met *its* burden to support a blanket stay here. *See* Pl. Mem. at 16-23. Specifically, Keurig has failed to show that the requisite "good cause" exists for a stay based on: (1) a strong showing that Plaintiffs' claims lack merit; (2) the breadth of the discovery demanded and the burden of responding to it; and (3) the risk of unfair prejudice to the Plaintiffs. *See, e.g.*, *Kassover v. UBS A.G.*, No. 08-cv-2753-LMM-KNF, 2008 WL 5395942, at *4 (S.D.N.Y. Dec. 19, 2008); Pl. Mem. at 18-23. The simple fact that stays have been issued in other cases does not alleviate Keurig's burden of proof under the "particular circumstances and posture" here. *Hong Leong Finance Ltd. v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (Gorenstein, G.) (citation omitted).[6] Nor does Keurig cite a single case to refute the authority presented by Plaintiffs demonstrating that stays of discovery pending motions to dismiss in this Court are not "automatic" and that Keurig bears the burden of showing good cause for the stay. *See, e.g.*, *Waltzer v. Conner*, No. 83-cv-8806-SWK, 1985 WL 2522, at *1 (S.D.N.Y. Sept. 12, 1985) ("The burden of establishing good cause lies

---

[6] The cases Keurig cites from other jurisdictions are not relevant here, where the S.D.N.Y. Pilot Project *presumes* that at least documentary discovery will go forward pending a motion to dismiss. *See* In re: Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York at II.A.

with the party seeking" the stay.); Pl. Mem. at 18-19.[7]

Keurig also argues that "reconsideration" of this Court's decision to stay discovery pending the motions to dismiss, Opp. at 20, is "unwarranted," relying on *Brooks v. Macy's, Inc.*, No. 10 Civ. 5304 (BSJ) (HBP), 2011 WL 1362191, at *2 (S.D.N.Y. Apr. 8, 2011). Opp. at 22. But that decision followed a fully briefed motion to stay discovery. Keurig has not filed any motion for a stay and has not made any showing that it met its burden to "establish good cause" to stay discovery. *See Moore v. Painewebber*, No. 96-cv-6820-JFK, 1997 WL 12805, at *1 (S.D.N.Y. Jan. 14, 1997). Keurig, moreover, cannot plausibly argue that the "considerable discretion" enjoyed by the Court in handling pre-trial discovery does not extend to a determination of whether Keurig has satisfied its burden to justify a stay of discovery under the governing case law. Opp. at 21.

## CONCLUSION

For all the foregoing reasons, this Court should grant the Competitor Plaintiffs' Motion for Expedited Discovery.

---

[7] In *In re Term Commodities Cotton Futures Litigation*, for example, the Court held that defendants met their burden to support a stay because the stay would be very short and responding to plaintiffs' discovery requests would require determination of privilege claims as to over 90,000 pages of documents. No. 12 Civ. 5126, 2013 WL 1907738, at *6-7 (S.D.N.Y. May 8, 2013). Further, the parties had not yet negotiated a protective order to address defendants' confidentiality concerns. *Id.* at *6. In contrast, Keurig has not asserted any privilege objections and the Court has already ordered both the protective order (*TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 1:14-cv-00905, Dkt. No. 49) and ESI Protocol (*In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 1:14-md-2542, Dkt. No. 41).

| | |
|---|---|
| Dated: July 9, 2014 | Respectfully submitted, |
| | MORGAN, LEWIS & BOCKIUS LLP |
| | By: /s/ Daniel Johnson, Jr.<br>Daniel Johnson, Jr. (admitted *pro hac vice*) |
| | One Market, Spear Street Tower<br>San Francisco, CA 94105-1126<br>Tel: 415.442.1000<br>Fax: 415.442.1001<br>djjohnson@morganlewis.com |
| | *Attorneys for Plaintiff JBR, Inc. (d/b/a Rogers Family Company)* |
| | WINSTON & STRAWN LLP |
| | By: /s/ Aldo A. Badini<br>Aldo A. Badini<br>Susannah P. Torpey |
| | 200 Park Avenue<br>New York, New York 10166<br>Tel: 212-294-6700<br>Fax: 212-294-4700<br>abadini@winston.com<br>storpey@winston.com |
| | Dan K. Webb (admitted *pro hac vice*)<br>35 West Wacker Drive<br>Chicago, IL 60601<br>Tel: 312.558.5600<br>Fax: 312.558.5700<br>dwebb@winston.com |
| | *Attorneys for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc.* |