# EXHIBIT D

# Buchanan Ingersoll & Rooney PC
Attorneys & Government Relations Professionals

Wendelynne J. Newton
412 562 8932
wendelynne.newton@blpc.com

One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
T 412 562 8800
F 412 562 1041
www.buchananingersoll.com

August 1, 2014

**VIA ELECTRONIC MAIL**

Daniel Johnson, Jr.
Morgan, Lewis & Bockius LLP
One Market Spear Street Tower
San Francisco, CA 94105-1126

Aldo A. Badini
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

Re: *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., MDL* No. 2542; Expedited Discovery

Dear Dan and Aldo:

In accordance with the Court's July 23, 2014 Order on Expedited Discovery (Order No. 3), we are producing today, electronically via a password secured File Transfer Protocol ("FTP") link, Keurig Green Mountain's document production in this matter. This production includes documents that are responsive to the eight items set forth in the Court's Order, which are labeled KGM00000001 through KGM00000865. Where applicable, materials produced have been designated "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" under the Protective Order in this matter.

Item #5 asks for documents sufficient to show whether the "Lock-Out" feature on the Keurig 2.0 Brewer[1] "can be temporarily or permanently turned off, overridden, or suspended." It cannot be, other than through investment in a redesign of the product itself. There is no separate "Lock-Out" feature that can be "switched off" using an "unlock code" or otherwise. *See* June 19 Tr. at 24 (counsel for TreeHouse speculating that perhaps "the customer can turn it off and [Keurig] can give it an unlock code to turn it off.").

Item #6 asks for documents sufficient to show the methodology and results of Keurig's testing and comparisons between the performance of K-cup packs and unlicensed portion packs in Keurig 2.0 Brewers, including "Project Earthquake" and its findings. Keurig was unaware of any initiative or project with the name of "earthquake," and we therefore asked you for a call to provide further information so that we could try to find responsive documents, if any, and you were good enough to provide such information.

---

[1] Here and in connection with all of our responses, we define Keurig 2.0 Brewer consistent with footnote 5 of the Court's order, namely "the electronic brewing system that will be marketed for sale," and not "any other models, versions or prototypes of the electronic brewing system."

Case 1:14-md-02542-VSB   Document 78-4   Filed 08/07/14   Page 3 of 3

Daniel Johnson, Jr.
Aldo A Badini
August 1, 2014
Page - 2 -

    Based on your information, we were able to locate a windows folder of an ex-employee, Aaron Oakes, which he apparently titled "Earthquake" himself for his information. This folder related to a project he was working on with respect to a company initiative as part of Beverage Research & Development to understand dissolution and "short brews" (delivery of less than the expected volume of beverage) in cocoa. This initiative concerned the original generation Keurig brewer and early prototypes of technology that was subsequently incorporated into the Keurig 2.0 Brewer. The project applied analytical test methods to test the physical properties of cocoa powder in an attempt to analyze the causes of dissolution problems and short brews. The Beverage R&D team wanted to explore short brews in a systematic way, and to determine the properties of cocoa powder that best aide in clean brewing (evacuation) and prevention of short brews. The project looked at different commercially produced hot cocoa products. Tests were used to measure various physical and chemical properties to try to predict evacuation performance and short brews.

    Ultimately, the project did not provide useful insights with respect to cocoa powders. A draft report related to the project was never finalized and was not presented to management. The last draft version of this report was prepared in March 2014.

    This project did not involve the Keurig 2.0 Brewer. Accordingly, the analysis of cocoa dissolution is not responsive to your request. We have nonetheless produced the draft report Mr. Oakes began to compile before leaving the company, entitled "Understanding Physiocochemical Properties of Unfiltered Hot Cocoa Powders and Their Impact on Evacuation and Short Brew Performance," so that you can yourself see that the effort had nothing to do with testing of unlicensed portion packs in the Keurig 2.0 Brewer. With respect to item #6 otherwise, we are producing documents related to the performance of portion packs in Keurig 2.0 Brewers.

    If you have any questions or concerns, please feel free to contact me.

    Sincerely,

    Wendelynne J. Newton

WJN/blb

cc:    Lev L. Dassin
       George S. Cary
       Leah Brannon
       Danielle P. Mindlin
       (all via email)