Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel. +1.415.442.1000
Fax: +1.415.442.1001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Daniel Johnson, Jr.**
Partner
+1.415.442.1392
djjohnson@morganlewis.com

August 15, 2014

VIA EMAIL

Hon. Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542

Dear Judge Broderick:

Plaintiff JBR, Inc., d/b/a Rogers Family Co. ("Rogers") seeks an order compelling the immediate production of Defendant Keurig Green Mountain, Inc.'s ("Keurig") source code for the Keurig K300, K400 and K500 Keurig 2.0 Brewers, and compelling Keurig to produce Mr. Sullivan for the completion of his 30(b)(6) deposition.

**Production of Source Code**

Through repeated emails and telephone conversations it has become clear that the Keurig 2.0 Brewer source code is relevant and responsive; indeed, it is the only document that can fully explain how the Keurig 2.0 Lock Out works. Yet Keurig has refused to produce it, instead muddying the waters by producing documents which, by Keurig's own admission, were never finalized, and explaining that the brewer operates in a way that is contrary to empirical testing. Moreover, Keurig suggests, without any basis, that Rogers only seeks these documents for purposes of harassment. To the contrary, Rogers' methodical consideration of the incomplete draft documents proffered by Keurig, leads to the inescapable conclusion that source code must be promptly produced.

There is little doubt that the source code is relevant. "Relevance, for purposes of discovery, is an extremely broad concept" and source code does not escape application of this standard. *Alexander Interactive, Inc. v. Adorama, Inc.*, 12 CIV. 6608 PKC JCF, 2013 WL 628511, *4 (S.D.N.Y. Dec. 4, 2013) (internal citations omitted) (ordering production of source code). Here, the Court ordered production of "Request No. 8: Documents sufficient to show **how** the Keurig 2.0 Brewers are **programmed** to implement the Lock-Out." Order 3, 4



Hon. Vernon S. Broderick, U.S.D.J.
August 15, 2014
Page 2

(emphasis added).¹  As such, the source code is plainly relevant, and is, indeed, the only document that can be certain to show how the brewers are *actually* programmed, as opposed to how they are marketed.

None of the documents produced to date by Keurig are "sufficient to show" the "how" of the Keurig 2.0 Brewers' programming or operation.  Keurig points to the Specification Documents and the "Software Design Document," but both these documents are incomplete on their face.  The Brewer Specification states ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Ex. 2 at 13.  Similarly, the "Software Design Document" describes ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Ex. 3 at 35.  When asked about this CBT document, Mr. Sullivan explained that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 1 at 75:5) and Keurig's counsel explained that while the documents "contemplated that the CBT Specification would be drafted…those specifications were never finalize." Ex. 4 (Email from Wendelynne Newton on August 5, 2014).  The draft text sent was two pages, and lacked a discussion of the ink characteristics that trigger brewing, or the purpose of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  See Ex. 5.³

Keurig's intransigence at the meet and confer has necessitated this Court's intervention.  At the Meet and Confer, the Defendant suggests that Rogers may rely on its expert declarations from Mr. Stewart and Dr. Chaterjee, but this suggestion rings hollow, as Keurig did not state that it was willing to concede the accuracy of those reports.  Nor would it, as Mr. Stewarts opinion directly refutes Mr. Sullivan's deposition testimony.  *See*, *e.g.*, Ex. 6 at ¶ 33 (Decl. of Larry Stewart).  In addition, Keurig's suggestion at the meet and confer that this request is to "harass" falls far from the mark.  Rogers has worked diligently to resolve this issue without the Courts intervention.⁴  This request is only being made after Rogers first closely reviewed the

---

¹ The source code is also relevant and responsive to Request No. 2 ("…documents sufficient to show the design and specifications for or related to the detection of the type of Portion Pack used and/or the rejection of Competitive Portion Packs."); Request No. 4 ("Documents sufficient to show what information Keurig 2.0 Brewers will utilize in brewing beverages, how any of that information is obtained by the Keurig 2.0 Brewer from Portion packs… and how any of that information will be utilized by the Keurig 2.0…"); Request No. 5 ("Documents sufficient to show whether, and if so, how and by whom, the Keurig 2.0 Brewer's Lock-Out can be temporarily or permanently turned off, overridden, or suspended").
² There is no doubt that "CBT" ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
Ex. 1 at 151:18-25 (Depo. of Mr. Sullivan) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Likewise, the schematic drawings Keurig points to are inadequate; the diagrams show the existence of sensors and switches, but only the software can explain *how* those inputs are used by the brewer.
⁴ On Sunday, August 3, after only two days review of the productions, Rogers first noted that additional details on the CBT sensor would be required.  *See* Ex. 7 (email from Ms. Naranjo to Ms. Newton, dated Aug. 3).  Keurig produced the incomplete CBT Specification on Tuesday, August 5th.  *See* Ex. 4.  The depositions occurred on Thursday and Friday, and on Saturday evening, August 9th, Rogers requested that source code be produced.  *See* Ex. 8 (email from Mr. Minne to Ms. Newton, dated Aug. 8).  Two follow-up emails were sent on August 11 and August 14th.  *See* Exs. 9 and 10 (emails from Mr. Minne to Ms. Newton, dated Aug. 11 and 14).  On Thursday afternoon,

Hon. Vernon S. Broderick, U.S.D.J.
August 15, 2014
Page 3

**Morgan Lewis**
COUNSELORS AT LAW

productions by Keurig, requested non-source code documents it hoped would be sufficient, deposed Keurig's witnesses, whose testimony was flatly contradicted by expert observations, and reached the inescapable conclusion that only the source code documents would be sufficient to explain the brewer's operation.

**Continued Deposition**

Keurig is refusing to make Mr. Sullivan available for the continuation of his deposition, despite the fact that they have produced thousands of pages of new documents since his deposition, many of which are directly relevant to the topics he was designated to testify on. Over an hour of time was left out of the seven hours Keurig allowed for his deposition, despite the fact that he was designated to speak on two out of the three topics allowed. Just as the Court allowed for the continuation of Mr. Manly's deposition due to newly produced documents, it should order the continuance of Mr. Sullivan's for the same reason.

In its initial production, Keurig produced a single document relevant to Project Earthquake. After the deposition of Mr. Sullivan was adjourned, Keurig produced 1,482 new files regarding Project Earthquake. *See* Ex. 12 (Letter to counsel from Ms. Newton, dated August 9, 2014). These included early drafts of the Project Earthquake reports that flatly state ███████████████████████████████████████████████ Ex. 13 (KGM00005816). This acknowledgment was removed from the final draft, and Mr. Sullivan testified firmly that ████████████████████████████████████████ Ex. 1 at 176:4-5. Rogers has a right to question Mr. Sullivan about these and other late-produced documents that are relevant to his depositions topics, namely, "The reasons for implementation of the Lock-Out in Keurig 2.0" and "…any comparisons between the performance the performance of K-Cups and Competitive Portion Packs in such brewers, and including, without limitation, information relating to 'Project Earthquake' and its findings."

Your Honor previously ordered the continuation of Mr. Manly's deposition to allow for consideration of newly produced documents. That order is well supported. *See, e.g., Wesley v. Muhammad*, 05 CIV. 5833 GEL MHD, 2009 WL 1490607, *5 (S.D.N.Y. May 20, 2009) ("while defendants' delay in producing documents may have interfered with the completeness of depositions, plaintiff will be free to reopen any depositions for which he deems the newly produced documents to be a relevant source of questions."); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 03 CIV.7037 PKC MHD, 2005 WL 459267, *14-15 (S.D.N.Y. Feb. 24, 2005) (reopening depositions due to newly produced documents). A similar order is appropriate here.

The parties met and conferred for half an hour on August 16 and were unable to resolve these issues. Given the expedited process, Rogers requests an informal hearing on August 19.

---

Keurig formally refused to produce source code. *See* Ex. 11 (email from Ms. Newton to Mr. Minne, dated Aug. 14). The parties met and conferred the following day, leading to this letter.

Hon. Vernon S. Broderick, U.S.D.J.
August 15, 2014
Page 4

**Morgan Lewis**
COUNSELORS AT LAW

Sincerely,

*s/ Daniel Johnson, Jr.*

Daniel Johnson, Jr.

cc:(Via email) Counsel of Record