UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

IN RE: KEURIG GREEN MOUNTAIN    :    ECF Case
SINGLE SERVE COFFEE ANTITRUST   :
LITIGATION   :    1:14-md-2542-VSB-HBP
  :
  :    MDL No. 2542
  :
  :

------------------------------------------------------- X

JBR, Inc. (D/B/A ROGERS FAMILY   :  1:14-cv-04242-VSB-HBP
COMPANY),   :
        Plaintiff,   :
    v.   :
KEURIG GREEN MOUNTAIN, INC.   :
(F/K/A GREEN MOUNTAIN COFFEE   :
ROASTERS, INC. AND AS SUCCESSOR   :
TO KEURIG, INC.),   :
        Defendant.   :

------------------------------------------------------- :
  :
  :
  :
  :
  X

## REPLY BRIEF IN SUPPORT OF PLAINTIFF JBR, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................... 1

II.  ARGUMENT ............................................................................................................. 1

    A.   Rogers Will Succeed On The Merits ................................................................. 1

        1.   Keurig Has Violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ........................................................................ 1

            a.   Keurig's False Statement That The 2.0 Brewers Read The Lid Of A Portion Pack To Deliver The Perfect Cup ..................... 3

            b.   Keurig's False Statement That The Consumer Benefit Technology Selects Different Recipes ........................................... 4

            c.   Keurig's False Statement That The Consumer Benefit Technology Affords Consumer Safety ......................................... 4

            d.   Keurig's False Statements That Unlicensed Portion Packs Are Not Designed For the 2.0 Brewer ......................................... 5

            e.   ███████████████████████████████████ .................................... 6

            f.   Keurig's Undisputed Violations of the UCL Warrant A Preliminary Injunction ................................................................. 7

        2.   Keurig's Conduct Also Violates the Antitrust Laws ............................... 7

            a.   Keurig Has Monopoly Power In The Single-Serve Brewer Market and Portion Pack Market ............................................... 7

            b.   Keurig's Lock-out Is Anticompetitive And Has No Procompetitive Benefit ............................................................. 10

            c.   Rogers Has Antitrust Standing ................................................... 12

    B.   Rogers Has Shown Irreparable Harm ............................................................. 12

        1.   Current Installed Base of 1.0 Brewers Is NOT Sufficient to Sustain Rogers' OneCup Business ........................................................ 12

        2.   Rogers' Substantial Loss of Its OneCup Business Is Enough to Show Irreparable Harm ....................................................................... 14

        3.   Keurig Grossly Overstates Rogers' Continued Viability ..................... 14

        4.   Keurig Has No Duty To Mitigate ......................................................... 16

    C.   The Balance Of Harms Weighs In Favor Of An Injunction ............................. 17

    D.   A Preliminary Injunction Is In The Public Interest ......................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Grape Growers v. Bronco Wine Co.*,
203 Cal. App. 3d 432 (1988) ...........................................................................2

*Allied Orthopedic Appliances, Inc v. Tyco Health Care Group LP*,
592 F.3d 991 (9th Cir. 2010) ..........................................................................11

*Arbitron Co. v. Phoenix Broad. Corp.*,
No. 97-civ-4355, 1997 WL 452020 (S.D.N.Y. Aug. 6, 1997) ..............................14

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979)............................................................................10

*C.R. Bard, Inc. v. M3 Systems, Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)........................................................................10

*Cal. Computer Prods., Inc. v. Int'l Bus. Machs. Corp.*,
613 F.2d 727 (9th Cir. 1979) ...........................................................................11

*Choi v. United States*,
944 F. Supp. 323 (S.D.N.Y. 1996) ...................................................................14

*Clayworth v. Pfizer, Inc.*,
49 Cal. 4th 758 (2010) .....................................................................................2

*Day v. AT & T Corp.*,
63 Cal. App. 4th 325 (1998) ..........................................................................2, 7

*Dexter 345 Inc. v. Cuomo*,
663 F.3d 59 (2d Cir. 2011)..............................................................................14

*Doran v. Salem Inn*,
422 U.S. 922 (1975).........................................................................................14

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
504 U.S. 451 (1992).........................................................................................9

*Fishman v. Estate of Wirtz*,
807 F.2d 520 (7th Cir. 1986) ...........................................................................17

*Franklin Fueling Systems, Inc. v. Veeder-Root Co.*,
2009 WL 2462505 (E.D. Cal. 2009).................................................................2

*Freedom Holdings, Inc. v. Spitzer*,
447 F. Supp. 2d 230 (S.D.N.Y. 2004)..................................................................13

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007)...................................................................................12

*Hack v. President & Fellows of Yale College*,
237 F.3d 81 (2d Cir. 2000)....................................................................................9

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
423 F.3d 374 (3d Cir. 2005)...................................................................................9

*In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*,
257 F. Supp. 2d 717 (S.D.N.Y. 2003).....................................................................1

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979)...................................................................................14

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
Case No. 14-cv-0677, Dkt. No. 34 (E.D. Cal. Apr. 24, 2014)..............................18

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002) ...........................................................................................2

*Lanvin Inc v. Colonia*,
739 F. Supp. 182 (S.D.N.Y. 1990) .......................................................................16

*Litton Sys., Inc. v. Am. Tel. & Tel. Co.*,
700 F.2d 785 (2d Cir. 1983)..................................................................................17

*MedImmune, Inc. v. Genentech, Inc.*, SACV03-2567 MRP(CTX), 2008 WL 616250, at
*4 (C.D. Cal. Mar. 6, 2008) .................................................................................16

*Menowitz v. Brown*,
991 F.2d 36 (2d Cir. 1993).....................................................................................1

*Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*,
143 F.3d 800 (3d Cir. 1998)..................................................................................16

*Park W. Radiology v. Carecore Nat'l LLC*,
240 F.R.D. 109 (S.D.N.Y. 2007) ..........................................................................14

*People v. First Federal Credit Corp.*,
104 Cal. App. 4th 721 (2002) .................................................................................3

*Pollis v. New Sch. for Soc. Research*,
829 F. Supp. 584 (S.D.N.Y. 1993) .......................................................................16

*Pom Wonderful LLC v. Purely Juice, Inc.*,
  2008 U.S. Dist. LEXIS 55426 (C.D. Cal. 2008)....................................................................3, 7

*Regents of University of California v. American Broadcasting Cos.*,
  747 F.2d 511 (9th Cir. 1984) ..............................................................................................18

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
  642 F. Supp. 2d 167 (S.D.N.Y. 2009)..................................................................................18

*SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*,
  11 F. Supp. 2d 166 (D. Mass. 1998) .....................................................................................9

*Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers' Notch Mgmt. Co.*,
  414 F. App'x 372 (2d Cir. 2011) ..........................................................................................9

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ..............................................................................................13

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ..............................................................................................7

*Tom Doherty Assocs., Inc. v. Saban, Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995)....................................................................................................13

*Triebwasser & Katz v. American Tel. & Tel. Co.*,
  535 F.2d 1356 (2d Cir. 1976)..............................................................................................16

*Tucker Anthony Realty Corp. v. Schlesinger*,
  888 F.2d 969 (2d Cir. 1989)................................................................................................14

*U.S. Airways Grp. v. British Airways PLC*,
  989 F. Supp. 482 (S.D.N.Y. 1997) ......................................................................................12

*United States v. Microsoft*,
  253 F.3d 34 (D.C. Cir. 2001) ..............................................................................................10

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
  587 F.3d 464 (1st Cir. 2009)...............................................................................................18

*Verizon Comm'ns, Inc. v. Law Offices of Curtis V. Trinko LLP*,
  540 U.S. 394 (2004).............................................................................................................11

*Visioneer, Inc. v. Umax Techs., Inc.*,
  1998 U.S. Dist. LEXIS 23431 (N.D. Cal. 1998) ...................................................................7

*Warner Bros. v. Gay Toys, Inc.*,
  658 F.2d 76 (2d Cir. 1981)..................................................................................................14

*Xerox Corp. v. Media Sciences, Inc.*,
  660 F. Supp. 2d 535 (S.D.N.Y. 2009) ("Xerox III") ............................................8, 9

*Xerox Corp. v. MediaSciences Int'l Inc.*,
  511 F. Supp. 2d 372 (S.D.N.Y. 2007)...........................................................................10

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................................1, 2, 3, 7

Cal. Bus. & Prof. Code § 17203 ......................................................................................2

**OTHER AUTHORITIES**

Fed. R. Evid. 801 ...........................................................................................................11

Plaintiff JBR, Inc., d/b/a Rogers Family Company ("Rogers"), submits this Reply Brief in Support of its Motion for a Preliminary Injunction.

## I.   INTRODUCTION

Rogers has read and reread Keurig's opposition, but Keurig has failed to make any arguments that would defeat this motion for a preliminary injunction. Keurig makes the outrageous argument that Rogers' Section 17200 claims fail if there is no antitrust violation. Nothing could be further from the truth. Keurig does not even address the numerous willfully false statements Rogers seeks to enjoin. Keurig also argues that there can be no antitrust violation because Keurig allegedly lacks market power (despite its undisputed 89% share of the Single-Serve Brewer market and undisputed 86% share of the Compatible Portion Packs market) and boldly claims – without any legal support -- that it has the right to design a closed "system." Finally, Keurig, using purported expert declarations that ignore the facts, claims that Rogers has not been injured, and that it is Keurig, not Rogers, that would be irreparably harmed by the preliminary injunction. As the following will irrefutably show, the facts compel enjoining the false statements and preventing Keurig from locking out competitors using their so called "consumer benefit technology" that neither provides any consumer benefit nor any innovation.

## II.   ARGUMENT

### A.   Rogers Will Succeed On The Merits

#### 1.   Keurig Has Violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200

The law is clear that this Court must apply California law since this is a multidistrict action bound to apply the substantive state law of the state where the action was filed. *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (finding that "a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed"); *In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 723 (S.D.N.Y. 2003)

("Because this action was originally filed in the Central District of California, the Court looks to California law.").

Rogers' motion for injunctive relief is based in part on Keurig's violations under California's Unfair Competition Law ("UCL"). Keurig's only response, however, is to argue that Keurig has not violated the antitrust laws. Opp. at 27. Keurig entirely fails to address Rogers' argument that, in addition to being "unlawful," Keurig's conduct constitutes "unfair" business practices prohibited by the UCL. Mot. at 22; Cal. Bus. & Prof. Code § 17200. The California Supreme Court "has recognized that any violation of the false advertising law…necessarily violates the UCL." *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 950 (2002) (internal quotation omitted). The UCL "is designed to protect consumers against fraud and deceit as well as to protect competitors, and is broadly interpreted to bar all ongoing wrongful business activity in any context in which it appears." *Franklin Fueling Systems, Inc. v. Veeder-Root Co*., 2009 WL 2462505, 8 (E.D. Cal. 2009); *see also Day v. AT & T Corp*., 63 Cal. App. 4th 325, 332 (1998) ("Section 17200 has been interpreted broadly to bar all ongoing wrongful business activity, including misleading advertising, in whatever context it presents itself.").

Here, Keurig's false and misleading statements are largely undisputed and warrant a preliminary injunction. California's UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.  Section 17203 makes injunctive relief "the primary form of relief available under the UCL," while restitution is merely "ancillary." *Clayworth v. Pfizer, Inc*., 49 Cal. 4th 758, 790 (2010).  California courts routinely enjoin false and misleading statements under the UCL.  *See Allied Grape Growers v. Bronco Wine Co*., 203 Cal. App. 3d 432 (1988) (affirming trial court's injunction under Section 17200 on wine grape

buyer's practice of deceiving growers with a "primary price program of $150 per ton" but then not accepting or downgrading their grapes to pay lower prices); *People v. First Federal Credit Corp.*, 104 Cal. App. 4th 721, 736 (2002) (affirming issuance of a permanent injunction upon finding that the corporation violated the UCL, § 17200, and the false advertising law, § 17500); *Pom Wonderful LLC v. Purely Juice, Inc.,* 2008 U.S. Dist. LEXIS 55426 (C.D. Cal. 2008) (issuing preliminary injunction sought by direct competitor when defendant "has made false claims as to the contents and composition of its product" and noting that "the literally false statements made with respect to '100% Pomegranate' product are exactly the type that California's unfair competition laws and false advertising statute are aimed at curtailing.").

### a.   Keurig's False Statement That The 2.0 Brewers Read The Lid Of A Portion Pack To Deliver The Perfect Cup

Keurig has widely touted the innovation of the 2.0 brewer, and attempted to justify the lock-out, by claiming that it "features revolutionary Keurig 2.0 Brewing Technology™, designed to read the lid of each K-Cup™ or K-Carafe™ pack to brew the perfect beverage every time." Johnson Decl., Ex. 1. The truth is that ███████████████████████████████ ██████████████████████████████.[1]

---

[1] 

In fact, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Stewart Decl. ¶¶ 7-12 ██████

████████████████████████████████████████████████

████████████████ ; Johnson Supplemental Decl., Ex. 5 ("Sullivan Depo, Vol. 2") at 342:12-24, 343:20-344:5; *see also id.*, at 459:18-460:2.

> b.   **Keurig's False Statement That The Consumer Benefit Technology Selects Different Recipes**

The second falsehood widely publicized by Keurig to the public is that the CBT is essential because it allows the brewer to recognize recipes. *See, e.g.*, Johnson Supplemental Decl., Ex. 6 (allows brewer "to recognize the inserted Keurig pack and optimize to the recommended, customized setting for that particular beverage."). This claim is false. The ████ ████████████ . Keurig has conceded that ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Johnson Supplemental Decl., Ex. 7 ("Sullivan Depo, Vol. 1") at 62:16-22, 187:4-12. At most, the ████████████████████ ████████████████████████████████████████████████ ██████ Sullivan Supplemental Depo, Vol. 1 at 141:6-20 (Q: ████████████████ ████████████████████████████████████████████████ ██████████████████ ").

> c.   **Keurig's False Statement That The Consumer Benefit Technology Affords Consumer Safety**

When Keurig hatched its plan to lock out competitors ██████████████████████████ ████████████████████████████████████████████████ Johnson

Supplemental Decl., Ex. 3 at KVR0208326. In fact, Keurig's website states: "It's critical for performance and **safety** reasons that our new [2.0] system includes this technology [CBT]." Johnson Supplemental Decl., Ex. 8; *see also* Johnson 8/11/2014 Decl., Ex. 3 at KGM00000275. Again, nothing could be further from the truth, as Keurig has ████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Sullivan Depo, Vol. 1 at 170:23-171:21; Johnson Supplemental Decl., Ex. 9 ("Manly Depo, Vol. 1") at 155:14-19. While these stories are certainly entertaining, the truth tells a different story: (i) ████████████ ████████████████████████ (ii) Rogers' OneCup packs have been designed to work in K-cup brewers, (iii) unlike Keurig, Rogers has never had a recall for its OneCup packs, and (iv) Roger's OneCup packs are favored by consumers. Sullivan Depo, Vol. 1 at 224:8-14; Yamauchi 8/11/2014 Decl. 12-13; Johnson Supplemental Decl., Ex. 10 at 27; Johnson Supplemental Decl., Ex. 11.

> d.   **Keurig's False Statements That Unlicensed Portion Packs Are Not Designed For the 2.0 Brewer**

When a user tries to brew an unlicensed pack in a 2.0 brewer, they are presented with the following folksy message: "Oops! This pack *wasn't designed* for this brewer. Please try one of the hundreds of packs with the Keurig Brewed seal," Johnson Supplemental Decl., Ex. 12 at 28; Johnson 8/11/2014 Decl., Ex. 19. Of course, Keurig knows full well that this is not true. Sullivan Depo, Vol. 1 at 218:14-19 (testifying that ███████████████████████████████ ████████████████████████); *see id*. at 207:5-8 (testifying that ████████████ ████████████████████████████████████████████ ████████████████.



Keurig's corporate representative – ██████████████████████

████████████████████████████████████████████

████ Manly Depo, Vol. 1 at 95:14-23, *i.e.*, a euphemism for a falsehood.

         e.    **Keurig** ██████████████████████

████████████████████████████.

The facts are uncontroverted that Keurig ████████████████████████

██████████████████████████████. Johnson

Supplemental Decl., Ex. 14 at KGM00000095 (stating in a ██████████████████

████████████████████████████████████████████

████████████████████████); Yamauchi 8/11/2014 Decl., ¶¶

4-8. This statement is knowingly false. Johnson Supplemental Decl., Ex. 14 at KGM00000095

(acknowledging that Keurig ████████████████████); Manly Depo, Vol. 2 at

360:15-361:8 (testifying that ████████████████████████

██████████████████████████████████).

In fact, there is no evidence that Rogers' pods or any unlicensed pods have ever damaged
a K-Cup Brewer. J. Rogers 8/11/2014 Decl., ¶ 30; Yamauchi 8/11/2014 Decl., ¶ 13. Second,
Rogers has conducted between 15,000 and 20,000 tests of its OneCup product on Keurig brewers
and there have been no instances in which the OneCup product has caused damage to the Keurig
brewer or caused it to malfunction. J. Rogers 8/11/2014 Decl., ¶ 30. Again, Keurig's statements
are devoid of all truth and are merely intended to spread uncertainly and doubt.

  f.  **Keurig's Undisputed Violations of the UCL Warrant A Preliminary Injunction[2]**

As shown above, Rogers' claims of unfair competition under the UCL are largely undisputed. As addressed below and in Rogers' opening brief, the other preliminary injunction elements (irreparable harm, balance of hardships and the public interest) also weigh in favor of a preliminary injunction. As such, the Court should grant Rogers' motion based upon Keurig's violations of the UCL. *See, e.g., Pom Wonderful*, 2008 U.S. Dist. LEXIS 55426 (C.D. Cal. 2008); *Visioneer, Inc. v. Umax Techs., Inc*., 1998 U.S. Dist. LEXIS 23431, 13-14 (N.D. Cal. 1998) (issuing preliminary injunction preventing competitor from making false statements about product's technical capabilities and requiring defendant's distributors to place sticker on existing packaging correcting misleading information); *Day,* 63 Cal. App. 4th at 332 ("Section 17200 has been interpreted broadly to bar all ongoing wrongful business activity, including misleading advertising, in whatever context it presents itself.").

  2.  **Keurig's Conduct Also Violates the Antitrust Laws**

   a.  **Keurig Has Monopoly Power In The Single-Serve Brewer Market and Portion Pack Market**

Keurig acknowledges that it has monopoly power in the relevant Compatible Portion Packs market. Johnson 8/11/2014 Decl., Ex. 24. Indeed, Keurig's 30(b)(6) witness in this litigation ███████████████████████████████████. Manly Depo, Vol. 2 at 269:17-23, 270:13-16. Keurig also has monopoly power in the Single-Serve Brewer Market with 89% market share.[3] Rausser 8/11/2014 Decl., ¶ 55.

---

[2] Keurig's statement that Rogers' Sec. 17200 claim is dependent on its antitrust claims is wrong. As set out in Plaintiff's opening brief, even if the Court were to find that Keurig's conduct related to the implementation of the lockout does not yet amount to an antitrust violation, the Court may and should enjoin the lock-out as "threaten[ing] an incipient violation of an antitrust law, or violat[ing] the spirit or policy of those laws . . . or otherwise significantly threaten[ing] or harm[ing] competition."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008).

[3] In an attempt to throw everything at the wall to see if it sticks, Keurig also proposes that its 2.0 brewers hold 0% share of the single serve brewer market because the products have only been

Keurig's litigation position, however, is that its Keurig brewing "system" – consisting of the brewer (a "durable primary product") and portion packs ("complementary aftermarket component[s]" – "competes not only against other single-serve systems, but also against the much larger segment of multi-serve systems, retail outlets, and traditional single-serve techniques." Murphy Decl. ¶¶ 51, 75. Keurig thus contends that the relevant market must include "both multi-serve systems and retail sales" and that Keurig's share of such sales was only 15% in 2013. Murphy Decl. ¶ 78. Keurig's contention is absurd.

As a preliminary matter, single-serve brewers and portion packs are distinct product markets with multiple suppliers and types of products being offered in each market.  Rausser Supplemental Decl., ¶¶ 14, 42-52.  Even if evaluated at the system level, however, Keurig's view of the market makes no sense. An individual beverage purchased at Starbuck's is not a "close substitute" for Keurig's single-serve brewer.  Rausser Supplemental Decl. ¶¶ 10-13, 18-21.

*Xerox III* and the other "aftermarket" cases relied upon by Keurig to argue that it lacks monopoly power in the purported "secondary" or "aftermarket" Compatible Portion Packs Market are irrelevant. As an initial matter, all of those cases involve single-brand aftermarkets where the secondary product market was linked to a primary product made by a single brand. By contrast, there are multiple manufacturers of brewers in the Single-Serve Brewer Market. More importantly, in each of those cases, the court's analysis of monopoly power in the single-brand

---

"on sale for five days." Keurig provides no case law to support this proposition, nor can this proposition be given any serious consideration as the same is true of every new product and market power is a result of the combined effect of a supplier's portfolio of products. Rausser Supplemental Decl. ¶ 14. Keurig's contention is particularly disingenuous here, where Keurig has emphasized to customers ███████████████████████████████████████ ███████████████████████ Opp. at 20.  Moreover, ███████████████████ ███████████████████████████████████████████████████████████████████ Johnson Supplemental Decl., Ex. 15, at 81, 155; Johnson Supplemental Decl., Ex. 16, at KGM00006172-173.

aftermarket is conditioned upon a finding that the defendant lacked market power – let alone monopoly power – in the primary product market and thus that competition in the primary product market was capable of disciplining the conduct of the defendant in the aftermarket. *See Xerox Corp. v. Media Sciences, Inc.*, 660 F. Supp. 2d 535, 540 (S.D.N.Y. 2009) ("*Xerox III*") (plaintiff conceded that defendant, who held only 24% market share in primary product market, lacked market power).[4] Keurig does not cite a single case in which a court has applied the *Xerox III* test for monopoly power in an aftermarket where, as here, the defendant also has monopoly power in the primary product market. In fact, Keurig expressly concedes, for good reason, as explained in Dr. Rausser's supplemental report, absent effective competition in the primary product market (here, the Single-Serve Brewer Market, in which it is undisputed that Keurig enjoys an 89 percent market share), the manufacturer is able to exploit the customers that have purchased the primary product by over-charging for the aftermarket products they will then need on an ongoing basis. Rausser Supplemental Decl. ¶¶ 40-51.

Even if the Court were to analyze this case utilizing the test for monopoly power in a single-brand aftermarket where the defendant lacks market power in the primary product market (which it should not), it is clear that Keurig has monopoly power. As a result of Keurig's monopoly in the Single-Serve Brewer Market and coercive tactics, including exclusive dealing agreements, consumers often are left with no option other than Keurig Single-Serve Brewers and thus are "locked in" to the Keurig "system." Rausser Supplemental Decl. ¶ 43. Moreover, consumers are notoriously bad at accepting sunk costs and thus, upon purchase of a consumer

---

[4] *See also Eastman Kodak Co. v. Image Technical Servs., Inc.* (primary market was competitive), 504 U.S. 451, (1992); *Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers' Notch Mgmt. Co.*, 414 F. App'x 372, 376 (2d Cir. 2011) (same); *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 86-87 (2d Cir. 2000) (same); *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381-82 (3d Cir. 2005) (same); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 11 F. Supp. 2d 166 (D. Mass. 1998) (same).

electronics device, are "locked in" to that product and will not simply replace it every time there

is an increase in the cost of use as Keurig suggests.  Rausser Supplemental Decl. ¶ 50.  Even if a

consumer were so inclined, Keurig has introduced additional confusion into the market by

making its new 2.0 brewers incompatible with cheaper, non-licensed portion packs and already

has begun to increase the prices of its portion pack products. Johnson Supplemental Decl., Ex.

17.

> **b.** **Keurig's Lock-out Is Anticompetitive And Has No Procompetitive Benefit**

Rogers does not dispute that Keurig "has the right to design its own products" within the

constraints of the antitrust law, and does not seek to prevent Keurig from releasing the 2.0

brewer – only the lock-out which Keurig concedes is separate from the alleged innovation in the

system.  The law is clear that the Sherman Act is violated where, as here, a monopolist

implements a design change that locks out competition solely for the purpose of blocking

competition and without any benefit to consumers. *Xerox Corp. v. MediaSciences Int'l Inc.,* 511

F. Supp. 2d 372, 388-89 (S.D.N.Y. 2007) ; *United States v. Microsoft,* 253 F.3d 34, 65-66 (D.C.

Cir. 2001) (finding no "procompetitive justification" for excluding Internet Explorer from the

Add/Remove Program utility on Windows); *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340,

1382 (Fed. Cir. 1998) (finding defendant's modification was made only for predatory reasons).[5]

---

[5] Keurig's reliance on *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) is misplaced. The court explicitly acknowledged that new product introductions are not "ipso facto immune from antitrust scrutiny" but found that the products at issue there were innovative and defendant did not seek to exclude competitors from producing compatible film *Id.* at 268 n.30. The facts here thus are much more similar to *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001), where Microsoft implemented a design to block competitors without offering any consumer benefits. Although Keurig seeks to distinguish the *Microsoft* decision on the grounds that Rogers is a mere "freerider" whereas the competitors in *Microsoft* "were in the process of developing true alternative technologies that were structurally quite different" than Microsoft's products, Opp. at 19, Rogers' OneCup product -- as confirmed by the Federal Circuit in Keurig's

Remarkably, here, Keurig's opposition offers absolutely no business justification for the lock-out, except to cavalierly assert that it has the right to impose a "closed system" that eliminates competition.[6][7] Opp. at 16-17. Keurig claims that courts support "closed systems," yet fails to cite any precedent supporting the proposition that a monopolist has the right to implement a design change to enforce a "closed system." The only case cited by Keurig, *Verizon Comm'ns, Inc. v. Law Offices of Curtis V. Trinko LLP,* 540 U.S. 394 (2004), has nothing to do with product redesign or closed systems but rather addresses a competitor's request for access to

---

baseless patent litigation – is very different from the K-Cups offered by Keurig and, in particular, is more environmentally and socially responsible than Keurig's K-Cups. *See* J. Rogers 8/11/2014 Decl. ¶ 10 (stating that Rogers introduced a 97% biodegradable OneCup).

[6] Unlike most product redesign cases, the implementation of the Lockout here is wholly unrelated to any technological innovation in the 2.0 brewers and offers no prices savings to consumers and Keurig explicitly considered two separate easily-incorporated options that would have permitted non-licensed portion packs to work in Keurig 2.0 brewers. Sullivan Depo, Vol. 1 at 168:3-7, 277:6-15; Sullivan Depo, Vol. 2 at 431:23-434:14. The out-of-Circuit product design cases cited by Keurig thus are inapposite. *See Allied Orthopedic Appliances, Inc v. Tyco Health Care Group LP*, 592 F.3d 991 (9th Cir. 2010) (where evidence showed that defendant initially believed that clinicians would value the new feature and that the flexibility of the new platform would appeal to consumers); *Cal. Computer Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) (where there was uncontroverted evidence that IBM's changes allowed it to reduce manufacturing costs and prices to the consumer).

[7] Critically, Keurig does not dispute the testimony of its former-employee, Andrew Gross,



. Mr. Gross testified that, during his tenure at GMCR, he had

Gross Decl. ¶ 4 (emphasis added).

*Id.* ¶ 5 (emphasis added). These undisputed statements constitute adoptive admissions that are binding on Keurig and squarely resolve any doubts as to whether there has been an antitrust violation. *See* Fed. R. Evid. 801 ("When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue.").

an alleged essential facility in an industry – unlike that here – that had "the existence of a

regulatory structure designed to deter and remedy anticompetitive harm." Regardless, Keurig

itself concedes that "closed systems" are only permitted in "competitive markets," Opp. at 7,

and, as explained above, it is clear that Keurig has a monopoly in the Single-Serve Brewer

Market.

c.    **Rogers Has Antitrust Standing**

Keurig claims that Rogers lacks standing because it cannot establish antitrust injury, i.e.,

injury to competition in general.[8]  As demonstrated by the fact that Rogers' claims are brought in

the context of an MDL that includes the related claims of millions of consumers, Keurig's

contention is absurd.  Rogers has established that Keurig's anticompetitive conduct has resulted

in higher prices and if allowed to continue will result in less consumer choice and even higher

prices in the Compatible Portion Packs market. Rausser Supplemental Decl. ¶ 39.  Indeed,

coming directly on the heels of its launch of 2.0, Keurig announced a price hike on its portion

packs. Johnson Supplemental Decl., Ex. 17.

B.    <u>**Rogers Has Shown Irreparable Harm**</u>

1.    **Current Installed Base of 1.0 Brewers Is <u>NOT</u> Sufficient to Sustain Rogers' OneCup Business**

Contrary to Keurig's argument that absent a showing that Rogers will go into bankruptcy,

irreparable harm cannot be shown, the law is clear that bankruptcy is not required. The loss of

market share, among other things, is sufficient to establish irreparable harm ("It is well-

established that a movant's *loss of current or future market share* may constitute irreparable

harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007); s*ee*

---

[8] The court in the one case that Keurig cites for this proposition, *U.S. Airways Grp. v. British Airways PLC*, 989 F. Supp. 482, 489 (S.D.N.Y. 1997), found that the plaintiff "did not allege injury to competition…separate from injury to itself. Accordingly, the injury alleged…is not the type the antitrust laws were intended to prevent." Rogers, here, has shown harm to competition.

-12-

*Freedom Holdings, Inc. v. Spitzer*, 447 F. Supp. 2d 230, 262-63 (S.D.N.Y. 2004)). Irreparable harm can also be shown by injury to goodwill. *See Tom Doherty Assocs., Inc. v. Saban, Entm't, Inc.,* 60 F.3d 27, 37-38 (2d Cir. 1995); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 841 (9th Cir. 2001). Rogers has overwhelmingly established that it has and is losing market share and that its goodwill and reputation have been injured by Keurig's conduct. Sarina 8/11/2014 Decl. ¶¶ 6-7.

Keurig, throughout its Opposition, refers to Rogers' marketing presentations directed at Rogers' efforts to counter Keurig's own pervasive marketing to retailers and grocers that it



*see* Opp. 8-9. Yet it completely ignores its own – more informed – statements that ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Johnson Supplemental Decl., Ex. 15 at 81 ▮▮▮▮▮▮▮▮▮▮▮▮ ); Johnson Supplemental Decl., Ex. 16 at KGM00006173 ▮▮▮ ▮▮▮▮▮▮▮▮▮ ). ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ and convinced many unlicensed portion packs manufacturers, including major competitors like Kraft, to take a license from Keurig, thus, increasing Keurig's monopoly position in the portion pack market. Johnson Supplemental Decl., Ex. 16 at KGM00006164; Johnson Supplemental Decl., Ex. 18, at 17. Keurig's scheme had its intended effect—Rogers has lost substantial business from its three major customers and common sense dictates that such losses will expand exponentially once the 2.0 Brewers actually are available for sale in stores, if the Lock-out is not enjoined.[9]

---

[9] Keurig repeatedly cites to a forecast of sales prepared by Rogers in February, prior to the start of its fiscal year, that at that time projected sales growth of approximately ▮▮. See, e.g., Opp. at 3, 9. As explained by Rogers' CFO, however, the forecast was prepared for its bank as it is required to do every February before Keurig had announced any details regarding the timing or scope of the 2.0 brewers' launch and makes no attempt to account for the impact that the launch of 2.0 brewer would have on Rogers' sales if the Court does not enjoin the implementation of the Lockout. Johnson Decl., Ex. 18 ("Sarina Depo") at 145:12-149:12.

2.    **Rogers' Substantial Loss of Its OneCup Business Is Enough to Show Irreparable Harm**

Monetary damages, even if calculable would not be sufficient to cure the irreparable harm Rogers would suffer. Rausser Supplemental Decl., Section VIII; Sarina (8/11/2014) Decl. ¶ 6-9. Contrary to Keurig's contention that "[l]ost sales by an established business do not constitute irreparable harm because the business 'track record' allows for the calculation of money damages," Opp'n at 11,[10] courts routinely find that a "substantial loss of business" by an existing business constitutes irreparable harm. *Choi v. United States*, 944 F. Supp. 323, 326 n.2 (S.D.N.Y. 1996).[11]

Keurig's reliance on cases in which only a small portion of the plaintiffs businesses are affected and the ongoing business concern is not at risk are irrelevant, as Rogers has demonstrated that a loss of even ▮▮▮▮▮ of its OneCup business would result in a violation of its loan covenants and possible bankruptcy. *See Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 62, 63 (2d Cir. 2011).

3.    **Keurig Grossly Overstates Rogers' Continued Viability**

Keurig cherry picks certain of Rogers' financial information to claim that Rogers is in "sound financial health." Opp. at 12. Keurig wholly ignores the most relevant data, however, and claims to know Rogers' business and loan obligations better than Rogers' CFO. Despite Keurig's

---

[10] The cases Keurig cites for this proposition are easily distinguishable as they do not involve a significant change in the market and/or allegations of a loss of business that would potentially put the plaintiff out of business. *See Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (where damages were easily calculable because claims arose from the breach of a distributorship agreement); *Park W. Radiology v. Carecore Nat'l LLC,* 240 F.R.D. 109 (S.D.N.Y. 2007) (where radiology services were considered not a unique product in the New York City area and could be quantified at trial); *Arbitron Co. v. Phoenix Broad. Corp.*, No. 97-civ-4355, 1997 WL 452020 (S.D.N.Y. Aug. 6, 1997) (where lost advertising revenue could easily be calculated by comparing pre- and post-delisting revenues).

[11] Although Keurig criticizes Rogers for relying on only one case, many courts have reached this conclusion. *See, e.g., Doran v. Salem Inn*, 422 U.S. 922, 932 (1975); *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (finding irreparable harm where, absent an immediate injunction, a demand for payment would make bankruptcy imminent); *Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981) ("substantial lost sales" satisfy irreparable harm).

representations that Rogers has significant cash, Rogers actually has less than ████████ in already committed domestic cash and significant debt: ████████ of revolving credit obligations; ████████ in accounts payable, and ████████ in vendor financing.[12] Sarina Supplemental Decl. ¶ 8. Most importantly, Keurig entirely ignores the most pertinent undisputed fact that Rogers' OneCup sales ████████████████████████████████████ ████████ Sarina Supplemental Decl. ¶ 14.

The potential harm to Rogers is compounded by the fact that ████ percent of Rogers' OneCup business is comprised of three customers, two of which are club stores to which Rogers' sales have already been impacted. Sarina Depo, at 106:12-19; 132:6-22. Unless Rogers is successful in obtaining the requested injunction, Rogers' largest customer, Costco, will require Rogers to redesign its packaging to prominently state that Rogers' OneCups will not work with the 2.0 brewer. J. Rogers 8/11/2014 Decl. ¶ 38. BJ's Wholesale Club recently announced that it would use Keurig for its private label offering. Sarina Supplemental Decl. ¶ 6. Because Costco and BJ's alone account for ████████ Rogers' OneCup business, loss of this business would be fatal and even a significant decline in sales to these two customers alone would result in the ████████ reduction in sales that would render Rogers unable to service its bank debt.[13] Sarina Supplemental Decl. ¶ 12, 14.

---

[12] Rogers has not willingly put itself in such a precarious situation, as Keurig's expert Kothari suggests. Kothari Decl. ¶ 22. As explained by Rogers' CFO, Rogers' decision to purchase additional OneCup equipment was made in April *2013*, before Keurig announced its plans to lockout competition and Rogers' recent acquisition of machinery it had previously leased was the only viable business solution upon the expiration of the lease. Sarina Decl. 18-19 (noting that ███████████████████████████████████████████████████; Sarina Depo. at 164:8-17.

[13] Rogers' traditional coffee business alone is not sufficient to allow Rogers to survive and meet its debt obligations. Moreover, as Keurig itself acknowledges, the traditional coffee market is in decline and that the single-serve market is dominating. *See* Johnson Decl., Ex. 15 at 123, 132 ("Single-serve will continue momentum while drip will decline"; "Fewer consumers are buying new drip coffeemakers each year, instead opting to replace with single-serve machines.").

4.      **Keurig Has No Duty To Mitigate**

Keurig boldly claims that Rogers must "attempt reverse-engineering" of a portion pack so that it can join TreeHouse and other non-licensed portion pack manufacturers that "claim to have done [so] successfully." Opp. at 9. Mitigation of damages is an affirmative defense that is inappropriate in the irreparable harm context at the preliminary injunction stage. *See Pollis v. New Sch. for Soc. Research*, 829 F. Supp. 584, 596 (S.D.N.Y. 1993) (explaining that "mitigation of damages has nothing to do with the instant case in its present posture [at preliminary injunction]" since it is an affirmative defense raised after liability has been established, and "the case at bar is nowhere near that stage"). Cases that Keurig cites where courts have considered mitigation in the preliminary injunction context are clearly distinguishable from the case here, where Keurig is suggesting that Rogers affirmatively invest in technologically unproven and legally risky development. *Lanvin Inc v. Colonia*, 739 F. Supp. 182 (S.D.N.Y. 1990) (determining that the failure to mitigate resulted when it delayed bringing a preliminary injunction motion and failed to abandon its marketing of Lanvin products with knowledge that supplies would be denied); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356 (2d Cir. 1976) (finding that plaintiff could have incurred an additional cost for standard, available alternative advertising that would be provided an adequate calculable remedy).

Even if this Court is inclined to consider this argument, Rogers' irreparable harm is directly caused by Keurig's actions, and Rogers cannot now be required to develop a workaround that is potentially costly and prone to future legal challenges. *See Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806-07 (3d Cir. 1998) (defendant's conduct was direct cause of plaintiff's irreparable injury); *MedImmune, Inc. v. Genentech, Inc.*, SACV03-2567 MRP(CTX), 2008 WL 616250, at *4 (C.D. Cal. Mar. 6, 2008) (plaintiff within rights to decline to take action). It is clear from Keurig's response to TreeHouse's workaround that Keurig is skeptical that any workaround actually is effective and that Keurig will continue to represent to customers and consumers that only Keurig's K-Cups work with the 2.0 brewer, Johnson Decl., Ex. 20.

Even if mitigation were a relevant consideration in this context, this Circuit does not require mitigation of damages when actual mitigation is so uncertain. *See Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 820, 820 n.47 (2d Cir. 1983) (mitigation of damages in the antitrust context is an affirmative defense to be proved by the defendant, and a plaintiff has no duty to take mitigation measures where the cost would potentially outweigh the benefit); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 558 (7th Cir. 1986) ("[W]hile a plaintiff has a duty to mitigate damages, he should not be required to take undue risks.").

Finally, Keurig has an exclusive arrangement with Sun Chemical to use Sun Chemical's ink and ink detection technology to lockout competitors.  Keurig, however, fails to mention to this Court that Sun Chemical has several patents on this very technology that Keurig is now inviting Rogers to infringe (i.e., to "mitigate" its losses).  Johnson Decl. ¶ 22 and Ex. 21. Thus, it is entirely likely that if any competitor successfully designs around Keurig's lock-out system, it will be met with a patent infringement lawsuit. *Id.*

### C.      The Balance Of Harms Weighs In Favor Of An Injunction

Keurig's claims that it would face substantial harm if it is required to disable the lock-out because it ████████████████████████████████████████████████████████

████. *But see* Stewart Decl. ¶¶ 16-21 (finding that ██████████████████████████

███████████████ Chatterjee Decl. ¶¶ 6-27 (explaining: (i) ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████. The costs of retrieving brewers already shipped to retailers, however, is an expense of Keurig's own making. Keurig decided to implement the lock-out in spite of its knowledge that competitors and consumers believed the implementation to be anticompetitive. Keurig aggressively moved forward with its launch of its anticompetitive product with full knowledge that a motion for a preliminary

injunction was possible, and itself wittingly delayed any resolution of Rogers' motion for a preliminary injunction by arguing that a stay of several weeks plainly will not render plaintiff incapable of obtaining meaningful relief." Defendant's Reply in support of its Motion to Stay, *JBR, Inc. v. Keurig Green Mountain, Inc.*, Case No. 14-cv-0677, Dkt. No. 34 (E.D. Cal. Apr. 24, 2014). This self-inflicted harm is not properly considered and does not tip the balance of hardships in Keurig's favor. *See Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 486 (1st Cir. 2009) (balance of hardships weighs in favor of injunction where defendants' harm "is of their own doing"); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 197 (S.D.N.Y. 2009) ("loss of ability to engage in unauthorized conduct and the concomitant business opportunities that such unauthorized activities may provide" does not tip the balance of hardships in a defendant's favor).

### D.       A Preliminary Injunction Is In The Public Interest

Keurig's statement that "[g]ranting this preliminary injunction would send a message that seeking emergency relief is a good way to forestall competition," Opp. at 29, is ludicrous given that "forestalling competition" is exactly what Keurig's lock-out does. Keurig's 2.0 brewer completely eliminates the potential of *any* competitors from competing in the portion pack market, a result that courts have recognized is against public interest. *Regents of University of California v. American Broadcasting Cos.,* 747 F.2d 511, 521 (9th Cir. 1984). The public has a strong interest in protecting the existence of competition in the portion pack market, and granting a preliminary injunction in this case will preserve OneCups, and all other portion packs, as products offered to consumers.  Rausser Supplemental Decl., ¶ 39.

Dated: September 2, 2014                   MORGAN, LEWIS & BOCKIUS LLP

                                           By   /s/ Daniel Johnson, Jr.
                                                Daniel Johnson, Jr. (admitted *pro hac
                                                vice*)
                                                Kent M. Roger (admitted *pro hac vice*)
                                                One Market, Spear Street Tower
                                                San Francisco, CA 94105
                                                Tel: (415) 442-1000
                                                Fax: (415) 442-1001

                                                *Attorneys for Plaintiff JBR, Inc. (d/b/a
                                                Rogers Family Company)*