**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X
                                         :     No. 1:14-md-02542 (VSB)

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :
COFFEE ANTITRUST LITIGATION                :
                                           :

------------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT FILED BY JBR, INC.

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................ iii

Introduction ........................................................................................................ 1

Statement of Facts ............................................................................................. 3

Legal Standard ................................................................................................... 4

Argument ............................................................................................................ 4

I.   JBR's Section 2 Claims Fail As A Matter of Law ...................................... 4

    A.   Product Design Claims Fail Because The Antitrust Laws Permit
        Companies To Design Their Own Products .......................................... 4

    B.   Exclusive Dealing Claims Fail Because JBR Does Not Allege Substantial
        Foreclosure .......................................................................................... 6

        1.   No Substantial Foreclosure Of Distributors .................................. 6

        2.   No Substantial Foreclosure Of Retailers ....................................... 7

        3.   JBR's Growth Is Fatal To All Of Its Exclusive Dealing Claims ............... 8

    C.   Patent Litigation Claims Fail .............................................................. 8

        1.   Sham Litigation Claim Fails For Lack Of Objective And
            Subjective Baselessness ............................................................... 8

        2.   Patent Misuse Claim Fails For Lack Of A Live Controversy .................. 9

    D.   Marketing Claims Fail Because JBR Offers No Plausible Allegations To
        Overcome The Presumption That Such Statements Do Not Affect
        Competition .......................................................................................... 11

    E.   All Section 2 Claims Fail For Lack Of Monopoly Power In A Properly-
        Defined Relevant Market ..................................................................... 14

        1.   Proposed Market Definitions Are Implausibly Narrow .......................... 14

            a)   "Single-Serve Brewer Market" Omits Reasonable
                Substitutes ..................................................................... 15

            b)   "Single-Serve Portion Pack Market" Omits Reasonable
                Substitutes ..................................................................... 16

        2.   Failure To Allege Facts Showing Monopoly Power ............................... 17

            a)   No Brewer Monopoly Based On Either 1.0 Installed Base
                 Or New 2.0 Brewer, Which Has Near 0% Share ...................... 17

            b)   No Portion Pack Monopoly In Light Of Established Test
                For Monopoly In An Aftermarket ........................................ 18

        3.   JBR's Growth Proves No Dangerous Probability of Monopoly
            Power ........................................................................................... 19

i

F.      All Section 2 Claims Fail For Lack Of Standing Because JBR Lacks
         Antitrust Injury.................................................................................................... 20

II.     JBR Fails To State A Claim Under The Lanham Act Because It Fails To Allege
        Keurig's Statements Were False Or Were Advertising .................................................. 21

III.    JBR's State Law Claims Fail For The Same Reasons As Its Federal Claims ................. 23

Conclusion ........................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Abcor Corp. v. AM International, Inc.*,
    916 F.2d 924 (4th Cir. 1990) ...............................................................13

*Ad/SAT, Division of Skylight, Inc. v. Associated Press*,
    181 F.3d 216 (2d Cir. 1999)........................................................... 15-16

*AF Gloenco Inc. v. Ushers Machine & Tool Co., Inc.*,
    No. 1:10-cv-1128, 2011 WL 4593741 (N.D.N.Y. Sept. 30, 2011)........................................19

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
    499 F.2d 232 (2d Cir. 1978)........................................................22

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
    592 F.3d 991 (9th Cir. 2010) ...............................................................5

*American Council of Certified Podiatric Physicians v. American Board of Podiatric
    Surgery*,
    323 F.3d 366 (6th Cir. 2003) ...............................................................13

*American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal &
    Professional Publications, Inc.*,
    108 F.3d 1147 (9th Cir. 1997) ...............................................................11, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................4, 11

*AstraZeneca AB v. Mylan Laboratories*,
    Nos. 00 Civ. 6749, 03 Civ. 6057, 2010 WL 2079722 (S.D.N.Y. May 19, 2010) ....................8

*B. Braun Medical, Inc. v. Abbott Laboratories*,
    124 F.3d 1419 (Fed. Cir. 1997)........................................................10

*B.V. Optische Industrie De Oude Delft v. Hologic*,
    909 F. Supp. 162 (S.D.N.Y. 1995)........................................................19

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
    813 F. Supp. 2d 569 (S.D.N.Y. 2011)................................................ 14, 16, 19-20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544  (2007)........................................................................4, 8

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979)...................................................................... passim

*Bowen v. New York News, Inc.*,
    366 F. Supp. 651 (S.D.N.Y. 1973), *aff'd in part and rev'd in part on other grounds*,
    522 F.2d 1242 (2d Cir. 1975)..........................................................................8

*Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*,
    393 F. 3d 1378 (Fed. Cir. 2005)....................................................................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)....................................................................................20

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986)....................................................................................21

*Carter v. Variflex, Inc.*,
    101 F. Supp. 2d 1261 (C.D. Cal. 2000) ......................................................24

*CDC Technologies, Inc. v. IDEXX Laboratories, Inc.*,
    186 F.3d 74 (2d Cir. 1999)........................................................................ 7-8

*Chamilia, LLC v. Pandora Jewelry, LLC*,
    No. 04-CV-6017 (KMK), 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007)..............................22

*Chapman v. New York State Division for Youth*,
    546 F.3d 230 (2d Cir. 2008)................................................................ 3, 14-15

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ......................................................................24

*Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-cv-02031, 2012 WL 511485 (W.D. Ark. Feb. 15, 2012) ........................................16

*Commercial Data Servers, Inc. v. International Business Machines Corp.*,
    166 F. Supp. 2d 891 (S.D.N.Y. 2001)...................................................... 14-15

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996) .............................................................................4

*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*,
    73 F.3d 756 (7th Cir. 1996) ....................................................................6, 19

*Dimidowich v. Bell & Howell*,
    803 F.2d 1473 (9th Cir. 1986) .................................................................................23

*Doron Precision Systems, Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)..........................................................................3

*DSM Desotech Inc. v. 3D Systems Corp.*,
    749 F.3d 1332 (Fed. Cir. 2014)...........................................................................5, 19

*Duty Free Americas, Inc. v. Estee Lauder Cos.*,
    No. 12-60741-Civ., 2014 WL 1329359 (S.D. Fla. Mar. 31, 2014) .........................12

*E & L Consulting, Ltd. v. Doman Industries Ltd.*,
    472 F.3d 23 (2d Cir. 2006)...............................................................................6, 21

*Eastman Kodak Co. v. Image Technical Services*,
    504 U.S. 451 (1992).............................................................................................15

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*,
    129 F.3d 240 (2d Cir. 1997).................................................................................21

*Eon Labs Manufacturing, Inc. v. Watson Pharmaceuticals, Inc.*,
    164 F. Supp. 2d 350 (S.D.N.Y. 2001)..............................................................12, 21

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002)...................................................................................22

*Flickinger v. Harold C. Brown & Co.*,
    947 F.2d 595 (2d Cir. 1991)...................................................................................4

*GAF Corp. v. Eastman Kodak Co.*,
    519 F. Supp. 1203 (S.D.N.Y. 1981).........................................................................4

*Gatt Communications, Inc. v. PMC Associates, L.L.C.*,
    711 F.3d 68 (2d Cir. 2013)......................................................................1, 3, 9, 21

*Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories Inc.*,
    386 F.3d 485 (2d Cir. 2004).................................................................................14

*George Haug v. Rolls Royce Motor Cars*,
    148 F.3d 136 (2d Cir. 1998).................................................................................20

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply*,
    45 F.3d 1550 (Fed. Cir. 1995)..............................................................................10

*Global Discount Travel Services, LLC* v. *Trans World Airlines, Inc.*,
    960 F. Supp. 701 (S.D.N.Y. 1997) (Sotomayor, J.).........................................................15-16

*Great Escape, Inc. v. Union City Body Co., Inc.*,
    791 F.2d 532 (7th Cir. 1986) .........................................................................................20

*Hack v. President & Fellows of Yale College*,
    237 F.3d 81 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema*
    *N.A.*, 534 U.S. 506 (2002).............................................................................................18

*Halebian v. Berv*,
    644 F.3d 122 (2d Cir. 2011)............................................................................................4

*Harrison Aire, Inc. v. Aerostar International, Inc.*,
    423 F.3d 374 (3d Cir. 2005)...........................................................................................18

*In re Adderall XR Antitrust Litigation*,
    754 F.3d 128 (2d Cir. 2014)...........................................................................................11

*In re Fresh Del Monte Pineapples Antitrust Litigation*,
    No. 04-MD-1628 RMB-MHD, 2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009) .....................15

*In re MF Global Holdings Ltd. Securities Litigation*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)...............................................................................4

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
    599 F.3d 1377 (Fed. Cir. 2010).......................................................................................10

*Insignia Systems, Inc. v. News Corp., Ltd.*,
    No. Civ. 04-4213JRTFLN, 2005 WL 2063890 (D. Minn. Aug. 25, 2005)..........................7-8

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 F. App'x 554 (9th Cir. 2008) ....................................................................................24

*Lorenz v. F. W. Woolworth Co.*,
    195 F. Supp. 719 (S.D.N.Y. 1961), *aff'd*, 305 F.2d 102 (2d Cir. 1962)................................10

*Mario Valente Collezioni Ltd. v. AAK LTD.*,
    280 F. Supp. 2d 244 (S.D.N.Y. 2003)..............................................................................22

*MultiVideo Labs, Inc. v. Intel Corp.*,
    No. 99-CVI-3908 (DLC), 2000 WL 12122 (S.D.N.Y. Jan. 7, 2000) .....................................12

*National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories*,
    850 F.2d 904 (2d Cir. 1988)..................................................................................2, 12

*National Lighting Co., Inc. v. Bridge Metal Industries LLC*,
    601 F. Supp. 2d 556 (S.D.N.Y. 2009).........................................................................23

*Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*,
    614 F.2d 832 (2d Cir. 1980)......................................................................................15

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    No.12-1184, __ U.S. __, 134 S. Ct. 1749 (Apr. 29, 2014) ........................................9

*Omega Environmental v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ....................................................................................8

*Orion Tire Corp. v. General Tire, Inc.*,
    CV 92-2391AAH(EEX), 1992 WL 295224 (C.D. Cal. Aug. 17, 1992)......................24

*PepsiCo, Inc. v. Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002).........................................................................1, 7, 17

*Prasco LLC v. Medicis Pharmaceutical Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008)..................................................................................10

*Princo Corp. v. International Trade Commission*,
    616 F.3d 1318 (Fed. Cir. 2010)..................................................................................10

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993)................................................................................................2, 8-9

*Professional Sound Services, Inc. v. Guzzi*,
    349 F. Supp. 2d 722 (S.D.N.Y. 2004).........................................................................22

*PSI Repair Services v. Honeywell, Inc.*,
    104 F.3d 811 (6th Cir. 1997) .................................................................................6, 19

*Raghavendra v. Trustees of Columbia University*,
    No. 06 Civ. 6841(PAC)(HBP), 2012 WL 3778714 (S.D.N.Y. July 11, 2012).......................23

*Razorback Ready Mix Concrete Co. v. Weaver*,
    761 F.2d 484 (8th Cir. 1985) .......................................................................................9

*Re-Alco Industries, Inc. v. National Center for Health Education, Inc.*,
    812 F. Supp. 387 (S.D.N.Y. 1993)........................................................................14-15

*Sanderson v. Culligan International Co.*,
415 F.3d 620 (7th Cir. 2005) ........................................................................ 2, 11

*Schachar v. American Academy of Ophthalmology, Inc.*,
870 F.2d 397 (7th Cir. 1989) ....................................................................... 11, 13

*Sheridan v. Marathon Petroleum Co.*,
530 F.3d 590 (7th Cir. 2008) ............................................................................ 4

*SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp.*,
11 F. Supp. 2d 166 (D. Mass. 1998) .................................................................. 18

*SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp.*,
188 F.3d 11 (1st Cir. 1999) ............................................................................... 18

*Smugglers Notch Homeowners' Association, Inc. v. Smugglers' Notch Management Co.*,
414 F. App'x 372 (2d Cir. 2011) .............................................................. 6, 15, 18

*Southern California Institute of Law v. TCS Education System*,
No. CV 10-8026 PSG AJWX, 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) ......................... 21

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ...................................................................................... 14, 19

*Stearns Airport Equipment Co. v. FMC Corp.*,
170 F.3d 518 (5th Cir. 1999) ............................................................................ 13

*Tampa Electric Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961) ......................................................................................... 2, 6

*Tate v. Pacific Gas & Electric Co.*,
230 F. Supp. 2d 1072 (N.D. Cal. 2002) ......................................................... 12-13

*Templin v. Times Mirror Cable Television, Inc.*,
56 F.3d 73 (9th Cir. 1995) ............................................................................... 23

*Turbon International, Inc. v. Hewlett-Packard Co.*,
769 F. Supp. 2d 262 (S.D.N.Y. 2011) ............................................................... 23

*Ulrich v. Moody's Corp.*,
No. 13-CV-00008 (VSB), 2014 LEXIS 138082 (S.D.N.Y. Sept. 30, 2014) ...................... 25

*United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956) ...................................................................................... 14, 17

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966)..................................................................................................14

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko LLP*,
540 U.S. 398 (2004).............................................................................................1, 20

*Walgreen Co. v. AstraZeneca Pharmaceuticals L.P.*,
534 F. Supp. 2d 146 (D.D.C. 2008) .......................................................................13

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research, Inc.*,
516 F. Supp. 2d 270 (S.D.N.Y. 2007)...................................................................2, 7

*Xerox Corp. v. Media Sciences, Inc.*,
660 F. Supp. 2d 535 (S.D.N.Y. 2009) .............................................................. 5, 18-19

*Xerox Corp. v. Media Sciences International, Inc.*,
511 F. Supp. 2d 372 (S.D.N.Y. 2007).............................................................. 5, 13-14

**State Cases**

*Aryeh v. Canon Business Solutions, Inc.*,
55 Cal. 4th 1185 (Cal. 2013)...................................................................................23

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*,
60 Cal. Rptr. 2d 830 (Cal. Ct. App. 1997)..............................................................24

*Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999) ............................................................................................23

*Chavez. v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (Cal. Ct. App. 2d Dist. 2001) ...............................................24

**Federal Statutes**

15 U.S.C. § 1125(a)(1)(B) .............................................................................. 22-23

28 U.S.C. § 2201(a) .................................................................................................10

Fed. R. Evid. 201(b)...................................................................................................3

**Other Authorities**

IIIB Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 775c (3d ed. 2006)......................5

## INTRODUCTION

Plaintiff JBR, Inc. ("JBR") filed suit one month after plaintiff TreeHouse Foods, Inc., bringing a largely identical complaint.  Like TreeHouse, JBR sells portion packs of coffee designed to work in Keurig's first generation ("1.0") coffee brewers.  Like TreeHouse, JBR attacks Keurig for releasing a new coffee brewer ("2.0") that was designed as a closed system compatible only with Keurig's portion packs.  And, like TreeHouse, JBR fails to state a claim.

To state a Section 2 claim, a plaintiff must allege: (1) anticompetitive conduct; (2) that creates or maintains monopoly power in a properly defined relevant market; and (3) that causes antitrust injury to the plaintiff.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002); *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75-78 (2d Cir. 2013).  A failure on any one of these elements requires dismissal.  Here, JBR fails in all respects.

*First*, none of the conduct that JBR alleges is anticompetitive.

- *Product design*.  Keurig has no obligation to design its new brewer to work with JBR's products.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko LLP*, 540 U.S. 398, 410 (2004) ("[A]lleged insufficient assistance in the provision of service to rivals is not a recognized antitrust claim . . . .").  As the Second Circuit has long held, "any firm, even a monopolist, may generally bring its products to market whenever and however it chooses." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 286 (2d Cir. 1979).  The only potential exception to this rule arises when a monopolist coerces or tricks consumers into buying its new product, *id.* at 287, and JBR does not allege that consumers have been coerced or tricked into buying the 2.0 brewer here.  Indeed, JBR alleges Keurig has disclosed *too clearly* that the 2.0 was designed as a closed system.

Compl. ¶ 122.  JBR cannot state a Section 2 claim based on Keurig's product design.

- *Exclusive dealing*.  JBR claims Keurig has exclusive contracts with distributors and retailers.  *See, e.g.*, *id.* ¶¶ 73-80.  But it is well-established that a plaintiff challenging exclusive dealing must allege facts showing substantial foreclosure of the relevant market.  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961).  This requires allegations of both a numerator (the suppliers allegedly locked up) *and* a denominator (the number of available suppliers), so that the portion of the market allegedly foreclosed can be assessed.  *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 295 n.8 (S.D.N.Y. 2007).  JBR fails to allege a denominator, and its claims must be dismissed.

- *Prior Litigation*.  JBR claims prior litigation by Keurig was a "sham," but fails to allege any facts showing the litigation was objectively and subjectively baseless, as required by the *Noerr-Pennington* doctrine.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* (*"PRE"*), 508 U.S. 49, 56-57 (1993).

- *Marketing Conduct*.  Marketing conduct is generally presumed to have a *de minimis* impact on competition.  *See, e.g.*, *Berkey Photo*, 603 F.2d at 288 & n.41; *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005) ("Some other law may require judicial intervention in order to increase the portion of truth in advertising; the Sherman Act does not.").  Here, JBR makes a few vague assertions about Keurig's statements to customers.  Compl. ¶¶ 81-83, 187-88.  This falls far short of rebutting the presumption of *de minimis* effect.  *See Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs.*, 850 F.2d 904, 916 (2d Cir. 1988).

*Second*, even if JBR had alleged anticompetitive conduct, its Section 2 claims fail for the

independent reason that JBR fails to allege a properly defined relevant market or monopoly power therein.  *See Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008).

*Third*, JBR's Section 2 claims independently fail because JBR does not allege antitrust injury.  In fact, JBR alleges that it experienced rapid sales growth.  Compl. ¶ 10; s*ee Gatt Commc'ns*, 711 F.3d at 76-78 (dismissing for lack of antitrust injury).

JBR adds deficient Lanham Act and state law allegations.  Because JBR fails to state a claim, Keurig respectfully requests that its complaint be dismissed in its entirety.

## STATEMENT OF FACTS

JBR is a coffee company that has been selling packaged coffee for more than 32 years. Compl. ¶ 5.[1]  In October 2011, JBR began selling portion packs compatible with the Keurig 1.0 brewer.  *Id*. ¶ 35.  Keurig subsequently sued JBR for patent infringement.  *Id*. ¶ 61.  JBR did not move to dismiss these claims, but ultimately prevailed on summary judgment.  *Keurig, Inc. v. JBR, Inc.*, 558 F. App'x 1009 (Fed. Cir. 2014).  JBR has continued to sell portion packs with great success.  Compl. ¶¶ 35, 117.  It sells its portion packs to mega-retailers such as Amazon, where it claims its products are a "#1 Best Seller."  *Id*. ¶ 117.  It also sells to other retailers, *id*. ¶ 36, and directly to consumers through its website, www.gourmet-coffee.com.[2]

In the Fall of 2013, Keurig announced that it would launch a new brewer, the Keurig 2.0, the following Fall.  *Id.* ¶ 85.  The Keurig 2.0 has new capabilities, including the ability to brew a carafe of coffee.[3]  JBR alleges that Keurig has clearly disclosed that the Keurig 2.0 was designed

---

[1] In this brief, we describe the facts alleged in the JBR complaint.  In doing so, Keurig makes no concession as to the accuracy of JBR's assertions.

[2] Under Federal Rule of Evidence 201(b), this Court may take judicial notice of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see, e.g.*, *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 178-79 n.8 (S.D.N.Y. 2006) (taking judicial notice of information posted on a party's website).

[3] *See* Ex. 1*, Updated Thoughts on Keurig 2.0 and F1Q14*, Stifel, Nicolaus & Co., Inc., Jan. 30, 2014, at 2 ("Stifel Report") (relied upon in Compl. ¶¶ 11, 21, 90, 93).  The Court may take judicial notice of the full

as a closed system that would brew only Keurig-licensed portion packs.  *Id.* ¶¶ 84-87, 109.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires a plaintiff to make a

"'showing,' rather than a blanket assertion, of entitlement to relief" supported by sufficient

"factual allegation[s]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).

## ARGUMENT

I.   **JBR's Section 2 Claims Fail As A Matter of Law**

A.   **Product Design Claims Fail Because The Antitrust Laws Permit Companies To Design Their Own Products**

At its heart, JBR's complaint centers on allegations about the design of the Keurig 2.0

brewer.[4]  These claims fail for many reasons, not least of which is that the conduct alleged is not

anticompetitive.  A firm "may generally bring its products to market whenever and however it

chooses."  *Berkey Photo*, 603 F.2d at 286.  There is only one potential exception to this rule, and

it is not alleged here.  This exception may arise when a monopolist coerces or tricks consumers

into buying a new product.  *Berkey Photo*, 602 F.2d at 287; *see also GAF Corp. v. Eastman

Kodak Co.*, 519 F. Supp. 1203, 1228 (S.D.N.Y. 1981).  As the Second Circuit held in *Berkey

Photo*, there is no coercion where consumers are "not compelled to purchase" the new product.

---

contents of materials cited in the complaint.  *See Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 289 n.5 (S.D.N.Y. 2013).

[4] JBR uses different labels for its product design claims: Monopolization (Compl. ¶¶ 126-33); Monopoly Leveraging (*id.* ¶¶ 141-46); Technological Tying (*id.* ¶¶ 163-70); Anticompetitive Product Redesign (*id.* ¶¶ 171-79); and Attempted Monopolization (*id.* ¶¶ 180-85).  The labels do not affect the analysis—these all challenge the same alleged conduct based on the same statute.  *See, e.g., Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir. 1991) ("[F]ederal pleading is by statement of claim, not by legal theory.").  Nor does JBR's passing mention of Section 3 of the Clayton Act in its purported "tying" claim change the analysis from that used under Section 2 of the Sherman Act.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996); *Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 592 (7th Cir. 2008).

603 F.2d at 287.  In that case, the court found that there could be no coercion because Kodak did

not stop making film compatible with prior camera models.  *Id.*  The same is true here.  JBR does

not allege that Keurig has stopped making portion packs compatible with 1.0 brewers.  To the

contrary, JBR's complaint affirmatively relies on materials showing that all K-Cup portion packs

("K-Cups") that Keurig manufactures continue to be fully compatible with Keurig 1.0 brewers.

*See* Ex. 2, <u>Green Mountain Coffee Roasters F4Q 2013 Earnings Call Tr.</u>, Nov. 20, 2013 (relied

upon in Compl. ¶¶ 85, 94, 111).[5]  This is fatal to any suggestion of coercion.[6]

        Nor does JBR allege that Keurig tricked consumers by advertising the 2.0 brewer as open,

waited until consumers bought it *en masse*, and then closed the system.  Indeed, JBR

acknowledges that Keurig disclosed up front that the 2.0 was a closed system.  *See, e.g.*, Compl.

¶¶ 84-88*,* 96-98.[7]  This is the opposite of a bait and switch.  *See Xerox Corp. v. Media Scis., Inc.*,

660 F. Supp. 2d 535, 540, 550 (S.D.N.Y. 2009) (*"Xerox III"*)[8] (no antitrust violation from

introduction of printers incompatible with competitors' ink cartridges because there was no

change in policy for printers already sold); *DSM Desotech Inc. v. 3D Sys. Corp.*, 749 F.3d 1332,

---

[5] If consumers want a new 1.0 brewer, they can purchase one of the many on the market.  *See* Compl. ¶ 18 (acknowledging 1.0-compatible brewers offered by, *e.g.*, Mr. Coffee, Cuisinart, and Breville).

[6] JBR makes allegations regarding Keurig's intent in designing the 2.0 brewer, *see* Compl. ¶ 101, and the necessity of Keurig's design choices.  *Id.* ¶ 105. These are not relevant to the controlling legal test, which turns on coercion.  Moreover, the Second Circuit test is the right one:  An alternative rule focusing on intent would "chill perfectly appropriate behavior that the antitrust laws are intended to encourage." IIIB Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 775c (3d ed. 2006).  And, as for the necessity of a particular design, "necessity is a slippery concept," and it is one that the courts in this Circuit do not explore.  *Berkey Photo*, 603 F.2d at 286; *see also, e.g.*, *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1000 (9th Cir. 2010) ("There is no room in this analysis for balancing the benefits or worth of a product improvement against its anticompetitive effects.") (citing *Berkey Photo*, 603 F.2d at 286-87).

[7] TreeHouse has informed the Court that the 2.0 is not actually a closed system, because TreeHouse has reverse engineered the 2.0 brewer and has portion packs compatible with the new machine.  Letter from A. Badini to L. Dassin, Aug. 11, 2014 (ECF No. 82-1).

[8] For clarity, we use the *Xerox* court's convention: "*Xerox I*" refers to the motion to dismiss (*Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007)), and "*Xerox III*" refers to the summary judgment decision (*Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535 (S.D.N.Y. 2009)).

1346-47 & n.6 (Fed. Cir. 2014) (no antitrust violation where defendant disclosed proprietary technology in its new product); *PSI Repair Servs. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997) (no antitrust violation where "defendant has not changed its policy after locking-in some of its customers"); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996) (same).[9]

### B.   Exclusive Dealing Claims Fail Because JBR Does Not Allege Substantial Foreclosure

JBR next claims Keurig violated the antitrust laws through alleged exclusive contracts with distributors and retailers.  Compl. ¶¶ 73-80.  But an exclusive contract does not violate the antitrust laws unless it leads to substantial foreclosure of the relevant market, and JBR alleges no facts supporting substantial foreclosure here.  *Tampa Elec.*, 365 U.S. at 328.[10]  In addition, any suggestion of foreclosure is contradicted by JBR's success selling competing portion packs.

#### 1.   No Substantial Foreclosure Of Distributors

JBR claims Keurig has exclusive contracts with 500 distributors that provide coffee to "away from home" locations like hotels, offices, and hospitals.  *See* Compl. ¶¶ 73-77.[11]  JBR offers no allegations about the relevant denominator—how many companies can distribute

---

[9] JBR tries to recast these same allegations as a "tie" between the 2.0 brewer and K-Cups.  Compl. ¶¶ 163-70.  As a threshold matter, "technological tying" is not a separate grounds for relief.  To the extent that JBR is challenging Keurig's design of the 2.0 brewer, *id.* ¶ 164, those allegations fail for the reasons discussed above.  Moreover, even if there were a separate claim for "tying" of the 2.0 brewer and K-Cups, it is axiomatic that a tying claim requires (among other things) monopoly power in the tying product. *See, e.g.*, *Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers' Notch Mgmt. Co.*, 414 F. App'x 372, 374-75 (2d Cir. 2011); *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 31-32 (2d Cir. 2006). Here, the purported "tying product," the 2.0 brewer, has a near 0% share of any market, and obviously does not possess monopoly power.  Moreover, JBR alleges that Keurig has disclosed that the 2.0 is a closed system, which means that consumers who purchase the brewer know that it works only with K-Cups, dispelling any notion of coercion.  JBR's extra "tying" label adds nothing to its claims.

[10] Substantial foreclosure must be alleged whether the plaintiff brings its exclusive dealing claims under Section 1 or 2 of the Sherman Act or Section 3 of the Clayton Act.  *Tampa Elec.*, 365 U.S. at 335.

[11] The distribution contract quoted in paragraph 75 of the complaint shows that the agreement is not even exclusive:  It prohibits distributors from selling portion packs "other than Keurig Packs, that can be used in a Keurig Brewer" but does not prohibit sale of competing brewers or portion packs that work therein.

coffee.  JBR thus fails to allege substantial foreclosure.  *See, e.g.*, *Insignia Sys., Inc. v. News Corp., Ltd.*, No. Civ. 04-4213JRTFLN, 2005 WL 2063890, at *3 (D. Minn. Aug. 25, 2005) (exclusive contracts with "35,000 retail stores" do not establish substantial foreclosure absent a plausible allegation of a relevant denominator).

JBR also alleges that Keurig has exclusive agreements with distributors "responsible for sales of K-Cup Branded Portion packs to consumers for in-home use."  *See* Compl. ¶ 78.  JBR provides no numerator *or* denominator for this allegation.  Nor does JBR even assert that "away from home" and "at home" distribution of coffee are separate relevant markets in the first instance.  *See Wellnx*, 516 F. Supp. 2d at 295 n.8.  The inadequacy of these allegations is further highlighted by the fact that JBR is challenging purported exclusive distribution contracts, which are "presumptively legal."  *PepsiCo*, 315 F.3d at 110; *Wellnx*, 516 F. Supp. 2d at 293 (noting pro-competitive effects of such contracts).

Finally, this claim fails because JBR successfully uses alternative methods of distribution to reach consumers, including retailers (Compl. ¶ 36), third-party websites (Compl. ¶ 117), and its own website.  This, too, is fatal to its exclusive dealing claims:  There is no foreclosure where "competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution."  *See CDC Techs.*, 186 F.3d at 80 (quoting *Omega Envtl. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997)).

## 2.    No Substantial Foreclosure Of Retailers

JBR alleges vaguely that Keurig has exclusive contracts with retailers.[12]  JBR makes no specific allegations about these alleged agreements.  It does not allege how many such contracts exist, what they cover, which retailers they are with, or how they result in substantial foreclosure of a relevant market.  Compl. ¶¶ 78-79.  These claims should be dismissed.  *See, e.g.*, *Insignia*

---

[12] In contrast, JBR offers specific allegations about its own retail relationships, emphasizing how it has succeeded using various, specifically-identified retail channels such as Amazon.  *See, e.g.*, Compl. ¶ 117.

*Sys.*, 2005 WL 2063890, at *3 ("[A]bsent some indication of the percentage of the local, regional, or national markets that the 35,000 retail outlets allegedly under exclusive contract constitute, it is impossible to evaluate the percentage of the market" foreclosed.).

### 3.    JBR's Growth Is Fatal To All Of Its Exclusive Dealing Claims

JBR alleges its sales of portion packs have grown over the past few years.  Compl. ¶ 10. This undermines any claim of foreclosure.  *See CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 80-81 (2d Cir. 1999); *Omega Envtl.*, 127 F.3d at 1164 (no foreclosure where competitor's share grew from 6% to 8%); *Bowen v. N.Y. News, Inc.*, 366 F. Supp. 651, 679 (S.D.N.Y. 1973) (dismissing exclusive dealing claim where competitors "remained in the market" and "successfully competed"), *aff'd in part and rev'd in part on other grounds*, 522 F.2d 1242 (2d Cir. 1975).

### C.    Patent Litigation Claims Fail

### 1.    Sham Litigation Claim Fails For Lack Of Objective And Subjective Baselessness

For a plaintiff to state an antitrust claim based on purported sham litigation, it must allege that the litigation at issue was both objectively and subjectively baseless.  *PRE*, 508 U.S. at 60-61.  The plaintiff must also allege all of the other elements of a monopolization claim, including antitrust injury.  *Id*. at 60-61.  JBR fails to meet these requirements here.

*First,* JBR fails to allege that the prior litigation was objectively baseless.  JBR makes conclusory assertions that the litigation was "baseless" and that Keurig acted in "bad faith." Compl. ¶¶ 72, 148, 153.  These are nothing more than a "formulaic recitation of the elements," which "will not do."  *Twombly*, 550 U.S. at 555.  The only concrete factual allegation JBR makes about the prior litigation is that Keurig lost.  *Id*. ¶ 67.  But "an unsuccessful lawsuit, without more, is not a sham."  *AstraZeneca AB v. Mylan Labs.*, Nos. 00 Civ. 6749, 03 Civ. 6057, 2010 WL 2079722, at *4 (S.D.N.Y. May 19, 2010); *see also PRE*, 508 U.S. at 60-61 n.5 ("[Courts]

must 'resist the understandable temptation to engage in *post hoc* reasoning by concluding' that an ultimately unsuccessful 'action must have been unreasonable or without foundation.'").

*Second,* JBR fails to allege that litigation was subjectively baseless, that is, initiated to interfere with competitors.  *PRE*, 508 U.S. at 60.  JBR offers only conclusory allegations that "the purpose of Keurig's objectively baseless lawsuits [was] . . . to intimidate its competitors." Compl. ¶ 72.  Once again, reciting the elements of a claim falls far short of stating a claim.

Moreover, JBR's contemporaneous conduct contradicts its allegations.  JBR never filed a motion to dismiss, as defendants do when facing baseless litigation.  *See* Dkt., *Keurig, Inc. v. JBR, Inc. d/b/a Rogers Family Co.*, Civ. A. No. 11-11941-FDS (D. Mass. Nov. 12, 2011).  And JBR never sought to recover attorneys' fees, as it could have done if the suits were "objectively baseless" and "brought in subjective bad faith."  *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F. 3d 1378, 1381 (Fed. Cir. 2005).[13]

*Third*, JBR fails to allege antitrust injury.  *See PRE*, 508 U.S. at 61.  Beyond a throwaway assertion that competition has "been harmed," JBR alleges only that it was "forced to incur" legal fees.  Compl. ¶ 156.  At most, these allegations suggest harm to JBR, not harm to competition.  *See Gatt Commc'ns*, 711 F.3d at 75 (dismissing for failure to allege antitrust injury); *see also Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 488 (8th Cir. 1985) (dismissing sham litigation claims for failure to allege antitrust injury where plaintiff incurred at least $700,000 in legal fees).

## 2. Patent Misuse Claim Fails For Lack Of A Live Controversy

JBR demands a declaratory judgment of misuse of unspecified patents based on Keurig's

---

[13] The test was modified in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, No.12-1184, __ U.S. __, 134 S. Ct. 1749 (Apr. 29, 2014), but the *Brooks* standard applied at the time JBR opted not to seek fees.

conduct in the same now-completed litigation.[14]  Patent misuse is an equitable doctrine that allows courts to decline to enforce a patent when the patentee has "impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect."  *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997).  The doctrine is inapplicable here.

Among other things, this Court lacks subject matter jurisdiction to adjudicate the issue because there is no "actual controversy."  28 U.S.C. § 2201(a); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1379 (Fed. Cir. 2010).  For there to be a case or controversy under Article III, a plaintiff must demonstrate an "immediate and real controversy" including an "affirmative act" by a party relating to the enforcement of its patents; a mere "subjective" fear of harm will not suffice.  *Prasco LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338-39 (Fed. Cir. 2008) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).  The only conduct JBR alleges to be misuse is the prior, resolved patent litigation.  Compl. ¶¶ 157-62.  This is not an "affirmative act" creating a live controversy and conferring jurisdiction on this Court.  *See Lorenz v. F. W. Woolworth Co.*, 195 F. Supp. 719, 724 (S.D.N.Y. 1961), *aff'd*, 305 F.2d 102 (2d Cir. 1962).

In addition, JBR's patent misuse claim fails because the only fact JBR alleges is that Keurig lost the prior litigation, which is not enough to plead misuse.  "The bringing of a lawsuit to enforce legal rights does not of itself constitute . . . patent misuse."  *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply*, 45 F.3d 1550, 1558 (Fed. Cir. 1995) (applying *PRE* standard to patent misuse claim).  JBR's remaining allegations are labels and conclusions (for example, that Keurig threatens to "broaden[] the scope of its patents" or engage in "an unlawful

---

[14] JBR seeks a declaration that Keurig "brewer and method patents are unenforceable" as to its OneCups.  Compl. at p. 41 ¶ B.  JBR has not identified which patents are unenforceable, much less why, or why such relief is necessary given the prior litigation has ended.  *See Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010) ("There is no such thing as misuse in the air.  The misuse must be of the patent in suit.").

tying arrangement," Compl. ¶¶ 160-61) and are plainly insufficient to state a claim.  *Iqbal*, 556 U.S. at 678; *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 135-36 (2d Cir. 2014).

**D.    Marketing Claims Fail Because JBR Offers No Plausible Allegations To Overcome The Presumption That Such Statements Do Not Affect Competition**

JBR asserts in conclusory fashion that Keurig made "false" and "disparaging" comments about competitors' products in violation of the Sherman Act.  Compl. ¶¶ 81, 188.  JBR cites a March 26, 2012, letter from Keurig to its distributors (the "March 26 Letter") stating that Keurig has not tested competitor portion packs and thus cannot "ensure the quality, consistency and safety of our brewing systems for our mutual end consumers."  *Id.* ¶ 82.  JBR also asserts Keurig told "multiple potential customers" that JBR's portion packs "were not safe to use in K-Cup Brewers and, over time, would cause the K-Cup Brewers to malfunction."  *Id.* ¶ 83; *id.* ¶ 187 (similar allegation that Keurig told retailers JBR's products would "gum up" Keurig's brewers).

Courts are deeply skeptical of antitrust claims based on allegedly disparaging marketing.  *See, e.g.*, *Berkey Photo*, 603 F.2d at 288 & n.41; *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997).[15]  As the courts have explained, if a company thinks that its competitor used improper marketing, the remedy is "not antitrust litigation but more speech—the marketplace of ideas."  *See Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 400 (7th Cir. 1989); *Sanderson*, 415 F.3d at 623.

The Second Circuit has held that, "[b]efore we would allow misrepresentation to buyers to be the basis of a competitor's treble damage action under § 2, we would at least require the plaintiff to overcome a presumption that the effect on competition of such a practice was [d]e minimis."  *Berkey Photo*, 603 F.2d at 288 & n. 41; Mem. & Order at 18, Sept. 19, 2014, ECF No. 160.  The only way for a plaintiff to overcome this presumption is to provide allegations showing

---

[15] The Ninth Circuit has adopted the Second Circuit's *Ayerst* test, *American Professional Testing Service, Inc.*, 108 F.3d at 1151, and thus this case interprets Second Circuit law.

the statements "were (1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, **and** (6) not readily susceptible of neutralization or other offset by rivals." *Nat'l Ass'n of Pharm. Mfrs.*, 850 F.2d at 916 (emphasis added).  JBR fails to offer allegations to satisfy any of the elements of this test, much less all of them.

*Not clearly false.*  JBR alleges that the March 26 Letter stated that Keurig could not "ensure the quality, consistency and safety" of competing portion packs because it had not tested them.  Compl. ¶ 82.  JBR further alleges that Keurig in fact did *not* test competing portion packs. *Id.*  JBR's allegations show the challenged statement to be *true.  See, e.g.*, *MultiVideo Labs, Inc. v. Intel Corp.*, No. 99-CVI-3908 (DLC), 2000 WL 12122 (S.D.N.Y. Jan. 7, 2000) (rejecting claims where plaintiff no longer argued that challenged statements were false); *Duty Free Ams., Inc. v. Estee Lauder Cos.*, No. 12-60741-Civ., 2014 WL 1329359 (S.D. Fla. Mar. 31, 2014) (same).

*Not clearly material* or *reasonably likely to induce reasonable reliance.*  JBR makes only a conclusory assertion that the statements at issue resulted in decreased sales: JBR offers no factual allegations to support any such effect.  Compl. ¶ 190.  Nor does JBR allege that the statements were clearly likely to induce reasonable reliance.  Courts routinely dismiss product disparagement claims that fail to support assertions of reasonable reliance.  *See Eon Labs Mfg., Inc. v. Watson Pharm., Inc.*, 164 F. Supp. 2d 350, 361 (S.D.N.Y. 2001) (dismissing disparagement claims when the representations were not "clearly likely to induce reasonable reliance"); *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002) (same).

*Not made to buyers without knowledge.*  Nor were the challenged statements allegedly made to unsophisticated customers.  To the contrary, JBR alleges the March 26 Letter and the "promotional material" were directed to distributors and retailers, companies in the business of

selling, and "sufficiently sophisticated so as not to be fooled easily." *Tate*, 230 F. Supp. at 1080; *see also, e.g.*, *Walgreen Co. v. AstraZeneca Pharm. L.P.*, 534 F. Supp. 2d 146, 152 (D.D.C. 2008) (dismissing Section 2 disparagement claim based on statements about drugs made to doctors).

*Not prolonged.*  Allegations of one (truthful) letter and a couple of vague statements to unidentified retailers are exactly the sort of "sporadic activity" that fails to meet the requirement that the conduct continue for prolonged periods.  *See Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930-31 (4th Cir. 1990).

*Susceptible to neutralization.*  Finally, JBR offers no allegations about why it would be unable to take steps to neutralize the alleged statements.  When faced with what it believes is misleading marketing, JBR's response should be to "tout the virtues of its product," not to bring an antitrust suit.  *See, e.g.*, *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 527 (5th Cir. 1999); *Schachar*, 870 F.2d at 400.  JBR confirms it had the opportunity to respond to customers. Compl. ¶ 83.  Because JBR did not allege the statements were not susceptible to neutralization, the claims must be dismissed.  *Am. Council of Cert. Podiatric Physicians v. Am. Bd. of Podiatric Surgery*, 323 F.3d 366, 372 (6th Cir. 2003) (rejecting Sherman Act claim when plaintiff had an opportunity to try to neutralize); *see also Am. Prof'l Testing Serv.*, 108 F.3d at 1152 ("[T]he test refers to 'susceptible to neutralization' not 'successful in neutralization.'"); *Tate*, 230 F. Supp. at 1080 (dismissing for failure to allege "violations were not readily susceptible to neutralization").

*No antitrust injury.*  A plaintiff bringing a disparagement claim must also allege antitrust injury from the purported marketing conduct, which JBR fails to do.  JBR asserts that the alleged statements allowed Keurig "to charge supracompetitive prices," but provides no factual heft in support of this conclusion.  Compl. ¶ 132.  As a general matter, "allegations of business disparagement are not the type of injuries to competition that the antitrust laws were designed to prevent."  *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 382 (S.D.N.Y. 2007)

("*Xerox I*").  Indeed, in *Xerox I*, the court dismissed disparagement claims for failure to explain

how statements that plaintiff's product "damages Xerox printers . . . affected competition

generally, and did not just cause [plaintiff] economic injury."  *Id.* at 382.  JBR's claims should be

dismissed for precisely this reason.

> **E.      All Section 2 Claims Fail For Lack Of Monopoly Power In A Properly-Defined Relevant Market**

Even if JBR had alleged anticompetitive conduct, which it has not, a Section 2 plaintiff

must also allege (1) a properly defined relevant market *and* either (2) monopoly power for a

monopolization claim *or* (3) a dangerous probability of attaining such power for an attempted

monopolization claim.  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Spectrum

Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).  JBR fails in all respects.

> **1.      Proposed Market Definitions Are Implausibly Narrow**

In order to survive a motion to dismiss, a Section 2 complaint must include a well-

pleaded product market.  *Chapman*, 546 F.3d at 238; *Commercial Data Servers, Inc. v. Int'l Bus.

Machs. Corp.*, 166 F. Supp. 2d 891, 897-98 (S.D.N.Y. 2001).  A well-pleaded market must

include all products "reasonably interchangeable by consumers for the same purposes."  *United

States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  And the plaintiff must plead

facts justifying its proposed market as opposed to a broader or narrower one.  *See Bayer

Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 577-78 (S.D.N.Y. 2011) (dismissing

complaint lacking sufficient allegations about potentially competitive products to make proposed

market plausible).  To this end, the plaintiff must focus on alternatives reasonably available to

customers.  *See, e.g.*, *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 496 (2d Cir.

2004) (rejecting the concept of a "submarket" as distinct from a market); *Re-Alco Indus., Inc. v.

Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993) (dismissal appropriate

where complaint fails "to distinguish among apparently comparable products"); *Global Disc. Travel Servs., LLC* v. *Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) (Sotomayor, J.) (similar); *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 469 (1992).

JBR alleges markets and "submarkets" for (a) "Single-Serve Brewers," and (b) "Portion Packs" (or in the alternative "Compatible Portion Packs").  Compl. ¶ 12.  All of these purported markets are implausibly narrow.

      a)      **"Single-Serve Brewer Market" Omits Reasonable Substitutes**

JBR fails to allege facts making it plausible that consumers do not consider ways other than single-serve to obtain coffee, for example drip coffeemakers, other brewers, and coffee shops.  *See Re-Alco Indus.*, 812 F. Supp. at 391 (dismissing for failure "to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand"); *see also Chapman*, 546 F.3d at 238 (affirming dismissal where proposed market "clearly [did] not encompass all interchangeable substitute products"); *Smugglers Notch*, 414 F. App'x at 375-76 (affirming dismissal where proposed market excluded seemingly interchangeable properties); *Commercial Data Servers*, 166 F. Supp. 2d at 897-98 (dismissing for failure to allege plausible market limited to mainframe computers).

JBR claims "[c]onsumers are willing to pay a premium for Single-Serve Brewers" over, for example, drip brewers.  Compl. ¶ 14.  But simply alleging price and quality differences does not define a market.  *Ad/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 228 (2d Cir. 1999); *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 840 (2d Cir. 1980); *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-MD-1628 RMB-MHD, 2009 WL

3241401, at *11 (S.D.N.Y. Sept. 30, 2009).[16]

JBR also alleges that single-serve involves a more convenient process than traditional ground coffee.  Compl. ¶ 14.  But a difference in process does not create a plausible inference that end products do not compete.  *See Bayer Schering*, 813 F. Supp. 2d at 578 (dismissing where plaintiff "failed to plead sufficient facts to demonstrate that no two-drug combination is an acceptable substitute for" defendant's single drug); *Global Disc.*, 960 F. Supp. at 706 (Sotomayor, J.) ("Plaintiff has made no reasonable showing why TWA airline tickets for travel between certain cities should be considered a market unto itself, as distinguished from the market consisting of all airline tickets for travel between the paired cities.").

Finally, the product at the heart of this case—the 2.0 brewer—is not single-serve-only and is marketed directly against drip brewers.  *See* Ex. 1, Stifel Report at 2-3 (relied upon in Compl. ¶¶ 11, 21, 90, 93).  This competition fundamentally undermines JBR's alleged markets, all of which depend on distinguishing between single-serve and multi-serve brewers.

b)    **"Single-Serve Portion Pack Market" Omits Reasonable Substitutes**

JBR's alleged Portion Pack and Compatible Portion Pack markets fail for similar reasons.  As a federal court dismissing a complaint against Keurig recently noted, a market must include "all products that are reasonably interchangeable with the K-Cup brewers and coffee packs."  *Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-02031, 2012 WL 511485, at *5 (W.D. Ark. Feb. 15, 2012).  Yet JBR fails to allege facts explaining why a price increase on portion packs would not, for example, encourage consumers to buy fewer portion packs and more ground coffee or coffee from coffee shops.[17]  Instead, materials relied upon in the

---

[16] JBR's own allegations of large price differentials even within single-serve brewers further undermines its proposed market.  *See* Compl. ¶ 14 (Single-Serve Brewers sell "for approximately $100 to $250").

[17] JBR relies on an alleged price differential at least as to ground coffee.  *See* Compl. ¶ 25.  But, again, a price differential is insufficient to support a separate relevant market.  *Ad/SAT*, 181 F.3d at 228.

complaints suggest Keurig brewer owners regularly buy coffee at Starbucks and own drip brewers.[18]

### 2.   Failure To Allege Facts Showing Monopoly Power

Once a plaintiff has defined a relevant market, it must allege monopoly power in that market.  *See, e.g.*, *PepsiCo*, 315 F.3d at 105.  JBR fails to do so here.

### a)   No Brewer Monopoly Based On Either 1.0 Installed Base Or New 2.0 Brewer, Which Has Near 0% Share

JBR claims Keurig has sold 30 million 1.0 brewers and this gives Keurig a high share, which must mean that Keurig has monopoly power.  Compl. ¶ 17.  But monopoly power is "the power to control prices or exclude competition."  *E.I. du Pont de Nemours & Co.*, 351 U.S. at 391.  The complaint contains no allegations that the installed 1.0 base gives Keurig *any* power to raise prices or exclude competition on brewers.  In fact, JBR alleges that Keurig sells its brewers at or below cost, Compl. ¶ 48, and it acknowledges the existence of many brewer competitors (including "compatible" brewers).[19]  Nor does JBR claim the installed 1.0 base makes it easier to sell 2.0 brewers.  In fact, JBR alleges Keurig's 1.0 installed base gave it *no* ability to secure sales for a new brewer in the past.  Compl. ¶ 103 (discussing Vue brewer).

JBR's complaint also makes clear that the 1.0 installed base does not give Keurig monopoly power in portion packs.  JBR alleges that it and other competitors started selling portion packs and that Keurig immediately lost share.  *Id.* ¶ 36.  These allegations show that, not

---

[18] *See, e.g.*, Ex. 3, <u>Single-Serve Coffee: Consumers Speak Out</u>, Morgan Stanley, Mar. 7, 2011, at 4-7, 10 (relied upon in Compl. ¶ 21) ("44% of [Starbucks] customers report having a single-serve machine at home," survey respondents said owning a single-serve system caused them to drink less other coffee at home (13%), work (14%), and restaurants (12%), and that one of their "most significant opportunities or dissatisfactions" is price); Ex. 4, <u>Green Mountain Coffee Roasters F1Q 2014 Earnings Call Tr.</u>, Feb. 5, 2014 ("GMCR Tr., Feb. 5, 2014") (relied upon in Compl. ¶¶ 89, 108) (25% of 1.0 owners also own another brewer, *e.g.*, a drip brewer).

[19] JBR acknowledges that Keurig competes with the "Gevalia," "Flavia," "Tassimo," "Senseo," "Nespresso," "Dolce Gusto," and "Verismo" brewing systems, Compl. ¶ 19, and with "brands such as Mr. Coffee, Cuisinart, and Breville," who offer 1.0 brewers, *id.* ¶ 18.

only does the 1.0 installed base not give Keurig monopoly power in portion packs, it actually

helps competitors like JBR by providing them with a large pool of potential customers.

In short, the complaint negates any suggestion of monopoly power based on alleged

historic market share.  And, as for the 2.0 brewer, it cannot have monopoly power—indeed, it

had not even been released at the time the complaint was filed.  *Id*. ¶¶ 84-112.

**b)**     <u>**No Portion Pack Monopoly In Light Of Established Test For**</u>
<u>**Monopoly In An Aftermarket**</u>

JBR also claims Keurig has monopoly power based on Keurig's purportedly high share in

"portion packs" or "compatible portion packs."  Following the Supreme Court's decision in

*Eastman Kodak*, however, where a company sells a "foremarket" or "primary" product and an

aftermarket product, a high share in the aftermarket product *does not demonstrate monopoly*

*power*.  *See Xerox III*, 660 F. Supp. 2d at 544 (market power "analysis is substantially different

in cases involving . . . [an] aftermarket").[20]  Instead, to plead monopoly power in an aftermarket,

a plaintiff must allege that customers who own the primary good are "'locked in' by the

prohibitive costs of switching to an alternate product" and that the defendant coerced them into

buying the primary product.  *Xerox III*, 660 F. Supp. 2d at 547; *Smugglers Notch*, 414 F. App'x

at 377 (affirming dismissal for failure to allege aftermarket lock-in).

JBR fails this test.  As the Second Circuit has explained, there is no viable claim of lock-

in where a defendant announces aftermarket restrictions up front.  *Smugglers Notch*, 414 F.

App'x at 377; *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 87 (2d Cir. 2000)

(affirming dismissal where policies were disclosed in advance), *abrogated on other grounds by*

---

[20] *See also, e.g.*, *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381-82 (3d Cir. 2005) ("[H]igh aftermarket share is not necessarily indicative of monopoly power"); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 17-18 (1st Cir. 1999) (same).  In these cases, courts have declined to find monopoly power despite aftermarket shares exceeding 90%.  *See, e.g.*, *Xerox III*, 660 F. Supp. 2d at 540, 550 (90-97% share); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 11 F. Supp. 2d 166, 167, 169 (D. Mass. 1998) (91% share).

18

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  JBR concedes that Keurig disclosed that the 2.0 brewer was designed as a closed system.  *See* Compl. ¶¶ 84-88, 96-98.  There is no claim that consumers were misled about this.  *See, e.g.*, *DSM Desotech*, 749 F.3d at 1346 & n.6 (customers who learn of proprietary technology before buying equipment cannot be exploited); *PSI Repair Servs.*, 104 F.3d at 820 (plaintiff cannot succeed "when the defendant has not changed its policy after locking-in some of its customers"); *Digital Equip. Corp.*, 73 F.3d at 763.

In addition, even where a manufacturer changes its policy after consumers purchase the primary product, a plaintiff must allege that high switching costs keep consumers from changing their primary product in response.  *See Xerox III*, 660 F. Supp. 2d at 548.  JBR fails to allege facts showing high switching costs here.  JBR alleges that entry level Keurig brewers are about the same price as high end drip coffee makers.  Ex. 4, GMCR Tr., Feb. 5, 2014 (relied upon in Compl. ¶ 89).  Alternative ways to brew coffee are even cheaper.  *See* Compl. ¶ 14 (drip coffee makers from $20 to $100).  As noted in *Xerox III*, an "economically rational user will switch to an alternate [primary product] in response to changes in the cost of [aftermarket products] if the savings . . . outweigh the additional cost of a new [primary] purchase."  660 F. Supp. 2d at 547.  JBR has wholly failed to allege monopoly power in its purported portion pack markets.

### 3.   JBR's Growth Proves No Dangerous Probability of Monopoly Power

A claim of attempted monopolization requires the same elements as a claim of monopolization in all respects but one: Rather than monopoly power, the plaintiff must allege that the conduct at issue created a "dangerous probability" of successfully monopolizing.  *See Spectrum Sports*, 506 U.S. at 456.  Claims that fail to allege a dangerous probability of success are routinely dismissed.  *See, e.g.*, *Bayer Schering*, 813 F. Supp. 2d at 580; *B.V. Optische Industrie De Oude Delft v. Hologic*, 909 F. Supp. 162, 171-72 (S.D.N.Y. 1995); *AF Gloenco Inc. v. Ushers Mach. & Tool Co., Inc.*, No. 1:10-cv-1128 (GLS/RFT), 2011 WL 4593741, at *2

(N.D.N.Y. Sept. 30, 2011).

JBR does not allege a dangerous probability that Keurig is heading toward successfully monopolizing any relevant market.  To the contrary, JBR alleges that it has *expanded* its sales of 1.0-compatible cups during the relevant period, Compl. ¶ 10, despite the purported sham litigation, the alleged exclusive dealing, and Keurig's actual introduction of a brewer not compatible with JBR's (or other competitors') portion packs in 2012 (the Vue).  This negates any assertion of a dangerous probability of monopolizing.  *See Bayer Schering*, 813 F. Supp. 2d at 580.[21]

Nor does JBR properly allege a specific intent to monopolize as distinct from a lawful desire to expand Keurig's own business.[22]  *Great Escape, Inc. v. Union City Body Co., Inc.*, 791 F.2d 532, 541 (7th Cir. 1986) ("All lawful competition aims to defeat and drive out competitors. Therefore, the mere intention to exclude competition and to expand one's own business is not sufficient to show a specific intent to monopolize.").

### F.   All Section 2 Claims Fail For Lack Of Standing Because JBR Lacks Antitrust Injury

It is axiomatic that the antitrust laws "were enacted for the protection of competition not competitors."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).  To have standing, a plaintiff must allege antitrust injury—that is, "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market;" an allegation that the plaintiff "has been harmed as an individual competitor will not suffice."  *George Haug v. Rolls*

---

[21] The failure to allege a dangerous probability of success is also fatal to JBR's purported "monopoly leveraging" claim, Compl. ¶¶ 141-46.  To the extent monopoly leveraging is a distinct cause of action, it requires that a plaintiff allege a dangerous probability of success at monopolizing a second market.  *See Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004).

[22] *See* Ex. 4, GMCR Tr., Feb. 5, 2014 (relied upon in Compl. ¶¶ 32, 35, 89) ("Current Keurig brewer owners and non-owners alike told us the brewer functionality they wanted most was the ability to brew both the single-serving and a pot of coffee from one system with Keurig's speed, convenience and brand choice.").

*Royce Motor Cars*, 148 F.3d 136, 139 (2d Cir. 1998); *Gatt Commc'ns*, 711 F.3d at 75

("'[A]ntitrust standing is a threshold, pleading-stage inquiry . . . .'"); *Eon Labs.*, 164 F. Supp. 2d

at 357.

JBR fails to allege antitrust injury here, and this requires dismissal of all of its Sherman

Act claims. *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 244-

45 (2d Cir. 1997); *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 28-29 (2d Cir.

2006). As its complaint makes clear, JBR is complaining about competition, which the antitrust

laws not only do not prohibit, but actively encourage. For example, JBR asserts that the 2.0

brewer is not innovative. Compl. ¶ 88. If this is true, consumers will not buy it, and JBR will

have no injury. If, however, JBR is wrong and consumers like the new brewer, then any injury

to JBR would be a result of a superior product and increased competition, and this is not antitrust

injury. Either way, the market should decide. *See Eon Labs.*, 164 F. Supp. 2d at 358 (dismissing

for lack of antitrust injury where defendant brought a new drug to market, thereby depriving

plaintiff of expected sales); *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG AJWX,

2011 WL 1296602, at *9 (C.D. Cal. Apr. 5, 2011) (dismissing for lack of antitrust injury where

plaintiff accused defendant of introducing a "product or service improvement as a way to

increase market share"). As the Supreme Court has explained, when a plaintiff loses business

due to competition, that loss "is not of concern under the antitrust laws." *Cargill, Inc. v. Monfort

of Colo., Inc.*, 479 U.S. 104, 116 (1986).

## II.     JBR Fails To State A Claim Under The Lanham Act Because It Fails To Allege Keurig's Statements Were False Or Were Advertising

JBR also brings a false advertising claim under the Lanham Act based on the same few

vague allegations it alleged in support of its Section 2 marketing claims. A false advertising

claim under the Lanham Act requires a plaintiff to plead that a defendant made a statement about

its own goods or a competitor's goods (1) in commercial advertising or promotion that (2) was false or misleading.  *See* 15 U.S.C. § 1125(a)(1)(B); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002) (citing statute).  JBR fails on both elements.

*First*, JBR does not allege that Keurig's statements were commercial advertising or promotion.  The Lanham Act "does not have boundless application"—it is "limited to false advertising as that term is generally understood."  *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1978).  The alleged false statements must be (1) commercial speech, (2) made "'for the purpose of influencing consumers to buy defendant's goods or services,'" *and* (3) "disseminated sufficiently to the relevant purchasing public," *i.e.*, "part of an organized campaign to penetrate the relevant market."  *Fashion Boutique*, 314 F.3d at 57-58.

*Not commercial speech made to consumers.*  Communications with retailers, like the alleged March 26 Letter and the other alleged communications to "distributors and/or retailer customers," Compl. ¶ 187, fail from the outset.  *See Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017 (KMK), 2007 WL 2781246, at *9 (S.D.N.Y. Sept. 24, 2007) (statements made in 400+ letters to existing retailer customers were not commercial advertising or promotion).

*No widespread dissemination.*  The vague and conclusory allegation that Keurig told "multiple" potential customers that JBR's portion packs were "not safe," Compl. ¶ 83, fails to meet the dissemination requirement.  *See Fashion Boutique*, 314 F.3d at 57-58 (statements to 27 customers did not show "widespread dissemination"); *Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722 ,729 (S.D.N.Y. 2004) (statements to one of 36 customers did not satisfy dissemination requirement); *Mario Valente Collezioni Ltd. v. AAK LTD.*, 280 F. Supp. 2d 244, 256-57 (S.D.N.Y. 2003) (statements to two retailers did not satisfy dissemination requirement).

*Second*, JBR fails to allege that the statements were either false or likely to mislead.  To the contrary, JBR alleges that the statements in the March 26 Letter were true.  Compl. ¶ 82.

True statements cannot support a Lanham Act claim unless they are "likely to deceive or confuse customers."  *Nat'l Lighting Co. v. Bridge Metal Indus. LLC*, 601 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2009) (granting motion to dismiss where allegations indicated purportedly misleading statement was true); *see also, e.g.*, 15 U.S.C. § 1125(a)(1)(B); *Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 262, 268-69 (S.D.N.Y. 2011) (granting motion to dismiss where plaintiffs failed to allege statement was false).  As to the other statements, JBR's conclusory assertions of falsity and likeliness to mislead are insufficient.

### III.   JBR's State Law Claims Fail For The Same Reasons As Its Federal Claims

JBR brings deficient claims under two California statutes—the Cartwright Act and the Unfair Competition Law.  To the extent that JBR's Cartwright Act claims are based on Keurig's purported unilateral conduct (that is, the conduct underlying JBR's Sherman Act Section 2 claims), Compl. ¶ 192, these claims fail because the Cartwright Act "does not address *unilateral* conduct."  *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986); *accord Templin v. Times Mirror Cable Television, Inc.*, 56 F.3d 73 (9th Cir. 1995).  To the extent JBR is basing its Cartwright Act claims on purported coordinated conduct, those claims fail for the same reasons that JBR's parallel federal claims fail.  *See Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (Cal. 2013) (noting that federal antitrust law can be instructive when construing the Cartwright Act).

Nor can §§17200 et seq. of the California Unfair Competition Law—or "common law unfair competition"[23]—save deficient Sherman Act or Lanham Act claims.  Following *Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), courts have

---

[23] JBR's failure to identify under which state's common law of unfair competition it is proceeding is an independent basis for dismissal of this claim.  Compl. ¶ 194; *see Raghavendra v. Trustees of Columbia Univ.*, No. 06 Civ. 6841(PAC)(HBP), 2012 WL 3778714, at *11 n.18 (S.D.N.Y. July 11, 2012) ("Plaintiff's reference to unspecified common laws does not provide the Columbia Defendants with notice of the nature of his claims—a threshold requirement for pleadings under Rule 8(a)(2).").

consistently rejected claims by competitors and uniformly held that dismissal of Sherman Act claims "precludes a finding of unfair competition."  *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008); *accord Chavez. v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (Cal. Ct. App. 2d Dist. 2001) (same); *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000) (same).  The same rule requires dismissal of JBR's unfair competition claims to the extent they are premised on deficient Lanham Act claims.  *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions [brought] pursuant to California Business and Professions Code section 172000 are 'substantially congruent' to claims made under the Lanham Act.").  JBR's state law unfair competition claims fail for the same reasons as its federal antitrust claims.

JBR's claim for intentional interference with prospective economic advantage (presumably under California law) fails because "there exists a broad privilege afforded to a competitor to divert a prospective relationship to itself."  *Orion Tire Corp. v. Gen. Tire, Inc.*, CV 92-2391AAH(EEX), 1992 WL 295224, at *3 (C.D. Cal. Aug. 17, 1992); *see also Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 60 Cal. Rptr. 2d 830, 833 (Cal. Ct. App. 1997) (affirming ruling that "fair competition privilege was a complete defense to plaintiff's claim for interference with prospective economic advantage").  Where, as here, the competitor's privilege is clear on the face of the complaint, the plaintiff must affirmatively address the issue to survive a motion to dismiss.  *See Orion Tire Corp.*, 1992 WL 295224, at *2.  JBR has not.

**CONCLUSION**

For the foregoing reasons, Keurig respectfully requests that JBR's complaint be dismissed in its entirety.  In addition, Keurig respectfully requests that, if JBR chooses not to amend its complaint in response to this motion, its complaint be dismissed with prejudice.[24]

---

[24] *See Ulrich v. Moody's Corp.*, No. 13-CV-00008 (VSB), 2014 U.S. Dist. LEXIS 138082, at *52-53 (S.D.N.Y. Sept. 30, 2014) (dismissing where plaintiff did not amend after being notified of shortcomings); ECF No. 4, Pilot Project Rule A.4(c) ("If plaintiff does not choose to amend, the plaintiff shall be given no further opportunity to amend the complaint to address the issues raised by the pending motion."); Hr'g Tr. 32:2-18, June 19, 2014 (amendment after first opportunity shall be for good cause shown).

Dated:  October 6, 2014
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON

/s/ George S. Cary

By:   _____

**George S. Cary**
**Leah Brannon**
**Elaine Ewing**
*gcary@cgsh.com*
*lbrannon@cgsh.com*
*eewing@cgsh.com*
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:   (202) 974-1500

**Lev L. Dassin**
**Danielle Mindlin**
*ldassin@cgsh.com*
*dmindlin@cgsh.com*
One Liberty Plaza
New York, New York 10006
Telephone:   (212) 225-2790

**Wendelynne J. Newton**
*wendelynne.newton@bipc.com*
BUCHANAN INGERSOLL & ROONEY
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, Pennsylvania 15219
Telephone:   (412) 562-8932

*Attorneys for Defendant Keurig Green Mountain,*
*Inc., f/k/a Green Mountain Coffee Roasters, Inc.,*
*and as successor to Keurig, Incorporated*