**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
|  | : | No. 1:14-md-02542 (VSB) |
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE | : |  |
| COFFEE ANTITRUST LITIGATION | : |  |
|  | : |  |

-------------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

Page

Table Of Authorities ................................................................................................. iii

Introduction .............................................................................................................. 1

Statement Of Relevant Facts .................................................................................... 3

Legal Standard ......................................................................................................... 4

Argument ................................................................................................................. 4

I.      IPPs Lack Standing To Bring Their Claims ................................................. 4

        A.      IPPs Do Not Plausibly Allege They Were Forced To Buy K-Cups .......... 5

        B.      IPPs Are Not Efficient Enforcers Of The Antitrust Laws ......................... 7

        C.      IPPs Do Not Adequately Allege Pass On ................................................. 9

        D.      IPPs Lack Standing To Assert Claims Under The Law Of States
                Where No Named Plaintiff Resides Or Was Harmed .............................. 10

II.     IPPs' Monopolization Claims Fail As A Matter of Law ............................... 12

        A.      Exclusive Dealing Claims Fail Because IPPs Fail To Allege
                Substantial Foreclosure ......................................................................... 12

                1.      No Substantial Foreclosure Of Suppliers .................................... 12

                2.      No Substantial Foreclosure Of Distributors ................................ 13

                3.      No Substantial Foreclosure Of Retailers ..................................... 14

                4.      No Substantial Foreclosure Of Brands ........................................ 15

                5.      Competitors' Growth Is Fatal To All Of IPPs' Exclusive
                        Dealing Claims .......................................................................... 16

        B.      All Of IPPs' Monopolization Claims Fail For Lack Of Monopoly
                Power In A Properly-Defined Relevant Market ...................................... 16

                1.      Proposed Market Definitions Are Implausibly Narrow ............... 16

                a)      "Single-Serve Brewer" Market Omits Reasonable
                        Substitutes ................................................................................ 16

                b)      IPPs' Compatible Cup Market Omits Reasonable
                        Substitutes ................................................................................ 17

                2.      IPPs Fail To Allege Facts Showing Monopoly Power ................. 18

                a)      No Brewer Monopoly Based On 1.0 Installed Base .................... 18

                b)      No Portion Pack Monopoly In Light Of Established Test
                        For Monopoly In An Aftermarket ............................................... 18

3.      Competitors' Growth Proves No Dangerous Probability Of
        Monopoly ................................................................................................ 20

III.    Conspiracy And Group Boycott Allegations Fail For Lack Of Plausible
        Allegations Of Unlawful Horizontal Agreements ........................................... 20

IV.     IPPs Fail To State A Claim Under State Law ................................................... 22

        A.      Each Of The Relevant States Interprets Its Antitrust Laws In
                Parallel With—Or More Narrowly Than—Federal Law ....................... 22

        B.      IPPs' California Unfair Competition Law Claim Fails Because The
                Claim Relies Upon IPPs' Flawed Antitrust Claims ................................. 22

        C.      IPPs Have Not Alleged A Substantial Effect on *Intra*state
                Commerce .............................................................................................. 23

        D.      IPPs' Consumer Protection Claims Fail With IPPs' Flawed
                Antitrust Claims ..................................................................................... 23

V.      IPPs' Unjust Enrichment Claims Must Be Dismissed ..................................... 24

        A.      IPPs' Unjust Enrichment Claims Fail With IPPs' Flawed Antitrust
                Claims .................................................................................................... 24

        B.      IPPs Fail To Allege That They Conferred A *Direct* Benefit On
                Keurig .................................................................................................... 24

Conclusion ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AD/SAT, Division of Skylight, Inc. v. Associated Press*,
    181 F.3d 216 (2d Cir. 1999)................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................2, 4, 15

*Associated General Contractors of California, Inc. v. California State Council of
    Carpenters*,
    459 U.S. 519 (1983)......................................................................................8

*Bayer Schering AG v. Sandoz, Inc.*,
    813 F. Supp. 2d 569 (S.D.N.Y. 2011).......................................................17, 20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................. 3-4, 9, 21

*Bowen v. New York News, Inc.*,
    366 F. Supp. 651 (S.D.N.Y. 1973) *aff'd in part and rev'd in part on other grounds*,
    522 F.2d 1242 (2d Cir. 1975)....................................................................16

*Broadway Delivery Corp. v. United Parcel Service of America, Inc.*,
    651 F.2d 122 (2d Cir. 1981)......................................................................18

*Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates*,
    996 F.2d 537 (2d Cir. 1993)........................................................................5

*Carmona v. Spanish Broadcasting System, Inc.*,
    No. 08 Civ. 4475 (LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009)................................24

*Carter v. Variflex, Inc.*,
    101 F. Supp. 2d 1261 (C.D. Cal. 2000) ........................................................22

*CDC Technologies, Inc. v. IDEXX Laboratories, Inc.*,
    186 F.3d 74 (2d Cir. 1999)..................................................................... 14-16

*Chapman v. New York State Division for Youth*,
    546 F.3d 230 (2d Cir. 2008)....................................................................3, 17

*Clapper v. Amnesty International USA*,
133 S. Ct. 1138 (2013).................................................................................................2, 6

*Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-02031, 2012 WL 511485 (W.D. Ark. Feb. 15, 2012)......................................17

*Commercial Data Servers, Inc. v. International Business Machines Corp.*,
166 F. Supp. 2d 891 (S.D.N.Y. 2001).....................................................................................13

*Commercial Data Servers v. International Business Machines Corp.*,
262 F. Supp. 2d 50 (S.D.N.Y. 2003)............................................................................... 16-17

*Daniel v. American Board of Emergency Medicine*,
428 F.3d 408 (2d Cir. 2005)......................................................................................................5

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) .........................................................................................13, 15

*Doron Precision Systems, Inc. v. FAAC, Inc.*,
423 F. Supp. 2d 173 (S.D.N.Y. 2006)......................................................................................3

*Eastman Kodak Co. v. Image Technical Services*,
504 U.S. 451 (1992)................................................................................................................17

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*,
129 F.3d 240 (2d Cir. 1997)....................................................................................................21

*Formula One Licensing v. Purple Interactive Ltd.*,
No. C 00-2222 (MMC), 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) .................................24

*Fraser v. Major League Soccer, L.L.C.*,
284 F.3d 47 (1st Cir. 2002).....................................................................................................13

*Gatt Communications, Inc. v. PMC Associates, LLC*,
711 F.3d 68 (2d Cir. 2013)............................................................................................ <u>passim</u>

*Global Discount Travel Services, LLC v. Trans World Airlines*,
960 F. Supp. 701 (S.D.N.Y. 1997) (Sotomayor, J.)................................................................17

*Hack v. President & Fellows of Yale College*,
237 F.3d 81 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema
N.A.*, 534 U.S. 506 (2002)......................................................................................................19

*Halebian v. Berv*,
644 F.3d 122 (2d Cir. 2011)..........................................................................................14

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)...................................................................................................1, 8

*In re Aftermarket Filters Antitrust Litigation*,
No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010)........................................25

*In re Aluminum Warehousing Antitrust Litigation*,
No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014).........................8

*In re Aluminum Warehousing Antitrust Litigation*,
No. 13-MD-2481 (KBF), 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014) ......................23

*In re Direxion Shares ETF Trust*,
279 F.R.D. 221 (S.D.N.Y. 2012) ................................................................................10

*In re Graphics Processing Units Antitrust Litigation*,
253 F.R.D. 478 (N.D. Cal. 2008)..................................................................................9

*In re Graphics Processing Units Antitrust Litigation*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................................24

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
__ F. Supp. 3d __, No. 13 MD 2451, 2014 WL 868827 (E.D.N.Y. Mar. 5, 2014) ...............10

*In re Insurance Brokerage Antitrust Litigation*,
618 F.3d 300 (3d Cir. 2010)...................................................................................20-21

*In re Magnesium Antitrust Litigation*,
Civ. No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ....................................11

*In re Packaged Ice Antitrust Litigation*,
779 F. Supp. 2d 642 (E.D. Mich. 2011)......................................................................11

*In re Plavix Indirect Purchaser Antitrust Litig.*,
No. 1:06-cv-226, 2011 WL 335034 (S.D. Ohio Jan. 31, 2011).............................................23

*In re Potash Antitrust Litigation*,
667 F. Supp. 2d 907 (N.D. Ill. 2009) ...........................................................................9

*In re Refrigerant Compressors Antitrust Litigation*,
No. 2:09-md-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) ...................................12

*In re Refrigerant Compressors Antitrust Litigation*,
  No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ........................................9

*In re Tamoxifen Citrate Antitrust Litigation*,
  277 F. Supp. 2d 121 (E.D.N.Y. 2003) ............................................................................. 22-24

*In re Terazosin Hydrochloride Antitrust Litigation*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) .................................................................................11

*In re Wellbutrin XL Antitrust Litigation*,
  260 F.R.D. 143 (E.D. Pa. 2009) ............................................................................................11

*Insignia Systems, Inc. v. News Corp., Ltd.*,
  No. Civ. 04-4213JRTFLN, 2005 WL 2063890 (D. Minn. Aug. 25, 2005) ......................13, 15

*Jacobs v. Tempur-Pedic International, Inc.*
  626 F.3d 1327 (11th Cir. 2010) .............................................................................................6

*Kellam Energy, Inc. v. Duncan*,
  668 F. Supp. 861 (D. Del. 1987) ..........................................................................................14

*Kramer v. Pollock-Krasner Foundation*,
  890 F. Supp. 250 (S.D.N.Y 1995) ........................................................................................24

*LiveUniverse, Inc. v. MySpace, Inc.*,
  304 F. App'x 554 (9th Cir. 2008) .............................................................................. 3, 22-23

*Mahon v. Ticor Title Insurance Co.*,
  683 F.3d 59 (2d Cir. 2012) ...................................................................................................10

*Paycom Billing Services, Inc. v. Mastercard International, Inc.*,
  467 F.3d 283 (2d Cir. 2006) ...............................................................................................2, 8

*PepsiCo, Inc. v. Coca-Cola Co.*,
  315 F.3d 101 (2d Cir. 2002) ................................................................................12, 14, 18, 20

*Radiancy, Inc. v. Viatek Consumer Products Group, Inc.*,
  No. 13-cv-3767 (NSR), 2014 WL 1318374 (S.D.N.Y. Apr. 1, 2014) ....................................5

*Re-Alco Industries, Inc. v. National Center for Health Education, Inc.*,
  812 F. Supp. 387 (S.D.N.Y 1993) ........................................................................................16

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*,
  28 F.3d 1379 (5th Cir. 1994) ...............................................................................................14

*SMS System Maintenance Services, Inc. v. Digital Equipment Corp.*,
   11 F. Supp. 2d 166 (D. Mass. 1998) ..................................................................19

*Smugglers Notch Homeowners' Association, Inc. v. Smugglers' Notch Management Co.*,
   414 F. App'x 372 (2d Cir. 2011) ................................................................17, 19

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993)...................................................................................16, 20

*Sun Dun, Inc. v. Coca-Cola Co.*,
   740 F. Supp. 381 (D. Md. 1990) ......................................................................23

*Tampa Electric Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961).....................................................................................2, 12

*Temple v. Circuit City Stores, Inc.*,
   No. 06 Civ. 5303, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007)........................11

*Ulrich v. Moody's Corp.*,
   No. 13-CV-00008 (VSB), 2014 U.S. Dist. LEXIS 138082 (S.D.N.Y. Sept. 30, 2014)
   ...................................................................................................................20, 25

*United States v. E.I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956).........................................................................................18

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966).........................................................................................16

*USAirways Group, Inc. v. British Airways PLC*,
   989 F. Supp. 482 (S.D.N.Y. 1997) ...................................................................2, 6

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004).........................................................................................20

*W. Goebel Porzellanfabrik v. Action Industries, Inc.*,
   589 F. Supp. 763 (S.D.N.Y. 1984) ......................................................................6

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*,
   516 F. Supp. 2d 270 (S.D.N.Y. 2007)...............................................12, 14, 20-21

*Xerox Corp. v. Media Sciences, Inc.*,
   660 F. Supp. 2d 535 (S.D.N.Y. 2009)...............................................................18-19

*Xerox Corp. v. Media Scis. Int'l, Inc.*,
    511 F. Supp. 2d 372 (S.D.N.Y. 2007) ....................................................................19

*Yentsch v. Texaco, Inc.*,
    630 F.2d 46 (2d Cir. 1980) ...................................................................................14

**State Cases**

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2d Dist. 2001) ...................................................................22

*In re Grand Theft Auto Video Game Consumer Litig.*,
    No. 06 MD 1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ..........................11

**State Statutes**

Ark. Code Ann. § 4-88-107(a)(10) .................................................................................23

Cal. Bus. & Prof. Code § 17200 ...................................................................................23

Cal. Bus. & Prof. Code §§17200 et seq. ......................................................................22

N.C. Gen. Stat. Ann. § 75-1.1 .......................................................................................23

N.M. Stat. Ann. §§ 57-12-2(E)(2), 57-12-3 ..................................................................23

Neb. Rev. Stat. § 59-1602 ..............................................................................................23

**Other Authorities**

Federal Rule of Evidence 201(b) .....................................................................................3

IIIA Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 735d (3d ed. 2006).....7

## INTRODUCTION

Indirect Purchaser Plaintiffs ("IPPs") first filed suit six weeks after plaintiff TreeHouse, bringing a very similar complaint.  Each of the named IPPs is a consumer who owns a Keurig first generation ("1.0")-compatible coffee brewer, and who bought Keurig branded portion packs ("K-Cups") from a seller *other* than Keurig.  Compl. ¶¶ 28-47.  Like TreeHouse and the other plaintiffs in this multidistrict litigation, IPPs attack Keurig's agreements with suppliers and distributors as unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  Like the other plaintiffs, IPPs fail to state a claim.  Notably, *unlike* the other plaintiffs, IPPs have wisely removed from their consolidated complaint claims relating to the design of Keurig's new coffee brewer ("2.0") that were the focus of their original complaints.[1]

It is black letter law that indirect purchasers lack standing to bring federal antitrust damages claims.  *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 736 (1977).  The Supreme Court adopted this approach because it was "unwilling to open the door to duplicative recoveries" and "transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs . . . from direct purchasers to middlemen to ultimate consumers."  *Id*. at 731, 737.  In an attempt to avoid the *Illinois Brick* bar, IPPs seek injunctive relief under federal law and damages under state law.[2]  The state laws IPPs seek to invoke, however, are modeled on federal antitrust law, and IPPs' federal and state claims fail together.

Standing is a threshold matter in any litigation.  *See Gatt Commc'ns, Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 75-78 (2d Cir. 2013).  IPPs assert that they were "forced" to buy K-Cups from Keurig at a "supracompetitive price."  *See* Compl. ¶¶ 4, 208.  This is not a plausible allegation.

---

[1] *Compare, e.g.*, Compl., *Schroeder et al. v. Keurig Green Mountain, Inc.*, No. 1:14-cv-04391-VSB, (S.D.N.Y. Mar. 24, 2014) ECF. No. 1 (including a claim for "anticompetitive product redesign"), *with* Compl. ¶¶ 244-261 (including no allegations related to 2.0 within IPPs' claims for relief).

[2] *See* Appendix for a summary of IPPs' state law claims and the deficiencies with each.

1

IPPs do not assert a relevant market for K-Cups.  They allege a market for "Keurig Compatible Cups." *Id.* ¶¶ 8-12.  And, even in this narrow purported market, IPPs concede that there are substitute options are available.  *Id.*  Indeed, IPPs concede that Keurig's competitors have grown from selling 0% of Compatible Cups in 2010 to 14% today.  *Id.* ¶¶ 11, 101.  And IPPs allege that competitors' Compatible Cups are not only substitutes for K-Cups, but also "contain high-quality coffee" and are offered at prices that are "as much as 58%" below prices for K-Cups.  *Id.* ¶ 14.  Under these circumstances, IPPs' conclusory statement that they were "forced" to buy K-Cups is not plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (in assessing plausibility of allegations, court must "draw on its judicial experience and common sense").

Because IPPs acknowledge that substitute products are available, the answer to their concern about K-Cup pricing is easy:  Do not buy Keurig's K-Cups.  It is settled law that "self-inflicted injury does not provide antitrust standing."  *See USAirways Grp., Inc. v. British Airways PLC*, 989 F. Supp. 482, 489 (S.D.N.Y. 1997); *see also Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1151 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves").  Nor are IPPs "efficient enforcers" of the antitrust laws here.  *See, e.g., Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 293 (2d Cir. 2006).  In sum, if IPPs bought a product they did not want rather than buying what they allege to be perfectly good (and attractively priced) substitutes, that was their own bad decision.  It does not give them standing to bring an antitrust claim.

Lack of standing aside, IPPs' monopolization claims fail for several additional reasons.  For example, IPPs do not allege anticompetitive conduct because they have not alleged that competitors were substantially foreclosed from the market.  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961).  IPPs' monopolization claims also fail because they do not allege

a properly defined market and monopoly power therein.  *See Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008).  IPPs' perfunctory conspiracy allegations fail to state a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And IPPs' efforts to recast their flawed antitrust claims as unfair competition, consumer protection, and unjust enrichment claims fail alongside their antitrust claims.  *See LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 558 (9th Cir. 2008).

Keurig respectfully requests that IPPs' complaint be dismissed in its entirety.

## STATEMENT OF RELEVANT FACTS

Keurig developed the innovative and popular K-Cup single-serve brewing system.  Compl. ¶¶ 87-91.[3]  Starting in 2010, competitors began selling portion packs compatible with Keurig's first generation brewing system.  *Id.* ¶ 101.  Plaintiffs TreeHouse and JBR were early portion pack competitors.  *Id.* ¶¶ 101, 105.  Keurig sued TreeHouse and JBR for patent infringement, but ultimately lost those claims on summary judgment.  *Id.* ¶¶ 103, 107.

Since the initial entry by a portion pack competitor in 2010, competitors' sales of "Compatible Cups" have grown substantially:  Competitors now sell 14% of all Compatible Cups, or approximately $519 million in portion pack sales annually.  *Id.* ¶¶ 11, 83.  These Compatible Cups are available through many outlets, "including convenience stores, restaurants, supermarkets, hospitals, hotels, bars, offices, big-box stores, and online," *id.* ¶ 64, and can also be purchased directly from competitors' websites.[4]

---

[3] In this brief, we describe the facts alleged in the IPP complaint.  In doing so, Keurig makes no concession as to the accuracy of IPPs' assertions.

[4] For example, JBR sells directly through its website, www.gourmet-coffee.com.  Under Federal Rule of Evidence 201(b), the Court may take judicial notice of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see, e.g.*, *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 178-79 n.8 (S.D.N.Y. 2006) (taking judicial notice of information posted on a party's website).

On February 11, 2014, TreeHouse filed its complaint against Keurig.  *TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 1:14-cv-00905-VSB (S.D.N.Y. Feb. 11, 2014).  On March 24, 2014, the first putative IPP action was filed, making allegations nearly identical to those in the TreeHouse complaint.  *Schroeder v. Keurig Green Mountain, Inc.*, No. 1:14-cv-04391-VSB (S.D.N.Y. Mar. 24, 2014) ECF No. 1.  Nine more IPP complaints followed.  After a decision by the Judicial Panel on Multidistrict Litigation (Order, MDL No. 2542, June 3, 2014, ECF No. 75) transferring the cases to this court, on July 24, 2014, IPPs filed the Consolidated Class Action Complaint ("IPP Complaint") that is the subject of this motion.  IPPs claim Keurig's conduct allowed it to charge direct purchasers supracompetitive prices for K-Cups, and IPPs assert, without offering any supporting facts, that these overcharges were then "passed on" to IPPs.  Compl. ¶ 24.  The named IPPs hail from 11 states, but purport to bring claims on behalf of purchasers from 24 states.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.   IPPs Lack Standing To Bring Their Claims

All plaintiffs must have standing to bring their claims:  Standing is "a threshold, pleading-stage inquiry," and a complaint that fails to establish standing must be dismissed as a matter of law.  *Gatt*, 711 F.3d at 75.  Standing takes on particular importance in antitrust cases.  "Antitrust law is not intended to be as available as an over-the-counter cold remedy, because were its heavy power brought into play too readily it would not safeguard competition, but

destroy it." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 539 (2d Cir. 1993).  Without careful limits on standing, antitrust enforcement "could be invoked without service to—and potentially in disservice of—the purpose of the antitrust laws: to protect competition." *Gatt*, 711 F.3d at 75.

Pleading standing requires a plaintiff to allege that it suffered injury-in-fact.  *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 437 (2d Cir. 2005).  In addition, in an antitrust case, a plaintiff must allege "antitrust injury," *i.e.*, it must allege that the injury it purportedly suffered is "'of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'"  *Id.* at 437-38 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977)).  IPPs lack standing because they have failed plausibly to allege that:  (1) they were forced to buy K-Cups at supracompetitive prices; (2) their injury, if any, was directly caused by Keurig's alleged conduct; and (3) any overcharge by Keurig was passed on to IPPs.  IPPs also lack standing to bring a claim under the laws of those states where no named plaintiff claims to reside or have been injured.

### A.    IPPs Do Not Plausibly Allege They Were Forced To Buy K-Cups

IPPs assert that they were "forc[ed] to buy K-Cups at supracompetitive prices." *See, e.g.*, Compl. ¶ 164.  But IPPs do not allege a *K-Cup* market.  They allege a *Keurig Compatible Cups* market.  IPPs acknowledge that, even within their narrow purported market, there are substitutes for K-Cups.  *Id.* ¶¶ 101, 105.  Accordingly, even if IPPs could plausibly allege that they paid higher prices for *K-Cups*, this would not give them antitrust standing.  It would simply suggest that they should have bought Compatible Cups from one of Keurig's competitors instead.  To demonstrate the harm needed to support standing, IPPs must allege facts showing "an adverse effect on competition market-wide."  Amended Order & Op., *Radiancy, Inc. v. Viatek Consumer*

*Prods. Grp., Inc.*, No. 13-cv-3767 (NSR), 2014 WL 1318374, at *12 (S.D.N.Y. Apr. 1, 2014); *see also Jacobs v. Tempur-Pedic Int'l, Inc.* 626 F.3d 1327 (11th Cir. 2010).

IPPs offer no factual allegations to support a claim that they were *forced* to buy more expensive K-Cups instead of substitute products that even IPPs concede are part of the same relevant market and that IPPs allege offer "features that customers may prefer." *Id*. ¶ 14.  IPPs allege that portion packs offered by Keurig's competitors now account for 14% of all "Compatible Cup" sales, up from 0% in 2010.  Compl. ¶¶ 11, 101.  Competitors' Compatible Cups are available through sources including "bulk warehouses like BJs, budget mass retailers like Wal-Mart, or online meccas like Amazon.com . . . ."  TreeHouse Compl. ¶ 281 (relied upon by Preface to IPP Compl.).  They are also available from competitors' websites.  IPPs offer no reason why they are not able to purchase competitors' Compatible Cups through these channels.

Thus, to the extent IPPs suffered any injury—which they have not plausibly alleged— that injury was caused not by Keurig's conduct but by IPPs' own independent decisions to buy Keurig portion packs.  This "self-inflicted injury" cannot establish standing.  *See, e.g.*, *USAirways*, 989 F. Supp. at 489; *Clapper*, 133 S. Ct. at 1151 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves."); *W. Goebel Porzellanfabrik v. Action Indus., Inc.*, 589 F. Supp. 763, 766 (S.D.N.Y. 1984) (no standing for injuries resulting from antitrust plaintiff's own decision).[5]  Because IPPs do not plausibly allege that they were "forced" to buy K-Cups instead of readily available alternatives, and because IPPs are responsible for the purported injury they suffered, they lack standing to pursue an antitrust claim.

---

[5] Courts have reject claims based on self-inflicted injuries *both* for lack of Article III standing (*e.g.*, *Clapper*, 133 S. Ct. at 1151) and for lack of antitrust standing (*e.g.*, *USAirways*, 989 F. Supp. at 489).

**B.**    <u>**IPPs Are Not Efficient Enforcers Of The Antitrust Laws**</u>

IPPs lack standing because they are not "efficient enforcers" of the antitrust laws.

"'Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that

might conceivably be traced to an antitrust violation.'"  *Gatt*, 711 F.3d at 76 (quoting *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 534

(1983)).

In the Second Circuit, courts evaluate whether plaintiff is an "efficient enforcer" of the

antitrust laws by considering four factors: (1) the directness or indirectness of the asserted injury;

(2) the existence of identifiable persons whose self-interest would normally motivate them to

vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged

injury; and (4) the difficulty of identifying damages and apportioning them among victims so as

to avoid duplicative recoveries.  *Id.* at 78.  IPPs fail on each element.

*Directness*.  Courts assessing directness look to "close[ness] in the chain of causation."

*Id.* at 78.  Here, IPPs' alleged injury is attenuated.  For example, IPPs would need to argue:

- Keurig's alleged exclusive contracts forced TreeHouse to work with companies that lacked "experience,"  Compl. ¶¶ 121, 123, 127, 222;

- This lack of "experience" not only imposed a one-time fixed cost on TreeHouse to train its own suppliers and distributors,[6] but somehow increased TreeHouse's incremental manufacturing costs on an ongoing basis;

- TreeHouse passed on some or all of these increased costs to its retailers, rather than just absorbing them to compete more effectively with Keurig;

- TreeHouse's retailers in turn passed on some or all of these higher incremental costs in the form of higher prices to consumers of TreeHouse portion packs;

- Keurig responded to higher TreeHouse prices by increasing K-Cup prices; *and*

---

[6] A one-time start-up cost does not lead to higher prices.  *See, e.g.*, IIIA Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 735d (3d ed. 2006) (pricing decisions are dictated only by marginal cost).

- Keurig's retailers in turn passed on some or all of the price increase by Keurig in the form of higher prices to consumers like IPPs. [7]

Courts routinely reject such attenuated chains of causation. *See, e.g.*, *Paycom*, 467 F.3d at 293 (dismissing exclusive dealing claims because "any injury suffered by [plaintiff] . . . flowed from the injuries" suffered more directly by defendant's competitors); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4277510, at *22-24 (S.D.N.Y. Aug. 29, 2014) (dismissing purchasers' claims for lack of standing where alleged harm was "more than one level down in the supply / distribution chain" within "a complex market structure with many participants who are not necessarily involved in this lawsuit").

*Alternative enforcers*.  Here, there are identifiable "persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement"—namely, TreeHouse and JBR.  *See Gatt*, 711 F.3d at 79 (finding more suitable plaintiffs even where they had *not* filed suit).  Obviously, TreeHouse and JBR actually brought lawsuits here.

*Speculative nature of injury / difficulty of apportionment*.  The injury that IPPs allege is highly speculative, with damages that would be nearly impossible to determine.  In *Illinois Brick*, the Supreme Court warned against undertaking "massive efforts" to apportion recovery and determine how much of a price increase passed through multiple layers of transactions.  431 U.S. at 737, 741-42; *see also AGC*, 459 U.S. at 544-45.  The policies underlying *Illinois Brick* and *AGC* apply with full force here.  *See Paycom*, 467 F.3d at 294 (no standing where "quantifying [plaintiff's] damages would require wholesale speculation as to the extent and type" of injuries suffered); *In re Aluminum Warehousing*, 2014 WL 4277510, at *22 ("[I]solating [plaintiffs'] particular damage from other potential causal factors would present a highly complex task.").

---

[7] IPPs also offer a conclusory allegation that Keurig's alleged exclusive contracts "delayed" or "precluded" entry.  Compl. ¶ 127.  This allegation lacks any heft whatsoever and, even were it supported, would be equally attenuated from any alleged higher price for K-Cups allegedly paid by IPPs.

That IPPs bring their antitrust damages claims under state law does not eliminate the immense difficulties in calculating damages based on IPPs' theory of harm, which is even more speculative than Direct Purchaser Plaintiffs' already impermissibly speculative claims.[8]  IPPs are not efficient enforcers of the antitrust laws here.

C.    **IPPs Do Not Adequately Allege Pass On**

IPPs do not allege facts that could establish that any potential overcharge was actually passed on to the IPPs, as they must.  *See In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 940 (N.D. Ill. 2009) (dismissing claim lacking allegations that "the parties from whom Indirect Purchaser Plaintiffs purchased [products] actually passed on any overcharges"); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 502 (N.D. Cal. 2008) ("By definition, indirect purchasers must prove that an overcharge was levied on *direct* purchasers of defendants' products, who then passed all or some of that overcharge through to the indirect purchasers."). As discussed above, demonstrating pass-on here would require tracing an alleged overcharge through multiple levels, an exercise that is at least speculative, if not impossible.  *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756, at *14 (E.D. Mich. Apr. 9, 2013) (finding no standing where IPPs failed to allege facts suggesting overcharges would "pass through multiple distribution and retail channels").  IPPs make no effort whatsoever to engage in such an exercise.  The entirety of IPPs' allegations about pass-on is the single conclusory statement that "such overcharges were passed on by direct purchasers to Plaintiffs and the members of the Classes in whole or in part."  Compl. ¶ 24.  This recitation of the elements is plainly insufficient under *Twombly*, 550 U.S. at 555.

---

[8] Nineteen states under whose law IPPs purport to bring claims apply the *AGC* test.  Appendix, Table B.

**D.**   **IPPs Lack Standing To Assert Claims Under The Law Of States Where No Named Plaintiff Resides Or Was Harmed**

IPPs also lack standing to pursue claims under the laws of states where they were not allegedly injured.  The named IPPs claim to reside in 11 states and claim to have purchased portion packs in an additional three.  Compl. ¶¶ 28-47.  Yet IPPs purport to bring claims under the laws of 24 states.  IPPs lack constitutional standing to assert claims under the laws of the states where they neither reside nor made a purchase.

Article III requires that named plaintiffs who seek to represent a class "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . ."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  "[A] plaintiff must demonstrate standing for each claim [it] seeks to press," and "*with respect to each asserted claim*," the plaintiff must allege that it has "suffered a distinct and palpable injury to [it]self.'"  *Id.* at 64.  For each claim asserted, there must be at least one IPP who has experienced antitrust impact in connection with the claim. *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 230 (S.D.N.Y. 2012) (cannot avoid standing requirement "by styling the complaint as a class action").

The Second Circuit has not ruled on whether named plaintiffs may assert state law claims of states in which no named plaintiff resides or was injured.  But the logical conclusion of the principles articulated by the Supreme Court and the Second Circuit is that where—as here—no named plaintiff was injured in a particular state, IPPs lack standing to assert claims under that state's laws.  On this basis, courts in this Circuit have held that "named plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have never lived or resided."  *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, __ F. Supp. 3d __, No. 13 MD 2451, 2014 WL 868827, at *11 (E.D.N.Y. Mar. 5, 2014); *see also Temple v.*

10

*Circuit City Stores, Inc.*, No. 06 Civ. 5303, 2007 WL 2790154 at *8 (E.D.N.Y. Sept. 25, 2007)

(dismissing claims for states where named plaintiffs failed to allege any injury).  *But see In re*

*Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739, 2006 WL 3039993 (S.D.N.Y.

Oct. 25, 2006) (deferring standing challenge until class certification).

> As many other courts have explained, the best reading of Supreme Court precedent is that
purported class plaintiffs "lack standing to assert claims under the laws of the states in which
they do not reside or in which they suffered no injury."  *In re Packaged Ice Antitrust Litig.*, 779
F. Supp. 2d 642, 657 (E.D. Mich. 2011) (collecting cases); *In re Magnesium Antitrust Litig.*, Civ.
No. 10-5943 (DRD), 2011 WL 5008090, at *8-10 (D.N.J. Oct. 20, 2011); *In re Wellbutrin XL*
*Antitrust Litig.*, 260 F.R.D. 143, 151-57 (E.D. Pa. 2009); *In re Terazosin Hydrochloride Antitrust*
*Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001).

> Here, no named plaintiff claims to have been injured in 9 of the 21 states under whose
laws IPPs assert *antitrust* claims (Count 9);[9] 2 of the 5 states under whose laws IPPs assert
*consumer protection* claims (Count 10);[10] and 7 of the 17 states under whose laws IPPs assert
*unjust enrichment* claims (Count 11).[11]  IPPs lack standing to bring these claims.  IPPs also lack
standing to bring their Vermont antitrust and unjust enrichment claims on behalf of a purported
*nationwide class*.  Not only do IPPs not include named plaintiffs from all states in the nation,
they do not even include a named plaintiff who claims to reside or purchase K-Cups in Vermont.
*See, e.g.*, *In re Packaged Ice*, 779 F. Supp. 2d at 657 (dismissing Vermont claims where no
named plaintiff resided in or alleged a purchase in Vermont); *In re Refrigerant Compressors*

---

[9] The states are Maine, Mississippi, Nebraska, New Hampshire, North Dakota, Oregon, South Dakota, Tennessee, and West Virginia.  *See* Appendix, Table A.

[10] The states are Arkansas and Nebraska.  *See* Appendix, Table A.

[11] The states are Arkansas, Maine, Massachusetts, Mississippi, New Hampshire, Oregon, and South Dakota.  *See* Appendix, Table A.

*Antitrust Litig.*, No. 2:09-md-02042, 2012 WL 2917365, at *7 (E.D. Mich. July 17, 2012) (same).
All of these claims should be dismissed.

## II. IPPs' Monopolization Claims Fail As A Matter of Law

To state a Section 2 claim, a plaintiff must allege: anticompetitive conduct that creates or
maintains monopoly power in a properly defined relevant market. *PepsiCo, Inc. v. Coca-Cola
Co.*, 315 F.3d 101, 105 (2d Cir. 2002). A failure on any one of these elements requires dismissal.
Here, IPPs fail in all respects.

### A. Exclusive Dealing Claims Fail Because IPPs Fail To Allege Substantial Foreclosure

IPPs claim Keurig has violated the antitrust laws through alleged exclusive contracts with
suppliers, brands, and retailers. *See, e.g.*, Compl. ¶¶ 117-67. But an exclusive contract does not
violate the antitrust laws unless it will result in substantial foreclosure of the relevant market.
*Tampa Elec.*, 365 U.S. at 328.[12] Showing substantial foreclosure requires allegations as to both a
numerator (the suppliers allegedly locked up) *and* a denominator (the number of available
suppliers). *See, e.g.*, *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d
270, 295 n.8 (S.D.N.Y. 2007) (dismissing claims that "contain[ed] no facts relating to the
[foreclosed] distributors' shares of the consumer market"). IPPs fail to make allegations
supporting any claim of substantial foreclosure here. Instead, they allege facts showing that
competitors are *not* foreclosed from reaching consumers, and in fact competitors' sales have
grown rapidly from zero to 14% of all sales of Compatible Cups. Compl. ¶¶ 11, 101.

#### 1. No Substantial Foreclosure Of Suppliers

IPPs allege Keurig has exclusive contracts with suppliers of two inputs: assembly
machinery and plastic cups. Compl. ¶¶ 121, 127. These claims fail because IPPs do not allege

---

[12] Substantial foreclosure must be alleged whether the plaintiff brings its exclusive dealing claims under
Section 1 or 2 of the Sherman Act or Section 3 of the Clayton Act. *Tampa Elec.*, 365 U.S. at 335.

facts showing substantial foreclosure.  IPPs allege only that Keurig has exclusive contracts with

its own suppliers.  *See id*. ¶ 117 (Keurig's machinery suppliers); ¶ 123 (Keurig's cup suppliers).

IPPs allege no denominator, *i.e.*, the total number of available suppliers.  Without a denominator,

IPPs have not alleged substantial foreclosure.  *See, e.g.*, *Dickson v. Microsoft Corp.*, 309 F.3d

193, 209 (4th Cir. 2002) (affirming dismissal of input foreclosure claims for failure to allege

portion of input market foreclosed).

IPPs' input foreclosure claims also fail because IPPs do not allege a plausible geographic

market for any input.  IPPs limit their allegations to domestic suppliers without explaining why

plastic cups or machines could not be imported.  *See* Compl. ¶¶ 119, 124.  This is fatal to their

claims.  *See, e.g.*, *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 55 (1st Cir. 2002)

(geographic market required); *Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 166 F.

Supp. 2d 891, 897 (S.D.N.Y. 2001) (dismissing antitrust claims where plaintiff "failed to allege

any facts explaining why the relevant geographic market is domestic rather than worldwide").

### 2.    No Substantial Foreclosure Of Distributors

IPPs allege that Keurig has unlawful exclusive contracts with distributors that provide

coffee to offices.  *See* Compl. ¶¶ 145-67.  As a threshold matter, the contract that IPPs cite

(borrowed from TreeHouse) is, on its face, not exclusive:  It does not prohibit the sale of

competing brewers (or portion packs that work therein).  TreeHouse Compl. Ex. B (relied upon

in Compl. ¶ 155).

Moreover, even if the contracts were exclusive, IPPs again allege only a numerator, *see*

Compl. ¶ 151, and thus fail to allege substantial foreclosure.  *See, e.g.*, *Insignia Sys., Inc. v. News

Corp., Ltd.*, No. Civ. 04-4213JRTFLN, 2005 WL 2063890, at *3 (D. Minn. Aug. 25, 2005)

("[A]bsent some indication of the percentage of the local, regional, or national markets that the

35,000 retail outlets allegedly under exclusive contract constitute, it is impossible to evaluate the

percentage of the market" foreclosed.); *Wellnx*, 516 F. Supp. 2d at 295 n.8 (dismissing exclusive dealing claims where "there are no facts relating to the named distributors' shares").[13]   Moreover, there is no foreclosure where "competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution."  *See CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 80 (2d Cir. 1999) (quoting *Omega Envtl. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997)).  Here, IPPs acknowledge that portion pack competitors have reached consumers, Compl. ¶ 11, and thus fail to allege substantial foreclosure.

Finally, the Second Circuit has held that exclusive distribution agreements are presumptively lawful because of their well-known procompetitive effects.  *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 110 (2d Cir. 2002); *Wellnx*, 516 F. Supp. 2d at 29.  IPPs allege no facts to support any exclusive dealing claim, much less to overcome this presumption.

### 3.   No Substantial Foreclosure Of Retailers

IPPs also claim Keurig has exclusive contracts with retailers, but offer no factual allegations regarding these alleged agreements that could support an exclusive dealing claim.[14]  They do not allege how many such contracts exist, which retailers they are allegedly with, what

---

[13] Nor can IPPs recast their exclusive dealing claim as a tying claim that Keurig "ties" brewers and K-Cups at the distributor/retailer level.  *See, e.g.*, *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 882 n.29 (D. Del. 1987) (rejecting tying claims where plaintiff "is trying to create a tying claim out of an exclusive dealing contract").  IPPs still must allege substantial foreclosure. *See, e.g.*, *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 58 (2d Cir. 1980) ("We require at least some showing that the illegal tying arrangement results in actual foreclosure of competition . . . ."); *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1783 (5th Cir. 1994) ("Where, however, *only* dealers are subject to a tie, competitors do not lose a segment of the tied market if there are genuine alternative paths to consumers.").

[14] The lone agreement IPPs reference concerns Staples, but even that reference does not support an allegation of an exclusive contract.  To the contrary, the document that IPPs directly quote in paragraph 165 of the complaint says that Staples actively considered whether it should "bring[] in multiple suppliers."  *See* Ex. 1, Email from John Overton to Kathy Hybsch dated July 7, 2014, at 7; *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting that, on a motion to dismiss, a court may consider "documents incorporated by reference in the complaint").  The document suggests Staples had "concerns" regarding the "shelf life" and "sanitation" of JBR's portion packs.  ECF No. 87-3, at 7.  Staples later informed JBR it had decided to work with Keurig "due to the additional services" that Keurig offered, *id.* at 2, and, although JBR checked in repeatedly thereafter, "each time [it] asked" it was "told that Staple's [sic] is making *an active decision* not to carry anything non-KCup branded."  *Id.* at 1 (emphasis added).

they cover, or how many retailers exist.  Moreover, as with IPPs' claims regarding distributors, there is no foreclosure because IPPs concede that competitors' portion packs are in fact reaching the ultimate consumers (and now account for 14% of all Compatible Cup sales, *see* Compl. ¶ 11), thus there can be no foreclosure.  *See CDC Techs.*, 186 F.3d at 80.  Without factual heft, without alleging the numerator or denominator to show substantial foreclosure, and with affirmative allegations showing a *lack* of foreclosure, these claims must be dismissed.  *See, e.g.*, *Insignia Sys.*, 2005 WL 2063890, at *3.

### 4.    No Substantial Foreclosure Of Brands

IPPs claim Keurig has exclusive contracts with brands owned by packaged food manufacturers, retail stores, and celebrity chefs, but again fail to allege substantial foreclosure.  Compl. ¶¶ 128-144.[15]  IPPs list a dozen brands who have asked Keurig to manufacture K-Cups and then state in a conclusory fashion that Keurig has foreclosed "substantially all" brands that could be used to sell coffee.  *See id.* ¶¶ 131-39.  IPPs offer no denominator for this claim (the number of brands in existence) and, in any event, the suggestion that there are only collectively *a dozen* manufacturers, retailers, or individuals whose brands can be used to sell coffee is wildly implausible.  *See Iqbal*, 556 U.S. at 679 (in assessing plausibility of allegations, court must "draw on its judicial experience and common sense"); *Dickson*, 309 F.3d at 209; *Insignia Sys.*, 2005 WL 2063890, at *3 (dismissing claim alleging exclusive deals with "35,000 retail outlets" for lack of a denominator).

---

[15] IPPs sometimes refer to coffee brands such as Caribou and Starbucks as "Roaster Competitors."  *See* Compl. ¶¶ 128-44.  IPPs' allegations here are substantially identical to other plaintiffs' allegations as to "*brands*," *see, e.g.*, TreeHouse Compl. ¶ 207, and different from other plaintiffs' allegations as to "*roasters*," *see, e.g.*, *id.* ¶ 226.  To minimize confusion, we treat these as allegations about brands, as the other plaintiffs do, and as IPPs sometimes do as well.  *See, e.g.,* Compl. ¶ 139.

**5.     Competitors' Growth Is Fatal To All Of IPPs' Exclusive Dealing Claims**

All of IPPs' exclusive dealing claims fail for the independent reason that competitors'

success demonstrates a lack of foreclosure.  *See CDC Techs.*, 186 F.3d at 80-81; *Bowen v. N.Y.*

*News, Inc.*, 366 F. Supp. 651, 679 (S.D.N.Y. 1973) (dismissing claims where competitors

"remained in the market and successfully competed"), *aff'd in part and rev'd in part on other*

*grounds*, 522 F.2d 1242 (2d Cir. 1975); *Commercial Data Servers v. Int'l Bus. Machs. Corp.*,

262 F. Supp. 2d 50, 75 (S.D.N.Y. 2003).  Here, IPPs' own allegations show competitors'

success.  *See* Compl. ¶ 11.

**B.     All Of IPPs' Monopolization Claims Fail For Lack Of Monopoly Power In A Properly-Defined Relevant Market**

Even if IPPs had alleged anticompetitive conduct, which they have not, a Section 2

plaintiff must also allege: (1) a properly defined relevant market; *and* either (2) monopoly power

for a monopolization claim, *or* (3) a dangerous probability of such power for an attempted

monopolization claim.  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *United*

*States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

**1.     Proposed Market Definitions Are Implausibly Narrow**

**a)     "Single-Serve Brewer" Market Omits Reasonable Substitutes**

The alleged "Single-Serve Brewer" market ignores many other ways for consumers to

obtain coffee, including drip coffeemakers, other brewers, and coffee shops.  IPPs fail to allege

facts making it plausible that consumers do not consider these alternatives, and this is fatal to all

their Section 2 claims.  *See Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp.

387, 391 (S.D.N.Y 1993); *see also Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers'*

*Notch Mgmt. Co.*, 414 F. App'x 372, 375-76 (2d Cir. 2011); *Chapman*, 546 F.3d at 238.

16

To determine the alternatives available to consumers, courts look to "cross-elasticity of demand," *i.e.*, the degree to which "consumers will change their consumption of one product in response to a price change in another." *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 469 (1992).  Here, IPPs assert that "[c]onsumers are willing to pay a premium for Single-Serve Brewers" over drip brewers.  Compl. ¶ 58.  But it is well established that alleging price differences does not define a market.  *See, e.g.*, *Ad/SAT*, 181 F.3d at 228.[16]

### b)    IPPs' Compatible Cup Market Omits Reasonable Substitutes

IPPs' alleged Compatible Cup market fails for similar reasons.  As a federal court dismissing a complaint against Keurig recognized, a relevant market must include "all products that are reasonably interchangeable with the K-Cup brewers and coffee packs . . . ." *Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-02031, 2012 WL 511485, at *5 (W.D. Ark. Feb. 15, 2012).  Yet IPPs fail to allege facts explaining why a price increase on Compatible Cups would not, for example, lead consumers to buy fewer portion packs and more ground coffee or coffee from coffee shops instead.  *See Commercial Data Servers*, 262 F. Supp. 2d at 72 (products may be interchangeable even if they cannot "be seamlessly swapped for each other").  IPPs attempt to rely on an alleged price differential to suggest that drip coffee does not constrain the price of portion packs, *see* Compl. ¶ 77, but again, a price differential is insufficient to define a market.  *Ad/SAT*, 181 F.3d at 228.

---

[16] IPPs also allege that single-serve is more convenient than ground coffee.  Compl. ¶ 77.  But a difference in *process* does not create a plausible inference that products do not compete.  *See Bayer Schering AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (dismissing claim where plaintiff "failed to plead sufficient facts to demonstrate that no two-drug combination is an acceptable substitute for" defendant's single drug); *Global Disc. Travel Servs., LLC v. Trans World Airlines*, 960 F. Supp. 701, 706 (S.D.N.Y. 1997) (Sotomayor, J.).

### 2.      IPPs Fail To Allege Facts Showing Monopoly Power

Once a plaintiff has defined a relevant product market, it must allege facts showing

monopoly power.  *PepsiCo*, 315 F.3d at 105.  IPPs fail to do so here.

#### a)      No Brewer Monopoly Based On 1.0 Installed Base

IPPs assert Keurig has sold 35 million 1.0 brewers, Compl. ¶ 65, and that this gives

Keurig a "vast installed base" of single-serve brewers, which must mean that Keurig has market

power.  *Id.* ¶ 63.  But monopoly power means "the power to control prices or exclude

competition."  *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956).  The

complaint does not allege that Keurig charges supracompetitive brewer prices.  IPPs also fail to

plausibly allege that the installed 1.0 base gives Keurig power to exclude competitors—in fact,

they allege that competitors have successfully entered and expanded.  Compl. ¶¶ 11, 101.

Nor do IPPs plausibly allege that Keurig's 1.0 installed base will help it secure future

brewer sales.  To the contrary, materials relied on by IPPs suggest that Keurig's 1.0 installed

base gave it no ability to secure sales for the Vue brewer.  TreeHouse Compl. ¶¶ 264-70 (relied

upon in Preface to IPP Compl.).[17]  IPPs' allegations undermine any assertion of monopoly power

based on Keurig's alleged historic market share.  *See Broadway Delivery Corp. v. United Parcel

Serv. of Am., Inc.*, 651 F.2d 122, 128 (2d Cir. 1981).

#### b)      No Portion Pack Monopoly In Light Of Established Test For Monopoly In An Aftermarket

IPPs claim Keurig has monopoly power based on an alleged high share of Compatible

Cups, but fail to allege the requirements for a monopoly in an "aftermarket."  *Xerox Corp. v.*

---

[17] IPPs also acknowledge the presence of competitors that offer 1.0-compatible brewers.  *See* Compl. ¶ 59 (Mr. Coffee, Cuisinart, and Breville).

*Media Scis., Inc.*, 660 F. Supp. 2d 535, 547 (S.D.N.Y. 2009) ("*Xerox III*")[18] ("[A] plaintiff [claiming monopoly in an aftermarket] generally must show that (i) customers who own the [primary] good are 'locked in' by the prohibitive costs of switching to an alternate product, and (ii) the lock-in permitted those customers to be exploited, either because (a) some limitation on information undermined their ability to know that the aftermarket goods and services were being sold at high prices, or (b) the defendant changed its aftermarket prices after the lock-in occurred.").[19]

As the Second Circuit has explained, there is no viable claim of lock-in where a defendant announces restrictions on aftermarket offerings up front. *Smugglers Notch*, 414 F. App'x at 377; *see also Hack v. President & Fellows of Yale College*, 237 F.3d 81, 87 (2d Cir. 2000) (affirming dismissal of complaint where policies were disclosed in advance), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). IPPs purport to own Keurig 1.0 brewers, and make no claims based on the 2.0. There are no alleged aftermarket restrictions for 1.0 owners. S*ee Xerox III*, 660 F. Supp. 2d at 550 (no lock-in where there was no change in policy). IPPs cannot show monopoly power in the purported "Compatible Cups" market they allege.

Nor do IPPs allege the other requirement for showing monopoly power in an aftermarket, namely that high switching costs prevent consumers from changing primary products. *See Xerox III*, 660 F. Supp. 2d at 548 (no monopoly where plaintiff "offers no evidence" that users would be deterred from switching despite $3,000 price of printers). IPPs allege single-serve brewers

---

[18] For clarity, we use the *Xerox* court's convention: "*Xerox I*" refers to the motion to dismiss (*Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007)), and "*Xerox III*" refers to the summary judgment decision (*Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535 (S.D.N.Y. 2009)).

[19] In these cases, courts have declined to find monopoly power despite aftermarket shares exceeding 90%. *See, e.g.*, *Xerox III*, 660 F. Supp. 2d at 540, 550 (90-97% share); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 11 F. Supp. 2d 166, 167, 169 (D. Mass. 1998) (91% share).

are available from *around $80*.  Compl. ¶ 58.  Other alternatives are alleged to be cheaper.  *Id.*

These are not the high switching costs required to establish monopoly in an aftermarket.

### 3.   Competitors' Growth Proves No Dangerous Probability Of Monopoly

Nor do IPPs allege a dangerous probability that Keurig will successfully monopolize any

market.  *Spectrum Sports*, 506 U.S. at 456.[20]  Instead, they claim competitors *expanded* despite

Keurig's allegedly exclusive contracts.  Compl. ¶¶ 11, 101, 105.  They have not plausibly alleged

a dangerous probability of monopolizing.  *See, e.g.*, *Bayer Schering*, 813 F. Supp. 2d at 580.

## III.   Conspiracy And Group Boycott Allegations Fail For Lack Of Plausible Allegations Of Unlawful Horizontal Agreements

IPPs allege that Keurig and various coffee brands have conspired in restraint of trade.[21]

Compl. ¶ 228.  But IPPs offer no factual heft to support their implausible assertions of a massive

conspiracy.  *See, e.g.*, *Id.* ¶¶ 133, 279.

To survive a motion to dismiss their conspiracy claims, IPPs must allege sufficient facts

to plausibly infer a "conscious commitment to a common scheme."  *Ulrich v. Moody's Corp.*,

No. 13-CV-00008 (VSB), 2014 U.S. Dist. LEXIS 138082, at *47-48 (S.D.N.Y. Sept. 30, 2014)

(citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).  Here, IPPs'

allegations, even if proved, would "fail to adduce any evidence of a horizontal agreement" in

restraint of trade, which is fatal to their claims.  *PepsiCo*, 315 F.3d at 110; *In re Ins. Brokerage*

*Antitrust Litig.*, 618 F.3d 300, 334-49 (3d Cir. 2010); *Wellnx*, 516 F. Supp. 2d at 290-91.  IPPs

---

[20] The failure to allege a dangerous probability of success is also fatal to IPPs' monopoly leveraging claim, Compl. ¶¶ 253-58.  To the extent monopoly leveraging is a distinct cause of action, it requires that a plaintiff allege a dangerous probability of success at monopolizing a second market.  *See Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004).

[21] IPPs package their conspiracy claims under the labels "Agreements Restraining Trade," "Group Boycott," "Concerted Refusal to Deal," and "Restraint of Trade."  Compl. ¶¶ 218, 227.  These claims challenge the same alleged conduct based on the same statutory provision, and the extra labels add nothing.  *PepsiCo*, 315 F.3d at 110 ("*NYNEX . . .* squarely held that a horizontal agreement is a prerequisite in a group boycott case.").

claim Keurig's agreements are "horizontal licensing and manufacturing agreements," which are inherently vertical.  Compl. ¶ 17.  Indeed, vertical agreements are not horizontal conspiracies even when they are between companies that compete at one market level.  *See, e.g.*, *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243-44 (2d Cir. 1997) (analyzing distribution agreements as vertical agreements notwithstanding the fact that both parties competed at one market level); *In re Ins. Brokerage*, 618 F.3d at 340 ("[A]ttempt to bootstrap vertical contracts into horizontal conspiracy is at odds with [] 'common economic experience.'" (quoting *Twombly*, 550 U.S. at 565)); *Wellnx*, 516 F. Supp. 2d at 293.

Vertical agreements are often procompetitive and output enhancing.  *See Wellnx*, 516 F. Supp. 2d at 293; *In re Ins. Brokerage*, 618 F.3d at 332.  For example, IPPs allege Keurig manufactures portion packs for the J.M. Smucker Company ("Smucker").  *See* Compl. ¶ 133.  The arrangement avoids the need for Smucker to make what IPPs allege are "substantial" investments required to manufacture portion packs.  *Id.* ¶ 62.

IPPs do not allege that brands conspired with one another (for example, that Wolfgang Puck conspired with Smucker), nor would any such allegation be plausible.  *See, e.g.*, *id.* ¶¶ 128-44, 218-26.  IPPs allege instead that multiple brands reached parallel decisions to work with Keurig.  *Id.* ¶¶ 129-39.  Alleging parallel decisions by competitors does not state a claim for conspiracy.  *Twombly*, 550 U.S. at 554; *see also In re Ins. Brokerage*, 618 F.3d at 332.[22]

---

[22] IPPs also claim that because Keurig sells K-Cups to both retailers and consumers, its distribution and retail contracts are an unlawful horizontal conspiracy.  *See* Compl. ¶¶ 21-22.  But "dual distribution" is widely used across a range of industries, and courts, including the Second Circuit, have repeatedly held these arrangements to be vertical and lawful.  *See Elecs. Commc'ns Corp.*, 129 F.3d at 243.

**IV.**     **IPPs Fail To State A Claim Under State Law**

    **A.**     **Each Of The Relevant States Interprets Its Antitrust Laws In Parallel With—Or More Narrowly Than—Federal Law**

IPPs assert antitrust claims under the laws of 22 states.  In each case, IPPs simply reassert the allegations made in support of their federal antitrust claims and mechanically recite the elements under each statute.[23]  Each of the 22 states interprets its substantive antitrust laws in parallel with[24]—or more narrowly than[25]—the federal antitrust laws, and each of these claims fails for the same reasons as IPPs' federal antitrust claims.  *See, e.g.*, *In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003) (dismissing antitrust claims under the laws of 17 states because "Plaintiffs fail to state a claim under the Sherman Act, and since the state antitrust law claims are based on the same allegations, those claims are also dismissed").

    **B.**     **IPPs' California Unfair Competition Law Claim Fails Because The Claim Relies Upon IPPs' Flawed Antitrust Claims**

In addition to their state law antitrust claims, IPPs attempt to pursue a California Unfair Competition Law claim.  *See* Cal. Bus. & Prof. Code §§17200 et seq.[26]  But courts have uniformly held that dismissal of antitrust claims "precludes a finding of unfair competition" under Section 17200.  *LiveUniverse*, 304 F. App'x at 558.  "If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice . . . the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not

---

[23] *See, e.g.*, Compl. ¶ 345 ("Keurig entered into a contract or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the Keurig Compatible Cup Market, a substantial part of which occurred within Nevada.").

[24] *See* Appendix, Table C.

[25] Many of the states upon whose law IPPs rely permit antitrust claims only where premised on concerted, not unilateral conduct.  *See* Appendix, Table D.  To the extent IPPs' antitrust claims in these states are premised on unilateral conduct by Keurig, they must be dismissed.

[26] For the other 20 states, IPPs invoke only a single statute, the state's antitrust law.

22

'unfair' toward consumers." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2d Dist. 2001); *accord Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000).

### C.   IPPs Have Not Alleged A Substantial Effect on *Intra*state Commerce

The antitrust laws of the District of Columbia, Mississippi, South Dakota, Tennessee, and Wisconsin require plaintiffs to allege a specific nexus between the defendant's conduct and intrastate commerce within those states.[27]  IPPs offer nothing more than a conclusory allegation for each state that "Keurig's unlawful conduct substantially affected [the state's] trade and commerce."  *See* Compl. ¶ 296 (District of Columbia); ¶ 334 (Mississippi); ¶ 393 (South Dakota); ¶ 400 (Tennessee); ¶ 412 (Wisconsin).  Such legal conclusions are insufficient as a matter of law.  *See, e.g.*, *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 396 (D. Md. 1990) (refusing to apply D.C. Code "to claims which, though bearing some connection to the District of Columbia, are in fact interstate in nature and are thus regulated by federal antitrust provisions").

### D.   IPPs' Consumer Protection Claims Fail With IPPs' Flawed Antitrust Claims

IPPs bring consumer protection claims under the laws of Arkansas, California,[28] Nebraska, New Mexico, and North Carolina.[29]  These statutes generally prohibit: (1) anticompetitive conduct of the type prohibited by the antitrust laws, and (2) deceptive conduct that misleads consumers.  *See, e.g.*, *In re Tamoxifen Citrate*, 277 F. Supp. 2d at 139.

Once again, IPPs' effort to rename the same allegations fails.  Where conduct is alleged to harm consumers *through its impact on competition*, the conclusion that it does not violate the

---

[27] *See* Appendix, Table E.

[28] IPPs cite the same California provisions for their Ninth and Tenth Claims for Relief, *see* Compl. ¶¶ 272-92, 422-26, and thus IPPs' California "consumer protection" claim fails for the same reasons as their California antitrust claims.  *See In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4743425, at *2-3 (S.D.N.Y. Sept. 15, 2014) (dismissing plaintiffs' Cal. Bus. Code §§ 16700 *et seq.* and §§ 17200 *et seq.* claims where plaintiffs "failed to plausibly establish [their] underlying allegations of anticompetitive behavior").

[29] Ark. Code Ann. § 4-88-107(a)(10); Cal. Bus. & Prof. Code § 17200; Neb. Rev. Stat. § 59-1602; N.M. Stat. Ann. §§ 57-12-2(E)(2), 57-12-3; N.C. Gen. Stat. Ann. § 75-1.1.

antitrust laws means that it does not harm consumers.  *See, e.g.*, *LiveUniverse,* 304 F. App'x at 557-58; *In re Plavix Indirect Purchaser Antitrust Litig.*, No. 1:06-cv-226, 2011 WL 335034, at *5 (S.D. Ohio Jan. 31, 2011) (same); *In re Tamoxifen Citrate*, 277 F. Supp. 2d at 139 (dismissing unfair competition and consumer protection claims where allegations "track entirely the allegations underlying the antitrust claims"); *Formula One Licensing v. Purple Interactive Ltd.*, No. C 00-2222 (MMC), 2001 WL 34792530, at *4 (N.D. Cal. Feb. 6, 2001) (same).  IPPs' state law consumer protection claims must be dismissed.  And, to the extent IPPs intended to assert a consumer protection claim based on a theory of "deceptive" or "unconscionable" conduct, *see* Compl. ¶ 416, such a claim fails because IPPs make no non-conclusory allegations of unconscionable or deceptive conduct by Keurig.[30]

## V.      IPPs' Unjust Enrichment Claims Must Be Dismissed

### A.      IPPs' Unjust Enrichment Claims Fail With IPPs' Flawed Antitrust Claims

IPPs purport to assert a Vermont unjust enrichment claim on behalf of a nationwide class, and also to assert unjust enrichment claims on behalf of 17 state-wide classes.  These claims fail because IPPs fail to articulate any basis for these claims beyond their insufficient antitrust allegations.  *See Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 257 (S.D.N.Y 1995) (dismissing unjust enrichment claims where plaintiffs failed to state an antitrust claim).

### B.      IPPs Fail To Allege That They Conferred A *Direct* Benefit On Keurig

IPPs cannot plead an unjust enrichment claim under the laws of Arizona, the District of Columbia, Kansas, Maine, Massachusetts, Michigan, Minnesota, Nevada, New York, or Wisconsin.  These states require a direct relationship between the allegedly enriched and injured

---

[30] The consumer protection laws of Arkansas, Nebraska, New Mexico, and North Carolina require unconscionable or deceptive conduct.  *See* Appendix, Table F; *see, e.g., In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029 (N.D. Cal. 2007) (discussing Arkansas and New Mexico law).  IPPs have not alleged either.

parties,[31] which by definition *indirect* purchaser plaintiffs lack. *See, e.g., Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475 (LAK), 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009) ("[T]he requirement that a defendant be enriched at plaintiff's expense . . . clearly contemplate[s] that a defendant and plaintiff must have had some type of direct dealings or an actual, substantive relationship."); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) (dismissing unjust enrichment claims by indirect purchasers because "[o]nly the direct purchasers have conferred a direct benefit on defendants").

## CONCLUSION

For the foregoing reasons, Keurig respectfully requests that IPPs' complaint be dismissed in its entirety.  In addition, Keurig respectfully requests that, if IPPs choose not to amend their complaint in response to this motion, their complaint be dismissed with prejudice.[32]

---

[31] *See* Appendix, Table G.

[32] *See Ulrich*, 2014 U.S. Dist. LEXIS 138082, at *52-53 (dismissing where plaintiff did not amend pleadings after being notified of shortcomings in motion to dismiss); ECF No. 4, Pilot Project Rule A.4(c) (Following the filing of a motion to dismiss, "[i]f plaintiff does not choose to amend, the plaintiff shall be given no further opportunity to amend the complaint to address the issues raised by the pending motion."); Hr'g Tr. 32:2-18, June 19, 2014 (amendment after first opportunity shall be for good cause shown).

Dated:  October 6, 2014
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON

By:   /s/ George S. Cary
**George S. Cary**
**Leah Brannon**
**Elaine Ewing**
*gcary@cgsh.com*
*lbrannon@cgsh.com*
*eewing@cgsh.com*
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 974-1500

**Lev L. Dassin**
**Danielle Mindlin**
*ldassin@cgsh.com*
*dmindlin@cgsh.com*
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2790

**Wendelynne J. Newton**
*wendelynne.newton@bipc.com*
BUCHANAN INGERSOLL & ROONEY
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, Pennsylvania 15219
Telephone:  (412) 562-8932


*Attorneys for Defendant Keurig Green Mountain,*
*Inc., f/k/a Green Mountain Coffee Roasters, Inc.,*
*and as successor to Keurig, Incorporated*

# **APPENDIX**

**Table A: Summary of Grounds for Dismissal of IPPs' State Law Claims**

| Ninth Claim for Relief:  Violation of Other State Antitrust and Unfair Competition Laws | | | | | |
|---|---|---|---|---|---|
| *State Antitrust and Unfair Competition Laws* | State Claims Fail with Federal Claims | No Article III Standing | No Claims Based on Unilateral Conduct | No Antitrust Standing Because State Follows *AGC* | No Claim Because No Intrastate Effects |
| Arizona | X | | | X | |
| California | X | | X | X | |
| District of Columbia | X | | | X | X |
| Iowa | X | | | X | |
| Kansas | X | | X | X | |
| Maine | X | X | | X | |
| Michigan | X | | | X | |
| Minnesota | X | | | | |
| Mississippi | X | X | | X | X |
| Nebraska | X | X | | X | |
| Nevada | X | | | X | |
| New Hampshire | X | X | | X | |
| New Mexico | X | | | X | |
| New York | X | | X | | |
| North Carolina | X | | | | |
| North Dakota | X | X | | X | |
| Oregon | X | X | | X | |
| South Dakota | X | X | | X | X |
| Tennessee | X | X | X | | X |
| Vermont[1] | X | X | | X | |
| West Virginia | X | X | | X | |
| Wisconsin | X | | | X | X |

---

[1] *See* IPPs' First and Second Claims for Relief.  Compl. ¶¶ 192-211.

| Tenth Claim for Relief: Violation of State Consumer Protection & Unfair Trade Practices Laws | | | |
|---|---|---|---|
| *State Consumer Protection and Unfair Trade Practices Laws* | No Antitrust Violation | No Article III Standing | Failure to Plead Unconscionable Conduct |
| Arkansas | X | X | X |
| California | X | | |
| Nebraska | X | X | X |
| New Mexico | X | | X |
| North Carolina | X | | X |

| Eleventh Claim for Relief: Violation of State Common Law Unjust Enrichment Laws | | | |
|---|---|---|---|
| *State Common Law Unjust Enrichment Laws* | No Antitrust Violation | No Article III Standing | Failure to Allege a Direct Benefit Conferred on Defendants |
| Arizona | X | | X |
| Arkansas | X | X | |
| District of Columbia | X | | X |
| Iowa | X | | |
| Kansas | X | | X |
| Maine | X | X | X |
| Massachusetts | X | X | X |
| Michigan | X | | X |
| Minnesota | X | | X |
| Mississippi | X | X | |
| Nevada | X | | X |
| New Hampshire | X | X | |
| New Mexico | X | | |
| New York | X | | X |
| Oregon | X | X | |
| South Dakota | X | X | |
| Vermont[2] | X | X | |
| Wisconsin | X | | X |

---

[2] *See* IPPs' Third Claim for Relief.  Compl. ¶¶ 212-17.

## Table B: States Expressly Applying *AGC* Standing Test

### (Section I.B)

| | State | Authority |
|---|---|---|
| 1 | California | • *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) (applying *AGC* to determine indirect purchaser standing under the Cartwright Act).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (citing *Vinci* with approval and holding that California applies *AGC* test).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1088-89 (N.D. Cal. 2007) (same). |
| 2 | District of Columbia | • *Peterson v. Visa U.S.A., Inc.*, No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) (applying *AGC* to determine indirect purchaser standing under the District of Columbia Antitrust Act).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (citing *Peterson* with approval and holding that the District of Columbia applies *AGC* test). |
| 3 | Iowa | • *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 198 (Iowa 2007). |
| 4 | Kansas | • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094 (N.D. Cal. 2007) (applying *AGC* factors is the "proper means of determining antitrust standing").<br>• *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999), *aff'd*, 4 F. App'x 647 (10th Cir. 2001).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (citing *DRAM* and *Orr* with approval and holding that Kansas applies *AGC* test). |
| 5 | Maine | • *Knowles v. Visa U.S.A., Inc.*, No. CV-03-707, 2004 WL 2475284, at *5 (Me. Super. Ct. Oct. 20, 2004) ("It is probable that the Maine Law Court, if presented with this issue, would look to the [*AGC*] factors in determining standing under Maine's antitrust laws and would apply those factors except to the extent that those factors cannot be reconciled with the legislature's adoption of the *Illinois Brick* repealer.").<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (citing *Knowles* with approval and holding that Maine applies *AGC* test).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094 (N.D. Cal. 2007) (same). |
| 6 | Michigan | • *Stark v. Visa U.S.A., Inc.*, No. 03-055030, 2004 WL 1879003, at *4 (Mich. Cir. Ct. Jul. 23, 2004) ("[T]his Court agrees with Defendants that it does not necessarily follow that Michigan's repeal of the *Illinois Brick* rule also eliminated the *Associated General Contractors* standing requirements . . . . [W]hile Michigan appellate courts have not developed a test for determining when a plaintiff's injury is too remote to permit suit under [the Michigan Antitrust Reform Act], the Act requires courts to give 'due deference to interpretations given by the federal courts to comparable antitrust statutes.'") (internal citations omitted).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (citing *Stark* with approval and holding that Michigan applies *AGC* test).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094 (N.D. Cal. 2007) (same). |
| 7 | Nebraska | • *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 299 (Neb. 2006). |

|   | State | Authority |
|---|-------|-----------|
| 8 | New Mexico | <ul><li>*Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 776-81 (N.M. Ct. App. 2012) (applying *AGC* test to New Mexico antitrust claims).</li><li>*In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *10 (E.D. Mich. Apr. 9, 2013) (same).</li><li>*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (same).</li></ul> |
| 9 | New York | <ul><li>*Ho v. Visa U.S.A. Inc.*, No. 112316/00, 2004 WL 1118534, at *2-3 (N.Y. Sup. Ct. Apr. 21, 2004) (applying the *AGC* test to determine standing under New York's Donnelly Act), *aff'd* 16 A.D.3d 256 (N.Y. App. Div. 2005).</li><li>*In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (citing *Ho* with approval and holding that New York applies *AGC* test).</li></ul> |
| 10 | North Dakota | <ul><li>*Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2115144, at *2-3 (N.D. Dist. Ct. Aug. 23, 2004) (referencing *AGC* factors in determining lack of standing for claims by indirect purchasers under North Dakota law).</li><li>*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094 (N.D. Cal. 2007) (citing *Beckler* with approval and holding that North Dakota applies *AGC* test).</li></ul> |
| 11 | Oregon | <ul><li>*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1176 & n.2, (D. Or. 1998), *aff'd*, 185 F.3d 957 (9th Cir. 1999) (dismissing both Oregon and federal antitrust claims under *AGC* test).</li></ul> |
| 12 | South Dakota | <ul><li>*Cornelison v. Visa U.S.A., Inc.*, No. CIV 03-1350 (S.D. Cir. Ct. Sept. 28, 2004) (applying *AGC* factors and holding that plaintiffs lacked antitrust standing) (Ex. 2, Transcript of Court's Bench Ruling).</li><li>*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094 (N.D. Cal. 2007) (citing *Cornelison* with approval and holding that South Dakota applies *AGC* test).</li></ul> |
| 13 | Vermont | <ul><li>*Fucile v. Visa U.S.A., Inc.*, No. S1560-03 CNC, 2004 WL 3030037, at *3 (Vt. Super. Dec. 27, 2004) ("Although the Vermont Consumer Fraud Act has broader remedial purposes than federal statutes, the court nevertheless believes that the Vermont Supreme Court would also draw upon the standing factors in *Associated General Contractors* for guidance, at least to the extent that these factors are consistent with allowing 'indirect purchaser' standing.").</li></ul> |
| 14 | Wisconsin | <ul><li>*Strang v. Visa*, No. Sl560-03, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005) ("[O]ur appellate courts would look to [the *AGC*] factors for guidance in assessing an indirect or remote purchaser's standing").</li><li>*In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (citing *Strang* with approval and holding that Wisconsin applies *AGC* test).</li><li>*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094 (N.D. Cal. 2007) (same).</li></ul> |

**States Which Have Not Expressly Applied *AGC*, But Have Provisions Harmonizing State Antitrust Laws with Federal Antitrust Law**

| | State | Authority |
|---|---|---|
| 1 | Arizona | • Ariz. Rev. Stat. Ann. § 44-1412 ("[I]n construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes").<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (holding that Arizona applies *AGC* test).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (same). |
| 2 | Mississippi | • *Owens Corning v. RJ Reynolds Tobacco Co.*, 868 So.2d 331, 334, 336-340, 344 (Miss. 2004) (applying federal antitrust standing law and "remoteness doctrine" to claims under Mississippi's antitrust law).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (applying *AGC* test to Mississippi antitrust claims) (citing *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So.2d 163 (Miss. 2002)). |
| 3 | Nevada | • Nev. Rev. Stat. § 598A.050 ("The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes.").<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (applying *AGC* test to Nevada antitrust claims). |
| 4 | New Hampshire | • N.H. Rev. Stat. Ann. § 356:14 ("In any action or prosecution under this chapter, the courts may be guided by interpretations of the United States' antitrust laws.").<br>• *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 786 (D.N.H. 1993) (applying federal antitrust standing requirements to dismiss state antitrust claim "as this promotes the uniform construction of antitrust laws as contemplated by [N.H. Rev. Stat. Ann. § 356:14]").<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) (applying *AGC* test to New Hampshire antitrust claims). |
| 5 | West Virginia | • W. Va. Code § 47-18-16 ("This article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes.").<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *9-10 (E.D. Mich. Apr. 9, 2013) (applying *AGC* test to West Virginia antitrust claims). |

## Table C: States with Provisions Harmonizing State
## Antitrust Laws with Federal Antitrust Law
## (Section IV.A)

| | State | Authority |
|---|---|---|
| 1 | Arizona | • Ariz. Rev. Stat. Ann. § 44-1412. |
| 2 | California | • *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (Cal. Ct. App. 1995).<br>• *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1224-25 (C.D. Cal. 2003). |
| 3 | District of Columbia | • D.C. Code § 28-4515. |
| 4 | Iowa | • Iowa Code § 553.2.<br>• *Davies v. Genesis Med. Ctr.*, 994 F. Supp. 1078, 1103 (S.D. Iowa 1998). |
| 5 | Kansas | • *Smith v. Philip Morris Companies, Inc.*, --- P.3d ----, 2014 WL 3537058, at *7 (Kan. Ct. App. July 18, 2014).<br>• *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999). |
| 6 | Maine | • *McKinnon v. Honeywell Intern., Inc.*, 977 A.2d 420, 424 (Me. 2009). |
| 7 | Michigan | • Mich. Comp. Laws § 445.784. |
| 8 | Minnesota | • *Midwest Commc'ns, Inc. v. Minn. Twins, Inc.*, 779 F.2d 444, 454 (8th Cir. 1985).<br>• *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 136 (Minn. Ct. App. 1987).<br>• *State v. Duluth Bd. of Trade*, 121 N.W. 395, 399 (Minn. 1909). |
| 9 | Mississippi | • *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070 n.5 (5th Cir. 1984). |
| 10 | Nebraska | • Neb. Rev. Stat. Ann. § 59-829. |
| 11 | Nevada | • Nev. Rev. Stat. Ann. § 598A.050. |
| 12 | New Hampshire | • N.H. Rev. Stat. Ann. § 356:14.<br>• *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 836 (N.H. 2002), *superseded on other grounds*, N.H. Rev. Stat. § 356:4-a (2008) (granting indirect purchaser standing). |
| 13 | New Mexico | • N.M. Stat. Ann. § 57-1-15. |
| 14 | New York | • *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988). |
| 15 | North Carolina | • *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973). |
| 16 | North Dakota | • *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004). |
| 17 | Oregon | • Or. Rev. Stat. Ann. § 646.715(2). |
| 18 | South Dakota | • S.D. Codified Laws § 37-1-22.<br>• *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985). |
| 19 | Tennessee | • *Tennessee ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *2 n.2 (Tenn. Ch. 1980). |
| 20 | Vermont | • Vt. Stat Ann. tit. 9, §§ 2453, 2453a, 2461c.<br>• *Fucile v. Visa U.S.A., Inc.*, No. S1560-03 CNC, 2004 WL 3030037, at *3 (Vt. Super. Dec. 27, 2004). |
| 21 | West Virginia | • W.Va. Code Ann. § 47-18-16.<br>• *Gray v. Marshall County Bd. of Educ.*, 367 S.E.2d 751, 755 (W.Va. 1988). |
| 22 | Wisconsin | • *State v. Waste Mgmt. of Wis., Inc.*, 261 N.W.2d 147, 153 & n.12 (Wis. 1978). |

**Table D: States Where No Claims Are Permitted Based on Unilateral Conduct**

**(Section IV.A)**

| | *State* | Authority |
|---|---|---|
| 1 | California | • *Templin v. Times Mirror Cable Television, Inc.*, 56 F.3d 73 (9th Cir. 1995) (California does not recognize unilateral monopolization claims).<br>• *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) (same). |
| 2 | Kansas | • Kan. Stat. Ann. § 50-132. |
| 3 | New York | • *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 90 (2d Cir. 1983) ("The New York courts have interpreted the Donnelly Act to require the existence of a 'reciprocal relationship of commitment between two or more legal or economic entities' before liability may be found.") (quoting *State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 464 (1976)). |
| 4 | Tennessee | • Tenn. Code Ann. § 47-25-101. |

**Table E: States Requiring Allegations of Substantial *Intra*state Effects**

**to State a Claim Under Antitrust Statutes**

**(Section IV.C)**

| | State | Authority |
|---|---|---|
| 1 | District of Columbia | • *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 396 (D. Md. 1990) ("[I]t clearly would be unconstitutional under the Commerce Clause to apply the D.C. Code to claims which, though bearing some connection to the District of Columbia, are in fact interstate in nature and are thus regulated by federal antitrust provisions."). |
| 2 | Mississippi | • *In re Microsoft Corp. Antitrust Litig.*, No. Civ. JFM 03- 741, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (dismissing Mississippi antitrust claims where plaintiffs failed to allege that "at least some conduct by [defendant] was performed wholly intrastate"). |
| 3 | South Dakota | • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1099 (N.D. Cal. 2007) (dismissing claims under the South Dakota antitrust statute because plaintiffs failed to "specifically allege any conduct or conspiracy that takes place, or has any effect within South Dakota"). |
| 4 | Tennessee | • *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 523-24 (Tenn. 2005) (dismissing claim where plaintiff failed "to establish how the defendant's anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in [the plaintiff] paying higher prices to retailers . . ."). <br> • *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662 (6th Cir. 2009) ("In Tennessee, a plaintiff must prove that the defendant entered into an anticompetitive agreement that 'affects Tennessee trade or commerce to a substantial degree.'") (quoting *Freeman Indus.*, 172 S.W.3d at 523). <br> • *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) (dismissing claim where indirect purchaser plaintiffs "have not sufficiently alleged a substantial effect on *intra*state commerce in Tennessee"). |
| 5 | Wisconsin | • *Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448, 462-63, 465 (Wis. 2007) (to state a claim under the Wisconsin antitrust statute plaintiffs must allege that challenged conduct "substantially affected the people of Wisconsin and has impacts in [Wisconsin]"). <br> • *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1083-85 (D. Kan. 2009) (holding that plaintiffs' allegations that "defendants shipped 'millions of dollars' of the products into Wisconsin to plaintiffs 'and other consumers in the State of Wisconsin' at artificially high prices" and recitation of *Meyers* "substantially affected" standard "do not satisfy the *Twombly* plausibility pleading standard"). |

**Table F: States Requiring Allegations of Unconscionable Conduct**
**or Other Aggravating Circumstances Under Consumer Protection Laws**
**(Section IV.D)**

| | *State* | Authority |
|---|---|---|
| 1 | Arkansas | • Ark. Stat. Ann. § 4-88-107(a);<br>• *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Ca. 2007) ("pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high"). |
| 2 | Nebraska | • *Triple 7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004) (dismissing claims asserted under Nebraska's consumer protection act where plaintiff failed to allege unfair conduct that affected the public interest or other aggravating factors). |
| 3 | New Mexico | • N.M. Stat. Ann. § 57-12-2(D).<br>• *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Ca. 2007) ("pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high"). |
| 4 | North Carolina | • N.C. Gen. Stat. Ann. § 75-1.1;<br>• *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) (to establish a *prima facie* claim, a plaintiff must show that defendant committed an unfair or deceptive act or practice and "some type of egregious or aggravating circumstance must be alleged"). |

**Table G: States In Which Plaintiffs Must Allege That They Conferred
A Benefit Directly On Defendant to Plead Unjust Enrichment**

**(Section V.B)**

| | State | Authority |
|---|---|---|
| 1 | Arizona | • *City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984) (the elements of unjust enrichment include "a connection between the enrichment and the impoverishment"). |
| 2 | District of Columbia | • *Fort Lincoln Civic Assoc., Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008) ("Unjust enrichment occurs when [*inter alia*] the plaintiff conferred a benefit on the defendant . . ."). |
| 3 | Kansas | • *Babcock v. Carrothers Constr. Co.*, 124 P.3d 1084, 2005 WL3527117, at *2-3 (Kan. Ct. App. Dec. 23, 2005) (discussing "the general rule that absent privity, plaintiff may not prevail on a claim of unjust enrichment").<br>• *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 272-73 (10th Cir. 2008) (affirming dismissal of plaintiffs' unjust enrichment claim). |
| 4 | Maine | • *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *3 (N.D. Ill. Apr. 1, 2010) (dismissing claim for failure to allege a direct benefit). |
| 5 | Massachusetts | • *Sweeney v. DeLuca*, No. 042338, 2006 WL 936688 (Mass. Super. Ct. Mar. 16, 2006) (plaintiffs must allege that they conferred a benefit upon defendant).<br>• *Dickens-Berry v. Greenery Rehab. & Skilled Nursing Ctr.*, No. CA923189, 1993 WL 818564, at *3 n.6 (Mass. Super. Ct. Oct. 29, 1993) (same). |
| 6 | Michigan | • *A&M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (requiring "direct receipt of [] benefit by defendant"). |
| 7 | Minnesota | • *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001) (requiring plaintiffs allege that they conferred a benefit on defendant). |
| 8 | Nevada | • *Unionamerica Mortg. and Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (the essential elements of unjust enrichment include "a benefit conferred on the defendant by the plaintiff"). |
| 9 | New York | • *Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475(LAK), 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009) (dismissing unjust enrichment claim for lack of allegations of "direct dealings, or an actual, substantive relationship" between plaintiff and defendant).<br>• *Redtail Leasing, Inc. v. Bellezza*, No. 95 CIV. 5191(JFK), 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997) (same). |
| 10 | Wisconsin | • *Seegers v. Sprague*, 236 N.W.2d 227, 230 (Wis. 1975) (elements of unjust enrichment include "a benefit conferred upon the defendant by the plaintiff"). |