**Buchanan Ingersoll & Rooney** PC
Attorneys & Government Relations Professionals

Wendelynne J. Newton
412 562 8932
wendelynne.newton@bipc.com

One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
T 412 562 8800
F 412 562 1041
www.buchananingersoll.com

October 20, 2014

<u>VIA EMAIL</u>

Hon. Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

    Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542;
          <u>Plaintiffs' Request to use Improperly Obtained Keurig Documents to Amend</u>

Dear Judge Broderick:

    I write on behalf of Defendant Keurig Green Mountain, Inc. in opposition to the October 17 letter from Plaintiff TreeHouse demanding immediate use in this litigation of 300,000 pages that Keurig produced in its prior patent litigation with JBR (the "Massachusetts documents").[1]

### I. Background

    On June 19, 2014, this Court stayed discovery pending resolution of Keurig's motion to dismiss. June 19 Hr'g Tr. 24:23-25:7. Later that same day, JBR wrote to Keurig's former patent counsel regarding the possible use of the Massachusetts documents in this case. JBR did not copy Keurig's counsel of record in this case on, or inform us of, this request. In fact, JBR told us around this date that, if general discovery opened and the Massachusetts documents were to be produced, the parties would discuss production logistics at that time. ESI Protocol § VI.I.14. Indeed, JBR specifically told us that "<u>attorneys representing Rogers in the current antitrust action do not have access to Keurig's production in the patent case</u>." (June 26 email) (Exhibit A).

    On August 2, we learned that, contrary to what JBR had told us, its antitrust counsel had the Massachusetts documents and intended to use them in this matter. We promptly objected and, following JBR's response, brought the issue to the Court. Your Honor instructed JBR not to use these documents "in any way with regard to 14-MD-2542" until further order. ECF No. 76. Yet JBR asked questions based on the documents at a deposition the next day. *See, e.g.*, [redacted] (Exhibit B).

    JBR then sought to use 39 of the documents (grouped as 33 exhibits) in its motion for a preliminary injunction, claiming they were responsive to its discovery requests. Your Honor reviewed the documents and held they were not responsive, ECF. No. 101, but allowed use of the

---

[1] We refer to "Plaintiffs" collectively in this letter because Indirect Purchasers have joined TreeHouse's request and, based on our meet and confer, we understand that JBR and Direct Purchasers also intend to join. We reserve the right to respond separately to arguments advanced by JBR or the Direct Purchasers.

California :: Delaware :: Florida :: New Jersey :: New York :: Pennsylvania :: Virginia :: Washington, DC

October 20, 2014
Hon. Vernon S. Broderick, Page - 2 -

39 documents for impeachment only and subject to confidentiality restrictions. *See, e.g.*, Sept. 3 Hr'g Tr. 17:14-18 ("Similar to what we had made arrangements with regard to the depositions, once the hearing is concluded I'd ask the parties to return the copies of the documents.").

### II. The Documents Were Obtained in Violation of Ethical Rules

As discussed in our August 6 letter, JBR obtained the Massachusetts documents in contravention of New York Rule of Professional Conduct 4.2, which prohibits communications about "the *subject of the representation* with a person the lawyer knows to be represented by *another lawyer in the matter*, unless the lawyer has the *prior consent of the other lawyer* or is authorized to do so by law." ECF No. 73 (discussing case law); *see also, e.g., Faison v. Thornton*, 863 F. Supp. 1204, 1213 (D. Nev. 1993) ("a party's counsel of record represents the party and his interests for the purposes of" Nevada's "verbatim adoption of Rule 4.2"); *Extrude Hone Corp. v. Dynetics Corp.*, No. 364 of 1991, at 11 (Pa. Ct. Com. Pl. May 12, 1998) ("[C]ounsel of record[] [is] a fact that [plaintiff] minimizes, but one which this court deems quite important.  When a lawyer enters an appearance in an action, he or she is verifying to the court, and to all others, that he or she alone is responsible for the conduct of the case.") (Exhibit C).[2]

As the courts have explained, "one of the obvious purposes of Rule 4.2 is to prevent opposing counsel from taking advantage of the other party" by going to a lawyer other than counsel of record. *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D 293, 302 (N.D. Ill. 1997). Counsel who is not involved in the litigation is "presumably not sufficiently knowledgeable . . . to adequately protect the interests" of its client. *Id.*  Here, Keurig's former patent counsel is not involved in and has no authority to make decisions concerning the use of documents in this case.

Plaintiffs argue that the cases interpreting Rule 4.2 cited in our August 6 letter involved class actions. But nothing about the text of Rule 4.2 or the courts' reasoning limits the rule to class actions – a party is entitled to be represented in a negotiation about a pending matter <u>by its counsel of record in the case</u>.  *See Extrude Hone Corp.*, Exhibit C, at 10 (finding violation of Rule 4.2 in an individual action and noting "that [*Blanchard*] was a class action was of no consequence to . . . whether there was a violation of the anti-contact rule").

### III. Allowing the Use of the Documents Now Would Reward Misbehavior

Plaintiffs argue that all 300,000 pages should be produced to all parties now because the documents in Plaintiffs' view: (1) were obtained "outside of" discovery and are fair game for all "even [if they were] obtained by theft"; (2) are "relevant" to some of Plaintiffs' claims; (3) are "public" because JBR used the words "Project Squid" at the hearing, which was referenced in a media report; and (4) are needed now to punish Keurig.  These arguments all lack merit.

<u>First</u>, how the documents were obtained unquestionably matters:  "[I]ntegrity is threatened by admitting evidence wrongfully, if not unlawfully, secured." *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 571 (S.D.N.Y. 2008) (precluding use of wrongfully obtained documents, except for impeachment purposes).  Plaintiffs cite *Herrera v. Clipper Group L.P.*, No. 97-CIV-560 (SAS), 1998 WL 229499 (S.D.N.Y. May 6, 1998), but that case confirms that the ordinary sanction for improperly obtained evidence is exclusion.  *Id*. at *5.

---

[2] JBR's actions also contravened Local Rule 26.4, which mandates cooperation with respect to discovery.

October 20, 2014
Hon. Vernon S. Broderick, Page - 3 -

*Herrera* permitted the use of the documents there at issue only because, among other things, discovery was open and defendant sought to preclude the use of the documents for all time. *Id.* at *1, *3, *5. Here, Keurig seeks only that there be no production while discovery is stayed.

     Second, Keurig does not agree that the documents are relevant to any properly stated claim. Plaintiffs have suggested, for example, that the documents are relevant to their sham litigation claim, but as set forth in our motions to dismiss, we believe that Plaintiffs' complaints should be dismissed in their entirety, including this claim. *See also, e.g.,* June 19 Hr'g Tr. 31:17-25 (noting relationship between motions to dismiss and relevance of any discovery sought).[3]

     Third, JBR's limited reference to five documents at the hearing does not make 300,000 pages "public." Even as to the five documents, the parties and Court took steps to protect confidentiality, including turning off public monitors, speaking generally, and even ensuring that other parties returned the documents when the hearing ended. Under these circumstances, there is no obligation to unseal the five documents, much less 300,000 pages. *See, e.g., In re Application of Nat'l Broad. Co. Inc.*, 635 F.2d 945, 952 n.4 (2d Cir. 1980) (presumption of publicity does not apply to evidence submitted under seal); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 900 (E.D. Pa. 1981) (at a hearing, "[g]eneral references to material alleged to contain sensitive commercial information" do not require disclosure); *id.* at 907 (any asserted public interest was outweighed by defendant's interest in confidentiality).[4]

     Fourth, there is no basis to punish Keurig for spoliation. Spoliation potentially arises when relevant evidence is lost, "impair[ing] another party's ability to prove or defend a civil action." *Remee Prods. Corp. v. Sho-Me Power Elec. Co-op*, No. 01 CIV. 5554, 2002 WL 31323827, at *8 (S.D.N.Y. Oct. 17, 2002). Here, the documents unquestionably exist.[5]

     In summary, ordering immediate production of 300,000 pages of documents wrongfully obtained by JBR would reward bad behavior. To the best of our knowledge, TreeHouse complied with the protective order governing the Sturm patent litigation, and its antitrust counsel does not have and is not presently attempting to use the production set from that case. If the Court rewards JBR's conduct in negotiating exclusively with Keurig's former patent counsel to use the Massachusetts documents in this case, that would send a signal that parties may benefit by disregarding ethical rules. Finally, we note that the only remedy Keurig seeks for JBR's actions is that the Court deny Plaintiffs' request to use the documents in this case at this time.

---

[3] Plaintiffs also claim there is no burden on Keurig to produce as JBR has the documents. This is both irrelevant (this could be argued of any misappropriated documents) and incorrect. Discovery of confidential information would impose real burden on Keurig. *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984) (noting that discovery has "significant potential for abuse," and can implicate privacy interests).

[4] Plaintiffs also argue the 39 documents are fair game because some were used at a deposition. *But see* Fed. R. Civ. P. 30(f)(1); *id.* 1970 Advisory Committee Notes ("*As a general rule and in the absence of . . . order of the court*, exhibits produced *without objection* are to be annexed to and returned with the deposition.") (emphasis added). The Court gave contrary directions here.

[5] Plaintiffs cite no case condemning retention of underlying documents rather than a case set and, here, the documents exist *both* as a set (in JBR's possession) and in Keurig's files. As we advised Plaintiffs, Keurig has retained the Sturm patent litigation production set, of which the JBR production is mainly a subset, and also retained the additional documents from which the incremental documents in the JBR set were pulled.

October 20, 2014
Hon. Vernon S. Broderick, Page - 4 -

                                        Sincerely,

                                        */s Wendelynne J. Newton*

                                        Wendelynne J. Newton

WJN/
cc:    (via email) counsel of record