# Exhibit C

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA
CIVIL DIVISION

EXTRUDE HONE CORPORATION, )
             Plaintiff )
              )
    vs. )   No. 364 of 1991
              )
DYNETICS CORPORATION, )
             Defendant )

OPINION

BY THE COURT:

       There are no Pennsylvania appellate court decisions on the subject of the present motion, which is a motion by the defendant to disqualify plaintiff's counsel for violating Rule 4.2 of the Pennsylvania Rules of Professional Conduct, informally referred to as the "anti-contact" rule. In the absence of Pennsylvania authority there are a number of federal court decisions dealing with the subject which are persuasive. Because I find that several meetings between plaintiff's counsel and James Sethman, who was then a co-defendant in this action, without the knowledge or consent of Larry Elliott, who represented both defendants, violated Rule 4.2, the motion will be granted and among other remedies, plaintiff's counsel will be disqualified from further representation in this action.

       This action began in 1991 with Extrude Hone's complaint in equity which sought injunctive relief and damages. Prior to

1

the filing of the action, James Sethman was an Extrude Hone employee who left his employment and took a position with the Dynetics Corporation, Extrude Hone's principal competitor. The complaint sought to enjoin Sethman from working for Dynetics, which Extrude Hone claimed was in violation of a noncompetition agreement, which was part of Sethman's employment contract with Extrude Hone; and, to enjoin Dynetics from using any of Extrude Hone's trade secrets. The complaint also sought damages. Relief was denied and Extrude Hone appealed to the Superior Court of Pennsylvania which reversed and remanded the case with the directive that the equitable relief sought be granted. Accordingly, on July 26, 1993, an injunction was entered against Dynetics Corporation, and Extrude Hone was granted leave to amend its complaint relative to the issue of damages. Three and a half years later the defendants petitioned for a judgment of non pros because of Extrude Hone's alleged failure to move the case with reasonable promptitude. The motion was denied by order of October 28, 1997. After denying the defendants' motion to strike Extrude Hone's request for a jury trial on January 13, 1998, the court administrator was ordered to give this case a preferential position on the trial list.

   At a pretrial settlement conference with the court, the question arose as to whether or not the battle lines on the issue of damages would really be between the corporate parties, and

whether, as a practical matter, Mr. Sethman, as a defendant, might be expendable. Thereafter, Extrude Hone's counsel reached the conclusion that a discontinuance of the action against Sethman would be warranted; but with one condition, that Sethman would first talk with them directly in order to find out what information he could provide - a condition which they chose not to share with Mr. Elliott, Sethman's lawyer, who had represented him for the past seven years. However, Extrude Hone's counsel could not place the proposition before Mr. Sethman without creating an ethical violation, so they informed Extrude Hone's president, Lawrence Rhoades, that parties to a lawsuit were free to talk with one another; so Mr. Rhoades went to the Boston area, where Sethman now resides, in mid-December 1997, to inform Sethman, first through his wife, when he did not find Mr. Sethman at home, and later in telephone conversations with him, that Extrude Hone's action against him would be discontinued, but that it was expected that he would talk directly to Extrude Hone's lawyers. Rhoades also told Sethman that he should obtain a lawyer to represent him in this regard and that Extrude Hone would assist him in suggesting likely candidates and by paying the lawyer's fees, all without any reference to Mr. Elliott who had represented Sethman since the early stages of this action.

To facilitate Mr. Sethman's meeting with Extrude Hone's lawyers, Extrude Hone through Rhoades told Sethman that Extrude

Hone would pay the airfare to bring Sethman, and if he wished, his wife and lawyer, to Pittsburgh, as well as cover all other expenses incurred relative to the trip. Extrude Hone through Rhoades, suggested the names of potential lawyers to Sethman. The proposal for the trip and the securing of counsel other than Attorney Elliott is set forth in a letter of December 18, 1997, from Rhoades to Sethman (Exhibit B).

   Mr. Sethman's first attempt to obtain counsel did not go well. In a January 9, 1998, E-mail message (Exhibit C) from John Porter, one of Extrude Hone's lawyers in the firm of Titus & McConomy, sent to Paul Titus, another member of the firm also working on the case, Porter related that Sethman had contacted Attorney Peter Molinaro in Pittsburgh who told Sethman "the reason he was not going to represent him was because the dismissal was not yet documented in a signed court order." Porter then, according to the E-mail, contacted Attorney Molinaro himself, and was told the same thing by Molinaro, who was a "bit irritated" by then, and told Porter that he "wants nothing more to do with this." The same E-mail goes on to state that "Sethman wishes to be represented by the 'corporate counsel' of his current employer who is a Massachusetts attorney." The Massachusetts' attorney referred to was Joseph V. Cattoggio, Jr. After earlier unsuccessful attempts to make telephone contact with Mr. Cattoggio, Porter related in a January 12th E-mail to

4

Titus (Exhibit F):

> I spoke with Joe Catagio [sic]. He did not know much about the case. I gave him an overview. He seemed to want to work with us. He was planning on meeting with Sethman on Saturday. I asked if he could meet sooner. He will call Sethman tonight and get back to me tomorrow. Larry [Rhoades] called me and I explained this to him. I have faxed the draft motion to dismiss and proposed letter agreement to Catagio [sic].

The letter agreement referred to covered five points: (1) Extrude Hone would file a motion to dismiss Sethman from the case; (2) Sethman would be represented by Mr. Cattoggio, with Extrude Hone paying Cattoggio's fees; (3) Sethman would agree to be interviewed by Extrude Hone's counsel and disclose "all facts within his knowledge concerning the case"; (4) Extrude Hone would have the right to depose Sethman and call him as a witness; and (5) Extrude Hone would cover all expenses (Exhibit 1, p.2).

While the copy of the letter agreement offered in evidence does not show Sethman's signature, nevertheless all of its terms were executed. Sethman flew to Pittsburgh on January 15, 1998.[1] After a lunch with Rhoades, Rhoades took him to the offices of Titus & McConomy where he gave him a check for $350 to reimburse him for time he would miss at work. Attorney Porter interviewed Sethman about matters relevant to the litigation for

---

[1] Mrs. Sethman and Attorney Cattoggio did not come with him.

5

approximately three hours on the afternoon of the 15th, and anywhere from a half hour to an hour and a half the following day. Attorney Titus also briefly sat in on part of the interview on one or both days. According to Sethman, he was asked about and they discussed his responsibilities while an employee of Dynetics, the acccounts he called upon, how certain manufacturing processes worked, foreign and domestic sales he may have been involved with, and Dynetics injector nozzle. He denied discussing any conversations with Mr. Elliott or any of Dynetics new products. While these meetings were conducted with the knowledge and consent of Attorney Cattoggio, as noted earlier, neither Extrude Hone's lawyers, nor anyone else, informed Attorney Elliott or sought his consent to the interviews of his client.

The docket entries in this case reflect that the day after the completion of the interviews of Mr. Sethman in Pittsburgh, Extrude Hone's counsel filed a motion for leave of court to discontinue the action against Mr. Sethman, noting service of the motion upon Attorney Elliott. The proposed order, however, was not signed because Extrude Hone's counsel did not follow our local rule requiring counsel to present all motions to the presiding judge. As I recall, when it was presented to the court by Extrude Hone's local counsel, he was informed that I would not sign the discontinuance order for Sethman until, in

6

compliance with at least the spirit of Pa. R.C.P. 229(b), the petition carried with it documentation that the co-defendant, Dynetics, had no objection to a partial discontinuance. Thereafter, on February 6, 1998, Extrude Hone's local counsel presented a proposed order for the partial discontinuance which had attached to it a copy of a letter from Attorney Elliott stating that Dynetics had no objection to the dismissal of Sethman from the case, and the order was signed.

With the signing of the February 6th order, Sethman was out of the case and accordingly Mr. Elliott's representation of him in this matter came to an end. As noted, Attorney Elliott represented both Sethman and Dynetics from the inception of this action, at first as a member of the law firm of Eckert Seamans Cherin & Mellott, and later, after 1993, as a member of the law firm of Cohen & Grigsby. It appears that when Mr. Elliott joined Cohen & Grigsby that a letter was sent to Sethman and Dynetics explaining the ethical considerations involved in a lawyer's dual representation of clients, and both clients signed the last page of the letter indicating their consent to joint representation (Exhibit A).

There is evidence that Attorney Porter met with Sethman in Boston on February 12, 1998, but that is not problematical, for even though, like the prior meetings, it was conducted without Mr. Elliott's consent, at that point Sethman was no

longer a party to the action and Attorney Elliott's representation of Sethman in this matter had come to an end. It should be noted that at no time prior to February 6, 1998, did Sethman take any steps to discharge Attorney Elliott as his counsel in this matter.

"The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible." Inorganic Coatings, Inc. v. Falberg, 926 F.Supp. 517, 518 (E.D. Pa. 1995), quoting Cohen v. Oasin, 844 F.Supp. 1065, 1067 (E.D. Pa. 1994) and Commercial Credit Bus. Loans, Inc. v. Martin, 590 F.Supp. 328, 335-336 (E.D. Pa. 1984). The federal courts view disqualification of counsel as a form of discipline which the courts have inherent power to exercise. Id. at 519.

The rule at issue is Rule 4.2 of the Pennsylvania Rules of Professional Conduct. It states:

> In representing a client, a lawyer shall not communicate about the subject of representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

~~Extrude Hone~~ does not suggest that its lawyers were otherwise authorized by law to communicate with Sethman. Rather, the argument is made that their communications with Sethman were proper because they did have the consent of Sethman's lawyer,

8

Attorney Cattoggio. It is Extrude Hone's position that the other lawyer in the matter is Cattoggio and not Elliott, a position which is not surprising, since, after all, Extrude Hone's lawyers did everything they could to see that Sethman obtained a lawyer other than Mr. Elliott. Extrude Hone's argument is unconvincing for a number of reasons. First, it views "the matter" in question far too narrowly. Its position is "the matter" is simply the negotiation of the discontinuance of the action against Sethman, while ignoring the action as a whole. I find "the matter" referred to in the rule, under the present circumstances, is this lawsuit. In Blanchard v. EdgeMark Financial Corp., 175 F.R.D. 293 (N.D. Ill. 1997) a party, Beale, was both a plaintiff in a class action against EdgeMark and a defendant in a collection action instituted by a subsidiary of EdgeMark. He had two lawyers. Attorney Carroll represented him in the collection action; an Attorney Hedlund, in the class action. Without the consent of Attorney Hedlund, counsel for EdgeMark negotiated with Attorney Carroll to settle with Beale in both actions. The issue of the violation of Rule 4.2 of the Illinois Rules of Professional Conduct, which is the same as the Pennsylvania rule, was raised and EdgeMark's attorneys defended their conduct by asserting that they had the consent of Carroll who was Beale's chosen counsel for the purpose of the negotiations, and, therefore, did not need the consent of

Attorney Hedlund. The court rejected this argument and found that EdgeMark's counsel had an ethical duty to obtain the consent of Attorney Hedlund before negotiating with Beale through Attorney Carroll on matters that would affect the case in which Beale was represented by Hedlund, and that even if Attorney Carroll was Beale's chosen representative for the purpose of settlement negotiations, that his consent to the contact by EdgeMark's attorney did not mitigate or remove the ethical taint. Id. at 301. Extrude Hone's attorneys attempt to distinguish the Blanchard decision by noting that Blanchard dealt with a class action suit where the settlement had an impact on other members of the class. However, the fact that this was a class action was of no consequence to the Blanchard court in deciding whether there was a violation of the anti-contact rule. Only after it had found an ethical violation did the court, when considering the appropriate sanctions, discuss the impact of the settlement on other members of the class. The facts underlying the finding that there was a violation of Rule 4.2 are not as strong in Blanchard as they are in the instant case.

   While Rule 4.2 is obviously intended to protect parties from the overreaching of opposing counsel, it is primarily designed to preserve the integrity of the attorney-client relationship. Id. at 302. And "Rule 4.2 places the burden of obtaining consent on the attorney who wishes to speak with the

10

adverse party." Id. at 302. I find that notwithstanding Extrude Hone's successful efforts in connecting Sethman with another lawyer that Extrude Hone's lawyers still were obligated to seek Attorney Elliott's consent before speaking with Sethman. First of all, Mr. Elliott was counsel of record; a fact that Extrude Hone minimizes, but one which this court deems quite important. When a lawyer enters an appearance in an action, he or she is verifying to the court, and to all others, that he or she alone is responsible for the conduct of the case on behalf of that particular party, and indeed, the court will not recognize any other counsel on behalf of that party, unless or until it first allows counsel of record to withdraw. Without such a system, the courts would be inviting fragmentation and chaos. In considering a Nevada rule of professional conduct, which is identical to Rule 4.2, the court in Faison v. Thornton, 863 F.Supp. 1204, 1213 (D.Nev. 1993) found that "A party is 'represented' when he has counsel of record." Bringing other lawyers into the picture does not change that simple fact.

Second, Attorney Elliott was not only technically the attorney of record, he was a veteran of this litigation which had gone on for years. It is clear that Attorney Cottaggio was not privy to the substantial record that had grown out of this case, and what he knew about it came from several brief telephone calls from Extrude Hone's attorneys that totaled about a quarter of an

hour. To elevate him over Attorney Elliott as the lawyer in this matter would be a graphic example of raising form over substance.

I view as rather strange the contention of Extrude Hone's lawyers that they did not seek the permission of Attorney Elliott to speak with Sethman, because if they had done so, it would have placed Attorney Elliott in a position of having a conflict of interest; when their primary concern should have been keeping their own ethical house in order, not his. "It is the individual responsibility of each attorney to ensure that his or her conduct is in compliance with the relevant RULES OF PROFESSIONAL CONDUCT ..." Id. at 302.

Having found a violation of Rule 4.2, we must next determine what would be an appropriate sanction.

> Courts, of course, exist to resolve disputes, and not to discipline lawyers who come before them.
>
> * * *
>
> At the same time, however, a district court has a 'duty to supervise members of its bar.'
>
> * * *
>
> Although courts should pause before depriving a party of the counsel of its choice, disqualification is appropriate when a lawyer's conduct might taint the case. In general, then, a district judge should disqualify the offending counsel when the integrity of the adversarial process is at stake.
>
> * * *

12

> It follows that a violation of professional ethics rules does not alone trigger disqualification ... rather, a trial judge should primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act. (Citations omitted.)

Papanicolaou v. Chase Manhattan Bank, N.A., 770 F.Supp. 1080 (S.D.N.Y. 1989). The court notes that the standard for disqualification is whether the trial might be tainted. Id. at 1083 n.6. The possibility of taint clearly exists. Extrude Hone's lawyers deemed that such meetings with Sethman would be to Extrude Hone's advantage, otherwise they would not have gone to such lengths to arrange them, and the only possible reason for the meetings would be to elicit information from Sethman which would be useful to them in the upcoming trial. In meeting with him for over four hours over a two day period, it is safe to assume that Sethman had something to say that was of interest to Extrude Hone's lawyers and of benefit to their client. Even if the information given by Sethman was already known to Extrude Hone, or could have been obtained by other means, the Papanicolaou court's reasoning would call for disqualification. Id. at 1085. The federal court decisions in this area rely upon the inherent authority of the trial court to supervise those practitioners appearing before the court; there is no reason to believe that the courts in Pennsylvania lack the same inherent power.

13

The disqualification should not be limited to the two lawyers presently representing Extrude Hone, but should be extended to their law firms as well.[2] There is a presumption of shared knowledge among members of the same firm, a presumption which can be rebutted upon a showing that effective prophylactic measures were implemented to contain the spread of the tainted information, such as the creation of a "Chinese wall." Id. at 1086. However, there is nothing in the record that would rebut the presumption of shared knowledge, and to the contrary, when it appeared that Attorneys Porter and Titus were going to testify as witnesses in the disqualification hearing, another member of their firm was brought in to represent Extrude Hone in that hearing. I would agree with Judge Patterson when he wrote in the Papanicolaou decision:

> This Court doubts whether any Chinese walls, which are meant to be preemptive, can ever function effectively when erected in response to a motion, and not prior to the arising of the conflict.

Id. at 1087.

Finally, it is appropriate to require Extrude Hone and its lawyers to divulge to Dynetics all of the information

---

[2] From a review of the record it appears that in late 1997 or early 1998 John J. Porter must have left McClure & Watkins and joined the firm of Titus & McConomy. Since McClure & Watkins are still of record on behalf of the plaintiff, the disqualification of counsel should extend to the firm of McClure & Watkins as well, although there is no evidence of that firm's participation in a violation of Rule 4.2.

14

obtained from Sethman, and to preclude Extrude Hone from calling Sethman as a witness. Normally the consequences of the lapses of counsel should not be visited upon their client, but in this case Mr. Rhoades, the president of Extrude Hone, was himself active in bringing about the violation of Rule 4.2, and at the disqualification hearing Attorney Titus testified that he was under instructions from Mr. Rhoades not to contact Attorney Elliott.

15

ORDER OF COURT

AND NOW, this _12th_ day of May, 1998, it is ordered:

1. John J. Porter, Esquire, Paul H. Titus, Esquire, and the law firms of Titus & McConomy and McClure & Watkins are disqualified from further representation of the plaintiff in this action.

2. Titus & McConomy and McClure & Watkins, any other counsel for plaintiffs, and any other attorneys, experts, consultants, employees or other individuals assisting them in any fashion in the prosecution of the above-captioned case are prohibited from disclosing to any individual without prior authorization from the court:

> a. information regarding any discussions or meetings any of them have had with plaintiff, James Sethman.
>
> b. the contents of any such discussions or meetings;
>
> c. any information they have learned or obtained during the course of any such discussions or meetings; and
>
> d. any notes, tape recordings, memoranda, or other documents or recordings discussing, relating to, or generated in any such discussions or meetings.

In addition, such persons are prohibited from testifying or assisting in the further prosecution of this case.

3. Plaintiff and its counsel shall produce to Dynetics' counsel the originals of any documents provided by, shown to, or discussed with plaintiff, James Sethman, during the course of their contacts with him, as well as all originals and copies of statements, notes, memoranda, tape recordings, correspondence, facsimile transmission cover sheets, and all other recordings and documents generated as a result of the contacts with James Sethman.

4. Larry Rhoades and any other Extrude Hone personnel are prohibited from testifying concerning and from disclosing any of the information set forth in paragraph 2 of this order.

5. The plaintiff is barred from calling James Sethman as a witness.

6. This case is removed from the trial list, and the plaintiff is directed to obtain new counsel within ninety (90) days.

BY THE COURT:

_____
Daniel J. Ackerman, Judge

ATTEST:

_____
Prothonotary

cc: John H. Porter, Esquire  
    Paul H. Titus, Esquire  
    Frederick W. Thieman, Esquire  
    Larry K. Elliott, Esquire  
    McClure & Watkins, PC  
    Court Administrator's Office