```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE:                                              :
                                                    :         14-MD-2542 (VSB)
KEURIG GREEN MOUNTAIN SINGLE-                       :         14-MC-2542 (VSB)
SERVE COFFEE ANTITRUST                              :
LITIGATION                                          :              ORDER No. 9
                                                    :         (Ruling on Requested
                                                    :         Transcript Redactions)
This Document Relates to 14-CV-4242                 :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/5/2014

VERNON S. BRODERICK, United States District Judge:

Before me are the requests of Plaintiff JBR, Inc. ("JBR") and Defendant Keurig Green Mountain, Inc. ("Keurig") for redaction of the transcript of the hearing on September 3 and 4, 2014, concerning JBR's motion for a preliminary injunction.[1]  Plaintiffs in one of the related actions within this multidistrict litigation, TreeHouse Foods, Inc., Bay Valley Foods, Inc., and Sturm Foods, Inc. (collectively, "TreeHouse"), have filed a letter in opposition only to Keurig's request.[2]  (Doc. 177.)  Keurig has also submitted a letter in reply to TreeHouse.[3]  For the reasons stated below, JBR's request for redaction is GRANTED, and Keurig's request for redaction is GRANTED IN PART and DENIED IN PART.

### I.      Background[4]

This antitrust action concerns Keurig's release of a new model line of single-serve coffee brewers known as 'Keurig 2.0' ("the 2.0").  The 2.0 only accepts portion packs that have been

---

[1] By their nature, these filings are not on the public docket.
[2] The Indirect Purchaser Plaintiffs joined TreeHouse's opposition to Keurig's requested redactions.  (Doc. 178.)
[3] The Court notes that Keurig has represented in its reply letter that TreeHouse declined to meet and confer before filing its letter in opposition to Keurig's proposed redactions.  The parties are reminded to meet and confer regarding proposed redactions and other issues relating to the protection of their confidential information under the Protective Order before raising any future disputes with the Court.
[4] I set forth only a very brief summary necessary for purposes of this Order.  For a more complete summary, see the Court's Memorandum and Order denying JBR's preliminary injunction motion, (Doc. 160).

authorized by Keurig. The 2.0 uses an ink scanner to recognize proprietary ink that has been marked on the lid of every authorized portion pack, and it will not brew a beverage from a portion pack that the scanner does not recognize. JBR, a coffee grower and roaster, produces a portion pack of coffee called the OneCup, which is compatible with Keurig's first-generation brewer model line ("the 1.0") but cannot be used in the 2.0 because OneCups do not have proprietary ink on their lids. JBR moved this Court for a preliminary injunction on August 11, 2014, seeking to enjoin Keurig from: (1) promoting, marketing, or selling the 2.0 with a "lock-out" of unauthorized portion packs; or (2) making false or misleading statements about JBR's products to its consumers.

  I authorized limited expedited discovery pertaining to JBR's motion. (Doc. 58.) Much of the material produced by the parties in discovery was designated as highly confidential under the Protective Order governing this litigation, (Doc. 189), as was the testimony of witnesses who gave depositions on the parties' behalf pursuant to Federal Rule of Civil Procedure 30(b)(6). Because the parties relied on material designated as highly confidential in their submissions concerning JBR's motion for a preliminary injunction, I permitted the parties to redact the publicly filed versions of their memoranda of law and supporting declarations and to file complete versions under seal. (Docs. 91, 128, 136.) I heard argument on JBR's motion at a hearing on September 3 and 4, 2014. Although I ordered that all declarants be made available for cross-examination at the hearing, (Doc. 64), the parties mutually agreed not to present live testimony. At the hearing, which was open to the public, I took precautions—after consulting the parties—to restrict the dissemination of highly confidential information contained in the parties' slide presentations. Confidential information was not displayed on screens facing the public gallery. However, copies of the parties' presentations were distributed to counsel in the

related actions who were present in the gallery, including counsel for TreeHouse, and counsel was required to return those copies at the end of each day. I advised the parties at the hearing that I would permit them to request redactions to the transcript of the proceeding. No party made a motion to close the courtroom, and I did not do so *sua sponte*.

On September 19, 2014, I issued an abbreviated Order denying JBR's motion for a preliminary injunction, (Doc. 145), while filing under seal the full Memorandum and Order explaining my decision. I requested that the parties propose any redactions to the Memorandum and Order. (Doc. 145.) I accepted the parties' proposed redactions, none of which were opposed, and filed a redacted version of the Memorandum and Order on the public docket. (Doc. 160.) The parties properly filed notice of their intention to request redactions to the hearing transcript. (Docs. 146, 148.)

## II.   Legal Standard

The presumptive First Amendment right of public access to judicial proceedings encompasses "civil trials and . . . their related proceedings and records." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2011). Where the presumptive First Amendment interest in public access applies, as here, it may be overcome by "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted). The need to protect sensitive commercial information from disclosure to competitors seeking an advantage may constitute such an interest. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). "The transcript of a proceeding is so closely related to the ability to attend the proceeding itself that maintaining secrecy is appropriate only if closing the courtroom was appropriate." *Newsday LLC v. Cnty. of Nassau*,

730 F.3d 156, 165 (2d Cir. 2013).

### III. Analysis

#### A. *JBR's Proposed Redactions*

JBR's proposed redactions concern the percentage of its OneCup sales attributable to certain specific customers, its projected change in OneCup sales, and the amounts of money it has borrowed and has invested in machinery to produce the OneCup. All of the material that JBR proposes to redact is drawn directly from internal records, deposition testimony, and portions of declarations designated as highly confidential under the Protective Order. (*See, e.g.*, Deposition of JBR, Inc., by Michael Sarina, August 26, 2014, Doc. 127 Ex. 14, at 158-59; Supplemental Declaration of Michael Sarina in Support of Plaintiff's Reply in Support of Its Motion for a Preliminary Injunction, Doc. 131, ¶¶ 12, 14(b), 17.) "Financial records of a wholly owned business . . . will weigh more heavily against access than conduct affecting a substantial portion of the public." *Amodeo*, 71 F.3d at 1051. I find that the presumption of public access to the percentage of JBR's business attributable to certain retailers, the dollar amount of JBR's investments in equipment used to produce the OneCup, and the percentage change JBR forecasts to its OneCup sales is outweighed by JBR's interest as a privately held business in safeguarding that information from competitors who may wish to exploit it. Because JBR proposes to redact only the specific percentages and dollar amounts at issue, I further find that JBR's proposed redactions are narrowly tailored to safeguard its interests. *See Lugosch*, 435 F.3d at 120.

#### B. *Keurig's Proposed Redactions*

Keurig's proposed redactions concern its sales projections for the 2.0, the technical functioning of the ink-scanning technology, its future plans for innovation, the scope and duration of its licensing agreements with business partners, and its expected future harm in the

event the Court had granted JBR's requested injunction.

I find that it is appropriate to redact Keurig's internal forecast of the 2.0's future market share.  This material is drawn directly from an internal document produced by Keurig in limited expedited discovery and designated as highly confidential under the Protective Order.  (Doc. 135, Ex. 15, at 81.)  Keurig's interest in protecting this confidential business information outweighs the public's First Amendment interest in accessing Keurig's internal projections.  *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 424-25 (E.D.N.Y. 2007) ("Disclosure of confidential proprietary material and trade secrets poses a significant risk of harm to [a] company operating in a competitive marketplace.").  However, Keurig's proposed redactions are overly broad.  *See Lugosch*, 435 F.3d at 120 (requiring narrow tailoring).  Redacting only the specific percentages at issue is sufficient to safeguard Keurig's sensitive commercial information.  It is unnecessary to redact the entire sentences in which the percentages are contained.  Although the words in the sentences do identify the subject matter of the percentages, it is the percentages themselves that constitute the confidential information.[5]

It is also proper to redact the portions of the transcript that describe:   (a) the technical functioning of the ink scanner that prevents the use of unlicensed portion packs; and (b) Keurig's future "innovation pathway" for the 2.0.  *See In re Zyprexa Injunction*, 474 F. Supp. at 424-25.  All of the material Keurig proposes to redact is drawn directly from Keurig's deposition testimony, designated as highly confidential under the Protective Order.  (*See* Deposition of Keurig Green Mountain, Inc., by Kevin Sullivan, Aug. 7, 2014, Doc. 127 Ex. 15, at 90-93, 289-90.)  Although TreeHouse argues that this material may not be redacted because its substance has already been publicly reported, TreeHouse points only to one document prepared by an industry

---

[5] I note that such redactions are consistent with the redactions to the Preliminary Injunction Memorandum & Order agreed to by JBR and Keurig that I adopted.  (Doc. 160.)

analyst that appears to be designed for paying customers and unavailable for general public consumption.  *Cf. Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (noting that it would be impossible to reseal information that "now resides on the highly accessible databases of Westlaw and Lexis and has apparently been disseminated prominently elsewhere"); *In re Application to Unseal 98 Cr. 1101 (ILG)*, 891 F. Supp. 2d 296, 300 (S.D.N.Y. 2012) (granting motion to unseal information that had already been "publicly revealed by the Government in a press release" and was "accessible on Westlaw and Lexis").  I find that the public's First Amendment interest in knowing the technical specifications of the ink scan and the kinds of beverages the 2.0 may be able to brew in the future is outweighed by Keurig's interest in safeguarding this proprietary business information.

     Keurig also proposes to redact information regarding its licensing agreements with Mr. Coffee and Cuisinart.  It is public knowledge that Keurig licenses Mr. Coffee and Cuisinart to produce 1.0 brewers.  *See Brewer Support FAQs*, Keurig, http://www.keurig.com/support/k-cup-brewers (last visited Oct. 23, 2014) ("Who should I contact if I need support for my Keurig Licensed brewer?  (Breville/Cuisinart/Mr. Coffee)").  Accordingly, the Court's questions concerning those licensing agreements need not be redacted.  Keurig appears to concede that counsel's first response regarding the duration of those licensing agreements is not drawn directly from evidence in the record, let alone from material designated as highly confidential. (*See* Keurig Letter Requesting Redactions, at 2 n.2.)  The response therefore need not be redacted.  The portion of counsel's second response that references Keurig's highly confidential deposition testimony may be redacted, however.  I find that the public's First Amendment interest in knowing Keurig's current intentions with respect to the renewal of its licensing agreements is outweighed by Keurig's interest in safeguarding that confidential information

about its business strategy.  *See GoSMiLE, Inc. v. Dr. Jonathan Levine D.M.D, P.C.*, 769 F. Supp. 2d 630, (S.D.N.Y. 2011) (concluding that the interest in sealing "highly proprietary material concerning . . . marketing strategies [and] product development" outweighed the presumption of public access).  However, Keurig's proposed redaction is overly broad.  Redacting only the specific portion of counsel's statement that relays the substance of Keurig's confidential deposition testimony will suffice to safeguard Keurig's commercial interests.

Finally, Keurig proposes to redact a statement concerning the financial harm it would have suffered if the Court had issued JBR's requested preliminary injunction, resulting in the 2.0 being unavailable to the public for a significant period.  I can see no "essential" need, *Lugosch*, 435 F.3d at 120, to redact counsel's generic comment that Keurig could lose hundreds of millions of dollars if it was prohibited from selling a major new product for six months, including during the holiday season.

**IV.     Conclusion**

For the reasons stated above, JBR's requests for redaction are GRANTED, and Keurig's requests for redaction are GRANTED IN PART and DENIED IN PART.  The Court has provided the parties and the Court Reporter with the approved redactions to the transcript of the preliminary injunction hearing.  The Court Reporter is respectfully directed to redact the transcript, (Docs. 141, 143), in accordance with this Order and to publish a redacted version of the transcript on the public docket no earlier than November 17, 2014.

SO ORDERED.

Dated:     November 5, 2014
           New York, New York

_____
Vernon S. Broderick
United States District Judge

7