**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE
COFFEE ANTITRUST LITIGATION

:    No. 1:14-md-02542 (VSB)
:
:
:

------------------------------------------------------------------------ X


<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>
<u>**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FILED BY JBR, INC.**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................II

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

    I.      JBR's Section 2 Claims Fail As A Matter Of Law ............................................... 4

          A.     JBR's Product Design Claims Fail To Allege Anticompetitive Conduct ................................................................................................ 4

          B.     JBR's Patent Litigation Claims Fail ....................................................... 6

                1.     Sham Litigation Claim Fails For Lack Of Baselessness ............... 6

                2.     Patent Misuse Claim Fails For Lack Of A Live Controversy ........ 8

          C.     JBR's Exclusive Dealing Claims Fail For Lack Of Substantial Foreclosure ........................................................................................... 8

                1.     No Substantial Foreclosure Based On Licensing Agreements ................................................................................ 9

                2.     No Substantial Foreclosure Of Distribution ................................. 11

                3.     No Substantial Foreclosure Of Retailers ..................................... 12

          D.     Marketing Claims Fail To Overcome Presumption Of *De Minimis* Effect .................................................................................................. 13

          E.     JBR Fails To Allege Monopoly Power In A Proper Relevant Market ................................................................................................. 16

                 1.     No Monopoly Power In Alleged Pressurized Brewer "Market" ................................................................................... 16

                 2.     No Monopoly Power In Portion Packs "Markets" ....................... 18

                 3.     No Monopoly Power In "Branded"/"Private Label" Cup "Markets" ................................................................................... 20

                 4.     JBR's Growth Proves No Dangerous Probability Of Monopoly Power .......................................................................... 21

    II.     JBR's Section 1 Claims Fail Because JBR Fails To Allege A Horizontal Conspiracy .......................................................................................................... 22

    III.    JBR Fails To State A False Advertising Claim Under The Lanham Act ........... 24

    IV.    JBR's State Law Claims Fail For The Same Reasons As Its Federal Claims ............................................................................................................... 28

CONCLUSION ................................................................................................................. 30

i

## <u>Table of Authorities</u>

**Federal Cases**

*Abcor Corp. v. AM International, Inc.,*
    916 F.2d 924 (4th Cir. 1990) ...................................................................................15

*AccuImage Diagnostics Corp. v. Terarecon, Inc.,*
    260 F. Supp. 2d 941, 956 (N.D. Cal. 2003) .................................................... 29-30

*Ad/SAT, Division of Skylight, Inc. v. Associated Press,*
    181 F.3d 216 (2d Cir. 1999)..............................................................................17, 20

*Alfred Dunhill Ltd. v. Interstate Cigar Co.,*
    499 F.2d 232 (2d Cir. 1978)...................................................................................24

*American Council of Certified Podiatric Physicians v. American Board of Podiatric*
    *Surgery,*
    323 F.3d 366 (6th Cir. 2003) ........................................................................... 13-14

*American Home Products Corp. v. Johnson & Johnson,*
    654 F. Supp. 568 (S.D.N.Y. 1987)....................................................................14, 25

*American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal &*
    *Professional Publications, Inc.,*
    108 F.3d 1147 (9th Cir. 1997) ........................................................................ 13-14

*Appliance Recycling Centers of America, Inc. v. JACO Environmental, Inc.,*
    378 F. App'x 652 (9th Cir. 2010) .........................................................................29

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................4

*AstraZeneca AB v. Mylan Laboratories Inc.,*
    2010 WL 2079722 (S.D.N.Y 2010)........................................................................7

*AT&T Corp. v. JMC Telecom, L.L.C.,*
    470 F.3d 525 (3d Cir. 2006)...................................................................................22

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007).....................................................................................15

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*,
 909 F. Supp. 162 (S.D.N.Y. 1995)................................................................. 16-17, 21

*Balaklaw v. Lovell*,
 14 F.3d 793 (2d Cir. 1994)................................................................................10

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
 813 F. Supp. 2d 569 (S.D.N.Y. 2011).........................................................17, 21

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................ passim

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
 603 F.2d 263 (2d Cir. 1979)................................................................... passim

*Boarding School Review, LLC v. Delta Career Education Corp.*,
 2013 WL 6670584 (S.D.N.Y. 2013)..................................................................15

*Bowen v. New York News, Inc.*,
 366 F. Supp. 651 (S.D.N.Y. 1973), *aff'd in part and rev'd in part on other grounds*,
 522 F.2d 1242 (2d Cir. 1975)..............................................................................9

*Broadway Delivery Corp. v. United Parcel Service of America, Inc.*,
 651 F.2d 122 (2d Cir. 1981)..............................................................................18

*Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*,
 393 F. 3d 1378 (Fed. Cir. 2005)..........................................................................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
 429 U.S. 477 (1977)..........................................................................................10

*Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*,
 601 F.2d 48 (2d Cir. 1979)...........................................................................4, 6

*Business Electronics Corp. v. Sharp Electronics Corp.*,
 485 U.S. 717 (1985)..........................................................................................23

*California Computer Products v. International Business Machines Corp.*,
 613 F.2d 727 (9th Cir. 1979) ..............................................................................5

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
 479 U.S. 104  (1986)..........................................................................................10

iii

*CDC Technologies, Inc. v. IDEXX Laboratories, Inc.*,
   186 F.3d 74 (2d Cir. 1999)...............................................................1, 9, 11

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ...............................................................29

*Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*,
   2012 WL 511485 (W.D. Ark. 2012)........................................................20

*Commercial Data Servers v. International Business Machines Corp.*,
   166 F. Supp. 2d 891 (S.D.N.Y. 2001)......................................................17

*Commercial Data Servers v. International Business Machines Corp.*,
   262 F. Supp. 2d 50 (S.D.N.Y. 2003).......................................................11

*Cytyc Corp. v. Neuromedical Systems, Inc.*,
   12 F. Supp. 2d 296 (S.D.N.Y 1998).....................................................14, 25

*De Jesus v. Sears, Roebuck & Co.*,
   87 F.3d 65 (2d Cir. 1996) .....................................................................5

*Dickson v. Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002) ..................................................................9

*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*,
   73 F.3d 756 (7th Cir. 1996) ..................................................................19

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986) ...............................................................28

*Doron Precision Systems, Inc. v. FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006).....................................................3-4

*DSM Desotech Inc. v. 3D Systems Corp.*,
   749 F.3d 1332 (Fed. Cir. 2014)...........................................................6, 19

*E & L Consulting v. Doman Industries Ltd.*,
   472 F.3d 23 (2d Cir. 2006).....................................................................12

*Eatoni Ergonomics, Inc. v. Research In Motion Corp.*,
   826 F. Supp. 2d 705 (S.D.N.Y. 2011), *aff'd*, 486 F. App'x 186 (2d Cir. 2012).........................2

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*,
   129 F.3d 240 (2d Cir. 1997)................................................................................... 22-23

*Falise v. American Tobacco Co.*,
   94 F. Supp. 2d 316 (E.D.N.Y. 2000) .............................................................................7

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
   314 F.3d 48 (2d Cir. 2002)............................................................................... 24, 26-27

*Flickinger v. Harold C. Brown & Co.*,
   947 F.2d 595 (2d Cir. 1991)..........................................................................................5

*Ford Piano Supply Co. v. Steinway & Sons*,
   1988 WL 3488 (S.D.N.Y. 1988)..................................................................................11

*GAF Corp. v. Eastman Kodak Co.*,
   519 F. Supp. 1203 (S.D.N.Y. 1981).............................................................................5

*Gatt Communications, Inc. v. PMC Associates, L.L.C.*,
   711 F.3d 68 (2d Cir. 2013)..........................................................................................1-2

*Generac Corp. v. Caterpillar Inc.*,
   172 F.3d 971 (7th Cir. 1999) ......................................................................................22

*Great Escape, Inc. v. Union City Body Co.*,
   791 F.2d 532 (7th Cir. 1986) ......................................................................................21

*Hack v. President & Fellows of Yale College*,
   237 F.3d 81 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema
   N.A.*, 534 U.S. 506 (2002)..........................................................................................19

*In re Insurance Brokerage Antitrust Litigation*,
   618 F.3d 300 (3d Cir. 2010).................................................................................. 22-23

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
   599 F.3d 1377 (Fed. Cir. 2010)....................................................................................8

*Insignia Systems, Inc. v. News Corp., Ltd.*,
   2005 WL 2063890 (D. Minn. 2005) ...........................................................................12

*Invamed, Inc. v. Barr Laboratories, Inc.*,
   22 F. Supp. 2d 210 (S.D.N.Y. 1998)...........................................................................16

*ITC Ltd v. Punchgini Inc.*,
    482 F.3d 135 (2d Cir. 2007)........................................................................................28

*Jefferson Parish Hospital District Number 2 v. Hyde*,
    466 U.S. 2 (1984)........................................................................................................11

*Jordan v. Verizon Corp.*,
    2009 WL 1490813 (S.D.N.Y. 2009)......................................................................12, 17

*Joyce Beverages of New York, Inc. v. Royal Crown Cola Co.*,
    555 F. Supp. 271 (S.D.N.Y. 1983).............................................................................11

*K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*,
    61 F.3d 123 (2d Cir. 1995).........................................................................................10

*Kellam Energy, Inc. v. Duncan*,
    668 F. Supp. 861 (D. Del. 1987).................................................................................11

*Klayman v. Judicial Watch, Inc.*,
    628 F. Supp. 2d 112 (D.D.C. 2009) ...........................................................................14

*Levitch v. Columbia Broadcasting System, Inc.*,
    495 F. Supp. 649 (S.D.N.Y. 1980), *aff'd*, 697 F.2d 495 (2d Cir. 1983) ...................23

*Lexmark International Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)........................................................................................... 27-28

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995).....................................................................................24, 26

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 F. App'x 554 (9th Cir. 2008) ...............................................................................29

*Lorenz v. F. W. Woolworth Co.*,
    195 F. Supp. 719  (S.D.N.Y. 1961), *aff'd*, 305 F.2d 102 (2d Cir. 1962) ....................8

*Marcyan v. Nissen Corp.*,
    578 F. Supp. 485 (N.D. Ill. 1982) ..............................................................................27

*MultiVideo Labs, Inc. v. Intel Corp.*,
    2000 WL 12122 (S.D.N.Y. 2000)...............................................................................14

*National Association of Pharmaceutical Manufacturers v. Ayerst Laboratories*,
    850 F.2d 904 (9th Cir. 1988) ................................................................. 13

*National Basketball Association v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997) .......................................................... 24, 28

*National Lighting Co. v. Bridge Metal Industries LLC*,
    601 F. Supp. 2d 556 (S.D.N.Y. 2009) ..................................................... 25

*Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*,
    614 F.2d 832 (2d Cir. 1980) ................................................................ 21

*Nova Designs, Inc. v. Scuba Retailers Association*,
    202 F.3d 1088 (9th Cir. 2000) .............................................................. 28

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) ......................................................................... 23

*Ocean State Health Plan, Inc. v. Blue Cross of Rhode Island*,
    883 F.2d 1101 (1st Cir. 1989) ................................................................ 6

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    134 S. Ct. 1749 (Apr. 29, 2014) ............................................................. 7

*Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*,
    797 F.2d 370 (7th Cir. 1986) (Posner, J.) ............................................... 5-6

*Omega Environmental Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ............................................................... 9

*Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*,
    816 F.2d 68 (2d Cir. 1987) .................................................................. 23

*Orion Tire Corp. v. General Tire, Inc.*,
    1992 WL 295224 (C.D. Cal. 1992) ........................................................ 30

*Paddock Publications, Inc. v. Chicago Tribune Co.*,
    103 F.3d 42 (7th Cir. 1996) (Easterbrook, J.) .......................................... 10

*PepsiCo, Inc. v. Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002) ..................................................... 1, 11, 22-23

*Poindexter v. EMI Record Group Inc.*,
2012 WL 1027639 (S.D.N.Y. 2012) ........................................................................3

*POURfect Products v. KitchenAID*,
2010 WL 1769413 (D. Ariz. 2010) .........................................................................15

*Prasco LLC v. Medicis Pharmaceutical Corp.*,
537 F.3d 1329 (Fed. Cir. 2008) ...............................................................................8

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.*,
747 F.2d 114 (2d Cir. 1984) ...................................................................................25

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. ("PRE")*,
508 U.S. 49 (1993) ................................................................................................1, 7

*PSI Repair Services Inc. v. Honeywell, Inc.*,
104 F.3d 811 (6th Cir. 1997) ....................................................................................6

*Qualitex Co. v. Jacobson Products Co.*,
514 U.S. 159 (1995) ...............................................................................................24

*Raghavendra v. Trustees of Columbia University*,
2012 WL 3778714 (S.D.N.Y. 2012) ...................................................................29-30

*Razorback Ready Mix Concrete Co. v. Weaver*,
761 F.2d 484 (8th Cir. 1985) ....................................................................................8

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ....................................................................................15

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*,
28 F.3d 1379 (5th Cir. 1994) ..................................................................................12

*Ryko Manufacturing Co. v. Eden Services*,
823 F.2d 1215 (8th Cir. 1987) ................................................................................11

*Schachar v. American Academy of Ophthalmology, Inc.*,
870 F.2d 397 (7th Cir. 1989) ..................................................................................13

*Sensible Foods, LLC v. World Gourmet, Inc.*,
2012 WL 566304 (N.D. Cal. 2012) .........................................................................29

*SMS System Maintenance Services, Inc. v. Digital Equipment Corp.*,
    11 F. Supp. 2d 166 (D. Mass. 1998) ...................................................................18

*SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp.*,
    188 F.3d 11 (1st Cir. 1999)...........................................................................20

*Smugglers Notch Homeowners' Association, Inc. v. Smugglers' Notch Management Co.*,
    414 F. App'x 372 (2d Cir. 2011) .............................................................2, 19

*Spectrum Sports v. McQuillan*,
    506 U.S. 447 (1993)....................................................................................21

*Stearns Airport Equipment Co. v. FMC Corp.*,
    170 F.3d 518 (5th Cir. 1999) ......................................................................13

*Suntree Technology, Inc. v. EcoSense International, Inc.*,
    802 F. Supp. 2d 1273 (M.D. Fla. 2011).....................................................27

*Tampa Electric Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961)..................................................................................1, 8

*Tate v. Pacific Gas & Electric Co.*,
    230 F. Supp. 2d 1072 (N.D. Cal. 2002) .....................................................14

*Turbon International Inc. v. Hewlett-Packard Co.*,
    769 F. Supp. 2d 262 (S.D.N.Y. 2001).........................................................25

*Ulrich v. Moody's Corp.*,
    2014 WL 4977562 (S.D.N.Y. 2014).......................................................2, 22

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956)...................................................................................17

*Verizon Communications Inc. v. Law Offices of Curtis v. Trinko, LLP*,
    540 U.S. 398 (2004).............................................................................4-5, 21

*Viacom International, Inc. v. Tele-Communications, Inc.*,
    1994 WL 561377 (S.D.N.Y. 1994) (Preska, J.)...........................................8

*Walker & Zanger, Inc. v. Paragon Industries, Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) .....................................................29

*Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.*,
    516 F. Supp. 2d 270 (S.D.N.Y. 2007)..........................................................................9, 11-12

*Xerox Corp. v. Media Sciences, Inc.*,
    660 F. Supp. 2d 535 (S.D.N.Y. 2009) ("*Xerox III*")...............................................6, 18-19, 21

*Xerox Corp. v. Media Sciences International, Inc.*,
    511 F. Supp. 2d 372 (S.D.N.Y. 2007) ("*Xerox I*") ........................................................ 15-16

*Yagman v. Galipo*,
    2013 WL 1287409 (C.D. Cal. 2013)........................................................................................29

*Yentsch v. Texaco, Inc.*,
    630 F.2d 46 (2d Cir. 1980)......................................................................................................12

**State Cases**

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*,
    60 Cal. Rptr. 2d 830 (Cal. Ct. App. 1997)..............................................................................30

*Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ...........................................................................................................29

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (Cal. Ct. App. 2d Dist. 2001) ..............................................................29

**Federal Statutes**

15 U.S.C. § 1125(a)(1)(B) .............................................................................................................24

28 U.S.C. § 2201(a) .........................................................................................................................8

**Other Authorities**

Dennis W. Carlton & Jeffrey M. Perloff, *Modern Industrial Organization* 88 (4th ed.
    2005) .......................................................................................................................................16

Federal Rule of Evidence 201(b) .....................................................................................................3

IIIB Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 775c (3d ed. 2006)......................6

## INTRODUCTION

Plaintiff JBR, Inc. ("JBR") filed suit one month after TreeHouse, bringing a substantially similar complaint.  Like TreeHouse, JBR fails to state a claim.  Section 2 of the Sherman Act, 15 U.S.C. § 2, requires a plaintiff to allege: (1) anticompetitive conduct; (2) that creates monopoly power in a properly defined relevant market; and (3) that causes antitrust injury to the plaintiff. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002); *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75-78 (2d Cir. 2013).  JBR fails in all respects.

First, none of the conduct that JBR alleges is anticompetitive.

- As to product design, a firm "may generally bring its products to market whenever and however it chooses."  *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 286 (2d Cir. 1979).  The only exception arises when a monopolist coerces consumers into buying its new product.  *Id.* at 287.  JBR cannot allege coercion here.

- As to alleged sham litigation, access to the courts is immune from antitrust challenge under the First Amendment.  *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, ("*PRE*"), 508 U.S. 49, 56-57 (1993).  JBR fails to allege an exception to this immunity.

- As to exclusive dealing, a plaintiff must allege that it was substantially foreclosed from competing.  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961).  Given its admitted success, JBR cannot plausibly make such allegations here.  *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 80-81 (2d Cir. 1999).

- As to product disparagement, speech almost never violates the antitrust laws and JBR's allegations cannot overcome the presumption that Keurig's alleged speech had a *de minimis* effect on competition.  *Berkey*, 603 F.2d at 288 & n.41.

Second, even if JBR had alleged anticompetitive conduct, its Section 2 claims would fail

because JBR fails to plausibly allege monopoly power in a properly defined relevant market. *See Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers' Notch Mgmt. Co.*, 414 F. App'x 372, 377 (2d Cir. 2011) (affirming dismissal for lack of monopoly power in alleged aftermarket).

Third, JBR's Section 2 claims fail because it does not sufficiently allege antitrust injury. *Gatt*, 711 F.3d at 75-78.

In addition to its Section 2 claims, JBR tacks on inadequate claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, the Lanham Act, 15 U.S.C. § 1225(a), and state laws. Each of JBR's claims fails, and JBR cannot save its deficient claims by arguing that together they are converted into a viable complaint: Simply put, "the sum of zero and zero is zero." *Eatoni Ergonomics, Inc. v. Research In Motion Corp.*, 826 F. Supp. 2d 705, 710 (S.D.N.Y. 2011), *aff'd*, 486 F. App'x 186 (2d Cir. 2012). Because JBR fails to state a claim, Keurig requests that the Amended Complaint be dismissed in its entirety with prejudice. *See, e.g.*, *Ulrich v. Moody's Corp.*, 2014 WL 4977562, at *19 (S.D.N.Y. 2014).

## STATEMENT OF FACTS

In 1998, Keurig revolutionized coffee brewing with its single-serve system. Amended Compl. ("AC") ¶ 19.[1] Developing the system required "capital, substantial technological knowledge and design capabilities." *Id.* ¶ 29. Keurig has worked continuously to improve its products and meet demand. *See id.* ¶ 19. Keurig has sold about 40 million brewers. *Id.* ¶ 28.

Keurig designed its original single-serve system (the "1.0") as a "closed" system that used only Keurig portion packs, known as "K-Cup" packs ("K-Cups"). *See id.* ¶ 34. Keurig sells brewers at or below cost, and makes money from sales of K-Cups. *Id.* ¶ 314. K-Cups contained patented technology, but the patents have expired. *Id.* ¶¶ 106, 162.

---

[1] In this brief Keurig describes the facts alleged in the JBR complaint. Keurig makes no concession as to the accuracy of JBR's assertions.

In late 2010, plaintiff TreeHouse began selling 1.0-compatible portion packs. *Id.* ¶ 158. These packs contained instant coffee powder, rather than ground coffee, and led to fraud and false advertising actions against TreeHouse. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 753-54 (7th Cir. 2014). JBR, a coffee roaster and packager, introduced 1.0-compatible packs in October 2011. AC ¶¶ 5, 36. JBR's cups are not sealed in plastic and use an open mesh bag to hold coffee. *Id.* ¶ 32. JBR sells its packs through retailers such as Costco and Amazon (where its packs are a "#1 Best Seller"), and it sells directly to consumers. *Id.* ¶¶ 70, 289.[2] Pack sales account for more than 40% of JBR's business. *Id.* ¶ 277.

Keurig sued JBR for patent infringement. *Id.* ¶ 158. JBR did not move to dismiss. Dkt., *Keurig, Inc. v. JBR, Inc.*, Civ. A. No. 11-11941-FDS (D. Mass. Nov. 12, 2011). Keurig's claims were dismissed on summary judgment. AC ¶ 168.

In 2012, Keurig launched the Vue, a new brewer that did not brew K-Cups. Orig. Compl. ("OC") ¶ 102.[3] The Vue included superior technology and drew critical acclaim, but—despite Keurig's great success with its 1.0 brewer—the Vue had limited sales. *See id.* ¶ 103.

In November 2013, Keurig announced the forthcoming Keurig 2.0 brewer, its most significant innovation yet. *See* AC ¶ 192. The 2.0 was designed to brew not only K-Cups but also Vue Packs, *see id.* ¶ 216, and new "K-Carafe" packs that brew a carafe of coffee. *See id.* ¶ 41. Keurig announced the 2.0 was a closed system designed to work with Keurig packs. *Id.* ¶

---

[2] *See also* http://www.rogersfamilyco.com/index.php (showing link to "shop our store"). Under Federal Rule of Evidence 201(b), this Court may take judicial notice of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see, e.g.*, *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 178-79 & n.8 (S.D.N.Y. 2006) (taking judicial notice of information posted on a party's website).

[3] JBR omits this from its amended complaint. But "the Court may still credit admissions in the original complaint." *Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. 2012). The Vue Brewer and Vue Packs are mentioned in the amended complaint. *See* AC ¶¶ 212, 216-17, 254, 263.

192.  The 2.0 was launched in mid-August 2014.[4]  Some competitors now claim to have reverse-engineered 2.0-compatible portion packs.  *See id.* ¶ 47.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires more than "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Particularly in antitrust cases, "only by taking care to require allegations" with sufficient heft can courts "avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of success.  *Id.* at 559.

Even more importantly, antitrust claims must be reviewed carefully because false condemnation of competitive conduct threatens to "chill the very conduct the antitrust laws are designed to protect."  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 414 (2004) (citation omitted).  And, particularly in reviewing antitrust claims brought by competitors, "[c]ourts must be on guard against efforts of plaintiffs to use the antitrust laws to insulate themselves from the impact of competition."  *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 55 (2d Cir. 1979).

## ARGUMENT

### I.     JBR's Section 2 Claims Fail As A Matter Of Law

To allege a violation of Section 2, a plaintiff must allege anticompetitive conduct, monopoly power in a proper relevant market, and antitrust injury.  JBR fails on all fronts.

#### A.     JBR's Product Design Claims Fail To Allege Anticompetitive Conduct

While every other plaintiff in this multidistrict action has largely abandoned the product

---

[4] *See* OC ¶ 85 (2.0 to launch in "fall 2014"); http://investor.keuriggreenmountain.com releasedetail.cfm ?ReleaseID=867482 (August 2014 launch); *Doron*, 423 F. Supp. 2d at 178-79 & n.8 (judicial notice).

design claims that originally motivated this litigation, JBR clings to this invalid theory.  JBR argues that Keurig should have designed its new brewer to work with JBR's portion packs.[5]  The antitrust laws create no such obligation.  Keurig is "under no duty to help [its competitors] survive or expand" or to "constrict[] its product development so as to facilitate sales of rival products."  *Cal. Computer Prods. v. Int'l Bus. Machines Corp.*, 613 F.2d 727, 744 (9th Cir. 1979); *Trinko*, 540 U.S. at 410 ("[A]lleged insufficient assistance in the provision of service to rivals is not a recognized antitrust claim . . . ."); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.,* 797 F.2d 370, 375 (7th Cir. 1986) (Posner, J.) (no duty to help competitors).

When it comes to product design, a firm "may generally bring its products to market whenever and however it chooses."  *Berkey*, 603 F.2d at 287.  The only narrow exception to the *Berkey* rule potentially arises when a monopolist coerces consumers into buying a new product.  *Id.*; *see also GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1228 (S.D.N.Y. 1981).  JBR cannot allege that consumers have been coerced into buying the 2.0 brewer here.  In *Berkey*, the court found that there could be no coercion because **Kodak did not stop making film compatible with its prior cameras**, and thus no consumer was forced to upgrade to a new camera in order to have access to Kodak's film.  603 F.2d at 286.  This is the exact situation here: JBR concedes that Keurig continues to make K-Cups that work in 1.0 brewers.  AC ¶ 210.  This is fatal to any suggestion that consumers have been coerced into buying the 2.0 brewer.

Nor can JBR allege Keurig coerced consumers by advertising the 2.0 as open and then closing the system after consumers bought it en masse.  Quite to the contrary: JBR acknowledges Keurig disclosed up front that the 2.0 was closed.  *See id.* ¶ 212 (noting "Keurig's aggressive

---

[5] JBR labels its product design claims as: Monopolization (AC ¶¶ 294-303); Monopoly Leveraging (¶¶ 312-17); Tying (¶¶ 338-53); Anticompetitive Product Redesign (¶¶ 354-62); and Attempted Monopolization (¶¶ 377-82).  All challenge the same conduct based on the same statute.  *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir. 1991) ("[F]ederal pleading is by statement of claim, not by legal theory.").  JBR also mentions Section 3 of the Clayton Act, but this does not change the analysis.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).

marketing campaign" regarding the closed nature of 2.0).  This is the opposite of a bait and switch.  *See Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535, 540, 550 (S.D.N.Y. 2009) ("*Xerox III*")[6] (no violation from introduction of printers incompatible with competitors' ink because there was no change in policy); *DSM Desotech Inc. v. 3D Sys. Corp.*, 749 F.3d 1332, 1346-47 & n.6 (Fed. Cir. 2014) (no violation where defendant disclosed proprietary technology in new product); *PSI Repair Servs. Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997) (plaintiff cannot succeed "when the defendant has not changed its policy after locking-in some of its customers").  Because JBR cannot allege coercion, it has not stated a product design claim.

JBR makes allegations regarding Keurig's intent in designing the 2.0 brewer and the necessity of Keurig's design choices.  *See* AC ¶¶ 176-91, 344.  But the test in the Second Circuit turns on **consumer coercion**.  *Berkey*, 603 F.2d at 287.  Intent to maximize share at the expense of rivals is "what the antitrust laws aim to promote, not to discourage."  *Buffalo Courier-Express*, 601 F.2d at 54-55; *see also Olympia Equip.*, 797 F.2d at 373, 379 (fact conduct was "motivated by hostility to competitors" irrelevant to antitrust analysis); *Ocean State Health Plan, Inc. v. Blue Cross of R.I.*, 883 F.2d 1101, 1113 (1st Cir. 1989) ("desire to crush a competitor" is "insufficient to make out a violation of the antitrust laws"); IIIB Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 775c (3d ed. 2006) (Analyzing intent is "the worst way of handling claims that innovation violates the antitrust laws . . . . Innovation *always* entails taking business away from rivals; if it did not do so, it would not be profitable.").  And "necessity is a slippery concept" that courts in this Circuit do not explore.  *Berkey*, 603 F.2d at 286.

### B.    JBR's Patent Litigation Claims Fail

#### 1.    Sham Litigation Claim Fails For Lack Of Baselessness

---

[6] For clarity, we use the *Xerox* court's convention: "*Xerox I*" refers to the motion to dismiss (*Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007)), and "*Xerox III*" refers to the summary judgment decision (*Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535 (S.D.N.Y. 2009)).

A plaintiff bringing a sham litigation claim must allege that prior litigation was both objectively and subjectively baseless.  *PRE*, 508 U.S. at 60-61.  It must also allege all other elements of a Section 2 claim, including antitrust injury.  *Id*.  JBR fails on all counts.

JBR fails to offer facts showing the prior litigation was objectively baseless.  *See* AC ¶¶ 158-75.  JBR's core factual allegation is that Keurig lost.  *See id.* ¶¶ 168, 171.  But "an unsuccessful lawsuit, without more, is not a sham."  *AstraZeneca AB v. Mylan Labs. Inc.*, 2010 WL 2079722, at *4 (S.D.N.Y. 2010); *PRE*, 508 U.S. at 60-61 & n.5.  Apart from that, JBR asserts only that Keurig filed motions, AC ¶ 167, and took depositions it was entitled to take, *id.* ¶¶ 165-66.  These likewise do not support JBR's conclusion that the suit was baseless.  *Falise v. Am. Tobacco Co.*, 94 F. Supp. 2d 316, 352 (E.D.N.Y. 2000) ("[A] party may rely on the tools of discovery and motions practice to the extent permitted by the rules of the forum and the court.").  And the Federal Circuit heard oral argument on the appeal, which by rule it would not have done if the appeal were frivolous.  *See* Internal Operating Procedures, United States Court of Appeals for The Federal Circuit at IOP #7; AC ¶ 171.  JBR's own conduct also contradicts its assertion that the case was objectively baseless.  JBR never moved to dismiss, *see* Dkt., *Keurig, Inc. v. JBR, Inc.*, Civ. A. No. 11-11941-FDS (D. Mass. Nov. 12, 2011), and it never sought fees, as it could have done if the suit was "objectively baseless" and in "subjective bad faith."  *Brooks Furniture Mfg., Inc. v. Dutailier Int'l Inc.*, 393 F. 3d 1378, 1381 (Fed. Cir. 2005).[7]

Thus, the Court need not reach JBR's conclusory allegations of subjective baselessness, AC ¶174, *PRE*, 508 U.S. at 60 (only reach subjective motivation if litigation "objectively meritless").  And, if it does, JBR's recitation of the elements would not suffice.  *See Twombly*, 550 U.S. at 555.

---

[7] Though modified in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (Apr. 29, 2014), the *Brooks* standard applied when JBR opted not to seek fees.

JBR also fails to allege antitrust injury.  JBR says it spent "money and time" on the suit.

AC ¶ 172.  But legal fees are not antitrust injury.  *Razorback Ready Mix Concrete Co. v. Weaver*,

761 F.2d 484, 488 (8th Cir. 1985) (dismissing for lack of antitrust injury where plaintiff incurred

$700,000 in defense fees).  JBR does not allege these fixed costs led it and the other competitors

to exit the business.  *See id.* (no injury from legal fees where plaintiff "remained an ongoing

concern"); c*f. Viacom Int'l, Inc. v. Tele-Commc'ns, Inc.*, 1994 WL 561377, at *5-6 (S.D.N.Y.

1994) (pricing is governed by "marginal or variable costs," not fixed costs).  And its conclusory

assertions that the litigation led unidentified parties to "stop doing business" with JBR, AC ¶ 328,

or "sow[ed] doubt and confusion amongst consumers," *id.* ¶ 172, lack the factual heft *Twombly*

requires.  550 U.S. at 555.

## 2.      Patent Misuse Claim Fails For Lack Of A Live Controversy

JBR fails to state a claim for "patent misuse," which requires an "affirmative act" to

enforce patents: A subjective fear of harm will not suffice.  *Prasco LLC v. Medicis Pharm.*

*Corp.*, 537 F.3d 1329, 1338-9 (Fed. Cir. 2008).[8]  JBR alleges no affirmative act of patent

enforcement here, and there is thus no "actual controversy" to adjudicate.  *See* 28 U.S.C. §

2201(a); *See also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1379 (Fed.

Cir. 2010).  JBR's claim should be dismissed.  *See Lorenz v. Woolworth Co.*, 195 F. Supp. 719,

724 (S.D.N.Y. 1961), *aff'd*, 305 F.2d 102 (2d Cir. 1962).

## C.      JBR's Exclusive Dealing Claims Fail For Lack Of Substantial Foreclosure

An exclusive dealing claim requires a plaintiff to allege it was substantially foreclosed

---

[8] Though it is unclear, JBR may be attempting to relitigate the prior case.  *Compare* AC Prayer for Relief ¶ B (seeking declaration "Keurig's brewer and method patents are unenforceable as to Rogers' OneCups") *with Keurig, Inc. v. JBR Inc.*, 2013 WL 2304171 at *9, *11, *16 (D. Mass. 2013) (Keurig design and method patents not enforceable as to OneCups).

from the relevant market, *see Tampa Elec.*, 365 U.S. at 328, which JBR fails to do.[9]  To the contrary, **JBR alleges its own success** in selling portion packs: For example, it alleges that its "San Francisco Bay Fog Coffee Chaser," is the **"#1 Best Seller** in Beverages on Amazon.com," AC ¶ 289, and admits that in just three years, portion pack sales have grown to nearly half of its business.  *See id.* ¶¶ 36, 277.  The courts in this Circuit and others have found no foreclosure where competitors experienced a "sales increase," *see, e.g.*, *CDC*, 186 F.3d at 80-81, and even where competitors simply "remained in the market and successfully competed."  *Bowen v. N.Y. News, Inc.*, 366 F. Supp. 651, 679 (S.D.N.Y. 1973), *aff'd in part and rev'd in part on other grounds*, 522 F.2d 1242 (2d Cir. 1975); *see also Omega Envtl. Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1164 (9th Cir. 1997) (no foreclosure where a third-party competitor increased "from approximately 6% to 8%" share).  JBR's success is fatal to all of its exclusive dealing claims.

### 1.    No Substantial Foreclosure Based On Licensing Agreements

JBR alleges for the first time in its Amended Complaint that Keurig has unlawful exclusive licensing agreements with various brands.  AC ¶¶ 112-53.  But alleging substantial foreclosure requires both a numerator (the partners allegedly locked up) and a denominator (all of the available partners).  *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 295 n.8 (S.D.N.Y. 2007).  JBR says Keurig has deals with the "vast majority of nationally distributed coffee brands."  AC ¶ 144.  This does not properly allege a denominator of all brands available.  *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 209 n.20 (4th Cir. 2002) (allegations of exclusive agreements with the "largest PC makers" insufficient to allege substantial foreclosure).

Nor is it plausible to allege a shortage of popular restaurants, chefs, or food labels whose

---

[9] Substantial foreclosure must be alleged whether the plaintiff brings its exclusive dealing claims under Section 1 or Section 2 of the Sherman Act or Section 3 of the Clayton Act.  *Tampa Elec.*, 365 U.S. at 335.

brands JBR acknowledges can be successfully applied to coffee.  *See* AC ¶ 126 (noting license agreements with, *e.g.*, Kahlua, Emeril's, and Wolfgang Puck).  And the Complaint makes clear that a company can create new brands, as JBR alleges it has done with its "San Francisco Bay" and "Organic Coffee Company" brands to great success.  *Id.* ¶¶ 36, 289.  In fact, JBR's self-created brand, "San Francisco Bay" has become the "**#1 Best Seller** in Beverages on Amazon," surpassing all other portion packs, including Starbucks, Folgers, and others.  *Id.* (emphasis added).  Indeed, JBR specifically alleges that having access to an established brand is not necessary to win business: JBR alleges that consumers "have a high degree of price sensitivity and are **willing to try a new brand** if it is less expensive.  A 2013 market study concluded that 91.3% of Keurig users would try a new Compatible Portion Pack brand if it were less expensive."  AC ¶ 44 (emphasis added).  JBR has affirmatively alleged a lack of any "brand" barrier to entry.

JBR also does not allege it could not compete to work with established partners.  *Id.* ¶ 273 (Kroger and BJ's contracted with Keurig after working with JBR).  "[T]hat [a plaintiff] may have lost a potentially lucrative contract . . . is not sufficient to state a cognizable antitrust claim."  *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir. 1995); *accord Balaklaw v. Lovell*, 14 F.3d 793, 797-98 (2d Cir. 1994) (no violation based on "losing out in the competition for an exclusive"); *Paddock Publ'ns, Inc. v. Chi. Tribune Co.*, 103 F.3d 42, 45 (7th Cir. 1996) (Easterbrook, J.) ("Competition-for-the-contract is a form of competition that the antitrust laws protect rather than proscribe.").  When a plaintiff loses business due to competition, that loss is "not of concern under the antitrust laws."  *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986).  To the contrary, competition is what the antitrust laws affirmatively **encourage**.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (antitrust laws "were enacted for 'the protection of competition not competitors'").

10

### 2.      No Substantial Foreclosure Of Distribution

JBR asserts that Keurig has exclusive contracts with distributors ("KADs") that provide coffee to offices and other "away from home" locations.  AC ¶ 87.  But Keurig's KAD agreement, attached to the complaint, does not prohibit the sale of competing systems, including their portion packs; it states only that KADs may not sell portion packs "other than Keurig Packs, that can be used in a Keurig Brewer."  *Id.* ¶ 87.[10]

Moreover, exclusive distribution is "presumptively legal," as it is highly likely to be procompetitive.  *PepsiCo*, 315 F.3d at 110; *Joyce Beverages, Inc. v. Royal Crown Cola Co.*, 555 F. Supp. 271, 277-78 (S.D.N.Y. 1983).  Exclusive distribution encourages investment and spurs interbrand competition.  *See, e.g., Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1234 n.17 (8th Cir. 1987) (exclusivity "guarantees that the manufacturer's marketing investment will not be lost to other firms").  JBR acknowledges the importance of interbrand competition here.  AC ¶ 314 (alleging that Keurig prices brewers at or below cost to compete against other systems).

A plaintiff attacking exclusive distribution must allege it was foreclosed from **customers**: it is not foreclosed if it "can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution."  *CDC*, 186 F.3d at 80; *see also Wellnx*, 516 F. Supp. 2d at 295; *Commercial Data Servers v. Int'l Bus. Machines Corp.*, 262 F. Supp. 2d 50, 75 (S.D.N.Y. 2003).  JBR says it was foreclosed from a "market segment" for portion packs sold to "Away From Home" customers.  AC ¶¶ 73, 79.  Foreclosure from a "segment" is not the substantial foreclosure from a relevant market needed to support an exclusive dealing claim.  *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 29 (1984) (rejecting claims based on alleged foreclosure of a "market that has not been defined"); *Ford Piano Supply Co. v. Steinway*

---

[10] JBR alleges that the contract prevents KADs from selling "non-licensed Single Serve Brewers."  *See* AC ¶ 87.  But the agreement attached to the complaint provides only that KADs not sell "any brewer other than a Keurig Brewer that is intended for use or usable with Keurig Packs."  *Id.* ¶ 87 (quoting AC Ex. 3, at 3.2). There is no restriction on selling competing systems such as Flavia or Tassimo.

*& Sons*, 1988 WL 3488, at *2 (S.D.N.Y. 1988).  JBR concedes it successfully distributes through retailers, third-party websites, and its own website.  *See* AC ¶ 70, 289.

Nor can JBR recast its exclusive distribution claim as "tying" to save the claim or avoid the need to show foreclosure.  AC ¶¶ 88, 348; *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 882 n. 29 (D. Del. 1987) (rejecting attempt to "create a tying claim out of an exclusive dealing contract").  Tying claims based on exclusive distributorships, as JBR alleges here, do not harm competition as long as distribution alternatives exist.  *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1383 (5th Cir. 1994).  Because JBR alleges tying based on purported exclusive dealing, *see* AC ¶ 348, JBR must allege "actual foreclosure of competition" to state a claim.  *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 58 (2d Cir. 1980); *see also E & L Consulting v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006) (dismissing tying claim for failure to allege facts supporting foreclosure).  JBR's failure to allege substantial foreclosure is fatal to its claim, however labeled.

### 3.   No Substantial Foreclosure Of Retailers

JBR claims Keurig has exclusive contracts with retailers.  AC ¶ 108.  But JBR's factual allegations are limited to two retailers (Staples and OfficeMax) and "several Costco franchises." *Id.*[11]  Allegations regarding a handful of retailers—without any denominator—cannot show substantial foreclosure.  *See, e.g.*, *Insignia Sys., Inc. v. News Corp., Ltd.*, 2005 WL 2063890, at *3 (D. Minn. 2005) (no foreclosure "absent some indication of the percentage of the . . . markets that the 35,000 retail outlets allegedly under exclusive contract constitute"); *Wellnx*, 516 F.2d at 295 (six exclusive contracts are not substantial foreclosure).[12]

---

[11] To the extent JBR alleges it lost private label business with certain retailers, *see* AC ¶ 109, these are not true exclusivity claims: JBR does not claim that it was locked out of selling its products at these stores.

[12] JBR asserts that Keurig seeks this exclusivity through threats not to provide brewers unless retailers agree not to sell competitors' packs.  AC ¶ 111.  But, again, JBR alleges only **two** purportedly exclusive retailers

### D.      Marketing Claims Fail To Overcome Presumption Of *De Minimis*  Effect

JBR claims Keurig made disparaging statements to retailers, distributors, and consumers about the compatibility of unlicensed packs with the 2.0 and the quality, performance, and safety of unlicensed packs in violation of Section 2 of the Sherman Act.  AC ¶ 297(e), (h).  Courts are deeply skeptical of antitrust claims based on speech.  If a competitor has improperly marketed, the remedy is "not antitrust litigation but more speech—the marketplace of ideas."  *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 400 (7th Cir. 1989).

The Second Circuit requires an antitrust plaintiff challenging speech to "overcome a presumption that the effect on competition of [speech] was [*d*]*e minimis*."  *Berkey*, 603 F.3d at 288 n.41.  Specifically, the plaintiff must allege that statements "were (1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals."  *Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs.*, 850 F.2d 904, 916 (9th Cir. 1988).  JBR's allegations do not meet these requirements.

All of JBR's disparagement claims fail because JBR cannot allege the statements were not **susceptible** to neutralization.  *See Am. Council of Certified Podiatric Physicians v. Am. Bd. of Podiatric Surgery*, 323 F.3d 366, 372 (6th Cir. 2003) (rejecting Sherman Act claim when plaintiff had an opportunity to try to neutralize); *see also Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997) ("[T]he test refers to 'susceptible to neutralization' not 'successful in neutralization.'").  In fact, JBR concedes that it communicates directly with customers on the topics at issue.  *See, e.g.*, AC ¶¶ 249 (customers and JBR communicate regarding compatibility); 238 & Ex. 13 (JBR

---

while conceding that countless others are not exclusive.  *See, e.g.,* AC ¶ 70 (JBR packs sold in Costco); ¶ 289 (JBR packs sold on Amazon); *Jordan v. Verizon Corp.*, 2009 WL 1490813, at *3 (S.D.N.Y. 2009) (dismissing complaint relying on "internally inconsistent allegations").

communication with customers about Keurig warranty).  This is what a company **should** do when it comes to marketing: market back, not file suit.  *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 527 (5th Cir. 1999).

JBR's disparagement claims also fail because retailers are not buyers without knowledge of the subject matter; to the contrary, they regularly buy and sell brewers and portion packs and are "sufficiently sophisticated so as not to be fooled easily."  *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002).  And consumers know well how to assess advertising of the sort challenged here, for example regarding the "perfect" drink.  *See, e.g.*, *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 580 (S.D.N.Y. 1987) (the "consuming public is conditioned to view such generalized comparisons with healthy skepticism").

The disparagement claims fail for other reasons as well.  For example, JBR attacks statements to the effect that its packs do not work in the 2.0.  AC ¶¶ 206, 208-211, 250, 297(e).  But JBR concedes that its packs do not work in the 2.0.  *See id.* ¶ 229 (consumers are upset because JBR's packs do not work in 2.0).  True statements cannot support a disparagement claim.  *See MultiVideo Labs, Inc. v. Intel Corp.*, 2000 WL 12122, at *15 (S.D.N.Y. 2000); *cf. Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 150 (D.D.C. 2009) (truth of "statements must be judged at the time made").  Finally, JBR itself moved for a preliminary injunction on the basis that its products did not work in the 2.0.  *See* Pl.'s Notice of Motion and Motion for Prelim. Inj., No. 1:14-cv-02442-VSB, (S.D.N.Y.) Aug. 11, 2014, ECF No. 84.

As to alleged statements about performance, safety, and quality, for example that Keurig "assures the quality, taste, and safety" of every K-Cup, AC ¶¶ 235, 237, or that Keurig offers "high- quality beverages," *id.* ¶ 218; *see also* ¶ 93, these are subjective statements that cannot be "clearly false," and thus cannot violate the Sherman Act.  *See Am. Prof'l Testing Serv.*, 108 F. 3d

at 1152 (more than "puffing" is needed to state Section 2 claim); *cf. Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300-01 (S.D.N.Y 1998) (statements that product was "the new 'Gold Standard'" held non-actionable under the Lanham Act as these were "subjective claims of product quality").  And statements alleged only to be misleading, *see, e.g.*, AC ¶ 246, cannot be clearly false.  *Am. Council*, 323 F.3d at 371 n.7 (condemning misleading but true statements "would chill procompetitive promotional conduct").

As to statements about the warranty, for example, "[f]or best performance and warranty protection, we suggest using Keurig Brewed products in your brewer," AC ¶ 240; *see also id.* ¶¶ 93, 238-239, 243, these statements fail to support a disparagement claim for the reasons noted above and because the statements are true by JBR's own admission: Keurig's warranty explicitly notes that it may not cover damage caused by unlicensed portion packs.[13]

The alleged statements on social media suggesting JBR packs contain "stale coffee" and are "exposed to excessive amounts of oxygen," AC ¶ 236, are not clearly false: JBR concedes its packs are encased in a "mesh material," and does not claim the packs are individually airtight. *See id.* ¶¶ 32, 236.[14]  JBR also fails to allege Keurig's purported comments about stale coffee continued for prolonged periods.  *See POURfect Prods. v. KitchenAID*, 2010 WL 1769413, at *5 (D. Ariz. 2010) (dismissing claim based on comments made in a single month); *Abcor Corp. v.*

---

[13] *See* Ex. 53 at 14, Decl. of D. Johnson in Support of Mot. for Prelim. Inj., No. 1:14-cv-02442-VSB, (S.D.N.Y. Aug. 29, 2014), ECF No. 127-53.  The Court may take notice of this document.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (when complaint represents what a document says "the court may properly look at the document to see whether that representation was made").

[14] Materials cited in the complaint are consistent: The Amazon.com page that JBR cites (for San Francisco Bay Fog Chaser, *see* AC ¶ 289) includes many comments from JBR employees about staleness.  For example, JBR employee Mayra Flores wrote on September 9, 2014, "Once the bag's seal is broken and its contents exposed to air, **flavor loss starts**" and advises consumers to store packs "sealed in an airtight container," and on December 8, 2014, JBR employee Emily Rogers advised against refrigerating JBR packs because this "**actually stales our coffee faster**" and recommended instead that consumers store the packs "in an air-tight container" to keep the packs fresh for "a week or more."  Ewing JBR Decl. Ex. 1.  The Court may consider these materials.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, 2013 WL 6670584, at *1 n.1 (S.D.N.Y. 2013).

*AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) ("two incidents alone" insufficient).

Finally, JBR's disparagement claims all fail because harm from such statements is not antitrust injury.  "[A]llegations of business disparagement are not the type of injuries to competition that the antitrust laws were designed to prevent."  *Xerox I*, 511 F. Supp. 2d at 382. Indeed, in *Xerox I*, the court dismissed disparagement claims based on alleged statements that plaintiff's product "damages Xerox printers" for lack of allegations that these statements "affected competition generally, and did not just cause [plaintiff] economic injury."  *Id.*[15]

### E.      JBR Fails To Allege Monopoly Power In A Proper Relevant Market

#### 1.      No Monopoly Power In Alleged Pressurized Brewer "Market"

JBR alleges a market for "single serve" brewers, which it defines as "pressurized hot water brewing equipment that is capable of brewing **at least a single serving** of coffee or other hot beverages."  AC ¶ 9 (emphasis added).  This differs from the original complaint, which alleged a market for brewers using "single-cup portion packs."  OC ¶ 13.  Any brewer can brew "at least a single serving," and JBR has dropped the "portion pack" limitation, so its proposed market now turns on whether a brewer is "pressurized," a term JBR does not define or explain. This change reveals JBR's goal: gerrymandering a market definition to suit its case.

JBR attempts to establish monopoly power by asserting Keurig has sold 40 million 1.0 brewers, giving it a high "market share."  *See id.* ¶¶ 27-28.  But JBR alleges Keurig prices brewers "at or below" cost.  *Id.* ¶ 314.  No firm would price at or below cost unless it faced competition.  Dennis W. Carlton & Jeffrey M. Perloff, *Modern Industrial Organization* 88 (4th ed. 2005) ("A monopolist . . . sets a price above marginal cost."); *Berkey,* 603 F.2d at 274 n.12. That Keurig prices brewers at cost shows there **is not a market limited to pressurized brewers**,

---

[15] JBR claims Keurig illegally monopolized via four corporate acquisitions.  AC ¶¶ 155-157.  This does not state a claim.  *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 219 (S.D.N.Y. 1998) ("Some action, apart from the acquisition . . . must be alleged to satisfy the pleading requirements of Section 2.").

**that Keurig does not have monopoly power in such a market**, or both.

JBR tries to support its narrow market by asserting that single-serve brewers are convenient and efficient.  AC ¶¶ 20-21.  But a difference in process or convenience does not create a plausible inference that end products do not compete.  *See B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 172 n.7 (S.D.N.Y. 1995).  Nor does alleging price and quality differences define a market.  *Ad/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 228 (2d Cir. 1999) ("Products can be near-perfect substitutes even when their prices or qualities differ.") (quoting 2A Phillip E. Areeda et al., Antitrust Law ¶ 562c, at 262); *see Optische*, 909 F. Supp. at 171 ("Merely asserting that a commodity is in some way unique is insufficient to plead a relevant market.").  Instead, a relevant market must include products consumers view as substitutes.  *See Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 577-78 (S.D.N.Y. 2011) (dismissing for lack of allegations about possible substitutes); *Commercial Data Servers v. Int'l Bus. Machines Corp.*, 166 F. Supp. 2d 891, 897-98 (S.D.N.Y. 2001) (dismissing for failure to allege plausible market limited to mainframe computers).  And JBR concedes substitution between pressurized brewers and (at least) drip brewers, alleging "fewer consumers are buying traditional drip coffee makers each year, and **instead** are opting to purchase Single Serve Brewers."  AC ¶ 276 (emphasis added).

As to monopoly power, this means "the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956).  Here, as noted above, JBR cannot allege that Keurig charges supracompetitive brewer prices.  AC ¶ 314 (Keurig prices at or below cost).[16]  Nor has JBR pled a lack of brewer competition.  To the contrary, JBR concedes that Keurig faces competition in brewers – in fact, they admit such competition exists.

---

[16] Once in passing JBR asserts Keurig charges "supracompetitive prices" in "each" of JBR's alleged markets, AC ¶ 18, but the Court need not credit this conclusory assertion.  *See Jordan*, 2009 WL 1490813, at *3 (dismissing complaint relying on "internally inconsistent allegations").

In fact, it is precisely because there is **brewer competition** that JBR alleges Keurig prices at cost to convince consumers to buy Keurig brewers rather than alternatives.  AC ¶ 314; *see also* AC ¶ 14 (Flavia, Kenco, and Braun (Tassimo)); OC ¶¶ 18, 19 (listing ten brewer competitors).

JBR also concedes that the installed base of 1.0 brewers does not give Keurig any power to force consumers to buy a new model of brewer.  OC ¶ 103 (1.0 installed base gave Keurig no ability to secure sales for the Vue brewer);  *See Broadway Delivery Corp. v. United Parcel Serv.of Am., Inc.*, 651 F.2d 122, 128 (2d Cir. 1981) ("[M]arket share percentages can produce a distorted picture of market power . . .").  And JBR does not claim the brand new 2.0 brewer has monopoly power in any conceivable market, pressurized or otherwise.  JBR says Keurig has sold 150,000 2.0 brewers.  AC ¶ 47.  This is a tiny fraction (1.4%) of the 10.4 million brewers JBR alleges Keurig alone sold in fiscal 2014, *id.* ¶ 28, and an even smaller fraction (0.4%) of the 40 million sold by Keurig (again, just Keurig) overall.  *Id.* ¶ 28.  JBR's failure to support its assertion that Keurig has monopoly power in a pressurized brewer market is fatal to its Section 2 claims.

### 2.    No Monopoly Power In Portion Packs "Markets"

JBR also fails to allege monopoly power in a properly defined "Compatible Portion Packs" or "Portion Packs" market.  Here, too, JBR applies the wrong legal standard.  Because JBR is alleging a purported "aftermarket" for consumables used with a primary product, in order to allege monopoly power in the aftermarket JBR "must show that (i) customers who own the [primary] good are 'locked in' by the prohibitive costs of switching to an alternate product, and (ii) the lock-in permitted those customers to be exploited, either because (a) some limitation on information undermined their ability to know that the aftermarket goods and services were being sold at high prices, or (b) the defendant changed its aftermarket prices after the lock-in

18

occurred." *Xerox III,* 660 F. Supp. 2d at 547.[17]

JBR fails to factually allege the first requirement, high switching costs that lock in consumers.  Instead, **JBR alleges low switching costs**: It admits "pressurized" brewers are available for $80 and on average cost $103, and other brewers cost less.  AC ¶ 23.  And JBR alleges an average cost for K-Cups of 51 cents, making it clear that the cost of the aftermarket product will quickly outstrip the cost of a new machine.  *Id.* ¶ 64.[18]  As a matter of basic economics, a "user will switch to an alternate [primary product] in response to changes in the cost of [aftermarket products] if the savings . . . outweigh the additional cost of a new [primary] purchase."  *Xerox III*, 660 F. Supp. 2d at 547.  In *Xerox*, the court found that there was no lock in and thus no monopoly power due to low switching costs where the primary product was a **$3,100** printer.  *Id.*  JBR's allegations preclude a showing of lock-in here.

JBR also fails to allege the second requirement for monopoly power in an aftermarket, exploitation.  Customers cannot be exploited when a firm announces aftermarket restrictions up front.  *Smugglers Notch*, 414 F. App'x at 377; *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 87 (2d Cir. 2000) (dismissing antitrust claim where policies were disclosed in advance), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  JBR admits consumers know Keurig brewers require compatible portion packs.  AC ¶ 38.  JBR also concedes Keurig disclosed the closed nature of the 2.0.  *See id.* ¶ 192 (Keurig publicly announced 2.0 will not brew unlicensed packs); Ex. 15 (Keurig's consumer messaging about compatibility); ¶ 212

---

[17] In aftermarket cases, courts have declined to find market power despite aftermarket shares exceeding 90%. *See, e.g., Xerox III*, 660 F. Supp. 2d at 540, 550 (90-97% share); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 11 F. Supp. 2d 166, 167, 169 (D. Mass. 1998) (91% share).

[18] That is, even drinking only one cup of coffee per day, a single consumer would spend more on portion packs in just 5 months than it would cost to buy a new brewer.

(noting "aggressive marketing campaign" to retailers).[19]  This precludes exploitation.  *DSM Desotech*, 749 F.3d at 1346-47 (customers informed of proprietary technology before buying cannot be exploited); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996) ("Existing customers are unaffected" by availability of new machine and "potential customers can shop around.").  Nor can JBR meet the exploitation requirement by alleging a limitation on pricing information.  JBR asserts that customers lack pack price information because some brewers are sold with a few packs in the box, some brewers are given as gifts, or because brewers and packs are sometimes sold in different store aisles.  AC ¶¶ 41-43.  But "perfect information about the aftermarket is not required," *SMS Sys. Maint. Servs. v. Digital Equip. Corp.*, 188 F.3d 11, 19 n.3 (1st Cir. 1999), and JBR concedes consumers can see pricing information.  *See, e.g.*, AC ¶ 64 (pack pricing at Costco); ¶ 289 (conceding availability of packs on Amazon.com).  JBR has not properly alleged monopoly power in a pack aftermarket.

For all of these reasons, JBR fails to establish monopoly power in a relevant market for "Compatible Portion Packs" or "Portion Packs."  It is thus not surprising that another federal court recently dismissed a complaint alleging a market that failed to include "all products that are reasonably interchangeable with the K-Cup brewers and coffee packs . . . ."  *Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*, 2012 WL 511485, at *5 (W.D. Ark. 2012).

### 3.    No Monopoly Power In "Branded"/"Private Label" Cup "Markets"

JBR asserts that there are separate "Branded" and "Private Label" submarkets within its alleged Compatible Portion Packs market.  AC ¶¶ 61-65.[20]  But JBR cannot plausibly suggest that consumers do not substitute portion packs because one is "Kirkland Signature" (a Costco

---

[19] With these concessions in mind, JBR's claim that customers are unaware of 2.0's compatibility, AC ¶ 249, is not credible.

[20] JBR asserts that "branded" portion packs are more expensive than private label ones, AC ¶ 64.  But a price difference does not define a market.  *Ad/SAT*, 181 F.3d at 228.  And other facts alleged undermine this assertion: JBR alleges that its branded packs are cheaper than Costco private label.  AC ¶ 271.

private label) while another is "San Francisco Bay" (a JBR brand).[21]  JBR affirmatively alleges that consumers "have a high degree of price sensitivity and are willing to try a new brand if it is less expensive." AC ¶ 44.[22]  That is, by JBR's own admission, if a seller launches a new brand that is priced competitively, consumers will try it.  This affirmative concession of substitution between established and unknown brands based on price changes is fatal to JBR's conclusory assertion of "branded" and "private label" markets.  *See Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 840 (2d Cir. 1980) (rejecting separate markets for branded and unbranded products distinguished by "label and price").  Nor has JBR alleged that Keurig has market power in purported branded and unbranded compatible portion pack "markets."  These are purported aftermarkets in which monopoly power must be alleged in accordance with the test set forth in *Xerox III*, 660 F. Supp. 2d at 547, which for the reasons noted above JBR fails to do.

### 4.    JBR's Growth Proves No Dangerous Probability Of Monopoly Power

JBR tacks inadequate allegations of attempted monopolization onto its Complaint.  *See* AC ¶¶ 377-82.  Attempted monopolization requires the same elements as monopolization but, with respect to market power, requires a dangerous probability of successfully monopolizing. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993).  Claims that fail to allege a dangerous probability of success are routinely dismissed.  *Bayer*, 813 F. Supp. 2d at 580; *Optische*, 909 F. Supp. at 172; *AF Gloenco Inc. v. Ushers Mach. & Tool Co., Inc.*, 2011 WL 4593741, at *3 (N.D.N.Y. 2011).

JBR does not allege a dangerous probability Keurig will successfully monopolize any market.  It concedes it has successfully entered and grown its portion pack sales, even while the

---

[21] *See also, e.g.*, AC ¶ 118 (quoting third party's statement that K-Cups compete not only with other portion pack brands, but also with "**many private label brands**") (emphasis added by JBR).

[22] It is also irrelevant that retailers and wholesalers purchase both branded and private label portion packs.  AC ¶ 65.  Retailers and wholesalers often purchase and offer consumers competing products.

challenged contracts and other actions were in effect.  *See* AC ¶¶ 36, 277; OC ¶ 10.  This negates

any assertion of a dangerous probability of monopolizing.  *See, e.g.*, *Bayer*, 813 F. Supp. 2d at

580.[23]  Nor does JBR allege a specific intent to monopolize as distinct from a desire to expand

Keurig's business.[24]  *See, e.g.*, *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 541

(7th Cir. 1986) ("[T]he mere intention to exclude competition and to expand one's own business

is not sufficient to show a specific intent to monopolize.").

## II.    JBR's Section 1 Claims Fail Because JBR Fails To Allege A Horizontal Conspiracy

To allege a conspiracy, JBR must allege sufficient facts to plausibly infer a "conscious

commitment to a common scheme" among purported conspirators.  *Ulrich*, 2014 WL 4977562,

at \*17-18 (citing *Monsanto Co. v. Spray-Rite serv. Corp.*, 465 U.S. 752, 764 (1984)); *Twombly*,

550 U.S. at 557.  Here, JBR does not allege any **facts** supporting a horizontal agreement.  *See*

*PepsiCo*, 315 F.3d at 110 (affirming dismissal for "fail[ure] to adduce any evidence of a

horizontal agreement"); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 334-49 (3d Cir.

2010).  Keurig's license, manufacturing, and distribution agreements with brands, *see* AC ¶ 373,

are **vertical** agreements; their nature is not changed because Keurig also owns brands.  *Elecs.*

*Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243-44 (2d Cir. 1997)

(distribution agreements vertical notwithstanding that both parties competed at one market

level); *see also AT&T Corp. v. JMC Telecom, L.L.C.*, 470 F.3d 525, 531 (3d Cir. 2006) (similar);

*Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 977 (7th Cir. 1999) (similar).[25]  The antitrust

laws allow brand licensors to outsource manufacturing, even to a would-be competitor.  *See*

---

[23] Failure to allege a dangerous probability of success is also fatal to a "monopoly leveraging" claim.  AC ¶¶ 312-17; *Trinko*, 540 U.S. at 415 n.4 ("To the extent the Court of Appeals dispensed with a requirement that there be a 'dangerous probability of success' in monopolizing a second market, it erred.").

[24] JBR's formulaic recitation, AC ¶ 379, does not suffice.  *See Twombly*, 550 U.S. at 555.

[25] JBR alleges it has been harmed because it has been unable to enter its own brand licensing contracts.  AC ¶¶ 121, 153.  Like Keurig, JBR "is a roaster that owns its own brand names."  *See* AC ¶¶ 61,118.  By JBR's incorrect logic, had it successfully entered into such agreements, it would have violated the antitrust laws.

*Generac*, 172 F.3d at 972-73 (affirming dismissal of claim that former competitors "divided markets" via vertical licensing and manufacturing agreement).

As for JBR's "hub-and-spokes" assertion, JBR must allege facts plausibly suggesting agreement **among** the spokes.  *PepsiCo*, 315 F.3d at 110.  JBR alleges no agreement among spokes (*e.g.*, among Cinnabon and Kahlua), nor would any such assertion be plausible.  All JBR alleges is that brands entered into bilateral agreements with Keurig, with "express knowledge" of others' agreements.  AC ¶¶ 129-43.  This alleges only "conscious parallelism," which does not state a conspiracy claim.  *See Twombly*, 550 U.S. at 552; *In re Ins. Brokerage*, 618 F.3d at 335 (conscious parallelism is insufficient to infer agreement among spokes).

And, to the extent that JBR is challenging these agreements as unlawful **vertical** agreements this, too, fails.  JBR's own allegations show these agreements are efficient and procompetitive.  For instance, JBR alleges that Keurig manufactures Cinnabon-branded K-Cups. AC ¶ 134.  This allowed Cinnabon to avoid redundantly acquiring the "significant technological and design skill and expertise" JBR asserts is needed to manufacture portion packs.  *Id.* ¶ 49.  In fact, JBR acknowledges these agreements allow companies to put their brands on packs while avoiding substantial costs.  *See id.* ¶¶ 133-43 (listing brands made available on K-Cups).  The antitrust laws encourage arrangements like these.  *See, e.g.*, *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 725 (1985) (any other rule would be inefficient and create perverse incentives forcing vertical integration); *Elecs. Commc'ns*, 129 F.3d at 245 (dismissing claims despite "general allegation" of diminished competition where "other allegations in the amended complaint" showed that vertical agreements do not diminish competition).[26]

---

[26] JBR also tries to re-label its conspiracy claims as a "group boycott" and "concerted refusal to deal," AC ¶ 374, based on the same alleged conduct and same statute.  The extra labels add nothing.  *PepsiCo*, 315 F.3d at 110.  Courts also routinely reject attempts to disguise faulty antitrust claims as conspiracies to monopolize. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998) (plaintiff could not proceed on conspiracy to monopolize claim after failing to state conspiracy claim); *Levitch v. Columbia Broad. Sys., Inc.*, 495 F. Supp.

Finally, JBR's Section 1 claims fail because JBR does not allege that it has been injured from the alleged elevation in prices.  If Keurig and brands conspired to raise prices for portion packs, this would **benefit**, not harm, a portion pack competitor such as JBR.  *See, e.g.*, *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 74 (2d Cir. 1987) (no antitrust injury where competitor "would have benefitted from any anticompetitive conduct").

## III.   JBR Fails To State A False Advertising Claim Under The Lanham Act

JBR alleges that a number of purported statements by Keurig violate the Lanham Act. But the Lanham Act "does not have boundless application" to all manner of trade practices. *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1978).  Instead, it is limited to false advertising.  *Id*.  To this end, a plaintiff must allege that a defendant made a statement about its own goods or a competitors' goods in commercial advertising that was false or misleading, *see* 15 U.S.C. § 1125(a)(1)(B); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002), and must further allege that this false advertising was material, *i.e.*, likely to influence purchasing decisions.  *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997).  JBR alleges several types of purported statements to consumers and retailers, none of which satisfies these requirements.

*1. Statements made to consumers*.  JBR alleges that Keurig made statements to consumers regarding: (1) the safety and quality of JBR packs; (2) the 2.0 brewer more generally; and (3) the compatibility of unlicensed portion packs with the 2.0 brewer.  AC ¶ 384.  These allegations do not support a Lanham Act claim.

First, many of the statements challenged by JBR are "soft" statements that cannot violate the Lanham Act.  *See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) ("Subjective claims

---

649, 673 (S.D.N.Y. 1980), *aff'd*, 697 F.2d 495 (2d Cir. 1983) (rejecting conspiracy to monopolize as "nothing more than a reassertion of plaintiff's monopolization claims").

about products, which cannot be proven either true or false are not actionable under the Lanham Act.").  For example, JBR challenges statements about the 2.0's ability to "brew the beverage perfectly," AC ¶ 215, and that Keurig's logo is "our seal of approval that assures the quality, taste, and safety of every cup," which JBR argues "suggest Competing Portion Packs are unsafe."  *Id.* ¶ 235; *see also id.* ¶¶ 93, 214, 219, 221, 237, 253, 259.[27]  None of these allegations support a Lanham Act claim.  *See Cytyc*, 12 F. Supp. 2d at 300-01 (holding that statement that product was "the new 'Gold Standard'" was non-actionable under the Lanham Act); *Am. Home Prods.*, 654 F. Supp. at 580 (general claim of "superior safety profile . . . within the tolerable range of commercial puffery").

Second, JBR's allegations show that many of the challenged statements to consumers are **true**.  For example, JBR asserts Keurig falsely told consumers that using Keurig packs is "best" for "warranty protection."  AC ¶¶ 238-40.  But Keurig's warranty clearly states it may not cover "damage to or malfunction of your brewer resulting from" use of unlicensed packs.  *See supra* Section I.D.  JBR also challenges statements about its products going stale due to a lack of airtight packaging, but concedes that its packs are not airtight.  *See* AC ¶¶ 32, 236.[28]  The courts dismiss Lanham Act claims where the allegations show the statements at issue were true.  *See Nat'l Lighting Co. v. Bridge Metal Indus. LLC*, 601 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2009) (granting motion to dismiss where allegations indicated statement was true).

Third, JBR cannot state a claim based on general statements about unlicensed pack safety.  *See* AC ¶¶ 235, 237, 239.  JBR fails to allege that unlicensed packs **on the whole** are equally safe as K-Cups, and there can be no Lanham Act claim based on statements that are

---

[27] Additionally, by challenging Keurig's statements about its "Keurig Brewed" trademark, JBR attacks the very purpose of trademarks—conveying that an item "is made by the same producer as other similarly marked items."  *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995).

[28] *See also supra* Section I.D (discussing JBR statements about staleness).

alleged to be false only with respect to plaintiff's own product.  *See Turbon Int'l Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 262, 268 (S.D.N.Y. 2001) (dismissing claim based on general statements about quality of aftermarket printer cartridges where plaintiff alleged statements were false as to its product only, not cartridges "in general").  Nor can JBR point to Keurig's alleged lack of testing of competitors' products, AC ¶ 223, to state a false advertising claim.  A Lanham Act plaintiff "bears the burden of showing that the challenged advertisement is false and misleading, not merely that it is unsubstantiated by acceptable tests or other proof."  *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 119 (2d Cir. 1984) (citation omitted).

Fourth, in several cases, rather than alleging falsity, JBR alleges what Keurig's statements "suggest."  *See* AC ¶¶ 241, 246, 250-51, 253.  When a statement is not challenged as actually false, a plaintiff **must** allege facts showing that, "although the advertisement is literally true, it is likely to deceive or confuse customers."  *Lipton*, 71 F.3d at 474.  JBR cannot plausibly allege the statements at issue are likely to deceive or confuse consumers.  For example, JBR asserts that stating the 2.0 has "250+ brands" and "40+ varieties" suggests to consumers that the 2.0 "offers the greatest variety in Portion Packs when compared with other Keurig brewers."  AC ¶¶ 246-47.  But JBR offers no plausible reason why this statement would make customers think this, especially as JBR simultaneously alleges that it is "widely recognized" that the 2.0 is "incompatible with unlicensed brands."  *Id.* ¶ 192.  JBR also alleges that by stating Keurig "does not make or test other brands," Keurig "suggests" that unlicensed packs are unsafe.  *See id.* ¶ 243-44.  But, again, JBR alleges no reason why it is plausible to believe customers would be misled in the manner it asserts.

*Not Commercial Advertising.*  To be actionable statements must be made "for the purpose of influencing consumers to buy defendant's goods or services," and "disseminated sufficiently

26

to the relevant purchasing public," *i.e.*, "part of an organized campaign to penetrate the relevant market." *Fashion Boutique*, 314 F.3d at 56-58.  Many of the statements fail this test: For example, JBR challenges statements to consumers who "called Keurig to complain" about their new 2.0 brewers.  AC ¶¶ 238, 253.  But statements to a small subset of customers are not "advertising" and cannot satisfy the dissemination requirement.  *Fashion Boutique*, 314 F.3d at 57 ("[I]solated disparaging statements do not have redress under the Lanham Act.").  Similarly, the 2.0's on-screen message, AC ¶¶ 209, 250, and Keurig's warranty, AC ¶¶ 238-40, are not made "for the purpose of influencing consumers to buy defendant's goods or services." *Fashion Boutique*, 314 F.3d at 57-58; *Suntree Tech., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1287 (M.D. Fla. 2011) (statements "to provide training" to consumers who had already purchased not actionable); *Marcyan v. Nissen Corp.*, 578 F. Supp. 485, 507 (N.D. Ill. 1982) (statements in user manual not actionable).

*No Standing.*  JBR also lacks standing to challenge statements made to 2.0 owners who already decided to buy a brewer that JBR asserts cannot use its packs.  As the Supreme Court has held, Lanham Act standing generally requires a plaintiff to show an "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 (2014).  Here, where 2.0 owners have already made a decision that will "withhold trade from the plaintiff," *id.*, JBR cannot show such harm flowing directly from the alleged post-purchase statements.

**2. Statements made to retailers.**  JBR alleges that Keurig misled retailers regarding the specifics of the 2.0's mechanics and the desirability of the carafe feature.  AC ¶¶ 256-67, 385. These claims fail because, among other things, JBR does not have standing to pursue them, and the alleged statements were not material.

27

*No Standing.*  A Lanham Act plaintiff must show that a defendant's statements were the proximate cause of its injury.  *Lexmark*, 134 S. Ct. at 1395.  JBR does not explain how Keurig's allegedly inaccurate statements to retailers (or for that matter, consumers) about how the 2.0's interactive technology works were the proximate cause of harm to JBR.  JBR alleges "its customers and potential customers are concerned about the impact of the 2.0 Brewer on their sales of Competing Portion Packs" and that this has a "chilling effect."  AC ¶ 278.  But JBR offers no factual allegations that link this effect to statements about how the interactive technology or carafe in 2.0 works, rather than to the true fact of JBR's product not working in the 2.0.[29]  JBR's alleged harm could stem from "any number of [other] reasons," and is not sufficient to confer standing.  *Lexmark*, 134 S. Ct. at 1395; *see also ITC Ltd v. Punchgini Inc.*, 482 F.3d 135, 171 (2d Cir. 2007).

*Not Material.*  To state a Lanham Act claim, a plaintiff must also show that the defendant's statements were material.  Here, JBR does not allege that any "inaccuracy in the statements would . . . influence" retailers.  *Nat'l Basketball Ass'n*, 105 F.3d at 855 (assertion that game updates come "from the arena" not material to consumers' purchasing decisions).  JBR does not explain, for instance, how the omission of the "Hot Cocoa/Other" option from the 2.0 display in a presentation to a retailer, AC ¶ 260, would have persuaded a retailer to carry Keurig's new product—much less **not to carry** JBR's product.

## IV.   JBR's State Law Claims Fail For The Same Reasons As Its Federal Claims

JBR brings deficient claims under two California statutes—the Cartwright Act and the Unfair Competition Law.  Cartwright Act claims based on Keurig's unilateral conduct fail

---

[29] JBR's Lanham Act claim is based on statements about the mechanics of 2.0, not the compatibility of JBR's portion packs with the 2.0.  JBR does not bring a Lanham Act claim on the basis of statements that its packs are not compatible with the 2.0, nor could it—JBR acknowledges that Keurig's statements about compatibility were true, as its portion packs are not compatible with the 2.0.  AC ¶¶ 47, 229.

because the Cartwright Act "does not address **unilateral** conduct," as JBR itself concedes.[30]  *See*

*Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986).  Cartwright Act claims

based on purported agreements fail with JBR's parallel federal claims.  *See Nova Designs, Inc. v.*

*Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000).

Nor can §§ 17200 *et seq.* of the California Unfair Competition Law—or "common law

unfair competition"[31]—resuscitate deficient federal claims.  Since *Cel-Tech Inc.*

*Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), courts

have uniformly held that dismissal of Sherman Act claims "precludes a finding of unfair

competition" under §17200.  *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir.

2008); *accord Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (Cal. Ct. App. 2d Dist.

2001) (same).  The same rule applies to §17200 claims premised on deficient Lanham Act claims.

*Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("substantially congruent" to

Lanham Act analysis); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168,

1182-83 (N.D. Cal. 2007) (same).  And JBR's § 17500 false advertising claim must be dismissed

with its Lanham Act claim.  *See Appliance Recycling Ctrs. v. JACO Envtl., Inc.*, 378 F. App'x

652, 654-656 (9th Cir. 2010); *Sensible Foods, LLC v. World Gourmet, Inc.*, 2012 WL 566304, at

*6-8 (N.D. Cal. 2012) (same).

JBR's claim for intentional interference with contractual relations under California law

fails because JBR does not allege even the *existence* of any contract between itself and a third

party.  *See, e.g.*, *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D.

Cal. 2003) (dismissing claim where plaintiff failed to provide "facts surrounding the type or

---

[30] *See* AC ¶ 390 (alleging only "acts by two or more persons").

[31] JBR's failure to specify which state's common law it is proceeding under requires dismissal.  *See* AC ¶¶ 391-92; *Raghavendra v. Trustees of Columbia Univ.*, 2012 WL 3778714, at *11 n.18 (S.D.N.Y. 2012) (rejecting claim brought under "unspecified common laws").

nature of the 'contracts' [defendant's] conduct allegedly interfered with"); *Yagman v. Galipo*, 2013 WL 1287409, at *5 (C.D. Cal. 2013) (similar).[32]

JBR's claim for intentional interference with prospective economic advantage fails because JBR fails to identify the state's law under which it is proceeding.  AC ¶¶ 407-11; *see Raghavendra*, 2012 WL 3778714, at *11 n.18.  Under California law, JBR would fail to state a claim because there is a "broad privilege afforded to a competitor to divert a prospective relationship to itself."  *Orion Tire Corp. v. Gen. Tire, Inc.*, 1992 WL 295224, at *3 (C.D. Cal. 1992); *see also Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 60 Cal. Rptr. 2d 830, 833 (Cal. Ct. App. 1997) (similar).  Where, as here, the competitor's privilege is clear on the face of the complaint, *see, e.g.*, AC ¶¶ 5, 32-33, the plaintiff must affirmatively address the issue to survive a motion to dismiss.  *See Orion Tire Corp.*, 1992 WL 295224, at *3.  JBR fails to do so here.  In addition, because JBR's federal and state antitrust, false advertising, and unfair competition claims fail, JBR fails to allege that Keurig's conduct was wrongful under the law.  *See, e.g.*, *AccuImage*, 260 F. Supp. 2d at 956-57 (dismissing tortious interference claim where dismissal of Lanham Act claim meant that "plaintiff ha[d] not demonstrated that defendants were engaging in wrongful conduct").

## CONCLUSION

For the foregoing reasons, Keurig respectfully requests that JBR's amended complaint be dismissed in its entirety, with prejudice.  *See, e.g.*, *Ulrich*, 2014 WL 4977562, at *18-19 (dismissing without leave to amend previously amended complaints); *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004) (same).

---

[32] JBR describes business it has allegedly lost to Keurig, *e.g.*, AC ¶¶ 272-73, but nowhere alleges the existence of a valid contract with these third parties—let alone Keurig's knowledge of such contract or the breach of such a contract—as it must to state a claim for tortious interference.  *See, e.g.*, *AccuImage*, 260 F. Supp. 2d at 956 (plaintiff must allege defendant's knowledge and actual breach of contract).

Dated:  February 2, 2015
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON

By:     /s/ George S. Cary
        **George S. Cary**
        **Leah Brannon**
        **Elaine Ewing**
        *gcary@cgsh.com*
        *lbrannon@cgsh.com*
        *eewing@cgsh.com*
        2000 Pennsylvania Avenue, NW
        Washington, D.C. 20006
        Telephone:   (202) 974-1500

        **Lev L. Dassin**
        **Danielle Mindlin**
        *ldassin@cgsh.com*
        *dmindlin@cgsh.com*
        One Liberty Plaza
        New York, New York 10006
        Telephone:  (212) 225-2790

        **Wendelynne J. Newton**
        *wendelynne.newton@bipc.com*
        BUCHANAN INGERSOLL & ROONEY PC
        One Oxford Centre
        301 Grant Street, 20th Floor
        Pittsburgh, Pennsylvania 15219
        Telephone:  (412) 562-8932


        *Attorneys for Defendant Keurig Green Mountain,
        Inc., f/k/a Green Mountain Coffee Roasters, Inc.,
        and as successor to Keurig, Incorporated*

31