**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE   :    No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                      :    No. 1:14-mc-02542 (VSB)
                                                   :

*This Relates to the Indirect-Purchaser Actions*      x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO**

**DISMISS THE INDIRECT PURCHASER PLAINTIFFS' SECOND CONSOLIDATED**

**AMENDED CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ...................................................................................................1

II.    FACTS .....................................................................................................................2

III.   ARGUMENT...........................................................................................................4

     A.    The Complaint Adequately Pleads Claims Under
          State Antitrust, Consumer Protection, and Unjust Enrichment Laws......................4

          1.    The Complaint Adequately Pleads Standing
                 for Antitrust Claims for All States Alleged, Including Vermont................5

                 a.    Neither Vermont nor the Other Repealer States Apply *AGC* ..........7

                 b.    Application of *AGC* Does Not Warrant Dismissal of State Claims.9

                       i.    IPPs Were Directly Harmed By Keurig's Conduct.................10

                       ii.   IPPs Are Appropriate Enforcers .............................................11

                       iii.  IPPs' Injury Is Not Speculative...............................................11

                       iv.  There Are No Difficulties in Identifying and
                           Apportioning Damages ..........................................................12

           2.    The Complaint Adequately Alleges State Antitrust Claims ......................13

           3.    The Complaint Adequately Alleges State Consumer Protection Claims...15

           4.    The Complaint Adequately Alleges Common Law Unjust Enrichment ...16

          5.    IPPs Have Standing in States Without Representatives or Purchases .......18

     B.    The Complaint Adequately Pleads Actual and Attempted Monopolization,
          Exclusive Dealing, and Horizontal Conspiracy under Federal Law......................18

           1.    The Complaint Adequately Pleads Actual
                 Monopolization of the Keurig Compatible Cup Market...........................18

            2.    The Complaint Adequately Pleads Attempted
                 Monopolization of the Keurig Compatible Cup Market...........................20

            3.    The Complaint Adequately Pleads Exclusive Dealing .............................22

a.    Keurig's Exclusive Contracts with Distributors and Retailers
Prevented Cup Competitors from Access to Customers ...............23

b.    Keurig Substantially Foreclosed Competitors
from Access to Machinery, Plastic Cups, and Coffee ..................26

4.    The Complaint Adequately Pleads Horizontal
Conspiracies Between Keurig and Roaster Competitors ..........................28

IV.    CONCLUSION................................................................................................................30

## TABLE OF AUTHORITIES

**CASES**                                                                                            **Page(s)**

*AD/SAT v. Associated Press,*
   181 F.3d 216 (2d Cir. 1999) ............................................................................................19

*Albuquerque Hilton Inn v. Haley,*
   565 P.2d 1027 (N.M. 1977) ............................................................................................15

*All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund,*
   596 F. Supp. 2d 630 (E.D.N.Y. 2009) ...........................................................................21

*Anderson News, L.L.C. v. American Media, Inc.,*
   680 F.3d 162 (2d Cir. 2012) .....................................................................................28-29

*Arthur v. Microsoft Corp.,*
   676 N.W.2d 29 (Neb. 2004) ..............................................................................................8

*Associated General Contractors, Inc. v. California State Council of Carpenters,*
   459 U.S. 519 (1983) ...............................................................................................*passim*

*AT&T Corp. v. JMC Telecom, LLC,*
   470 F.3d 525 (3d Cir. 2006) ..........................................................................................29

*Avedisian v. Quinnipiac University,*
   387 F. App'x 59 (2d Cir. 2010) ........................................................................................6

*Avenarius v. Eaton Corp.,*
   898 F. Supp. 2d 729 (D. Del. 2012) ..............................................................................5-6

*Beckler v. Visa U.S.A. Inc.,*
   2004 WL 2115144 (D.N.D. Aug. 23, 2004) .....................................................................9

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 540 (2007) .................................................................................................28-29

*Bergman v. Spruce Peak Realty, LLC,*
   847 F. Supp. 2d 653 (D. Vt. 2012) ...................................................................................5

*Bowen v. New York News, Inc.,*
   366 F. Supp. 651 (S.D.N.Y. 1973) .................................................................................23

*Business Electronics Corp. v. Sharp Electronics Corp.,*
   485 U.S. 717 (1988) ........................................................................................................30

*California v. ARC America Corp.*,
    490 U.S. 93 (1989)......................................................................................................6, 12

*Carter v. Variflex, Inc.*,
    101 F. Supp. 2d 1261 (C.D. Cal. 2000) ...........................................................................16

*CDC Technologies, Inc. v. IDEXX Laboratories Inc.*,
    186 F.3d 74 (2d Cir. 1999)........................................................................................23, 25

*Chavez v. Whirlpool Corp.*,
    113 Cal. Rptr. 2d 175 (Ct. App. 2001)............................................................................16

*Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-CV-02031, 2012 WL 511485 (W.D. Ark. Feb. 15, 2012)................................19

*Comes v. Microsoft Corp.*,
    646 N.W.2d 440 (Iowa 2002) .............................................................................................8

*Commercial Data Servers, Inc. v. IBM*,
    262 F. Supp. 2d 50 (S.D.N.Y. 2003)...........................................................................25, 27

*Connecticut State Federation of Teachers v. Board of Education Members*,
    538 F.2d 471 (2d Cir. 1976)................................................................................................8

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989).....................................................................................................4

*D.R. Ward Construction Co. v. Rohm and Haas Co.*,
    470 F. Supp. 2d 485 (E.D. Pa. 2006) ...................................................................6, 8, 13, 17

*Eastman Kodak Co. v. Image Tech. Services*,
    504 U.S. 451 (1992)..........................................................................................................20

*Electronics Communications Corp. v. Toshiba American Consumer Products*,
    129 F.3d 240 (2d Cir. 1997)......................................................................................22, 29-30

*Elkins v. Microsoft Corp.*,
    817 A.2d 9 (Vt. 2002) ..............................................................................................2, 8, 14

*EnviroSource, Inc. v. Horsehead Resource Development Co.*,
    No. 95 CIV. 5106 (AGS), 1996 WL 363091 (S.D.N.Y. June 28, 1996) ...........................22, 24

*Eon Labs Mfg. v. Watson Pharms., Inc.*,
    164 F. Supp. 2d 350 (S.D.N.Y. 2001)..............................................................................25

*Fashion Originators' Guild, Inc. v. Federal Trade Commission,*
  312 U.S. 457 (1941)...............................................................................................30

*Floors-N-More, Inc. v. Freight Liquidators,*
  142 F. Supp. 2d 496 (S.D.N.Y. 2001)......................................................................25

*Fond du Lac Bumper Exchange Inc. v. Jui Li Enterprise Co.,*
  09-CV-00852, 2012 WL 3841397 (E.D. Wis. Sept. 5, 2012)..................................17

*Formula One Licensing, B.V. v. Purple Interactive Ltd.,*
  No. C 00-2222 MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001)......................16

*Fraser v. Major League Soccer, L.L.C,*
  284 F.3d 47 (1st Cir. 2002)......................................................................................27

*Fucile v. Visa U.S.A., Inc.,*
  No. S1560-03 Cnc, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) .....................7

*Gatt Communications, Inc. v. PMC Associates, LLC,*
  711 F.3d 68 (2d Cir. 2013)..............................................................................10, 12

*Generac Corporation v. Caterpillar, Inc.,*
  172 F.3d 971(7th Cir. 1999) ....................................................................................29

*Goldman v. Belden,*
  754 F.2d 1059 (2d Cir. 1985).....................................................................................4

*Gramatan Home Investors Corp. v. Starling,*
  470 A.2d 1157 (Vt. 1983) ..........................................................................................5

*Green v. Springfield Medical Care Systems, Inc.,*
  5:13-cv-168, 2014 WL 2875850 (D. Vt. June 24, 2014).........................................14

*Hage v. General Service Bureau,*
  306 F. Supp. 2d 883 (D. Neb. 2003) ........................................................................15

*Herron v. Best Buy Co. Inc.,*
  924 F. Supp. 2d 1161 (E.D. Cal. 2013).....................................................................15

*Ho v. Visa U.S.A. Inc.,*
  Index No. 112316/00, 2004 WL 1118534 (Sup. Ct. N.Y. Co. Apr. 21, 2004)............8

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977)........................................................................................*passim*

*Ingber v. New York City Department of Education,*
    14-cv-3942 (JMF), 2014 WL 6888777 (S.D.N.Y. Dec. 8, 2014)..................................................5

*In re AES Corp. Securities Litigation,*
    825 F. Supp. 578 (S.D.N.Y. 1993)....................................................................................5

*In re Aluminum Warehousing Antitrust Litigation,*
    13-md-2481, 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ....................................................12

*In re Carrier IQ, Inc.,*
    No. C-12-MD-2330 EMC, 2015 WL 274054 (N.D. Cal. Jan. 21, 2015) ....................................6

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ...............................................................................8

*In re Credit Default Swaps Antitrust Litigation,*
    13md2476 (DLC), 2014 WL 4379112 (S.D.N.Y. Sept. 4, 2014)..........................................12

*In re DDAVP Direct Purchases Antitrust Litigation,*
    585 F.3d 677 (2d Cir. 2009)......................................................................... 5, 11-12

*In re DDAVP Indirect Purchaser Antitrust Litig.,*
    903 F.Supp. 2d 198 (S.D.N.Y. 2012)..................................................................................18

*In re Digital Music Antitrust Litig.,*
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)..................................................................................18

*In re Flash Memory Antitrust Litigation,*
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................................................... 6, 9, 12-13

*In re Graphics Processing Units Antitrust Litigation,*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...............................................................................6

*In re Graphics Processing Units Antitrust Litigation,*
    540 F. Supp. 2d 1085 (N.D. Cal. 2007) ..........................................................................9, 14

*In re High-Tech Employee Antitrust Litigation,*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ..............................................................................28

*In re Insurance Brokerage Antitrust Litigation,*
    618 F.3d 300 (3d Cir. 2010)................................................................................................29

*In re Lithium Ion Batteries Antitrust Litigation,*
    13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ....................................*passim*

*In re Optical Disc Drive Antitrust Litigation,*
  3:10-md-2143, 2011 U.S. Dist. LEXIS 101763 (N.D. Cal. Aug. 3, 2011)...................................7

*In re Plavix Indirect Purchaser Antitrust Litigation,*
  No. 1:06-cv-226, 2011 WL 335034 (N.D. Cal. Jan. 31, 2011)....................................................16

*In re Pool Products Distribution Market Antitrust Litigation,*
  946 F. Supp. 2d 554 (E.D. La. 2013) ...........................................................................................6

*In re Processed Egg Products Antitrust Litigation,*
  851 F. Supp. 2d 867 (E.D. Pa. 2012) ..........................................................................................17

*In re Tamoxifen Citrate Antitrust Litigation,*
  277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003) ..........................................................................14, 16

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................................................................7, 12-13, 16

*Insignia Sys., Inc. v. News Corp., Ltd.,*
  No. 04-4213 (JRT/FLN), 2005 U.S. Dist. LEXIS 42851 (D. Minn. Aug. 25, 2005) ...........24-25

*International Business Machines Corp. v. Platform Solutions, Inc.,*
  658 F. Supp. 2d 603 (S.D.N.Y. 2009)..........................................................................................10

*International Distribution Centers, Inc. v. Walsh Trucking,*
  812 F.2d 786 (2d Cir. 1987).........................................................................................................22

*JBR, Inc. v. Keurig Green Mountain, Inc.,*
  No. 2:14-cv-00677-KJM-CKD (E.D. Cal.) ..................................................................................27

*Kabins Family LP v. Chain Consortium,*
  2:09-cv-01125-GMN-RJI, 2010 WL 3001890 (D. Nev. July 27, 2010) .....................................17

*Kanne v. Visa U.S.A. Inc.,*
  723 N.W.2d 293 (Neb. 2006)..........................................................................................................8

*Kattar v. Demoulas,*
  739 N.E.2d 246 (Mass. 2000) ......................................................................................................15

*King v. Order of United Commercial Travelers,*
  333 U.S. 153 (1948)...............................................................................................................5, 7, 14

*Klor's, Inc. v. Broadway-Hale Stores, Inc.,*
  359 U.S. 207 (1959).................................................................................................................29-30

*Knowles v. Visa U.S.A. Inc.*,
  No. CV-03-707, 2004 WL 5475284 (Me. Super. Oct. 20, 2004) .................................................9

*Kramer v. Pollock-Krasner Foundation*,
  890 F. Supp. 250 (S.D.N.Y 1995) ..........................................................................................17

*Laumann v. National Hockey League*,
  907 F. Supp. 2d 465 (S.D.N.Y. 2012) ......................................................................................1

*Lerman v. Board of Elections*,
  232 F.3d 135 (2d Cir. 2000)....................................................................................................15

*Levitch v. Columbia Broadcasting System, Inc.*,
  495 F. Supp. 649 (S.D.N.Y. 1980).........................................................................................30

*LiveUniverse , Inc. v. MySpace, Inc.*,
  304 F. App'x 554 (9th Cir. 2008) ...........................................................................................16

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*,
  753 F.3d 395 (2d Cir. 2014).....................................................................................................10

*Louisiana Wholesale Drug Co. v. Sanofi-Aventis*,
  No. 07 Civ. 7343 (HB), 2008 U.S. Dist. LEXIS 3611 (S.D.N.Y. Jan. 18, 2008).....................19

*Manufacturers Hanover Trust Co. v. Chemical Bank*,
  160 A.D.2d 113 (1st Dep't 1990) ............................................................................................17

*Maxon Hyundai Mazda v. Carfax, Inc.*,
  No. 13-CV-2680 AJN, 2014 WL 4988268 (S.D.N.Y. Sept. 29, 2014) ....................................24

*Meijer, Inc. v. Abbott Labs.*,
  544 F. Supp. 2d 995 (N.D. Cal. 2008) ....................................................................................15

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)................................................................................................................29

*Nicolosi Distributing, Inc. v. BMW of North America*,
  No. C 10-03256 SI, 2011 WL 1483424 (N.D. Cal. Apr. 19, 2011)....................................25-26

*Northeastern Telephone Co. v. American Telephone & Telegraph Co.*,
  651 F.2d 76 (2d Cir. 1981)......................................................................................................21

*Northwest Wholesaler Stationers, Inc. v. Pacific Stationery and Printing Co.*,
  472 U.S. 284 (1985)................................................................................................................29

*Nynex Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) .............................................................................................30

*Omega Environmental v. Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997) ...........................................................................23

*Oreck Corp. v. Whirlpool Corp.*,
  579 F.2d 126 (2d Cir. 1978) ...............................................................................30

*Orr v. Beamon*,
  77 F. Supp. 2d 1208 (D. Kan. 1999) ....................................................................9

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
  868 So.2d 331 (Miss. 2004) ..................................................................................8

*Paycom Billing Services, Inc. v. MasterCard International, Inc.*,
  467 F.3d 283 (2d Cir. 2006) ...............................................................................12

*PepsiCo, Inc. v. Coca-Cola Co.*,
  315 F.3d 101 (2d Cir. 2002) ..........................................................................28-29

*Polanco v. NCO Portfolio Management*,
  23 F. Supp. 3d 363 (S.D.N.Y. 2014) .....................................................................3

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*,
  893 F. Supp. 285 (S.D.N.Y. 1995) ........................................................................7

*Rodland v. Judlau Contracting, Inc.*,
  844 F. Supp. 2d 359, 363 (S.D.N.Y. 2012) ...........................................................8

*Sergeants Benev. Ass'n Health & Welfare Fund v. Sanofi-Aventis U .S. LLP*,
  No. 08-CV-0179 SLT RER, 2012 WL 4336218 (E.D.N.Y. Sept. 17, 2012)
  *report and recommendation adopted in part sub nom.*,
  2014 WL 1894303 (E.D.N.Y. May 12, 2014) ......................................................17

*Simon v. Philip Morris Inc.*,
  124 F. Supp. 2d 46 (E.D.N.Y. 2000) .....................................................................5

*Southard v. Visa U.S.A., Inc.*,
  734 N.W.2d 192 (Iowa 2007) ...............................................................................8

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) .............................................................................................21

*State ex rel. Stratton v. Gurley Motor Co.*,
  737 P.2d 1180 (N.M. Ct. App. 1987) ..................................................................15

*Tampa Electric Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961).................................................................................................22

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001)......................................................................................19

*Tops Markets, Inc. v. Quality Markets, Inc.*,
  142 F.3d 90 (2d Cir. 1998)........................................................................................21

*Tucker v. Apple Computer, Inc.*,
  493 F. Supp. 2d 1090 (N.D. Cal. 2006) ....................................................................26

*Ulrich v. Moody's Corporation*,
  No. 134-CV-00008 (VSB), 2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014) ..............29

*United States v. E.I. du Pont De Nemours & Co.*,
  351 U.S. 377 (1956)............................................................................................19, 20

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966)........................................................................................... 18-20

*U.S. East Telecommunications v. U.S. West Communications Services, Inc.*,
  38 F.3d 1289, 1296 (2d Cir. 1994)..............................................................................7

*Vermont Mobile Home Owners' Association Inc. v. Lapierre*,
  94 F. Supp. 2d 519 (D. Vt. 2000) ......................................................................... 25-26

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
  872 F. Supp. 52 (S.D.N.Y. 1994)...............................................................................22

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research, Inc.*,
  516 F. Supp. 2d 270 (S.D.N.Y. 2007).............................................................. 24-25, 29

*Woori Bank v. Citigroup Global Markets, Inc.*,
  12-cv-3868 (KBF), 2014 WL 3844778 (S.D.N.Y. Aug. 5, 2014) ...............................4

*Xerox Corp. v. Media Sciences, Inc.*,
  660 F. Supp. 2d 535 (S.D.N.Y. 2009)........................................................................20

*Xerox Corp. v. Media Sciences International Inc.*,
  511 F. Supp. 2d 372 (S.D.N.Y. 2007)........................................................................24

## STATUTES & RULES

15 U.S.C. § 1 ................................................................................................22

15 U.S.C § 14 ..............................................................................................22

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ............................1

Ark. Code § 4-88-107(b)..............................................................................15

Vermont Consumer Fraud Act ("VCFA"), 9 V.S.A. §§ 2453, 2461, 2465 ..........................2, 4, 14

## OTHER AUTHORITIES

Department of Justice, *Competition and Monopoly: Single-firm Conduct under
Section 2 of the Sherman Act,* Ch. 8.III.A..................................................25

J.B. Baker, *Exclusion as a Core Competition Concern,* 78 Antitrust Law
Journal, No. 3, at 540 (2013) ......................................................................28

T.G. Krattenmaker and S.C. Salop, *Anticompetitive Exclusion: Raising Rivals'
Costs to Achieve Power over Price,* 96 Yale L.J. 209, 246 (Dec. 1986)......................................23

Indirect Purchaser Plaintiffs ("IPPs") oppose Defendant Keurig Green Mountain, Inc.'s ("Keurig" or "Defendant") Motion to Dismiss ("MTD" or "Motion") IPPs' Second Consolidated Amended Class Action Complaint ("SCAC" or "Complaint").

## I.   INTRODUCTION

The basic thesis of Keurig's argument is wrong. Keurig argues that federal law should apply even though all of the damages claims are brought under state law in states that do not follow federal law and which grant standing to indirect purchasers to recover damages.[1] These claims are only brought in federal court because of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). However, they remain state law claims under the laws of states that specifically confer standing upon IPPs. Keurig nevertheless urges this Court to view this litigation primarily as a federal case with supplemental claims under state law. But every claim for damages in the Complaint is under state law. The federal claims are limited to injunctive relief, making inapplicable *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*"), which applies only to federal claims for damages.[2] *See Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 481 n.80 (S.D.N.Y. 2012). This Court should deny Keurig's Motion as to all claims for the following reasons:

1.    *Antitrust standing*: IPPs have antitrust standing under state law because IPPs

---

[1] Keurig does not directly brief these state laws and instead attaches a 12-page appendix to its brief which includes Tables A-G, referred to here as "Keurig Table(s)" that consist of citations with limited argument. Were the Court to consider these tables, it would find that Keurig's cases do not support the propositions for which they are cited. Although IPPs do not want to add to the Court's burden, IPPs submit a counter-appendix with the following Tables: A showing IPPs' state law claims and B-G (collectively "IPP Table(s)") responding to Keurig's Tables to demonstrate why Keurig's cases do not support its Motion. The IPPs' appendix is longer than Keurig's because it includes Keurig's authority in addition to IPPs' authority.

[2] *Illinois Brick* created a bright-line rule that only the direct purchasers could bring an action for damages under federal antitrust law. Subsequently, numerous states, including the states at issue here, "repealed" *Illinois Brick*, declaring that it did not apply to actions brought under their state laws. *See In re Lithium Ion Batteries Antitrust Litig.*, B-MD-2420 YGR, 2014 WL 4955377, at *6 (N.D. Cal. Oct. 2, 2014) ("*Lithium Ion Batteries*").

bring antitrust damage claims only under the laws of states that have determined not to apply *Illinois Brick* to claims under their respective state laws, none of which apply the federal standing analysis set forth in *Associated General Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). However, even assuming *arguendo* that *AGC* applied, the Complaint's allegations satisfy the *AGC* test.

2. *Vermont and other state law claims for damages*: The Complaint pleads nationwide antitrust and tying claims under the Vermont Consumer Fraud Act ("VCFA") and a nationwide unjust enrichment claim under Vermont common law. Keurig does not challenge any specific elements of these claims or their nationwide application. Instead, Keurig argues a false premise that the Vermont claims must fall like dominoes because, according to Keurig, there is no antitrust standing under federal law. Keurig is wrong. First, Vermont law controls whether there is standing for a Vermont claim. Second, Vermont does not follow *Illinois Brick*, and Vermont's Supreme Court and its antitrust statute grant IPPs standing to sue for antitrust injuries. *Elkins v. Microsoft Corp.*, 817 A.2d 9, 13-17 (Vt. 2002). Third, Vermont's civil antitrust harmonization provision does not incorporate federal standing requirements. Finally, the Vermont unjust enrichment claim may be pled as an independent claim without reference to the VCFA claim. However, even if the Court were to find that Vermont law should not be applied nationwide, Keurig neither addresses nor briefs the substantive elements of any state law claim.

3. *Federal claims for injunctive relief*: Keurig improperly asks this Court to impose federal law on all the states; even if this Court were to do so, Keurig's Motion should still be denied because the Complaint adequately pleads federal claims for injunctive relief for exclusive dealing, monopolization, attempted monopolization, and horizontal conspiracy.

## II.  FACTS

Keurig is a coffee roaster that manufactures and sells Portion Pack Brewers[3] and Keurig K-Cups. ¶¶ 5-10, 18.[4] Keurig has entered into a web of exclusionary agreements to prevent competitors in the lucrative market for Keurig Compatible Cups from threatening its monopoly, which Keurig partially achieved through patents that have since expired and which monopoly it has maintained by illicit means. ¶¶ 10, 100, 125-35, 143. These agreements, which are largely in writing and examples of which are in relevant part quoted in the Complaint, are with other coffee roasters; with makers of tooling and components need by manufacturers of Keurig Compatible Cups; and with distributors and retailers. ¶¶ 141-200.

Through its anticompetitive conduct, Keurig has managed to maintain approximately 95% market share in the Keurig Compatible Cup market, even though this market should have become competitive following the expiration of its patents. ¶ 10. The Complaint alleges that Keurig maintained its dominant position in the Keurig Compatible Cup Market through a variety of means, including (i) by conspiring with its horizontal coffee competitors to prevent competition from Competitor Cups; (ii) by engaging in exclusive dealing with suppliers, retailers, and distributors; and (iii) by tying its Keurig K-Cups to its brewers, which currently have over 90% market share (constituting a monopoly). ¶¶ 141-209.

Rather than addressing the four corners of the Complaint, Keurig improperly incorporates the original, inoperative complaint of TreeHouse Foods, Inc. (the "TH Complaint"). *See* MTD at 3 n.4. The TH Complaint is not incorporated by reference in IPPs' Complaint as there is no "*clear, definite, and substantial reference* to the document." *Polanco v. NCO Portfolio Mgmt.*, 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014) (emphasis added) (quotations and brackets omitted). The Complaint never mentions the TH Complaint by name, and a mere handful of the

---

[3] Capitalized terms have the same meaning as set forth in the SCAC.
[4] ¶ refers to paragraphs in the SCAC.

Complaint's 516 paragraphs even refer to TreeHouse.[5] ¶¶ 143-52. Keurig's reliance on the TH Complaint defies this Court's order affording each competitor and class a separate opportunity to amend and defend its own complaint, ECF No. 213, and any factual conflict between the Complaint and the TH Complaint cannot be resolved at the pleading stage. *E.g., Lithium Ion Batteries*, 2014 WL 4955377, at *13 ("a factual matter [is] not amenable to resolution at the pleading stage.").

## III.   ARGUMENT

### A.   The Complaint Adequately Pleads Claims Under State Antitrust, Consumer Protection, and Unjust Enrichment Laws

The Complaint pleads valid claims under the laws of 24 states, including antitrust laws of 22 states, the consumer protection laws of 6 states, and common law unjust enrichment in 18 states.[6] Significantly, the Complaint alleges three claims for damages on behalf of a *nationwide* class: two antitrust claims under the Vermont Consumer Fraud Act ("VCFA"), 9 V.S.A. §§ 2453, 2461, 2465, and one unjust enrichment claim under Vermont common law. Nationwide application of Vermont law is appropriate because there is a strong causal nexus between Keurig's conduct in Vermont and IPPs' harm. ¶¶ 64-65, 107, 109, 113-14, 117, 212 (alleging that Keurig's headquarters, executive offices, production, distribution, manufacturing, and research facilities are located within Vermont, that the anticompetitive conduct alleged in the Complaint "was formulated in and emanated from Vermont" and has injured consumers

---

[5] The Complaint includes only a single, brief quotation from an email which is quoted in the TH Complaint and which is available from other sources. ¶ 143. That quotation is insufficient to incorporate the entire TH Complaint by reference. *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("limited quotation does not constitute incorporation by reference"); *see also Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (same). The cases cited by Keurig do not show that the TH Complaint was incorporated by reference in the Complaint. For example, in *Woori Bank v. Citigroup Global Mkts., Inc.*, No. 12-cv-3868(KBF), 2014 WL 3844778 (S.D.N.Y. Aug. 5, 2014), the plaintiff incorporated and hyperlinked the entire parallel SEC complaint. *Woori Bank v. Citigroup Global Mkts., Inc.*, No. 12-cv-3868(KBF), Amended Complaint, ECF No. 59, at ¶ 77. By contrast, the Complaint here does not directly reference the TH Complaint.

[6] *See* IPP Table A. State antitrust laws may also be referred to as unfair *competition* laws, and state consumer protection laws may also be referred to as unfair *trade practices* laws.

nationwide, and that money from anticompetitive sales nationwide flowed into Vermont).[7] The VCFA is particularly amenable to nationwide treatment because it does not impose a residency requirement, meaning that class members from any state may benefit from its protections. *See Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012). Keurig mentions Vermont only once in its brief and does not argue against the nationwide application of Vermont law. MTD at 28. Having failed to raise this argument, Keurig cannot raise it on reply. *Ingber v. New York City Dep't. of Educ.*, 14-CV-3942 (JMF), 2014 WL 6888777, at *2 n. 1 (S.D.N.Y. Dec. 8, 2014); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 593 n. 20 (S.D.N.Y. 1993).

Moreover, the Complaint alleges statutory and common law claims under the laws of additional states to which Keurig's principal challenge is that they should fall because IPPs' federal law injunctive claims are supposedly insufficient. However, Keurig does not dispute the well-pled allegations supporting application of Vermont's statutory and common law to the nationwide class; nor does it demonstrate under state law that the Complaint fails to plead its claims. Thus, the Court should deny Keurig's Motion as to all state claims.

1. **The Complaint Adequately Pleads Standing for Antitrust Claims for All States Alleged, Including Vermont**

The Complaint adequately pleads standing for antitrust claims under the laws of 22 states that have rejected *Illinois Brick*. The Complaint alleges that IPPs paid excessive prices due to Keurig's anticompetitive conduct, which is precisely the type of harm that antitrust laws were designed to prevent. *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009) ("*DDAVP*"); *Avenarius v. Eaton Corp.*, 898 F. Supp. 2d 729, 736-37 (D. Del. 2012)

---

[7] Because Vermont "has an obvious and substantial interest in ensuring that it does not become either a base or a haven for law breakers to wreak injury nationwide," nationwide application of Vermont law is appropriate. *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 72 (E.D.N.Y. 2000); *Gramatan Home Investors Corp. v. Starling*, 470 A.2d 1157, 1162 (Vt. 1983). Keurig cannot argue otherwise because a federal court must defer to a state's highest court. *King v. Order of United Commercial Travelers*, 333 U.S. 153, 158 (1948).

(indirect purchasers).

Keurig, however, urges this Court to impose on 19 of these states the *federal AGC* test although these states have explicitly granted standing to indirect purchasers—contrary to the federal precedent of *Illinois Brick*.[8] But "[a]ntitrust standing under state law is just that, a matter of *state* law." *Lithium Ion Batteries*, 2014 WL 4955377, at *7; *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007) ("*GPU I*"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1151 (N.D. Cal. 2009); *D.R. Ward Construction Co. v. Rohm and Haas Co.,* 470 F. Supp. 2d 485, 494–96.

In applying state law, "a federal court . . . is not to adopt innovative theories that may distort established state law but instead to predict how the state's highest court would resolve any identified uncertainty or ambiguity." *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 60 (2d Cir. 2010) (internal citations and quotations omitted). Thus, *AGC* factors apply to state antitrust claims "only to the extent that a state has adopted them." *In re Pool Products Distribution Mkt. Antitrust Litig.,* 946 F. Supp. 2d 554, 564 (E.D. La. 2013) (citing *California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989)).

It is Keurig's burden to conduct a state-by-state analysis of the application of *AGC*. *See In re Carrier IQ, Inc.*, No. C-12-MD-2330 EMC, 2015 WL 274054, at *27 n.7 (N.D. Cal. Jan. 21, 2015) ("Defendants' blunderbuss approach, devoid of any actual analysis of each state's laws, is insufficient to actually present an argument to this Court for resolution."). However, instead of doing so, Keurig merely offers cursory citations to non-binding cases or limited parentheticals that it contends support the application of *AGC* in 19 states. *See* MTD at 8; Keurig Table B. As shown in IPP Table B, none of these 19 states has adopted *AGC* so as to reverse the

---

[8] The states in which IPPs bring antitrust claims are set forth in IPP Table A. Keurig has not claimed that Minnesota, North Carolina, and Tennessee apply *AGC* by omitting them from Keurig Table B.

state's explicit grant of indirect purchaser standing, or been persuaded to fully track federal *AGC* jurisprudence. These states either do not apply *AGC* at all or apply it quite differently from the federal analysis, making Keurig's sweeping argument wrong. Moreover, even if a state had fully adopted the federal *AGC* test, that state's claim should not be dismissed because the Complaint pleads facts that satisfy that test.

### a.   Neither Vermont nor the Other Repealer States Apply *AGC*

"[I]t is inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the repealer states' laws in the absence of a clear directive from those states' legislatures or highest courts." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2008) ("*TFT-LCD*") (citing *GPU I*, 527 F. Supp. 2d at 1097). *See also In re Optical Disc Drive Antitrust Litig.*, 3:10-md-2143 RS, 2011 U.S. Dist. LEXIS 101763, at *44-46 (N.D. Cal. Aug. 3, 2011) (same). "When state decisional law is ambiguous or uncertain, however, we must endeavor to predict how the highest court of the state would resolve the uncertainty or ambiguity." *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995) (citing *U.S. East Telecommunications v. U.S. West Communications Services, Inc.*, 38 F.3d 1289, 1296 (2d Cir. 1994)). *See King,* 333 U.S. at 158 (resort to lesser state appellate courts only if highest court ambiguous). The Court may "not treat the decisions of a state's lower courts as definitive pronouncements of that state's law simply by virtue of the fact that they emanated from within the borders of that state." *Lithium Ion Batteries*, 2014 WL 4955377, at *8.

The cases cited by Keurig in support of its argument do *not* show that Vermont and 13 other states apply *AGC* to indirect purchaser claims in the manner asserted by Keurig. For instance, for Vermont, Keurig relies only upon the unpublished trial court decision in *Fucile v. Visa U.S.A., Inc.*, No. S1560-03 Cnc, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004). But Vermont's Supreme Court held that Vermont does not look to federal law to determine who can

sue under Vermont law. *Elkins*, 817 A.2d at 17; *see also Lithium Ion Batteries*, 2014 WL 4955377, at *8 (refusing to apply *AGC* to indirect purchaser claims under Vermont law); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010) (same). Moreover, similar attempts in other cases to apply the *AGC* test to Vermont law claims on the basis of *Fucile* have already been rejected. *See D.R. Ward Constr. Co.*, 470 F. Supp. 2d at 500- 501 (finding that *Elkins'* holding means that Vermont does not follow *AGC*); *Lithium Ion Batteries*, 2014 WL 4955377, at *11.[9]

**Lower state courts are neither authoritative on Federal courts nor persuasive.** Keurig's authority with respect to the other 13 states is no more persuasive; Keurig cites opinions from the highest courts of only two states (Iowa and Nebraska) which speak only of the application of *AGC* to *non-purchasers* and opinions from intermediate state appellate courts all involving non-purchasers that offer no persuasive evidence predict that those states' highest courts would apply *AGC* to indirect purchaser claims.[10] The remainder of Keurig's cases are from lower courts,[11] most of which "speak only to general notions of 'remoteness' or proximate cause which, although consistent with *AGC,* are more expansive concepts than *AGC*'s five carefully delineated factors." *Lithium Ion Batteries*, 2014 WL 4955377, at *9. "[A]n inferior court's mere citation in passing to *AGC*" does not incorporate the *AGC* test. *Id.* at *10; *see also In re Graphics*

---

[9] Indeed, federal courts need not give any weight to state trial court opinions where those opinions have no weight in that state's courts. *Connecticut State Fed'n of Teachers v. Bd. of Ed. Members*, 538 F.2d 471, 485 (2d Cir. 1976) (cited by *Rodland v. Judlau Contracting, Inc.*, 844 F. Supp. 2d 359, 363 (S.D.N.Y. 2012) (disregarding contrary state trial court decisions)).

[10] To illustrate, the Supreme Courts of Iowa and Nebraska only applied *AGC* to *non-purchasers* with "derivative and remote" injuries, unlike IPPs here. *See Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301(Neb. 2006); *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 195 (Iowa 2007). In each of these cases, the courts referenced earlier rulings by each court finding indirect purchaser standing without any application of *AGC*. *See Kanne*, 723 N.W.2d at 301 (referring to *Arthur v. Microsoft Corp.*, 676 N.W. 2d 29 (Neb. 2004)); *Southard*, 734 N.W.2d at 196-97 (referring to *Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002)). The intermediate state court opinions relied upon by Keurig are similarly distinguished in IPP Table B.

[11] *E.g., Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 343–44 (Miss. 2004) (remoteness); *see also Ho v. Visa U.S.A. Inc.*, Index No. 112316/00, 2004 WL 1118534, at *5 (Sup. Ct. N.Y. Co. Apr. 21, 2004).

*Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) ("*GPU II*") (favorable citations to *AGC* do not mandate that the *AGC* test applies).[12]

   ***General harmonization statutes do not negate state legislatures' enactment of specific Illinois Brick opt-out or other consumer protection statutes.*** Keurig's reliance on "harmonization" statutes in Arizona, Mississippi, Nevada, New Hampshire, and West Virginia is also misplaced. *See* IPP Table B. Harmonization statutes – the application of which generally provide that certain state laws should be "harmonized" with federal law – have varying language and are not applied uniformly. *See GPU II*, 540 F. Supp. 2d at 1097. Most significantly, none propose to repeal or amend the specific legislative enactment of *Illinois Brick* opt-out or other consumer protection statutes. That "a state statute encourages reference to federal law does not impose a mandate on state courts to conform in fact to federal law." *Lithium Ion Batteries*, 2014 WL 4955377, at *10. Thus, harmonization provisions alone do not mandate *AGC*'s application to state indirect purchaser claims. *See Flash Memory*, 643 F. Supp. 2d at 1153; *see also GPU II*, 540 F. Supp. 2d 1097 (*AGC* test applied only on a clear "directive"). As shown in IPP Table B, Keurig's proffered authority regarding state harmonization statutes does not show that the legislatures in these five states intended to adopt *AGC*.

   **b.**  **Application of *AGC* Does Not Warrant Dismissal of State Claims**

   Even if *AGC* were applied to the state law claims to preempt specific state legislation, the Complaint pleads facts that satisfy Second Circuit law. In this Circuit, the *AGC* factors have been interpreted to require that (1) the plaintiff has suffered an antitrust injury; and (2) the plaintiff is an "efficient enforcer" of the antitrust laws. *Gatt Commc'ns, Inc. v. PMC Associates, L.L.C.*, 711

---

[12] The authority proffered by Keurig does not show that these states would apply *AGC* in the same manner as a federal court. *Cf. Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999) (focusing heavily on plaintiff's injury); *Knowles v. Visa U.S.A., Inc.*, No. CV-03-707, 2004 WL 2475284, at *5-6 (Me. Super. Oct. 20, 2004) (disregarding certain factors); *Beckler v. Visa U.S.A., Inc.*, 2004 WL 2115144, at *5-6 (D.N.D. Aug. 23, 2004) (same).

F.3d 68, 76 (2d Cir. 2013). Keurig addresses only the second prong involving the "efficient

enforcer" requirement:

> (1) the directness or indirectness of the asserted injury; (2) the existence of an
> identifiable class of persons whose self-interest would normally motivate them to
> vindicate the public interest in antitrust enforcement; (3) the speculativeness of
> the alleged injury; and (4) the difficulty of identifying damages and apportioning
> them among direct and indirect victims so as to avoid duplicative recoveries.

*Id.* at 78. As pleaded, the Complaint satisfies each of the "efficient enforcer" factors.

### i.     IPPs Were Directly Harmed By Keurig's Conduct

The directness of injury relates to its closeness in the chain of causation, *see Int'l Bus.

Machs. Corp. v. Platform Solutions, Inc.,* 658 F. Supp. 2d 603, 611 (S.D.N.Y. 2009); *see also

AGC,* 459 U.S. at 540–41; that is "whether the injury that resulted was within the scope of the

risk created by the defendant's [wrongful] act; whether the injury was a natural or probable

consequence of the [conduct]; whether there was a superseding or intervening cause; whether the

[conduct] was anything more than an antecedent event without which the harm would not have

occurred." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.,* 753 F.3d 395, 412 (2d Cir.

2014) (internal quotation omitted).

The Complaint satisfies this factor by pleading that (i) the IPPs purchased the exact

products that were impacted by the supracompetitive prices extracted by Keurig; (ii) IPPs paid

those supracompetitive prices; (iii) those prices resulted from Keurig's wrongful conduct; (iv)

Keurig's conduct was the direct and proximate cause of their injuries; and (v) IPPs' injuries were

foreseeable consequences of Keurig's conduct. ¶¶ 27-32. Further, the Complaint pleads that

direct purchasers were not a superseding or intervening cause of IPPs' injury and passed the

overcharge on to IPPs. ¶¶ 28-31, 182-85.

Contrary to Keurig's assertion, the Complaint's allegations are *not* limited to the claim

that IPPs "were indirectly harmed by exclusionary conduct that harmed Keurig's competitors."

MTD at 6. The gravamen of the Complaint is that Keurig engaged in sweeping anticompetitive behavior to restrain competition in the Keurig Compatible Cup Market, enabling it to charge monopoly prices for Keurig K-Cups after its patents expired. "[H]arming competitors was simply [one of the] means for [Keurig] to charge [IPPs] higher prices." *DDAVP*, 585 F.3d at 688.

### ii.    IPPs Are Appropriate Enforcers

*AGC* does not endorse barring purchasers' claims in favor of competitors. *See AGC*, 459 U.S. at 542. The injuries involved are different: competitors' injuries are lost profits, whereas IPPs' injuries are overcharges. "Denying [IPPs] a remedy in favor of a suit by competitors would thus be 'likely to leave a significant antitrust violation undetected or unremedied.'" *DDAVP*, 585 F.3d at 689 (quoting *AGC*, 459 U.S. at 542). The alternative enforcers factor "simply looks for a class of persons naturally motivated to enforce the antitrust laws." *Id.* Although competitors may be motivated to bring suit, IPPs "are also significantly motivated due to their 'natural economic self-interest' in paying the lowest price possible." *Id.* JBR's and TreeHouse's lawsuits do not undermine IPPs' motivation to enforce the antitrust laws and do not recover the overcharges IPPs paid; indeed, the competitors do not purport to seek damages for overcharges.

### iii.    IPPs' Injury is Not Speculative

Keurig combines the third and fourth prongs but makes no argument as to speculativeness. The speculativeness of an injury concerns "the possibility that an antitrust plaintiff's damages theory is mere speculation because the claimed damages are too indirect and may have been produced by factors independent from any alleged overcharge." *Lithium Ion Batteries*, 2014 WL 4955377, at *15; *see also AGC*, 459 U.S. at 542. Here, the Complaint alleges that IPPs paid higher prices for Keurig K-Cups as a direct result of Keurig's actions to restrain competition and sets forth the chain of commerce for Keurig K-Cups, allowing the overcharge to be calculated. ¶¶ 31, 182-85, 216. The IPPs did not purchase a product

incorporated in another product. The IPPs purchased the exact product sold by Keurig where the overcharge was passed on either by the distributor which supplied the product (such as to a commercial establishment) or by the retailer.

### iv.   There Are No Difficulties in Identifying and Apportioning Damages

This factor presents no bar because here there is no "danger of duplicative recovery or problems of apportionment" between customers and competitors because customers' damages are in the form of paying supracompetitive prices, whereas competitors seek lost profits. *See In re Credit Default Swaps Antitrust Litig.*, 13md2476 (DLC), 2014 WL 4379112, at *9 (S.D.N.Y. Sept. 4, 2014) (citing *DDAVP*, 585 F.2d at 689). Nor does Keurig assert that apportionment between IPPs and direct purchasers is problematic, MTD at 9-12; to the contrary, it is well-settled law that indirect and direct purchaser actions can be brought side-by-side. *California v. ARC Am. Corp.*, 490 U.S. 93, 100-05 (1989).[13] Instead, Keurig asserts – without any basis or explanation – that overcharges could not be traced to IPPs. MTD at 8.[14] This assertion is one that requires economic proof and analysis - which Keurig does not begin to provide. This assertion further contradicts the Complaint's specific allegations. *E.g.*, ¶ 31 ("Keurig K-Cups are separate products that remain unaltered as they pass from Keurig to consumers via a distributor or distributors."); ¶ 28 ("The distribution channel . . . generally involve[es] only one or two

---

[13] *See also Flash Memory*, 643 F. Supp. 2d at 1156, 1164 (permitting indirect and direct actions to proceed together); *Lithium Ion Batteries*, 2014 WL 4955377, at *23, *30 (same); *TFT-LCD*, 586 F. Supp. 2d at 1132 (same).

[14] The cases cited by Keurig involve non-purchasers or chains of distribution far more attenuated and speculative than the one at issue here, ¶¶ 28-31. *See Gatt*, 711 F.3d at 78 (non-purchaser alleged harm based upon business he *might* have won had the bidding process not been rigged); *Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 293 (2d Cir. 2006) (Plaintiff's claim of damages hinged upon whether defendant's competitors *might* have taken certain actions absent the challenged policy, and whether defendant *might* have changed its policies in response); *In re Aluminum Warehousing Antitrust Litig.*, 13-md-2481, 2014 WL 4277510, at *22-24 (S.D.N.Y. Aug. 29, 2014) (before the product was purchased, it was "delivered from a warehouse to some initial buyer, and then another buyer and so on, down the supply/distribution chain, with each step potentially involving additional fabrication or services.").

intermediaries between Keurig and [IPPs].”); ¶ 185 (“Distributors and Retailers pass on most, if not all, of the overcharges associated with the sale of Keurig K-Cups to [IPPs].”); ¶ 31 (“[T]he chain of commerce for this market allows for the tracing of overcharges that have passed through the chain of commerce to [IPPs].”). These unchallenged facts must be accepted as true.

Courts have routinely denied motions to dismiss where plaintiffs alleged theories of damages significantly more complex than alleged here. *See, e.g.*, *Flash Memory*, 643 F. Supp. 2d at 1156 (“risk of duplicative recovery is less of a concern” where plaintiffs have alleged that the overcharges are “distinct and traceable”); *TFT–LCD*, 586 F. Supp. 2d at 1124 (“plaintiffs have sufficiently alleged that damages are traceable and thus apportionable because LCD panels are a separate component.”); *GPU II*, 540 F. Supp. 2d at 1098 (same). The burden is on Keurig to “‘articulate, *with specificity*, why the measurement of plaintiffs’ damages would be unascertainable.’” *Lithium Ion Batteries*, 2014 WL 4955377, at *15 (quoting *D.R. Ward*, 470 F. Supp. 2d at 504) (emphasis in original). Keurig’s arbitrary assertion of complexity is unavailing.

The Complaint satisfies all four factors of this Circuit’s “efficient enforcer” analysis.

### 2.   The Complaint Adequately Alleges State Antitrust Claims

The Complaint pleads violations of 22 state antitrust laws. ¶¶ 225-44, 295-447. Each of these claims contains the elements required by each state.[15] Keurig neither challenges the nationwide application of Vermont law nor provides briefing for each state, opting instead to rely upon a single district court case to argue that each of these states “interprets its substantive antitrust laws in parallel with—or more narrowly than—the federal antitrust laws, and each of

---

[15] Keurig concedes most elements of these state claims, challenging only whether IPPs have alleged a “substantial effect” on intrastate commerce in the District of Columbia, Mississippi, South Dakota, Tennessee, and Wisconsin. MTD at 26. However, most of these states require only an effect on intrastate commerce, not a *substantial* one. *See* IPP Table E. Moreover, IPPs have alleged an effect or a substantial effect for each of these states; the specific facts pleaded in the Complaint are from *Keurig's internal documents* and support the plausibility of such allegations. *See* ¶¶ 329, 367, 425, 432, and 445.

these [state] claims fail for the same reasons as IPPs' federal antitrust claims." MTD at 25. However, in *In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003), the only case relied upon by Keurig to support its sweeping notion of federal law limiting state law, the parties expressly agreed that the court could apply federal case law to the state law claims at issue (which did not include many of the states involved here). *See id.* at 139.

Keurig is wrong for several reasons. First, as discussed below, the federal claims survive, making irrelevant whether the state laws are interpreted in parallel with federal. Second, Keurig has presented neither binding nor persuasive authority favoring dismissal of the state antitrust claims. Third, as discussed above regarding the application of *AGC* to state law, there is no persuasive evidence that the highest courts of each of these states would interpret their antitrust laws in parallel with or more narrowly than federal law. *See King*, 333 U.S. at 158. For instance, in Vermont, the Supreme Court of Vermont made clear that it is "guided by federal court decisions construing the Federal Trade Commission Act and not other federal antitrust laws." *Elkins*, 817 A.2d at 16. Keurig's reliance on the federal district court decision in *Green v. Springfield Med. Care Sys., Inc.*, 5:13-cv-168, 2014 WL 2875850 (D. Vt. June 24, 2014), is misplaced because *Green* (1) did not involve a VCFA antitrust claim; and (2) referred to interpretations of *criminal* antitrust law under 9 V.S.A. § 2453a in connection with a whistleblower protection provision, neither of which are at issue here. *Cf.* ¶¶ 226, 232 (pleading violations of 9 V.S.A. § 2453). Keurig's proffered authority for the remaining states fares no better as set forth in IPP Table C.[16]

---

[16] Keurig contends that the antitrust laws of California, Kansas, New York, and Tennessee must be premised on concerted conduct. MTD at 25 n. 32. However, the Complaint alleges concerted conduct in each of these states. ¶¶ 316, 340, 399, 431; IPP Table D. Moreover, each antitrust claim alleged in the Complaint involves conduct by Keurig and one or more additional parties, and determining whether such conduct was "concerted" is a factual inquiry not appropriate at the pleading stage. *See Lerman v. Bd. of Elections*, 232 F.3d 135, 142 (2d Cir. 2000) ("Since this case remains at the pleading stage, all facts averred by the plaintiffs must be taken as true.").

### 3. The Complaint Adequately Alleges State Consumer Protection Claims

The Complaint alleges with particularity consumer protection claims under the laws of Arkansas, California, Massachusetts, Nebraska, New Mexico, and North Carolina.[17] ¶¶ 235-44, 448-80. Keurig argues that these state consumer protection claims are limited by the reach of the antitrust laws. MTD at 27. However, the laws of each of these six states are intended to be broadly construed to protect consumers and not to be limited by the reach of traditional antitrust concepts. *See, e.g., Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995, 1008 (N.D. Cal. 2008) ("[T]he North Carolina Act also sanctions, as part of its broad remedial purpose of promoting ethical business dealings, commercial unfairness and deception beyond traditional antitrust concepts." (quotation and citation omitted)). *See also Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1172 (E.D. Cal. 2013) (The UCL is intentionally broad and sweeping to confer on courts broad equitable powers to remedy violations and protect consumers); *Kattar v. Demoulas*, 739 N.E. 2d 246, 256-57 (Mass. 2000); *Hage v. Gen. Serv. Bureau*, 306 F. Supp. 2d 883, 887 (D. Neb. 2003); *State ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1184-85 (N.M. Ct. App. 1987) (citing *Albuquerque Hilton Inn v. Haley*, 565 P.2d 1027 (N.M. 1977)); Ark. Code § 4-88-107(b) ("The deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state.").

Keurig attempts to limit state consumer protection statutes by referring to federal antitrust authority, but this is inconsistent with the public policies of each of these six states. Moreover, the cases Keurig cites in support of its assertion fail to do so. For example, Keurig cites to *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554 555 (9th Cir. 2008), but under Ninth

---

[17] Each of these states allows indirect purchasers to bring antitrust claims under their consumer protection laws.

Circuit Rules, that decision "is not precedent" and should not be cited in this action for the purposes that Keurig advances.[18] Similarly, Keurig relies on two cases where the alleged illegal conduct flowed from the lawful use of valid patents, and one case involving only antitrust and no consumer protection law claims. *See In re Tamoxifen Citrate*, 277 F. Supp. 2d at 139 (patents); *In re Plavix Indirect Purchaser Antitrust Litig.*, No. 1:06-cv-226, 2011 WL 335034, at *4 (N.D. Cal. Jan. 31, 2011) (patents); *Formula One Licensing B.V. v. Purple Interactive Ltd.*, No. C 00-2222 MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) (stating only that unfair *competition* claims are dismissed if antitrust claims are dismissed).[19]

### 4.  The Complaint Adequately Alleges Common Law Unjust Enrichment

The Complaint alleges unjust enrichment under the laws of 18 states, including a nationwide class under Vermont law. ¶¶ 245-50, 481-516. Keurig devotes a total of two paragraphs to these claims, asserting that they cannot survive without the antitrust claims, citing

---

[18] Keurig cites *LiveUniverse* concerning its theory that a UCL claim cannot survive if a federal antitrust claim for the same conduct were to fail. But in that case there was no California state antitrust claim, whereas the Complaint alleges a Cartwright Act claim. ¶¶ 305-25. Moreover, *LiveUniverse*'s reasoning is based exclusively on two cases, both of which are relied upon by Keurig, and both of which are unavailing. *See Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175, 184 (Ct. App. 2001) ("We do not hold that in all circumstances an 'unfair' business act or practice must violate an antitrust law to be actionable under the unfair competition law. Instead we hold that conduct alleged to be 'unfair' because it unreasonably restrains competition and harms consumers . . . is not 'unfair' if the conduct is deemed reasonable and condoned under the antitrust laws."); *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000) (defining "unfair" under the UCL as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.").

[19] Keurig is incorrect that the Complaint has not pled unconscionable or deceptive conduct in Arkansas, Nebraska, New Mexico, and North Carolina. *See* MTD at 27. To the extent that these states require pleading unconscionable or deceptive conduct, IPPs have done so. *See, e.g., TFT-LCD*, 586 F. Supp. 2d at 1127 (New Mexico consumer protection claim adequately pled where plaintiffs "allege that as a result of defendants' alleged price-fixing, there was a gross disparity in the value of products received and the amount that they paid for those products."); ¶ 473 ("The aforementioned conduct constitutes unconscionable trade practices because the conduct results in a gross disparity between the value received by consumers and the price paid"); *Lithium Ion Batteries*, 2014 WL 4955377 at, *23 (denying defendants' motion to dismiss Arkansas claim where "the conduct alleged . . . encompasses acts that violate a statute or public policy"). Moreover, these consumer protection statutes are to be interpreted broadly in favor of consumer recovery, and the Complaint alleges that in each of these states, Keurig engaged in a wide variety of anticompetitive conduct (including exclusionary agreements, tying agreements, group boycotts, and monopolization) which was both unconscionable and deceptive. ¶¶ 449-50, 452, 466, 469, 471, 473-74, 476, 479. *See also* IPP Table F.

*Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250 (S.D.N.Y 1995). However, *Kramer* is directly contradicted by a later New York federal district court decision.[20]

Moreover, the Complaint pleads a valid claim under Vermont law because it pleads that "a party confers a benefit upon another party and retention of the benefit would be inequitable." *D.R. Ward Const. Co.*, 470 F. Supp. 2d at 508 (finding that indirect purchasers stated a claim for unjust enrichment on the basis of anticompetitive conduct). *See* ¶¶ 209, 246-48 (alleging anticompetitive conduct resulting in IPPs paying excessive prices for Keurig K-Cups which conferred a benefit on Keurig that would "be inequitable" to retain). Furthermore, "the viability of [Vermont unjust enrichment] claims does not hinge upon the success of the state statutory antitrust claims." *See D.R. Ward*, 470 F. Supp. 2d at 506; *see also Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 09-CV-00852, 2012 WL 3841397 (E.D. Wis. Sept. 5, 2012) (unjust enrichment claims in Vermont, Arkansas, Minnesota, and New Mexico are independent common law claims not reliant on underlying statutory violations).

Keurig also argues that ten states require a "direct relationship between allegedly enriched and injured parties." MTD 28. As set forth in detail in IPP Table G, none of these states impose such a requirement. *See, e.g., Manufacturers Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 117 (1st Dep't 1990) ("It does not matter whether the benefit is directly or indirectly conveyed."); *Kabins Family LP v. Chain Consortium*, 2:09-cv-01125-GMN-RJI, 2010 WL 3001890, at *6 (D. Nev. July 27, 2010) ("An indirect benefit will support an unjust enrichment claim."); *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 929-30 (E.D. Pa.

---

[20] "New York . . . law provide[s] for a standalone unjust enrichment claim." *Sergeants Benev. Ass'n Health & Welfare Fund v. Sanofi-Aventis U .S. LLP*, No. 08-CV-0179 SLT RER, 2012 WL 4336218, at *7-8 (E.D.N.Y. Sept. 17, 2012) *report and recommendation adopted in part sub nom.* 2014 WL 1894303 (E.D.N.Y. May 12, 2014) (adopting report and recommendation as to unjust enrichment claims). *Cf. Kramer*, 890 F. Supp. at 257 (dismissing unjust enrichment claim that "hinges on . . . practices claimed by plaintiff to be illegal" (quotation omitted).

2012) ("In sum, Kansas unjust enrichment law allows claims for the conferral of indirect benefits."). Therefore, the unjust enrichment claims can proceed as pled.

### 5.   IPPs Have Standing in States Without Representatives or Purchases

The Complaint pleads with specificity facts sufficient to show a cause of action under the laws of 24 states. Of these states, there is neither a named plaintiff in, nor purchase from, Arkansas, Maine, New Hampshire, North Dakota, Oregon, South Dakota, or West Virginia. But where, as here, the Complaint pleads national class claims, courts should defer determinations of standing for states without representatives or purchases until class certification.[21]

## B.   The Complaint Adequately Pleads Actual and Attempted Monopolization, Exclusive Dealing, and Horizontal Conspiracy under Federal Law

The Complaint properly pleads antitrust claims under state law; however, Keurig argues that state antitrust law is limited by federal antitrust law. As set forth above, this is simply not true, and even if it were, the state claims would survive because the Complaint properly pleads federal claims (injunctive relief) for actual and attempted monopolization, exclusive dealing, and a horizontal conspiracy.

### 1.   The Complaint Adequately Pleads Actual Monopolization of the Keurig Compatible Cup Market

Under federal law, monopolization consists of "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Keurig has only focused on the first element. MTD at 20-22.

---

[21] *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 405-6 (S.D.N.Y. 2011). Because the national claims satisfy Article III standing and the proposed class has members in every state, this is an issue of Rule 23 representation, properly determined later. *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F.Supp. 2d 198, 213-14 (S.D.N.Y. 2012) (discussing cases).

The Complaint pleads that the Keurig Compatible Cup Market is a relevant market based upon product substitutability, the effects on demand of a small but significant non-transitory increase in price, and cross-elasticity of demand. ¶¶ 89-99; *see also United States v. E.I. du Pont De Nemours & Co.*, 351 U.S. 377, 404 (1956) (the relevant market "is composed of products that have a reasonable interchangeability for the purpose for which they are produced – price, use and qualities considered"); *AD/SAT v. Assoc. Press*, 181 F.3d 216, 227 (2d Cir. 1999) (Products are "reasonably interchangeable" where there is sufficient cross-elasticity of demand, *i.e.*, where a consumer would respond to an increase in the price of one product by purchasing another.). A brand-name product and generic equivalents can form a relevant product market. *See, e.g.*, *Louisiana Wholesale Drug Co. v. Sanofi-Aventis*, No. 07 Civ. 7343 (HB), 2008 U.S. Dist. LEXIS 3611, at *20-21 (S.D.N.Y. Jan. 18, 2008). Moreover, because market definition requires a fact-intensive inquiry, dismissal on that basis is not appropriate on the pleadings. *See Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001).[22]

The Complaint alleges that Keurig has monopoly power in the Keurig Compatible Cup Market because it has the "power to control prices or exclude competition." *E. I. du Pont de Nemours & Co.*, 351 U.S. at 391. For instance, Keurig raised prices on its K-Cups between 19% and 28% in less than one year without materially affecting its market share. ¶¶ 121-23. Moreover, the existence of monopoly power can be inferred from Keurig's 95% market share. *Id.* at ¶ 10; *see Grinnell Corp.*, 384 U.S. at 570 (87% sufficient for monopoly power).

---

[22] Keurig appears to challenge the relevant market with a passing reference to the out-of-circuit decision in *Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-02031, 2012 WL 511485, at *5 (W.D. Ark. Feb. 15, 2012). In *Coffee.org*, plaintiff alleged a market for selling Keurig K-Cups online, which is much narrower than the market definition alleged here. Moreover, the *Coffee.org* plaintiff pled virtually no facts in support of such a definition. *Coffee.org, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-02031, Amended Complaint, ECF No. 43, at ¶¶ 32-33, 72-73.

Accordingly, the Complaint properly pleads monopoly power in the Keurig Compatible Cup Market, and the monopolization claim should survive.

Although not an element of any federal claim, the Complaint alleges that Keurig has monopoly power in the Portion Pack Brewer Market.[23] As a result, this Court should decline Keurig's invitation to extend primary-market/aftermarket analysis to situations where a defendant (*i.e.*, Keurig) has a monopoly in the primary market. *See* MTD at 20-22; *cf. Xerox Corp. v. Media Sciences, Inc.*, 660 F. Supp. 2d 535 (S.D.N.Y. 2009) ("*Xerox III*") (defendant did not have monopoly power in primary market). Keurig does not cite any case where the *Xerox III* analysis has been applied when a defendant had monopoly power in the primary market.[24] *Cf. Xerox III*, 660 F. Supp. 2d at 547 (setting forth what a plaintiff must show to establish that a "*nonmonopolist* producer of a durable good [has] monopoly power in the aftermarket for parts" (emphasis added)). Keurig has presented neither rationale nor authority for extending *Xerox III* to a producer who has a monopoly in the primary market, nor for applying such a *fact-intensive test at the pleading stage. Cf. Xerox III*, 660 F. Supp. 2d at 545 (discussing summary judgment burdens).

### 2.   The Complaint Adequately Pleads Attempted Monopolization of the Keurig Compatible Cup Market

Attempted monopolization requires that "'(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous

---

[23] The Complaint pleads a relevant market for Portion Pack Brewers by alleging that Portion Pack Brewers do not compete with traditional drip coffee brewers or pod-based brewers and are otherwise distinguishable from such products. ¶¶ 71-88. The Complaint pleads that Keurig has *monopoly* power in this market based on Keurig's high market shares and the fact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶¶ 7, 79; *E. I. du Pont de Nemours & Co.*, 351 U.S. at 391; *Grinnell Corp.*, 384 U.S. at 579. Keurig's reliance upon a conclusory statement in TreeHouse's inoperative complaint that Keurig "allegedly prices its brewers at or below cost" is misplaced because it is undermined by the specific facts pled in the Complaint based upon Keurig's internal documents. *Cf.* MTD 18: ¶ 79.

[24] Although not cited by Keurig, *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451 (1992) was also decided at summary judgment and is premised upon the fact that the primary market was competitive.

probability of achieving monopoly power.'" *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 99-100 (2d Cir. 1998) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)). Keurig challenges only the second and third prongs. MTD at 22-23.

The Complaint pleads that there is a dangerous probability of Keurig achieving monopoly power in the Keurig Compatible Cup Market because Keurig controlled 86% to 95% of that market during the Class Period, and the increase in market share was "due in substantial part to the conduct" alleged by the IPPs. ¶ 10; *see Tops Markets, Inc.*, 142 F.3d at 100 (A market share exceeding 72% "at the time when defendants took other anticompetitive actions . . . create[s] a genuine factual issue as to whether there was a dangerous probability [of] achiev[ing] monopoly power.").

The Complaint further alleges that Keurig engaged in a variety of anticompetitive conduct from which specific intent can be inferred, including exclusionary agreements with component manufacturers, coffee roasters, distributors, and retailers to block competitors from the market. *See* ¶¶ 141-209; *Ne. Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 85 (2d Cir. 1981) (Where it is "impossible for a plaintiff to obtain direct evidence of the alleged conspirators' specific intent[,] . . . the finder of fact must be allowed to infer defendants' intent from their anticompetitive practices."); *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, 596 F. Supp. 2d 630, 642 (E.D.N.Y. 2009) ("[A] finding of valid business justification over one of specific intent to monopolize cannot fairly be made" at the pleading stage.). Further, a federal court found Keurig's intent to improperly restrict competition for what the Complaint defines as Compatible Cups. *See* ¶¶ 124-35. These allegations sufficiently establish the elements of attempted monopolization. Any questions of fact that may arise are not appropriately resolved on a motion to dismiss.

3.      **The Complaint Adequately Pleads Exclusive Dealing**

The Complaint adequately pleads exclusive dealing claims by alleging that Keurig entered into contracts that prevented competitors from accessing inputs and distribution channels necessary to compete effectively in the Keurig Compatible Cup Market, resulting in a lessening of competition in that market. *See* ¶¶ 260-76.

The Complaint pleads federal law exclusive dealing claims under 15 U.S.C. §§ 1, 14 (for contracts with distributors and retailers) and under § 1 alone (contracts with distributors and retailers as well as with suppliers). To plead an exclusive dealing claim under § 1, a complaint must allege "(1) an agreement and (2) an unreasonable restraint of trade or commerce." *Virgin Atl. Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52, 65 (S.D.N.Y. 1994) (citing *Int'l Distribution Centers, Inc. v. Walsh Trucking*, 812 F.2d 786, 793 (2d Cir. 1987)). To plead such a claim under § 14, a complaint must allege that the "contract will foreclose competition in a substantial share of the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). Keurig largely ignores[25] that much of its conduct is challenged under § 1 and focuses primarily on substantial foreclosure. MTD at 11-17. However, substantial foreclosure "is a uniquely factual inquiry . . . . that is inappropriate on the face of the complaint." *Virgin Atl. Airways, Ltd.* 872 F. Supp. at 66; *see also EnviroSource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 CIV. 5106 (AGS), 1996 WL 363091, at *13 (S.D.N.Y. June 28, 1996) ("Whether or not [defendant's] alleged conduct foreclosed a substantial portion of the relevant market . . . is a

---

[25] Keurig misreads the federal exclusive dealing claims in the Complaint. MTD at 11, n.14. The retailer and distributor contracts are challenged under 15 U.S.C. §§ 1 and 14. ¶¶ 260-76. In contrast, the contracts with suppliers of machinery and components are challenged only under 15 U.S.C. § 1. ¶¶ 260-68. Also, Keurig's argument in that same footnote regarding an alleged "presumption" is not supported by the case it cites. *See Electronics Communs. Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240, 245 (2d Cir. 1997) (referring to an exclusive *distributorship* as "presumptively legal" – *i.e.*, when one distributor is the only distributor of a supplier's product).

factual issue" not appropriate at the pleading stage.).[26]

The Complaint properly pleads several independent theories of exclusive dealing: (1) that Keurig entered into exclusive contracts with retailers and distributors, depriving its competitors and potential entrants of access to customers, ¶¶ 174-79, 188, 264; and (2) Keurig also deprived competitors of access to inputs needed to compete with Keurig in the Keurig Compatible Cup Market, by entering into exclusive contracts with the suppliers of machinery, plastic cups, and coffee.  ¶¶ 18-23, 142-72. Each of these theories is independently pled and is sufficient to may stand on its own.

<strong>a.      Keurig's Exclusive Contracts with Distributors and Retailers Prevented Cup Competitors from Access to Customers</strong>

The Complaint adequately pleads that Keurig entered into exclusive contracts with hundreds of retailers and distributors to prevent them from selling Competitor Cups:

- *Roaster Competitors' own Distribution Networks*. Many Roaster Competitors, including such major brands as Dunkin' Donuts, Starbucks, and The Coffee Bean & Tea Leaf, have their own distribution networks and have agreed not to sell Competitor Cups. ¶ 23, 159-64, 170. The Complaint specifically alleges that "Roaster Competitors that wish to buy, distribute, or sell Keurig Portion Pack Brewers through their own distribution networks must agree to purchase Keurig K-Cups from Keurig and, at the very least, must agree not to purchase Competitive Cups." ¶ 171.

- *Distributors and Retailers*. ¶ 25. "Keurig has roughly 500 agreements with Distributors." ¶ 179. The Complaint alleges that some of the largest Distributors have refused to do business with Cup Competitors because of exclusive contracts with Keurig. ¶ 193. In support of the plausibility of such allegations, the Complaint further alleges specific facts

---

[26] Keurig's factual arguments are unavailing. For instance, improperly citing to the TH Complaint, Keurig argues that there is no substantial foreclosure where competitors have "remained in the market and successfully competed." MTD at 11. But the Complaint alleges that competitors are being driven out of business, ¶¶ 10, 115, and such a factual conflict cannot be resolved on the pleadings. Moreover, competitor growth does not refute substantial foreclosure because the proper inquiry is what competition (and competitor sales) would have looked like but for the restraints. *See* T.G. Krattenmaker and S.C. Salop, *Anticompetitive Exclusion: Raising Rivals' Costs to Achieve Power over Price*, 96 Yale L.J. 209, 246 (Dec. 1986). Keurig's proffered authority is readily distinguishable. *See* MTD at 11; *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 81 (2d Cir. 1999) (at summary judgment, defendant's exclusive agreements with distributors were "never critical to the [plaintiff's] sales strategy); *Omega Envtl. v. Gilbarco, Inc.*, 127 F.3d 1157, 1164 (9th Cir. 1997) (post-trial); *Bowen v. New York News, Inc.*, 366 F. Supp. 651 (S.D.N.Y. 1973) (post-trial).

regarding exclusive dealing contracts with at least one distributor (Fox Vending, Inc.) and one retailer (Staples). ¶¶ 191, 199.

Such pleadings are sufficient because, taken together, they plausibly support an inference that Keurig entered into contracts with retailers and distributors who agreed not to sell Competitor Cups, which had the effect of excluding Competitor Cups from much of the Keurig Compatible Cup Market. ¶¶ 174-79, 188; *see also Xerox Corp. v. Media Sciences Int'l, Inc.*, 511 F. Supp. 2d 372, 390 (S.D.N.Y. 2007) (finding exclusive dealing properly pled on similar allegations). Moreover, the allegations support the inference that the effect of these exclusive contracts was substantial (over 500 agreements), and at the pleading stage, the Complaint need not plead precise fractions or percentages, contrary to what Keurig contends. *See, e.g., Xerox Corp.*, 511 F. Supp. 2d at 390. Thus, the Complaint has "depict[ed] the exclusive dealing contracts . . . as neither so small in their effect on the market nor so plainly benign or beneficial to competition that they have failed to state a claim." *Maxon Hyundai Mazda v. Carfax, Inc.*, No. 13-CV-2680 AJN, 2014 WL 4988268, at *14 (S.D.N.Y. Sept. 29, 2014).

Rather than addressing the pleadings, Keurig makes several factual arguments regarding substantial foreclosure. For instance, Keurig repeatedly stresses that the Complaint does not allege a "plausible denominator" of the available suppliers of equipment and cup components. MTD at 11-12. However, such factual analysis and mathematical precision are neither required, nor appropriate, on a motion to dismiss. *See Xerox Corp.*, 511 F. Supp. 2d at 390; *EnviroSource, Inc.*, 1996 WL 363091, at *13. Keurig does not cite any case where a Court held that plaintiffs must *plead* a precise fraction (*i.e.*, a numerator and denominator).[27] Keurig also asks this Court to

---

[27] Keurig's proffered authority, *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270 (S.D.N.Y. 2007) (*see* MTD at 12), does not demand an exact percentage of the market foreclosed but merely "facts relating to the named distributors' shares" and "allegations from which significant foreclosure could be *reasonably inferred.*" *Id.* at 295 n.8 (emphasis added); *see also Insignia Sys., Inc. v. News Corp., Ltd.*, No. 04-4213 (JRT/FLN), 2005 U.S. Dist. LEXIS 42851, at *10 (D. Minn. Aug. 25, 2005) (requiring only "some indication of the percentage"

weigh facts by relying upon an agreement referenced in the TH Complaint that allegedly contradicts allegations in the Complaint. MTD at 15. Similarly, Keurig's argument that there can be no foreclosure where competitors can reach consumers through alternative channels of distribution requires the Court to weigh alleged facts not pled in the Complaint. MTD at 15. And even if such facts were properly before the Court, it is the wrong inquiry; the correct inquiry is whether the Complaint alleges facts supporting an inference that Cup Competitors' access to distributors or retailers was substantially foreclosed.[28] To further illustrate, Keurig asks this Court to consider facts outside the Complaint by selectively quoting from an 8-page email thread regarding Staples' refusal to carry Competitor Cups. MTD at 16. The Complaint alleges that numerous retailers were bound by exclusive agreements with Keurig (which Keurig has not denied), *e.g.*, ¶ 26; the precise details concerning Staples' rationale for not carrying Competitor Cups is a factual matter appropriate for discovery and not resolvable at the pleading stage.[29]

Keurig's Motion as to exclusive dealing with retailers and distributors must be denied.[30]

---

of the relevant market foreclosed) (cited by MTD at 15).

[28] Keurig's cases are inapposite. *See* MTD at 15-16; *CDC Techs.*, 186 F.3d at 81 (at summary judgment, defendant's exclusive agreements with distributors not significant where distributors were "never critical to the [plaintiff's] sales strategy); *Commercial Data Servers, Inc. v. IBM*, 262 F. Supp. 2d 50, 77 (S.D.N.Y. 2003) (summary judgment after previously denying defendants' motion to dismiss antitrust claims); *Wellnx Life Scis.*, 516 F. Supp. 2d at 295 (allegations implausible where plaintiff alleged foreclosure of ability to advertise in magazines, which was "not reasonably considered a 'bottleneck'" in the chain of distribution); *Eon Labs Mfg. v. Watson Pharms., Inc.*, 164 F. Supp. 2d 350, 359 n.9 (S.D.N.Y. 2001) (no consumers, no antitrust injury); *Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496 (S.D.N.Y. 2001) (no mention of foreclosure).

[29] Keurig argues that IPPs cannot allege injury "based on a purported inability to purchase competitor's packs" when those packs are "widely available," citing solely to the TH Complaint. MTD at 17. Keurig misstates the TH Complaint, and in any event the Complaint does not plead that Competitor Cups are "widely available." An absence or lack of alternatives is not a prerequisite for foreclosure to be anticompetitive. *See, e.g.,* Department of Justice, *Competition and Monopoly: Single-firm Conduct under Section 2 of the Sherman Act*, Ch. 8.III.A

[30] Keurig's argument that the Complaint recasts exclusive dealing claims as tying claims is unpersuasive because (1) the tying claims are separate and distinct from the exclusive dealing claims; and (2) Keurig cites only to federal law whereas the Complaint pleads tying claims exclusively under the laws of certain states, notably Vermont and California. *See* MTD at 17; *cf.* ¶¶ 235-44; 318-22. For the Vermont tying claim, the Complaint must allege "sufficient *economic power* in the tying product market to coerce purchaser acceptance of the tied product." *Vermont Mobile Home Owners' Ass'n, Inc. v. Lapierre*, 94 F. Supp. 2d 519, 524 (D. Vt. 2000) ("*VMHOA*") (emphasis added). For the California tying claim, the Complaint must "allege that either, the party had sufficient *economic power* in the tying market to coerce the purchase of the tied product; or a substantial amount of sale was affected in the tied product." *Nicolosi Distrib., Inc. v. BMW of N. Am.*, No. C 10-03256 SI, 2011 WL 1483424, at *2

### b. Keurig Substantially Foreclosed Competitors from Access to Machinery, Plastic Cups, and Coffee

The Complaint adequately pleads that Keurig entered into exclusive contracts with suppliers of machinery, plastic cups, and coffee to prevent them from making those inputs available for the purpose of producing Competitor Cups:

- *Machinery*. The Complaint pleads that Keurig entered into exclusive supply contracts with manufacturers accounting for 90% of the worldwide supply of machinery used to produce traditionally-designed Keurig Compatible Cups, which restricted competition in the Keurig Compatible Cup Market. ¶¶ 142, 146. The Complaint further pleads additional facts supporting the plausibility of such figures, including recounting TreeHouse's efforts to obtain one such machine from manufacturer R.A. Jones & Co. ¶ 143-45.

- *Plastic Cups*. The Complaint pleads that Keurig entered into exclusive supply contracts with all domestic producers of the plastic cups used in traditionally-designed Keurig Compatible Cups. ¶ 148-49. The Complaint further pleads additional facts supporting the plausibility of such allegations, including that each of these suppliers refused to do business with TreeHouse for the purposes of manufacturing Competitor Cups. ¶ 150.

- *Coffee*. The Complaint pleads that Keurig restricts Cup Competitors from accessing at least 27 brands of coffee, including the top seven brands. ¶¶ 20-22, 153-72.[31] The Complaint further pleads additional facts supporting the plausibility of such allegations, including quoting directly from an agreement with Caribou Coffee Company, Inc. ¶ 157.

Again, instead of addressing the pleadings, Keurig makes numerous factual arguments to distract from the Complaint's well-pled claims. Keurig repeats here its factual "numerator/denominator" argument. Similarly, Keurig argues that its exclusive supply contracts with machinery and plastic cup suppliers are not anticompetitive because *some* Competitor Cups

---

(N.D. Cal. Apr. 19, 2011) (quotation omitted) (emphasis added). The Complaint pleads facts supporting each element of these claims, in some instances from Keurig's own documents. ¶¶ 71-88, 201-06. Keurig does not analyze these allegations under state law. The Complaint satisfies Vermont law by pleading that Keurig has sufficient economic power in the Portion Pack Brewer Market to coerce customers to purchase Keurig K-Cups. ¶¶ 201-206; *VMHOA*, 94 F. Supp. 2d at 524. The Complaint adequately pleads that Keurig has economic power under California law because it alleges that Keurig controls approximately 93% of the Portion Pack Brewer Market (as measured by dollar or 89% as measured by units). ¶ 7; *see Tucker v. Apple Computer, Inc.*, 493 F. Supp. 2d 1090, 1098 (N.D. Cal. 2006) (75% market share sufficient).

[31] Keurig asserts that access to established brands is "not necessary to compete." MTD at 14-15. If that were so, why did Keurig bother to sign up these well-known brands and include terms that prevented these brands from dealing with Cup Competitors? In any event, whether access to brands in the coffee market is essential for success in the Keurig Compatible Cup Market is a factual issue not appropriate on a motion to dismiss.

do not require such inputs. MTD at 12. However, this is just a repackaging of Keurig's fact-driven "numerator/denominator" argument which draws on facts not in the Complaint,[32] which is not appropriate at this stage.

In addition to its factual challenges, Keurig advances a series of arguments that attempt to obfuscate well established antitrust concepts. For instance, Keurig asserts that its high market share in the Keurig Compatible Cup Market accounts for the fact that it purchases a high share of the inputs needed to compete in that market. MTD at 12. But the problem is not that Keurig *purchases* a significant amount of the supply, it is that Keurig *enters into exclusionary agreements* with these suppliers, preventing competitors from accessing that supply. ¶ 24.[33] Similarly, Keurig conflates the geographic *aspect of market definition* (which is relevant to pleading market or monopoly power and which relates to the geographic location of other potential sellers of Keurig Compatible Cups) with the geographic *location* of other machinery suppliers that were viable sources of the machinery needed to compete with Keurig (which is not a "market definition" issue). MTD at 13. These are two distinct analyses, and the cases cited by Keurig deal with *market definition* and notably do not discuss at all "foreclosure" of any markets. *See Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 62-63 (1st Cir. 2002) (discussing district court's jury instruction on market definition); *Commercial Data Servers, Inc. v. IBM*, 166 F. Supp. 2d 891, 897 (S.D.N.Y. 2001) (discussing market definition).[34]

---

[32] Keurig's footnote 15 improperly cites to IPPs' *initial* complaint and the *entire case docket* for *JBR, Inc. v. Keurig Green Mountain, Inc.*, No. 2:14-cv-00677-KJM-CKD (E.D. Cal.). As discussed *supra*, IPPs are the masters of their Complaint, and Keurig may not incorporate such facts, let alone ask the Court to make factual determinations.

[33] Keurig argues that the Complaint alleges only historical percentages in support of foreclosure rather than current figures. MTD at 12. But this ignores IPPs' allegations that actual or potential competitors were barred (and continue to be barred) from accessing these suppliers due to Keurig's illicit exclusive arrangements, and that, with discovery stayed at Keurig's request, only historical information is available.

[34] Contrary to Keurig's assertion, the Complaint does not allege that Keurig did not "sufficiently assist" its competitors. MTD at 13. Rather, the Complaint details how Keurig sought to prevent competition in the Keurig Compatible Cup Market by blocking access to critical inputs, which in turn raised competitors' costs to prevent

Keurig's Motion as to exclusive dealing with suppliers must be denied.

### 4.      The Complaint Adequately Pleads Horizontal Conspiracies Between Keurig and Roaster Competitors

The Complaint alleges horizontal conspiracies between Keurig and Roaster Competitors in sufficient detail, including a verbatim recitation of pertinent sections of an actual anti-competitive horizontal Roaster Agreement. ¶ 157. Without discovery, the Complaint alleges the dates that various agreements were entered into, their duration, and their anticompetitive effects. ¶¶ 157-72. These allegations go far beyond the "labels and conclusions, and a formulaic recitation of a cause of action" deemed insufficient in *Bell AH. Corp. v. Twombly*, 550 U.S. 540, 555 (2007).

The Complaint is a road map of Keurig's anticompetitive agreements with its Roaster Competitors. ¶¶ 19-23; *cf. In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1116 (N.D. Cal. 2012) (complaint detailed the actors, effect, victims, location and timing of six bilateral agreements). The Complaint alleges that the Roaster Competitors conspired with Keurig to maintain its exclusive access to desirable brands, helping it keep Competitor Cups out of the market, and allowing it to extract inflated charges. ¶¶ 19-23, 27, 153-72. The agreements tend to show, through direct or circumstantial evidence, that Keurig and others had a conscious commitment to a common scheme designed to achieve an unlawful objective. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 109 (2d Cir. 2002) (plaintiff must show a combination or concerted action between two entities that constituted an unreasonable restraint of trade).[35] The cases relied upon

---

them from competing on a level playing field, thus enabling Keurig to charge inflated prices for Keurig K-Cups ultimately purchased by IPPs. ¶¶ 24-27, 146, 148-50, 152. *See* J.B. Baker, *Exclusion as a Core Competition Concern*, 78 Antitrust Law Journal, No. 3, at 540 (2013) ("A dominant firm can exclude its rivals by refusing to deal with their suppliers, thereby discouraging the suppliers from dealing with competing firms.").

[35] Keurig further claims that although the Complaint alleges that multiple brands entered into agreements with

by Keurig are inapposite, not involving the level of detail pleaded in the Complaint or taking place post-discovery.[36]

Keurig's roots as a major coffee roaster put it in direct, horizontal competition with other coffee roaster brands, and Keurig's efforts to suggest otherwise are unavailing.[37] The Complaint pleads harm to competition *caused by* the agreements with actual competitors, ¶ 154, making inapposite Keurig's reliance on cases where there was no such harm.[38]

An agreement between two firms, even in a vertical relationship, may be characterized as a horizontal restraint of trade if the agreement seeks to disadvantage the direct competitor of one of the conspiring firms. *See Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207 (1959)

Keurig, there are no allegations which establish more than "conscious parallelism" as required by *Twombly*. MTD at 24. As noted above, there are numerous such allegations in the Complaint. *See, e.g.*, ¶¶ 2-3, 20-23, 26, 153-72; 252-59. Indeed, *Twombly* explicitly holds that allegations of a conspiracy may be sufficient with a specific allegation of a written agreement. *Id.*, 550 U.S. at 557. And, at the pleading stage a plaintiff need only allege enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement. *See Anderson News*, *supra*, 680 F.3d at 184 (quoting *Twombly*). These allegations in the Complaint state a claim against Keurig. It is clearly more than just various business entities acting independently and taking the same action. It is the type of activity that the antitrust laws are designed to prevent. *See Northwest Wholesaler Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 294 (1985) (describing group boycotts as joint efforts by a firm or firms to disadvantage competitors by either denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle).

[36] *See, e.g.*, *Ulrich v. Moody's Corp.*, No. 13-CV-00008 (VSB), 2014 WL 4977562, at *17 (S.D.N.Y. Sept. 30, 2014) (conclusory allegations of an ongoing global conspiracy containing no written agreement and no actual facts, direct or circumstantial, that the defendants had reached an agreement, held insufficient to withstand a motion to dismiss); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) ("something more than evidence of complaints [by other distributors] is needed" to plead conspiracy). Rather than deal with Keurig's written agreements with its competitors, Keurig relies upon inapposite cases. *See, e.g.* *PepsiCo*, 315 F.3d at 110 (decided on summary judgment); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 333 (3d Cir. 2010) (plaintiffs did not allege that the insurers had market); *Wellnx Life Scis.*, 516 F. Supp. 2d at 291 (no horizontal agreement between any two publishers can be inferred).

[37] *See* MTD at 23-24 (relying upon *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006)). Keurig's reliance upon *AT&T Corp.* is misplaced because here, co-conspirators compete with each other and collude in the distribution, whereas in *AT&T Corp.*, the relationship between the co-conspirators was primarily vertical.

[38] *See Generac Corp. v. Caterpillar, Inc.*, 172 F.3d 971(7th Cir. 1999) (manufacturer of generators distributed under licensing agreement with holder of trademark brought action against trademark holder after holder terminated license agreement). In *Elecs. Communications Corp.*, 129 F.3d 240, the court held that it is not a violation of antitrust law, without a showing of adverse effects on competition, for a manufacturer to terminate a distributor like ECC, and appoint an exclusive distributor. *Id.* at 244 (emphasis added). The Second Circuit therefore affirmed the dismissal given that the plaintiff did not show that alleged agreement threatened to harm overall competition in the cellular phone market. *Id.* at 246. Keurig's argument should be rejected because the Complaint pleads harm to competition caused by the agreements with actual competitors.

(agreements between defendant-retailer and manufacturers held horizontal where the intent and effect of these vertical agreements was horizontal). Here, the subject agreements are between firms in direct, horizontal competition. *See Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 131 (2d Cir. 1978). However, as noted above, *even if* they have vertical aspects, the restraint is still horizontal given the "naked restraint of trade with no purpose except stifling competition." *Id.* These are not, as Keurig contends, the type of arrangements that antitrust laws permit or encourage. MTD at 24. Keurig's inapposite authority again misses the mark. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717 (1988) (vertical restraint of trade is not *per se* illegal under § 1 of the Sherman Act unless it includes some agreement of price or price levels); *Electronics Communications Corp*, *supra*, 129 F.3d at 244 (no violation of antitrust law without a showing of adverse effects on competition).

For the same reasons, the Complaint's group boycott and concerted refusal to deal claims are well founded. *See, e.g., Fashion Originators' Guild, Inc. v. Fed. Trade Commission*, 312 U.S. 457, 467 (1941) (group boycott created by an agreement). The restrictive Roaster Agreements alleged in the Complaint constitute refusals to deal with Cup Competitors. ¶¶ 154, 189, 252. Cases cited by Keurig to argue otherwise are not on point. *See Nynex Corp. v. Discon, Inc.*, 525 U.S. 128, 134 (1998) (*per se* rule did not apply to a single buyer's decision to purchase from one supplier rather than from another even when that decision could not be justified in terms of ordinary business practices): *Levitch v. Columbia Broadcasting System, Inc.*, 495 F. Supp. 649, 668 (S.D.N.Y. 1980) (boilerplate allegations of conspiracy to monopolize held insufficient to state a claim). IPPs have therefore adequately pled a group boycott and refusals to deal and the Motion should be denied.

## IV.   CONCLUSION

For the foregoing reasons, IPPs respectfully request that the Court deny Keurig's Motion.

DATED: April 10, 2015
New York, New York

Respectfully Submitted,

/s/ Fred Taylor Isquith
Fred Taylor Isquith
Thomas H. Burt
Michael Liskow
**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
isquith@whafh.com
burt@whafh.com
liskow@whafh.com
*Interim Co-Lead and Liaison Counsel for the
Proposed Classes of Indirect Purchaser Plaintiffs*

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Mario M. Choi
Matthew P. McCahill
Lauren I. Dubick
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
rkaplan@kaplanfox.com
rkilsheimer@kaplanfox.com
garenson@kaplanfox.com
mchoi@kaplanfox.com
mmccahill@kaplanfox.com
ldubick@kaplanfox.com

Bruce L. Simon
Robert G. Retana
Aaron M. Sheanin
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
rretana@pswlaw.com

*Interim Co-Lead Counsel for the Proposed Classes
of Indirect Purchaser Plaintiffs*

Arthur N. Bailey
**ARTHUR N. BAILEY &
ASSOCIATES**
111 West Second Street
Jamestown, New York 14701
Telephone: (716) 664-2967
Facsimile: (716) 664-2983
artlaw@windstream.net

Thomas J. McKenna
**GAINEY McKENNA & EGLESTON**
440 Park Ave. South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
tjmlaw2001@yahoo.com

P. John Brady
Daniel D. Owen
G. Gabriel Zorogastua
**POLSINELLI**
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jbrady@polsinelli.com
dowen@polsinelli.com
gzorogastua@polsinelli.com

Steven A. Hart
Brian H. Eldridge
Elizabeth A. Schieber
Kyle Pozan
**SEGAL McCAMBRIDGE SINGER
& MAHONEY**
233 S. Wacker Drive, Suite 5500
Chicago, IL 60606
Telephone: (312) 645-7800
Facsimile: (312) 645-7711
shart@smsm.com
beldridge@smsm.com
eschieber@smsm.com
kpozan@smsm.com

Patrick M. Ryan
William I. Edlund
Robert H. Bunzel
John F. McLean
**BARTKO, ZANKEL, BUNZEL & MILLER**
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
pryan@bzbm.com
bedlund@bzbm.com
rbunzel@bztm.com
jmclean@bzbm.com

Alyson Oliver
Lisa Gray
**OLIVER LAW GROUP PC**
950 W. University Dr., Suite 200
Rochester, MI 48307
Tel: (248) 327-6566
Fax: (248) 436-3385
notifications@oliverlg.com

Elizabeth C. Pritzker
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel:   (415) 692-0772, Ext. 1001
Dir:   (415) 805-8532
Fax:   (415) 366-6110

Michelle L. Kranz
David W. Zoll
**ZOLL, KRANZ & BORGESS, LLC**
6620 West Central Ave., Suite 100
Toledo, OH 43617
Tel: (419) 841-9623
Fax: (419) 841-9719
michelle@toledolaw.com
david@toledolaw.com

*Additional Counsel for the Proposed Classes of
Indirect Purchaser Plaintiffs*

**IPP Table A**
**IPPs' Claims by State**

| | States in Which State Law Claims Have Been Pled | State Antitrust & Unfair Competition | State Consumer Protection & Unfair Trade Practices | State Common Law Unjust Enrichment |
|---|---|---|---|---|
| 1 | Arizona | X | | X |
| 2 | Arkansas | | X | X |
| 3 | California | X | X | |
| 4 | District of Columbia | X | | X |
| 5 | Iowa | X | | X |
| 6 | Kansas | X | | X |
| 7 | Maine | X | | X |
| 8 | Massachusetts | | X | X |
| 9 | Michigan | X | | X |
| 10 | Minnesota | X | | X |
| 11 | Mississippi | X | | X |
| 12 | Nebraska | X | X | |
| 13 | Nevada | X | | X |
| 14 | New Hampshire | X | | X |
| 15 | New Mexico | X | X | X |
| 16 | New York | X | | X |
| 17 | North Carolina | X | X | |
| 18 | North Dakota | X | | |
| 19 | Oregon | X | | X |
| 20 | South Dakota | X | | X |
| 21 | Tennessee | X | | |
| 22 | Vermont | X | | X |
| 23 | West Virginia | X | | |
| 24 | Wisconsin | X | | X |

## IPP Table B (Response to Keurig Table B)[1]
## States Keurig Argues Expressly Apply the *AGC* Standing Test

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| California | • *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) (applying *AGC* to determine indirect purchaser standing under the Cartwright Act).<br>• *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4743425, at *3 (S.D.N.Y. 2014) (holding that California requires plaintiffs to demonstrate antitrust standing "under a standard analogous to" the *AGC* test).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9-10 (E.D. Mich. 2013) (citing *Vinci* with approval and holding that California applies *AGC* test).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1088-89 (N.D. Cal. 2007) (same). | • *Vinci* is not mandatory authority and is distinguishable. Plaintiff, a shareholder and an employee, lacked standing because he was neither a competitor nor a consumer. *Vinci*, 36 Cal. App. 4th 1815-16. *Vinci* did not involve indirect purchasers, and the court recited the *AGC* factors without engaging in a factor-by-factor analysis. *Vinci* was limited by decision in *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013). *Id.* at 1814-16.<br>• *In re Aluminum Warehousing Antitrust Litig.* is distinguishable, Plaintiffs, end users of aluminum and aluminum products, lacked standing because they were neither competitors nor consumers of defendants (where defendants were not producers of aluminum). *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4277510, at *1 (S.D.N.Y. Aug. 29, 2014) supplemented, No. 13-MD-2481 KBF, 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014) ("*Aluminum Warehousing*").<br>• *DRAM* and *Refrigerant Compressors* are distinguishable. In those cases, indirect purchasers had purchased complex products containing various parts where only one component was the subject of an antitrust conspiracy. *See Refrigerant Compressors*, 2013 WL 1431756, at *2, 11 (Defendants were charged with engaging in a conspiracy to fix the prices of hermetic compressors, and plaintiffs purchased a variety of products containing hermetic compressors, such as refrigerators and freezers.); *DRAM*, 516 F. Supp. 2d at 1092. ("[E]ach product in which | • *In re Pool Products Distribution Mkt. Antitrust Litig.*, 946 F. Supp. 2d 554, 564 (E.D. La. 2013) ("*Pool Products*") "The *AGC* factors apply to standing inquiries under state antitrust laws only to the extent that a state has adopted them. . . In *Clayworth*, the California Supreme Court found that indirect-purchaser[s] . . . had standing to bring suit under the Cartwright Act and the UCL without addressing the *AGC* factors." (stating that *Vinci* "cannot overcome the California Supreme Court's decision . . . to allow suit by indirect purchasers under the Cartwright Act and the UCL without applying the *AGC* factors").<br>• *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013) California Supreme Court held that the Sherman and Clayton Acts do not apply fully to the Cartwright Act. ("Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century."). |

---

[1] The first two columns of this chart contain *verbatim* the defendant's entries from Table B to its brief in support of the motion to dismiss IPPs' Complaint. The third column contains an analysis of Keurig's cited authority, and the fourth column contains citations to authorities that counter Keurig's citations.

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | DRAM is a component, contains numerous other components, all of which *collectively* determine the final price actually paid by plaintiffs for the final product.") (emphasis in original). | |
| District of Columbia | • *Peterson v. Visa U.S.A., Inc.*, 2005 WL 1403761 (D.C. Super. Ct. 2005) (applying *AGC* to determine indirect purchaser standing under the District of Columbia Antitrust Act). <br> • *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9-10 (E.D. Mich. 2013) (citing *Peterson* with approval and holding that the District of Columbia applies *AGC* test). | • *Peterson* did not involve an overcharge on a specific product: "Significantly, plaintiffs fail to identify any specific goods that they purchased, and that were burdened by defendants' overcharges. Instead, they make the broad assertion that they were overcharged on all consumer goods." *Peterson v. Visa U.S.A., Inc.*, No. CIV.A. 03-8080, 2005 WL 1403761, at *1 (D.C. Super. Apr. 22, 2005). Moreover, the plaintiff in *Peterson* was "neither a direct purchaser nor an indirect purchaser of defendants' debit card services. He [was] a non-purchaser of the services." *Id.* at *5. <br> • *Refrigerant Compressors* is distinguishable for the reasons articulated in the California entry, *supra*. | • There is no clear precedent that the District of Columbia applies the *AGC* factors. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *11 n. 12 (N.D. Cal. Oct. 2, 2014) ("*Lithium Ion Batteries*") (noting that *Peterson* is contradicted by *Holder v. Archer Daniels Midland Co.* and *Goda v. Abbott Labs*). <br> • *Holder v. Archer Daniels Midland Co.*, 96-2975, 1998 WL 1469620 at *5 (D.C. Super. Nov. 4, 1998) ("[A] broad application of the District of Columbia's antitrust statute seems particularly important to effectuate the purpose of the statute"). <br> • *Goda v. Abbott Labs.*, CIV. A. 01445-96, 1997 WL 156541 (D.C. Super. Feb. 3, 1997) (certifying class of indirect purchasers over an *Illinois Brick* objection without reference to the *AGC* factors). |
| Iowa | • *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 198 (Iowa 2007) ("[W]e apply the *AGC* factors to determine whether the plaintiffs may recover under Iowa law."). | • *Southard* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. *Southard*, 734 N.W.2d at 199 ("plaintiffs are neither consumers of the defendants' products nor competitors of the defendants. . . . Clearly, the injuries alleged by the plaintiffs are not even indirect, as the plaintiffs are not in the chain of distribution."). | • "Nothing in the Iowa Competition Law or in federal antitrust law requires us to find indirect purchasers may not maintain an antitrust action in Iowa state courts. We conclude our antitrust law contemplates *all* injured consumers are authorized to bring suit to enforce our antitrust laws." *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 451 (Iowa 2002) (Allowing computer purchasers to sue in Iowa as indirect purchasers without reference to the *AGC* factors) (emphasis in original). |
| Kansas | • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094-95 (N.D. Cal. | • *Orr* did not involve indirect purchasers, and it did not cite to *AGC*; rather, it involved claims arising out of termination of plaintiff's at-will | • Numerous courts have refused to apply the *AGC* factors to antitrust claims arising under Kansas law. *See, e.g. Lithium Ion Batteries*, |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|-------|--------------------|--------------------------------|-----------------|
| | 2007) (applying *AGC* factors is "a proper means of determining antitrust standing"). <br> • *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211 (D. Kan. 1999), ("[S]tanding under the Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman and Clayton Acts."), *aff'd*, 4 F. App'x 647 (10th Cir. 2001). <br> • *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9-10 (E.D. Mich. 2013) (citing *DRAM* and *Orr* with approval and holding that Kansas applies *AGC* test). | employment where plaintiff was neither a competitor nor a consumer, making his injury "simply not of the type the antitrust laws were intended to prevent." *See Orr*, 77 F. Supp. 2d at 1212. <br> • *DRAM* and *Refrigerant Compressors* are distinguishable for the reasons articulated in the California entry, *supra*. | 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under Kansas law); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1152 (N.D. Cal. 2009) ("*Flash Memory*") (refusing to apply *AGC* factors in spite of defendants' reliance on *Orr*); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) ("*GPU*") (refusing to apply *AGC* factors and noting that the Kansas antitrust statute does not contain a harmonization clause); *see also Four B. Corp. v. Daicel Chem. Indus., Ltd.*, 253 F. Supp. 2d 1147, 1151-53 (D. Kan. 2003) (Finding antitrust standing under Kansas law for indirect purchasers without applying the *AGC* factors). <br> • Federal "authority is not binding upon any court in Kansas interpreting Kansas antitrust laws." *Bergstrom v. Noah*, 266 Kan. 829, 845 (Kan. 1999). |
| Maine | • *Knowles v. Visa U.S.A., Inc.*, 2004 WL 2475284, at *5 (Me. Super. Ct. 2004) ("It is probable that the Maine Law Court, if presented with this issue, would look to the [*AGC*] factors in determining standing under Maine's antitrust laws and would apply those factors except to the extent that those factors cannot be reconciled with the legislature's adoption of the *Illinois Brick* repealer."). <br> • *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9-10 (E.D. Mich. 2013) (citing *Knowles* with approval and holding that Maine applies *AGC* test). <br> • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 | • *Knowles* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. <br> • *DRAM* and *Refrigerant Compressors* are distinguishable for the reasons articulated in the California entry, *supra*. | • Numerous courts have refused to apply the *AGC* factors to antitrust claims arising under Maine law. *See, e.g., Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under Maine antitrust law); *Flash Memory*, 643 F. Supp. 2d 1133 at 1152 (same); *GPU*, 540 F. Supp. 2d at 1097 (same). |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | F. Supp. 2d  1072, 1094-95 (N.D. Cal. 2007) (same). | | |
| Michigan | • *Stark v. Visa U.S.A., Inc.*, 2004 WL 1879003, at *4 (Mich. Cir. Ct. 2004) ("[T]his Court agrees with Defendants that it does not necessarily  follow that Michigan's repeal of the *Illinois Brick* rule also eliminated the *Associated General Contractors* standing requirements . . . [W]hile Michigan appellate courts  have not developed a test for determining when a plaintiff's injury is too remote to  permit suit under [the Michigan Antitrust Reform Act], the Act requires courts to give 'due deference to interpretations given by the federal courts to comparable antitrust statutes.'") (internal citations omitted).<br>• *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4743425, at *3 (S.D.N.Y. 2014) (citing *Stark* with approval and holding that Michigan applies the *AGC* test).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756,  at *9-10 (E.D. Mich. 2013) (same).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d  1072, 1094-95 (N.D. Cal. 2007) (same). | • *Stark* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. *Stark*, 2004 WL 1879003, at *2 ("Plaintiff is not a consumer or competitor in the allegedly restrained market. Here, in the alleged market, the merchants are the consumers of Visa and MasterCard debit card services; and other debit networks are the competitors of Visa and MasterCard. Thus, there is no connection between Plaintiff's purchases of consumer goods and the Defendants' alleged tying of debit services.").<br>• *Aluminum Warehousing*, *DRAM*, and *Refrigerant Compressors* are distinguishable for the reasons articulated in the California entry, *supra*. | • Numerous courts have refused to apply the *AGC* factors to antitrust claims arising under Michigan law. *See, e.g., Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under Michigan antitrust law); *Flash Memory*, 643 F. Supp. 2d at 1152 (same); *GPU*, 540 F. Supp. 2d at 1097 (N.D. Cal. 2007) (same); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010) ("*CRT*") (same). |
| Nebraska | • *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 298-99 (Neb. 2006) (applying the *AGC* test). | • *Kanne* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. *Kanne*, 723 N.W.2d at 298 ("[a]ppellants do not allege that they were injured directly, or even indirectly, by purchasing debit processing services in a chain of distribution."). | • "To deny the indirect purchaser, who in this case is the ultimate purchaser, the right to seek relief from unlawful conduct would essentially remove the word 'consumer' from the Consumer Protection Act." *Arthur v. Microsoft Corp.*, 267 Neb. 586, 597-98 (Neb. 2004) (Allowing computer purchasers to sue |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | | in Iowa as indirect purchasers without reference to the *AGC* factors).<br>• Courts have routinely declined to dismiss claims at the motion to dismiss stage based on *AGC*. *Flash Memory*, 643 F. Supp. 2d at 1153, 1156 (finding that indirect purchasers adequately pled standing in spite of application of *AGC*); *GPU*, 540 F. Supp. 2d at 1097-99 (same); *Lithium Batteries*, 2014 WL 4955377, at *11-16 (same). |
| New Mexico | • *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 776-81 (N.M. Ct. App. 2012) (applying *AGC* test to New Mexico antitrust claims).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *10 (E.D. Mich. 2013) (same).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (same). | • *Nass-Romero* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. *Nass-Romero*, 279 P.3d at 778-79 ("[p]laintiff's allegations do not show that she was directly harmed by the actions of Visa and MasterCard; nor do they show that she was indirectly harmed through the chain of distribution of the debit card services.").<br>• *DRAM* and *Refrigerant Compressors* are distinguishable for the reasons articulated in the California entry, *supra*. | • Courts have refused to apply *AGC* to claims arising under New Mexico antitrust law. *CRT*, 738 F. Supp. 2d at 1023.<br>• Even if *AGC* were to apply to New Mexico antitrust claims, it is not grounds for dismissal at the pleading stage. *Lithium Ion Batteries*, 2014 WL 4955377, at *11-16. |
| New York | • *Ho v. Visa U.S.A. Inc.*, 2004 WL 1118534, at *2-3 (N.Y. Sup. Ct. 2004) (applying the *AGC* test to determine standing under New York's Donnelly Act), *aff'd* 16 A.D.3d 256 (N.Y. App. Div. 2005).<br>• *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4743425, at *3 & n.4 (S.D.N.Y. 2014) (citing *Ho* with approval and holding that New York applies the *AGC* test).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9-10 (E.D. Mich. 2013) (same). | • *Ho* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. *Ho*, 2004 WL 1118534, at *2 ("[plaintiffs] do not claim to use defendants' credit or debit card services in any way.").<br>• *Aluminum Warehousing* and *Refrigerant Compressors* are distinguishable for the reasons articulated in the California entry, *supra*. | • *Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under New York antitrust and consumer protection laws).<br>• *CRT*, 738 F. Supp. 2d 1011 at 1025-26 (denying motion to dismiss indirect purchaser claims under New York consumer protection law). |
| North Dakota | • *Beckler v. Visa U.S.A., Inc.*, 2004 WL 2115144, at *3 (N.D. Dist. Ct. | • *Beckler* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as | • Courts have refused to apply the *AGC* factors to antitrust claims arising under North Dakota |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | 2004) (referencing *AGC* factors in determining lack of standing for claims by indirect purchasers under North Dakota law).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094-95 (N.D. Cal. 2007) (citing *Beckler* with approval and holding that North  Dakota applies *AGC* test). | both cases are based on the same facts. *Beckler*, 2004 WL 2115144 at, *3 ("[c]learly defendants here are not indirect purchasers in the ordinary sense. They do not allege to have been forced to purchase off line debit cards offered by defendants in addition to-or to the exclusion of-on-line debit cards offered by small competitors.").<br>• *DRAM* is distinguishable for the reasons articulated in the California entry, *supra*. | law. *Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under North Dakota antitrust law); *CRT*, 738 F. Supp. 2d at 1023 (same). |
| Oregon | • *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17  F. Supp. 2d 1175-78 & n.2. (D. Or. 1998) (dismissing both Oregon and federal antitrust claims under *AGC* test) *aff'd*, 185 F.3d 957 (9th Cir. 1999). | • *Oregon Laborers* is distinguishable because plaintiffs. employee health and benefit plans. lacked standing because they were neither competitors nor consumers (indirect purchasers or otherwise). *See Oregon Laborers*, 17 F. Supp. 2d at 1177 ("there is no question that plaintiffs are not participants in the tobacco market."). | • Oregon's state law makes clear that interpretations of federal antitrust law are not binding on the construction of Oregon state antitrust law. and at least one court has refused to apply *AGC* to Oregon state antitrust claims. *See* Or. Rev. Stat. § 646.715 ("The decisions of federal courts in construction of federal law relating to the same subject shall be *persuasive authority* in the construction of" Oregon's antitrust laws. (emphasis added)); *Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under Oregon antitrust law). |
| South Dakota | • Tr. of Mot. Hr'g 54:4-55:1, *Cornelison v. Visa U.S.A., Inc.*, No. Civ. 03-1350 (S.D. Cir. Ct. Sept. 28, 2004)  (applying *AGC* factors and holding that plaintiffs lacked antitrust standing) (*previously attached as* Ex. 2 to Mot. to Dismiss the Consolidated Amended Class Action Compl. Filed by Indirect Purchaser Plaintiffs. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 1:14-md-02542-VSB (S.D.N.Y. Oct. 6, 2014). ECF No. 173-2).,<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 | • *Cornelison* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts.<br>• *DRAM* is distinguishable for the reasons articulated in the California entry, *supra*. | • Numerous courts have refused to apply the *AGC* factors to antitrust claims arising under South Dakota law. *See, e.g.*, *GPU*, 540 F. Supp. 2d at 1097 (refusing to conduct *AGC* analysis under South Dakota law at pleading stage); *Flash Memory*, 643 F. Supp. 2d 1133 at 1152 (same); *CRT*, 738 F. Supp. 2d at 1023 (same). |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | F. Supp. 2d 1072, 1094-95 (N.D. Cal. 2007) (citing *Cornelison* with approval and holding that South Dakota applies *AGC* test). | | |
| Vermont | • *Fucile v. Visa U.S.A., Inc.*, 2004 WL 3030037, at *3 (Vt. Super. 2004) ("Although the Vermont Consumer Fraud Act has broader remedial purposes than federal statutes, the court nevertheless believes that the Vermont Supreme Court would also draw upon the standing factors in *Associated General Contractors* for guidance, at least to the extent that these factors are consistent with allowing 'indirect purchaser' standing."). | • *Fucile* acknowledged that Vermont law allows indirect purchaser suits and noted that "Mr. Fucile is far more remote than the plaintiff in *Elkins* … [who] had actually acquired the product that was allegedly tainted by unfair methods of competition." *Fucile*, 2004 WL 3030037, at *2. *Fucile* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. *Id.* ("Here, Mr. Fucile never actually purchased the tainted financial services, but merely claims damages through the purchase of other products, the price of which may or may not have been affected by the financial services."). | • *Elkins v. Microsoft Corp.*, 817 A.2d 9, 13, 17 (Vt. 2002) (allowing indirect purchasers to sue in Vermont under VCFA without reference to the *AGC* factors and stating "[t]he Legislature clearly intended the VCFA to have as broad a reach as possible in order to best protect consumers against unfair trade practices"). <br> • *Wright v. Honeywell Int'l, Inc.*, 187 Vt. 123, 138 (2009) (acknowledging that indirect consumers may sue for antitrust violations of VCFA and declining to look to federal antitrust cases because "they do not involve actions by indirect (consumer) purchasers") (internal citation omitted). <br> • Numerous courts have refused to apply the *AGC* factors to Vermont state antitrust claims. *See, e.g., Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under Vermont antitrust and consumer protection laws); *CRT*, 738 F. Supp. 2d at 1023 (same). <br> • *D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 500-501 (E.D. Pa. 2006) (rejecting *Fucile* as a basis to apply *AGC*). |
| Wisconsin | • *Strang v. Visa*, 2005 WL 1403769, at *3 (Wis. Cir. Ct. 2005) ("[O]ur appellate courts would look to [the *AGC*] factors for guidance in assessing an indirect or remote purchaser's standing"). <br> • *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9-10 (E.D. Mich. 2013) (citing *Strang* with approval and holding that | • *Strang* is distinguishable for the same reason as *Peterson* (see District of Columbia entry, *supra*) as both cases are based on the same facts. 2005 WL 1403769, at *4 ("Ms. Strang and consumer/purchasers are hardly competitors in the debit card services market. They are also not consumers of debit card services."). <br> • *DRAM* and *Refrigerant Compressors* are distinguishable for the reasons articulated in the California entry, *supra*. | • Numerous courts have refused to apply the *AGC* factors to Wisconsin state antitrust claims. *See, e.g., Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11; *CRT*, 738 F. Supp. 2d at 1023 (same); *Flash Memory*, 643 F. Supp. 2d 1133 at 1152 (same). |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | Wisconsin applies *AGC* test).<br>• *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094-95 (N.D. Cal. 2007) (same). | | |

**States Keurig Claims Have Not Expressly Applied *AGC***
**But Have Provisions Harmonizing State Antitrust Law with Federal Antitrust Law**

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| Arizona | • Ariz. Rev. Stat. Ann. § 44-1412 ("[I]n construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes"). • *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9-10 (E.D. Mich. 2013) (holding that Arizona applies *AGC* test). • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (same). | • Statute is permissive. (keywords: *may* and *guide*). • *DRAM* and *Refrigerant Compressors* are distinguishable for the reasons articulated in the California entry, *supra*. | • Numerous courts have refused to apply the *AGC* factors to antitrust claims arising under Arizona state law. *See, e.g., Bunker's Glass Co. v. Pilkington PLC*, 206 Ariz. 9, 13-14 (2003) (applying Arizona's own test for antitrust standing notwithstanding harmonization statute); *Pool Products*, 946 F. Supp. 2d at 567 (refusing to apply *AGC* factors to claims under Arizona antitrust law); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 38 (D.D.C. 2008) (same); *D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 497-498 (E.D. Pa 2006) (same). |
| Mississippi | • *Owens Corning v. RJ Reynolds Tobacco Co.*, 868 So.2d 331, 343-44 (Miss. 2004) (applying federal antitrust standing law and "remoteness doctrine" to claims under Mississippi's antitrust law). • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (applying *AGC* test to Mississippi antitrust claims) (citing *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So.2d 163 (Miss. 2002)). | • *Owens Corning* is distinguishable because, plaintiff, a former producer of asbestos materials, having been found liable for health related damages in an asbestos case, sought contribution from tobacco companies. Plaintiff alleged that the tobacco companies had somehow engaged in anticompetitive conduct, which increased their liability for the asbestos damages. The court found that plaintiff was neither a competitor nor a customer of the tobacco companies, nor had it alleged antitrust injury. *AGC* was not referenced in connection with the antitrust claims. *See Owens Corning*, 868 So. 2d at 334-35, 339, 343-44. • *DRAM* is distinguishable for the reasons articulated in the California entry, *supra*. *Harrah's* is not an indirect purchaser case, did not involve standing, and never referred to *AGC*. It involved the applicability of the *Noerr-Pennington* doctrine to state antitrust law. | • Numerous courts have refused to apply the *AGC* factors to Mississippi state antitrust claims. *See, e.g., Flash Memory*, 643 F. Supp. 2d at 1152 (refusing to apply *AGC* factors to claims under Mississippi antitrust law); *GPU*, 540 F. Supp. 2d at 1097 (same); *CRT*, 738 F. Supp. 2d at 1023 (same). |
| Nevada | • Nev. Rev. Stat. § 598A.050 ("The provisions of this chapter shall be construed in harmony with prevailing | • *DRAM* is distinguishable for the reasons articulated in the California entry, *supra*. | • Numerous courts have refused to apply the *AGC* factors to antitrust claims arising under Nevada state law. *See, e.g., Flash Memory*, |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | judicial interpretations of the federal antitrust statutes."). <br> • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (applying *AGC* test to Nevada antitrust claims). | | 643 F. Supp. 2d at 1152 (refusing to apply *AGC* factors to claims under Nevada antitrust law); *CRT*, 738 F. Supp. 2d at 1023 (same). <br> • Even if *AGC* were to apply to Nevada antitrust claims, it is not grounds for dismissal at the pleading stage. *Lithium Ion Batteries*, 2014 WL 4955377, at *11-16. |
| New Hampshire | • N.H. Rev. Stat. Ann. § 356:14 ("In any action or prosecution under this chapter, the courts may be guided by interpretations of the United States' antitrust laws."). <br> • *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 785 (D.N.H. 1993) (applying federal antitrust standing requirements to dismiss state antitrust claim "as this promotes the uniform construction of antitrust laws as contemplated by [N.H. Rev. Stat. Ann. § 356:14]"). <br> • *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10 (E.D. Mich. 2013) (applying *AGC* test to New Hampshire antitrust claims). | • Statute is permissive. (keywords: *may* and *guided*). <br> • *Donovan* is distinguishable because plaintiff, an employee, was neither a competitor nor a consumer. ("The antitrust laws were designed to protect competition, not individual employment opportunities and, as such, this not a cognizable antitrust injury.") *Donovan*, 883 F. Supp. at 783. *Donovan* did not involve indirect purchasers. <br> • *Refrigerant Compressors* is distinguishable for the reasons articulated in the California entry, *supra*. | • *LaChance v. US Smokeless Tobacco Co.*, 156 N.H. 88 (2007) (not applying *AGC* factors to claims under New Hampshire Consumer Protection Act). <br> • *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 785 (D.N.H. 1994) (New Hampshire harmonization statute's "language is permissive and, thus, the court is entitled to diverge from federal antitrust law when considering a state antitrust claim"). <br> • *Lithium Ion Batteries*, 2014 WL 4955377, at *8, 11 (refusing to apply *AGC* factors to claims under New Hampshire antitrust and consumer protection laws). <br> • *In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms., Inc.*, 903 F. Supp. 2d 198, 231 (S.D.N.Y. 2012) (New Hampshire legislature intended for indirect purchasers to have standing). |
| West Virginia | • W. Va. Code § 47-18-16 ("This article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes."). <br> • *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10 (E.D. Mich. 2013) (applying *AGC* test to West Virginia antitrust claims). | • Statute provision that it is to be "construed liberally" is not consistent with adoption of *AGC* factors. No "clear directive" to apply *AGC*. <br> • *Refrigerant Compressors* is distinguishable for the reasons articulated in the California entry, *supra*. | • W. Va. Code St. R. 142-9-1.1 ("The purpose of this rule is to allow persons who are indirectly injured by violations of the West Virginia Antitrust Act to maintain an action for damages…"); W. Va. Code St. R. T. 142-9-106 ("Construction. – This rule shall be liberally construed to effectuate the beneficial purposes of the West Virginia Antitrust Act"). <br> • Numerous courts have refused to apply the *AGC* factors to antitrust claims arising under West Virginia state law. *See, e.g., GPU*, 540 |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | | F. Supp. 2d at 1097 (refusing to apply *AGC* factors to claims under West Virginia antitrust law); *CRT*, 738 F. Supp. 2d at 1023 (same).<br>• *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1122-23 (N.D. Cal. 2008) (noting that "Not all such [harmonization] statutes are equivalent in language or in application, and defendants do not argue how much those statutes require in terms of harmonization." The court agreed "that it is inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the repealer states' laws in the absence of a clear directive from those states' legislatures or highest courts.") (internal quotation omitted). |

**IPP Table C (Response to Keurig Table C)[2]**

**States Keurig Argues Have Provisions Harmonizing State Antitrust Laws with Federal Antitrust Law**

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| Arizona | • Ariz. Rev. Stat. Ann. § 44-1412. <br> • *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 985 P.2d 535, 542 (Ariz. Ct. App. 1998) ("[W]e analyze the requirements necessary to prove a violation of section 44-1403 under federal case law interpreting § 2 of the Sherman Act."). | • Statute is permissive: "In construing this article, the courts *may* use as *guide* interpretative given by federal courts to comparable federal antitrust statutes." Ariz. Rev. Stat. Ann. § 44-1412. <br> • *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 985 P.2d 535, 542 (Ariz. Ct. App. 1998) is an intermediate appellate decision that has been superseded by Arizona Supreme Court decision in *Bunker's Glass Co. v. Pilkington PLC*, 75 P. 3d 99 (Ariz. 2003), which held that Arizona's harmonization provision is permissive and not mandatory. | • *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 102-04 (Ariz. 2003): Arizona Supreme Court held that indirect purchasers can sue for anti-trust damage under the Arizona Antitrust Act. "Section 44-1408 has consistently been interpreted as allowing indirect purchaser claims." *Id.* <br> • *D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 497 (E.D. Pa. 2006): "The [*Bunker*'s] Court also reasoned that § 44–1412 renders the use of federal precedent permissive, rather than mandatory, and that, to the extent uniformity is desired, this uniformity extends only to the standard of conduct required, rather than 'procedural matters such as who may bring an action for injuries caused by violations of the standard of conduct.'" <br> • Regardless of the existence of a "harmonization" statute, state does not "require harmony, and merely express a legislative intent for state courts to consult federal precedent as persuasive or guiding authority. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *9-10 (N.D. Cal. Oct. 2, 2014) (denied motion to dismiss) (citing *Bunker's Glass Co. v. Pilkington PLC*, 206 Ariz. 9, 13-14, 17 (Ariz.2003) (applying Arizona's own test for antitrust standing notwithstanding comparable harmonization statute); *Luscher v. Bayer AG*, No. CV 2004–014835, 2005 WL 6959406 (Ariz.Super.Ct. |

[2] The first two columns of this chart contain *verbatim* the defendant's entries from Table C to its brief in support of the motion to dismiss IPPs' Complaint. The third column contains an analysis of Keurig's cited authority, and the fourth column contains citations to authorities that counter Keurig's citations.

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | | Sept. 14, 2005). |
| California | • *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1224-25  (C.D. Cal. 2003) (Cartwright Act analysis "informed by" federal antitrust law).<br>• *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (Cal. Ct. App. 1995) ("Because the Cartwright Act has objectives identical to the federal antitrust acts, the California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act"). | • *Metro-Goldwin-Mayer* dismissed antitrust counterclaims because the counterclaimant "is neither a competitor nor customer in the restrained market, and because its injury is incidental and not integral, to the alleged anticompetitive scheme." 269 F. Supp. 2d at 1221. Here, IPPs are "customers" and their injury, resulting from monopoly pricing on K-Cups, was integral to Keurig's contract.<br>• *Vinci v. Waste Mgmt., Inc.*, is not mandatory authority, and did not involve indirect purchasers. Plaintiff, a shareholder and employee, lacked standing because he was neither a competitor nor a consumer.  The court recited *AGC* factors but did not engage in a factor-by-factor analysis. *Vinci's* holding was limited by decision of California Supreme Court in *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013). | • California's purported "harmonization" statute does not apply to the Cartwright Act, the statute under which the Complaint pleads several antitrust claims.  ¶¶ 306, 316, 318, 325, 455.<br>• The Cartwright Act contains a limited harmonization provision that applies only to section of that Act not in the Complaint; moreover, this harmonization provision "does not require true harmonization; rather, it only states, in pertinent part, that the California Legislature intended the specified code sections to 'be interpreted and applied so as not to conflict with federal law....'" *Lithium Ion Batteries*, 2014 WL 4955377, at *10 (emphasis supplied).<br>• *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013) (*citing State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal.3d 1147, 1164 (1988)). "Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century." *Id.*<br>• *Samsung Electronics Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1205 n.4 (9th Cir. 2014)).  After *Aryeh* it "is no longer the law in California" that the Cartwright Act is "coextensive with the Sherman Act." *Id.* |
| DC | • D.C. Code § 28-4515. | • Statute is permissive, not mandatory: "It is the *intent* of the Council of the District of Columbia that in construing this chapter, a court of competent jurisdiction *may* use as a *guide* interpretations given by federal courts to | • At least one federal court has referred to DC's harmonization statute as "weak" and has noted that the application of the statute has been interpreted differently by three separate DC trial courts and that there are no DC |

14

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | comparable antitrust statutes." D.C. Code § 28-4515 (emphasis added). | appellate opinions on the scope of the statute. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *11, fn. 12 (N.D. Cal. Oct. 2, 2014).<br>• *Goda v. Abbott Labs.*, CIV. A. 01445–96, 1997 WL 156541 (D.C. Super. Feb. 3, 1997) (certifying class of indirect purchasers over an Illinois Brick objection). |
| Iowa | • Iowa Code § 553.2.<br>• *Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 182 (Iowa 2001) ("[O]ur legislature intended the Iowa Competition Law to be construed uniformly with the Sherman Act.").<br>• *Davies v. Genesis Med. Ctr.*, 994 F. Supp. 1078, 1103 (S.D. Iowa 1998). | • The Supreme Court of Iowa held: "We do not find Iowa Code section 553.2 requires Iowa courts to interpret the Iowa Competition Law the same way federal courts have interpreted federal law. In fact, the harmonization statute specifically states the provision 'shall not be made in such a way as to constitute a delegation of state authority to the federal government.'" *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002).<br>• The holding in *Davies* was superseded by the Iowa Supreme Court decision in *Comes*. | • *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002). |
| Kansas | • Kan. Stat. Ann. § 50-163.<br>• *Smith v. Philip Morris Cos., Inc.*, 335 P.3d 644, 652 (Kan. App. 2014) (noting recent amendments to Kansas' antitrust statute requiring that its provisions be "'construed in harmony' with the United States Supreme Court's interpretations of federal antitrust law"). | • Statute specifically provides that it shall not be construed "to prohibit . . . actions or proceedings by indirect purchasers pursuant to K.S.A. 50-161, and amendments thereto. . . ." Kan. Stat. Ann. § 50-163.<br>• *Smith v. Philip Morris Companies, Inc.*, 335 P.3d 644, 652, (Kan. App. 2014) is not mandatory authority and conflicts with Kansas Supreme Court ruling in *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 342-43, 277 P.3d 1062, 1079 (Kan. 2012). | • *O'Brien v. Leegin Creative Leather Products, Inc.*, 277 P.3d 1062, 1079 (Kan. 2012) ("We address the federal antitrust rulings first and briefly: We conclude that they compel nothing. O'Brien is correct in arguing that federal precedents interpreting, construing, and applying federal statutes have little or no precedential weight when the task is interpretation and application of a clear and dissimilar Kansas statute. *See Bergstrom*, 266 Kan. at 845, 974 P.2d 520 (Kansas courts not bound by federal approach in interpreting antitrust laws)").<br>• After *O'Brien*, the legislature enacted a harmonization provision, but it nevertheless expressly excludes harmonization where federal law is dissimilar with Kansas law, including but not limited to, claims by indirect purchasers. Kan. Stat. Ann. § 50-161, and |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | | amendments thereto; Kan. Stat. Ann. § 50-163(d)(2). |
| Maine | • 5 Me. Rev. Stat. § 207.<br>• *McKinnon v. Honeywell Intern., Inc.*, 977 A.2d 420, 426 (Me. 2009) (Maine "looks to" federal antitrust law to construe its antitrust statute.) | • Statute is permissive, not mandatory, and only applies to federal decisions interpreting the Federal Trade Commission Act, and not the Sherman and Clayton Acts: "It is the *intent* of the Legislature that in construing this section the courts will be *guided* by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) of the Federal Trade Commission Act. . . ." 5 Me. Rev. Stat. § 207 (emphasis added).<br>• *McKinnon* does not hold that Maine antitrust law is parallel with federal antitrust law, but only that certain federal antitrust laws can be used by Maine courts for guidance in their interpretation of Maine law: "In analyzing accrual, we look to both state and federal antitrust law for guidance in the interpretation of the Maine antitrust statute, including the accrual of an antitrust claim." *McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 11, 977 A.2d 420, 424 (citations omitted). | • *State v. MaineHealth*, 2011 ME 115, ¶ 13, 31 A.3d 911, 915 (Me. 2011). Supreme Court of Maine held that federal law is merely permissive authority, and rejected arguments based on current federal case law and utilizing overruled federal law that was good law pre-1991 when Maine's antitrust statute was amended.). *Id.* |
| Michigan | • Mich. Comp. Laws § 445.784. | • Statute is permissive, not mandatory: "It is the *intent* of the Legislature that in construing all sections of this act, the courts shall give *due deference* to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason." Mich. Comp. Laws § 445.784. (emphasis added). | |
| Minnesota | • *Howard v. Minn. Timberwolves Basketball Ltd. P'ship*, 636 N.W.2d 551, 556 (Minn. Ct. App. 2001) ("Minnesota antitrust law should be interpreted consistently with federal court interpretations of federal antitrust law unless Minnesota law clearly conflicts."). | • *Howard* is not mandatory authority, and its holding has been limited by the Minnesota Supreme Court's decision in *Lorix v. Crompton Corp.*, 736 N.W. 2d 619, 626-629 (Minn. 2007). | • *Lorix v. Crompton Corp.*, 736 N.W. 2d 619, 626-629 (Minn. 2007). While Minnesota antitrust law is generally interpreted consistently with federal antitrust law, Minnesota is not bound by federal law and Minnesota antitrust's standing law is broader and governs Minnesota antitrust claims. *Id.* (application of federal antitrust standing law |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | | "would contravene the plain language of the statute and in some cases thwart the intent of the legislature by barring indirect purchaser suits for the reasons articulated in *Illinois Brick*."). |
| Mississippi | • *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070 n.5 (5th Cir. 1984) (federal and Mississippi antitrust laws are "analytically identical"). <br> • *Monsanto Co. v. Swann*, 2001 WL 34079480, at *3 (E.D. Mo. 2001) (where plaintiffs fail to state federal antitrust claim, Mississippi antitrust claim must also be dismissed). <br> • *Futurevision Cable Sys. Of Wiggins, Inc. v. Multivision Cale TV Corp.*, 789 F. Supp. 760, 780 (S.D. Miss 1992) (same), *aff'd sub nom. Futurevision Cable v. Multivision*, 986 F.2d 1418 (5th Cir. 1993).. | • *Walker* states only "The parties and the district court have treated the state and federal antitrust claims as analytically identical. We follow suit." *Walker v. U-Haul Co. of Mississippi*, 734 F.2d 1068, 1070 n.5 (5th Cir. 1984) *on reh'g*, 747 F.2d 1011 (5th Cir. 1984). Thus, the court applied federal law because nobody argued to the contrary. <br> • *Monsanto* and *Futurevision Cable*, simply cite *Walker* without analysis. | • There is no harmonization provision in the Mississippi Antitrust Statute. Miss. Code. Ann. §§ 75-21-1 *et. seq.* <br> • There are no Mississippi authorities stating that Mississippi antitrust law is coterminous with federal law. |
| Nebraska | • Neb. Rev. Stat. Ann. § 59-829. | • Keurig fails to cite to the Nebraska Supreme Court's interpretation of that statute as limited in scope. *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004). The Nebraska Supreme Court held: "We do not interpret § 59–829 as a delegation of state authority to the federal government, but, rather, as having the purpose to achieve uniform application of the state and federal laws regarding monopolistic practices." *Id.* | • *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 37-38 (Neb. 2004). Nebraska Supreme Court held that the harmonization statute applies only to ensure that Nebraska courts interpret what conduct constitutes monopolistic practices in harmony with federal decisions on this issue. The court interpreted Nebraska's antitrust statutes as permitting claims by indirect purchasers notwithstanding *Illinois Brick* and notwithstanding that the Nebraska statutes do not include an express repeal of *Illinois Brick*. <br> • *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 174-75 (D. Me. 2004) (recognizing limitations of Nebraska's harmonization statute). |
| Nevada | • Nev. Rev. Stat. Ann. § 598A.050. | • Nevada appears to use federal precedent as a guide for interpreting its antitrust laws. | |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| New Hampshire | • N.H. Rev. Stat. Ann. § 356:14.<br>• *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 836 (N.H. 2002) ("By including RSA 356:14 in the statute, the legislature expressly encouraged a uniform construction with federal antitrust law."). *superseded on other grounds*, N.H. Rev. Stat. § 356:11 (2008) (granting indirect purchaser standing). | • Statute is permissive, not mandatory: "In any action or prosecution under this chapter, the courts *may* be *guided* by interpretations of United States' antitrust laws." N.H. Rev. Stat. Ann. § 356:14. (emphasis added).<br>• *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 836 (N.H. 2002) was superseded on the very grounds for which Keurig cites it, because *Minuteman* applied *Illinois Brick's* holding to an issue of state law, but the legislature in New Hampshire explicitly rejected *Illinois Brick* when it amended its antitrust statute. N.H. Rev. Stat. § 356:11 (granting indirect purchaser standing). | • N.H. Rev. Stat. § 356:4-a (2008) (granting indirect purchaser standing). |
| New Mexico | • N.M. Stat. Ann. § 57-1-15.<br>• *Romero v. Phillip Morris Inc.*, 242 P.3d 280, 291 ("It is therefore the duty of the courts to ensure that New Mexico antitrust law does not deviate substantially from federal interpretations of antitrust law.") | • New Mexico appears to use federal precedent as a guide for interpreting its antitrust laws. | |
| New York | • *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988) ("[T]he Donnelly Act—often called a 'Little Sherman Act'—should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result.").<br>• *S.O. Textiles Co. v. A & E Prods. Grp., a Div. of Carlisle Plastics, Inc.*, 18 F. Supp.2d 232, 244 (E.D.N.Y. 1998) ("In light of the court's dismissal of plaintiff's federal antitrust claims, the Donnelly Act claims should also be dismissed."). | • *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988) recognizing that New York's antitrust laws are broader than federal antitrust laws in a number of ways. New York antitrust law does "not move in lockstep with the Federal courts in our interpretation of antitrust law" and is interpreted differently "where State policy, differences in the statutory language or the legislative history justify such a result." *Id.*<br>• *S.O. Textiles* dismissed the complaint, finding that plaintiff "does not assert any facts whatsoever from which an injury from competition can be inferred. For example, plaintiff has not asserted that the cost to consumers of approved hangers has increased because of [defendant's conduct]." *Id.* at 243. | • *State v. Mobil Oil Corp.*, 344 N.E.2d 357, 359, 362 (1976). ("Undoubtedly the sweep of Donnelly may be broader than that of Sherman…." "Donnelly Act is broader than its Federal counterpart in that it proscribes unlawful 'arrangements' as well as 'contracts', 'conspiracies' and 'combinations'. Thus, it was intended, and in fact has been so interpreted, to be broader in scope and coverage than the Sherman Act."). |
| North Carolina | • *Rose v. Vulcan Materials Co.*, 194 | • *Rose* merely held that "the body of law | • North Carolina statutes do not have a |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | S.E.2d 521, 530 (N.C. 1973) (body of law applying the Sherman Act instructive in determining the reach of North Carolina antitrust statute). • *Crouch v. Crompton Corp.*, 2004 WL 2414027, at *12 (N.C. Super. 2004) ("[T]he General Assembly signaled a clear intent for the state courts to follow federal decisional guidance in interpreting and enforcing state antitrust laws."). | applying the Sherman Act, *although not binding upon this Court* in applying G.S. § 75-1, is nonetheless instructive in determining the full reach of that statute." *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973) (emphasis added). • *Crouch v. Compton Corp.*, 2004 WL 2414027, at *12 (N.C. Super. 2004), has no precedential value since it is a state trial decision. | harmonization provision. • *Hyde v. Abbot Labs.*, 473 S.E.2d 680 (N.C. App. 1996), which is binding unless this Court finds that the North Carolina Supreme Court would reach a contrary conclusion, specifically declined to interpret the state statute consistent with federal antitrust law, and ruled that indirect purchasers may sustain antitrust injury entitling them to treble damages under NC statute. |
| North Dakota | • *Beckler v. Visa U.S.A., Inc.*, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004) (applying federal law to hold that plaintiffs lack standing to bring claims under North Dakota law). • *Westgo. Indus. Inc. v. W.J. King Co.*, 1981 WL 2064, at *6 (D.N.D. 1981) (North Dakota antitrust statute "offers no broader protection" than offered by federal antitrust statutes). | • *Beckler* did not involve indirect purchasers, or an overcharge on any specific product that plaintiffs bought: "Plaintiffs do not claim to have purchased at inflated prices the allegedly 'tied' and overpriced debit card services that defendants provided to merchants, either directly from defendants or indirectly through merchants. Plaintiffs instead claim to have been overcharged on their day-to-day purchases of an enormous variety of consumer goods that defendants neither manufactured nor sold." *Beckler*, 2004 WL 2475100 at *4. • *Westgo. Indus. Inc. v. W.J. King Co.*, 1981 WL 2064, at *6, n.4 (D.N.D. 1981) does not hold that North Dakota law is the same as federal law, because in that case "plaintiff concedes that the evidence necessary to establish violation of the state statute is the same as that necessary to establish violation of the federal statute." | • North Dakota does not have a harmonization statute. • *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 889 (E.D. Pa. 2012) (analyzing antitrust claims state by state). "The North Dakota Antitrust Act contains … broad language: '[a] person threatened with injury or injured in that person's business or property by a violation of this chapter may bring an action for appropriate injunctive or other equitable relief, [and] damages sustained.' N.D. Cent.Code § 51–08.1–08(2). The Act prohibits '[a] contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in a relevant market.' *Id.* § 51–08.1–02. As with the Iowa Competition Law, a cognizable injury does not appear to be restricted to residents' injuries, or injuries experienced due to transactions occurring within North Dakota's borders." *Id.* |
| Oregon | • Or. Rev. Stat. Ann. § 646.715(2). | • Statute is permissive, not mandatory: "The decisions of federal courts in construction of federal law relating to the same subject shall be *persuasive* authority in the construction of [Oregon antitrust laws]." Or. Rev. Stat. Ann. § 646.715(2) | • *Willamette Dental Grp., P.C. v. Oregon Dental Serv. Corp.*, 130 Or. App. 487, 492, 882 P.2d 637, 640 (1994) (emphasis added) ("we look to federal decisions interpreting section 2 of the Sherman Act for persuasive, |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | (emphasis added). | *albeit not binding, guidance."* (emphasis added). |
| South Dakota | • S.D. Codified Laws § 37-1-22.<br>• *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985) ("[B]ecause of the legislative suggestion for interpretation found in SDCL 37-1-22, great weight should be given to the federal cases interpreting the federal statute."). | • Statute is permissive, not mandatory: "It is the intent of the Legislature that in construing this chapter, the courts *may* use as a *guide* interpretations given by the federal or state courts to comparable antitrust statutes." S.D. Codified Laws § 37-1-22. (emphasis added).<br>• *Byre v. City of Chamberlain* held that the statute "*permits* this court to *use* federal and other state court interpretations in our construction of SDCL ch. 37-1, provided those cases are based on similar antitrust statutes." 362 N.W.2d 69, 73 (S.D. 1985) (emphasis added). | |
| Tennessee | • *Tennessee ex rel. Leech v. Levi Strauss & Co.*, 1980 WL 4696, at *2, n.2 (Tenn. Ch. 1980) (federal antitrust law "most persuasive" in interpreting Tennessee antitrust law). | • *Levi Strauss* concerned the application of a statute of limitations under the Tennessee antitrust statute. It did not involve indirect purchaser standing or the *AGC* test. | • Tennessee does not have a harmonization statute.<br>• *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 519 (Tenn. 2005) ("unlike many states that have applied *Illinois Brick Co.* in disallowing indirect purchasers from bringing a private action under their antitrust laws, Tennessee does not have a statutory "harmony clause" mandating courts to interpret the TTPA consistently with federal law.").<br>• *D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 499 (E.D. Pa. 2006) ("This Court predicts that the Supreme Court of Tennessee, based upon the *Freeman* decision, would apply traditional standing requirements rather than the *AGC* analysis to determine whether the injuries suffered by an indirect purchaser are too remote to confer standing under the TTPA"). |
| Vermont | • Vt. Stat Ann. tit. 9, §§ 2453, 2453a, 2461c.<br>• *Green v. Springfield Med. Care Sys. Inc.*, 2014 WL 2875850, at *14 n.8 | • The cited sections only relate to harmonization of Vermont's criminal antitrust law with federal law. Vermont's civil harmonization statute, Section 2453(b), which is applicable in consumer | • *Elkins v. Microsoft Corp.*, 817 A.2d 9 (Vt. 2002), where Vermont Supreme court held "the harmonization provision in § 2453(b) does not apply to the VCFA as a whole but |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | (D. Vt. 2014) (analyzing Sherman Act and Vermont antitrust claims in tandem). | antitrust cases according to the Vermont Supreme Court limits its scope "as to include *only those federal decisions construing the Federal Trade Commission Act*." not cases related to other federal antitrust laws such as the Sherman and the Clayton Acts. *Elkins v. Microsoft Corp.*, 817 A.2d 9, 16 (2002) (emphasis added) (interpreting Vermont's civil harmonization, 9 V.S.A. § 2453(b). to mean that Vermont courts "are guided by federal court decisions construing the Federal Trade Commission Act and not other federal antitrust laws. [*e.g.*, the Sherman and Clayton Acts]") <br>• *Green v. Springfield Med. Care Sys., Inc.*, No. 5:13-CV-168, 2014 WL 2875850, at *14, n. 8 (D. Vt. June 24, 2014), is an appellate court decision, that did not involve the issue of indirect purchaser standing under Vermont antitrust law.  The plaintiff sued for damages under federal and Vermont law based on the allegation that the defendant hospital had conspired with other hospitals to depress the wages of nurse anesthetists in Vermont.  *Green*'s Vermont claims were brought under a specific part of Vermont's VCFA related to retaliation claims (9 V.S.A. § 2453b). not the portion of the statute that relates to indirect purchaser antitrust claims by consumers, which is the subject of IPPs' complaint (*see* Complaint, ¶¶ 225-244 (seeking relief under 9 V.S.A. § 2453(b): 2461(b): 2461c(a); 2465).  Also, the cited *Green* footnote, refers to the criminal harmonization provision (9 V.S.A. § 2453a(c), not the civil harmonization statute (9 V.S.A. § 2453(b)), which applies to Vermont antitrust claims by consumers. | *only to § 2453(a), which sets out the practices prohibited under the Act.  Thus, § 2453(b) is not aimed at defining who can sue under the VCFA, but rather what conduct constitutes a violation of the Act.*  Nowhere in the Act is there any requirement that the definition of who may sue under the Act must be consistent with the definition of who may sue under federal antitrust law, including under the FTCA. This is logical because the Federal Trade Commission Act does not provide for a private cause of action, *see Holloway v. Bristol–Myers Corp.*, 485 F.2d 986, 991 (D.C.Cir.1973), and thus has no bearing on our determination on who can sue under the VCFA."  *Elkins*, 817 A.2d at 17. |
| West Virginia | • W.Va. Code Ann. § 47-18-16.<br>• *Gray v. Marshall County Bd. of Educ.*, 367 S.E.2d 751, 755 (W.Va. 1988) ("[W]e are directed by the | • Statute provision that it is to be "construed liberally" is not consistent with adoption of *AGC* factors.  No "clear directive" to apply *AGC*.<br>• *Gray v. Marshall Cnty. Bd. of Educ.*, 367 S.E.2d | • *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 174-75 (D. Me. 2004). (held that, prior to enactment of an express repealer statute and |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|-------|--------------------|--------------------------------|------------------|
| | legislature to apply the federal decisional law interpreting the Sherman Act to our own parallel anti-trust statute[.]"). | 751, 755 (W. Va. 1988), did not concern the adequacy of a complaint, but whether the plaintiff had proved a conspiracy at trial. It also did not concern antitrust standing, but only whether an entity could conspire with its employees. | notwithstanding a harmonization provision, West Virginia law permits claims by indirect purchasers. ("The harmonization provision [(W.Va. Code Ann. § 47-18-16)] alone is not enough to amount to a direct statement, for harmonization is not as strict as the defendants would like.")<br>• West Virginia Attorney General opinion approving indirect-purchaser claims (W. Va. Code St. R. 142-9-2) that was approved by the West Virginia legislature. (S.243 Reg. Sess., at 1023 (W.Va. 1990) (enacted)); W. Va. Code St. R. § 142-9-2 ("Any person who is injured directly or indirectly by reason of a violation of the West Virginia Antitrust Act, W. Va. Code § 47-18-1, et seq., may bring an action for damages under W. Va. Code § 47-18-9"). |
| Wisconsin | • *Wisconsin v. Waste Mgmt. of Wis., Inc.*, 261 N.W.2d 147, 153 & n.12 (Wis. 1978) ("We have stated many times that the construction of [the Wisconsin antitrust statute] is controlled by federal decisions under the Sherman Act."). | • *State v. Waste Mgmt. of Wisconsin, Inc.*, 261 N.W.2d 147, 152-53 (Wis. 1978), holds that the conduct enumerated to be unlawful in the Wisconsin antitrust statute is merely an "example of conduct prohibited … [but also] the broad variety of anticompetitive practices prohibited by the Sherman Act are illegal under the state act." (citations and footnotes omitted). | • W.S.A. 133.01 provides in part, "It is the intent of the Legislature that this chapter be interpreted in a manner which gives the *most liberal construction to achieve the aim of competition.*" (emphasis added).<br>• *Obstetrical & Gynecological Associates of Neenah, S.C. v. Landig*, 384 N.W.2d 719, 723-24 (Ct. App. 1986): "There is no need to make the direct-indirect distinction under our statute. Section 133.18(1). Stats., explicitly allows any person injured directly or indirectly to sue upon this statute. Similar language is not found in the federal law. See 15 U.S.C.A. § 15 (1973). This, coupled with the legislature's instruction that we give the most liberal construction to achieve the aim of competition, compels us to the conclusion that an ultimate consumer who pays a higher price for goods and services indirectly due to a secret rebate comes within the ambit of the statute. In addition to the clear wording of the statute, we perceive a valid policy reason for |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | | our holding. By encouraging ultimate consumers (tertiary level) to bring lawsuits for violation of this section, the perpetrators will evaluate risk differently. They may decide that it is not worth the risk because of the chance of having to pay treble damages under sec. 133.18(1). OB–GYN, we conclude, has standing." |

**IPP Table D (Response to Keurig Table D)[3]**
**States Keurig Argues Do Not Permit Claims Based On Unilateral Conduct**

| State | Keurig's Authority | Keurig's Authority Distinguished | IPPs' Authority |
|---|---|---|---|
| California | • *Templin v. Times Mirror Cable Television, Inc.*, 56 F.3d 73 (9th Cir. 1995) (California does not recognize unilateral monopolization claims).<br>• *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) (same). | • Keurig's citations are inapposite. The Complaint's California antitrust claim alleges concerted conduct. *See, e.g.*, ¶ 316 ("Keurig has entered into contracts, *in concerted action with others*, where the effect of such contact was to substantially lessen competition or tended to create a monopoly in a line of trade or commerce in California . . . .") (emphasis added). | • Not necessary, as the Complaint does not allege unilateral conduct in their California antitrust claim. |
| Kansas | • Kan. Stat. Ann. § 50-132. | • Keurig's citation is inapposite. The Complaint's Kansas antitrust claim alleges concerted conduct. *See, e.g.*, ¶ 340 ("Keurig entered into a trust, a combination of capital, skill, or acts. by *two or more persons*, for the following purposes . . . .") (emphasis added). | • Not necessary, as the Complaint does not allege unilateral conduct in their Kansas antitrust claim. |
| New York | • *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 90 (2d Cir. 1983) ("The New York courts have interpreted the Donnelly Act to require the existence of a 'reciprocal relationship of commitment between two or more legal or economic entities' before liability may be found.") (quoting *State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 464 (1976)). | • Keurig's citation is inapposite. The Complaint's New York antitrust claim alleges concerted conduct. *See, e.g.*, ¶ 399 ("Keurig entered into a contract, agreement, arrangement, or combination *with at least one other person* whereby . . . .") (emphasis added). | • Not necessary, as the Complaint does not allege unilateral conduct in their New York antitrust claim. |
| Tennessee | • Tenn. Code Ann. § 47-25-101. | • Keurig's citation is inapposite. The Complaint's Tennessee antitrust claim alleges concerted conduct. *See, e.g.*, ¶ 431 ("Keurig has entered into *arrangements, contracts, agreements, trusts, or combinations with persons or corporations* . . . .") (emphasis added). | • Not necessary, as the Complaint does not allege unilateral conduct in their Tennessee antitrust claim. |

---

[3] The first two columns of this chart contain *verbatim* the defendant's entries from Table D to its brief in support of the motion to dismiss IPPs' Complaint. The third column contains an analysis of Keurig's cited authority, and the fourth column contains citations to authorities that counter Keurig's citations.

**IPP Table E (Response to Keurig Table E)[4]**
**States Keurig Argues Require Allegations of Substantial *Intrastate* Effects**
**To State a Claim Under Antitrust Statutes**

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| District of Columbia | • *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 396 (D. Md. 1990) ("[I]t clearly would be unconstitutional under the Commerce Clause to apply the D.C. Code to claims which, though bearing some connection to the District of Columbia, are in fact interstate in nature and are thus regulated by federal antitrust provisions."). | • *Sun Dun* denied a motion to dismiss even though the complaint alleged "few specific references to the District of Columbia itself," and "vague" allegations "in terms of the *situs* of harm." *See Sun Dun*, 740 F.Supp. at 396. <br> • *Sun Dun* never states that the District of Columbia requires "substantial" intrastate effects in order to state a claim under the state antitrust statute. | • The Complaint contains detailed allegations demonstrating the nexus between Keurig's unlawful conduct and the District of Columbia's trade and commerce. *See* ¶ 329. <br> • *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1005 (E.D. Mich. 2014) (referencing the *Sun Dun* decision itself, the court stated: "IPPs have presented authority to establish that their allegation that commerce was impacted in D.C. is sufficient to state a claim. . . . At this stage of the proceedings, the Court is required to draw all inferences in favor of IPPs, and they have alleged substantial impact within the District. Accordingly, the request for dismissal on this ground is denied.") (citations omitted). |
| Mississippi | • *In re Microsoft Corp. Antitrust Litig.*, 2003 WL 22070561, at *2 (D. Md. 2003) (dismissing Mississippi antitrust claims where plaintiffs failed to allege that "at least some conduct by [defendant] was performed wholly intrastate"). | • *Microsoft* stated: "The question thus becomes whether plaintiffs have alleged at least *some* conduct by [defendant] which was performed wholly intrastate." *Microsoft*, 2003 WL 22070561 at *2 (emphasis in original). <br> • *Microsoft* never states that Mississippi requires "substantial" intrastate effects in order to state a claim under the state antitrust statute. | • The Complaint contains allegations of Keurig's significant activity in Mississippi. *See* ¶ 367. <br> • *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1188 (N.D. Cal. 2009) ("The Court agrees with defendants that the Mississippi Antitrust Act requires some allegations of intrastate conduct, but finds that plaintiffs have sufficiently alleged such conduct. . . . Plaintiffs' allegation that defendants' conduct occurred mainly in California is not inconsistent with alleging anticompetitive conduct in Mississippi."). |
| South Dakota | • *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1098-99 (N.D. Cal. | • *DRAM* found insufficient the intrastate allegations, as the plaintiffs there "alleged only that defendants' activities had 'a substantial effect | • The Complaint alleges in detail the requisite activity in South Dakota. ¶ 425. <br> • *In re Chocolate Confectionary Antitrust* |

[4] The first two columns of this chart contain *verbatim* the defendant's entries from Table E to its brief in support of the motion to dismiss IPPs' Complaint. The third column contains an analysis of Keurig's cited authority, and the fourth column contains citations to authorities that counter Keurig's citations.

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | 2007) (dismissing claims under the South Dakota antitrust statute because plaintiffs failed to "specifically allege any conduct or conspiracy that takes place, or has any effect within South Dakota"). | on the foreign and interstate commerce of the United States.'" *DRAM*, 516 F.Supp.2d at 1099 (citation omitted).<br>• *DRAM* never states that South Dakota requires "substantial" intrastate effects in order to state a claim under the state antitrust statute. | *Litig.*, 602 F. Supp. 2d 538, 581 (M.D. Pa. 2009) ("Therefore, a plaintiff must allege only that defendant's conduct produced anticompetitive effects within South Dakota. Here, plaintiffs state a claim under South Dakota law by alleging a national conspiracy that produced increased prices in South Dakota.") (internal citation and footnote omitted); *see also id.* at n.53 (distinguishing *DRAM* because, there, "the plaintiffs alleged merely 'that defendants' activities had 'a substantial effect on the foreign and interstate commerce'' without describing the effects within South Dakota.") (citation omitted). |
| Tennessee | • *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 522-24 (Tenn. 2005) (dismissing claim where plaintiff failed "to establish how the defendant's anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in [the plaintiff] paying higher prices to retailers . . .").<br>• *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662 (6th Cir. 2009) ("In Tennessee, a plaintiff must prove that the defendant entered into an anticompetitive agreement that 'affects Tennessee trade or commerce to a substantial degree.'") (quoting *Freeman Indus.*, 172 S.W.3d at 523).<br>• *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *15 (E.D. Mich. 2013) (dismissing claim where indirect purchaser plaintiffs "have not sufficiently alleged a substantial effect on | • *Freeman Indus.* held that "[t]he determination of whether an effect is substantial does not involve 'mathematical nicety.' Rather, the test is pragmatic, turning on the particular facts of the case." 172 S.W.3d at 523-24 (citations omitted).<br>• *Medison Am.* was not a decision construing the adequacy of a pleading, but involved an appeal from the grant of summary judgment after discovery, and the court found that plaintiff had "produced no evidence" of an effect on Tennessee trade or commerce. 357 F. App'x at 662-63.<br>• *Refrigerant Compressors Antitrust Litig.*, dismissed Tennessee antitrust claim because IPPs there alleged "no state-specific activities or effects." 2013 WL 1431756 at *15. (internal quotation marks and citation omitted). | • *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 166 (E.D. Pa. 2009) ("[T]he plaintiffs allege overcharges on a substantial amount of Wellbutrin XL across the United States, including Tennessee, and the Court will not dismiss the plaintiffs' Tennessee claims at this time for failure to allege the specific extent of any impact on the Tennessee economy.").<br>• The Complaint alleges that "Keurig's unlawful conduct affects Tennessee commerce to a substantial degree by causing Tennessee consumers to pay inflated prices for Keurig K-Cups and Keurig Compatible Cups and has deprived Tennessee consumers of the ability to choose from high-quality, less-expensive alternatives." ¶ 432. The Complaint further alleges significant Tennessee-specific effects of Keurig's unlawful acts. ¶ 432. |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | *intra*state commerce in Tennessee"). | | |
| Wisconsin | • *Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448, 461-63 (Wis. 2007) (To state a claim under the Wisconsin antitrust statute, plaintiffs must allege that challenged conduct "substantially affected the people of Wisconsin and has impacts in [Wisconsin]"). <br>• *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1083-84 (D. Kan. 2009) (holding that plaintiffs' allegations that "defendants shipped 'millions of dollars' of the products into Wisconsin to plaintiffs 'and other consumers in the State of Wisconsin' at artificially high prices" and recitation of *Meyers* "substantially affected" standard "do not satisfy the *Twombly* plausibility pleading standard"). | • *Meyers* held that a plaintiff must allege "effects on Wisconsin, and not merely nationwide effects," but that "plaintiffs need not allege that the challenged conduct disproportionately affected Wisconsin, only that the challenged conduct substantially affected the people of Wisconsin and had impacts in this state." *Meyers*, 735 N.W. 2d at 462-63 (after noting that "price-fixing is a monopolistic practice that, by its very nature, substantially affects the public." *Id.* at 462.) <br>• *Urethane* dismissed the Wisconsin antitrust claim because it offered only "minimal allegations," along with a recitation of the operative "substantial effects" standard. *Urethane*, 663 F.Supp.2d at 1084. | • The Complaint contains detailed allegations demonstrating the substantial effect that Keurig's unlawful conduct has had on Wisconsin commerce. ¶ 445. <br>• *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("[T]he Court finds that the amended complaint contains facts that raise a reasonable expectation that discovery will reveal evidence of a substantial effect on the people of Wisconsin and impact in that state."). |

**IPP Table F (Opposes Keurig Table F)[5]**
**States Keurig Argues Require Allegations of Unconscionable Conduct**
**Or Deceptive Conduct Under Consumer Protection Laws**

| State | Keurig's Authority | Keurig's Authority Distinguished | IPPs' Authority |
|-------|-------------------|----------------------------------|-----------------|
| Arkansas | • Ark. Stat. Ann. § 4-88-107(a).<br>• *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Ca. 2007) (Under Arkansas law, "pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high"). | • The statute prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade . . . ."<br>• *Graphics Processing Units* is inapposite because the Complaint here alleges more than that the "price of a product was unfairly high," and also that *in Arkansas*, Keurig "knowingly entered in anticompetitive conduct" by, for example, entering into tying agreements and group boycotts. ¶ 450. | • The Complaint alleges that Keurig's unlawful conduct "constitutes unconscionable, false, or deceptive acts or practices . . . ." ¶ 452.<br>• *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009) (finding a price fixing claim "cognizable" under the statute, and noting as follows: "'Unconscionable' is not defined, but the Supreme Court of Arkansas has stated that a liberal construction is appropriate.") (*quoting State Ex. Rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289 (1999)). |
| Nebraska | • *Triple 7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004) (dismissing claims asserted under Nebraska's consumer protection act where plaintiff failed to allege "aggravating factors indicating that the act in question is more than a mere breach of contract," such as "unfair practices or actions by defendant that affect the public interest"). | • The *Triple 7* standard is satisfied here, as the Nebraska claim alleges that "Keurig knowingly engaged in anticompetitive conduct," and that the unlawful conduct of Keurig "substantially affect[ed] competition, commerce, and consumers in Nebraska." ¶ 467. | • *Arthur v. Microsoft Corp.*, 267 Neb. 586, 597-98 (2004) recognizes that indirect purchaser antitrust actions under the Nebraska Consumer Protection Act are the types of cases for which the statute was designed, and that such cases involve conduct that affects the public interest. ("The Act was intended to be an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies.") (*citing Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678 (2000)). |
| New Mexico | • N.M. Stat. Ann. § 57-12-2(D)-(E).<br>• *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Ca. 2007) (Under New Mexico law, "pleading unconscionability requires something more than merely alleging that the price of a product was unfairly | • The statute provides that an "unconscionable trade practice" can be an act that "results in gross disparity between the value received by a person and the price paid." Here, the Complaint alleges that Keurig's anticompetitive conduct resulted in a "gross disparity between the value received by consumers and the price paid." ¶ 473.<br>• *Graphics Processing Units* is inapposite for this | • *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 906 n. 39 (E.D. Pa. 2012) (explicitly stating that the language from *Graphics Processing Units* upon which Keurig relies did not speak to New Mexico law); *see also id.* at 906-907 (stating that antitrust claims based on allegations of the "gross disparity between value received and |

---

[5] The first two columns of this chart contain *verbatim* the defendant's entries from Table F to its brief in support of the motion to dismiss IPPs' Complaint. The third column contains an analysis of Keurig's cited authority, and the fourth column contains citations to authorities that counter Keurig's citations.

| State | Keurig's Authority | Keurig's Authority Distinguished | IPPs' Authority |
|---|---|---|---|
| | high"). | point because the court was addressing other states' laws, not the law of New Mexico. *See Graphics Processing Units*. 527 F. Supp. 2d at 1029-1039 (not citing a New Mexico decision). | price paid" can survive a motion to dismiss, and cataloging cases supporting the proposition). |
| North Carolina | • N.C. Gen. Stat. Ann. § 75-1.1.<br>• *Dalton v. Camp*. 548 S.E.2d 704, 711 (N.C. 2001) (To establish a *prima facie* claim under North Carolina law, a plaintiff must show that defendant committed an unfair or deceptive act or practice and "some type of egregious or aggravating circumstance must be alleged"). | • The statute itself does not contain any requirement of "unconscionable conduct" or "egregious or aggravating circumstances." *See* N.C. Gen. Stat. Ann. §§ 75-1, 75-1.1, 75-16.<br>• *Dalton* was not a decision construing the adequacy of a pleading.  It involved a claim by a former employer against an ex-employee who started a business in competition with plaintiff.  In upholding *summary judgment* for defendant, the court found that defendant had not breached any fiduciary duty to plaintiff, and had not tortiously interfered with contracts – that is, he had done nothing unlawful. 548 S.E.2d at 709-10. | • The Complaint satisfies the *Dalton* standard because it alleges that Keurig's conduct was "unconscionable, false, or deceptive," ¶ 479, and contains details of such conduct, referencing, for example, that *in North Carolina* "Keurig knowingly engaged in anticompetitive conduct," and entered into tying agreements and group boycotts. ¶ 476.<br>• *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 867, 910-11 (E.D. Pa. 2012) (citing *Dalton* but yet allowing North Carolina claim to proceed, and noting that "'unfair or deceptive practice' [] defies a precise legal test"). |

## IPP Table G (Response to Keurig Table G)[6]
### States in Which Keurig Argues Plaintiffs Must Allege that They Conferred a Benefit Directly On Defendant in Order to Plead Unjust Enrichment

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| Arizona | • *City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984) (elements of unjust enrichment include "a connection between the enrichment and the impoverishment"). | • *Sierra Vista* never states that there is a "direct" benefit requirement to plead an unjust enrichment claim. Furthermore, the holding is distinguishable, because the court based its ruling on the fact that there was no "impoverishment" *Sierra Vista*, 697 P.2d at 1132. Here, the IPPs are out of pocket the dollars they spent as consumers. ¶ 483(a) (noting the IPPs' "overpayments"). | • *Doe v. Arizona Hosp. & Healthcare Ass'n*, 2009 WL 1423378, at *13 (D. Ariz. Mar. 19, 2009) ("'Arizona law does not require either a direct causal connection between the enrichment and the impoverishment, or the transference of a direct enrichment from the plaintiff to the defendant.'") (*quoting D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F.Supp.2d 485, 507–08 (E.D. Pa. 2006)). |
| District of Columbia | • *Fort Lincoln Civic Ass'n.., Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008) ("Unjust enrichment occurs when [*inter alia*] the plaintiff conferred a benefit on the defendant . . .."). | • *Fort Lincoln* does not state that there is a "direct" benefit requirement to plead an unjust enrichment claim. The unjust enrichment claim was dismissed because that claim was simply a re-statement of a breach of contract claim, not because the plaintiff did not provide a "direct" benefit to the defendant. *Fort Lincoln*, 944 A.2d at 1076 ("This is essentially the same theory behind part of their breach of contract claim."). | • *In re Auto. Parts Antitrust Litig.*, 2014 WL 4793850, at *21 (E.D. Mich. Sept. 25, 2014) rejected an antitrust defendant's reliance upon *Fort Lincoln*. ("[T]he cases [including *Fort Lincoln*] do not stand for the proposition that a plaintiff must allege that he dealt directly with the defendants."). |
| Kansas | • *Babcock v. Carrothers Constr. Co.*, 2005 WL 3527117, at *2-3 (Kan. Ct. App. 2005) (discussing "the general rule that absent privity, plaintiff may not prevail on a claim of unjust enrichment"). <br> • *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 272-73 (10th Cir. 2008) (affirming dismissal of plaintiffs' unjust enrichment claim when plaintiffs failed to allege that they conferred any benefit on parent company). | • *Babcock* does not state that there is a "direct" benefit requirement to plead an unjust enrichment claim. The holding in *Babcock*—that, as a general rule, a plaintiff subcontractor cannot bring an unjust enrichment claim against an owner absent privity between the two—is confined to the construction context. *Babcock*, 2005 WL 3527117 at *2-3. Furthermore, *Babcock* is unpublished. Thus, pursuant to Kansas Supreme Court Rule 7.04(g)(2)(B), the decision is "not favored for citation." <br> • *Spires* is distinguishable because the plaintiffs brought their unjust enrichment claim against the parent corporation, instead of the proper entity – | • *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007) ("Defendants argue that plaintiffs do not state a claim for unjust enrichment because they do not allege that they made a purchase directly from defendants, and therefore do not allege that they conferred a benefit upon defendants. A claim for unjust enrichment under Kansas law, however, does not depend on privity."). <br> • *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 929-930 (E.D. Pa. 2012) (noting that *Spires* is "inapposite," and stating: "In sum, Kansas unjust enrichment law allows claims for the conferral of indirect |

[6] The first two columns of this chart contain *verbatim* the defendant's entries from Table G to its brief in support of the motion to dismiss IPPs' Complaint. The third column contains an analysis of Keurig's cited authority, and the fourth column contains citations to authorities that counter Keurig's citations.

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | the subsidiary. *Spires*, 289 F. App'x at 273 ("Plaintiffs have pointed to nothing in Kansas law that supports an indirect unjust enrichment claim against HCA for payments made to subsidiary hospitals.") (footnote omitted). | benefits. Thus, a failure to plead a 'direct benefit' cannot be appropriate grounds for dismissal, and the Court will not dismiss the Plaintiffs' unjust enrichment claim under Kansas law."). |
| Maine | • *Platz Assocs. v. Finley*, 973A.2d 743, 751(Me. 2009) (plaintiff's entitlement to architectural plans was "not tantamount to *directly* conferring a benefit" upon defendant; plaintiff thus failed to demonstrate "central element of unjust enrichment") (emphasis added). <br> • *Rivers v. Amato*, 2001 WL 1736498, at *4 (Me. Super. 2001) (finding no authority for plaintiffs' "indirect benefit" theory of unjust enrichment). <br> • *In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259, at *3 (N.D. Ill. 2010) (dismissing claim for failure to allege a direct benefit, and noting that "[o]nly the direct purchasers have conferred a direct benefit on defendants"). | • *Platz* involved an appeal from the grant of summary judgment, not a motion construing the adequacy of a complaint. The court found no evidence that the defendant had "actually received and retained the [benefit at issue]." *Platz*, 973 A.2d at 751. Here the Complaint alleges that Keurig was enriched via the benefits of IPP overpayments and resulting profits. ¶ 493(a). <br> • *Rivers* is distinguishable, as there, the plaintiff's theory that he provided an "indirect" benefit to the defendant was "based on speculation." *Rivers*, 2001 WL 1736498 at *4. Here, the Complaint alleges that Keurig was enriched via the benefits of IPP overpayments and resulting profits. ¶ 493(a). | • *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *10-11 (N.D. Cal. Sept. 28, 2011) (distinguishing both *Platz* and *Rivers*, and finding that unjust enrichment claim may proceed under Maine law so long as defendants received a "quantifiable benefit from plaintiffs' purchase of [] products"). <br> • *In re Auto. Parts Antitrust Litig.*, 2014 WL 2999269, at *30 (E.D. Mich. July 3, 2014) (distinguishing *Rivers* and allowing indirect purchasers' unjust enrichment claim to proceed under Maine law); *id.* at *26, 30 (citing *Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259 but yet allowing Maine unjust enrichment claim brought by IPPs to proceed). |
| Massachusetts | • *Sweeney v. DeLuca*, 2006 WL 936688, at *8 (Mass. Super. Ct. 2006) (requiring plaintiffs to allege that they conferred a benefit upon defendant). <br> • *Dickens-Berry v. Greenery Rehab. & Skilled Nursing Ctr.*, 1993 WL 818564, at *3 n.6 (Mass. Super. Ct. 1993) (same). | • *Sweeney* does not state that there is a "direct" benefit requirement to plead an unjust enrichment claim. The key was whether the defendant "stood to benefit" from the at-issue transaction. *Sweeney*, 2006 WL 936688 at *8. Here, even though the IPPs do not directly contract with Keurig, Keurig still "benefited" from IPP purchases. *See, e.g.*, ¶ 495(a) (noting that Keurig "benefited" from "overpayments" and enjoyed the "resulting profits"). <br> • *Dickens-Berry* does not state that there is a "direct" benefit requirement to plead an unjust enrichment claim. That case turned on whether | • *In re Auto. Parts Antitrust Litig.*, 2014 WL 2999269, at *31 (E.D. Mich. July 3, 2014) discusses the minimal elements of an unjust enrichment claim (which do not include a "direct" benefit requirement). ("Under Massachusetts law, unjust enrichment requires the plaintiff to show that the benefit is 'unjust, a quality that turns on the reasonable expectations of the parties.'") (*quoting Salamon v. Terra*, 394 Mass. 857 (1985)). |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | | the defendant retained a "benefit" at all, not on whether the benefit was "direct" versus "indirect." *See Dickens-Berry*, 1993 WL 818564 at *3 (focusing squarely upon whether there was "an uncompensated benefit conferred on [defendant]"). Here, the Complaint plainly discusses the conferring of a "benefit." ¶ 495(a). | |
| Michigan | • *A&M Supply Co. v. Microsoft Corp.*, 2008 WL 540883, at *2 (Mich. Ct. App. 2008) (requiring "direct receipt of [] benefit by defendant"). | • *A&M Supply* is unpublished, and thus is not binding precedent under the doctrine of stare decisis. *See* Mich. Ct. Rule 7.215(C)(1). | • *In re Auto. Parts Antitrust Litig.*, 2014 WL 2993753, at *31 (E.D. Mich. July 3, 2014) (stating that the "direct" benefit discussion in *A&M Supply* was merely dicta, and holding that "Michigan law does not require a benefit to be conferred directly by plaintiff to a defendant.") (*citing* Michigan state and federal court authorities) • *In re Auto. Parts Antitrust Litig.*, 2014 WL 4793848, at *20 (E.D. Mich. Sept. 25, 2014) ("The 'critical inquiry [i]s not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish the relationship between his detriment and the defendant's benefit 'flow from the challenged conduct.''") (*quoting In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d 618, 669 (E.D.Mich. 2000)). |
| Minnesota | • *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001) (requiring plaintiffs allege that they conferred a benefit on defendant). | • *Schumacher* does not state that there is a "direct" benefit requirement to plead an unjust enrichment claim, but only held that: "In order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." 627 N.W.2d at 729. | • *In re Auto. Parts Antitrust Litig.*, 2014 WL 4793848, at *21 (E.D. Mich. Sept. 25, 2014) (stating, in a decision that denied a motion to dismiss an unjust enrichment claim under Minnesota law, that "[h]ere, as indirect purchasers, any benefit conferred by the IPPs was to others in the chain of distribution, not Defendants, and the parties dispute whether the lack of direct contact dooms the unjust enrichment claims. The Court holds that it does not."). |
| Nevada | • *Topaz Mutual Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) ("This | • *Topaz* does not state that there is a "direct" benefit requirement to plead an unjust enrichment | • *Kabins Family LP v. Chain Consortium*, 2010 WL 3001890, at *6 (D. Nev. July 27, |

| State | Keurig's Authority | Analysis of Keurig's Authority | IPPs' Authority |
|---|---|---|---|
| | court has observed that the essential elements of unjust enrichment 'are [*inter alia*] a benefit conferred on the defendant by the plaintiff'"). <br> • *Jack v. Ringleader Boxing Mgmt. Co., LLC*, 2014 WL 6388845, at *2 (D. Nev. 2014) (stating that the Nevada Supreme Court defines unjust enrichment as, *inter alia*, "a benefit conferred on the defendant by the plaintiff"). | claim, but explicitly recognized that an "indirect" benefit can support an unjust enrichment claim. 839 P.2d at 613. <br> • *Jack* does not state that there is a "direct" benefit requirement to an unjust enrichment claim. 2014 WL 6388845, at *2. | 2010) ("An indirect benefit will support an unjust enrichment claim."). |
| New York | • *Carmona v. Spanish Broad. Sys., Inc.*, 2009 WL 890054, at *6 (S.D.N.Y. 2009) (dismissing unjust enrichment claim for lack of allegations of "direct dealings, or an actual, substantive relationship" between plaintiff and defendant). <br> • *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, at *8 (S.D.N.Y. 1997) (same). | • *Carmona* focused on the fact that the only link between the plaintiffs and the defendant was that the plaintiffs listened to the defendant radio station. *See Carmona*, 2009 WL 890054 at *6 ("To suggest for purposes of an unjust enrichment claim that a radio broadcasting company engages in direct dealings or has a substantive relationship with each of its listeners would render the requirement meaningless."). <br> • *Redtail Leasing* focused on the fact that the only link between the plaintiffs and the defendant was that defendants (privy to inside information) purchased their shares of stock during the same time that the plaintiffs sold their shares. *See Redtail Leasing*, 1997 WL 603496 at *8. | • *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40 (N.Y. App. Div. 2004) ("[T]he motion court erroneously dismissed plaintiffs' cause of action for unjust enrichment, holding that, as indirect purchasers of Microsoft's software products, plaintiffs only indirectly bestowed a benefit upon Microsoft. Contrary to such reasoning, plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment."). <br> • *Manufacturers Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 117, (N.Y. App. Div. 1990) ("It does not matter whether the benefit is directly or indirectly conveyed."). |
| Wisconsin | • *Seegers v. Sprague*, 236 N.W.2d 227, 230 (Wis. 1975) (elements of unjust enrichment include "a benefit conferred upon the defendant by the plaintiff"). | • *Seegers* did not turn on the type of benefit conferred (i.e., "direct" or "indirect" benefit) but rather on whether the defendant was even enriched. *Seegers*, 236 N.W.2d at 231 ("Payments by Sprague to Keller to cover his work and the work of his subcontractors has not left Sprague enriched. The absence of payment to Seegers is due to Keller's actions."). Here, the Complaint alleges that Keurig was enriched via IPP's overpayments. ¶ 515. | • *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *13 (N.D. Cal. Sept. 28, 2011) (addressing an unjust enrichment claim under Wisconsin law, and stating as follows: "[T]he Court views the plaintiffs' theory of unjust enrichment as relatively straightforward: defendants' wrongful conduct led them to receive a benefit at plaintiffs' expense. In the absence of state law conclusively precluding such claims, the Court is inclined to let them proceed."). |