**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X
:    No. 1:14-md-02542 (VSB)
IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE   :
COFFEE ANTITRUST LITIGATION   :    **UNDER SEAL**
:
---------------------------------------------------------------------- X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDIRECT PURCHASER PLAINTIFFS' SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I. IPPs Lack Standing To Bring Their Claims Under *AGC* ........................................... 1

    A. 19 Of 22 States Where IPPs Bring Claims Apply Or Would Apply *AGC* ................................................................................................................ 2

    B. IPPs Are Not Efficient Enforcers Of The Antitrust Laws Under *AGC* ................................................................................................................ 3

    C. IPPs Lack Standing To Assert Claims Under The Laws Of States Where No Named Plaintiff Resides Or Was Harmed ................................. 5

II. IPPs Fail To State A Claim Under Both Federal And State Antitrust Law ....................... 6

    A. It Is Appropriate To Use Federal Law Principles To Assess All IPP Claims ................................................................................................................ 6

    B. IPPs' Exclusive Dealing Claims Fail For Lack of Substantial Foreclosure ................................................................................................................ 8

    C. IPPs Cannot Repackage Exclusive Dealing As "Tying" .......................... 10

    D. IPPs' Conspiracy Claims Fail For Lack Of Horizontal Conspiracy ........ 10

    E. IPPs Fail To Allege Monopoly Power In A Relevant Market ................. 11

III. IPPs' Consumer Protection And Unjust Enrichment Claims Fail ................................... 12

CONCLUSION ....................................................................................................................... 12

## **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Apple, Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) ..............................................................................7, 12

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
459 U.S. 519 (1983) .................................................................................................................1, 4

*Avedisian v. Quinnipiac University*,
387 F. App'x 59 (2d Cir. 2010) ..................................................................................................2

*Bergman v. Spruce Peak Realty, LLC*,
847 F. Supp. 2d 653 (D. Vt. 2012) .............................................................................................6

*Business Electronics Corp. v. Sharp Electronics Corp.*,
485 U.S. 717 (1988) ..................................................................................................................10

*Carter v. Variflex, Inc.*,
101 F. Supp. 2d 1261 (C.D. Cal. 2000) ....................................................................................12

*CDC Technologies, Inc. v. Idexx Laboratories, Inc.*,
186 F.3d 74 (2d Cir. 1999) ...................................................................................................... 8-9

*Daniel v. American Board of Emergency Medicine*,
428 F.3d 408 (2d Cir. 2005) .......................................................................................................3

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) .....................................................................................................8

*DSM Desotech v. 3D Systems Corp.*,
749 F.3d 1332 (Fed. Cir. 2014) ................................................................................................11

*E&L Consulting, Inc. v. Doman Industries Ltd.*,
472 F.3d 23 (2d Cir. 2006) .........................................................................................................8

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*,
129 F.3d 240 (2d Cir. 1997) .....................................................................................................10

*Feitelson v. Google Inc.*,
2015 WL 740906 (N.D. Cal. 2015) ..........................................................................................10

*Ford Piano Supply Co. v. Steinway & Sons*,
   1988 WL 3488 (S.D.N.Y. 1988) ............................................................................................. 8-9

*Generac Corp. v. Caterpillar Inc.*,
   172 F.3d 971 (7th Cir. 1999) ................................................................................................. 10

*Hack v. President & Fellows of Yale College*,
   237 F.3d 81 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema
   N.A.*, 534 U.S. 506 (2002) .................................................................................................... 11

*In re Aggrenox Antitrust Litigation*,
   2015 WL 1311352 (D. Conn. 2015) ....................................................................................... 5

*In re Brooklyn Navy Yard Asbestos Litigation*,
   971 F.2d 831 (2d Cir. 1992) ................................................................................................... 2

*In re DDAVP Direct Purchaser Antitrust Litigation*,
   585 F.3d 677 (2d Cir. 2009) ................................................................................................ 3-4

*In re Digital Music Antitrust Litigation*,
   592 F. Supp. 2d 435 (S.D.N.Y. 2008), *vacated and remanded on other grounds sub
   nom. Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010) .......................... 6

*In re Digital Music Antitrust Litigation*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011) ..................................................................................... 5

*In re Dynamic Random Access Memory Antitrust Litigation*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................................................... 1-3

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*,
   1 F. Supp. 3d 34 (E.D.N.Y. 2014) .......................................................................................... 5

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litigation*,
   997 F. Supp. 2d 526 (N.D. Tex. 2014) ................................................................................... 7

*In re Plavix Indirect Purchaser Antitrust Litigation*,
   2011 WL 335034 (S.D. Ohio 2011) ........................................................................................ 7

*In re Refrigerant Compressors Antitrust Litigation*,
   2013 WL 1431756 (E.D. Mich. 2013) ................................................................................. 1-2

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) ............................................................................................. 6

*Insignia Systems, Inc. v. News Corp., Ltd.*,
  2005 WL 2063890 (D. Minn. 2005) ............................................................................... 8-9

*International Brotherhood of Teamsters, Local 734 Health & Welfare Trust Fund v.*
  *Philip Morris Inc.*,
  196 F.3d 818 (7th Cir. 1999) ........................................................................................... 3

*Kamholtz v. Yates County*,
  350 F. App'x 589 (2d Cir. 2009) .................................................................................... 1

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
  359 U.S. 207 (1959) ..................................................................................................... 10

*Kramer v. The Pollock-Krasner Foundation*,
  890 F. Supp. 250 (S.D.N.Y. 1995) ............................................................................... 12

*Leon's Bakery, Inc. v. Grinnell Corp.*,
  990 F.2d 44 (2d Cir. 1993) ............................................................................................. 2

*Lexmark International, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014) ................................................................................................... 3

*Mahon v. Ticor Title Insurance Co.*,
  683 F.3d 59 (2d Cir. 2012) ............................................................................................. 5

*Oreck Corp. v. Whirlpool Corp.*,
  579 F.2d 126 (2d Cir. 1978) ......................................................................................... 11

*Paycom Billing Services, Inc. v. MasterCard International, Inc.*,
  467 F.3d 283 (2d Cir. 2006) ........................................................................................ 3-5

*PepsiCo, Inc. v. Coca-Cola Co.*,
  315 F.3d 101 (2d Cir. 2002) ...................................................................................... 9-10

*PNY Technologies, Inc. v. SanDisk Corp.*,
  2014 WL 1677521 (N.D. Cal. 2014) .............................................................................. 8

*PSI Repair Services, Inc. v. Honeywell, Inc.*,
  104 F.3d 811 (6th Cir. 1997) ........................................................................................ 11

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ......................................................................................... 11

*Sherman v. Ben & Jerry's Franchising, Inc.*,
 2009 WL 2462539 (D. Vt. 2009) ....................................................................................... 6

*Sidibe v. Sutter Health*,
 4 F. Supp. 3d 1160 (N.D. Cal. 2013) ............................................................................... 10

*Simon v. Philip Morris Inc.*,
 124 F. Supp. 2d 46 (E.D.N.Y. 2000) ................................................................................. 6

*Smugglers Notch Homeowners' Association, Inc. v. Smugglers' Notch Management Co.*,
 414 F. App'x 372 (2d Cir. 2011) ..................................................................................... 11

*Tampa Electric Co. v. Nashville Coal Co.*,
 365 U.S. 320 (1961) .......................................................................................................... 9

*Vermont Mobile Home Owners' Association, Inc. v. Lapierre*,
 94 F. Supp. 2d 519 (D. Vt. 2000) ................................................................................ 7, 10

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*,
 516 F. Supp. 2d 270 (S.D.N.Y. 2007) ........................................................................... 8-9

*Woori Bank v. Citigroup Global Markets, Inc.*,
 2014 WL 3844778 (S.D.N.Y. 2014), *vacated and remanded on other grounds*, 2015
 WL 1810835 (2d Cir. 2015) .............................................................................................. 1

*Xerox Corp. v. Media Sciences, Inc.*,
 660 F. Supp. 2d 535 (S.D.N.Y. 2009) ............................................................................. 11

*Yentsch v. Texaco, Inc.*,
 630 F.2d 46 (2d Cir. 1980) .............................................................................................. 10

**State Cases**

*Arthur v. Microsoft Corp.*,
 676 N.W.2d 29 (Neb. 2004) .............................................................................................. 7

*Bunker's Glass Co. v. Pilkington PLC*,
 75 P.3d 99 (Ariz. 2003) ..................................................................................................... 7

*Chavez v. Whirlpool Corp.*,
 93 Cal. App. 4th 363 (2d Dist. 2001) .............................................................................. 12

*Comes v. Microsoft Corp.*,
 646 N.W.2d 440 (Iowa 2002) ........................................................................................... 7

*Elkins v. Microsoft Corp.*,
    817 A.2d 9 (Vt. 2002) ...................................................................................................8

*Gramatan Home Investors Corp. v. Starling*,
    470 A.2d 1157 (Vt. 1983) .............................................................................................6

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007) ......................................................................................7

*Morrisville Lumber Co. v. Okcuoglu*,
    531 A.2d 887 (Vt. 1987) .............................................................................................12

*Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*,
    537 A.2d 994 (Vt. 1987) .............................................................................................12

*Will v. Mill Condominium Owners Association, Inc.*,
    2002 WL 34340312 (Vt. Super. Ct. 2002) .................................................................12

**Other Authorities**

IIIB Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1803(e) (3d ed. 2006) ..................9

## INTRODUCTION

To defeat a motion to dismiss, IPPs must show that they both have standing *and* state a plausible claim for relief. IPPs do neither. IPPs' failure to allege antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), dooms their limited federal claims for injunctive relief, as well as nearly all their state claims. And IPPs' claims all fail on the merits.[1] IPPs' complaint should be dismissed in full, with prejudice.[2]

## ARGUMENT

I. **IPPs Lack Standing To Bring Their Claims Under *AGC***

In determining whether IPPs have standing to bring their claims under *AGC*, courts engage in a two-step inquiry: "1) consider[] whether the states at issue have adopted the *AGC* test; and 2) then apply[] the *AGC* test for those states that have adopted it." *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *9 (E.D. Mich. 2013) ("*Compressors*"); *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1085-96 (N.D. Cal. 2007) ("*DRAM*"). Here, Keurig has shown that the *AGC* test applies in 19 states (including Vermont) and that IPPs fail to satisfy the test. Br. Tables A & B.

---

[1] IPPs' assertion that Keurig "does not challenge" elements of their state law claims, Opp. at 2, 13 n.15, is wrong. As noted in Keurig's opening brief, those claims fail with IPPs' federal claims. Br. at 25-28.

[2] IPPs say they include only a **single quote** from TreeHouse's original complaint. Opp. at 4 n.5. IPPs' complaint tells a different story. *See, e.g.*, Br. at 3 n.4; Preface to SCAC (allegations are based on documents filed in consolidated cases); SCAC ¶¶ 143 ("According to TreeHouse . . . "); 148 (same). IPPs lift entire passages from TreeHouse. *Compare, e.g.*, SCAC ¶ 77, *with* Orig. TH Compl. ¶¶ 48-49; SCAC ¶ 99, *with* Orig. TH Compl. ¶ 90; SCAC ¶¶ 159-65, *with* Orig. TH Compl. ¶¶ 220-25. IPPs try to distinguish *Woori* by arguing the plaintiff in that case "hyperlinked" another complaint, Opp. at 4 n.5, but the *Woori* decision does not mention, much less hinge on, a hyperlink. *Woori Bank v. Citigroup Global Mkts., Inc.*, 2014 WL 3844778, at *2 n.7 (S.D.N.Y. 2014), *vacated and remanded on other grounds*, 2015 WL 1810835 (2d Cir. 2015). Documents "'upon which [plaintiffs] relied in bringing the suit' may be incorporated." *Kamholtz v. Yates Cnty.*, 350 F. App'x 589, 592 (2d Cir. 2009).

1

### A.     <u>19 Of 22 States Where IPPs Bring Claims Apply Or Would Apply *AGC*</u>

In its opening brief, Keurig explained that 19 of the 22 states under whose laws IPPs bring claims would apply the standing analysis set forth in *AGC*. Br. Tables A & B (describing state court precedent applying *AGC* in 12 states, broad harmonization provisions in five states, and persuasive federal precedent for nearly all states). In response, IPPs "have failed to come forward with any contrary authority from the states in question." *See DRAM*, 516 F. Supp. 2d at 1095 (indirect purchasers lack antitrust standing under several states' law on *AGC* grounds).

Rather than provide a single state-court opinion rejecting *AGC* in any of these 19 states, IPPs criticize Keurig's citation to lower state-court opinions. Opp. at 8-9. But "[w]here the [state's] high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts," which carry "great weight in informing the court's prediction on how the highest court of the state would resolve the question." *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir. 1992); *see also, e.g.*, *DRAM*, 516 F. Supp. 2d at 1095 (similar).[3] Similarly, IPPs criticize Keurig's citation to state law harmonization provisions without citing any contrary state law provision. Opp. at 9. But the harmonization provisions are important parts of the relevant states' laws and instruct that the states' antitrust laws "be applied with federal antitrust principles in mind." *DRAM*, 516 F. Supp. 2d at 1095 (applying *AGC* to five states with harmonization provisions); *Compressors*, 2013 WL 1431756, at *10 (similar); Br. Table B. Nor are IPPs correct in claiming that a state's repeal of *Illinois Brick* means the state has rejected *AGC*. Opp. at 1-2, 5-9; *see Compressors*, 2013 WL 1431756, at *10 (rejecting notion that "repealer jurisdictions simply allow all indirect purchaser plaintiff actions to go

---

[3] *See also Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 60 (2d Cir. 2010) (cited by Opp. at 6) (looking to unpublished state trial court opinions to determine an unsettled issue of state law); *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir. 1993) ("A federal court is free to consider all of the resources to which the highest court of the state could look").

forward"); *DRAM*, 516 F. Supp. 2d at 1087 (similar); *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 828 (7th Cir. 1999) (similar). *AGC* thus applies in nearly all of the states whose laws IPPs invoke.[4]

### B. IPPs Are Not Efficient Enforcers Of The Antitrust Laws Under *AGC*

Keurig and IPPs agree on the *AGC* factors. Opp. at 9-10. IPPs, however, ignore the attenuated nature of their alleged injury and seek to sidestep *Paycom Billing Services, Inc. v. MasterCard International, Inc.*, 467 F.3d 283 (2d Cir. 2006), in which the purchaser plaintiff lacked standing because, as here, its injury was derivative of alleged harm to competitors. Br. at 5-9. IPPs fail on each *AGC* factor.

***Less Remote Alternative Enforcers.*** IPPs cite *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677 (2d Cir. 2009) ("*DDAVP*"), in arguing that both competitors and purchasers can have antitrust standing. Opp. at 11.[5] But, in *DDAVP*, competitors had not brought suit, and the Second Circuit was concerned that generic drug competitors might never be sufficiently motivated to file suit due to market and legal realities unique to the pharmaceutical industry. *See* 585 F.3d at 691 ("[R]elying on generic competitors to lead the antitrust charge may ask too much of them."). Here, not only do competitors have the incentive and resources to file suit, **they actually did so prior to IPPs filing suit**. *AGC* analysis "will necessarily vary with the circumstances" of each case, and the facts alleged here show IPPs lack standing. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 443 (2d Cir. 2005).

***Directness***. Notwithstanding IPPs' protests to the contrary, Opp. at 10-11, IPPs'

---

[4] For **all** states where IPPs bring claims, IPPs also lack standing because they do not plausibly allege proximate causation. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390-92 (2014) (courts "generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute."). IPPs do not satisfy this requirement.

[5] In *DDAVP*, buyers of a patented prescription drug sought to bring a *Walker Process* claim against the brand-name drug manufacturer based on alleged fraud in obtaining its patent, which excluded generic competitors altogether. *Id*. at 682-84.

allegations demonstrate that their alleged injury flows only from injuries purportedly suffered by Keurig's competitors. IPPs allege that Keurig "raised competitors' costs to prevent them from competing on a level playing field, thus enabling Keurig to charge inflated prices for Keurig K-Cups." Opp. at 27-28 n.34. The facts here are analogous to those in *Paycom*, where "any injury suffered by [defendant's customer] Paycom was indirect and flowed from the injuries suffered by [defendant's competitors] Discover and American Express." 467 F.3d at 293.[6]

In *DDAVP*, the defendant's commission of fraud on the patent office kept competitors out of the market entirely, which had a direct effect on prices. 585 F.3d at 690. By contrast, IPPs do not allege competitors were excluded entirely but, rather, that Keurig's competitors incurred higher costs because they had to work with suppliers and distributors that lacked "experience." Br. at 6-7 & n.9. Thus, in order to satisfy IPPs' demand that this Court assess what "competitor sales[] would have looked like but for the [exclusivity] restraints," Opp. at 23 n.26, this Court would need to: (1) analyze the effect of alleged foreclosure on competitors' costs; (2) assess any effect on competitors' pricing; (3) measure the impact of competitors' pricing on Keurig's pricing; and (4) determine any overcharges passed on by direct purchasers to IPPs. Br. at 7. This exercise—unlike the analysis in *DDAVP*—involves exactly the sort of "several somewhat vaguely defined links" in the chain of causation that defeat standing. *See AGC*, 459 U.S. at 540.

***Speculative Nature of Injury & Difficulty of Apportionment***. The injury purportedly suffered by IPPs flows from the speculation that an increase in competitors' fixed costs somehow led to higher K-Cup pack ("K-Cup") prices. *See* Opp. at 27 n.34. But IPPs do not dispute that

---

[6] IPPs' argument that Paycom's injury was "more attenuated and speculative" than IPPs' theory in this case, Opp. at 12 n.14, is wrong. Paycom argued that MasterCard's conduct "reduc[ed] the number of payment options available to Paycom" and prevented Discover and American Express from "disciplin[ing] MasterCard through competition." 467 F.3d at 288. IPPs here likewise allege that Keurig's conduct "limit[s] consumer choice" and prevents competitors from "compet[ing] more effectively with Keurig," leaving Keurig free to charge allegedly "supracompetitive prices for Keurig K-Cups" and "restrict[] output." SCAC ¶¶ 17, 32, 34.

4

fixed costs do not affect pricing. *See* Br. at 7. Moreover, as in *Paycom*, apportioning damages between competitors that "suffered direct injuries" and purchasers who "might have been indirectly harmed" would be "virtually impossible" and presents a "very large" probability of duplicative recovery. *See* 467 F.3d at 294. Nor do IPPs plausibly allege they could establish that any potential overcharge was actually passed on to them, as they must. Br. at 8-9. IPPs simply reiterate their conclusory assertions of pass-on. Opp. at 12-13.

      **C.**      **IPPs Lack Standing To Assert Claims Under The Laws Of States Where No Named Plaintiff Resides Or Was Harmed**

IPPs argue that they may bring claims on behalf of plaintiffs nationwide notwithstanding that no named plaintiff resides or claims to have been injured in seven of the states under whose laws they bring claims. Opp. at 18. But the Second Circuit recently rejected the "approach that analyzes class certification before Article III standing and treats the class as the relevant legal entity." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). Instead, the Second Circuit held that "**with respect to each asserted claim**, a plaintiff must always have suffered a distinct and palpable injury to herself." *Id.* (emphasis added). IPPs entirely—and unwisely—ignore *Mahon*.[7] As a district court in this Circuit held in March 2015, after Keurig filed its opening brief, the logic of *Mahon* requires the dismissal of indirect purchaser claims brought under the laws of states where no named plaintiff claims to have suffered injury. *In re Aggrenox Antitrust Litig.*, 2015 WL 1311352, at *18-20 (D. Conn. 2015); *see also In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) ("Article III standing is a threshold issue" without which "a court has no subject matter jurisdiction" to hear the claim, and thus is "generally a prerequisite to class certification") (citing, *inter alia*, *Mahon*).

---

[7] IPPs instead offer two district court cases. Opp. at 18 n.21. One pre-dates *Mahon*, *see In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011), and the other was fully briefed before *Mahon* was decided and does not address *Mahon*, *see* Dkt. 110, *In re DDAVP Indirect Purchaser Antitrust Litig.*, No. 05–CV–2237 (S.D.N.Y. 2011).

5

As for IPPs' distraction that "nationwide" consumers can bring Vermont claims, Opp. at 4-5, this is irrelevant because IPPs must first actually state a claim under Vermont law, which they fail to do. Br. at 25-28; *id.* Table C. In any event, nationwide consumers cannot recover under Vermont law. *See Sherman v. Ben & Jerry's Franchising, Inc.*, 2009 WL 2462539, at *9 (D. Vt. 2009) (out-of-state franchisees had no standing to bring Vermont law claim against Vermont franchisor); *see also In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276-78 (D. Mass. 2004) (rejecting nationwide application of single state's law based on location of defendant's headquarters).[8]

## II. IPPs Fail To State A Claim Under Both Federal And State Antitrust Law

### A. It Is Appropriate To Use Federal Law Principles To Assess All IPP Claims

Keurig does not seek to "impose federal law on all the states." Opp. at 2. Instead, Keurig highlights that **the states themselves** consult substantive federal antitrust law in analyzing state law claims. As Keurig explained in its opening brief, courts or legislatures in each of the states under whose laws IPPs bring antitrust claims have chosen to follow federal antitrust law as controlling or persuasive authority. *See* Br. Table C (collecting authority). As Chief Judge Preska noted in addressing claims under 16 of the 22 states at issue here (including Vermont), even in the absence of a statutory mandate, state courts "overwhelmingly look to federal antitrust decisions" to interpret state law. *In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 447-48 & n.20-21 (S.D.N.Y. 2008), *vacated and remanded on other grounds sub nom. Starr v. Sony*

---

[8] No case cited by IPPs, Opp. at 5 & n.7, supports their reading. *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012), held that non-resident owners of real property in Vermont could bring Vermont claims. That is manifestly different from what IPPs propose here—applying Vermont law to every indirect purchase of a K-Cup nationwide. SCAC ¶ 211. IPPs' other cases either do not concern Vermont law, *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 72 (E.D.N.Y. 2000), or do not concern nationwide application, *Gramatan Home Investors Corp. v. Starling*, 470 A.2d 1157, 1162 (Vt. 1983).

*BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010).[9]

IPPs offer no alternative standard, nor do they otherwise explain why their state antitrust claims would survive if parallel federal claims for injunctive relief fail. Indeed, none of the cases cited by IPPs, Opp. Table C, found a difference between substantive federal and state antitrust law on the causes of action presented here. *See, e.g.*, *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1203 (N.D. Cal. 2008) (dismissing both federal and state antitrust claims where the plaintiff asserted that the standards under the state statute were "not necessarily contemporaneous" with those under federal law, but "point[ed] to no relevant distinction between the standards"). Rather than rebut Keurig's argument, IPPs' authority confirms that states often look to federal antitrust law for guidance.[10] Indeed, IPPs' own substantive analysis revolves around federal law. Opp. at 18-30. And even the state law IPPs cite highlights the substantive harmonization between state and federal law. *Vermont Mobile Home Owners' Ass'n, Inc. v. Lapierre* ("*VMHOA*"), Opp. at 25-26 n.30, held that Vermont antitrust law "provid[es] the same protections" as the Sherman Act and resolved the state and federal claims with a single analysis. 94 F. Supp. 2d 519, 523 (D. Vt. 2000).[11]

---

[9] *See also, e.g.*, *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 544 (N.D. Tex. 2014) (dismissing claims in all 22 states at issue here where plaintiffs failed to state a federal claim); *id.*, Dkt. No. 12-3515, ECF No. 85 (consolidated amended complaint listing state claims); *In re Plavix Indirect Purchaser Antitrust Litig.*, 2011 WL 335034, at *5 (S.D. Ohio 2011) (dismissing all state claims, including claims in Vermont and 20 other states at issue here, because "Plaintiffs fail to state a claim under the Sherman Act, and . . . the state antitrust claims are based on the same allegations").

[10] For instance, the cases **cited by IPPs** in Table C for Arizona, Iowa, Minnesota, and Nebraska explicitly confirm those states' harmonization with **substantive** federal antitrust law. *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002) (harmonization provision "designed to achieve uniform application of the state and federal laws"); *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 106 (Ariz. 2003) ("[T]he goal of the Uniform Act appears to be uniformity in the standard of conduct required."); *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626 (Minn. 2007) ("Minnesota antitrust law is generally interpreted consistently with federal antitrust law."); *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004) ("Harmonizing state law with federal law . . . will achieve uniformity and predictability."). IPPs' Table C mistakenly conflates (a) adherence to *Illinois Brick* with (b) harmonization with substantive federal law.

[11] IPPs cite a Vermont opinion granting indirect purchasers standing to sue under state law. Opp. Table C (citing *Elkins v. Microsoft Corp.*, 817 A.2d 9, 17 (Vt. 2002)). But as *Elkins* makes clear, Vermont law

7

### B. IPPs' Exclusive Dealing Claims Fail For Lack of Substantial Foreclosure

The thrust of IPPs' exclusive dealing argument is that substantial foreclosure cannot be assessed on a motion to dismiss.[12] This is wrong. Courts frequently dismiss claims for the failure to allege substantial foreclosure. *See, e.g.*, *E&L Consulting, Inc. v. Doman Indus. Ltd.*, 472 F.3d 23, 29-30 (2d Cir. 2006); *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270, 295 (S.D.N.Y. 2007); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 208-09 (4th Cir. 2002); *Insignia Sys., Inc. v. News Corp., Ltd.*, 2005 WL 2063890, at *3 (D. Minn. 2005); *Ford Piano Supply Co. v. Steinway & Sons*, 1988 WL 3488, at *1-2 (S.D.N.Y. 1988). "Foreclosure is a legal conclusion," and IPPs have failed "to provide the facts supporting it." *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *6 (N.D. Cal. 2014).

IPPs also assert that they are not required to plead a "denominator." Opp. at 24, 26. But assessing whether foreclosure is "substantial" inherently requires considering a universe of potential alternatives and examining which are allegedly foreclosed and which are not. *See, e.g.*, *Wellnx*, 516 F. Supp. 2d at 295 n.8 (dismissing claims where "complaint contain[ed] no facts relating to the [allegedly foreclosed] distributors' shares of the consumer market" and thus offered "no allegations from which significant foreclosure could be reasonably inferred"). Here, IPPs' allegations do not address alternative suppliers or channels of distribution (beyond alleging that competitors use them), and thus IPPs have failed to plead substantial foreclosure.[13]

***Outlets.*** IPPs do not dispute that competitors are able to reach end customers. This is fatal to their claims. In the Second Circuit, exclusive dealing claims based on "outlet

---

has a harmonization provision such that "the practices prohibited" are consistent with federal law. *Id.* ("The purpose behind both state and federal antitrust law is to apply a uniform standard of conduct so that businesses will know what is acceptable conduct and what is not acceptable conduct.") (citation omitted).

[12] Contrary to IPPs' assertion, Opp. at 22, substantial foreclosure is required for all exclusive dealing claims. *See, e.g.*, Br. at 11 & n.13; *CDC Techs., Inc. v. Idexx Labs., Inc.*, 186 F.3d 74, 79 (2d Cir. 1999).

[13] Competitors' growth also demonstrates a lack of substantial foreclosure. *See* Br. at 11.

8

foreclosure" fail if competitors can use alternative channels to reach consumers in the relevant market. *CDC Techs.*, 186 F.3d at 80.[14] Rather than show foreclosure, IPPs allege Keurig has several exclusive agreements with "retailers and distributors" and ask the Court to infer a substantial effect. Opp. at 24.[15] But IPPs allege facts **in their complaint** that defeat an inference of substantial foreclosure as a matter of law. IPPs concede that consumers purchase competitors' portion packs through multiple channels. *See* Br. at 15-16; *Insignia*, 2005 WL 2063890, at *3 (dismissing despite allegation that 35,000 retail outlets were "foreclosed").

***Inputs.*** IPPs do not argue that competitors are foreclosed from accessing inputs generally, only that they are foreclosed from accessing inputs made by Keurig's suppliers. Opp. at 27 & n.33.[16] But courts dismiss exclusive dealing claims that do not consider available alternatives. *See, e.g.*, *Wellnx*, 516 F. Supp. 2d at 295 n.8; *Ford Piano*, 1988 WL 3488, at *1-2.[17] And, as to licensing coffee brands, IPPs do not plausibly allege that brand licenses are needed to compete.[18] Moreover, exclusive trademark licenses are procompetitive and output-expanding.[19]

---

[14] IPPs claim to have alleged "competitors are being driven out of business," but the SCAC contains no such allegations. Opp. at 23 n.26 (citing SCAC ¶¶ 10, 115, alleging small increases in Keurig's share).

[15] Contrary to IPPs' assertion, Opp. at 22 n.25, exclusive agreements with distributors are "presumptively legal." *E.g.*, *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 103, 110-11 (2d Cir. 2002) (agreements that prevented distributors from carrying competing products "presumptively legal").

[16] IPPs say their exclusivity allegations only concern machinery and cups used in "traditionally-designed Keurig Compatible Cups." Opp. at 26. But IPPs do not allege a market for "traditionally-designed Keurig Compatible Cups," and foreclosure must be assessed with respect to a relevant market. Br. at 12; *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) ("foreclosure of competition must be in relation to the market affected."); *Ford Piano*, 1988 WL 3488, at *1-2 (same). For the same reason, IPPs' assertion that they do not need plausible allegations related to a relevant geographic market for each input also fails. *See* Opp. at 27.

[17] IPPs claim that Keurig's contracts "raised competitors' costs," Opp. at 27 n.34, but the costs at issue, such as training suppliers, are not costs that competitors are entitled to avoid. Br. at 13 (collecting cases).

[18] IPPs cannot dispute that trademark licenses are not "critical" to compete as competitors in fact develop their own brands and/or compete through private labels. *See* Br. at 14-15; Opp. at 26 n.31.

[19] *See* IIIB Phillip E. Areeda, *Antitrust Law* ¶ 1803(e) (3d ed. 2006) ("[E]xclusive-supply contracts licensing trademarks are generally lawful because they further the trademark law purposes of relating the mark to the origin of the goods, reducing consumer confusion, and guaranteeing the quality image that the trademark owner has acquired.").

### C. IPPs Cannot Repackage Exclusive Dealing As "Tying"

IPPs' tying claims challenge the same conduct as their exclusive dealing claims and fail for the same reasons. Br. at 17. Restyling the claim under Vermont or California law, Opp. at 25 n.30, fails because **any** tying claim requires allegations of "actual foreclosure of competition." *See Yentsch v. Texaco, Inc.*, 630 F.2d 46, 58 (2d Cir. 1980); *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178-79, 1181 (N.D. Cal. 2013) (dismissing Cartwright Act tying claim and derivative UCL claim for failure to allege impact on competition in tied market);[20] *VMHOA*, 94 F. Supp. 2d at 523 (analyzing Vermont and federal tying claims together under *Yentsch* framework).[21]

### D. IPPs' Conspiracy Claims Fail For Lack Of Horizontal Conspiracy

IPPs argue that Keurig's individual agreements with brands are horizontal. But "licensing and manufacturing agreements," SCAC ¶ 20, are inherently vertical. Br. at 23-24. IPPs argue that the cases Keurig cites do not involve harm to competition. Opp. at 29 & n.38. But the character of agreements is what makes them vertical or horizontal. *See Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243-44 (2d Cir. 1997); *Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 977 (7th Cir. 1999).[22]

IPPs' cite to *Klor's* is also unavailing. There, agreements among competing appliance manufacturers ("spokes") governing their relationships with a retailer (the "hub") were undisputed. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 734 (1988) (noting that *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207 (1959), involved horizontal agreements among "spokes"); *see also PepsiCo*, 315 F.3d at 110 (hundreds of similar vertical agreements

---

[20] *See also Feitelson v. Google Inc.*, 2015 WL 740906, at *11 (N.D. Cal. 2015) (California UCL claim "rises and falls" with Sherman Act claims) (citing *City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 691-92 (9th Cir. 2015)).

[21] IPPs also fail to allege economic power in any brewer "tying" "market." *See* Br. at 18-19.

[22] IPPs do not even attempt to argue that these pro-competitive, output-expanding agreements are unlawful vertical agreements. *See* Br. at 24-25.

10

with a "hub" were not a conspiracy without an agreement among "spokes").[23] Here, IPPs do not even assert, much less offer plausible allegations to support, an agreement among coffee brands, *e.g.*, an agreement between Cinnabon and Wolfgang Puck.[24]

### E. IPPs Fail To Allege Monopoly Power In A Relevant Market

IPPs argue that the *Xerox III* test for aftermarket monopoly power should not apply to their Compatible Cups "market" because IPPs allege that Keurig has high market shares in the Portion Pack Brewer "market." Opp. at 20; *cf. Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535, 547 (S.D.N.Y. 2009) ("*Xerox III*"). But IPPs offer no case declining to apply an aftermarket analysis due to high share in the primary market.[25] *Xerox III* applies, and IPPs do not even claim to meet its requirements. Br. at 20-22.[26] Nor do IPPs allege monopoly power in a Portion Pack Brewer primary market. Keurig's at or below cost brewer pricing shows that it competes to win coffee drinkers to its system rather than alternatives. Br. at 18-19.[27] IPPs'

---

[23] Any assertion of a "hub and spoke" conspiracy would be wholly implausible. Br. at 24. IPPs' attempt to distinguish *Twombly* on the basis that the agreements here were "written" is misguided—the only written agreements alleged are **vertical**. There is no allegation of a written contract **among coffee brands**.

[24] Nor do IPPs state a "boycott" or "concerted refusal to deal" claim, both of which require a horizontal agreement. Br. at 25 n.29. IPPs cite *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 131 (2d Cir. 1978), Opp. at 30, but even this case held that an alleged agreement between a manufacturer and dealer is "an exclusive distributorship" and that "the 'group boycott' doctrine, is, therefore, not applicable." *Id.*

[25] Instead, courts have found no monopoly power in an aftermarket without **any** reference to foremarket share. *See, e.g., DSM Desotech v. 3D Sys. Corp.*, 749 F.3d 1332, 1346-47 (Fed. Cir. 2014); *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997).

[26] IPPs argue *Xerox III* does not apply at the pleading stage. Opp. at 20. But courts frequently dismiss claims where plaintiffs fail to plead aftermarket power. *See Smugglers Notch Homeowners' Ass'n v. Smugglers' Notch Mgmt. Co.*, 414 F. App'x 372, 377 (2d Cir. 2011); *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 86 (2d Cir. 2000); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437-41 (3d Cir. 1997).

[27] IPPs point to a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 20 n.23. This speculation is undermined by IPPs' allegation that Keurig prices brewers at or below cost. Orig. TH Compl. ¶ 15. Moreover, IPPs' allegations show that in the last decade Keurig has **dropped** its brewer price substantially. *Compare* SCAC ¶ 79 ▇▇▇▇▇▇▇▇▇▇▇ *with id.* ¶ 80 (current prices $89.95 to $249.95).

11

failure to plead monopoly power in a relevant product market is fatal to all of IPPs' claims.[28]

### III. IPPs' Consumer Protection And Unjust Enrichment Claims Fail

IPPs' consumer protection claims fail with their antitrust claims. IPPs do not deny that they have alleged harm only through "anticompetitive conduct." *See* Opp. at 16 n.19; *id.* Table F; SCAC ¶¶ 450-76.[29] Nor do IPPs identify any particular allegations that could state a consumer protection claim if their antitrust claims failed.[30] Instead, IPPs argue that consumer protection laws are "broadly construed." Opp. at 15. This is not enough. *See Psystar*, 586 F. Supp. 2d at 1204 (dismissing where plaintiff highlighted the "sweeping nature" of consumer protection statute but "fail[ed] to explain a relevant distinction in the standards").

IPPs' unjust enrichment claims fail because they are based on the same "unlawful acts" and "anticompetitive conduct" as IPPs' antitrust claims.[31] *See* SCAC ¶¶ 483-515; Opp. at 17.[32]

### CONCLUSION

For the foregoing reasons, Keurig requests that IPPs' amended complaint be dismissed in its entirety, with prejudice.

---

[28] Nor do IPPs state an attempted monopolization claim: There is no dangerous probability of monopolizing where, as here, competitors have entered and grown. Br. at 23. IPPs have not properly alleged anticompetitive conduct. And as to specific intent, contrary to IPPs' insinuation, Opp. at 21, the courts in the patent cases made no findings regarding Keurig's intent to monopolize any market.

[29] Contrary to IPPs' assertion, Opp. at 16 n.18, Keurig's authority explains that "permit[ting] a separate inquiry into essentially the same question under unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct." *Chavez v. Whirlpool*, 93 Cal. App. 4th 363, 375 (2d Dist. 2001); *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000).

[30] IPPs' citations to conclusory paragraphs using the words "unconscionable or deceptive," Opp. at 16 n.19, do not suffice. Br. at 27 & n.37. Indeed, many of the paragraphs cited by IPPs simply recite Keurig's alleged "anticompetitive conduct." Opp. at 16 n.19 (citing SCAC ¶¶ 450, 466, 471, 476).

[31] IPPs' Vermont unjust enrichment claim also fails because the monetary benefit conferred on Keurig is supported by consideration, as IPPs received K-Cups. SCAC ¶¶ 37-63, 246. *See Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994, 995 (Vt. 1987) (not unjust for defendant to retain new tires, where defendant had paid for the benefit of a properly equipped truck); *Morrisville Lumber Co. v. Okcuoglu*, 531 A.2d 887, 889 (Vt. 1987) ("The retention of a benefit is not unjust where defendants have paid for it."); *Will v. Mill Condo. Owners Ass'n, Inc.*, 2002 WL 34340312 (Vt. Super. Ct. 2002) (similar).

[32] IPPs' discussion of *Kramer v. The Pollock-Krasner Foundation*, 890 F. Supp. 250 (S.D.N.Y. 1995), is irrelevant. Opp. at 17 & n.20. IPPs do not state a claim because their unjust enrichment claims are based on the same inadequate facts as their inadequate antitrust claims.

Dated: May 11, 2015
New York, New York

By: CLEARY GOTTLIEB STEEN & HAMILTON

*[signature]*

George S. Cary
**Leah Brannon**
**Elaine Ewing**
*gcary@cgsh.com*
*lbrannon@cgsh.com*
*eewing@cgsh.com*
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 974-1500

**Lev L. Dassin**
**Danielle Mindlin**
*ldassin@cgsh.com*
*dmindlin@cgsh.com*
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2790

**Wendelynne J. Newton**
*wendelynne.newton@bipc.com*
BUCHANAN INGERSOLL & ROONEY
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 562-8932

*Attorneys for Defendant Keurig Green Mountain, Inc., f/k/a Green Mountain Coffee Roasters, Inc., and as successor to Keurig, Incorporated*