**MANDATE**

*14-3578-cv*
*JBR, Inc. v. Keurig Green Mountain, Inc.*

N.Y.S.D. Case #
14-md-2542(VSB)

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of October, two thousand fifteen.

Present:

>DEBRA ANN LIVINGSTON,
>CHRISTOPHER F. DRONEY,
>   *Circuit Judges*,
>SIDNEY H. STEIN
>   *District Judge*.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/2015

JBR, INC.

>*Plaintiff-Appellant*,

v.                                                                      No. 14-3578-cv

KEURIG GREEN MOUNTAIN, INC.,

>*Defendant-Appellee*.

For Plaintiff-Appellant:     DANIEL JOHNSON, JR., Thomas M. Peterson, Morgan, Lewis & Bockius LLP, San Francisco, C.A., *for Plaintiff-Appellant*.

---

* The Honorable Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

1

MANDATE ISSUED ON 11/16/2015

| | |
|---|---|
| For Defendant-Appellee: | LEAH BRANNON, George S. Cary, Elaine Ewing, Clearly Gottlieb Steen & Hamilton, Washington D.C.; Lev Dassin, Danielle P. Mindlin, Cleary Gottlieb Steen & Hamilton LLP, New York, N.Y.; Wendelynne J. Newton, Buchanan Ingersoll & Rooney, Pittsburgh, P.A., *for Defendant-Appellee*. |

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant JBR, Inc. ("JBR") is an American coffee manufacturing company that produces, among other things, "portion packs," which are pods containing coffee grounds that consumers place into single-serve coffee brewing machines to produce a single cup of coffee. JBR's portion packs, called "OneCups," are primarily designed for use in a single-serve coffee brewer called the "Keurig 1.0," which is made by Defendant-Appellee Keurig Green Mountain, Inc. ("Keurig"). This appeal is from a September 19, 2014 order in the Southern District of New York (Broderick, *J.*) denying JBR preliminary injunctive relief in connection with its complaint against Keurig asserting, *inter alia*, various state and federal antitrust violations under the Sherman Act, 15 U.S.C. §§ 1 *et seq.*; Clayton Act, 15 U.S.C. §§ 12 *et seq.*; and California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### I. Background

Keurig is one of the leading manufacturers of single-serve coffee brewers in America, and the Keurig 1.0 is by far the company's most successful brewer. An estimated 25 to 30 million Keurig 1.0 brewers are currently in use in the United States. Keurig makes its own portion packs, called "K-Cups," for use in the Keurig 1.0 and also has licensing agreements with other manufacturers of portion packs that are compatible with the Keurig 1.0. K-Cups and

2

Keurig-licensed portion packs comprise a large share of the market for portion packs that are compatible with the Keurig 1.0.

The market for portion packs consists of two segments: the "at home" ("AH") segment, which targets coffee consumption by individuals in their homes, and the "away from home" ("AFH") segment, which is geared toward coffee consumption at commercial locations, such as offices and hotels. Keurig is active in both segments of this market. JBR, meanwhile, operates almost exclusively in the AH segment of the market.

In September 2013, Keurig announced its plans to introduce in the subsequent year a new single-serve brewer, called the "Keurig 2.0," which would gradually replace all Keurig 1.0 brewers on the shelves. The Keurig 2.0, the company announced, was to incorporate, among other things, updated pump technology, greater brewing capacity, and a scanner technology designed to read the ink on the tops of portion packs inserted into the brewer. The scanner technology would ensure that the Keurig 2.0 accepted only those portion packs made or licensed by Keurig. The Keurig 2.0, in other words, would not allow consumers to use unlicensed portion packs, such as JBR's OneCups.

On March 13, 2014, JBR filed a complaint against Keurig in the United States District Court for the Eastern District of California. The Judicial Panel on Multidistrict Litigation consolidated JBR's action with several similar actions against Keurig and, on June 3, 2014, transferred the case to the United States District Court for the Southern District of New York. On August 11, 2014, JBR moved for a preliminary injunction. It sought to enjoin Keurig from (1) "[p]romoting, marketing, or making available for sale any 'Keurig 2.0' machine that includes a 'lock-out' of unlicensed portion packs"; and (2) "[m]aking false or misleading statements about [JBR's] products to its customers or to consumers." 2 JA 316. The district court denied JBR's

3

motion for a preliminary injunction on September 19, 2014, concluding that JBR failed to demonstrate that it was likely to suffer irreparable harm absent such relief. For the following reasons, we affirm.

**II.     Discussion**

We review a district court's denial of injunctive relief for abuse of discretion. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 99–100 (2d Cir. 2012) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "[I]n analyzing whether the district court abused its discretion, 'we may affirm on any ground supported by the record.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To successfully seek a preliminary injunction, a moving party must show four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010). Irreparable harm, however, is the "*sine qua non* for preliminary injunctive relief." *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995).

As such, the moving party must first demonstrate that irreparable harm would be "likely" in the absence of a preliminary injunction "before the other requirements for the issuance of [a preliminary] injunction will be considered." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998).

First, as to JBR's motion to enjoin Keurig from selling the Keurig 2.0, we find no abuse of discretion in the district court's determination that JBR failed to make the requisite showing of irreparable harm. In so finding, the district court discounted JBR's argument that the availability of the Keurig 2.0 — complete with a "lock-out" feature that operated to prevent consumers from using OneCups — would cause JBR to lose all of its OneCup sales with Costco, JBR's principal source of OneCup sales. We cannot find an abuse of discretion in this determination on the record as it currently stands.

While a "meaningful loss of market share" may demonstrate irreparable harm under certain circumstances, the "burden of proof and persuasion rest[s] squarely" on the party moving for a preliminary injunction to show that irreparable harm is likely. *Grand River*, 481 F.3d at 67–68. Among the evidence provided by JBR was that Costco, in response to the introduction of the Keurig 2.0, required JBR to place on OneCup packages sold at Costco a disclosure label stating that OneCups "[c]an be used in most Keurig® K-Cup® Brewers — NOT compatible with Version 2.0 or Vue Brewers." S.A. 23. This label, JBR argued, would discourage Costco shoppers from purchasing OneCups, and the ensuing decline in OneCup sales would prompt Costco to stop carrying JBR's product. Yet, JBR had no "formal or informal" projections suggesting that its sales of OneCups at Costco would decline. To the contrary, JBR's own sales projections, generated in February 2014 and provided to JBR's lending institution, indicated that JBR expected OneCup sales at Costco to be higher in fiscal year 2015 than in fiscal year 2014. JBR's

5

explanation for the optimistic February 2014 projections was that, while it knew at the time that the Keurig 2.0 would be coming out later that year, it was not sure of the precise date and thus did not incorporate the effect of the Keurig 2.0 into its sales projections.  Presented with the foregoing evidence and other evidence in the record, the district court concluded that JBR's alleged loss of all of its OneCup sales at Costco, as well as other alleged losses of OneCup sales, was speculative and remote.  Particularly, it found that the evidence in the record did not support the conclusion that Keurig 1.0 owners were likely to replace their existing brewers and thus found the contention that JBR would imminently lose a significant amount of its sales to be unsubstantiated.  *See Grand River*, 481 F.3d at 68 (noting that a party moving for injunctive relief moving for injunctive relief bears the burden of presenting sufficient evidence to show irreparable harm).

We are similarly not persuaded by JBR's contention that the district court failed adequately to consider evidence of AH and AFH retailers declining to purchase OneCups, which JBR contends demonstrates a likelihood of irreparable harm.  For one thing, the record suggests that while some retailers in the AH market declined to purchase OneCups due to their incompatibility with the Keurig 2.0, those retailers constitute an extremely small share of JBR's sales of OneCups. Some of the AH retailers that declined to do business had never previously done business with JBR, and JBR provided no evidence suggesting that the loss of these opportunities could have a meaningful impact on its business.  As for the retailers in the AFH market, their refusals to do business with JBR did not stem from the incompatibility between OneCups and the Keurig 2.0. Rather, the AFH retailers were bound by exclusivity agreements with Keurig, typically entered into long before Keurig announced its plans for the Keurig 2.0.  While JBR suggests that its inability to enter the AFH market might make any losses it experiences in the AH market that much more acute, we are not convinced by this reasoning.  Since JBR failed to come forward with

clear evidence that the loss it predicts in the AH market is more than speculative, any argument to the effect that the Keurig exclusivity agreements in the AFH market accentuate that loss is largely inapposite.

Nor are we convinced by JBR's contention that the district court failed properly to consider that the Keurig 2.0 will threaten JBR's entire enterprise because a significant loss of sales will trigger a breach of JBR's loan covenants. The district court declined to consider this argument on the grounds that JBR lacked sufficient evidentiary support for its claimed loss of sales in the first instance. It was well within the bounds of the district court's discretion to do so. Nonetheless, we note that the evidence JBR puts forward as to the potential breach of its loan covenants posing a "threat to the continued existence of [its] business" is sparse. *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 435 (2d Cir. 1993) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 28–29 (2d Cir. 1978)). JBR presented no evidence to suggest that, even assuming such a breach was likely, it would be forestalled from exercising any of the multiple options available to companies should they fall into non-compliance with a loan covenant, such as procuring a waiver of the breach from its lending institution or obtaining a new loan.

As to JBR's motion to enjoin Keurig from making alleged false statements about JBR's products, the district court committed no abuse of discretion in concluding that JBR also failed to establish any irreparable harm from the alleged false statements. Among other statements, JBR complains of the statement that appears on the Keurig 2.0 when a consumer inserts an unlicensed portion pack: "Oops! This pack wasn't designed for this brewer." 2 JA 407. According to JBR, this statement falsely implies that JBR is to blame for failing to design OneCups to be compatible with the Keurig 2.0, when the reality is that Keurig fashioned the new scanner feature

7

to ensure that the Keurig 2.0 would not accept OneCups.  JBR also takes issue with statements allegedly made by Keurig to its distributors suggesting that unlicensed portion packs, such as OneCups, could affect the quality and safety of its coffee brewers.

To be clear, we express no view as to the merits of JBR's antitrust and unfair competition claims.  But again, the district court did not abuse its discretion in declining preliminary injunctive relief, in light of the sparse evidence proffered by JBR to demonstrate irreparable injury.  For instance, JBR claims that Keurig's false statements prompted retailers to express concern over the compatibility of OneCups with the Keurig 2.0, and that at least one retailer delayed further business negotiations with JBR due to such representations.  Such evidence, though tending to show some harm from the statements, hardly suffices to establish a likelihood of irreparable harm.  The district court thus committed no abuse of discretion in so concluding.

JBR complains that the district court erroneously applied a *de minimis* presumption to its federal false-statement antitrust claims.  The presumption of which JBR complains states that a plaintiff "asserting a monopolization claim based on misleading advertising must 'overcome a presumption that the effect on competition of such a practice was *de minimis*.'"  *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prods. Corp.*, 850 F.2d 904, 916 (2d Cir. 1988) (quoting *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 288 n.41 (2d Cir. 1979)).  While the district court did suggest that JBR failed to overcome the *de minimis* presumption, we need not opine on whether the district court erred in so doing, as JBR failed to make a clear showing of irreparable injury arising from any of the alleged false statements.  JBR's motion to enjoin the alleged false statements at this stage of the litigation therefore fails on that ground alone.

We further note that JBR has not established that any potential injury to its business would be of a type that could not be remedied by compensation in the future, should it prevail on its

claims against Keurig. *See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) ("Irreparable harm is injury that . . . cannot be remedied by an award of monetary damages.").

In sum, we find no abuse of discretion in the district court's conclusion that JBR failed to establish a likelihood of irreparable harm stemming from either the selling of the Keurig 2.0 or from Keurig's alleged false statements about JBR's products. Because irreparable harm is the "*sine qua non* for preliminary injunctive relief," we conclude that JBR's motion for a preliminary injunction fails at the irreparable harm stage, and we do not reach the other components of the preliminary injunction inquiry. *USA Recycling*, 66 F.3d at 1295.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

9

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit