**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------------- X
                                                          :    ECF Case
                                                          :
IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE                 :
COFFEE ANTITRUST LITIGATION                               :    MDL No. 2542
                                                          :
----------------------------------------------------------------------- X    Master Docket No.
                                                          :    1:14-md-02542 (VSB)
                                                          :
This Document Pertains To:                                :
                                                          :
Case No. 1:14-cv-04242 (VSB)                              :
                                                          :
----------------------------------------------------------------------- X
```


# AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS OF
# DEFENDANT AND COUNTERCLAIM-PLAINTIFF
# KEURIG GREEN MOUNTAIN, INC.
# IN RESPONSE TO
# FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FILED BY
# JBR, INC. (D/B/A ROGERS FAMILY COMPANY)

## INTRODUCTION

Defendant and Counterclaim-Plaintiff Keurig Green Mountain, Inc. ("Keurig") hereby responds to the Amended and Supplemental Complaint (No. 14-CV-4242, ECF No. 83) ("Complaint") filed by Plaintiff JBR, Inc., doing business as Rogers Family Company ("JBR" or "Plaintiff") and amends its previously-filed Answer and Defenses (No. 14-CV-4242, ECF. No. 408) pursuant to Fed. R. Civ. P. 15(a)(1)(A).  To the extent not specifically admitted herein, Keurig denies all of the allegations in the Complaint.  In addition, to the extent Plaintiff purports to quote from documents in the Complaint, Keurig refers to the documents themselves for their accurate and complete contents.  Keurig has not attempted to verify the accuracy of Plaintiff's quotations or even that the documents exist and, to the extent the quotations are incomplete, inaccurate, or misleading, or the underlying documents do not exist, Keurig denies the allegations.  Keurig will insist on strict proof of all allegations, assuming such allegations are deemed admissible, as to which Keurig reserves its rights.  Keurig's use of the Complaint's defined terms is intended solely for the Court's convenience; Keurig denies that Plaintiff has defined these terms appropriately.

## GENERAL DENIAL

Keurig denies that it has engaged in illegal conduct or that any conduct that it is alleged to have engaged in has harmed Plaintiff, competition, or consumers.  Keurig denies that Plaintiff is entitled to judgment in its favor or any relief whatsoever, including the relief requested in paragraphs (A) through (I) of Plaintiff's prayer for relief.

## SPECIFIC DENIALS

Keurig specifically responds to the allegations in the Complaint as follows:

1.      Keurig does not contest that this Court has subject-matter jurisdiction over Plaintiff's federal-law claims.  Keurig also does not contest that this Court may exercise supplemental jurisdiction over Plaintiff's state-law claims, but Keurig reserves the right to

contest supplemental jurisdiction in the event that the Plaintiff's federal-law claims are ever dropped, dismissed, or otherwise removed from this case.  Keurig denies the remainder of the allegations in Paragraph 1.

2.     Keurig does not contest that this Court has subject-matter jurisdiction over this action.

3.     Keurig admits that it regularly does business in New York, is present in New York, and has minimum contacts with New York.  Keurig does not contest that this Court has personal jurisdiction over it.  Keurig denies the remainder of the allegations in Paragraph 3.

4.     Keurig admits that it regularly does business in California, has minimum contacts with California, and is registered to do business in California.  Keurig does not contest that this Court has personal jurisdiction over it.  Keurig does not contest that this Court may exercise supplemental jurisdiction over Plaintiff's state-law claims, but Keurig reserves the right to contest supplemental jurisdiction in the event that the Plaintiff's federal-law claims are ever dropped, dismissed, or otherwise removed from this case.  Keurig denies the remainder of the allegations in Paragraph 4.

5.     Keurig admits that, according to public sources, JBR Inc. is registered as a California entity (#C0905133) with a mailing address in Lincoln, California.  Keurig otherwise lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 5.

6.     Keurig denies that the principal place of business of Keurig, Incorporated was always in Reading, Massachusetts.  Keurig admits the remainder of the allegations in Paragraph 6.

7.     Keurig denies the allegations in Paragraph 7.

8.     Keurig denies the allegations in Paragraph 8.

9.     Keurig denies the allegations in Paragraph 9.

10.    Keurig admits that 1.0 and 2.0 brewers use less pressure than espresso machines. Keurig denies the remainder of the allegations in Paragraph 10.

11.    Keurig denies the allegations in Paragraph 11.

12.    Keurig denies the allegations in Paragraph 12, except that it refers to representative referenced documents for their actual and complete contents.

13.    Keurig denies the allegations in Paragraph 13, except that it refers to the cited documents for their actual and complete contents.

14.    Keurig denies the allegations in Paragraph 14, except that it refers to the cited documents for their actual and complete contents.

15.    Keurig denies the allegations in Paragraph 15.

16.    Keurig denies the allegations in Paragraph 16.

17.    Keurig denies the allegations in Paragraph 17.

18.    Keurig denies the allegations in Paragraph 18.

19.    Keurig admits the allegations in Paragraph 19.

20.    Keurig admits that Keurig brewers are a quick, convenient, and simple way to brew many kinds of hot beverages.  Keurig denies the remainder of the allegations in Paragraph 20.

21.    Keurig denies the allegations in Paragraph 21, except that it refers to the referenced documents for their actual and complete contents.

22.    Keurig admits that Keurig brewers, like other brewers capable of preparing hot water, can be used to prepare many kinds of hot beverages.  To the extent Paragraph 22 includes further allegations, Keurig denies them.

23.   Keurig admits that Keurig brewers are sold for a range of prices.  Keurig denies the remainder of the allegations in Paragraph 23.

24.   Keurig lacks knowledge or information sufficient to form a belief as to sales of all brewers in the United States.  Keurig denies the remainder of the allegations in Paragraph 24.

25.   Keurig denies the allegations in Paragraph 25.  Keurig refers to the cited documents for their actual and complete contents.

26.   Keurig denies the allegations in Paragraph 26, except that it refers to the cited documents for their actual and complete contents.

27.   Keurig denies the allegations in Paragraph 27, except that it refers to the cited documents for their actual and complete contents.

28.   Keurig admits that it has sold over 40 million brewers, that it sold approximately 10.4 million brewers in its 2014 fiscal year, and that it believes over 20 million households have a brewer.  To the extent Paragraph 28 includes further allegations, Keurig denies them.

29.   Keurig denies the allegations in Paragraph 29.

30.   Keurig denies the allegations in Paragraph 30, except that it refers to representative referenced documents for their actual and complete contents.

31.   Keurig admits that Keurig brewers are designed to be compatible with portion packs sold or licensed by Keurig.  Keurig lacks knowledge or information sufficient to form a belief as to Tassimo's brewer.  Keurig denies the remainder of the allegations in Paragraph 31.

32.   Keurig denies the allegations in Paragraph 32.

33.   Keurig denies the allegations in Paragraph 33.

34.   Keurig denies the allegations in Paragraph 34.

4

35.     Keurig admits that in 2010 TreeHouse began selling filterless portion packs that contained instant coffee.  Keurig denies the remainder of the allegations in Paragraph 35.

36.     Keurig admits that in 2011 JBR began selling portion packs.  Keurig lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 36.

37.     Keurig denies the allegations in Paragraph 37.

38.     Keurig denies the allegations in Paragraph 38.

39.     Keurig denies the allegations in Paragraph 39, except that it refers to the referenced statement for its actual and complete contents.

40.     Keurig denies the allegations in Paragraph 40.

41.     Keurig denies the allegations in Paragraph 41.

42.     Keurig lacks knowledge or information sufficient to form a belief as to where brewers and portion packs are sold in all retail stores.  Keurig denies the remainder of the allegations in Paragraph 42.

43.     Keurig denies the allegations in Paragraph 43, except that it refers to the referenced statement for its actual and complete contents.

44.     Keurig admits that consumers are willing to try new brands.  Keurig denies the remainder of the allegations in Paragraph 44, except that it refers to the referenced documents for their actual and complete contents.

45.     Keurig admits that its consolidated net sales of portion packs were approximately $2.7 billion in fiscal year 2012 and approximately $3.2 billion in fiscal year 2013.  To the extent Paragraph 45 includes further allegations, Keurig denies them.

46.    Keurig denies the allegations in Paragraph 46, except that it refers to the referenced statement for its actual and complete contents.

47.    Keurig admits that it sold more than 150,000 2.0 brewers in the first quarter that they were available.  Keurig denies the remainder of the allegations in Paragraph 47.

48.    Keurig denies the allegations in Paragraph 48.

49.    Keurig lacks knowledge or information sufficient to form a belief as to JBR's spending.  Keurig denies the remainder of the allegations in Paragraph 49.

50.    Keurig admits that it sells portion packs through the types of retailers and distributors listed in Paragraph 50.  Keurig admits that some retailers sell portion packs and some sell both brewers and portion packs.  Keurig denies the remainder of the allegations in Paragraph 50.

51.    Keurig denies the allegations in Paragraph 51.

52.    Keurig denies the allegations in Paragraph 52, except that it refers to the referenced statement for its actual and complete contents.

53.    Keurig admits that some brewers use portion packs with different shapes.  Keurig denies the remainder of the allegations in Paragraph 53.

54.    Keurig denies the allegations in Paragraph 54.

55.    Keurig denies the allegations in Paragraph 55.

56.    Keurig denies the allegations in Paragraph 56.

57.    Keurig denies the allegations in Paragraph 57, except that it refers to the referenced statement for its actual and complete contents.

58.    Keurig denies the allegations in Paragraph 58.

59.    Keurig denies the allegations in Paragraph 59.

60.    Keurig denies the allegations in Paragraph 60.

61.    Keurig admits that, according to JBR's website, JBR sells OneCup portion packs under the "San Francisco Bay" and "Organic Coffee Company" brands.  Keurig otherwise lacks knowledge or information sufficient to form a belief as to JBR's and TreeHouse's brands. Keurig denies the remainder of the allegations in Paragraph 61.

62.    Keurig lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 62.

63.    Keurig admits that it has entered into an agreement with Kroger.  Keurig denies the remainder of the allegations in Paragraph 63, except that it refers to the referenced document for its actual and complete contents.

64.    Keurig denies the allegations in Paragraph 64.

65.    Keurig denies the allegations in Paragraph 65.

66.    Keurig admits that over 20 million households have a brewer.  Keurig denies the remainder of the allegations in Paragraph 66, except that it refers to the source of the referenced statement for its actual and complete contents.

67.    Keurig denies the allegations in Paragraph 67.

68.    Keurig denies the allegations in Paragraph 68.

69.    Keurig denies the allegations in Paragraph 69.

70.    Keurig lacks knowledge or information sufficient to form a belief as to Costco's statements.  Keurig denies the remainder of the allegations in Paragraph 70.

71.    Keurig admits that consumers can purchase portion packs directly online.  Keurig denies the remainder of the allegations in Paragraph 71, except that it refers to the referenced documents for their actual and complete contents.

72.    Keurig admits the allegations in Paragraph 72.

73.    Keurig denies the allegations in Paragraph 73, except that it refers to the source of the referenced statement for its actual and complete contents.

74.    Keurig admits that some brewers sold to commercial customers are different from and are designed for more usage than brewers sold for home use.  Keurig admits that UL certifies some Keurig brewers for "commercial use" and some for "household use."  Keurig denies the remainder of the allegations in Paragraph 74.

75.    Keurig admits that portion packs and brewers are distributed through KARDs, KADs, and RNKADs.  Keurig denies the remainder of the allegations in Paragraph 75.

76.    Keurig denies the allegations in Paragraph 76, except that it refers to representative referenced documents for their actual and complete contents.

77.    Keurig denies the allegations in Paragraph 77, except that it refers to representative referenced documents for their actual and complete contents.

78.    Keurig denies the allegations in Paragraph 78, except that it refers to representative referenced documents for their actual and complete contents.

79.    Keurig admits that it has multi-year agreements with KADs, KARDs, and RNKADs.  Keurig denies the remainder of the allegations in Paragraph 79, except that it refers to representative referenced documents for their actual and complete contents.

80.    Keurig denies the allegations in Paragraph 80, except that it refers to representative referenced documents for their actual and complete contents.

81.    Keurig admits that Keurig brewers and portion packs are sold and distributed in the United States and elsewhere.  Keurig denies the remainder of the allegations in Paragraph 81.

82.    Keurig admits that it sells brewers and portion packs in the United States, including in the Southern District of New York.

83.    Keurig denies the allegations in Paragraph 83.

84.    Keurig admits the allegations in Paragraph 84.

85.    Keurig admits that it has facilities in Massachusetts, Tennessee, Vermont, Virginia, and Washington.  Keurig denies the remainder of the allegations in Paragraph 85.

86.    Keurig denies the allegations in Paragraph 86.

87.    Keurig denies the allegations in Paragraph 87, except that it refers to the referenced documents for their actual and complete contents.

88.    Keurig denies the allegations in Paragraph 88, except that it refers to representative referenced documents for their actual and complete contents.

89.    Keurig denies the allegations in Paragraph 89, except that it refers to the cited document for its actual and complete contents.

90.    Keurig denies the allegations in Paragraph 90, except that it refers to the cited document for its actual and complete contents.

91.    Keurig denies the allegations in Paragraph 91, except that it refers to representative referenced documents for their actual and complete contents.

92.    Keurig denies the allegations in Paragraph 92, except that it refers to the cited document for its actual and complete contents.

93.    Keurig denies the allegations in Paragraph 93, except that it refers to the cited document for its actual and complete contents.

94.    Keurig denies the allegations in Paragraph 94.

95.     Keurig lacks knowledge or information sufficient to form a belief as to what sales efforts, if any, JBR has made and what statements distributors have made.  Keurig denies the remainder of the allegations in Paragraph 95.

96.     Keurig denies the allegations in Paragraph 96, except that it refers to the referenced document for its actual and complete contents.

97.     Keurig denies the allegations in Paragraph 97.

98.     Keurig denies the allegations in Paragraph 98.

99.     Keurig denies the allegations in Paragraph 99, except that it refers to representative referenced documents for their actual and complete contents.

100.   Keurig denies the allegations in Paragraph 100, except that it refers to the cited document for its actual and complete contents.

101.   Keurig denies the allegations in Paragraph 101.

102.   Keurig denies the allegations in Paragraph 102.

103.   Keurig admits that distributors may provide various services to office customers. Keurig denies the remainder of the allegations in Paragraph 103.

104.   Keurig denies the allegations in Paragraph 104.

105.   Keurig denies the allegations in Paragraph 105, except that it refers to representative referenced documents for their accurate and complete contents.

106.   Keurig admits that it did not create third-party suppliers or distributors, buy their trucks, or hire their personnel.  Keurig admits that some of its distributors were distributing before they first began receiving support and training from Keurig.  Keurig denies the remainder of the allegations in Paragraph 106.

107. Keurig denies the allegations in Paragraph 107, except that it refers to representative referenced documents for their actual and complete contents.

108. Keurig lacks knowledge or information sufficient to form a belief as to the allegations in the first two sentences of Paragraph 108. Keurig denies the remainder of the allegations in Paragraph 108, except that it refers to representative referenced documents for their actual and complete contents.

109. Keurig admits that in 2013 it entered into an agreement with the third party named in Paragraph 109. Keurig denies the remainder of the allegations in Paragraph 109, except that it refers to the referenced document for its actual and complete contents.

110. Keurig admits that it agreed to supply Meijer with private-label portion packs. Keurig lacks knowledge of information sufficient to form a belief as to Meijer's other offerings. Keurig denies the remainder of the allegations in Paragraph 110.

111. Keurig denies the allegations in Paragraph 111.

112. Keurig denies the allegations in Paragraph 112. Keurig refers to representative referenced documents for their actual and complete contents.

113. Keurig denies the allegations in Paragraph 113, except that it refers to the cited document for its actual and complete contents.

114. Keurig denies the allegations in Paragraph 114, except that it refers to the cited document for its actual and complete contents.

115. Keurig admits that it amended its agreement with Starbucks in March 2014. Keurig denies the remainder of the allegations in Paragraph 115, except that it refers to the referenced document for its actual and complete contents.

116.  Keurig admits that it entered into an agreement in October 2003 with the third party named in Paragraph 116.  Keurig denies the remainder of the allegations in Paragraph 116, except that it refers to the cited agreement for its actual and complete contents.

117.  Keurig denies the allegations in Paragraph 117, except that it refers to representative referenced documents for their actual and complete contents.

118.  Keurig admits that it is a roaster that owns brand names.  Keurig denies the remainder of the allegations in Paragraph 118, except that it refers to the cited document for its actual and complete contents.

119.  Keurig lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 119.

120.  Keurig admits that some of its agreements with licensees have multi-year terms. Keurig denies the remainder of the allegations in Paragraph 120, except that it refers to representative referenced documents for their actual and complete contents.

121.  Keurig denies the allegations in Paragraph 121, except that it refers to the cited document for its actual and complete contents.

122.  Keurig admits that it entered into an agreement with Global Baristas in 2013. Keurig denies the remainder of the allegations in Paragraph 122, except that it refers to the cited documents for their actual and complete contents.

123.  Keurig denies the allegations in Paragraph 123.

124.  Keurig denies the allegations in Paragraph 124.

125.  Keurig denies the allegations in Paragraph 125, except that it refers to the cited document for its actual and complete contents.

126.  Keurig denies the allegations in Paragraph 126, except that it refers to representative referenced documents for their actual and complete contents.

127.  Keurig denies the allegations in Paragraph 127.

128.  Keurig denies the allegations in Paragraph 128, except that it refers to representative referenced documents for their actual and complete contents.

129.  Keurig admits that it entered into an agreement with Caribou in December 2006, which was extended in December 2011.  Keurig denies the remainder of the allegations in Paragraph 129, except that it refers to the cited document for its actual and complete contents.

130.  Keurig admits that it entered into an agreement in February 2010 with the third party named in Paragraph 130, which was extended in May 2014.  Keurig denies the remainder of the allegations in Paragraph 130, except that it refers to the referenced document for its actual and complete contents.

131.  Keurig admits that it entered into an agreement in February 2011 with the third party named in Paragraph 131, which was extended in 2013.  Keurig denies the remainder of the allegations in Paragraph 131, except that it refers to the referenced documents for their actual and complete contents.

132.  Keurig admits that it entered into an agreement in May 2011 with the third party named in Paragraph 132, which was extended in May 2013 and amended in March 2014. Keurig admits that the third party's portion packs are sold in grocery stores, in the third party's cafes, and on the Keurig website.  Keurig denies the remainder of the allegations in Paragraph 132, except that it refers to the referenced documents for their actual and complete contents.

133.   Keurig admits that it entered into an agreement with The Coffee Bean & Tea Leaf in May 2013.  Keurig denies the remainder of the allegations in Paragraph 133, except that it refers to the referenced document for its actual and complete contents.

134.   Keurig admits that it entered into an agreement with Cinnabon in July 2013. Keurig denies the remainder of the allegations in Paragraph 134, except that it refers to the referenced document for its actual and complete contents.

135.   Keurig admits that it entered into an agreement with Krispy Kreme in February 2014.  Keurig denies the remainder of the allegations in Paragraph 135, except that it refers to the referenced document for its actual and complete contents.

136.   Keurig admits that it entered into an agreement with Lavazza in February 2014. Keurig denies the remainder of the allegations in Paragraph 136, except that it refers to the referenced document for its actual and complete contents.

137.   Keurig admits that it entered into an agreement with Peet's in March 2014. Keurig denies the remainder of the allegations in Paragraph 137, except that it refers to the referenced document for its actual and complete contents.

138.   Keurig admits that it entered into an agreement with Unilever in March 2013. Keurig denies the remainder of the allegations in Paragraph 138, except that it refers to the referenced document for its actual and complete contents.

139.   Keurig admits that it entered into an agreement with BJ's Wholesale Club in June 2014.  Keurig denies the remainder of the allegations in Paragraph 139, except that it refers to the referenced document for its actual and complete contents.

140.  Keurig admits that it entered into an agreement with Harris Teeter in July 2014. Keurig denies the remainder of the allegations in Paragraph 140, except that it refers to the referenced document for its actual and complete contents.

141.  Keurig admits that it entered into an agreement with Kraft in August 2014. Keurig denies the remainder of the allegations in Paragraph 141, except that it refers to the referenced document for its actual and complete contents.

142.  Keurig admits that it has entered into agreements with the companies named in Paragraph 142.  Keurig denies the remainder of the allegations in Paragraph 142, except that it refers to the referenced documents for their actual and complete contents.

143.  Keurig admits that it entered into agreements with Coca-Cola in February 2014 and September 2014.  Keurig denies the remainder of the allegations in Paragraph 143, except that it refers to the referenced documents for their actual and complete contracts.

144.  Keurig denies the allegations in Paragraph 144.

145.  Keurig denies the allegations in Paragraph 145.

146.  Keurig denies the allegations in Paragraph 146, except that it refers to representative referenced documents for their actual and complete contents.

147.  Keurig denies the allegations in Paragraph 147.

148.  Keurig denies the allegations in Paragraph 148.

149.  Keurig denies the allegations in Paragraph 149, except that it refers to the cited document for its actual and complete contents.

150.  Keurig denies the allegations in Paragraph 150, except that it refers to the cited document for its actual and complete contents.

151.  Keurig denies the allegations in Paragraph 151, except that it refers to the cited document for its actual and complete contents.

152.  Keurig denies the allegations in Paragraph 152, except that it refers to the cited documents for their actual and complete contents.

153.  Keurig denies the allegations in Paragraph 153.

154.  Keurig denies the allegations in Paragraph 154, except that it refers to the cited document for its actual and complete contents.

155.  Keurig admits that prior to their merger in 2006, Keurig, Incorporated manufactured brewers and GMCR sold portion packs.  Keurig admits that when the companies merged Keurig, Incorporated had agreements with various coffee companies, including GMCR, related to portion packs.  To the extent Paragraph 155 includes further allegations, Keurig denies them.

156.  Keurig admits that it acquired Keurig, Incorporated in or around June 2006. Keurig denies the remainder of the allegations in Paragraph 156.

157.  Keurig admits that it acquired portions of Tully's Coffee Corporation in March 2009; Timothy's Coffees of the World, Inc. in November 2009; Diedrich Coffee, Inc. in May 2010; and LJVH Holdings, Inc. in September 2010.  Keurig admits that in September 2010 LJVH Holdings was associated with portion packs under the brands Bigelow, Van Houtte, and Wolfgang Puck.  Keurig denies the remainder of the allegations in Paragraph 157.

158.  Keurig admits that Sturm began selling portion packs containing instant coffee in 2010 and that Keurig sued Sturm for patent infringement.  Keurig admits that JBR began selling portion packs in 2011 and that Keurig sued JBR for patent infringement.  Keurig denies the remainder of the allegations in Paragraph 158.

159.  Keurig denies the allegations in Paragraph 159, except that it refers to the cited judicial proceedings for their actual and complete contents.

160.  Keurig denies the allegations in Paragraph 160, except that it refers to the complaint in *Keurig Inc. v. Sturm Foods Inc.*, No. 1:10-cv-00841-SLR-MPT (D. Del.) ("the *Sturm* litigation"), for its actual and complete contents.

161.  Keurig denies the allegations in Paragraph 161, except that it refers to the complaint in the *Sturm* litigation for its actual and complete contents.

162.  Keurig denies the allegations in Paragraph 162, except that it refers to the complaint in *Keurig, Inc. v. JBR, Inc.,* No. 1:11-cv-11941-FDS (D. Mass.) ("the *JBR* litigation"), for its actual and complete contents.

163.  Keurig admits that in September 2012 the District of Delaware granted Keurig's motion to dismiss, granted one of Keurig's motions for summary judgment, and granted some of Sturm's motions for summary judgment, among other rulings, and that Keurig filed an appeal to the Federal Circuit.  Keurig refers to the judicial proceedings in the *Sturm* litigation for their actual and complete contents.

164.  Keurig admits that JBR offered to stay its case pending Keurig's appeal in the *Sturm* litigation.  Keurig admits that it declined that offer.  Keurig denies the remainder of the allegations in Paragraph 164.

165.  Keurig admits the allegations in Paragraph 165.

166.  Keurig admits that it took fifteen total depositions in the *JBR* litigation.  Keurig lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in Paragraph 166.

167.   Keurig admits that it filed a motion to compel but denies the remainder of the allegations in Paragraph 167.  Keurig refers to the judicial proceedings in the *JBR* litigation for their actual and complete contents.

168.   Keurig admits that in May 2013 the District of Massachusetts granted JBR's motion for summary judgment.  Keurig denies the remainder of the allegations in Paragraph 168, except that it refers to the cited judicial proceedings for their actual and complete contents.

169.   Keurig admits that it appealed the District of Massachusetts' decision to the Federal Circuit.  Keurig denies the remainder of the allegations in Paragraph 169, except that it refers to the cited judicial proceedings for their actual and complete contents.

170.   Keurig denies the allegations in Paragraph 170, except that it refers to the cited judicial proceedings for their actual and complete contents.

171.   Keurig admits that it pursued its appeal regarding the design patent but not the utility patents.  Keurig denies the remainder of the allegations in Paragraph 171, except that it refers to the cited judicial proceedings for their actual and complete contents.

172.   Keurig denies the allegations in Paragraph 172.

173.   Keurig lacks knowledge or information sufficient to form a belief as to JBR's finances.  Keurig denies the remainder of the allegations in Paragraph 173.

174.   Keurig denies the allegations in Paragraph 174.

175.   Keurig denies the allegations in Paragraph 175.

176.   Keurig denies the allegations in Paragraph 176.

177.   Keurig denies the allegations in Paragraph 177, except that it refers to the referenced document for its actual and complete contents.

178.  Keurig denies the allegations in Paragraph 178, except that it refers to the cited document for its actual and complete contents.

179.  Keurig denies the allegations in Paragraph 179, except that it refers to the cited document for its actual and complete contents.

180.  Keurig denies the allegations in Paragraph 180, except that it refers to the cited document for its actual and complete contents.

181.  Keurig denies the allegations in Paragraph 181, except that it refers to the cited document for its actual and complete contents.

182.  Keurig admits that some of its patents expired in 2012.  Keurig lacks knowledge or information sufficient to form a belief as to partnerships entered by third parties.  Keurig denies the remainder of the allegations in Paragraph 182.

183.  Keurig denies the allegations in Paragraph 183, except that it refers to the cited document for its actual and complete contents.

184.  Keurig admits that there was a meeting between the employee and third party named in the first sentence of Paragraph 184 around the specified date.  Keurig admits that the project name in the last sentence of Paragraph 184 was a code name given to a project related to ink.  Keurig denies the remainder of the allegations in Paragraph 184.

185.  Keurig lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 185.  Keurig denies the remainder of the allegations in Paragraph 185.

186.  Keurig admits that it entered into an agreement with the third party named in Paragraph 186.  Keurig denies the remainder of the allegations in Paragraph 186, except that it refers to the cited document for its actual and complete contents.

187.  Keurig admits that its Board was informed about ink-reading systems.  Keurig denies the remainder of the allegations in Paragraph 187.

188.  Keurig admits that some employees were told that Keurig was considering ink-reading technology.  Keurig denies the remainder of the allegations in Paragraph 188, except that it refers to the referenced statements for their accurate and complete contents.

189.  Keurig admits that in the second half of 2012 and into 2013 it worked on interactive technology for a new brewer.  Keurig denies the remainder of the allegations in Paragraph 189.

190.  Keurig admits that the 2.0 brewer uses taggant ink and reader technology.  Keurig denies the remainder of the allegations in Paragraph 190.

191.  Keurig admits that it entered into an agreement with the third party named in Paragraph 191 to supply taggant ink for the new Keurig 2.0 brewer.  Keurig denies the remainder of the allegations in Paragraph 191, except that it refers to the referenced drawings for their actual and complete contents.

192.  Keurig admits that it announced the 2.0 brewer in November 2013.  Keurig denies the remainder of the allegations in Paragraph 192, except that it refers to the referenced statements for their actual and complete contents.

193.  Keurig denies the allegations in Paragraph 193, except that it refers to the referenced statement for its actual and complete contents.

194.  Keurig denies the allegations in Paragraph 194.

195.  Keurig denies the allegations in Paragraph 195.

196.  Keurig denies the allegations in Paragraph 196.

197.  Keurig admits that it sometimes offers incentives to retailers.  Keurig denies the remainder of the allegations in Paragraph 197.

198.  Keurig denies the allegations in Paragraph 198.

199.  Keurig admits that, like other companies that sell coffee, it has raised prices on portion packs at various times following significant increases in costs.  Keurig denies the remainder of the allegations in Paragraph 199, except that it refers to the referenced statements for their actual and complete contents.

200.  Keurig denies the allegations in Paragraph 200, except that it refers to the referenced statements for their actual and complete contents.

201.  Keurig denies the allegations in Paragraph 201, except that it refers to the cited document for its actual and complete contents.

202.  Keurig denies the allegations in Paragraph 202.

203.  Keurig denies the allegations in Paragraph 203, except that it refers to the referenced documents for their actual and complete contents.

204.  Keurig denies the allegations in Paragraph 204, except that it refers to the cited document for its actual and complete contents.

205.  Keurig denies the allegations in Paragraph 205, except that it refers to the referenced agreements for their actual and complete contents.

206.  Keurig admits that it met with many retailers in 2013 and 2014, and that it disclosed that the new 2.0 brewer was designed to work with Keurig-licensed portion packs. Keurig denies the remainder of the allegations in Paragraph 206.

207.  Keurig denies the allegations in Paragraph 207, except that it refers to the referenced statements for their actual and complete contents.

208.  Keurig denies the allegations in Paragraph 208, except that it refers to representative referenced documents for their actual and complete contents.

209.  Keurig denies the allegations in Paragraph 209, except that it refers to representative referenced documents for their actual and complete contents.

210.  Keurig denies the allegations in Paragraph 210, except that it refers to representative referenced documents for their actual and complete contents.

211.  Keurig denies the allegations in Paragraph 211, except that it refers to the referenced statements for their actual and complete contents.

212.  Keurig denies the allegations in Paragraph 212.

213.  Keurig denies the allegations in Paragraph 213, except that it refers to the cited document for its actual and complete contents.

214.  Keurig admits that it has referred to the interactive technology in the new 2.0 brewer as interactive technology, consumer benefit technology, and optimization technology. Keurig denies the remainder of the allegations in Paragraph 214.

215.  Keurig denies the allegations in Paragraph 215, except that it refers to the referenced statement for its actual and complete contents.

216.  Keurig denies the allegations in Paragraph 216, except that it refers to the referenced statement for its actual and complete contents.

217.  Keurig denies the allegations in Paragraph 217.

218.  Keurig admits the allegations in Paragraph 218.

219.  Keurig admits that 2.0 brewers have used the mechanism described in the third sentence of Paragraph 219 to detect the presence of a carafe.  Keurig denies the remainder of the allegations in Paragraph 219.

220.  Keurig admits that in 2012 it did a survey on the use of drip vs. single-serve coffee.  Keurig denies the remainder of the allegations in Paragraph 220, except that it refers to the referenced documents for their actual and complete contents.

221.  Keurig denies the allegations in Paragraph 221, except that it refers to the referenced statement for its actual and complete contents.

222.  Keurig denies the allegations in Paragraph 222.  Keurig refers to the cited document for its actual and complete contents.

223.  Keurig denies the allegations in Paragraph 223, except that it refers to the referenced testimony for its actual and complete contents.

224.  Keurig admits that in 2013 it considered multiple options in designing a new brewer.  Keurig denies the remainder of the allegations in Paragraph 224.

225.  Keurig lacks knowledge or information sufficient to form a belief as to what testing JBR has performed of its own or third-party portion packs.  Keurig denies the remainder of the allegations in Paragraph 225.

226.  Keurig lacks knowledge or information sufficient to form a belief as to what testing JBR has performed of its own or third-party portion packs.  Keurig denies the remainder of the allegations in Paragraph 226.

227.  Keurig admits that there are safety mechanisms in place to prevent injury when using the 2.0 brewer, including those listed in the third sentence of Paragraph 227.  Keurig denies the remainder of the allegations in Paragraph 227, except that it refers to the cited document for its actual and complete contents.

228.  Keurig denies the allegations in Paragraph 228.

229.  Keurig lacks knowledge or information sufficient to form a belief as to communications directed at JBR.  Keurig denies the remainder of the allegations in Paragraph 229.

230.  Keurig admits that it briefly discontinued the My K-Cup accessory before reintroducing it.  Keurig denies the remainder of the allegations in Paragraph 230.

231.  Keurig denies the allegations in Paragraph 231.

232.  Keurig denies the allegations in Paragraph 232.

233.  Keurig denies the allegations in Paragraph 233.

234.  Keurig admits that it launched "Keurig Brewed" advertising in 2011.  Keurig denies the remainder of the allegations in Paragraph 234.

235.  Keurig admits that its advertising discussed brewer safety.  Keurig denies the remainder of the allegations in Paragraph 235, except that it refers to the referenced statement for its actual and complete contents.

236.  Keurig denies the allegations in Paragraph 236, except that it refers to the referenced statements for their actual and complete contents.

237.  Keurig admits that its "Keurig Brewed" webpage says that "[e]very product with the seal has passed rigorous testing, assuring the quality, taste and safety you expect from Keurig."  Keurig denies the remainder of the allegations in Paragraph 237.

238.  Keurig lacks knowledge or information sufficient to form a belief as to what customers say to JBR.  Keurig denies the remainder of the allegations in Paragraph 238, except that it refers to the cited document for its actual and complete contents.

239.  Keurig denies the allegations in Paragraph 239.

240.  Keurig denies the allegations in Paragraph 240, except that it refers to the cited statement for its actual and complete contents.

241.  Keurig denies the allegations in Paragraph 241.

242.  Keurig lacks knowledge or information sufficient to form a belief as to what testing JBR has performed.  Keurig denies the remainder of the allegations in Paragraph 242.

243.  Keurig denies the allegations in Paragraph 243, except that it refers to the cited documents for their actual and complete contents.

244.  Keurig denies the allegations in Paragraph 244.

245.  Keurig denies the allegations in Paragraph 245.

246.  Keurig admits that its advertising has discussed brand variety.  Keurig denies the remainder of the allegations in Paragraph 246, except that it refers to the referenced documents for their actual and complete contents.

247.  Keurig denies the allegations in Paragraph 247.

248.  Keurig denies the allegations in Paragraph 248, except that it refers to the cited document for its actual and complete contents.

249.  Keurig lacks knowledge or information sufficient to form a belief as to what consumers have said to JBR. To the extent Paragraph 249 includes further allegations, Keurig denies them.

250.  Keurig admits that the 2.0 brewer displays an "Oops!" screen when it detects portion packs not designed for the 2.0 brewer.  Keurig denies the remainder of the allegations in Paragraph 250.

251.  Keurig admits that the "Oops!" screen accurately informs customers that the portion pack was not designed for the brewer.  Keurig denies the remainder of the allegations in Paragraph 251.

252.  Keurig denies the allegations in Paragraph 252.

253.  Keurig denies the allegations in Paragraph 253, except that it refers to the cited documents for their actual and complete contents.

254.  Keurig denies the allegations in Paragraph 254.

255.  Keurig admits that it invests in accurately advertising the 2.0 brewer.  Keurig denies the remainder of the allegations in Paragraph 255.

256.  Keurig admits that it disclosed to retailers that the new 2.0 brewer was designed to work with Keurig-licensed portion packs.  Keurig denies the remainder of the allegations in Paragraph 256.

257.  Keurig denies the allegations in Paragraph 257.

258.  Keurig denies the allegations in Paragraph 258.

259.  Keurig denies the allegations in Paragraph 259, except that it refers to the cited statements for their actual and complete contents.

260.  Keurig admits that the 2.0 brewer does not automatically select a hot cocoa setting.  Keurig denies the remainder of the allegations in Paragraph 260, except that it refers to the cited document for its actual and complete contents.

261.  Keurig denies the allegations in Paragraph 261, except that it refers to the cited document for its actual and complete contents.

262.  Keurig denies the allegations in Paragraph 262.

263.  Keurig denies the allegations in Paragraph 263.

264.  Keurig denies the allegations in Paragraph 264, except that it refers to the cited documents for their actual and complete contents.

265.  Keurig denies the allegations in Paragraph 265, except that it refers to the cited statements for their actual and complete contents.

266.  Keurig denies the allegations in Paragraph 266, except that it refers to the cited document for its actual and complete contents.

267.  Keurig denies the allegations in Paragraph 267, except that it refers to the cited document for its actual and complete contents.

268.  Keurig denies the allegations in Paragraph 268.

269.  Keurig denies the allegations in Paragraph 269.

270.  Keurig denies the allegations in Paragraph 270.

271.  Keurig lacks knowledge or information sufficient to form a belief as to what Costco told JBR.  Keurig denies the remainder of the allegations in Paragraph 271.

272.  Keurig lacks knowledge or information sufficient to form a belief as to what customers have said to JBR.  To the extent Paragraph 272 contains further allegations, Keurig denies them.

273.  Keurig admits that Kroger and BJ's Wholesale chose to work with Keurig for their private label brands.  Keurig lacks knowledge or information sufficient to form a belief as to what efforts JBR made related to Kroger, or what Kroger or other customers said to JBR. Keurig denies the remainder of the allegations in Paragraph 273.

274.  Keurig denies the allegations in Paragraph 274.

275.  Keurig lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 275.

276.  Keurig denies the allegations in Paragraph 276.

277.  Keurig lacks knowledge or information sufficient to form a belief as to what portion of JBR's sales are portion packs.  Keurig denies the remainder of the allegations in Paragraph 277.

27

278.  Keurig lacks knowledge or information sufficient to form a belief as to what customers have said to JBR.  Keurig denies the remainder of the allegations in Paragraph 278.

279.  Keurig lacks knowledge or information sufficient to form a belief as to what JBR's regional sales manager said.  Keurig denies the remainder of the allegations in Paragraph 279.

280.  Keurig lacks knowledge or information sufficient to form a belief as to the level of sales of private-label portion packs, either generally or by JBR.  Keurig also lacks knowledge or information sufficient to form a belief as to the details of JBR's negotiations with customers. Keurig denies the remainder of the allegations in Paragraph 280.

281.  Keurig lacks knowledge or information sufficient to form a belief as to the size of the Kroger grocery chain, or as to what Kroger has said to JBR.  Keurig denies the remainder of the allegations in Paragraph 281.

282.  Keurig lacks knowledge or information sufficient to form a belief as to the size of the Costco and BJ's chains, or what these customers said to JBR.  Keurig denies the remainder of the allegations in Paragraph 282.

283.  Keurig denies the allegations in Paragraph 283, except that it refers to the cited documents for their actual and complete contents.

284.  Keurig admits that it entered into licensing agreements with Kraft and Nestlé in the summer of 2014.  Keurig denies the remainder of the allegations in Paragraph 284.

285.  Keurig denies the allegations in Paragraph 285, except that it refers to the cited document for its actual and complete contents.

286.  Keurig admits that it plans for 100% of new K-Cups to be recyclable by 2020. Keurig lacks knowledge or information sufficient to form a belief as to the allegation regarding

the biodegradability of JBR's OneCup product.  Keurig denies the remainder of the allegations in Paragraph 286.

287.  Keurig denies the allegations in Paragraph 287.

288.  Keurig admits that consumers are willing to try new portion-pack brands.  Keurig denies the remainder of the allegations in Paragraph 288, except that it refers to the referenced document for its actual and complete contents.

289.  Keurig denies the allegations in Paragraph 289, except that it refers to the referenced documents for their actual and complete contents.

290.  Keurig lacks knowledge or information sufficient to form a belief as to the pricing of organic and specialty coffee.  Keurig denies the remainder of the allegations in Paragraph 290, except that it refers to the cited documents for their actual and complete contents.

291.  Keurig lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 291.

292.  Keurig admits that it plans for 100% of new K-Cups to be recyclable by 2020 and that, today, recycling a K-Cup requires removing the aluminum lid and emptying the grounds. Keurig denies the remainder of the allegations in Paragraph 292, except that it refers to the cited documents for their actual and complete contents.

293.  Keurig denies the allegations in Paragraph 293, except that it refers to the referenced statement for its actual and complete contents.

294.  Keurig incorporates by reference its responses to paragraphs 1 through 293 as if fully set forth herein.

295.  Keurig denies the allegations in Paragraph 295.

296.  Keurig denies the allegations in Paragraph 296.

297.  Keurig denies the allegations in Paragraph 297.

298.  Keurig denies the allegations in Paragraph 298.

299.  Keurig denies the allegations in Paragraph 299.

300.  Keurig denies the allegations in Paragraph 300.

301.  Keurig denies the allegations in Paragraph 301.

302.  Keurig denies the allegations in Paragraph 302.

303.  Keurig denies the allegations in Paragraph 303.

304.  Keurig incorporates by reference its responses to paragraphs 1 through 303 as if fully set forth herein.

305.  Keurig denies the allegations in Paragraph 305.

306.  Keurig admits the allegations in Paragraph 306.

307.  Keurig denies the allegations in Paragraph 307.

308.  Keurig denies the allegations in Paragraph 308.

309.  Keurig denies the allegations in Paragraph 309.

310.  Keurig denies the allegations in Paragraph 310.

311.  Keurig denies the allegations in Paragraph 311.

312.  Keurig incorporates by reference its responses to paragraphs 1 through 311 as if fully set forth herein.

313.  Keurig denies the allegations in Paragraph 313.

314.  Keurig denies the allegations in Paragraph 314.

315.  Keurig denies the allegations in Paragraph 315.

316.  Keurig denies the allegations in Paragraph 316.

317.  Keurig denies the allegations in Paragraph 317.

318.  Keurig incorporates by reference its responses to paragraphs 1 through 317 as if fully set forth herein.

319.  Keurig denies the allegations in Paragraph 319, except that it refers to the complaint in the *JBR* litigation for its actual and complete contents.

320.  Keurig admits that it declined an offer to stay discovery in the District of Massachusetts.  Keurig admits that discovery included depositions of more 15 people.  Keurig denies the remainder of the allegations in Paragraph 320.

321.  Keurig admits that in May 2013 the District of Massachusetts granted JBR's motion for summary judgment.  Keurig denies the remainder of the allegations in Paragraph 321, except that it refers to the cited judicial proceedings for their actual and complete contents.

322.  Keurig admits that it appealed to the Federal Circuit.  Keurig denies the remainder of the allegations in Paragraph 322, except that it refers to the cited judicial proceedings for their actual and complete contents.

323.  Keurig denies the allegations in Paragraph 323.

324.  Keurig denies the allegations in Paragraph 324.

325.  Keurig denies the allegations in Paragraph 325.

326.  Keurig denies the allegations in Paragraph 326.

327.  Keurig denies the allegations in Paragraph 327.

328.  Keurig denies the allegations in Paragraph 328.

329.  Keurig lacks knowledge or information sufficient to form a belief as to JBR's finances.  Keurig denies the remainder of the allegations in Paragraph 329.

330.  Keurig denies the allegations in Paragraph 330.

331.  Keurig denies the allegations in Paragraph 331.

332.  Keurig incorporates by reference its responses to paragraphs 1 through 331 as if fully set forth herein.

333.  Keurig denies the allegations in Paragraph 333, except that it refers to the complaint in the *JBR* litigation for its actual and complete contents.

334.  Keurig admits that the Federal Circuit affirmed in both litigations.  Keurig denies the remainder of the allegations in Paragraph 334, except that it refers to the cited judicial proceedings for their actual and complete contents.

335.  Keurig denies the allegations in Paragraph 335.

336.  Keurig denies the allegations in Paragraph 336.

337.  Keurig denies the allegations in Paragraph 337.

338.  Keurig incorporates by reference its responses to paragraphs 1 through 337 as if fully set forth herein.

339.  Keurig denies the allegations in Paragraph 339.

340.  Keurig admits the allegations in Paragraph 340.

341.  Keurig denies the allegations in Paragraph 341.

342.  Keurig denies the allegations in Paragraph 342.

343.  Keurig denies the allegations in Paragraph 343.

344.  Keurig denies the allegations in Paragraph 344.

345.  Keurig denies the allegations in Paragraph 345.

346.  Keurig denies the allegations in Paragraph 346.

347.  Keurig denies the allegations in Paragraph 347.

348.  Keurig denies the allegations in Paragraph 348.

349.  Keurig admits that Keurig brewers and portion packs are sold separately and together.  Keurig denies the remainder of the allegations in Paragraph 349.

350.  Keurig denies the allegations in Paragraph 350.

351.  Keurig denies the allegations in Paragraph 351.

352.  Keurig denies the allegations in Paragraph 352.

353.  Keurig denies the allegations in Paragraph 353.

354.  Keurig incorporates by reference its responses to paragraphs 1 through 353 as if fully set forth herein.

355.  Keurig denies the allegations in Paragraph 355.

356.  Keurig denies the allegations in Paragraph 356.

357.  Keurig denies the allegations in Paragraph 357.

358.  Keurig denies the allegations in Paragraph 358.

359.  Keurig denies the allegations in Paragraph 359.

360.  Keurig denies the allegations in Paragraph 360.

361.  Keurig denies the allegations in Paragraph 361.

362.  Keurig denies the allegations in Paragraph 362.

363.  Keurig incorporates by reference its responses to paragraphs 1 through 362 as if fully set forth herein.

364.  Keurig denies the allegations in Paragraph 364.

365.  Keurig denies the allegations in Paragraph 365.

366.  Keurig denies the allegations in Paragraph 366.

367.  Keurig denies the allegations in Paragraph 367.

368.  Keurig denies the allegations in Paragraph 368.

369.  Keurig denies the allegations in Paragraph 369.

370.  Keurig incorporates by reference its responses to paragraphs 1 through 369 as if fully set forth herein.

371.  Keurig denies the allegations in Paragraph 371.

372.  Keurig denies the allegations in Paragraph 372.

373.  Keurig denies the allegations in Paragraph 373.

374.  Keurig denies the allegations in Paragraph 374, except that it refers to the referenced statements for their actual and complete contents.

375.  Keurig denies the allegations in Paragraph 375.

376.  Keurig denies the allegations in Paragraph 376.

377.  Keurig incorporates by reference its responses to paragraphs 1 through 376 as if fully set forth herein.

378.  Keurig denies the allegations in Paragraph 378.

379.  Keurig denies the allegations in Paragraph 379.

380.  Keurig denies the allegations in Paragraph 380.

381.  Keurig denies the allegations in Paragraph 381.

382.  Keurig denies the allegations in Paragraph 382.

383.  Keurig incorporates by reference its responses to paragraphs 1 through 382 as if fully set forth herein.

384.  Keurig denies the allegations in Paragraph 384.

385.  Keurig denies the allegations in Paragraph 385.

386.  Keurig denies the allegations in Paragraph 386.

387.  Keurig denies the allegations in Paragraph 387.

388.  Keurig denies the allegations in Paragraph 388.

389.  Keurig incorporates by reference its responses to paragraphs 1 through 388 as if fully set forth herein.

390.  Keurig denies the allegations in Paragraph 390.

391.  Keurig incorporates by reference its responses to paragraphs 1 through 390 as if fully set forth herein.

392.  Keurig denies the allegations in Paragraph 392.

393.  Keurig incorporates by reference its responses to paragraphs 1 through 392 as if fully set forth herein.

394.  Keurig admits the allegations in Paragraph 394.

395.  Keurig admits the allegations in Paragraph 395.

396.  Keurig denies the allegations in Paragraph 396.

397.  Keurig denies the allegations in Paragraph 397.

398.  Keurig incorporates by reference its responses to paragraphs 1 through 397 as if fully set forth herein.

399.  Paragraph 399 contains conclusions of law to which no response is required.  To the extent a response is required, Keurig denies the allegations in Paragraph 399.

400.  Keurig admits the allegations in Paragraph 400.

401.  Keurig denies the allegations in Paragraph 401.

402.  Keurig denies the allegations in Paragraph 402.

403.  Keurig denies the allegations in Paragraph 403.

404.  Keurig denies the allegations in Paragraph 404.

405.  Keurig denies the allegations in Paragraph 405.

406.  Keurig denies the allegations in Paragraph 406.

407.  Keurig incorporates by reference its responses to paragraphs 1 through 406 as if fully set forth herein.

408.  Keurig denies the allegations in Paragraph 408.

409.  Keurig denies the allegations in Paragraph 409.

410.  Keurig denies the allegations in Paragraph 410.

411.  Keurig denies the allegations in Paragraph 411.

412.  Keurig incorporates by reference its responses to paragraphs 1 through 411 as if fully set forth herein.

413.  Keurig denies the allegations in Paragraph 413.

414.  Keurig denies the allegations in Paragraph 414.

## AFFIRMATIVE OR ALTERNATIVE DEFENSES

In addition to the reasons stated above, Plaintiff is not entitled to relief, and Keurig is entitled to judgment in its favor and against Plaintiff on the basis of the following Affirmative or Alternative Defenses, pleaded in the alternative to the extent that they may be found to be inconsistent.  In asserting these defenses, Keurig does not assume the burden of proof on any issue that would otherwise rest on Plaintiff.

1.  The Complaint fails to state a claim upon which relief can be granted.

2.  Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

3.  Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

4.  Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

5.  Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of estoppel.

6.  Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

7.  Plaintiff's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

8.  Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing.

9.  Plaintiff's claims are barred, in whole or in part, because Plaintiff did not suffer antitrust injury.

10. Plaintiff's claims are barred, in whole or in part, because Plaintiff did not suffer an injury-in-fact.

11. Plaintiff's claims are barred, in whole or in part, by the defense or privilege of competition.

12. Plaintiff's claims are barred, in whole or in part, by the defense of immateriality.

13. Plaintiff's claims are barred, in whole or in part, because the alleged damages, if any, are speculative and because of the impossibility of ascertaining and allocating those alleged damages.

14. Plaintiff is barred from recovery of any damages because of and to the extent of its failure to mitigate damages.

15. Plaintiff's alleged injury, if any, is, in whole or in part, the result of its own actions and contributory fault.

16. Any injuries or damages Plaintiff may have suffered were caused solely and proximately by the acts and omissions of others.

17. Plaintiff's claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine.

18. Plaintiff's claims are barred, in whole or in part, by Keurig's legitimate business justifications.

## **RESERVATION OF CLAIMS AND DEFENSES**

Keurig reserves the right to assert any additional claims and further defenses as may be revealed by discovery or otherwise.

## JURY TRIAL DEMAND

Keurig demands a trial by jury for all claims.

## CONCLUSION AS TO ANSWER AND DEFENSES

WHEREFORE, Keurig prays that:

A.      Plaintiff takes nothing by way of its Complaint, and the action be dismissed with prejudice;

B.      Judgment be entered in favor of Keurig and against Plaintiff with respect to all causes of action in the Complaint;

C.      The Court award Keurig its attorneys' fees and all other costs reasonably incurred in defense of this action; and

D.      The Court award Keurig such other relief as the Court may deem just and proper.

## COUNTERCLAIMS

## I.      INTRODUCTION

1.      Counterclaim-Plaintiff Keurig Green Mountain, Inc. ("Keurig") brings these claims against Counterclaim-Defendant JBR, Inc., doing business as Rogers Family Company ("JBR") for violations of the Lanham Act, 15 U.S.C. § 1125(a), N.Y. Gen. Bus. Law §§ 349-350, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and Cal. Bus. & Prof. Code §§ 17500, *et seq.*, which prohibit unfair competition through false and misleading advertising or promotion.

2.      JBR sells portion packs of coffee for use in Keurig coffee brewers.  It has promoted these portion packs in nationwide advertising campaigns as having "No Plastic" and being "97% Biodegradable" and "Compostable."  JBR's environmental claims regarding its portion packs are false and misleading, as JBR knows.

3.      Keurig also sells portion packs of coffee for use in Keurig coffee brewers.  As a direct result of JBR's false and misleading environmental claims, consumers have purchased JBR's portion packs instead of Keurig's.

4.      Contrary to its advertising and promotional statements, JBR's portion packs are not plastic-free, biodegradable, or compostable when disposed of in customary fashion, including in the trash or in a home compost pile.

5.      JBR's most common portion pack format – its "97% Biodegradable OneCup" – includes a nylon plastic mesh cup that is not biodegradable.  The pack also includes a ring made of a plastic known as polylactic acid ("PLA"), which is biodegradable, if at all, only under the tightly controlled conditions available in an industrial composting facility that accepts plastic. Significantly, there are only around 40 such facilities in the entire United States, and not all of them accept coffee portion packs.

6.      JBR's newest pack format – its "NoWaste OneCup" – also uses PLA and is biodegradable, if at all, only in an industrial composting facility that accepts plastics.

7.      In reality, JBR's portion packs almost never reach the limited facilities where they are potentially biodegradable.  Instead, JBR's portion packs wind up in landfills or are improperly disposed of in home compost piles, where they are not biodegradable or compostable.

8.      JBR's false and misleading advertising has injured consumers and caused Keurig to lose sales, business opportunities, and good will.  If JBR is permitted to continue its false and misleading advertising, Keurig and consumers will continue to suffer harm.

## II.      THE PARTIES

9.      Counterclaim-Plaintiff Keurig is a Delaware corporation with its principal place of business in Waterbury, Vermont.

10.     Counterclaim-Defendant JBR is a California corporation with its principal place of business in Lincoln, California.

### III.     JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over all federal claims asserted against JBR.  *See* 15 U.S.C. § 1125(a)&(c); 28 U.S.C. §§ 1331, 1337.

12.     The Court has subject matter jurisdiction over all state law claims asserted against JBR because the state law claims are part of the same case or controversy as the federal claims. *See* 28 U.S.C. § 1367.

13.     The Court has personal jurisdiction over JBR because JBR regularly does and solicits substantial business in New York, either directly or through intermediaries; is continuously and systematically present in New York; and has established minimum contacts in New York.  Furthermore, JBR's illegal activities described herein were directed at, and had the intended effect of, causing injury to consumers in this District.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b).  For venue purposes, JBR can be found in and transacts business in this District.

### IV.     INTERSTATE COMMERCE

15.     JBR advertises and sells its portion packs in interstate commerce, including through and into this District.

16.     The illegal activities of JBR described herein had a direct, substantial, and reasonably foreseeable effect on interstate commerce.

### V.     ADDITIONAL FACTUAL ALLEGATIONS

**A.     Keurig Competes to Sell Portion Packs**

17.     Keurig produces exceptional hot beverages by offering innovative brewing machines and beverage portion packs for use with its brewers.

18.     Keurig competes against a wide range of competitors and loses sales to competing suppliers when consumers prefer another supplier's product.

19.     A substantial and growing number of consumers value products that are packaged in a more sustainable way, including products that are biodegradable and compostable.  A product's advertising regarding environmental sustainability has a material effect on consumers, because they are more likely to buy products that are marketed as environmentally friendly.

20.     Because of JBR's false statements, which have been disseminated to consumers through its commercial advertising and promotion, substantial numbers of consumers have been led to believe that JBR's portion packs contain "no plastic," are "biodegradable" and are "compostable."  This advertising is material to consumer purchasing decisions.   If consumers are led to believe that a particular portion pack contains "no plastic," is "biodegradable," or is "compostable," that will increase the product's sales over competing alternatives, including Keurig's portion packs.

**B.     JBR Produces and Sells Portion Packs**

21.     JBR sells portion packs that it brands as the OneCup®.  JBR advertises that its portion packs are compatible with most single-serve brewers, and it encourages the use of the OneCup with Keurig brewers.  JBR sells OneCup portion packs under several brands, including San Francisco Bay® and Organic Coffee Company®.

22.     JBR sells its OneCup portion packs through various channels, including direct online sales by JBR, as well as through online retailers like Amazon, and through other retailers including Costco, both online and in retail stores nationwide.

**C.     JBR Promotes the OneCup with False and Misleading Advertising**

23.     To increase its share of sales, JBR makes nationwide advertising and promotional claims about the environmental sustainability of its OneCup portion packs, including online and

on its packaging.  Among other things, JBR has claimed that its portion packs contain "no plastic," are "97% biodegradable" and are "compostable."

24.      JBR has knowingly made these and other false and misleading advertising claims regarding the purported environmental benefits of its products.

25.      JBR makes these claims in its national commercial advertising and promotion because it knows that the perceived environmental footprint of a product is material to consumer purchasing decisions.

26.      As a direct result of JBR's false and misleading advertising and promotional statements, consumers who would otherwise have purchased portion packs sold by Keurig bought JBR portion packs instead.

**i)      "No Plastic Cup"**

27.      JBR has advertised its portion packs as having "NO PLASTIC CUP" and "No Plastic."  This "No Plastic" messaging is frequently repeated.  The image below shows an example of a JBR portion pack lid making this claim.



28.     This same statement – "NO PLASTIC CUP" – also appears on JBR's website, https://www.sanfranciscobaycoffee.com/.



29.     In 2014, John Rogers, JBR's Vice President of Sales and Marketing, announced that "San Francisco Bay **OneCups do NOT have any plastic**."

30.     Similarly, in a 2015 interview JBR Vice President Jim Rogers stated, "We came up with a pod that actually **does not have a plastic cup**. It's 97 percent biodegradable."

31.     Although JBR has extensively advertised that it uses "No Plastic" and "No Plastic Cup," OneCups **do** contain plastic, as even Jim Rogers went on to concede in his 2015 interview: First, the ring of JBR's product is plastic and, second, "**the cup is a food-grade plastic mesh**."

32.     JBR also admits on its website that the OneCup's cup is plastic, stating: "So, technically, our pods contain plastic." JBR's admissions that the cup of the OneCup contains plastic show that it knows that its "No Plastic" and "NO PLASTIC CUP" advertising is false.

33.     Substantial numbers of consumers are likely to be and in fact were misled by JBR's advertising into believing that the OneCup does not contain plastic. As consumers reviewing JBR's portion packs on Amazon stated:

a.     "Coffee's fine but the real selling point is no plastic."

b.     "I love the fact that there is no plastic cup and they are disposable. For my regular cup of joe in the morning the flavor is fine."

c.     "Great alternative to plastic Keurig servings."

d.   "I LOVE that it is not in plastic cups!"

e.   "[L]ove the fact that i am not t[h]rowing away plastic every morning."

f.   "Really appreciate the paper pods vs plastic."

g.   "We love the eco-friendly design, and the fact that our coffee isn't being filtered through plastic."

h.   "The thing I like the best is the non plastic container."

i.   "I throw the pods in my compost.  I won't buy plastic cups again."

j.   "I like that they are not plastic pods, they are paper, much better for the environment."

k.   "I love the k cups are filters and not made of plastic."

l.   "[P]lastic-less pods are a nice alternative to the standard K Cups."

m.   "[B]etter than the standard k-cups because instead of plastic, it's these fabric-mesh type material."

n.   "[T]he cup that holds the coffee is made of a cloth type material....not plastic."

o.   "[N]o plastic to feel bad about using!"

p.   "No plastic cup to send to the landfill."

q.   "Even the plastic looking rim isn't plastic."

r.   "I like that these cups have no plastic … I cannot even imagine going back to plastic K-cups after using these."

34.    JBR's false and misleading advertising has injured Keurig through decreased sales and loss of business opportunities and goodwill associated with Keurig's products.  Injury to Keurig is likely to continue and to compound as JBR's false and misleading advertising continues.

44

ii)    **"97% Bio-Degradable"**

35.    Since at least October 2013, JBR has sold a version of OneCup portion packs that it advertises, markets, and promotes as "97% BIO-DEGRADABLE."  The "Biodegradable" OneCup continues to be sold online and in stores.

36.    The "biodegradable" claim is a prominent part of JBR's advertising across multiple products and channels, and has been for years.  JBR has frequently advertised with the word "BIO-DEGRADABLE" in a font size that is even larger than the font used for the product's name.





37.    JBR's YouTube channel likewise claims that it developed a "97% biodegradable OneCup™" because the packaging is "environment-friendly."

38.    JBR continues today to advertise its portion packs as "97% biodegradable," including on retailer websites.

39.     JBR makes this "97% Biodegradable" claim a central theme in its commercial advertising and promotion because JBR knows that this will be material to consumer purchasing decisions.  Indeed, consumers reviewing the product on Amazon specifically noted that it was material to their purchasing decisions, stating:

a.   "I liked the 97% biodegradable aspect, which is why I bought it.  I just wish I could acquire the taste for it!"

b.   "I thought these biodegradable K-Cups would help assuage my [environmental] guilt but … it's basically undrinkable."

c.   "Love the concept of biodegradable yet this coffee is horrible."

d.   "Good idea for the biodegradable cups, but obviously there is a big need for quality control with the product."

e.   "I wanted to like it because of the biodegradable pods, but it was very disappointing."

f.   "The biodegradable stuff seemed like it would make us want to purchase this, don't do it."

g.   "I wanted to like these so much because of the biodegradable packaging, but they're just not the quality of flavor I wanted."

h.   "I really enjoy the biodegradable-ness of the product."

i.   "I purchased mostly because the packaging is biodegradable and I wanted to avoid a negative impact on our landfill."

j.   "This Company has done an EXCELLENT JOB at making packaging 97% biodegradable, which was a BIG factor in deciding to order it."

k.   "LOVE that they're biodegradable.  There's no plastic here, unlike other compostable k-cups (which have to go to a particular composting facility to even work)."

40.   JBR's prominent claims that its portion packs are "97% BIO-DEGRADABLE" are false and misleading because the product is not "biodegradable" as that term is likely to be understood by consumers.  Consumers are likely to and do in fact understand the term "biodegradable" to indicate that a product will break down in a reasonably short period of time when disposed of in customary fashion, e.g., in the trash or in the consumer's home compost.

41.   JBR's advertising furthers this understanding.  For example, on its website JBR promotes the benefits of home composting.  As shown in the image below, it offers "7 reasons to start composting" including reason #1 "composting is simple."  It offers tips on how consumers can start a home compost pile including suggesting that, "If you are a coffee or tea drinker, start to add the coffee grounds **with the filter** to the pile."  And, on the same page, JBR advertises "80 Count Box Price Drop – Shop Now" and links to a page selling boxes of OneCup portion packs. JBR engages in this misleading advertising even though its packs have plastic filters and are not suitable for home composting.



42.    JBR's OneCups are **not** biodegradable in a reasonably short period of time, if at all, when disposed of in customary fashion, including in the trash or in a home compost pile.  If the packs are put in a trash bag, they will be taken to the landfill, where they will not biodegrade in a reasonably short period of time, if at all.  Likewise, if the packs are put in a consumer's home compost, they will not be exposed to the conditions necessary for them to biodegrade in a reasonably short period of time.

43.    A JBR spokesperson has stated: "Our San Francisco Bay OneCup 97% (by weight) are **certified as biodegradable in an industrial composting plant**."  The spokesperson went on to note that the packs are **not** suitable for home composting and recommended that consumers use an industrial composting facility – if they can find one – to "compost" the packs and "recommend[ed] that consumers discard the mesh filter in their trash."

44.    It is unclear what certification JBR is referencing.  JBR does not appear to have received any environmental certification for these "97% Biodegradable" portion packs.

45.     JBR has at times admitted that only part of the "97% biodegradable OneCup" might be biodegradable, and only then under the tightly controlled conditions used in industrial composting facilities.  Notably, there are only around 40 industrial composting facilities in the United States that accept plastics.  Of these, some do not accept plastics unless they have been certified as compostable by a certification body, and some do not accept coffee portion packs at all.  The overwhelming majority of U.S. consumers thus have no ability to ensure that the "97% Biodegradable" cup is actually biodegraded, and JBR's "97% BIO-DEGRADABLE One Cup" advertising is false and misleading.

46.     JBR's "97% BIO-DEGRADABLE OneCup" advertising is separately false and misleading in that the OneCup is in fact not a "97% biodegradable OneCup."  Rather, to reach the 97% metric requires also weighing exterior packaging including boxes and bags.  The cup itself is far less than 97% biodegradable.



47.     In some iterations of JBR's packaging, JBR discloses in small print that: "97% bio-degradable by weight **includes ring, bag and box**.  **Discard lidding & mesh filter in trash.** Dispose of remaining with compostable materials.  **Composting may not be available in your**

**area**."  But this statement does not counteract JBR's numerous unqualified statements that it is offering a "97% Biodegradable **OneCup**."  And, even where this statement appears, it is not a clear, prominent, and understandable disclosure that the OneCups are less than 97% biodegradable.



48.     Additionally, JBR's statement that "composting may not be available in your area" is misleading because it does not make clear that an **industrial composting facility** is required to biodegrade the "97% Biodegradable" OneCup, if indeed it is biodegradable at all. Further, the statement does not explain that the requisite industrial composting facilities to make the "Biodegradable" OneCup biodegrade are almost never available – there are only around 40 industrial composting facilities in the United States that accept plastic.  None of those facilities accept plastic like the nylon mesh used in JBR's "97% Biodegradable OneCup."  Moreover, the facilities may not accept products that have not been certified as compostable by a third party certification organization, or may not accept coffee portion packs at all.

49.     The false and misleading nature of JBR's advertising is exacerbated because JBR also makes the confusing and contradictory statement that consumers may dispose of the packs "with compostable materials."  In addition, some of JBR's advertising includes distracting elements that cover portions of the statement.



50.     The contrast between reality and JBR's misleading claims was deeply upsetting to the few consumers who figured out the truth.  As some consumers reviewing JBR products on Amazon complained:

a.     "FALSE ADVERTISING!  You can't compost these at home.  I bought these pods specifically because they were compostable, only to find upon their arrival that they can only be composted in industrial facilities. FALSE ADVERTISING!"

b.     "POLYESTER FILTER is NOT Biodegradable/Compostable.  If you're like me and specifically searching for a fully compostable K cup, look elsewhere….  **Shame on this company** for listing this as a compostable product.  **You**

51

shouldn't have to sift through a million reviews or q & a's to discover this like I did (and too late)…."

c. "**If the plastic ring and the mesh bag are not bio-degradable, What is biodegradable?  The Coffee?**"

d. "The 'eco-friendly packaging' is only half true if the plastic ring part is not compostable.  I prefer to buy regular K-cup next time."

e. "These cups do NOT decompose for decades. Cmon people."

f. "**I thought these were 100% compost ready when I first bought them and had to clear out HUNDREDS of plastic rings from my compost bin the next year.** Don't make that mistake!"

g. "[D]on't be fooled by the '97%' …. This refers to the box that it is shipped in and the compostable bags that contain the pods inside the box...not the actual pods themselves (unless you can figure out a way to remove the mesh, coffee and lid from the pod).  Just saying that **this is deceptive marketing**, since everyone's shipping box is recyclable!"

51.    Although a few consumers have figured out the truth regarding JBR's false and misleading environmental claims, most have not.

52.    Many consumers were misled by JBR's "97% Biodegradable" claims into attempting to compost the product in their home compost.  Numerous consumers reviewing JBR's products on Amazon describe throwing JBR's "97% Biodegradable" portion packs – often including the plastic top and plastic mesh cup – into their home compost piles:

a. "[M]ore environmentally-friendly than those Earth-damaging Green Mountain (owned by keurig) brands?  Heck to the yes.  **We just throw them in our compost** and even the garden is looking nicer."

b. "[I] can cut off mesh part and throw that in my compost."

c. "I love these pods.  I cut the mesh off and **put everything, coffee and top and all, into my composter**."

d. "[T]he **mesh n grounds go in my compost pile**."

e. "**If you have a compost you just throw the used pods in**."

f. "[E]xcept for the foil top, **the whole pod can be composted.  Cool stuff for a gardener**."

g. "**We just cut the filter off and [throw] the coffee and filter into the compost** and you're only discarding the small plastic cover."

h. "I throw it right into my compost - winning!"

i. "I throw in my compost pile instead of in the trash."

j. "Instead of trashing them I have started … adding them to my compost in the yard."

k. "Can compost everything for the garden."

l. "[I] throw away the pods into my compost pile."

m. "I can toss the whole thing in my compost pile rather than an ever growing landfill!!!"

n. "[I] dump in my garden after use."

o. "[I] love that they are not plastic cups--they are mesh with paper on top and the only thing that cannot go into the garden is the plastic ring."

p.  "I especially like the cloth filter and the packaging can go in the compost pile."

q.  **The pods are not made with plastic so I just toss them in the compost pile! Awesome!**"

53.      But, as noted above, JBR's packs in fact are made with plastic and are not suitable for home composting.  The packs should not be disposed of in a home compost pile as many consumers have been misled into doing.  If the packs are put in a consumer's home compost, they will not be exposed to the conditions necessary for them to biodegrade in a reasonably short period of time.

54.      In sum, JBR's bold-faced advertising of "97% BIO-DEGRADABLE" portion packs is false and misleading.  A substantial number of consumers are likely to and do in fact believe that the packs will biodegrade in a reasonable period of time when disposed of in customary fashion, whether in the home compost pile or in the trash.

55.      JBR's false and misleading advertising and promotional statement regarding the "Biodegradable" OneCup have injured Keurig through decreased sales and a loss of business opportunities and goodwill associated with Keurig's products.  Injury to Keurig is likely to continue and to compound as JBR's false and misleading advertising continues.

**iii)      "Compostable" and "No Waste"**

56.      In addition to claiming that its portion packs are "biodegradable" and contain "no plastic," JBR has also made a number of claims about the product being "compostable."

57.      On JBR's website, JBR told consumers to place these "97% Biodegradable" portion packs in their home compost.  JBR stated, "**When you see 'compostable' on our product or package, it means we have made sure the material can be composted safely in your home compost pile**."  JBR went on to direct consumers to discard the mesh in their trash

and throw the rest of their OneCup, including the plastic ring made from PLA, into their home compost.

58.     But JBR's "97% Biodegradable" portion packs are not certified as or suitable for home composting.

59.     More recently, on October 26, 2017, JBR announced the launch of a new OneCup design.  JBR has advertised that this new packaging is "**100% COMPOSTABLE**" and JBR's new packaging prominently advertises the new "NO waste OneCup" with "COMPOSTABLE BAG & POD."



60.     JBR's web page announcing the new packaging says "WHAT PARTS OF THE ONECUP ARE COMPOSTABLE?  ALL OF IT!"  The announcement is false and misleading. Among other things, the page does not explain that the new portion pack is compostable, if at all, only in an industrial composting facility.  Images taken from the webpage are attached as Annex A.

61.     There is a link at the bottom of the announcement page that, if clicked, takes consumers to another page if they wish to learn even more ("Disclaimer Webpage").  On that second webpage, JBR concedes that the "100% compostable" pack is compostable only in an industrial facility.  JBR presents a stamp from the Biodegradable Products Institute ("BPI") saying "Compostable in Industrial Facilities" and stating in smaller font "Check locally, as these do not exist in many communities.  **Not suitable for backyard composting**."



62.     JBR then states in large font: "What does Industrial/Commercial Facilities mean? Commercial or industrial composting is large-scale composting, which is designed to handle a very high volume of organic waste.  **These are often run by the city or county and are frequently found near your landfill**."

63.     JBR's assertion that facilities that accept its portion packs for composting are "frequently found near your landfill" is false and misleading.  In fact, such industrial composting facilities are not "frequently" found near consumers' regular landfills.  JBR's statements thus distract from and conflict with the BPI statement in smaller font.

64.     The Disclaimer Webpage further states:

    a.     "**Can I just put the OneCup in my home compost?**  No.  Our OneCup is not certified compostable for home composting yet.  We are working on this certification, but the requirements are different than industrial/commercial composting.  To know if a product is ok for home composting, you need to look for a certification like this one from Vincotte that specifically says HOME on it."

b.  JBR then copies a logo denoting that a product is safe for home composting.



65.  JBR also claims on its Disclaimer Webpage that: "Biodegradable products can leave metal residue in their return to nature."

66.  Some of JBR's newest packaging further describes the OneCup as "No waste" and "Compostable" in large font, and includes a disclaimer in harder to read font (e.g., yellow font on a yellowish green background) stating that the product is "certified compostable in an Industrial Composting Facility" and "[n]ot certified for home composting."  This disclaimer is not clear, prominent, and understandable, even where it appears.



57

67.     On its Facebook page, JBR announced, "The 100% Compostable No Waste OneCup is now available at your local Costco."  JBR's Facebook post offers no explanation that the "100% Compostable" pack is only compostable in industrial facilities, and will not compost when disposed of in customary fashion.  There also is no link to the Disclaimer Webpage.

68.     In the press, JBR Senior Vice President Jim Rogers bragged about making portion packs using "100 percent compostable materials."  And John Rogers, JBR's Vice President of Sales and Marketing, also asserted that JBR's new packs are "100% Compostable" and said, "We know that most people want the option to recycle or compost their single-serve pods."  Neither JBR executive explained that the "100% Compostable" OneCup is only compostable in hard-to-find industrial facilities.

69.     JBR's claims that its portion packs are "No Waste" and "Compostable" are false and misleading, and JBR knows this.  The OneCup is not compostable through customary disposal, either in a home compost or trash.

70.     JBR has made "compostable" claims over the years because it knows that, if consumers believe that a product is compostable, that will be material to their purchasing decisions and make them more likely to purchase the product.

71.     Indeed, hundreds of Amazon reviews cite JBR's compostability claims.  As one consumer put it, "I'll probably buy again because I'm a sucker for the composting."

72.     JBR's advertising and promotional statements regarding the earlier "compostable" OneCups and the new "100% compostable OneCup" do not clearly or consistently explain that the products cannot be composted at home and are only compostable – if at all – in a type of industrial facility that is available in only a tiny fraction of communities.

73.     Some consumers have figured out the truth.  As some consumer reviews on Amazon note:

    a.   "FALSE ADVERTISING!  You can't compost these at home.  I bought these pods specifically because they were compostable, only to find upon their arrival that they can only be composted in industrial facilities. FALSE ADVERTISING!"

    b.   "POLYESTER FILTER is NOT Biodegradable/Compostable.  If you're like me and specifically searching for a fully compostable K cup, look elsewhere…. Shame on this company for listing this as a compostable product. You shouldn't have to sift through a million reviews or q & a's to discover this like I did (and too late)…."

    c.   **"[N]ot actually compostable** … I bought these because I thought the description said the packaging was compostable.  Well, **not in my garden bin** apparently."

    d.   "[W]hile the packaging says it's compostible, this seems to be just a gimmick."

74.     But a substantial number of consumers have been and are likely to continue being misled into thinking that JBR's portion packs are "compostable" in the ordinary understanding of that term.

75.     Consumers are also likely to continue to attempt to compost JBR's portion packs in their own home gardens based on JBR's false and misleading environmental claims, including its "compostable" advertising.

76.     Even JBR's sometime disclaimers that, for example, "Composting may not be available in your area," are not clear, prominent, and understandable disclosures regarding the true limitations of the product.

77.     JBR has made numerous other environmental claims about its portion packs since introducing the packs in or around 2013.  These advertisements falsely give the impression that JBR's packs have no negative consequences for the environment.

78.     JBR's false and misleading statements made in commercial advertising and promotion are material to consumer purchasing decisions, and result in decreased sales and a loss of business opportunities and goodwill associated with Keurig's products.  Injury to Keurig is likely to continue and to compound as JBR's false and misleading advertising continues.

## VI.     CLAIMS FOR RELIEF

### A.  Count I – Violation of 15 U.S.C. § 1125(a)

79.     Keurig alleges and incorporates all prior paragraphs as though set forth fully herein.

80.     At least as early as 2013 and continuing through today, JBR has willfully made false and misleading statements about its OneCup portion packs as part of an organized nationwide advertising campaign.  JBR has claimed, in both online and hardcopy advertising and promotional statements presented to countless consumers nationwide, that, among other things, the OneCup contains "No Plastic," is "97% Bio-Degradable" and is "Compostable."

81.     Contrary to JBR's claims, OneCup portion packs are not free of plastic, "97%-biodegradable," or "compostable," as advertised.

82.     Yet substantial numbers of consumers are likely to be misled (and in fact have been misled) by JBR's false and misleading advertising and promotional material.

83.     JBR's false and misleading statements are material to purchasing decisions and therefore have caused, and will continue to cause, substantial numbers of consumers to purchase JBR's portion packs instead of Keurig's portion packs.  As a direct result of JBR's false

advertising, Keurig has lost, and will continue to lose, substantial sales, business opportunities and goodwill.

**B.    Count II – Violation of N.Y. Gen. Bus. Law § 349**

84.    Keurig alleges and incorporates all prior paragraphs as though set forth fully herein.

85.    At least as early as 2013 and continuing through today, JBR has made false and misleading statements about its OneCup portion packs as part of an organized nationwide advertising campaign.  JBR has claimed, in both online and hardcopy advertising and promotional statements presented to consumers in New York and nationwide, that, among other things, the OneCup contains "No Plastic," is "97% Bio-Degradable" and is "Compostable."

86.    Contrary to JBR's claims, OneCup portion packs are not free of plastic, "97%-biodegradable," or "compostable," as advertised.

87.    JBR's willful and knowing statements were deceptive because they were consumer-oriented and materially misleading.

88.    Furthermore, JBR's statements form a pattern of deceptive advertising that has deceived New York consumers since at least 2013.

89.    JBR's statements have caused, and will continue to cause, consumers to purchase JBR's portion packs instead of Keurig's portion packs.  As a direct result of JBR's false advertising, Keurig has lost, and will continue to lose, sales, business opportunities and goodwill.

**C.    Count III – Violation of N.Y. Gen. Bus. Law § 350**

90.    Keurig alleges and incorporates all prior paragraphs as though set forth fully herein.

91.     At least as early as 2013 and continuing through today, JBR has made false and misleading statements about its OneCup portion packs as part of an organized nationwide commercial advertising and promotion campaign.  JBR has claimed, in both online and hardcopy advertising and promotional statements presented to consumers in New York and nationwide, that, among other things, the OneCup contains "No Plastic," is "97% Bio-Degradable" and is "Compostable."

92.     Contrary to JBR's claims, OneCup portion packs are not free of plastic, "97%-biodegradable," or "compostable," as advertised.

93.     JBR's willful and knowing statements were deceptive because they were consumer-oriented and materially misleading.  New York consumers actually relied on these deceptive statements when they purchased JBR's products.

94.     Furthermore, JBR's statements form a pattern of deceptive advertising that has deceived New York consumers since at least 2013.

95.     JBR's statements have caused, and will continue to cause, consumers to purchase JBR's portion packs instead of Keurig's portion packs.  As a direct result of JBR's false advertising, Keurig has lost, and will continue to lose, sales, business opportunities and goodwill.

**D.     Count IV – Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.***

96.     Keurig alleges and incorporates all prior paragraphs as though set forth fully herein.

97.     At least as early as 2013 and continuing through today, JBR has made false and misleading statements about its OneCup portion packs as part of an organized nationwide commercial advertising and promotion campaign.  JBR has claimed, in both online and hardcopy advertising and promotional statements presented to consumers in California and nationwide,

that, among other things, the OneCup contains "No Plastic," is "97% Bio-Degradable" and is "Compostable."

98.     Contrary to JBR's claims, OneCup portion packs are not free of plastic, "97%-biodegradable," or "compostable," as advertised.

99.     As alleged herein, JBR's statements constitute unfair, unlawful, and fraudulent business practices.

100.     JBR's unfair, unlawful, and fraudulent business practices have caused, and will continue to cause, consumers to purchase JBR's portion packs instead of Keurig's portion packs. As a direct result of JBR's false advertising, Keurig has lost, and will continue to lose, sales, business opportunities and goodwill.

E.     **Count V – Violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.***

101.     Keurig alleges and incorporates all prior paragraphs as though set forth fully herein.

102.     At least as early as 2013 and continuing through today, JBR has made untrue and misleading statements about its OneCup portion packs as part of an organized nationwide advertising campaign.  JBR has claimed, in both online and hardcopy advertising and promotional statements presented to countless consumers in California and nationwide, that, among other things, its portion packs contain "No Plastic," are "97% Bio-Degradable" and "Compostable."

103.     Contrary to JBR's claims, OneCup portion packs are not free of plastic, "97% biodegradable," or "compostable,' as advertised.

104.     JBR knew, or should have known had it exercised reasonable care, that its statements were untrue, misleading, or likely to deceive consumers.

105.    JBR's untrue and misleading statements have caused, and will continue to cause, consumers to purchase JBR's portion packs instead of Keurig's portion packs.  As a direct result of JBR's false advertising, Keurig has lost, and will continue to lose, sales, business opportunities and goodwill.

## VII.    DEMAND FOR JURY TRIAL

106.    Counterclaim-Plaintiff demands a trial by jury of all issues so triable in this case.

## VIII.    PRAYER FOR RELIEF

THEREFORE, Counterclaim-Plaintiff prays for relief as follows:

107.    A declaration that JBR has violated, and threatens to continue violating the Lanham Act, 15 U.S.C. § 1125(a); the New York Consumer Protection Act, N.Y. Gen. Bus. Law §§ 349-350; the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

108.    A permanent injunction prohibiting JBR and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with them from continuing their unlawful acts;

109.    An award of all damages sustained by Keurig, as provided in the above-listed statutes;

110.    An award of punitive damages;

111.    An award of all costs and expenses in this action, including attorneys' fees;

112.    Pre- and post-judgment interest; and

113.    Such other relief as the nature of this case may require or as the Court deems just and proper.

\*\*\*

ANNEX A



# INTRODUCING THE 100% COMPOSTABLE "NO WASTE ONECUP"

NEWS, ONECUP PRODUCTS / OCTOBER 26, 2017 / BY CHRIS SWIFT

## NOW AVAILABLE

Starting today, when you visit your local Costco you will see our new certified *100% compostable French Roast 100 Count* available for purchase.

We are so excited to release our *fully compostable single serve coffee* and even more excited to have the initial release with our amazing partner, Costco.

## WHAT PARTS OF THE ONECUP ARE COMPOSTABLE? ALL OF IT!



*The Lidding* - Made from plant-based renewable resources such as paper and wood pulp.

*The Ring* - Made from plant-based renewable resources such as vegetable oil, plant starches, and trees.

*The Mesh Filter* - Made from plant-based renewable resources such as vegetable oil, plant starches, and trees.

*The Mother Bag* - Unlike other brands, we feel that it is important to have all packaging elements either compostable or recyclable. This includes the bag our OneCups are packed in for freshness. Each Mother Bag is made from plant-based renewable resources such as paper and wood pulp.



## WANT TO LEARN MORE?

Please visit - THE NEW NO WASTE ONECUP

At this time, **ONLY** the 100 count box, available **only** at Costcos Nationwide, is certified 100% compostable.



DATED:  February 6, 2018

By: */s/ Leah Brannon*                                    
     **George S. Cary**
     **Leah Brannon**
     *gcary@cgsh.com*
     *lbrannon@cgsh.com*
     CLEARY GOTTLIEB STEEN & HAMILTON LLP
     2000 Pennsylvania Avenue, NW
     Washington, DC 20006
     Telephone:  (202) 974-1500

     **Lev L. Dassin**
     *ldassin@cgsh.com*
     CLEARY GOTTLIEB STEEN & HAMILTON LLP
     One Liberty Plaza
     New York, NY 10006
     Telephone:  (212) 225-2790

     **Wendelynne J. Newton**
     *wendelynne.netwon@bipc.com*
     BUCHANAN INGERSOLL & ROONEY, P.C.
     One Oxford Centre
     301 Grant Street, 20th Floor
     Pittsburgh, PA 15219-1410
     Telephone:  (412) 562-8932

     *Attorneys for Defendant, Counterclaim-Plaintiff*
     *Keurig Green Mountain, Inc., f/k/a Green Mountain*
     *Coffee Roasters, Inc., and as successor to Keurig*
     *Incorporated*