UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

IN RE: KEURIG GREEN MOUNTAIN : 14 MD 2542 (VSB)(HBP)
SINGLE SERVE COFFEE ANTITRUST
LITIGATION : OPINION
AND ORDER
------------------------------------X

PITMAN, United States Magistrate Judge:

I. Introduction

By letter dated April 17, 2019 (Docket Item ("D.I.") 575), defendant Keurig Green Mountain, Inc. ("Keurig") moves to compel plaintiff JBR, Inc. ("JBR") to produce communications with its attorneys concerning its packaging and advertising. For the reasons set forth below, Keuring's application is granted unless JBR formally withdraws its good faith defense to Keurig's false advertising counterclaims.

II. Facts

This is a multi-district antitrust action involving Keurig's well-known coffee makers. A principle feature of Keurig's coffee makers is their use of small, disposable plastic cups, usually containing ground coffee. The cup is inserted into Keurig's machine, heated water is passed though the cup and coffee drips into a cup placed below the disposable plastic cup. In addition to manufacturing and selling the coffee makers, Keurig also manufactures and sells the disposable plastic cups.

Plaintiffs manufacture and sell disposable cups that can be used in Keurig's coffee makers and compete with Keurig in that market. Plaintiffs' allegations against Keurig are lengthy and complicated.[1] Thankfully, the present dispute does not require a detailed analysis of those allegations. In very general terms, plaintiffs allege that Keurig violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, the Clayton Act, 15 U.S.C. § 14, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and multiple state statutes by (1) filing baseless lawsuits against two of the plaintiffs, (2) entering into "non-competition," tying and exclusive dealing agreements, (3) threatening companies who would do business with Keurig's competitors, (4) re-designing its coffee makers to render competitors' cups unusable in Keurig's machines and (5) maligning competitors and interfering with their business relationships.

The instant dispute arises out of Keurig's counterclaims. Keurig alleges that one of its competitors, JBR, has marketed its competing cups with false representations that its cups contain "no plastic" and are "biodegradable," "compostable" and similar statements. Keurig claims that these

---

[1] Plaintiffs' allegations are set forth in detail in the opinion of the Honorable Vernon S. Broderick, United States District Judge, granting in part and denying in part Keurig's motion to dismiss. In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation, 14 MD 2542 (VSB), 2019 WL 1789789 (S.D.N.Y. Apr. 22, 2019).

2

allegedly false representations violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Section 349 and 350 of New York's General Business Law and several sections of California's Business and Professional Code. In response, JBR has asserted a number of affirmative defenses including that the counterclaims against it "are barred, in whole or in part, because JBR's actions, if any, respecting the subject matters alleged therein were undertaken in good faith, with the absence of malicious intent, and constitute lawful, proper and justified means" (Answer of Counterclaim Defendant JBR, Inc. to the Counterclaims of Defendant Keurig Green Mountain, Inc. (D.I. 418) ("JBR Reply") at 13). JBR further alleges that Keurig's counterclaims "are barred, in whole or in part, because, at all times and places mentioned, JBR acted without malice and with a good faith belief in the propriety of its conduct" (JBR Reply at 13-14).

Events occurring at the depositions of James Rogers, a board member of JBR and its Senior Vice President in Charge of Sales, and Tom Garber, JBR's Vice President for Product Development, are the immediate cause of the present dispute. During their depositions, Rogers and Garber were asked about events in 2011 or 2012, when JBR was considering using the terms "biodegradable," "compostable," "ecofriendly" and similar terms on its packaging. JBR lacked expertise in the use of these terms and it hired an attorney -- Tsan Abrahamson, a partner at a California

law firm called Cobalt LLP -- for advice. Mr. Rogers testified that JBR initially marketed its packaging as "compostable" (Transcript of the Deposition of James Rogers, taken on Feb. 12, 2019, annexed as Ex. C to the Letter of Leah Brannon, Esq., et al. to the undersigned, dated Apr. 17, 2019 (D.I. 575) ("Rogers Dep.") at 258). However, Mr. Rogers continued, "[u]pon the advice of [JBR's], of [JBR's] attorney, which turned out to be a disaster, she recommended we, recommended we change it to biodegradable" (Rogers Dep. at 258). Mr. Rogers went on to testify that JBR "used the term biodegradable only after engaging an environmental attorney, who advised [JBR] to use that term. And [JBR] thought [it was] in the clear, because of the extensive research [it] had done and the extensive communication with this attorney" (Dep. at 286).

Mr. Garber testified as follows:

Q: Do you recall Miss Abrahamson advising on the use of the terms "biodegradable," "compostable," and "no plastic cup"?

A: I recall her advising on "biodegradable" versus "compostable." I can't remember the other parts.

Q: Did JBR follow counsel's advice in making environmental claims?

A: She said we could not use "compostable"; that we should use "biodegradable." And I believe we followed her advice.

Q: JBR now believes that was bad advice?

A: I believe it was bad advice.

4

(Transcript of the Deposition of Thomas Garber, taken on Mar. 20, 2019, annexed as Ex. C to the Letter of Leah Brannon, Esq., et al. to the undersigned, dated Apr. 17, 2019 (D.I. 575) at 73).

At some point in 2015, after JBR started using the term "biodegradable" to describe its cups, it was contacted by the District Attorney's Office for Alameda County, California and was advised that its use of that term violated California law. JBR subsequently ceased describing its packaging as biodegradable. JBR later asserted a claim against Ms. Abrahamson for malpractice that was resolved in arbitration.

Based on JBR's assertion of a good-faith defense and the foregoing testimony, Keurig claims that there has been a subject-matter waiver of the attorney-client privilege with respect to advice JBR received concerning the marketing of its cups as environmentally friendly and seeks documents and testimony regarding that subject. Keurig also seeks the documents exchanged in the malpractice arbitration against Ms. Abrahamson.

III. Analysis

The general principles applicable to the attorney-client privilege are set forth in my previous Opinion and Order in this matter dated March 7, 201, (D.I. 544), and they need not be repeated here. In addition, there does not seem to be any dispute that communications between JBR and its counsel concern-

ing JBR's advertising are privileged. Keurig's argument here is that JBR has waived the privilege by the assertion of its "good-faith" defense[2] and that, as a result of the testimony of Rogers and Garber concerning Ms. Abrahamson's advice, JBR has waived the privilege under Fed.R.Evid. 502(a).

A. Implied Waiver

In United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991), the Second Circuit stated that

> the attorney-client privilege cannot at once be used as a shield and a sword. See In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987); see also Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) ("The privilege takes flight if the relation is abused."). A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. See von Bulow, 828 F.2d at 101-02. Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications. See United States v. Exxon Corp., 94 F.R.D. 246, 249 (D.D.C. 1981) (claim of good faith

---

[2]Although it is doubtful that good faith is a defense to Keurig's Lanham Act counterclaim, Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 189 (2d Cir. 1980) (intent is not an element of a claim under Section 43(a) of the Lanham Act); Grupke v. Linda Lori Sportswear, Inc., 921 F. Supp. 987, 994-95 (E.D.N.Y. 1996) (same); G's Bottoms Up Social Club v. F.P.M. Indus., Inc., 574 F. Supp. 1490, 1495 (S.D.N.Y. 1983) (Conner, D.J.) (same), it does appear to be relevant to Keurig's counterclaim alleging a violation of Section 349 of New York's General Business Law. Samiento v. World Yacht Inc., 10 N.Y.3d 70, 81, 883 N.E.2d 990, 996, 854 N.Y.S.2d 83, 89 (2008) ("In order to assert a prima facie cause of action under General Business Law § 349, a plaintiff must be able to establish that a defendant intended to deceive its customers to the customers' detriment and was successful in doing so.").

reliance on governmental representations waived attorney-client privilege); Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (assertion of qualified immunity defense waived attorney-client privilege).

Although the argument for waiver is strongest where a party expressly relies on the advice of its counsel as either a defense or in mitigation of damages, In re Grand Jury Proceedings, 219 F.3d 175, 182-83 (2d Cir. 2000),

> courts within this Circuit, relying on Bilzerian, have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice. See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, No. 09 Civ. 3255, 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012) (citing Arista Records, LLC v. Lime Grp., LLC, No 06 Civ. 5936 (KMW), 2011 WL 1642434, at *2-3 (S.D.N.Y. Apr. 20, 2011) (quoting approvingly Leviton Mfg. Co. v. Greenberg Traurig LLP, No. 09 Civ. 8083 (GBD)(THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010))). "In sum, . . . 'it would be unfair for a party asserting contentions [of good faith] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions.'" Arista Records, 2011 WL 1642434, at *3 (alterations in original) (quoting Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A., 258 F.R.D. 95, 106 (S.D.N.Y. 2009)).

Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012); accord Enea v. Bloomberg L.P., 12 Civ. 4656 (GBD)(FM), 2015 WL 4979662 at *5 (S.D.N.Y. Aug. 20, 2015) (Maas, M.J.); Scott v. Chipotle Mexican Grill, Inc., 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) (Netburn, M.J.).[3] "The mere fact that a privileged communication may be

---

[3]In In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008), the Court of Appeals appeared to suggest that waiver of the
(continued...)

7

relevant to a claim or defense is insufficient to forfeit protection." In re Namenda Direct Purchaser Antitrust Litig., supra, 2017 WL 2226591 at *3, citing In re County of Erie, supra, 546 F.3d at 229 and Aiossa v. Bank of America, N.A., No. CV 10-1275 (JS)(ETB), 2011 WL 4026902 at *5 (E.D.N.Y. Sept. 12, 2011). In addition, a party "does not forfeit [the attorney-client privilege] merely by asserting to his adversary that he believes he has done nothing wrong." In re Sims, 534 F.3d 117, 132 (2d Cir. 2008).

JBR's assertion of a good-faith defense to Keurig's counterclaims does result in a waiver of its attorney-client privilege with respect to advice JBR received concerning whether

---

³(...continued)
privilege occurred only where a party "rel[ies] on privileged advice from his counsel to make his claim or defense." However in MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 09 Civ. 3255 (RWS), 2012 WL 2568972 at *6-*7 (S.D.N.Y. July 3, 2012), the late Honorable Robert W. Sweet, United States District Judge, noted that Erie "reaffirmed the principle adopted in [Bilzerian] that 'an inquiry into the state of mind . . . typically calls forth the possibility of implied waiver of the attorney client privilege'" and that after Erie, judges in this District "ha[ve] continued to recognize the broader waiver principles endorsed by the Second Circuit." Although Judge Sweet's observation in MBIA is now seven years old, judges, in this District continue to find that the implied waiver theory set out in Bilzerian remains good law. E.g., Black Rock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, N.A., 14 Civ. 9371 (KPF)(SN), 14 Civ. 9764 (KPF)(SN), 14 Civ. 10067 (KPF)(SN), 14 Civ. 10102 (KPF)(SN), 15 Civ. 10033 (KPF)(SN), 2018 WL 3863447 at *5 (S.D.N.Y. Aug. 13, 2018) (Failla, D.J.); In re Namenda Direct Purchaser Antitrust Litig., 15 Civ. 7488 (CM)(JCF), 2017 WL 2226591 at *3 (S.D.N.Y. May 19, 2017) (Francis, M.J.) (collecting cases).

8

it could advertise its products as "compostable" or "biodegradable" or as having other similar characteristics. JBR has not asserted that its good-faith defense has any basis other than the advice that it received from Ms. Abrahamson. It has not, for example, claimed that it performed tests on its cups that confirmed the cups would decompose in a landfill or compost pile. JBR's sole basis for claiming that it acted in good faith is the advice it received from Ms. Abrahamson. Thus, its communications with counsel are essential to test whether it did, in fact, act in good faith in connection with its marketing and advertising.

In its opposition, JBR claims that the nature of Ms. Abrahamson's advice can be inferred from the chronology of events and the nature of its actions. JBR argues that the fact that it used the term "biodegradable" after conferring with Ms. Abrahamson implies that Ms. Abrahamson advised JBR that its description of its product passed legal muster. This argument fails for several reasons. First, as the cases cited above demonstrate, waiver is a function of the conduct of the privilege holder. I am aware of no authority (and JBR cites none) suggesting that the existence of waiver turns on what other evidence is available or what inferences can be drawn from the other evidence. Second, even if an inference can be drawn from the chronology of events and JBR's conduct, that inference may not be valid. A client does not always follow its lawyer's advice.

Thus, the fact that a client engaged in certain conduct after conferring with a lawyer does not necessarily mean that the lawyer advised the client that its proposed conduct was legal. Finally, the accuracy of a lawyer's advice depends on both the lawyer's knowledge and the accuracy and completeness of the information provided by the client. If, for example, JBR deliberately or negligently provided Ms. Abrahamson with material misinformation or omitted material information concerning the physical characteristics of its products, her advice might provide little support for a good faith defense. Thus, in assessing whether JBR exercised good-faith in connection with its marketing, the fact finder is entitled to know both what JBR told Ms. Abrahamson and what Ms. Abrahamson told JBR.

Having found a waiver, the remaining issue is the scope of the waiver. The scope of JBR's waiver of the attorney-client privilege is assessed under the fairness doctrine. <u>In re von Bulow</u>, 828 F.2d 94, 101 (2d Cir. 1987). The inquiry under this doctrine is to what extent is disclosure necessary "to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." <u>In re von Bulow</u>, <u>supra</u>, 828 F.2d at 101. JBR determined in 2015 to cease marketing its compatible cups with language describing them as environmentally friendly. I conclude that the waiver applies

to all communications between JBR and any attorney concerning the marketing of JBR's compatible cups or packaging as environmentally friendly that occurred prior to the date on which JBR made the determination to cease marketing its cups in that manner. JBR's decision to cease using environmentally friendly terms to describe its product constituted a determination by JBR that those terms were not accurate. Because JBR cannot claim good faith after that date, communications with counsel after that date are not waived by its claim of good faith.

In addition, any advice JBR received concerning its marketing after it stopped marketing its cups as environmentally friendly is irrelevant. Assuming JBR can assert good faith as a defense, its good faith is relevant only to the period prior to the date it made its determination to cease using environmentally friendly terms to describe its products. Even if an attorney advised JBR in 2016 that Ms. Abrahamson's advice was incorrect, such advice would not bear on JBR's state of mind in 2015.

Although I conclude that JBR's assertion of good faith operates as a waiver of the attorney-client privilege, I also believe that that waiver is revocable at this stage of the proceedings. Waiver of the attorney-client privilege is, of course, a serious matter, and JBR may not have foreseen its waiver when it served its reply. At this point, JBR has merely asserted good faith in its reply to Keurig's counterclaims -- JBR

11

has not asserted the defense in connection with any motion nor has it obtained any advantage from the defense. Given the seriousness of a finding of waiver and the absence of prejudice to Keurig if JBR withdrew the defense that gives rise to the waiver, I shall afford JBR fourteen days from the date of this Opinion and Order to reconsider its assertion of the good-faith defense. If JBR formally withdraws its assertion of good faith as a defense to both liability and damages, there will be no waiver.

    B.    Waiver as a Result
of Rogers and Garber's
Deposition Testimony

Keurig's second argument -- that the testimony of Messrs. Rogers and Garber operates as a waiver under Fed. R. Evid. 502(a) -- is not persuasive. Rule 502(a) provides that a waiver of the attorney-client privilege as a result of an intentional disclosure extends to undisclosed communication only if the disclosed and undisclosed communications "ought in fairness be considered together." I find that there is no waiver under Rule 502 because JBR is not, at this stage, making any use of the deposition testimony. The testimony was adduced by Keurig; it was not the product of JBR's initiative. In other words, JBR is not attempting to use the testimony to tell part of the story while preventing Keurig from telling the whole story. As I

explained in <u>Mitre Sports Int'l Ltd. v. Home Box Office, Inc.</u>, 304 F.R.D. 369, 372-73 (S.D.N.Y. 2015):

> In many cases, the vast majority of deposition testimony taken in discovery is never put before any decision maker; frequently, only a small fraction of the deposition testimony taken in a case is cited in connection with a summary judgment motion or offered at trial. Thus, the mere fact that a party makes a partial disclosure of privileged or protected information in a deposition does not result in a subject-matter waiver because there is no use of the testimony by the party holding the privilege. <u>In re Sims</u>, 534 F.3d 117, 141 (2d Cir. 2008) ("Given that Sims cannot introduce any of his own deposition testimony at trial . . . Sim's deposition testimony does not place respondents in a disadvantageous position at trial."); <u>see</u> <u>also</u> <u>Swift Spindrift, Ltd. v. Alvada Ins., Inc.</u>, 09 Civ. 9342 (AJN)(FM), 2013 WL 3815970 at *5-*6 (S.D.N.Y. July 24, 2013) (Maas, M.J.) (disclosure of privileged material in discovery, without more, does not result a subject-matter waiver).

Because JBR is not attempting to make any use of Rogers or Garber's testimony, that testimony does not operate as a waiver.

C. <u>Arbitration Documents</u>

JBR does not have a substantive objection to producing the documents exchanged in its malpractice arbitration against Ms. Abrahamson. Rather, JBR has resisted production claiming that a protective order entered in connection with the arbitration prevents it from disclosing those documents to Keurig in the absence of a court order. By this order, JBR is directed to

13

produce those documents to Keurig and the other parties in this action.

IV. Conclusion

Accordingly, for all the foregoing reasons, unless JBR withdraws its assertion of good faith as a defense to both liability and damages within fourteen days of the date of this Opinion and Order, it is directed to produce all written communications that it had with any attorney concerning the marketing of JBR's compatible cups or packaging as environmentally friendly that occurred prior to the date on which JBR made the determination to cease marketing its cups and packaging in that manner. JBR is also directed to produce to Keurig and the other parties in this action all documents exchanged in its malpractice arbitration against Tsan Abrahamson, Esq. The Clerk of the Court is respectfully requested to mark Docket Item 575 closed.

Dated: New York, New York
July 1, 2019

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel