# EXHIBIT A

1          UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF NEW YORK
3  In Re:  KEURIG GREEN MOUNTAIN        )
   SINGLE SERVE COFFEE ANTITRUST        )
4  LITIGATION,                          )
                                        )
5  JBR, INC., D/B/A ROGERS FAMILY       )
   COMPANY,                             )
6                                       ) CASE NO.
            Plaintiff,                  ) 1:14-CV-0424
7                                       ) VSB-HBP
     VS.                                )
8                                       )
   KEURIG GREEN MOUNTAIN, INC.          )
9  F/K/A/ GREEN MOUNTAIN COFFEE         )
   ROASTERS, INC. AND AS SUCCESSOR)
10 TO KEURIG, INCORPORATED,             )
                                        )
11          Defendant.                  )
                                        )
12
13
14
15      VIDEOTAPED DEPOSITION OF THOMAS LOWELL GARBER
16                       Volume 1
17                San Francisco, California
18               Wednesday, March 20, 2019
19                 8:05 a.m. - 7:31 p.m.
20     Total time on record:  8 hours, 57 minutes
21
22
23               VERITEXT LEGAL SOLUTIONS
                   MID-ATLANTIC REGION
24           1801 Market Street - Suite 1800
                  Philadelphia, PA  19103
25

Page 104

| | | |
|---|---|---|
| 1 | Do you remember hearing that information from | 11:18:08 |
| 2 | Whole Foods? | |
| 3 | A.   I -- I had it, so I must have. | |
| 4 | Q.   Do you recall going back to Miss Abrahamson to | |
| 5 | discuss this issue further with her, in light of the | 11:18:29 |
| 6 | comments from Whole Foods? | |
| 7 | A.   I would have passed this on to the Rogers. | |
| 8 | Q.   Do you know if the Rogers -- | |
| 9 | A.   I don't know. | |
| 10 | Q.   -- discussed it with the lawyers? | 11:18:41 |
| 11 | A.   I'm sorry.  No, I do not know. | |
| 12 | Q.   When you say you would have passed it on to the | |
| 13 | Rogers, do you mean you would have forwarded it to the | |
| 14 | Rogers Family e-mail alias, or would you have sent it | |
| 15 | to individuals? | 11:18:52 |
| 16 | A.   I probably would have sent it to Jim Rogers, | |
| 17 | assuming that he would contact the lawyers, because I | |
| 18 | was not direct contact. | |
| 19 | Q.   Do you understand what Whole Foods is saying when | |
| 20 | they say, "Products that are customarily disposed of in | 11:19:06 |
| 21 | the solid waste stream -- i.e., household trash -- may | |
| 22 | never make a biodegradable claim, since products in | |
| 23 | landfills typically do not biodegrade"? | |
| 24 | A.   I understand what they're saying, yes. | |
| 25 | Q.   Do you recall if JBR removed the biodegradable | 11:19:22 |

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3   In Re:  KEURIG GREEN MOUNTAIN       )
     SINGLE SERVE COFFEE ANTITRUST       )
 4   LITIGATION,                         )
                                         )
 5   JBR, INC., D/B/A ROGERS FAMILY      )
     COMPANY,                            )
 6                                       ) CASE NO.
                Plaintiff,               ) 1:14-CV-0424
 7                                       ) VSB-HBP
        VS.                              )
 8                                       )
     KEURIG GREEN MOUNTAIN, INC.         )
 9   F/K/A/ GREEN MOUNTAIN COFFEE        )
     ROASTERS, INC. AND AS SUCCESSOR)
10   TO KEURIG, INCORPORATED,            )
                                         )
11                Defendant.             )
                                         )
12
13
14
15
16       VIDEOTAPED DEPOSITION OF JOHN W. ROGERS
17              San Francisco, California
18              Wednesday, March 13, 2019
19                11:38 a.m. - 7:29 p.m.
20    Total time on record PM Session: 5 hours, 50 minutes
          * Total time listed on AM Session
21
22
     Reported by:
23   LYDIA ZINN
     RPR, FCRR, CSR No. 9223
24   Job No. 3234597
25   PAGES 1 - 248
```

1  Q.   It looks like Ms. Hybsch is writing to you and        14:59:25

2  your brothers, and that she's upset that JBR is going

3  to be rolling out new packaging for the OneCups without

4  any earth-friendly call-outs.

5  A.   Mm-hm.                                                14:59:41

6  Q.   She says, "I understand the reason for this is the

7  legal challenges that we are facing in CA."  She says

8  that this will create a problem for her.  She says an

9  important factor in gaining distribution was/is our

10 biodegradable claim.                                       15:00:01

11 A.   Mm-hm.

12 Q.   Lower down, she says, "Competitors will have a

13 field day when suddenly our major claim that we have

14 been touting for years just disappears off the box.  In

15 addition, competitors are going to be launching 100%       15:00:12

16 compostable items by the end of the year, which is the

17 same time that we are removing all of our

18 earth-friendly call-outs from our boxes.  This is a

19 troubling situation."

20      And then Jim writes her back and says, "We are        15:00:26

21 working on 100% compostability.  In advance of that, we

22 feel it prudent to remove previous claims.  The new

23 call-out will be more impactful that way."

24      When Jim says, "We feel it prudent to remove

25 previous claims," was that a decision that the family      15:00:48

```
                                                                Page 96
 1   had made?                                              15:00:50
 2   A.   I don't remember.  I don't think so.  I think it
 3   was a Jim decision.
 4   Q.   You don't recall --
 5   A.   I don't know if I ever voted on that one.         15:01:00
 6   Q.   -- discussing?
 7   A.   No.  I just don't remember, to tell you the truth.
 8   I really don't.
 9   Q.   Did you ever personally deal with anyone at one of
10   the California District Attorney's Offices?            15:01:17
11   A.   No.
12   Q.   Was Jim the one dealing with --
13   A.   Mm-hm.
14   Q.   -- them?
15        And when the company settled with the California  15:01:23
16   District Attorney, there was a vote by the Board?
17   A.   No.
18   Q.   Did the Board discuss it?
19   A.   No.  I think Jim came in and said, This is what
20   happened.  This is what we're doing.                   15:01:43
21        And we said, Oh, yes.  Go ahead.  Do what you've
22   got to do.  Probably something like that.
23        I'm sure something was mentioned.  I don't think
24   we had anything formal.  We have -- just depending on
25   everyone's schedule, and if everyone's around.  There  15:01:55
```

| | | |
|---|---|---|
| 1 | is no, like, strict schedule for Board meeting. We | 15:01:57 |
| 2 | just do it whenever we can. | |
| 3 | Q. Is there any rule about what triggers a Board | |
| 4 | vote? | |
| 5 | A. No. | 15:02:09 |
| 6 | MS. BRANNON: I'd like to mark Exhibit 20 to | |
| 7 | the John Rogers deposition. This is an e-mail from you | |
| 8 | to a number of people at JBR. It's dated November 12, | |
| 9 | 2015. And the Bates label is ROG001531740. | |
| 10 | (Deposition Exhibit 20 marked for identification.) | 15:02:32 |
| 11 | THE WITNESS: Okay. | |
| 12 | BY MS. BRANNON: | |
| 13 | Q. This seems to be an e-mail chain related to the | |
| 14 | Private Label Manufacturers Association. | |
| 15 | A. Mm-hm. | 15:03:35 |
| 16 | Q. I think you testified earlier that around this | |
| 17 | time, 2015, was probably the last time anyone from JBR | |
| 18 | attended the PLMA trade show. It looks like | |
| 19 | Mr. Schoeppe is writing to senior folks at JBR, asking | |
| 20 | what he can say about the earth-friendly nature of | 15:04:03 |
| 21 | OneCups. | |
| 22 | A. Mm-hm. | |
| 23 | Q. He says, "Our current new packaging does not | |
| 24 | indicate anything about our biodegradable, nor does it | |
| 25 | say anything about our product being compostable. I | 15:04:16 |