

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**ALDO A. BADINI**
212-294-4601
ABadini@winston.com

January 21, 2020

**VIA ECF**
Hon. Sarah L. Cave, U.S.M.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 18A
New York, NY 10007

**Re:**   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542; Master Docket No. 1:14-md-02542-VSB: Deposition & Production of Mike Degnan's Files

Dear Judge Cave:

Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. and JBR, Inc. d/b/a/ Rogers Family Company respectfully request a discovery conference concerning Plaintiffs' request to depose Mike Degnan and to compel production of his documents.

Plaintiffs first requested that Keurig search the custodial files of Mike Degnan, who served as Keurig's Chief Legal Officer and Corporate General Counsel, in August 2018. Keurig resisted, arguing that Plaintiffs would get all of the relevant documents from other custodians or from a number of electronic folders maintained by Keurig's legal department. As it turns out, Keurig was wrong. Keurig ultimately produced *only 15* documents from one of the folders associated with Mr. Degnan and *six or fewer* documents from almost all of the rest of the files identified. *See* Ex. A (June 20, 2019 email from S. Torpey). In addition, Keurig failed to disclose what Plaintiffs learned only late in discovery—that Mr. Degnan ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the so-called "Squid" project, which was the means to implement the anticompetitive lockout of competitive cups from the Keurig 2.0 brewer. We have reason to believe that at least some such custodians provided Mr. Degnan with the only copy, suggesting he may be the only source of these documents. Keurig's interrogatory responses also revealed that Mr. Degnan was directly involved in the decision to file infringement litigations against Sturm and Rogers, which form the basis of Plaintiffs' sham litigation claims, and the death of a key witness to pre-filing events demonstrates the importance of Mr. Degnan's testimony.[1] Finally, Mr. Degnan had non-privileged conversations with JAB Holding Co. ("JAB") prior to its acquisition of Keurig, and Plaintiffs are entitled to know what he told JAB about the risks of the instant litigation.

The relevance of Mr. Degnan's documents and testimony far outweighs any purported burden

---

[1] The parties have discussed production of Mr. Degnan's files many times since August 2018. Most recently, TreeHouse counsel Susannah Torpey and Kelli Lanski and Keurig counsel Wendelynne Newton and Mackenzie Baird participated in a telephonic meet and confer on January 9, 2020, at 2:00 PM Eastern, which lasted about an hour. Keurig counsel refused to search for or produce documents from Mr. Degnan's files or allow him to sit for a deposition, the parties have agreed they are at impasse, and TreeHouse indicated that it will seek a conference with the Court.



to Keurig,[2] particularly where Plaintiffs have proposed the use of targeted search terms and there is a Rule 502(d) order in place in this case which will help minimize the burden of a privilege review.

***Mr. Degnan is a necessary witness in possession of information regarding testing of Sturm cups in connection with the Sturm litigation.*** Before Sturm cups were even on retailer shelves, Keurig sued TreeHouse alleging that consumers' use of Sturm cups in Keurig brewers infringed on its brewer method patents and that Sturm induced that infringement by selling its cups. *See Keurig v. Sturm*, 1:10-cv-00841-SLR-MPT, Compl., ECF 1, Oct. 10, 2010. The complaint also alleged that the Sturm cups were not of the same quality as Keurig's and Keurig sought a preliminary injunction taking Sturm's cups off the market on the asserted basis that they were "dangerous." *See* Ex. B (Keurig 30(b)(6) Tr., Dec. 3, 2019, at 109:4-17). Keurig had no basis for these claims. In fact, all of the circumstantial evidence suggests that Keurig had not conducted ***any*** tests on the Sturm cups when the complaint was filed. *See* Ex. C (Pls.' Ex. 1562); Ex. D (Pls.' Ex. 1565). Despite this evidence, Keurig continues to assert that Keurig had tested the cups ***prior to*** filing the lawsuit, but has not set forth any evidence about the exact timing of the testing. *See* Ex. B at 34:7-38:25. Plaintiffs have a right to show that Keurig's assertions are false. Not only do Keurig's interrogatory responses identify Mr. Degnan as being involved in the decision to file the litigation, but Keurig's corporate representative testified that the Sturm cups were provided to Mr. Degnan for the testing in that case. *Id*. at 36:3-36:19. Keurig has not identified any other individual with information about the tests other than Kevin Sullivan, who has since passed away.[3] Mr. Sullivan submitted sworn testimony that he was the individual who performed the tests. *See* Ex. E (Keurig 30(b)(6) Tr., March 6, 2012, at 303:11-18). However, he also testified that Mr. Degnan gave him the cups for testing. *Id*. at 304:14-304:17. Thus, Mr. Degnan is in the unique position of being able to testify as to when he received the cups and when he gave them to Mr. Sullivan, and also likely has documentary evidence in that regard which has not been produced to TreeHouse. Documents also suggest that customers were called by Mr. Degnan's legal team to remove TreeHouse cups from customer shelves. *See* Ex. F (KGM01121128). We expect such important evidence to be reflected in Mr. Degnan's files.

***Mr. Degnan was involved in and organized the collection of all documents pertaining to Project Squid.*** Keurig implemented Project Squid to incorporate a lock-out mechanism in brewers which would prevent competitive cups from working in Keurig 2.0 brewers. *See, e.g.*, THS Am. Compl. at ¶ 5. Despite Project Squid's centrality to Plaintiffs' claims, Keurig has produced relatively few documents related to the project. For example, despite a document request specifically on point, Keurig has produced no documents surrounding Project Squid's inception; the earliest email produced referencing Project Squid assumes its existence. *See* Ex. G (KGM00193346).

The likely reason for the production deficiency was revealed in an email chain between Mike Degnan and others, with the subject line ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In the document, Mr. Degnan ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] The Second Circuit has held that the relevant considerations relating to ordering the deposition of an attorney "may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003).

[3] While Mr. Sullivan submitted a declaration in the *Sturm* litigation regarding Keurig's testing of Sturm cups, this declaration did not include information about ***when*** he received the cups from Mr. Degnan or conducted the testing, nor will Plaintiffs have an opportunity to cross-examine Mr. Sullivan concerning the declaration or the testing.



███ *See* Ex. H (KGM10882523). ███████████████
████████████████████████████████████████████████
███████████████ ███████████████████████████████████
████████████████████████████████████████.[4]  *See* Ex. I (KGM09937565).  Keurig's production indicates that the custodians likely did ███████ ██████████████: less than one percent of the 1,088,834 custodial documents of the six recipients contain the word "Squid" and ***only 434 of these documents*** are dated ***before*** Mr. Degnan's email.  Because Mr. Degnan orchestrated a centralization of such documents in 2012, he either possesses this collection of documents relevant to Project Squid or Keurig destroyed the documents in ████ their records.[5]

While Mr. Degnan's email did not explain the reason for his collection, it is clear that Project Squid itself raises antitrust concerns.  Indeed, just two months before Mr. Degnan's email, ████ ██████, the Managing Director at ████████, who worked with Keurig on Project Squid to design the 2.0's lockout technology, wrote to his colleague that the ████████████████████████ ████████████████████████████ *See* Ex. J (SAG00001107). ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ *Id*.  Documents suggest that Mr. Degnan may have been the Keurig attorney at this meeting.[6]  *See* Ex. K (KGM03729006) (listing Mr. Degnan as a required attendee for the meeting with ██████████).

***Mr. Degnan was involved in JAB's due diligence prior to its acquisition of Keurig.***  JAB acquired Keurig on December 7, 2015.  While KGM tried to assert privilege over diligence communications with JAB, Special Master Judge Jones found that Keurig failed to establish a common legal interest with JAB over documents Keurig shared with JAB.  *See* ECF No. 646.  According to JAB's Legal Diligence tracker, Mr. Degnan was party to at least one conversation with JAB prior to the acquisition regarding correspondence with auditors about the pending litigation.  Plaintiffs are entitled to know what Mr. Degnan told JAB about the risks of the instant litigation and Mr. Degnan is in the best position to testify to these conversations.

Plaintiffs thus request that the Court order the production of Mr. Degnan's custodial files pursuant to negotiated search terms and that the Court order Defendant to produce the custodial files of Mike Degnan and compel his deposition.  We appreciate your attention to this matter.

---

[4] The recipients include six of Keurig's document custodians.  Keurig has been unable to image hard drives for two of the recipients, ████████████████████.  ECF No. 606 at 3.  Thus, regardless of whether these recipients in fact ████████████████████, the unavailability of their computers suggests that Mr. Degnan would be the only source of any Squid files stored on them.

[5] While Keurig's counsel has taken the position that Mr. Degnan's email ████████████████████████ ██████████, this ignores the fact that at least one Keurig employee interpreted the email in that matter.  Thus, irrespective of Mr. Degnan's intent, he may be the only custodian of many critical Squid documents.

[6] No other witness has been able to confirm who was in attendance at the July 2012 meeting and Keurig's counsel declined to confirm whether Mr. Degnan attended.  This only reinforces the fact that Keurig should produce Mr. Degnan's custodial documents because Plaintiffs have been unable to obtain the relevant information elsewhere despite their diligence.



Respectfully submitted,

/s/ *Aldo A. Badini*

Aldo A. Badini
**Winston & Strawn LLP**
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
abadini@winston.com

*Counsel for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc.*


/s/ *Mario Moore*

Mario Moore
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Ste. 321
South San Francisco, CA 94080
(415) 604-4500
mario@danjohnsonlawgroup.com

*Counsel for Plaintiffs
JBR, Inc. d/b/a/ Rogers Family Company*

cc: Counsel for All Parties (via ECF)