# CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| WASHINGTON, D.C. | One Liberty Plaza | ROME |
| PARIS | New York, NY 10006-1470 | MILAN |
| BRUSSELS | T: +1 212 225 2000 | HONG KONG |
| LONDON | F: +1 212 225 3999 | BEIJING |
| FRANKFURT | clearygottlieb.com | BUENOS AIRES |
| COLOGNE | | SÃO PAULO |
| MOSCOW | D: +1 212 225 2912 | ABU DHABI |
| | rmukhi@cgsh.com | SEOUL |

January 23, 2020

**VIA ECF**
Hon. Sarah L. Cave, U.S.M.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 18A
New York, NY 10007

Re: *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542, Motion to Compel Discovery of Plaintiff TreeHouse

Dear Judge Cave:

I write on behalf of Defendant Keurig in further support of the above-captioned Motion, ECF No. 705 ("Mot."), and in reply to TreeHouse's Response, ECF No. 707 ("Response").

Critically, TreeHouse's Response nowhere disputes that the results of the sampling ordered by Judge Pitman demonstrate that there are ***thousands*** of unique documents from Ms. Peskie that have not been produced. Mot. at 2. Keurig's Motion should be granted based on this concession and TreeHouse's failure to demonstrate any particularized burden to adding Ms. Peskie as a custodian. While TreeHouse accuses Keurig of "rehashing" arguments made in the prior motion, *the entire point* of Judge Pitman's order was to determine whether Keurig's arguments would be supported by a sampling of Ms. Peskie's documents. In fact, it is TreeHouse that spends the majority of its Response rearguing the relevance of Ms. Peskie, when Judge Pitman already accepted Ms. Peskie's clear relevance, Ex. 1 at 11-12, 17. And there can be no serious dispute that Ms. Peskie was intimately involved in TreeHouse's portion packs since 2009 in the significant areas of product development and quality assurance. The sampling results plainly demonstrate that Keurig's arguments as to Ms. Peskie's unique relevance as a custodian were and are correct, and TreeHouse's Response does nothing to suggest the contrary.

*First*, TreeHouse raises a strawman and argues that Ms. Peskie was not involved in cup procurement in 2009. Response at 1. Keurig never so claimed. Rather, Keurig cited repeated deposition testimony, including by Ms. Peskie herself in prior litigation, and other documents showing that Ms. Peskie was involved in the overall development of TreeHouse's packs. *See, e.g.*, Mot. at 2-3; Ex. 7 to First Motion, ECF No. 649 ("First Mot.") (Peskie-authored resume describing her duties from 2008-2010 as including "started development of non-filtered product in 2008" and "assisted in qualifying initial [single serve] cup for non-filtered product launch");

Ex. 2 to First Mot. at 14:9-14 (Molden testifying Peskie had "primary responsibility" for single-serve development); Ex. 3 to First Mot. at 25:8-16 (Ms. Peskie testifying in prior litigation that she and non-custodian Ken Noble were responsible for decision to put instant coffee in TreeHouse's initial portion packs). New documents produced from the sample set confirm this. *See* Ex. 13 (THS-004292555) (Ms. Peskie describing her "coffee project" in 2009); Ex. 14 (THS-004292546) (Ms. Peskie discussing meeting a January 2010 launch date).[1]

TreeHouse claims that "pre-commercialization" documents from 2009 are irrelevant, ignoring its own antitrust claims asserting that it faced barriers to entry prior to commercialization. *See* Mot. at 1-2; Response at 1. Thus, these documents showing any such barriers—or lack thereof—are plainly relevant to claims and defenses in this case. In direct contrast, Keurig has *not* claimed it faced barriers to entry, and TreeHouse's reliance on the irrelevance of Keurig's pre-commercialization documents *for a brewer that has not launched* is unavailing. TreeHouse also argues that the 2009 report attached to a new Peskie email showing TreeHouse's pre-launch quality problems was also sent to another custodian. *See* Response at 2. But the email confirms Ms. Peskie's involvement. *See* Mot. at 2-3 & n.7. And other newly produced sample documents unaddressed by TreeHouse confirm that Ms. Peskie was uniquely involved in addressing the quality problems raised in the report. *Compare* Ex. 4 (discussing issues with "strength" and "aroma"), *with* Ex. 2 (discussing strength); Ex. 3 (discussing aroma).

*Second*, TreeHouse argues that Keurig is not entitled to discovery of TreeHouse's quality documents and should have to rely on its own files to defend against its claims. This argument was also rejected by Judge Pitman when he stated Keurig was "free to take discovery regarding the quality of Treehouse's products." July 15, 2019 Hr'g. Tr., ECF No. 643 at 90:13-22.[2] TreeHouse has brought claims under the Sherman, Clayton, and Lanham Acts alleging that Keurig made false statements about TreeHouse's quality. TreeHouse's pack quality is directly probative of those claims and Keurig's defenses, and Keurig is entitled to discovery on it. *See* First Mot. at 1; Op. & Order, ECF No. 581 at 57 (Judge Broderick ruling that discovery should "illuminate[] the truth or falsity of the statements in question").[3]

*Third,* TreeHouse argues Keurig already has "ample discovery" from custodians who spoke with customers on quality issues. Response at 2. TreeHouse recycles an argument about its sales employee Bob Baker but omits that Mr. Baker testified that he *could not recall* quality complaints from his major customers, consistent with his *sales* role, in contrast to Ms. Peskie's direct responsibility for *quality assurance*. *See* First Reply, ECF No. 661 at 4-5 (citing Mr. Baker's failure to recollect complaints from ███████████████, and ██████). Just the limited sampling produced for Ms. Peskie shows that she spoke directly with these

---

[1] In fact, in portions of Mr. Jarona's testimony that TreeHouse omits, he testified Ms. Peskie was involved in "spec development," "taste testing," and "shelf-life studies," with respect "ingredient components" in portion packs. *See* Ex. 15 at 98:7-24. Mr. Jarona was also not "unsuccessful" in procuring cups—in fact, Mr. Jarona testified that TreeHouse obtained cups from one of its own existing suppliers, *id.* at 55:17-22, 246:10-20, and that TreeHouse had a "standard practice" of including ██████ provisions in its own supplier contracts. *Id.* at 93:10-94:1.

[2] Keurig's instant motion is not an "end run around" Judge Pitman's prior rulings related to the *Suchanek* documents. Response at 2. In fact, Judge Pitman specifically stated that Keurig was free to seek quality documents directly from TreeHouse in this litigation. July 15, 2019 Hr'g. Tr., ECF No. 649 at 90:13-22.

[3] TreeHouse used a low quality instant coffee sold to consumers in misleading packaging. *See* First Mot. at 2.

customers about quality issues and took detailed notes—analogous to the "memo[s] to the file" Judge Pitman suggested would be significant, Ex. 1 at 21:19-24 —showing her documents are uniquely important. *See* Mot. at 3 (discussing Ms. Peskie's new documents on ▮▮▮▮, and ▮▮▮▮). TreeHouse cites its employee Doug Molden, but leaves unaddressed Mr. Molden's testimony that he was "▮▮▮▮" of quality assurance and that Ms. Peskie participated in customer calls on her own, First Reply at 2, which is directly corroborated by Ms. Peskie's unique handwritten notes produced from just the sample period.

*Fourth*, Treehouse attempts to sweep aside the new evidence showing Ms. Peskie having seven calls with major customers about serious quality issues, by baldly asserting that it is "not accurate" that Keurig did not previously have this evidence. Response at 2-3. TreeHouse cannot dispute that Ms. Peskie's handwritten notes of these calls were never produced before and does not point to a single document or testimony showing that Keurig previously knew of the calls. The only support TreeHouse cites is Exhibit 12, in which Ms. Peskie urges her coworkers to disclose quality issues to a customer at one particular meeting based on her broader experience. TreeHouse argues only that the meeting with the customer was referenced elsewhere in discovery. Response at 2-3. But it is obviously independently significant that Ms. Peskie recommended the disclosure of quality problems, which is a fact Keurig did not know prior to the sampling of her emails. TreeHouse does not even attempt to rebut the significance of the other newly disclosed calls or that Ms. Peskie was the only TreeHouse participant.

TreeHouse also argues that a document on which Ms. Peskie made newly produced handwritten notes is cumulative because the underlying document was previously provided. Response at 3. But TreeHouse does not and cannot dispute that Ms. Peskie's *handwritten notes* were never produced before demonstrating the unique relevance of her files. *See* Mot. at 3 n.8. Ms. Peskie's notes contain key details about the call not included elsewhere, including that complaints were going up. The notes also suggest new information, namely that TreeHouse apparently told ▮▮▮ to tell customers that insufficient ▮▮▮▮ of Keurig brewers caused TreeHouse's product to fail.[4] *See* Ex 6.

*Finally*, the Response sets forth no particularized burden, especially given that TreeHouse is the one that initiated this litigation and continues to pursue its claims for unspecified damages. The fact Keurig has not filed counterclaims, Response at 3, does not mean that Keurig is not entitled to relevant discovery to defend against TreeHouse's claims.[5]

---

[4] TreeHouse argues Keurig has not made a showing that Ms. Peskie's documents are relevant to 2014 through 2017. Response at 3. Keurig focused on the earlier period in this Motion because those were the sampled timeframes. The Court can infer that Ms. Peskie will also have unique documents for later periods based on the sample results and the reasons previously set forth, including her role in development of TreeHouse's 2.0 compatible cup in 2014. First Mot. at 4; First Reply at 3. Since Keurig's original motion, TreeHouse's former President testified that Ms. Peskie would have been involved in nearly all aspects of its 2.0 cup. Ex. 16 (Sliva Tr.) at 128:6-129:8.

[5] Keurig never "declined" to reschedule Ms. Peskie's deposition as TreeHouse claims. Response at 3 n.4; Ex. 17 (Email from L. Danzig to L. Duxstad) ("[I]n the event we have not received full production of Ms. Peskie's custodial documents with sufficient time to review before the deposition, and in any event no later than February 4, we reserve our rights to reschedule the deposition."). Keurig also requested to depose Ms. Peskie for 10 hours, not 14 hours as claimed. *Id.*

                                                  Respectfully submitted,

                                                  */s/ Rahul Mukhi*

                                                  Rahul Mukhi

Attachments

cc: All counsel of record (by email)