

# Buchanan
## Ingersoll·Rooney

**Wendelynne J. Newton**
412 562 8932
wendelynne.newton@bipc.com

Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
T 412 562 8800
F 412 562 1041

January 23, 2020

**VIA ECF**
Hon. Sarah L. Cave
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 18A
New York, NY 10007

Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542

Dear Judge Cave:

I write on behalf of Keurig in response to the January 21 letter of Plaintiffs TreeHouse and JBR requesting to add Keurig's former General Counsel, Mike Degnan, as a custodian and to take his deposition.[1]

### A. Good Cause Does Not Exist to Add Mr. Degnan as a Document Custodian

Keurig has produced more than 3.7 million documents in this litigation, from the files of 51 custodians and non-custodial sources negotiated by the parties, plus an additional 7 million pages from other litigations. This is a massive production that has come at great cost. Plaintiffs have also deposed 42 of Keurig's employees and 22 third parties, and are demanding 150 hours more of testimony from Keurig witnesses by March. Under the circumstances, including the extensive discovery already granted, plaintiffs have not shown that adding Mr. Degnan as a document custodian will result in unique non-privileged material sufficient to overcome the significant burden to Keurig of adding its former General Counsel as a document custodian.

In addition to the overall discovery figures, Keurig has already produced approximately 52,000 emails and attachments sent or received by Mr. Degnan—not just the 21 documents that Plaintiffs cite. Keurig also voluntarily produced more than 6,000 documents from the Keurig legal department's central files in return for TreeHouse dropping its request to add Mr. Degnan as a custodian, which required Keurig to manually review approximately 20,000 documents. *See* Ex. 1 (reproducing the remainder of the emails in the chain omitted from Plaintiffs' Exhibit A).

Plaintiffs' decision to demand Mr. Degnan as a custodian despite these productions is based on their speculation about the existence of other documents that, in fact, do not exist. *See id.* Such speculation does not constitute good cause to add a custodian as required under the Court's ESI Order, ¶ VI(H)(1), ECF No. 41, nor does it qualify as "evidence that there are unique responsive

---

[1] Plaintiffs conflate their arguments regarding a deposition and documents, leaving it unclear as to which arguments are intended to support which request, despite distinct law on these issues.

documents being missed," much less ones sufficient to justify the burden of adding Keurig's former General Counsel as a document custodian. *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 2018 WL 2215510, at *9 (S.D.N.Y. May 15, 2018).

Plaintiffs claim a so-called "production deficiency," citing a September 2012 email from Mr. Degnan ███████████████████████████████ .[2] The email's recipients, however, are **all** custodians, and any documents that they provided to Mr. Degnan were produced from their files pursuant to the TAR protocol, as well as non-custodial sources agreed upon by the parties. Plaintiffs' assertion that there is a dearth of documents dated before Mr. Degnan's email is without basis, and the unfounded suggestion that Mr. Degnan destroyed documents is meritless. Plaintiffs ignore record evidence to the contrary, including the express directive in that same email to "**do not destroy**" any data, Pls.' Ex. H, and witness testimony that documents Mr. Degnan requested were retained. Ex. 2, Tinkler Dep. Tr. at 44-47. That Plaintiffs would make such serious and unfounded accusations is disturbing.

Plaintiffs' reliance on a non-party's internal communications is also unavailing. Those emails reflect speculation by a third-party—not Keurig—about the scope of privilege.[3] Keurig produced documents relating to this meeting over a year ago from the custodial files of <u>five</u> of the meeting attendees, including the agenda, minutes, and dozens of internal and external communications. Plaintiffs offer no evidence that any unproduced non-privileged documents pertaining to this single meeting reside in Mr. Degnan's files.

None of the documents cited by the Plaintiffs support their speculation of non-cumulative, non-privileged files, nor do Plaintiffs justify the substantial burden associated with adding Mr. Degnan as a custodian. Any production from his files would entail an expensive, manual review and logging for privilege and work product. These are real burdens that far outweigh any speculative benefit, particularly under the circumstances of this case and the discovery already produced. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *2-4 (S.D.N.Y. Nov. 16, 2016) (finding the proportionality requirement not met where, as here, the requesting party sought further discovery where millions of pages had already been produced, and did so based on conclusory claims that unproduced documents likely contained additional relevant information). Accordingly, the Court should deny Plaintiffs' request.

### B. A Deposition of Mr. Degnan Is Not Justified

Plaintiffs separately demand Mr. Degnan's deposition. This demand, too, should be denied because Plaintiffs cannot show a need to depose Mr. Degnan, particularly given the extent of discovery already conducted. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) (listing factors to consider in assessing attorney depositions).

---

[2] This and related emails were previously produced by Keurig without waiver of the privilege pursuant to the 502(d) Order entered in this case.

[3] In contrast, TreeHouse's files show non-attorneys instructing others to "[e]nsure Priv and Conf is on all emails" about customer complaints, Ex. 3, THS-000256438, or changing subject lines on communications that did not involve lawyers or legal advice to "Privileged and Confidential," Ex. 4, THS-002803048.

The extent of discovery already conducted in this litigation weighs heavily against a deposition of Mr. Degnan. There have already been multiple depositions covering the topics on which Plaintiffs claim to require Mr. Degnan's testimony, including both completed and upcoming 30(b)(6) depositions on the *Sturm* litigation,[4] and depositions covering Keurig's non-privileged communications with JAB, as well as the individual depositions of Larry Blanford and Brian Kelley, Keurig's former CEOs who were intimately involved in, respectively, the *Sturm* litigation and JAB acquisition. The deposition of Mr. Degnan would be cumulative on these topics and substantially more burdensome with respect to privilege.

The risk and burden of a potential deposition of Mr. Degnan is made only worse by Plaintiffs' view of the privilege.[5] In addition, Plaintiffs refused to limit the scope or duration of their demanded deposition. *See* Ex. 6. And Plaintiffs offered no suggestion on how to avoid or mitigate the inevitability of privilege and work product issues in a deposition of Mr. Degnan.

In summary, Keurig respectfully requests that Plaintiffs' demand for Mr. Degnan's deposition be denied. If, however, the Court permits such a deposition, Keurig requests that the Court: (1) limit the deposition to the topics in the letter motion; and (2) authorize Keurig to take a parallel deposition of TreeHouse's General Counsel, Tom O'Neill. Keurig believes depositions of in-house attorneys are inappropriate in this case given the extent of other discovery and the burden of lawyer depositions. However, as Keurig has discussed with TreeHouse during the meet and confer process, Mr. O'Neill is similarly situated to Mr. Degnan in his responsibilities for certain communications with customers, suppliers, and other third parties that are featured in TreeHouse's Complaint, and Mr. O'Neill should be treated similarly to Mr. Degnan.[6]

Respectfully submitted,

/s/ Wendelynne J. Newton

Wendelynne J. Newton

---

[4] Plaintiffs cite 30(b)(6) testimony related to the *Sturm* litigation, which Keurig will be correcting in a timely errata, based on metadata from photographs produced in the *Sturm* litigation and re-produced to Plaintiffs in this case more than a year ago.

[5] For example, TreeHouse demanded a sweeping finding of subject-matter waiver based on the unintentional production of an email chain from 15 years ago, which demand Judge Pitman firmly rejected. *See* Sept. 6, 2019 Hr'g Tr. at 95:19-96:2. JBR likewise tried to invade the privilege with purported yes-or-no-questions of Keurig's prior IP litigation 30(b)(6) designee that incorporated the substance of the legal advice. *See, e.g.*, Ex. 5, Dec. 3, 2019 30(b)(6) Dep. Tr. at 231:8-11 ("At that point, do you recall having any discussion about the risk that we could lose this lawsuit on the grounds of patent exhaustion or the first sale doctrine?"). At that same deposition, TreeHouse took the position that any refusal to answer a question touching on privilege is improper, but also that any answer triggers a sweeping privilege waiver. *See id.* at 149-51.

[6] *See, e.g.*, Ex. 7, Vermylen Dep. Tr. at 124-25 (discussing Mr. O'Neill's role); Pawlick Dep. Tr. at 60-61 (similar); Reynolds Dep. Tr. at 475 (similar); Ex. 7 to Ford Dep. (similar); Sliva Dep. Tr. at 80-81 (similar).