

Wendelynne J. Newton
412 562 8932
wendelynne.newton@bipc.com

Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
T 412 562 8800
F 412 562 1041

February 24, 2020

**VIA ECF**
Hon. Sarah L. Cave
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 18A
New York, NY 10007

Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542

Dear Judge Cave:

I write on behalf of Keurig in response to JBR's February 19 letter, ECF 762, challenging Keurig's Notice of Inadvertent Production of a privileged communication sent on April 9, 2014 from Keurig in-house counsel, Amy L. Brosius, Esq. (the "Brosius Email").[1]  The Brosius Email is privileged and the Court should direct all Plaintiffs to return or destroy all copies of it.

**A. The Brosius Email is Privileged**

JBR argues that the Brosius Email is business advice.  ECF 762 at 1.  JBR is wrong.  The Brosius Email communicates ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The Brosius Email is a privileged attorney-client communication.

Keurig submits a Declaration from Ms. Brosius to substantiate the privilege here.  *See* Special Master Jones's Report & Recommendation at 13 (noting that declarations, though not required, may carry the burden to substantiate the privilege).  As discussed in the accompanying Declaration, Ms. Brosius confirms that she ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Decl. of A. Brosius, Ex. 2.  Ms. Brosius regularly provided legal advice regarding marketing, sales, and advertising material, as well as for product packaging,

---

[1] On February 12, 2020, pursuant to Federal Rule of Evidence 502(b) and Paragraph 22 of the Stipulated Amended Protective Order, ECF 496, Keurig informed counsel that the Brosius Email reflected communications protected from disclosure under the attorney-client privilege. *See* Ex. 1.  Keurig's timely notice under the Protective Order establishes the presumption of inadvertent production: "absent exceptional circumstances, a statement by a party that a production of Privileged Material was inadvertent shall be dispositive."  ECF No. 496 at 23.

label review and claim substantiation. *Id.* The Brosius Email is just one example of her legal role, and Ms. Brosius made that communication with the expectation that such communications are confidential, subject to the attorney-client privilege. *Id.* The Brosius Email should therefore remain protected from disclosure under the attorney-client privilege.

### B. The Crime-Fraud Exception to the Privilege Does Not Apply

Recognizing that the Brosius Email is privileged, JBR attempts to invoke the crime-fraud exception to the attorney-client privilege. But the crime-fraud exception involves a high bar, and JBR does not and cannot meet its burden to show that "there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *United States v. Richard Roe, Inc. (In re Richard Roe, Inc.)*, 68 F.3d 38, 40 (2d Cir. 1995) (citation omitted).[2]

JBR tries to invoke the crime-fraud exception based on Ms. Brosius's advice regarding: (1) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ None of the testimony cited by JBR, however, establishes that any wrongdoing took place, much less that the Brosius email was in furtherance thereof. ECF No. 762 at 2. *See In re Omnicom Group Inc. Sec. Litig.*, 233 F.R.D. 400 (S.D.N.Y. Feb. 28, 2006) (declining to apply the crime/fraud exception where the "plaintiffs had not demonstrated a sufficient likelihood that defendants engaged in fraud."); *see also Macnamara v. City of N.Y.*, 2008 U.S. Dist. LEXIS 3937, at *12 (S.D.N.Y. Jan. 17, 2008) ("application of the crime-fraud exception requires a showing of probable cause to believe that each of the particular attorney-client communications at issue was used in furtherance of a crime or fraud").

#### 1. Compatibility

JBR's primary argument is premised on its claim that Keurig falsely advertised that portion packs manufactured by competitors *would not work* in the 2.0 brewer, when in fact Keurig supposedly knew they *would work* in the 2.0 brewer, and that this constituted a "fraud" that Ms. Brosius furthered.[3]

At the time that Ms. Brosius rendered her legal advice in April 2014, Keurig believed that portion packs manufactured by competitors would not work in the 2.0 brewer. Keurig's 30(b)(6) designee on engineering topics testified that Keurig did not validate a "hack" of the 2.0 by an unlicensed portion pack manufacturer until December 2014—four months *after* the brewer launched in the marketplace and eight months *after* the Brosius Email.[4] Ex. 3, Keurig Tr. at 114-

---

[2] The cases cited by JBR on the crime-fraud exception all involved crime or fraud, which is hardly the situation here. *In re John Doe, Inc.*, 13 F.3d 633 (2d Cir. 1994) (grand jury investigation); *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032 (2d Cir. 1984) (fraud against the U.S. Government and obstruction of justice); *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420 (S.D.N.Y. 2013) (theft, forgery, wire fraud, and money laundering).

[3] Confusingly, the genesis of this entire case is Plaintiffs' assertion that competitors' portion packs would not work in the 2.0 brewer, allegedly in violation of the antitrust laws, and in the summer of 2014, JBR in particular moved for a preliminary injunction on this basis, the loss of which motion JBR was still appealing through the fall of 2015, more than one year after the brewer launched.

[4] Counsel for JBR did not participate in the 30(b)(6) deposition of Keurig on engineering topics.

15. JBR accuses Ms. Brosius of "directly encouraging a false statement" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in April of 2014 because months later other manufacturers discovered how to make their unlicensed portion packs work in the 2.0 brewer. ECF 762 at 2. But that subsequent development does not make Ms. Brosius's advice as of April 2014 a fraud.

JBR also cites bits of speculation from prior to 2014 that third parties *might* hack the 2.0 brewer. For example, JBR cites documents from the files of a third party consultant to Keurig, ▮▮▮▮. But ▮▮▮▮▮▮ engagement with Keurig on interactive technology ended in July 2012, nearly two years *before* the email at issue here and well before the 2.0 brewer was developed and commercialized. ▮▮▮▮▮▮ did not know any of the specifications of the 2.0 brewer or ink and could not have offered any opinions specific to the 2.0. Ex. 4, ▮▮▮▮▮▮▮▮▮▮▮▮▮ Tr. at 252:13-253:2. Keurig's actual ink supplier, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 5, ▮▮▮▮▮▮▮▮; *see also* Ex. 6, ▮▮▮▮▮ Tr. at 89:22-91:14; 237:10-239:11; 240:6-16. Finally, JBR cites testimony of former Keurig employees that competing manufacturers *might* reverse engineer the ink technology sometime after the brewer launched. ECF 762 at 2-3. But, again, this is a far cry from showing that Ms. Brosius was furthering a fraud in April 2014 when ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### 2. General Marketing

JBR next argues that the crime fraud exception has been established based on Ms. Brosius's advice ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the marketing materials. JBR does not explain this argument well, but seems to be asserting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and therefore Ms. Brosius's advice was furthering a fraud.

Again, JBR is wrong. Keurig's 30(b)(6) designee testified that the 2.0 brewer read the ink on portion packs and "told the machine what type of cup was in the brewer and to display the menu that that cup needed," with further technological developments to come in the future. Ex. 3, Keurig Tr. at 109-110. That testimony is consistent with prior depositions in this case, which addressed in detail ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 7, Sullivan Dep. Tr. at 89:6-25, 84:22-85:14.

JBR then argues at length about its claim that Keurig improperly used the word "recipe" in its marketing. This is a particularly confusing argument, because the Brosius Email makes no mention of "recipes." Nor does the Brosius email discuss other materials that JBR chose to attach to its letter brief, including an internal press event message guide (Pl.'s Ex. 10) or material included on Keurig's website in September 2014 (Pl.'s Ex. 11). These materials do nothing to support JBR's claim that the Brosius Email is in furtherance of a crime or fraud.

In sum, JBR has not established that Ms. Brosius rendered legal advice in furtherance of a crime or fraud. Keurig respectfully requests that the Court deny JBR's motion and direct Plaintiffs to return or destroy all copies of the Brosius Email.

                          Respectfully submitted,

                          /s/ Wendelynne J. Newton

                          Wendelynne J. Newton