UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE   : No. 1:14-md-02542 (VSB) (SLC)
COFFEE ANTITRUST LITIGATION                 :
:
---------------------------------------------------------x

# DECLARATION OF JOSEPH C. BOURNE IN SUPPORT OF REQUEST FOR DISCOVERY CONFERENCE REGARDING SUBPOENA OF AMAZON.COM, INC.

Joseph C. Bourne declares:

1. I am an attorney duly admitted to practice before this Court. I am an associate at the firm of Pearson, Simon & Warshaw, LLP, co-lead counsel for Indirect Purchaser Plaintiffs ("IPPs").

2. I am the attorney principally responsible for the handling of this matter. I am personally familiar with the facts set forth in this declaration. If called as a witness I could and would competently testify to the matters stated herein.

3. A true and correct copy of IPPs' subpoena of non-party Amazon.com, Inc. ("Amazon"), dated September 30, 2019, is attached as **Exhibit A**. This is the operative subpoena.

4. A true and correct copy of a subpoena served jointly by IPPs and Plaintiff JBR, Inc., d/b/a Rogers Family Co. ("Rogers"), dated March 29, 2018, is attached as **Exhibit B**. This subpoena has since been withdrawn, but the document requests in the subpoena are the same as those in the currently operative subpoena.

5. IPPs and Rogers met and conferred with Amazon on more than one occasion concerning the prior (now withdrawn) subpoena in 2018 and 2019. I met and conferred telephonically with Molly Tullman of Davis Wright Tremaine LLP on September 11, 2019, for approximately 30 minutes. During that meet and confer, Ms. Tullman requested that IPPs re-serve

a new subpoena because Rogers had withdrawn from the subpoena.

6. On October 7, 2019, I emailed a copy of the protective order and a letter to Ms. Tullman that narrowed the documents sought by IPPs in the newly served (and currently operative) subpoena. IPPs agreed to limit their request to only internal documents and communications with other non-parties, and not to seek any communications with parties to the litigation, such as Keurig, TreeHouse, and Rogers. IPPs also agreed not to seek "all documents," and instead would accept documents "sufficient to show" the subject matter of each request. IPPs also agreed to seek only Amazon's transactional data and documents concerning Amazon's advertising, search, and display policies; market forecasts and analysis; customer star ratings; decision to discontinue the sale of unlicensed compatible portion packs, such as Rogers OneCups; and pricing practices. Those requests correspond to requests 3-6, 18-22, 25-26, and 28-30. IPPs agreed to forego a production of the remaining categories of documents, which correspond to requests 1-2, 7-17, 21, 23-24, and 27. A copy of that letter is attached as **Exhibit C**.

7. Amazon served objections to the subpoena on October 16, 2019. A copy of those objections are attached as **Exhibit D**.

8. I met and conferred telephonically with Hannah Ard of Davis Wright Tremaine on December 17, 2019, for approximately 30 minutes.

9. I met and conferred telephonically with Ms. Ard on January 6, 2020, for approximately 30 minutes.

10. I sent an email to Ms. Ard and Deana Ahn of Davis Wright Tremaine, among other colleagues, on January 27, 2020, indicating that IPPs sought another meet and confer for the purpose of discussing both the transactional data and substantive documents sought in the subpoena. A copy of that email is contained in the email string attached as **Exhibit E**.

11. I met and conferred telephonically with Annamaria Taskai and James Howard of Davis Wright Tremaine on February 13, 2020, for approximately 40 minutes.

12. On February 14, 2020, I emailed a list of universal product codes ("UPCs") to Ms. Taskai and asked whether Amazon would be able to sort or otherwise search its transactional data

by UPC. The list of product codes was an Excel spreadsheet containing 15,827 UPCs. A copy of that email (without attachment) is contained in the email string attached as **Exhibit E**.

13. On February 26, 2020, Ms. Taskai sent me an email advising me that Amazon has the ability to convert UPCs into ASINs (its internal identifier), which "is a very manual and complicated process," and that Amazon could only collect the transactional data for 10 UPCs as a result of that burdensome process. A copy of that email is contained in the email string attached as **Exhibit E**.

14. On March 4, 2020, I sent an email to Ms. Taskai and Mr. Howard advising that IPPs could not accept transactional data for only 10 UPCs and asking for a response to IPPs' substantive document requests, as narrowed by my October 7, 2019 letter. A copy of that email is contained in the email string attached as **Exhibit E**.

15. On March 19, 2020, I sent an email to Mr. Howard and Ms. Taskai advising that IPPs had created a narrower list of ASINs and requesting confirmation of whether, and when, Amazon would produce the transactional data for those ASINs. That email attached an Excel spreadsheet comprised of 5,377 ASINs. A copy of that email (without attachment) is contained in the email string attached as **Exhibit E**.

16. I met and conferred telephonically with Mr. Howard and Ms. Taskai on March 30, 2020, for approximately 35 minutes. During that meet and confer, Mr. Howard and Ms. Taskai advised me that Amazon could not agree to produce transactional data for 5,377 ASINs, which it still viewed as too burdensome, but that it could produce transactional data for approximately 50-100 ASINs. We also discussed IPPs' substantive document requests, and Mr. Howard and Ms. Taskai advised me that they still viewed IPPs' substantive requests, as narrowed by my October 7, 2019 letter, as too broad and vague. Mr. Howard and Ms. Taskai also advised me that the relevant documents may no longer exist because of Amazon's retention policy (which would have expired well before the subpoena was served), but they could not be certain because it is possible a litigation hold was in place and they had not identified the relevant custodians for IPPs' requests. I advised Mr. Howard and Ms. Taskai that IPPs would be willing to provide proposed search terms

if Amazon identified the relevant custodians and indicated it was willing to search for responsive documents.

17. On April 6, 2020, I sent an email to Mr. Howard and Ms. Taskai advising that IPPs could not accept the transactional data for approximately 50-100 ASINs, as that was not a sufficient sample for our experts' analysis, and that it appeared we had reached an impasse with respect to Amazon's transactional data. I also asked for a final response on the substantive document requests, and indicated that IPPs would presume we had reached an impasse if I did not hear from them by close of business on April 8, 2020. A copy of that email is contained in the email string attached as **Exhibit E**.

18. I did not receive a response by email from Mr. Howard or Ms. Taskai by April 8, 2020, or at any time thereafter.

19. I met and conferred telephonically with Mr. Howard on April 14, 2020, for approximately 3 minutes. During that conversation, we confirmed and agreed that IPPs' and Amazon's respective positions are too far apart and that we have reached an impasse, making this matter ripe for court intervention.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of April, 2020, at Minneapolis, Minnesota.

*/s/ Joseph C. Bourne*
Joseph C. Bourne