# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| IN RE KEURIG ANTITRUST LITIGATION | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:14-MD-02542 (VSB) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: AMAZON.COM, INC.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A to Subpoena

| Place: Yamaguchi Obien Mangio Reporting c/o Joseph Bourne<br>1200 5th Ave #1820<br>Seattle, WA 98101 | Date and Time:<br>10/30/2019 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/30/2019

*CLERK OF COURT*

OR

/s/ Joseph C. Bourne

*Signature of Clerk or Deputy Clerk*     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Indirect Purchaser Plaintiffs , who issues or requests this subpoena, are:

Joseph C. Bourne, 800 LaSalle Ave., Suite 2150, Minneapolis, MN 55402, jbourne@pswlaw.com, (612) 389-0600

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:14-MD-02542 (VSB)

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                          *Server's signature*

                                          _____
                                          *Printed name and title*

                                          _____
                                          *Server's address*

Additional information regarding attempted service, etc.:

Case 1:14-md-02542-VSB-SLC   Document 923-2   Filed 04/22/20   Page 4 of 20

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
:
IN RE: KEURIG GREEN MOUNTAIN            :   ECF Case
SINGLE SERVE COFFEE ANTITRUST           :
LITIGATION                              :   1:14-md-2542-VSB-HBP
:
:   MDL No. 2542
:
---------------------------------------------------------- X

**ATTACHMENT A TO AMAZON.COM, INC. SUBPOENA**

**DEFINITIONS AND RULES OF CONSTRUCTION**

The definition, rules of construction, words and phrases used in this request shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York ("Local Rules"). The definitions and provisions of the Joint Electronic Discovery Submission No. 1 and Order (Dkt. 41) and Stipulated Protective Order (Dkt. 49) are also hereby incorporated and apply to this request. The definitions referenced herein apply without regard to capitalization. The following terms shall have the meanings set forth below.

1. "Agreement" shall mean any contract, arrangement, understanding, or other type of agreement, formal or informal, oral or written, direct or indirect, tacit or express, between two or more Persons.

2. "Communication" shall have the broadest meaning accorded to it by Fed. R. Civ. P. 34 and Local Rule 26.3.

3. "Compatible Portion Pack" means any Portion Pack that is either: (1) compatible with K-Cup Brewers; or (2) would be compatible with K-Cup Brewers, but for any Lock-Out Technology designed to prevent Compatible Portion Packs from working in 2.0 K-Cup Brewers.

4. "Document" is used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure and includes, but is not limited to, all of the following matter in your actual or constructive possession, custody or control: All written, typed, printed, recorded, textual, graphic, or photographic matter, software, source code, object code, Communications including intra-company or inter-company Communication or correspondence, cablegrams, radiograms, telegrams, and telefaxes, however produced or reproduced, any notes or drafts, and all copies on which any mark, alteration, writing, or any other change from the original has been made. It includes, but is not limited to, patents, patent

applications, reports, compilations, data, test results, laboratory, engineering or any other notebooks, diaries, work papers, graphs, charts, blueprints, drawings, sketches, schematics, operator manuals and handbooks, machinery manuals, directions, instruction books, books and booklets, texts, memoranda, letters and other correspondence, sales and promotional literature, brochures, press releases, forms, written contracts, licenses, sales Agreements, ledgers, archive records, minutes or records of meetings, conferences or telephone conversations, including lists of Persons attending the meetings or conferences, legal pleadings or files, expired files, and information that has been electronically stored or recorded, including voice mail and electronic mail.

5. "Electronically Stored Information" or "ESI" shall have the broadest meaning accorded to it by Fed. R. Civ. P. 34, including Documents and information stored, or recorded by, any electronic means, such as, without limitation, in a computer, hard drive, optical disk, floppy disk, diskette, tape, videotape, record, cassette, removable electronic media, flash drives, electronic mail or instant messaging, any other electronic recording, or other data compilation form from which information can be obtained or translated.

6. "Including," "Include," or "Includes" shall mean including without limitation.

7. "JAB" means JAB Holding Company, and includes (i) any of its subsidiaries, corporate parents, affiliates, divisions, departments or other organizational or operational units; (ii) all of their predecessors and successors in interest and their subsidiaries and affiliates; and (iii) all present or former officers, directors, employees, partners, consultants, representatives, agents, attorneys and Persons acting or purporting to act on their behalf.

8. "K-Cup" shall mean a Portion Pack that is made by, or under a license from, Keurig. It includes but is not limited to K-Cups meant for use in the 1.0 and 2.0 Keurig Single-Serve Brewer models.

9. "K-Cup Brewer" means a Single-Serve Brewer manufactured or licensed by Keurig for use with K-Cups.

10. "Keurig" means Keurig Green Mountain, Inc., and includes (i) any of its subsidiaries, corporate parents, affiliates, divisions, departments or other organizational or operational units; (ii) all of their predecessors (including but not limited to Green Mountain Coffee Roasters, Inc. and Keurig, Inc.) and successors in interest and their subsidiaries and affiliates; (iii) all of its corporate parents or owners (including JAB); and (iv) all present or former officers, directors, employees, partners, consultants, representatives, agents, attorneys and Persons acting or purporting to act on their behalf.

11. "Keurig K-Cup" means any Compatible Portion Pack sold under Keurig's own brand names, including but not limited to the K-Cups sold under the Keurig brand names "Green Mountain Coffee," "Barista," "Café Escapes," "Coffee People," "Diedrich," "Donut House," "Naturals," "Revv," "The Original Donut Shop Coffee," "Timothy's," "Tully's," "Van Houtte," and "Vitamin Burst."

12. "Keurig 2.0" means any Keurig Single-Serve Brewer in the 2.0 series.

13. "Licensed K-Cup" means any Compatible Portion Pack licensed from Keurig and sold under the licensee's brand name, including but not limited to the K-Cups sold under the brand names of Starbucks, Coffee Bean, Krispy Kreme, Caribou, Donut Shop and Peets.

14. "Lock-Out Technology" or "Lock-Out Mechanism" means any technology that prevents, or is designed to prevent, Compatible Portion Packs from working in Keurig 2.0 K-Cup Brewers.

15. "OneCup" means either the Rogers' brand Compatible Portion Pack or Amazon Private Label Compatible Portion Packs produced by Rogers.

16. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

17. "Price" or "Pricing" shall mean actual, proposed, suggested, or recommended monetary values or rates, as well as price increases or decreases, retail prices, wholesale prices, transfer prices, exchange prices, markups, profit margins, discounts, rebates, promotions, or promotional allowances, and all related costs or charges.

18. "Portion Pack" shall mean a disposable cartridge, capsule, pod, or pack containing prepared beverage or food product portions that are used in Single-Serve Brewers to make a wide variety of beverage and food products, including, but not limited to, K-Cups and Compatible Portion Packs.

19. "Relating to" means, without limitation, referring to, pertaining to, dealing with, concerning, mentioning, discussing, describing, reflecting, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, evidencing, constituting, or otherwise involving, in whole or in part.

20. "Rogers" means JBR, Inc. (d/b/a Rogers Family Company) and includes, without limitation, (i) any of its subsidiaries, corporate parents, affiliates, divisions, departments, or other organizational or operational units; (ii) all of its predecessors and successors in interest and their subsidiaries and affiliates; and (iii) all of its present or former officers, directors, employees,

partners, consultants, representatives, agents, attorneys or Persons acting or purporting to act on their behalf.

21. "Rogers' OneCup" means the Compatible Portion Pack manufactured by Rogers.

22. "Single-Serve Brewer" means a pressurized hot water brewing apparatus that can be used to brew one or more servings at a time of coffee, tea, cider, hot cocoa, or other hot beverages or food products, such as soups and oatmeal, from a Portion Pack that is inserted into the brewer.

23. "TreeHouse" shall mean TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. and includes, without limitation, (i) any of its subsidiaries, corporate parents, affiliates, divisions, departments, or other organizational or operational units; (ii) all of its predecessors and successors in interest and their subsidiaries and affiliates; and (iii) all of its present and former officers, directors, employees, partners, consultants, representatives, agents, attorneys and Persons acting or purporting to act on their behalf.

24. "You" and "Your" or "Amazon" or Amazon.com shall mean Amazon.Com, Inc. and any employees, agents, subsidiaries, or affiliates thereof.

25. "Whole Foods" shall mean Whole Foods Market, Inc. and any employees, agents, subsidiaries, or affiliates thereof.

## INSTRUCTIONS

1. In responding to these Requests, You are requested to produce all Documents in Your possession, custody, or control, wherever located, including without limitation any Document available to You upon request from Your parents, affiliates, subsidiaries, employees, officers, directors, attorneys, accountants, financial advisors, consultants, private investigators, or other agents or Persons acting or purporting to act on Your behalf, as required by the Federal

5

Rules of Civil Procedure and the applicable Local Rules.

2. You should confer with Rogers regarding the timing and format for the production of ESI prior to production. If possible, You should produce Documents and things in compliance with the Joint Electronic Discovery Submission (Dkt. 41).

3. All Documents should be produced as maintained in the ordinary course of business. Documents from any single file should be produced in the same order as they were found in such file, including any labels, files, folders and/or containers in which such Documents are located or associated with. If copies of Documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

4. If more than one copy of a Document exists, produce each copy on which there appears any notation or marking of any sort not appearing on any other copy (including routing or filing instructions) or any copy containing different attachments from any other copy.

5. If any part of a Document is responsive to any request herein, produce the entire Document, including any attachments or exhibits.

6. If You are not producing any Documents in response to any of the Requests herein, Your response should make it clear that You are not producing any Documents in response to that Request.

7. If You withhold any Documents on a claim of privilege, You must provide a statement of the claim of privilege and all facts relied upon in support of that claim as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure. You must further specify in a privilege log each Document or portion thereof to which the objection is made and with respect to each Document or portion thereof so specified, provide the following:

    a) the source of the Document;

   b)  the medium (*e.g.*, electronic or paper) and length of the Document;

   c)  the existence and identity of any attachments to the Document;

   d)  the date of the Document;

   e)  the subject matter of the Document;

   f)  the nature (*e.g.*, memorandum, letter, report, chart, etc.) of the Document;

   g)  the author(s) and recipient(s) of the Document, including any blind courtesy copy recipients;

   h)  the Request(s) to which the Document is responsive; and

   i)  the exact basis, legal or otherwise, for Your claim that such Document (or any portion thereof) need not be disclosed.

  8.  If You are aware of any Document responsive to these Requests that is no longer in Your possession, custody, or control, or which was in existence, but is no longer in existence, state precisely what disposition was made of it, when such disposition took place, and identify the Person(s) who ordered or authorized such disposition, as well as who presently has possession, custody, or control of the Document, if it still exists.

  9.  When an identified Document is destroyed or alleged to have been destroyed:

   a)  state the date and reasons for its destruction;

   b)  Identify each Person having knowledge of its destruction;

   c)  Identify each Person responsible for its destruction.

  10.  Unless otherwise indicated in one of the following requests, these requests refer to the time, place, and circumstances of the event and the other occurrences mentioned or complained of in the pleadings.

  11.  These requests shall be deemed continuing within the meaning of Rules 26(e)(1)

and (2) of the Federal Rules of Civil Procedure so as to require supplemental production of Documents or Things if You discover responsive Documents or Things after the date for response hereto despite a diligent effort to produce all responsive Documents or Things within the time specified under these Rules.

12. Unless otherwise specified, these Requests relate only to Documents dated June 1, 2010 to the present.

13. The serving parties request that all Documents and things (including ESI) that might have impact on the subject matter of this litigation, including Documents and things responsive to these requests, be preserved and that You immediately cease any ongoing process of removal, discarding, and/or destruction of such information and Documents.

**DOCUMENTS REQUESTED**

1. All Documents Relating to Keurig 2.0, Including, but not limited to, any Documents Relating to any meetings in which Keurig 2.0 was discussed.

2. All Documents Relating to any Communications between Amazon and Keurig concerning OneCups or any other Compatible Portion Packs.

3. All Documents Relating to any decision by Amazon or Whole Foods to reject any and all sales proposals Relating to Rogers' OneCups and/or any Compatible Portion Packs not licensed by Keurig between January 1, 2011 and the present.

4. All Documents Relating to any decision by Amazon in February 2018 to discontinue selling or to decline to sell Compatible Portion Packs produced by Rogers, in connection with, but not limited to, online, retail, in-store, and/or office coffee supply sales.

5. All Documents Relating to any decision by Amazon either to discontinue selling or to decline to sell Compatible Portion Packs produced by TreeHouse, in connection with, but not limited to, online, retail, in-store, and/or office coffee supply sales.

6. All Documents Relating to any decision by Amazon or Whole Foods to increase or decrease stock, shelf space, shelf prominence, webpage prominence, or retail location prevalence of any Compatible Portion Packs not licensed by Keurig at any time between January 1, 2011 to the present.

7. All Documents Relating to any decision by Amazon to purchase TreeHouse Compatible Portion Packs through brokers or distributors, rather than directly from TreeHouse.

8. All Documents Relating to any restriction or requirement with respect to Amazon's or Whole Foods' stocking, shelf space, shelf prominence, webpage prominence, or retail location prevalence of K-Cups at any time between January 1, 2011 to the present.

9. All Documents Relating to any Keurig, JAB, Amazon, or Whole Foods restriction or requirement Relating to Amazon's or Whole Foods' inventory, shelf space, shelf prominence, webpage prominence, or retail location prevalence of Compatible Portion Packs not licensed by Keurig at any time between January 1, 2011 to present.

10. All Documents Relating to any Agreements or Communications with any broker, distributor or manufacturer of Compatible Portion Packs concerning any Compatible Portion Packs, Including any Agreements or Communications seeking or attempting to prevent or preclude Amazon or Whole Foods from purchasing, stocking or selling any other brand of Compatible Portion Pack.

11. Documents sufficient to show all Agreements, Including drafts of Agreements not entered into and all Documents Relating to negotiations of proposed, existing, or previously existing Agreements, between Amazon (or Whole Foods) and Keurig or JAB between January 1, 2011 and present.

12. All Documents Relating to any Communications concerning the impact or effect that sale or offer for sale by You of any Compatible Portion Packs not licensed by Keurig might have on the status, effect, continuation, enforceability, or validity of Your Agreement(s) with Keurig or JAB, Including any such Communications concerning potential or actual termination of Your Agreement(s) with Keurig or JAB.

13. Documents sufficient to show sales, Pricing and comparative performance of any Compatible Portion Packs at Amazon, broken out by retail location, from October 1, 2011 to present.

14. Documents sufficient to show any Agreements with third parties to purchase Compatible Portion Packs.

15. All Documents Relating to the decision to purchase Compatible Portion Packs through third parties.

16. All documents Relating to any Keurig or JAB Communications in which Keurig or JAB questioned Amazon regarding the inclusion of Rogers Compatible Portion Packs in Amazon's website or advertisements.

17. All documents Relating to any purported "confusion" that unlicensed Compatible Portion Packs would cause if used by Keurig brewer users, Including any statements by Keurig or JAB to that effect.

18. All documents Relating to any Keurig or JAB cooperative advertising policy.

19. All documents Relating any JAB or Keurig Paid Search Brand Policy or Google Adwords program or similar policy or program concerning search results Relating to pods to be used in Keurig brewers.

20. All documents Relating to any Keurig or JAB policy restricting the advertising of unlicensed Compatible Portion Packs.

21. Documents sufficient to show all Amazon customer reviews for Compatible Portion Packs from January 1, 2012 to present.

22. Documents sufficient to show all Amazon customer star ratings for Compatible Portion Packs from January 1, 2012 to present.

23. All Documents Relating to Keurig's Communications, Agreements, or contracts with coffee and/or other hot beverage licensees, roasters, and coffee and/or other hot beverage brands, such as, without limitation, Starbucks®, The J.M. Smucker Co.®, Dunkin' Donuts®, Caribou Coffee®, Wolfgang Puck®, Newman's Own®, Gloria Jean's Coffee®, Eight

11

O'Clock®, Peet's®, Maxwell House®, Folgers®, Bigelow®, Twinings®, Swiss Miss®, and Celestial Seasonings®.

24. All Documents and Communications Concerning Your volume of sales, Pricing, or margins to any customer for K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig product.

25. All Documents, Including transactional data, related to Your purchases of K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products, Including but not limited to Documents or data sufficient to identify the:

   a. Invoice number;

   b. Purchase order number;

   c. The purchaser's name and address, Including the identity of the entity that was billed and the address to which the K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products were shipped;

   d. the name and address of the entity from whom You purchased K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products, Including the vendor number, the identity of the entity that invoiced You for the K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products and the address from which it shipped the K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products to You;

   e. date of purchase;

   f. type of transaction (i.e., purchase, return or exchange);

   g. items purchased, Including but not limited information regarding the manufacturer of the K-Cup Brewers, Portion Packs, Keurig K-Cups, or other

        Keurig products and any UPC, SKU or other identifying code associated with the item;

   h. quantity for each K-Cup Brewer, Portion Pack, Keurig K-Cups, or other Keurig product You purchased;

   i. all Pricing and fee information Concerning Your purchase, Including the Price paid for the product, shipping, tax, or similar charges, and the gross and net unit Price for each item purchased;

   j. any discounts, rebates, credits, freight allowances, free goods and/or services, cooperative marketing funds, advertising funds, promotional funds or allowances, slotting allowances, or any other marketing assistance, support or other off-invoice financial incentives received, Pricing adjustment for each purchase, with sufficient information to attribute these adjustments to individual sales;

   k. all contracts related to the purchase; and

   l. all invoices related to the purchase.

26. All Documents, Including transactional data, Concerning sales of K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products from You to customers, Including but not limited to Documents or data sufficient to identify the:

   a. purchaser, Including but not limited to name, address, phone number, customer identification number, and loyalty card number;

   b. date of sale;

   c. items sold, Including but not limited to brand, size of package or container, and any UPC, SKU or other identifying code associated with the item;

   d. quantity of each item sold;

    e. sales Price;

    f. any discounts applied;

    g. all other Pricing information Relating to the transaction, Including the gross and net unit Price for each item;

    h. location of sale;

    i. entity that supplied You the items You sold;

    j. the amount You paid to that entity for the purchased items, Including any discounts, rebates, or other savings received in connection therewith and any transactional data or information linking the specific product sale to the specific purchase; and

    k. any other data available Relating to the sale, exchange or distribution of K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products.

27. Documents sufficient to identify all guidelines, policies, procedures and methodologies employed by You Concerning records, databases or other Documents which establish and allow for review of the purchase histories of customers, Including but not limited to Your use of loyalty programs.

28. All Documents Concerning Prices, discounts, advertisements, or promotions, Including, but not limited to Price announcements, Price lists, promotional offers, Price schedules or Price changes for K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products. This request encompasses Documents Related both to Your purchase of K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products and Your sale of K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products.

29. All Documents Concerning all guidelines, policies, procedures and methodologies employed by You to set the Price at which You sold K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products.

30. All Documents analyzing, forecasting, or discussing the market for K-Cup Brewers, Portion Packs, Keurig K-Cups, or other Keurig products in the United States, Including, but not limited to, market studies, articles, analyses, and the like.