# EXHIBIT C

Law Offices
### Pearson, Simon & Warshaw, LLP
800 LaSalle Avenue, Suite 2150
MINNEAPOLIS, MINNESOTA 55402
(612) 389-0600
Fax (612) 389-0610
www.pswlaw.com

writer's direct contact
(612) 389-0601
jbourne@pswlaw.com

October 7, 2019

**VIA EMAIL**

Molly Newland Tullman
Donna Crawford
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
mollytullman@dwt.com
donnacrawford@dwt.com

Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, Case No. 14-md-2542 (VSB) (S.D.N.Y.)

Dear Molly:

I'm writing to follow up on our telephonic meet and confer on September 11, 2019, regarding the Indirect Purchaser Plaintiffs' subpoena of Amazon in the above-referenced matter.

As we discussed, my clients reissued the subpoena; the reissued subpoena was served on Amazon on October 2, 2019. This avoids questions about which parties are involved, since the earlier version of the subpoena was served jointly by my clients, the Indirect Purchaser Plaintiffs, and by one of the other plaintiffs in this multidistrict litigation, JBR, Inc., d/b/a Rogers Family Corporation. As we discussed, Rogers is no longer involved in seeking to enforce this subpoena.

The reissued subpoena is substantively identical to the earlier one except for a new place of compliance in Seattle and a new date of compliance of October 30, 2019. This consistency will help us continue to meet and confer without the need to start over or for you to ascertain what, if any, substantive changes were made.

We discussed several topics relating to the scope of the subpoena. These are addressed further below. It is important to note that Indirect Purchaser Plaintiffs (hereinafter "Plaintiffs") seek to reach agreement with Amazon on the scope of the production it will make. We believe the subpoena is enforceable and proportional to the

Los Angeles      San Francisco      Minneapolis

Molly Newland Tullman
October 7, 2019
Page 2

needs of the case as written. However, we are willing to narrow the documents we are seeking in various respects as part of our effort to reach a compromise with Amazon, and unless otherwise noted, any such compromise we offer is conditioned upon reaching agreement with your client on the documents it will produce.

## I. General Issues

### A. Scope of Requests for Production

Plaintiffs will agree that Amazon need not produce communications it had with parties to the litigation, such as Keurig, Rogers, and TreeHouse. Instead, Plaintiffs will agree to seek only internal documents and communications with other third parties.

Amazon has objected to the requests to the extent they seek "all documents" regarding an identified topic. Plaintiffs understand that in searching for documents, particularly ESI, it may not be possible to produce "all documents." This may be particularly true when the search would not be a "go get" search, such as transactional data maintained in a discrete database, but instead may require keyword searches or the use of technology assisted review. Accordingly, to the extent the requests seek "all documents," Plaintiffs will agree that Keurig may produce documents "sufficient to show" the requested matter based upon a reasonable search and production of such responsive documents.

### B. Amazon's Document Systems and Preservation

We discussed your understanding that Amazon only preserves or maintains emails for 30-90 days. Can you confirm this is accurate? Please also clarify if this means those emails are deleted entirely or if they are archived on backup media in some manner that Amazon views as not readily accessible. Additionally, please confirm whether internal Amazon emails in connection with contract negotiations are preserved as part of Amazon's contract negotiation files.

Responsive documents may also be maintained in hard drives, network folders, shared drives, and the like. Could you let me know what, if any, preservation policy Amazon has on other sources of documents or ESI, such as hard drives, network folders, and shared drives?

Law Offices
**Pearson, Simon & Warshaw, LLP**

Molly Newland Tullman
October 7, 2019
Page 3

These questions present overarching issues regarding what types of responsive documents Amazon likely still has at this point, and to what degree they are readily accessible.

### C. Protective Order

The Court has entered a protective order in this case, which is attached. The protective order permits Amazon to make a confidentiality designation of any documents it produces.

## II. Specific Requests

### A. Transactional Data (Requests 25 and 26)[1]

You advised me that Amazon needs ASINs for the products for which Plaintiffs seek transactional data, and that those can be located, for example, on the product pages on Amazon's website. That is because Amazon's transactional databases cannot be searched by product name, keyword, or other identifier such as UPC. You also advised that Amazon has separate databases for where Amazon is the seller and where a third party is the seller. Amazon's sales data that it maintains and which is accessible in the ordinary course of business typically dates back to approximately 2010. If my understanding of any of this is incorrect, please let me know.

Is Amazon able to provide Plaintiffs with a list of ASINs and the product information they correspond to for the compatible portion packs that Amazon has sold? Does it keep a list like that? If not, could it export a limited data set, such as ASINs, UPCs, and product names? This information would allow us to identify the ASINs that we're interested in and provide a list of ASINs to Amazon. We have had success obtaining transactional data from other third parties in a similar manner.

If that is not possible, please let me know why not. Litigation needs aside, Amazon plainly has business reasons for needing to be able to sort and search its

---

[1] The following characterizations of the documents sought in the specific requests listed are shorthand for the documents encompassed by those requests, but unless otherwise specified, they are not intended to limit the scope of the documents sought by each particular request identified herein.

Law Offices
**Pearson, Simon & Warshaw, LLP**

Molly Newland Tullman
October 7, 2019
Page 4

transactional data; there's a reason it maintains this data, after all. Amazon must have some method of finding the transactional data for certain products or lines of products. And Plaintiffs searching Amazon's website for ASINs of products is not a workable option, particularly since many of the products at issue may have changed or become unavailable during the relevant time period.

### B.  Advertising, Search, and Display Policies (Requests 18-20)

We seek Amazon's internal documents regarding its advertising, search, and display policies as they relate to compatible portion packs, including unlicensed compatible portion packs. These documents are particularly relevant to the issue of whether Keurig requested and received particular retailers' agreement to place restrictions on how unlicensed portion packs display in particular retailer web pages and/or search result listings.

### C.  Market Forecasts and Analysis (Request 30)

We seek Amazon's analysis, discussion, and forecasts of the market for K-Cup Brewers, K-Cups, and other compatible portion packs.  These analyses are relevant to the overall sales performance of unlicensed portion packs, such as Rogers and TreeHouse portion packs, at particular retailers relative to the performance of licensed portion packs. Plaintiffs do not have access to relevant online retail market forecasts and analysis from the parties or public sources.

### D.  Amazon Customer Star Ratings of Compatible Portion Packs (Requests 21 and 22)

Amazon's customer reviews and star ratings of compatible portion packs are highly relevant to how compatible portion packs were received in the marketplace, including unlicensed portion packs, such as those made by Rogers and TreeHouse. This includes documents relating to the posting of false or potentially false negative reviews on Amazon of compatible portion packs.

### E.  Decision to Discontinue Unlicensed Compatible Portion Pack Sales or to Change Their Placement or Prominence (Requests 3-6)

Law Offices
**Pearson, Simon & Warshaw, LLP**

Molly Newland Tullman
October 7, 2019
Page 5

We seek internal documents and communications regarding Amazon's decision to discontinue selling, or to decline to sell, compatible portion packs produced by Rogers or TreeHouse.

You mentioned on our last call that you believed Amazon never discontinued the sale of Rogers compatible portion packs. Our understanding is to the contrary. In particular, we understand that Rogers was discontinued from the Amazon direct program in early 2018, so that Rogers sales were for several months confined to Amazon's third-party seller program that involves a very different pricing, freight, and cost structure than the Amazon direct program. Later, Amazon added Rogers' portion packs back to the Amazon direct program. We are seeking the documents regarding the decision to discontinue Rogers from the direct program in early 2018, which are relevant to the extent Amazon's decision was a result of communications from, or behavior by, Keurig intended to influence retailer decision-making.

### F. Documents Regarding Pricing Practices (Requests 28-29)

We seek documents regarding Amazon's internal pricing methodology and practices and price lists and schedules as they relate to K-Cup brewers and compatible portion packs. These documents are likely to help our experts understand and provide context to Amazon's transactional data and will help them construct an econometric damages model.

### G. Other Issues (Requests 1-2, 7-17, 21, 23-24, 27)

Plaintiffs are willing to forego a production of the remaining categories of documents if they can reach an agreement with Amazon to produce the categories of documents described above.

You mentioned that Amazon's primary objection to the subpoena is its scope, particularly the fact that Plaintiffs served 30 requests for production. While we believe all of the requests are targeted at relevant information that is important for the needs of this complex antitrust class action litigation, our goal is to reach an agreement that Plaintiffs and Amazon can both live with. We believe that agreeing to forego production of 16 out of 30 categories of documents is an important step toward that end. However, if we are unable to reach agreement and motion practice becomes necessary, we reserve our right to seek additional categories of documents sought in the subpoena.

Law Offices
**Pearson, Simon & Warshaw, LLP**

Molly Newland Tullman
October 7, 2019
Page 6

      Please let me know when you are available for another meet and confer to continue discussing these issues.

                                          Very truly yours,

                                          PEARSON, SIMON & WARSHAW, LLP

                                          */s/ Joseph C. Bourne*

                                          JOSEPH C. BOURNE