Exhibit 2



September 9, 2019

**VIA EMAIL**

Mackenzie A. Baird
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
mackenzie.baird@bipc.com
(412) 562-1825

Re: Production of Technical Documents

Dear Mackenzie:

In the process of preparing for the continuation of the deposition of Robert McCall (SVP of Systems Engineering) and the deposition of Ian Tinkler (VP of Brewer Engineering), we were struck by the fact that Keurig has not produced a complete set of documents regarding the design, actual operation, and functionality of the software and hardware in the Keurig 2.0. These documents include, but are not limited to, manuals, presentations, datasheets, specifications, schematics, drawings, flow charts, software code, hardware code, firmware code, design review documents, engineering notebooks, or test results, or any such documents received from third parties such as design companies or component manufacturers. Relevant functionality includes, but is not limited to, how the machine reads and responds to fluorescent signals reflected from taggant ink, how the trigger mechanism in the cup holder functions upon insertion of a pod of a particular size, and how the magnets in the cup holder function. Keurig should have produced these documents for the entire time period beginning with the initial design, up to and including all actual or proposed changes to the operation of the device, and any adjustments made to the sensor after 2014. To our knowledge, Keurig has not produced anywhere close to a complete set of documents to show the technical details of how the Keurig 2.0 or CBT ("Consumer Benefit Technology") operate.

Keurig cannot argue this information was never requested by Plaintiffs. In fact, the requests were made from the outset of discovery in this case as reflected in the attached chart.

Please produce the technical drawings, test results, commented source code, and documents showing planned or actual changes to the operation of the 2.0 or CBT technology immediately or we will be forced to bring a motion to compel.

September 9, 2019
Page **2** of **6**

      Your prompt response is necessary as the depositions of these Keurig engineering leaders are scheduled to start shortly.


Sincerely yours,

*[signature: Daniel Johnson Jr.]*

Daniel Johnson Jr.


DAN JOHNSON LAW GROUP, LLP
dan@danjohnsonlawgroup.com
400 Oyster Point Blvd., Ste. 321
South San Francisco, CA 94080
(415) 604-4500

## ATTACHMENT A

| **2016-08-31 FIRST SET OF REQUESTS FOR PRODUCTION** |
|---|
| **REQUEST FOR PRODUCTION NO. 12**<br>All Documents Concerning the **performance of all 2.0 K-Cup Brewers and all various models and prototypes thereof, whether testing was conducted internally by, or externally for, KGM**. |
| **REQUEST FOR PRODUCTION NO. 27**<br>All Documents and Things relating to the decision by Keurig, following the launch of Keurig 2.0, to allow Keurig brewers to brew, without restriction, both Licensed K-Cups and unlicensed Compatible Portion Packs. |
| **REQUEST FOR PRODUCTION NO. 28**<br>All Documents Concerning Your decision to include, and **the process for implementation of, any Lock-Out Technology.** |
| **REQUEST FOR PRODUCTION NO. 29**<br>All Documents and Communications with Motiv Concerning **the strategy, development, design, production** and marketing of 2.0 K-Cups or 2.0 KCup Brewers, including Documents and Communications Concerning any Lock-Out Technology. |
| **REQUEST FOR PRODUCTION NO. 30**<br>All Documents and Communications with Sagentia Concerning **the strategy, development, design, production a**nd marketing of 2.0 K-Cups or 2.0 K-Cup Brewers, including Documents and Communications Concerning any Lock-Out Technology. |
| **REQUEST FOR PRODUCTION NO. 31**<br>All Documents and Communications with Sun Chemical and any other third party Concerning any Lock-Out Technology **and/or the agreement to develop and/or supply proprietary ink to KGM**. |
| **REQUEST FOR PRODUCTION NO. 32**<br>All Documents and Communications Concerning **inks, dyes, or taggants that You use, have used, tested, or considered for use, in the manufacture of 2.0 K-Cups**, including, without limitation, all Agreements and Communications between You and any entity Concerning the supply or sale of such inks, dyes, or taggants. |
| **REQUEST FOR PRODUCTION NO. 33**<br>**All Documents and Communications Concerning** "Project Squid." |

**REQUEST FOR PRODUCTION NO. 34**
All Documents and Communications including, but not limited to, any meeting minutes, notes, PowerPoint presentations, slideshows, or handouts, and/or Communications Concerning any Employee or Investor meetings, conferences, webinars, presentations, trainings, or calls **Concerning the research, design, engineering, development, manufacturing, assembly, packaging, testing, sampling, marketing, and advertising, and launch of the Keurig 2.0 Brewer,** including, but not limited to, any meeting led at least in part by Tom Novack [*sic*] in the Keurig Waterbury Center Research & Development Cafeteria.

**REQUEST FOR PRODUCTION NO. 35**
All Documents and Communications, including, but not limited to, memoranda and meeting notes Concerning any business, marketing, advertising, **design, development**, or **other strategies** and/or "projects" that KGM engaged in, or considered engaging in, with consultants, advisors, or other type of third-party service providers, including, but not limited to, Sagentia and Motiv, during the Relevant Time Period in connection with the 1.0 K-Cup Brewer, Vue Brewer, 2.0 K-Cup Brewer, K-Cups, Competitive Cups, and any other component or input associated with the foregoing.

**REQUEST FOR PRODUCTION NO. 37**
All Documents and Communications Concerning **the research, design, development, engineering, manufacturing, assembly, packaging, testing, sampling**, marketing, and advertising of **2.0 K-Cup Brewers**.

**REQUEST FOR PRODUCTION NO. 39**
All Documents and Communications Concerning the quality, benefits, convenience, Pricing, **functionality, capabilities, or other consumer benefits of any Lock-Out Technology**.

**REQUEST FOR PRODUCTION NO. 40**
All Documents and Communications **Concerning any actual, potential, or purported intellectual property protection for 2.0 K-Cup Brewers**, 2.0 K-Cups, or any Lock-Out Technology.

## ATTACHMENT B

| **2018-07-05 SECOND SET OF REQUESTS FOR PRODUCTION** |
|---|
| **REQUEST NO. 1**<br>From January 1, 2009 through the present and until the end of the litigation, Documents and Communications Concerning **a feature of any Keurig Single-Serve Brewer, including those currently being designed or in the prototype stage, designed to tailor, adjust or otherwise differentiate how cups are brewed or how the brewing process is initiated based on whether a licensed K-Cup or unlicensed Competitive Cup is inserted into the brewer.** |
| **REQUEST NO. 2**<br>From January 1, 2009 through the present and until the end of the litigation, Documents and Communications Concerning the means by which a **brewer, brewer prototype, or model sometimes referred to as the K600 Series Single-Serve Brewer (and any earlier or later iterations of such Single-Serve Brewer) identifies, treats, or responds to the type of cup inserted into the machine, including, without limitation, whether a cup is licensed or unlicensed and including Communications to retailers, other resellers, distributors, analysts, or consumers concerning how unlicensed Competitive Cups will or will not work in any iterations or of this brewer.** |
| **REQUEST NO. 3**<br>From January 1, 2009 through the present and until the end of the litigation, Documents and Communications Concerning any **prior, current, or contemplated Lock-Out Technology,** including less restrictive alternatives to the Lock-Out Technology, such as **messages warning consumers that an inserted cup was not a K-Cup**, including, without limitation, any programmed error alert, such as "Oops" in response to use of a Competitive Cup. This includes but is not is limited to all non-privileged Documents (excluding those relating solely to KOLD or business outside the United States) in the following folders (including all subfolders), as well as additional relevant folders in Appendix A… |
| **REQUEST NO. 4**<br>From January 1, 2009 through the present and until the end of the litigation, Documents and Communications Concerning means **capable of preventing or hindering Competitive Cups from working, being used, or brewing the same as licensed K-Cups in Single-Serve Brewers**, including, without limitation, through **the use of taggants, CBT, RFID, IDME, "K-Cup Protection R&D," bar codes, QR codes, Wi-Fi connected Single-Serve Brewers or K-Cup Brewers, Internet of Things ("IoT"), Keurig Connect, the Keurig Insights Tracker, and/or any other method of identification and/or authentication**. This includes but is not is limited to all non-privileged Documents (excluding those relating solely to KOLD or business outside the United States) in the following folders (including all subfolders), as well as additional relevant folders in Appendix A… |

**REQUEST FOR PRODUCTION NO. 49**
Documents and Communications with distributors, roasters, suppliers, licensees, retailers, or **other business partners** Concerning Competitive Cups, Competitive Cup makers, TreeHouse, K-Cup pricing, **Lock-Out Technology, Consumer Benefit Technology, CBT, interactive Keurig 2.0 Brewing Technology, Keurig Benefit Technology,** KBT, exclusivity, loyalty provisions, non-compete provisions, market share, private label, Office Coffee Services, distribution, antitrust issues, false advertising, unfair competition, or competition. This includes but is not is limited to all non-privileged Documents (excluding those relating solely to KOLD or business outside the United States) in the following folders (including all subfolders), as well as additional relevant folders in Appendix A…

**REQUEST FOR PRODUCTION NO. 53**
Documents and Communications Concerning "**Consumer Benefit Technology,**" "**CBT,**" "**Keurig Benefit Technology,**" or "**KBT,**" including Documents and Communications with, or work done by, Consumer Dynamics, Sparkline, Compass Marketing, or McKinsey, among others, as well as the creation and evolution of these terms. This includes but is not is limited to all non-privileged Documents (excluding those relating solely to KOLD or business outside the United States) in the following folders (including all subfolders), as well as additional relevant folders in Appendix A…