Exhibit 6



May 11, 2020

**VIA EMAIL**

Mackenzie Baird, Esq.
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
*mackenzie.baird@bipc.com*

    Re:    *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, MDL No. 2542; Keurig's Response to JBR's Interrogatory No. 1

Dear Mackenzie:

    It has come to our attention that Keurig's response to JBR's Interrogatory No. 1 is incomplete, and that Keurig's past statements about the completeness of its production of source code are incorrect.

    At the outset, the files produced by Keurig and identified in response to Interrogatory No. 1 are not source code. Nothing is identified in the interrogatory response which could be appropriately characterized as a copy of the source code, as it existed, in any particular version of the Keurig 2.0 brewer, let alone all versions.

    In particular, Keurig's production and interrogatory response are missing the source code and hardware description language code for all versions of Keurig 2.0, and are missing the source files, library files, header files, project and make files, and source files for the routines that are called out in the header files. Without those files, there is no way to review and analyze a functioning copy of the code for each version of the 2.0 product.

    Keurig's production and interrogatory response are also insufficient to identify each version of source code used in 2.0 brewers shipped to Keurig customers, or to identify the specific branch and revision number or tags associated with the production build of the source code. Keurig's interrogatory response does not identify third party source code libraries or header files by name, purpose, vendor, and version number. Keurig's response does not identify the object code or firmware code as used in production versions of the 2.0 brewer.

    These omissions are particularly glaring given that, in its supplemental Rule 26(a) disclosure served this afternoon Eastern time, Keurig has indicated its intent to rely on R&D and

May 11, 2020
Page **2** of **3**

development documents.  The requested source code documents are also of central relevance to Keurig's contentions as to the 2.0 brewer's capabilities to brew at different settings for different cups (i.e., customizable settings), and capabilities to recognize and brew or not brew unlicensed packs and licensed packs.  The requested source code would also shed light on the precise timing of Keurig's revisions to the 2.0 brewer to remove the reader in late 2016 and early 2017, a point recently revealed in Keurig 30(b)(6) testimony.

Keurig technical documents confirm that software – and corresponding source code for that software – exists for controlling the operation of the Keurig 2.0 brewer, and that this software specifically controls the operation of the CBT sensor that is purportedly used to distinguish between licensed and unlicensed pods and prevent Keurig 2.0 brewers from working with unlicensed pods.  For example, the Keurig K2.0 Brewer Software Specification (KGM03758630-KGM03758656) indicates that Keurig 2.0 Brewers use a Microchip PIC32MX360F512L microcontroller to execute software that controls the functionality of the brewers.  According to the software specification, the software architecture includes a main routine and an interrupt service routine which are executed by the microcontroller to initialize the brewer and control its operation, including operation of the CBT sensor and related functionality.  The software specification also states that the microcontroller communicates with the CBT sensor (used to "verify that a valid Keurig portion pack is being brewed") over an I2C-2 interface, and indicates that I/O pins SCL2, SDA2, RC12, and RC15 on the microcontroller are used to transmit data, control, and power signals between the microcontroller and the CBT sensor.  Additionally, the software specification indicates that calibration data and statistics for the CBT sensor are stored in a 2Kbit I2C EEPROM memory, including 8 bytes of calibration values for the clear, red, green, and blue Ink channels for the CBT sensor, 8 bytes of static built-in-test ("BIT") values for Kcup Ink channels, and 8 bytes of static BIT values for Vcup Ink channels, as well as 4 bytes of statistical data relating to the number of brews with and without Ink being detected, and 2 bytes of threshold values for proximity Kcup detection.  The transmissions between the microcontroller and the CBT sensor, and the read and write operations between the microcontroller and the EEPROM, would be controlled by the software that runs on Keurig 2.0 brewers.  Moreover, any changes to CBT functionality, including removal of CBT technology entirely from Keurig brewers, would be reflected in corresponding changes to software.  Since the operation of Keurig 2.0 brewers, including CBT functionality, is controlled by software executed on a microcontroller, Keurig must have developed and be in possession of source code for that software.

Given that Keurig, like any technology company, has a source code repository containing all of this information, there is no burden involved with providing this highly relevant information.  Additionally, the protective order addresses commercially sensitive items, and the commercial sensitivity is lessened by the fact that Keurig no longer sells the 2.0 brewer.

Accordingly, please confirm that Keurig will produce all of the source code, and supplement its interrogatory responses.  Otherwise, we will seek relief from the Court.

May 11, 2020
Page **3** of **3**

Sincerely,

*/s/ Mario Moore*
Mario Moore

DAN JOHNSON LAW GROUP, LLP
mario@danjohnsonlawgroup.com
400 Oyster Point Blvd., Ste. 321
South San Francisco, CA 94080
(415) 604-4500


cc: Counsel for all parties (via email)