UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION. | CIVIL ACTION NO.: 14 MD 2542 (VSB) (SLC)<br><br>**MEMORANDUM OPINION AND ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.  INTRODUCTION

Before the Court is Keurig's Motion to Compel TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods Inc. ("TreeHouse") to produce documents for which Keurig claims TreeHouse has waived privilege.  (ECF No. 969) (the "Motion).  Specifically, Keurig seeks an order under Federal Rule of Civil Procedure 502(a) compelling TreeHouse to produce additional materials related to the February 2013 settlement of a prior litigation between Keurig and Sturm, TreeHouse's predecessor, involving patent infringement, trademark, and other claims (the "Sturm Litigation").  (ECF No. 969 at 1).

Having reviewed the parties' submissions, heard the parties' arguments during a discovery conference on May 28, 2020, and reviewed the relevant orders and transcripts of prior proceedings in this action, for the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Factual Background

The following factual summary is taken from Plaintiffs' Complaint, as summarized by Judge Pitman in his Order at ECF No. 636. The Court accepts the alleged facts as true for purposes of resolving the present discovery disputes.

This is a multi-district antitrust action involving Keurig's well-known coffee makers. A principle feature of Keurig's coffee makers is their use of small, disposable plastic cups, usually containing ground coffee. The cup is inserted into Keurig's machine, heated water is passed though the cup and coffee drips into a cup placed below the disposable plastic cup. In addition to manufacturing and selling the coffee makers, Keurig also manufactures and sells the disposable plastic cups.

Plaintiffs manufacture and sell disposable cups that can be used in Keurig's coffee makers and compete with Keurig in that market. In very general terms, Plaintiffs allege that Keurig violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, the Clayton Act, 15 U.S.C. § 14, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and multiple state statutes by: (1) filing baseless lawsuits against two of the Plaintiffs; (2) entering into "non-competition," tying, and exclusive dealing agreements; (3) threatening companies who would do business with Keurig's competitors; (4) re-designing its coffee makers to render competitors' cups unusable in Keurig's machines; and (5) maligning competitors and interfering with their business relationships.

B.     **Procedural Background**

1.     **Privilege disputes during fact discovery**

Following a substantial portion of the parties' document discovery, the parties exchanged privilege logs, and, as is emblematic of the course of discovery in this case, TreeHouse found Keurig's privilege logs to be "seriously deficient in several material respects." (ECF No. 493 at 4).[1] After multiple written submissions from the parties and a lengthy discovery conference (ECF Nos. 493–494, 497), Judge Pitman conducted an in camera review of 50 sample documents as to which Keurig asserted privilege and, on March 7, 2019, issued an order setting forth the general privilege principles applicable to his review and his ruling as to the privilege status of each of the 50 documents (the "Privilege Order"). (ECF No. 544). Notwithstanding the guidance that the Privilege Order provided to the parties, ongoing privilege disputes about Keurig's privilege logs led to Judge Pitman appointing the Honorable Barbara S. Jones, former United States District Judge, to serve as Special Master "to resolve the parties' disputes concerning documents withheld from production on the basis of privilege or as trial-preparation material, i.e., work product." (ECF No. 569).

Shortly after appointing the Special Master, Judge Pitman entered a Stipulated Order Pursuant to Federal Rule of 502(d) governing the production of documents whose privilege designation is subject to challenge (the "502(d) Order"). (ECF No. 571). The 502(d) Order provides that a party's production of a document "in response to a challenge of any asserted

---

[1] Keurig has, over the course of discovery, likewise accused TreeHouse of discovery deficiencies. (See, e.g., ECF Nos. 622, 649, 681, 701).

privilege" does not constitute "attorney-client privilege, work product doctrine, and/or any other applicable privilege." (Id. at 1).

The Special Master implemented, with the parties' consent, detailed procedures for her in camera review of the disputed Keurig privileged documents, received written submissions from the parties, and ultimately reviewed over 1,200 documents. (ECF Nos. 576; 646 at 4). On July 18, 2019, the Special Master issued her report and recommendation setting forth her decisions as to the individual documents (the "Special Master Report"). (ECF No. 646). After receiving written submissions and hearing oral argument from the parties (ECF Nos. 656; 657; 679), Judge Pitman adopted the Special Master Report in full, and, in addition to other relief, ordered "all parties" to produce revised privilege logs by October 18, 2019. (ECF No. 678 at 2).

During the same time period, the parties each argued that the other had committed a subject matter waiver under Federal Rule of Civil Procedure 502(a). Keurig argued that Plaintiff JBR, Inc. ("JBR"), by asserting a good faith defense to Keurig's false advertising claims and by the deposition testimony of two JBR witnesses, had waived privilege over communications with its attorneys concerning packaging and advertising. (ECF No. 575). And TreeHouse argued that the deposition testimony of a Keurig witness, Nick Lazaris, about a privileged document effected a subject matter waiver over legal advice Keurig received during the Sturm Litigation. (ECF Nos. 667, 669; 679 at 95–112).

As to Keurig's argument against JBR, Judge Pitman relied on his ruling in Mitre Sports International Ltd. v. Home Box Office, Inc., that "the mere fact that a party makes a partial disclosure of privileged or protected information in a deposition does not result in a subject-matter waiver because there is no use of the party holding the privilege." 304 F.R.D. 369, 373

4

(S.D.N.Y. 2015). Thus, because JBR was not using the deposition testimony in which the privileged document was discussed, the testimony did not operate as a waiver. In re Keurig Green Mountain Single Serve Coffee Antitrust Litig., No. 14 MD 2542, 2019 WL 2724269, at *5 (S.D.N.Y. July 1, 2019) (the "First 502(a) Ruling"). As to TreeHouse's similar argument against Keurig, Judge Pitman reiterated that, consistent with Mitre and the First 502(a) Ruling as to JBR, "subject matter waiver requires an affirmative reliance on the communication," and "the production of a single document or the testimony regarding a single document does not [result] in a subject matter waiver." (ECF No. 679 at 111 (the "Second 502(a) Ruling")). Judge Pitman noted that Keurig's representation that it would not rely on the document reinforced the lack of subject-matter waiver. (Id. at 106, 111–12).

### 2. The Motion

Keurig brings the Motion on the heels of TreeHouse's recent production of an August 27, 2012 email from Thomas O'Neill, TreeHouse's General Counsel, to TreeHouse's executive team entitled "GMCR Settlement Conve[r]sations – Attorney Client Privledged [sic] – Personal and Confidential – Do Not Redistribute" (the "O'Neill Email"). (ECF Nos. 970 at 1, 3; 970-1 at 2). The O'Neill Email contains a brief summary of the status of the settlement negotiations and one or two sentences of legal advice. (ECF Nos. 970 at 1; 970-3 at 2).

TreeHouse shared the O'Neill Email with the other Plaintiffs in this litigation, but withheld it from production to Keurig and included it on its privilege log. (ECF No. 970 at 1). On May 11, 2020, TreeHouse produced to Keurig a redacted version of the O'Neill Email, which it labeled as subject to the Rule 502(d) Order. (Id.) After Keurig's counsel informed TreeHouse's counsel that, under the Rule 502(d) Order, the Rule 502(d) legend is only properly affixed to a document whose

5

privilege label has been challenged, TreeHouse acknowledged the error, reproduced the redacted email without the Rule 502(d) legend, and produced the full unredacted O'Neill Email with the Rule 502(d) legend. (ECF Nos. 970 at 1–2; 970-2; 970-3).

Keurig argues that TreeHouse has waived privilege over the subject matter related to the O'Neill Email under Rule 502(a) because: (1) the entire O'Neill Email is privileged; (2) TreeHouse intentionally disclosed it; and (3) TreeHouse has used and intends to use it in this litigation. (ECF No. 970 at 2).

TreeHouse opposes the Motion on the grounds that: (1) because the O'Neill Email is not privileged under Judge Pitman's Privilege Order, it cannot effect a subject matter waiver; (2) even if the O'Neill Email is privileged, TreeHouse's use of the email in a deposition does not constitute subject matter waiver under Judge Pitman's First 502(a) Ruling, Second 502(a) Ruling, and other precedent from this District; and (3) Keurig's Motion is inconsistent with its contemporaneous motion for leave to amend its answer to assert the affirmative defense of release based on the settlement of the Sturm Litigation. (ECF No. 977 at 1–3).

### III.   DISCUSSION

#### A.   Legal Standards

Judge Pitman set forth the general principles applicable to attorney-client privilege in his Privilege Order, and they will not be repeated here. (ECF No. 544 at 1–3). Judge Pitman also explained the appropriate analysis for subject-matter waiver of the attorney-client privilege, in the context of both implied waiver and Rule 502(a), in his First 502(a) Ruling and in his decision in Mitre, which the Court incorporates by reference here. 2019 WL 2724269, at *4–6; Mitre, 304 F.R.D. at 372–73.

Federal Rule of Civil Procedure 502(a) provides that a partial disclosure of privileged information results in waiver of "an undisclosed communication or information . . . only if (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Civ. P. 502(a).  "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted."  In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000).  The Advisory Committee Notes to Rule 502(a) comment that "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."  Mitre, 304 F.R.D. at 372 (quoting Fed. R. Civ. P. 502(a) advisory comm. note to 2007 amendment).

The Second Circuit has explained that a finding of subject matter waiver is appropriate "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged materials potentially capable of rebutting the assertion."  In re Cty. of Erie, 546 F.3d 222, 229 (2d Cir. 2008) (internal citations omitted).  As Judge Francis has noted, "[s]ubject matter waiver is reserved for the rare case where a party either places privileged information affirmatively at issue, or attempts to use privileged information as both a sword and a shield in litigation."  Freedman v. Weatherford Int'l Ltd., No. 12 Civ. 2121 (LAK) (JCF), 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014).

7

B.     **Application**

1.     **The O'Neill Email is partially privileged**

As is not unusual in this case, the parties take diametrically opposite positions as to whether the O'Neill Email is protected by attorney-client privilege: Keurig argues that the "entire" email is privileged, while TreeHouse argues that the entire email is not privileged. As is also not unusual in this case, reality is somewhere in the middle. Applying the principles Judge Pitman set forth in the Privilege Order, the Court finds that the O'Neill Email is partially privileged, i.e., portions are protected by attorney-client privilege, while other portions are not.

As Keurig correctly points out, the document is a communication from O'Neill, TreeHouse's General Counsel, to the executive team that bears an attorney-client privilege legend, summarizes recent developments in the settlement negotiations in the Sturm Litigation, and includes, in part, O'Neill's legal analysis and advice to his client about further actions in both the negotiations and the litigation itself. (ECF No. 970 at 2). While the privilege legend is not dispositive, it does symbolize O'Neill's intent that the communication be treated as privileged. See Ambrose v. City of White Plains, Nos. 10 Civ. 4946 et al. (CS), 2011 WL 13290651, at *8 (S.D.N.Y. Sept. 30, 2011) (finding that privileged legend "provide[d] some evidence that the memorandum was intended to be kept confidential"); In re Grand Jury Proceedings, No. M-11-189, 2001 WL 1167497, at *10 (S.D.N.Y. Oct. 3, 2001) (explaining that "the existence of . . . a [privilege] legend may provide circumstantial evidence that the parties intended certain communications to be privileged") (collecting cases). The redacted portions of the O'Neill Email contain O'Neill's legal analysis and advice. (See ECF No. 544 at 2). Accordingly, the portions of the O'Neill Email that are currently redacted are privileged.

8

As TreeHouse also correctly points out, however, the portions of the email in which O'Neill is reporting Keurig's statements and actions in the settlement negotiations are <u>not</u> privileged.  (<u>See</u> ECF No. 977 at 2 (citing <u>Urban Box Office Network, Inc. v. Interfase Mgrs., L.P.</u>, No. 01 Civ. 8854 (LTS), 2006 WL 1004472, at *8 (S.D.N.Y. Apr. 17, 2006) (holding that email from attorney describing conversation with opposing counsel was not privileged)).  Thus, the unredacted portions of the O'Neill Email as they appear in Exhibit B to the Motion are not privileged and appropriately unredacted.

Because the O'Neill Email is only partially privileged, to the extent that TreeHouse has withheld in their entirety other communications concerning the <u>Sturm</u> Litigation settlement negotiations that, like, the O'Neill Email, contain both privileged and non-privileged information, the non-privileged portions of those communications must similarly be produced.

### 2. **TreeHouse's conduct does not constitute a subject matter waiver**

As to those portions of the O'Neill Email that are privileged, the Court turns to whether TreeHouse's conduct has resulted in the unfairness that Rule 502(a) seeks to prevent.  In addition to Judge Pitman's holding in <u>Mitre</u>, several other courts have held that a witness's reference, during a deposition, to a privileged communication was not made "to a decision maker" and therefore did not constitute a subject matter waiver under Rule 502(a).  <u>Sanofi-Synthelabo v. Apotex Inc.</u>, 363 F. Supp. 2d 592, 595 (S.D.N.Y. 2005) (finding no implied waiver based on deponent's statement that he took his outside counsel's advice); <u>see</u> <u>Gardner v. Major Auto. Cos.</u>, No. 11 Civ. 1664 (FB) (VMS), 2014 WL 1330961, at *9 (E.D.N.Y. Mar. 31, 2014) (finding that witness's reference during deposition to privileged communication was "in an extrajudicial context [that] did not waive privilege under a selective disclosure theory"); <u>Swift Spindrift, Ltd. v.</u>

Alvada Ins., Inc., No. 09 Civ. 9342 (AJN) (FM), 2013 WL 3815970, at *5–6 (S.D.N.Y. July 24, 2013) (finding that production of privileged emails and deposition testimony about them did not result in subject matter waiver); Seyler v. T-Sys. N. Am., Inc., 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011) (finding that production of privileged email during discovery and witness's discussion of email during deposition did not constitute subject matter waiver); but see John Wiley & Sons, Inc. v. Book Dog Books, LLC, 17 F. Supp. 3d 400, 406–07 (S.D.N.Y. 2014) (collecting cases and finding that witness's extensive direct testimony during deposition about privileged information was subject matter waiver under Rule 502(a)).

The Court finds that TreeHouse's conduct with respect to the O'Neill Email has not, to date, "resulted in the unfairness contemplated by Rule 502(a)" and therefore does not constitute a subject matter waiver. Swift, 2013 WL 3815970, at *5. First, if the Court credits Keurig's argument that the communication undermines TreeHouse's sham litigation claim by showing that the Sturm Litigation was not objectively baseless,[2] then the O'Neill Email is actually unfavorable to TreeHouse's case and does not afford TreeHouse "any tactical advantage in this litigation." Id.

Second, Keurig has not shown that TreeHouse, as yet, intends to rely on the O'Neill Email "to influence a decision maker." Mitre, 304 F.R.D. at 373; see Gardner, 2014 WL 1330961, at *9 (finding that "partial dislosure [] made at deposition and not in front of a factfinder" was not waiver). That situation may arise in the future in this litigation, for example, if TreeHouse's

---

[2] See Prof'l Real Estate Inv., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60–61 (1993) (to qualify as a "sham" under the exception to the Noerr-Pennington immunity doctrine, "a lawsuit must be objectively baseless" and must "concea[l] an attempt to interfere directly with a competitor's business relationships. . . .") (internal citations omitted).

counsel were to question a witness about the redacted portions of the O'Neill Email during in-court testimony or use the O'Neill Email in support of summary judgment, but those events have not yet occurred. See, e.g., A&E Prods. Grp., L.P. v. Mainetti USA Inc., No. 01 Civ. 10820 (RPP), 2004 WL 895699, at *1 (S.D.N.Y. Apr. 27, 2004) (finding that witness' in-court hearing testimony about privileged communication operated as subject matter waiver).

Finally, Keurig has not shown, at present, that the O'Neill Email is "misleading" or resulted in any tactical "disadvantage" to Keurig's position in this litigation. Noval Williams Films LLC v. Branca, No. 14 Civ. 4711 (PAC), 2016 WL 7238960, at *4 (S.D.N.Y. Dec. 14, 2016) (declining to order production of partially-redacted communications). While some courts, including Judge Pitman in the First 502(a) Ruling and the Second 502(a) Ruling, noted that the party had renounced future use of the partially disclosed communication, Keurig points to no authority holding formal renunciation to be a prerequisite for a finding of that the fairness prong of Rule 502(a) has not been met. Cf. Gardner, 2014 WL 1330961, at *9 (producing party had not waived future use, but finding partial disclosure did not cause unfairness); Freedman, 2014 WL 3767034, at *3–4 (same); Swift, 2013 WL 3815970, at 5–6 (same); Sanofi, 363 F. Supp. 2d at 595 (same).

The cases on which Keurig relies to support its argument that the deposition testimony of TreeHouse's 30(b)(6) witness effected a waiver are distinguishable. (ECF No. 982 at 2). Here, TreeHouse's 30(b)(6) witness testified that he viewed the redacted version of the O'Neill Email, and his answers to TreeHouse's counsel's questions pertained to the unredacted, i.e., non-privileged, portions of the communication. (See ECF No. 970-6 at 7–9). Therefore, the limited answers of TreeHouse's 30(b)(6) witness are unlike the extensive testimony about privileged

11

communications that other courts have found to constitute a waiver under Rule 502(a). See John Wiley & Sons, 17 F. Supp. 3d at 403 (recounting witness's detailed testimony about several privileged communications while witness's counsel made no privilege objection); Speedfit LLC v. Woodway USA Inc., No. 17 Civ. 768, 2019 WL 1441148, at *6 (E.D.N.Y. Mar. 28, 2019) (finding waiver where plaintiff's counsel introduced privileged communication during deposition, asked witness lengthy questions about it, and conceded in opposition to motion to compel that plaintiff "likely waived privilege" over the communication); In re Symbol Techs., Inc. Secs. Litig., No. 05 Civ. 3923 (DRH) (AKT), 2017 WL 1233842, at *16–18 (E.D.N.Y. Mar. 31, 2017) (holding that plaintiffs' production of five confidential informant interview memoranda about which informants testified during their deposition was "a strategic decision to utilize and disclose" that constituted a waiver under Rule 502(a) requiring production of nine similar memoranda).

Accordingly, TreeHouse's production of the partially-redacted O'Neill Email and the limited deposition testimony of the 30(b)(6) witness doe not constitute a subject matter waiver under Rule 502(a) and do not require TreeHouse to produce all privileged communications concerning the Sturm Litigation settlement negotiations.

## IV.   CONCLUSION

For the reasons set forth above, the Motion is GRANTED IN PART, insofar as TreeHouse must produce the non-privileged portions of communications concerning the Sturm Litigation settlement negotiations that, like, the O'Neill Email, contain both privileged and non-privileged information, and DENIED IN PART insofar as TreeHouse is not required at this time to produce the privileged portions of such communications.

The Clerk of the Court is respectfully directed to close ECF Nos. 969 and 970.

Dated: New York, New York
June 5, 2020

                                                  SO ORDERED

_____
SARAH L. CAVE
United States Magistrate Judge