**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION<br><br>*This Document Relates to*<br>*Case No. 1:14-cv-00905 (VSB) (SLC)* | MDL No. 2542<br><br>Master Docket No. 1:14-md-02542 (VSB) (SLC)<br><br>**EXPEDITED TREATMENT AND**<br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT KEURIG GREEN MOUNTAIN, INC.'S**
**MOTION AND OBJECTIONS TO MAGISTRATE JUDGE'S**
<u>**ORDER ON RULE 15 MOTION**</u>

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION .................................................................................................. 1 | |
| II. | THE RELEASE DEFENSE IS COLORABLE AND THUS AMENDMENT WOULD NOT BE FUTILE ................................................................................... 1 | |
| | A. TreeHouse's merits arguments are inappropriate at the motion to amend stage. ... 1 | |
| | B. In any event, TreeHouse's arguments on the merits are wrong. ............................. 2 | |
| |     i. The release is a ███████ encompassing some of TreeHouse's claims. ................................................................................................... 2 | |
| |     ii. The release by ████ bars ████████████████████. ................................................................................................................ 4 | |
| |     iii. The Settlement Agreement was not "fraudulently induced." ..................... 5 | |
| III. | THERE WAS NO UNDUE DELAY ................................................................... 6 | |
| IV. | THERE IS NO UNDUE PREJUDICE ................................................................ 8 | |

# TABLE OF AUTHORITIES

**Federal Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   No. 14-CV-7126 (JMF), 2017 WL 466468 (S.D.N.Y. Feb. 1, 2017) ......................................... 1

*Aventis Envtl. Science USA LP v. Scotts Co.*,
   383 F. Supp. 2d 488 (S.D.N.Y. 2005) ....................................................................................... 5

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993) ....................................................................................................... 9

*Farmland Dairies Inc. v. New York Farm Bureau Inc.*,
   1996 WL 191971 (N.D.N.Y. 1996) ............................................................................................ 5

*Gracia v. City of New York*,
   No. 16-CV-7329 (VEC), 2017 WL 4286319 (S.D.N.Y. Sept. 26, 2017) .................................. 2

*Madison Square Garden, L.P. v. Nat'l Hockey League*,
   No. 07 CV 8455 (LAP), 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) .................................... 3

*Monahan v. New York City Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 2000) ....................................................................................................... 8

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981) ....................................................................................................... 7

*T & N PLC v. Fred S. James & Co. of N.Y., Inc.*,
   No. 89 Civ. 7688 (CSH), 1991 WL 190581 (S.D.N.Y. Sept. 16, 1991) .................................... 1

*Zoll v. Jordache Enters. Inc.*,
   No. 01 CIV. 1339 (CSH), 2002 WL 485733 (S.D.N.Y. Mar. 29, 2002) ................................... 1

**State Cases**

*City Investing Co. Liq. Trust v. Cont'l Cas. Co.*,
   624 A.2d 1191 (Del. 1993) ........................................................................................................ 4

*Hob Tea Room v. Miller*,
   89 A.2d 851 (Del. 1952) ............................................................................................................ 3

*Knight v. Caremark Rx, Inc.*,
   No. Civ.A. 1750-N, 2007 WL 143099 (Del. Ch. Jan. 12, 2007) (Strine, V.C.) ........................ 3

*Seven Invs., LLC v. AD Capital, LLC*,
    32 A.3d 391 (Del. Ch. 2011)................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 15............................................................................................................ passim

I. **Introduction**

The liberal standards of Rule 15 reflect a strong policy that cases should be decided on the merits. TreeHouse ignores this, and focuses instead on distraction. Indeed, TreeHouse devotes much of its brief to an issue not even addressed by the Order—futility. Those merits arguments ignore that Rule 15 requires only that the defense be "colorable," a low bar easily met here. And, if the legal issue is as clear as TreeHouse asserts, there can be no need for the additional discovery that underpins TreeHouse's arguments on prejudice.

None of TreeHouse's misdirections rebut the clear Second Circuit law requiring reversal: Keurig's motion was not "unduly" delayed, and the possibility of additional discovery does not constitute "undue prejudice." The holding on these bases cannot stand under Second Circuit law.

II. **The Release Defense Is Colorable And Thus Amendment Would Not Be Futile**

A. **TreeHouse's merits arguments are inappropriate at the motion to amend stage.**

TreeHouse concedes that futility is a low bar, requiring only that a proposed affirmative defense be "colorable." *See* ECF 1065 ("TH Br.") at 9. In the context of a proposed amendment to add an affirmative defense, "colorable" means the defense is not "frivolous" or "legally insufficient on [its] face." *See, e.g.*, *Zoll v. Jordache Enters. Inc.*, No. 01 CIV. 1339 (CSH), 2002 WL 485733, at *4 (S.D.N.Y. Mar. 29, 2002); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2017 WL 466468, at *1 (S.D.N.Y. Feb. 1, 2017).

Because TreeHouse's "futility arguments go largely—if not entirely—to the merits" they are "inappropriate for resolution on a motion for leave to amend," as courts in this District have consistently recognized. *Alaska Elec. Pension Fund*, 2017 WL 466468, at *1; *see also, e.g.*, *T & N PLC v. Fred S. James & Co. of N.Y., Inc.*, No. 89 Civ. 7688 (CSH), 1991 WL 190581, at *2 (S.D.N.Y. Sept. 16, 1991) ("Defendant is not required to establish a probability it would prevail on the merits in order for the court to grant its motion to amend."). Accordingly, the

Court may sweep aside much of TreeHouse's brief, TH Br. at 8-16, because it is at least "colorable" and non-frivolous that at least certain of the three TreeHouse Plaintiffs' claims are barred by the release—all that is required at this stage. *See, e.g.*, *Gracia v. City of New York*, No. 16-CV-7329 (VEC), 2017 WL 4286319, at *2 (S.D.N.Y. Sept. 26, 2017) (granting leave to add "waiver and release" defense because it "is a colorable and legally cognizable defense").

    **B. In any event, TreeHouse's arguments on the merits are wrong.**

        ***i. The release is a ▇▇▇▇▇ encompassing some of TreeHouse's claims.***

While the Court need not—and should not—decide the ultimate merits of the Release Defense at this stage, TreeHouse's assertions are premised on a number of inaccurate and misleading statements of law and fact. It is TreeHouse, not Keurig, who "misrepresents the scope of the release." TH Br. at 9. TreeHouse's hyperbolic assertion that the release is limited "only" to the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *id.* at 11-12, is easily belied by simply reading the language of Paragraph 8 of the Agreement, which releases:



ECF 967-3 ¶ 8 (emphasis added). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[1]

TreeHouse's other legal arguments to renege on the scope of the release are also wrong:

- TreeHouse cites no authority supporting the supposed legal importance of the fact that "▇

---

[1] TreeHouse is also wrong that the last "Whereas" clause of the Agreement limits the broad scope of the general release. TH Br. at 11-12. The plain language of Paragraph 8 determines the scope of the release. The "Whereas" clause simply shows that the parties intended the general release in Paragraph 8 to encompass, *inter alia*, the "Parties' Non-Patent Claims" (a defined term which includes the "Sturm Claims"). ECF 967-3 at 2.

2

███████████████████████████████████████" TH Br. at 11.  General releases are "intended to cover everything – what the parties presently have in mind, as well as what they do not have in mind." *Seven Invs., LLC v. AD Capital, LLC*, 32 A.3d 391, 397 (Del. Ch. 2011); *see also Madison Square Garden, L.P. v. Nat'l Hockey League*, No. 07 CV 8455 (LAP), 2008 WL 4547518, at *5-6 (S.D.N.Y. Oct. 10, 2008) (general release barred antitrust claim, including because claim existed at time of release and complaint alleged continuation of preexisting conduct).[2]  As a matter of plain language, "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"[3]  And, contrary to TreeHouse's assertion, TH Br. at 13, a general release need not specify that it covers "known and unknown" claims—as is clear from seminal Delaware precedent.  *See Hob Tea Room v. Miller*, 89 A.2d 851, 853-54, 856 (Del. 1952) (settlement held to be general release where it "forever release[d] and discharge[d]" parties "from *any further claim or demand whatsoever*") (emphasis added).  Nor is there any basis to suggest these claims were not known to TreeHouse.

- Contrary to TreeHouse's assertion, TH Br. at 14, Keurig's statements in its SEC filings made prior to the present lawsuit did not address how the Release Defense applied to this case. Keurig's public communications explained how the release applied to the lawsuit that existed at the time, not some future lawsuit that did not exist.[4]  In any event, where, as here, the

---

[2] TreeHouse is also incorrect in arguing that Keurig has "waived" the ███████ argument, TH Br. at 13, as the issue was argued below.  *See* ECF 965 at 5 (Keurig arguing release "unambiguously bars certain claims and damages"); ECF 991 at 10-17 (TreeHouse arguing futility); ECF 1010 at 5-8 (Keurig response).

[3] This plain reading is reinforced by the fact that ████████████████████████████████████████████████████████████████████████████████████████.  *See, e.g., Knight v. Caremark Rx, Inc.*, No. Civ.A. 1750-N, 2007 WL 143099, at *6 (Del. Ch. Jan. 12, 2007) (Strine, V.C.) ("[G]eneral releases are deemed to encompass all claims except those that are explicitly carved out.").

[4] TreeHouse offers no support for the suggestion that the scope of the release in the Agreement at issue here should

3

language of the release is unambiguous, the parties' intent is discerned solely from the text. *See, e.g., City Investing Co. Liq. Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

- Contrary to TreeHouse's argument, TH Br. at 12-13, ███████████████████ ███████████████████████████████████ ███████████████████████████ ████████████████████ ECF 967-3 ¶ 8. As TreeHouse knows, GMCR was the parent to Keurig, Inc. at the time of the 2013 settlement,[5] and Keurig Green Mountain, Inc., the only defendant in this case, was formerly known as GMCR and is the successor to Keurig, Inc. TH Am. Compl., ECF 86 ¶ 51; *id.* at 1 n.1. There is no support for TreeHouse's suggestion that GMCR's non-party status for discovery purposes in the *Sturm* litigation somehow overrides ████████████████████████████████.

    ii. *The release by* ████ *bars* ████████████████████████████████.

TreeHouse's argument that the release is limited to ████████████ is also distraction. ████████████████████████████████████████████████ ████████████ largely misses the point that the release defense is "colorable" as to at least ████████████████. Moreover, contrary to TreeHouse's argument, TH Br. at 10-11, ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████. ███████████████████████████████ ████. For example, TreeHouse does not dispute that Sturm is the only TreeHouse-affiliated entity that, as alleged in the Complaint, "manufactures . . . its own 'Grove Square' and 'Caza

---

turn on how Keurig's disclosures described its 2008 settlement with Kraft, a *different settlement*, involving *different parties* and *different claims* in a *different case*, under *different management*, five years earlier. *See* TH Br. at 14.

[5] Ex. 1, GMCR 10-K at 25 (Nov. 20 2013) (describing *Sturm* litigation and noting Keurig, Inc. is "a wholly-owned subsidiary" of GMCR). All Exhibits are attached to the accompanying Declaration of Carl Lawrence Malm.

4

Trail' brand Competitive Cups" and that "enters into contracts with suppliers of the machinery and components required to manufacture Compatible Cups." TH Am. Compl., ECF 86 ¶ 50. As a result, any alleged injury that TreeHouse and its affiliates suffered based on their claims of input foreclosure, *id.* ¶¶ 244-85, only could have been experienced by ▮▮▮▮. ▮▮▮▮



The cases TreeHouse cites do not involve situations where, as here, ▮▮▮▮ ▮▮▮▮.[6] And TreeHouse cites no cases that permit a parent company or other affiliated entity to do what TreeHouse seeks to do here—*i.e.*, ▮▮▮▮ ▮▮▮▮.

### iii. *The Settlement Agreement was not "fraudulently induced."*

For the first time, seven years after the Settlement Agreement, and six years after the alleged issues with the Mini Plus Brewer were publicized, TreeHouse now claims that it was "fraudulently induced" into entering the Settlement Agreement. TH Br. at 14-16. This illogical argument manufactured for purposes of opposing the Rule 15 motion is contrary to the discovery record in this case, which shows that TreeHouse's quality issues had no connection whatsoever to the Mini Plus.[7] More important for purposes of this motion, TreeHouse's argument is a merits argument that should be decided at summary judgment. In any event, that TreeHouse is able to

---

[6] TreeHouse's cases are not on point. *See Aventis Envtl. Science USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 499-500 (S.D.N.Y. 2005) (plaintiff could assert affiliates' claims where affiliates had "transferred their claims to [plaintiff] for the purposes of this action"); *Farmland Dairies Inc. v. New York Farm Bureau Inc.*, 1996 WL 191971, at *4 (N.D.N.Y. 1996) (parent could assert subsidiary's claims where subsidiary had not released its claims).

[7] *See, e.g.*, Ex. 2, Keurig 30(b)(6) Dep. Tr. at 196:5-202:8 (M. Wood, Dec. 3, 2019) (testifying that independent tests of 2,000 Sturm cups in November 2010 revealed safety issues that were ▮▮▮▮ ▮▮▮▮); Ex. 3, Plaintiffs' Exhibit 1575, November 16, 2010 Decl. of Orlando Soto in Support of Keurig's Mot. for Prelim. Inj. (detailing testing of 2,000 Sturm cups in eleven different Keurig brewers, which revealed an overall 11.4% failure rate, including 11 delamination failures in non-Mini Plus brewers); Ex. 4, S. Peskie Dep. Vol. 1, Tr. at 248:5-11 (testifying TreeHouse started filter testing with Elite brewer, not Mini Plus); Ex. 5, S. Peskie Dep. Vol. 2, Tr. at 454:8-19 (testifying ▮▮▮▮ was focused on filter issues after use of Bunn Brewer).

5

make the argument shows that there has been extensive discovery on issues related to the prior litigation, defeating any claim of prejudice or that further discovery is required. *See* ECF 1010 at 6 & n.7. TreeHouse's incentive to engage in that discovery was plain, given Keurig's argument in its motion to dismiss that the fact of the settlement was evidence that the underlying lawsuit was not a sham, because the lawsuit resulted in relief for Keurig. *See* ECF 224 at 4, 24.

### III.  There Was No Undue Delay

TreeHouse spills much ink spinning a tale of Keurig's alleged "dilatory tactics." TH Br. at 2-3, 24-25. TreeHouse's scattershot assertions are both irrelevant and inaccurate. TreeHouse does not cite a single case holding that allegations of general delays on other issues in other stages of litigation, even if true, warrant denying amendment. And TreeHouse's suggestion that fact discovery in this case would have ended 12 months ago but for purported delays by Keurig is simply not true, ignores that fact discovery was extended multiple months for reasons unrelated to Keurig, and elides the history of TreeHouse's own discovery misconduct and delay.[8] In short, any discovery disputes that remain between the parties can be addressed in the normal course, and TreeHouse's attacks are a transparent attempt to distract from the law and issues under Rule 15, all of which favor reversal of the Order and allowing Keurig's amendment.

Putting TreeHouse's distractions aside, neither of the two considerations underlying the

---

[8] For example, TreeHouse failed to preserve massive of amounts of relevant data. After retaining counsel to sue Keurig in November 2013, TreeHouse failed to send litigation holds to any custodian in this litigation for months. TreeHouse reasonably anticipated this litigation and was actively building a case against Keurig without preserving its own documents for more than three months. TreeHouse's disclosures confirm that, even after initiating this lawsuit in February 2014, it waited years before placing almost a dozen key custodians under holds. TreeHouse has also, without any explanation, lost substantial volumes of data from key custodians that it claims were under holds.

In addition, while incorrectly claiming that Keurig's supplemental productions caused delay, TreeHouse neglects to mention that it produced its own substantially revised and corrected data at the same time—an issue that TreeHouse hid from the Court and Keurig, before silently dumping a massive amount of data at the last moment. Similarly, less than a week before party discovery closed, TreeHouse produced over 535,000 corrections to its custodian metadata (another belated data dump it never disclosed to the Court). Keurig raised concerns about TreeHouse's metadata for more than 6 months and filed a motion, all of which TreeHouse vigorously opposed before then admitting its errors.

Order's finding of undue delay provide a sufficient basis for denying amendment: (1) the period of time between Keurig's Original Answer and the motion to amend; and (2) the contention that Keurig "knew or should have known" about the Release Defense earlier. Order at 6-8.

TreeHouse does not dispute the well-established principle that "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). TreeHouse also does not dispute that the Second Circuit has repeatedly permitted amendment after longer periods of delay. *See* ECF 1056 ("Keurig Br.") at 7-8 (collecting cases).

Instead, TreeHouse's core argument is that Keurig did not "sufficiently explain its delay," TH Br. at 17-18, which is premised on, at best, misleading characterizations of the facts surrounding Keurig's unintentional omission of the Release Defense.[9] While in oral argument before Magistrate Judge Cave, TreeHouse did not call into question Keurig's good faith in bringing this motion, *see, e.g.*, Hr'g Tr. 77:13-15 (June 11, 2020), ECF 1050, it now spends several pages of its opposition here suggesting that the motion was part of some elaborate scheme. But TreeHouse does not present any evidence—nor could it—to refute the straightforward facts established by the declaration submitted below, which explains that the omission was the result of a simple copy-and-paste error in the processing of the final Answer for filing. Freedman Decl. ¶¶ 3-6 (June 8, 2020), ECF 1009.

Unable to refute these facts, TreeHouse doubles down on the Order's reversible error, claiming that the "delay was not justified because Keurig was aware of the release defense at the time it filed its initial Answer." TH Br. at 18. Yet none of TreeHouse's arguments rebut the

---

[9] For example, contrary to TreeHouse's baseless assertion, Keurig did not "ask[] Judge Cave to assume that Keurig filed its Answer and never reviewed it again until May 2020." TH Br. at 18. Keurig truthfully asserts that it did not realize its unintentional omission of the defense, which would have been one sentence in a 58-page answer, until May 2020, as explained in its briefs here and below. Keurig Br. at 2-3, 9; ECF 965 at 2, 7; ECF 1010 at 2-3.

7

clear line of cases in the Second Circuit holding that this is not a proper basis to deny leave.[10]

Put simply, the "knew or should have known" standard has no application in the context at issue here—*i.e.*, an unintentional mistake in preparing a pleading, such as one resulting from a "typographical error" or an "organizational snafu." Keurig Br. at 9-10 (citing, *inter alia*, *Monahan v. N.Y.C. Dep't. of Corr.*, 214 F.3d 275, 283-84 (2d Cir. 2000) (permitting amendment to correct mistake based on "organizational snafu"); *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89-90 (2d Cir. 1998) (permitting amendment to correct mistake based on "typographical error")).[11] Otherwise, no amendment would ever be permitted to correct such unintentional mistakes which, by definition, are based on information the party seeking amendment "knew or should have known" and would have included in the original pleading *but for* the mistake. That is not the law in the Second Circuit, and for good reason: such a rule would defy the liberal standards of Rule 15, which embody a strong policy in favor of resolving disputes "on the merits." *See Monahan*, 214 F.3d at 283. Under those standards, a mistake in preparing a filing—even on a matter of which a party "knew or should have known"—cannot be sufficient basis to deny leave. Keurig Br. at 12 & n.6.

## IV.   There Is No Undue Prejudice

It was also reversible error for Magistrate Judge Cave: (1) to assume (without

---

[10] Here, TreeHouse once again relies on a misleading mischaracterization. Keurig did not "cho[o]se not to include" the Release Defense. TH Br. at 19-20. The uncontroverted Freedman declaration is clear, and Keurig has been clear at every step, that the omission of the Release Defense "was an unintentional mistake." Freedman Decl. ¶ 6. Likewise, TreeHouse misrepresents the Order by suggesting it found Keurig made "a sustained and deliberate choice" not to raise the Release Defense. *See* TH Br. at 1 (citing Order at 2-3). The Order made no such finding.

[11] As noted, none of the cases cited in the Order support its holding to the contrary. Keurig Br. at 11-12. The same is true for the additional cases cited by TreeHouse. *See* TH Br. at 19 (citing *Dais v. Lane Bryant, Inc.*, No. 97Civ.2011(PKL)(RLE), 2000 WL 145755, at *2 (S.D.N.Y. Feb. 8, 2000) (movant offered *no* explanation for delay); *Priestley v. Am. Airlines, Inc.*, No. 89 CIV. 8265 (JMC), 1991 WL 64459, at *2 (S.D.N.Y. Apr. 12, 1991) (same); *Wrenn v. N.Y.C. Health & Hosps. Corp.*, 104 F.R.D. 553, 559 (S.D.N.Y. 1985) (explanation for delay was "totally inadequate"); *Lyondell-Citgo Ref., L.P. v. Petroleos De Venezuela, S.A.*, No. 02 Civ. 0795(CBM), 2005 WL 883485, at *5 (S.D.N.Y. Apr. 14, 2005) (court rejected movant's explanation of delay)).

concluding) that additional discovery would be necessary and then rely on the resulting "prejudice" to deny Keurig's motion, Keurig Br. at 13-16; and (2) to find that "granting the Motion would significantly delay the resolution of the dispute," *id.* at 16-18.

TreeHouse does not dispute the well-established Second Circuit authority holding that prejudice in the form of additional discovery, on its own, does not justify denying leave to amend, particularly at a stage in the litigation well before summary judgment or trial. Keurig Br. at 13-15 (collecting cases).[12] Instead, TreeHouse defends the Order by claiming it did not rest solely on the additional discovery because it also relied on Keurig's purported undue delay and possible delays to the case schedule. TH Br. at 21. But those findings also were in error and cannot justify denying amendment. As noted, there is no reasonable dispute that this motion was brought expeditiously upon discovery of the mistake, and the Order's finding of undue delay is contrary to law. Likewise, the finding that amendment would "significantly delay the resolution of the dispute," Order at 9, is contrary to law and clearly erroneous. Keurig Br. at 13-18.[13]

First of all, it is wholly uncertain that any discovery at all will be required. In fact, TreeHouse's futility argument asserts that the release is clear and can be interpreted *as a matter of law*. On this proposition, the parties are in agreement, albeit for different reasons. Additional

---

[12] None of the district court cases cited by TreeHouse support its argument here. *See* TH Br. at 21 (citing *Davis v. Lenox Hill Hosp.*, No. 03 CIV.3746 DLC, 2004 WL 1926086, at *3-4 (S.D.N.Y. Aug. 31, 2004) (denying leave to amend in putative class action where plaintiff sought to add 14 new named plaintiffs); *Church of Scientology of Cal. v. Siegelman*, 94 F.R.D. 735, 739-40 (S.D.N.Y. 1982) (leave denied where movant offered no justifiable excuse for delay and where proposed counterclaim was legally deficient); *Starter Corp. v. Converse, Inc.*, No. 95 CIV. 3678 (CSH), 1996 WL 684165, at *5 (S.D.N.Y. Nov. 26, 1996) (amendment would reopen discovery one month prior to trial and delay trial); *Credit Suisse First Bos. LLC v. Coeur d'Alene Mines Corp.*, No. 03CIV.9547(PKL)(MHD), 2005 WL 323714, at *5 (S.D.N.Y. Feb. 10, 2005) (addition of 5 counterclaims would significantly delay resolution of dispute); *Wrenn*, 104 F.R.D. at 557-58 (denial of amendment where proposed claims were dismissible as matter of law); *Lyondell-Citgo Ref., L.P.*, 2005 WL 883485, at *6 (motion to amend after motions for summary judgment)).

[13] TreeHouse's suggestion that prior discovery disputes "may have had different outcomes" and may "need to be revisited," TH Br. at 23, 25, is wrong and irrelevant. *See, e.g., Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (the "time, effort and money [non-movants] expended in litigating" prior to defendant's amendment to assert defense based on prior settlement did not establish prejudice). Likely TreeHouse recognizes that leave should be granted on the liberal standards of Rule 15; in that context, it wants to manufacture ways to re-argue lost disputes.

discovery is not necessary because the release is unambiguous and how it applies to this case is a pure legal question. TreeHouse's claim that "additional discovery . . . would be needed," TH Br. at 22, cannot be squared with its assertions that the Agreement's "express terms" indicate the scope of the release, *id.* at 12; the release is "clear," *id.* at 11; and the "plain language" of the release is sufficient to resolve the dispute, *id.* at 22. TreeHouse cannot have it both ways.[14]

But if the Court deems discovery necessary, it will be targeted and limited, and there is no reason that it would affect the trial date or even summary judgment, which is a year away. TreeHouse does not dispute that courts regularly permit amendments to assert affirmative defenses at or even after summary judgment. Keurig Br. at 18 & n.11.[15] Instead, TreeHouse does little more than parrot the Order's clearly erroneous finding and make conclusory assertions that additional discovery will result in delay. TreeHouse—which has the burden to show undue prejudice—does not provide any legitimate reason why limited discovery on the release could not take place in parallel with expert discovery and class certification, particularly given the discovery accommodations already undertaken at Plaintiffs' requests. Keurig Br. at 17-18.

---

[14] None of TreeHouse's meandering claims about the history of this litigation, TH Br. at 4-6, rebut the key facts that the omission resulted from a simple mistake and there is no unfair surprise to TreeHouse. First, TreeHouse does not dispute that, as a party thereto, it was in possession of the Agreement and has known about the release since before it filed this lawsuit. Keurig Br. at 15 n.9. Nor can it credibly dispute that Keurig's initial disclosures—which, among other things, state that Keurig may rely on "documents in Plaintiffs' possession, custody, or control," ECF 1011-9 at 1—cover the Agreement. ECF 1010 at 10 n.11. Second, discovery was and is unnecessary because the parties had the Agreement and the scope of the release is a question of law. In any event, Keurig's document requests did call for settlement-related documents, as evidenced by documents listed on TreeHouse's privilege log, some of which it was recently ordered to produce. ECF 1002 at 12 (ordering TreeHouse to "produce the *non-privileged* portions of [certain] communications concerning the *Sturm* Litigation settlement negotiations"). Keurig recently made a similar production of documents regarding settlement negotiations called for by TreeHouse's requests. Third, to the extent TreeHouse wanted to take further discovery on the settlement, it already had notice and incentive to do so based on the related defenses of waiver and estoppel, which rely on the same provision in the Agreement. Fourth, had Keurig objected to TreeHouse's discovery based on a defense that would be decided at summary judgment, TreeHouse surely would have responded that a merits-based objection is premature at the discovery stage.

[15] Contrary to TreeHouse's suggestion, TH Br. at 7 n.10, the Order is clear that the denial of the release amendment to Keurig's Answer relied on the fact that Keurig's pleading of the related defenses of waiver and estoppel means "the amendment is not necessary for the Court to consider the impact of the Settlement Agreement on Plaintiffs' claims in this action." Order at 10. Thus, because the scope of the release will be decided at summary judgment anyways, the Court should permit amendment and facilitate resolution on the merits under the most straightforward doctrine. Keurig Br. at 15 n.9; ECF 1010 at 10 n.11.

Dated: July 21, 2020

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        By: */s/ George S. Cary*
            Lev L. Dassin
            Rahul Mukhi
            One Liberty Plaza
            New York, NY 10006
            Telephone: (212) 225-2000
            *ldassin@cgsh.com*
            *rmukhi@cgsh.com*

            George S. Cary
            Leah Brannon
            Carl Lawrence Malm
            2112 Pennsylvania Avenue, NW
            Washington, D.C. 20037
            Telephone:  (202) 974-1500
            *gcary@cgsh.com*
            *lbrannon@cgsh.com*
            *lmalm@cgsh.com*

        BUCHANAN INGERSOLL & ROONEY PC

        By: */s/ Wendelynne J. Newton*
            Wendelynne J. Newton
            Mackenzie A. Baird
            Union Trust Building
            501 Grant Street, Suite 200
            Pittsburgh, PA 15219
            Telephone: (412) 562-8932
            *wendelynne.newton@bipc.com*
            *mackenzie.baird@bipc.com*

            *Attorneys for Defendant Keurig Green Mountain, Inc., f/k/a Green Mountain Coffee Roasters, Inc., and as successor to Keurig, Incorporated*