**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | No. 1:14-md-02542 (VSB) No. 1:14-cv-04391 (VSB) |
| *This Relates to the Indirect-Purchaser Actions* | |

## DECLARATION OF GINA M. INTREPIDO-BOWDEN REGARDING PROPOSED NOTICE PLAN

I, GINA M. INTREPIDO-BOWDEN, declare and state as follows:

1.     I am a Senior Director at JND Legal Administration ("JND"). I am a judicially recognized legal notice expert with more than 20 years of experience designing and implementing class action legal notice programs. I have been involved in many of the largest and most complex class action notice programs, including all aspects of notice dissemination. A comprehensive description of my experience is attached as Exhibit A.

2.     I submit this Declaration at the request of counsel to describe the proposed Notice Plan, attached as Exhibit B, and address why it is consistent with other best practicable court-approved notice programs and the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule, as well as the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

## RELEVANT EXPERIENCE

3.     JND is a leading legal administration services provider with headquarters located in Seattle, Washington. JND has over 150 employees in multiple offices throughout the United States. JND's class action division provides all services necessary for the effective

implementation of class action settlements, including: (1) all facets of providing legal notice to potential class members, such as outbound mailing, email notification, and the design and implementation of media programs; (2) website design and deployment, including on-line claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) lien verification, negotiation, and resolution; (7) calculation design and programming; (8) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (9) qualified settlement fund management and tax reporting; (10) banking services and reporting; and (11) all other functions related to the secure and accurate administration of class action settlements.

4.     JND is an approved vendor for the United States Securities and Exchange Commission, as well as for the Federal Trade Commission, and we have been working with the following other government agencies: the U.S. Equal Employment Opportunity Commission, the Office of the Comptroller of the Currency, the Consumer Financial Protection Bureau, the Federal Deposit Insurance Corporation, the Federal Communications Commission, the Department of Justice, and the Department of Labor. We also have Master Services Agreements with various law firms, corporations, banks, and other government agencies, which were only awarded after JND underwent rigorous reviews of our systems, privacy policies, and procedures. JND has also been certified as SOC 2 compliant by noted accounting firm Moss Adams. Finally, JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times* and the *New York Law Journal*, for excellence in class action administration.

5.     The principals of JND collectively have over 75 years of experience in class action legal and administrative fields and have overseen claims processes for some of the largest legal claims administration matters in the country's history. Recently, JND has been handling

the settlement administration of the $1.3 billion Equifax Data Breach Settlement, the largest class action ever in terms of the number of claims received.  We are also handling the administration of the $215 million USC Student Health Center Settlement.  Other important matters being handled by JND include the $135 million Navistar Maxx Force Engine Settlement, a $147 million oil and gas royalty settlement, the $120 million GM Ignition Switch Settlement and the BP Solar Panel Settlement where our CEO, Jennifer Keough, was named the Independent Claims Administrator.  Additionally, we are the administrator for a voluntary payment program in Canada in connection with an alleged bread price-fixing scheme where every adult in Canada was eligible for relief.

6.      JND has also handled notice and claims administration tasks for numerous antitrust matters including: *Beltran v. InterExchange, Inc.*, Case No. 1:14-cv-03074-CMA-KMT (D. Colo.); *In re Broiler Chicken Antitrust Litig.*, Case No. 16-cv-08637 (N.D. Ill.); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, Case No. 1:11-md-2262-NRB (S.D.N.Y.); *In re Pre-Filled Propane Tank Antitrust Litig.*, Case No. 14-md-02567 (W.D. Mo.); *In re Resistors Antitrust Litig.*, Case No. 3:15-cv-03820-JD (N.D. Cal.); *In re Wholesale Grocery Prod. Antitrust Litig.*, Case No. 9-md-2090 (ADM) (TNL) (D. Minn.); *Kent v. R.L. Vallee, Inc.*, Case No. 617-6-15, (Super. Ct. Vt.); *Townsend v. G2 Secure Staff, L.L.C., et al.*, Case No. 18STCV04429 (Cal. Super. Ct.); and the Loblaw Canadian Remediation Project.

7.      As a member of JND's Legal Notice Team, I research, design, develop, and implement a wide array of legal notice programs to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and relevant state court rules and to satisfy due process clause of the United States Constitution.  Our notice campaigns, which are regularly approved by courts throughout the United States, use a variety of media including newspapers, press releases,

magazines, trade journals, radio, television, social media and the internet depending on the circumstances and allegations of the case, the demographics of the class, and the habits of its members, as reported by various research and analytics tools.   During my career, I have submitted affidavits to courts throughout the country attesting to the creation and launch of various media programs.

## SETTLEMENT CLASS OVERVIEW

8.      I have been asked by Counsel to prepare a Notice Plan to reach the Settlement Class[1] and inform them about their rights and options in the above Settlement. [2]   The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a Notice Plan with a high reach (70% or more) effective.[3]

9.      The Settlement Class consists of all individuals and entities in the United States and its territories that purchased Keurig K-Cup Portion Packs from persons other than Keurig and not for the purpose of resale during the period September 7, 2010, to August 14, 2020 (except for claims under Mississippi law—which are for purchases during the period from March 24, 2011, to August 14, 2020, and Rhode Island Law—which are for purchases from July 15, 2013, to August 14, 2020).

10.      Excluded from the Settlement Class are Keurig and its predecessors, subsidiaries, parents, affiliates, joint venturers, and their directors and executive officers, and parties to any supply, retail, or distribution contracts with Keurig relating to Keurig K-Cup Portion Packs or

---

[1] Capitalized terms used and not otherwise defined in this Declaration shall have the meanings given such terms in the Stipulation of Settlement and Release, executed August 14, 2020 ("Settlement Agreement").

[2] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign.   Reach factors out duplication, representing total different/net persons.

[3] The FJC's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide considers 70-95% reach among class members reasonable.

Keurig Brewers, as well as all federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, any judge or jurors assigned to this case, Judge Farnan, and any putative members of the Settlement Class who timely and validly exclude themselves from the Settlement Class in accordance with the requirements set forth in an order granting preliminary approval of the Settlement Agreement between the Settlement Class and Keurig and Federal Rule of Civil Procedure 23.

11.     It is our understanding that Settlement Class Members, including any putative members of the Settlement Class that may wish to exclude themselves (collectively, the "Class Members" or "Class"), are unknown.   Accordingly, JND designed a Notice Plan that will effectively reach these unknown Class Members through a consumer media notice effort.

## NOTICE PLAN SUMMARY

12.     The proposed Notice Plan was designed to reach the greatest practicable number of Class Members.   The proposed Notice Plan includes the following components, as further described below:

a.     **Digital Notice**:   JND will implement a digital notice effort with the leading digital network (Google Display Network or "GDN") and the top social media site (Facebook) to reach potential Class Members, as well as the top business social network (LinkedIn) to extend reach to business entities;

b.     **Print Notice**:   JND will place a half page notice in the national edition of *People*, a leading weekly entertainment magazine, to extend reach to Class Members who do not frequent the internet;

c. **Internet Search**:  JND will implement an internet search campaign that will direct potential Class Members to the Settlement website to obtain additional information regarding the Settlement;

d. **Press Release**:  JND will distribute a Nationwide press release in both English and Spanish;

e. **Settlement Website**:  JND will develop an informational, interactive, settlement website (KeurigIndirectPurchaserSettlement.com) that will provide information about the Settlement and include copies of relevant case documentation, such as the long form notice, in English and Spanish, and will provide electronic claim filing capabilities;

f. **Settlement Mailing Address**:  JND will open dedicated Settlement mailing addresses where Class Members can submit a claim or exclusion requests; and

g. **Settlement Email Address and Toll-Free information Line**:  JND will establish and maintain a dedicated email address (info@KeurigIndirectPurchaserSettlement.com) and 24-hour, toll-free telephone line (1-833-794-0948) where callers may obtain information about the Settlement and request to receive a copy of the long form notice and/or Claim Form.

13.     According to reputable media reach platforms (*see* MRI and Comscore below), the proposed consumer media effort (GDN, Facebook, *People*) is expected to reach a minimum of 70% of likely Class Members.  The LinkedIn effort to business entities, the internet search

campaign and the distribution of the national press release in English and Spanish will further extend reach beyond the estimated 70%.

## **MEDIA RESOURCES**

14.     JND utilizes the most reputable advertising media research tools to ensure that the best media is selected and that our reach calculations can withstand the most critical review and challenge.   The media research tools we utilized in our analysis included MRI | Simmons ("MRI") and Comscore, Inc. ("Comscore").   During implementation we will use Google Active View and Trust Metrics.

15.     MRI data was used to analyze the demographics and media usage of potential Class Members, as well as to calculate the reach of the publication effort.   MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media.   MRI is the leading producer of media and consumer research in the United States.

16.     Comscore data was used not only to analyze where potential Class Members are on the internet, but more importantly, for calculating the reach of our proposed digital effort.   It is critical that a reputable source like Comscore be used when estimating the reach of a digital effort; otherwise, the estimated reach could be grossly inflated.   Comscore's multi-reach platform allows us to analyze unduplicated audiences across desktop, smartphone, and tablet devices.   We can assess the efficiency and effectiveness of our proposed media plans by reducing waste and improving campaign performance across all devices.

17.     At the time of implementation, JND's digital media experts will take the necessary steps to ensure that all notice placements appear exactly as planned, meeting our high standards of quality and positioning.   Verification and monitoring will be used to enhance

the digital buy. Google Active View, which is accredited by the Media Rating Council ("MRC"), will be used to measure viewable impressions across the web and in apps.[4] Google Active View supports the Interactive Advertising Bureau ("IAB") and MRC definition of viewability—a minimum of 50% of the ad is in view for a minimum of one second for display ads or two consecutive seconds for video ads. In addition, Google takes invalid activity very seriously. They use over a hundred complex algorithms to spot bad traffic as it happens, and their global team of PhDs, data scientists, engineers, and researchers works around the clock to prevent advertisers from paying for - and publishers benefitting from - invalid clicks, impressions, views, or interactions.

18.    In addition to Google Active View, Trust Metrics third-party brand safety partner will be used during implementation to ensure that our banner impressions are not served to poor quality sites.  This is done by creating a "blacklist" or a list of sites that have been deemed unsafe. These sites will be blocked during implementation based on brand safety parameters such as site content, keywords, etc. "Blacklisting" ensures that our campaign will be served on brand safe websites.

## **TARGET ANALYSIS**

19.    JND analyzes the demographics and media usage of potential Class Members to determine how best to reach them. MRI does not specifically measure the Keurig brand; therefore, MRI data was studied among adults 18 years of age or older ("Adults 18+") who used coffee or tea pods ("Coffee/Tea Pod Users").

---

[4] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.

20.    MRI data indicates that Coffee/Tea Pod Users skew older, higher income, and educated and that 13% speak Spanish at home.  While 89% of Coffee/Tea Pod Users are 25 years of age or older ("Adults 25+"), given that the class period dates back to 2010, an even greater percentage of the Settlement Class would be Adults 25+ today.

21.    MRI data also indicates that Coffee/Tea Pod Users are heavy internet users: 91% are on the internet in a 30-day period and they are 4% more likely to use the internet in a 30-day period, as compared to the general Adult 18+ population; 84% use their cellphone or smartphone to access the internet and they are 6% more likely to use their cellphone or smartphone to access the internet, as compared to the general Adult 18+ population; 69% visit Facebook in a 30-day period and they are 7% more likely to visit Facebook in a 30-day period, as compared to the general Adult 18+ population.  As a result, our proposed media effort focuses heavily on digital notice.

## DIGITAL NOTICE

22.    To reach Class Members, JND will cause 291 million digital impressions targeting Adults 25+ throughout the U.S. and its territories to be delivered over an eight-week campaign via GDN and Facebook.

23.    A portion of the impressions will be allocated to a mix of behavioral and contextual targeting to coffee, tea and Keurig products on GDN and accounts interested in coffee, tea, or Keurig on Facebook. GDN sites may include: CNN.com, MSN.com, NYTimes.com, WashingtonPost.com, ESPN.com, Forbes.com, Weather.com, People.com, Accuweather.com, FoxNews.com, FoodNetwork.com, among others.   A portion of the impressions will also be allocated to Spanish sites through GDN and Spanish language accounts through Facebook.

24.     To extend reach to business entities, JND will cause 1.6 million impressions to be displayed on LinkedIn.  The LinkedIn ads will target Office Manager, Facilities Manager or General Services job titles with Senior, Manager, Director, or VP job seniority.

25.     The digital activity will be served across all devices (desktop, laptop, tablet and mobile), with a heavy emphasis on mobile devices.  The digital ads, attached as Exhibit C, will contain an embedded hyperlink to the Settlement website, where Class Members may access the long form notice and file a claim electronically.

## PUBLICATION NOTICE

26.     To supplement the digital notice effort, JND will cause a half page publication notice, attached as Exhibit D, to appear in *People* Magazine.  *People* is a weekly entertainment magazine with a circulation of over 3.4 million and a total audience of over 34.9 million.  *People* reaches more than 15% of Coffee/Tea Pod Users and its readers are 11% more likely to be Coffee/Tea Pod Users.

27.     The notice placement in *People* will extend reach to Class Members who may not frequent the internet, particularly the older age segment of the Class.  The publication notice will include a Spanish language subheading that will direct potential Spanish speaking Class Members to the Settlement website or toll-free number to obtain a Spanish language notice.

## ADDITIONAL NOTICE EFFORTS

28.     To extend notice exposure, JND will implement a digital search campaign to assist in directing Class Members to the Settlement website.  Web browsers frequently default to a search engine page, making search engines a common source to get to a specific website (i.e., as opposed to typing the desired URL in the navigation bar).  When purchased keywords related

to this case are searched, a paid ad with a hyperlink to the case website may appear on the search engine results page.  The search text ad is attached as <u>Exhibit E</u>.

29.     JND will also cause a press release, attached as <u>Exhibit F</u>, to be distributed at the launch of the campaign that will assist in publicizing the Settlement.  The Press Release will be distributed to over 15,000 media outlets (English and Spanish) nationwide.

## SETTLEMENT WEBSITE

30.     JND   will   develop   an   informational,   interactive,   Settlement   website (KeurigIndirectPurchaserSettlement.com)  that  will  allow  Class  Members  to  obtain  more information  about  the  Settlement  with  an  easy-to-navigate  design  formatted  to  emphasize important information regarding Class Member rights, deadlines to act, and provide answers to frequently  asked  questions.   The  Settlement  website  will  host  copies  of  relevant  Settlement documents including the long form notice (which will also be available in Spanish).  The long form notice is attached as <u>Exhibit G</u>.

31.     The Settlement website will be optimized for mobile visitors so that information loads  quickly  on  mobile  devices  and  will  also  be  designed  to  maximize  search  engine optimization through Google and other search engines.  Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings.  Visitors to the Settlement website will have the ability to download the Settlement claim form or submit one electronically.  The proposed claim form is attached as <u>Exhibit H</u>.

## SETTLEMENT TOLL-FREE NUMBER AND POST OFFICE BOX

32.     JND  will  establish  and  maintain  a  dedicated  toll-free  telephone  number (1-833-794-0948) for  Class  Members  to  call  for  information  related  to  the  Settlement.   The Settlement telephone line will be available 24 hours day, seven (7) days a week.

33.     JND will also maintain dedicated Post Office Boxes where Class Members may send their Claim Forms and exclusion requests.

## NOTICE DESIGN AND CONTENT

34.     I have reviewed and provided input to Counsel on the form and content of the Settlement notice documents, subject to any necessary formatting changes needed for publication. All notice documents are written in plain language and comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and any other applicable statute, law, or rule.  Based on my experience designing settlement class notice programs, in my opinion, the notice documents comply with these requirements, as well as the *FJC's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

35.     The notice documents contain plain and easy-to-read summaries of the Settlement and the rights and options that are available to Class Members. Additionally, the notice documents provide instructions on how to obtain more information about the Settlement.

36.     To the extent that some Class Members may speak Spanish as their primary language, the notice documents will include a subheading in Spanish at the top directing Spanish speaking Class Members to visit the Settlement website to obtain a copy of the long form notice in Spanish.[5]

## NOTICE REACH

37.     To calculate reach, JND used MRI and Comscore reach tools.  According to these two reputable media reach platforms, the consumer digital effort and the notice placement in

---

[5] The press release does not include a subheading in Spanish.  Instead, the press releases will be translated into Spanish for distribution to the Spanish media outlets.

*People* Magazine will reach a minimum of 70% of likely Class Members. The LinkedIn effort to business entities, the internet search campaign and the distribution of the press release in English and Spanish will further extend reach. The provided reach is similar to that of other court approved programs and meets the standard set forth by the FJC.

## CONCLUSION

38.     In JND's opinion, the proposed Notice Plan, as described herein, provides the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, the due process clause of the United States Constitution, and all applicable court rules; and is consistent with other similar court-approved notice programs. The Notice Plan is designed to effectively reach a minimum of 70% of Class Members and provide them with the opportunity to review a plain language notice with the ability to easily take the next steps to learn more about the Settlement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 30, 2020 at Philadelphia, Pennsylvania.

_____
GINA M. INTREPIDO-BOWDEN