UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE : No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION : No. 1:14-mc-02542 (VSB)
:
*This Relates to the Indirect-Purchaser Actions* x

## DECLARATION OF JOSEPH J. FARNAN, JR., U.S. DISTRCT JUDGE (RET.), IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT

I, Joseph J. Farnan, Jr. hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I served as a United States District Court Judge for the District of Delaware in active status from 1985 to 2010 and Chief Judge from 1997 to 2001. During my tenure on the bench, I presided over hundreds of bench and jury trials involving complex commercial disputes.

2. Since my retirement in July 2010, I have been engaged as a mediator, arbitrator and Special Master. These engagements have been primarily in connection with complex commercial disputes and class actions.

**Mediation between IPPs and Keurig**

3. In February 2020, I was engaged by the Indirect Purchaser Plaintiffs and Keurig Green Mountain, Inc. to serve as a mediator with respect to the indirect purchaser claims in the instant litigation. While the mediation process was confidential by agreement of all, and faith in such confidentiality and the mediation privilege is important to successful mediation, I have been authorized by the parties to describe the procedural aspects of the process explained below, while otherwise preserving confidentiality.

4. After I was engaged as a mediator, I had numerous ex parte and joint communications with counsel for the parties. The communications were detailed and

demonstrated to me that counsel for both parties were highly experienced in antitrust litigation and possessed a deep understanding of the federal litigation process particularly as it pertains to antitrust matters and class actions. Additionally, it was clear to me that counsel for the parties had diligently prepared their cases factually and legally and passionately believed in their client's cause.

5. On May 8, 2020, in furtherance of the mediation process, I presided over an all-day mediation session. Once again, counsel for the parties showed a thorough understanding of their cases and advocated strenuously for their clients' positions. Although the parties began to close the gap between their settlement goals, the case did not settle during that mediation session. However, due to the parties detailed consideration of the core issues, progress was made and the parties agreed to continue their discussions with me in an effort to try and find common ground.

6. Following the May 8 session, I continued to work with counsel in a protracted process of shuttle diplomacy. I had separate telephone conversations with counsel for both parties and I continued to discuss the issues and their positions on them. These efforts continued throughout May and June 2020, and into July 2020. With each side, I had extensive and intense discussions regarding the litigation including liability, damages, and class certification. Based on these many discussions, I determined that, in the circumstances of this case, it would be appropriate for me to make a recommendation to the parties regarding a settlement amount that I believed would be fair, reasonable, and adequate.

7. Finally, on July 21, 2020, the parties accepted my settlement recommendation to settle the Indirect Purchaser cases for $31 million dollars, which in my judgment, in view of all the strengths and weaknesses the case presents is a fair, reasonable and adequate settlement for the Class.

8. It is my opinion that at all times during the mediation process, counsel for the parties negotiated diligently, at arm's length, and in good faith.

9. After the parties agreed to the recommended settlement, the parties asked me if I would agree, if appointed by the Court, to serve as a Special Master to make recommendations to the Court, if necessary, regarding the settlement, the notice, and any allocation program. I have agreed to do so.

**Mediation of Allocation Issues**

10. In August 2020, Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs contacted me and asked whether I was available to act as a neutral in matters concerning the Plan of Allocation for the settlement. Interim Co-Lead Counsel advised me that an attorney had been designated to serve as Allocation Counsel for Plaintiffs with respect to jurisdictions whose laws did not afford them a right to indirect purchaser damages in antitrust cases, but who might have a potential claim under Vermont law. I was familiar with the distinctions between so-called Illinois Brick repealer and non-repealer jurisdictions generally, and as it applied more specifically to this case as a result of the mediation. Upon the request of both Interim Co-Lead Counsel and Allocation Counsel, I agreed to act as a neutral regarding the disputed allocation issues and to review and provide guidance on Interim Co-Lead Counsel's proposed Plan of Allocation.

11. I conducted a telephonic mediation session regarding Plan of Allocation issues on August 28, 2020, with a working group delegated by Interim Co-Lead Counsel and with Marcus Bozeman, Esq., of the Bozeman Law Firm, serving as Allocation Counsel. The mediation did not result in a consensus on allocation issues, and I advised counsel to continue negotiating and I set a deadline of August 31 for submissions concerning any unresolved issues. On August 31, I

received submissions from Allocation Counsel and Interim Co-Lead Counsel requesting me to resolve an issue that had not been resolved by negotiation among the attorneys. The issue presented to me was whether the Plan of Allocation should allocate differentially to Class members based on the rights offered by their state laws or on a pro rata distribution. The submissions advised me that, if this threshold issue was resolved in favor of differential allocation, Allocation Counsel and Interim Co-Lead Counsel had agreed to a matrix quantifying the treatment of claims.

12. After discussing the matter with the working group and allocation counsel, reviewing the submissions provided to me and based on my familiarity with the issues and circumstances in this case from the mediation between Indirect Purchaser Plaintiffs and Keurig, I concluded that the Plan of Allocation may and should treat Class Member claims differently based on the rights provided by state laws. I also concluded that the proposed allocation matrix was fair and reasonable and provided an adequate allocation.

13. I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of September, 2020.

_____
Joseph J. Farnan, Jr. U.S. District Judge (ret.)