UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | CIVIL ACTION NO.: 14 MD 2542 (VSB) (SLC) |

**DISCOVERY ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court is the motion of Defendant Keurig Green Mountain, Inc. ("Keurig") to compel Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse") to respond to written discovery requests (the "Motion"). (ECF No. 1124). Specifically, Keurig seeks responses to Interrogatories No. 18 and 22 (the "Interrogatories"), and amended responses to Keurig's Requests for Admissions (the "RFAs"). (Id.) The Court received letter-briefing from the parties (ECF Nos. 1124–25, 1139, 1141, 1148–49) and conducted a discovery conference with the parties on October 22, 2020. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The following factual summary is taken from Plaintiffs' Complaint, as summarized by the Honorable Henry B. Pitman in his Order at ECF No. 636. The Court accepts the alleged facts as true for purposes of resolving the present discovery disputes.

This is a multi-district antitrust action involving Keurig's well-known coffee makers. A principal feature of Keurig's coffee makers is their use of small, disposable plastic cups, usually containing ground coffee. The cup is inserted into Keurig's machine, heated water is passed though the cup and coffee drips into a cup placed below the disposable plastic cup. In addition

to manufacturing and selling the coffee makers, Keurig also manufactures and sells the disposable plastic cups.

Plaintiffs manufacture and sell disposable cups that can be used in Keurig's coffee makers and compete with Keurig in that market. In very general terms, Plaintiffs allege that Keurig violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, the Clayton Act, 15 U.S.C. § 14, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and multiple state statutes by: (1) filing baseless lawsuits against two of the Plaintiffs; (2) entering into "non-competition," tying, and exclusive dealing agreements; (3) threatening companies who would do business with Keurig's competitors; (4) re-designing its coffee makers to render competitors' cups unusable in Keurig's machines; and (5) maligning competitors and interfering with their business relationships.

    **A.**    **The Discovery Requests**

        **1.**    **Interrogatories**

Among the many dozens of interrogatories Keurig propounded to TreeHouse are the following:

**Interrogatory No. 18**: For each purported Keurig statement as alleged in paragraphs 459–548 of Your Complaint, identify each Customer or Potential Customer as to which You contend You lost business, suffered reduced business, or lost business opportunities as a result of that statement, all factual bases and Documents on which You intend to rely to support Your contention that the business or business opportunity was lost as a result of that statement, and all factual bases and Documents upon which You intend to rely to support Your contention that Consumers did not purchase Your Portion Packs as a result of that statement.

**Interrogatory No. 22**: Identify all factual bases and Documents upon which You intend to rely to support Your contention that the lost business or potential business as identified in response to Interrogatory No. 10 was lost as a result of Keurig's alleged anticompetitive conduct.

(ECF No. 1124-1 at 6–8).

TreeHouse interposed lengthy objections to both Interrogatories on grounds that they were, inter alia, overly broad, unduly burdensome, vague and ambiguous, duplicative of other discovery, and called for expert analysis and testimony, and stated that responsive "expert analysis and testimony will be disclosed in accordance with the deadlines for expert discovery." (Id.)

After the exchange of TreeHouse's expert reports, Keurig now claims that the promised information is "missing" from those reports and decries TreeHouse's subsequent "refus[al]" to confirm that its responses are complete." (ECF No. 1124 at 2). Keurig points out that TreeHouse claims to have lost the business of 150 customers, but has only supported its claims as to 60 of those customers, and demands that TreeHouse "state all the evidence on which it bases its contentions." (Id. (quoting ECF No. 1101 at 1–2)).

TreeHouse protests in response that it "has directed Keurig to a mountain of evidence showing substantial lost business as a result of Keurig's myriad false statements about TreeHouse products and Keurig's other unlawful conduct," and submits the equivalent of several foothills of this mountain, roughly 2000 pages evidencing its "detailed support" for its lost business claim. (ECF No. 1141 at 1 & 1141-1–1141-34). TreeHouse also contends in the alternative that it "is under no obligation to identify 'each and every sale' lost as a result of a defendant's unlawful

3

conduct." (ECF No. 1141 at 1 (quoting Pacamor Bearings, Inc. v. Minebea Co., 918 F. Supp. 491, 507 (D.N.H. 1996)). In short, TreeHouse maintains that Keurig has "extensive evidence" from which to glean the information it seeks through the Interrogatories. (Id. at 2).

### 2. **The RFAs**

Keurig propounded over 1,500 RFAs to TreeHouse, including dozens of RFAs inquiring about TreeHouse's custodians' awareness of litigation hold notifications. (ECF Nos. 1124-4, 1124-5, 1141 at 2). In this latter category, RFA No. 1362 is one of eight RFAs that ask TreeHouse to admit that it "is not aware of a notification of a litigation hold in connection with this litigation being prior [sic] to" a particular date. (ECF No. 1124-5 at 7–9).[1] RFAs 1369 through 1402 ask TreeHouse to admit that it "is not aware of a notification of a litigation hold in connection with this litigation being provided to custodian [name] prior to [date]." (ECF No. 1124-5 at 9–20).

TreeHouse interposed various objections to the RFAs, including that they were "duplicative" of other discovery or "vague and ambiguous." (ECF No. 1124 at 2–3). TreeHouse also objected to the RFAs concerning litigation holds by pointing to the Court's prior orders[2] concerning metadata and the narrowing of Rule 30(b)(6) deposition topics. (ECF No. 1124 at 3).

Keurig asks the Court to compel TreeHouse to overrule the objections and compel TreeHouse to respond to the objections for three reasons. First, Keurig asserts that duplication is not a valid ground to object to RFAs, the purpose of which is to "distill the factual record created

---

[1] During the conference with the parties, Keurig's counsel was unable to explain the meaning of "being prior," conceding that it appeared to be a typographical error, one that none of the counsel in this case seemed to notice rendered the RFA nonsensical until the Court pointed it out.

[2] See ECF Nos. 850 (discovery order regarding Fed. R. Civ. P. 30(b)(6) deposition topics; finding proper a topic requesting TreeHouse to "undertake reasonable efforts to prepare and produce a witness to testify regarding TreeHouse's electronic records management policies and procedures relating to the preservation of company computers and email in connection with litigation holds."), 921 (discovery order finding that, after balancing the burden with the likely value of the discovery, Keurig had not shown good cause to require TreeHouse to produce a disputed metadata field (the "CustodianOther" field)).

through discovery and [] 'reduce the cost of litigation . . . by narrowing the scope of disputed issues . . . facilitating the succinct presentation of cases to the trier of fact . . . and eliminating the necessity of proving undisputed facts.'"  (ECF No. 1124 at 3 (quoting Thalheim v. Eberheim, 124 F.R.D. 34, 35 (D. Conn. 1988)).  Second, Keurig contends that TreeHouse's vagueness objections to several hundred of the RFAs are improper because TreeHouse has failed to specify what it finds vague about them.  (Id.; ECF No. 1124-4).  Third, Keurig rejects TreeHouse's reliance on this Court's prior Orders as a basis for not responding to the RFAs concerning litigation holds.  (ECF No. 1124 at 3).

For its part, TreeHouse complains that Keurig has "abused the RFA process" resulting in duplicative discovery, and maintains that its responses contain "substantive answers."  (ECF No. 1141 at 2).  TreeHouse asserts that Keurig has provided no support for its demand for the "extraordinary relief" of compelling revised responses to the RFAs, and, in any event, its objections "are proper" in light of the Court's Order narrowing the Rule 30(b)(6) topics concerning litigation holds and TreeHouse's prior disclosure of the information required to be disclosed in the case's ESI Order.  (Id. at 3 (citing ECF Nos. 850 and 41, respectively); see ECF No. 1155).

## II. DISCUSSION

### A. Legal Standard

#### 1. Interrogatories

Federal Rule of Civil Procedure 33 and Local Rule 33.3 permit the use of contention interrogatories, the purpose of which are "to assist parties in narrowing and clarifying the disputed issued and reducing the possibility of surprise at trial."  Kyoei Fire & Marine Ins. Co., Ltd.

5

v. M/V Maritime Antalya, 248 F.R.D. 126, 157 (S.D.N.Y. 2007); Fed. R. Civ. P. 33; U.S. Dist. Ct. R. S. & E.D.N.Y., Civ. R. 33.3. "A party served with interrogatories under Rule 33 has a duty to 'compile information within his control' and provide 'all information available' in his responses." Rivera v. UPS, 325 F.R.D. 542, 546 (S.D.N.Y. 2018) (quoting United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 309 F.R.D. 1, 14 (D.D.C. 2015)).

"Courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and every piece of evidence a party may wish to offer concerning a given issue at trial." Linde v. Arab Bank, PLC, No. 04 Civ. 2799 (VVP), 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012). A contention interrogatory is proper where it asks the party to "explain the factual bases for [that party's] contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all the evidence that will be offered." Id.; see Ritchie Risk-Linked Strategies Trading (Ir.), Ltd., v. Coventry First LLC, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) (describing proper contention interrogatories as those seeking "certain principal or material facts, pieces of evidence, witnesses and legal applications"); Tribune Co. v Purcigliotti, No. 93 Civ. 7222 (LAP) (THK), 1997 WL 540810, at *2 (S.D.N.Y. Sept. 3, 1997) (explaining that party responding to contention interrogatory is not "required to parse through documents that have already been produced to [its adversary], which [the adversary is] in a position to review themselves, in order to explain the obvious"). A contention interrogatory is improper where it "would merely 'produce . . . a mass of data that contains, incidental, secondary, and perhaps irrelevant and trivial details.'" Morel v. Reed, No. 11 Civ. 1808 (DLI) (LB), 2013 WL 12129656, at *2 (E.D.N.Y. Oct. 2, 2013) (quoting Linde, 2012 WL 957970, at *1); see Ritchie Risk-Linked Strategies, 273 F.R.D. at 369 (finding "overly broad and unduly burdensome" contention interrogatories that sought

6

"every fact, every piece of evidence, every witness, and every application of law to fact . . . supporting the identified allegations").

If a party fails to answer a contention interrogatory, the opposing party may move to compel responses. See Fed. R. Civ. P. 37(a)(3)(B). Where good cause is shown, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" caused by the discovery request. Fed. R. Civ. P. 26(c)(1). The party seeking protection bears the "burden to show good cause" and the Court must "balance the need for information against the injury that might result if uncontrolled disclosure is compelled." Morel, 2013 WL 12129656, at *1 (quoting In re Zyprexa Injunction, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007)). "[C]ourts do not typically compel responses to interrogatories that seek a catalog of all facts or all evidence that supports a party's contentions," because "[s]uch interrogatories are not likely to narrow the issues." Linde, 2012 WL 957970, at *1.

### 2. RFAs

A request for admission pursuant to Federal Rule of Civil Procedure 36 is "not a discovery device." T. Rowe Price Small-Cap Fund v. Oppenheimer & Co., 174 F.R.D. 38, 42 (S.D.N.Y. 1997). An RFA is instead "a procedure for obtaining admissions for the record of facts already known by the seeker." Versatile Housewares v. SAS Group, No. 09 Civ. 10182 (KMK) (PED), 2010 WL 11601225, at *1 (S.D.N.Y. July 15, 2010) (internal citations omitted); Rep. of Turkey v. Christie's, Inc., 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (explaining that RFAs "'are used to establish admission of facts about which there is no real dispute'") (quoting 7 Moore's Fed. Practice § 36.02[1] (3d ed. 2013)). In responding to an RFA, "the answering party may admit or deny a request or 'state in detail why the answering party cannot truthfully admit or deny it.'" Id. (quoting Fed. R. Civ. P.

7

36(a)(4)).  The answering party may also assert lack of knowledge under certain circumstances, and may assert objections based on "vagueness, that is, the respondent cannot answer because the meaning of the request is uncertain."  Id. (quoting 7 Moore's Fed. Practice § 36.11[5][c]).

The propounding party may move for a judicial determination of the sufficiency of an answer or objection.  Id.  If the objection is deemed unjustified, the RFA must be answered, and if the answer does not comply with Rule 36, "the court may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  A court is "'invested with substantial discretion under Rule 36 . . . to determine the propriety" of RFAs and corresponding answers and objections.  Versatile Housewares, 2010 WL 11601225, at *1 (quoting Dubin v. E.F. Hutton Grp., 125 F.R.D. 372, 373 (S.D.N.Y. 1989)).  Where an RFA "seek[s] information as to fundamental disagreement[s] at the heart of the lawsuit, or are unduly burdensome, a court may excuse a party from responding to the requests."  Rep. of Turkey, 326 F.R.D. at 399.

    B.    **Application**

        1.    **Interrogatories**

As set forth above, through Interrogatories No. 18 and 22, Keurig seeks "all factual bases and Documents" on which TreeHouse intends to rely to support its contention that it lost business, and seeks that information "each Customer or potential Customer" that TreeHouse contends it lost as a result of Keurig's statements."  (ECF No. 1124-1 at 6, 8).  The Court finds that these contention interrogatories "are overly broad and unduly burdensome" insofar as they demand that TreeHouse identify "all factual bases and Documents" for "each Customer or potential Customer" TreeHouse claims to have lost.  Ritchie Risk-Linked Strategies, 273 F.R.D. at

369. It is, however, entirely appropriate for Keurig to seek and for TreeHouse to provide this information as to "certain principal or material" customers, or as to a representative sample or group of high-volume customers whose business it believes was lost due to Keurig's alleged conduct. Id. This is particularly appropriate given that TreeHouse bears the burden of proving its lost profits "with specificity." River Light V., L.P. v. Lin & J Int'l, Inc., No. 13 Civ. 3669 (DLC), 2015 WL 3916271, at *5 (S.D.N.Y. June 25, 2015). Accordingly, TreeHouse is obligated to "provide a reasonably clear explanation of the factual basis for, and the types of proof that [it] will offer in support of" its lost profits contentions. Linde, 2012 WL 957970, at *5.

That TreeHouse bears the burden of proof of lost profits, however, does not require it to provide "all factual bases and Documents" for "each" lost customer as Keurig demands in response to these contention interrogatories. Courts have recognized, in light of "the inherent difficulty of estimating the volume of lost sales," that "'courts may engage in some degree of speculation in computing the amount of damages." River Light V., L.P., 2015 WL 3916271, at *5, *8 (awarding Lanham Act lost profits damages calculated on a percentage estimate basis); see also Dial Corp. v. News Corp., 165 F. Supp. 3d 25, 38 (S.D.N.Y. 2016) (explaining that antitrust plaintiff has "considerable latitude" in proving that damages "flow from" defendant's anticompetitive conduct); Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 507 (D.N.H. 1996) (rejecting argument that Lanham Act plaintiff was required "to identify, on a one-for-one basis, each and every sale lost to defendants that otherwise would have been a sale to plaintiffs but for the impermissible conduct alleged").

Given Keurig's overreach in drafting Interrogatories No. 18 and 22 combined with the absence of specificity in TreeHouse's responses, the Court declines to perform the redrafting that

the parties should have done themselves before raising their dispute with the Court. Instead, the Court directs the parties to meet and confer to discuss narrowing the scope of Interrogatories No. 18 and 22 to agree on (i) a list or a sampling of customers whose business TreeHouse claims to have lost due to Keurig's anticompetitive conduct, and (ii) the categories of information TreeHouse will compile and list as to the agreed list of customers in response. See Ritchie Risk-Linked Strategies, 273 F.R.D. at 369 (directing parties to meet and confer to "reach some mutually agreeable resolution" of overly broad contention interrogatories).

### 2. RFAs

With the exception of one category of RFAs discussed below, the Court denies Keurig's motion to compel amended responses to the RFAs on two grounds. First, although the parties (thankfully) have not provided the Court with every one of TreeHouse's responses, in each response the Court has reviewed, TreeHouse "denies the request" after listing its objections. (See, e.g., ECF No. 1124-5 at 7). "As such, no amended responses are needed." Rep. of Turkey, 326 F.R.D. at 400; see Bernstein v. Principal Life Ins. Co., No. 09 Civ. 4925 (CM) (HBP), 2010 WL 4922093, at *4 (S.D.N.Y. Dec. 2, 2010) (refusing to compel amended RFA responses where plaintiffs' denials did "not render the responses inadequate").

Second, Keurig's RFAs "are not consonant with the purpose of Rule 36" to establish undisputed facts; instead, "they seek information as to fundamental disagreement[s] at the heart of the lawsuit," and, accordingly, are improper such that TreeHouse need not revise its responses. Rep. of Turkey, 326 F.R.D. at 400.

There is one category of RFAs that appropriately addresses what should be undisputed facts concerning the dates on which TreeHouse disseminated litigation hold notices to its

custodians. (ECF No. 1124-5 at 7–20 (RFAs Nos. 1362–1402)). In this category of RFAs, Keurig appears to be seeking to confirm (i) the earliest date on which TreeHouse disseminated a litigation hold notice, and (ii) the earliest date on which specific custodians received litigation hold notices. While TreeHouse, pursuant to the parties' ESI Stipulation, previously provided Keurig with lists of dates on which respective custodians received litigation hold notices (see ECF No. 1155) and this topic was addressed in some, if not all, of the custodians' depositions (according to the parties' statements to the Court during the conference), TreeHouse's responses to these RFAs do not facilitate a clear resolution of when its custodians received litigation hold notices. This discrete issue should be capable of resolution either through redrafted RFAs, e.g., "Admit that the earliest date [custodian A] received a litigation hold notice was [date]," or, better yet, a stipulation between the parties.

Accordingly, the parties are directed to meet and confer to agree either to (i) redraft RFAs 1362 through 1402 in a manner to which TreeHouse agrees to respond, or (ii) enter into a stipulation as to the earliest dates on which TreeHouse's custodians received litigation hold notices.

### III. CONCLUSION

For the reasons set forth above, Keurig's motion to compel TreeHouse's revised responses to Interrogatories No. 18 and 22 and the RFAs is GRANTED IN PART and DENIED IN PART. The parties are directed to meet and confer on the following topics and within 30 days of this Order provide a joint status letter reporting as to their resolution:

(1)   narrowing Interrogatories No. 18 and 22 to agree on (i) a representative list or sampling of customers whose business TreeHouse claims to have lost due to Keurig's

anticompetitive conduct, and (ii) the categories of information TreeHouse will compile and detail as to the agreed list of customers in response; and

(2)     redrafting RFAs 1362 through 1402 in a manner to which TreeHouse agrees to respond, or entering into a stipulation as to the earliest dates on which TreeHouse's custodians received litigation hold notices.

The Clerk of Court is respectfully directed to close the Motion at ECF Nos. 1124 and 1125.

Dated:      New York, New York
            October 27, 2020                              SO ORDERED

                                                          _____
                                                          SARAH L. CAVE
                                                          United States Magistrate Judge