UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | CIVIL ACTION NO.: 14 MD 2542 (VSB) (SLC) <br><br> **DISCOVERY ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.   INTRODUCTION

Before the Court are the motions of Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse") (ECF Nos. 1088, 1090) and JBR, Inc. d/b/a Rogers Family Company ("JBR") (JBR and TreeHouse together the "Plaintiffs") (ECF Nos. 1092–93) (the "Motions") contesting Keurig's September 11, 2020 attempted claw-back of portions of two documents (the "Documents") that it produced but now asserts are protected by the attorney-client privilege (the "Clawback").  For the reasons set forth below, the Motions are DENIED IN PART without prejudice and Plaintiffs will be permitted limited use of the Documents.

## II.   BACKGROUND

### A.   This Litigation

The following factual summary is taken from Plaintiffs' Complaint, as summarized by the Honorable Henry B. Pitman in his Order at ECF No. 636.  The Court accepts the alleged facts as true for purposes of resolving the present discovery disputes.

This is a multi-district antitrust action involving Keurig's well-known coffee makers.  A principal feature of Keurig's coffee makers is their use of small, disposable plastic cups, usually containing ground coffee.  The cup is inserted into Keurig's machine, heated water is passed

though the cup and coffee drips into a cup placed below the disposable plastic cup. In addition to manufacturing and selling the coffee makers, Keurig also manufactures and sells the disposable plastic cups.

Plaintiffs manufacture and sell disposable cups that can be used in Keurig's coffee makers and compete with Keurig in that market. In very general terms, Plaintiffs allege that Keurig violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, the Clayton Act, 15 U.S.C. § 14, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and multiple state statutes by: (1) filing baseless lawsuits against two of the Plaintiffs; (2) entering into "non-competition," tying, and exclusive dealing agreements; (3) threatening companies who would do business with Keurig's competitors; (4) re-designing its coffee makers to render competitors' cups unusable in Keurig's machines; and (5) maligning competitors and interfering with their business relationships.

### B. The Motion

The Documents, which have been submitted to the Court under seal, are two emails, virtually identical, in which one Keurig engineer sends to another Keurig engineer quoted legal advice excerpted from an email sent by Keurig's outside patent counsel, Wolf Greenfield (the "Wolf Greenfield Advice"). (ECF No. 1088 at 1). In a notice dated September 11, 2020 pursuant to the Protective Order (ECF No. 496), Keurig requested that Plaintiffs return the Documents on the ground that they constituted inadvertently produced privileged material. (ECF No. 1096 at 1). According to the parties' representations to the Court during the conference, Keurig has listed on its privilege log the initial document(s) containing the Wolf Greenfield Advice, and Plaintiffs have not challenged Keurig's assertion of privilege over the Wolf Greenfield Advice itself.

Plaintiffs contend that the Court should deny the Clawback because the Documents are not privileged in the first instance, and even if they are privileged, they are subject to the crime-fraud exception to the attorney-client privilege and Plaintiffs are entitled to use them. (ECF No. 1088 at 1, 3; ECF No. 1093 at 1, 3). Plaintiffs' invocation of the crime-fraud exception derives from their claim that the lawsuits Keurig brought against TreeHouse in 2010 and against JBR in 2011 were a "sham" designed to prevent any threat to Keurig's monopoly. (ECF No. 1088 at 1; ECF No. 1093 at 2). Plaintiffs contend that the Documents show that Keurig knew that it had no basis for bringing the lawsuits. In the alternative, TreeHouse requests that the Court permit the parties to use the Documents in connection with expert discovery, summary judgment briefing, and their anticipated sanctions motion, and reserve a final determination as to privilege until a later point in this action. (ECF No. 1088 at 3).

Keurig argues that the Documents are privileged, and that the crime-fraud exception does not apply. (ECF No. 1096 at 1–3). Keurig requests that the Court deny Plaintiffs' challenge, and direct Plaintiff to return the Documents without further use. (Id. at 3).

### III.   DISCUSSION

#### A. Legal Standards

##### 1. Attorney-client privilege

The scope of attorney-client privilege has been the subject of multiple discovery disputes in this action. (See, e.g., ECF Nos. 554, 831, 1002). After an extensive in-camera review of potentially privileged documents earlier in this action, The Honorable Henry B. Pitman set forth the governing principles of attorney-client privilege, which the Court adopts and incorporates by reference here. (ECF No. 544 at 1–3). Of the principles of attorney-client privilege, most relevant

for purposes of the Clawback is the principle that "the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client." Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441–42 (S.D.N.Y. 1995) (citing In re Six Grand Jury Witnesses, 979 F.2d 939, 943–44 (2d Cir. 1992)). In addition, "the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation," and thus "the dissemination of confidential communications to [the corporation's employees] does not defeat the privilege." Bank Brussels, 160 F.R.D. at 442.

### 2. Crime-fraud exception

A party seeking "to invoke the crime-fraud exception must demonstrate that [1] there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed — or has been attempted — and [2] that the communications in question were in furtherance of the fraud or crime." Amusement Indus., Inc. v. Stern, 293 F.R.D. 420, 426 (S.D.N.Y. 2013) (internal citations omitted). The factual basis must strike "a prudent person" as constituting "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." In re John Doe, Inc., 13 F.3d 633, 637 (2d Cir. 1994). There need not be a "definitive[]" showing of the fraudulent nature of the client's objective; "there need only be presented a reasonable basis for believing that the objective was fraudulent." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1039 (2d Cir. 1984).

The Honorable Vernon S. Broderick invoked this precedent in determining that JBR had not demonstrated either "a factual basis for a showing of probable cause to believe that a fraud or crime has been committed [or] that the communications in question were in furtherance of the fraud or crime" in connection with the clawback of another document in this action. (ECF No. 1081 at 5).

**B. Application**

　　**1. The Documents are privileged**

Applying the privilege principles described in Bank Brussels set forth above, it should be beyond dispute that the Wolf Greenfield Advice has been appropriately redacted from the documents on the ground of attorney-client privilege. See Bank Brussels, 160 F.R.D. at 442 (noting that, aside from waiver, it was undisputed that attorney-client privilege applied to legal advice in documents at issue). Indeed, Plaintiffs concede that they have not challenged Keurig's assertion of privilege over the Wolf Greenfield Advice in the first instance; rather, they are seizing on the appearance of the Wolf Greenfield Advice in the Documents to circumvent an appropriately privileged communication. (ECF No. 1096 at 1). Plaintiffs argue that because the legal advice itself does not include any confidential information but rather relies on "public, non-confidential facts," it is not protected. (ECF No. 1088 at 2).

The Court agrees with Keurig that the Wolf Greenfield Advice redacted from the Documents is unquestionably protected by the attorney-client privilege. See In re Application of Minebea Co., 143 F.R.D. 494, 503 (S.D.N.Y. 1992) (holding that "there is no question" that attorney's patent opinion was "legal in nature" and therefore protected by the attorney-client privilege). Plaintiffs' reliance on American Standard v. Pfizer, 828 F.2d 734 (Fed. Cir. 1987) is

misplaced because there, the source and intended recipient of the patent opinion was unclear. Id. 745–46.  The Wolf Greenfield Advice indisputably came from Keurig's outside patent counsel, and was delivered to the corporation, and, subsequently, disseminated among its employees, as was to be expected.  See Bank Brussels, 160 F.R.D. at 442.  Similarly, American Standard rejected Plaintiffs' argument that the reliance of the Wolf Greenberg Advice "on publicly available information (as most such opinions are)" eliminated the protection of the attorney-client privilege.  828 F.2d at 746.

Accordingly, the Court finds that the Wolf Greenfield Advice has been appropriately redacted from the Documents on the ground that it is protected by the attorney-client privilege.

### 2. **Plaintiffs have not demonstrated that the crime-fraud exception applies.**

As noted above, Judge Broderick rejected Plaintiffs' prior attempt to use Keurig's alleged false advertising in violation of the Lanham Act as grounds to invoke the crime-fraud exception to the attorney-client privilege.  (ECF No. 1081 at 5).  Plaintiffs therefore try another tack to hurdle the high bar required to prove the exception, asserting that Keurig's prior lawsuits against them constituted "sham litigation or a fraud on the Court" sufficient to warrant the crime-fraud exception here.  (ECF No. 1088 at 2).  As Keurig correctly points out, however, Plaintiffs' argument asks the Court to accelerate the evaluation of their sham litigation claims on the merits into this discovery dispute over [three] lines of an attorney's legal advice inserted into an email between Keurig engineers.  (ECF No. 1096 at 3).

Even if the Court were to preview the merits of Plaintiffs' argument that Keurig's lawsuits were based on an "absurd theory which flew in the face of decades of patent law jurisprudence," (ECF No. 1096 at 3 (quoting ECF No. 1088)), it must be noted that Keurig's lawsuit against

TreeHouse (which was premised on the same theory as the lawsuit against JBR) survived a motion to dismiss, involved cross-motions for summary judgment, and an appeal to the Federal Circuit that resulted in a signed opinion by the panel (as opposed to a summary order or per curiam opinion).  See Keurig v. Sturm Foods, Inc., 732 F.3d 1370 (Fed. Cir. 2013), aff'g No. 10-841-SLR, 2012 WL 4049799, at *1 (D. Del. Sept. 13, 2012).  In addition, it is worth noting that patent law jurisprudence is not without examples of the reversal of long-standing precedent.  See TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct 1514 (2017) (overruling decades of Federal Circuit precedent to hold that for purposes of the patent venue statute, a domestic corporation "resides" only in its state of incorporation); CDX Diagnostic, Inc. v. U.S. Endoscopy Grp., No. 13 Civ. 5669 (NSR), 2018 WL 2388534, at *2 (S.D.N.Y. May 24, 2018) (noting that TC Heartland "completely upended" the "prevailing interpretation" of the patent venue statute); Jenny Yoo Collection v. Watters Design Inc., No. 16 Civ. 2205 (VBS) et al., 2017 WL 4997838, at *5–6 (S.D.N.Y. Oct. 20, 2017) (agreeing with numerous courts holding that "TC Heartland did affect a 'sea change' in patent venue law").  Thus, Keurig's attempt to assert an arguably novel theory of patent exhaustion did not rise to the level of a fraud on the courts in which they asserted that theory.  Compare Zimmerman v. Poly Prep Country Day School, No. 09 Civ. 4586 (FB), 2012 WL 2049493, at *17–18 (E.D.N.Y. June 6, 2012) (holding that crime-fraud exception permitted disclosure of attorney's advice that was used to thwart legitimate investigation of allegations of sexual abuse of students).  Plaintiffs therefore, in the context of this discovery dispute, have failed to demonstrate that there was "no factual or legal basis" for Keurig's lawsuits as would support a finding that the Wolf Greenfield Advice was "intended" to conceal or facilitate a fraud.  In re Richard Roe, Inc., 168 F.3d 69, 71 (2d Cir. 1999).

With respect to the second element of the crime-fraud exception, the Court also finds that Plaintiffs have not, at this stage, shown that the Wolf Greenfield Advice was "substantially for the purpose of furthering" Keurig's alleged fraud in bringing the lawsuits against Plaintiffs. Id. The Wolf Greenfield Advice was rendered many months before Keurig initiated those lawsuits, and the record before the Court does not demonstrate any connection between the advice and the decision to file or maintain the lawsuits. Accordingly, at this juncture, the Court cannot conclude that the communications at issue were themselves in furtherance of the fraud that Plaintiffs contend Keurig perpetrated by bringing the lawsuits against them.

### 3. **Plaintiffs may use the Documents for certain limited purposes.**

Although, at this stage of the litigation, Plaintiffs have not yet shown that there was no factual or legal basis for Keurig's lawsuits against them or that the Documents were in furtherance of the alleged fraud, whether Plaintiffs will be able to prove this on the merits is an open question for Judge Broderick in future proceedings in this action. Accordingly, the Court adopts TreeHouse's proposal and will permit the Documents to be used—under seal—in connection with (1) expert depositions; (2) summary judgment motions; and (3) TreeHouse's anticipated sanctions motion, and will reserve final decision as to the applicability of the crime-fraud exception to a future point in this action.

### IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motions are DENIED without prejudice, and the Documents may be used—under seal[1]—only in connection with (1) expert depositions; (2) summary judgment motions; and (3) TreeHouse's anticipated sanctions motion. The Court

---

[1] ECF filings should be made visible to the Court and the parties in the action.

will reserve final decision as to the applicability of the crime-fraud exception to a future point in this action.

The Clerk of Court is respectfully directed to close the Letter-Motions at ECF Nos. 1088, 1090, 1092 and 1093.

Dated:     New York, New York
           October 30, 2020                              SO ORDERED

_____
SARAH L. CAVE
United States Magistrate Judge