**PUBLIC REDACTED VERSION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation | Case No. 1:14-md-02542 (VSB) (SLC) MDL No. 2542 |
| *This document concerns all related actions.* | Hon. Vernon S. Broderick Hon. Sarah L. Cave |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JBR, INC.'S MOTION AND OBJECTIONS TO MAGISTRATE JUDGE'S DISCOVERY ORDER RE: CLAWBACK**

# INTRODUCTION

Plaintiff JBR, Inc. d/b/a/ Rogers Family Company ("JBR") brings this appeal to ECF No. 1166 (the "Order") pursuant to Federal Rule of Civil Procedure 72(a). The Order denied the motions filed by TreeHouse, *see* ECF No. 1090, and Rogers, *see* ECF No. 1092, each of which challenged the attempted clawback by Defendant Keurig Green Mountain, Inc. ("Keurig") of purportedly privileged portions of two Keurig-produced documents.

The Order should be reversed for (a) misapplying the law of privilege to find non-privileged communications privileged, (b) applying the wrong legal standard concerning meeting the crime-fraud exception, and (c) failing to consider JBR's detailed factual basis and legal basis for meeting the correct probable cause standard. In particular, the Order erroneously labeled Treehouse's challenge as failing to meet the crime-fraud standard, and never addressed JBR's separate factual basis for why its claim meets the applicable standard. Instead, the Order makes no mention of JBR's factual background for its sham litigation claim or JBR's cited cases. This glaring absence makes the Order read as if JBR's evidence was never considered. Such failure to consider evidence requires reversal of the order.

# BACKGROUND AND PROCEDURAL HISTORY

On September 11, 2020, Keurig wrote Plaintiffs that it had "inadvertently produced without redaction" two documents that Keurig claims are "protected from disclosure under the attorney-client privilege[.]" ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
████████████████████████████████████████

1

███████████████████████████████████████████████████████

███████████████████████████████████████████, Plaintiffs advised Keurig they were challenging the attempted clawback of the documents. TreeHouse and Rogers filed motions on September 25, 2020. *See* ECF No. 1090 (TreeHouse); ECF No. 1092 (Rogers). Keurig filed a single opposition, *see* ECF No. 1097, and Plaintiffs filed separate reply letters, *see* ECF No. 1107 (TreeHouse); ECF No. 1109 (JBR). Magistrate Judge Cave denied Plaintiffs' motions, ECF No. 1166 at 8, holding that the documents are privileged, ECF No. 1166 at 5-6, the crime-fraud exception was not satisfied by Plaintiffs, ECF No. 1166 at 7-8, but Plaintiffs are permitted to use the documents in expert discovery and summary judgment motions pending final decision as to the applicability of the crime-fraud exception at a later point in the litigation, ECF No. 1166 at 8-9.

JBR appeals pursuant to Federal Rule of Civil Procedure 72(a).

## LEGAL STANDARD

This Court must set aside a magistrate judge's order on non-dispositive pre-trial matters, such as discovery motions, when the decision is "clearly erroneous or contrary to law." *Joint Stock Co. v. Infomir LLC*, No. 16 Civ. 1318 (GBD)(BCM), 2018 WL 2932725, at *1 (S.D.N.Y. June 12, 2018); *Samad Bros. v. Bokara Rug Co.*, No. 09 Civ. 5943 (JFK), 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 10, 2013). Clear error is present when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006).

The "clear and erroneous" standard set forth for review of a magistrate judge's order becomes more complicated when the order does not include analysis or explanation. Here, the Court's Order did not contain any analysis or explanation as to JBR's claim. Order at 1. This alone has constituted sufficient basis for reversal. *See, e.g., Samad Bros.*, 2010 WL 5095356, at *4 (overturning the magistrate judge's decision after he failed to provide an explanation for his ruling); *see also Hill v.*

2

*Smithkline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004) ("It is preferable that the district court set forth its reasons for denying a motion that calls for the exercise of its discretion.").

## ARGUMENT

### I. THE ORDER DENIED THE CLAWBACK CHALLENGE WITHOUT PROVIDING A BASIS FOR DENIAL IN LIGHT OF JBR'S SHAM LITIGATION CLAIM

JBR submitted detailed evidence showing probable cause for its clawback challenge, which must be assessed in light of the background relating to JBR's underlying claim of sham litigation.

#### A. JBR's underlying claim for sham litigation

Sham litigation is an exception to the general principle that "[t]hose who petition government for redress are generally immune from antitrust liability." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("PRE"). The immunity does not extend to activity that "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). "[T]o be a 'sham,' litigation must meet a two-part definition" (PRE, 508 U.S. at 50), or be part of a pattern of baseless, repetitive litigation. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). First, a lawsuit is objectively baseless if no reasonable litigant could realistically expect success on the merits. If the challenged litigation is objectively meritless, the litigant's subjective motivation is relevant to whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of governmental process as an anticompetitive weapon. *PRE*, 508 U.S. at 60-61 (quoting *Noerr*, 365 U.S. at 144 and *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 380 (1991). Here, both Treehouse and

JBR allege that Keurig filed separate objectively baseless lawsuits against them in an effort to foreclose competition from nascent competitors immediately after the launch of competing products.

JBR's sham litigation claim is premised on the fact that, only one year after Keurig filed an objectively baseless lawsuit against Treehouse/Sturm, the first competitor to enter the single serve portion pack market, Keurig filed a *second objectively baseless* complaint against the second competitor to enter the same market – JBR. Just like in the 2010 suit against Sturm, Keurig's November 2, 2011 lawsuit for patent infringement against JBR alleged that the actual infringers were the customers who were users of Keurig brewers. Keurig filed its lawsuit a mere eight days after JBR launched its OneCup product. █████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Critically, Keurig's frivolous lawsuit against JBR shared the same baseless infringement theory as Keurig's separate lawsuit filed against Treehouse in 2010. Since the JBR product users (just

4

like the Treehouse product users) had purchased the Keurig brewers, the users had a legal right to use non-licensed cups in the brewers and Keurig admittedly did not impose any post-sale use restrictions. Even after Treehouse easily obtained summary judgment of non-infringement in the District of Delaware in September 2012, *see Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 4049799, *4-64 (D. Del. Sept. 13, 2012), Keurig chose to continue frivolously litigating the identical legal issue against JBR.

In May 2013, Judge Saylor, now Chief Judge of the District of Massachusetts, mirrored the District of Delaware's summary judgment of non-infringement in the Sturm lawsuit, and cited that order in granting JBR's motion for summary judgment of non-infringement. Judge Saylor chastised Keurig for "attempting to institute a post sale restriction that prevents non-Keurig cartridges from being used in Keurig brewers," and noted that "Supreme Court precedent prevents plaintiff from undertaking such an end run." See *Keurig, Inc. v. JBR, Inc.*, No. 11–11941, 2013 WL 2304171, at *12, 15 (D. Mass. May 24, 2013); ECF No. 1093-4 at 22-23), quoting *Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 4049799, 4-6 (D. Del. Sept. 13, 2012); ECF No. 581 at 43 n. 25. Five months later, on October 17, 2013, the Federal Circuit affirmed the District of Delaware's separate summary judgment ruling in the *Keurig v. Sturm* case and criticized Keurig for attempting to make an "end-run" around the proper use of the patent laws with "a tactic that the Supreme Court has explicitly admonished." *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1374 (Fed. Cir. 2013); ECF No. 1093-5 at 8-9).

In short, for over a year after the September 2012 summary judgment order in which Keurig lost its case against Sturm due to the implied license doctrine, Keurig refused to stop its litigation against Rogers and subjected JBR to expensive burdensome discovery and motion practice, including harassing depositions of JBR's senior executives, sales staff, and other key employees involved in JBR's OneCup business. *See* ECF No. 1110-10. █████████████████████
███████████████████████████████████████████████████████████████████████

5

██████████████████████████████████████████████████████████
████████████

All this evidence was presented in JBR's letter briefing challenging the clawback, but not a word of it is mentioned in the Order.

B. **Keurig's revelation of the non-privileged nature of its 2010 knowledge of patent exhaustion law**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████



---

[1] The Order assumes facts not in evidence when it states: "Plaintiffs concede that they have not challenged Keurig's assertion of privilege over [a different document argued by Keurig to relate to the Wolf Greenfield advice] in the first instance; rather, they are seizing on the appearance of the [statement at issue] in the Documents to circumvent an appropriately privileged communication." ECF No. 1166 at 5. In fact, Plaintiffs never had the opportunity to challenge Keurig's claim of privilege on the document in question. ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

In short, despite ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ the legal doctrine has *the same effect* on *any patent* — the infringement suit is barred because there can never be infringement in the absence of restrictions imposed in connection with the sale of the product. *Keurig, Inc. v. Sturm Foods, Inc*., 732 F.3d 1370, 1374 (Fed. Cir. 2013); *Quanta Computer, Inc. v. LG Elecs*., Inc., 553 U.S. 617, 628-30, 638 (2008).

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

─────────────────────

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

▇   *See AIU Ins. Co. v. TIG Ins. Co.*, No. 07CIV.7052SHSHBP, 2008 WL 4067437, at *10–11 (S.D.N.Y. Aug. 28, 2008), modified on reconsideration, No. 07 CIV. 7052 SHSHBP, 2009 WL 1953039 (S.D.N.Y. July 8, 2009) (no privilege where "neither party to the communication is an attorney nor does the content of the document reflect legal advice from an attorney or a request for such advice.").

The fact that the documents reference the doctrine of implied license, a publicly known fact, does not make them privileged. *Rattner v. Netburn*, No. 88 CIV. 2080 (GLG), 1989 WL 223059, at *13 (S.D.N.Y. June 20, 1989), aff'd, No. 88 CIV. 2080 (GLG), 1989 WL 231310 (S.D.N.Y. Aug. 23, 1989) (holding that client's knowledge of the existence of a court decision is not privileged even if learned from attorney, adding "[f]actual information provided by an attorney to his client is not privileged, nor is the communication itself insofar as it merely conveys the fact"); *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 163–64 (E.D.N.Y. 1994) (attorney communication of publicly known facts is not privileged); *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992) ("underlying information contained in the communication is not shielded from discovery.") The Court acknowledged this principle in a separate order compelling Keurig to answer JBR's RFAs relating to Keurig's awareness of the case law relating to the implied license doctrine. ECF No. 1157 at 2-3 ("whether [Keurig] was made aware by its employees of the decisions in the three cases by a date certain … is a factual issue that does not require any disclosure of privileged information, even if Keurig was made aware of the holdings of the cases by its counsel"). ▇

▇

▇

▇

This is not the first time Keurig has overreached and mischaracterized non-privileged communications as privileged. *See* ECF No. 646 (Report and Recommendation of Special Master

8

(noting 55 instances where Keurig asserted privilege over documents containing no legal advice); ECF No. 678 (ordering production of same).

As with those previous instances of overreach, the Order here should have rejected Keurig's overbroad privilege claims relating to the two documents at issue. Keurig did not meet its burden to establish privilege.

To avoid repetitious briefing, JBR incorporates by reference Treehouse's separate appeal briefing filed today, which lays out the law of privilege that was relied upon by JBR and Treehouse as the basis for their challenge to Keurig's clawback, and constitutes the basis for challenging the order denying their clawback challenges in light of the non-privileged nature of the documents.

## II. JBR PRESENTED SUFFICIENT EVIDENCE TO MEET THE PROBABLE CAUSE STANDARD TO TRIGGER THE CRIME-FRAUD EXCEPTION

Irrespective of whether the documents in question are privileged, JBR and Treehouse also argued for application of the exception to privilege relating to a showing of probable cause that a crime-fraud had occurred in the context of a sham litigation. JBR incorporates by reference the cases cited in Treehouse's appeal brief today regarding the sham litigation / crime-fraud exception that establish its applicability here, and require reversal of the Order.

Additionally, the Order should be overturned because it ignored and did not address the specific cases cited in JBR's letter briefing to the Magistrate Judge that have applied the crime-fraud exception to documents relevant to alleged sham litigation, including sham patent litigation. In *Chandler v. Phoenix Servs.*, No. 7:19-CV-00014-O, 2020 WL 487503, at *4-6 (N.D. Tex. Jan. 30, 2020) the court ruled that the "crime-fraud exception applies to all attorney-client communications and work product made in furtherance of the Phoenix Defendants' assertion of '993 Patent through the alleged sham patent litigation." In so holding, the court in *Chandler* collected cases from circuits that have applied the crime fraud exception to documents relevant to sham litigation claims. *Id.* at 4, citing *In re Burlington Northern*, 822 F.2d 518, 525 (5th Cir. 1987) (noting that sham antitrust

9

litigation was unprotected by attorney-client privilege and work product doctrine); *In re Richard Roe*, 168 F.3d 69, 72 (2d Cir. 1999). The Order does not address or attempt to distinguish *Chandler* or *Burlington Northern*, which are the cases at the heart of the crime-fraud inquiry here.

Similarly critical to the crime-fraud exception's applicability to a patent case is *Specialty Minerals, Inc. v. Pleuss-Stauffer AG*, where Magistrate Judge Dolinger applied the crime-fraud exception to communications relating to the patent holder's proceedings before the patent office *and* the subsequent assertion of those same patents against potential infringers. No. 98 Civ. 7775 (VM) (MHD), 2004 WL 42280, at *5, 11 (S.D.N.Y. Jan. 4, 2004) ("plaintiff has satisfied its burden to invoke the crime-fraud exception to the attorney-client privilege insofar as it seeks to question Rosenberg about his conversations with Delfosse concerning the re-examination application, the scope of the 365 and 997 patents and the potential infringement liability of other manufacturers of calcium carbonate products."). Notably, the court's invocation of the crime-fraud exception was not confined to communications relating to the litigation but also encompasses the communications relating to the patent holder's efforts to mislead the patent office, efforts which preceded the assertion of infringement claims against competitors. *Id*. at 11. In other words, the case is directly contrary to the notion that only communications relating to the sham litigation itself are subject to the crime-fraud exception.

The *Specialty Minerals* court elucidated the "probable cause" standard for the crime-fraud exception as "a reasonable basis for believing that the objective was fraudulent." *Id*. at *4, 11 (S.D.N.Y. Jan. 7, 2004). The court in *Specialty Minerals* made clear that "probable cause" is standard for the crime-fraud exception, not the underlying proof standard for proof of the entire cause of action. 2004 WL 42280, at *11 ("The Second Circuit has consistently adhered to the "probable cause" standard, and has never suggested that it is properly replaced by the applicable standard for proof of

the underlying tort or crime. Indeed, to proceed as defendants suggest would entirely undercut the recognized test."). The Order nowhere mentions or distinguishes *Specialty Minerals*.

Here, JBR (and Treehouse) established probable cause basis for antitrust claims premised on Keurig's sham patent litigation lawsuit against JBR from 2011 to 2013 immediately after Keurig's sham lawsuit against Treehouse beginning in 2010. Both lawsuits reflected an attempt by Keurig to ignore the long-established controlling law as well as the indisputable critical facts relating to Keurig's lack of post-sales restrictions on its users. *In re Buspirone Patent Litigation*, 185 F.Supp.2d 363, 376 (S.D.N.Y. 2002) (patent infringement litigation objectively baseless where conduct "ignores the law and tries to justify taking property that belongs to the public"); *In re Loestrin 24 Fe Antitrust Litig.*, 433 F. Supp. 3d 274, 314-15 (D.R.I. 2019) (sham litigation claim supported by evidence that Warner Chilcott was "less than objectively reasonable" in asserting patent infringement). Keurig's overall litigation strategy reflected a pattern and practice of using multiple frivolous lawsuits as anticompetitive weapons to threaten nascent competitors. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972).

The Order ignored all of JBR's cited cases applying the crime-fraud exception in the patent and sham litigation context, and never applied the "probable cause" standard as set out in *Specialty Minerals* and *Chandler*.

When the proper probable cause standard is applied, JBR's extensive evidentiary presentation was well more than sufficient to establish the probable cause basis to trigger the crime-fraud exception and set aside Keurig's privilege claims.

### III. THE COURT'S ORDER PERMITTING LIMITED USE OF THE DOCUMENTS IS STILL PREJUDICIAL

The Order's holding allowing Plaintiffs to use the two Keurig documents for purposes of expert discovery and summary judgment is insufficient to provide the Plaintiff with the full use of the documents reflecting their non-privileged nature. Full use of these two documents should be allowed not just in expert reports or summary judgment proceedings, but also at trial.

### CONCLUSION

For the reasons discussed above, Plaintiff requests that the Court reverse the Order made in ECF No. 1166.

Dated: November 13, 2020　　　　　　　　　　　Respectfully Submitted,
　　　　　Burlingame, CA　　　　　　　　　　　　DAN JOHNSON LAW GROUP

　　　　　　　　　　　　　　　　　　By:　　*/s/ Daniel Johnson Jr.*

　　　　　　　　　　　　　　　　　　　　　Daniel Johnson Jr.
　　　　　　　　　　　　　　　　　　　　　dan@danjohnsonlawgroup.com
　　　　　　　　　　　　　　　　　　　　　1350 Old Bayshore Highway, Suite 520
　　　　　　　　　　　　　　　　　　　　　Burlingame, CA 94010
　　　　　　　　　　　　　　　　　　　　　(415) 604-4500

　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　JBR, Inc. d/b/a Rogers Family Company