UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | CIVIL ACTION NO.: 14 MD 2542 (VSB) (SLC)<br><br>**DISCOVERY ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court is a joint letter from Defendant Keurig and Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse") outlining outstanding discovery disputes pertaining to the parties' interrogatories (the "Discovery Disputes"). (ECF Nos. 1189–90). Notwithstanding the Court's guidance during two lengthy conferences followed by two written orders (ECF Nos. 1153 (the "October 21 Order"), 1158 (the "October 27 Order")), the parties remain unable — or unwilling — to resolve these Discovery Disputes on their own. Accordingly, the Court ORDERS that, as redrafted below, TreeHouse shall respond to Keurig Interrogatories No. 18 and 22, and Keurig shall respond to TreeHouse Interrogatories No. 12 and 14.

### I. BACKGROUND

#### A. Factual Background

The following factual summary is taken from Plaintiffs' Complaint, as summarized by the Honorable Henry B. Pitman in his Order at ECF No. 636. The Court accepts the alleged facts as true for purposes of resolving the present discovery disputes.

This is a multi-district antitrust action involving Keurig's well-known coffee makers. A principal feature of Keurig's coffee makers is their use of small, disposable plastic cups, usually

containing ground coffee. The cup is inserted into Keurig's machine, heated water is passed though the cup and coffee drips into a cup placed below the disposable plastic cup. In addition to manufacturing and selling the coffee makers, Keurig also manufactures and sells the disposable plastic cups.

Plaintiffs manufacture and sell disposable cups that can be used in Keurig's coffee makers and compete with Keurig in the market for those cups. In very general terms, Plaintiffs allege that Keurig violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, the Clayton Act, 15 U.S.C. § 14, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and multiple state statutes by: (1) filing baseless lawsuits against two of the Plaintiffs; (2) entering into "non-competition," tying, and exclusive dealing agreements; (3) threatening companies who would do business with Keurig's competitors; (4) re-designing its coffee makers to render competitors' cups unusable in Keurig's machines; and (5) maligning competitors and interfering with their business relationships.

**B.     Procedural History**

The Court first heard from the parties regarding the Discovery Disputes when TreeHouse moved to compel Keurig to respond to interrogatories (ECF No. 1103), and Keurig moved to compel TreeHouse to respond to certain interrogatories and requests for admissions (ECF No. 1124). The Court received letter-briefing from the parties on those motions and conducted discovery conferences on October 20 and 22, 2020.

The Court provided guidance to the parties both during the conferences and in the October 21 and October 27 Orders, which further directed the parties to meet and confer to revise the discovery requests. (ECF Nos. 1153, 1158). While the parties were able to resolve

their disputes concerning Keurig's requests for admissions to TreeHouse (see ECF No. 1190 at 4), they continue to dispute Keurig Interrogatories Nos. 18 and 22 and TreeHouse Interrogatories Nos. 12 and 14. Each is discussed below.

## II. DISCUSSION

### A. Legal Standards

The Court incorporates by reference its prior discussion of the legal standards applicable to interrogatories under Federal Rule of Civil Procedure 33 and Local Rule 33.3 set forth in the Court's October 27 Order. (ECF No. 1158 at 5–7).

### B. Keurig Interrogatories to TreeHouse

Keurig's Interrogatories No. 18 and 22 directed to TreeHouse read as follows:

**Interrogatory No. 18**: For each purported Keurig statement as alleged in paragraphs 459-548 of Your Complaint, identify each Customer or Potential Customer as to which You contend You lost business, suffered reduced business, or lost business opportunities as a result of that statement, all factual bases and Documents on which You intend to rely to support Your contention that the business or business opportunity was lost as a result of that statement, and all factual bases and Documents upon which You intend to rely to support Your contention that Consumers did not purchase Your Portion Packs as a result of that statement.

**Interrogatory No. 22**: Identify all factual bases and Documents upon which You intend to rely to support Your contention that the lost business or potential business as identified in response to Interrogatory No. 10 was lost as a result of Keurig's alleged anticompetitive conduct.

(ECF No. 1124-1 at 6–8).

The Court previously held that, while these two interrogatories were "overly broad and unduly burdensome," it was "entirely appropriate for Keurig to seek and for TreeHouse to provide this information as to 'certain principal or material' customers, or as to a representative sample or group of high-volume customers whose business [TreeHouse] believes was lost due to

3

Keurig's alleged conduct." (ECF No. 1158 at 8–9). The Court "decline[d] to do the redrafting that the parties should have done themselves," and directed them instead to "meet and confer" to narrow Interrogatories No. 18 and 22 to cover "(i) a list or a sampling of customers whose business TreeHouse claims to have lost due to Keurig's anticompetitive conduct, and (ii) the categories of information TreeHouse will compile and list as to the agreed list of customers in response." (Id. at 9–10).

The parties represent that they conferred by telephone and in writing, but have been unable to reach agreement to narrow Interrogatories No. 18 and 22. Keurig maintains that "TreeHouse should identify information supporting its contention that it lost customer sales for the 'principal or material' customers among the 90 alleged customers for which it has not identified **any** such information to date." (ECF No. 1190 at 1). Keurig claims that, although TreeHouse claimed in a prior interrogatory response to have lost over 150 customers, TreeHouse only pointed to information for thirteen of the 60 lost customers referenced in TreeHouse's experts' reports, and has not provided any information as to the remaining 90 lost customers. (Id. at 1–2). Thus, Keurig asks that TreeHouse be directed to identify, from the 90 remaining customers referenced in its prior response, (i) "its claimed material losses," (ii) "the time period TreeHouse contends it lost business, (iii) the reason(s) "it contends it lost the business," and (iv) the product it contends it did not sell as a result." (Id. at 2).

TreeHouse contends that Keurig "refused to make any effort to propose any revisions to" Interrogatories No. 18 and 22, "demanded" that TreeHouse make "representations" about "'material' lost customers," and "threaten[ed]" to argue for preclusion if TreeHouse failed to provide the information. (ECF No. 1190 at 2-3). TreeHouse asserts that, in the absence of

proposed revisions from Keurig, it provided "a representative list of thirteen lost customers" that "represent a diverse cross-section of customers lost across the different sales channels at issue in this case." (Id. at 3).[1]  As to these thirteen customers, TreeHouse offered to provide (1) its "main contentions as to why TreeHouse lost [that] business," and (2) "representative support for the contentions, such as exemplary documents and testimony." (Id.)  TreeHouse asks the Court to deem Keurig, by its conduct, to have "withdrawn or waived" Interrogatories No. 18 and 22, or in the alternative, proposes the following revised language:

> **Interrogatory No. 18**:  "IDENTIFY a representative sample of no less than 6 customers or potential Customers as to which You contend You lost business, suffered reduced business, or lost business opportunities as a result of Keurig's statements alleged in paragraphs 459-548 of Your complaint, and Your main contentions and representative support for each identified Customer."
>
> **Interrogatory No. 22**:  "IDENTIFY a representative sample of no less than 7 Customers as to which You contend You lost business or potential business as identified in response to Interrogatory No. 10 and Your main contentions and representative support for each identified Customer."

(Id. at 4.)

The Court finds that both parties are being unreasonable.  Keurig is refusing even to consider revising the language of Interrogatories No. 18 and 22 and is revising its position at the eleventh hour to demand that TreeHouse identify "all material losses" perhaps as a predicate for a preclusion argument in the future.  (ECF No. 1190-1 at 2).  TreeHouse is recycling prior productions concerning less than 10% of its claimed population of over 150 lost customers and not revealing anything about the other 90 alleged lost customers.  (ECF Nos. 1124 at 1; 1190 at 1).

---

[1] As support for its selection of a sample size of thirteen, TreeHouse relies on the dissenting opinion in LePage's Inc. v. 3M, 324 F.3d 141, 171 (3d Cir. 2003), in which Judge Greenberg recounted trial evidence as to thirteen customers showing that the plaintiff's sales reductions "were attributed to a number of factors, not merely [the defendant's] rebate programs."

Balancing Keurig's need for responses to Interrogatories No. 18 and 22 with the burden on TreeHouse of requiring broad disclosure, the Court finds that both the language of Interrogatories No. 18 and 22 as well as TreeHouse's proposed list of customers require revision. See Morel v. Reed, No. 11 Civ. 1808 (DLI) (LB), 2013 WL 12129656, at *1 (E.D.N.Y. Oct. 2, 2013). The revisions must: (i) expand the sample size of TreeHouse's lost customers or potential customers, (ii) clarify the sample must include at least some customers from the 90 about which TreeHouse has not yet provided information, and (iii) specify the support that TreeHouse must provide with respect to the customers in the sample. Accordingly, the Court directs Keurig to revise, and TreeHouse to respond to Interrogatories Nos. 18 and 22 as follows:

> **Interrogatory No. 18**: "IDENTIFY a representative sample of no less than ten (10) Customers or potential Customers, at least two (2) of which are derived from the 90 Customers or potential Customers TreeHouse identified in its response to Interrogatory No. 10 but for which it has not yet provided information, as to which You contend You lost business, suffered reduced business, or lost business opportunities as a result of Keurig's statements alleged in paragraphs 459-548 of Your complaint, and Your main contentions and representative support, such as exemplary documents and testimony, for each identified Customer."
>
> **Interrogatory No. 22**: "IDENTIFY a representative sample of no less than ten (10) Customers as to which You contend You lost business or potential business as identified in response to Interrogatory No. 10, at least two (2) of which are derived from the 90 Customers or potential Customers TreeHouse identified in that response but for which it has not yet provided information, and Your main contentions and representative support for each identified Customer, such as exemplary documents and testimony."

So that there is no further debate or confusion, the Court intends that TreeHouse's responses will identify and provide information concerning at least four of the 90 customers listed in its response to Interrogatory No. 10 as to which it has not previously provided information.

6

### C. TreeHouse Interrogatories to Keurig

TreeHouse's Interrogatories No. 12 and 14 ask Keurig to identify "less restrictive alternatives that [Keurig] considered to achieve" purported procompetitive benefits in connection with certain provisions in Keurig's agreements. (ECF No. 1153 at 2; see ECF No. 1103 at 2). During the October 20, 2020 conference with the parties, the Court agreed with TreeHouse that "Keurig should have to identify the less restrictive alternatives," (ECF No. 1190 at 5), but suggested to the parties various wording changes for clarification, and then directed them "to meet and confer regarding potential revisions to these interrogatories to which Keurig is directed to provide a revised response." (ECF No. 1153 at 2).

TreeHouse proposed the following language to address the Court's comments concerning the phrase "least restrictive alternatives" and the distinction between Keurig as an entity and its personnel:

> **Interrogatory No. 12**: IDENTIFY the less restrictive alternatives that KGM personnel considered to any Keurig Loyalty Provision, Exclusivity Provision, or Non-Compete Provision included in any Agreement with a KAD, KARD, RNKARD, eKAD, other distributor, manufacturer, Keurig Supplier, Licensee, Brand, Roaster, or other business partner, and the Bates numbers for any related documents.
>
> **Interrogatory No. 14**: IDENTIFY the less restrictive alternatives that KGM personnel considered to any Keurig Loyalty Provision, Exclusivity Provision, or Non-Compete Provision included in any Agreement with customers in the At-Home Market, such as with retail, club, mass, office specialty, or any other type of customer that is not described in Interrogatory No. 12, and the Bates numbers for any related Documents.

(ECF No. 1190 at 5).

Keurig rejected TreeHouse's proposed revisions as perpetuating "the central problem" of the use of the phrase "less restrictive means," which Keurig describes points out is a "term of art under the antitrust laws." (ECF No. 1190 at 6; see ECF No. 1129 at 2). Keurig claims that "there

are no 'less restrictive means' as that term is defined in case law," and therefore its answer to the revised interrogatories would remain, effectively, "None." (ECF No. 1190 at 6). TreeHouse responds that Keurig is changing its position from having asserted that it was not aware of any less restrictive alternatives that would achieve procompetitive goals, to now asserting that there are no less restrictive alternatives, regardless of what they would achieve. (ECF No. 1190 at 4).

The legal framework underlying TreeHouse's claims determines whether the information TreeHouse is seeking through Interrogatories No. 12 and 14 is relevant. As is well-understood, Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. (See ECF No. 581 at 58 (referring to the rule of reason under Section 1 of the Sherman Act)). Interpreting this provision, the United States Supreme Court "has long recognized that Congress intended to outlaw only <u>unreasonable</u> restraints." <u>Texaco Inc. v. Dagher</u>, 547 U.S. 1, 5 (2006) (internal citations omitted). Courts analyzing claims under Section 1 "presumptively appl[y] [the] rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful." <u>Id.</u> "[T]he rule of reason requires the factfinder to decide whether under all the circumstances of the case the restrictive practice imposes an unreasonable restraint on competition," <u>Arizona v. Maricopa Cty. Med. Soc.</u>, 457 U.S. 332, 343 (1982), meaning, "whether the challenged agreement is one that promotes competition or one that suppresses competition." <u>Nat'l Soc. of Prof'l Engineers v. United States</u>, 435 U.S. 679, 691 (1978). The rule of reason involves application of the following burden-shifting analysis:

> Under the rule of reason, the plaintiffs bear an initial burden to demonstrate the defendants' challenged behavior had an <u>actual</u> adverse effect on competition as a whole

> in the relevant market . . . Because the antitrust laws protect competition as a whole, evidence that plaintiffs have been harmed as individual competitors will not suffice . . . If the plaintiffs satisfy their initial burden, the burden shifts to the defendants to offer evidence of the pro-competitive effects of their agreement . . . Assuming defendants can provide such proof, the burden shifts back to the plaintiffs to prove that any legitimate competitive benefits offered by defendants could have been achieved through less restrictive means . . . Ultimately, the factfinder must engage in a careful weighing of the competitive effects of the agreement—both pro and con—to determine if the effects of the challenged restraint tend to promote or destroy competition.

<u>Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.</u>, 386 F.3d 485, 507 (2d Cir. 2004) (internal citations omitted).

At their core, TreeHouse's Interrogatories No. 12 and 14 seek to ascertain an answer to the valid question whether Keurig considered any alternatives to the contract provisions at issue, and if so, which ones; under the rule of reason framework, however, whether those alternatives were <u>less restrictive</u> is TreeHouse's burden to prove.  See <u>Geneva</u>, 386 F.3d at 507.  Even if Keurig (or its personnel) considered <u>some</u> alternatives to these contract provisions, Keurig will likely never agree that such alternatives were, in fact, less restrictive, and so, in response to Interrogatories No. 12 and 14, it is not required to characterize any particular alternative it considered as less restrictive.  See <u>In re Facebook, Inc.</u>, No. 12 Md. 2389, 2016 WL 5080152, at *4 (S.D.N.Y. July 7, 2016) (declining to require party to respond to contention interrogatories about "an element [that was] not required for their <u>prima facie</u> case").  Indeed, whether or not an alternative was less restrictive is an ultimate question for the trier of fact in this case.  <u>Cf.</u> <u>Geneva</u>, 386 F.3d at 509 (noting circumstances that would involve "consider[ing] if less restrictive means could have achieved the pro-competitive benefits of an exclusive dealing arrangement without totally foreclosing competition").

9

In order to uncover the relevant evidence concerning alternative means to achieve legitimate competitive benefits under the rule of reason framework, then, it is reasonable to ask Keurig to identify <u>any</u> alternatives it considered with respect to the key contractual provisions, and leave it to the parties to argue and the trier of fact to determine whether they were less restrictive means to achieve the legitimate competitive benefits.  Given Keurig's resistance to revising the language of the interrogatories absent Court intervention, which now been necessary twice on this topic, the Court is not sympathetic to any suggestion that responding to the revised interrogatories may be more burdensome; indeed, the answer to the revised interrogatories below may still be "none."  Accordingly, the Court directs TreeHouse to revise, and Keurig to respond, to Interrogatories No. 12 and 14 as follows:

> **Interrogatory No. 12**:  IDENTIFY any alternatives that KGM personnel considered with respect to any Keurig Loyalty Provision, Exclusivity Provision, or Non-Compete Provision included in any Agreement with a KAD, KARD, RNKARD, eKAD, other distributor, manufacturer, Keurig Supplier, Licensee, Brand, Roaster, or other business partner, and the Bates numbers for any related documents.
>
> **Interrogatory No. 14**:  IDENTIFY any alternatives that KGM personnel considered with respect to any Keurig Loyalty Provision, Exclusivity Provision, or Non-Compete Provision included in any Agreement with customers in the At-Home Market, such as with retail, club, mass, office specialty, or any other type of customer that is not described in Interrogatory No. 12, and the Bates numbers for any related Documents.

### III.   CONCLUSION

For the reasons set forth in this Discovery Order, the Court ORDERS as follows:

(1)    Keurig shall revise, and TreeHouse shall respond to, Interrogatories Nos. 18 and 22 as set forth above, and

(2)    TreeHouse shall revise, and Keurig shall respond to, Interrogatories Nos. 12 and 14 as set forth above.

Dated:     New York, New York
             December 4, 2020           SO ORDERED

                                                          SARAH L. CAVE
                                                          United States Magistrate Judge