# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| | : | |
| In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation | : | Case No. 1:14-md-02542 (VSB) (SLC) |
| | : | MDL No. 2542 |
| | : | |
| | : | Hon. Vernon S. Broderick |
| | : | Hon. Sarah L. Cave |
| *This document concerns all related actions.* | : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| | x | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE PROPOSED TESTIMONY OF HON. ARTHUR GAJARSA (RET.)

**<u>TABLE OF CONTENTS</u>**

Page

**<u>PRELIMINARY STATEMENT</u>** ................................................................................................. 1

**<u>STATEMENT OF RELEVANT FACTS</u>** ................................................................................ 5

**<u>STANDARD OF LAW</u>** ............................................................................................................ 10

**<u>ARGUMENT</u>** ............................................................................................................................ 11

    I.    Gajarsa's Report Should Be Excluded as It Contains Purely Legal Opinions That Are Not Helpful to the Trier of Fact ............................................................ 11

        A.    Gajarsa Does Not Purport to Have Any Expertise in a Scientific or Technical Field ................................................................................ 11

        B.    Gajarsa's Testimony Solely Consists of Inappropriate Legal Opinions ................................................................................................ 13

        C.    Gajarsa's Review of the Litigation Records Is Not Helpful to the Trier of Fact ....................................................................................... 17

    II.    Gajarsa's Opinions Are Wholly Unreliable as He Does Not Purport to Apply Any Methodology and Admittedly Failed to Consider the Facts of the Case ............................................................................................................ 19

**<u>CONCLUSION</u>** ........................................................................................................................ 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) .................................................14

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)...................................................10, 11, 21

*Aventis Env't Science USA LP v. Scotts Co.*,
383 F. Supp. 2d 488 (S.D.N.Y. 2005) ....................................15, 18

*Barban v. Rheem Textile Sys., Inc.*,
147 F. App'x 222 (2d Cir. 2005) .............................................25

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*,
79 F. Supp. 2d 252 (W.D.N.Y. 2000) .....................................12

*Berckeley Inv. Group, Ltd. v. Colkitt*,
455 F.3d 195 (3rd Cir. 2006) ..................................................14

*Brazier v. Hasbro, Inc.*,
No. 99-cv-11258, 2004 WL 515536 (S.D.N.Y. Mar. 16, 2004).............................21

*Burkhart v. Washington Metro. Area Trans. Auth.*,
112 F.3d 1207 (D.C. Cir. 1997)...............................................14

*In re Buspirone Patent & Antitrust Litig.*,
185 F. Supp. 2d 363 (S.D.N.Y. 2002)......................................25

*C.P. Interests, Inc. v. Cal. Pools, Inc.*,
238 F.3d 690 (5th Cir. 2001) ..................................................14

*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)................................................................3, 20

*Commodores Entm't Corp. v. McClary*,
879 F.3d 1114 (11th Cir. 2018) ..............................................14

*Daubert v. Merrell Dow Pharms, Inc.*,
509 U.S. 579 (1993)................................................................ *passim*

*United States ex rel. Dyer v. Raytheon Co.*,
No. 08-10341, 2013 WL 5348571 (D. Mass. Sept. 23, 2013)................................19

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
    No. 04-md-1628, 2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009) ................................... *passim*

*Great American Ins. Co. v. USF Holland Inc.*,
    937 F. Supp. 2d 376 (S.D.N.Y 2013) ...................................................................................14

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992) ..................................................................................................13

*Ideal World Mktg., Inc. v. Duracell, Inc.*,
    15 F. Supp. 2d 239 (E.D.N.Y. 1998) .....................................................................................15

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
    No. 15-cv-3183, 2016 WL 7042117 (D. Minn. July 25, 2016) .............................................24

*Inventio Ag v. Otis Elevator Co.*,
    No. 06 Civ. 5377, 2011 WL 3359705 (S.D.N.Y. June 23, 2011) ..........................................14

*Keurig, Inc. v. JBR, Inc.*,
    No. 1:11-cv-11941-FDS, 2013 WL 2304171 (D. Mass. May 24, 2013) .............................6, 7

*Keurig, Inc. v. Kraft Foods Global, Inc.*,
    No. 1:07-cv-00017 (D. Del.) (filed Jan. 10, 2007) .................................................................2

*Keurig, Inc. v. Sturm Foods, Inc.*,
    No. 1:10-cv-000841, 2012 WL 4049799 (D. Del. Sept. 13, 2012) .........................................6

*Killion v. KeHE Distribs., LLC*,
    761 F.3d 574 (6th Cir. 2014) ................................................................................................14

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................................10, 20

*La. Wholesale Drug Co. v. Sanofi-Aventis*
    No. 07-cv-7343, 2009 WL 2708110 (S.D.N.Y. Aug. 28, 2009)........................................14, 15

*La. Wholesale Drug Co. v. Sanofi-Aventis*,
    No. 07-cv-7343, 2008 WL 4580016 (S.D.N.Y. Oct. 14, 2008)..............................................25

*LaBarge v. Joslyn Clark Controls, Inc.*,
    242 F. App'x 780 (2d Cir. 2007) ..........................................................................................25

*In re M/V MSC Flaminia*,
    No. 12-cv-8892, 2017 WL 3208598 (S.D.N.Y. July 28, 2017)..............................................18

*Macaluso v. Herman Miller, Inc.*,
    No. 01-cv-1146, 2005 WL 563169 (S.D.N.Y. Mar. 10, 2005)..........................................20, 25

iii

*Marx & Co., Inc. v. Diners' Club Inc.*,
   550 F.2d 505 (2d Cir. 1997)..................................................................12

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*,
   No. 1:00-1898, 2008 WL 2607852 (S.D.N.Y. July 1, 2008)...................................21

*Motown Prods., Inc. v. Cacomm, Inc.*,
   668 F. Supp. 285 (S.D.N.Y. 1987) ......................................................15, 18

*N. Heel Corp. v. Compo Indus., Inc.*,
   851 F.2d 456 (1st Cir. 1988)................................................................14

*Nabi Biopharmaceuticals v. Roxane Labs., Inc.*,
   No. 2:05-CV-889, 2007 WL 894473 (S.D. Ohio Mar. 21, 2007)............................3

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005)...........................................................10, 13

*Nisus Corp. v. Perma-Chink Systems, Inc.*,
   No. 3:03-CV-120, 2005 WL 6112992 (E.D. Tenn. May 27, 2005) .......................12

*Okland Oil Co. v. Conoco, Inc.*,
   144 F.3d 1308 (10th Cir. 1998) .............................................................15

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993).....................................................................3, 20

*In re Rezulin Products Liab. Litig.*,
   369 F. Supp. 2d 398 (S.D.N.Y. 2005).......................................................21

*Roundy's Inc. v. N.L.R.B.*,
   674 F.3d 638 (7th Cir. 2012) ..............................................................14

*Salem v. U.S. Lines Co.*,
   370 U.S. 31 (1962)........................................................................19

*Scentsational Techs., LLC v. Pepsi, Inc.*,
   No. 13-cv-8645, 2018 WL 1889763 (S.D.N.Y. 2018) ..................................18, 19

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................12

*Southern Pine Helicopters, Inc. v. Phoenix Aviation Mgrs., Inc.*,
   320 F.3d 838 (8th Cir. 2003) .............................................................14

*Specht v. Jensen*,
   853 F.2d 805 (10th Cir. 1988) ............................................................14

*Stobie Creek Invs. LLC v. United States*,
    608 F.3d 1366 (Fed. Cir. 2010)............................................................................14

*Teague v. Bakker*,
    35 F.3d 978 (4th Cir. 1994) ...............................................................................14

*Thomsen v. Kefalas*,
    No. 15-CV-2668, 2018 WL 1508735 (S.D.N.Y. Mar. 26, 2018) ...........................13

*Treehouse Foods, Inc. v. Keurig Green Mountain, Inc.*,
    No. 1:14-cv-00905-VSB, ECF No. 86 (S.D.N.Y. Dec. 2, 2014)............................6

*Turrentine v. Bell Canada*,
    No. 98-7942, 1999 WL 220146 (2d Cir. Apr. 13, 1999) .....................................20

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015).................................................................................10

*United States v. Articles of Banned Hazardous Substances Consisting of an*
*Undetermined Number of Cans of Rainbow Foam Paint*,
    34 F.3d 91 (2d Cir. 1994).....................................................................................13

*United States v. Downing*,
    753 F.2d 1224 (3d Cir. 1985)...............................................................................21

*United States v. Grote*,
    961 F.3d 105 (2d Cir. 2020).................................................................................13

*United States v. Schatzle*,
    901 F.2d 252 (2d Cir. 1990).................................................................................11

*United States v. Scop*,
    846 F.2d 135 (1988).............................................................................................13

*United States v. Tin Yat Chin*,
    371 F.3d 31 (2d Cir. 2004)............................................................................11, 20

*Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*,
    No. 13CV7639, 2016 WL 4098564 (S.D.N.Y. July 28, 2016)..............................18

*VIM, Inc. v. Somerset Hotel Ass'n*,
    19 F. Supp. 2d 422 (W.D. Pa. 1998)...................................................................15

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
    No. 11-515, 2015 WL 12815314 (D. Del. Nov. 20, 2015)....................................12

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir. 2004)...................................................................................19

*Wurtzel v. Starbucks Coffee Co.*,
  257 F. Supp. 2d 520 (E.D.N.Y. 2003) .......................................................................21

**Statutes**

Delaware Uniform Deceptive Trade Practices Act..................................................5, 13

**Other Authorities**

Case Management Scheduling Order. ECF No. 1160 .....................................................2

Consumer Product Safety Commission, "Keurig Recalls MINI Plus Brewing
  Systems Due to Burn Hazard" (Dec. 23, 2014)
  https://www.cpsc.gov/Recalls/2014/keurig-recalls-mini-plus-brewing-systems ...................24

Fed. R. Civ. P. 11 ........................................................................................................17

Fed. R. Evid. 408 ......................................................................................................4, 23

Fed. R. Evid. 702 .............................................................................................. *passim*

Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse"), Plaintiff JBR, Inc. (d/b/a Rogers Family Company) ("Rogers" or "JBR"), McLane Company, Inc. ("McLane"), and Direct Purchaser Plaintiffs (collectively, "Plaintiffs") hereby request that the Court exclude the testimony of Defendant Keurig Green Mountain, Inc.'s ("Keurig") retained expert witness, Hon. Arthur Gajarsa (Ret.), because Gajarsa's testimony does not satisfy Federal Rule of Evidence 702 or the standards set forth in *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993).

## PRELIMINARY STATEMENT

Consistent with its history of taking untenable litigation positions to maintain its monopoly, Keurig asks this Court to do the unprecedented: to permit a former federal judge to be sworn in as an "expert" on the "law" so that he can opine that Keurig's maintenance of litigations against TreeHouse and Rogers was not "objectively baseless." But, as this Court and others have recognized, legal opinions such as the ones Gajarsa puts forth are within the purview of the court and cannot be offered as expert testimony. *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-md-1628, 2009 WL 3241401, at \*12-13, \*17 (S.D.N.Y. Sept. 30, 2009), *aff'd sub nom. Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010). Plaintiffs are unaware of any case that has permitted a "legal expert" to testify on the "objective basis / baselessness" of a litigation that is the subject of sham litigation claims, as is the case here. And Keurig has failed (despite repeated requests) to cite any support for its positions to Plaintiffs, or to even meet and confer on the issue. And Keurig has informed Plaintiffs that it intends to take the position that it need not even respond to this motion until ten months from now, continuing its litigation misconduct.[1] Keurig's proffering of such testimony here is unprecedented and sanctionable.

---

[1] Recognizing that the Court has allowed *Daubert* motions to be filed "by August 18, 2021," Plaintiffs nonetheless bring this motion now in the hope that Keurig's unjustified multiplication of Plaintiffs' costs in this regard can be

As this Court knows, one set of antitrust claims in this case relates to what Plaintiffs contend are sham litigations that Keurig brought against Sturm ("Sturm Litigation") and Rogers ("Rogers Litigation") in 2010 and 2011, respectively.[2]   In defense of those litigations, Keurig submits the Expert Report of Arthur Gajarsa (the "Gajarsa Report"), attached to the Badini Decl. as Exhibit B, without any basis for doing so and contrary to clear legal precedent.   Plaintiffs cautioned Keurig well in advance of its proffering the Gajarsa Report that what it intended to do was impermissible, advising Keurig that it is well-established that expert witnesses may not opine on the law or offer legal conclusions with respect to a sham litigation claim.   Keurig ignored this warning and has again multiplied Plaintiffs' costs in this litigation.   Gajarsa's Report improperly usurps the role of the Court by opining on the intellectual property law underlying Keurig's claims against Sturm and Rogers in the sham litigations and asserting legal conclusions regarding the purported basis that Keurig had for bringing and maintaining these claims.   As Gajarsa admits, his opinions involve "█████████████████████████████████████████████████████████████ █████████████████████████████████████."   Gajarsa Report ¶ 11 (emphasis added).   Such "expert" testimony is not permitted.

Gajarsa's Report also contains █████████████████████████████████████ ███████████████████████████████████████████████████████████████████

---

brought to a swift end.  Plaintiffs have been, and continue to be, severely prejudiced by Keurig's refusal to withdraw the Gajarsa Report, including, but not limited to, the time and expense spent responding to the improper report.  TreeHouse and McLane have retained Randall R. Rader under protest and solely to protect Plaintiffs' rights in the unlikely event that the Court determines that Gajarsa's opinions are admissible.  *See* July 31, 2020 Email from M. Cui re In re Keurig – Expert Disclosures, January 15, 2021 Declaration of Aldo Badini ("Badini Decl.") at Ex. A.  To the extent the Court does not grant sanctions now in accordance with its inherent powers, Plaintiffs reserve all rights to seek costs and fees incurred in connection with responding to the report, engaging in related expert discovery, and in bringing the instant motion when they file their motions for sanctions on April 19, 2021, as permitted by the Case Management Scheduling Order.  ECF No. 1160.  Moreover, the filing of this motion is without prejudice to Plaintiffs' rights to file *Daubert* motions with respect to one or more of Keurig's additional experts on or before August 18, 2021 pursuant to the Case Management Scheduling Order.  *Id.*

[2] The Sturm and Rogers Litigations are just two examples of Keurig's pattern of sham litigations, including against Kraft Foods.  *See Keurig, Inc. v. Kraft Foods Global, Inc.*, No. 1:07-cv-00017 (D. Del.) (filed Jan. 10, 2007).

████████████████████████.  *See, e.g.*, Gajarsa Report ¶¶ 155-163, 195-198.  His recitation of the record is unhelpful to the trier of fact and his opinions, such as "████████████

████████████████████████████████████████████████████████

████" amount to nothing more than either an opinion of law or an attempt to speculate on the subjective intent of the Rogers and Sturm litigants at the time of the litigations and are improper. *Id*. ¶ 162, *see also* ¶ 13.

Even if Gajarsa's opinions were the proper subject of expert testimony (which they are not), Gajarsa's conclusions fail to delineate a methodology that would allow the court to assess the reliability of his opinions.  A claim for sham litigation typically requires the movant to establish that the litigation was objectively baseless, or that "no reasonable litigant could realistically expect success on the merits," as well as a litigant's subjective motivation for the suit.  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993).[3]  The basis or baselessness of a litigation accused of being a sham is typically measured at the time the suit was commenced, so that failure to establish pre-suit probable cause is indicative of an objectively baseless litigation. *Id*. at 58 ("Our recognition of a sham in [*Cal. Motor*] signifies that ***the institution of legal proceedings 'without probable cause' will give rise to a sham*** if such activity effectively 'bar[s] . . . competitors from meaningful access to adjudicatory tribunals and so . . . usurp[s] th[e] decisionmaking process.'") (citing *Cal. Motor*, 404 U.S. at 512 (1972)) (emphasis added).[4]

Gajarsa admits that he does not consider all relevant evidence regarding objective baselessness and pre-suit probable cause, as he only relies upon the pleadings in the prior

---

[3] Plaintiffs reserve the right to call for the application of the more holistic test set forth in *California Motor Transport Co. v. Trucking Unlimited*, where, as here, a pattern of sham litigations has occurred.  404 U.S. 508, 513 (1972).

[4] At the same time, however, continued maintenance of a sham litigation after suit can also support a sham litigation claim.  *See, e.g.*, *Nabi Biopharmaceuticals v. Roxane Labs., Inc.*, No. 2:05-CV-889, 2007 WL 894473, at *3-4 (S.D. Ohio Mar. 21, 2007) (finding that defendant stated claim for sham litigation where defendant alleged that plaintiff "brought and [ ] continued to maintain" the action despite knowing defendant did not infringe plaintiff's patent).

litigations, wholly ignoring evidence in the record that would contradict his conclusions, including, critically, the *pre-suit* evidence considered to be key by the relevant case law.  To take just a few examples:

- He opines that Keurig had an objective basis for asserting that infringement had occurred when Keurig brought the Sturm Litigation, despite binding admissions by Keurig that the Sturm cups *were not even on the market until a week later*;

- He opines that Keurig had an objective basis for attacking the quality of the Sturm cups when it filed its lawsuit, despite the absence of any evidence that Keurig was even in possession of the cups at the time and admissions by Keurig that any testing of the Sturm cups was not conducted by Keurig until *after the litigation was brought*;

- He opines that Keurig had an objective basis for believing that its brewer patents were not exhausted by the sale of Keurig brewers and that the consumers who used Sturm cups in those brewers were therefore direct infringers of the brewer patents, and that Sturm induced that infringement, without ever citing (much less considering) the fact *that the same law firm that brought the lawsuit against Sturm* ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and

- He opines that Sturm's settlement of the non-patent claims demonstrated that such claims were not objectively baseless in direct disregard of Federal Rule of Evidence 408, in disregard of Keurig's own settlements of numerous actions against it, and in disregard (and without any discussion of) TreeHouse's assertion in this case that such settlement was fraudulently induced by Keurig's fraud on the sham litigation court by Keurig's argument to that court that the Sturm cups were unsafe when, in fact, Keurig had failed to disclose that the brewer Keurig used for testing of the Sturm cups had

been the subject of consumer injury burn complaints for months.

These facts are revelatory of whether Keurig, or any reasonable litigant in possession of such information or lack thereof, would have had probable cause to file suit when it did. Failure to consider these facts makes Gajarsa's methodology and conclusions unreliable. Such unreliable testimony must be excluded and the report should be stricken now to mitigate the harm already done to Plaintiffs who have had no realistic option but to respond to these improper opinions. To mitigate harm to Plaintiffs, Plaintiffs request that the Court order Keurig to respond to this motion within fourteen days, pursuant to Local Rules.

## STATEMENT OF RELEVANT FACTS

On October 1, 2010, Keurig sued Sturm, alleging that consumers who had purchased Keurig brewers infringed two of Keurig's brewer patents and that Sturm induced those consumers to infringe these brewer patents by selling cups compatible with Keurig's single-serve brewers. *See* Complaint, *Keurig Inc. v. Sturm Foods Inc.*, 1:10-cv-000841-SLR-MPT, ECF No. 1 (D. Del. Oct. 1, 2010) (hereinafter, "Sturm Complaint"). Keurig has never cited a case in which a similar theory has been accepted by any court, whether to the court that heard the sham litigation proceedings or to this Court. In addition to Keurig's patent law claims, Keurig also asserted non-patent law claims for trademark infringement, false designation of origin, trade dress infringement, false advertising, dilution, unfair competition under the Delaware Uniform Deceptive Trade Practices Act ("DUDTPA") and Delaware Common Law, and unjust enrichment.[5] Sturm Complaint at 4-14. Plaintiffs allege that Keurig had no objective or subjective basis for bringing any of its claims in the Sturm Litigation. *See, e.g.*, Amended and Supplemental Complaint and

---

[5] Keurig dropped its claims for unjust enrichment in the Second Amended Complaint. *See Keurig Inc. v. Sturm Foods Inc.*, 1:10-cv-000841-SLR-MPT, ECF No. 41 (D. Del. Nov. 23, 2010) ("Sturm Sec. Am. Complaint").

Demand For Jury Trial ¶ 595, *Treehouse Foods, Inc. v. Keurig Green Mountain, Inc.*, No. 1:14-cv-00905-VSB, ECF No. 86 (S.D.N.Y. Dec. 2, 2014).

On November 2, 2011, Keurig also filed a patent infringement lawsuit against JBR. Keurig asserted a design patent against JBR even though JBR's OneCup product is shaped completely differently from the Keurig design claimed in the patent. *Keurig, Inc. v. JBR, Inc.*, No. 1:11-cv-11941-FDS, 2013 WL 2304171, at *2 (D. Mass. May 24, 2013) ("Rogers Summary Judgment Order"); *see also* Complaint ¶¶ 6-11, *Keurig, Inc. v. JBR, Inc.*, No. 1:11-cv-11941-FDS, ECF No. 1 (D. Mass. Nov. 2, 2011) ("Rogers Complaint"). Keurig also asserted two brewer utility patents against JBR. *Keurig, Inc. v. JBR, Inc.*, 2013 WL 2304171, at *9; *see also* Rogers Complaint ¶¶ 12-27. Critically, Keurig's lawsuit against JBR shared the same utility patent infringement theory as Keurig's lawsuit filed against Sturm in 2010. *See Keurig, Inc. v. JBR, Inc.*, 2013 WL 2304171 at *9-10; Sturm Sec. Am. Complaint ¶¶ 7-28. Given that the JBR product users (just like the Sturm product users) had purchased the Keurig brewers, the users had a legal right to use unlicensed cups in the brewers given that Keurig admittedly had not imposed any post-sale use restrictions when it sold its brewers. *See Keurig, Inc. v. JBR, Inc.*, 2013 WL 2304171, at *14. Keurig's litigation against JBR had been pending less than a year when Sturm easily obtained summary judgment of non-infringement in the District of Delaware in September 2012. *See Keurig, Inc. v. Sturm Foods, Inc.*, No. 1:10-cv-000841, 2012 WL 4049799, at *4-6 (D. Del. Sept. 13, 2012) ("Sturm Summary Judgment Order").

When the Delaware District Court decision issued, JBR immediately sought to avoid further litigation expense by offering to stay the JBR matter pending Keurig's appeal of the Sturm Summary Judgment Order. First Amended Complaint ¶ 164, *JBR, Inc. v. Keurig Green Mountain, Inc.*, No. 14-cv-04242, ECF No. 83 (S.D.N.Y. Dec. 8, 2014) (hereinafter, "*JBR v. Keurig*

Complaint"); Amended Answer ¶ 164, *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 14-md-02542, ECF No. 416 (S.D.N.Y. Feb. 6, 2018) (hereinafter, "*JBR v. Keurig* Answer"). Keurig instead chose to continue its baseless and expensive litigation of the identical legal issue that it had just lost in the Sturm Litigation. *JBR v. Keurig* Complaint ¶¶ 164-167; *JBR v. Keurig* Answer ¶¶ 164-167.

Keurig's decision not to stay the case after the Sturm Summary Judgment Order forced JBR to file summary judgment motions on the issue of non-infringement. Keurig's decision to simultaneously pursue discovery forced JBR to incur needless expense on defending discovery motions and defending against 15 depositions, none of which had relevance to the outcome of the case. *JBR v. Keurig* Complaint ¶¶ 164-167; *JBR v. Keurig* Answer ¶¶ 164-167. Judge Saylor granted summary judgment in JBR's favor. *See Keurig, Inc. v. JBR, Inc.*, 2013 WL 2304171. Finally, Keurig insisted on appealing the Rogers Summary Judgment Order to the Federal Circuit and not staying the matter pending the outcome of the Sturm appeal, forcing JBR to spend money in defending Keurig's appeal. *JBR v. Keurig* Complaint ¶ 169; *JBR v. Keurig* Answer ¶ 169.

All of this expensive and distracting litigation after the Sturm Summary Judgment Order could have been avoided with a simple stipulation. Notably, in the JBR Litigation, Keurig did not rely on any new or different case law beyond the controlling law that was the basis for the Delaware District Court's decision because there was no new law that would provide any likelihood of changing the outcome. In short, Keurig needlessly proceeded with a litigation against JBR knowing the inevitable losing outcome, knowing the absence of controlling legal support, and knowing the needless expense that the litigation (particularly the summary judgment motion, discovery, and appeal briefing) would generate.

In this case, consistent with the parties' agreed-upon protocol in the instant litigation, Keurig first disclosed Gajarsa as an expert on July 1, 2020, in advance of when Keurig's expert reports themselves were scheduled to be served on December 7, 2020.  *See* Badini Decl. Ex. C (July 1, 2020 Letter from C. L. Malm to Plaintiffs re: Expert Identification).  Keurig indicated that Gajarsa was expected to offer testimony regarding the "[a]lleged objective baselessness of Keurig's prior claims against TreeHouse and JBR."  *See* Badini Decl. Ex. D (July 2, 2020 Letter from C. L. Malm to Plaintiffs re: Expert Identification Supplement).  Shortly thereafter, at Plaintiffs' request, the parties participated in a meet and confer regarding Keurig's disclosure of Gajarsa and the purported basis for his testimony.  During the meet and confer, Plaintiffs asked for clarification as to the expected nature of Gajarsa's testimony, given that objective baselessness is a question of law, and asked for any authority Keurig had that suggested otherwise.  Badini Decl. ¶ 4.  Keurig failed to identify any legal authority for the proffered testimony of Gajarsa.  *Id*.

On December 7, 2020, as scheduled, Keurig submitted the Gajarsa Report.  In his report,

██████████████████████████████████████████████████████████████

██████████████████████████████████████ Gajarsa Report ¶ 11. ██████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ *Id*.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████   *See* Gajarsa Report at Ex. B.  Indeed, he does not indicate that he ever considered evidence set forth in these transcripts that contradict his opinions.



Gajarsa concludes that, based on his view of the law at the time, ████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* §§ IV.C.-D.  In so concluding, ████████████████ ████████████████████████████████████████ *Id.* § IV.C.3.  In addition, ████████████████████████████████████████████ ████████████████████████████████. *Id.* § V.B.-C.  As to the non-patent claims, ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ *Id.* ¶ 144.  Gajarsa then posits that the fact that ████████████████████████████████████████ ████████████████████████████████████████

████. *Id.* ¶ 154.

After reviewing the Gajarsa Report, Plaintiffs' apprehension that Gajarsa would simply be offering inadmissible opinions of law was realized.  Accordingly, Plaintiffs asked Keurig to voluntarily withdraw the report given that the proffered testimony is clearly inadmissible, going to questions of law and not related to any scientific or expert field of study.  Badini Decl. Exs. E and F (Email chain between L. Malm and L. Duxstad re: In re Keurig – Gajarsa Report).  Keurig refused to withdraw the report and refused to provide any case law or authority for the purported basis of Gajarsa's testimony.  Badini Decl. Ex. F.  Keurig also repeatedly rebuffed Plaintiffs' requests for a meet and confer regarding the report before bringing this motion.[6]  *Id.*  To date,

---

[6] On Jan. 15, 2021, Keurig agreed to meet and confer, pursuant to this Court's Individual Rules & Practices in Civil Cases 5.B., regarding the Plaintiffs' anticipated request to seal documents submitted in connection with this motion that Keurig has designated as highly confidential.  However, Keurig has consistently refused to meet and confer regarding the propriety of Gajarsa's Report.

Keurig has failed, despite repeated requests, to provide any legal authority permitting expert testimony on the "law" in support of the supposedly "objective basis" of an alleged sham litigation.

## STANDARD OF LAW

Gajarsa's testimony is not admissible because it fails to meet the requirements of Federal Rule of Evidence 702 ("Rule 702").  Under Rule 702, an expert opinion will only assist the trier of fact if (1) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based upon sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) the witness has "reliably applied the principles and methods to the facts of the case."[7]  Fed. R. Evid. 702; *see also Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (holding that the expert must be qualified and his opinion must pass both "the relevance and reliability inquiries").

Rule 702 requires the court to perform a robust gatekeeping function to exclude any expert opinion that fails any of the standard's three prongs—qualifications, reliability, and helpfulness. *Daubert*, 509 U.S. at 589-90, 592-93; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying the gatekeeping function to all proffered expert testimony); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) ("[T]he district court has a 'gate-keeping' function under Rule 702—it is charged with the task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand.") (internal citations omitted).  In performing this gatekeeping function, the Second Circuit has instructed that a "district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the

---

[7] The burden of laying the proper foundation for the admission of expert testimony rests with the party offering that testimony, who must establish the three prongs of the *Daubert* inquiry by a preponderance of evidence.  *See Daubert*, 509 U.S. at 592 n.10; *United States v. Apple, Inc.*, 791 F.3d 290, 334-35 n.24 (2d Cir. 2015).

expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos*, 303 F.3d at 267.

## ARGUMENT

### I.    Gajarsa's Report Should Be Excluded as It Contains Purely Legal Opinions That Are Not Helpful to the Trier of Fact

The purpose of Rule 702 is to admit expert testimony that is "helpful" to the trier of fact. Fed. R. Evid. 702; *United States v. Schatzle*, 901 F.2d 252, 257 (2d Cir. 1990) (finding expert testimony may be excluded "under Federal Rule of Evidence 702 when it is not helpful to the jury"). "Expert" testimony, such as Gajarsa's, that is within the scope of the expertise of the court or other trier of fact is not helpful to aid the trier of fact and should be excluded.

#### A.    Gajarsa Does Not Purport to Have Any Expertise in a Scientific or Technical Field

As an initial matter, Gajarsa does not indicate the scientific or technical field in which he purportedly is an expert, as required by *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). It is a central tenet of *Daubert* and its progeny that experts must have some specialized knowledge. Gajarsa's failure to claim any expertise that is recognized by the case law mandates exclusion of his proffered testimony. *See United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) ("To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience or skill with the subject matter of the proffered testimony.").

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████. Gajarsa Report ¶¶ 3, 7.  Based on this work experience, Gajarsa proffers opinions and testimony with respect to the "law" relating to various patent infringement, trademark, and false advertising claims as asserted by Keurig in the Sturm and Rogers Litigations.

However, there is no authority recognizing this as an area of expertise; this is not surprising, as the law is the exclusive province of the court. *See Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1997) (noting that it would have been impossible to make witness's testimony admissible by qualifying him as an "expert in contract law" because it is for the judge, who possesses specialized legal knowledge, to instruct the jury as to applicable legal principles); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) ("[C]ourts exclude expert testimony that provides legal opinions, legal conclusions, or interprets legal terms; those roles fall solely within the province of the court.") (quotations and citations omitted); *Del Monte*, 2009 WL 3241401, at *12-13 (finding expert's testimony regarding defendant's sham litigation and patent misuse did not "involve technical issues (relating to patents) for which his expertise might assist the trier of fact"). This consistent case law shows that legal opinions are not permitted as "expert" testimony.[8] And we are certainly not aware of any instance where such "legal" expert testimony has been permitted to rebut a sham litigation claim.

With respect to his opinions regarding the non-patent claims in the Sturm Litigation, Gajarsa fares even worse. Gajarsa does not even claim "legal" expertise with respect to these claims (although such "expertise" would not be judicially cognizable as such).[9] Therefore, his non-patent claim opinions are excludable on that basis alone.

---

[8] Keurig cannot rely upon the inapplicable cases that have permitted limited expert testimony on the **procedures** involved in obtaining a patent where such procedures were at issue in the litigation. *See, e.g., Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000) (allowing testimony regarding "general procedures involved in the patent application process" because it "may be helpful to the jury"); *see also W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. 11-515, 2015 WL 12815314, at *3 (D. Del. Nov. 20, 2015) (allowing expert testimony "so long as the testimony clearly related to the ins and outs of internal PTO practices and procedures"); *Nisus Corp. v. Perma-Chink Systems, Inc.*, No. 3:03-CV-120, 2005 WL 6112992, at *4 (E.D. Tenn. May 27, 2005) ("Expert testimony regarding general procedures of the patent application process may be helpful to a jury and is therefore admissible."). No issue in the present litigation implicates the practices or procedures of the Patent and Trademark Office ("PTO") and, in any event, ████████████████████████████████████████████████████████████████ Gajarsa Report ¶¶ 3-7.

[9] As set forth in his report, ████████████████████████████████████████████████████████████████████████████ Gajarsa Report ¶ 6. Gajarsa does not purport to have any expertise whatsoever

In short, Plaintiffs are unaware of any case that has recognized experience in a field of law as a scientific or technical field of "expertise" for *Daubert* purposes and Keurig has failed to cite any to Plaintiffs.  As such, Gajarsa's testimony should be excluded.

### B.  *Gajarsa's Testimony Solely Consists of Inappropriate Legal Opinions*

Putting aside the fact that this Court's recognition of an expertise in a specialized area of the "law" for purposes of expert testimony to rebut a sham litigation claim would be unprecedented, Gajarsa's testimony should also be excluded on the independent basis that legal opinions are not the proper subject of expert testimony.

Testimony as to applicable legal principles and legal opinions usurps "the role of the trial judge in instructing the jury as to the applicable law" and runs the risk of jury confusion.  *United States v. Grote*, 961 F.3d 105, 121 (2d Cir. 2020) (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)); *see also United States v. Scop*, 846 F.2d 135 (1988).  Courts in this Circuit have consistently held that statements or opinions embodying legal conclusions exceed the permissible scope of expert testimony under the Federal Rules of Evidence.  *Nimely*, 414 F.3d at 397 (2d Cir. 2005); *United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint*, 34 F.3d 91, 96 (2d Cir. 1994) ("It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions."); *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *Thomsen v. Kefalas*, No. 15-CV-2668, 2018 WL 1508735, at *18 (S.D.N.Y. Mar. 26, 2018) ("It is well-settled in this Circuit that expert opinions as to the interpretation and application of domestic

---

in litigating or adjudicating non-patent law claims for trademark infringement, false designation of origin, trade dress infringement, false advertising, dilution, and unfair competition under DUDTPA and Delaware Common Law.  *See id.* ¶¶ 3-10.

law are inadmissible."); *Great American Ins. Co. v. USF Holland Inc.*, 937 F. Supp. 2d 376, 383 (S.D.N.Y 2013) (excluding the expert testimony of an attorney whose opinions "essentially set forth his view as to the ultimate legal conclusions" the court should reach, as this type of opinion "usurp[s] the role of the Court and fact finder"); *Inventio Ag v. Otis Elevator Co.*, No. 06 Civ. 5377, 2011 WL 3359705, at *2 (S.D.N.Y. June 23, 2011) (excluding patent law expert because judge did not "allow lawyers other than [himself] to explain the law to the jury, no matter their credentials").

And the Second Circuit is not alone. Without exception, all other Circuits follow the same principle.[10] Thus, what Keurig is proposing is unprecedented.

This Court's decision in *Del Monte*, which specifically addressed the scope of expert testimony related to objective baselessness in the context of sham litigation claims, is instructive. 2009 WL 3241401, at *12-15.[11] In *Del Monte*, the plaintiffs retained an expert to address three

---

[10] *See, e.g.*, *N. Heel Corp. v. Compo Indus., Inc.*, 851 F.2d 456, 468 (1st Cir. 1988) (affirming trial court's exclusion of expert testimony on the law as such testimony would "not have assisted the trier of fact," and the court was "the arbiter of the law"); *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3rd Cir. 2006) ("[A]n expert witness is prohibited from rendering a legal opinion."); *Teague v. Bakker*, 35 F.3d 978, 993 n.21 (4th Cir. 1994) ("Expert testimony as to the proper interpretation of applicable domestic law is inadmissible."); *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) ("Neither rule [702 or 704] permits expert witnesses to offer conclusions of law."); *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 593 (6th Cir. 2014) (finding that district court acted within discretion by excluding expert report that recited legal principles "which is not appropriate expert testimony"); *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) ("Rules 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case.") (internal quotations and citation omitted); *Southern Pine Helicopters, Inc. v. Phoenix Aviation Mgrs., Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible."); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (holding that "matters of law for the court's determination" were "inappropriate subjects for expert testimony"); *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988) (expert's testimony on issues of law inadmissible); *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128-29 (11th Cir. 2018) ("[Q]uestions of law are not subject to expert testimony."); *Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) (holding that expert testimony "that consists of legal conclusions cannot properly assist the trier of fact" and "is not otherwise admissible"); *Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1383-84 (Fed. Cir. 2010) (holding that it was not abuse of discretion for trial court to exclude expert testimony related to "issues of law").

[11] *La. Wholesale Drug Co. v. Sanofi-Aventis* also directly addressed the scope of expert testimony related to objective baselessness. No. 07-cv-7343, 2009 WL 2708110 (S.D.N.Y. Aug. 28, 2009). In *La. Wholesale Drug Co.*, the plaintiffs brought a claim on the basis that the defendants repeatedly filed citizen petitions with the U.S. Food and Drug Administration ("FDA"), which were alleged to be shams. No expert opinions on what the "law" was were offered by the parties or permitted by the Court. *Id.* at *4-7. Rather, expert testimony was permitted solely with respect to the policies and practices of the FDA with regard to citizen petitions. *Id.* at *5. As noted in Section I, *supra*, no issues

topics, including patent practices and procedures in the United States PTO, the defendant's alleged

sham litigations, and the defendant's alleged misuse of the relevant patent in threat letters asserting

infringement of the patent at issue. *Id.* at *12-13. The *Del Monte* court excluded all proffered

expert testimony on sham litigation and patent misuse, finding that these constituted legal opinions

that were within the purview of the court. *Id.* In so holding, the Court noted that the expert's

testimony not only "impinge[d] upon the Court's role" but also appeared to "usurp the role of the

jury, for example in attributing subjective motivations to the parties." *See id.* (citing *Okland Oil

Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) ("[A]n expert may not state his or her

opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law

to the facts"); *Motown Prods., Inc. v. Cacomm, Inc.*, 668 F. Supp. 285, 288 (S.D.N.Y. 1987) ("In

this Circuit . . . the expert testimony of an attorney as to an ultimate issue of domestic law or as to

the legal significance of facts is inadmissible."), *rev'd on other grounds*, 849 F.2d 781 (2d Cir.

1988); *Aventis Env't Science USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 516 (S.D.N.Y. 2005);

*VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 428 n.4 (W.D. Pa. 1998) ("[L]ack of

objective baselessness is not the sort of issue that lends itself to expert testimony under Fed. R.

Evid. 702 and 704."); *Ideal World Mktg., Inc. v. Duracell, Inc.*, 15 F. Supp. 2d 239, 244 n.2

(E.D.N.Y. 1998).

Accordingly, courts in this Circuit will reject expert testimony, such as the testimony that

Gajarsa provides, as to the legal regime applicable to patents (or otherwise underpinning the

allegedly sham lawsuit), the scope of the patent, and why the lawsuit was or was not a sham. *See

Del Monte*, 2009 WL 3241401, at *12-13; *La. Wholesale Drug Co.*, 2009 WL 2708110, at *4-7.

---

relating to PTO practices and procedures are implicated in this case and, even if they were, Gajarsa has not proffered
any expertise in that area.

In other words, the expert opinion must not delve into an analysis of whether the litigation was objectively baseless.  *See Del Monte*, 2009 WL 3241401, at *12-13.

The Gajarsa Report leaves no doubt that he is giving purely legal opinions as to the purported objective basis for Keurig's prior litigations.  These improper opinions permeate the entire report.  *See* Badini Decl. Ex. B.  To take just a few examples, Gajarsa states the following:



- ██████████████████████████████████████████
  ██████████████████████████████████████████
  ██████████████████████     Gajarsa Report ¶ 11 (emphasis added).

- ██████████████████████████████████████████
  ██████████████████████████████████████████
  *Id.* ¶ 12.

- ██████████████████████████████████████████
  ████████████████████████████     *Id.*

- ██████████████████████████████████████████
  ██████████████████████████████████████████
  ██████████████████████████████████████████
  █████████████     *Id.* ¶ 52.

- ██████████████████████████████████████████
  ██████████████████████████████████████████
  ██████████████████████████████████████████
  ██████████████     ████████████████████████
  ████████████     *Id.* ¶ 55.

- ██████████████████████████████████████████
  ██████████████████████████████████████████
  ██████████████████████████████████████████
  ██████████████████████     *Id.* ¶ 56.

- ██████████████████████████████████████████
  ██████████████████     *Id.* ¶ 95.

- ██████████████████████████████████████████
  ██████████████████████████████████████████
  *Id.* ¶ 105.

- ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ██████████████ *Id.* ¶ 191.

- ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ████████ *Id.* ¶ 195.

- ██
  ██████████████████████████████████████████ *Id.* ¶ 198.

In addition, Gajarsa devotes ***over five paragraphs*** to a ████████████████████████

████████████████████████ *Id.* ¶¶ 60-64.  Similarly,

████████████████████████████████████████████████████

████████████████████████████████████████████████████. Yet,

Judge Gajarsa devotes ***three pages*** to it.[12] *Id.* ¶ 172-176.

Gajarsa's opinions, which clearly usurp the Court's role by opining on patent law and concluding that Keurig had an objective basis to bring the Sturm and Rogers Litigations, must therefore be excluded.

### C.   *Gajarsa's Review of the Litigation Records Is Not Helpful to the Trier of Fact*

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████. *See, e.g.,*

Gajarsa Report ¶¶ 155-163, 195-198.  Statements that it ████████████████████

████████████████████████████████████████████████████

---

[12] In further support that Gajarsa's Report solely reflects pure legal opinion, ████████████████████ Gajarsa Report ¶ 11.  As discussed further *infra*, this violates the principle that even otherwise admissible expert opinions (of which this is not one) must be tied to the facts of the case.  *See* Section II.

██████████████████████████████████████████ are an improper attempt to

opine on the subjective motivations of the Sturm litigants during the litigation, ████████████

████████████████████████████████████████████████████

██████████████████████████████ Gajarsa Report ¶¶ 115, 156.  As this Court

explained in *Del Monte*, it is impermissible for an expert to "usurp the role of the jury, for example

in attributing subjective motivations to the parties."   2009 WL 3241401, at *12-13; *see also*

*Aventis*, 383 F. Supp. 2d at 516 (excluding written reports and cautioning experts not to testify as

to a party's intentions or rationales for past decisions at trial).

Gajarsa's pronouncements of what is "important" is also an impermissible attempt to

establish the legal relevance of facts.  *See Motown*, 668 F. Supp. at 288 (testimony as to the "legal

significance of facts is inadmissible."); *Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*,

No. 13CV7639, 2016 WL 4098564, at *4 (S.D.N.Y. July 28, 2016) (excluding expert declaration

regarding the legal significance of certain facts in trademark law where the declaration was "clearly

a work of legal advocacy rather than an expert opinion").

The portions of Gajarsa's report that do not contain improper commentary on the import

of certain motions or lack thereof are merely a recitation of the factual record.  There is no benefit

to the jury in providing the veneer of expertise to this information, and this type of recitation of

facts is properly provided by counsel during opening statements, closing arguments, or proposed

findings of fact.  *See Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-cv-8645, 2018 WL 1889763,

at *4 (S.D.N.Y. 2018) ("Acting simply as a narrator of the facts does not convey opinions that are

based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable

methodology.  Similarly, experts may not 'opine on a party's state of mind.'"); *In re M/V MSC

Flaminia*, No. 12-cv-8892, 2017 WL 3208598, at *7-9 (S.D.N.Y. July 28, 2017) (excluding expert

testimony that constituted a "factual narrative" and "assembly embedded with advocacy" as improper and unhelpful to the court); *United States ex rel. Dyer v. Raytheon Co.*, No. 08-10341, 2013 WL 5348571, at *12-13 (D. Mass. Sept. 23, 2013) (excluding an expert opinion which provided nothing beyond a factual recitation of the underlying litigation as it "adds nothing to [the expert's] opinion"); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("It is well settled that expert testimony is unnecessary in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them'" as are expert witnesses) (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)).

In sum, Gajarsa's recitation of the history of the Sturm and Rogers Litigations and his conclusions as to the litigant's subjective intent and motivations, and the legal import of various facts, are inappropriate expert testimony and must be excluded.

## II.    Gajarsa's Opinions Are Wholly Unreliable as He Does Not Purport to Apply Any Methodology and Admittedly Failed to Consider the Facts of the Case

Putting aside Gajarsa's improper posture as an expert opining on purely legal issues, his testimony should be excluded as unreliable.  Rule 702 requires that expert testimony be the result of reliable principles and methods, applied reliably to the facts of the case.  *See Daubert*, 509 U.S. at 589.  Gajarsa does not disclose any commonly recognized expert methodology in this case. Moreover, to the extent Gajarsa does apply any testable methodology to the facts of the case, he effectively concedes that he did not apply his opinions to the facts of the case, as he freely admits that ██████████████████████████████████████████████████████████ ██████  Gajarsa Report ¶ 11.  In other words, Gajarsa's methodology and opinions do not "fit" the facts of this case.

Gajarsa's opinions should be excluded because he does not purport to apply any reliable or testable methodology to the facts of the case.  *Scentsational Techs.*, 2018 WL 1889763, at *3

("[C]onclusory opinions—often referred to as ipse dixit—fail to provide a methodology that would allow a court to assess reliability . . . [and] are therefore excludable on that basis."); *Turrentine v. Bell Canada*, No. 98-7942, 1999 WL 220146, at *1 (2d Cir. Apr. 13, 1999) ("Given the paucity of detail explaining what methodology [the expert] employed in reaching his conclusion . . . it was not an abuse of discretion for the district court to exclude his testimony as to causation.") (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)). ████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ Nowhere does he provide any description of any purported "method" he used to arrive at his opinions.  As such, Gajarsa's *ipse dixit* opinions should be excluded.

In any event, any purported methodology does not fit the facts of the case as Gajarsa admits that he purposefully did not consider the record of relevant facts of the case that were indicative of whether Keurig, or any reasonable litigant, could have realistically expected success at the time that Keurig filed suit.  Fed. R. Evid. 702 (requiring that expert testimony be "based upon sufficient facts or data [and] applied . . . reliably to the facts of the case."); *see also Tin Yat Chin*, 371 F.3d at 40; *Macaluso v. Herman Miller, Inc.*, No. 01-cv-1146, 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005).  The Supreme Court precedent is clear that a plaintiff needs probable cause to ***institute*** a legal proceeding and thus must have probable cause ***before*** filing the action.  *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 58 (citing *Cal. Motor Transp.*, 404 U.S. at 512).  Yet, as Judge Gajarsa admits, ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████."  Gajarsa Report ¶ 13.  He fails to cite a single produced document or single deposition transcript in the entire body of his report, conspicuously

ignoring facts that indicate whether a reasonable litigant in Keurig's shoes would have had probable cause to file suit when it did.[13]  Opinions cannot, as is the case here, be rendered in a factual vacuum.

Under Rule 702, a court must examine "whether expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702 and quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)); *see also Amorgianos*, 303 F.3d at 265 ("[T]he Supreme Court has made clear that the district court . . . is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'").  Indeed, it is the role of an expert to consider the facts of the case.  Fed. R. Evid. 702 (requiring expert witness to apply reliable principles and methods "to the facts of the case"); *In re Rezulin Products Liab. Litig.*, 369 F. Supp. 2d 398, 419-22 (S.D.N.Y. 2005) (noting that Supreme Court and Second Circuit precedent require expert's testimony to "fit" the facts of the case).  As such, courts routinely recognize that where an expert fails to review and acquaint himself with all the relevant facts of the case upon which he is purportedly opining, the opinion is inadmissible.  *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, No. 1:00-1898, 2008 WL 2607852, at *5 (S.D.N.Y. July 1, 2008) (expert could not "reliably testify" because he failed to "consider . . . all the available evidence"); *Brazier v. Hasbro, Inc.*, No. 99-cv-11258, 2004 WL 515536, at *7 (S.D.N.Y. Mar. 16, 2004) (holding that expert's "opinion would have to be unreliable and speculative because it lacks a factual basis" where expert reviewed only limited evidence that failed to support his conclusion); *Wurtzel v. Starbucks Coffee Co.*, 257 F. Supp. 2d 520, 526

---

[13] While Gajarsa includes certain deposition transcripts in Exhibit B to his report, Gajarsa fails to cite a single snippet of testimony in support of any of his opinions.  Consequently, he never explains how any such testimony relates to his opinions.

(E.D.N.Y. 2003) (excluding expert where "[h]e never met with the Plaintiff, did not review the Complaint, discovery responses or deposition transcripts").

Gajarsa's failure to connect his analysis to the relevant facts of the case, and the inevitable resultant lack of relevance and reliability, is exhibited throughout his report. █████████

████████████████████████████████████████████████████████████████

███ Gajarsa Report ¶¶ 12-13.  However, even though lack of probable cause in instituting a litigation is indicative of a lack of objective basis, Gajarsa does not consider evidence that Keurig *was not even in possession of Sturm's cups in advance of filing the Litigation*.  For example, Keurig executive Mark Wood stated in a sworn declaration in the Sturm Litigation that Sturm's cups did not become available for sale to retail consumers until October 7, 2010—six days *after* the lawsuit was filed on October 1, 2010.  Badini Decl. Ex. G, Decl. of Mark C. Wood ¶ 24, *Keurig, Inc. v. Sturm Foods, Inc.*, 1:10-cv-000841, ECF No. 13 (D. Del. Oct. 18, 2010).  Indeed, testifying as Keurig's corporate representative in the instant litigation, Mr. Wood acknowledged that he was unaware of any individual who put a Sturm cup through a Keurig brewer prior to October 1, 2010.  Badini Decl. Ex. H, Dec. 3, 2019 Mark Wood 30(b)(6) Dep. 41:15-42:4.  In such a situation where Keurig did not have possession of Sturm's cups when it filed suit, Mr. Wood, again testifying as Keurig's corporate representative, admitted that Keurig would have *no basis to bring its claims*.  Badini Decl. Ex. H, Dec. 3, 2019 Mark Wood 30(b)(6) Dep. at 39:12-22 ("I think until the product was provided to consumers, the infringing action wouldn't have occurred.").  Gajarsa wholly ignores this damning admission by Keurig in reaching his conclusions.

Similarly, Gajarsa concludes that Keurig had an objective basis to bring the Sturm Litigation because the patent exhaustion doctrine did not apply.  However, in reaching this conclusion, Gajarsa deliberately ignores ████████████████████████████████████

███████████████████████████████████████ *See* Badini Decl. Ex. I (KGM00840594); Badini Decl. Ex. J (KGM00840683).  Keurig's theory in the Sturm Litigation was that the consumers who purchased Keurig brewers were the infringers of two of Keurig's brewer patents and that TreeHouse was guilty of inducing infringement by selling its cups to those consumers.  *See* ECF 41.  Yet, months prior to filing the Sturm Litigation, ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████.  *See* Badini Decl. Exs. I and J.  ████████

██████████████████████████████████████████████

████████████████████████████████  *See* Badini Decl. Exs. I and J. Keurig has likewise admitted that, prior to filing suit against Rogers, its employees were aware of the specific patent exhaustion doctrine cases that the District Court ultimately relied upon in granting Rogers' summary judgment motion.  *See* Badini Decl. Ex. K (Keurig Green Mountain, Inc.'s Resps. and Objs. to JBR Inc.'s Amended RFAs Nos. 7, 8, and 9, dated Nov. 23, 2020).  In other words, Keurig was aware of the state of the case law at the outset of the Rogers litigation but still persisted in pursuing the infringement theory despite no change in the controlling law that would give any basis to assume a more favorable outcome for Keurig.

Finally, █████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████.  Gajarsa Report ¶¶ 145-54.  Not only does this ignore Rule 408, which Keurig's own counsel was reminded of in the instant litigation,[14] but Gajarsa also ignores

---

[14] July 15, 2019 Hr'g Tr. 84:21-85:3, ECF No. 643 ("MS. BRANNON: You're right, Your Honor.  The last time we brought this motion, the litigation was still pending.  The Suchanek litigation was still pending.  Treehouse recently settled it on the eve of trial after eight years of litigation for $25 million.  THE COURT: And what does Rule 408 tell us about settlements?  MS. BRANNON: Yes, Your Honor. . . .").

evidence that Sturm was fraudulently induced to enter into the settlement agreement.[15]   In connection with its preliminary injunction motion, Keurig submitted the results of a test of 30 Sturm cups, demonstrating that several of the cups had failed to brew properly in the Keurig brewer.  However, apart from the fact that this test was conducted *after* the lawsuit was brought and Keurig accused Sturm's cups of having quality problems, Keurig failed to inform the court or Sturm that one of the brewers used in this test was the Keurig B31 brewer (the "Mini-Brewer"), which had been the subject of consumer burn injury complaints for at least nine months prior to the Sturm Litigation and ultimately resulted in the second largest fine to Keurig in CPSC history. *See* Badini Decl. Ex. L (Feb. 14, 2020 Wood (Keurig) 30(b)(6) Dep. 453:2-11); Consumer Product Safety Commission, "Keurig Recalls MINI Plus Brewing Systems Due to Burn Hazard" (Dec. 23, 2014) https://www.cpsc.gov/Recalls/2014/keurig-recalls-mini-plus-brewing-systems.  Keurig has since admitted that *all* of the tested Sturm Portion Packs that had posed so-called safety issues had been brewed in the Mini-Brewer.  Badini Decl. Ex. L (Feb. 14, 2020 Wood (Keurig) 30(b)(6) Dep. 449:4-23).  Gajarsa fails to address any evidence related to Keurig's testing of Sturm's cups and the safety issues with Keurig's Mini-Brewer.

These facts that Gajarsa ignored are precisely the type of evidence that courts have weighed to determine the validity of a party's claim for assessing objective baselessness.  *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183, 2016 WL 7042117, at *19 (D. Minn. July 25, 2016) (evidence types used to show objective baselessness "typically include the patent's holder's history of litigation regarding the specific patent at issue; the patent holder's pre-suit consultations with counsel and experts regarding the validity of the patent at issue; and evidence concerning the extent of the patent holder's investigation of possible infringement of the patent at

---

[15] *See generally* Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Amend at 14-17, ECF No. 991.

issue."); *see also La. Wholesale Drug Co. v. Sanofi-Aventis*, No. 07-cv-7343, 2008 WL 4580016, at *3-5 (S.D.N.Y. Oct. 14, 2008); *In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d 363, 375-76 (S.D.N.Y. 2002). Gajarsa's deliberate ignorance of the complete record of facts in this case led him to make false assumptions regarding the actual facts and issues of the case, thereby rendering all of his opinions unreliable.

Gajarsa's testimony, which does not fit the facts of the case, is therefore inadmissible. *See, e.g.*, *LaBarge v. Joslyn Clark Controls, Inc.*, 242 F. App'x 780, 782 (2d Cir. 2007) (not abuse of discretion to reject expert as not "reliable" and as "not grounded on sufficient facts or data" where, *inter alia*, "expert's basis for his theory was grounded on photographs of the hardware in question . . . but not . . . on any actual vacuum contractors like the part that allegedly failed"); *Barban v. Rheem Textile Sys., Inc.*, 147 F. App'x 222, 223 (2d Cir. 2005) ("The district court did not abuse discretion in rejecting . . . expert testimony as unreliable and speculative" where it found that expert "lacked concrete knowledge regarding many of the assumptions underlying his conclusions"); *Macaluso*, 2005 WL 563169, at *8.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court order that Judge Gajarsa's expert report and testimony be excluded and that the Court issue an order requiring Keurig to respond to this motion within fourteen days.

Dated: January 15, 2021              Respectfully submitted,
       New York, NY

                                     /s/ *Aldo A. Badini*

                                     Aldo A. Badini
                                     abadini@winston.com
                                     Susannah P. Torpey
                                     storpey@winston.com
                                     Kelli L. Lanski
                                     klanski@winston.com

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
(212) 294-4700 (fax)

Dan K. Webb
dwebb@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600

Diana L. Hughes
dhughes@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 615-1700

*Counsel for Plaintiffs TreeHouse*
*Foods, Inc., Bay Valley Foods, LLC*
*and Sturm Foods, Inc.*

Daniel Johnson Jr.
1350 Old Bayshore Highway, Suite 520
Burlingame, CA 94010
(415) 604-4500
dan@danjohnsonlawgroup.com

*Counsel for Plaintiff*
*JBR, Inc. d/b/a Rogers Family Company*

Alexander G. Brown
James C. Grant
Valarie C. Williams
B. Parker Miller
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000
(404) 881-7777 (fax)
alex.brown@alston.com
jim.grant@alston.com
parker.miller@alston.com
valarie.williams@alston.com

26

Steven L. Penaro
ALSTON & BIRD LLP
90 Park Avenue
15th Floor
New York, NY 10016-1387
(212) 210-9400
(212) 210-9444 (fax)
steve.penaro@alston.com

*Counsel for Plaintiff McLane Company, Inc.*

William V. Reiss
David B. Rochelson
Matthew J. Geyer
399 Park Avenue, Suite 3600
New York, NY 10022
(212) 980-7400
wreiss@robinskaplan.com
drochelson@robinskaplan.com
mgeyer@robinskaplan.com

Michael M. Buchman
Michelle C. Clerkin
Jacob O. Onile-Ere
MOTLEY RICE LLC
777 Third Avenue, 27th Floor
New York, NY 10017
(212) 577-0050
mbuchman@motleyrice.com
mclerkin@motleyrice.com
jonileere@motleyrice.com

Robert G. Eisler
Deborah Elman
Julia McGrath
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500
reisler@gelaw.com
delman@gelaw.com
jmcgrath@gelaw.com

*Attorneys for Direct Purchaser Plaintiffs
and Interim Co-Lead Counsel for the
Proposed Direct Purchaser Plaintiff Class*