# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>STURM FOODS, INC.,<br><br>Defendants. | Civil Action No. 1:10-cv-00841-SLR |

**DECLARATION OF MARK C. WOOD IN SUPPORT OF
PLAINTIFF KEURIG, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

I, Mark C. Wood, state:

    1.    I am Vice President, Business Development for Plaintiff, Keurig, Incorporated ("Keurig"). I make this declaration in support of Keurig's motion for a preliminary injunction. I have personal knowledge of the facts set forth below and if called as a witness I could and would testify competently thereto.

    2.    Keurig is a pioneer and leading manufacturer of single-serve brewing systems. Single-serve brewing systems permit users to enjoy freshly brewed coffee one cup at a time while eliminating the inconvenience of grinding beans, measuring coffee, and handling messy filters. Cartridges used in single-serve brewing systems are sealed containers that preserve the freshness of the ground coffee that they contain.

    3.    A typical KEURIG ® branded brewer and cartridge are shown below.

2114321.2



**Typical Keurig Brewer**     **Typical Keurig Cartridge**

4. On its website (www.keurig.com), Keurig explains its single-serve brewing system and the quality and convenience advantages it offers to consumers. Below is a true and correct excerpt from our website, which can be found at http://www.keurig.com/explore-keurig by clicking on the "Brewing System Technology" hot spot.



5. In essence, Keurig's brewers brew a single-serving of fresh roasted and ground coffee inside a KEURIG ® branded cartridge. To brew a cup of coffee, a consumer inserts a KEURIG ® branded cartridge into a KEURIG ® branded brewer. Needles puncture the top and bottom of the KEURIG ® branded cartridge when the consumer closes the handle. After the

2

consumer presses the brew button, the KEURIG ® branded brewing system forces a carefully metered amount of pre-heated water through the KEURIG ® branded cartridge. The brewed coffee flows through the cartridge's filter and out the hole pierced in the bottom of the cartridge.

6. Keurig has invested and continues to invest a great deal of time, money, and effort in designing single-serve brewing systems that brew a coffeehouse-quality cup of coffee each time. Keurig spent nearly $6 million in its fiscal year 2009 and over $11 million in its fiscal year 2010 on research and development to further develop and improve the Keurig brewing system. Keurig invests approximately 12-18 months to develop each new brewer model.

7. Keurig has invested and continues to invest a great deal of time, money, and effort in promoting its KEURIG ® brand and building the reputation associated with that brand. Keurig spent over $35 million in its fiscal year 2009 and approximately $65 million in its fiscal year 2010 promoting the KEURIG ® brand. For example, Keurig conducts in-store and mall demonstration programs and in-store merchandizing, underwrites retailer advertising, and maintains a website ([www.keurig.com](www.keurig.com)) to market and sell its single-cup brewer system. These efforts, along with national television advertising, build KEURIG ® brand awareness nationwide. Keurig also promotes its single-serve brewing system through upscale specialty and department store retailers (such as Macy's, Bloomingdale's, and Bed, Bath, and Beyond), select wholesale clubs (such as Costco, Sam's, and BJ's), and mass merchants (such as Wal-Mart, Target, and Kohl's), on its website, through supermarkets, and through its licensed roasters and authorized distributors. The materials used in these marketing efforts prominently feature the KEURIG ® mark.

8. Keurig has built a reputation for high-quality brewed beverages around the KEURIG ® brand and grown into a leader in the U.S. coffee brewer marketplace. In 2010

Case 1:14-md-02542-VSB-SLC Document 1222-7 Filed 01/15/21 Page 5 of 10
Case 1:10-cv-00841-SLR-MPT Document 19 Filed 10/18/10 Page 4 of 9 PageID #: 221

(through August 2010), KEURIG ® branded brewers were four of the top five best-selling brewers in dollar sales, and Keurig was the #1 overall brewer brand in dollar sales in the U.S. (based on NPD Group, Inc. data).

9. Over 8 million KEURIG ® branded single-serve brewers and more than 7.5 billion KEURIG ® branded cartridges have been sold throughout the United States. Every one of these 8 million or more KERUIG ® branded single-serving brewers and every package of the 7.5 billion or more KEURIG ® branded single-serve cartridges sold in the U.S. prominently displays the KEURIG ® mark.

10. KEURIG ® brand single-serve cartridges retail for approximately 56¢ a cartridge or $10 for a package of 18 cartridges. Sturm beverage cartridges sell for about 44¢ a cartridge or $7.99 for a package of 18 cartridges at Price Chopper.

11. Keurig has built a business with more than $900 million in annual sales around the KEURIG ® brand and its reputation for high-quality brewed beverages.

12. Keurig's parent company, Green Mountain Coffee Roasters, Inc., has a market capitalization of approximately $4 billion. Historically, market analysts have attributed 50-75% of the value of the company to Keurig, implying a $2-3 billion valuation of Keurig – which is built entirely around its KEURIG ® brand.

13. Keurig has been using the KEURIG ® mark on single-serve brewers in interstate commerce for over a decade.

14. Keurig has been using the KEURIG ® mark on single-serve cartridges and the packaging for such cartridges in interstate commerce for over a decade.

15. Keurig has consistently protected its KEURIG ® brand by establishing and enforcing standards to ensure the quality of coffee and the design of cartridges used with its

brewers. For example, cuppers (coffee taste testers) must determine that coffee brewed in KEURIG cartridges using KEURIG brewers tastes equal or superior to coffee made using conventional drip brewing systems. Testing procedures are required to assure that quality remains consistent over the production process. And numerous requirements govern the design of cartridges (ranging from the amount of ground coffee packaged in the cartridge to the specific materials used for cartridge body and lid).

16. All cartridges compatible for piercing by KEURIG brewers (other than the Sturm Foods, Inc. ("Sturm") cartridges at issue in this lawsuit) are, and were historically, produced by Keurig or its sister companies operating under a common parent, Green Mountain Coffee Roasters, Inc., or a Keurig licensee operating under strict manufacturing and quality controls such as those noted above in paragraph 15. However, Keurig and third-parties have offered and do offer reusable cartridges (i.e., the cartridge is not sealed with coffee inside it) for use with KEURIG brewers as detailed in paragraph 17 below.

17. Keurig offers a product called My K-Cup® which is a reusable cartridge that consumers can fill with their own roasted and ground coffee and use in KEURIG ® brand brewers. Third-parties also offer reusable cartridges that allow consumers to fill a cartridge with roasted and ground coffee for use with KEURIG ® brand brewers. Since consumers fill these reusable cartridges with their own roasted and ground coffee, it is clear to them that any beverage quality issues resulting from such use are not associated with Keurig.

18. There has never been a cartridge compatible for piercing by KEURIG ® brand brewers that was not produced by Keurig or a Keurig licensee under strict manufacturing and quality controls by Keurig.

19. Keurig does not offer an instant coffee cartridge.

5

20. Keurig has never offered an instant coffee cartridge.

21. The Sturm cartridges at issue in this lawsuit contain what is commonly known and referred to as "instant coffee." Instant coffee is not freshly brewed coffee but rather is a dehydrated soluble powder that can be mixed with water to yield a coffee-like beverage. When this soluble powder is mixed with hot water, it dissolves into a coffee-like beverage. Instant coffee is not brewed coffee; it is widely thought of as an inferior option to brewed-coffee – a trade-off between quality and convenience.

22. Keurig's ability to overcome that trade-off and provide high-quality brewed coffee with the convenience of Keurig's single-serve brewing system is a key to its market success.

23. Keurig became aware of the Sturm cartridges at issue in this lawsuit on or about September 3, 2010. A buyer for a large retail chain notified Keurig that Sturm was promoting a new instant coffee cartridge for use with KEURIG ® brand brewers. Shortly thereafter, on September 10, 2010, Keurig sent Sturm a letter notifying it of Keurig's concerns regarding these cartridges and the way they were packaged.

24. This buyer for a large retail chain informed Keurig that Sturm had informed the buyer that the cartridges would be available in the retail market in early October 2010. Keurig understands that the Sturm cartridges became available to retail consumers last Thursday, October 7, 2010. It appears that the Sturm cartridges are available in limited locations like certain Price Chopper stores in the Northeast. Keurig understands that an expanded offering through mass-market retailers may be imminent.

25. True and correct images of Sturm cartridge packaging and cartridges are attached to this declaration as Exhibit 1.

26. A buyer for a large retail chain informed Keurig that after sampling coffee made using the Sturm cartridges at issue in this lawsuit using one of Keurig's brewers, the retail chain buyer decided not to carry the Sturm product because it was judged to be of inferior quality.

27. Keurig has not authorized Sturm Foods, Inc. to use the KEURIG ® mark. Keurig has not endorsed or sponsored the Sturm cartridges at issue in this lawsuit. Nor is Keurig in any way affiliated with Sturm. Sturm's use of the KEURIG ® mark is wholly without permission of Keurig.

28. The Sturm Foods, Inc. cartridges at issue in this lawsuit have no use other than in KEURIG ® brand brewers. These cartridges are designed specifically for use with KEURIG ® brand brewers and can only be used with KEURIG ® brand brewers.

29. Numerous kinds of coffee are sold in KEURIG ® brand cartridges, including Green Mountain Coffee®, Caribou Coffee®, Wolfgang Puck® Coffee, Emeril's® Coffee, Newman's Own®, and Tully's Coffee®. True and correct copies of images of packaging used for KEURIG ® cartridges with different kinds of coffee are attached to this declaration as Exhibit 2.

30. The packaging for Sturm's cartridges describe the coffee as "Naturally Roasted." These terms do not suggest that the coffee is freeze-dried, instant coffee. Sturm's cartridge packaging indicates that its coffee is "Soluble and Microground Arabica Coffee," a description that the average consumer, if they understand it at all, would not likely associate with instant coffee.

31. Even more misleading is the package's coffee story. It reads, "we savored it [coffee] in neighborhood coffee shops and diners where the atmosphere was friendly, and the coffee was simply fresh, hot and delicious." This description evokes an image of traditional

7

fresh-brewed coffee. Consumers do not imagine "neighborhood coffee shops" as serving a jar of instant coffee powder and a cup of hot water. The packaging further states that "'Grove Square' coffee recaptures this rich, traditional cup," suggesting a "traditional" cup of coffee – a fresh-brewed cup, not a mixture of soluble, freeze-dried instant coffee powder with hot water.

32. The image below is a portion of the packaging used for KEURIG ® branded Caribou Blend coffee cartridges. An image of the entire package is included in Exhibit 2.



33. The image below is excerpted from an on-line advertisement for KEURIG ® branded cartridges.



I declare under penalty of perjury of the laws of the United States and Delaware that the foregoing is true and correct to the best of my knowledge.

Signed: October 15, 2010

/s/ Mark C. Wood
Mark C. Wood

8

# CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on October 18, 2010, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire [*rhorwitz@potteranderson.com*]
>David E. Moore, Esquire [*dmoore@potteranderson.com*]
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street, 6th Floor
>Wilmington, Delaware 19801

Additionally, I hereby certify that on October 18, 2010, copies of the foregoing document were served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

## BY E-MAIL

>Craig S. Fochler, Esquire *[cfochler@foley.com]*
>Foley & Lardner LLP
>321 N. Clark Street
>Suite 2800
>Chicago, IL  69654-5313

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ *Karen E. Keller*
>Karen E. Keller (No. 4489) [*kkeller@ycst.com*]
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19801
>(302)-571-6600
>
>*Attorneys for Plaintiff Keurig, Incorporated*