# EXHIBIT H

1              UNITED STATES DISTRICT COURT

2             SOUTHERN DISTRICT OF NEW YORK

3                   MDL No. 2542

4             Docket No. 1:14-MD-02542-VSB

5    - - - - - - - - - - - - - - - - - - - - - - x

6    IN RE:  KEURIG GREEN MOUNTAIN

7    SINGLE-SERVE COFFEE ANTITRUST LITIGATION

8    - - - - - - - - - - - - - - - - - - - - - - x

9    30(b)(6) VIDEOTAPED DEPOSITION OF KEURIG GREEN MOUNTAIN

10                Through MARK WOOD

11

12               December 3, 2019

13                  8:43 a.m.

14

15                 Marriott Hotel

16             One Burlington Mall Road

17             Burlington, Massachusetts

18   Reporter:  Rosemary F. Grogan, RPR, CSR No. 112993

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 1 | Q.   Okay.  Do you think it was -- do you attach | 09:23:28 |
| 2 | any significance to the fact that Keurig, according to | |
| 3 | your testimony, obtained the cups before filing the | |
| 4 | lawsuit against Sturm? | |
| 5 | A.   Do I attach any significance -- | 09:23:52 |
| 6 | Q.   Correct. | 09:23:57 |
| 7 | A.   -- to that fact? | 09:23:58 |
| 8 | Q.   Correct. | 09:23:59 |
| 9 | A.   Yes, we had the actual product that was being | 09:24:02 |
| 10 | sold in market to consumers and that provided our | |
| 11 | factual basis for filing the suit. | |
| 12 | Q.   And do you -- and if you hadn't been in | 09:24:15 |
| 13 | possession of the actual product that was sold in the | |
| 14 | market to consumers, would you have had a factual basis | |
| 15 | for filing the suit? | |
| 16 | MS. NEWTON:  Objection as to form; calls for | 09:24:31 |
| 17 | legal conclusion. | |
| 18 | A.   Yeah, I -- I think until the product was | 09:24:39 |
| 19 | provided to consumers, the infringing action wouldn't | |
| 20 | have occurred, and until it was in the marketplace, the | |
| 21 | violation of our trademarks and trade dress could not | |
| 22 | have occurred. | |
| 23 | Q.   Right.  And did you attach any significance to | 09:24:59 |
| 24 | the fact that, according to your testimony, you had | |
| 25 | tested the cups, the 30 cups, I think I heard you say, | |

1    prior to bringing the lawsuit against Sturm?

2         A.   Do I attach any significance?  I do.        09:25:21

3         Q.   What significance?                          09:25:23

4         A.   We were very concerned about the quality of  09:25:25

5    the product and the potential for, first and foremost,

6    harm to consumers, and, secondly, to our reputation, the

7    reputation of our product and our system.

8         Q.   And those tests -- strike that.  Let me start  09:25:46

9    over.

10             That 30-cup test provided you, in your       09:25:51

11   view, with the basis for the concern about the quality

12   of the product and harm to consumers, right?

13        A.   It did.                                      09:26:04

14        Q.   Did you have any basis for questioning the   09:26:06

15   quality of the Sturm product before you conducted that

16   test of the 30 cups?

17        A.   We had concern prior to it knowing how       09:26:20

18   difficult it was to properly manufacture a cup, but we

19   would not have had a factual basis prior to that point.

20        Q.   Okay.  Who made the decision -- we talked a  09:26:32

21   little bit about -- strike that.

22             When was the first time that Keurig          09:26:53

23   became aware that an actual consumer had used a Sturm

24   product in a Keurig brewer?

25        A.   I -- I believe once they were available to -- 09:27:31

```
 1    for sale to consumers, that we -- we would have believed
 2    that that, too, occurred.  So I would say that would
 3    have been during the same month of September of 2010.
 4         Q.   Do you know what consumer first used a Sturm      09:27:52
 5    product in a Keurig brewer?
 6              MS. NEWTON:  By name?  Are you asking for a        09:27:58
 7         name?
 8              MR. BADINI:  Yes.                                  09:28:02
 9         A.   Yeah, I -- I think, as you know, that's           09:28:03
10    virtually impossible to tell.
11         Q.   Do you know what Keurig brewer was used for       09:28:06
12    that first use by a consumer of a Sturm product?
13         A.   Without knowing the consumer, that would also     09:28:17
14    be virtually impossible to tell.
15         Q.   Other than a consumer, meaning somebody who       09:28:22
16    purchased the product at retail or I suppose in an
17    office setting, are you aware of any other individual
18    who was the -- strike that.  Let me start all over.
19              Putting aside consumers who purchased at          09:28:51
20    retail, are you aware of any other individuals who put a
21    Sturm product through a Keurig brewer prior to the time
22    you filed the lawsuit on October 1, 2010?
23              MS. NEWTON:  Other than your client?  Is that     09:29:13
24         the question?
25         A.   Yeah, I -- I don't know how you're defining       09:29:17
```

```
 1   people other than consumers.  I would suspect that

 2   someone at Tree- -- Sturm/TreeHouse brewed a cup at some

 3   point before they were available to consumers.  I would

 4   certainly hope so.

 5        Q.   Okay.  You suspect that, but do you have any         09:29:44

 6   facts suggesting that that was, in fact, the case?

 7        A.   No, but if it wasn't the case, it would be          09:29:54

 8   flagrantly irresponsible of TreeHouse/Sturm not to do

 9   so.

10        Q.   Well, you don't know, for example, whether any      09:30:03

11   tests that Sturm did on its cups on Keurig brewers were

12   even done in the United States, do you?

13        A.   I don't.                                            09:30:15

14        Q.   And if they were done outside of the United         09:30:17

15   States, would they be covered by U.S. patents?

16             MS. NEWTON:  Objection.                             09:30:23

17             I'll caution the witness not to disclose any        09:30:24

18        legal opinion, if you've got one.

19             THE WITNESS:  So are you instructing me not to      09:30:31

20        answer?

21             MS. NEWTON:  No, I'm not.  I'm saying that --        09:30:34

22             THE WITNESS:  Okay.                                 09:30:38

23             MS. NEWTON:  -- answer Mr. Badini, unless it's      09:30:39

24        based on an opinion you got from counsel.

25        A.   So my understanding is if work was done             09:30:45
```