UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
IN RE:                                                      :
                                                            :   14-MD-2542 (VSB)
KEURIG GREEN MOUNTAIN SINGLE-                               :
SERVE COFFEE ANTITRUST                                      :
LITIGATION                                                  :   **ORDER**
                                                            :
*This Document Concerns All Related Actions*    X
------------------------------------------------------------:
                                                            :
TREEHOUSE FOODS, INC., et al.,                              :
                                                            :
                          Plaintiffs,                       :
                                                            :
           -against-                                        :
                                                            :
KEURIG GREEN MOUNTAIN, INC.                                 :
                                                            :
                          Defendant.                        :
                                                            X
------------------------------------------------------------

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/16/2021
```

<u>VERNON S. BRODERICK</u>, United States District Judge:

      Before me are two separate applications related to a discovery related decision issued by Magistrate Judge Sarah L. Cave. (Doc. 1166.) First, Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse"), and JBR, Inc. d/b/a Rogers Family Company ("JBR") (together, with TreeHouse, the "Plaintiffs") object to Magistrate Judge Cave's order denying in part Plaintiffs' motion to contest Defendant Keurig Green Mountain, Inc.'s ("Defendant" or "Keurig") request to claw back portions of two documents that it produced to Plaintiffs but which it now states are protected by attorney-client privilege. (Docs. 1176, 1180.) Second, Defendant objects to the section of Magistrate Judge Cave's order that permits Plaintiffs access to the contested portions of the documents at issue for certain limited uses. (Doc. 1173.) There are also several motions submitted by parties on both

1

sides to seal portions of these motions and accompanying memoranda of law.

For the reasons below, Plaintiffs' discovery objections are OVERRULED, while Defendant's discovery objection is SUSTAINED. The parties' various motions to seal portions of documents related to this discovery dispute are GRANTED.

### I. Discovery Orders

#### A. *Standard of Review*

A magistrate judge's discovery orders are generally considered "nondispositive" of the litigation. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (citations omitted). Accordingly, a district court must affirm such orders unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Progress Bulk Carriers v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 2 F. Supp. 3d 499, 502 (S.D.N.Y. 2014) ("Even where parties file timely objections, district courts only set aside parts of the order that are clearly erroneous or contrary to law."). "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Dem. Rep.*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (citations and internal quotation marks omitted). This standard of review is "highly deferential," *id*. at 511, and "magistrates are afforded broad discretion in resolving discovery disputes," *MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Secs. Inc.*, No. 12 Civ. 7322, 2013 WL 6840282, at * 1 (S.D.N.Y. Dec. 27, 2013) (citation omitted). Additionally, "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge," *Thai Lao Lignite*, 924 F. Supp. 2d at 512, and "[n]ew arguments and factual assertions cannot properly be raised for the first

time in objections to [a magistrate's discovery order], and indeed may not be deemed objections at all," *Khatabi v. Bonura*, No. 10 CIV. 1168 (ER), 2017 WL 10621191, at *5 (S.D.N.Y. Apr. 21, 2017) (citation omitted) (collecting cases). *See also Creighton v. City of New York*, No. 12 CIV. 7454 (PGG), 2015 WL 8492754, at *5 (S.D.N.Y. Dec. 9, 2015) ("Although a district court has the inherent authority to consider further evidence in reviewing rulings on nondispositive matters, such discretion should rarely be exercised in this context, because the district court functionally operates as an appellate tribunal under Rule 72(a).") (internal quotation marks omitted).

### B. *Factual Background and Procedural History*

At issue in this discovery dispute are portions of two emails, essentially identical in nature, in which Keurig employees sent each other quoted legal advice (the "Wolf Greenfield Advice") from a communication sent by Keurig's outside counsel, Wolf Greenfield. (Docs. 1090-1, 1090-2.) Defendant attempted to claw back these portions of the documents pursuant to the amended protective order in this case, (*see* Doc. 496), on grounds that they were protected by attorney-client privilege and were inadvertently disclosed, (*see* Doc. 1096.) Plaintiffs opposed Defendant's claw-back attempt, arguing that the Wolf Greenfield Advice is not protected by attorney-client privilege or, in the alternative, to the extent that it is, the documents fall under the crime-fraud exception such that the privilege does not attach. (Docs. 1088, 1093).

On October 30, 2020, Magistrate Judge Cave issued a discovery order that denied in part and granted in part Plaintiffs' motions to contest Defendant's claw back of the documents. (Doc. 1166.) First, Magistrate Judge Cave determined that the Wolf Greenfield Advice is privileged. (*Id.* at 5–6.) Second, Magistrate Judge Cave found that Plaintiffs had not "demonstrated that the crime-fraud exception applies." (*Id.* at 6–8.) Third, Magistrate Judge Cave determined that

Plaintiffs should still be allowed to use the documents under seal "in connection with (1) expert depositions; (2) summary judgment motions; and (3) TreeHouse's anticipated sanctions motion," with a final determination on the crime-fraud exception's applicability to come at a later date. (*Id.* at 8.)

On November 13, 2020, Defendant submitted an objection to the portion of Magistrate Judge Cave's order that granted Plaintiffs limited use of the documents. (Docs. 1173–75.) On that same date, both TreeHouse (Docs. 1176, 1179) and JBR (Docs. 1180–82) submitted objections to the portions of Magistrate Judge Cave's order regarding privilege and the crime-fraud exception. TreeHouse also submitted a motion for oral argument on its discovery objections. (Doc. 1183.) On November 27, 2020, both TreeHouse (Docs. 1192–93) and JBR (Docs. 1198–99) submitted their responses in opposition to Defendant's objection. Also on that date, Keurig filed its consolidated response in opposition to Plaintiffs' objections. (Docs. 1195–96). TreeHouse (Docs. 1206–07) and JBR (Docs. 1210–11) filed their reply memoranda of law on December 4, 2020, as did Defendant, (Doc. 1208).

During the briefing, the parties moved to seal portions of the various memoranda of law filed in connection with the instant dispute and Plaintiffs' recently filed *Daubert* motion, on grounds of privilege and confidentiality. (Docs. 1172, 1177–78, 1184, 1191, 1194, 1197, 1203, 1205, 1209, 1212, 1219, 1224.)

### C. *Discussion*

#### 1. The Magistrate's Order Did Not Err in Determining that the Documents at Issue Are Attorney-Client Privileged

Attorney-client privilege, in general, "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d

4

Cir. 2011). This privilege "attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client." *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 161 (S.D.N.Y. 2014) (internal quotation marks omitted).

"[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation;" consequently, "the dissemination of confidential communications to [a corporation's employees] does not defeat the privilege." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995); *see also Compass Prods. Int'l, Inc. v. Charter Comm'ns Inc.*, No. 18-CV-12296 (VM) (BCM), 2020 WL 3448012, at *3 (S.D.N.Y. June 24, 2020) ("[T]he distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege.") (internal quotation marks omitted); *In re Currency Conversion Antitrust Litig.*, No. 05 Civ. 7116 (WHP) (THK), 2010 WL 4365548, at *4 (S.D.N.Y. Nov. 3, 2010) ("A communication containing legal advice does not lose its privileged status when shared among corporate employees who share responsibility for the subject matter of the communication.") (internal quotation marks omitted).

Magistrate Judge Cave determined that the Wolf Greenfield Advice is "unquestionably protected by the attorney-client privilege." (Doc. 1166, at 5.) I agree. Attorney-client "privilege will apply to communications seeking or conveying a legal opinion on the patentability or infringement of an invention." *Softview Comp. Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815 KMWHBP, 2000 WL 351411, at *2 (S.D.N.Y. Mar. 31, 2000) (quoting *In re Application of Minebea Co.*, 143 F.R.D. 494, 502 (S.D.N.Y. 1992)). The Wolf Greenfield Advice not only conveys outside counsel's legal opinion regarding a ▮▮▮▮▮ but also discusses it in the context of Defendant's ▮▮▮▮▮▮▮▮▮▮▮ (*See* Doc. 1090-1); *see also*

5

*generally Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701 (JPO) (JCF), 2015 WL 1726435, at *1 (S.D.N.Y. Apr. 15, 2015) (finding that an email chain between non-lawyers that discusses the legal opinion of in-house counsel is privileged).

Plaintiffs principally argue that the Wolf Greenfield Advice is not privileged because it does not contain any confidential information. (*See, e.g.*, Doc. 1179, at 17.) Plaintiffs rely on *American Standard, Inc. v. Pfizer, Inc.*, where the Federal Circuit found that a letter from outside counsel that provided a legal opinion on the validity of a patent "was not privileged because it did not reveal, directly or indirectly, the substance of any confidential communication." 828 F.2d 734, 744–45 (Fed. Cir. 1987). However, the Federal Circuit conditioned that finding explicitly on the fact that the letter was "not signed, [was] not addressed to [the client] or anyone else, and [bore] no letterhead or other indication of source." *Id.* In other words, the court found that the letter was not privileged because both "the source and intended recipient … [were] unclear." (Doc. 1166, at 6.) These facts make *American Standard* entirely distinguishable from this case, where the documents make clear that the opinion is from the outside counsel and where the corporation and its employees received the document.

Plaintiffs acknowledge that attorney communications to clients that reflect confidential information are privileged, (Doc. 1179, at 12), but state that the documents at issue here "do not reveal any confidential client communications," (*id.* at 9). However, Plaintiffs ignore the fact that the Wolf Greenfield Advice not only discusses Keurig's ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Docs. 1091-1, 1091-2) (noting that "▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Plaintiffs also argue that the Wolf Greenfield Advice is not privileged because the legal opinion being offered concerns "the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a publicly known fact." (Doc. 1182, at 8.) This proves far too much.

6

All intellectual property principles—and all laws, for that matter—are publicly available. Under Plaintiffs' reading, huge swaths of core attorney-client communications would suddenly lose privileged status merely because they contain a publicly known fact. This simply cannot be the case. Regardless, as previously noted, the Wolf Greenfield Advice does not simply inform Keurig about the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiffs, at some level, want to have it both ways on this latter point. They simultaneously argue that the Wolf Greenfield Advice cannot be privileged because the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ is widely known, and yet that the communications satisfy the crime-fraud exception exclusively because they show that Defendant knew about the ▮▮▮▮ sometime before filing suit against Plaintiffs. (Doc. 1182 at 6–8.) Adopting such a limited reading of the doctrine of attorney-client privilege, with such an expansive view of the crime-fraud privilege, would imperil the very idea of attorney-client privilege. Magistrate Judge Cave's determination that the Wolf Greenfield Advice is attorney-client privileged is neither clearly erroneous nor contrary to law.

    **2. The Magistrate's Order Did Not Err in Determining that Plaintiffs Have Not Met Their Burden to Establish That the Crime-Fraud Exception Applies**

"The crime-fraud exception strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (internal quotation marks omitted). "A party wishing to invoke the exception must prove (1) that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud and (2) probable cause to believe that the particular communication with counsel or attorney work

7

product was *intended* in some way to facilitate or to conceal the criminal activity." *In re Grand Jury Subpoenas Dated March 2, 2015*, 628 Fed. App'x 13, 14 (2d Cir. 2015) (summary order) (internal quotation marks omitted).

"Where the very act of litigating is alleged as being in furtherance of a fraud," the Second Circuit has "adopt[ed] a more stringent probable cause standard" that movants must satisfy. *Id*. In this scenario, the party seeking disclosure under the crime-fraud exception "must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud." *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999). "Absent such a showing, the requisite finding that an otherwise privileged or immunized communication was intended to further the fraud cannot be made." *Id.*

Plaintiffs allege that Keurig pursued "sham litigation" against both Plaintiffs by initiating and continuing to litigate "objectively baseless" lawsuits against them. (Doc. 1182, at 4.) In order to prove a sham litigation has taken place, litigants must prove two things. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). Second, the lawsuit must "conceal[] an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental process . . . as an anticompetitive weapon." *Id.* at 60–61 (emphasis added) (internal quotation marks and citations omitted). The sham litigation standard is a high bar to clear because it is important "to avoid chilling the exercise of the First Amendment right to petition the government for the redress of grievances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014).

In this instance, Plaintiffs' claim for "sham litigation is premised on the fact that, only

8

one year after Keurig filed an objectively baseless lawsuit against TreeHouse/Sturm, the first competitor to enter the single serve portion pack market, Keurig filed a *second objectively baseless* complaint against the second competitor to enter the same market—JBR." (Doc. 1182, at 4.) Plaintiffs note that Keurig's second lawsuit "shared the same baseless infringement theory as Keurig's separate filed lawsuit against TreeHouse in 2010." (*Id.*) Further, Plaintiffs note that Keurig continued litigating its substantially similar case against JBR even after it had already lost on summary judgment in its first case. (*Id.* at 5.) Plaintiffs contend that the Wolf Greenfield Advice shows that Keurig was "███████████████████████████████████████ ███████████████████████," (*id.* at 6)—███████████████████████████████ ███████████████████████████████████████; *see* (Doc. 1210, at 5, 9).

Plaintiffs have not met their burden to prove that the crime-fraud exception applies because, as Magistrate Judge Cave noted, there is no indication that Keurig relied on the Wolf Greenfield Advice "in furtherance" of any alleged fraudulent or criminal activity against Plaintiffs. Indeed, the advice "was rendered many months before Keurig initiated those lawsuits." (Doc. 1166, at 8; *see also* Doc. 1196, at 19 (noting that the advice was rendered ███████████████████████████████████████████████ There is nothing in the record that "demonstrate[s] any connection between the advice and the decision to file or maintain the lawsuits." (Doc. 1166, at 8.)

Plaintiffs instead argue that the sham litigation probable cause standard articulated in *In re Richard Roe, Inc*. suggests that movants in these cases need not show that the communication in question was used in furtherance of the crime-fraud, but merely that "the sham litigation itself, or an aspect of it, was in 'furtherance' of the fraud." (Doc. 1179, at 20.) This is an inversion of the law. Plaintiffs' reading would make it easier for movants to establish the crime-fraud

9

exception in this context; yet, the probable cause standard articulated in *In re Richard Roe, Inc.* was intended to do just the opposite, i.e., be more demanding on movants.  The heightened standard articulated in *In Richard Roe, Inc.* relates only to the probable cause requirement of the two-part crime-fraud exception test; it does not dispense with the first element of the test.  As this Court has made clear, movants alleging a sham litigation theory must still establish the first part of the crime-fraud exception test:  that the communication was made in furtherance of the crime or fraud.  *See, e.g.*, *United States v. Tucker*, 254 F. Supp. 3d 620, 621, 624 (S.D.N.Y. 2017) (determining that the crime-fraud exception applied because "documents and communications possessed by [defendant's] attorneys" were made "in furtherance [of a crime or fraud] because they were part of an effort to baselessly invoke the protections of tribal immunity" in litigation); *United States v. Ceglia*, No. 12-CR-876 (VSB), 2015 WL 1499194, at *3 (S.D.N.Y. Mar. 30, 2015) (determining that there must be a "purposeful nexus between the communication or document and the fraudulent" litigation) (internal quotation marks omitted).

      Even if Plaintiffs were correct about the legal standard, their arguments would still fail.  I cannot find that there is sufficient probable cause to determine that the litigation had no legal basis or was put forth substantially to further a crime or fraud.  Keurig's suit against TreeHouse survived a motion to dismiss.  *Keurig, Inc. v. Sturm Foods, Inc.*, 769 F. Supp. 2d 699 (D. Del. 2011).  While Plaintiffs point to language in some of the decisions in Keurig's cases against TreeHouse and JBR noting that Supreme Court precedent effectively foreclosed their claims, (Doc. 1182, at 5), the decisions do not otherwise bear much indication that the presiding judges found these cases frivolous or ethically dubious.  As Magistrate Judge Cave noted, "patent law jurisprudence is not without examples of the reversal of long-standing precedent," (Doc. 1166, at 7), and there is nothing that prevents a litigant from attempting to prevail on a novel litigation

strategy in different courts, as Keurig did. Further, while JBR argues that Keurig "refused to stop its litigation" against JBR for over a year after TreeHouse won a summary judgment motion against Keurig, (Doc. 1182, at 5), this ignores the fact that Keurig appealed that judgment in its case against TreeHouse, an appeal that Keurig lost only after JBR was successful at the district court. *Compare Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370 (Fed. Cir. 2013) (decided October 17, 2013), *with Keurig, Inc. v. JBR, Inc.*, No. 11-11941-FDS, 2013 WL 2304171 (D. Mass. May 24, 2013). Plaintiffs have not met the high bar necessary to prove either factor necessary to establish that crime-fraud exception should apply.

### 3. The Magistrate's Order Erred in Permitting Plaintiffs Limited Use of the Documents

Magistrate Judge Cave's Report and Recommendation stated that although Plaintiffs had not demonstrated that the crime-fraud exception applied under the circumstances, the Wolf Greenfield Advice could be "used—under seal—in connection with (1) expert depositions; (2) summary judgment motions; and (3) TreeHouse's anticipated sanctions motion." (Doc. 1166, at 8.) In this way, Plaintiffs could use the Wolf Greenfield Advice "for certain limited purposes"— namely, to keep trying to prove that the crime-fraud exception should indeed apply. (*Id.*)

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "As a general matter, Rule 26(b)(1) limits the scope of discoverable information to nonprivileged information. Therefore, information that is properly protected by a privilege is presumptively not discoverable absent a waiver, voluntary disclosure, or other legally recognized exception." *Winfield v. City of N.Y.*, No. 15-cv-5236 (LTS) (KHP), 2018 WL 2148435, at *5 (S.D.N.Y. May 10, 2018) (citations omitted). Rule 26 is clear: once an inadvertently produced document is determined privileged and not subject to the crime-fraud exception, "the document is simply not

11

subject to discovery." *Fuller v. Interview, Inc.*, No. 07 Civ. 5728 (RJS) (DF), 2009 WL 3241542, at *6 (S.D.N.Y. Sept. 30, 2009).

Aside from arguing that the documents are not privileged and not subject to the crime-fraud exception, Plaintiffs principally make two arguments in favor of limited use. First, they suggest that the protective order in this case explicitly permits the limited use Magistrate Judge Cave ordered here. Magistrate Judge Henry Pitman, in an earlier ruling in this case, determined that "the Protective Order permits a party that receives, through inadvertence, a document or other information which the adverse party asserts is privileged, may, pending a determination of the claim of privilege, use the content of that document or information for the limited purpose of challenging the assertion of privilege." (Doc. 596, at 7.) Second, Plaintiffs point to a number of cases suggesting that "assessing the crime-fraud exception in the context of a sham litigation claim requires a rigorous *in camera* assessment of the evidence," and that this *in camera* review should be assessed with a full evidentiary record. (Doc. 1199, at 7–8.)

Plaintiffs' interpretation of the protective order is wrong. Put simply, this Court has already afforded Plaintiffs the process to which they were entitled pursuant to the protective order. Plaintiffs were able—in their briefing for this proceeding where I am making a "determination of the claim of privilege"—to "use the content of [the inadvertently produced] document[s] … for the limited purpose of challenging the assertion of privilege." (Doc. 596, at 7.) Plaintiffs submitted unredacted versions of the Wolf Greenfield Advice and argued that the advice was not privileged as Defendant had claimed. I then reviewed the content of those purportedly privileged documents *in camera* to determine whether or not they were privileged, including to determine whether the crime-fraud exception might apply. As noted *supra*, I have examined the Wolf Greenfield Advice and determined that it is privileged and not subject to the

12

crime-fraud exception. As such, my "determination of the claim of privilege" is over, and Plaintiffs have no grounds to continue to use the documents for further litigation or discovery purposes. Absent specific language in the protective order authorizing continued use of certain privileged documents for specific purposes, Plaintiffs have no grounds to use privileged materials like the Wolf Greenfield Advice.

Ruling otherwise would lead to absurd outcomes. Consider a scenario where, rather than Defendant inadvertently disclosing these privileged materials, Plaintiffs made a challenge to the listing of the same documents on a privilege log. If, after reviewing the documents *in camera*, I determined that the documents were privileged, Plaintiffs would have never received access to the documents for review or use for any purpose. There is no reason why this situation should be any different, and any contrary outcome would prejudice Defendants by, among other things, allowing the dissemination and use of their privileged documents.

Consequently, I find that the portion of the Magistrate's order granting Plaintiffs limited use of the privileged documents clearly erroneous, and as such must be set aside.

### 4. The Motions to Seal Should be Granted

The parties have submitted many motions to seal in connection with the briefing in this proceeding and in Plaintiffs' recently filed *Daubert* motion, in order to protect any materials that may be privileged. In light of my decision above, these motions to seal are all granted. (Docs. 1172, 1177–78, 1184, 1191, 1194, 1197, 1203, 1205, 1209, 1212, 1219, 1224.)

### II.  Conclusion

For the foregoing reasons, Plaintiffs' discovery objections are OVERRULED and Defendant's discovery objection is SUSTAINED.

IT IS FURTHER ORDERED that the motions to seal at Docs. 1172, 1177–78, 1184,

1191, 1194, 1197, 1203, 1205, 1209, 1212, 1219, and 1224 are GRANTED.

IT IS FURTHER ORDERED that TreeHouse's motion for oral argument (Doc. 1183) is DENIED.

IT IS FURTHER ORDERED that the Clerk is directed to terminate the open motions at Documents 1172, 1173, 1177, 1178, 1180, 1183, 1184, 1191, 1194, 1197, 1203, 1205, 1209, 1212, 1219, and 1224.

IT IS FURTHER ORDERED that Defendant is directed to submit a filing proposing redactions to this Order to the extent it contains Defendant's privileged information within one week of its filing on the docket under seal.

SO ORDERED.

Dated: February 9, 2021
New York, New York

Vernon S. Broderick
United States District Judge