**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
:
IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :   No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION               :   No. 1:14-cv-04391 (VSB)
:
_This Relates to the Indirect-Purchaser Actions_          x

 

 

**THE INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION</u>**

## <u>TABLE OF CONTENTS</u>

<u>Pages(s)</u>

TABLE OF AUTHORITIES ..................................................................................(ii)

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 2

    A.   The Relevant Procedural History........................................................... 2

    B.   The History of Settlement Negotiations ................................................ 5

    C.   Preliminary Approval and the Fairness Process ................................... 6

ARGUMENT ..................................................................................................... 6

I.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE .................................. 6

    A.   Judicial Policy Favors Settlement......................................................... 6

    B.   Courts Approve Class Action Settlements When They Are Fair, Reasonable and Adequate .................................................................................................. 7

    C.   The Proposed Settlement is Procedurally Fair...................................... 8

         1.   Rule 23(e)(2)(A) – IPPs Have Adequately Represented the Class ........................... 8

         2.   Rule 23(e)(2)(A) – Co-Lead Counsel Have Adequately Represented the Class.......... 9

         3.   Rule 23(e)(2)(B) – the Agreement and Settlement Were Negotiated at Arm's Length 10

    D.   The Proposed Settlement is Substantively Fair .................................. 11

         1.   Rule 23(e)(2)(C)(i) – the Relief Provided to the Class is Superior to Continued Litigation .................................................................................. 12

         2.   Rule 23(e)(2)(C)(ii) – the Claims Process Is Fair and Rational ................................. 19

         3.   Rule 23(2)(C)(iii) – the Proposed Award of Attorneys' Fees Supports Final Approval ...................................................................................... 22

         4.   Rule 23(e)(C)(iv) – Any Agreements Required to Be Identified Under Rule 23(e)(3)........................................................................... 24

         5.   Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to One Another ............................................................................. 24

II.    THE NOTICE CAMPAIGN ADEQUATELY APPRISED CLASS MEMBERS OF THEIR RIGHTS ...................................................................................... 24

III.   THE REACTION OF THE SETTLEMENT CLASS FAVORS APPROVAL.................... 27

CONCLUSION................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**

<u>Page(s)</u>

*In re "Agent Orange" Prod. Liab. Litig.*,
 597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................17

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ............................10

*Beltran, et al., v. InterExchange, Inc., et al.*,
 No. 1:14-cv-03074-CMA-KMT, 2019 WL 3496692 (D. Colo. Aug. 1, 2019) ......................20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. 20-15697, D.C. No. 4:07-cv-05944-JST, ECF No. 5797 (9th Cir. July, 22, 2020) ............24

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) .......................................................................... *passim*

*City of Providence v. Aéropostale, Inc.*,
 No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
 *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ........................... 12, 15-16

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013).............................................................................................14

*In re Credit Default Swaps Antitrust Litig.*,
 No. 13md2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 25, 2016)...................................19

*In re Currency Conversion Fee Antitrust Litig.*,
 263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................................12, 13

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)....................................................................................9

*Denney v. Deutsche Bank AG*,
 443 F.3d 253 (2d Cir. 2006) ...................................................................................9

*In re Drexel Burnham Lambert Grp., Inc.*,
 995 F.2d 1138 (2d. Cir. 1993)................................................................................24

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
 No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...................................19

*In re Facebook, Inc.*,
 343 F. Supp. 3d 394 (S.D.N.Y. 2018) .......................................................................21

*Fleisher v. Phoenix Life Ins. Co.,*
  No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .....................................16

*Gay v. Tri-Wire Eng'g Solutions, Inc.,*
  12-cv-2231 (KAM)(JO), 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014)........................................17

*Gelboim v. Bank of America Corp.,*
  823 F.3d 759 (2d Cir. 2016)...................................................................................................13

*In re Gilat Satellite Networks, Ltd.,*
  No. 02-cv-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)...............................................22

*In re Global Crossing Sec. and ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................................................11, 22

*In re GSE Bonds Antitrust Litig.,*
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................................16

*Handschu v. Special Servs.Div.,*
  787 F.2d 828 (2d Cir. 1986).................................................................................................26

*Holt, et al., v. Murphy Oil USA,*
  17-cv-00911-RV-HTC, ECF No. 24 (N.D. Fla. Mar. 18, 2019) .............................................27

*Illinois Brick Co. v. Ill.,*
  431 U.S. 720 (1977)...............................................................................................................20

*In re Initial Pub. Offering Sec. Litig.,*
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................................22

*In re J.P. Morgan Stable Value Fund ERISA Litig.,*
  No. 12-CV-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ...............................23

*Katz v. ABP Corp.,*
  No. 12-CV-04173 (ENV) (RER), 2014 WL 4966052  (E.D.N.Y. Oct. 3, 2014) ...................26

*Langan v. Johnson & Johnson Consumer Companies, Inc.,*
  No. 3:13-cv-01471, ECF No. 188 (Unpublished Order) (D. Conn. Feb. 4, 2019)  .................26

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
  327 F.R.D. 483 (S.D.N.Y. 2018) ..................................................................................14, 16, 18

*In re Lithium Ion Batteries Antitrust Litig.,*
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020).....................................................................24

*In re Lloyd's Am. Trust Fund Litig.*,
  96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)......................................23

*Malev v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................................15

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................................23

*McLaughlin v. IDT Energy*,
  No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ......................17

*In re Medical X-Ray Film Antitrust Litig.*,
  CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ....................................................5, 23

*Melito v. Am. Eagle Outfitters, Inc.*,
  No. 14-CV-2440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017),
  *aff'd in part, appeal dismissed in part sub nom.*
  *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019)................................................8

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................................18

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15 Civ. 7488 (CM), 2017 WL 3613663 (S.D.N.Y. Aug. 21, 2017) ...............................13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................................................15

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  No. 94 CIV 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000)........................................22

*New York by Vacco v. Reebok Int'l*,
  903 F. Supp. 532 (S.D.N.Y. 1995).....................................................................................................26

*Olean Wholesale Grocery Coop., Inc., v. Bumble Bee Foods LLC*,
  993 F.3d 774 (9th Cir. 2021) ....................................................................................................... 14-15

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................................11

*Parker v. Time Warner Entm't Co. L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ............................................................................................12

*In re Parking Heaters, Antitrust Litig.*,
  No. 15-MC-0940 (DLI)(JO), 2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) ...........................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016)..........................................................................................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11  (E.D.N.Y. 2019) ...................................................................................17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05-MD-1720 (MKB)(JO),
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ......................................................8, 27

*In re Petrobras Sec. Litig.*,
  317 F. Supp. 3d 858 (S.D.N.Y. 2018)............................................................................8

*In re Platinum & Palladium Commodities Litig.*,
  No. 10cv3617, 2015 WL 4560206 (S.D.N.Y. July 7, 2015) .......................................23

*In re Pokémon Go Nuisance Litigation*,
  Case No. 3:16-cv-04300, ECF No. 131 (N.D. Cal. May 2, 2019 ) .......................26-27

*In re Rail Freight Fuel Surcharge Antitrust Litig*,
  934 F.3d 619 (D.C. Cir. 2019) ....................................................................................14

*Roes v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ....................................................................................26

*Schneider v. Chipotle Mexican Grill, Inc.*,
  No. 16-cv-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan 31, 2020) .........................26

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11-cv-8331 (CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014).............11

*In re SunEdison, Inc.*,
  329 F.R.D. 124 (S.D.N.Y. 2019) ...............................................................................8-9

*Sykes v. Mel Harris & Assocs., LLC*,
  09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............................18

*Townsend v. G2 Secure Staff, L.L.C., et al.*,
  Case No. 18STCV04429 (unpublished order) (Cal. Super. Ct. July 7, 2020) .......21-22

*U.S. Football League v. Nat'l Football League*,
  644 F. Supp. 1040 (S.D.N.Y. 1986)............................................................................15

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ..............................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................................... *passim*

*Warciak v. One, Inc.*,
    No. 2018-CH-06254, 2018 Ill. Cir. LEXIS 9002 (Ill. Cir. Ct. Oct 3, 2018)...........................26

*In re WorldCom Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..............................................................19

## STATUTES & RULES

Clayton Act, 15 U.S.C. § 14 ....................................................................................2

Federal Rules of Civil Procedure
    23(e) ...................................................................................................7, 9
    23(e)(2) ....................................................................................................7
    23(e)(2)(A) ............................................................................................8, 9
    23(e)(2)(B) .........................................................................................10, 11
    23(e)(2)(C)(i) ............................................................................................12
    23(e)(2)(C)(ii) ...........................................................................................19
    23(e)(2)(C)(iii) ..........................................................................................22
    23(e)(2)(C)(iv) ..........................................................................................23
    23(e)(2)(D) ...............................................................................................24
    23(e)(3) ...................................................................................................23
    23(f)......................................................................................................14
    Rule 23 Advisory Committee Note (2018) .................................................... *passim*

Sherman Act, 15 U.S.C. §§ 1 and 2 ...........................................................................2

## OTHER AUTHORITIES

4 William B. Rubenstein, Newberg on Class Actions § 12:15 (5th Ed.) (Westlaw 2018)............19

## INTRODUCTION

If final approval is granted, this settlement will create a Settlement Fund of $31 million plus income earned on that amount, which was memorialized in a Stipulation of Settlement and Release, executed August 14, 2020 (the "Agreement").[1]  In granting the Indirect Purchaser Plaintiffs'[2] ("IPPs") unopposed motion for preliminary approval, the Court made a preliminarily determination that the settlement is fair, reasonable and adequate.  IPPs, by and through counsel, successfully implemented the Notice Plan and process approved by the Court and the Settlement Class has been notified about the settlement. Although the Settlement Class has the opportunity to file an objection through May 17, 2021, the initial reaction of the Class to the Agreement has been favorable.  To date, there has been only one dubious objection filed.[3]  For the reasons explained below, the settlement represents an excellent recovery and result for the Settlement Class in light of the significant litigation risks, and accordingly this Court should grant final approval.

The settlement, by and through the Agreement, recovers $31 million for the Settlement Class and is non-reversionary.  In exchange, among other things, IPPs and Settlement Class Members will release Defendant Keurig Green Mountain, Inc. ("Keurig" or "Defendant") from

---

[1] Capitalized terms here have the same meaning here as in the Agreement.  ECF No. 1114, Ex. 1.

[2] The Indirect Purchaser Plaintiffs are Wasif Bala, Yelda Mesbah Bartlett, Lavinia Simona Biasell, Linda Bouchard, Bouchard & Sons Garage, Inc., Luke Cuddy, Jonna Dugan, Erin Dunbar, Larry Gallant, Denise Gilmore, Patricia Hall, Jennifer Harrison, Teena Marie Johnson, Lori Jo Kirkhart, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, John Lohin, Angus Macdonald, Edgar Medina, Jennifer Mileikowsky, Brier Miller Minor, David W. Nation, Patricia J. Nelson, Julie Rainwater, Betty Ramey, Lauren Jill Schneider, Shirley Anne Schroeder, Jason and Amy Stratman, and Toni Williams.

[3] The purported objection filed by Michael Zall, dated January 22, 2021, fails to identify whether Mr. Zall in his individual capacity or his firm is the objector.  ECF No. 1244.  Mr. Zall does not provide any legal support for his objection just bare critiques.  *See id.*  Mr. Zall's purported objection does not contain "a statement whether [he] intend[s] to appear at the Final Approval Hearing" and "proof of membership in the Settlement Class[,]" contrary to this Court's Order and approved Notice.  *See* ECF No. 1244 *contra* ECF No. 1115, Ex. 7.

the claims alleged in the Complaint. Given the risks IPPs faced in establishing liability and damages, and in certifying a class and maintaining the Action through trial, IPPs respectfully submit that this recovery should be approved because it is within the range of reasonableness. Likewise, the Plan of Allocation should also be approved because it is fair and reasonable.

## BACKGROUND

Keurig manufactures, distributes, and sells single-serve brewers and Keurig K-Cup Portion Packs. Prior to September 2012, Keurig held certain patents covering single-serve portion packs compatible with Keurig brewers. Upon expiration of certain patents and with the rise of generic competitor cups, Keurig allegedly engaged in anticompetitive conduct throughout the sales, supply, and distribution chains to preserve an illegal monopoly over Keurig K-Cup Portion Packs which harmed indirect purchasers.

### A.      The Relevant Procedural History

On March 24, 2014, the first indirect purchaser action was filed against Keurig alleging that it had monopolized or attempted to monopolize and restricted, restrained, foreclosed, and excluded competition in order to raise, fix, maintain, or stabilize the prices of Keurig K-Cup Portion Packs at artificially high levels in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and various state antitrust, unfair competition, consumer protection, unjust enrichment, and other laws. Kaplan Decl., ¶ 8.[4] This Action is comprised of that initial action along with eight other later-filed lawsuits. At all times, IPPs, by and through their counsel, have diligently prosecuted the Action. *Id*. IPPs have filed

---

[4] The Declaration of Robert N. Kaplan in Support of Indirect Purchaser Plaintiffs' (1) Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and (2) Motion for an Award of Attorneys' Fees, For Reimbursement of Expenses, and Incentive Awards for the Named Plaintiffs is referred to herein as: "Kaplan Decl., ¶ __."

three consolidated class action complaints, which pleaded detailed allegations supporting claims under both federal and state antitrust laws.  ECF Nos. 61, 238, 631.

Following extensive briefing on a motion to dismiss involving complex issues of federal antitrust laws and laws of 23 states and the District of Columbia, the Court dismissed claims under federal antitrust law, but denied, in whole or in part, the motion as to 21 states and the District of Columbia; and deferred ruling on the issue of whether Vermont law applied nationally.  Kaplan Decl., ¶¶ 12-14; ECF No. 581.

Following this ruling, IPPs drafted and filed the operative pleading, their Third Consolidated Amended Complaint, and therein realleged violations of federal antitrust laws along with violations of the laws of 25 states and the District of Columbia.  Kaplan Decl., ¶ 19; ECF No. 631.  Specifically, IPPs' Third Consolidated Amended Complaint alleges that Keurig's anticompetitive conduct ranged from conspiring with horizontal competitors in the coffee-roasting business, engaging in extensive, restrictive contracts that restrained trade throughout the sales, supply, and distribution chain, and tying sales of its Keurig K-Cup Portion Packs to sales of its single-serve brewers, thereby maintaining an illegal monopoly.  ECF No. 631.  IPPs alleged that Keurig's anticompetitive conduct has limited, foreclosed, and harmed competitors, resulting in supra-competitive prices to, and limited choices for, indirect purchasers.  *Id.*

After an earlier ruling on the motions to dismiss in the Related Actions,[5] IPPs engaged in extensive, coordinated discovery alongside four other plaintiff groups.  Kaplan Decl., ¶¶ 21-54.

---

[5] Plaintiffs coordinated their discovery efforts with competitor plaintiffs JBR, Inc. (d/b/a Rogers Family Company) and TreeHouse Foods Inc., Bay Valley Foods, LLC and Sturm Foods Inc., as well as with the Direct Purchaser Plaintiffs, and McLane Company Inc., all of whose actions were coordinated with Plaintiffs' actions in this Court for pretrial purposes under the caption *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, No. 1:14-md-02542 (VSB), No. 1:14-mc-02542 (VSB) (the "Related Actions").

IPP Counsel gathered, reviewed, and produced documents from all IPPs and defended ten Plaintiff depositions.[6] *Id.*, ¶¶ 36-46, 53.  With respect to Defendants, parties in the Related Actions, and non-parties, IPPs' counsel reviewed millions of pages of documents and deposed, participated in, and reviewed the transcripts of over one hundred depositions across the Related Actions.  *Id.*, ¶¶ 22-33, 47-52.  Indeed, the parties reached a settlement-in-principle only after fact discovery closed. *Id.* ¶¶ 57-58.

IPPs worked efficiently, conserved the resources of the parties, and served the interest of judicial economy by collaborating with four other plaintiff groups while pursuing and protecting the Settlement Class's interests.  *Id.*, ¶¶ 14, 21, 26, 32, 38.  This hard-fought litigation, unlike many private antitrust cases, was not precipitated by, nor prosecuted alongside, a government action, but rather it was privately investigated and prosecuted, leading to the proposed settlement.  *Id.*, ¶ 5.  If the Court declines to grant final approval, the next steps will be expert discovery, including the exchange of expert reports, expert depositions, *Daubert* motions; and then a class certification motion, dispositive motions, and trial.  *Id.*, ¶¶ 63-64.

The Settlement Amount, $31 million, is substantial, and no part of the Settlement Amount will revert to Keurig if the Court grants final approval.  Kaplan Prelim. App. Decl., Ex. 1.[7]  If there are any uncashed checks or amounts remaining in the Settlement Fund after Settlement Awards are issued to Settlement Class Members, that money will be distributed *cy pres* to Consumer

---

[6] "IPP Counsel" collectively refers to Arthur N. Bailey & Associates/Rupp, Bartko Zankel Bunzel & Miller, Bozeman Law Firm, Gainey McKenna, Hart McLaughlin & Eldridge, Isquith Law Firm PLLC, Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Lynn Lynn Blackman & Manitsky, P.C., Oliver Law Group, Pearson Simon & Warshaw LLP ("PSW"), Polsinelli, PC, Preti Flaherty, Pritzker Levine LLP, Thrash Law Firm, P.A., Zoll Kranz & Borgess LLC, and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein").

[7] The Declaration of Robert N. Kaplan in Support of Indirect Purchaser Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement with Defendant is referred to herein as "Kaplan Prelim. App. Decl."  ECF No. 1114.

Reports, an independent, nonprofit organization that works side by side with consumers to create a safe, fair, and transparent marketplace.[8]  *Id.*

The Agreement mitigates risk by providing an immediate and certain substantial monetary recovery and alleviates the risk of continued litigation.  *See In re Medical X-Ray Film Antitrust Litig.*, CV-93-5904, 1998 WL 661515, at *4 (E.D.N.Y. Aug. 7, 1998) ("In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation.").  In addition, the Settlement Class does not face continued substantial expert and other costs.

### B.     The History of Settlement Negotiations

The parties commenced settlement negotiations in September 2019.  Kaplan Decl., ¶ 56. Then, in early 2020, the parties engaged an experienced mediator, Retired United States District Court Judge Farnan, to mediate the negotiations.  *Id*. ¶ 57.  On May 8, 2020, counsel for the respective parties and Keurig executives attended a full-day mediation via video conference.  *Id*. This mediation involved separate face-to-face discussions with Judge Farnan and face-to-face discussions between the parties.  *Id*.  The mediation was not successful.  Over the ensuing months, the parties continued to engage with Judge Farnan.  *Id*. ¶ 58.  With the help and persistence of Judge Farnan, the parties continued extensive, arm's-length discussions despite the challenges of the ever-changing landscape during the emergence of the COVID-19 pandemic and continued prosecution of the Actions, which included a deluge of depositions as fact discovery closed on June 17, 2020.  *Id*.  Following the close of fact discovery, Judge Farnan continued to work with

---

[8] Neither IPPs nor Settlement Class Counsel have any interest or involvement in the governance or operation of Consumer Reports, the *cy pres* proposed recipient.  If warranted based on the number of claims successfully recompensed, IPPs may make a second distribution before distributing the remainder to Consumer Reports.

the parties with the aim of resolving the Action. *Id.* On July 21, 2020, the parties accepted Judge Farnan's recommendation and reached a settlement in principle, the substance of which is now memorialized in the Agreement. *Id.* ¶¶ 58-60; *see also* Kaplan Prelim. App. Decl., Ex. 1.

### C. Preliminary Approval and the Fairness Process

On September 30, 2020, IPPs moved this Court for preliminary approval of the settlement. ECF Nos. 1112-16. On December 16, 2020, the Court granted IPPs' motion for preliminary approval along with the relief requested and later, on December 29, 2020, upon a Stipulated Order, clarified its prior Order to align with the Notice Plan provided for in the Agreement (collectively, the "Preliminary Approval Order"). ECF Nos. 1216, 1218. Settlement Class Counsel herein confirms that IPPs and JND implemented the Notice Plan as described in IPPs' preliminary approval motion and as approved by the Court in the Preliminary Approval Order. JND Declaration ¶¶ 4-5.[9]

<b>ARGUMENT</b>

## I. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A. Judicial Policy Favors Settlement

The settlement "of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005).[10] The Second Circuit has acknowledged "the strong judicial policy in favor of settlements, particularly in the class action context." *Id.* A settlement receives a "presumption of procedural fairness 'where a class settlement [is] reached in arm's length negotiations between experienced, capable

---

[9] The Declaration of Gina M. Intrepido-Bowden Regarding Notice Plan and Settlement Administration submitted concurrently with this memorandum of law is referred to herein as "JND Decl. ¶ __."

[10] Unless otherwise noted, internal citations and quotations are omitted.

counsel after meaningful discovery.'" *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940 (DLI)(JO), 2019 WL 8137325, at *3 (E.D.N.Y. Aug. 15, 2019) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)).

**B.   Courts Approve Class Action Settlements When They Are Fair, Reasonable and Adequate**

Federal Rule of Civil Procedure 23(e) requires that class action settlements must be "fair, reasonable and adequate."  To resolve circuit inconsistencies, the 2018 amendments to Rule 23 articulated a four-pronged test that was intended to harmonize the circuits' varied interpretations of the applicable standard.  *See* Fed. R. Civ. P. 23 Advisory Committee Note (2018).  As amended, Rule 23(e)(2) deems a settlement to be "fair, reasonable, and adequate" if:

(A)   the class representatives and class counsel have adequately represented the class;
(B)   the proposal was negotiated at arm's length;
(C)   the relief provided to the class is adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method for processing class-member claims;
    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)  any agreement required to be identified under Rule 23(e)(3); and
(D)   the proposal treats class members equitably relative to each other

The first two prongs address the "procedural fairness" of the settlement, while the last two prongs address the "substantive fairness."  Fed. R. Civ. P. 23 Advisory Committee Note (2018).

The Second Circuit has generally considered the nine factors listed in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), known as the *Grinnell* factors, to assist in the final approval analysis and in determining whether a settlement is substantively "fair, reasonable and adequate."  Those factors are:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the

7

> proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Grinnell Corp.*, 495 F.2d at 463.

"There is significant overlap between the Rule 23(e)(2) and the *Grinnell* factors," which courts in this Circuit have acknowledged complement one another. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05-MD-1720 (MKB)(JO), 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019).

### C.   The Proposed Settlement is Procedurally Fair

#### 1.   Rule 23(e)(2)(A) – IPPs Have Adequately Represented the Class

The Court determines adequacy by considering whether "the class representatives' interests are aligned with the interests of the Settlement Class" because they suffered the same injuries as the other class members. *Melito v. Am. Eagle Outfitters, Inc*., No. 14-CV-2440 (VEC), 2017 WL 3995619, at *8 (S.D.N.Y. Sept. 11, 2017), *aff'd in part, appeal dismissed in part sub nom*. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019).  Adequacy must be assessed independent of the settlement's fairness, and the Court must look to whether the proposed settlement class is "sufficiently cohesive to warrant adjudication." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016).  IPPs here have the same interests as Settlement Class Members because they have all suffered the same alleged injury – the overcharge in the form of supracompetitive prices due to Keurig's alleged misconduct. *See In re Petrobras Sec. Litig*., 317 F. Supp. 3d 858, 869 (S.D.N.Y. 2018) (Adequacy was satisfied where class representatives and claimants "suffered the same injury[.]"); *In re SunEdison, Inc.*,

329 F.R.D. 124, 142 (S.D.N.Y. 2019) (Class representative "has vigorously pursued claims on behalf of the class, and there is no contention that its interests are antagonistic to other class members."). Accordingly, the Settlement Class is sufficiently cohesive, and IPPs are adequate representatives as they have exhibited an "interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

### 2. Rule 23(e)(2)(A) – Co-Lead Counsel Have Adequately Represented the Class

This Court previously appointed the firms of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Pearson, Simon & Warshaw, LLP ("PSW"), and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Interim Co-Lead and Liaison Counsel and, more recently, Settlement Class Counsel. Kaplan Decl., ¶ 1; ECF Nos. 36, 1216. By appointing the firms as Settlement Class Counsel, the Court made an initial determination about counsel's adequacy. ECF No. 1216. At this later stage, however, the focus is on the performance of counsel, as judged in light of the extent of the litigation required to reach settlement, counsel's conduct of settlement negotiations, and the results obtained. *See* Fed. R. Civ. P. 23 Advisory Committee Note (2018); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (directing courts to analyze the negotiation process and discovery undertaken by counsel). There is significant overlap between this Rule 23(e) factor and the third *Grinnell* factor, which evaluates the stage of the proceedings and the amount of discovery completed.

Before commencing the Action, Settlement Class Counsel extensively investigated and analyzed Keurig's business model, relationships, distribution network, and market share. Kaplan Decl., ¶¶ 3, 8. IPPs incorporated the output from these efforts into IPPs' pleadings and, most recently, the Third Amended Complaint. *Id.*, ¶¶ 11, 12-3, 19. Settlement Class Counsel vigorously prosecuted state law claims on behalf of the Settlement Class including opposing and largely

prevailing on a motion to dismiss. *Id.*, ¶¶ 11-19. Counsel participated through completion in an extensive fact discovery process, which included over one hundred depositions, millions of pages of documents, and extensive review and coordination with experts on transactional data that spanned three different platforms. *Id.*, ¶¶ 21-54. There can be no dispute that IPPs' counsel were "well-informed of the facts and strength of their claims against" Keurig at the time the parties executed the Agreement. *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273, at *3 (E.D.N.Y. Oct. 9, 2015).

Settlement Class Counsel was also zealous in negotiating the settlement and terms of the Agreement. Kaplan Decl., ¶¶ 56-62. The parties engaged in months-long discussions before retaining a seasoned mediator, a former United States District Court Judge, Judge Joseph J. Farnan Jr., who presided over a mediation and engaged in follow-up telephonic sessions. *Id.*, ¶¶ 57-58. Judge Farnan acknowledged that Settlement Class Counsel possessed both the skill and knowledge of the case necessary to evaluate the settlement in light of the risks of continued litigation of which Settlement Class Counsel was also keenly aware. *See* Farnan Decl., ¶¶ 4-5.[11] As set forth below in Section I.D.1, the results obtained by Settlement Class Counsel through the settlement demonstrate that counsel adequately represented the Settlement Class.

### 3. Rule 23(e)(2)(B) – the Agreement and Settlement Were Negotiated at Arm's Length

The 2018 Amendments to Rule 23(e) reflect the Second Circuit's long-standing rule that "a strong initial presumption of fairness attaches to [a] proposed settlement," when the "integrity of the arm's length negotiation process is preserved . . . ." *See* Fed. R. Civ. P. 23(e)(2)(B); *In re*

---

[11] The Declaration of Joseph J. Farnan, Jr. U.S. District Court Judge (Ret.), in Support of Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement with Defendant is referred to herein as "Farnan Decl., ¶ __." ECF No. 1116.

*PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  According to the 2018 Amendments, "the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23 Advisory Committee Note (2018).

As described in Judge Farnan's Declaration, the negotiation process was bona fide, at times extremely contentious, and advocated by sophisticated and capable counsel on both sides of the table.  Farnan Decl., ¶¶ 4-8.  Prior to reaching a settlement, the parties engaged in initial negotiations in September 2019 and appeared via video conference (due to COVID-19 restrictions) before the mediator on May 8, 2020, during which the parties discussed the case and the strengths and weaknesses of the parties' positions together and separately with Judge Farnan.  Kaplan Decl., ¶¶ 56-57.  Although the parties did not resolve the Action at that time, Judge Farnan continued to meet with the parties telephonically while IPPs and Defendant litigated the case through the close of of fact discovery.  *Id.*, ¶ 58.  Following numerous phone conversations, Judge Farnan made a recommendation to the parties, and the parties agreed to settle the matter in line with Judge Farnan's recommendation.  *Id.*, ¶¶ 58-60.

## D.   The Proposed Settlement is Substantively Fair

At the final approval stage, the Court need not "decide the merits of the case or resolve unsettled legal questions," nor "foresee with absolute certainty the outcome of the case."  *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331 (CM)(MHD), 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 21, 2014).  Instead, the Court is to "assess the risks of litigation against the certainty of recovery under the proposed settlement."  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

1.     **Rule 23(e)(2)(C)(i) – the Relief Provided to the Class is Superior to Continued Litigation**

The Second Circuit's *Grinnell* factors are effectively codified in Rule 23(e)(2)(C)(i), which guides the Court's analysis on the substantive fairness of the proposed settlement.  Seven of the *Grinnell* factors are covered by Rule 23(e)(2)(C)(i): the complexity, expense and likely duration of the litigation (factor 1); the risks of establishing liability (factor 4); establishing damages (factor 5); the likelihood of maintaining a class action through trial (factor 6); the ability of the defendants to withstand a greater judgment (factor 7); the range of reasonableness of the settlement fund in light of the best possible recovery (factor 8); and the amount of the settlement in light of all the attendant risks of litigation (factor 9).

a)     **The Settlement Class Faced Significant Risks in Establishing Liability**

This factor warrants neither a dispositive analysis nor a quantification of the plaintiffs' chances of success; but rather it requires a balancing of "the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (citing *Grinnell*, 495 F.2d at 463).   By their very nature, antitrust claims create substantial uncertainty.  *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty.").   Although IPPs and Settlement Class Counsel are confident that the case would ultimately be successful, Defendant has contended all along that it has strong defenses, and there are no guarantees that IPPs would successfully prove liability and damages to the level of the Settlement Amount, if at all.  *See Parker v. Time Warner Entm't Co. L.P.*, 631 F. Supp. 2d 242, 260 (E.D.N.Y. 2009) (approving settlement where "Class faced substantial obstacles to proving damages, having the Class certified for trial

and establishing the defendant's liability.").  If the litigation proceeded, Defendant's arguments could have completely defeated, or significantly narrowed, the scope of the Settlement Class and its claims through, among other things, successful dispositive motions or opposition to class certification.  Kaplan Decl., ¶¶ 63-64.

While IPPs prevailed, in substantial part, at the pleading stage, IPPs nonetheless faced significant risks in being able to establish liability.  *Id.*, ¶ 64.  At the pleadings stage, "the plaintiff need not show that its allegations suggesting an agreement are more likely than not true or that they rule out the possibility of independent action, as would be required at later litigation stages such as a defense motion for summary judgment, or a trial."  *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 781 (2d Cir. 2016); *In re Namenda Direct Purchaser Antitrust Litig.,* No. 15 Civ. 7488 (CM), 2017 WL 3613663, at *2 (S.D.N.Y. Aug. 21, 2017) (A "rule-of-reason analysis … require[s] significantly more factual development than what is reflected in the … pre-discovery record").  Liability is challenging here because this is a case with no guilty plea, no leniency applicant, and no federal findings or investigation.  *See In re Currency Conversion Antitrust Litig.*, 263 F.R.D. at 123 (finding in favor of settlement where "Plaintiffs did not have the benefit of a Government investigation, and laboriously knitted this case together with painstaking attention to detail.").  If the litigation were to continue, IPPs expect Defendant to continue to contest vigorously all elements of IPPs' claim including at class certification and summary judgment.  Kaplan Decl., ¶ 64.  The outcome of these proceedings cannot be certain, and in the event that this Action proceeds to trial, it will be a lengthy and complex affair with appeals likely to follow.  *Id.*

For the Settlement Class to succeed, IPPs must be successful on each of the challenges that Defendant would raise, while Defendant would have to be successful only once to reduce

significantly its exposure. Thus, the risks of establishing liability underscore the reasonableness of the settlement.

>   **b)     The Settlement Class Faced Significant Hurdles in Certifying a Class and Maintaining it Through Trial and On a Potential Appeal**

If the litigation were to continue, IPPs would face challenges in both certifying and then, if successful, maintaining a class action. *Id.* IPPs' class certification motion would include certification of a national class under Vermont law. *Id.* Although IPPs and Settlement Class Counsel believe they would ultimately be successful, Defendant would vigorously contest class certification with substantive arguments in opposition that render class certification far from a *fait accompli*. *Id.*

It is a foregone conclusion that, even if IPPs were successful in certifying a class, Defendant would seek interlocutory appeal under Federal Rule of Civil Procedure 23(f), which, at a minimum, would further delay the outcome of the Action. *Id.* Even simple delay caused by appeal presents a litigation with unique risk exposure, which should be weighed against the immediate and certain recovery offered to the Settlement Class.

However, Defendant's appeal would be more than a mere delay tactic and place class certification at significant risk because courts have denied and overturned antitrust class actions even where liability evidence is strong. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 494 (S.D.N.Y. 2018) (even if a class is certified, "subsequent developments in the case [that] call into question [the plaintiffs'] allegations . . . could warrant modification or decertification[.]"); *see also, e.g., Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 626 (D.C. Cir. 2019) (affirming denial of class certification where class had strong liability evidence, but lacked economic proof to support certification); *Olean Wholesale Grocery Coop.*,

*Inc., v. Bumble Bee Foods LLC,* 993 F.3d 774 (9th Cir. 2021) (Vacating class certification order where "district court failed to resolve the factual disputes as to how many uninjured class members are included in Plaintiffs' proposed class[.]").

**c)      Even if the IPPs Can Prove Liability, They Might Not Be Successful in Proving Damages**

The Second Circuit has explicitly acknowledged "the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Wal-Mart Stores*, 396 F.3d at 118; *see also U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1041-42 (S.D.N.Y. 1986) (jury awarded antirust plaintiff nominal damages of only $1 after ten-week trial). Complex litigations often result in a "battle of the experts" on proof of damages, which makes it "difficult to predict with any certainty which testimony would be credited" by the trier of fact. *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998).

This case is no exception. If the Action were to proceed to trial, both sides would offer expert testimony on damages in addition to liability. Kaplan Decl., ¶ 64. There is a substantial risk that a jury may accept one or more Defendant's experts' testimony and damages arguments or award far less than the funds secured by the proposed settlement or nothing at all. *Id.* Further, even if IPPs were successful at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all. *See Malev v. Del Global Techs. Corp.*, 186 F. Supp. 2D 358, 362 (S.D.N.Y. 2002) ("Delay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value.").

In making its determination, the Court should balance "the benefits afforded to the Class, including immediacy and certainty of recovery, against the continuing risks of litigation[.]" *City*

15

*of Providence*, 2014 WL 1883494, at *7; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) (same). Here, the benefit – a certain, immediate recovery of $31 million – is a favorable result that tilts this factor in favor of approval given the substantial risks of continued litigation. Accordingly, this factor weighs in favor of approval of the settlement.

### d) The Recovery is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation

Courts often consider the range of reasonableness of the recovery in light of the best possible outcome and the attendant risks of continued litigation. In determining the reasonableness of a settlement, the analysis "does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher v. Phoenix Life Ins. Co.,* No. 11-cv-8405 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) (quoting *Massiah v. MliboretroPlus Health Plan, Inc.,* No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012)). Indeed, the ratio of the settlement "to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *LIBOR*, 327 F.R.D. at 495 (approving settlements where the plaintiffs did not even provide a damages estimate.). This is because "some risks would be attendant upon continuing to litigate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696. Accordingly, the analysis takes into account "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119; *see also Fleisher*, 2015 WL 10847814, at *8 (the settlement amount should not be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."). As the Second Circuit has stated, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Consistent with Second Circuit jurisprudence, in settling this Action, IPPs accounted for the estimated damages, the benefits and risks of continuing litigation against Keurig, and the range of possible outcomes should the litigation continue.  Kaplan Decl., ¶¶ 56-64, 74-80.

Although IPPs allege that Keurig sold billions of Keurig K-Cup Portion Packs at supracompetitive prices during the relevant period, the damages calculation is extremely complex and subject to varying interpretations.  Kaplan Decl., ¶ 64.  During the mediation, Keurig took the position that, after an assessment of risk, damages were *de minimis* and the value of the case was well below the Settlement Amount.  *See* Kaplan Decl., ¶ 57.  Accordingly, IPPs submit that the Settlement Amount is well within the range of reasonableness.  *See Grinnell*, 495 F.2d at 455 & n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litigation,* 330 F.R.D. 11, 48 (E.D.N.Y. 2019) (stating that the Second Circuit did not take issue with original settlement recovery of "2.5% of the largest possible estimate of actual damage to [the class]").[12]

The Settlement Amount provides a significant, immediate, and certain cash payment to the Settlement Class.  *See Gay v. Tri-Wire Eng'g Solutions, Inc.,* 12-cv-2231 (KAM)(JO), 2014 WL 28640, at *9 (E.D.N.Y. Jan. 2, 2014) (quoting *Massiah*, 2012 WL 5874655, at *5) ("When a settlement 'assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement

---

[12] *See e.g., McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *13 (E.D.N.Y. July 30, 2018) (finding $1.9 million monetary recovery reasonable despite possible recovery in excess of more than $900 million); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) ("The dollar amount of the settlement by itself is not decisive in the fairness determination.  The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate.").

17

is reasonable under this factor.'"); *Sykes v. Mel Harris & Assocs., LLC,* 09 Civ. 8486 (DC), 2016 WL 3030156, at *14 (S.D.N.Y. May 24, 2016) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.").  The proposed settlement will provide "an immediate and certain benefit to" the Settlement Class, and "the substantial burdens and costs that continued and uncertain litigation would impose on the parties, non-party witnesses, and the courts" would be avoided if the settlement were approved.  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010).  Furthermore, there are many steps between here and any potential verdict. Kaplan Decl., ¶ 64.  Moreover, even assuming *arguendo* that continued litigation might result in a larger recovery that would occur only after the expenditure of many millions of dollars more in costs and expenses that would eat up much of any increased recovery.

After evaluating the certain recovery of a significant amount against the risks that continuing this litigation presents to the Settlement Class, this factor weighs in favor of final approval.

> **e)  While Keurig May Be Able to Sustain a Larger Judgment, that Factor Alone Does Not Undercut the Reasonableness of the Settlement**

In a class action proceeding against a large corporation, such as Keurig, the defendant "is likely to be able to withstand a more substantial judgment."  *In re Vitamin C Antitrust Litigation*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 22, 2012).  However, this fact alone does not undermine the reasonableness of the settlement.  *See id.* (finding ability to withstand greater judgment does not undermine reasonableness of settlement); *LIBOR*, 327 F.R.D. at 494 (settlement "fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement.").  While Keurig is undoubtedly a large corporation seemingly capable of paying a substantial judgment, the presence and potential impact of the COVID-19 pandemic adds a layer of uncertainty to the Company's finances.  Additionally, Keurig is battling other

lawsuits from competitors and direct purchasers, which could settle or secure judgment before the indirect purchasers and dilute Keurig's ability to pay a more substantial judgment compared to the Settlement Amount. Although Keurig may have the ability to withstand a greater judgment, the result – a $31 million settlement – is still outstanding and weighs in favor of preliminary approval.

### 2.  Rule 23(e)(2)(C)(ii) – the Claims Process Is Fair and Rational

Pursuant to this factor, the Court examines the proposed "method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Note (2018). "[T]he plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). The Plan of Allocation is a fair, reasonable, and adequate method of equitably allocating and distributing the Settlement Amount to the Settlement Class Members, who make proper claims. The proposed Plan of Allocation represents a reasonable method of ensuring that the Settlement Class Members "get as much of the available damages remedy . . . as possible and is as simple and expedient a manner as possible." 4 William B. Rubenstein, Newberg on Class Actions § 12:15 (5th Ed.) (Westlaw 2018); *see also In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 25, 2016) ("A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."). Numerous courts have held that "a plan of allocation need not be perfect" to warrant court approval. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Pursuant to the proposed Plan of Allocation, the value of a Settlement Class Member's claim will be determined by the purchase price and amount of the affected products bought with an adjustment for where the claim accrued and the quality of proof submitted to support the claim. *See* Kaplan Decl., ¶ 75-77; Intrepido-Bowden Decl., Ex. G.[13]  According to the proposed Plan of Allocation, Settlement Class Members will be paid *pro rata* from the Settlement Fund based on the amount of their claim after any discount where appropriate based on (a) whether the Settlement Class Member can submit proof of (i) purchases of Keurig K-Cup Portion Packs, or (ii) purchase or registration of a Keurig single-serve brewer, or (iii) no proof of purchase at all; and (b) the location where they purchased their Keurig K-Cup Portion Packs.  Kaplan Decl., ¶ 77.

An adjustment based on location is necessary because a claim from a non-*Illinois Brick* repealer jurisdiction carries a higher degree of risk than a claim from a jurisdiction that has repealed *Illinois Brick Co. v. Ill.,* 431 U.S. 720 (1977).  Kaplan Decl., ¶ 77.  The former claim rests entirely upon certification of a Vermont national class, which cannot be assured, and thus non-*Illinois Brick* repealer claims should be discounted relative to claims that have a standalone basis for recovery. *Id.*  In addition, even though Illinois and Florida are repealer states, Illinois does not permit state antitrust class actions and Florida's repealer statute does not provide for treble damages.  For those reasons, purchasers from those states are treated in a separate category between non-repealer and repealer states. *See Beltran, et al., v. InterExchange, Inc., et al.*, Case No. 1:14-cv-03074-CMA-KMT, 2019 WL 3496692 (D. Colo. Aug. 1, 2019) (granting preliminary approval where the settlement benefit was weighted, in part, on the state in which the claimant was situated); *Townsend v. G2 Secure Staff, L.L.C., et al.,* Case No. 18STCV04429 (unpublished order) (Cal.

---

[13] The Declaration of Gina M. Intrepido-Bowden Regarding Proposed Notice Plan (ECF No. 1115) is referred to herein as "Intrepido-Bowden Decl."

Super. Ct. L.A. Cnty. July 7, 2020) (weighting a benefit award on the class member's state of residence or where the cause of action accrued in recognition of a potential jurisdictional defense).[14]   Where a proof of purchase of Keurig K-Cup Portion Packs or proof of purchase or registration of a Keurig single-serve brewer supports a claim, it serves as additional evidence of the claim's validity beyond a statement under penalty of perjury.  Kaplan Decl., ¶ 75.

To implement the Plan of Allocation and determine the value of Settlement Class Member claims, Settlement Class Counsel developed a Distribution Matrix, which was contained within the Long-Form Notice that was published on the settlement website.  *Id.*, ¶ 78.  Before publication, allocation counsel ("Allocation Counsel") reviewed the Distribution Matrix representing claimants aside from the repealer jurisdictions to ensure equity and fairness.  *Id.*.  When both sets of counsel reached an impasse, Settlement Class Counsel and Allocation Counsel enlisted Judge Farnan to resolve the dispute.  *Id.*, ¶ 79.  Following a mediation session and argument, Judge Farnan found that the Plan of Allocation and Distribution Matrix appropriately treated Settlement Class Member claims differently based on the rights provided by state laws and that the matrix values were fair and reasonable and provided an adequate allocation.  *Id.*; *see also* Farnan Decl. ¶¶ 10-12; Intrepido-Bowden Decl., Ex. G.  The Attorneys General from Illinois and Florida have both intervened and may object to the Plan of Allocation insofar as it treats Settlement Class Members from those states differently from Settlement Class Members in other repealer states. If they do, Settlement Class Counsel will answer any such objection in a supplemental filing.

---

[14] Plans of allocation discounting claims based on their likelihood of success help "ensure equitable treatment for members" of the Class.  *In re Facebook, Inc*., 343 F. Supp. 3d 394, 415 (S.D.N.Y. 2018).  Indeed, a "substantial" discount for Settlement Class Members from non-repealer states is reasonable because those Settlement Class Members are subject to a "defense [that] is more likely to limit recovery" based on where they purchased Keurig K-Cup Portion Packs.  *Id.,* 343 F. Supp. 3d at 415.

While the Distribution Matrix serves as a useful reference point, IPPs cannot calculate a final amount for a Settlement Class Member's share of the Settlement Amount until all claims are submitted and the treatment of Settlement Class Members in Florida and Illinois is resolved. After these open items are resolved, IPPs can determine how much each claim will receive from the Settlement Fund based on its share of all claims after adjustment under the matrix.[15]

Thus, the proposed Plan of Allocation is fair, reasonable, and adequate and warrants approval.[16] Furthermore, this factor weighs in favor of final approval of the settlement.

### 3. Rule 23(2)(C)(iii) – the Proposed Award of Attorneys' Fees Supports Final Approval

Concurrently with this motion, IPP Counsel is applying for attorneys' fees, reimbursement of litigation expenses, and service awards to Class Representatives[17]. IPP Counsel is applying for fees in the amount of 33-1/3% of the Settlement Fund plus $2,296,347.55 million in litigation

---

[15] Plaintiffs may establish a reasonable minimum threshold to ensure that the administrative costs of issuing small payments do not deplete the Settlement Fund. *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007) (approving a *de minimis* threshold in order to "save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs"); *In re Global Crossing Sec.*, 225 F.R.D. at 463 (same); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (approving $25 minimum payment); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497-98 (S.D.N.Y. 2009) (approving $10 minimum payment).

[16] IPPs have filed concurrently with this Memorandum a proposed Order for approval of the proposed Plan of Allocation (the "Proposed Allocation Order"). If the Special Master finds that the Plan of Allocation must be amended, then IPPs will submit a revised Proposed Allocation Order consistent with the Special Master's findings.

[17] The 31 IPPs appointed as class representatives (*see* ECF No. 1216) are Wasif Bala, Yelda Mesbah Bartlett, Lavinia Simona Biasell, Linda Bouchard, Bouchard & Sons Garage, Inc., Luke Cuddy, Jonna Dugan, Erin Dunbar, Larry Gallant, Denise Gilmore, Patricia Hall, Jennifer Harrison, Teena Marie Johnson, Lori Jo Kirkhart, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, John Lohin, Angus Macdonald, Edgar Medina, Jennifer Mileikowsky, Brier Miller Minor, David W. Nation, Patricia J. Nelson, Julie Rainwater, Betty Ramey, Lauren Jill Schneider, Shirley Anne Schroeder, Jason and Amy Stratman, and Toni Williams (collectively referred to as "Class Representative Plaintiffs").

expenses and costs along with $3,000 service awards to Class Representatives, who were deposed, and $1,500 service awards to Class Representatives, who were not deposed. For purposes of final approval, the requested fee is firmly within the range of fees granted from comparable class settlement funds and therefore weighs in favor of this Court's granting final approval. *See In re J.P. Morgan Stable Value Fund ERISA Litig.,* No. 12-CV-2548 (VSB), 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (approving 33-1/3% fee request of $75 million common settlement fund); *In re Platinum & Palladium Commodities Litig.,* No. 10cv3617, 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (approving 33-1/3% fee request of approximately $12 million common settlement fund); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146-47, 149 (S.D.N.Y. 2010) (approving 33.33% fee from $50 million common fund recovery); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *8 (33% fee request of $39 million common fund was reasonable). Under the Agreement, IPP Counsel will receive the applied-for fees and expenses only after this Court's order concerning attorneys' fees and costs. *See* Kaplan Prel. App. Decl., Ex. 1; *see also* Indirect Purchaser Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees, Litigation Expenses and Service Awards; Nam Fee Declaration; Warshaw Fee Declaration; Burt Fee Declaration.[18]

---

[18] The Declaration of Hae Sung Nam in Support of the Indirect Purchasers Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Litigation Expenses and Services Awards is referred to herein as "Nam Fee Declaration." The Declaration of Daniel L. Warshaw in Support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Litigation Expenses and Service Awards is referred to herein as "Warshaw Fee Declaration." The Declaration of Thomas H. Burt in Support of the Indirect Purchaser Plaintiffs' Motions for an Award of Attorneys' Fees, Litigation Expenses and Service Awards is referred to herein as "Burt Fee Declaration."

      **4.**      **Rule 23(e)(C)(iv) – Any Agreements Required to Be Identified Under Rule 23(e)(3)**

There are no agreements to be identified pursuant to Rule 23(e)(3).

      **5.**      **Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to One Another**

The Rule 23(e)(2)(D) factor includes "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed R. Civ. P. 23, 2018 Advisory Committee Note.  As discussed in Section I.D.2 above and pursuant to the Plan of Allocation, Settlement Class Members' individual share of the recovery will be apportioned based upon the evidence of their purchases and the strength of their claim.  *See In re Lithium Ion Batteries Antitrust Litig.,* No. 13-MD-02420, 2020 WL 7264559 at *12 (N.D. Cal. Dec. 10, 2020) ("The proposed 90/10 allocation in this case is appropriate in light of the fact that both residents of repealer and non-repealer jurisdictions released claims as part of this settlement, albeit with a risk-discounted value as to the non-repealer state class members."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 20-15697, D.C. No. 4:07-cv-05944-JST, ECF No. 5797 (9th Cir. July 22, 2020) (denying emergency motion for stay pending appeal for failure of non-repealer state class members to show irreparable harm to stay settlement proceedings in which they stood to receive no monetary consideration). The Release is tailored from the factual predicate for the Action and treats all Settlement Class Members equitably relative to one another.

## II.      THE NOTICE CAMPAIGN ADEQUATELY APPRISED CLASS MEMBERS OF THEIR RIGHTS

Due process mandates that the members of a settlement class receive "the best notice practical under the circumstances."  *In re Drexel Burnham Lambert Grp., Inc.*, 995 F.2d 1138, 1144 (2d. Cir. 1993).  However, the requirement of "the best notice practical" does not impose

"rigid rules" on a notice program, but instead imposes a "reasonableness" standard that is satisfied when the campaign "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart,* 396 F.3d at 114.  The contents of a notice are sufficient when they explain the general terms of the settlement and the proposed attorneys' fees, along with the date, time and place of the fairness hearing, in a way that would be "understood by the average class member."  *Id*., 396 F.3d at 114.  As detailed below, the collective notice provided to the Settlement Class here satisfies the due process requirements.

IPPs and JND Legal Administration, the court-appointed Claims Administrator, designed a Notice Plan, which provides Settlement Class Members with the best notice practicable under the circumstances.  The Notice Plan included an extensive 8-week media campaign through the leading digital network (Google Display Network), the top social media site (Facebook), and the top business social network (LinkedIn).  The ads provided a direct link to the settlement website, where Settlement Class Members could review information about the case, the settlement, and file a claim online.  Furthermore, IPPs also published a summary notice to the Class via *Cision PRNewsWire*, a national electronic press release publisher (the "Summary Notice").  Like the ads, the Summary Notice directed Settlement Class Members to the settlement website, where they could find a long-form notice (the "Notice") and the Claim Form.  Additionally, the settlement website also contains additional information and pertinent materials about the lawsuit, including the Agreement, the operative complaint, the orders on the motions to dismiss and for reconsideration, the Distribution Matrix, and the Court's orders granting preliminary approval of the settlement.  The Notice Plan also included a half-page publication in *People* magazine, a weekly publication with circulation of over 3.4 million and total audience of over 34.9 million.

The Notice Plan was clearly successful. As of April 22, 2021, there had been 327,577 unique visitors to and 516,438 total views of the website, and more than 52,500 Proofs of Claim had been filed. JND Decl. ¶¶ 14, 22.  Claimants may submit their claims by no later than July 15, 2021.

The Notice Plan here was the best practicable under the circumstances because IPPs (and Defendant) had limited information on the identity of indirect purchasers because Keurig's sales to indirect purchasers travel through distribution channels and a chain of commerce.  Courts have recently acknowledged that, under similar circumstances, a notice plan such as that here was sufficient and the best notice practicable.  *See Langan v. Johnson & Johnson Consumer Companies, Inc.,* No. 3:13-cv-01471, ECF No. 188 (Unpublished Order) (D. Conn. Feb. 4, 2019) (granting preliminary approval of settlement with digital ad and social media campaign); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 WL 511953, at *11 (N.D. Cal. Jan. 31, 2020) ("Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign[.]"); *Roes v. SFBSC Management, LLC*, 944 F.3d 1035 (9th Cir. 2019) (reversed approval of class action notice program because the plan did not include electronic notice); *Warciak v. One, Inc.*, No. 2018-CH-06254, 2018 Ill. Cir. LEXIS 9002, at *2-3 (Ill. Cir. Ct. Oct. 3, 2018) (A digital campaign that "included an online media campaign and the creation of the Settlement Website, constituted the best notice practicable under the circumstances[.]").[19]  In total, the digital ad campaign provided 301,090,752 impressions,

---

[19] Courts in this Circuit have held that individual notice is not required.  *See Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (Publication "adequately served to notify class members that a potential compromise had been reached."); *see also New York by Vacco v. Reebok Int'l*, 903 F. Supp. 532, 533 n.1 (S.D.N.Y. 1995) (Publication notice was the best notice practicable "given the enormous number of potential class numbers who had purchased products, the lack of warranty cards to identify customers and the high costs of individual notice."); *Katz v. ABP Corp.*, No. 12-CV-04173 (ENV) (RER), 2014 WL 4966052, at *4 (E.D.N.Y. Oct. 3, 2014) (approving notice via national and regional publication).  Likewise, courts nationally have found notice can be sufficient even where there is no direct component.  *See In re Pokémon Go Nuisance Litigation*,

which was 9,126,752 impressions more than originally estimated. JND Decl., ¶ 6.  In its entirety, the Notice Plan accomplished a reach of more than the estimated 70% (otherwise summarize results of notice plan).  JND Decl. at ¶23.  Accordingly, the Notice Plan adequately apprised class members of their rights and weighs in favor of final approval of the settlement.

## III.     THE REACTION OF THE SETTLEMENT CLASS FAVORS APPROVAL

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.  In fact, the lack of objections may well evidence the fairness of the Settlement."  *In re Payment Card*, 2019 WL 6875472, at *16.  Although the fairness period is ongoing, the Settlement Class's initial reaction to the settlement is favorable.  *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").  To date, only one purported objector has come forward and filed a technically deficient objection to the settlement.  ECF No. 1244.  The objection fails to conform with the requirements outlined in the Court-approved Notice.  *See* ECF No. 1244 *contra* ECF No. 1115, Ex. 7.  Furthermore, ***no exclusion request(s) have been received***.  JND Decl., ¶ 17.  The Claims Administrator will submit an updated report following the May 17, 2021 deadline for filing objections and opt-outs.  IPPs will respond to any later-filed objections by no later than May 26, 2021.

### CONCLUSION

For the foregoing reasons, IPPs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation should be GRANTED.

Dated: May 7, 2021.

---

Case No. 3:16-cv-04300, ECF No. 131 (N.D. Cal. May 2, 2019); *Holt, et al., v. Murphy Oil USA*, 17-cv-00911-RV-HTC, ECF No. 24 (N.D. Fla. Mar. 18, 2019).

/s/ Robert N. Kaplan
Robert N. Kaplan
Gregory K. Arenson
Hae Sung Nam
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY  10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7114

/s/ Mark C. Rifkin
Mark C. Rifkin
Thomas H. Burt
Patrick Donovan
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

/s/ Clifford H. Pearson
Clifford H. Pearson
Daniel L. Warshaw
Matthew A. Pearson
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Proposed Settlement Class Counsel*