**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542 |
| | Master Docket No. 1:14-md-02542-VSB |
| This Document Relates To: | Civil Action No. 1:14-03790-VSB |
| Indirect Purchaser Actions | |

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS**

953412.5

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................1

HISTORY OF THE LITIGATION ...........................................................3

I.      IPP COUNSEL'S INVESTIGATION .................................................3

II.     IPP COUNSEL FILED THIS CLASS ACTION DESPITE FACING
        CONSIDERABLE CONTINGENT RISKS AND STRONG LEGAL
        OPPOSITION .............................................................................4

III.    IPP COUNSEL'S EFFORTS THROUGHOUT DISCOVERY WERE FOR THE
        BENEFIT OF THE CLASS ..............................................................6

        A.      Party Discovery.................................................................6

        B.      Third-Party Discovery .......................................................8

        C.      Work With Experts .........................................................10

IV.     MEDIATION AND SETTLEMENT ...............................................11

LEGAL ARGUMENT.........................................................................12

V.      LEGAL STANDARD....................................................................12

VI.     IPP COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE..............13

        A.      The Fee Request is Reasonable Under the *Goldberger* Factors ...........13

                1.      IPP Counsel Invested Substantial Time and Resources During the
                        More Than Seven Years of this Litigation.................................14

                2.      This Antitrust Class Action Is Extremely Complex .................16

                3.      The Fee is Warranted Based on the High-Risk Nature of the Action........16

                4.      IPP Counsel Provided (and Continue to Provide) High-Quality
                        Representation.................................................................19

                5.      The Fee Request Is Reasonable in Relationship to the Settlement............20

                6.      Public Policy Supports Approval of the Fee.............................21

        B.      The Fee Request is Reasonable Under a Percentage-of-Recovery Analysis.........22

        C.      A Lodestar-Multiplier "Cross-Check" Further Confirms the
                Reasonableness of the Requested Fee....................................................23

        D.      The Reaction of the Class Supports the Fee Request ...........................24

VII.    IPP COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION
        EXPENSES IS REASONABLE..........................................................25

VIII.   CLASS REPRESENTATIVE PLAINTIFFS' REQUEST FOR A MODEST
        SERVICE AWARD IS REASONABLE................................................27

IX.     PAYMENT OF CLAIMS ADMINISTRATOR FEES AND EXPENSES ......................28

CONCLUSION................................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. Town Sports Int'l, LLC*,
No. 09 CIV. 10388 DF, 2012 WL 6720919 (S.D.N.Y. Dec. 18, 2012) ...............................12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775 (JG) (VVP), 2011 WL 2909162 (E.D.N.Y. July 15, 2011) .......................13

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................................17

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................................................24

*Blum v. Stenson*,
465 U.S. 886 (1984)...........................................................................................................12, 23

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
MDL No. 1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .................................................17

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992)..........................................................................................18

*In re Citigroup Inc. Bond Litig.*,
988 F. Supp. 2d 371 (S.D.N.Y. 2013)......................................................................................16

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................22, 24

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................................23

*In re Credit Default Swaps Antitrust Litig.*,
No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)......................12, 21, 26

*DeLeon v. Wells Fargo Bank, N.A.*,
No. 12 Civ. 4494 (RLE), 2015 WL 2255394 (S.D.N.Y. May 11, 2015)...............................27

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .......................19, 25, 26

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).............................................................................................18

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................16

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d Cir. 2000)....................................................... *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)...........................22, 24

*In re Holocaust Victim Assets Litig.*,
    No. CV 06-0983 (FB) (JO), 2007 WL 805768 (E.D.N.Y. Mar. 15, 2007) ...........................16

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................22, 24

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 Civ. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012)................................18, 24

*Karic v. Major Auto. Cos.*,
    No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016)................................22

*Levin v. Res. Cap. Corp.*,
    No. 1:15-CV-07081-LLS, 2018 WL 3725780 (S.D.N.Y. Aug. 3, 2018) ................................22

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................22

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................13

*McDaniel v. Cnty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)................................................12

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................16, 26

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ................................................19

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)................................................25

*In re Mun. Derivatives Antitrust Litig.*,
    No. 08-02516 (VM), 2016 WL 11543257 (S.D.N.Y. July 8, 2016)................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................16, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ............................................................................18, 19

*Pillsbury Co. v. Conboy*,
    459 U.S. 248 (1983).........................................................................................................13, 21

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2006)...................................................................................................14

*Springer v. Code Rebel Corp.*,
    No. 16-cv-3492 (AJN), 2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) ..................................22

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)..................................17

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................................................16, 22

*Viafara v. MCIZ Corp.*,
    No. 12 CIV. 7452 RLE, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ....................................14

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................................................26

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ......................25

*Wal-Mart Stores Inc. v. U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).....................................................................................................12

*In re Warner Comm'ns. Secs. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)........................................................................................20

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................................12, 20, 21

**Rules**

Federal Rule of Civil Procedure 23(h) ............................................................................................25

**Other Authorities**

Alba Conte, *Attorney Fee Awards* § 2.08 (3d ed. 2004)................................................................25

Joshua P. Davis, *Toward an Empirical and Theoretical Assessment of Private
    Antitrust Enforcement*, 36 Seattle U.L. Rev. 1269, 1293-95 (2013) ...................................23

Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics
    Walks*, 65 Fordham L. Rev. 247, 248 (1996) .......................................................................23

Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement:*
*An Analysis of Forty Cases*, 42 U.S.F. L. REV. 879 (July 2008) ............................................. 23

## PRELIMINARY STATEMENT

After seven years of zealous and effective prosecution of this action (the "Action"), counsel for Indirect Purchaser Plaintiffs ("IPPs")[1] achieved a settlement that provides significant relief for the benefit of the Settlement Class.[2] The $31 million settlement secured by Settlement Class Counsel[3] following months of arm's-length negotiations through a respected mediator, United Stated District Court Judge Joseph J. Farnan, Jr. (Ret.). The settlement provides substantial relief to the Settlement Class in exchange for a release of their claims against Defendant Keurig Green Mountain, Inc. ("Keurig") relating to events that transpired many years ago as alleged in the Third Consolidated Amended Complaint (ECF No. 631)("TCAC").

The settlement reflects the skill, expertise, and hard work of IPP Counsel. The resulting benefit to Class members is substantial when compared to the considerable litigation risks. To achieve this result, IPP Counsel prosecuted a complex antitrust case against a large corporation attacking its core business model and without the benefit of a parallel government action. IPP Counsel devoted substantial efforts, resources, and money to the prosecution of this Action over seven years despite the risks. *See* Declaration of Robert N. Kaplan In Support of Indirect Purchaser Plaintiffs' (1) Motion For Final Approval of Class Action Settlement and Approval of Plan of Allocation and (2) Motion For An Award of Attorneys' Fees, For Reimbursement of Expenses,

---

[1] "IPP Counsel" collectively refers to Arthur N. Bailey & Associates/Rupp, Bartko Zankel Bunzel & Miller, Bozeman Law Firm, Gainey McKenna, Hart McLaughlin & Eldridge, Isquith Law Firm PLLC, Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Lynn, Lynn, Blackman & Manitsky, P.C., Oliver Law Group, Pearson Simon & Warshaw LLP ("PSW"), Polsinelli, PC, Preti Flaherty, Pritzker Levine LLP, Segal McCambridge Singer & Mahoney, Ltd, Thrash Law Firm, P.A., Zoll Kranz & Borgess LLC, Zwerling Schachter & Zwerling, and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein").

[2] "Settlement Class" or "Class" shall have the same meaning as in the Order granting preliminary approval of the settlement (ECF No. 1216) and in the Court-approved Notice.

[3] As used herein and as appointed by the Court (ECF No. 36), "Settlement Class Counsel" collectively refers to Kaplan Fox, PSW, and Wolf Haldenstein. *See also* Order granting preliminary approval of the settlement (ECF No. 1216).

and Incentive Awards For The Named Plaintiffs ("Kaplan Decl.") ¶ 3. The risks that IPP Counsel faced were significant and consisted of the legal uncertainty and complex issues involved in opposing Keurig's motions to dismiss, as well as the financial risk in continuing to litigate this Action for nearly two years while Keurig's motion to dismiss was pending. *Id*. ¶ 5. Finally, the significant result obtained by Settlement Class Counsel was achieved only after months of hard-fought settlement negotiations, and with Judge Farnan's recommendation ultimately leading to the agreement of the parties. *Id*. ¶¶ 57-62.

IPP Counsel respectfully request that the Court award attorneys' fees in the amount of $10,333,333.33 as compensation for their efforts. The requested fee represents 33 1/3% of the settlement, which, as explained below (section VI.B, *infra*), is well within the amounts of fees awarded in the Second Circuit. The reasonableness of this award is supported and confirmed by the fact that a lodestar "cross-check" results in a 0.49 "***negative***" multiplier. In addition, IPP Counsel also seek reimbursement in the amount of $2,298,015.93 for reasonable and necessary litigation expenses, which were advanced by IPP Counsel without any guarantee that they would be reimbursed, as well as modest service awards of $3,000 to each of the eleven Class Representative Plaintiffs who had their depositions taken, and $1,500 for the remaining twenty Class Representative Plaintiffs[4] ($63,000 total) in recognition of their efforts and sacrifices in leading this Action.

---

[4] The 31 IPPs appointed as class representatives (*see* ECF No. 1216) are Wasif Bala, Yelda Mesbah Bartlett, Lavinia Simona Biasell, Linda Bouchard, Bouchard & Sons Garage, Inc., Luke Cuddy, Jonna Dugan, Erin Dunbar, Larry Gallant, Denise Gilmore, Patricia Hall, Jennifer Harrison, Teena Marie Johnson, Lori Jo Kirkhart, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, John Lohin, Angus Macdonald, Edgar Medina, Jennifer Mileikowsky, Brier Miller Minor, David W. Nation, Patricia J. Nelson, Julie Rainwater, Betty Ramey, Lauren Jill Schneider, Shirley Anne Schroeder, Jason and Amy Stratman, and Toni Williams (collectively referred to as "Class Representative Plaintiffs").

As a result of the robust, Court-approved Notice (*see* ECF No. 1216), all Class members will have an opportunity to be heard on this motion. IPP Counsel informed all Class members that they would seek an award of attorneys' fees and reimbursement of litigation expenses consistent with this motion.[5] Class members were also informed of the case website that was established, https://www.keurigindirectpurchasersettlement.com, on which the Notice could be found. Kaplan Decl. ¶ 69. This motion will be posted on the case website contemporaneously upon filing. Furthermore, IPP Counsel also informed Class members that the Court will determine the amount of the attorneys' fees and litigation expenses to be paid to IPP Counsel. *Id*. ¶¶ 70-71. Finally, Class members were informed that they may object to any aspect of the settlement and that the deadline to do so is May 17, 2021. *Id*. ¶ 72. Prior to the Court's fairness hearing on June 4, 2021, Settlement Class Counsel will file a response with respect to any objections received, including any directed at this motion.

As detailed herein, this motion comports with applicable law, is well-justified, and should be granted.

## **HISTORY OF THE LITIGATION**

## I.    **IPP COUNSEL'S INVESTIGATION**

IPP Counsel's investigation into Keurig's anticompetitive conduct to preserve its monopoly over Keurig K-Cup Portion Packs began over seven years ago. IPP Counsel opened their files and commenced their investigation in March 2014. *Id*. ¶ 8. Since that time, IPP Counsel have worked unwaveringly to investigate, develop, and prove this Action without compensation. *Id*. ¶ 87. Prior to filing this Action, IPP Counsel conducted a thorough investigation to determine

---

[5] *See* https://www.keurigindirectpurchasersettlement.com/admin/services/connectedapps.cms. extensions/1.0.0.0/asset?id=6a1e9dad-8199-492c-a4ee-7252cd94cf46&languageId= 1033&inline=true ("*Long Form Notice*") (last visited April 29, 2021); *see also* Order granting preliminary approval of settlement approving notice plan, ECF No. 1216.

the effect of Keurig's anticompetitive conduct on indirect purchasers. *Id*. ¶ 11. IPP Counsel reviewed publicly available documents and conducted extensive research on claims and state law, prepared internal memoranda, and conferred with co-counsel. *Id*. Furthermore, IPP Counsel retained and consulted with experts, and interviewed numerous potential class representatives as part of their investigations. *Id*. ¶ 7. Notably, IPP Counsel conducted this investigation from the ground up without the benefit of any parallel federal or state regulatory action against Keurig.

As a result of IPP Counsel's investigations, it was determined that there was a basis to allege that Keurig engaged in anticompetitive practices. *Id*. ¶ 7.

## II.    IPP COUNSEL FILED THIS CLASS ACTION DESPITE FACING CONSIDERABLE CONTINGENT RISKS AND STRONG LEGAL OPPOSITION

IPP Counsel knew from the beginning that there were difficult legal hurdles to overcome on liability, damages, and class certification. Nevertheless, IPP Counsel aggressively and persistently prosecuted this Action for more than seven years knowing the possibility that they might recover nothing for their services.

In 2014, several complaints were filed on behalf of IPPs alleging antitrust claims against Keurig. *See Id*. ¶ 8. The filing of these various complaints led to motions before the United States Judicial Panel on Multidistrict Litigation ("JPML"). *Id*. On June 6, 2014, the JPML transferred all related class actions to Judge Vernon S. Broderick in the Southern District of New York. *Id*. Settlement Class Counsel filed a motion to be appointed as interim co-lead and liaison counsel for IPPs (ECF Nos. 6-8), which was granted on June 26, 2014. ECF No. 36. IPP Counsel were able to work efficiently and in coordination with each other to draft and file a Consolidated Amended Complaint. ECF No. 61 ("CAC"). The CAC was a detailed 103 page pleading alleging eleven claims for relief against Keurig. The gravamen of the IPPs' claim is that Keurig's conduct, including, inter alia, engaging in extensive preferential contracts with major horizontal competitors

in the coffee-roasting business, unlawfully restrained trade throughout the supply chain by tying sales of its portion pack brewers to sales of its portion packs. In entering into these exclusive contracts, Keurig gained control over virtually every aspect of the Keurig compatible cup market, enabling Keurig to exclude competition from this market. Keurig's exclusive contracts with many distributors and retailers restricted or prevented them from doing business with Keurig compatible cup competitors. The CAC sought relief for a nationwide class and indirect-purchaser state classes. The nationwide class sought monetary, equitable, and injunctive relief under Vermont state law. IPPs also brought claims on behalf of individual state-law classes under applicable antitrust and other laws of 30 states. While Plaintiffs argued that *per se* treatment was appropriate, Keurig took the position that Plaintiffs' claims should be examined under a Rule of Reason standard, requiring more elements of proof from Plaintiffs and opening up additional defenses for Keurig.

On October 6, 2014, Keurig filed a Motion to Dismiss the CAC. ECF Nos. 171-173. Thereafter, IPPs filed a Second Consolidated Amended Complaint ("SCAC") (ECF No. 238), which Keurig once again moved to dismiss (ECF Nos. 231-232, 255). IPP Counsel worked efficiently with one another in conducting research, strategizing, and drafting the opposition to Keurig's motion. *Id*. ¶ 7. On November 27, 2017, approximately two years later, the Court partially granted Keurig's motion, dismissing the federal claims and stating that, with respect to the remaining state-law IPP claims, a decision would be forthcoming. ECF No. 379. IPPs received an order on the balance of the claims on April 22, 2019. ECF No. 581. The length of time that Keurig's motion to dismiss was pending underscores the complexity of the issues before the Court, which were researched and briefed by IPP Counsel. Shortly thereafter, on June 21, 2019, IPPs filed their TCAC, the operative complaint in this Action.

/ / /

## III.   IPP COUNSEL'S EFFORTS THROUGHOUT DISCOVERY WERE FOR THE BENEFIT OF THE CLASS

### A.   Party Discovery

Discovery in this Action was a labor-intensive process conducted over several years. IPP Counsel coordinated with four other plaintiff groups[6] on all aspects of fact discovery to offset the risk that private or confidential material might be disseminated and in the interest of judicial economy.[7] Kaplan Decl. ¶ 9. At the outset of discovery, IPP Counsel participated in the drafting of both the stipulated orders regarding Electronically Stored Information and depositions. *Id*. IPP Counsel drafted and served requests for the production of documents on Keurig on August 31, 2016. *Id*. ¶ 25. Keurig objected to the IPPs requests for production and several meet and confers followed where the scope and timing of Defendant's responses was discussed. *Id*. ¶ 26. As a result of the meet and confers, the scope of the discovery requests was heavily negotiated by the parties, as each plaintiff group had different needs with respect to documents, and data. *Id*. Keurig produced 3.8 million documents in this Action. *Id*. ¶ 27. IPP Counsel participated heavily in the review of these documents. *Id*. ¶ 29.

In 2019, IPPs served Defendant with their first set of interrogatories. *Id*. ¶ 30. Defendant objected and responded on January 21, 2020. Settlement Class Counsel found Defendant's

---

[6] On January 11, 2019, McLane Company, Inc. ("McLane") filed a complaint against Defendant alleging violations of the federal antitrust laws in connection with sales of single-serve coffee products. On January 15, 2019, McLane filed a Statement of Relatedness to the multidistrict litigation docketed in this Court at 14-MD-2542 and the matter was thereafter accepted as related on January 23, 2019. IPPs, Treehouse, Rogers, DPPs, and McLane collectively referred to as "Plaintiffs".

[7] IPPs coordinated their discovery efforts with competitor plaintiffs JBR, Inc. (d/b/a Rogers Family Company) ("Rogers"), and TreeHouse Foods Inc., Bay Valley Foods, LLC and Sturm Foods Inc. ("Treehouse"), Direct Purchaser Plaintiffs ("DPP"), and McLane, all of whose actions were coordinated in this Court for pretrial purposes under the caption *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, No. 1:14-md-02542 (VSB), No. 1:14-mc-02542 (VSB) (the "Related Actions").

interrogatory responses to be insufficient and incomplete, and conferred with Defendant's counsel. 31. After several meet-and-confers, Defendant agreed to supplement its responses. *Id.*

Furthermore, Class Representative Plaintiffs were served with discovery requests including interrogatories and requests for production of documents from Keurig, which commanded written responses. *Id.* ¶ 37. Although IPPs met the court-ordered substantial completion deadline for production of documents, Defendant later wrote a letter to IPPs, taking issue with IPPs' objections and responses. *Id.* ¶ 41. As a result, counsel for IPPs proceeded to extensively meet and confer with Defendant's counsel for seven months concerning IPPs' objections. *Id.* After this extended period of negotiations, IPPs, in addition to other compromises, ultimately agreed to a list of 112 search terms to be used to search Class Representative Plaintiffs' email accounts for responsive documents. *Id.* IPP Counsel then collected, reviewed and produced documents from the Class Representative Plaintiffs. *Id.*

Defendant served IPPs with two sets of interrogatories. *Id.* ¶¶ 45-46. Settlement Class Counsel drafted and served IPPs' objections and responses to Defendant's first set of interrogatories and met and conferred with Defendant's counsel over the subsequent months concerning IPPs' objections. *Id.* IPPs agreed to provide certain supplemental responses. *Id.* Defendant later served IPPs with their second set of interrogatories and requests for admission, which consisted of 426 separate requests. *Id.* Settlement Class Counsel began preparing responses before the settlement occurred. *Id.*

Weekly conference calls were conducted among attorneys from all plaintiff groups to ensure discovery proceeded timely and as efficiently as possible. *Id.* ¶ 21. Additionally, Settlement Class Counsel held separate weekly calls to discuss tasks assigned to the IPPs, as well as tasks specific to the IPP claims in this lawsuit. *Id.* These weekly strategy calls were important to the

efficient organization and prosecution of this Action. *Id*. In addition to the weekly strategy calls, Settlement Class Counsel participated in regular calls for various sub-committees such as the electronic discovery, third-party discovery, and expert subcommittees. *Id*.

Due to breadth of this Action and the number of parties involved, there were a significant amount of depositions that took place. Settlement Class Counsel prepared for and took nine depositions of Defendant and non-parties. *Id*. ¶ 47. Further, Settlement Class Counsel participated in, or reviewed the transcripts of, depositions of Keurig employees, ex-employees, and corporate representatives (Federal Rule of Civil Procedure 30(b)(6) deponents), other individuals employed, or previously employed, by Treehouse, Rogers, and the DPP class representatives. *Id*. Settlement Class Counsel prepared and attended many of these depositions to ensure that the necessary testimony was obtained during the course of the deposition and stood prepared to solicit the testimony. *Id*. ¶ 49. Settlement Class Counsel dedicated significant time and resources to coverage of these depositions, including review and analysis of documents, selection of documents for use as deposition exhibits, preparation of deposition outlines, and travel. *Id*. ¶ 50. Furthermore, IPP Counsel prepared for and defended the depositions of eleven IPP class representatives David W. Nation, Linda Bouchard, Bouchard & Sons Garage, Inc., Jonna Dugan, Jennifer Harrison, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, Angus Macdonald, Patricia J. Nelson, Julie Rainwater. *Id*. ¶ 53.

### B.    Third-Party Discovery

One of the most challenging and labor-intensive tasks in this Action was third-party discovery. Twenty-five third-party subpoenas were served by IPPs in this Action. *Id*. ¶ 32. Settlement Class Counsel were primarily responsible for twenty of the third-party subpoenas. *Id*. These third-party subpoenas commanded the production of documents, transaction and cost data, and in several instances a Rule 30(b)(6) deposition. *Id*. To limit duplication of effort and the burden

on third parties, Settlement Class Counsel coordinated with other plaintiffs' counsel to ensure that each plaintiffs' evidentiary needs were met in connection with each subpoena even where IPPs were not primarily responsible for negotiation. *Id*. Most of the third party subpoenas were contested resulting in lengthy meet and confers regarding, amongst other things, the scope of production and the need for the information. *Id*. One of the contested subpoenas was Amazon. After Amazon failed to produce transactional data and materials responsive to the subpoena, IPPs moved to compel Amazon. *Id*. ¶ 35. Oral argument took place, and the Court ordered the parties to meet and confer on the number of product codes to be searched for transactional data and on the custodians and search terms. *Id*.

Two of the most challenging third-party subpoenas were Walmart, Inc. and Sam's West, Inc. (d/b/a Sam's Club) (collectively "Walmart").[8] Declaration of Daniel L. Warshaw In Support of The Indirect Purchaser Plaintiffs' Motion For Final Approval of Settlement and Motion For Attorneys' Fees, Litigation Expenses and Service Awards ("Warshaw Decl.") ¶ 22. Each of the five plaintiff groups had different needs with respect to these subpoenas and viewed these third parties as being critical in proving their respective claims. *Id*. As such, there were extensive negotiations as to custodians, search terms, document collection and production logistics, and the scope and format of transactional data that spanned nearly two years. *Id*.

In addition to the third parties discussed above, Settlement Class Counsel also handled several other third-party subpoenas including, but not limited to, Amazon.com, Inc., Coffee Bean & Tea Leaf (International Coffee), Dunkin' Brands, Newman's Own, Staples, Inc., Target Corporation, Kohl's Corporation, BJ's Wholesale Club, DS Services, Essendant, Vistar, Best Buy

---

[8] Walmart is the parent corporation of Sam's West, Inc.  As such, these subpoenas were handled in tandem.

Co., Aramark, Twinings, J. M. Smucker Company (co-owned Dunkin' Donuts K-Cups), McLane, Bed, Bath and Beyond, Starbucks, and WB Mason. Kaplan Decl. ¶ 33. Third parties produced over 1.5 million documents in this action; IPP Counsel actively participated in the document review of the third-party documents. *Id*. ¶ 27. Additionally, many of the third parties either prepared a declaration in lieu of a deposition or produced a witness for a Rule 30(b)(6) deposition. *Id*. ¶ 32. An attorney from Settlement Class Counsel was in attendance[9] for most of these depositions. *Id*.

### C.     Work With Experts

IPP Counsel retained Econ One Research, Inc. economic experts Drs. Jeffrey Leitzinger and Philip Johnson and their staff (collectively, the "Experts") to prepare expert reports and testimony in support of IPPs' anticipated motion for class certification and on the merits of IPPs' claims. IPP Counsel devoted significant time, resources, and expense working with the Experts. *See id*. ¶ 54. Specifically, Settlement Class Counsel worked closely with the Experts throughout fact discovery to ensure the necessary documents and data were sought from and produced by Keurig and various third parties. *Id*. With the involvement of Settlement Class Counsel, the Experts needed to process and gain an understanding of the transaction and cost data, which were in varying forms from Keurig, the competitor plaintiffs and third parties, and coordinate with the other plaintiffs' experts in connection with their work for class certification and on the merits to maximize efficiencies and avoid duplication of efforts. *Id*. The Experts also advised Settlement Class Counsel for mediation. *Id*. ¶ 55.

During the time that Keurig's motions to dismiss the claims of Treehouse, Rogers, and DPPs had been denied, while Keurig's motion to dismiss IPPs' claims was still pending, IPPs

---

[9] Settlement Class Counsel attended remotely in most circumstances.

forcefully participated in the Action and the extensive fact discovery, while not knowing which, if any, of their claims would survive Keurig's motion to dismiss.

## IV.     MEDIATION AND SETTLEMENT

Preliminary settlement negotiations between IPPs and Keurig began in September 2019. *Id*. ¶ 56. In February 2020, Settlement Class Counsel continued discussions with Keurig regarding mediation and enlisted the help of Judge Farnan. *Id*. ¶ 57. Due to COVID-19, the mediation session with Judge Farnan was held via Zoom on May 8, 2020. *Id*. During the mediation session, the parties were able to participate in both joint and private discussions. *Id*. In advance of the mediation session, Settlement Class Counsel engaged in extensive strategy discussions. Significant legal analysis was conducted to assess the litigation risk of IPPs' claims and the relative strength and weaknesses of Keurig's defenses. *See id*. A settlement was not reached during the May 8, 2020 mediation session. *Id*. However, negotiations continued with the help of Judge Farnan. *Id*. ¶ 58. After months of contentious negotiations, on July 21, 2020, the parties accepted Judge Farnan's mediator's proposal and reached a settlement in principle. *Id*. ¶ 59. On August 14, 2020, IPPs and Keurig memorialized the complex settlement and executed a Stipulation of Settlement and Release creating a $31 million settlement fund. *Id*. ¶ 60. The settlement was only achieved following extensive and vigorous negotiations between IPPs and Keurig with the assistance of a seasoned mediator, Judge Farnan.

Once the settlement was reached, Settlement Class Counsel sought bids from administrators to provide notice to the IPP Class. *Id*. ¶ 65. Settlement Class Counsel worked with the selected administrator, JND Legal Administration ("JND"), to establish a notice plan for the distribution and administration of the settlement. *Id*. ¶ 67. Further, Settlement Class Counsel in conjunction with JND prepared the necessary notice documents and declarations for the Motion for Preliminary Approval that was filed with the Court on September 30, 2020. *Id*. ¶ 66; ECF No.

1113. IPPs Motion for Preliminary Approval was granted by the Court on December 16, 2020. ECF No. 1216.

## LEGAL ARGUMENT

### V.     LEGAL STANDARD

"'Attorneys whose work created a common fund for the benefit of a group of plaintiffs 'may receive reasonable attorneys' fees from the fund." *See In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at \*16 (S.D.N.Y. Apr. 26, 2016) ("*CDS*"). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *Abel v. Town Sports Int'l, LLC*, No. 09 CIV. 10388 DF, 2012 WL 6720919, at \*26 (S.D.N.Y. Dec. 18, 2012) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method" although "'the trend in this Circuit is toward the percentage method.'" *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *see also Blum*, 465 U.S. at 900 n.16 (noting that in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Wal-Mart Stores Inc. v. U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (noting that "[t]he trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (citations omitted).

The percentage method provides "appropriate financial incentives" necessary "to attract well-qualified plaintiffs' counsel who are able to take a case to trial," while also "directly align[ing] interests of the class and its counsel" by providing "a powerful incentive for the efficient prosecution and early resolution of litigation." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355, 359 (S.D.N.Y. 2005). "Although district courts may use both methods when approving an award of attorneys' fees, the Second Circuit encourages using the lodestar method only as a

cross-check for the percentage method." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *14 (S.D.N.Y. Dec. 23, 2009) (citing *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000)). Awarding reasonable attorneys' fees from the common fund recognizes and compensates IPP Counsel's efforts in bringing and prosecuting this case and advances the purpose of the antitrust laws, which rely on private actions like this one to further important public-policy goals. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) (noting importance of private actions "as a means of furthering the policy goals of . . . the federal antitrust laws").

## VI.   IPP COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

Without "'adequate attorneys' fee awards, many antitrust actions would not be commenced, since the claims of individual litigants, when taken separately, often hardly justify the expense of litigation.'" *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG) (VVP), 2011 WL 2909162, at *6 (E.D.N.Y. July 15, 2011). Here, IPP Counsel request a fee award of $10,333,333.33 to be paid from the Settlement Amount. Under either the percentage-of-recovery or lodestar approach, Settlement Class Counsel respectfully submit that the request of 33 1/3% of the settlement is reasonable. The request compensates IPP Counsel for their investment of time, expertise, and capital, which produced a successful outcome for the Settlement Class in litigation that was complex and high risk.

### A.   The Fee Request is Reasonable Under the *Goldberger* Factors

Courts evaluating whether a fee is reasonable consider "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50. The *Goldberger* factors "need not be applied in a formulaic way" because each case is different and "in certain cases, one factor may outweigh

the rest." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2006). Settlement Class

Counsel respectfully submit that an analysis of the *Goldberger* factors, as well as the percentage-

of-recovery and lodestar analyses herein, demonstrate that the fee and expense request is

reasonable and appropriate and warrants approval by the Court.

1.   IPP Counsel Invested Substantial Time and Resources During the More
     Than Seven Years of this Litigation

"The size and difficulty of the issues in a case are [also] significant factors to be considered

in making a fee award." *Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE, 2014 WL 1777438, at

*11 (S.D.N.Y. May 1, 2014) (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97

(S.D.N.Y. 1996)). IPP Counsel have dedicated tremendous time, effort, and expense to this

litigation, and they have done so entirely on a contingent basis with no guarantee of compensation

or even reimbursement of expenses. As more fully set forth in Section VI.B below, since the

inception of this case in March 2014, IPP Counsel have dedicated 33,221.84 hours of attorney and

other legal professional time through March 31, 2021. IPP Counsel have also spent $2,298,015.93

for reasonable and necessary litigation expenses in prosecuting this Action. *See* Section VII *infra*.

As more fully set forth in the Kaplan Decl., and declarations of IPP Counsel filed

concurrently herewith and in support of this motion and IPPs' Motion for Final Approval of Class

Action Settlement, IPP Counsel expertly litigated this complex antitrust class action by: (i)

researching the facts and investigating the claims that formed the basis of an initial complaint; (ii)

drafting and filing the CAC, SCAC, and TCAC; (iii) conducting the necessary research and

opposing Keurig's motions to dismiss; (iv) propounding, responding, and meeting and conferring

on written discovery; (v) collecting, reviewing, and producing documents on behalf of Class

Representative Plaintiffs; (vi) drafting and serving third-party subpoenas; (vii) negotiating the

scope of third-party subpoenas; (viii) drafting and filing motions to compel to enforce third-party

subpoenas; (ix) reviewing documents produced by Keurig and various third parties; (x) preparing, taking, defending, and attending various party and non-party depositions; (xi) working closely with experts; and, (xii) engaging in settlement discussions and mediation with Keurig for several months.

IPP Counsel have worked diligently to ensure that throughout this Action their efforts have been coordinated, efficient, and non-duplicative. IPP Counsel's work was divided between partners, associates, law clerks, and paralegals. As attested to in the Kaplan Decl., Declaration of Thomas H. Burt In Support of The Indirect Purchaser Plaintiffs' Motions For an Award of Attorneys' Fees, Litigation Expenses, and Service Awards ("Burt Decl."), Warshaw Decl., and the declarations of IPP Counsel submitted concurrently with this motion, work assignments were allocated in a manner deemed by the supervising partners to be the most efficient and cost effective. IPP Counsel submit that time spent on this Action accurately reflects the work performed, that tasks were appropriately delegated, and that the billing rates are reasonable and appropriate.

In addition to the 33,221.84 hours of attorney and other legal professional time invested in this Action, IPP Counsel have incurred total litigation expenses in the amount of $2,298,015.93. Burt Decl. ¶ 22. These expenses, discussed in detail below, were required to carefully frame the complex issues of fact and law in the pleadings, to defeat Defendant's motion to dismiss, to effectively manage the case, and to undertake well-organized attempts to discover and develop a complex antitrust case against a large (and enormously wealthy) defendant. Burt Decl. ¶¶ 6-22. IPP Counsel made certain that each litigation expense was reasonable and necessary to prosecute the Action. *Id*. ¶ 26. As discussed more fully in Section VII below, IPP Counsel incurred millions of dollars in costs without any guarantee of recouping that money.

In short, IPP Counsel invested seven years of time and millions of dollars in this Action. This factor weighs heavily in favor of this fee application, as further confirmed by the lodestar cross-check discussed in Section VI.C below.

2.    This Antitrust Class Action Is Extremely Complex

"[C]lass actions 'have a well-deserved reputation as being most complex,'" *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998), with antitrust cases standing out as some of the most "'complex, protracted, and bitterly fought.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015). In cases that require more expertise, a larger percentage of the fund should be awarded to the lawyers who can competently prosecute the case. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award.").

The instant Action is no exception; all of the factors discussed above demonstrate that this antitrust class action lawsuit was a prime example of a complex and high-risk case especially relative to other antitrust class actions that are brought parallel to a governmental regulatory action. Thus, a fee award that accounts for the prosecution of litigation that was "extraordinary in both complexity and scope" is appropriate. *In re Holocaust Victim Assets Litig.*, No. CV 06-0983 (FB) (JO), 2007 WL 805768, at *46 (E.D.N.Y. Mar. 15, 2007); *see also NASDAQ*, 187 F.R.D. at 477 ("There can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result.").

3.    The Fee is Warranted Based on the High-Risk Nature of the Action

The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) ("Courts have repeatedly recognized 'that the risk of the litigation' is a

pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions."). Courts in this Circuit have long recognized that the risk associated with a case bears heavily upon the determination of an appropriate fee award. *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) ("[It is] appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award."). The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

Antitrust class actions are especially risky, due in part to their unpredictable nature, as well as the tremendous time and expense required to obtain a successful resolution. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 721680, at *17 (N.D. Cal. Jan. 28, 2016) (quoting *NASDAQ*, 187 F.R.D. at 475). "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. At the time of filing, this case involved complex issues of fact and law and presented significant risks which continue through today. In particular, the antitrust claims asserted herein have not always been met with successful results in federal and state courts.

Here, as discussed above in Section III, *supra*, IPP Counsel zealously prosecuted this complex antitrust Action in the face of considerable risk. Indeed, Keurig's motions to dismiss the CAC and SCAC presented complex issues of antitrust law that required tremendous research and briefing. IPP Counsel retained Econ One, highly respected and credentialed antitrust experts to conduct necessary economic and econometric analyses. Kaplan Decl. ¶ 54. The expert analysis needed to support the IPPs' claims required IPP Counsel to obtain highly sensitive data from

Keurig, the competitor plaintiffs, and multiple third-parties, who in many instances objected to providing such data. Like the other discovery expenses in this Action, IPP Counsel paid Econ One considerable sums of money with no guarantee that such expenditures would be recovered.

In addition to advancing litigation expenses, IPP Counsel faced substantial risks that Keurig would succeed at any one of many possible junctures in the litigation; this included the motion to dismiss, where IPPs faced uncertainty about which of their claims would survive given the various state law issues. Thus, while IPP Counsel believe that the IPPs' claims are meritorious, there were substantial risks through continued litigation. Moreover, although IPP Counsel believe that a class would be certified even over Keurig's objections, there was always a risk that Keurig would successfully oppose class certification. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). Furthermore, even if class certification was successful as to individual states, the Court may have denied certification of a national class under Vermont law. Even if the Class were certified, Keurig could have then attempted to appeal the certification decision under Federal Rule of Civil Procedure 23(f) or argued for decertification as the litigation progressed. *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").

Finally, it merits emphasis that IPP Counsel undertook this high-risk litigation on a fully contingent basis. Kaplan Decl. ¶ 87. "Counsel should be rewarded for undertaking [those risks] and for achieving substantial value for the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014); *see also Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214 CM, 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012) ("[T]he

risk of non-payment in cases prosecuted on a contingency basis where claims are not successful … can justify higher fees.").

IPP Counsel were able to achieve a significant settlement on behalf of IPPs for complex antitrust claims asserted against Keurig. This was done despite the significant risks IPPs faced in pursuing claims against a corporate behemoth with substantial resources such as Keurig. As such, the settlement is a direct result of IPP Counsel's skills and dedication in this Action.

        4.      <u>IPP Counsel Provided (and Continue to Provide) High-Quality Representation</u>

When evaluating Goldberger's "quality of representation" factor, courts in the Second Circuit "review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). IPP Counsel practice extensively in complex federal civil litigation, particularly the litigation of antitrust class actions, and have successfully litigated these types of actions in courts throughout the country.

"[T]he quality of representation . . . may be measured in large part by the results that counsel achieved for the classes." *Payment Card*, 991 F. Supp. 2d at 441. Beyond general qualifications, this factor is satisfied by Settlement Class Counsel's obtaining a $31 million settlement.  Furthermore, after the settlement was reached, IPP Counsel ensured that all interests were represented through retention of Allocation Counsel to advocate on behalf of claimants aside from repealer jurisdictions in connection with the allocation of funds amongst Settlement Class Members.

IPP Counsel's ability to obtain such a substantial recovery from an aggressive, well-funded defendant represented by top-flight counsel is a testament to the skill with which IPP Counsel have prosecuted this case. *See Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *22 (S.D.N.Y. Sept. 9, 2015) ("'The quality of opposing counsel is also important in

evaluating the quality of [Co] Lead Counsel's work.'"); *NASDAQ*, 187 F.R.D. at 489 (approving fee award where defense counsel included "the nation's biggest and best defense firms operating on a seemingly unlimited budget over a period of four years"); *WorldCom*, 388 F. Supp. 2d at 357-58 (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country."); *In re Warner Comm'ns. Secs. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Keurig was represented by Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") and Buchanan Ingersoll & Rooney PC ("Buchanan"). Both Cleary and Buchanan fervently represented Keurig and defended against IPPs' claims.

This settlement represents a highly favorable result for the Class attributable to the diligence, determination, and hard work by IPP Counsel, who developed, litigated, and successfully negotiated the settlement against a highly-skilled and determined defense team backed by a client with substantial resources. *See generally* Kaplan Decl.; Warshaw Decl.; Burt Decl. Accordingly, the quality-of-representation factor weighs heavily in favor of supporting IPP Counsel's fee request.

5.     The Fee Request Is Reasonable in Relationship to the Settlement

Courts recognize that large, complex antitrust cases present considerable risk and require extensive work. As a result, courts often award fees at or even above the percentage requested here. As described more fully in Section VI.B below, the 33 1/3% fee requested is reasonable, falling in line with fee awards in comparable actions in this Circuit. Likewise, the "***negative***" lodestar multiplier of 0.49 is a testament to the reasonableness of the fee requested under Second Circuit law. *See* Section VI.C *supra*.

6.    <u>Public Policy Supports Approval of the Fee</u>

Public policy also strongly supports the requested fee award. Without private counsel taking on the risk of this lawsuit and having the skill and resources to pursue the claims vigorously, the Settlement Class here would have recovered nothing, and important public interests would not have been vindicated. *See CDS*, 2016 WL 2731524, at *18 (District Judge Denise L. Cote discussing PSW and co-counsel's landmark settlement; "It is important to encourage top-tier litigators to pursue challenging antitrust cases . . . . Our antitrust laws address issues that go to the heart of our economy."). Awarding a reasonable percentage of the common fund properly motivates zealous enforcement of the antitrust laws and incentivizes skilled counsel to bring meritorious cases even where, at the outset, the prospect of any recovery is uncertain and the costs are daunting. *See WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

IPP Counsel's efforts in this Action are the only way IPPs will receive any compensation. Plaintiffs' counsel in such cases are typically retained on a contingent basis due to the huge commitment of time and expense required relative to the losses suffered by an individual representative plaintiff. Furthermore, the significant expense, combined with the high degree of uncertainty of ultimate success, means that contingent fees are virtually the only means of recovery in such cases. This case is a prime example of why public policy favors enforcement of the antitrust laws through suits by private attorneys general. *See Pillsbury*, 459 U.S. at 262-63 (emphasizing "the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws"). Here, IPP Counsel assumed substantial risk by undertaking this action and achieved a significant benefit to the Class. An important public

policy interest is served by awarding attorneys' fees adequately compensating counsel. Accordingly, public policy supports IPP Counsel's requested fee.

### B.  The Fee Request is Reasonable Under a Percentage-of-Recovery Analysis

The fee requested by this motion – $10,333,333.33 or 33 1/3% of the settlement – is reasonable given the complexities and risks discussed herein and within the parameters of fee awards in similar antitrust class actions in this Circuit. "Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund." *Karic v. Major Auto. Cos.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016); *see also Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (approving one-third fee from a common fund while noting "33.3% is within the range of fee awards typically awarded"); *In re Telik*, 576 F. Supp. 2d at 587 n.8 (collecting cases of common fund fee awards of one-third); *Levin v. Res. Cap. Corp.*, No. 1:15-CV-07081-LLS, 2018 WL 3725780 (S.D.N.Y. Aug. 3, 2018) (approving one-third fee on a $9,500,000 common fund); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *17 (S.D.N.Y. Dec. 19, 2014) ("the 33 1/3% fee requested by Co-Lead Counsel in this Action is consistent with percentage fees awarded in this Circuit and nationwide."); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of a $15 million settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (approving 33 1/3% of $11.5 million securities fraud class action settlement while motions to dismiss pending); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.3% of $510 million settlement); *In re Mun. Derivatives Antitrust Litig.*, No. 08-02516 (VM), 2016 WL 11543257, at *1 (S.D.N.Y. July 8, 2016) (awarding 33.33%).

Thirty-three and one-third percent is a standard percentage in many fee agreements, including large, complex non-class cases. *See* Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 FORDHAM L. REV. 247, 248 (1996) (noting that "standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries"); *see also Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

Relevant here is a study of 40 antitrust class actions. Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases*, 42 U.S.F. L. REV. 879 (July 2008). The study shows that courts in the majority of antitrust class actions awarded a contingent fee of 30% or more where the recoveries were up to $100 million. *Id.* at 911, tlb.7A. A more recent study found the same results. Joshua P. Davis, *Toward an Empirical and Theoretical Assessment of Private Antitrust Enforcement*, 36 SEATTLE U.L. REV. 1269, 1293-95 (2013) ("[I]n the twenty newer cases counsel tended to recover approximately 30% to 33.3% in cases with recoveries below $100 million and a similar or smaller percentage in cases with recoveries between $100 and $500 million").

### C. A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of the Requested Fee

The lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). Accordingly, the lodestar method is used in this Circuit only "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Id.* "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The cross-check in this case makes clear there is no windfall. To the contrary, the 0.49 "***negative***" multiplier strongly supports IPP Counsel's fee request. As discussed, IPP Counsel have expended 33,221.84 hours, totaling $21,148,380.85. Kaplan Decl. ¶ 85. The average hourly rate by IPP Counsel and their associated professional staff is approximately $636.58 (*see id.*), a rate comparable to those charged by other law firms with similar experience, expertise, and reputation, for similar services in the nation's leading legal markets. Thus, the requested fee of $10,333,333.33 results in the aforementioned "***negative***" multiplier. Where, as here, the lodestar cross-check results in a negative multiplier, courts in the Second Circuit have consistently found that a negative lodestar is "a strong indication of the reasonableness of the proposed fee." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (negative multiplier of 0.92); *see also, e.g., City of Providence*, 2014 WL 1883494, at *13 (finding that a multiplier of 0.7 is "well below the parameters used throughout district courts in the Second Circuit, which affords additional evidence that the requested fee is reasonable."); *Jermyn*, 2012 WL 2505644, at *10 ("Here the [0.39] lodestar multiplier is negative, and this is further indication of the reasonableness of the negotiated fee."); *In re Initial Pub. Offering*, 671 F. Supp. 2d at 514-15 (the "high percentage fee" of $195 million "still represent[ed] a negative multiplier" of 0.7 and "therefore [there was] no real danger of over-compensation.").

Accordingly, IPP Counsel respectfully submit that the lodestar cross-check supports the reasonableness of the requested fee award.

### D.    The Reaction of the Class Supports the Fee Request

Finally, the reaction of Class members to the settlement and IPP Counsel's fee and litigation expense request, which was disclosed in the Notice disseminated on January 8, 2021, confirms the reasonableness of IPP Counsel's request. *See Hi-Crush*, 2014 WL 7323417, at *18 ("In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the

reaction of the class to the fee request in deciding how large a fee to award."). The Notice informed members of the Settlement Class that IPP Counsel might seek a fee of up to 33 1/3% and reimbursement of litigation expenses up to $2.82 million plus any additional costs of settlement claims administration. *See Long Form Notice*. This motion is consistent with the Notice provided.

The settlement has been well received by the public. Several online news outlets including Law360, Yahoo! News, and Bloomberg Law reported the news of IPPs' settlement with Keurig. Each of these articles detailed the history of the case and the process for making a claim. As of the filing of this fee request, there has only been one technically deficient objection to the settlement by an individual, which concerned the proof required to submit a claim and not IPP Counsel's fees.[10] ECF No. 1244. And, to date, there have been no objections to the fee award requested by IPP Counsel. The date to file any objections is May 17. If any objections to the requested fee award are filed, Settlement Class Counsel will address them in a supplemental filing before the Final Approval hearing.

## VII.   IPP COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE

Under the common fund doctrine, class counsel customarily are entitled to reimbursement of reasonable expenses incurred in the litigation. Fed. R. Civ. P. 23(h); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class); Alba Conte, *Attorney Fee Awards* § 2.08, at 50-51 (3d ed. 2004); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."); *Fleisher*, 2015 WL

---

[10] Although there remains time to remedy the submission, the pending objection does not comply with the Court-ordered Notice.

10847814, at *23 (noting as typical expenses in complex cases "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with th[e] litigation").

Here, IPP Counsel have incurred $2,298,015.93 in reasonable and necessary litigation costs and expenses. Burt Decl. ¶ 22. These expenses include all filing, general litigation, mediation-related and travel expenses that were all incurred in the normal course of business and were essential to the successful prosecution of this lawsuit. IPP Counsel are entitled to be reimbursed for those expenses in addition to the attorneys' fees because "substantial expenses were necessary in this complex antitrust case." *Meredith*, 87 F. Supp. 3d at 671; *see also CDS*, 2016 WL 2731524, at *18. None of those expenditures have yet been reimbursed. Indeed, "[t]he fact that Class Counsel was willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *19. These expenses have also been reviewed by Settlement Class Counsel and were found to be reasonable.

IPP Counsel incurred significant sums on experts. IPP Counsel spent money on the Experts as well as the experts of other plaintiff groups, as work was being done to ensure that all plaintiff groups were working with the same transaction data. Kaplan Decl. ¶ 94. IPP Counsel's payments to the Experts included payment for their work with transaction and cost data and preparation of their report. *See Id*. ¶ 54. Given the strict litigation schedule ordered by the Court, and the uncertainty of mediation, the Experts had made significant progress in the drafting of their reports before the settlement occurred. *Id*. In sum, there is "no reason to depart from the common practice in this circuit of granting expense requests." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003), *aff'd sub nom.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

396 F.3d 96, 121 (2d Cir. 2005). IPP Counsel therefore respectfully request that litigation costs and expenses in the amount of $2,298,015.93 be reimbursed.

## VIII.   CLASS REPRESENTATIVE PLAINTIFFS' REQUEST FOR A MODEST SERVICE AWARD IS REASONABLE

Plaintiffs seek a $3,000 service award for each of the eleven Class Representative Plaintiffs who had their depositions taken, and $1,500 for the remaining twenty Class Representative Plaintiffs who actively participated in this Action. In the Second Circuit, plaintiff service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by plaintiffs." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494 (RLE), 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015).

Here, the Class Representative Plaintiffs have played an active role in this case's development, prosecution, and settlement. Kaplan Decl. *Id.* ¶ 99. Class Representative Plaintiffs actively participated in this Action over the past seven years, actively protected the interests of the proposed IPP class by regularly communicating with IPP Counsel, working with counsel to convey their understanding of how the market for Keurig Compatible Cups worked, reviewing pleadings, reviewing and responding to discovery requests from Keurig, reviewing discovery requests propounded on Keurig, and collecting documents responsive to Keurig's discovery requests. *Id.* ¶ 41. Each of the Class Representative Plaintiffs were responsible for searching personal email using a negotiated list of [approximately 112] search terms to meet Keurig's demands for document discovery, as well as searching physical paperwork for documentation, for example on Keurig brewers purchased or received years before. *Id.* Eleven Class Representative Plaintiffs also had their depositions taken, which included the preparation for such. *Id.* ¶ 53. In addition, each of the Class Representative Plaintiffs provided their input and consent to the Settlement. *Id.* ¶ 99. Indeed,

these efforts were recognized by the Court when it appointed them as representatives of the Settlement Class. *See* ECF 1216. Plaintiffs submit that the total service award of $63,000.00, which is 0.2% of the total recovery of $31,000,000, is warranted in this Action given the substantial time and effort expended by the Class Representative Plaintiffs. *See* Kaplan Decl. ¶¶ 36-46, 53, 99. Therefore, IPP Counsel respectfully requests that the Court award a $3,000 service award for each of the eleven Class Representative Plaintiffs who had their depositions taken, and $1,500 for the remaining twenty Class Representative Plaintiffs.

## IX.    PAYMENT OF CLAIMS ADMINISTRATOR FEES AND EXPENSES

Through this Motion, IPPs request approval of settlement administration and notice costs of $911,286.43. As of March 31, 2021, JND has billed, but has not yet been paid, $451,286.43 in Settlement administration and notice fees and expenses. Declaration of Gina Intrepido-Bowden Regarding Notice Plan and Settlement Administration ("Intrepido-Bowden Decl.") ¶ 25. JND's current estimate to complete the Settlement administration is $460,000.00. *Id*. ¶ 26. This estimate is based on: (1) the notice plan was larger than initially estimated; (2) additional Claim Form programming was needed to account for the additional complexity of the final Claim Form in addition to the Claim Form field that was added in consultation with the Special Master in March 2021; (3) based on claims submissions, additional data analysis and project management time will be needed during the claim valuation process including additional time for claim document review; (4) claimant email communications have been consistently higher than expected due to claim form filing assistance; (5) JND's initial estimate for Settlement payment distribution was based on an all-electronic distribution and based on the final Claim Form the distribution will be a combination of electronic and check distribution (including postage); and (5) JND estimates the Settlement Administration will continue into 2022 (based on the July 2021 claim deadline). *Id*. Settlement Class Counsel request approval of the $911,286.43 in settlement administration costs. In the event

JND's actual charges exceed this amount, Settlement Class Counsel reserves the right to apply to the Court to use the residue from uncashed Settlement Class Members payments to satisfy JND's additional charges.

## **CONCLUSION**

For the foregoing reasons, IPP Counsel respectfully submit that the Court approve the request for: (i) the payment of attorneys' fees in the amount of one-third of the Settlement Fund, or $10,333,333.33; (ii) reimbursement of reasonable and necessary litigation expenses in the amount of $2,298,015.93; (iii) a $3,000 service award to each of the eleven Class Representative Plaintiffs who had their depositions taken, and $1,500 for the remaining twenty Class Representative Plaintiffs; and (iv) the estimated cost of $911,286.43 to JND for class notice and claims administration.

DATED: May 7, 2021

By: */s/ Daniel L. Warshaw*
    Clifford H. Pearson (*Pro Hac Vice*)
      cpearson@pswlaw.com
    Daniel L. Warshaw (*Pro Hac Vice*)
      dwarshaw@pswlaw.com
    Matthew A. Pearson (*Pro Hac Vice*)
      mapearson@pswlaw.com
    **PEARSON, SIMON & WARSHAW, LLP**
    15165 Ventura Boulevard, Suite 400
    Sherman Oaks, CA 91403
    Tel:  (818) 788-8300
    Fax: (818) 788-8104

    Robert Kaplan
      rkaplan@kaplanfox.com
    Hae Sung Nam
      hnam@kaplanfox.com
    Jason A. Uris
      juris@kaplanfox.com
    **KAPLAN FOX & KILSHEIMER LLP**
    850 Third Avenue
    New York, NY 10022
    Tel:  (212) 687-1980
    Fax: (212) 687-7114

    Thomas H. Burt
      burt@whafh.com
    Mark Rifkin
      rifkin@whafh.com
    Patrick Donovan
      donovan@whafh.com
    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
    270 Madison Avenue
    New York, NY 10016
    Tel:  (212) 545-4600
    Fax: (212) 646-0114

    *Attorneys for Indirect Purchaser Plaintiffs and Settlement Class Counsel for the Proposed Indirect Purchaser Plaintiffs Class*