**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                                              :
IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE      :      No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                              :      No. 1:14-cv-04391 (VSB)
                                                              :
*This Relates to the Indirect-Purchaser Actions*          x
————————————————————————

<u>**DECLARATION OF ROBERT N. KAPLAN IN SUPPORT OF INDIRECT PURCHASER
PLAINTIFFS' (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND (2) MOTION
FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES,
AND INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS**</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................... i

I.   INTRODUCTION ............................................................................................... 1

II.  PROCEEDURAL HISTORY ............................................................................ 4

     **A.**   **Settlement Class Counsel's Pre-Filing Investigation and Initial Proceedings Before this Court ....................................................... 4**

     **B.**   **The Consolidated Amended Complaints and Defendant's Motions to Dismiss ........................................................................................ 5**

     **C.**   **Discovery.................................................................................... 8**

          1.   Document Discovery and Interrogatories ................................. 9

       a)   IPPs' Written Discovery of Defendant ...................................... 9

       b)   IPPs' Written Discovery of Non-Parties................................... 11

       c)   Motion to Compel Amazon. ..................................................... 12

       d)   Defendant's Written Discovery of the IPPs.............................. 13

          **2.**   **Deposition Discovery................................................... 15**

       a)   IPPs' Depositions of Defendant and Third-Parties.................... 15

       b)   Defendant's Depositions of the Class Representative Plaintiffs........................ 17

       c)   Expert Discovery ..................................................................... 18

III. MEDIATION AND SETTLEMENT ................................................................ 19

     **A.**   **Mediations and Settlement Negotiations ....................................... 19**

     **B.**   **The Risks of Continued Litigation of the Indirect Purchaser Case .............. 20**

     **C.**   **Preliminary Approval of the Settlement and Notice to Potential Settlement Class Members ...................................................... 22**

IV.  THE PLAN OF ALLOCATION .................................................................... 25

V.   IPP COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS FOR CLASS REPRESENTATIVE PLAINTIFFS IS REASONABLE ...................................................... 26

     **A.**   **IPP Counsels' Fee Request as Compared to Our Significant Time Investments in This Action................................................... 27**

     **B.**   **IPP Counsel's Request for Reimbursement of Litigation Expenses .............. 29**

**C.      The Requested Service Awards for Class Representative Plaintiffs**............ **32**

Robert N. Kaplan declares under penalty of perjury as follows:

1.      I am a partner in the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"). Kaplan Fox was appointed by the Court as an Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs")[1] Class on June 26, 2014. ECF No. 36. Kaplan Fox was also appointed as a Settlement Class Counsel[2] for the Settlement Class[3], which was certified for settlement purposes by this Court on December 16, 2020. ECF No. 1216. I submit this Declaration in support of the IPPs': (1) Motion for Final Approval of Settlement and Approval of Plan of Allocation; and (2) Motion for Attorneys' Fees, Litigation Expenses, and Service Awards.

2.      I am personally familiar and have personal knowledge of the matters set forth in this declaration based upon my active supervision of, or direct participation in, all aspects of the above-captioned action (the "Action").

## I.      INTRODUCTION

3.      Settlement Class Counsel has been actively involved in the investigation, prosecution and management of this Action for more than seven years and have worked in

---

[1] The Indirect Purchaser Plaintiffs are Wasif Bala, Yelda Mesbah Bartlett, Lavinia Simona Biasell, Linda Bouchard, Bouchard & Sons Garage, Inc., Luke Cuddy, Jonna Dugan, Erin Dunbar, Larry Gallant, Denise Gilmore, Patricia Hall, Jennifer Harrison, Teena Marie Johnson, Lori Jo Kirkhart, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, John Lohin, Angus Macdonald, Edgar Medina, Jennifer Mileikowsky, Brier Miller Minor, David W. Nation, Patricia J. Nelson, Julie Rainwater, Betty Ramey, Lauren Jill Schneider, Shirley Anne Schroeder, Jason and Amy Stratman, and Toni Williams (collectively referred to as "Class Representative Plaintiffs").

[2] As used herein and as appointed by the Court (ECF No. 36), "Settlement Class Counsel" collectively refers to Kaplan Fox, Pearson, Simon & Warshaw, LLP ("PSW"), and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"). *See also* Order granting preliminary approval of the settlement (ECF No. 1216).

[3] "Settlement Class" or "Class" shall have the same meaning as in the Order granting preliminary approval of the settlement (ECF No. 1216) and in the Court-approved Notice.

conjunction with each other and several other firms representing IPPs[4] in performing and coordinating the work necessary at each phase of the litigation, including investigating the potential claims of the IPPs, drafting the initial and consolidated amended complaints, opposing Defendant's motions to dismiss, conducting fact discovery, working with experts in connection with the preparation of their reports, settlement negotiations, and claims administration.

4.      The recovery obtained on behalf of the Settlement Class is due to the competence, tenacity and perseverance of Settlement Class Counsel. We thoroughly and zealously advocated the IPPs' positions during the litigation and the mediation process. We managed the prosecution of this litigation to achieve the best result for the Settlement Class.

5.      At all junctures of the litigation, IPPs faced significant risks. While IPPs' claims are supported by legal authority and the evidence revealed in discovery, there was no guarantee that IPPs' claims would survive Defendant's motions to dismiss, summary judgment, or trial. Indeed, this action was even more challenging than many other complex antitrust class actions that have the benefit of a governmental and/or regulatory investigation and action parallel to the litigation. Further, there were uncertainties with respect to IPPs' ability to overcome the defenses asserted by Defendant. Additionally, IPPs faced significant hurdles at class certification, where anything less than a full victory including a national class pursuant to Vermont law would have nullified recovery for a material portion of the Settlement Class. Even if IPPs won class certification, their claims could have been dismissed at summary judgment. Had this Action

---

[4] "IPP Counsel" collectively refers to Arthur N. Bailey & Associates/Rupp, Bartko Zankel Bunzel & Miller, Bozeman Law Firm, Gainey McKenna, Hart McLaughlin & Eldridge, Isquith Law Firm PLLC, Kaplan Fox, Lynn, Lynn, Blackman & Manitsky, P.C., Oliver Law Group, PSW, Polsinelli, PC, Preti Flaherty Beliveau & Pachios Chartered LLP, Pritzker Levine LLP, Segal McCambridge Singer & Mahoney, Ltd, Thrash Law Firm, P.A., Zoll Kranz & Borgess LLC, Zwerling Schachter & Zwerling, and Wolf Haldenstein.

proceeded to trial, tremendous work and expense would have been required to prepare and try the case before a jury. Assuming IPPs could overcome these obstacles and secure a favorable jury verdict, Defendant would likely appeal, a process that often takes several years in antitrust cases and given the inherent complexities in antitrust cases, the result would be more susceptible to a successful appeal.

6.      Despite these risks, Settlement Class Counsel vigorously and efficiently litigated this Action on a contingent basis until a settlement was achieved, the amount and structure of which we believed to be an excellent result for Settlement Class Members.

7.      As explained in this declaration, the tasks carried out by Settlement Class Counsel included, but are not limited to:

   a.  investigating the facts and legal theories that formed the basis for IPPs' allegations, including extensive factual and economic research into the Keurig Compatible Cup (defined below) market;

   b.  compiling and analyzing documents uncovered during Settlement Class Counsel's investigation to prepare and file the initial complaints and three detailed consolidated amended complaints;

   c.  opposing Defendant's motions to dismiss and participating in oral argument, after which the Court largely denied the motion;

   d.  reviewing Defendant's answer and initial disclosures;

   e.  reviewing and analyzing millions of pages of documents produced in response to plaintiffs' discovery requests;

   f.  preparing for, taking, or defending depositions of 20 relevant fact witnesses and participating in dozens of other depositions;

   g.  consulting extensively with economic experts on numerous aspects of the case, including through pre-filing investigation and preparation of the initial and amended complaints, issues arising in briefing Defendant's motions to dismiss, and preparation of expert reports;

   h.  participating in lengthy and complicated mediation and settlement discussions with Defendant under the auspices of the Hon. Joseph J. Farnan, Jr. (Ret.), and

negotiating the terms of the Stipulation of Settlement and Release with Defendant; and

i.    preparing lengthy preliminary and final approval pleadings and establishing and monitoring an extensive notice program.

## II.    PROCEEDURAL HISTORY

### A.    Settlement Class Counsel's Pre-Filing Investigation and Initial Proceedings Before this Court

8.    In early 2014, Settlement Class Counsel began a months-long investigation into potential antitrust violations in the market for portion packs that work in Keurig Portion Pack Brewers ("Keurig Compatible Cups"), including extensive factual and economic research into the Keurig Compatible Cup market and thorough analysis of possible causes of action. On March 24, 2014, the first indirect purchaser action was filed against Keurig alleging that it had monopolized or attempted to monopolize and restricted, restrained, foreclosed, and excluded competition in order to raise, fix, maintain, or stabilize the prices of Keurig K-Cup Portion Packs at artificially high levels in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and various state antitrust, unfair competition, consumer protection, unjust enrichment, and other laws. Eight other actions were later filed in other federal districts, resulting in a motion to transfer before the Judicial Panel on Multidistrict Litigation (the "JPML"). In June 2014, the JPML transferred the related Keurig single-serve coffee antitrust cases to the Southern District of New York for consolidated pretrial proceedings. ECF Nos. 1, 3.

9.    Throughout the early stages of the case, the parties engaged in multiple discussions concerning the risk that private or confidential material might be disseminated. To offset this risk, Settlement Class Counsel coordinated with counsel for JBR, Inc. (d/b/a Rogers Family Company) ("Rogers"), TreeHouse Foods Inc., Bay Valley Foods, LLC and Sturm Foods Inc. ("Treehouse"),

and Direct Purchaser Plaintiffs ("DPPs")[5], to negotiate with Defendant the terms of a proposed stipulated protective order. The parties submitted the proposed stipulated protective order for the Court's consideration, which the Court signed on June 6, 2014.  ECF No. 189.  The parties also extensively negotiated the scope of electronic and expert discovery, and submitted stipulated orders regarding Electronically Stored Information and expert discovery to the Court for consideration.  ECF Nos. 37, 469.  The Court signed the stipulated orders on July 1, 2014 and January 11, 2019 respectively.  ECF Nos. 41, 495.  The parties also extensively negotiated a deposition protocol.  ECF No. 493-1.

10.     Following the transfer of the cases to this Court, the Court held an initial case management conference on June 19, 2014. Over the more than seven years this Court has presided over this complex litigation, Settlement Class Counsel have appeared before the Court and Magistrate Judges Pitman and Cave for numerous status and case management conferences, and oral argument on motions.

**B.      The Consolidated Amended Complaints and Defendant's Motions to Dismiss**

11.     Following appointment as Interim Co-Lead and Liaison Counsel, Settlement Class Counsel prepared a consolidated pleading. Settlement Class Counsel dedicated a great deal of time and resources to researching for, drafting, and editing the Consolidated Amended Indirect Purchaser Class Action Complaint ("CAC"), as well as the Second Consolidated Amended Indirect Purchaser Class Action Complaint ("SCAC"). The resultant complaints differed in scope and focus

---

[5] On January 11, 2019, McLane Company, Inc. ("McLane") filed a complaint against Defendant alleging violations of the federal antitrust laws in connection with sales of single-serve coffee products.  On January 15, 2019, McLane filed a Statement of Relatedness to the multidistrict litigation docketed in this Court at 14-MD-2542 and the matter was thereafter accepted as related on January 23, 2019.  IPPs, Treehouse, Rogers, DPPs, and McLane collectively referred to as "Plaintiffs".

from both of the competitors' complaints, and the Direct Purchaser Plaintiff complaint with allegations and claims unique to the IPPs. Settlement Class Counsel extensively researched and chose to plead horizontal anticompetitive agreements at multiple levels, including between coffee roasters, and at the distributor level. IPPs emphasized the alleged use of exclusionary contracts by defendant.

12.     On July 24, 2014, IPPs filed their CAC. ECF No. 61. Defendant moved to dismiss the CAC on October 6, 2014. ECF Nos. 171-173. On October 27, 2014, IPPs provided notice to the Court and Defendant that they intended to file a further amended complaint. ECF No. 193.

13.     On November 25, 2014, IPPs filed the SCAC. Defendant moved to dismiss the SCAC on February 2, 2015. ECF Nos. 231-32. IPPs filed their opposition brief on April 14, 2015. ECF No. 255. Defendant filed its reply brief on May 13, 2015. ECF No. 267.

14.     The Court held oral argument on Defendant's motion to dismiss the SCAC on July 9, 2015. Settlement Class Counsel coordinated with counsel for the other plaintiff groups regarding oral argument and identified the areas where the Court was likely to want to hear separately from IPP counsel. IPP counsel focused on the standing issues raised in the briefing as particular to IPPs, and prepared extensively for argument related to the state and federal application of the Supreme Court's *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519 (1983) jurisprudence to indirect claims. Settlement Class Counsel formed a mock argument panel and a pseudo judge for the panel and conducted a full mock argument in preparation.

15.     On July 6, 2016, all plaintiff groups joined in a letter motion seeking an order lifting the stay of discovery in place in all actions in the MDL. ECF No. 321. Defendant filed a response to the letter motion on July 11, 2016. ECF No. 322. The Court held a discovery conference on August 1, 2016. Thereafter, on August 4, 2016, the Court issued an order lifting the discovery stay,

specifically directing that all parties were permitted to serve discovery demands and objections; after serving discovery demands, the parties were to conduct a Rule 26(f) conference; the parties did not need to begin the production of documents at that time; and the parties were permitted to serve subpoenas on third parties, including those third parties provided with the approved preservation notice, to preserve relevant documents and evidence. ECF No. 329.

16.     On November 29, 2017, the Court issued an order denying Defendant's motions to dismiss the complaints filed by TreeHouse, Rogers, and DPPs.   However, while granting Defendant's motion to dismiss the IPPs' federal antitrust claims, the Court deferred ruling on the IPPs' state law claims.  ECF No. 379.

17.     In accordance with the Court's scheduling orders, Plaintiffs and Defendant exchanged their initial disclosures on December 15, 2017. *See* ECF No. 345. IPPs' Rule 26 Initial Disclosures were highly detailed; in addition to the parties, IPPs provided the names of forty-one non-party retailers who were likely to have discoverable information, as well as the subject matters related to each. Further, in coordination with the other plaintiff groups, IPPs incorporated by reference the names of thirty-eight current or former employees, officers, directors or agents of Defendant, and the names of over eight hundred additional third parties who were likely to have discoverable information.

18.     On April 22, 2019, the Court issued an opinion resolving Defendant's motion to dismiss the IPPs' various state law claims, and upholding state law claims for 21 states and the District of Columbia. The Court dismissed claims under several state laws, including New York and Michigan, but deferred ruling on the issue of whether Vermont law applied nationally. ECF No. 581.

19.     On June 21, 2019, IPPs filed their Third Consolidated Amended Indirect Purchaser Class Action Complaint ("TCAC"). ECF No. 631. The TCAC realleged violations of federal antitrust laws along with violations of the laws of 25 states and the District of Columbia. *Id*. Specifically, the TCAC alleged that Defendant's anticompetitive conduct ranged from conspiring with horizontal competitors in the coffee roasting business, engaging in extensive, restrictive contracts that restrained trade throughout the sales, supply and distribution chain, and tying sales of its Keurig K-Cup Portion Packs to sales of its single-serve brewers, thereby maintaining an illegal monopoly. *Id*. IPPs alleged that Defendant's anticompetitive conduct limited, foreclosed, and harmed competitors, resulting in supra-competitive prices to, and limited choices for, indirect purchasers. *Id*.

20.     Defendant answered the TCAC on July 22, 2019.  ECF No. 648.

**C.     Discovery**

21.     Weekly conference calls were conducted among attorneys from all plaintiff groups to ensure discovery proceeded timely and as efficiently as possible. Additionally, Settlement Class Counsel held separate weekly calls to discuss tasks assigned to the IPPs, as well as tasks specific to the IPP claims in this lawsuit. These weekly strategy calls were important to the efficient organization and prosecution of this Action. In addition to the weekly strategy calls, Settlement Class Counsel participated in regular calls for various sub-committees such as the electronic discovery, third-party discovery, and expert subcommittees, which were likewise to ensure the timely and efficient prosecution of the litigations.

### 1.      Document Discovery and Interrogatories

### a)      IPPs' Written Discovery of Defendant

22.      To the extent necessary to avoid duplication of effort and ensure the efficient progress of discovery, Settlement Class Counsel coordinated and worked collaboratively with the other Plaintiffs while pursuing and protecting the Settlement Class' interest.

23.      The parties held a Rule 26(f) conference on September 13, 2016, and worked towards a proposed discovery schedule, joint status report and discovery plan. Plaintiffs and Defendant ultimately filed competing discovery plans on October 28, 2016. ECF Nos. 350-51. Plaintiffs' position on scheduling and structuring discovery was that class certification and summary judgment should be briefed simultaneously at the close of fact discovery, an efficient structure requiring a single set of expert reports and expert depositions covering both class certification and merits issues and that would keep all actions on the same track for trial. Defendant sought a schedule where class certification would be briefed before the close of fact discovery, with discovery being bifurcated between class certification discovery and merits discovery.

24.      The Court convened a status conference on November 4, 2016 to discuss the parties' divergent positions on scheduling and structuring the litigation, after which the Court ordered the parties to meet and confer concerning the issue of scheduling expert discovery. ECF No. 353. The parties and the Court subsequently agreed that the appropriate time for a conference to discuss the issue was 120 days before the close of fact discovery. ECF No. 358. On August 12, 2019, all parties submitted a proposed schedule for expert discovery, class certification, and dispositive motions. ECF No. 666.  The Court entered the proposed order on August 19, 2019. ECF No. 668.

25.      On August 31, 2016, IPPs served Defendant with their first set of document requests, which in addition to incorporating by reference the production requests of the other

plaintiff groups in the MDL, specifically sought documents concerning Defendant's presence in Vermont, and cost and sales information concerning sales of K-Cups and K-Cup Brewers made by Defendant broken down by state. Defendant served its objections and responses to plaintiffs' first sets of document requests on October 13, 2016.

26.     Settlement Class Counsel coordinated with the other plaintiff groups and met-and-conferred extensively with Defendant's counsel on the scope and timing of their responses to plaintiffs' first sets of document requests, which in addition to lengthy telephone conferences, involved drafting and responding to numerous letters and e-mails. At the same time, Settlement Class Counsel worked closely with IPPs' experts and consultants concerning Defendant's sales and cost data, which required additional, time-consuming negotiations with Defendant's counsel to obtain answers to IPPs' experts' technical questions about the scope, contents, operation, and limitations of the data being produced by Defendant.

27.     By the close of fact discovery in June 2020, Defendant had produced over 3.8 million documents in response to Plaintiffs' document requests and subpoenas. Additionally, non-parties produced over 1.5 million documents in response to third part subpoenas served by Plaintiffs in this Action. These documents were loaded onto an online document-review database that was shared among Plaintiffs to maximize efficiencies and avoid duplication of effort.

28.     The database was used by Settlement Class Counsel, IPP Counsel and counsel for the other plaintiff groups to search, code and organize the voluminous discovery record; to prepare for depositions; develop IPPs' theories of liability and damages; assist IPPs' economic experts, Drs. Jeffrey Leitzinger and Philip Johnson and their staff to prepare their expert reports; and marshal the documentary record for use in IPPs' class certification papers.

29.     Settlement Class Counsel supervised a team of over 20 lawyers from IPP Counsel that analyzed and coded these documents using the document review platform, which provides for issue and witness coding, designed to avoid duplicative review and analysis.

30.     On December 18, 2019, IPPs served Defendant with IPPs' first set of interrogatories, which sought, inter alia, information concerning Defendant's research, development, manufacturing, sales, and distribution of K-Cups in the State of Vermont.

31.     Defendant objected and responded on January 21, 2020. Settlement Class Counsel found Defendant's interrogatory responses to be insufficient and incomplete, and conferred with Defendant's counsel to obtain sufficiently detailed and complete responses. After several meet-and-confers, Defendant agreed to supplement its responses and provided detailed information about its contacts with Vermont.

**b)      IPPs' Written Discovery of Non-Parties**

32.     IPPs worked with other Plaintiffs' counsel as a single coordinated team for third-party discovery. This team worked to identify and prioritize third parties, send document subpoenas and negotiate productions. IPPs served over twenty-five document subpoenas on non-parties. These third-party subpoenas commanded the production of documents, transaction and cost data, and in several instances a Rule 30(b)(6) deposition. Settlement Class Counsel were primarily responsible for twenty of the third-party subpoenas. Each of these twenty third-party subpoenas was drafted, in whole or part, and served by Settlement Class Counsel. The negotiations with the subpoenaed non-parties were often lengthy and contested, resulting in numerous discussions concerning the scope of production and unique defenses including, for instance, the entity's size, the cost of production, the need for the information, and the entity's relevance to the wrongdoing alleged in the pleading. Additionally, as each Plaintiff group's counsel coordinated to lessen the burden on non-parties, Settlement Class Counsel participated in discussions with

counsel for the other plaintiff groups concerning the third-party subpoenas to ensure that Plaintiffs secured the documents, data, and testimony they needed from any given third-party. Numerous third parties either prepared a declaration in lieu of a deposition or produced a witness for a Rule 30(b)(6) deposition. An attorney from Settlement Class Counsel was in attendance for most of these depositions.

33.    Because of the unique need of the IPPs to prove pass-through of the overcharge through a multistep distribution chain (an evidentiary burden not faced by competitors or direct purchasers), Settlement Class Counsel diligently pursued and negotiated document productions, including detailed cost and sales data from large third-party retailers and distributors such as Amazon.com, Inc. ("Amazon"); Walmart, Inc.; Sam's West, Inc.; Costco Wholesale Corporation; Staples, Inc.; Target Corporation; Kohl's Corporation; BJ's Wholesale Club; Dunkin' Brands; Starbucks Corporation; Best Buy Co., and two of Defendant's most significant distributors, Essendant and W.B. Mason.

34.    Settlement Class Counsel met and conferred extensively with counsel for various retailers and distributors on the scope and timing of their responses to IPPs' subpoenas seeking transactional data and documents. In addition to lengthy telephone conferences, this involved drafting and responding to numerous letters and e-mails.  At the same time, Settlement Class Counsel also worked closely with IPPs' experts and consultants with respect to retailers' and distributors' sales and cost data, which required additional, time-consuming dealings with counsel for these non-parties to obtain answers to IPPs' experts' technical questions about the scope, contents, operation, and limitations of the data being produced by such third parties.

c)    **Motion to Compel Amazon**

35.    On September 30, 2019, IPPs served non-party Amazon.com with a subpoena seeking, inter alia, Amazon's transactional data for its purchases and sales of Keurig brewers and

compatible cups, to which Amazon served objections on October 16, 2019. ECF No. 923-1 at 2. IPPs and Amazon met and conferred telephonically five times between December 17, 2019, and April 14, 2020, in addition to numerous written communications. *Id*. at 2-4. Following the failure of the parties to resolve their dispute over Amazon's refusal to produce transactional data and materials responsive to the subpoena, on April 22, 2020, IPPs moved to compel Amazon. ECF No. 923. Amazon opposed IPPs' motion on April 27, 2020, to which IPPs replied on April 28, 2020. ECF Nos. 926-27, 930. Magistrate Judge Cave heard oral argument on IPPs' discovery motion on May 7, 2020 and ordered the parties to meet and confer on the number of product codes to be searched for transactional data and on the custodians and search terms. ECF No. 941.

### d)      Defendant's Written Discovery of the IPPs

36.      Settlement Class Counsel have expended considerable time and resources responding to discovery served on the IPPs.

37.      On August 31, 2016, Defendant served IPPs with a first set of 29 document requests, seeking among other things documents related to IPPs' purchases of Keurig K-Cups and K-Cup Brewers, other portion packs or brewers, and communications with sellers about Keurig K-Cups and Brewers.

38.      As we worked with IPPs to determine the existence and volume of potentially-responsive documents, Settlement Class Counsel drafted and served IPPs' objections and responses to Defendant's extensive document requests on October 13, 2016. In the following months, in conjunction with counsel for the other plaintiff groups, Settlement Class Counsel met and conferred with Defendant's counsel concerning the scope of Defendant's document requests to all plaintiff groups.

39.     Following these negotiations with Defendant, we worked closely with the Class Representative Plaintiffs to search for, review, analyze, compile and produce over a thousand pages of documents responsive to Defendant's document requests.

40.     These documents were loaded onto an online document-review database hosted by Kaplan Fox, whose support staff processed document productions and administered the database throughout this Action. Kaplan Fox was able to host this service in-house at a rate that was less than the cost of using an outside vendor.

41.     Although IPPs met the court-ordered substantial completion deadline for production of documents of April 30, 2018, Defendant wrote a letter to IPPs approximately six months later, on November 13, 2018, taking issue with IPPs' objections and responses to Defendant's first set of document requests. As a result, despite having already substantially completed their document productions, counsel for IPPs proceeded to extensively meet and confer with Defendant's counsel for seven months concerning IPPs' objections.  After this extended period of negotiations, IPPs ultimately agreed to, in addition to other compromises, a list of 112 search terms to be used to search Class Representative Plaintiffs' email accounts for responsive documents. IPP Counsel then collected, reviewed and produced documents from the Class Representative Plaintiffs.

42.     On August 21, 2018, Defendant served IPPs with a second set of document requests, seeking documents showing any agreements with any non-party pertaining to the scope of that third party's document production in this Action in response to subpoenas served by plaintiffs. IPPs served objections and responses on September 20, 2018.

43.     On February 5, 2020, Defendant served IPPs with a third set of document requests, seeking declarations, affidavits, and other forms of testimony obtained from any non-party, including any related communications. IPPs served objections and responses on March 6, 2020.

44.     In addition to the efforts related to objecting, negotiating and responding to the extensive document discovery propounded to IPPs, Settlement Class Counsel have also spent time and resources objecting to, negotiating, and responding to Defendant's interrogatories.

45.     On December 19, 2019, Defendant served IPPs with a first set of interrogatories, which were directed primarily at identifying, for each named plaintiff, specific details related to all portion pack and brewer purchases, coffee drinking habits, and all purchases of coffee, tea, or other hot beverage products during the relevant time period. Settlement Class Counsel drafted and served IPPs' objections and responses to Defendant's first set of interrogatories on January 21, 2020. Settlement Class Counsel met and conferred with Defendant's counsel over the subsequent months concerning IPPs' objections. IPPs agreed to provide certain supplemental responses, which were served in June and July 2020.

46.     On July 13, 2020, Defendant served IPPs with their second set of interrogatories seeking the factual basis for many of the allegations in the TCAC (so-called "contention" interrogatories). On July 13, 2020, Defendant also served IPPs with a first set of requests for admission, which consisted of 426 separate requests.  Settlement Class Counsel began preparing responses before the settlement occurred.

### 2.     Deposition Discovery

#### a)     IPPs' Depositions of Defendant and Third-Parties

47.     In addition to Settlement Class Counsel's document-discovery efforts, Settlement Class Counsel prepared for and took nine depositions of Defendant and non-parties, listed in the following chart but also participated in dozens of other depositions of Keurig employees, ex-

employees, and corporate representatives (Federal Rule of Civil Procedure 30(b)(6) deponents), other individuals employed, or previously employed, by Treehouse, Rogers, and the DPP class representatives:

| Date | Location | Deponent (Entity/Title) |
|------|----------|--------------------------|
| March 14, 2019 | Cambridge, MA | Sarah Murphy (Keurig, Senior Brand Manager) |
| April 9, 2019 | Plattsburgh, NY | Rosemary Huebner (Keurig, Project Manager) |
| May 9, 2019 | Little Rock, AR | Cynthia Hester (Keurig, Strategic Account Manager) |
| May 22, 2019 | New York, NY | Corporate Essentials Judson Kleinman (Corporate Essentials, Owner) |
| November 6, 2019 | Burlington, VT | Ken Crites (Keurig, Fmr. Marketing Director, Specialty Beverages) |
| February 20, 2020 | Burlington, MA | Larissa Quinn (as 30(b)(6) witness) (VP Corporate Strategy) |
| May 20, 2020 | Remote | Kristin Lemieux (Keurig Dr. Pepper, Finance Director) |
| June 17, 2020 | Remote | Costco Wholesale Corp. 30(b)(6) (Shannon Axthelm, Assistant GMM) |
| June 23 and 24, 2020 | Remote | Starbucks Corp. Kevin Schaub (Senior Group Manager – Core Sourcing, Food) Jennifer Connell (Director Quality Assurance) |

48.     Settlement Class Counsel also questioned the following deponents on subject matters that were of particular importance to IPPs' claims, such as Vermont contacts and sales data:

| Date | Location | Deponent (Entity/Title) |
|------|----------|-------------------------|
| February 27, 2020 | Burlington, MA | Annie Oh (Keurig 30(b)(6)) |
| May 17, 2019 | Burlington, VT | Frances Rathke (Keurig, CFO & Treasurer) |
| August 14, 2019 | Burlington, VT | Jon Wettstein (Keurig, VP Supply Chain Ops) |
| May 15, 2019 | Burlington, VT | Scott McCreary (Keurig, President, GMCR Specialty Coffee) |
| November 7, 2019 | Chicago, IL | Jeffrey Bobroff (Essendant, Head of Merchandising) |

49.     Additionally, Settlement Class Counsel attended numerous other depositions, where other Plaintiffs' counsel were primarily responsible for questioning the deponent. Settlement Class Counsel nonetheless prepared and attended to ensure that the necessary testimony was obtained during the course of the deposition and stood prepared to solicit the testimony.

50.     We dedicated significant time and resources to coverage of these depositions, including review and analysis of documents, selection of documents for use as deposition exhibits, preparation of deposition outlines, and travel.

51.     Settlement Class Counsel also met and conferred extensively with counsel for non-party Cone Communications, and, after receiving and reviewing a production of documents, obtained a signed declaration in lieu of a deposition.

52.     Settlement Class Counsel participated in or reviewed the transcripts of over one hundred party and third-party depositions.

### b)     Defendant's Depositions of the Class Representative Plaintiffs

53.     After negotiating a mutually-agreeable deposition schedule with Defendant's counsel, Settlement Class Counsel worked with Class Representative Plaintiffs to prepare them

for their depositions. By the time IPPs and Defendant agreed to settle, Settlement Class Counsel

had prepared for an defended the depositions of the following 11 IPP class representatives:

| Date | Location | Deponent (Entity/Title) |
|------|----------|-------------------------|
| August 21, 2019 | New York, NY | Jonna Dugan |
| August 28, 2019 | Washington, D.C. | David W. Nation |
| January 27, 2020 | Portland, ME | Vivid Hair Studio, LLC |
| January 27, 2020 | Portland, ME | Kori Lodi |
| January 27, 2020 | Grand Island, NE | Wauneta Dibbern |
| February 5, 2020 | Memphis, TN | Angus Macdonald |
| February 13, 2020 | Burlington, VT | Linda Bouchard |
| February 13, 2020 | Burlington, VT | Bouchard & Sons Garage, Inc. |
| May 18, 2020 | Remote | Julie Rainwater |
| May 20, 2020 | Remote | Patricia Nelson |
| May 20, 2020 | Remote | Jennifer Harrison |

### c)      Expert Work

54.      Settlement Class Counsel retained Drs. Leitzinger and Philip Johnson of Econ One

Research, Inc. ("Econ One") (collectively, the "Experts") to provide expert reports and testimony

in support of IPPs' class certification motion and the merits. Although IPPs and Defendant agreed

to settle this Action before IPPs' motion for class certification was filed, the experts made

substantial progress on their reports.  Settlement Class Counsel devoted significant time and

resources to working with Drs. Leitzinger and Johnson in the preparation of their reports.

Settlement Class Counsel worked closely with the Experts throughout fact discovery to ensure the

necessary documents and data were sought from and produced by Keurig and various third parties.

Once the documents and data were obtained, Settlement Class Counsel consulted with the Experts

to ensure the format, scope, and content was sufficient for the Experts' analysis. The data collected

and transmitted to the Experts was substantial both in terms of volume and in substance. With the

involvement of Settlement Class Counsel, the Experts needed to process and gain an understanding

of the transaction and cost data, which were in varying forms from Keurig, the competitor plaintiffs

and third parties, and coordinate with the other Plaintiffs' experts in connection with their work for class certification and on the merits.

55.      Settlement Class Counsel also worked with Drs. Leitzinger and Johnson and their staff in advance of and during the settlement negotiations.

## III.      MEDIATION AND SETTLEMENT

### A.      Mediations and Settlement Negotiations

56.      IPPs and Defendant began settlement negotiations in September 2019. Through the end of 2019, there were numerous settlement communications among counsel.

57.      Following these discussions, in early 2020, IPPs and Defendant agreed to mediate before former U.S. District Judge Joseph J. Farnan, Jr., (Ret.), a well-known mediator. A full-day mediation session via Zoom took place on May 8, 2020. The mediation session was attended by Settlement Class Counsel, Keurig executives and Keurig's counsel. During the mediation, Defendant took the position that, after an assessment of risk, the damages were *de minimis* and the value of the claims were well below the eventual settlement amount. The mediation, while held remotely, included face-to-face discussions with Judge Farnan and joint sessions between IPPs and Defendant. Although the mediation session brought the parties closer to resolution, it did not result in a settlement.

58.      Following the mediation session, the parties continued negotiations over the course of several months. With the assistance of Judge Farnan, the parties had intensive arm's-length discussions and negotiations, while the litigation proceeded to the close of fact discovery on June 17, 2020. After the close of fact discovery, Judge Farnan continued to work with the parties and eventually communicated a mediator's proposal.

59.      On July 21, 2020, the parties accepted Judge Farnan's recommendation and reached an agreement in principle.

60.     Following additional negotiations regarding the terms of the settlement agreement, Settlement Class Counsel and counsel for Defendant signed the Stipulation of Settlement and Release with an execution date of August 14, 2020.

61.     Both sides vigorously negotiated their respective positions on all material terms of the Stipulation of Settlement and Release, and the negotiations were non-collusive.

62.     In connection with these settlement negotiations, Settlement Class Counsel were informed of the facts concerning liability and damages issues, and the relative strengths and weaknesses of each side's litigation position.

**B.      The Risks of Continued Litigation of the Indirect Purchaser Case**

63.     IPPs and Settlement Class Counsel believed that they would have prevailed up to and through trial but understood the risks of continued prosecution of this Action.

64.     Among the litigation risks that IPPs took into consideration in reaching a decision to enter the Settlement with Defendant were:

a.      The risk that the proposed IPP class would not be certified. Even though a class certification motion had yet to be filed and decided, it was certain Defendant would have vigorously opposed it. In addition, there is little doubt that, if IPPs were successful in certifying a class, including a national class based on Vermont law, Defendant would have sought interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure, further delaying the outcome of this Action. Although IPPs believe they would have prevailed at class certification, Defendant would undoubtedly have advanced substantive arguments in opposition;

b.      The risk that Defendant would prevail on summary judgment, or that IPPs would fail to ultimately prove their claims at trial. While Settlement Class Counsel believe that IPPs' claims are meritorious, liability is challenging here because this is a case

with no guilty plea, no leniency applicant, and no federal findings or investigation. *See In re Currency Conversion Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (finding in favor of settlement where "Plaintiffs did not have the benefit of a Government investigation, and laboriously knitted this case together with painstaking attention to detail."). Moreover, the Defendant would likely have taken the position at trial and provided expert testimony arguing that there were no, or very limited, damages, and the jury's resolution of the damages issue (in addition to liability) presented further risks to the class;

c.    The risk that IPPs would be unsuccessful in establishing liability and damages. Regarding liability, this is a case with no guilty plea, no leniency applicant, and no federal findings or investigation. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2017 WL 3613663, at *2 (S.D.N.Y. Aug. 21, 2017) (A "rule-of-reason analysis … require[s] significantly more factual development than what is reflected in the … pre-discovery record"). Settlement Class Counsel expected Defendant to continue to vigorously contest all elements of IPPs' claims during the remaining stages of the litigation. The outcome of these proceedings could not be certain, and, in the event that these cases proceeded to trial, it will be lengthy and complex. Even if IPPs could establish liability, they would still have had to prove damages and certify a litigation class. IPPs' theory of damages would be hotly contested, and there was no doubt that, should the case advance to trial, there would be a "battle of the experts." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). A "battle of the experts" becomes

nearly impossible "to predict with any certainty which testimony will be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there was a real risk that a jury might be persuaded by one or more of Defendant's arguments on damages and, in turn, award far less than the Settlement Amount or nothing at all; and

    d.    a favorable jury verdict in an antitrust trial is highly likely to lead to lengthy appeals, often including appeals to the United States Court of Appeals, a request for *en banc* review if a panel affirms the jury verdict, and a subsequent request for Supreme Court review. Because of the complexity of the issues presented by antitrust class action litigation, there is an inherent risk of reversal and further proceedings in the District Court. Regardless of the resolution of any appeal(s), this is a process that may take several years to complete and this risk was also considered by Settlement Class Counsel in resolving this matter.

## C.    Preliminary Approval of the Settlement and Notice to Potential Settlement Class Members

65.    Following the execution of the Settlement Agreement, Settlement Class Counsel solicited proposals from three claims-administration firms, and ultimately selected JND Legal Administration ("JND") based on its proposed pricing and experience in administering antitrust class action settlements.

66.    Settlement Class Counsel prepared and briefed IPPs' motion for preliminary approval of the Settlement, which the Court approved on December 16, 2020. ECF Nos. 1112-116, 1216. The Court subsequently clarified its preliminary approval order on December 29, 2020. ECF No 1218.

67.     On or around September 6, 2020, pursuant to the Preliminary Approval order, JND began administering the Notice Plan. The Notice Plan included a digital effort with the leading digital network (Google Display Network or "GDN") and the top social media site (Facebook), as well as a print placement in the national edition of People, a leading weekly entertainment magazine. Additional notice efforts, including a digital effort with the top business social network (LinkedIn) to extend reach to business entities, an internet search campaign, and the distribution of a national press release in English and Spanish, extended reach further. JND also established and maintained a Settlement website, mailing address, email address, and toll-free telephone number. *See* Declaration of Gina M. Intrepido-Bowden of JND Legal Administration ("JND Decl.,") at ¶¶ 4-5, attached as Exhibit 17 to the  Compendium of Declarations In Support of Indirect Purchaser Plaintiffs' Counsel's Joint Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Compendium ").

68.     On January 12, 2021, pursuant to the Preliminary Approval Order, JND caused the Summary Notice to be published in *PR* Newswire and distributed to over 15,000 English and Spanish media outlets nationwide. *See* JND Decl., at ¶ 12.

69.     To supplement the digital notice effort, JND caused a half page Publication Notice to appear in the March 1, 2021 issue of People Magazine, which was on-sale beginning February 19, 2021. *See* JND Decl., at ¶ 8.

70.     On January 8, 2021 the Claims Administrator activated a public access website for the Action (www.keurigindirectpurchasersettlement.com), publishing significant documents online including the: (i) Notice; (ii) Claim Form; (iii) Stipulation of Settlement; (iv) the TCAC; (v) the Preliminary Approval Order; and (vi) the Court's order clarifying the Preliminary Approval Order. *See* JND Decl., at ¶ 13.

71.     The Notice (*see, generally*, Ex. E to the JND Decl.) explains the terms of the Settlement, including that the Settlement Fund will be distributed to eligible Class Members who submit a valid and timely Claim Form pursuant to the proposed Plan of Allocation included in the Notice and subject to Court approval. Further, the Notice informed Class Members of, among other information, IPP Counsel's application for attorneys' fees and expenses, and the proposed Plan of Allocation for distributing the Settlement Fund. The Notice further details: (i) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (ii) the date, time, and location of the Final Approval Hearing.

72.     The Notice informed Class Members that Settlement Class Counsel will seek an attorney fee award of no more than 33 1/3% of the Settlement Amount, plus reimbursement of out-of-pocket litigation expenses not to exceed $2.82 million. Settlement Class Counsel are seeking an attorney-fee award of 33 1/3% and reimbursement of $2,298,015.93 in out-of-pocket litigation expenses.

73.     Pursuant to the Preliminary Approval Order, which approved the timetable proposed in the motion for preliminary approval, Class Members who wish to object to the Settlement, the Plan of Allocation, or the Request for Attorneys' Fees and Expenses must file and serve such objections no later than May 17, 2021.

74.     To date, one technically deficient objection has been filed relating to the proof required to submit a claim.  ECF No. 1244. Furthermore, as of April 29, 2021, the Claims Administrator has received no exclusion requests. *See* JND Decl., at ¶ 18.. The Claims Administrator will submit an updated report following the May 17, 2021 deadline for filing objections and opt-outs. IPPs will respond to any later-filed objections by no later than May 26, 2021.

IV.     **THE PLAN OF ALLOCATION**

75.     If approved, the Plan of Allocation, as described in detail in the Notice, will govern how the proceeds of the Settlement Fund will be distributed among Class Members who submit timely, valid Claim Forms. *See* the JND Decl., Exhibit 17 to the Compendium.

76.     Pursuant to the proposed Plan of Allocation, the value of a Settlement Class Member's claim will be determined by the purchase price for and number of purchases of the affected products with an adjustment for where the claim accrued and the quality of proof submitted to support the claim.

77.     According to the proposed Plan of Allocation, Settlement Class Members will be paid *pro rata* from the Settlement Fund based on the amount of their claim after any discount where appropriate based on: (a) whether the Settlement Class Member can submit proof of (i) purchases of Keurig K-Cup Portion Packs, or (ii) purchase or registration of a Keurig single-serve brewer, or (iii) no proof of purchase at all; and (b) the location where they purchased their Keurig K-Cup Portion Packs.  See Exhibit E to the JND Decl.

78.     The Plan of Allocation takes into consideration where Settlement Class Members purchased their Keurig K-Cup Portion Packs, in addition to other factors. This is necessary and proper because a claim from an indirect purchaser who resides in a non-*Illinois Brick* repealer jurisdiction carries either a lower potential recovery or a higher degree of burden or risk (or both) than a claim from a resident of a jurisdiction that has repealed *Illinois Brick*.

79.     To implement the Plan of Allocation and determine the value of Settlement Class Member claims, Settlement Class Counsel developed a Distribution Matrix, which was contained within the Long-Form Notice that was published on the settlement website.  Prior to publication and to ensure that all interests were represented, the Distribution Matrix was reviewed by allocation counsel representing claimants from non-repeater jurisdictions ("Allocation Counsel").

80.     When both sets of counsel reached an impasse, Settlement Class Counsel and Allocation Counsel enlisted Judge Farnan to resolve the dispute.  Following a mediation session and argument, Judge Farnan found that the Plan of Allocation and Distribution Matrix appropriately treated Settlement Class Member claims differently based on the rights provided by state laws and that the matrix values were fair and reasonable and provided an adequate allocation. *See* Declaration of Joseph J. Farnan, Jr., U.S. District Judge (Ret.), in Support of Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement with Defendant, dated September 10, 2020, ECF No. 1116, ¶¶ 10-12.

81.     The Attorneys General from Illinois and Florida have both intervened in this Action and are expected to object to the Plan of Allocation. If they do file objections, Settlement Class Counsel will respond as appropriate.  However, it is important to note that the anticipated objection is solely to the allocation received by Settlement Class Members from Illinois and Florida, not the underlying merit of the Settlement.

## V.     IPP COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS FOR CLASS REPRESENTATIVE PLAINTIFFS IS REASONABLE

82.     Concurrent with seeking the Court's final approval of the Settlement, IPP Counsel have moved for an award of attorneys' fees and reimbursement of the out-of-pocket litigation expenses incurred in prosecuting this Action (the "Fee Application"). IPP Counsel is requesting an award of one-third of the $31 million Settlement Fund, or $10,333,333.33, as well as unreimbursed out-of-pocket litigation expenses necessarily incurred litigating this Action in the amount of $2,298,015.93.

### A.      IPP Counsels' Fee Request as Compared to Our Significant Time Investment in This Action

83.      IPP Counsel is respectfully applying for compensation from the Settlement Amount on a percentage basis. The percentage method is the appropriate method for awarding fees because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances, is supported by public policy, has been recognized as appropriate by the U.S. Supreme Court and Second Circuit for cases of this nature, and represents the overwhelming trend in common fund actions.

84.      As set forth in the accompanying Fee and Expense Memorandum, a 33 1/3% fee is a fair and reasonable attorneys' fee percentage request in common fund cases such as this Action. As set forth in the Fee and Expense Memorandum, IPP Counsel believes the fee request is reasonable given the recovery obtained for the benefit of the Settlement Class, the risks of this litigation, the contingent nature of IPP Counsel's representation, the complexity of the legal and factual questions at issue, and the extensive efforts of Settlement Class Counsel on behalf of IPPs and the Settlement Class.

85.      The following chart summarizes the aggregate time and expenses of IPP Counsel through March 31, 2021, as set forth in more detail in the separate law firm declarations, Exhibits 1-16 to the Compendium:

| Law Firm | Hours | Lodestar | Expense |
|---|---|---|---|
| Kaplan Fox & Kilsheimer LLP | 8,556.25 | $4,869,759.00 | $82,250.43 |
| Pearson, Simon & Warshaw, LLP | 5,284.10 | $3,613,938.50 | $97,569.69 |
| Wolf Haldenstein Adler Freeman & Herz LLP | 9,020.39 | $5,787,299.85 | $66,494.57 |

27

| | | | |
|---|---|---|---|
| Bartko, Zankel, Bunzel & Miller | 3,111.85 | $2,557,840.25 | $131,675.93 |
| Polsinelli PC | 1,651.10 | $1,161,799.00 | $11,144.68 |
| Gainey McKenna & Egleston | 2,037.70 | $1,142,170.75 | $981.40 |
| Pritzker Levine LLP | 919.75 | $621,037.50 | $27,330.44 |
| Hart McLaughlin & Eldridge, LLC | 956.6 | $527,907.50 | $2,835.51 |
| Preti Flaherty Beliveau & Pachios LLP | 740.8 | $372,651.50 | $2,904.65 |
| Oliver Law Group P.C. | 345.1 | $155,125.00 | $2,236.95 |
| Isquith Law PLLC | 114.5 | $89,073.00 | |
| Bozeman Law Firm, P.A. | 140.5 | $70,250 | $1,205.12 |
| Rupp Baase Pfalzgraf Cunningham, LLC | 121.8 | $46,104.00 | $0.28 |
| Zoll & Kranz, LLC | 34.4 | $11,530.00 | $497.83 |
| Lynn, Lynn, Blackman & Manitsky, P.C. | 13 | $3,200.00 | |
| The Thrash Law Firm | 174 | $118,695 | $1,242.38 |
| Totals | 33,221.84 | $21,148,380.85 | $428,369.86 |

86.    Settlement Class Counsel have thoroughly vetted the time submissions of each of the non-lead/liaison law firms listed in the chart above. These time records and expense voucher/receipts are available to the Court *in camera* should the Court wish to examine them.

87.    IPP Counsel are not seeking fees for work done or expenses incurred in connection with preparing the fee and expense application.

88.    The Action was undertaken by IPP Counsel on a wholly contingent basis since early 2014. From the outset, IPP Counsel understood they were embarking on a complex, expensive,

28

and lengthy case that presented no guarantee of any compensation for their investment of time and money the Action would require. In undertaking that responsibility, IPP Counsel were obligated to assure that sufficient attorney resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the considerable expenses a case such as this entails.

89.     Because of the nature of a contingent practice where cases are typically complex and last several years, not only do contingent law firms such as IPP Counsel have to pay regular overhead, but they also have to advance the expenses of the litigation. Given it often takes years for these cases to conclude, the financial burden on contingent counsel is far greater than on a firm that is paid on an ongoing or hourly basis.

90.     Based upon the lodestar set forth above, the requested one-third fee results in a negative lodestar "deflator" of .49.

**B.     IPP Counsel's Request for Reimbursement of Litigation Expenses**

91.     With respect to reimbursement of expenses, IPP Counsel seeks reimbursement of $2,298,015.93 for its expenses.  As detailed in the accompanying Declaration of Tom Burt in Support of IPP Counsel's Motion for Attorneys' Fees and Litigation Expenses and Service Awards (included among the Compendium of firm declarations attached hereto), Settlement Class Counsel established and funded, with assessments from their own firms as well those contributed by several other firms working at the direction of Settlement Class Counsel, a common litigation fund to pay the out-of-pocket costs for common expenditures made on behalf of the proposed indirect purchaser class as the litigation progressed.

92.     The following chart summarizes the expenses incurred during the Action and paid from the common litigation fund through May 7, 2021:

| Description | Amount |
|---|---|
| Copying, Printing and Scanning | $20,528.87 |
| Telephone, Conference Calls and Facsimile | $3,958.96 |
| Court Costs, Filing Fees and Transcripts | $14,458.77 |
| Delivery/Courier | $3,888.63 |
| Carfare, Travel and Meals | $55,520.85 |
| Legal Research | $201,221.55 |
| Experts and Consultants | $121,348.20 |
| Mediation | $0.00 |
| Miscellaneous/Other | $7,444.03 |
| **Totals** | $428,369.86 |

93.      The above expenses were reasonable and necessary to the prosecution and resolution of this Action and were the types of expenses that counsel typically incur in complex litigation, and for which counsel are typically reimbursed when the litigation gives rise to a common fund.

94.      ***Experts and Consultants***: IPP Counsel engaged the services of two testifying expert economists, Dr. Jeffrey Leitzinger and Dr. Philip Johnson and their staff at Econ One, to analyze economic and econometric issues in this case, as well as to aid in obtaining, processing, and understanding substantial amounts of transaction and cost data in connection with their work and other experts' work for class certification and on the merits. IPP Counsel also engaged Dr. Jeffrey Leitzinger and Dr. Philip Johnson to assist in the preparation for mediation.

95.      During the relevant time period, Defendant had three different consecutive sets of transaction data. It took substantial effort to understand the three sets of data and to reconcile the entries into one consistent data set. Further, that work was coordinated among the economic

consultants for all Plaintiffs so that all Plaintiffs would, and did, have one consistent set of data for their analyses. The cost of this joint effort among all Plaintiffs' economic experts was shared among the Plaintiffs.

96.     *Mediation*: Settlement Class Counsel were responsible for one-half of Judge Farnan's mediation fees, which included a full-day mediation on May 8, 2020, and related telephonic and written communications.

97.     *Legal Research*: IPP Counsel utilized these services in connection with the legal research conducted over the course of approximately seven years.  Legal research expenses are based upon the amounts actually billed by the Westlaw and Lexis Nexis services.

98.     *Document Database Vendor*: In connection with discovery in this case, Settlement Class Counsel and the other plaintiff groups jointly retained a vendor with expertise in designing and maintaining electronic databases ("Document Database Vendor"). The Document Database Vendor provided a database that enabled counsel to search, review, analyze, and code a database with millions of pages of documents and other records produced by Defendant and various non-parties. The review, analysis, and coding of documents has been integral to Settlement Class Counsel's efforts relating to fact and expert discovery. The Document Database Vendor's product also included a technology-assisted review ("TAR") tool that increased the accuracy of the review and decreased the percent of the overall documents it was necessary to have manually reviewed by attorneys.

99.     The remaining expenses relate to printing and photocopying, filing fees, transcripts, mail, expenses for service of process, and other Settlement Class Counsel's expenses.

**C.**     **The Requested Service Awards for Class Representative Plaintiffs**

100.     Each of the Class Representative Plaintiffs has made a significant contribution in the prosecution this action for the benefit of the Settlement Class Members. These individuals and small businesses actively protected the interests of the proposed IPP class by filing suit on their behalf, and undertaking all the responsibilities involved in being a representative of the proposed IPP class, including working with counsel to convey their understanding of how the market for Keurig Compatible Cups worked. Each Class Representative searched all relevant email accounts for an agreed list of over 100 search terms, and each searched hard copy documents for relevant papers, including documentation for brewers purchased sometimes years before.     Class Representatives also responded to document requests and interrogatories, monitored the progress of the case, and several prepared for and testified at depositions. In addition, each of the Class Representative Plaintiffs provided their input and consent to the Settlement. These individuals and small businesses were required to expend significant time and effort that was not compensated over the seven years of this litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 7, 2021.

Robert N. Kaplan

32