**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE    :    No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                   :    No. 1:14-cv-04391 (VSB)

                                                  :

*This Relates to the Indirect-Purchaser Actions*     x

## COMPENDIUM OF DECLARATIONS IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' COUNSEL'S JOINT APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## TABLE OF CONTENTS

| | |
|---|---|
| Exhibit 1 | Declaration of Kaplan Fox & Kilsheimer LLP by: Hae Sung Nam |
| Exhibit 2 | Declaration of Pearson, Simon & Warshaw, LLP by: Daniel L. Warshaw |
| Exhibit 3 | Declaration of Wolf Haldenstein Adler Freeman & Herz LLP by: Thomas H. Burt |
| Exhibit 4 | Declaration of Bartko, Zankel, Bunzel & Miller by: Patrick M. Ryan |
| Exhibit 5 | Declaration of Polsinelli PC by: Daniel D. Owen |
| Exhibit 6 | Declaration of Gainey McKenna & Egleston by: Thomas J. McKenna |
| Exhibit 7 | Declaration of Pritzker Levine LLP by: Elizabeth Pritzker |
| Exhibit 8 | Declaration of Hart McLaughlin & Eldridge, LLC by: Steven A. Hart |
| Exhibit 9 | Declaration of Preti Flaherty Beliveau & Pachios LLP by: Gregory P. Hansel |
| Exhibit 10 | Declaration of Oliver Law Group P.C. by: Alison Oliver |
| Exhibit 11 | Declaration of Isquith Law PLLC by: Fred T. Isquith Jr. |
| Exhibit 12 | Declaration of Bozeman Law Firm, P.A. by: Marcus Neil Bozeman |
| Exhibit 13 | Declaration of Rupp Baase Pfalzgraf Cunningham, LLC by: Arthur N. Bailey |
| Exhibit 14 | Declaration of Zoll & Kranz, LLC by: Michelle L. Kranz |
| Exhibit 15 | Declaration of Lynn, Lynn, Blackman & Manitsky, P.C. by: Pietro J. Lynn |
| Ezhibit 16 | The Thrash Law Firm by: Thomas P. Thrash |
| Exhibit 17 | Declaration Bowden of JND Legal Administration by: Gina M. Intrepido-Bowden |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE
COFFEE ANTITRUST LITIGATION

*This Relates to the Indirect-Purchaser Actions*

———————————————————————— x

:
:
:
:

No. 1:14-md-02542 (VSB)
No. 1:14-cv-04391 (VSB)

### DECLARATION OF HAE SUNG NAM IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD

I, Hae Sung Nam, under penalty of perjury under the laws of the United States of America, declare as follows:

1.     I am a partner at the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), which is one of the firms appointed by the Court as Interim Co-Lead Counsel and Settlement Class Counsel.  ECF Nos. 36, 1216.  I am submitting this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award.  A copy of my firm's resume is attached hereto as **Exhibit 1**.  I have personal knowledge of the information set forth in this Declaration.

2.     Kaplan Fox has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendant.

3.     As Interim Co-Lead Counsel for the proposed indirect purchaser class, Kaplan Fox was involved at every stage of the litigation, as fully detailed in the Declaration of Robert N. Kaplan, sworn to on May 7, 2021, in Support of Indirect Purchaser Plaintiffs' (1) Motion for Final

1

Approval of Class Settlement and (2) Motion for An Award of Attorneys' Fees, For Reimbursement of Expenses, and Incentive Awards for the Named Plaintiffs.

4.     In particular, Kaplan Fox played a leading role in pre-complaint investigation; drafting the original and consolidated amended complaints; managing document review; propounding and responding to written discovery requests; prepping for and taking and defending four depositions; opposing Defendants' motion to dismiss, including preparing for and conducting oral argument; attending court hearings; analyzing, with the assistance of professional economists, more than 10 years of economic information and Defendant's transactional cost and sales data; and participating in settlement discussions and mediation.

5.     Through March 31, 2021, my firm expended the total of 8,556.25 hours in this litigation.  The total lodestar for my firm is $4,869,759.00.

6.     The table below details the hours billed and the amount billed at current rates, from the inception of the case through March 31, 2021, by my firm's attorneys and its support staff in this litigation, and the lodestar calculation based on our billing rates. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. Excluded from these amounts is time expended in preparing the application for fees and expenses:[1]

| **Attorney** | **Total Hours** | **Hourly Rate** | **Lodestar** |
|---|---|---|---|
| RN Kaplan (Partner) | 533.70 | $1,050 | $560,385.00 |
| RJ Kilsheimer (Partner) | 439.90 | $975 | $428,902.50 |
| GK Arenson (Partner) | 518.15 | $1,000 | $518,150.00 |
| LD King (Partner) | 3.80 | $940 | $3,572.00 |
| DR Hall (Partner) | 1.00 | $860 | $860.00 |
| HS Nam (Partner) | 808.70 | $860 | $695,482.00 |
| MP McCahill (Partner) | 17.75 | $790 | $14,022.50 |
| J Farar (Of Counsel) | 432.60 | $700 | $302,820.00 |
| MM Choi (Associate) | 38.00 | $725 | $27,550.00 |
| L Dubick (Associate) | 614.50 | $485 | $298,032.50 |

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| DH Weinstein (Associate) | 0.50 | $355 | $177.50 |
| J Uris (Associate) | 1,944.00 | $480 | $933,120.00 |
| R Labaton (Associate) | 3.40 | $395 | $1,343.00 |
| C Martin (Associate) | 1,879.80 | $350 | $657,930.00 |
| T Yagman (Law Clerk) | 19.80 | $230 | $4,554.00 |
| M Soyemi (Law Clerk) | 4.20 | $230 | $966.00 |
| C Fabiani (Law Clerk) | 5.00 | $230 | $1,150.00 |
| ET Chen (Law Clerk) | 0.75 | $230 | $172.50 |
| KM Cosgrove (Investigator) | 21.00 | $335 | $7,035.00 |
| M Moonsammy (Paralegal) | 1,035.00 | $335 | $346,725.00 |
| TN Harvey (Paralegal) | 229.20 | $285 | $65,322.00 |
| W Gomes (Paralegal) | 5.00 | $270 | $1,350.00 |
| J Griffin (Paralegal) | 0.50 | $275 | $137.50 |
| **Total:** | **8,556.25** | | **$4,869,759.00** |

7.     The hourly rates for the attorneys and professional support staff at my Firm are our usual and customary hourly rates and have been approved by federal and state courts nation-wide.

8.     My firm also has incurred a total of $82,250.43 (excluding our contributions to the Litigation Fund which are detailed in the Declaration of Thomas Burt, sworn to May 7, 2021, which is submitted herewith) in unreimbursed expenses in connection with the prosecution of this litigation.   These expenses were reasonably and necessarily incurred in connection with this litigation.

9.     The chart below details the expenses incurred by category (other than the Litigation Fund expenses).   The expenses incurred in this action are also reflected on the books and records of my firm.   These books and records are prepared from expense vouchers, check records and other source material and accurately record the expenses incurred:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Telephone/Facsimile | $2,390.11 |
| Photocopies - In-House | $1,805.60 ($.20 per page) |
| Photocopies - Outside | $454.67 |
| Postage/Air Express/Messengers | $1,100.88 |
| Filing Fees | $400.00 |
| Process Fees | $735.08 |
| Transcripts | $985.08 |

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Computer Research (at cost) | $37,539.37 |
| Travel/Meals | $11,839.64 |
| Professional Fees (expert) | $25,000.00 |
| **TOTAL** | **$82,250.43** |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  May 7, 2021

Hae Sung Nam

4

# EXHIBIT 1



# KAPLAN FOX & KILSHEIMER LLP

# FIRM PROFILE

850 Third Avenue, 14th Floor
New York, NY 10022
Tel.: 212.687.1980
Fax: 212.687.7714

681 Prestwick Lane
Wheeling, IL 60090
Tel.: 847.831.1585
Fax.: 847.831.1580

1999 Harrison Street,
Suite 1560
Oakland, CA 94612
Tel.: 415.772.4700
Fax: 415.772.4707

12400 Wilshire Boulevard,
Suite 820
Los Angeles, CA 90025
Tel.: 310.575.8604
Fax: 310.444.1913

6109 32nd Place, NW
Washington, DC 20015
Tel.: 202.669.0658

160 Morris Street
Morristown, NJ 07960
Tel.: 973.656.0222
Fax: 973.401.1114

**History of Kaplan Fox & Kilsheimer LLP**

Leo Kaplan and James Kilsheimer founded "Kaplan & Kilsheimer" in 1954, making the firm one of the most established litigation practices in the country.  James Kilsheimer was a celebrated federal prosecutor in the late 1940s and early 1950s in New York who not only successfully tried some of the highest profile cases in the country, but also handled the U.S. Attorney's Office's criminal appeals to the Second Circuit.

Now known as "Kaplan Fox & Kilsheimer LLP," the early commitment to high-stakes litigation continues to define the firm to the present day.  In 2009, Portfolio Media's *Law360* ranked Kaplan Fox's securities litigation practice as one of the top 5 in the country (plaintiff side), and again in July 2014, the Legal 500 ranked Kaplan Fox as one of the top eight plaintiff's firms for securities litigation.  In March 2013, the *National Law Journal* included Kaplan Fox on its list of the top 10 "hot" litigation boutiques, a list that includes both plaintiff and defense firms.  In 2014, 2015 and 2016, more than half of the firm's partners – including attorneys on both coasts – were rated "Super Lawyers."

The firm has three primary litigation practice areas (antitrust, securities, and consumer protection), and the firm is a leader in all three.  To date, we have recovered more than **$5 billion** for our clients and classes.  In addition, the firm has expanded its consumer protection practice to include data privacy litigation, and few other firms can match Kaplan Fox's recent leadership in this rapidly emerging field.  The following describes Kaplan Fox's major practice areas, its most significant recoveries and its attorneys.

**Securities Litigation**

Over the past 35 years, Kaplan Fox has been a leader in prosecuting corporate and securities fraud —ranging from cases concerning accounting fraud to those involving complicated and complex financial instruments. Since the passage of the Private Securities Litigation Reform Act in 1995, Kaplan Fox has emerged as one of the foremost securities litigation firms representing institutional investors of all sizes, including many of the world's largest public pension funds.

Kaplan Fox's selection by Portfolio Media's Law360 as one of the five top securities litigation firms (plaintiff side) for 2009 was based, in part, on the representation of public pension funds in high profile and complex securities class actions, including ***In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation***; ***In re Bank of America Corp. Securities, ERISA & Derivative Litigation***; ***In re Fannie Mae Securities Litigation***; and ***In re Ambac Financial Group, Inc. Securities Litigation***.  Some of the firm's most significant securities recoveries include:

> **In re Bank of America Corp. Securities, Derivative, and ERISA Litigation**, MDL No. 2058 (S.D.N.Y.) ($2.425 billion recovered)
>
> **In re Merrill Lynch & Co., Inc. Securities Litigation**, Master File No. 07-CV-9633 (JSR) (S.D.N.Y.) ($475 million recovered)
>
> **In re 3Com Securities Litigation**, No. C-97-21083-EAI (N.D. Cal.) ($259 million recovered)
>
> **In re Fannie Mae 2008 Securities Litigation,** No. 08-cv-7831 (PAC) (S.D.N.Y.) ($170 million recovered)
>
> **In re MicroStrategy Securities Litigation**, No. CV-00-473-A (E.D. Va.) ($155 million recovered)
>
> **AOL Time Warner Cases I & II (Opt-out)** Nos. 4322 & 4325 (Cal. Superior Court, LA County) ($140 million recovered)

**In re Informix Securities Litigation**, C-97-129-CRB (N.D. Cal.) ($136.5 million recovered)

**In re Xcel Energy, Inc. Securities Litigation**, Master File No. 02-CV-2677-DSD (D. Minn.) ($80 million recovered)

**In re Elan Corporation Securities Litigation**, No. 02-CV-0865-RMB (S.D.N.Y.) ($75 million recovered)

**In re Sequenom, Inc. Securities Litigation**, No. 09-cv-921 (S.D. Cal.) ($70 million recovered)

**Barry Van Roden, *et al.* v. Genzyme Corp., *et al.*,** No. 03-CV-4014-LLS (S.D.N.Y.) ($64 million recovered)

**Antitrust Litigation**

Kaplan Fox has been at the forefront of significant private antitrust actions, and we have been appointed by courts as lead counsel or members of an executive committee for plaintiffs in some of the largest antitrust cases throughout the United States.   This commitment to leadership in the antitrust field goes back to at least 1967, when firm co-founder Leo Kaplan was appointed by the Southern District of New York to oversee the distribution of all ASCAP royalties under the 1950 antitrust consent decree in **_United States v. American Society of Composers, Authors and Publishers_**, No.  41-CV-1395 (S.D.N.Y.), a role he held for 28 years until his death in 1995.  To this day, ASCAP awards the "Leo Kaplan Award" to an outstanding young composer in honor of Leo's 28 years of service to ASCAP.

Members of the firm have also argued before the U.S. Courts of Appeals some of the most significant decisions in the antitrust field in recent years.  For example, Robert Kaplan argued the appeal in **_In re Flat Glass Antitrust Litigation_**, 385 F.3d 350 (3d Cir. 2004), and Greg Arenson argued the appeal in **_In re High Fructose Corn Syrup Antitrust Litigation_**, 295 F.3d 651 (7th Cir. 2002).  In a relatively recent survey of defense counsel, in-house attorneys, and individuals involved in the civil justice reform movement, both were named among the 75 best plaintiffs' lawyers in the country based on their expertise and influence.

Over the years, Kaplan Fox has recovered over **$2 billion** for our clients in antitrust cases.  Some of the larger antitrust recoveries include:

> **In re Air Cargo Shipping Services Antitrust Litigation**, MDL 1775 (E.D.N.Y.) (settled during trial preparation, for total settlement of more than $1.25 billion)

**<u>In re Neurontin Antitrust Litigation</u>**, MDL No. 1479, Master File No. 02-1390 (D.N.J.) ($190 million recovered)

**<u>In re High Fructose Corn Syrup Antitrust Litigation</u>**, MDL No. 1087, Master File No. 95-1477 (C.D. Ill.) ($531 million recovered)

**<u>In re Brand Name Prescription Drugs Antitrust Litigation</u>**, MDL 997 (N.D. Ill.) ($720 plus million recovered)

**<u>In re Infant Formula Antitrust Litigation</u>**, MDL 878 (N.D. Fla.) ($126 million recovered)

**<u>In re Flat Glass Antitrust Litigation</u>**, MDL 1200 (W.D. Pa.) ($122 plus million recovered)

**<u>In re Hydrogen Peroxide Antitrust Litigation</u>**, MDL 1682 (E.D. Pa.) ($97 million recovered)

**<u>In re Plastics Additives Antitrust Litigation</u>**, 03-CV-1898 (E.D. Pa.) ($46.8 million recovered)

**<u>In re Medical X-Ray Film Antitrust Litigation</u>**, CV 93-5904 (E.D.N.Y.) ($39.6 million recovered)

**<u>In re NBR Antitrust Litigation</u>**, MDL 1684 (E.D. Pa.) ($34.3 million recovered)

**Consumer Protection and Data Privacy Litigation**

The consumer protection practice is headquartered in Kaplan Fox's Bay Area office, which opened in 2000, and is led by Laurence King, an experienced trial lawyer and former prosecutor. Mr. King also recently served as a Vice-Chair, and then Co-Chair, of the American Association for Justice's Class Action Litigation Group.

Mr. King and our other effective and experienced consumer protection litigators regularly champion the interests of consumers under a variety of state and federal consumer protection laws. Most frequently, these cases are brought as class actions, though under certain circumstances an individual action may be appropriate.

Kaplan Fox's consumer protection attorneys have represented victims of a broad array of misconduct in the manufacturing, testing, marketing, and sale of a variety of products and services and have regularly been appointed as lead or co-lead counsel or as a member of a committee of plaintiffs' counsel in consumer protection actions by courts throughout the nation. Among our significant achievements are highly recognized cases including *__In re Baycol Products Litigation__*, MDL 1431-MJD/JGL (D. Minn.) (victims have recovered $350 million recovered to date); *__In re Providian Financial Corp. Credit Card Terms Litigation__*, MDL No. 1301-WY (E.D. Pa.) ($105 million recovered); *__In re Thomas and Friends Wooden Railway Toys Litig.__*, No. 07-cv-3514 (N.D. Ill.) ($30 million settlement obtained for purchasers of recalled "Thomas Train" toys painted with lead paint); *__In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation__*, No. 4:09-md-2086 (W.D. Mo.) (settlements obtained where consumers will receive substantially in excess of actual damages and significant injunctive relief); *__Berry v. Mega Brands Inc__*., No. 08-CV-1750 (D.N.J.) (class-wide settlement obtained where consumers

will receive full refunds for defective products), and ***David Wolf, et al. v. Red Bull GmBH, et al.***, No. 1:13-cv-08008 (S.D.N.Y.) ($13 million settlement fund obtained for purchasers of Red Bull energy drink).

Data privacy is a fairly new area of law and broadly encompasses two scenarios. In a data breach case, a defendant has lawful custody of data, but fails to safeguard it or use it in an appropriate manner.  In a tracking case, the defendant intercepts or otherwise gathers digital data to which it is not entitled in the first place.

Kaplan Fox is an emerging leader in both types of data privacy litigation.  For example, Mr. King filed and successfully prosecuted one of very first online data breach cases, ***Syran v. LexisNexis Group***, No. 05-cv-0909 (S.D. Cal.), and was court-appointed liaison counsel in a recently successfully concluded data breach case against LinkedIn. *See **In re: LinkedIn User Privacy Litigation***, No. 12-cv-3088-EJD (N.D. Cal.).  The firm also settled a data privacy case against Universal Property & Casualty Insurance Company related to the public exposure of sensitive customer data. *See **Rodriguez v. Universal Property & Cas. Ins. Co.***, No. 16-cv-60442-JK (S.D. Fla.).

The firm is also an industry leader in the even newer field of email and internet tracking litigation.  Kaplan Fox was appointed Co-Lead Class Counsel in a digital privacy class action against Yahoo!, Inc., related to Yahoo's alleged practice of scanning emails for content, which was recently settled.  *See **In re: Yahoo Mail Litigation***, 5:13-cv-04980-LHK (N.D. Cal.).  Current cases include ***In re: Facebook Internet Tracking Litigation***, No. 5:12-md-02314-EJD (N.D. Cal.) (Davila, J.) and ***In re: Google Inc. Cookie Placement Consumer Privacy Litig.***, 12-MD-2358-SLR (D. Del.) (Kaplan Fox appointed to plaintiffs' steering committee).

## ATTORNEY BIOGRAPHIES

## PARTNERS

**ROBERT N. KAPLAN** is widely recognized as a leading plaintiff's litigator and has led the prosecution of numerous antitrust and securities fraud actions, recovering billions of dollars for the victims of corporate wrongdoing. He was listed by defense and corporate counsel as one of the top 75 plaintiffs' attorneys in the United States for all disciplines. Mr. Kaplan was listed as one of the top five attorneys for securities litigation. *See* Complete List. He was also recognized by Legal 500 as one of the top securities litigators in the United States for 2011, 2012, 2013, 2014, and 2015, and was listed as one of the leading antitrust attorneys in the country for 2015. Mr. Kaplan was recognized as Super Lawyer in the New York Metro Area. He was lead counsel for CalPERS in *AOL Time Warner Cases I & II* (Ca. Sup. Ct., L.A. Cty.), and was a lead in *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, *In re Escala Securities Litigation* and *In re Bank of America Corp. Securities Litigation*, in which a settlement in the amount of $2.425 billion and corporate governance changes was approved by the Court.

In the antitrust arena, he has been a lead counsel in many significant actions. He is a lead counsel in *In re Air Cargo Antitrust Litigation* (more than $1.25 billion in settlements) and was recently appointed by Courts as lead counsel in the *DIPF Antitrust Litigation*, *In re Cast Iron Soil Pipe and Fittings Antitrust Litigation*, and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*.

He also represents  clients in private antitrust actions, including: *Affiliated Foods, Inc., Associated Grocers of New England, Inc., URM Stores, Inc., Western Family Foods, Inc., and Associated Food Stores, Inc.* in individual cases against *Tri-Union Seafoods, LLC, d/b/a Chicken of the Sea, King Oscar, Inc., Bumble Bee Foods, LLC f/k/a Bumble Bee Seafoods, LLC, and StarKist Co.*, No. 15-cv-4312, No. 15-cv-3815,  No. 15-cv-4187, No. 15-cv-4667 (N.D. Cal.).

He previously served,  as lead counsel or member of the Executive Committee in numerous plaintiff treble damage actions including *In re Neurontin Antitrust Litigation*, MDL No. 1479, Master File No. 02-1390 (D.N.J.) ($190 million recovered); *In re High*

*Fructose Corn Syrup Antitrust Litigation*, MDL No.1087, Master File No. 95-1477 (C.D. Ill) ($531 million recovered); *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.) ($720 plus million recovered); *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla.)($126 million recovered); *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.O. Pa.) ($122 plus million recovered) (Mr. Kaplan successfully argued  an appeal before the U.S. Court of Appeals for the Third Circuit, which issued a ground-breaking and often-cited summary judgment opinion. *In re Flat Glass Antitrust Litigation*, 385 F.3d 350 (3d ar. 2004); *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.)($97 million recovered); *In re Plastics Additives Antitrust Litigation*, 03-CV-1898 (E.D.Pa.) ($46.8 million recovered); *In re Medical X-Ray Film Antitrust Litigation*, CV 93-5904 (E.D.N.Y.) ($39.6 million recovered); and *In re NBR Antitrust Litigation*, MDL 1684 (E.D. Pa.) ($34.3 million recovered).

Mr. Kaplan is also representing financial institutions across the country in data breach cases against Home Depot and is a member of the Plaintiffs' Steering Committee.

Mr. Kaplan was a trial attorney with the Antitrust Division of the U.S. Department of Justice. There, he litigated civil and criminal actions. He also served as law clerk to the Hon. Sylvester J. Ryan, then chief judge of the U.S. District Court for the Southern District of New York and served as an acting judge of the City Court for the City of Rye, N.Y.

In addition to his litigation practice, he has also been active in bar and legal committees. For more than fifteen years, he has been a member of what is now known as the Eastern District of New York's Courts Committee on Civil Litigation.

Mr. Kaplan has also been actively involved in the Federal Bar Council, an organization of judges and attorneys in the Second circuit and is a member of the Program and Winter Planning Committees.

Recently Mr. Kaplan was invited by the United States Judicial Center and participated in a multi-day seminar for federal judges about complex litigation.

In addition, Mr. Kaplan has served as a member of the Trade Regulation and Federal Courts Committees of the Association of the Bar of the City of New York.

Mr. Kaplan's published articles include: "Complaint and Discovery In Securities Cases," Trial, April 1987; "Franchise Statutes and Rules," Westchester Bar Topics, Winter

1983; "Roots Under Attack: Alexander v. Haley and Courlander v. Haley," Communications and the Law, July 1979.

Mr. Kaplan sits on the boards of several organizations, including the Columbia Law School Board of Visitors, Board of Directors of the Carver Center in Port Chester, N.Y., Member of the Dana Farber Visiting Committee, Thoracic Oncology in Boston, MA, and Member of Board of Trustees for the Rye Historical Society.

**Education:**

- B.A., Williams College (1961)
- J.D., Columbia University Law School (1964)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1964)
- Bar of the District of Columbia (2013)
- U.S. Supreme Court
- U.S. Courts of Appeals for the Second, Third, Seventh, Ninth, Tenth and Eleventh Circuits
- U.S. District Courts for the Southern, Eastern, Western and Northern Districts of New York, the Central District of Illinois, and the District of Arizona

**Professional Affiliations:**

- Federal Bar Council
- Committee to Support the Antitrust Laws (past President)
- National Association of Securities and Commercial Law Attorneys (past President)
- Advisory Group of the U.S. District Court for the Eastern District of New York
- American Bar Association
- Association of Trial Lawyers of America (Chairman, Commercial Litigation Section, 1985-86)
- Association of the Bar of the City of New York (served on the Trade Regulation Committee; Committee on Federal Courts)
- Member of Board of Trustees for the Rye Historical Society

Mr. Kaplan can be reached by email at: RKaplan@kaplanfox.com

**FREDERIC S. FOX** first associated with Kaplan Fox in 1984 and became a partner in the firm in 1991. For over 30 years, he has concentrated his work in the area of class action litigation. Mr. Fox has played important roles in many major class action cases. He was one of the lead trial lawyers in two securities class actions, one of which was the first case tried to verdict under the Private Securities Litigation Reform Act of 1995.

Mr. Fox has played a lead role in many major securities class action cases, including as a senior member of the litigation and trial team in *In re Bank of America Corp. Securities, ERISA, & Derivative Litigation*, No. 09-MDL-2058 (S.D.N.Y.) ("*In re Bank of America*"). The case arose out of Bank of America's acquisition of Merrill Lynch. *In re Bank of America* which settled for $2.425 billion plus significant corporate governance reforms and stands as one of the largest securities class action settlements in history. In *In re Bank of America*, Mr. Fox served as lead counsel on behalf of major public pension funds.

Mr. Fox currently represents many institutional investors including governmental entities in both class actions and individual litigation. Mr. Fox recently led the team of attorneys that prosecuted an individual opt-out action on behalf of a public pension fund arising out of the fraud at Petrobras in Brazil. Other significant cases in which Mr. Fox served as lead counsel include: *In re Merrill Lynch & Co., Inc. Securities, Derivative, & ERISA Litigation*, No. 07-cv-9633 (S.D.N.Y.)(in which he was the primary attorney responsible for negotiating the $475 million settlement); *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831 (S.D.N.Y.) ("*In re Fannie Mae 2008*") ($170 million settlement); *In re SunPower Securities Litigation*, Case No. 09-cv-5473 (N.D. Cal.); *In re Merrill Lynch Research Reports Securities Litigation* (S.D.N.Y.) (arising from analyst reports issued by Henry Blodget); *In re Salomon Analyst Williams Litigation* (S.D.N.Y.) and *In re Salomon Focal Litigation* (S.D.N.Y.) (both actions stemming from analyst reports issued by Jack Grubman). Mr. Fox has also handled derivative cases seeking corporate governance reform and other shareholder litigation on behalf of public pension funds asserting state law and foreign causes of action. Mr. Fox is a frequent speaker and panelist in both the U.S and abroad on a variety of topics including securities litigation and corporate governance.

In the consumer protection area, he served on the Plaintiffs' Steering Committee in the *Baycol Products Litigation* where there have been more than $350 million in settlements. Additionally, he is serving as one of the Co-lead Counsel in *In re RC2 Corp. Toy Lead Paint Products Liability Litigation* pending in the Northern District of Illinois.

Mr. Fox is listed in the current editions of New York Super Lawyers and was recognized in Benchmark Litigation as a New York "Litigation Star."

Mr. Fox is the author of "Current Issues and Strategies in Discovery in Securities Litigation," ATLA, 1989 Reference Material; "Securities Litigation: Updates and Strategies," ATLA, 1990 Reference Material; and "Contributory Trademark Infringement: The Legal Standard after Inwood Laboratories, Inc. v. Ives Laboratories," University of Bridgeport Law Review, Vol. 4, No. 2.

During law school, Mr. Fox was the notes and comments editor of the University of Bridgeport Law Review.

**Education:**

- B.A., Queens College (1981)
- J.D., Bridgeport School of Law (1984)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1985)
- Bar of the District of Columbia (2013)
- U.S. Supreme Court
- U.S. Courts of Appeals for the First, Second, Fourth, Sixth and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York, the District of Colorado and the District of Columbia

**Professional Affiliations:**

- Federal Bar Council
- American Bar Association
- Association of the Bar of the City of New York
- Association of Trial Lawyers of America (Chairman, Commercial Law Section, 1991-92)

Mr. Fox can be reached by email at: FFox@kaplanfox.com

**GREGORY K. ARENSON i**s a seasoned business litigator with experience representing clients in a variety of areas, including antitrust, securities, and employee termination. Mr. Arenson is principally a plaintiffs' antitrust lawyer. His economics and econometrics background have provided a foundation for his recognized expertise in handling complex economic issues in antitrust cases, both as to class certification and on the merits. He has worked with economic experts in, among others, *In re Air Cargo Shipping Servs. Antitrust Litig.*, Master File No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014), *adopted in its entirety*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82 (D. Conn. 2009); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007); *In re Carbon Black Antitrust Litig.*, No. Civ. A. 03-10191-DPW, MDL No. 1543, 2005 WL 102966 (D. Mass. Jan. 18, 2005); *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79 (E.D. Pa. 2003); *Bearings Cases*, Case No. 12-00501, and *Wire Harness Cases*, Case No. 12-00101, part of *In re Automotive Parts Antitrust Litig.*, E.D. Mich., Master File No. 12-md-02311; *Affiliated Foods, Inc., et al. v. Tri-Union Seafoods, LLC d/b/a Chicken of the Sea Int'l, et al.*, part of *In re Packaged Seafood Prods. Antitrust Litig.*, S.D. Cal., Case No. 15-MD-2670 JLS (MDD); *In re Domestic Airline Travel Antitrust Litig.*, D.D.C., MDL Docket No. 2656, Misc. No. 15-1404 (CKK); *In re Dental Supplies Antitrust Litig.*, E.D.N.Y., Case No. 16-cv-696 (BMC)(GRB); *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, D.N.J., Civ. No. 12-711 (AET)(LHG); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, E.D. Tenn., No. 1:14-md-2508; and *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, E.D. La., MDL No. 2328. He also argued the appeals in *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), and *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009).  He has been ranked as a Super Lawyer for several years.

Mr. Arenson has been a partner in Kaplan Fox & Kilsheimer LLP since 1993. Prior to joining Kaplan Fox, he was a partner with Proskauer Rose LLP. Earlier in his career, he was a partner with Schwartz Klink & Schreiber and an associate with Rudnick & Wolfe (now DLA Piper).

Mr. Arenson has been active in the New York State Bar Association. He has been a member of the House of Delegates and Sections Caucus from 2013 to 2017 and since

June 2019. He was Chair of the Commercial and Federal Litigation Section from June 2013 through May 2014. He has been Co-Chair of the New York State Bar Association Task Force on the State of Our Courthouses, whose report was adopted by the House of Delegates on June 20, 2009; a member of the New York State Bar Association Special Committee on Standards for Pleadings in Federal Litigation, whose report was adopted by the House of Delegates on June 19, 2010; and a member of the New York State Bar Association Special Committee on Discovery and Case Management in Federal Litigation, whose report was adopted by the House of Delegates on June 23, 2012.

Mr. Arenson has written frequently on discovery issues. His published articles include: "Rule 68 Offers of Judgment and Mootness, Especially for Collective or Class Actions," 20 NY LITIGATOR 25 (2015); "Report on Proposed Amendments to Federal Rule of Civil Procedure 45," 17 NY LITIGATOR 21 (2012); "Rule 8 (a)(2) After *Twombly*: Has There Been a Plausible Change?" 14 NY LITIGATOR 23 (2009); "Report on Proposed Federal Rule of Evidence 502," 12 NY LITIGATOR 49 (2007); "Report: Treating the Federal Government Like Any Other Person: Toward a Consistent Application of Rule 45," 12 NY LITIGATOR 35 (2007); "Report of the Commercial and Federal Litigation Section on the Lawsuit Abuse Reduction Act of 2005," 11 NY LITIGATOR 26 (2006); "Report Seeking To Require Party Witnesses Located Out-Of-State Outside 100 Miles To Appear At Trial Is Not A Compelling Request," 11 NY LITIGATOR 41 (2006); "Eliminating a Trap for the Unwary: A Proposed Revision of Federal Rule of Civil Procedure 50," 9 NY LITIGATOR 67 (2004); "Committee Report on Rule 30(b)(6)," 9 NY LITIGATOR 72 (2004); "Who Should Bear the Burden of Producing Electronic Information?" 7 FEDERAL DISCOVERY NEWS, No. 5, at 3 (April 2001); "Work Product vs. Expert Disclosure – No One Wins," 6 FEDERAL DISCOVERY NEWS, No. 9, at 3 (August 2000); "Practice Tip: Reviewing Deposition Transcripts," 6 FEDERAL DISCOVERY NEWS, No. 5, at 13 (April 2000); "The Civil Procedure Rules: No More Fishing Expeditions," 5 FEDERAL DISCOVERY NEWS, No. 9, at 3 (August 1999); "The Good, the Bad and the Unnecessary: Comments on the Proposed Changes to the Federal Civil Discovery Rules," 4 NY LITIGATOR 30 (1998); and "The Search for Reliable Expertise: Comments on Proposed Amendments to the Federal Rules of Evidence," 4 NY LITIGATOR 24 (1998). He was co-editor of FEDERAL RULES OF CIVIL PROCEDURE, 1993

AMENDMENTS, A PRACTICAL GUIDE, published by the New York State Bar Association; and a co-author of "Report on the Application of Statutes of Limitation in Federal Litigation," 53 ALBANY LAW REVIEW 3 (1988).

Mr. Arenson serves as a mediator in the U.S. District Court for the Southern District of New York. In addition, he is an active alumnus of the Massachusetts Institute of Technology, having served as a member of the Corporation, a member of the Corporation Development Committee, vice president of the Association of Alumni/ae, and member of the Annual Fund Board (of which he was a past chair).

**Education:**

- S.B., Massachusetts Institute of Technology (1971)
- J.D., University of Chicago (1975)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Illinois (1975)
- Bar of the State of New York (1978)
- U.S. Supreme Court
- U.S. Courts of Appeals for the Second, Third and Seventh Circuits
- U.S. District Courts for the Northern and Central Districts of Illinois, Southern and Eastern Districts of New York, and Eastern District of Michigan
- U.S. Tax Court

Mr. Arenson can be reached by email at: GArenson@kaplanfox.com

**LAURENCE KING** first joined Kaplan Fox as an associate in 1994. He became a partner of the firm in 1998. While Mr. King initially joined the firm in New York, in 2000 he relocated to San Francisco to open the firm's first West Coast office. He is now partner-in-charge of the firm's San Francisco and Los Angeles offices.

Mr. King practices primarily in the areas of securities litigation, with an emphasis on institutional investor representation and consumer protection litigation. He has also practiced in the area of employment litigation. Mr. King has played a substantial role in cases that have resulted in some of the largest recoveries ever obtained by Kaplan Fox, including *In re 3Com Securities Litigation* (N.D. Ca.), *In re Informix Securities Litigation* (N.D. Ca.), *AOL Time Warner Cases I & II* (Ca. Sup. Ct., L.A. Cty.) and *Providian Credit*

*Card Cases* (Ca. Sup. Ct., S.F. Cty.).

An experienced trial lawyer, prior to joining Kaplan Fox Mr. King served as an assistant district attorney under the legendary Robert Morgenthau in the Manhattan (New York County) District Attorney's Office, where he tried numerous felony prosecutions to jury verdict. At Kaplan Fox, he was a member of the trial team for two securities class actions tried to verdict, *In re Biogen Securities Litigation* (D. Mass.) and *In re Health Management Securities Litigation* (E.D.N.Y.). Mr. King has also participated in trial preparation for numerous other cases in which favorable settlements were achieved for our clients on or near the eve of trial.

Mr. King has been selected for inclusion in the Northern California *SuperLawyers* each year since 2012, and has previously served as Vice-Chair, and then as Co-Chair, of the American Association for Justice's Class Action Litigation Group of the American Association for Justice. He was also selected for inclusion to the San Francisco Super Lawyers list (Securities Litigation) for 2012, 2013, 2014 and 2015.

**Education:**

- B.S., Wharton School of the University of Pennsylvania (1985)
- J.D., Fordham University School of Law (1988)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1989)
- Bar of the State of California (2000)
- U.S. Court of Appeals for the Second, Third, Fifth, Ninth and Tenth Circuits
- U.S. District Courts for the District of New Jersey, Eastern District of Pennsylvania, Southern and Eastern Districts of New York, and Northern, Central and Southern Districts of California

**Professional Affiliations:**

- Bar Association of San Francisco
- American Bar Association
- American Association for Justice
- San Francisco Trial Lawyers' Association
- American Business Trial Lawyers

Mr. King can be reached by email at: LKing@kaplanfox.com

16

**JOEL B. STRAUSS** first associated with Kaplan Fox in 1992 and became a partner in the firm in 1999. He practices in the area of securities and consumer fraud class action litigation. He has been repeatedly selected for inclusion to the New York Super Lawyers list (Securities Litigation) (2007-2010, 2014-2020) and was named to Lawdragon's 500 Leading Plaintiff Financial Lawyers in the U.S. (2019, 2020).

Prior to law school, Mr. Strauss was a senior auditor at the accounting firm Coopers & Lybrand (n/k/a PricewaterhouseCoopers). Combining his accounting background and legal skills, he has played a critical role in successfully prosecuting numerous securities class actions across the country on behalf of shareholders. Mr. Strauss was one of the lead trial lawyers for the plaintiffs in the first case to go to trial and verdict under the Private Securities Litigation Reform Act of 1995.

More recently, Mr. Strauss has been involved in representing the firm's institutional clients in the following securities class actions, among others: *In re Bank of America Corp. Securities, ERISA & Derivative Litig.* (S.D.N.Y.) ($2.425 billion settlement); *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.* (S.D.N.Y.) ($475 million settlement); *In re Prestige Brands Holdings Inc. Securities Litig.* (S.D.N.Y.) ($11 million settlement); *In re Gentiva Securities Litig.* (E.D.N.Y.) ($6.5 million settlement); and *In Re SunPower Securities Litig.* (N.D.Cal) ($19.7 million settlement). He has also served as lead counsel for lead plaintiffs in *In re OCA, Inc. Securities Litig.* (E.D. La.) ($6.5 million settlement); *In re Proquest Company Securities Litig.* (E.D. Mich.) ($20 million settlement) and *In re Rocket Fuel, Inc. Securities Litig.* (N.D.Cal.) ($3.15 million settlement). Mr. Strauss also played an active role for plaintiff investors in *In Re Countrywide Financial Corporation Securities Litig.* (C.D.Cal), which settled for more than $600 million.

In the consumer protection area, Mr. Strauss served as Chair of Plaintiffs' Non-Party Discovery Committee in the *Baycol Products Litig.*, where there were more than $350 million in settlements.

Mr. Strauss is also active in the firm's growing data privacy practice. In July 2017 he moderated a panel on U.S. Data Privacy Laws at a conference in Tel Aviv. And, among other data privacy cases in which he has played an active role, Mr. Strauss served as one of plaintiffs' co-lead counsel in *Doe vs. CVS Healthcare Corp., et. al.,* (S.D. Ohio), a

class action concerning allegations of the violation of medical privacy of approximately 4,500 class members. The Court approved of a $4.4 million settlement of the action on January 30, 2020.

Although currently practicing exclusively in the area of law, Mr. Strauss is a licensed Certified Public Accountant in the State of New York.

Mr. Strauss has also been a guest lecturer on the topics of securities litigation, auditors' liability and class actions for seminars sponsored by the Practicing Law Institute and the Association of the Bar of the City of New York and is an adjunct instructor in the Political Science department at Yeshiva University.

Since June 2014 Mr. Strauss has served as a member of the New York State Bar Association's Committee on Legal Education and Admission to the Bar. And, in July 2018, Mr. Strauss was invited to serve as a member of the Rutgers Cybersecurity Advisory Board.

Among his various communal activities, Mr. Strauss currently serves as Co-President of Friends of Jerusalem College of Technology (Machon Lev), is a member of Yeshiva University's General Counsel's Council, a member of the Alumni Advisory Group at the Benjamin N. Cardozo School of Law, serves as Chair of the Career Guidance and Placement Committee of Yeshiva University's Undergraduate Alumni Council, is on the Board of Directors of Yavneh Academy in Paramus, NJ (and is a former Vice -President and Finance Committee Chair of the school) and is an Advisory Board Member and Mentor in the Orthodox Union's Impact Accelerator program.

In March 2001 the New Jersey State Assembly issued a resolution recognizing and commending Mr. Strauss for his extensive community service and leadership. In 2012 Mr. Strauss received The Alumni Partner of the Year Award from Yeshiva University's Career Development Office.

**Education:**

- B.A., Yeshiva University (1986)
- J.D., Benjamin N. Cardozo School of Law (1992)
- HBX|Harvard Business School, Certificate in Entrepreneurship Essentials (2017)

- AICPA - Cybersecurity Fundamentals for Finance and Accounting Professionals Certificate (2018)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New Jersey (1992)
- Bar of the State of New York (1993)
- U.S. Court of Appeals for the First, Second and Third Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York and the District of New Jersey

**Professional Affiliations:**

- American Bar Association (member, Litigation Section, Rule 23 subcommittee)
- Association of the Bar of the City of New York
- New York State Bar Association
- American Institute of Certified Public Accountants

Mr. Strauss can be reached by email at: JStrauss@kaplanfox.com

**HAE SUNG NAM** joined Kaplan Fox in 1999 and became a partner of the firm in 2005. She practices in the areas of securities and antitrust litigation, mainly focusing in the firm's securities practice.

Since joining the firm, Ms. Nam has been involved in all aspects of the securities practice, including case analysis for the firm's institutional investor clients. She has been a key member of the litigation team representing a number of institutional clients in securities litigation, including cases against Bank of America Corporation, Fannie Mae and Ambac Financial Group, Inc.. She also has a focus in prosecuting opt-out actions on behalf of the firm's clients and has played a significant role in *AOL Time Warner Cases I & II* (Ca. Sup. Ct., L.A. Cty.) and *State Treasurer of the State of Michigan v. Tyco International, Ltd., et al*, and an opt-out case against Petrobras representing Ohio Public Employees Retirement System.

Ms. Nam has also been involved in the firm's antitrust practice, representing purchasers of flat glass products in a class action alleging a price-fixing conspiracy. She is currently prosecuting an antitrust case against Keurig. Prior to joining the firm, Ms.

Nam was an associate with Kronish Lieb Weiner & Hellman LLP, where she trained as a transactional attorney in general corporate securities law and mergers and acquisitions.

Ms. Nam graduated magna cum laude, with a duel degree in political science and public relations from Syracuse University's Maxwell School and S.I. Newhouse School of Public Communications.  Ms. Nam obtained her law degree, with honors, from George Washington University Law School.  During law school, Ms. Nam was a member of the George Washington University Law Review.  She is the author of a case note, "Radio— Inconsistent Application Rule," 64 Geo. Wash. L. Rev. (1996).  In addition, she also served as an intern for the U.S. Department of Justice, Antitrust Division.

**Education:**
- B.A., magna cum laude, Syracuse University (1994)
- J.D., with honors, George Washington University Law School (1997)

**Bar Affiliations and Court Admissions:**
- Bar of the State of New York (1998)
- U.S. Court of Appeals for the Eleventh Circuit
- U.S. District Courts for the Southern and Eastern Districts of New York, and Eastern District of Wisconsin

Ms. Nam can be reached by email at: HNam@kaplanfox.com

**DONALD R. HALL** has been associated with Kaplan Fox since 1998 and became a partner of the firm in 2005. He practices in the areas of securities, antitrust and consumer protection litigation. Mr. Hall is actively involved in maintaining and establishing the firm's relationship with institutional investors and oversees the Portfolio Monitoring and Case Evaluation Program for the firm's numerous institutional investors.

Mr. Hall was a member of the trial team prosecuting *In re Bank of America*, which settled for $2.425 billion, the single largest securities class action recovery for violations of Section 14(a) of the Exchange Act and one of the top securities litigation settlements obtained in history.  He has represented many of the firm's institutional investor clients in securities class actions, including in *In re Eletrobras Secs. Litig.,* Case No. 15-cv-5754 as co-lead counsel in a class action against a Brazilian company and in *Kasper v. AAC Holdings, Inc.*, No. 15-cv-00923, also as co-lead counsel.   Mr. Hall successfully

represented institutional clients in *In re Merrill Lynch*, which settled for $475 million; *In re Fannie Mae* 2008, which settled for $170 million; In *re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411 (S.D.N.Y.) ("*In re Ambac*"); *In re Majesco Securities Litigation*, No. 05-cv-3557 (D.N.J.); and *In re Escala Group, Inc. Secs. Litig.,* No. 05-cv-3518 (S.D.N.Y.) ("*In re Escala*").  Additionally, he was a member of the litigation team in *AOL Time Warner Cases I & II*, an opt-out action brought by institutional investors that settled just weeks before trial, resulting in a recovery of multiples of what would have been obtained had those investors remained members of the class action.

Mr. Hall has played a key role in many of the firm's securities and antitrust class actions resulting in substantial recoveries for the firm's clients, including *In re Merrill Lynch Research Reports Securities Litigation* (arising from analyst reports issued by Henry Blodget); *In re Salomon Analyst Williams Litigation* and *In re Salomon Focal Litigation* (both actions stemming from analyst reports issued by Jack Grubman); *In re Flat Glass Antitrust Litigation*; and *In re Compact Disc Antitrust Litigation*.

Mr. Hall graduated from the College of William and Mary in 1995 with a B.A. in Philosophy and obtained his law degree from Fordham University School of Law in 1998. During law school, Mr. Hall was a member of the Fordham Urban Law Journal and a member of the Fordham Moot Court Board. He also participated in the Criminal Defense Clinic, representing criminal defendants in federal and New York State courts on a pro-bono basis.

**Education:**

- B.A., College of William and Mary (1995)
- J.D., Fordham University School of Law (1998)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Connecticut
- Bar of the State of New York
- U.S. Supreme Court
- U.S. Courts of Appeals for the First, Second and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- American Bar Association

- ▪ Association of Trial Lawyers of America
- ▪ New York State Bar Association

Mr. Hall can be reached by email at: DHall@kaplanfox.com

**JEFFREY P. CAMPISI** is involved in representing the firm's institutional and individual clients in securities and shareholder actions, and other complex litigation.

Mr. Campisi currently represents the College of Applied Arts and Technology Pension Plan in *Rauch v. Vale, S.A., et al.,* 19-cv-00526 (E.D.N.Y.); the City of Warwick Retirement Fund in *Lewis v. YRC Worldwide, Inc., et al.*, 19cv00001 (N.D.N.Y.), IWA Forest Industry Pension Plan in *In re Textron, Inc. Securities Litigation,* 19-cv-7881 (S.D.N.Y.); and represents individual investors in *In re Twitter, Inc. Securities Litigation,* Civil Action 4:19-7149-YRG (N.D. Cal.); *In re Sundial Growers Inc. Securities Litigation,* Index No.: 655178/2009 (N.Y. County Supreme Court): *In re Sonim Technologies Inc. Securities Litigation,* Leas Case No. 19-CIV-5564 (California Superior Court, San Mateo County); and *Convery v. Jumia Technologies AG, et al.,* Index No. 656021/2019 (N.Y. County Supreme Court).

In the past, Mr. Campisi has represented Oklahoma Police Pension and Retirement Fund (as liaison counsel) in *Milbeck v. Truecar, Inc. et al.,* 18-cv-2612 (C.D. Cal.) ($28.25 million recovered); the Tennessee Consolidated Retirement System in *In re Fannie Mae 2008 Securities Litigation*, 08cv7831 (S.D.N.Y.) ($170 million recovered); State Teachers' Retirement System of Ohio in *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, 07cv9633 (S.D.N.Y.) ($475 million recovered), one of the largest recoveries in a securities class action; the Virginia Retirement System in *In re Escala Group, Inc. Securities Litigation*, 06cv3518 (S.D.N.Y.) ($18 million in cash and stock recovered); the Los Angeles City Employees' Retirement System in *In re Sequenom, Inc. Securities Litigation*, 09cv921 (S.D. Cal.) ($43 million in cash and stock recovered, as of February 4, 2010, and significant corporate governance reforms) and in *In re Gentiva Securities Litigation*, 10cv5064 (E.D.N.Y.) ($6.5 million recovered).

Other cases include *Schueneman v. Arena Pharms., et al.*, 10cv1959 (S.D. Cal.) ($24 million recovered); K*asper v. AAC Holdings, Inc., et al.*, 15cv923 (M.D. Tenn.) ($25

million recovered); *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) ($38.5 million recovered); *In re Violin Memory, Inc. Securities Litigation,* 13cv5486 (N.D. Cal.) ($7.5 million recovered); *In re Nevsun Resources Ltd.*, 12cv1845 (S.D.N.Y.) (approximately $6 million settlement); *In re Countrywide Financial Corporation Securities Litigation*, 07cv5295 (C.D. Cal) ($624 million recovered), *In re Proquest Company Securities Litigation*, 06cv10619 (E.D. Mich.) ($20 million recovered), and *Friedman v. Penson Worldwide, Inc.*, 11cv2098 (N.D. Tex.) ($6.5 million recovered).

Mr. Campisi is a graduate of Villanova University School of Law (*summa cum laude*), where he was a member of the Villanova Law Review and the *Order of the Coif*. Mr. Campisi earned a B.A. from Georgetown University (*cum laude*). Mr. Campisi served as a law clerk to the Late Honorable Herbert J. Hutton, United States District Judge for the United States District Court for the Eastern District of Pennsylvania.

Mr. Campisi is admitted to the Bar of the State of New York and the United States District Courts for the Northern, Southern, Eastern and Western Districts of New York, the United States District Court for the Western District of Tennessee, and the United States Courts of Appeals for the Ninth and Tenth Circuits.

**Education:**
- B.A., cum laude, Georgetown University (1996)
- J.D., summa cum laude, Villanova University School of Law (2000)
  Member of Law Review and Order of the Coif

**Bar affiliations and court admissions:**
- Bar of the State of New York
- U.S. Courts of Appeals for the Ninth and Tenth Circuits
- U.S. District Courts for the Southern, Eastern, Northern and Western Districts of New York, and Western District of Tennessee

**Professional affiliations:**
- Federal Bar Council
- American Association for Justice

Mr. Campisi can be reached by email at: jcampisi@kaplanfox.com

**MELINDA CAMPBELL** has been associated with Kaplan Fox since September 2004 and became a partner of the firm in 2012. She represents investors and institutions in securities fraud class action litigation.

Mrs. Campbell's noteworthy cases include: *In re Bank of America Corp. Securities Litigation*, MDL No. 2058 (S.D.N.Y.); *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411(NRB) (S.D.N.Y.); *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831(PAC) (S.D.N.Y.), and *In re Eletrobras Securities Litigation*, 15-cv-5754 (S.D.N.Y.) ($14.75 million settlement).

Mrs. Campbell obtained her J.D. from the University of Pennsylvania Law School. While attending law school, she successfully represented clients of the Civil Practice Clinic of the University of Pennsylvania Law School and provided pro bono legal services through organizations including the Southern Poverty Law Center.

Mrs. Campbell obtained her undergraduate degree from the University of Missouri (*cum laude*).

Mrs. Campbell is a member of the Federal Courts Committee of the New York County Lawyers Association and served as a panelist in a continuing legal education course offered by the Committee concerning waiver of attorney-client privilege under Federal Rule of Evidence 501.  Additionally, Mrs. Campbell is a member of the New York State Bar Association, the National Association of Women Lawyers, and the New York Women's Bar Association.

**Education:**
- B.A., University of Missouri (2000)
- J.D., University of Pennsylvania Law School (2004)

**Bar affiliations and court admissions:**
- Bar of the State of New York (2005)
- U.S. Courts of Appeals for the First, Second and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional affiliations:**
- American Bar Association
- New York State Bar Association
- New York County Lawyers Association

- New York Women's Bar Association
- National Association of Women Lawyers

Mrs. Campbell can be reached by email at: MCampbell@kaplanfox.com

**ELANA KATCHER** has extensive complex antitrust litigation experience drawn from her work on both the plaintiff and defense sides.  Ms. Katcher began her career in antitrust litigation as an associate at Sullivan & Cromwell LLP where she was a member of the trial team defending Microsoft Corporation against a series of private class actions brought in courts around the country, as well as representing other major defendants in bet-the-company litigation.

Since 2007, Ms. Katcher has been instrumental in some of Kaplan Fox's largest cases, including *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.), and a successful bellwether trial in *Neurontin Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1629 (D. Mass.). In addition, Ms. Katcher co-drafted a successful opposition to the first Rule 12(b)(6) motion to dismiss in the sprawling Generic Pharmaceutical antitrust actions, *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712 (S.D.N.Y. 2017) (Rakoff, J.), and continues to work on behalf of the Direct Purchaser Plaintiffs in the *Generic Pharmaceutical* antitrust actions now pending before District Judge Cynthia M. Rufe in the Eastern District of Pennsylvania, including as part of the briefing team that recently prevailed against the first tranche of motions to dismiss brought in that litigation.  *See In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-CB-27243, 2018 WL 5003450 (E.D. Pa. Oct. 16, 2018).

In addition, Ms. Katcher represents significant corporate clients, including clients listed on Nasdaq, in individual antitrust actions in Packaged Seafood in which she has recently co-argued a key motion to dismiss before District Judge Janis L. Sammartino, obtaining a significant victory where the court upheld jurisdiction over two foreign defendants. *See In re Packaged Seafood Prod. Antitrust Litig.,* No. 15-MD-2670 JLS (MDD), 2018 WL 4222506 (S.D. Cal. Sept. 5, 2018).  Ms. Katcher has also taken major depositions of key witnesses in the U.S., Hong Kong, and Frankfurt, in Air Cargo, Packaged Seafood, and other cases.

Prior to Kaplan Fox, she was an associate at Sullivan & Cromwell LLP and King & Spalding LLP, where she participated in the defense of major companies, including at trial and in arbitration.

**Education:**

- B.A. Oberlin College
- J.D., New York University

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- New York State Bar Association
- New York City Bar Association

Ms. Katcher can be reached by email at: ekatcher@kaplanfox.com

**MATTHEW P. McCAHILL** was associated with Kaplan Fox from 2003 to 2005, re-joined the firm in May 2013 and became a partner in 2016. He practices in the areas of antitrust and securities litigation, as well as commercial litigation.  From 2006 to early 2013, Mr. McCahill was an associate at Berger & Montague, P.C. in Philadelphia. While focusing on insurance and antitrust class action cases, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) and *Ormond et al. v. Anthem, Inc. et al.*, Case No. 1:05-cv-01908-TWP-TAB (N.D. Ind.) (related to the demutualization of Anthem Insurance, which settled for $90 million in 2012), he also represented corporations and bankruptcy trustees in commercial litigation involving claims for breach of contract, breach of fiduciary duty and fraudulent conveyance.

Mr. McCahill's practice includes representation of plaintiffs opting out of class actions.  He currently represents large retailers who opted out of the *Payment Card* class to pursue their own antitrust actions against Visa and MasterCard challenging the networks' merchant rules and their interchange (or "swipe") fees.  Among the merchants he and the firm represent in that case are E-Z Mart Stores, Inc., Sunoco, LP (formerly known as Susser Holdings Corp., operator of the Stripes® convenience store chain),

Jacksons Food Stores, Sheetz, Inc., Kum & Go, L.C., Einstein Noah Restaurant Group, Furniture Row, Inc. and NPC International, Inc. (the world's largest franchisee of Pizza Hut restaurants).

Mr. McCahill is part of the Kaplan Fox team representing large grocery chains and food distributors (including Giant Eagle, Inc., Associated Food Stores, Inc., Affiliated Foods, Inc., Western Family Foods, Inc. and the McLane Company, Inc., among others) in individual actions in *In re Packaged Seafood Products Antitrust Litigation*, MDL No. 2670 (S.D. Cal.), alleging price-fixing and other antitrust violations against Tri-Union Seafoods, LLC (d/b/a Chicken of the Sea), Bumble Bee Foods, LLC, and others.  He and other Kaplan Fox lawyers are also representing the Ohio Public Employees Retirement System in an individual securities fraud action against Brazilian energy conglomerate Petrobras in *In re Petrobras Securities Litigation*, Civ. Action No. 14-cv-9662 (JSR) (S.D.N.Y.).

Mr. McCahill's current and past involvement in class action litigation at Kaplan Fox includes: *In re Cast Iron Soil Pipe Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.), where he currently represents a proposed class of direct purchasers of cast iron soil pipes and fittings in an antitrust case against the Cast Iron Soil Pipe Institute, Charlotte Pipe & Foundry Co. and McWane, Inc. and its subsidiaries; *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) (partial settlement of $38 million); *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D.N.J.) (delayed-generic entry action brought by direct purchasers of Pfizer's drug Neurontin, which settled for $190 million following nearly 12 years of litigation).

In 2014, 2015 and 2016, Mr. McCahill was named a "New York Metro Super Lawyer – Rising Star" in antitrust litigation, and was selected as a "Pennsylvania Super Lawyer – Rising Star" (also in antitrust litigation) in 2012 and 2013.  He is a member of the American, Pennsylvania State, New York State and New York City bar associations. Mr. McCahill's *pro bono* efforts focus primarily on representing Marine Corps veterans in benefits proceedings before the Veterans Administration.

Mr. McCahill is a 2000 graduate of Rutgers College where he received a B.A., *summa cum laude*, in history and was elected to Phi Beta Kappa. He graduated

from Fordham Law School in 2003, where he was a member of the *Fordham Urban Law Journal*. He is fluent in French and proficient in Spanish.

**Education:**

- B.A., History, *summa cum laude*, Rutgers College (2000)
- J.D., Fordham Law School (2003)

**Bar Affiliations and Court Admissions:**

- Bars of the State of New York and the Commonwealth of Pennsylvania
- U.S. Court of Appeals for the Second Circuit
- U.S. District Courts for the Southern and Eastern Districts of New York and the Eastern District of Pennsylvania

**Professional Affiliations:**

- American Bar Association
- New York State Bar Association
- Pennsylvania Bar Association
- Association of the Bar of the City of New York

Mr. McCahill can be reached by email at: mmccahill@kaplanfox.com

**DAVID A. STRAITE** joined the New York office of Kaplan Fox in 2013 and became a partner in 2017.  He focuses on digital privacy litigation, helping to protect consumer privacy in class actions against Facebook, Google, Yahoo and others.  In 2012, M.I.T. Technology Review magazine called Mr. Straite "something of a pioneer" in digital privacy litigation.  Mr. Straite also protects investors in securities, corporate governance, and hedge fund litigation.  Prior to joining the firm, Mr. Straite helped launch the US offices of London-based Stewarts Law LLP, where he was the global head of investor protection litigation, the partner in residence in New York, and a member of the US executive committee.  Prior to Stewarts Law he worked in the Delaware office of Grant & Eisenhofer and the New York office of Skadden Arps.

Mr. Straite speaks frequently on topics related to both privacy and investor protection.  Most recently:

January 2020: featured panelist, "Balancing Government Investigation and Class Action Following a Data Breach" seminar at the Southern District of New York, hosted by the Federal Bar Council and moderated by the Hon. Naomi Reice

Buchwald.

March 2018: featured panelist at the "Recent Developments in Cybersecurity and Data Privacy" seminar at the Southern District of New York, hosted by the Federal Bar Council and moderated by the late Hon. Deborah Batts.

February 2017: featured panelist on the "Data Privacy and Article III Standing" panel at the Federal Bar Council's 2017 Winter Meeting along with Dean Erwin Chemerinsky and the Hon. Lorna Schofield.

February 2016: featured speaker at the St. John's University "Cyber Law" CLE weekend.

February 2013: featured panelist on the hedge fund panel at the February 6, 2013 meeting of the National Association of Public Pension Attorneys in Washington, D.C. ("Structuring Investments - Do I get to Go to the Cayman Islands?")

David also debated the general counsel of Meetup, Inc. during 2013 Social Media Week ("David vs. Goliath: the Global Fight for Digital Privacy") and gave a guest lecture on the Legal Talk Network's "Digital Detectives" podcast.  He has also given interviews to Channel 10 (Tel Aviv), BBC World News (London), SkyNews (London), CBS Ch. 2 (New York) and CBS news radio (Philadelphia).

Mr. Straite is also an adjunct professor at Yeshiva University's Sy Syms School of Business, teaching Business Law and Ethics for the Fall semester (2015, 2016, 2017 and 2019).

Mr. Straite has co-authored *Google and the Digital Privacy Perfect Storm* in E-Commerce Law Reports (UK) (2013), authored *Netherlands: Amsterdam Court of Appeal Approves Groundbreaking Global Settlements Under the Dutch Act on the Collective Settlement of Mass Claims*, in The International Lawyer's annual "International Legal Developments in Review" (2009), and was a contributing author for Maher M. Dabbah & K.P.E. Lasok, QC, Merger Control Worldwide (2005).

Mr. Straite's recent litigation includes co-leading a class of investors in *In re: CSO Hedge Fund Litigation* New York federal court (settlement approved January 2016); pursuing digital privacy claims as co-class counsel in *In re: Facebook Internet Tracking Litigation* and *In re Yahoo Mail Litigation* in California (settlement approved August 2016) and *In re: Google Inc. Cookie Placement Consumer Privacy Litigation* in Delaware;

pursuing corporate governance claims in Delaware Chancery Court in a number of matters; and helping to develop the first multi-claimant test of the UK's new prospectus liability statute in a case against the Royal Bank of Scotland in the English courts.

**Education:**

- B.A., Tulane University, Murphy Institute of Political Economy (1993)
- J.D., *magna cum laude*, Villanova University School of Law (1996), Managing Editor, Law Review and Order of the Coif

**Bar affiliations and court admissions:**

- Bar of the State of New York (2000)
- Bar of the State of Delaware (2009)
- Bar of the State of Pennsylvania (1996)
- Bar of the State of New Jersey (1996)
- Bar of the District of Columbia (2008)
- U.S. District Courts for the Southern and Eastern Districts of New York; Eastern District of Pennsylvania; and the District of Delaware
- U.S. Courts of Appeals for the Second, Third and Ninth Circuits

**Professional affiliations:**

- American Bar Association
  - Section of Litigation (Privacy and Data Security Committee)
  - Section of Business Law
- Delaware Bar Association
- New York American Inn of Court (Master of the Bench)
- Internet Society
- Member, International Association of Privacy Professionals

Mr. Straite can be reached by email at: dstraite@kaplanfox.com

## OF COUNSEL

**GARY L. SPECKS** practices primarily in the area of complex antitrust litigation. He has represented plaintiffs and class representatives at all levels of litigation, including appeals to the U.S. Courts of Appeals and the U.S. Supreme Court.  In addition, Mr. Specks has represented clients in complex federal securities litigation, fraud litigation,

civil RICO litigation, and a variety of commercial litigation matters.  Mr. Specks is resident in the firm's Chicago office.

During 1983, Mr. Specks served as special assistant attorney general on antitrust matters to Hon. Neil F. Hartigan, then Attorney General of the State of Illinois.

**Education:**

- B.A., Northwestern University (1972)
- J.D., DePaul University College of Law (1975)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Illinois (1975)
- U.S. Courts of Appeals for the Third, Fifth, Seventh, Ninth and Tenth Circuits
- U.S. District Court for the Northern District of Illinois, including Trial Bar

**Professional Affiliations:**

- American Bar Association
- Illinois Bar Association
- Chicago Bar Association

Mr. Specks can be reached by email at: GSpecks@kaplanfox.com


**W. MARK MCNAIR** has been associated with Kaplan Fox since 2003. He practices in the area of securities litigation. Mr. McNair is actively involved in maintaining and establishing the Firm's relationship with institutional investors and is active in the Firm's Portfolio Monitoring and Case Evaluation Program for the Firm's numerous institutional investors.

Mr. McNair is a frequent speaker at various institutional events, including the National Conference of Public Employee Retirement Systems and the Government Finance Office Association.

Prior to entering private practice, Mr. McNair was an Assistant General Counsel at the Municipal Securities Rulemaking Board where he dealt in a wide range of issues related to the trading and regulation of municipal securities. Previously, he was an attorney in the Division of Market Regulation at the Securities and Exchange Commission. At the Commission his work focused on the regulation of the options markets and derivative products.

**Education:**

- B.A. with honors, University of Texas at Austin (1972)

- J.D. University of Texas at Austin (1975)

- L.L.M. (Securities) Georgetown University (1989)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Texas (1975)

- Bar of the State of Maryland (1995)

- Bar of the State of Pennsylvania (1995)

- Bar of the District of Columbia (2008)

- U.S. Courts of Appeals for the Third, Fifth, Seventh, Ninth and Tenth Circuits

- U.S. District Court for the Northern District of Illinois, including Trial Bar

Mr. McNair can be reached at MMcnair@kaplanfox.com


**MAIA C. KATS** practices in the area of consumer litigation, with a special emphasis on deceptive labeling in the food and dietary supplements context. Prior to joining Kaplan Fox, Maia was the Litigation Director for the Center for Science in the Public Interest, where she led the department to unprecedented success. She is widely regarded as a leading expert in food litigation and is a frequent speaker on the topic nationwide. Maia is the consumer representative on FDLI's 2019 Food Advertising, Labeling, and Litigation Conference Planning Committee. She is based in Washington, DC.

Maia has served as lead or co-lead counsel in many landmark, deceptive marketing class actions that favorably resolved including, most recently, Coca-Cola (Vitaminwater), PepsiCo (Naked Juice), General Mills (Cheerios Protein), and Campbell's (Plum Organics). She is currently class counsel in numerous deceptive "health halo" cases, including against CVS (Algal-DHA memory supplements), Jamba Juice (Smoothies), and Coca-Cola and the American Beverage Association (misleading marketing of sugar drinks as not linked scientifically to obesity and diabetes). Coverage of her cases routinely appears in the press, including on Good Morning America, ABC News, The Wall Street Journal, The Washington Post, NPR, and more.

**Education**:

- B.A. University of Michigan (1984)
- J.D. University of Michigan Law School (1988)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1989)
- Bar of the State of District of Columbia (1990)
- U.S. Courts of Appeals for the Second Circuit
- U.S. District Court for the Northern District of California and District of Columbia

Ms. Kats can be reached at MKats@kaplanfox.com


**WILLIAM J. PINILIS** practices in the areas of commercial, consumer and securities class action litigation.

He has been associated with Kaplan Fox since 1999 and is resident in the firm's New Jersey office.

In addition to his work at the firm, Mr. Pinilis has served as an adjunct professor at Seton Hall School of Law since 1995 and is a lecturer for the New Jersey Institute for Continuing Legal Education.  He has lectured on consumer fraud litigation and regularly teaches the mandatory continuing legal education course Civil Trial Preparation.

In 2021, Mr. Pinilis was appointed as Municipal Court Judge for Morristown, New Jersey.

Mr. Pinilis is the author of "Work-Product Privilege Doctrine Clarified," *New Jersey Lawyer*, Aug. 2, 1999; "Consumer Fraud Act Permits Private Enforcement," *New Jersey Law Journal*, Aug. 23, 1993; "Lawyer-Politicians Should Be Sanctioned for Jeering Judges," *New Jersey Law Journal*, July 1, 1996; "No Complaint, No Memo – No Whistle-Blower Suit," *New Jersey Law Journal*, Sept. 16, 1996; and "The *Lampf* Decision: An appropriate Period of Limitations?" *New Jersey Trial Lawyer*, May 1992.

**Education:**

- B.A., Hobart College (1989)
- J.D., Benjamin Cardozo School of Law (1992)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New Jersey (1992)

- Bar of the State of New York (1993)
- U.S. District Courts for the District of New Jersey, and the Southern and Eastern Districts of New York

**Professional Affiliations:**

- Morris County Bar Association
- New Jersey Bar Association
- Graduate, Brennan Inn of Court

Mr. Pinilis can be reached by email at: WPinilis@kaplanfox.com

**JUSTIN B. FARAR** joined Kaplan Fox in March 2008.  He practices in the area of securities and antitrust litigation with a special emphasis on institutional investor involvement.  He is located in the Los Angeles office.  Prior to joining the firm, Mr. Farar was a litigation associate at O'Melveny & Myers, LLP and clerked for the Honorable Kim McLane Wardlaw on the Ninth Circuit Court of Appeals.  Mr. Farar also currently serves as a Commissioner to the Los Angeles Convention and Exhibition Authority.

Mr. Farar is also an adjunct professor at the University of Southern California Gould Law School teaching a course on class actions.

**Education:**

- J.D., order of the coif, University of Southern California Law School (2000)
- B.A., with honors, University of California, San Diego

**Bar Affiliations and Court Admissions:**

- Bar of the State of California (2000)
- U.S. Court of Appeals for the Ninth Circuit (2000)
- U.S. District Court for the Central of California (2000)

**Awards:**

- The American Society of Composers, Authors and Publishers' Nathan Burkan Award Winner, 2000 for article titled "Is the Fair Use Defense Outdated?"

Mr. Farar can be reached by email at: JFarar@kaplanfox.com

**MATTHEW GEORGE** is a complex litigation attorney at Kaplan Fox & Kilsheimer LLP with a practice focused on data privacy, consumer protection, and employment/labor

cases. He has significant experience and expertise handling multidistrict litigation and other coordinated proceedings in state and federal courts involving multiple parties and complex discovery issues.

Matthew has been a strong advocate for consumer and patient privacy. He has served on court-appointed lead counsel teams in notable cutting-edge data breach and information privacy cases against Target, Adobe, Yahoo!, and Horizon Healthcare. In these and other cases he has worked with cybersecurity experts to gain technical knowledge in data collection, management and protection. He was recently appointed to the Plaintiffs' Steering Committee in *In re 21st Century Oncology Data Breach Litigation*, MDL No. 2737, pending in the Middle District of Florida.

Matthew has also recovered unpaid overtime wages for thousands of workers across the United States under state and federal law in over a dozen cases.  His notable recoveries include generating a $9.9 million settlement on behalf of retail employees and winning a two-week arbitration representing misclassified account representatives against a Fortune 500 company.  Matthew has also recovered over $10 million for employees in cases alleging violations of the WARN Act when the employees were not provided required notice before their terminations.

He has also represented customers challenging deceptive business practices and has worked to obtain significant recoveries in consumer fraud cases against companies including Chase, Mercedes-Benz and The Ritz-Carlton. He currently represents consumers in cases against HBO, Logitech, and Chipotle, among others. In addition to representing plaintiffs in class action cases, Matthew has also represented institutional clients including labor unions and conducted a risk management analysis for a multi-national health and wellness consumer product corporation.

Matthew has been selected by his peers as a "Rising Star" by Northern California Super Lawyers each year from 2011-2014 and was chosen as a "Super Lawyer" in 2016, the first year he was eligible for the distinction. He has been a regular speaker at industry conventions and seminars on topics ranging from arbitration, expert discovery, settlement strategies, and the rapidly changing field of privacy law.

**Education:**

- B.A., Political Science and Criminal Justice, *magna cum laude*, Chapman University (2002)
- J.D., The University of Michigan Law School (2005)

**Publications and Speaking Engagements:**

- Expert Depositions: Promoting Expertise and Limiting Exposure –Bridgeport Continuing Legal Education "Mastering the Deposition" Seminar (January 2017)
- "How Viable Is the Prospect of Private Enforcement of Privacy Rights In The Age of Big Data? An Overview of Trends and developments In Privacy Class Actions" – Competition, The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Volume 24, No. 1 (Spring 2015)
- Panel Discussion of Sony Pictures Data Breach Cases – CNBC's "Squawk On the Street" (December 2014)
- New and Developing Practice Areas – CAOC 53rd Annual Convention (November 2014)
- Privacy Law Symposium – University of California, Hastings College of the La (April 2014)
- Update On the Target Data Breach Litigation – HarrisMartin Target Data Breach MDL Conference (March 2014)
- Consumer Privacy Law – 8th Annual CAOC Class Action Seminar (February 2014)
- Privacy Litigation and Management: Strategies For Protection and Litigation – Bridgeport Continuing Legal Education Seminar (December 2012)
- Class Action Settlement Strategies and Mechanics – 12th Annual Bridgeport Class Action Litigation & Management Conference (April 2012)
- Developments In the Arbitration of Wage and Hour Disputes – Bridgeport 2010 Wage and Hour Conference (October 2010)

**Bar Affiliations and Court Admissions:**

- Bar of the State of California
- U.S. District Courts for the Northern, Central, Southern and Eastern Districts of California, and the District of Colorado

- Ninth Circuit Court of Appeals

**Professional Affiliations:**

- Bay Area Lawyers for Individual Freedom
- Consumer Attorneys of California (Diversity Committee)
- American Bar Association (Labor and Employment Section)

Mr. George can be reached by email at: mgeorge@kaplanfox.com

## ASSOCIATES

**MARIO M. CHOI** is a resident in the Oakland office and practices in the areas of securities, antitrust, and consumer protection litigation.   Mr. Choi's recent litigations include *Schueneman v. Arena Pharmaceuticals, Inc., et al.* (S.D. Cal.), *In re Rocket Fuel, Inc. Securities Litigation* (N.D. Cal.), *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (S.D.N.Y.), *In re Packaged Seafood Products Antitrust Litigation* (S.D. Cal.), *Schneider v. Chipotle Mexican Grill, Inc.* (N.D. Cal.), and *In re Apple Inc. Device Performance Litigation* (N.D. Cal.).

Prior to joining the firm, Mr. Choi worked at the New York office of Pryor Cashman LLP where he handled a number of complex commercial cases ranging from intellectual property and contract disputes to real estate and environmental issues.

During law school, Mr. Choi interned for the Honorable Bruce M. Selya, U.S. Circuit Judge for the U.S. Court of Appeals for the First Circuit, interned for the U.S. Securities and Exchange Commission in Boston and clerked for the Asian Law Caucus in San Francisco.  After law school, Mr. Choi clerked for the Honorable Richard B. Lowe, III, a justice of the New York Supreme Court.

Mr. Choi is actively involved in the community, including serving as a Judge Pro Tem for the San Francisco Superior Court and on the boards of various non-profit organizations in the Bay Area.  For his work, Mr. Choi was elected as a Fellow of the American Bar Foundation.

**Education:**

- B.A., Boston University
- M.A., Columbia University
- J.D., Northeastern University

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York
- Bar of the State of California
- U.S. Courts of Appeals for the Eighth and Ninth Circuits
- U.S. District Courts for the Northern, Southern and Central Districts of California and the Southern District of New York

**Professional Affiliations:**

- American Bar Association
- Asian American Bar Association – Bay Area
- Bar Association of San Francisco
- Federal Bar Association

Mr. Choi can be reached by email at: mchoi@kaplanfox.com


**PAMELA MAYER** is focused on the investigation, analysis and initiation of securities claims on behalf of the firm's institutional and individual clients utilizing her combined legal and finance background.

Prior to joining Kaplan Fox, Ms. Mayer was a securities investigation and litigation attorney for a multinational investment bank. Utilizing her combined legal and business background, including her M.B.A., Ms. Mayer focuses on the research and analysis of securities claims on behalf of our firm's individual and institutional clients and is dedicated full-time to the firm's Portfolio Monitoring and Case Evaluation Program.  Ms. Mayer also has substantial litigation experience in the area of intellectual property.

**Education:**

- B.S., The University of Rochester
- J.D., The George Washington University
- M.B.A., Finance, The University of Michigan

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- New York State Bar Association

Ms. Mayer can be reached by email at: pmayer@kaplanfox.com

**AARON L. SCHWARTZ** has been associated with Kaplan Fox since July 2017. He practices securities, antitrust and consumer protection litigation.

Prior to joining the firm, Mr. Schwartz was a Deputy Attorney General in the Pennsylvania Office of Attorney General, Antitrust Section. As a Deputy Attorney General, Mr. Schwartz conducted investigations, brought suit to enjoin anticompetitive corporate mergers, and prosecuted pharmaceutical product-hopping schemes, market allocation schemes, and unfair trade practices.

**Education:**

- B.A., University of Wisconsin—Madison (2009)
- J.D., The Pennsylvania State University—The Dickinson School of Law (2014)

**Bar Affiliations and Court Admissions:**

- Bar of the Commonwealth of Pennsylvania
- Bar of the State of New York
- U.S. Court of Appeals for the Third Circuit
- U.S. District Courts for the Eastern, Middle, and Western Districts of Pennsylvania

**Professional Affiliations:**

- Pennsylvania Bar Association
- American Bar Association

Mr. Schwartz can be reached by email at: aschwartz@kaplanfox.com

**JASON A. URIS** has been associated with Kaplan Fox since May 2013. He practices in the areas of securities, antitrust, and consumer litigation.

Mr. Uris is currently involved in several litigations, including *Milbeck v. TrueCar, Inc., et al., Lewis v. YRC Worldwide Inc., et al.*, and *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*.

Mr. Uris was also a member of the teams that litigated the following cases: *Kasper v. AAC Holdings, Inc., et al.* (M.D. Tenn.) ($25 million settlement); *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) (partial

settlement of $38 million); *In re Cast Iron Soil Pipe Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.) ($30 million settlement); *In re: CSO Hedge Fund Litigation* ($13.5 million settlement).

**Education:**

- B.A., *cum laude*, Boston University (2011)
- J.D., Fordham University School of Law (2014)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (2015)
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- New York State Bar Association

Mr. Uris can be reached by email at: juris@kaplanfox.com

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542 |
| | Master Docket No. 1:14-md-02542-VSB |
| This Document Relates To: | Civil Action No. 1:14-03790-VSB |
| Indirect Purchaser Actions | |

<u>**DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND SERVICE AWARDS**</u>

I, Daniel L. Warshaw hereby declare and state as follows:

1.      I am an attorney duly admitted to practice before this Court. I am a partner at the firm of Pearson, Simon & Warshaw, LLP ("PSW"), one of the law firms representing Indirect Purchaser Plaintiffs' ("IPPs") in the above-captioned action (the "Action").

2.      I submit this declaration[1] in support of: (i) IPPs Motion for Final Approval of Settlement; and (ii) IPPs Motion for Attorneys' Fees, Litigation Expenses and Service Awards.  I am personally familiar with the facts set forth in this declaration.  If called as a witness I could and would competently testify to the matters stated herein.

---

[1] This declaration is in addition to, and filed concurrently with, the declaration of Robert N. Kaplan in support of the IPPs': (1) Motion for Final Approval of Settlement and Approval of Plan of Allocation; and (2) Motion for Attorneys' Fees, Litigation Expenses, and Service Awards.  The declaration of Robert N. Kaplan further discusses the work performed by PSW in this Action.

953086.4                                   1

3.      PSW has prosecuted this Action solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against Defendant Keurig Green Mountain, Inc. ("Keurig").

## I.      INVESTIGATION AND MANAGEMENT OF THIS ACTION

4.      PSW's investigation in this Action was extensive.  PSW began its investigation into Keurig's anticompetitive conduct to preserve its monopoly over Keurig K-Cup Portion Packs in March 2014, over seven years ago.  PSW reviewed publicly available documents, conducted extensive research on claims and state law, prepared internal memoranda, communicated with potential and retained class representatives, and conferred with other IPP counsel[2] in advance of filing the complaint captioned *Yelda Mesbah Bartlett et al v. Keurig Green Mountain, Inc. (F/K/A Green Mountain Coffee Roasters, Inc.)*, Case No. 14-cv-3790 on May 28, 2014.

5.      The current and former attorneys from PSW, in addition to myself, who have worked on this Action are Clifford H. Pearson, Bruce L. Simon, Aaron M. Sheanin, Alexander R. Safyan, Alexander L. Simon, Benjamin E. Shiftan, Bobby Pouya, Eric J. Mont, Gianna N. Liddy, Jessop M. Stroman, Joseph C. Bourne, Matthew A. Pearson, Melissa S. Weiner, Michael H. Pearson, Neil J. Swartzberg, Robert G. Retana, Thomas K. Boardman and Veronica W. Glaze.

6.      As multiple complaints were filed against Keurig, this matter was sent to the United States Judicial Panel on Multidistrict Litigation ("JPML") for coordination.  On June 6, 2014, the JPML transferred all related class actions to Judge Vernon S. Broderick in the Southern District of

---

[2] "IPP Counsel" collectively refers to Arthur N. Bailey & Associates/Rupp, Bartko Zankel Bunzel & Miller, Bozeman Law Firm, Gainey McKenna, Hart McLaughlin & Eldridge ("Hart McLaughlin"), Isquith Law Firm PLLC, Kaplan Fox, Lynn, Lynn, Blackman & Manitsky, P.C., Oliver Law Group, PSW, Polsinelli, PC, Preti Flaherty, Pritzker Levine LLP, Segal McCambridge Singer & Mahoney, Ltd, Thrash Law Firm, P.A., Zoll Kranz & Borgess LLC, Zwerling Schachter & Zwerling and Wolf Haldenstein.

New York.  Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), PSW, and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") (collectively referred to as "Settlement Class Counsel") filed a motion to be appointed as interim co-lead counsel for IPPs, which was later granted on June 26, 2014. Settlement Class Counsel and other IPP counsel were able to work efficiently and in coordination with each other throughout this Action.

7.      At the outset of fact discovery in this Action, PSW participated in the drafting of the electronically stored information and deposition protocols.

8.      PSW significantly contributed in the drafting and revisions of several pleadings and motions including three consolidated amended complaints, the motion for appointment as interim co-lead counsel, the opposition to Keurig's motion to dismiss, various discovery motions and the motion for preliminary approval of settlement.  These tasks required extensive legal research on antitrust issues including those concerning Vermont and other state's laws.

9.      PSW participated in weekly calls with all plaintiff groups, and separately with Settlement Class Counsel.  During these weekly calls, various aspects of this Action were discussed including, but not limited to, Keurig's motions to dismiss, fact discovery, propounding and responding to written discovery requests, third-party discovery, depositions, document review and experts.

## II.      DISCOVERY

10.     Party discovery was a labor intensive process that PSW was heavily involved in. Keurig produced 3.8 million documents, and third-parties produced 1.5 million documents throughout the course of this Action.  PSW attorneys participated in the review and analysis of these documents.

11.     PSW attorney Joseph C. Bourne prepared and took the deposition of Keurig employee, Cynthia Hester.  Ms. Hester was the Strategic Account Manager for Keurig since 2012.

12.     PSW handled the discovery relating to IPP class representative plaintiffs Jason and Amy Stratman.  This included the collection, review and production of responsive documents they had in their possession, and preparation of responses to written discovery.

13.     PSW attorney Alexander L. Simon defended the deposition of IPP class representative David Nation.  This included the preparation for the deposition and supplemental document production after the fact.

14.     PSW attorneys attended the depositions of current and former Keurig employees and other plaintiff representatives including, Jim Rogers, Dave Manly, Nick Lazaris, Mark Woods, Jim Travis, Brian Kelly, Joe Mueller and Shannon Axthelm.  The attending attorney would also summarize the deposition testimony for the benefit of Settlement Class Counsel.

15.     PSW attorneys assisted in the drafting of IPPs' written responses to Keurig's interrogatories and requests for production of documents.

16.     PSW also assumed a significant role in third-party discovery, which involved drafting, serving, and enforcing approximately seven third-party subpoenas.

17.     Amazon was one of the third-party subpoenas that PSW was primarily responsible for in this Action.  PSW drafted and served the third-party subpoena on Amazon.  Subsequent to serving the subpoena, PSW attorneys extensively negotiated with Amazon regarding the scope of the requests.  PSW was unable to reach a resolution with Amazon on certain requests in the subpoena; as a result, PSW drafted a motion to compel regarding the disputed issues in the Amazon subpoena.  PSW attorney Joseph C. Bourne argued the motion to compel in front of Magistrate Judge Cave.  Lastly, PSW attorneys negotiated the production of transactional data from Amazon needed for the experts' reports.

18.     PSW was primarily responsible for the Costco Wholesale Corporation third-party subpoena in this Action.  PSW drafted and served the third-party subpoena on Costco.  Subsequent to serving the subpoena, PSW attorneys extensively negotiated with Costco regarding the scope of the requests.  PSW was unable to reach a resolution with Costco on certain requests in the subpoena; as a result, PSW drafted a motion to compel regarding the disputed issues in the subpoena.  Prior to the filing of the motion to compel, a resolution on the disputed requests in the Costco subpoena was reached.  PSW attorneys drafted and revised search terms for the collection of documents from Costco.  PSW also negotiated the production of transactional data from Costco for the experts' reports in this Action.

19.     PSW was also responsible for the Coffee Bean & Tea Leaf (International Coffee) ("Coffee Bean") third-party subpoena in this Action.  PSW drafted and served the third-party subpoena on Coffee Bean.  Subsequent to serving the subpoena, PSW attorneys negotiated with Coffee Bean regarding the scope of the requests.

20.     PSW was heavily involved in dealing with the Dunkin' Brands Group, Inc. ("Dunkin'") third-party subpoena in this Action.  PSW drafted and served the third-party subpoena on Dunkin'.  Subsequent to serving the subpoena, PSW attorneys extensively negotiated with Dunkin regarding the scope of the requests.  PSW attorneys drafted and revised search terms for the collection of documents from Dunkin.  PSW also negotiated the scope and format for transactional data from Dunkin' for the experts' reports in this action.

21.     PSW was responsible for the Newman's Own, Inc. third-party subpoena in this Action.  PSW drafted and served the third-party subpoena on Newman's Own.  Subsequent to serving the subpoena, PSW attorneys negotiated with Newman's Own regarding the scope of the requests including the transaction data that was sought.

22.     PSW was responsible for the Walmart, Inc. and Sam's West, Inc. (d/b/a/ Sam's Club) (collectively "Walmart") subpoenas. Each of the five plaintiffs groups had different needs with respect to these subpoenas and viewed Walmart's documents and data as a critical component of proving their respective claims. There were several other issues that arose in dealing with the Walmart subpoena. The scope of the subpoena, as served, was very broad due to the needs of each of the five plaintiffs groups. This required extensive negotiations that spanned nearly two years. In addition to the scope of the subpoena, there were issues with confidentiality, custodians, search terms, document collection and production logistics and transactional data (scope and format).

## III.    PSW'S LODESTAR AND LITIGATION EXPENSES

23.     Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates through March 31, 2021 for PSW's attorneys and paralegals:[3]

| Attorney | Total Hours | Hourly Rate | Amount |
|---|---|---|---|
| Clifford H. Pearson | 344.5 | $1,190.00 | $409,955.00 |
| Bruce L. Simon | 505.5 | $1,190.00 | $601,545.00 |
| Daniel L. Warshaw | 154.6 | $1,190.00 | $183,974.00 |
| Aaron M. Sheanin | 25.9 | $825.00 | $21,367.50 |
| Alexander R. Safyan | 7.8 | $475.00 | $3,705.00 |
| Alexander L. Simon | 1,617.2 | $470.00 | $760,084.00 |
| Benjamin E. Shiftan | 148.1 | $920.00 | $136,252.00 |
| Bobby Pouya | 2.0 | $495.00 | $990.00 |
| Eric J. Mont | 46.7 | $350.00 | $16,345.00 |
| Gianna N. Liddy | 368.5 | $350.00 | $128,975.00 |
| Jessop M. Stroman | 70.0 | $400.00 | $28,000.00 |
| Joseph C. Bourne | 241.6 | $690.00 | $166,704.00 |
| Matthew A. Pearson | 338.7 | $560.00 | $189,672.00 |
| Melissa S. Weiner | 0.1 | $750.00 | $75.00 |
| Michael H. Pearson | 18.2 | $475.00 | $8,645.00 |
| Neil J. Swartzberg | 17.0 | $920.00 | $15,640.00 |

---

[3] If the Court wishes, PSW can provide more detailed time entries describing the work of these attorneys and paralegals, as well as PSW's expenses.

| Attorney | Total Hours | Hourly Rate | Amount |
|---|---|---|---|
| Robert G. Retana | 988.0 | $825.00 | $815,100.00 |
| Thomas K. Boardman | 117.4 | $385.00 | $45,199.00 |
| Veronica W. Glaze | 69.3 | $520.00 | $36,036.00 |
| **Paralegal** | **Total Hours** | **Hourly Rate** | **Amount** |
| Amanda C. Lunzer | 120.6 | $225.00 | $27,135.00 |
| Brad J. Kopp | 49.0 | $225.00 | $11,025.00 |
| Ellowene J. Grant | 33.4 | $225.00 | $7,515.00 |
| **Total:** | **5,284.1** | | **$3,613,938.50** |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by PSW.

24.     The attorneys of PSW billed this case at their usual and customary hourly billing rates, which have been approved by courts presiding over similar complex class action lawsuits, and which are commensurate with the prevailing market rates attorneys of comparable experience and skill handling complex litigation, including:

a.     *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, Case No. 4:14-md-2541-CW (N.D. Cal.).  In 2019, Magistrate Judge Cousins issued an attorneys' fees award finding the following that the following PSW rates were reasonable: $985 (2016) and $1,035 (2017) for Clifford H. Pearson and Bruce L. Simon and, $1,050 (2018) and $1,150 (2019) for Clifford H. Pearson, Bruce L. Simon and Daniel L. Warshaw, $520 (2017), $720 (2015) and $825 (2016) for Aaron M. Sheanin, $650 (2018) and $900 (2019) for Benjamin E. Shiftan, $350 (2017) for Alexander L. Simon, $400 (2018) and $450 (2019) for Alexander L. Simon and Matthew A. Pearson, $225 (2017) for Amanda C. Lunzer, and $225 (2019) for Bradd J. Kopp and Elloween J. Grant.  This award was adopted in whole by Judge Claudia Wilken.

b.      *In re Credit Default Swaps Antitrust Litigation*, Case No. 1:13-md-02476-DLC (S.D.N.Y).   In 2016, the court issued an attorneys' fee award which included PSW at weighted average rates of $958.07 for Clifford H. Pearson, $935 Bruce L. Simon, $827 for Daniel L. Warshaw, $472.75 for Veronica W. Glaze, and $385 for Matthew A. Pearson.

c.      *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 3:07-cv-05944-JST (N.D. Cal.).   In 2016, the court issued an attorneys' feed award which included PSW at rates of $985 (2016) for Clifford H. Pearson, Bruce L. Simon and Daniel L. Warshaw.

d.      *James Eashoo v. Iovate Health Sciences U.S.A., Inc.*, Case No. 2:15-cv-01726-BRO-PJW (C.D. Cal.).   In 2016, the court issued an attorneys' feed award which included PSW at rates of $985 (2016) for Clifford H. Pearson and Daniel L. Warshaw, $385 (2016) for Matthew A. Pearson.

e.      *Patricia Weckwerth et al. v. Nissan North America, Inc.*, Case No. 3:18-cv-00588 (M.D. Tenn.).   In 2020, the court issued an attorneys' feed award which included PSW at the rate of $1,150 (2019) for Daniel L. Warshaw, and $670 (2020) for Joseph C. Bourne.

25.     During the course of this Action, PSW incurred $97,569.69 in unreimbursed expenses[4].   These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

/ / /

/ / /

/ / /

/ / /

---

[4] This amount excludes PSW's contributions to the litigation fund account discussed in the Declaration of Thomas H. Burt, filed concurrently herewith.

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Telephone, Conference Calls and Facsimile | $598.39 |
| Court Costs, Filing Fees and Transcripts | $3,672.15 |
| Delivery/Courier | $591.06 |
| Carfare, Travel and Meals | $13,950.76 |
| Legal Research | $3,875.63 |
| Service of Process | $3,533.50 |
| C&A Economics | $1,800.00 |
| Econ One | $69,548.20 |
| **TOTAL** | $97,569.69 |

I hereby declare under penalty of perjury under the laws of the United States that the above

is true and correct to the best of my knowledge.

Dated:  May 7, 2021

Daniel L. Warshaw

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE :
COFFEE ANTITRUST LITIGATION

                                       :

*This Relates to the Indirect-Purchaser Actions*

—————————————————————————— x

No. 1:14-md-02542 (VSB)
No. 1:14-cv-04391 (VSB)

## DECLARATION OF THOMAS H. BURT IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTIONS FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS

I, Thomas H. Burt, declare under penalty of perjury that:

1.     I am a partner with the law firm of Wolf Haldenstein Adler Freeman & Herz LLP, ("WHAFH") and I lead its Antitrust Department. This Court appointed me and my firm as Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned action (the "Action"). *See* ECF No. 36. Fred T. Isquith previously served as co-lead counsel prior to his departure from WHAFH. *See id.*

2.     I submit this affidavit in support of the Indirect Purchaser Plaintiffs' Motions for Final Approval of Settlement and Award of Attorneys' Fees, Litigation Expenses, and Service Awards. In addition to our role as Settlement Class Counsel[1], WHAFH managed the litigation fund. IPPs litigation expenses are set forth herein.

3.     Over the course of this Action, together with Settlement Class Counsel Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") and Pearson, Simon & Warshaw, LLP ("PSW"), WHAFH has represented IPPs in the activities listed below.

—————————————

[1] As used herein and as appointed by the Court (ECF No. 36), "Settlement Class Counsel" collectively refers to Kaplan Fox, PSW, and WHAFH. *See also* Order granting preliminary approval of the settlement (ECF No. 1216).

4.      The IPPs' case began in the Southern District of California.  WHAFH conducted factual and legal research and investigated the claims of California consumers, ultimately filing multiple complaints on behalf of several named plaintiffs in the Southern District of California, alleging violations of the Sherman Act, 15 U.S.C. §§ 1, the Clayton Act, 15 U.S.C. § 14, for injunctive relief, and California and other states' antitrust and unfair competition statutes for damages.  These actions were subsequently submitted as related actions before the Judicial Panel on Multidistrict Litigations (the "JPML"), whereupon WHAFH filed an opposition to a motion to transfer, and argued at the hearing before the JPML on the motion to transfer.

5.      After all related litigation was transferred to this Court in mid-2014, WHAFH worked closely with Settlement Class Counsel in all of the litigation described in the accompanying Declaration of Robert N. Kaplan, submitted herewith, including drafting the several Amended Complaints, opposing and defeating in significant part Keurig's Motion to Dismiss, discovery of Keurig and of the IPP Class Representatives, and the expert economic work necessary to support IPPs' claims for class certification and liability.  WHAFH played an active role in the mediation process that resulted in the settlement.

**Litigation Fund**

6.      In September, 2014, WHAFH opened a bank sub-account for the purpose of collecting assessments and paying expenses in the litigation (the "Litigation Fund").  The Litigation Fund was overseen by WHAFH personnel and supervised by Mr. Isquith.  Following his departure, I became primarily responsible for oversight at WHAFH throughout the Action. The major expenses of the prosecution of this action were paid from the Litigation Fund, or were incurred and recorded as open invoices against the Litigation Fund.  These expenses are as follows:

| Keurig Litigation Fund | |
|---|---|
| Summary by vendor: | Amount |
| Lighthouse Document Technologies, Inc. | $382,596.97 |
| Econ One Research, Inc. ("Econ One") | $1,126,264.74 |
| Bracewell LLP | $19,964.00 |
| Discovia | $14,045.68 |
| Veritext, LLC | $11,241.28 |
| Fierst Bloomberg OHM LLP | $1,637.82 |
| Robins Kaplan LLP | $108,185.64 |
| Walmart Stores, Inc. | $10,530.81 |
| Farnan LLP - Mediator | $21,160.00 |
| Farnan LLP - Special Master | $23,000.00 |
| US Legal Support, Inc. | $151,019.41 |
| **Total** | **$1,869,646.35** |

7.    Lighthouse Document Technologies, Inc. served as a document hosting vendor. Lighthouse was chosen collectively with counsel for Treehouse Foods, JBR, and the Direct Purchaser Plaintiffs ("DPPs"), and the expenses set forth above reflect only the share incurred by the IPP Class.

8.    Econ One is an economics firm.  Econ One prepared econometric analysis, economic consulting and prepared testifying experts to support the IPPs both in class certification and liability.  Econ One's work is, as is common in antitrust litigation, the single largest litigation expense by far.  Econ One's invoices were paid in part through the litigation fund, and at times for speed and convenience, directly from individual firms to Econ One.  Direct payments (totaling approximately $120,000 to Econ One) are included separately with the several declarations of individual firms.

9.    Bracewell LLP invoiced for the services of Judge Jones as Discovery Master.  This invoice reflects only the IPP share of a joint cost.

3

10.     Discovia is a document hosting vendor, and is affiliated with Lighthouse. Plaintiffs' counsel for the several Plaintiff tracks used certain Discovia artificial intelligence tools for reviewing documents, and were invoiced separately for those services. The invoices refer to only the IPP portion of a joint cost.

11.     Veritext LLC is a court reporting firm. Veritext was engaged to provide court reporting services in connection with the depositions of IPP Class Representatives. The expenses incurred reflect the cost of court reporters, videographers, and transcripts and other records associated with the Class Representative depositions.

12.     Fierst Bloomberg OHM LLP is counsel for a non-party witness. Several Plaintiffs agreed to pay the cost of counsel for a non-party witness's deposition, and this invoice reflects only the IPPs' portion of a shared cost.

13.     Robins Kaplan LLP is counsel for the DPPs. During the course of the litigation, Keurig produced multiple sets of transactional data from different systems, each of which required preparation for use by econometricians, so that economists could analyze them. The parties for the various tracks negotiated to avoid duplicating this work, and a significant portion was done by an economics firm working at the direction of DPPs Interim Class Counsel, who then made the "cleaned" data available to IPPs' economics firm. The sum reflected above is IPPs' share of the joint work.

14.     Other plaintiffs in this litigation incurred obligations for joint work performed by IPPs' economists. To the extent that work has not been invoiced separately and paid directly to the economists performing the work, but is instead paid to counsel, counsel will return the sum received to the Settlement Fund.

4

15.     Walmart Stores, Inc. is the world's largest retailer.  IPPs and other Plaintiffs reached an agreement to jointly bear a shifted cost of Walmart's non-party discovery.  The amount set forth above reflects only IPPs' share of that cost.

16.     United States District Court Judge Joseph Farnan, Jr. (Ret.) acted as a mediator in this Action, assisting the IPPs and Keurig in reaching this settlement, and mediating between the Bozeman Law Firm, acting as allocation counsel, and Settlement Class Counsel for the IPPs.  The amount set forth above under the heading of "Mediator" reflects Judge Farnan's role as mediator.

17.     The separate amount set forth as "Special Master" is an estimate of Judge Farnan's time in resolving the issues under his remit pursuant to this Court's Orders preliminarily approving the settlement.  Judge Farnan estimates an additional 20 hours of work, at his standard rate.

18.     US Legal Support, Inc. is a court reporting firm.  US Legal was jointly selected in a competitive process by counsel for the various Plaintiff tracks.  Amounts billed by and owed to US Legal represent IPPs' share of depositions of Keurig personnel and some nonparties, including court reporters, videographers, transcripts and other costs.

19.     The Litigation Fund was funded by contributions from the three Settlement Class Counsel firms, and from seven other law firms.  Settlement Class Counsel made contributions of $410,500 in total (exclusive of expenses incurred outside the Litigation Fund), and seven other firms made contributions of from $5,000 to $40,000 each, bringing the funding of the Litigation Fund to a total of $531,500.  The Litigation Fund has paid out $526,289.94 to date, and has a balance under $10,000 as of the date of this Declaration.  The amount is less than outstanding invoices for litigation expenses.

**Non-Litigation Fund Expenses**

20.    Each firm incurred expenses as set forth in their individual declarations.  The total of those individual expenses is as follows:

| Non-Litigation Fund expenses | |
|---|---|
| **FIRM** | **AMOUNT** |
| Bartko, Zankel, Bunzel & Miller | $131,675.93 |
| Bozeman Law Firm, P.A. | $1,205.12 |
| Gainey McKenna & Egleston | $981.40 |
| Hart McLaughlin & Eldridge, LLC | $2,835.51 |
| Kaplan Fox & Kilsheimer LLP | $82,250.43 |
| Oliver Law Group P.C. | $2,236.95 |
| Pearson, Simon & Warshaw, LLP | $97,569.69 |
| Polsinelli PC | $11,144.68 |
| Preti Flaherty Beliveau & Pachios LLP | $2,904.65 |
| Pritzker Levine LLP | $27,330.44 |
| Thrash Law Firm | $1,242.38 |
| Zoll & Kranz, LLC | $497.83 |
| WHAFH | $66,494.57 |
| **TOTAL** | **$428,369.58** |

21.    These figures do not include contributions to the Litigation Fund.  They do include sums paid directly to vendors, principally to Econ One, as explained above.

22.    Together with expenses incurred by the Litigation Fund, the total litigation expenses incurred in the course of the prosecution of the IPPs' case is **$2,298,015.93**.

**WHAFH Time and Expenses:**

23.    WHAFH has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

24.    The attorneys from WHAFH, in addition to myself, who have worked on this Action are listed in the below lodestar table.  Not including the time expended in preparing the

application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other paraprofessionals:[2]

| Attorneys | Hours | Rate | Lodestar |
|---|---|---|---|
| Daniel W. Krasner | 19.40 | $1,010.00 | $19,594.00 |
| Fred T. Isquith, Jr. | 2076.70 | $960.00 | $1,993,632.00 |
| Frank M. Gregorek | 39.70 | $940.00 | $37,318.00 |
| Mark C. Rifkin | 72.10 | $975.00 | $70,297.50 |
| Betsy C. Manifold | 40.20 | $820.00 | $32,964.00 |
| Gregory M. Nespole | 51.70 | $925.00 | $47,822.50 |
| Thomas H. Burt | 1844.20 | $730.00 | $1,346,266.00 |
| Rachele R. Byrd | 107.80 | $690.00 | $74,382.00 |
| Michael M. Liskow | 351.90 | $575.00 | $202,342.50 |
| Daniel Tepper | 82.60 | $605.00 | $49,973.00 |
| Patrick Donovan | 1342.54 | $415.00 | $557,154.10 |
| Marisa C. Livesay | 24.40 | $510.00 | $12,444.00 |
| Theodore B. Bell | 320.80 | $635.00 | $203,708.00 |
| Carl V. Malmstrom | 1211.50 | $550.00 | $666,325.00 |
| Correy A. Kamin | 10.80 | $385.00 | $4,158.00 |
| Veronica Bosco | 55.50 | $345.00 | $19,147.50 |
| Julie A. Swanson | 66.40 | $715.00 | $47,476.00 |
| **Total Attorneys** | **7,718.24** | | **$5,385,004.10** |
| | | | |
| **Paraprofessionals** | **Hours** | **Rate** | **Lodestar** |
| Joseph Weiss | 18.60 | $330.00 | $6,138.00 |
| Jim Cirigliano | 333.00 | $335.00 | $111,555.00 |
| Jillaine Gill | 642.30 | $310.00 | $199,113.00 |
| Danielle S. Wilborne | 12.30 | $270.00 | $3,321.00 |
| Tony Gjata | 17.70 | $380.00 | $6,726.00 |
| David I. Weinstein | 28.00 | $280.00 | $7,840.00 |
| Isidora Echeverria | 46.30 | $125.00 | $5,787.50 |
| Judah Weinerman | 19.25 | $195.00 | $3,753.75 |
| Marco A. Campuzano | 78.20 | $320.00 | $25,024.00 |
| Ali Toumadj | 16.00 | $285.00 | $4,560.00 |
| David E. Sorensen | 79.50 | $325.00 | $25,837.50 |
| Camilo Burr | 11.00 | $240.00 | $2,640.00 |

---

[2] If the Court wishes, WHAFH can provide more detailed time entries describing the work of these attorneys and paralegals, as well as WHAFH's expenses.

| | | | |
|---|---|---|---|
| **Total Paraprofessionals** | **1,302.15** | | **$402,295.75** |
| | | | |
| **TOTAL TIME** | **9,020.39** | | **$5,787,299.85** |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by WHAFH.

     25.     The hourly rates for the attorneys and professional support staff at WHAFH are the usual and customary hourly rates charges and have been approved by federal and state courts nation-wide.

     26.     During the course of this Action, WHAFH incurred $66,494.57 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with this prosecution of this litigation.  The chart below details the expenses incurred by category:

| Category | Expense Amount |
|---|---|
| | |
| Online Research | $32,126.33 |
| Carfare | $1,459.72 |
| Witness fees | $40.00 |
| | |
| Overnight Delivery & Messenger | $1,371.82 |
| Reproduction/Duplication | $16,275.65 |
| Telephone / Fax / Postage | $902.04 |
| Meals | $252.77 |
| Transcript Costs | $2,757.06 |
| Service of Process | $2,479.40 |
| Filing Fees | $1,600.40 |
| Miscellaneous (Best Buy Enterprise Services Inc.) | $175.00 |
| Trip expenses | $7,054.38 |
| **TOTAL EXPENSES** | **$66,494.57** |

I hereby declare under penalty of perjury under the laws of the United States that the above

is true and correct to the best of my knowledge.

Dated: May 7, 2021

Thomas H. Burt

/810462

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :   No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                              :   No. 1:14-cv-04391 (VSB)
                                                                                 :
*This Relates to the Indirect-Purchaser Actions*    x

——————————————————————— 

### DECLARATION OF PATRICK M. RYAN IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD

I, Patrick M. Ryan, hereby declare and state as follows:

1.      I am a Partner at the law firm of Bartko, Zankel, Bunzel & Miller ("BZBM").  I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award.  I have personal knowledge of the information set forth in this Declaration.

2.      BZBM has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

3.      The attorneys from my Firm, in addition to myself, who have worked on this Action are Robert H. Bunzel (Partner), Chad E. DeVeaux (Partner), William I. Edlund (Partner), Rishi Gupta (Associate), Kimiko L. Akiya (Associate), Jayne Laisprasert (Associate), Alden K. Lee (Partner), Jack McLean (Of Counsel), and Sean R. McTigue (Partner).

Prior to lead counsel being appointed, the Firm undertook the following tasks:

- Identified Bartlett class representative and referred her to one of the eventual lead counsel in the case;

- Researched the antitrust laws of all 56 U.S. states and territories, including each jurisdiction's law regarding indirect purchaser standing, and each jurisdiction's unfair competition and consumer protection laws for application in Complaint;

- Initial development and analysis of theory of nationwide application of Vermont law;

- Researched and primarily drafted Complaint in *Bartlett, et al. v. Keurig Green Mountain Inc., et al.* filed on May 28, 2014, which was the only case to include a nationwide Vermont claim;

- Prepared for and attended MDL hearing; and

Under the direction of Interim Co-Lead Counsel, the Firm undertook the following assignments:

- Co-researched and drafted the Indirect-Purchaser Plaintiffs' Consolidated First Amended Class Action Complaint filed July 24, 2014, which was largely based on the *Bartlett* Complaint;

- Researched and drafted memorandum analyzing Second Circuit market-definition cases;

- Performed research in support of motion for preliminary injunction and assisted in formulating arguments in support of preliminary injunction and refuting Keurig's opposition to preliminary injunction;

- Co-drafted memorandum regarding motion to expedite discovery;

- Co-researched and drafted the Indirect-Purchaser Plaintiffs' Consolidated Second Amended Class Action Complaint filed Feb. 11,2015;

- Performed state-by-state research and drafted memorandum presenting arguments addressing each of the state laws identified in Keurig's Table C attached to Defendants' Motion to Dismiss Indirect Purchasers' Claims;

- Performed legal research regarding application of Vermont antitrust law to nationwide indirect purchaser class and prepared memorandum presenting arguments for use in Opposition to Keurig's Motion to Dismiss;

- Researched and drafted portions of Opposition to Keurig's Motion to Dismiss;

- Prepared questions for and participated on moot panel in moot argument in preparation for Keurig's Motion to Dismiss;

- Co-researched and drafted the Third Consolidated Amended Indirect Purchaser Class Action Complaint filed on June 21, 2019;

- Performed legal research and regarding antitrust discovery supporting claims by indirect purchaser plaintiffs;

- Researched and drafted follow-up memorandum regarding successor liability under Delaware and Vermont law to address implications of Green Mountain's acquisition by Dr. Pepper;

- Reviewed documents produced by Defendants in response to Requests for Production;

- Researched and prepared memorandum examining the strength of arguments for and against application of Vermont antitrust law to nationwide indirect purchaser class under New York and California choice-of-law rules and examining arguments that Vermont law seeks to protect non-residents from anti-competitive conduct emanating from Vermont;

- Researched and drafted memorandum analyzing unique features of Vermont antitrust law;

- Prepared memorandum summarizing of deposition of former CFO and Treasurer Frances Rathke;

- Prepared memorandum outlining legal strategy concerning discovery to build case for application of Vermont law to nationwide indirect purchaser class;

- Prepared questions for deposition of former VP of Supply Chain Operations seeking evidence supporting arguments for nationwide application of Vermont antitrust law to indirect purchaser class;

- Analyzed Keurig SEC filings for evidence that alleged antitrust violations occurred in Vermont to support argument that Vermont antitrust law should apply to nationwide indirect purchaser class;

- Prepared memorandum summarizing of deposition of Chief Strategy Officer T.J. Whalen;

- Prepared Interrogatories regarding jurisdictional facts supporting argument for application of Vermont law to nationwide indirect purchaser class;

- Prepared Requests for Admission regarding jurisdictional facts supporting argument for application of Vermont law to nationwide indirect purchaser class;

- Performed research and prepared memorandum addressing multi-jurisdictional issues in light of potential settlement of claims from different jurisdictions in support of mediation;

- Performed research and prepared comprehensive memorandum addressing numerous settlement issues in support of mediation;

- Prepared questions for FRCP 30(b)(6) deposition to gather evidence in support of argument that Vermont law should apply to nationwide indirect purchaser class.

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| **Attorney** | **Total Hours** | **Hourly Rate** | **Lodestar** |
| --- | --- | --- | --- |
| **Robert H. Bunzel** (Partner) | 72.05 | $800 | $57,640.00 |
| **Chad E. DeVeaux** (Partner) | 387.6 | $800 | $310,080.00 |
| **William I. Edlund** (Partner) | 55.5 | $800 | $44,400.00 |
| **Rishi Gupta** (Associate) | 83.9 | $535 | $44,886.50 |
| **Kimiko L. Akiya** (Associate) | 20 | $535 | $10,700.00 |
| **Jayne Laisprasert** (Associate) | 55.25 | $535 | $29,558.75 |
| **Alden K. Lee** (Partner) | 75.5 | $800 | $60,400.00 |

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

| | | | |
|---|---|---|---|
| **Jack McLean** (Of Counsel) | 97.45 | $800 | $77,960.00 |
| **Sean R. McTigue** (Partner) | 732.4 | $800 | $585,920.00 |
| **Patrick M. Ryan** (Partner) | 1,404.6 | $935 | $1,313,301.00 |
| **Sohaila Braam** (Research Librarian) | 40.4 | $100 | $4,040.00 |
| **Dana Marie Knapp** (Paralegal) | 32.5 | $250 | $8,125.00 |
| **Jalem Z. Peguero** (Law Clerk) | 42 | $200 | $8,400.00 |
| **Becky D. Usog** (Practice Support) | 12.7 | $191.26 | $2,429.00 |
| **Total:** | 3,111.85 | | $2,557,840.25 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

5.     The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged in cases of this nature and have been approved by federal and state courts nation-wide.

6.     During the course of this Action, the Firm incurred $136,675.93 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
| --- | --- |
| Copying, Printing and Scanning | $487.42 |
| Court Costs, Filing Fees and Transcripts | $1,039.00 |
| Delivery/Courier | $470.97 |
| Carfare, Travel and Meals | $3,851.45 |
| Legal Research | $125,827.09 |
| **TOTAL** | $131,675.93 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  May 5, 2021

_____

Patrick M. Ryan

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                                    :
IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE    :   No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                  :   No. 1:14-cv-04391 (VSB)
                                                    :
*This Relates to the Indirect-Purchaser Actions*      x

**DECLARATION OF DANIEL D. OWEN IN SUPPORT OF THE INDIRECT
PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD**

I, Daniel D. Owen, hereby declare and state as follows:

1.      I am a partner at the law firm of Polsinelli PC (the "Firm").  I submit this declaration

in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and

Attorneys' Fees, Expenses and Service Award.  I have personal knowledge of the information set

forth in this Declaration.

2.      The Firm has prosecuted this litigation solely on a contingent-fee basis, and has

been at risk that it would not receive any compensation for prosecuting claims against the

Defendant.

3.      The attorneys from my Firm, in addition to myself, who have worked on this Action

are Jack Brady, Alexa DiCunzolo, Ashley Gould, Britteny Pfleger, Parker Smith, John Tyner,

Phillip Zeeck, and Gabe Zorogastua.   Attached as **Exhibit A** are summaries of the Firm's

background and experience of attorneys currently employed at the Firm who have worked on this

Action.

4.      Under the direction of Interim Co-Lead Counsel, the Firm undertook the following

assignments:  The Firm served as the primary contact with a class representative for the Kansas

class and the class representative for the New Mexico and Washington, D.C. classes, coordinated

1

discovery by those class representatives, assisted with those class representatives' discovery responses, and defended the deposition of the class representative for the New Mexico and Washington, D.C. classes. The Firm also assisted with the preparation of the complaint, including with factual and legal research and analysis, and provided strategic input and analysis regarding the claims, discovery, and experts. Attorneys from the Firm also assisted with certain court submissions and discovery responses, reviewed and analyzed certain deposition transcripts, and reviewed and analyzed numerous documents produced by Defendant and third parties.

5.  Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| **Attorney** | **Total Hours** | **Hourly Rate** | **Lodestar** |
|---|---|---|---|
| **Jack Brady** (Partner) | 10.5 | $850 | $8,925 |
| **Alexa DiCunzolo** (Former Associate) | 44 | $450 | $19,800 |
| **Ashley Gould** (Associate) | 229.30 | $450 | $103,185 |
| **Daniel Owen** (Partner) | 531.80 | $950 | $505,210 |
| **Britteny Pfleger** (Former Associate) | 55.9 | $450 | $25,155 |
| **Parker Smith** (Former Associate) | 3.4 | $450 | $1,530 |
| **John Tyner** (Former Partner) | 342.60 | $700 | $239,820 |
| **Phillip Zeeck** (Associate) | 30.80 | $450 | $13,860 |
| **Gabe Zorogastua** (Partner) | 263.00 | $800 | $210,400 |
| **Paralegal A** | 131.70 | $245 | $32,266.50 |

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

| | | | |
|---|---|---|---|
| **Paralegal B** | 2.7 | $220 | $594 |
| **Paralegal C** | 5.4 | $195 | $1,053 |
| **Total:** | 1,651.10 | | $1,161,799 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

6.     The hourly rates for the attorneys and professional support staff are the usual and customary rates charged.  Similar hourly rates for attorneys and professional support staff at my Firm have been approved in other class action litigation.

7.     During the course of this Action, the Firm incurred $11,144.68 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| **CATEGORY** | **EXPENSE AMOUNT** |
|---|---|
| Copying, Printing and Scanning | $8.00 |
| Court Costs, Filing Fees and Transcripts | $400.00 |
| Delivery/Courier | $35.75 |
| Carfare, Travel and Meals | $10,621.51 |
| Legal Research | $79.42 |
| **TOTAL** | $11,144.68 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  April 23, 2021

*/s/ Daniel D. Owen*
Daniel D. Owen

3

# EXHIBIT A



# About the Firm

## Firm Facts

A full-service firm with more than **170 services and industries**

**825+ attorneys** nationwide

**21 offices** spanning the country from LA to NY

**7 focus areas –** business litigation, financial services, health care, intellectual property, labor and employment, mid-market corporate and real estate



**METRO OFFICES**

| | |
|---|---|
| Atlanta | New York |
| Boston | Phoenix |
| Chicago | St. Louis |
| Dallas | San Francisco |
| Denver | Seattle |
| Houston | Silicon Valley |
| Kansas City | Washington, D.C. |
| Los Angeles | Wilmington |
| Nashville | |

You expect lawyers to be good legal technicians. Shouldn't you also expect legal advice grounded in strong business acumen? We understand your functional challenges and how your industry orientation shapes your strategic objectives. That is why we organize our experience logically around your business needs.

## Services

- Antitrust
- Bankruptcy and Financial Restructuring
- Corporate and Transactional
- Employee Benefits and Executive Compensation
- Environmental and Natural Resources
- Financial Services
- Food and Drug
- Global Franchise and Supply Networks
- Government Contracts
- Government Investigations
- Health Care
- Immigration
- Infrastructure and Public-Private Partnerships
- Intellectual Property
- International
- Labor and Employment
- Litigation and Dispute Resolution
- Privacy and Cybersecurity
- Pro Bono
- Public Policy
- Real Estate Finance
- Real Estate
- Securities and Corporate Finance
- Tax
- Technology Transactions
- Wealth Planning and Estate

## Industries

- Chemical Manufacturing
- Construction
- Consumer Products
- Energy and Utilities
- Family Owned Businesses
- Financial Services
- Food and Agriculture
- Health Care
- Insurance Business and Regulatory Law
- Life Sciences
- Nonprofit Organizations
- Professional Services
- Public Sector
- Real Estate
- Sports
- Technology
- Telecommunications
- Transportation and Logistics



POLSINELLI

polsinelli.com  |  Polsinelli is very proud of the results we obtain for our clients, but you should know that past results do not guarantee future results; that every case is different and must be judged on its own merits; and that the choice of a lawyer is an important decision and should not be based solely upon advertisements. Polsinelli PC. Polsinelli LLP in California.

# About the Firm



## Business Litigation

Polsinelli's business litigation attorneys provide companies and professionals with business-driven legal advice that is founded on a thorough understanding of substantive legal issues, real courtroom experience and sound business judgment. Our attorneys strive to help clients make sound business decisions by providing legal advice infused with economic evaluation and risk management.

## Financial Services

The firm's national financial services practice encompasses all aspects of debt and equity financing, including loan origination and servicing, loan sales and securitizations, financial restructuring and work-outs, loan enforcement, and bankruptcy. Our fully integrated practice represents lenders, borrowers, issuers, investors, debtors, creditors, and master and special servicers in all matters of financing from all sides, with a history of providing practical, business-minded legal guidance.

## Health Care

Recognized as a leader in health care law, Polsinelli is ranked nationally by Chambers USA[1]. From the strength of its national platform, the firm is positioned to advise on the full range of hospital-physician lifecycle and business issues confronting health care providers across the United States. The national team serves clients in hospital and health systems, academic medical centers, health information and technology companies, and many other sub-sectors of the industry.

## Intellectual Property

Our attorneys are a multidisciplinary team organized to handle the most complex issues facing technology and high tech companies, bioscience and life sciences companies, animal science, medical device, pharmaceutical, chemical, software and business methods, data, privacy, health care IT, and any of a variety of other high tech industries. As one of the largest IP practices in the nation, our attorneys have deep experience, including patent and trademark prosecution and litigation, IP transactions, post-grant work and strategic guidance leading up to and during the litigation process.

[1] Chambers USA: America's Leading Lawyers for Business, May 2018

## Labor and Employment

Our attorneys partner with management to navigate challenging labor and employment problems in increasingly regulated workplaces. We help business clients plan and implement practical human resources solutions such as workforce restructuring, union avoidance plans, restrictive covenant and intellectual property protection plans, and merger and acquisition related workforce integrations. When employment disputes escalate to high-stakes litigation, our lawyers bring to bear decades of trial and class action experience to win at trial or at the negotiating table. Whether representing established Fortune 50 enterprises, or privately-held entrepreneurial ventures, we work in concert with our clients to find employment solutions that advance their business objectives.

> **Understanding clients' real world situations** — Polsinelli is excellent at that. **They do a great job at deeply understanding what we are trying to accomplish.** When negotiating, they know what's important to us and the right trade-offs and they apply their legal knowledge based on that.
>
> *Polsinelli Client*

## Mid-Market Corporate

Companies doing business in the middle market ecosystem require sophisticated and comprehensive legal advice designed to minimize liability and maintain flexibility while focusing on opportunity and scale. High value advice is necessary to achieve those goals. Our attorneys provide tailored legal counsel grounded in an understanding of our clients' businesses as well as the industries and geographies in which they operate, including outside general counsel, corporate governance, securities and corporate finance, joint ventures and strategic alliances (mergers, acquisitions and divestitures, private equity, and venture capital) and other corporate services.

## Real Estate Development and Transactions

From acquisition and financing through development and leasing, our industry under-standing enables Polsinelli attorneys to drive to deal closure. Our deep bench in transactions, financing structures, land use entitlements and environmental, as well as experience in securing economic incentives through tax credit and special obligation financing, provide the practical solutions our clients value.



**polsinelli.com** | Polsinelli is very proud of the results we obtain for our clients, but you should know that past results do not guarantee future results; that every case is different and must be judged on its own merits; and that the choice of a lawyer is an important decision and should not be based solely upon advertisements. Polsinelli PC. Polsinelli LLP in California.



real skills.
real insights.<sup>SM</sup>

## Practice Leaders

Mitchell D. Raup
mraup@polsinelli.com

Matthew C. Hans
mhans@polsinelli.com

# Antitrust

*"We're looking to do business with people that are good business people.  We expect them to be savvy because they are at Polsinelli."*

— Polsinelli Client

## Overview

Polsinelli's Antitrust practice solves antitrust problems on matters ranging from mergers and acquisitions to intellectual property to complex litigation and consumer protection matters.

Our practice includes both experienced litigators and transactional lawyers. As a result, we have the experience to provide solutions across the spectrum of antitrust law.  Because antitrust issues often are critical to our clients' businesses, we work closely with clients to develop a strategy that is consistent with their goals and objectives.

Mergers and Acquisitions

- We work with clients at all steps of their transactions to minimize antitrust exposure during contract formation, negotiation of terms, exchanges of sensitive information, pre-closing operations, and closing.

- We counsel clients about all aspects of their reporting obligations under the Hart-Scott-Rodino Act, and guide them through the merger review process.

- Our lawyers have defended multi-billion-dollar mergers of competitors.  We have responded to numerous Second Requests and other discovery demands, prepared and presented facts and economic expert testimony to antitrust enforcers and courts, and (where necessary) negotiated consent decrees to allow the deal to close.

Antitrust Litigation and Government Investigations

- We understand antitrust litigation from all angles. Polsinelli has successfully represented plaintiffs and defendants in antitrust trials and appeals in class actions, Bet-The-Company lawsuits, multidistrict litigation, and government civil and criminal enforcement actions.

- We represent clients whose conduct is being investigated under the antitrust laws by the Federal Trade Commission, the United States Department of Justice, and State Attorneys General.

Antitrust Counseling, Audits and Compliance Training

- Our team counsels clients on structuring business operations to minimize antitrust risks.

- We conduct custom-designed, comprehensive antitrust audits of business operations to identify risks, prevent violations, and address problems before they surface in litigation.

- We train executives and management to recognize and avoid antitrust violations.

Protecting your Rights under the Antitrust Laws

- We aggressively represent plaintiffs who have been injured by antitrust violations. Our goal is to end the violation and recover compensation for injured clients.

- We represent parties bringing complaints to antitrust enforcement agencies and often persuade the agency to take corrective action to stop anti-competitive conduct.

## Key Matters

### Antitrust Litigation – for Defendants

- In two separate matters, represented major athletic conferences in antitrust class actions filed against a national collegiate sports association and other major athletic conferences, alleging that the association's rules limiting compensation for student athletes were in violation of the Sherman Act.

- Represented two athletic conferences in a class action filed alleging antitrust and intellectual property claims against TV broadcasters and certain Division I college athletic conferences.

- Defense of an antitrust claim against a national association of high school sports and a national association of collegiate sports by a baseball bat manufacturer, alleging that rules governing Bat-Ball Coefficient of Restitution restrained trade in the non-wood bat market. The United States Court of Appeals for the Fifth Circuit unanimously affirmed dismissal of the antitrust claims, reaffirming our client's role in setting rules for high school competition.

- Defended antitrust claims alleging that a software company with revenues of $55.8 billion per year excluded another technology company from the US market for x86 computer microprocessors.

- Successfully defended claims by a group of franchisees in a tire and automotive products franchise system for tens of millions of dollars arising out of claims that the defendants engaged in conspiracy to breach contract, fraud, violation of various antitrust laws, including the Robinson-Patman Act and other claims.

- Defended class action by nurses alleging that association of hospitals and individual hospitals conspired to fix nurses' salary in violation of federal and state antitrust laws.

- Represented a manufacturer and distributor of commercial garage doors in a Robinson-Patman Act claim in which the plaintiff, a dealer for our client, alleged that our client gave unlawful preferential prices to a competing dealer. The Court granted our motion for summary judgment, holding that plaintiff had not established either unlawful price discrimination or injury to competition.

### Antitrust Litigation – for Plaintiffs

- Represent Colorado, Kansas, Missouri, and Wisconsin retail purchasers of natural gas against natural gas sellers in price-fixing suit alleging price manipulation. Obtained a 7-2 decision in the United States Supreme Court holding that the Natural Gas Act does not preempt the plaintiffs' state-law antitrust claims.

- Represented a class of direct purchasers of thin film transistor liquid crystal display panels that sued numerous Japanese, Korean and Taiwanese based manufacturers for price-fixing. Settlements of almost $500 million were obtained, as was a jury verdict against Toshiba.

- Represented a class of direct purchasers of potash in a price-fixing case against an international cartel. Obtained a unanimous en banc opinion from the 7th Circuit on the non-applicability of the Foreign Trade Anti-Trust Improvements Act (FTAIA) and a $90 million dollar settlement for the Class.

- Successfully represented plaintiff telecommunications company against nation's largest cable operator. The suit included antitrust claims under Section 1 and 2 of the Sherman Act and a claim for tortious interference claim and was tried in the United States District Court for seven weeks. Obtained a verdict on each of the two antitrust counts of $10.8 million trebled to $32.4 million and a verdict on the tortious interference claim of $10.8 million plus $25 million punitive damages (total $35.8 million). Affirmed by the Eighth Circuit Court of Appeals; certiorari denied by the United States Supreme Court and judgment collected.

- Represent direct purchasers of lithium ion batteries against manufacturers who participated in an international price-fixing conspiracy.

- Represent indirect purchasers of coffee pods against a major manufacturer of coffee brewing equipment, in a suit alleging violations of antitrust and unfair competition laws of numerous states.

- Represent direct purchasers of capacitors, in a suit alleging that the defendants participated

in an international price-fixing conspiracy.

- Represent direct purchasers of CRT products, including television screens and computer monitors, against manufacturers who engaged in an international price-fixing conspiracy.

- Lead trial counsel for the State of Missouri claims under Section 1 and 2 of the Sherman Act against several of the major producers and distributors of natural gas in Western Missouri and Eastern Kansas.  The case was tried for 10 days before settlement of claims.  Total settlement for all plaintiffs in excess of $200 million.

- Successfully negotiated on behalf of the State of Missouri and others for an aggregate settlement of more than $400 million in claims involving antitrust price-fixing.

- After eight years of complex litigation, helped recover significant awards and settlements for prominent distributors engaged in associated multilevel marketing businesses that were seeking to recover tens of millions of dollars in commercial litigation cases filed in state and federal courts in Missouri and Florida.  Their claims included a variety of tort, contract, and antitrust claims.



real people.
real perspective.™

## P. John "Jack" Brady

Senior Partner
jbrady@polsinelli.com
Kansas City
816.374.0515

### Areas of Focus

- Antitrust
- Antitrust - Health Care
- Class Action and Multidistrict Litigation
- Commercial Litigation
- Health Care Industry
- Health Care Litigation
- Health Care Services
- Litigation and Dispute Resolution

### Education

- J.D., Creighton University
- B.S., University of Nebraska-Lincoln

### Bar Jurisdictions

- Missouri
- Kansas

*"My goal is the timely and efficient analysis, evaluation and resolution of a client's claim or litigation exposure by settlement or jury verdict."*

### Overview

In his more than three decades of trial practice, Jack Brady has represented plaintiffs and defendants in almost every type of case.

His successful business litigation trial experience includes cases involving antitrust, class action, breach of warranty, breach of contract, breach of fiduciary duty, director and officer liability, fraud, tortious interference, accounting malpractice, lender liability, and adversary bankruptcy proceedings.

Jack's successful tort litigation trial experience includes cases involving various types of product defects, auto crashworthiness, medical devices, and construction machinery, and also cases involving auto/truck collisions, medical malpractice, hotel security, and premises liability.

Jack's experience on either side of the courtroom provides a diverse perspective and valuable insight into his opponents' trial strategy, which allows for successful and efficient resolutions.

### Distinctions

- Selected for inclusion in *The Best Lawyers in America*® in the following fields:
  - Commercial Litigation, 2007-2021
  - Litigation - Antitrust, 2007-2021
  - Medical Malpractice Law - Defendants, 2007-2021
  - Personal Injury Litigation - Defendants, 2007-2021
- Selected as "Lawyers of the Year" on *The Best Lawyers in America*© 2021 list for Litigation – Antitrust
- Named "Lawyer of the Year" by *Best Lawyers*® for Medical Malpractice Law - Defendants in Kansas City (Missouri), 2017
- Honored by *The Kansas City Business Journal* as the 2015 "Best of the Bar" in the fields of:
  - Commercial and Business Litigation
  - Health Care and Personal Injury Litigation
  - Accounting Litigation

- Selected for inclusion in *Missouri & Kansas Super Lawyers* for Business Litigation, 2005-2019

## Memberships

- The Missouri Bar
  - President, 2013-2014
  - Member, Board of Governors, 2002-2015

- Kansas City Metropolitan Bar Association
  - President, 2000
  - Executive Committee Member,1993--2001

- Kansas City Metropolitan Bar Foundation
  - President, 2005
  - Lifetime Member

- American Bar Association
  - Section of Litigation
    - National Co-Chair of Business Torts(2013), Commercial and Business Litigation(2014-2017), Health Care Litigation(2017-2019) and Trial Evidence (2019-- )
  - State of Missouri Representative to House of Delegates- 2016 to the present

- American Association of Justice
  - National Chair of Business Torts, 2003

## Key Matters

- Represented with several other firms a class of direct purchasers of thin film transistor liquid crystal display panels that sued numerous Japanese, Korean and Taiwanese based manufacturers for price-fixing. Settlements of almost $500 million were obtained and a jury verdict against Toshiba was also obtained.

- Represented with two other firms a class of direct purchasers of potash in a price-fixing case against an international cartel. Obtained a unanimous en banc opinion from the 7th Circuit on the non-applicability of the Foreign Trade Anti-Trust Improvements Act (FTAIA) and a $90 million dollar settlement for the Class.

- Co-lead counsel and lead trial counsel for several consumer class action cases against General Motors. Case successfully settled in for confidential amount.

- Successfully represented at trial ANUHCO, Inc., et. al. in a breach of contract lender liability case against Westinghouse Business Credit. After a six-week jury trial, verdict was returned for plaintiffs in the amount of $70 million. Judgment was affirmed on appeal and paid in the amount of $81 million including interest. 883 s.w. 2d190

- Successfully represented at trial Block Financial Corporation, a subsidiary of H&R Block, in a breach of contract case against America Online (AOL) in a transaction involving the sale of CompuServe, Inc. to AOL. Case tried for three weeks with verdict for Block Financial Corporation and against AOL in the amount of $21 million.

- Successfully represented the trustee of the bankruptcy estate of Mountain Energy Corporation in numerous adversary proceedings resulting in a reduction of total claims and set-offs valued at $59.3 million to the creditors of the estate.

- Successfully arbitrated MEZ, Inc.'s claim against SPX, a large British conglomerate, in an eight-day arbitration. The breach of "earn out" provision contained in a purchase and sale of assets agreement claim resulted in an award of the full amount of the contingent "earn out" — $6.5 million, plus prejudgment interest in the amount of $495,000 and an award of attorneys' fees and expenses.

- Successfully represented a 9-year-old boy with permanent brain injury in a product defect case against Ford Motor Company. Case settled after three weeks of trial, prior to closing argument, for confidential amount.

- Successfully represented a 19-year-old woman in a negligent hotel security case, which settled after one week of trial for $2.725 million.

- Successfully represented a 25-year-old woman in a Federal Torts Claim Act case against the U.S. Government and another defendant for medical malpractice. Case settled before trial for in excess of $2 million.

- Successfully tried a medical malpractice failure to diagnose cancer case in Omaha, Neb. After one-week trial, verdict of $500,000 was obtained.

- Numerous successful trial verdicts for physicians and hospitals sued for medical malpractice and corporate negligence.

- Successfully coordinated the defense and settlement of a large class action and 75 related individual medical malpractice claims brought against a hospital and its cardiologist.

- Successfully defended a health care system accused of violating the False Claims Act when it changed the ownership structure and bought out the physician investors. 312 F. Supp. 3d 584.



**real people.**
**real perspective.**<sup>SM</sup>

## Daniel D. Owen
### Shareholder
dowen@polsinelli.com
Kansas City
816.395.0671

### Areas of Focus

- Antitrust
- Antitrust - Health Care
- Commercial Litigation
- Litigation and Dispute Resolution

### Education

- J.D., University of Kansas, 1990
- B.S., University of Kansas, 1987

### Bar Jurisdictions

- Kansas, 1990
- Missouri, 1991

### Overview

Over more than 25 years, Dan has developed extensive jury trial experience in state and federal courts. He's tried a wide variety of civil and criminal matters in Kansas, Missouri and California.

Dan has a wide variety of jury trial experience, beginning with his work as an elected county prosecutor in the 1990's and continuing with multiple jury trials since he joined Polsinelli in 1997. Dan was on the trial team for the seven week jury trial of *In Re: TFT-LCD Antitrust Litigation, MDL No. 1827.*

Since 2006, Dan's practice has focused primarily on representing plaintiff companies in large antitrust lawsuits. These include:

- *Tevra Brands LLC v. Bayer HealthCare LLC et al., case number 5:19-cv-04312*
- *In Re: Broiler Chicken Antitrust Litigation, Case No. 1:16-cv-08637*
- *Associated Wholesale Grocers v. Tyson Foods, Inc., et al., Case No. 2:18-cv-2258*
- *In Re: Lithium Ion Battery Antitrust Litigation, MDL. No. 2420*
- *In Re: Potash Antitrust Litigation, MDL No. 1996*
- *In Re: Cathode Ray Tube(CRT) Antitrust Litigation, MDL No. 1917*
- *In Re: TFT-LCD Antitrust Litigation, MDL No. 1827*

Much of Dan's other jury trial work has involved technical subjects, such as:

- Computer software
- Bridges
- Cranes
- Building design
- Automotive engines
- Agricultural machinery

Dan is a former computer programmer, who has extensive experience preparing and trying computer-related cases, and has represented both software companies and their customers. Dan also has extensive class action experience, particularly in antitrust cases.

### Distinctions

- Received Martindale-Hubbell highest "AV" rating

- Continuing Legal Education presentations on antitrust, class actions, litigation support software, and trial techniques

- Law school lecturer on class actions



real people.
real perspective. SM

## Areas of Focus

- Antitrust
- Antitrust - Health Care
- Class Action and Multidistrict Litigation
- Commercial Litigation
- Litigation and Dispute Resolution
- Products Liability

## Education

- B.A., *summa cum laude*, Wichita State University, 2009, Modern and Classical Languages and Literatures (Spanish)
- J.D., University of Kansas School of Law, 2007, International Trade and Finance Certificate
- B.A., *summa cum laude*, Wichita State University, 2004, Political Science
- B.S., *summa cum laude*, Wichita State University, 2004, Criminal Justice

## Bar Jurisdictions

- Missouri, 2007
- Kansas, 2008

## Court Admissions

- U.S. District Court, Western District of Missouri, 2007
- U.S. District Court, District of Kansas, 2008

# G. Gabriel Zorogastua

Shareholder
gzorogastua@polsinelli.com
Kansas City
816.374.0537

*"I listen to clients to understand their goals and likely challenges and then develop practical and expeditious strategies to meet their needs."*

## Overview

Gabe Zorogastua has more than 10 years of experience helping clients address antitrust and other problems. He has counseled clients on health care mergers and acquisitions transactions involving hospitals, physician groups, pharmaceuticals, and group purchasing organizations. Gabe's antitrust experience also includes matters related to food, technology, and energy.

Given the cost involved in filing or defending an antitrust lawsuit or investigation, Gabe first counsels clients on identifying and reducing antitrust and other litigation and regulatory risks. In addition, Gabe has litigation experience that includes allegations of price manipulation and price fixing, vertical restraints on pricing and output, exclusive agreements, and other alleged restraints of trade.

Gabe also has Fair Credit Reporting Act experience.  He has represented one of the big three consumer reporting agencies in more than two hundred cases, and he previously served as an adjunct professor at the University of Missouri-Kansas City School of Law, where he co-taught Consumer Protection.

## Distinctions

- Selected as a Top Lawyer Under 40 by the Hispanic National Bar Association, 2018
- Selected as a NextGen Leader by the Kansas City Business Journal, 2017
- Selected for inclusion in "Rising Stars" by *Missouri & Kansas Super Lawyers*, 2013-2017
- Served on the board of the *University of Kansas Law Review* as an Articles Editor
- Selected for the Samuel Mellinger Award for Outstanding Scholarship Leadership and Service at the University of Kansas School of Law and as a Senior Honor Man by Wichita State University
- 2009 Graduate of the Missouri Bar Leadership Academy

## Memberships

- Hispanic National Bar Association
  - HNBA LGBT Division Chair, 2020-2021
- Kansas City Metropolitan Bar Association

- Diversity Section, 2015-2018
  - President Elect, 2016-2017
- Hispanic Bar Association of Greater Kansas City
  - Governor, 2013-2014; 2016-2017
  - President, 2015
  - Immediate Past President, 2012
  - President, 2011
  - Secretary, 2010
- Good Samaritan Project
  - President of the Board, 2017-2018
  - Board of Directors, 2010-2013; 2015-2017; 2019
- The Clinic
  - Board of Directors, 2011-2015
- KC LEGAL
  - Board of Directors, 2007-2012
- The Missouri Bar
  - Missouri Bar Leadership Academy, 2008-2009
- Kansas Bar Association



**real people.**
**real perspective.**<sup></sup>SM

## Areas of Focus

- Aviation
- Commercial Litigation
- Litigation and Dispute Resolution
- Sports

## Education

- J.D., *magna cum laude*, Texas Tech University School of Law, 2015
- B.S., *magna cum laude*, University of Wisconsin-Eau Claire, 2012, Political Science, Public Relations

## Bar Jurisdictions

- Texas, 2015

## Court Admissions

- U.S. District Court, Northern District of Texas
- U.S. District Court, Eastern District of Texas
- U.S. District Court, Western District of Texas

## Ashley N. Gould
### Associate
agould@polsinelli.com
Dallas
214.754.5716

*"I believe in working hard and being a strong advocate for our clients' business objectives."*

## Overview

Ashley N. Gould is dedicated to helping clients efficiently and effectively resolve litigation matters that can disrupt or even derail their business objectives. She takes pride in bringing a collaborative and strategic brand of representation to each matter. Clients value her transparent communication style as much as they value her ability to zealously advocate for them through the entire litigation process.  Clients appreciate that she is present and accessible each step along the way, from resolving complex electronic discovery issues through summary judgment, trial, and appeal.

Ashley has represented a wide variety of clients, including collegiate conferences, aviation companies, and commercial real estate businesses. Her practice focuses on general commercial litigation matters, including business and contract disputes. She also represents collegiate athletic conferences in a variety of federal and state law tort, contract, and anti-trust matters.

## Distinctions

- *Super Lawyers* "Rising Star" for Business Litigation, 2020, 2021

## Memberships

- The Texas Bar
- The American Bar Association

## Key Matters

- Authored summary judgment motion that resulted in the Superior Court of the State of Delaware dismissing civil conspiracy claims against aviation company.
- Obtained favorable outcome for bank intervening in action wherein the bank and several other entities claimed interests in proceeds arising from sold property within the possession of the court's registry.
- Obtained motion to dismiss for four aviation companies for unjust enrichment claims in the Superior Court of the State of Delaware.
- Represents collegiate conferences in multiple class actions and antitrust matters.
- Successfully represented sports media rights holder in six day arbitration against broadcaster regarding contract dispute.
- Obtained summary judgment on liability for commercial landlord for breach of lease and attorney's fees.

- Successfully represented aviation company sued by two sets of plaintiffs for breach of fiduciary duty and fraud.



real people.
real perspective.SM

## Areas of Focus

- Antitrust
- Commercial Litigation
- Corporate Directors & Officers Liability Litigation
- Litigation and Dispute Resolution
- Real Estate Litigation

## Education

- J.D., University of Michigan Law School, 2012, *Michigan Journal of International Law*, contributing editor, 2010-2012
- Graduate Certificate, New College, University of Oxford, 2009, International Human Rights Law Summer Programme
- M.A., The George Washington University, 2007
- B.A., *magna cum laude*, The George Washington University, 2005, Political Communication with Department Honors

## Bar Jurisdictions

- Missouri, 2012

## Court Admissions

- Missouri Court of Appeals, 2018
- U.S. District Court, Western District of Missouri, 2014
- U.S. District Court, District of Kansas, 2014
- U.S. Court of Appeals, Eighth Circuit, 2014

## Phillip Zeeck
### Associate
pzeeck@polsinelli.com
Kansas City
816.572.4592

*A good friend once advised, "You begin as an attorney. With some practice you become a lawyer. When you earn a client's trust you'll be a counselor. Strive always to become a counselor."*

## Overview

Phillip Zeeck helps resolve clients' disputes through alternative dispute resolution, summary judgment, trial, and appeal. He represents clients in health care, finance, telecommunications, and other industries in a range of disputes including contracts, torts, intellectual property, real estate, and antitrust. He practices regularly in state and federal courts in Missouri and Kansas.

Phil joined Polsinelli after clerking for the Hon. Patricia Breckenridge of the Missouri Supreme Court. In law school, he was a contributing editor on the Michigan Journal of International Law and served as the University of Michigan's Student General Counsel. Before that, Phil managed media commitments and a diverse client portfolio at a Washington, DC business consulting firm led by former Secretary of Defense William S. Cohen.

## Distinctions

- Received the Missouri Bar's Pro Bono Publico award, Missouri Lawyers Weekly's Legal Champion Award, and Polsinelli's Pro Bono Trailblazer Award for representing a Missouri inmate in a civil rights case. The successful verdict led Missouri prisons to go smoke-free.
- Graduate, Kansas City Metropolitan Bar Association Bar Leadership Academy, 2016

### Clerkships

- Judicial Clerk for Judge Patricia Breckenridge, Supreme Court of Missouri, 2012-2013
- Intern for the Honorable Phil Johnson, Supreme Court of Texas, 2010

## Key Matters

- Helped obtain a voluntary dismissal on behalf of a directory services provider sued under the Telephone Consumer Protection Act.
- Helped obtain a judgment of dismissal on behalf of a commercial real estate management company sued on various claims alleging that the management company was liable for the debts of companies owning the properties themselves.
- Participated in representing a public service retirement system in a suit involving issues of statutory and constitutional construction, including drafting extensive briefing submitted to the trial court and Missouri Supreme Court.
- Presented oral argument on appeal leading to reversal of manslaughter conviction. This case

involved an issue of first impression under Missouri law: whether mothers can face criminal liability for complications arising from an unattended birth.

- Managed confidentiality designations on over 1,000 trial exhibits and several dozen deposition transcripts in healthcare antitrust matter, including marking exhibits and transcripts for redaction and sealing, drafting motions to seal and related briefing, and negotiating stipulated trial confidentiality order with opposing counsel and counsel for third-party payers.

- Drafted dispositive motion in putative class action against health insurance clients alleging a billing conspiracy with medical services providers. The motion was granted, eliminating over $1 million in risk to the clients.

- Drafted summary disposition briefing for telecommunications client in consumer arbitration action alleging negligence related to content filter. Based on the briefed arguments, the arbitrator granted the client summary disposition in large part and significantly limited available damages.

- Successfully obtained six-figure damages award and injunctive relief for prison inmate in civil rights case. This representation included dispositive motion drafting and argument, depositions, trial preparation, witness examination and closing argument at trial, and drafting appellate briefs.

- Prepared and produced witnesses for deposition on behalf of financial services client in matter exposing client to over $1 million liability risk. The matter settled without the client incurring any liability.

- Represented portfolio of commercial real estate owners in various lease dispute matters by drafting pleadings, conducting discovery, and managing settlement negotiations.

- Successfully resolved several federal cases on behalf of credit reporting agency alleging claims for violation of the Fair Credit Reporting Act and Fair Debt Collection Practices Act.

- Successfully challenged initiative petition seeking to terminate a series of large public real estate and development contracts involving tax increment financing.

- Participated in client service team representing a commercial real estate data company in a highly publicized lawsuit brought by a publicly traded company in the Western District of Missouri. This representation included defending the client against claims of copyright infringement, violation of the Computer Fraud and Abuse Act, and unfair competition and asserting counterclaims for violations of US antitrust laws. This case has been reported on by The Wall Street Journal and numerous legal and industry publications.

- Key member of client service team representing health care company against tort claims in federal class action and state mass action cases arising out of allegedly unnecessary medical procedures. This representation included identifying trial exhibits, drafting dispositive motions briefs, and corresponding with opposing counsel on discovery disputes. Cases were resolved favorably to client.

- Assisted in representing credit life insurance carrier in consumer class action against claims for breach of contract and breach of fiduciary duty.

- Brought and resolved numerous breach of contract cases on behalf of an education marketing company.

- Negotiated successful settlement agreement to protect family member's right to estate assets.

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :     No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                                :     No. 1:14-cv-04391 (VSB)
                                                                                    :
*This Relates to the Indirect-Purchaser Actions*       x

——————————————————————————

## DECLARATION OF THOMAS J. McKENNA IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD

I, Thomas J. McKenna, hereby declare and state as follows:

1.       I am a partner at the law firm of Gainey McKenna & Egleston ("GM&E"). I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award. I have personal knowledge of the information set forth in this Declaration.

2.       GM&E has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

3.       The attorneys from GM&E, in addition to myself, who have worked on this Action are Gregory M. Egleston and Gizelle Tinto, as well as several of our paralegals. In brief, my firm, acting under the direction of Interim Lead Counsel, was actively engaged in the prosecution of the instant action from 2014 to the present by, among other things: (1) reviewing and analyzing the Company's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) researching the applicable law with respect to the claims in the action and the potential defenses thereto; (3) researching and drafting various filings in the action; (4) court appearances; (5) reviewing and editing the consolidated complaint in the instant

1

action; (6) engaging in lengthy document review and coding of a vast quantity of documentary evidence produced in the action; and (7) staying informed as to the progress of the litigation and of the settlement negotiations and assisting as directed by Interim Lead Counsel.

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Thomas J. McKenna** (Partner) | 113.70 | $795.00 | $    90,391.50 |
| **Gregory M. Egleston** (Partner) | 38.25 | $775.00 | $    29,643.75 |
| **Gizelle Tinto** (Of Counsel) | 1,823.85 | $550.00 | $1,003,117.50 |
| **Noemi Rivera** (Senior Paralegal) | 63.05 | $285.00 | $    17,969.25 |
| **Elaine Rosa** (Paralegal) | 1.75 | $265.00 | $        463.75 |
| **Rebecca Ramotar** (Paralegal) | 3.90 | $150.00 | $        585.00 |
| **Total:** | 2,037.70 | | $1,142,170.75 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

5.      The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

6.      During the course of this Action, the Firm incurred $981.40 in unreimbursed expenses, not including our contributions to the Litigation Fund which is being reported in its totality by Interim Lead Counsel.  The expenses listed below were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Copying, Printing and Scanning | $324.10 |
| Telephone, Conference Calls and Facsimile | $ 43.10 |
| Court Costs, Filing Fees and Transcripts | $ 25.00 |
| Delivery/Courier/Overnight | $ 12.25 |
| Travel, Carfare and Meals | $238.34 |
| Westlaw/Lexis/Pacer database costs | $338.61 |
| **TOTAL** | **$981.40** |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated: April 23, 2021

*Thomas J. McKenna*

Thomas J. McKenna

3

# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE    :    No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                           :    No. 1:14-cv-04391 (VSB)

                                               :

*This Relates to the Indirect-Purchaser Actions*    x

—————————————————————————————

**DECLARATION OF ELIZABETH C. PRITZKER IN SUPPORT OF THE INDIRECT
PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD**

I, Elizabeth Pritzker, hereby declare and state as follows:

1.       I am a co-owner and managing partner in the law firm of Pritzker Levine LLP ("Pritzker Levine"). I am a member in good standing the State Bar of California, all the United States District Courts of California and Colorado, the Ninth Circuit Court of Appeals, and the United States Supreme Court. I make this declaration based on my personal knowledge unless stated otherwise, in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award. If called as a witness, I could and would competently testify to the matters stated herein.

2.       My firm and I have participated in this litigation from the outset.  Pritzker Levine initially appeared as counsel of record in *Daly, et al. v. Keurig Green Mountain, Inc., et al.,* S.D.N.Y. Case No. 14-cv-03018, a complaint filed April 28, 2014 jointly by the Pritzker Levine and Kaplan Fox law firms. All cases, including *Daly*, were later centralized and consolidated by in the Southern District of New York by order of the Judicial Panel on Multidistrict Litigation.  On July 24, 2014 a Consolidated Amended Indirect Purchaser Class Action Complaint was filed in the consolidated action, *In Re: Keurig Green Mountain Single-Service Coffee Antitrust Litigation*, No. 1:14-md-2542 (VSB); 1:14-mc-02542(VSB) (ECF No. 61).

1

3.      Pritzker Levine has served as counsel to Plaintiffs throughout the course of this litigation.  Our firm's antitrust experience is well-recognized.  Pritzker Levine has served as lead, co-lead, or participating counsel in MDL cases representing classes challenging price-fixing, unlawful trade restraints, monopolization, and other anticompetitive conduct in diverse markets.

4.      I served as the partner directly working on this case for Pritzker Levine.  The main focus of my 30-plus years of practice in complex litigation is in antitrust matters on behalf of both direct and indirect purchaser classes. My prior antitrust and consumer class action experience includes serving as Additional Class Counsel in *In re National Athletic Association Athletic Grant-in-Aid Antitrust Litigation*, N.D. Cal. Case No. 15-md-2541-CW; and as Class Counsel in *Il Fornaio (America) Corporation v. Lazzari Fuel Company, LLC*, N.D. Cal. Case No. 13-cv- 05197-WHA, an antitrust class action alleging customer allocation and bid-rigging among sellers of restaurant-grade mesquite charcoal. I currently serve on the Plaintiffs' leadership teams in *In re. EpiPen (Epinephrine Injection USP), Marketing, Sales Practices and Antitrust Litigation*, D. Kan. Case No. 17-md-02785 (Co-Lead Counsel); *Al's Discount Plumbing, et al. v. Viega LLC*, M.D. Pa. Case No. 1:19-cv-000159-CCC (Co-Lead Class Counsel); *In re: Google Play Store Consumer Antitrust Litig.*, N.D. Cal. Case No., 3:20-cv-05761-JD (MDL No. 2981-JD) (Liaison Counsel); and *In re Packaged Seafood Products Antitrust Litigation*, S.D. Cal. Case No. 15-md-2670-JLS (End-User Plaintiffs' Steering Committee), all antitrust cases; and in *Corcoran v. CVS Pharmacy, Inc.*, N.D. Cal. Case No. 15-cv-03504-YGR (Co-Lead Class Counsel), a multi-state consumer class action asserting violations of state unfair and deceptive practices statutes.

5.      Since initiating its investigation and filing the *Daly* complaint, and all the way to the present, Pritzker Levine has prosecuted this litigation on behalf of Plaintiffs and class members solely on a contingent-fee basis; accordingly, Pritzker Levine has at all times been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

6.      The attorneys from my Firm, in addition to myself, who have worked on this Action are Jonathan K. Levine, Bethany Caracuzzo, Heather Haggarty, Caroline Corbitt, Anne Whitney and Shiho Yamamoto.

7.      Pritzker Levine has been involved in this case since prior to the filing of the *Daly, et al. v. Keurig Green Mountain Inc., et al.* complaint, in April 2014. In preparation of that filing, Pritzker Levine attorneys, along with the Kaplan Fox law firm, conducted background factual research and analysis, performed legal research, and drafted the *Daly* complaint.

8.      Following appointment and under the direction of Interim Co-Lead Counsel, Pritzker Levine undertook the following assignments:  The Firm completed legal research on various legal issues, including but not limited to assigned legal research in support of and drafting of oppositions to motions to dismiss; researching claims for the preparation of the amended complaint;  and research in support of and drafting of opposition to motion for summary judgment; as well as the preparation of discovery responses on behalf of Plaintiffs.  Pritzker Levine attorneys, at the direction of Interim Co-Lead Counsel, also conducted significant review, analysis, and coding of documents produced in this case; assisted Interim Co-Lead Counsel by preparing deposition summaries of key witnesses; and analyzed documentary, testimony and other evidentiary evidence to aid in the prosecution of the case.

9.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

### PRITZKER LEVINE LLP

| **Attorney** | **Total Hours** | **Hourly Rate** | **Lodestar** |
|---|---|---|---|
| **Jonathan Levine (Partner)** | 67.90 | $800.00 | $54,320 |
| **Elizabeth Pritzker (Partner)** | 205.30 | $800.00 | $164,240 |
| **Bethany Caracuzzo (Partner)** | 219.45 | $725.00 | $159,101.25 |
| **Heather Haggarty (Associate)** | 148.05 | $675.00 | $99,933.75 |

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

3

| | | | |
|---|---|---|---|
| **Caroline Corbitt (Associate)** | 75.10 | $575.00 | $43,182.50 |
| **Shiho Yamamoto (Associate)** | 201.50 | $495.00 | $99,742.50 |
| **Tammara Brown (Paralegal)** | 3.45 | $150.00 | $517.50 |
| **Total:** | **919.75** | | **$621,037.50** |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained in the ordinary courts of business by my Firm.

10.    The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

11.    During the course of this Action, the Firm incurred **$27,330.44** in unreimbursed expenses, exclusive of monies contributed to the Plaintiffs' litigation fund as requested by Interim Co-Lead Counsel.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by the Firm in connection with the litigation, by category:

| **CATEGORY** | **EXPENSE AMOUNT** |
|---|---|
| Copying, Printing and Scanning | $126.40 |
| Telephone, Conference Calls and Facsimile | $0.00 |
| Court Costs, Filing Fees and Transcripts | $878.00 |
| Delivery/Courier | $21.04 |
| Carfare, Travel and Meals | $407.61 |
| Legal Research | $897.39 |

| Expert Witness Fees | $25,000.00 |
|---|---|
| **TOTAL** | **$27,330.44** |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  April 21, 2021

_____

Elizabeth C. Pritzker

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------- x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE      ⋮      No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                    ⋮      No. 1:14-cv-04391 (VSB)
                                               ⋮
*This Relates to the Indirect-Purchaser Actions*

------------------------------------------------- x

### DECLARATION OF STEVEN A. HART IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD

I, Steven A. Hart, hereby declare and state as follows:

      1.      I am a partner at the law firm of Hart McLaughlin & Eldridge, LLC ("HME"). I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award. I have personal knowledge of the information set forth in this Declaration.

      2.      From the inception of this litigation through October 2015, I was a partner at the law firm of Segal McCambridge Singer & Mahoney, Ltd. ("SMSM") (collectively with HME, the "Firm"). During that time, I oversaw SMSM's involvement in this case. In October 2015, SMSM transferred this case to HME, including all records and time entries, after the clients elected to retain HME as counsel. Since that time, HME has exclusively prosecuted this case.

      3.      The Firm has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

      4.      The attorneys from the Firm, in addition to myself, who have worked on this Action are Brian H. Eldridge, Carter Grant, Elliot Kim, John Marrese, Kyle Pozan, Jack Prior,

1

Constantine Revis, Ben Shrader, Blake Stubbs, Elizabeth A. Schieber, and Alex Dravilas.  Under the direction of Interim Co-Lead Counsel, the Firm undertook the following assignments: review and analyze documents produced in discovery by Defendant and third parties; advise clients about their preservation obligations; aid clients with their collection of responsive documents from retailers; assist clients with their search and production of responsive electronic documents and communications; examine clients' documents and communications for relevancy, responsiveness, and privilege; interview clients about their hot beverage purchase and consumption habits; assist clients in gathering information responsive to Defendant's written discovery requests; draft clients' written discovery responses; and coordinate clients' depositions.

     5.    Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals while at HME:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Carter Grant** (Associate) | 17.5 | $550.00 | $9,625.00 |
| **Elliot Kim** (Associate) | 0.8 | $550.00 | $440.00 |
| **John Marrese** (Associate) | 3.6 | $550.00 | $1,980.00 |
| **Kyle Pozan** | 44.4 | $550.00 | $24,420.00 |

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

| (Associate) | | | |
|---|---|---|---|
| **Jack Prior** (Associate) | 0.5 | $550.00 | $275.00 |
| **Constantine Revis** (Associate) | 30.7 | $550.00 | $16,885.00 |
| **Ben Shrader** (Associate) | 2.7 | $550.00 | $1,485.00 |
| **Blake Stubbs** (Associate) | 780.1 | $550.00 | $429,055.00 |
| **Total:** | 880.3 | | $484,165.00 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by HME.

6.      The hourly rates for the attorneys and professional support staff at HME are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

7.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals while at SMSM:[2]

| **Attorney** | **Total Hours** | **Hourly Rate** | **Lodestar** |
|---|---|---|---|
| **Steven A. Hart** | 17.2 | $800.00 | $13,760.00 |

---

[2] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

| | | | |
|---|---|---|---|
| (Partner) | | | |
| **Brian H. Eldridge**<br><br>(Partner) | 5.0 | $800.00 | $4,000.00 |
| **Kyle Pozan**<br><br>(Associate) | 24.3 | $475.00 | $11,827.50 |
| **Ben Shrader**<br><br>(Associate) | 3.1 | $475.00 | $1,472.00 |
| **Elizabeth A. Schieber**<br><br>(Associate) | 21.7 | $475.00 | $10,307.50 |
| **Alex Dravilas**<br><br>(Associate) | 5.0 | $475.00 | $2,273.00 |
| **Total:** | 76.3 | | $43,742.50 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by SMSM.

8.      The hourly rates for the attorneys and professional support staff at SMSM are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

9.      During the course of this Action, HME incurred $624.20 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Copying, Printing and Scanning | $13.30 |

4

| | |
|---|---|
| Telephone, Conference Calls and Facsimile | |
| Court Costs, Filing Fees and Transcripts | |
| Delivery/Courier | |
| Carfare, Travel and Meals | |
| Legal Research | |
| Miscellaneous [specify]<br><br>Walmart invoice (initial production of documents) | $610.90 |
| **TOTAL** | $624.20 |

10.     During the course of this Action, SMSM incurred $2,211.31 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Copying, Printing and Scanning | |
| Telephone, Conference Calls and Facsimile | |
| Court Costs, Filing Fees and Transcripts | $1,002.00 |
| Delivery/Courier | $118.78 |
| Carfare, Travel and Meals | $589.33 |
| Legal Research | |
| Miscellaneous [specify]<br><br>John J. Riddle Claims Consultants – Process Server | $501.20 |

| TOTAL | $2,211.31 |
|-------|-----------|

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  May 6, 2021

Steven A. Hart

# EXHIBIT 9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | x |
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | :  No. 1:14-md-02542 (VSB) :  No. 1:14-cv-04391 (VSB) |
| | : |
| *This Relates to the Indirect-Purchaser Actions* | x |

**DECLARATION OF GREGORY P. HANSEL, ESQ. IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD**

I, Gregory P. Hansel, hereby declare and state as follows:

1.      I am a partner at the law firm of Preti Flaherty Beliveau & Pachios LLP (the "Firm").  I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award.  I have personal knowledge of the information set forth in this Declaration.

2.      The Firm has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

3.      The attorneys from my Firm, in addition to myself, who have worked on this Action are Michael S. Smith, Anthony J. Manhart, Nathan R. Fennessy, Elizabeth F. Quinby and Erica Clark.  Under the direction of Interim Co-Lead Counsel, the Firm undertook the following assignments: investigation and factual research, discovery (including document review), pleadings and briefs, settlement, and litigation strategy and analysis.

1

4.      Not including the time expended in preparing the application for fees and

expenses, the table below details the hours billed and the amount billed at current rates for these

attorneys and other professionals:[1]

| **Attorney** | **Total Hours** | **Hourly Rate** | **Lodestar** |
|---|---|---|---|
| Gregory P. Hansel (Partner) | 56.50 | 820.00 | $46,330.00 |
| Michael S. Smith (Partner) | 181.00 | 685.00 | $121,587.50 |
| Anthony J. Manhart (Partner) | 59.5 | 685.00 | $40,757.50 |
| Nathan R. Fennessey (Partner) | 35.10 | 685.00 | $24,043.50 |
| Elizabeth F. Quinby (Associate) | 35.30 | 370.00 | $13,061.00 |
| Sonja S. Belanger (Paralegal) | 22.80 | 195.00 | $4,446.00 |
| Stacey A. Peters (Paralegal) | 16.90 | 195.00 | $3,295.50 |
| Brianna S. Clark (Paralegal) | .4 | 195.00 | $78.00 |
| Erica Clark (Contract Attorney) | 333.3 | 350.00 | $116,655.00 |
| **Total:** | **740.8** | | **$372,651.50** |

This summary was prepared from contemporaneous, daily time records regularly prepared and

maintained by my Firm.

5.      The hourly rates for the attorneys and professional support staff at my Firm are

the usual and customary hourly rates charged in similar matters and have been approved by

federal courts nationwide.

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

17432544.2

6.      During the course of this Action, the Firm incurred $2,904.65 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Case Assessment | |
| Copying, Printing and Scanning | |
| Telephone, Conference Calls and Facsimile | |
| Court Costs, Filing Fees and Transcripts | $19.30 |
| Delivery/Courier | $114.42 |
| Carfare, Travel and Meals | $2,770.93 |
| Legal Research | |
| Miscellaneous [specify] | |
| **TOTAL** | $2,904.65 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  April 23, 2021

_____
Gregory P. Hansel, Esq.

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE     :     No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                   :     No. 1:14-cv-04391 (VSB)
                                              :
*This Relates to the Indirect-Purchaser Actions*     x

————————————————————————

**DECLARATION OF ALYSON OLIVER IN SUPPORT OF THE INDIRECT
PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD**

I, Alyson Oliver, hereby declare and state as follows:

1.      I am a partner at the law firm of Oliver Law Group P.C. (the "Firm").  I submit

this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of

Settlement and Attorneys' Fees, Expenses and Service Award.  I have personal knowledge of the

information set forth in this Declaration.

2.      Oliver Law Group PC has prosecuted this litigation solely on a contingent-fee

basis, and has been at risk that it would not receive any compensation for prosecuting claims

against the Defendants.

3.      The attorneys from my Firm, in addition to myself, who have worked on this

Action are Matthew Barsenas, Lisa Gray, Reed Eriksson, Cameron Bell, and Christopher Brown.

Under the direction of Interim Co-Lead Counsel, the Firm undertook the following assignments:

conducted discovery, reviewed discovery, performed investigations and factual research,

maintained communications with class representatives, document production on behalf of class

representatives, attended debriefing and strategy conferences with co-counsel.

1

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Alyson Oliver** (Partner) | 19.5 | $775.00 | $15,112.50 |
| **Matthew Barsenas** (Attorney) | 1 | $475.00 | $475.00 |
| **Lisa Gray** (Attorney) | 2.1 | $475.00 | $997.50 |
| **Reed Eriksson** (Attorney) | 19.1 | $450.00 | $8,595.00 |
| **Cameron Bell** (Attorney) | 256.4 | $475.00 | $121,790.00 |
| **Christopher Brown** (Attorney) | 3.4 | $475.00 | $1,615.00 |
| **Alychia Lacourciere** (Paralegal) | 1.2 | $150.00 | $180.00 |
| **Meaghan Skillman** (Paralegal) | 1.3 | $150.00 | $195.00 |
| **Lubna Oulmane** | 38 | $150.00 | $5,700.00 |

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

| (Paralegal) | | | |
|---|---|---|---|
| **John Sedarous**<br><br>(Paralegal) | 1.4 | $150.00 | $210.00 |
| **Thor Glenn**<br><br>(Paralegal) | 1 | $150.00 | $150.00 |
| **Justin Galea**<br><br>(Paralegal) | .6 | $150.00 | $90.00 |
| **Lindsay Marino**<br><br>(Paralegal) | .1 | $150.00 | $15.00 |
| **Total:** | 345.1 | $4,175.00 | $155,125.00 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

5.      The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

6.      During the course of this Action, the Firm incurred $2,236.95 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Copying, Printing and Scanning | $14.50 |
| Telephone, Conference Calls and Facsimile | $16.68 |
| Court Costs, Filing Fees and Transcripts | $800.00 |

| | |
|---|---|
| Delivery/Courier | $43.33 |
| Carfare, Travel and Meals | |
| Legal Research | $51.12 |
| Miscellaneous [specify] | |
| Investigator Fee(s) | $37.27 |
| Travel: Airfare/Train | $724.00 |
| Travel: Car rental/taxi/parking | $224.66 |
| Travel: Lodging | $223.51 |
| Travel: Meals | $35.12 |
| Loan Finance Charge(s) | $66.76 |
| **TOTAL** | $2,236.95 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  May 7, 2021

_____
Alyson Oliver

# EXHIBIT 11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :    No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION           :    No. 1:14-cv-04391 (VSB)
  :
*This Relates to the Indirect-Purchaser Actions*    x

———————————————————————— x

**DECLARATION OF FRED T ISQUITH JR IN SUPPORT OF THE INDIRECT
PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD**

I, Fred T. Isquith Jr.  hereby declare and state as follows:

1.      I am the owner of the law firm Isquith Law PLLC. (the "Firm").  I submit this

declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of

Settlement and Attorneys' Fees, Expenses and Service Award.  I have personal knowledge of the

information set forth in this Declaration.

2.      Isquith Law PLLC has prosecuted this litigation solely on a contingent-fee basis,

and has been at risk that it would not receive any compensation for prosecuting claims against

the Defendants.

3.      The attorneys from my Firm, in addition to myself, who have worked on this

Action are Fred T. Isquith Sr, counsel to Isquith Law. Prior to June 20202, Fred Isquith, Sr. was

a partner in Wolf Haldenstein Adler Freeman & Herz, and, among other things, was appointed

Liaison Counsel by this Court. As Counsel to Isquith Law Mr. Isquith Sr. submits time for work

done only starting June 1, 2020. All of his other time in the lawsuit is submitted reflected in the

Wolf Haldenstein Declaration in Support of the Indirect Purchaser Plaintiffs' Motion for Final

Approval of Settlement and Attorneys' Fees, Expenses and Service Award..   Under the direction

1

of Interim Co-Lead Counsel, the Firm undertook the following assignments:  participate in mediations leading to the settlement of this class action; discovery including the review of documents, preparation and attendance at depositions, and participation in discovery meeting and confers. Isquith Law also participated in expert discovery including assisting the expert in gathering data and other information required. Isquith Law was also instructed to participate in the settlement negotiations including all correspondence, mediation sessions, and drafting of mediation material.

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Fred T. Isquith Jr** | 99.7 | $750 | $74,775 |
| | | | |
| **Fred T. Isquith Sr.** | 14.8 | $960 | $14,298 |
| | | | |
| **Total:** | 114.5 | | $89,073 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

5.      The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

nation-wide. I hereby declare under penalty of perjury under the laws of the United States that

the above is true and correct to the best of my knowledge.

Dated:  April  23, 2021

*/s/ Fred T. Isquith Jr.*
Fred T. Isquith Jr.

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :   No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                  :   No. 1:14-cv-04391 (VSB)
                                                      :

*This Relates to the Indirect-Purchaser Actions*       x
———————————————————————————————

**DECLARATION OF MARCUS NEIL BOZEMAN IN SUPPORT OF THE INDIRECT**
**PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**
**AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD**

I, Marcus Neil Bozeman, hereby declare and state as follows:

       1.      I am a partner at the law firm of Bozeman Law Firm, P.A. (the "Firm"). I submit

this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of

Settlement and Attorneys' Fees, Expenses and Service Award. I have personal knowledge of the

information set forth in this Declaration.

       2.      The Firm has prosecuted this litigation solely on a contingent-fee basis, and has

been at risk that it would not receive any compensation for prosecuting claims against the

Defendants.

       3.      I am the only attorney from the Firm who has worked on this action. Under the

direction of Interim Co-Lead Counsel, the Firm undertook the following assignments: Activities

and tasks related to service as Allocation Counsel (57.6 hours); activities and tasks related to

preparation for and defense of the deposition of Named Plaintiff Angus MacDonald (45.2 hours);

activities and tasks related to the production of documents by Named Plaintiffs (Gilmore,

MacDonald), including email searches (13.3 hours); activities and tasks related to summary of

deposition transcripts (10.6 hours); activities and tasks related to general communications with

1

Lead Counsel and Named Plaintiffs (Gilmore, MacDonald) regarding representation & responsibilities, case status, and case outlook (5 hours); activities and tasks related to a Proposed Settlement & communication of potential settlement terms to Named Plaintiffs (Gilmore, MacDonald) (4.8 hours); activities and tasks related to Interrogatories directed to Named Plaintiffs (Gilmore, MacDonald) (3.2 hours); activities and tasks related to review and communications regarding various Case Management Orders (.8 hours).

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for this attorney :[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Marcus Neil Bozeman (Partner) | 140.5 | $500 | $70,250 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

5.      The hourly rate for the attorney at my Firm is the usual and customary hourly rate charged and has been approved by federal and state courts nation-wide.

6.      During the course of this Action, the Firm incurred $1,205.12 in unreimbursed expenses. These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation. The chart below details the expenses incurred by category:

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Case Assessment | |
| Copying, Printing and Scanning | |
| Telephone, Conference Calls and Facsimile | |
| Court Costs, Filing Fees and Transcripts | |
| Delivery/Courier | |
| Carfare, Travel and Meals | $1,205.12 |
| Legal Research | |
| Miscellaneous [specify] | |
| **TOTAL** | $1,205.12 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  May 2, 2021

Marcus Neil Bozeman

3

# EXHIBIT 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :   No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION               :   No. 1:14-cv-04391 (VSB)
                                               :

*This Relates to the Indirect-Purchaser Actions*     x

## DECLARATION OF ARTHUR N. BAILEY, ESQ. IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD

I, Arthur N. Bailey, hereby declare and state as follows:

1.     I am a partner at the law firm of Rupp Baase Pfalzgraf Cunningham, LLC ("RBPC"), (the "Firm"). I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award. I have personal knowledge of the information set forth in this Declaration.

2.     Our firm, RBPC, has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

3.     The attorney from my Firm, in addition to myself, who has worked on this Action is Marco Cercone. Under the direction of Interim Co-Lead Counsel, the Firm undertook the following assignments: obtained documents and purchase data from Plaintiffs relative to the action and in compliance with this Court's discovery demands; ensured Plaintiffs understood and complied with requirements to retain documents and ESI throughout case status; participated in strategy conference calls with Lead Counsel and co-counsel; maintained communications with Plaintiffs in keeping them abreast of case status and strategy therein, including numerous

1

letters/emails, meetings and conferences, both in-person and telephonically; participated in discovery projects; and performed various other tasks, all as assigned by Lead Counsel

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|----------|-------------|-------------|----------|
| **Arthur N. Bailey** (Partner) | 121.5 | $450 | $45,976.50 |
| | | | |
| **Marco Cercone** (Partner) | .3 | $425 | $127.50 |
| | | | |
| **Total:** | 121.8 | | $46,104.00 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

5.      The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

6.      During the course of this Action, the Firm incurred $0.28 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Case Assessment | |
| Copying, Printing and Scanning | $0.28 |
| Telephone, Conference Calls and Facsimile | |
| Court Costs, Filing Fees and Transcripts | |
| Delivery/Courier | |
| Carfare, Travel and Meals | |
| Legal Research | |
| Miscellaneous [specify] | |
| **TOTAL** | $0.28 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  April 22, 2021

Arthur N. Bailey, Esq.

3

# EXHIBIT 14

DocuSign Envelope ID: DBA25099-156B-4BFA-966F-5913F9EFB74C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | No. 1:14-md-02542 (VSB) No. 1:14-cv-04391 (VSB) |
| *This Relates to the Indirect-Purchaser Actions* | |

**DECLARATION OF ZOLL & KRANZ, LLC IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD**

I, Michelle L. Kranz, hereby declare and state as follows:

1.      I am a partner at the law firm of Zoll & Kranz, LLC (the "Firm").  I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award.  I have personal knowledge of the information set forth in this Declaration.

2.      Zoll & Kranz, LLC has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

3.      The attorneys from my Firm, in addition to myself, who have worked on this Action are James G. O'Brien and Carasusana B. Wall.  Under the direction of Interim Co-Lead Counsel, the Firm undertook the following assignments: Document Review training, Initial Document Review as assigned with participation in scheduled Document Review Calls.

1

DocuSign Envelope ID: DBA25099-156B-4BFA-966F-5913F9EFB74C

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Attorney A**<br><br>(Partner) | 18.70 | $350.00 | $6,545.00 |
| | | | |
| **Attorney B** | 5.50 | $350.00 | $1,925.00 |
| | | | |
| **Attorney C** | | | |
| **Paralegal A** | 10.20 | $300.00 | $3,060.00 |
| **Total:** | 34.40 | | $11,530.00 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

5.      The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

6.      During the course of this Action, the Firm incurred $497.83 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

DocuSign Envelope ID: DBA25099-156B-4BFA-966E-5913F0EFB74C

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Case Assessment | |
| Copying, Printing and Scanning | $2.60 |
| Telephone, Conference Calls and Facsimile | $8.64 |
| Court Costs, Filing Fees and Transcripts | |
| Delivery/Courier | |
| Carfare, Travel and Meals | |
| Legal Research | $486.59 |
| Miscellaneous [specify] | |
| **TOTAL** | $497.83 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated: _4/23/2021_____, 2021

Michelle L. Kranz

_____
Michelle L. Kranz, Esq.

# EXHIBIT 15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :    No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION                     :    No. 1:14-cv-04391 (VSB)

                                                       :
*This Relates to the Indirect-Purchaser Actions*      x

———————————————————————— 

## DECLARATION OF PIETRO J. LYNN, ESQ. IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD

I, Pietro J. Lynn, Esq., hereby declare and state as follows:

       1.       I am a partner at the law firm of Lynn, Lynn, Blackman & Manitsky, P.C. (the

"Firm").  I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for

Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award.  I have

personal knowledge of the information set forth in this Declaration.

       2.       Lynn, Lynn, Blackman & Manitsky, P.C. has prosecuted this litigation solely on a

contingent-fee basis, and has been at risk that it would not receive any compensation for

prosecuting claims against the Defendants.

       3.       The attorneys from my Firm, in addition to myself, who have worked on this

Action are Pietro J. Lynn, Esq. and Kristin C. Wright, Esq..  Under the direction of Interim Co-

Lead Counsel, the Firm undertook the following assignments: recruitment of direct and indirect

purchaser plaintiffs, assist with plaintiffs' responses and supplemental responses to discovery

demands, prepare plaintiff for deposition, maintain communications with plaintiffs regarding

status of case, and communications with Interim Co-Lead Counsel regarding status of case.

4.      Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Pietro J. Lynn (Partner)** | 1.8 | 350.00 | 630.00 |
| **Kristin C. Wright (Associate)** | 8.9 | 250.00 | 2,250.00 |
| **Michele Dailey (Paralegal)** | 2.3 | 150.00 | 345.00 |
| **Total:** | 13.0 | | 3,200.00 |

This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm.

5.      The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

6.      During the course of this Action, the Firm did not incur any unreimbursed expenses.

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated:  April 28, 2021

/s/ Pietro J. Lynn
_____
Pietro J. Lynn

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

# EXHIBIT 16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE  :  No. 1:14-md-02542 (VSB)
COFFEE ANTITRUST LITIGATION              :  No. 1:14-cv-04391 (VSB)
                                         :
                                         :
_This Relates to the Indirect-Purchaser Actions_   x

## DECLARATION OF THOMAS P. THRASH IN SUPPORT OF THE INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD

I, Thomas P. Thrash, hereby declare and state as follows:

1.      I am a partner at the law firm of Thrash Law Firm (the "Firm").  I submit this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlement and Attorneys' Fees, Expenses and Service Award.  I have personal knowledge of the information set forth in this Declaration.

2.      Thrash Law Firm has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

3.      The attorneys from my Firm and working with my Firm, in addition to myself, who have worked on this Action are Marcus Bozeman, Sparky Lovelace and Gary Yarborough.  Under the direction of Interim Co-Lead Counsel, the Firm undertook the following assignments: meetings with clients; preparation of initial Complaints; representation of Julie Rainwater and Jennifer Harrison; prepare and obtain discovery responses; obtain document production from clients; assist in computer searches; preparation and review of documents and depositions; preparation for client depositions, prepare clients for depositions, travel and meetings with clients, attend and defend depositions, correspondence and telephone conferences with Carl Malmstrom, Fred Isquith,

1

Sparky Lovelace and Gary Yarborough; review settlement issues and pleadings.

   4.     Not including the time expended in preparing the application for fees and expenses, the table below details the hours billed and the amount billed at current rates for these attorneys and other professionals:[1]

| Attorney | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Attorney**<br><br>Thomas P. Thrash<br>Thrash Law Firm | 46.5 | $850.00 | $39,525.00 |
| **Attorney**<br><br>Marcus Bozeman<br>Thrash Law Firm | 18.4 | $600.00 | $11,040.00 |
| **Attorney**<br><br>Sparky Lovelace<br>Lovelace Law Firm | 24.6 | $850.00 | $20,910.00 |
| **Attorney**<br><br>Gary Yarborough<br>Yarborough Law Firm | 75.8 | $600.00 | $45,480.00 |
| **Paralegal**<br><br>Hayley Nichols<br>Thrash Law Firm | 8.7 | $200.00 | $1,740.00 |
| **Total:** | | | $118,695.00 |

This summary was prepared from daily time records regularly prepared and maintained by my Firm.

---

[1] If the Court wishes, the Firm can provide more detailed time entries describing the work of these attorneys and paralegals, as well as the Firm's expenses.

5.      The hourly rates for the attorneys and professional support staff at my Firm are the usual and customary hourly rates charged and have been approved by federal and state courts nation-wide.

6.      During the course of this Action, the Firm incurred $1,242.38 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Case Assessment | |
| Copying, Printing and Scanning | $997.05 |
| Telephone, Conference Calls and Facsimile | |
| Court Costs, Filing Fees and Transcripts | $165.00 |
| Delivery/Courier/Postage | $8.33 |
| Carfare, Travel | $72.00 |
| Legal Research | |
| Miscellaneous [specify] | |
| **TOTAL** | $1,242.38 |

I hereby declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge.

Dated: May 6, 2021

_____
Thomas P. Thrash

# EXHIBIT 17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN<br>SINGLE-SERVE COFFEE ANTITRUST LITIGATION<br><br>*This Relates to the Indirect-Purchaser Actions* | No. 1:14-md-02542 (VSB)<br>No. 1:14-cv-04391 (VSB) |

**DECLARATION OF GINA M. INTREPIDO-BOWDEN REGARDING**
**NOTICE PLAN AND SETTLEMENT ADMINISTRATION**

I, GINA M. INTREPIDO-BOWDEN, declare and state as follows:

1.      I am a Vice President at JND Legal Administration ("JND"). JND is a legal administration services provider with its headquarters located in Seattle, Washington. JND has extensive experience with all aspects of legal administration and has administered settlements in hundreds of class action cases.

2.      JND is serving as the Claims Administrator in the above-captioned litigation for the purposes of administering the Stipulation of Settlement and Release preliminarily approved by the Court in its Order [granting preliminary approval], dated December 16, 2020, ECF No. 1216, and Stipulated Order Clarifying Preliminary Approval Order, dated December 29, 2020, ECF No. 1218.

3.      I previously filed a Declaration Regarding the Proposed Notice Plan, dated September 30, 2020, ECF No. 1115. This Declaration is being filed to report on the implementation of the Notice Plan and Settlement Administration. It is based on my personal knowledge, as well as upon information provided to me by experienced JND employees, and if called upon to do so, I could and would testify competently thereto.

## NOTICE PLAN SUMMARY

4.      JND administered the Notice Plan that was designed to reach at least 70% of likely Class Members. The Notice Plan included a digital effort with the leading digital network (Google Display Network or "GDN") and the top social media site (Facebook), as well as a print placement in the national edition of *People*, a leading weekly entertainment magazine. Additional notice efforts, including a digital effort with the top business social network (LinkedIn) to extend reach to business entities, an internet search campaign, and the distribution of a national press release in English and Spanish, extended reach further.

5.      JND also established and maintained a Settlement website, mailing address, email address, and toll-free telephone number.

## DIGITAL NOTICE

6.      On January 12, 2021, JND caused the digital effort to launch with GDN and Facebook. The digital effort concluded on March 8, 2021, delivering 301,090,752 impressions to adults 25 years of age or older (Adults 25+) throughout the U.S. and its territories via GDN and Facebook. Overall, the digital effort with GDN and Facebook delivered 9,126,752 impressions more than what was originally planned. A portion of the impressions were allocated to a mix of behavioral and contextual targeting to coffee, tea, and Keurig products on GDN and accounts interested in coffee, tea, or Keurig on Facebook. This effort also included Spanish language digital ads served to Spanish sites through GDN and Spanish language accounts through Facebook.

7.      The digital ads were served across all devices (desktop, laptop, tablet, and mobile), with an emphasis on mobile. Screenshots of the Digital Notices as they appeared on GDN and Facebook are attached as Exhibit A.

## PUBLICATION NOTICE

8.      To supplement the digital notice effort, JND caused a half page Publication Notice to appear in the March 1, 2021 issue of *People* Magazine, which was on-sale beginning February 19, 2021. A copy of the Publication Notice as it appeared in *People* is attached as <u>Exhibit B</u>.

## ADDITIONAL NOTICE EFFORTS

9.      To extend reach to business entities, from January 12, 2021 through March 8, 2021, JND caused 1,689,539 impressions to be displayed on LinkedIn. The LinkedIn ads targeted Office Manager, Facilities Manager, or General Services job titles with Senior, Manager, Director, or VP job seniority.

10.     JND also implemented a digital search effort from January 12, 2021 through March 8, 2021 to assist in directing Class Members to the Settlement website. Overall, 230,262 additional impressions were served when purchased keywords related to this Settlement were searched.

11.     Screenshots of the Digital Notice as it appeared on LinkedIn and the search text ad as it appeared through Google Search is attached as <u>Exhibit C</u>.

12.     On January 12, 2021, JND caused a press release to be distributed to over 15,000 English and Spanish media outlets nationwide. An exact match of the press release was picked up 207 times with a potential audience of 128 million. The press release, as distributed in both English and Spanish, is attached as <u>Exhibit D</u>.

## SETTLEMENT WEBSITE

13.     On January 8, 2021, prior to launching the media campaign, JND established an informational, interactive Settlement website (KeurigIndirectPurchaserSettlement.com) to allow Class Members to obtain more information about the Settlement. The Settlement website hosts

copies of important case documents including downloadable copies of the Long Form Notice in both English and Spanish, the Claim Form, the Third Consolidated Amended Indirect Purchaser Class Action Complaint, the Stipulation of Settlement and Release, the Order [granting Preliminary Approval], and the Stipulation Order Clarifying Preliminary Approval Order; answers to frequently asked questions; key dates; and contact information for the Settlement Administrator. The Settlement website also allows Class Members to submit claims electronically. Representative copies of the Long Form Notice and Claim Form,[1] as they appear on the Settlement website, are attached as Exhibit E.

14.     As of May 6, 2021, the Settlement website has tracked 336,808 unique visitors and 534,930 total views.

### SETTLEMENT TOLL-FREE NUMBER, EMAIL AND POST OFFICE BOX

15.     JND has maintained a dedicated toll-free telephone number (1-833-794-0948) and an email address (info@KeurigIndirectPurchaserSettlement.com) for Class Members to receive information related to the Settlement. The toll-free telephone number provides information about the Settlement in English, with the option to request a Settlement Notice in Spanish, and is available 24 hours/day, seven (7) days a week. As of May 6, 2021, the toll-free line has received 777 incoming calls.

16.     JND has also maintained Post Office Boxes where Class Members may send their Claim Forms and exclusion requests.

---

[1] With the approval of the Special Master, the Claim Form was amended to add an additional information field in March 2021.

**REQUESTS FOR EXCLUSIONS**

17.     The Long Form Notice states that any Class Member who would like to exclude themselves from the Settlement must submit an exclusion request in the form of a letter with the required information by mail to the Settlement Administrator, postmarked by May 14, 2021.

18.     As of May 6, 2021, JND has received no exclusion requests.

**OBJECTIONS**

19.     The Long Form Notice states that any Class Member who would like to object to the terms of the Settlement can file an objection to the Clerk of the Court so that it is filed or postmarked by May 17, 2021.

20.     As of May 6, 2021, there has been one objection to the proposed Settlement.

**CLAIMS RECEIVED**

21.     The Long Form Notice states that any Class Member who wants to receive reimbursement for their qualifying Keurig purchases must submit a completed Claim Form to the Settlement Administrator, postmarked by mail or received online via the Settlement Website, no later than July 15, 2021.

22.     As of May 6, 2021, JND has received a total of 54,996 claims (53,797 online and 1,199 by mail). JND is continuing to receive claims and any submitted supporting documentation.

**REACH**

23.     To calculate reach, JND used MRI | Simmons (MRI)[2] and Comscore, Inc.[3] reach tools. According to these two reputable media reach platforms, the consumer digital effort and the

---

[2] MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. MRI is the leading producer of media and consumer research in the United States.

[3] Comscore's multi-reach platform provides unduplicated audiences across desktop, smartphone, and tablet devices.

notice placement in *People* Magazine reached more than 70% of likely Class Members. The LinkedIn effort to business entities, the internet search campaign, and the distribution of the national press release in English and Spanish extended the reach further. The delivered reach is similar to that of other court approved programs and meets the standard set forth by the Federal Judicial Center.

## NOTICE PLAN CONCLUSION

24.     In my opinion, the Notice Plan provided the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, the due process clause of the United States Constitution, and all applicable court rules; and is consistent with other similar court-approved notice programs. The Notice Plan was designed to effectively reach more than 70% of Class Members and provide them with the opportunity to review a plain language notice with the ability to easily take the next steps to learn more about the Settlement.

## SETTLEMENT ADMINISTRATION FEES AND EXPENSES

25.     JND has performed its responsibilities as set forth in the Stipulation of Settlement and Release, Order [granting preliminary approval], and Stipulated Order Clarifying Preliminary Approval Order. As of March 31, 2021, JND has billed $451,286.43 in Settlement administration and Notice fees and expenses.  JND has not received any payment to date.

26.     JND's current estimate to complete is $460,000 (through March 2022). This estimate is based on the initial estimate in conjunction with estimates for Settlement administration activity changes. These changes include:  the agreed notice plan was larger than initially estimated; additional Claim Form programming was needed to account for the additional complexity of the final Claim Form in addition to the Claim Form field that was added in consultation with the

Special Master in March 2021; based on claims submissions, additional data analysis and project management time will be needed during the claim valuation process including additional time for claim document review; claimant email communications have been consistently higher than expected due to claim form filing assistance; JND's initial estimate for Settlement payment distribution was based on an all-electronic distribution and based on the final Claim Form the distribution will be a combination of electronic and check distribution (including postage); we estimate the Settlement Administration will continue into 2022 (based on the July 2021 claim deadline).

27.     JND will continue to administer the Settlement through all phases of Settlement administration, as required by the Stipulation of Settlement and Release, Order [granting preliminary approval], Stipulated Order Clarifying Preliminary Approval Order, and pursuant to any future Orders of this Court.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 7, 2021 at Philadelphia, Pennsylvania.

_GINA M. INTREPIDO-BOWDEN_

# - EXHIBIT A -


LEGAL NOTICE   Purchasers of **Keurig K-Cup® Portion Packs** may be eligible for a settlement payment from a class action >>>

☰ EXPLORE **Health**                                          🔍   Your Account ▾   |   Login                    SUBSCRIBE

HOME  >  FOOD

# 6 Health Benefits of Coffee, According to a Nutritionist

Iced or hot, coffee has loads of healthy perks.

By **Cynthia Sass, MPH, RD**   |   Updated January 12, 2021





Health

**Health Benefit #1: Coffee could help boost your mood**


**Linked**in Marketing Solutions
Get the steps to launch your first ad campaign on LinkedIn
Learn more

I'm a coffee lover. I love its smell, taste, and the ritual of starting my day with a hot mug or icy glass of java. Even after going caffeine-free several



 EXPLORE **myrecipes**   Your Profile ▾   Login   SUBSCRIBE

HOME | RANKINGS

# The Best Coffee You Can Buy On Amazon, According to Reviews

Try these top-rated picks to find your new favorite coffee blend.

By **Corey Williams** | Updated June 30, 2020

*Each product we feature has been independently selected and reviewed by our editorial team. If you make a purchase using the links included, we may earn commission.*







**LEGAL NOTICE**

Purchasers of **Keurig K-Cup® Portion Packs** may be eligible for a settlement payment from a class action >>>



A CHANGE OF SCENERY IS CLOSER THAN YOU THINK

Save on a Future Pet-Friendly Getaway

BOOK NOW with

MARRIOTT BONV♥Y

38 HOTEL BRANDS. ENDLESS EXPERIENCES.

ADVERTISEMENT



 Home

Share

122

Pop Culture • Perspective

# Finished 'Bridgerton'? Here are 13 other period dramas to binge next.



Hailee Steinfeld plays Emily Dickinson in Apple TV Plus's "Dickinson," which recently returned for its second season. (Apple TV Plus) (Apple TV Plus)

By **Bethonie Butler**
Reporter

Jan. 11, 2021 at 6:00 a.m. EST



LEGAL NOTICE

Purchasers of **Keurig K-Cup® Portion Packs** may be eligible for a settlement payment from a class action >>>









 DESCUBRE 

HOGAR ▸ TELEVISIÓN

# ¡Anuncian nuevos despidos en Univision!

Entre los que abandonan cadena está la periodista cubana Alina Mayo Azze, quien ha sido presentadora de noticias en el canal 23 de Miami durante casi 30 años.

Por **Leonela Taveras** | Enero 12, 2021


FB


Tweet


Más



Tras su reciente cambio de propietarios, la cadena Univision puso en



ANUNCIO

TITULARES DE HOY





DELISH.COM
**Ben & Jerry's Is Releasing A New Line Of Desserts That Are Safe For Dogs To Eat**

👍❤️😮 20                                    1 Comment   4 Shares

👍 Like            💬 Comment            ↪ Share

**Class Action Lawsuit**                          •••

Purchasers of K-Cup® Portion Packs may get a settlement payment from a class action

KEURIGINDIRECTPURCHASERSETTLEMENT.COM        Learn More
**Keurig® Lawsuit**



# - EXHIBIT B -



ROYAL BABY NEWS!

Meghan & Harry

# PREGNANCY JOY AFTER HEARTBREAK

People

March 1, 2021

BLACK · HISTORY
People
2021
MONTH

*Exclusive!*
# Queen Latifah

# Finding Strength & Breaking Barriers

The actor and hip-hop legend on surviving loss and building a lasting legacy: 'These things don't just happen— you make them happen'



**LEGAL NOTICE**

**If you purchased Keurig K-Cup Portion Packs¹ from persons OTHER THAN Keurig, you may be entitled to payment from a class action settlement**

*This Court-Authorized Notice is a summary.*

*For more information visit*
*www.KeurigIndirectPurchaserSettlement.com or call 1-833-794-0948.*

*Para una notificación en español, visite*
*www.KeurigIndirectPurchaserSettlement.com o llame 1-833-794-0948.*

**What Is This Case About?**

The lawsuit alleges that Keurig Green Mountain, Inc. ("Keurig") monopolized or attempted to monopolize and restrained competition in order to raise, fix, maintain, or stabilize the prices of Keurig K-Cup Portion Packs at artificially high levels in violation of certain federal and state laws. Keurig denies the allegations. The Court has not ruled on the merits of the claims.

**Who Is A Class Member?**

All persons or entities who purchased Keurig K-Cup Portion Packs, from persons OTHER THAN Keurig and not for the purpose of resale, (i) in the United States (except Mississippi and Rhode Island) between September 7, 2010, and August 14, 2020; (ii) in Mississippi between March 24, 2011, and August 14, 2020; or (iii) in Rhode Island between July 15, 2013 and August 14, 2020 (collectively, "Settlement Class Members").

**What Does the Settlement Provide?**

Keurig has agreed to pay $31,000,000 into a "Fund" to pay Settlement Class Members who submit a timely and valid claim, after attorneys' fees and costs and other expenses have been deducted. Any remaining funds will be distributed *cy pres* to Consumer Reports. Settlement Class Members give up certain rights to sue Keurig.

**How Do You Get a Payment?**

Go to www.KeurigIndirectPurchaserSettlement.com to file or download a claim form. Claims must be submitted online or postmarked and mailed **no later than July 15, 2021**.

**What Are My Other Options?**

If you do not want to be legally bound by the Settlement, send a request for exclusion **no later than May 14, 2021**. By excluding yourself, you will not receive any money but will keep your right to sue Keurig for the claims in this lawsuit. If you do not exclude yourself, you may object to the Settlement **no later than May 17, 2021**. You will still be bound by the Settlement if your objection is rejected. If you do nothing, you will not receive any benefits, you will be bound by the Settlement and give up certain rights to sue Keurig. For details on how to opt out or object, visit www.KeurigIndirectPurchaserSettlement.com.

**Final Approval Hearing.**

The Court will hold a hearing on June 4, 2021, at 10:00 a.m., Eastern, at the U.S. District Court for the Southern District of New York, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007, or by telephonic or electronic means, to consider whether to approve the Settlement, attorneys' fees up to 33 1/3%, expenses up to $2.82 million, and service awards up to $3,000 per Class Representative. You or your attorney may ask to appear at the hearing at your own expense, but you don't have to. The Final Approval Hearing is subject to change.

**For More Information.**

Visit www.KeurigIndirectPurchaserSettlement.com, write to Keurig Indirect Purchasers Antitrust Settlement, c/o JND Legal Administration, P.O. Box 91382, Seattle, WA 98111 or at info@KeurigIndirectPurchaserSettlement.com, or call toll-free 1-833-794-0948. You may also contact Class Counsel at www.kaplanfox.com, www.whafh.com, www.pswlaw.com, access the court docket through the Court's PACER System at https://ecf.nysd.uscourts.gov, or visit the Clerk of the Court's office, U.S. Courthouse, 500 Pearl Street, New York, NY 10007.

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE.**

¹ Keurig K-Cup Portion Pack means single-serve beverage portion packs manufactured or licensed by Keurig that are compatible with Keurig brewers. A Portion Pack manufactured or licensed by Keurig will generally display the Keurig brand name or logo on the packaging.

www.KeurigIndirectPurchaserSettlement.com    1-833-794-0948



Tulloch and Hoechlin

## CW | Superman & Lois

FANTASY In this latest addition to the CW Arrowverse, Clark Kent/Superman (Tyler Hoechlin) and wife Lois Lane (Elizabeth Tulloch) are the parents of two teens, one a popular jock (Jordan Elsass), the other a brooder (Alexander Garfin) who suffers from social anxiety. In the premiere, they all head back to Clark's hometown, Smallville, where everyone's bogged down by economic and social woes. This inspired series reconceives a timeless American superhero for a *Hillbilly Elegy* age. *(Feb. 23, 8 p.m.)*

## MOVIE | Land

DRAMA Robin Wright, who also directed, plays Edee, a woman who retreats to a remote mountain cabin after tragedy has split her life into an unbridgeable before and after. It's not clear at first whether Edee will survive up there, but the movie—with great gentleness—slowly allows her to forge a new connection to the world. *(In theaters, PG-13)*



FROM TOP: DEAN BUSCHER/THE CW; DANIEL POWER/FOCUS FEATURES

# - EXHIBIT C -





| keurig k-cup antitrust | ✕  🎤  🔍 |
|---|---|

🔍 All    📰 News    🛍 Shopping    🖼 Images    ▶ Videos    ⋮ More          Settings    Tools

About 211,000 results (0.53 seconds)

Ad · keurigindirectpurchasersettlement.com ▾

### Keurig K-Cup® Purchasers | Class Action Settlement

If you bought K-Cup® Portion Packs, you may be eligible for a settlement payment.

www.lexology.com › library › detail ▾

### In Long-Awaited Opinion, Court Rules That Keurig Must Face ...

May 15, 2019 — ... explained his reasoning for allowing a consolidated **antitrust** suit to... ...
**coffee** "cups" that are compatible with **Keurig's** single-serve brewer.

topclassactions.com › consumer-products › beverages › k...

### Keurig Settles Single-Serving Coffee Pods Class Action ...

Oct 1, 2020 — Plaintiffs in the **Keurig** single-serve **coffee** class action lawsuits claim ... is In re:
**Keurig** Green Mountain Single-Serve **Coffee Antitrust** Litigation, ...

| People also ask |  |
|---|---|
| Why does my Keurig not recognize K cup? | ⌄ |
| Can you use off brand K Cups in Keurig? | ⌄ |
| How do I put the K cup in my Keurig? | ⌄ |
| Is K cup the same as Keurig? | ⌄ |

- EXHIBIT D -

# If you purchased Keurig K-Cup Portion Packs from persons other than Keurig, you may be entitled to payment from a class action settlement

Deutschland - Deutsch ▾

NEWS PROVIDED BY
**JND Legal Administration →**
Jan 12, 2021, 09:12 ET

SEATTLE, Jan. 12, 2021 /PRNewswire/ -- A Settlement has been reached in a class action lawsuit called *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, MDL No. 2542, Master Docket No. 1:14-md-02542-VSB-SLC, Civil Action No. 1:13-03790-VSB-SLC, pending in the United States District Court for the Southern District of New York. The lawsuit alleges that Keurig Green Mountain, Inc. ("Keurig") monopolized or attempted to monopolize and restricted, restrained, foreclosed, and excluded competition in order to raise, fix, maintain, or stabilize the prices of Keurig K-Cup Portion Packs (single-serve beverage portion packs manufactured or licensed by Keurig that are compatible with Keurig brewers and generally displays the Keurig brand name or logo on the package) at artificially high levels in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and various state antitrust, unfair competition, consumer protection, unjust enrichment, and other laws.  Keurig denies the allegations.  The Court has not ruled on the merits of the claims.

**Who Is A Class Member?** All individuals and entities that purchased Keurig K-Cup Portion Packs in the United States and its territories, from persons other than Keurig and not for the purpose of resale, during the period September 7, 2010, to August 14, 2020 (except for claims

under Mississippi —which are for purchases during the period from March 24, 2011, to August 14, 2020, and for purchases in Rhode Island —which are for purchases from July 15, 2013, to August 14, 2020) (collectively, the "Settlement Class Members").

**What Are The Terms of the Settlement?**  Keurig has agreed to pay $31 million into a "Settlement Fund" as described in the Stipulation of Settlement and Release ("Settlement Agreement").  The Settlement Fund will be used to pay Settlement Class Members who submit a timely and valid claim, after attorneys' fees and costs and other expenses have been deducted.  Settlement Class Members will give up certain rights to sue Keurig.  Any uncashed checks or amounts remaining in the Settlement Fund after payments are made to Settlement Class Members will be distributed *cy pres* to Consumer Reports.

**How Do You Get a Payment?**  Go to www.KeurigIndirectPurchaserSettlement.com to file or download the notice and a claim form.  Claims must be submitted online or postmarked and mailed **no later than July 15, 2021.**

**What Are My Other Options?**  If you do not want to be legally bound by the Settlement, you may send a request for exclusion **no later than May 14, 2021**.  If you exclude yourself, you will not receive any money, but you will keep your right to sue Keurig for the claims in the Actions as specified in the Settlement Agreement.  If you do not exclude yourself, you may object to the Settlement by writing to the Court explaining why you do not like the Settlement or the attorneys fees **no later than May 17, 2021**.  You will still be bound by the Settlement if your objection is rejected.  If you do nothing, you will not receive any Settlement benefits; you will be bound by the Settlement; and you will give up certain rights to sue Keurig. For details on how to opt out or object, please read the long form notice available at www.KeurigIndirectPurchaserSettlement.com.

**Final Approval Hearing.**  The Court will hold a hearing on June 4, 2021, at 10:00 a.m., Eastern,, at the U.S. District Court for the Southern District of New York, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007, or by telephonic or electronic means, to consider whether to approve the Settlement, attorneys' fees, expenses, and Class Representative service awards as detailed in the Notice.  You or your attorney may ask to appear and speak at the hearing at your own expense, but you don't have to.  The Final Approval Hearing date may change, so check the Settlement website regularly.

**For More Information.**  Visit www.KeurigIndirectPurchaserSettlement.com, write Keurig Indirect Purchasers Antitrust Settlement, c/o JND Legal Administration, P.O. Box 91382**,** Seattle, WA 98111. or call toll-free 1-833-794-0948.  Class Counsel can also be contacted at www.kaplanfox.com, www.whafh.com, www.pswlaw.com, access the court docket through the Court's PACER System at https://ecf.nysd.uscourts.gov, or visit the office of the Clerk of the Court for the U.S. District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY 10007.

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE.**

SOURCE JND Legal Administration

Related Links

http://www.KeurigIndirectPurchaserSettlement.com

# Si compró paquetes de cápsulas Keurig K-Cup de personas que no eran de Keurig, puede tener derecho a recibir un pago por un acuerdo de demanda colectiva

USA - español ▾

NEWS PROVIDED BY

**JND Legal Administration →**

Jan 12, 2021, 09:12 ET

SEATTLE, 12 de enero de 2021 /PRNewswire-HISPANIC PR WIRE/ -- Se ha llegado a un acuerdo en una demanda colectiva denominada *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (Asunto: Litigio antimonopolio de café de una sola porción de Keurig Green Mountain), MDL N.° 2542, Expediente maestro N.° 1:14-md-02542-VSB-SLC, Acción Civil N.° 1:13-03790-VSB-SLC, pendiente en el Tribunal de Distrito de los Estados Unidos del Distrito Sur de Nueva York. En la demanda se alega que Keurig Green Mountain, Inc. ("Keurig") monopolizó, o intentó monopolizar, y restringió, limitó y excluyó la competencia con el fin de aumentar, fijar, mantener o estabilizar los precios de los paquetes de porciones Keurig K-Cup (paquetes de cápsulas de bebida de una sola porción fabricados por Keurig o con licencia de dicha empresa que son compatibles con las cafeteras Keurig y que generalmente presentan la marca o el logotipo de Keurig en el paquete) a niveles artificialmente altos en violación de las Secciones 1 y 2 de la Ley Sherman, Código de los Estados Unidos 15, Secciones 1 y 2, Sección 3 de la Ley Clayton, Código de los Estados Unidos 15, Sección 14, y varias leyes estatales antimonopolio, contra la competencia desleal, de protección al consumidor, contra el enriquecimiento ilícito y otras leyes.  Keurig niega las acusaciones.  El Tribunal no se ha pronunciado respecto del valor de las acusaciones.

**¿Quién es miembro de la demanda colectiva?** Todas las personas y entidades que compraron paquetes de cápsulas Keurig K-Cup en los Estados Unidos y sus territorios de personas que no sean de Keurig y que no los vendieran con el propósito de reventa, durante el período del 7 de septiembre de 2010 al 14 de agosto de 2020 (excepto para reclamos en la jurisdicción de Misisipi, que son por compras efectuadas durante el período del 24 de marzo de 2011 al 14 de agosto de 2020, y para la jurisdicción de Rhode Island, donde las compras deben haberse realizado del 15 de julio de 2013 al 14 de agosto de 2020) (colectivamente, los "Miembros del acuerdo de demanda colectiva").

**¿Cuáles son los términos del acuerdo?** Keurig ha aceptado pagar $31 millones a un "Fondo del acuerdo" como se describe en la Estipulación de acuerdo y finiquito ("Acuerdo"). El Fondo del acuerdo se utilizará para pagarles a los Miembros del acuerdo de demanda colectiva que presenten un reclamo válido y oportuno, después de pagar los costos y honorarios de abogados y de deducir otros gastos. Los Miembros del acuerdo de demanda colectiva renunciarán a ciertos derechos a demandar a Keurig. Los cheques no cobrados o los importes que queden en el Fondo del acuerdo después de que se realicen todos los pagos a los Miembros del acuerdo de demanda colectiva se distribuirán según lo que decida Consumer Reports.

**¿Cómo recibo el pago?** Visite www.KeurigIndirectPurchaserSettlement.com para realizar la presentación o descargar la notificación y el formulario de reclamo. Los reclamos deben presentarse en línea o enviarse por correo **antes del 15 de julio de 2021, o con matasellos anterior a dicha fecha.**

**¿Qué otras opciones tengo?** Si no desea estar legalmente obligado por el Acuerdo, puede enviar una solicitud de exclusión **antes del 14 de mayo de 2021**. Si se excluye, no recibirá dinero, pero conservará su derecho a demandar a Keurig por reclamos de las Acciones según se especifica en el Acuerdo. Si no se excluye, puede interponer una objeción al Acuerdo por escrito ante el Tribunal explicando por qué se opone al Acuerdo o a los honorarios de los abogados **antes del 17 de mayo de 2021**. Si se rechaza su objeción, usted seguirá legalmente obligado por el Acuerdo. Si no hace nada, no recibirá ningún beneficio del Acuerdo; estará legalmente obligado por el Acuerdo y renunciará a ciertos derechos a demandar a Keurig. Para conocer detalles sobre cómo excluirse o presentar una objeción, lea la versión completa de la notificación en www.KeurigIndirectPurchaserSettlement.com.

**Audiencia de aprobación definitiva.**  El Tribunal celebrará una audiencia el 4 de junio de 2021 a las 10:00 a. m., hora del Este, en el Tribunal de Distrito de EE. UU. del Distrito Sur de Nueva York, Thurgood Marshall US Courthouse, 40 Foley Square, Nueva York, NY 10007, o por medios telefónicos o electrónicos, para considerar si aprueba el Acuerdo, los honorarios de los abogados, los gastos y las adjudicaciones de servicios del Representante del grupo según se detalla en la Notificación.  Usted o su abogado pueden solicitar comparecer y hablar en la audiencia a su cargo, pero no es obligatorio.  La fecha de la Audiencia de aprobación definitiva puede cambiar, por lo que debe consultar el sitio web del Acuerdo con regularidad.

**Para obtener más información.**  Visite www.KeurigIndirectPurchaserSettlement.com, escriba a Keurig Indirect Purchasers Antitrust Settlement, c/o JND Legal Administration, P.O. Box 91382**,** Seattle, WA 98111. o llame sin cargo al 1-833-794-0948.  También puede comunicarse con los abogados de la demanda colectiva en www.kaplanfox.com, www.whafh.com, www.pswlaw.com, acceder a la lista de expedientes del Tribunal a través del Sistema PACER en https://ecf.nysd.uscourts.gov o visitar la oficina del secretario del Tribunal de Distrito de los Estados Unidos del Distrito Sur de Nueva York, Daniel Patrick Moynihan, U.S. Courthouse, 500 Pearl Street, New York, NY 10007.

**NO SE COMUNIQUE CON EL TRIBUNAL NI CON LA OFICINA DEL SECRETARIO DEL TRIBUNAL.**

FUENTE JND Legal Administration

Related Links

http://www.KeurigIndirectPurchaserSettlement.com

SOURCE JND Legal Administration

/

# - EXHIBIT E -

<span style="text-align:center">UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK</span>

**If you bought Keurig K-Cup Portion Packs[1] from persons OTHER THAN Keurig and not for the purpose of resale, (i) between September 7, 2010, and August 14, 2020, in the United States (except Mississippi and Rhode Island); (ii) between March 24, 2011, and August 14, 2020, in Mississippi; or (iii) between July 15, 2013, and August 14, 2020, in Rhode Island, you may be entitled to payment from a class action settlement.**

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

*Para una notificación en español, visite www.KeurigIndirectPurchaserSettlement.com o llame 1-833-794-0948.*

- Keurig Green Mountain, Inc. ("Keurig") has agreed to pay $31 million (the "Settlement Amount") into a fund (the "Fund") to fully settle and release claims of all persons in the United States and its territories who purchased, from persons OTHER THAN Keurig and not for the purpose of resale, Keurig K-Cup Portion Packs during the time period set forth above, as described in the settlement agreement ("Settlement").

- The Fund will be used to pay Settlement Class Members who send in a valid Claim Form; an attorneys' fee award not to exceed 33 1/3% of the Settlement Amount and to be determined by the Court; any incentive awards, not to exceed $3,000 for each Class Representative and to be determined by the Court; and litigation costs, not to exceed $ 2.82 million plus any additional costs of settlement claims administration. If there are any uncashed checks or amounts remaining in the Fund after payments to Settlement Class Members, attorneys' fees, incentive awards, litigation costs and settlement claims administration costs are made, that money will be distributed *cy pres* to Consumer Reports, an independent, nonprofit organization that works side by side with consumers to create a safe, fair, and transparent marketplace.

- The Settlement resolves a lawsuit alleging that Keurig monopolized or attempted to monopolize and restricted, restrained, foreclosed, and excluded competition in order to raise, fix, maintain, or stabilize the prices of Keurig K-Cup Portion Packs at artificially high levels in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and various state antitrust, unfair competition, consumer protection, unjust enrichment, and other laws.

- The two sides disagree on whether Plaintiffs and the Settlement Class could have prevailed at trial. Keurig continues to deny all of Plaintiffs' allegations and, by entering into the Settlement, Keurig has not conceded the truth or validity of any of the claims against it.

- Your legal rights are affected whether you act or don't act.  Read this Notice carefully.

---

[1] Keurig K-Cup Portion Packs means single-serve beverage portion packs manufactured or licensed by Keurig that are compatible with Keurig brewers.  A Portion Pack manufactured or licensed by Keurig will generally display the Keurig brand name or logo on the package.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | If you submit a valid Claim Form by July 15, 2021, and the claim is accepted, you may be eligible to receive a cash refund in the form of electronic payment or a check and will give up certain rights to sue Keurig. |
| **EXCLUDE YOURSELF** | This is the only option that allows you to sue Keurig on your own regarding the legal claims in this case, but you will not receive compensation under the Settlement. The deadline for excluding yourself is May 14, 2021. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. The deadline for objecting is May 17, 2021. |
| **DO NOTHING** | If you do nothing, you will receive no money from the Settlement, but you will still be bound by the Settlement and you will give up certain rights to sue Keurig. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Compensation will be issued if the Court approves the Settlement and after appeals are resolved, if any. Please be patient.

## BASIC INFORMATION

**1. Why was this Notice issued?**

This Notice was issued because a Court has preliminarily certified this case as a class action lawsuit for settlement purposes only and your rights may be affected. If you bought Keurig K-Cup Portion Packs from someone other than Keurig and not for the purpose of resale (i) between September 7, 2010, and August 14, 2020, in the United States (except Mississippi and Rhode Island); (ii) between March 24, 2011, and August 14, 2020, in Mississippi; or (iii) between July 15, 2013, and August 14, 2020, in Rhode Island, you may have legal rights and options in this case. This Notice explains all of your rights in detail below. Judge Vernon S. Broderick of the United States District Court for the Southern District of New York is overseeing this class action. The case is known as *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,* MDL No. 2542, Master Docket No. 1:14-md-02542-VSB-SLC, Civil Action No. 1:13-03790-VSB-SLC. The people who sued are called the Plaintiffs. The company they sued, Keurig Green Mountain, Inc., is called the Defendant or Keurig.

2

**2. Why is this a class action?**

In a class action, one or more people, called "Class Representatives" (in this case, Wasif Bala, Yelda Mesbah Bartlett, Lavinia Simona Biasell, Linda Bouchard, Bouchard & Sons Garage, Inc., Luke Cuddy, Jonna Dugan, Erin Dunbar, Larry Gallant, Denise Gilmore, Patricia Hall, Jennifer Harrison, Teena Marie Johnson, Lori Jo Kirkhart, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, John Lohin, Angus Macdonald, Edgar Medina, Jennifer Mileikowsky, Brier Miller Minor, David W. Nation, Patricia J. Nelson, Julie Rainwater, Betty Ramey, Lauren Jill Schneider, Shirley Anne Schroeder, Jason and Amy Stratman, and Toni Williams (collectively, "Plaintiffs")), sue on behalf of all people who have similar claims. Together, these people are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class. Here, the Court has certified a class action for settlement purposes only. More information about why this is a settlement class action can be found in the Court's Order Granting Indirect Purchaser Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Claims Administrator and Class Notice Plan, which is available at www.KeurigIndirectPurchaserSettlement.com.

**3. Why is there a Settlement?**

The Court did not decide in favor of Plaintiffs or Keurig. Plaintiffs think they would have prevailed at trial. Keurig thinks the Plaintiffs would not have won anything at a trial. But there was no trial. Instead, both sides agreed to this Settlement. That way, they avoid the risk and cost of a trial, and the Settlement Class Members will receive compensation. The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

## THE CLAIMS IN THE LAWSUIT

**4. What is the lawsuit about?**

The lawsuit has been pending since 2014 (the "Action"). It claims that Keurig monopolized or attempted to monopolize and restricted, restrained, foreclosed, and excluded competition in order to raise, fix, maintain, or stabilize the prices of Keurig K-Cup Portion Packs at artificially high levels in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and various state antitrust, unfair competition, consumer protection, unjust enrichment, and other laws. More information can be found in the Third Consolidated Amended Indirect Purchaser Class Action Complaint, available at www.KeurigIndirectPurchaserSettlement.com.

## MEMBERS OF THE SETTLEMENT CLASS

**5. How do I know if I am a part of the Settlement Class?**

The Court has certified this case for settlement purposes only as a class action. The class (the "Settlement Class") is defined as:

> All individuals and entities in the United States and its territories that purchased, from persons other than Keurig and not for resale, Keurig K-Cup Portion Packs during the period September 7, 2010, to August 14, 2020 (except for claims under Mississippi law—which are for purchases during the period from March 24, 2011, to August 14, 2020—and Rhode Island Law—which are for purchases from July 15, 2013, to August 14, 2020).

Excluded from the Settlement Class are Keurig and its predecessors, subsidiaries, parents, affiliates, joint venturers, and their directors and executive officers, and parties to any supply, retail, or distribution contracts with Keurig relating to Keurig K-Cup Portion Packs or Keurig brewers, as well as all federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, any judge or jurors assigned to this case, the Hon. Joseph J. Farnan, Jr. (Ret.), who served as a mediator in this case and any class member who excludes themselves as set forth in Question 14.

The "Settlement Class Period" is defined as September 7, 2010, to August 14, 2020, inclusive, for purchases in the United States (excluding Mississippi and Rhode Island). For purchases in Mississippi, the Settlement Class Period is defined March 24, 2011, to August 14, 2020, inclusive.  For purchases in Rhode Island, the Settlement Class Period is defined as July 15, 2013, to August 14, 2020, inclusive.

## THE SETTLEMENT BENEFITS

**6. What does the Settlement provide?**

Keurig has agreed to pay $31,000,000 in a non-reversionary fund in full and complete settlement and release of all claims of Plaintiffs and the Settlement Class Members, as described in the Settlement. The Fund will be used to pay Settlement Class Members who send in a valid Claim Form, after attorneys' fees, settlement and class administration costs, and other expenses have been deducted.  You cannot receive compensation unless you submit a Claim Form as set forth below.

The value of any claim will be based on the location of the purchase of the Keurig K-Cup Portion Pack and any proof of purchase.  In accordance with the Plan of Allocation, the value of a claim will be calculated by the following matrix:

| | For Purchases Made in Repealer States or Territories[2] | For Purchases Made in Non-Repealer States or Territories[3] | For Purchases Made in Florida or Illinois |
|---|---|---|---|
| Proof of Purchase of Keurig K-Cup Portion Pack from a person other than Keurig Submitted with Proof of Claim | 100% of claim | 7.5% of claim | 33 1/3% of claim |

---

[2] The following are Repealer States or Territories:  Arizona, Arkansas, California, District of Columbia, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin and Guam.

[3] The following are Non-Repealer States or Territories: Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kentucky, Louisiana, Maryland, Montana, New Jersey, Ohio, Oklahoma, Pennsylvania, South Carolina, Texas, Virginia, Washington, Wyoming, American Samoa, Puerto Rico, the Northern Mariana Islands, and the U.S. Virgin Islands.

| | For Purchases Made in Repealer States or Territories[2] | For Purchases Made in Non-Repealer States or Territories[3] | For Purchases Made in Florida or Illinois |
|---|---|---|---|
| No Proof of Purchase of Keurig K-Cup Portion Pack, but Proof of Purchase of Keurig Brewer Submitted with Proof of Claim | 50% of claim with a 7,300-cup/12 mo. cap | 3.75% of claim with a 7,300-cup/12 mo. cap | 16 2/3% of claim with a 7,300-cup/12 mo. cap |
| No Proof of Purchase of Keurig K-Cup Portion Pack or Keurig Brewer Submitted with Proof of Claim | 10% of claim with a 550-cup/12 mo. cap | 0.75% of claim with a 550-cup/12 mo. cap | 3 1/3% of claim with a 550-cup/12 mo. cap |

Each Settlement Class Member who submits a valid Claim Form will receive its pro rata share of the Fund, after attorneys' fees, settlement and class administration costs, and other expenses have been deducted, based on the value of its claim against all claims submitted (a "Settlement Award"). However, any claim whose value is less than the cost to transmit payment will not be paid.

Settlement Class Counsel will ask the Court to approve an award of up to 33 1/3% of the Settlement Amount to them for attorneys' fees, up to $2.82 million for expenses plus additional costs of settlement administration, up to $3,000 to each Class Representative who was deposed in the Action, and up to $1,500 to the remaining Class Representatives.

Settlement Class Counsel, at appropriate times, will ask the Court to award settlement and class administration costs, including the cost of notice to the Settlement Class. Settlement Class Counsel presently estimates that the cost will not exceed $625,000.

If there are any uncashed checks or amounts remaining in the Fund after Settlement Awards are issued to Settlement Class Members, that money will be distributed *cy pres* to Consumer Reports, an independent, nonprofit organization that works side by side with consumers to create a safe, fair, and transparent marketplace.

## 7. How much will my payment be?

Your share of the Fund will depend on the value of your claim. The value of your claim will be based on the location of the purchase of the Keurig K-Cup Portion Pack and any proof of purchase. The matrix set forth in Part 6 above will be used to value your claim. If you submit a valid Claim Form, you will receive your pro rata share of the Fund, after attorneys' fees, settlement and class administration costs, and other expenses have been deducted, based on the value of your claim against all claims submitted. However, if the value of your claim is less than the cost to transmit payment, you will not be paid.

## 8. What am I giving up to stay in the Settlement Class?

Unless you exclude yourself from the Settlement, you will be part of the Settlement Class, and you will be bound by the release of claims in the Settlement. This means that, if the Settlement is approved, you cannot sue, continue to sue, or be part of any other lawsuit against Keurig asserting a released claim. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the Claim Form or do

nothing, you will agree to release Keurig from any and all claims under federal and state law that arise from the allegations in this Action.

## THE LAWYERS REPRESENTING YOU

| 9. Do I have a lawyer in this case? |
| --- |

Yes. The Court has appointed the law firms of Kaplan Fox & Kilsheimer LLP, 850 Third Avenue, 14th Floor, New York, NY 10022; Pearson, Simon & Warshaw, LLP, 15165 Ventura Blvd., Suite 400, Sherman Oaks, CA 91403; and Wolf Haldenstein Adler Freeman & Herz LLP, 270 Madison Avenue, New York, NY 10016, as Settlement Class Counsel to represent you and the Settlement Class in this case. These lawyers have experience handling similar cases. More information about these lawyers and their law firms is available at www.kaplanfox.com, www.pswlaw.com, and www.whafh.com.

| 10. Should I get my own lawyer? |
| --- |

You do not need to hire your own lawyer because Settlement Class Counsel is representing you and all the other members of the Settlement Class. If you want someone other than Settlement Class Counsel to speak for you, you may hire your own lawyer at your own expense.

| 11. How will the lawyers be paid? |
| --- |

Settlement Class Counsel will ask the Court to approve payment of up to 33 1/3% of the Settlement Amount to them for attorneys' fees and up to $2.82 million to reimburse them for expenses incurred including experts' fees, and  plus additional costs of settlement administration. The fees would pay Settlement Class Counsel for litigating this case, including investigating the facts, engaging in motion practice and  discovery, and negotiating the Settlement, since 2014 without any payment.  The Court may award less than these amounts. Attorneys' fees and expenses awarded by the Court will be payable upon the Court's award notwithstanding the existence of any objection to the Settlement, but subject to Settlement Class Counsel's obligation to refund or repay the Settlement Fund if the settlement is ultimately not approved.

## HOW TO APPLY FOR COMPENSATION

| 12. How can I get compensation under the Settlement? |
| --- |

To qualify for compensation under the Settlement, you must submit a Claim Form by no later than **July 15, 2021**. You may submit a hard-copy Claim Form by mail or overnight courier. You may submit a Claim Form online at www.KeurigIndirectPurchaserSettlement.com. A Claim Form is available to download and print at www.KeurigIndirectPurchaserSettlement.com. Read the instructions carefully, fill out the form, sign it, and transmit it. If sent by mail, it must be postmarked no later than **July 15, 2021**.

The Claim Form must be signed by you under penalty of perjury (either by hand or, if you submit it online, electronically), affirming that you are a qualified member of the Settlement Class and that the information provided therein is true and accurate to the best of your knowledge.

**13. When would I receive compensation?**

Before payments can be sent, the Court will hold a hearing on June 4, 2021 at 10:00 a.m., Eastern, to decide whether to approve the Settlement, which is called the Final Approval Hearing. If the Court approves the Settlement, after that, it takes time to process the claims and there may be delays.  Everyone who sends in a Claim Form will be informed of the progress of the Settlement through information posted at www.KeurigIndirectPurchaserSettlement.com. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**14. How do I get out of the Settlement?**

If you do not want a Settlement Award under this Settlement, and you want to keep the right to sue or continue to sue Keurig regarding its alleged anti-competitive practices that are the subject of the Action, then you must take steps to get out of the Settlement Class. This is called excluding yourself from, or opting out of, the Settlement Class.

To exclude yourself from the Settlement, you must send a letter by mail to the Claims Administrator that (a) states your name, address, and telephone number; (b) an estimate of the approximate number of Keurig K-Cup Portion Packs you purchased during the Settlement Class Period; (c) is personally signed by you, and not your attorney or anyone acting on your behalf; and (d) includes the statement "I/we request to be excluded from the indirect purchaser class settlement in *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation, MDL No. 2542, Master Docket No. 1:14-md-02542-VSB-SLC, Civil Action No. 1:13-03790-VSB-SLC."*  No request for exclusion will be valid unless all of the information described above is included.

You must mail your exclusion request postmarked no later than May 14, 2021 to the Claims Administrator at the following address: Keurig Indirect Purchasers Antitrust Settlement (Exclusions) c/o JND Legal Administration, P.O. Box. 91383, Seattle, WA 98111.

**15.  If I do not exclude myself, can I sue Defendant for the same thing later?**

No. If you do not exclude yourself, you give up any right to sue (or continue to sue) Keurig for the claims that this Settlement resolves.

**16.  If I exclude myself, can I get compensation under this Settlement?**

No. If you ask to be excluded, you will not get any compensation under the Settlement, and you cannot object to the Settlement.

## OBJECTING TO THE SETTLEMENT, ATTORNEYS' FEES, OR THE PLAN OF ALLOCATION

**17.  How do I tell the Court that I do not agree with the Settlement?**

You can ask the Court to deny approval of the Settlement, the Attorneys' Fees or the Plan of Allocation by filing an objection. You can't ask the Court to order a different Settlement; the Court can only approve or

reject the Settlement. If the Court denies approval, no Settlement Awards will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*In re:  Keurig Green Mountain Single-Serve Coffee Antitrust Litigation, This Relates to the Indirect Purchaser Actions,* MDL No. 2542, Master Docket No. 1:14-md-02542-VSB-SLC, Civil Action No. 1:13-03790-VSB-SLC.), (b) be submitted to the Court either by mailing them to the Clerk, United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY 10007, or by filing them in person at any location of the United States District Court for the Southern District of New York, and (c) be filed or postmarked on or before May 17, 2021.

Written objections must also contain: (1) your full name, address and telephone number; (2) a written statement of all grounds for the objection accompanied by any legal support for the objection; (3) copies of any papers, briefs, or other documents upon which the objection is based; (4) a list of all persons who will be called to testify in support of the objection (if any); (5) a statement of whether you intend to appear at the Final Approval Hearing; (6) proof of membership in the Settlement Class; (7) a list of all objections filed by the you or your counsel (if any) to class action settlements in the last ten years; and (8) your signature and your attorney's signature (if any).

| **18.  What is the difference between objecting and excluding myself from the Settlement?** |
| --- |

Objecting means you are telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself from the Settlement means that you do not want to be part of the Settlement Class. If you exclude yourself, then you have no basis to object to the Settlement.

## IF YOU DO NOTHING

| **19.  What happens if I do nothing at all?** |
| --- |

If you do nothing, you will remain a member of the Settlement Class, and you will give up your rights to sue Keurig. However, you will not receive any compensation, because you must submit a Claim Form in order to receive compensation under this Settlement.

## THE COURT'S FINAL APPROVAL HEARING

| **20.  When and where will the Court decide whether to approve the Settlement?** |
| --- |

The Court will hold a Final Approval Hearing at 10:00 a.m., Eastern, on June 4, 2021,[4] at the United States District Court for the Southern District of New York, Thurgood Marshall United States Courthouse, 40 Foley Square, Courtroom 518, New York, NY 10007, or by telephonic or electronic means. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are valid objections that comply with the requirements in Part 17 above, the Court also will consider them and will listen to

---

[4]   The hearing date may change without further notice. Check the settlement website www.KeurigIndirectPurchaserSettlement.com for updates.

people who have asked to speak at the hearing. The Court may also decide how much to pay to Settlement Class Counsel and the Class Representatives.

The date of the Final Approval Hearing may change without further notice to the Settlement Class. Settlement Class Members should check the Settlement Website, www.KeurigIndirectPurchaserSettlement.com or the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.nysd.uscourts.gov to confirm that the date has not been changed.

| **21.  Do I have to come to the Final Approval Hearing?** |
|---|

No. Settlement Class Counsel will appear on behalf of the Settlement Class. But, you are welcome to come or have your own lawyer appear, at your own expense.

| **22.  May I speak at the Final Approval Hearing?** |
|---|

You or any lawyer you retain may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your objection to the Settlement a statement saying that it is your intent to appear at the Final Approval Hearing. Your objection and notice of intent to appear must be submitted to the Court and postmarked no later than May 17, 2021. You cannot speak at the hearing if you excluded yourself from the Settlement.

## GETTING MORE INFORMATION

| **23.  Is this the entire Notice of the Settlement?** |
|---|

No. This notice is only a summary of the proposed Settlement. More information about the lawsuit and the precise terms and conditions of the Settlement is available at www.KeurigIndirectPurchaserSettlement.com, or by calling toll-free 1-833-794-0948, or by writing to JND Legal Administration the Claims Administrator, at Keurig Indirect Purchasers Antitrust Settlement c/o JND Legal Administration, P.O. Box 91382, Seattle, WA 98111 or via e-mail at info@KeurigIndirectPurchaserSettlement.com, or by accessing the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.nysd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY 10007, between 9:00  a.m. and 1:00 p.m.[5] Monday through Friday, excluding Court holidays, or by contacting Settlement Class Counsel at the information listed immediately below.

| Kaplan Fox & Kilsheimer LLP | Wolf Haldenstein Adler Freeman & Herz LLP | Pearson Simon & Warshaw, LLP |
|---|---|---|
| Robert N. Kaplan | Mark Rifkin | Clifford H. Pearson |
| Gregory K. Arenson | Thomas Burt | Daniel L. Warshaw |
| Hae Sung Nam | 270 Madison Avenue | Matthew A. Pearson |
| Jason Uris | New York, NY 10016. | 15165 Ventura Blvd., Suite 400 |
| 850 Third Avenue, 14th Floor | (212) 545-4600 | Sherman Oaks, CA 91403 |
| New York, NY 10022 | rifkin@whafh.com | (818) 788-8300 |
| (212) 687-1980 | burt@whafh.com | cpearson@pswlaw.com |
| rkaplan@kaplanfox.com | | dwarshaw@pswlaw.com |
| garenson@kaplanfox.com | | mapearson@pswlaw.com |
| hnam@kaplanfox.com | | |
| juris@kaplanfox.com | | |

---

[5] Court hours may change. Check the settlement website www.KeurigIndirectPurchaserSettlement.com for updates.

This Settlement Notice was approved by order of the United States District Court for the Southern District of New York on December 29, 2020.  A copy of the Court's order is available on the Settlement website at www.KeurigIndirectPurchaserSettlement.com.

Dated:  January 8, 2021                                    By Order of the Court
                                                           United States District Court
                                                           Southern District of New York

**Please do not contact the Court or the Court Clerk's Office to inquire about this Settlement or the Claims Process.**

**KEURIG INDIRECT PURCHASERS ANTITRUST SETTLEMENT**
**C/O JND LEGAL ADMINISTRATION**
**P.O. BOX 91382**
**SEATTLE, WA 98111**

**KEU**

# SETTLEMENT CLAIM FORM

If you purchased Keurig K-Cup Portion Packs[1] from persons other than Keurig and not for the purpose of resale (i) between September 7, 2010, and August 14, 2020, in the United States (except Mississippi and Rhode Island); (ii) between March 24, 2011, and August 14, 2020, in Mississippi; or (iii) between July 15, 2013, and August 14, 2020, in Rhode Island; you must complete this Claim Form to be eligible for compensation under the Settlement.  Your Claim Form must be submitted (and if mailed, postmarked) on or before **July 15, 2021**.  **Proof of purchase, if any, must be submitted concurrently with this form**.

| CLAIMANT INFORMATION |
|---|

Claimant Name: _____

Street Address: _____

City: _____   State: _____   Zip Code: _____

Contact Telephone Number: _____   Email Address: _____

| From September 7, 2010, through December 31, 2010: | | | | |
|---|---|---|---|---|
| **Number of Keurig K-Cup Portion Packs Purchased** | **Price Paid for the Keurig K-Cup Portion Packs** | **Number of Cups in the Keurig K-Cup Portion Packs Purchased** | **The State Where You Purchased the Keurig K-Cup Portion Packs** | **Brand Name of Keurig K-Cup Portion Packs Purchased** |
| | | | | |
| | | | | |

| From January 1, 2011, through March 23, 2011: | | | | |
|---|---|---|---|---|
| **Number of Keurig K-Cup Portion Packs Purchased** | **Price Paid for the Keurig K-Cup Portion Packs** | **Number of Cups in the Keurig K-Cup Portion Packs Purchased** | **The State Where You Purchased the Keurig K-Cup Portion Packs** | **Brand Name of Keurig K-Cup Portion Packs Purchased** |
| | | | | |
| | | | | |

---

[1.] Keurig K-Cup Portion Pack means single-serve beverage portion packs manufactured or licensed by Keurig that are compatible with Keurig brewers.  A Portion Pack manufactured or licensed by Keurig will generally display the Keurig brand name or logo on the packaging.

1

**From March 24, 2011, through December 31, 2011:**

| Number of Keurig K-Cup Portion Packs Purchased | Price Paid for the Keurig K-Cup Portion Packs | Number of Cups in the Keurig K-Cup Portion Packs Purchased | The State Where You Purchased the Keurig K-Cup Portion Packs | Brand Name of Keurig K-Cup Portion Packs Purchased |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**From January 1, 2012, through December 31, 2012:**

| Number of Keurig K-Cup Portion Packs Purchased | Price Paid for the Keurig K-Cup Portion Packs | Number of Cups in the Keurig K-Cup Portion Packs Purchased | The State Where You Purchased the Keurig K-Cup Portion Packs | Brand Name of Keurig K-Cup Portion Packs Purchased |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**From January 1, 2013, through July 14, 2013:**

| Number of Keurig K-Cup Portion Packs Purchased | Price Paid for the Keurig K-Cup Portion Packs | Number of Cups in the Keurig K-Cup Portion Packs Purchased | The State Where You Purchased the Keurig K-Cup Portion Packs | Brand Name of Keurig K-Cup Portion Packs Purchased |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**From July 15, 2013, through December 31, 2013:**

| Number of Keurig K-Cup Portion Packs Purchased | Price Paid for the Keurig K-Cup Portion Packs | Number of Cups in the Keurig K-Cup Portion Packs Purchased | The State Where You Purchased the Keurig K-Cup Portion Packs | Brand Name of Keurig K-Cup Portion Packs Purchased |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**From January 1, 2014, through December 31, 2014:**

| Number of Keurig K-Cup Portion Packs Purchased | Price Paid for the Keurig K-Cup Portion Packs | Number of Cups in the Keurig K-Cup Portion Packs Purchased | The State Where You Purchased the Keurig K-Cup Portion Packs | Brand Name of Keurig K-Cup Portion Packs Purchased |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**From January 1, 2015, through December 31, 2015:**

| Number of Keurig K-Cup Portion Packs Purchased | Price Paid for the Keurig K-Cup Portion Packs | Number of Cups in the Keurig K-Cup Portion Packs Purchased | The State Where You Purchased the Keurig K-Cup Portion Packs | Brand Name of Keurig K-Cup Portion Packs Purchased |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

| From January 1, 2016, through December 31, 2016: | | | | |
|---|---|---|---|---|
| **Number of Keurig K-Cup Portion Packs Purchased** | **Price Paid for the Keurig K-Cup Portion Packs** | **Number of Cups in the Keurig K-Cup Portion Packs Purchased** | **The State Where You Purchased the Keurig K-Cup Portion Packs** | **Brand Name of Keurig K-Cup Portion Packs Purchased** |
| | | | | |
| | | | | |

| From January 1, 2017, through December 31, 2017: | | | | |
|---|---|---|---|---|
| **Number of Keurig K-Cup Portion Packs Purchased** | **Price Paid for the Keurig K-Cup Portion Packs** | **Number of Cups in the Keurig K-Cup Portion Packs Purchased** | **The State Where You Purchased the Keurig K-Cup Portion Packs** | **Brand Name of Keurig K-Cup Portion Packs Purchased** |
| | | | | |
| | | | | |

| From January 1, 2018, through December 31, 2018: | | | | |
|---|---|---|---|---|
| **Number of Keurig K-Cup Portion Packs Purchased** | **Price Paid for the Keurig K-Cup Portion Packs** | **Number of Cups in the Keurig K-Cup Portion Packs Purchased** | **The State Where You Purchased the Keurig K-Cup Portion Packs** | **Brand Name of Keurig K-Cup Portion Packs Purchased** |
| | | | | |
| | | | | |

| From January 1, 2019, through December 31, 2019: | | | | |
|---|---|---|---|---|
| **Number of Keurig K-Cup Portion Packs Purchased** | **Price Paid for the Keurig K-Cup Portion Packs** | **Number of Cups in the Keurig K-Cup Portion Packs Purchased** | **The State Where You Purchased the Keurig K-Cup Portion Packs** | **Brand Name of Keurig K-Cup Portion Packs Purchased** |
| | | | | |
| | | | | |

| From January 1, 2020, through August 14, 2020: | | | | |
|---|---|---|---|---|
| **Number of Keurig K-Cup Portion Packs Purchased** | **Price Paid for the Keurig K-Cup Portion Packs** | **Number of Cups in the Keurig K-Cup Portion Packs Purchased** | **The State Where You Purchased the Keurig K-Cup Portion Packs** | **Brand Name of Keurig K-Cup Portion Packs Purchased** |
| | | | | |
| | | | | |

3

**Please select the way payment will be issued for your claim if determined valid**:

☐ PayPal
☐ Paper Check By Mail

If you select payment by PayPal, the email address entered at the top of this form will be used to process the payment to your PayPal account linked to that email address.  If you do not have a PayPal account, you will be prompted to open an account using the email address entered at the top of this form.

**Sign and Date the Affirmation below**:

I hereby affirm, under penalty of perjury under the laws of the United States, each of the following:
- I personally purchased one or more Keurig K-Cup Portion Packs as described in this Proof of Claim.
- I understand that by not opting out of the Settlement, I have given a complete Release of all Released Claims as described in the Stipulation of Settlement and Release.
- The information provided in this Claim Form is true and correct to the best of my knowledge.


_____ _____                    _____
Signature                                                                                                   Date