**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE SERVE COFFEE ANTITRUST LITIGATION | Case No. 1:14-md-02542 (VRB) (SLC) MDL No. 2542 |
| | Hon. Vernon S. Broderick |
| *This document concerns the Treehouse, McLane, and JBR actions.* | **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
<u>CERTAIN OPINIONS OF KEITH R. UGONE, PH.D.</u>**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  STANDARD OF LAW ......................................................................................... 2

III.  ARGUMENT ....................................................................................................... 3

A.  DR. UGONE'S ADJUSTMENTS TO TREEHOUSE'S AND MCLANE'S DAMAGES MODELS WARRANT EXCLUSION UNDER FEDERAL RULES OF EVIDENCE 702 AND 403. ................................................. 3

1.  Dr. Ugone Admits That His Adjustments to TreeHouse's and McLane's Damages Models Result in Unreliable Damages Estimates. ................................................................................................. 3

2.  Even If Dr. Ugone's Adjustments Were Admissible, the Risk of Confusing and Misleading the Factfinder Substantially Outweighs Any Probative Value of the Adjustments Under Rule 403. ....................... 6

B.  DR. UGONE'S OPINIONS RELATING TO MCLANE'S DAMAGES WARRANT EXCLUSION UNDER RULES 702 AND 403. ............................ 7

1.  The Proposed Setoffs in the Ugone McLane Rebuttal Report Are Inconsistent with the Legal Measure of Damages Under Supreme Court Precedent. ....................................................................................... 7

2.  Dr. Ugone's Opinions Regarding Statistical Significance Are Unreliable Because He Uses the Wrong Test to Measure Statistical Significance. ............................................................................................... 9

C.  DR. UGONE'S OPINIONS REGARDING TREEHOUSE'S DAMAGES MODEL WARRANT EXCLUSION UNDER RULES 702 AND 403. .............. 11

1.  Dr. Ugone's Opinions Regarding TreeHouse's Lost Profit Calculations Are Unreliable and Irrelevant Because He Applies an Incorrect Legal Standard for Proving Damages. ...................................... 11

2.  Dr. Ugone's Novel "Benefit Deduction" Opinion Is Neither Relevant Nor Reliable and Poses a Danger of Confusing the Issues and Misleading the Factfinder. ............................................................... 18

a.  Dr. Ugone's benefit deduction opinion is irrelevant and does not assist the trier of fact because the argument relates to claims TreeHouse does not assert in this case. ............................ 18

b.     Dr. Ugone's benefit deduction opinion is unreliable because it is based on a misunderstanding of antitrust law and relies on no methodology. ..................................................................... 19

c.     Even if Dr. Ugone's benefit deduction opinion is admissible, the risk of confusing and misleading the factfinder substantially outweighs any probative value under Rule 403. ..................................................................................... 20

3.     Dr. Ugone Admits He Is Not Qualified as a Survey Expert, Necessitating Exclusion of His Opinions Regarding TreeHouse's Consumer Surveys. ................................................................... 21

D.     DR. UGONE'S OPINIONS REGARDING CONSUMER KNOWLEDGE AND PERCEPTION OF WHETHER UNLICENSED PORTION PACKS WORKED IN THE KEURIG 2.0 BREWER SHOULD BE EXCLUDED. ........ 22

IV.     CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ............................................................................................. 12, 23

*AU New Haven, LLC v. YKK Corp.*,
2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019) ........................................................................ 23

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946) ................................................................................................................. 11

*Bohack Corp. v. Iowa Beef Proc'rs, Inc.*,
715 F.2d 703 (2d Cir. 1983) .................................................................................................... 13

*Cameron v. City of New York*,
598 F.3d 50 (2d Cir. 2010) ......................................................................................................... 6

*Champagne Metals v. Ken-Mac Metals, Inc.*
2008 WL 5205204 (W.D. Okla. Dec. 11, 2008) ...................................................................... 19

*Coquina Invs. v. Rothstein*,
2011 WL 4949191 (S.D. Fla. Oct. 18, 2011) ............................................................................. 9

*Coquina Invs. v. TD Bank, N.A.*,
760 F.3d 1300 (11th Cir. 2014) ................................................................................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ......................................................................................................... passim

*Dial Corp. v. News Corp.*,
165 F. Supp. 3d 25 (S.D.N.Y. 2016) ................................................................................. 11, 19

*Discover Fin. Servs. v. Visa U.S.A., Inc.*,
582 F. Supp. 2d 501 (S.D.N.Y. 2008) ......................................................................... 13, 14, 16

*Discover Fin. Servs. v. Visa U.S.A. Inc.*,
598 F. Supp. 2d 394 (S.D.N.Y. 2008) ..................................................................................... 16

*Gutierrez v. Johnson & Johnson*,
2006 WL 3246605 (D.N.J. Nov. 6, 2006) ................................................................................ 10

*Hackett v. Procter & Gamble Co.*,
2008 WL 4646049 (S.D. Cal. Oct. 17, 2008) .......................................................................... 24

*Hanover Shoe v. United Shoe Mach. Corp.*,
392 U.S. 481 (1968) ................................................................................................................... 8

*Hudock v. LG Elecs. U.S.A., Inc.*,
 2020 WL 4676285 (D. Minn. Aug. 12, 2020) ......................................................21

*Illinois Brick Co. v. Illinois*,
 431 U.S. 720 (1977)...........................................................................................7, 8

*Image Technology Services., Inc. v. Eastman Kodak Co.*,
 125 F.3d 1195, 1201-02 (9th Cir. 1997) .............................................................19

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)........................................................4

*In re Cardizem CD Antitrust Litig.*,
 105 F. Supp. 2d 618 (E.D. Mich. 2000)...............................................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2017 WL 10434367 (N.D. Cal. Jan. 23, 2017) ..................................................4, 5

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
 2020 WL 6290584 (S.D.N.Y. Oct. 27, 2020) ......................................................19

*In re Lantus Direct Purchaser Antitrust Litig.*,
 950 F.3d 1 (1st Cir. 2020) ...................................................................................13

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
 MDL No. 2328, 2016 WL 2756437 (E.D. La. May 12, 2016)...............................10

*In re Publ'n Paper Antitrust Litig.*,
 690 F.3d 51 (2d Cir. 2012)...................................................................................13

*In re Rezulin Prods. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................................................................2

*In re Suboxone Antitrust Litig.*,
 2017 WL 4910673 (E.D. Pa. Oct. 30, 2017).........................................................14

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
 470 F. Supp. 2d 345 (S.D.N.Y. 2007)....................................................................5

*Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*,
 2019 WL 3573663 (W.D. Pa. Aug. 6, 2019) ........................................................20

*Leverette v. Louisville Ladder Co.*,
 183 F.3d 339 (5th Cir. 1999) (per curiam).........................................................7, 12

*Litton Sys. v. AT&T*,
 700 F.2d 785 (2d Cir. 1983).................................................................................13

iv

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007)..............................................................7, 12

*LSQ Funding Grp., L.C. v. EDS Field Servs., LLC*,
   879 F. Supp. 2d 1320 (M.D. Fla. 2012).............................................................8, 9

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017)........6, 12, 20, 25

*Macaluso v. Herman Miller, Inc.*,
   No. 01-cv-1146, 2005 WL 563169 (S.D.N.Y. Mar. 10, 2005)................................7

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008).................................................................................7

*Morley v. Square, Inc.*,
   2016 WL 2733114 (E.D. Mo. May 11, 2016) .................................................7, 12

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005)............................................................................2, 21

*Olin Corp. v. Lamorak Ins. Co.*,
   2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018), *aff'd*, 803 F. App'x 496 (2d Cir. 2020)..7, 8, 12

*Optronic Techs., Inc v. Ningbo Sunny Elec. Co.*,
   2020 WL 1667435 (N.D. Cal. Apr. 3, 2020) ........................................................11

*Perma Life Mufflers v. Int'l Parts Corp.*,
   392 U.S. 134 (1968) (White, J., concurring) ........................................................13

*Price v. L'Oreal USA, Inc.*,
   2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020) ................................................24, 25

*R.F.M.A.S., Inc. v. So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010)...................................................................24

*Roane v. Greenwich Swim Comm.*,
   330 F. Supp. 2d 306 (S.D.N.Y. 2004)...................................................................13

*Saxon Glass Techs., Inc. v. Apple Inc.*,
   393 F. Supp. 3d 270 (W.D.N.Y. 2019), aff'd, 824 F. App'x 75 (2d Cir. 2020).....................24

*Scott v. Chipotle Mex. Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) .............................................................................4

*Shatkin v. McDonnell Douglas Corp.*,
   727 F.2d 202 (2d Cir. 1984)................................................................................20

*Simon v. KeySpan Corp.*,
  694 F.3d 196 (2d Cir. 2012)................................................................................7

*U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,
  112 F. Supp. 3d 122 (S.D.N.Y. 2015)..............................................................22

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004)..........................................................15, 16

*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015)................................................................................2

*United States v. Kwong*,
  69 F.3d 663 (2d Cir. 1995)..................................................................................2

*United States v. Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004)..................................................................................7

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
  2010 WL 11505684 (C.D. Cal. Jan. 25, 2010) ................................................24

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
  2017 WL 404553 (W.D. Tex. Jan. 27, 2017) ...................................................24

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  395 U.S. 100 (1969)..........................................................................................13

## RULES

Fed. R. Evid. 403 ................................................................................... passim

Fed. R. Evid. 702 ................................................................................... passim

## STATUTES

*Antitrust Law* ¶ 338a ...........................................................................................14

## OTHER AUTHORITIES

DAVID S. MOORE, *et al.*, THE PRACTICE OF STATISTICS FOR BUSINESS AND ECONOMICS
  602 (3d ed. 2011) .............................................................................................10

JEFFREY M. WOOLDRIDGE, *Diagnostic Testing*, *in* A COMPANION TO THEORETICAL
  ECONOMETRICS 185 (Badi H. Baltagi ed. (Blackwell Publishing Ltd. 2001)..........................10

JEFFREY M. WOOLDRIDGE, INTRODUCTORY ECONOMETRICS: A MODERN APPROACH (4th
  ed. 2009) .......................................................................................................9, 10

K, Keith R. Ugone & George G. Strong, Jr., *Preparing the Financial Expert or Economist*.......................................................................................................................14

# I.    **INTRODUCTION**

Plaintiffs[1] request that this Court exclude certain opinions and testimony of Defendant Keurig Green Mountain, Inc.'s ("Keurig") retained expert witness, Keith R. Ugone, Ph.D., because they fail to satisfy the requirements of Federal Rules of Evidence 702 and 403, or the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  This is true for several, independent reasons:

First, Dr. Ugone's rebuttal to McLane's (Ex. A) and TreeHouse's (Ex. B) damages estimates admits that his adjustments to the McLane and TreeHouse damages models are unreliable.

Second, Dr. Ugone's opinions in his rebuttal to McLane's damages estimates (Ex. A) fail to comport with the proper legal measure of damages for direct purchasers under Supreme Court precedent.  Dr. Ugone's opinions have previously been excluded on these exact grounds: failure to comport with the legal measure of damages.  In addition, Dr. Ugone's opinions on the statistical significance of McLane's damages fail to apply the proper test.  Dr. Ugone's failure to use the appropriate test for statistical significance renders his opinions unreliable and poses a substantial risk of confusing the issues and misleading the factfinder.

Third, Dr. Ugone's rebuttal to Treehouse's damage estimates (Ex. B), offers opinions that are wholly unreliable and irrelevant, not to mention pose a substantial risk of confusion.  His own deposition testimony shows his opinions regarding TreeHouse's lost profit calculations run contrary to controlling legal standards, and he opines that TreeHouse's damages should be reduced by the value of benefits Keurig purportedly provided to TreeHouse, an opinion that does not relate

---

[1] TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse"), Plaintiff JBR, Inc. (d/b/a Rogers Family Company) ("Rogers" or "JBR"), and McLane Company, Inc. ("McLane").

to any asserted claim, is based on a misunderstanding of antitrust law, and relies on no methodology.  Dr. Ugone also admits he is not qualified as an expert on consumer surveys, yet he offers numerous survey-related opinions that must be excluded.

Finally, in Dr. Ugone's rebuttal to JBR's damages estimates (Ex. C), Dr. Ugone's opinions on consumer market knowledge are wholly unsupported by any survey evidence, methodology, data, studies, or appropriate experience or expertise.

Accordingly, and as discussed further herein, Dr. Ugone's opinions must be excluded.

## II.   <u>STANDARD OF LAW</u>

Dr. Ugone's testimony fails to meet the requirements of Rule 702.  Under Rule 702, an expert opinion is admissible only if it will assist the trier of fact.  This requirement is satisfied when (1) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based upon sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) the witness has "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also Nimely v. City of New York*, 414 F.3d 381, 396-97, n.11 (2d Cir. 2005).  The burden of laying the proper foundation for admissibility rests with the party offering the expert testimony, who must establish admissibility by a preponderance of evidence. *See Daubert*, 509 U.S. at 592 n.10; *United States v. Apple, Inc.*, 791 F.3d 290, 334-35 n.24 (2d Cir. 2015).

Expert testimony is also subject to Rule 403 and "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Nimely*, 414 F.3d at 397; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545, 550 (S.D.N.Y. 2004).  Testimony that satisfies Rule 702 must still be excluded if it does not comply with Rule 403.  *United States v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995) (affirming exclusion under Rule 403 even assuming the testimony "passes muster under Rule 702").

## III.  **ARGUMENT**

### A.  **DR. UGONE'S ADJUSTMENTS TO TREEHOUSE'S AND MCLANE'S DAMAGES MODELS WARRANT EXCLUSION UNDER FEDERAL RULES OF EVIDENCE 702 AND 403.**

Dr. Ugone's so-called "adjustments" to TreeHouse's and McLane's damages models yield results Dr. Ugone himself has admitted are unreliable and thus warrant exclusion.  Dr. Ugone devotes much of his TreeHouse expert reports to "adjusting" TreeHouse's damages model.  As he must, Dr. Ugone assumes Keurig is liable on all of TreeHouse's claims, yet he opines TreeHouse "cannot reliably estimate damages as even $1."  Ex. D, Ugone THS Dep. 142:22-143:3.  Indeed, Dr. Ugone presents adjustments that lead to illogical negative damages numbers, such as one combination of adjustments that reduce TreeHouse's lost profits from ███████ to *negative* ███████.  *See* Ex. E, Ugone THS Sur-Reply at 17 (Table 3).  Similarly, in the Ugone McLane Rebuttal Report, Dr. Ugone makes several "adjustments" to McLane's damages model, which purport to reduce McLane's damages from ███████ to ███████.  *See, e.g.*, Ex. A, Ugone McLane Rebuttal at 8 (Table 1), 74 (Table 21); Ex. F, Ugone McLane Sur-Reply at 10 (Amended Table 1 and 21).  Dr. Ugone's adjustments to Treehouse's and McLane's damages are not only unreliable, as he admits (thus failing to satisfy Rule 702), but they also pose a substantial risk of confusing the issues and misleading the factfinder under Rule 403.

### 1.  **Dr. Ugone Admits That His Adjustments to TreeHouse's and McLane's Damages Models Result in Unreliable Damages Estimates.**

Dr. Ugone's damages adjustments, by his own admission, are unreliable.  At his deposition, Dr. Ugone conceded that his own adjustments fail to provide a reliable measure of TreeHouse's damages (as, indeed, is evident on their face):

> Q.  . . . So you are not opining that the adjusted damages calculation you set forth in Table 3 of your sur-reply provide a reliable estimate of Treehouse's damages, correct?

A.  I think I understand your question and I would say correct to that, yes.

Q.  Okay. And it's also your opinion, I believe, as you stated, that any other adjustments you've made throughout your sur-reply and rebuttal report do not result in reliable estimates of Treehouse's damages?

A.  That's correct. They show the sensitivity of [TreeHouse expert] Dr. Stiroh's model to a change in underlying assumptions; either one at a time or, in some cases, in combination.

Q.  So is it your opinion that no adjustments can be made to Dr. Stiroh's framework for Treehouse's damages that would result in a reliable estimate of damages?

A.  I believe that's an accurate statement, correct.

Ex. D, Ugone THS Dep. 38:23-39:18.

Similarly, Dr. Ugone admitted that his own adjustments fail to provide a reliable measure of McLane's damages:

Q.  . . . Does this table reflect your conclusions with respect to the overcharges paid by McLane?

A.  Yeah . . . . I did certain adjustments to Dr. Johnson's regression analysis, and for ease of exposition, those adjustments are summarized in amended Table 1 and 21 . . . . [T]he totality of my opinion is, even with the adjustment, Dr. Johnson's regression model remains unreliable and that no overcharge damages are proven . . .

Ex. G, Ugone March 3, 2021 Dep. 62:5-63:9.

While a defendant's expert may propose corrections to a plaintiff's damages model, those corrections are not exempt from *Daubert*'s requirements.  *Scott v. Chipotle Mex. Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (noting "rebuttal experts must meet *Daubert*'s threshold standards").  If, as here, the defendant's expert admits his corrections are unreliable, they must be excluded under Rule 702.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2-3 (N.D. Cal. Jan. 23, 2017); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *12 (E.D.N.Y. Oct. 15, 2014) (excluding defendants' expert testimony as unreliable

when defendants did not dispute a "simple, but devastating, miscalculation" in expert's work).

The court in the *CRT* litigation was presented with a similar situation when one of defendants' damages experts, Dr. Dennis Carlton, offered "corrections" to plaintiffs' overcharge model but admitted, as Dr. Ugone does here, that the resulting numbers were not reliable. When asked whether results containing his adjustments yielded a reliable estimate of the overcharge, Dr. Carlton testified that they did not. *CRT*, 2017 WL 10434367, at *3. The *CRT* defendants later attempted to downplay Dr. Carlton's admission, arguing that his corrections to plaintiffs' overcharge model were unreliable only because they were made to an unreliable underlying model advocated by plaintiffs. The *CRT* court was not persuaded. The court determined that Dr. Carlton had made a fatal admission that his resulting numbers were indeed "unreliable," regardless of whether they were based on an assertedly flawed plaintiffs' model. *Id.* Accordingly, the court excluded the opinions of another defense damages expert, Dr. Ordover, whose opinion relied on the "corrected" estimates offered by Dr. Carlton. *Id.*

The *CRT* decision is compelling and analogous to the situation here. Dr. Ugone admits his adjustments to TreeHouse's damages model "do not result in reliable estimates of TreeHouse's damages." Ex. D, Ugone THS Dep. 38:23-39:18. Similarly, Dr. Ugone admits that even with his adjustments to McLane's damages model, the "regression model remains unreliable." Ex. G, Ugone March 3, 2021 Dep. 62:5-63:9. As "[t]he hallmarks of admissibility of expert testimony are reliability and relevance," *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 355 (S.D.N.Y. 2007), Dr. Ugone's admissions of unreliability are dispositive. Even if Keurig attempts to pin the unreliability of his adjustments on purported flaws in TreeHouse's and McLane's damages models, the *CRT* decision makes clear that this argument fails. *CRT*, 2017 WL 10434367, at *2 ("Defendants conceded that . . . [Dr. Carlton's] estimates are unreliable. . . .

Thus, applying the rules just stated, the portions of Dr. Ordover's report that rely on Dr. Carlton's estimates should be excluded.").  Dr. Ugone's adjustments to Treehouse's and McLane's damages, by his own admission, must be excluded under Rule 702.

> **2.  Even If Dr. Ugone's Adjustments Were Admissible, the Risk of Confusing and Misleading the Factfinder Substantially Outweighs Any Probative Value of the Adjustments Under Rule 403.**

"[A]s with all evidence, under Rule 403, the Court may exclude testimony if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or delay."  *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 643 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017); *see Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010).

Confusion permeates Dr. Ugone's opinions regarding his adjustments to TreeHouse's damages model.  When asked to consider his adjustments and testimony, a juror would rightfully wonder: *How can Dr. Ugone say he has not calculated TreeHouse's damages but at the same time present "adjustments" calculating TreeHouse's damages?*[2]  *What should I do with Dr. Ugone's damages calculations, knowing he has admitted they are unreliable?*[3]  *Dr. Ugone says he does not opine that TreeHouse's damages are negative, so how I should interpret the negative damages numbers he presents?*[4]  Vigorous cross-examination is not likely to clear the confusion.  Further, any probative value of Dr. Ugone's adjustments is limited, particularly as the adjustments are admittedly unreliable.  Exclusion is accordingly appropriate under Rule 403.

---

[2] *Compare* Ex. D, Ugone THS Dep. 39:19-23 ("Q.  So just to make sure we're clear, you were not providing an alternative measure of Treehouse's damages that you opine is reliable, correct?  A.  That's correct."), *and* Ex. E, Ugone THS Sur-Reply at 17 (Table 3) (presenting Dr. Ugone's adjusted calculations of TreeHouse's damages, decreasing lost profits from ███████ to as little as *negative* ███████).

[3] *Compare* Ex. E, Ugone THS Sur-Reply at 17 (Table 3), *and* Ex. D, Ugone THS Dep. 38:23-39:18 ("Q. . . . So you are not opining that the adjusted damages calculation you set forth in Table 3 . . . provide a reliable estimate of TreeHouse's damages, correct?  A.  I think I understand your question and I would say correct to that, yes.").

[4] *Compare* Ex. D, Ugone THS Dep. 45:5-46:3 ("Q.  So are you opining that there are business practices and strategies that Keurig followed that have been beneficial to unlicensed competitors?"  "A. . . . I'm not giving the opinion, as you asked, that damages are, you know, negative."); *and* Ex. E, Ugone THS Sur-Reply at 17 (Table 3).

### B. DR. UGONE'S OPINIONS RELATING TO MCLANE'S DAMAGES WARRANT EXCLUSION UNDER RULES 702 AND 403.

Two sets of opinions set forth in the Ugone McLane Rebuttal Report warrant exclusion for failing the requirements of Rules 702 and 403.  These opinions are unreliable, misleading, and not helpful to the trier of fact because: (1) Dr. Ugone's proposed damages setoffs are inconsistent with the legal measure of damages under Supreme Court precedent; (2) Dr. Ugone failed to use the appropriate and industry-accepted test for statistical significance in this context.

### 1. The Proposed Setoffs in the Ugone McLane Rebuttal Report Are Inconsistent with the Legal Measure of Damages Under Supreme Court Precedent.

Proffered expert testimony must fit the legal as well as substantive issues of the case.  Fed. R. Evid. 702 (requiring that expert testimony be "based upon sufficient facts or data [and] applied . . . reliably to the facts of the case.").[5]  "Expert testimony . . . should be excluded when it applies the wrong legal standard."  *Olin Corp. v. Lamorak Ins. Co*., 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018), *aff'd*, 803 F. App'x 496 (2d Cir. 2020) (citation omitted).[6]

Dr. Ugone's proffered setoffs are premised on incorrect factual assumptions, namely that McLane sold K-Cups under a cost plus[7] contract, and also fail to comport with the appropriate measure of damages under Supreme Court precedent.  Dr. Ugone claims that, "[b]ecause McLane was operating under a 'cost plus' contract, as Keurig's or Smucker's or Starbucks' prices

---

[5] *See also Major League Baseball Props., Inc. v. Salvino, Inc*., 542 F.3d 290, 311 (2d Cir. 2008); *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004); *Macaluso v. Herman Miller, Inc.,* No. 01-cv-1146, 2005 WL 563169, at *23 (S.D.N.Y. Mar. 10, 2005).

[6] *See also Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp. 2d 558, 572 (S.D.N.Y. 2007);  *Leverette v. Louisville Ladder Co*., 183 F.3d 339, 341-43 (5th Cir. 1999) (per curiam)); *Morley v. Square, Inc.*, 2016 WL 2733114, at *2 (E.D. Mo. May 11, 2016).

[7] Dr. Ugone also conflates the colloquial meaning of cost plus (Ex. A, Ugone McLane Rebuttal at ¶ 9) with the narrow, legal definition of the term as articulated by both the Supreme Court and the Second Circuit.  *Ill. Brick*, 431 U.S. at 736; *Simon v. KeySpan Corp*., 694 F.3d 196 (2d Cir. 2012).  As such, Dr. Ugone's causal use of the term "cost plus" is misleading and not helpful to the trier of fact.

increased, the dollar markup earned by McLane increased as well (because the percentage markup

was fixed by the contract)."  Ex. A, Ugone McLane Rebuttal ¶ 9.  He then asserts that:

> An appropriate measure of damages would need to subtract these higher
> fees that McLane earned that would not have been earned in the but-for
> world in which [McLane's expert] Dr. Johnson hypothesizes that
> McLane's K-Cup costs (and hence its dollar markup earned as a fixed
> percentage of those costs) would have been lower.

*Id.*  As such, Dr. Ugone concludes that McLane's damages must be reduced by "approximately

██████████ [to] offset[] benefits McLane earned that it would not have earned in the but-for

world."  *Id.; see also id.* at ¶ 65, Table 1, Table 12, Table 21, Ex. 14.

This opinion directly contravenes Supreme Court precedent.  As a direct purchaser,

McLane has suffered an injury in the full amount of the overcharge it paid, *even if* it passed on that

overcharge to its customers.  *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481, 489, 493–

94 (1968).  As the Supreme Court recognized:

> [W]e understand Hanover Shoe as resting on the judgment that the
> antitrust laws will be more effectively enforced by concentrating the full
> recovery for the overcharge in the direct purchasers rather than by
> allowing every plaintiff potentially affected by the overcharge to sue
> only for the amount it could show was absorbed by it.

*See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 734-35 (1977).  It follows that a direct purchaser is

"permitted to recover the *full amount of the* overcharge" and "spared the burden of litigating the

intricacies of pass-on."  *Id.* at 745-46 (emphasis added).

Dr. Ugone's opinions have previously been excluded on these exact grounds: failure to

comport with the legal measure of damages.  Specifically, the District Court for the Middle District

of Florida found that substantially similar opinions proffered by Dr. Ugone did not withstand

scrutiny under *Daubert*.  *LSQ Funding Grp., L.C. v. EDS Field Servs., LLC*, 879 F. Supp. 2d 1320,

1336 (M.D. Fla. 2012).  There, the court held that Dr. Ugone's setoffs not only lacked factual

support, but also failed to comport with the proper legal measure of damages. *Id.* (citing *Coquina Invs. v. Rothstein*, 2011 WL 4949191, at *7 (S.D. Fla. Oct. 18, 2011) (holding that an expert opinion which contains unsupported conclusions and does not apply a recognized measure of damages is unreliable); *aff'd sub nom. Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300 (11th Cir. 2014)).

The Ugone McLane Rebuttal Report has that same fatal flaw: Dr. Ugone's purported setoffs are factually unsupported and inconsistent with the appropriate measure of damages for direct purchasers under Supreme Court precedent. Further, even if Dr. Ugone's proposed setoffs are admissible, the substantial risk of confusing and misleading the factfinder substantially outweighs any probative value under Rule 403. Thus, exclusion of Dr. Ugone's proposed setoffs for "benefits McLane earned" is appropriate under Rules 702 and 403.

### 2. Dr. Ugone's Opinions Regarding Statistical Significance Are Unreliable Because He Uses the Wrong Test to Measure Statistical Significance.

Dr. Ugone's opinions regarding the statistical significance of McLane's damages model must be excluded because Dr. Ugone failed to use the appropriate test for statistical significance. Dr. Ugone claims that McLane's damages should be zero because upon removal of certain data the results of the model put forth by McLane's damages expert, Dr. Phillip Johnson, are no longer statistically significant. But Dr. Ugone failed to test for *joint* significance, which demonstrates a fundamental misunderstanding of econometrics. *See e.g.*, Jeffrey M. Wooldridge, Introductory Econometrics: A Modern Approach 197 (4th ed. 2009). Thus, Dr. Ugone's opinion that the results of Dr. Johnson's regression are not statistically significant is unreliable, as he admits (*see supra* at § III.A.1) (thus failing to satisfy Rule 702) and poses a substantial risk of confusing the issues and misleading the factfinder under Rule 403. Exclusion is warranted on both grounds.

Dr. Johnson calculated McLane's overcharges using a regression model that included two

variables to estimate the price effect of Keurig's alleged conduct.  Ex. H, Johnson Report ¶ 121.
Because Dr. Johnson's model measures the effect of Keurig's alleged conduct via these *two*
variables, it is therefore necessary to conduct a test of *joint* statistical significance.[8]  A variable
that occurs in two places, such as one of the variables here, can appear statistically insignificant,
but have a total (joint) effect that is statistically significant.  Ex. I, Johnson Reply Report ¶ 18
(citing Jeffrey M. Wooldridge, *Diagnostic Testing*, *in* A Companion to Theoretical Econometrics
185 (Badi H. Baltagi ed. (Blackwell Publishing Ltd. 2001))).  Without the joint test, separate tests
for statistical significance of interacted variables may yield unreliable and inaccurate results.
*See e.g.,* Jeffrey M. Wooldridge, Introductory Econometrics: A Modern Approach 198 (4th ed.
2009) ("This is a good example of where looking at separate t statistics when testing a joint
hypothesis can lead one far astray.").

Although using the joint test under these circumstances is the industry-accepted approach,
Dr. Ugone tested the statistical significance of these two variables *separately* and pronounced that
McLane suffered no overcharges because the results were not statistically significant.  Ex. A,
Ugone McLane Rebuttal ¶ 42.  This is incorrect.  When the *correct* test for statistical significance
is used, the overcharge effects he estimates *are* statistically significant.  Ex. I, Johnson Reply
Report ¶ 17.  Because Dr. Ugone failed to use the correct and industry-accepted test for statistical
significance, his opinions should be excluded under both Rule 702 and 403.

---

[8] Joint significance is often tested by using an F-test.  More specifically, the F-test assesses whether multiple variables in the regression provide a better fit compared to a regression model without those variables.  Courts recognize the legitimacy of F-tests.  *See Gutierrez v. Johnson & Johnson*, 2006 WL 3246605, at *8 (D.N.J. Nov. 6, 2006) ("As Nobel Laureate Dr. Daniel McFadden stated in his declaration, the Chow test, fixed effects models, f-tests, and t-tests are all standard, peer-reviewed tests with acknowledged reliability."); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2016 WL 2756437, at *11 (E.D. La. May 12, 2016) (citing DAVID S. MOORE, *et al.*, THE PRACTICE OF STATISTICS FOR BUSINESS AND ECONOMICS 602 (3d ed. 2011) and JEFFREY M. WOOLDRIDGE, INTRODUCTORY ECONOMETRICS: A MODERN APPROACH 677 (4th ed. 2009) ("Econometrics literature generally encourages the use of F-tests in data analyses.").

## C. DR. UGONE'S OPINIONS REGARDING TREEHOUSE'S DAMAGES MODEL WARRANT EXCLUSION UNDER RULES 702 AND 403.

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *See Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264-65 (1946). Upholding this principle, courts have never required plaintiffs to follow "an exact science" in calculating antitrust damages. *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 38 (S.D.N.Y. 2016).

Dr. Ugone, insisting that Plaintiffs turn the calculation of damages into an impossible exact science, offers three sets of opinions that warrant exclusion for failing the relevance, reliability, and qualification requirements of Rule 702 or for posing an unjustified risk of confusion under Rule 403: (1) opinions regarding TreeHouse's lost profit damages based on Dr. Ugone's application of an incorrect legal standard; (2) a novel "benefit deduction" opinion that finds no support in economics or the law; and (3) opinions regarding consumer surveys that Dr. Ugone has admitted are outside the scope of his expertise.[9]

### 1. Dr. Ugone's Opinions Regarding TreeHouse's Lost Profit Calculations Are Unreliable and Irrelevant Because He Applies an Incorrect Legal Standard for Proving Damages.

Dr. Ugone's opinions regarding TreeHouse's lost profits cannot be reconciled with the controlling legal standard for proving causation. Dr. Ugone criticizes the hundreds of millions of dollars of lost profits calculated by TreeHouse's damages expert, Dr. Lauren Stiroh, on the purported basis that Dr. Stiroh has not established an "economic causal connection" between

---

[9] Dr. Ugone confirmed at his deposition that he has not constructed any damages model or calculated any damages figures to present to the factfinder as an alternative to TreeHouse's damages calculations. Ex. D, Ugone THS Dep. 39:19-23. Accordingly, TreeHouse intends to file a motion in limine to preclude Dr. Ugone from offering any alternative measure of TreeHouse's damages at trial, such as his "adjustments," if they are not excluded in their entirety as a result of this motion. *See Optronic Techs., Inc v. Ningbo Sunny Elec. Co.*, 2020 WL 1667435, at *4-5 (N.D. Cal. Apr. 3, 2020) (finding no error in jury instruction "not to consider this witness's testimony as to any amount of damages" because defendants did not offer any alternative damages calculation).

Keurig's conduct and TreeHouse's lost profits.  *See, e.g.*, Ex. B, Ugone THS Rebuttal ¶¶ 214, 218.

These opinions are not reliable or relevant—and warrant exclusion—because they conflict with

the controlling legal standard for causation.

      Courts recognize that "[e]xpert testimony . . . should be excluded when it applies the wrong

legal standard."  *Olin*, 2018 WL 1901634 at *21; *see also Morley*, 2016 WL 2733114 at *2 ("An

expert opinion is inadmissible if based on incorrect legal standards.").  Indeed, Keurig itself

correctly argued to this Court that "[e]xpert opinions are invalid where they ***fail to address the***

***proper legal standard.***"  Ex. J, Keurig Presentation, slide 105 (Sept. 4, 2014) (citing *Louis Vuitton*,

525 F. Supp. 2d at 572; *Leverette*, 183 F.3d at 341-43).  In *Louis Vuitton,* one of Keurig's cited

cases, the court excluded expert damages testimony because the study "d[id] not 'fit' with the

substantive law."  525 F. Supp. 2d at 572.  In *Leverette*, the Fifth Circuit affirmed the exclusion of

expert testimony where the expert failed to assess whether the product met manufacturing

standards "in accordance with the requirements under Mississippi law."  183 F.3d at 341.

      Here, Dr. Ugone's opinions rest on an *incorrect* standard directly at odds with the

governing law.  When asked to explain the standard he applied with respect to "economic and

damages causation," Dr. Ugone posited that a plaintiff establishes causation by (1) showing that

the defendant's bad act was "the determinative or the primary reason" for the plaintiff's injury,

"and/or" (2) "rul[ing] out all other potential reasons" for the plaintiff's injury.  Ex. D, Ugone THS

Dep. 85:23-87:25.  Dr. Ugone did not identify any basis for this standard.  Nor could he, as neither

test he articulated is reconcilable with governing law.  Rather, Dr. Ugone appears to have

articulated his own version of a causation standard for purposes of this litigation—one that has not

been peer reviewed, has not been published, and has not obtained general acceptance in the

economic field.  *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002)

(noting that *Daubert* factors include whether a theory or technique "can be (and has been) tested," "has been subjected to peer review and publication," and has gained "general acceptance" in the relevant scientific community); *Roane v. Greenwich Swim Comm.*, 330 F. Supp. 2d 306, 319-20 (S.D.N.Y. 2004) (excluding expert opinion where methodology was not tested, was not subjected to peer review, and had not gained general acceptance).

First, binding precedent holds that "to prove a 'causal connection' between the defendant's unlawful conduct and the plaintiff's injury, the plaintiff need only 'demonstrate that [the defendant's] conduct was *a substantial or materially contributing factor*' in producing that injury." *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 66 (2d Cir. 2012) (emphasis added) (citation omitted). Causation may be shown, then, "even though other factors may also have contributed significantly." *Discover Fin. Servs. v. Visa U.S.A., Inc.*, 582 F. Supp. 2d 501, 504 (S.D.N.Y. 2008) (citation omitted); *see also Perma Life Mufflers v. Int'l Parts Corp.*, 392 U.S. 134, 142 (1968) (White, J., concurring) ("The plaintiff need not show that the illegality was a more substantial cause than any other."); *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 14 (1st Cir. 2020). With no proper basis, Dr. Ugone applied a more stringent standard requiring proof that Keurig's conduct was the "determinative or primary reason" for TreeHouse's injuries. Ex. D, Ugone THS Dep. 85:23-87:25.

Second, controlling precedent further holds that a "[p]laintiff is not required to prove that defendant's alleged antitrust violation was the sole cause of its injury; nor need plaintiff eliminate all other possible causes of injury." *Discover*, 582 F. Supp. 2d at 504-05 (citing *Litton Sys. v. AT&T*, 700 F.2d 785, 828 n.49 (2d Cir. 1983); *see Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n.9 (1969) ( "[A] plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury under §4."); *see also Bohack Corp. v. Iowa*

*Beef Proc'rs, Inc.*, 715 F.2d 703, 711 & n.9 (2d Cir. 1983); Areeda & Hovenkamp, *Antitrust Law* ¶ 338a ("[D]ispositive weight should not be given to lists of possible alternative causes, which virtually any defendant can generate.") (hereinafter "Areeda").  "[T]o require proof that the illegal conduct was the *exclusive* cause of the plaintiff's injury would effectively deny private remedies, for multiple causes always affect everyone." *In re Suboxone Antitrust Litig.*, 2017 WL 4910673, at *11 (E.D. Pa. Oct. 30, 2017) (quoting Areeda ¶ 338a); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 649 (E.D. Mich. 2000) (same).

Dr. Ugone turns this law on its head.  In his view, "anytime that you have lost sales," an economist must "rule out other reasons why the customer might have left."  Ex. D, Ugone THS Dep. 88:21-89:18.  In other words, "you have to rule out all alternative potential reasons that could have influenced the [customer's] decision to leave," as a failure to do so "renders a plaintiffs' damages model unreliable."  *Id*. at 84:9-12, 87:2-25.  But the law provides that economists are *not* required to "eliminate all other possible causes of injury."  *Discover*, 582 F. Supp. 2d at 505.  To accept Dr. Ugone's misunderstanding of causation would be to "effectively deny private remedies" to all antitrust plaintiffs.  *Suboxone*, 2017 WL 4910673, at *11.

Even when the evidence indisputably shows that TreeHouse lost a customer because of Keurig's anticompetitive conduct, Dr. Ugone contends TreeHouse cannot reliably prove causation unless it can affirmatively *disprove* a laundry list of other potential causal factors.  By applying this baseless standard, Dr. Ugone morphs into the "skeptic[al]" defense expert he himself cautions against.  *See* Ex. K, Keith R. Ugone & George G. Strong, Jr., *Preparing the Financial Expert or Economist*, Witness Preparation (1998) (criticizing defense experts who skeptically believe that, "[e]ven where liability is clearly demonstrated, every dollar decline in plaintiff's sales can be

explained by some factor(s) beyond the scope of the alleged 'bad act'").[10]  Dr. Ugone thus crafts a hurdle that would render proof of causation effectively impossible—not to mention one that the law plainly does not require.  *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 238 (S.D.N.Y. 2004) ("An expert is not required . . . to categorically exclude each and every possible alternative cause.").

For example, Dr. Ugone includes Crystal Rock in his comprehensive exhibit of customers he says Treehouse lost for reasons "unrelated to Keurig's alleged conduct."  Ex. B, Ugone THS Rebuttal ¶ 122, Ex. 8 at 38.  But the undisputed facts show that Keurig "kill[ed]" Crystal Rock's planned competitive product launch with TreeHouse.  Ex. L, Timothy J. Descoteaux (Crystal Rock) Decl. ¶¶ 26, 29.  Crystal Rock, which was prohibited by its KAD agreement from working with anyone other than Keurig to manufacture Compatible Cups, found itself "extremely frustrated" with Keurig and took the risk of developing a Compatible Cup with TreeHouse in 2016. *Id.* at ¶ 18.  Days before launch, Keurig executives visited Crystal Rock and "threat[ened] to take away Crystal Rock's KAD agreement if Crystal Rock did not halt the launch of its [new] product" with TreeHouse.  Ex. M, Peter Baker (Crystal Rock) Dep. 100:22-101:10; *see* Ex. N, Timothy Descoteaux (Crystal Rock) Dep. 85:10-86:19.  Feeling "forced to do something we didn't want to," Crystal Rock ultimately "gave in to Keurig's demand and stopped the launch" with TreeHouse.  Ex. N, Descoteaux Dep. 144:17-145:15; Ex. L, Descoteaux Decl. ¶ 21.  Despite sworn statements and testimony from Crystal Rock that Keurig killed its product launch, which would

---

[10] Ignoring the teaching of his own article, in this case Dr. Ugone insists that the causation factors TreeHouse must eliminate include, among others, "quality complaints," pricing "compared to competitors other than Keurig," "TreeHouse not selling brewers," "TreeHouse not being vertically integrated to roast its own coffee," "TreeHouse using taggant ink to make its cups compatible with Keurig's brewers," and "TreeHouse's service."  Ex. D, Ugone THS Dep. 95:23-96:25.  Apart from being inconsistent with Keurig's admissions elsewhere about these factors—*e.g.*, Keurig's expert's concession in the DPP case that the effect of Keurig selling brewers while other competitors do not cannot be quantified into a variable affecting damages—it is also not the law. *See* Ex. S, Laila Haider Dep. 79:19-25 (admitting there is no variable DPPs' expert could add to his damages model to account for the different business models of Keurig and its competitors who sell only Compatible Cups).

have moved forward absent Keurig's interference, Dr. Ugone suggests TreeHouse's economist, Dr. Stiroh, relied on insufficient evidence to support causation because Crystal Rock admitted that Keurig made a great product.  Ex. B, Ugone THS Rebuttal, Ex. 8 at 38.  Dr. Ugone likewise suggests Dr. Stiroh relied on insufficient evidence that TreeHouse lost customers like Kroger and AVA Coffee due to Keurig's conduct, despite sworn statements that Kroger "ultimately never would have moved [its] private label single-serve beverage business to Keurig in the first place if it were not for Keurig's lock-out technology and false statements" and that "Keurig was using the 2.0 as a reason why [AVA] had no choice but to work with only Keurig."  *See* Ex. O, Rossana Klawon (Kroger) Decl. ¶ 76; Ex. P, Timothy Canale (AVA Coffee) Decl. ¶ 26.  Despite such unrefuted evidence of causation, Dr. Ugone testified it "do[es] not cause me to change any of my opinions."  Ex. D, Ugone THS Dep. 274:7-275:13.

Contrary to Dr. Ugone's opinions, so long as a plaintiff addresses any "obvious" alternative explanations the defendant may propose, the plaintiff is free to present its damages model to a jury.  *See Discover*, 582 F. Supp. 2d at 506; *U.S. Info. Sys.* 313 F. Supp. 2d at 238.  In *Discover*, for instance, defendant, like Keurig here, repeatedly argued that "alternative causes can fully explain" plaintiff's injuries.  582 F. Supp. 2d at 504.  Defendant's argument failed at the *Daubert* stage, where plaintiff's damages model was found admissible because plaintiff "need not prove that the [conduct] was the only cause of its alleged [injury]," and plaintiff's expert had addressed any "obvious" alternative explanations.  *Id.* at 505.  Defendant's argument failed again at summary judgment.  Despite vigorous assertions of alternative causes, "competent evidence . . . support[ed] a causal link" between the anticompetitive conduct and the resultant injury.  *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 409 (S.D.N.Y. 2008).

Citing no legal or economic authority, Dr. Ugone's standard contradicts even his own

16

previous work on the subject.  In a publication on determining damages, Dr. Ugone recognized:

> Sometimes the link between the 'bad act' and damages is straightforward.  For example, perhaps the unit sales of a plaintiff firm steadily increased over time until the 'bad act' occurred; thereafter, the plaintiff's sales decreased.  Causation can be demonstrated relatively easily in such a case, absent other causes that might explain part of the decline.

Ex. K, Ugone & Strong, *supra*, at 522.

Here, as shown below in Dr. Stiroh's Figure 1, TreeHouse's dollar sales increased until Keurig's 2.0 brewer launch in August 2014, then quickly decreased.  According to Dr. Ugone's own writings, causation should be "straightforward" and "demonstrated easily in such a case," particularly given that Dr. Ugone cannot point to any "other cause" around August 2014 explaining the sharp decline in TreeHouse's sales.



Ex. Q, Stiroh Reply Report at 9 (Figure 1).

The case law on causation in antitrust cases makes clear that Dr. Ugone based his own opinions on an incorrect legal standard directly at odds with the governing law.  These opinions are not the product of reliable principles and methods and, consequently, must be excluded as unreliable and irrelevant under Rule 702.

> **2.      Dr. Ugone's Novel "Benefit Deduction" Opinion Is Neither Relevant Nor Reliable and Poses a Danger of Confusing the Issues and Misleading the Factfinder.**

Dr. Ugone also criticizes Dr. Stiroh for failing to "take into account (or acknowledge) that TreeHouse has benefitted (and continues to benefit) from Keurig's investments in the Keurig brewing system."  Ex. B, Ugone THS Rebuttal ¶ 7.  In other words, Dr. Ugone believes the sales TreeHouse made purportedly *because* of Keurig's product investments must be deducted from TreeHouse's damages.  *See, e.g.*, *id.* ¶¶ 23-24, 105.  This concept finds no basis in the law.

Dr. Ugone's novel "benefit deduction" opinion is neither relevant nor reliable, rendering the opinion inadmissible under Rule 702.  The opinion further warrants exclusion under Rule 403 for presenting a danger of confusing the issues and misleading the factfinder.

> **a.      Dr. Ugone's benefit deduction opinion is irrelevant and does not assist the trier of fact because the argument relates to claims TreeHouse does not assert in this case.**

While TreeHouse complains of the anticompetitive strategies Keurig employed to grow its business, Dr. Ugone acknowledged that TreeHouse does *not* claim Keurig violated the antitrust laws merely by growing its business, expanding its brewer base, or offering incentives to do so.  Ex. D, Ugone THS Dep. 50:16-19, 51:23-52:2, 56:2-10.  Yet Dr. Ugone maintains that Dr. Stiroh should have deducted from damages any profits stemming from his assertion that "TreeHouse has benefitted (and continues to benefit) from Keurig's investments in the Keurig brewing system."  Ex. B, Ugone THS Rebuttal ¶ 7.

Dr. Ugone's benefit deduction opinion is based on a claim that TreeHouse does not make:

that Keurig has violated the antitrust laws simply by making investments in the Keurig brewing "system." Ex. D, Ugone THS Dep. 50:17-19, 51:23-52:2, 56:2-10. Thus, that opinion must be excluded because it does not relate to any issue in this case. *See Champagne Metals v. Ken-Mac Metals, Inc.* 2008 WL 5205204, at *10 (W.D. Okla. Dec. 11, 2008) (excluding lost sales calculations based on "plaintiff's sale of steel," which was not at issue). Further, Dr. Ugone's opinion is not helpful because nowhere does he quantify the value of purported benefits that should be deducted from TreeHouse's damages or suggest a methodology to do so. Simply put, his opinion is irrelevant to any issue in this litigation and must be excluded under Rule 702.

> **b.    Dr. Ugone's benefit deduction opinion is unreliable because it is based on a misunderstanding of antitrust law and relies on no methodology.**

To appreciate the unreliability of Dr. Ugone's benefit deduction opinion, consider the following hypothetical: A star employee, who regularly works long hours and represents his company exceptionally well in the media, embezzles $1 million from the company. When convicted and ordered to return the money, the employee argues that he should return *less* than $1 million because of the extra hours he worked and the value of the positive media attention he brought the company. The absurdity of this argument is plain, yet it parallels the benefit deduction opinion Dr. Ugone offers in his expert report.

Antitrust plaintiffs have "considerable latitude" in proving that damages "flow from" a defendant's anticompetitive conduct. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 6290584, at *5 (S.D.N.Y. Oct. 27, 2020) (quoting *Dial Corp.*, 165 F. Supp. 3d at 38. The requirement that antitrust damages flow from anticompetitive conduct precludes the notion that damages should account for factors entirely unrelated to the alleged conduct—a notion Dr. Ugone holds here. In a familiar antitrust case, *Image Technology Services., Inc. v. Eastman Kodak Co.*, a group of companies that serviced Kodak equipment in the 1980s proved that "Kodak"

used its monopoly over Kodak photocopier and micrographic parts to attempt to create and actually create a second monopoly over the service markets," in violation of the antitrust laws, resulting in a lost profit damages award.  125 F.3d 1195, 1201-02 (9th Cir. 1997).  As the case made its way up and down the federal court system, no court contemplated an argument that the service companies had to quantify the benefits they enjoyed by virtue of Kodak's investments in its own equipment, then deduct those benefits from their lost profits.  The argument would be nonsensical and—as with Dr. Ugone's benefit deduction opinion—find no basis in economics or the law.

Further, Dr. Ugone has failed to articulate any methodology, let alone a reliable one, that can be used to account for the purported benefits TreeHouse received from Keurig's brewer investments.  Dr. Ugone's opinion must be excluded as unreliable under Rule 702.

**c.   Even if Dr. Ugone's benefit deduction opinion is admissible, the risk of confusing and misleading the factfinder substantially outweighs any probative value under Rule 403.**

Just as Dr. Ugone's adjustments to TreeHouse's damages model pose a substantial danger of confusing the issues and misleading the factfinder, so does Dr. Ugone's benefit deduction opinion.  *See supra* § III.A.2; *LVL XIII Brands*, 209 F. Supp. 3d at 643.  Dr. Ugone presents an unsupported opinion regarding claims TreeHouse does not assert and a question that is not presented.  This opinion is all but certain to confuse the issues and mislead the factfinder.  *See, e.g.*, *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (affirming exclusion of expert testimony that "would probably have hopelessly confused and misled the jury"); *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, 2019 WL 3573663, at *7 (W.D. Pa. Aug. 6, 2019) (finding a substantial danger that an expert report would confuse and mislead the jury where it "calculates damages owed to [a] non-party . . . under a . . . claim that was never asserted").  At the same time, the probative value of Dr. Ugone's benefit deduction opinion is extremely limited, as he fails to even articulate a proper methodology for quantifying the value of

20

benefits that should be deducted, let alone quantifying that value himself.  This danger of confusion substantially outweighs any probative value of the opinion, warranting exclusion under Rule 403.

### 3.   Dr. Ugone Admits He Is Not Qualified as a Survey Expert, Necessitating Exclusion of His Opinions Regarding TreeHouse's Consumer Surveys.

The *Daubert* standard requires the exclusion of opinions an expert is not qualified to give, even if the expert is qualified in other fields.  *See Nimely*, 414 F.3d at 395, 399 n.13.  Here, Dr. Ugone readily acknowledges that he is not qualified as an expert on consumer surveys.  In his own words, "I'm not a survey design person and I'm not a survey person."  Ex. D, Ugone THS Dep. 301:6-18;  *see id.*  at 294:23-295:6.   The same admission led another court to exclude Dr. Ugone's survey opinions last year.  The court found it significant that "[w]hen asked what type of expert he is, Ugone replied that 'I am an economist and a damage quantifier.  I am not a survey design person, I am not a survey person.'"  *Hudock v. LG Elecs. U.S.A., Inc.*, 2020 WL 4676285, at *2 (D. Minn. Aug. 12, 2020).  Dr. Ugone's opinions regarding the reliability of consumer surveys performed in this litigation—including the work of TreeHouse's survey experts and the work of Keurig's rebuttal survey expert—similarly fail the qualification requirement of Rule 702.

Though admittedly not qualified as a survey expert, Dr. Ugone repeatedly offers survey opinions in this case.  He relies on the opinions of Keurig's survey expert, Dr. Rossi, to opine on purported "flaws" in TreeHouse's surveys.  *See, e.g.*, Ex. B, Ugone THS Rebuttal ¶¶ 259-61, 277, 287; *id.* ¶ 43 (concluding TreeHouse's survey results are "overstated and unreliable"); Ex. D, Ugone THS Dep. 291:20-293:15 (taking issue with a survey's underlying assumptions and questions); *id*. at 305:25-307:3 (attempting to show "why the [survey] responses could end up being unreliable").  At the same time, Dr. Ugone opines that a survey performed by Keurig's survey expert provides "an appropriate measure" of consumer behavior and "the correct survey inputs" for TreeHouse's damages calculations.  Ex. B, Ugone THS Rebuttal ¶ 278; Ex. D, Ugone

21

THS Dep. 328:1-5.  Dr. Ugone's survey opinions are not admissible.

Nor does Dr. Ugone's parroting of Dr. Rossi's survey opinions qualify him as a survey expert or solve the *Daubert* problem.  An expert "may not . . . merely adopt another expert's opinions as his or her own reflexively and without understanding the materials or methods underlying the other expert's opinions."  *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015).  Dr. Ugone "may not rely on another expert's opinion if [he] is unfamiliar with the methods and reasons supporting the [opinion]," he "cannot merely recite another expert's opinion," and he "cannot directly testify as to the conclusions of another expert." *Id.* (citations omitted).  Yet this is precisely what Dr. Ugone does when "relying on Dr. Rossi's survey expertise" for his opinions, citing Dr. Rossi's report for a discussion of flaws in TreeHouse's surveys, and supporting his opinions by noting "Dr. Rossi . . . has said that there's flawed survey results."  Ex. D, Ugone THS Dep. 291:13-19, 294:5-9; Ex. B, Ugone THS Rebuttal ¶¶ 261, 277.  Dr. Ugone admits he did not conduct any "independent analysis . . . to corroborate Dr. Rossi's opinions."  Ex. D, Ugone THS Dep. 304:7-12.  Indeed, when asked to identify the economic analysis in a paragraph discussing flaws in TreeHouse's survey, Dr. Ugone responded, "[T]his paragraph is coming from Dr. Rossi.  So it's his view of [TreeHouse's] survey."  *Id.* 303:24-304:5.  Dr. Ugone's survey opinions must be excluded.

### D.   DR. UGONE'S OPINIONS REGARDING CONSUMER KNOWLEDGE AND PERCEPTION OF WHETHER UNLICENSED PORTION PACKS WORKED IN THE KEURIG 2.0 BREWER SHOULD BE EXCLUDED.

On the issue of unjust enrichment in JBR's damages case, Dr. Ugone opines regarding consumer and retailer perception of JBR and unlicensed portion packs and whether those portion packs were compatible with Keurig 2.0 brewers.  Ex. C, Ugone JBR Report, ¶¶ 136-39, 183-85.  Notably, though Dr. Ugone was unaware of any evidence that Keurig ever corrected its prior misstatements that unlicensed portion packs did not work in 2.0 brewers, he unscientifically posits

a blanket assumption that the "market knows" that Competitive Cups work:

> Q.      All right. Do you have ***any evidence that you saw that Keurig ever told the general public, distributors or its customers*** that unlicensed pods would work in the 2.0 brewer?
>
> A.      I can't -- I can't speak to that. ***I'm not aware of that sort of corrective statement***, but **what I'm saying is the market knows that unlicensed pods do work**.

Ex. R, Ugone April 2, 2021 Tr. 98:20-25 (emphasis added).   Unfortunately, Dr. Ugone's conclusion that the "market knows" is unsupported by any survey evidence or methodology, data, studies, or appropriate experience or expertise, and is therefore inadmissible.  *See Amorgianos*, 303 F.3d at 265 ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."); *see also AU New Haven, LLC v. YKK Corp.*, 2019 WL 1254763, at *24 (S.D.N.Y. Mar. 19, 2019).

In connection with his rebuttal report regarding JBR's damages, Dr. Ugone repeatedly admitted during his deposition that he is not relying on any surveys, data, or studies to support his conclusion that consumers had figured out that unlicensed portion packs were compatible with Keurig 2.0 brewers.  Ex. R, Ugone April 2, 2021 Tr. 13:5-7 ("Q.  And your analysis ***did not rely on any surveys***; is that correct? A. That's correct, yes."), 99:7-24 ("Q. So as you sit here today, you do not know, based upon any survey analysis, what the market knew or didn't know? A. ***I did not do any surveys***."), 101:7-11 ("Q. And you ***don't refer to any survey work*** in your report, do you? A.· · · ***No***, I'm -- I'm just responding to the questions you ask."), 101:13-102:3, especially 101:22-23 ("have not -- ***I have not done an independent survey***").  He admitted that because he had not done any surveys (and, indeed, as shown above in § III.C.3, is no survey expert), he could not quantify what percentage of consumers were misled or not misled:

> Q.      You have no idea ***how many consumers were impacted by statements made***

> **by Keurig concerning unlicensed pods not working in a 2.0**, do you?
>
> A.   **I _can't put a number on that_**. I've not done -- I was not asked to do any survey work on that.

Ex. R, Ugone April 2, 2021 Tr. 104:3-9 (emphasis added).  Because of the lack of survey work, Ugone provided no basis for reliably "saying … the market knows that unlicensed pods do work." *Id.* at 98:20-25.

Courts routinely exclude expert opinions on consumer perception as unreliable when not backed by any data, studies, or appropriate experience and expertise in assessing consumer perception. *Saxon Glass Techs., Inc. v. Apple Inc*., 393 F. Supp. 3d 270, 293 (W.D.N.Y. 2019), aff'd, 824 F. App'x 75 (2d Cir. 2020) (excluding expert opinion that "essentially speculates as to what an ordinary consumer or a specialized buyer of glass would know or think"); *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 282 (S.D.N.Y. 2010) (experts in jewelry history and appraisal not qualified to testify as to whether particular trade dress was identifiable to consumers and distinctive because neither expert had training in how the public perceived products); *Hackett v. Procter & Gamble Co*., 2008 WL 4646049, at *2 (S.D. Cal. Oct. 17, 2008) (chemist not qualified to offer opinions involving issues of consumer perception of advertising or market research); *Yeti Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 404553, at *1 (W.D. Tex. Jan. 27, 2017) (hunting and fishing industry expert could not offer opinions about the public's perception of the plaintiff's coolers); *Wyatt Tech. Corp. v. Malvern Instruments, Inc*., 2010 WL 11505684, at *8 (C.D. Cal. Jan. 25, 2010) (physics expert not qualified to offer any opinions on consumer perceptions).

In one recent case, the court excluded an expert's opinion that consumers were well aware of keratin as an ingredient in hair products.  *Price v. L'Oreal USA, Inc.*, 2020 WL 4937464, at *4 (S.D.N.Y. Aug. 24, 2020).  In excluding the opinion, the court found that the opinion was not based on reliable methodology because the expert lacked "experience from which he can opine on

24

consumer knowledge of keratin as an ingredient in hair products" and the expert's methodology "cannot be tested, challenged or replicated." *Id.* Likewise in *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017), the court excluded expert testimony regarding secondary meaning in the market that were based on the expert's review of social media platforms; his failure to record the search terms used or the sites viewed made the conclusions unrepeatable and unreliable.

In light of the overwhelming case law on reliable evidence of market perception, Dr. Ugone's unsupported opinions about market perception and awareness of unlicensed portion pack compatibility, which are bereft of any supporting data, methodology, sources, or studies, should be excluded here as unreliable.

## IV.   **CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that the Court order that certain portions of Dr. Ugone's testimony be excluded.

Dated:  August 18, 2021                           Respectfully submitted,

*/s/ Alexander G. Brown*
Alexander G. Brown (*Pro Hac Vice*)
James C. Grant (*Pro Hac Vice*)
Valarie C. Williams (*Pro Hac Vice*)
B. Parker Miller (*Pro Hac Vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Phone: 404-881-7000
Fax: 404-881-7777
alex.brown@alston.com
jim.grant@alston.com
parker.miller@alston.com
valarie.williams@alston.com

Steven L. Penaro
ALSTON & BIRD LLP
90 Park Avenue
15th Floor
New York, NY 10016-1387
Phone: 212-210-9400
Fax: 212-210-9444
steve.penaro@alston.com

*Counsel for Plaintiff McLane Company, Inc.*

Aldo A. Badini
abadini@winston.com
Susannah P. Torpey
storpey@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
(212) 294-4700 (fax)

Dan K. Webb
dwebb@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600
Diana L. Hughes
dhughes@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 615-1700

*Counsel for Plaintiffs TreeHouse
Foods, Inc., Bay Valley Foods, LLC
and Sturm Foods, Inc.*

Daniel Johnson Jr. (CA Bar No. 57409)
Mario Moore (CA Bar No. 231644)
Robert G. Litts (CA Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
1350 Old Bayshore Highway, Suite 520,
Burlingame, CA 94010
Telephone: 415-604-4500
Email: dan@danjohnsonlawgroup.com

26

Email: mario@danjohnsonlawgroup.com
Email: robert@danjohnsonlawgroup.com

*Counsel for Plaintiff JBR, Inc. (d/b/a Rogers Family Company)*