**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>KEURIG GREEN MOUNTAIN SINGLE SERVE COFFEE ANTITRUST LITIGATION | ECF Case<br><br>MDL No. 2542<br><br>Master Docket No. 1:14-md-2542-VSB |
| JBR, Inc. (D/B/A ROGERS FAMILY COMPANY),<br><br>      Plaintiff/<br>      Counterclaim Defendant,<br><br>      v.<br><br>KEURIG GREEN MOUNTAIN, INC. (F/K/A GREEN MOUNTAIN COFFEE ROASTERS, INC. AND AS SUCCESSOR TO KEURIG, INC.),<br><br>      Defendant/<br>      Counterclaim Plaintiff. | <u>**REDACTED PUBLIC VERSION**</u><br><br>1:14-cv-04242-VSB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JBR'S MOTION TO EXCLUDE THE PROPOSED TESTIMONY OF MARK WOOD**

## <u>TABLE OF CONTENTS</u>

Page

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF RELEVANT FACTS ........................................................... 2

    A.  Mr. Wood has No Experience with the Coffee Form Factors Relevant to Keurig's Proposed Market Definition................................................................................... 2

    B.  Mr. Wood's Expert Analysis Did Not Utilize the Tools from His Education and Industry Background to Analyze the Evidence Readily Available From His Former Employer Keurig................................................................................................... 3

    C.  Mr. Wood's Discussion Of Contracts Ignores Critical Distinctions Between the Products ████████████████████████████████████████.......... 5

III.   ARGUMENT ..................................................................................................... 7

    A.  Mr. Wood's Industry Background — Only in Single-Serve Coffee — Does Not Fit With the Issue, Which Requires Consideration of the Interplay of Markets for Whole Bean, Ground Coffee, and Instant Coffee in Addition to Single-Serve Coffee........... 7

    B.  Mr. Wood's Opinions On Market Definition Are Also Impermissible to the Extent He Shielded Himself From the Facts He Once Had Access to at Keurig. ...................... 10

IV.   CONCLUSION ................................................................................................ 14

**TABLE OF AUTHORITIES**

Page

**Cases**

*Allen–Myland, Inc. v. International Business Machines Corp*.,
   33 F.3d 194 (3d Cir.1994)........................................................................................7

*Blessing v. Sirius XM Radio Inc.*,
   No. 09 CV 10035 HB, 2011 WL 1194707 (S.D.N.Y. Mar. 29, 2011) .....................7

*Brown Shoe Co. v. U.S.*,
   370 U.S. 294 (1962).........................................................................................1, 7, 13

*Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*,
   389 F.Supp.2d 1145 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th Cir. 2008) ...........7

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
   504 U.S. 451 (1992)...........................................................................................1, 7

*F.T.C. v. Whole Foods Mkt., Inc.*,
   548 F.3d 1028 (D.C. Cir. 2008) ............................................................................12

*Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*,
   275 F.3d 762 (9th Cir. 1997) ................................................................................11

*Mason v. AmTrust Fin. Servs., Inc.*,
   No. 19 CIV. 8364 (DLC), 2020 WL 7425254 (S.D.N.Y. Dec. 18, 2020)................9

*Meredith Corp. v. SESAC LLC*,
   1 F. Supp. 3d 180 (S.D.N.Y. 2014).......................................................................11

*Nat'l Tr. Ins. Co. v. Columbia Nat'l Ins. Co*.,
   No. 3:18-CV-1440-J-34JBT, 2020 WL 4284813 (M.D. Fla. July 10, 2020) .........11

*Pecover v. Elec. Arts Inc.*,
   No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010)................8, 9

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010)....................................................................8

*R.F.M.A.S. v. So*,
   No. 06 Civ. 13114, 2010 WL 4341331 (S.D.N.Y. Oct. 12, 2010) ...........................8

*R.F.M.A.S., Inc. v. So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010)....................................................................11

*Ralston v. Mortg. Invs. Grp., Inc.*,
   No. 08-536-JF PSG, 2011 WL 6002640 (N.D. Cal. Nov. 30, 2011)....................8, 9

*Samuels v. Holland Am. Line-USA Inc.*,
  656 F.3d 948 (9th Cir. 2011) ........................................................................10

*SEC v. Tourre*,
  950 F.Supp.2d 666 (S.D.N.Y. 2013).............................................................9

*Times–Picayune Pub. Co. v. United States*,
  345 U.S. 594 (1953).......................................................................................13

*U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*,
  112 F. Supp. 3d 122 (S.D.N.Y. 2015)..........................................................9

*United States v. Archer–Daniels–Midland Co.*,
  866 F.2d 242 (8th Cir.1988) .........................................................................11

*United States v. Second Chance Body Armor, Inc.*,
  289 F. Supp. 3d 145 (D.D.C. 2018) .............................................................9

## I.    __INTRODUCTION__

Plaintiff JBR brings this motion to exclude the market definition expert opinion of Keurig's coffee industry expert Mark Wood.

Mr. Wood offers an opinion as a purported expert in the coffee industry. Ex. A [Wood 4/1/21 Dep.] at 8:18-22, 117:2-9.[1]  However, his expertise is solely in single-serve coffee, not whole bean or ground coffee or instant coffee, and he therefore lacks expertise germane to the critical inquiry in market definition — whether whole bean and ground coffee and instant coffee are substitutes for single-serve coffee with respect to the uses to which single-serve coffee is put. *Eastman Kodak Co. v. Image Technical Services, Inc*., 504 U.S. 451, 482 (1992); *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962).

Mr. Wood's opinions are further rendered unreliable by a telling omission: he did not review the critical documents and testimony reflecting the information available to him when he actually worked in the single-serve coffee industry — Keurig's.  Had he reviewed the documents and testimony of his previous employer of 18 years in connection with his analysis, it would have been clear that they do not support his opinion. ████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] Unless otherwise specified, all cited exhibits are to the Declaration of Mario Moore in Support of Plaintiff's Motion to Exclude the Testimony of Mark Wood, filed herewith.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████

When assessed against the true facts available to him, Mr. Wood's opinions lack an appropriate foundation and are unreliable.  His opinions should therefore be excluded.

## II.   STATEMENT OF RELEVANT FACTS

### A.   Mr. Wood has No Experience with the Coffee Form Factors Relevant to Keurig's Proposed Market Definition.

In his past experience, Mr. Wood was not directly involved in product launches, sales, marketing, or pricing of whole bean coffee or ground coffee or instant coffee.  ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

104:13-20.  In short, unlike JBR's industry expert Bob Giacomelli,[2] Mr. Wood lacks industry experience concerning whether sales, pricing, or demand for ground coffee, instant coffee, or whole bean coffee has any effect on changes in pricing or demand for single-serve coffee.

**B.      Mr. Wood's Expert Analysis Did Not Utilize the Tools from His Education and Industry Background to Analyze the Evidence Readily Available From His Former Employer Keurig.**

When he did his MBA at Harvard Business School, Mr. Wood took economics coursework including courses focused on market strategy, data analysis, and pricing.  Ex. A at 23:24-24:17; Ex. E [Ex. 1 to Wood Report].  He subsequently used that training to do business development, market analysis, competitive analysis, and pricing decision making in the biotechnology industry at Genzyme in Boston. Ex. A at 24:2-4, 26:17-27:17, 32:15-19; Ex. E.  Eventually, he worked in the single-serve coffee industry at Keurig for over 18 years, leaving Keurig in 2019.  Ex. A at 38:20-24.

However, in connection with his expert analysis, Mr. Wood did not utilize his MBA or experience in market strategy, data analysis, and pricing to opine on market definition.  He admittedly did not perform any economic analysis.  Ex. A at 19:4-6, 116:17-117:1.  Pointedly, his report did not rely on market analysis performed by Keurig despite having the ability to ask Keurig's counsel to show him any of the 10 million pages of documents produced by Keurig in this litigation.  *Id*. at 35:19-36:15.  Instead of relying on pricing, demand, or elasticity studies from Keurig's production of millions of documents, his expert report focused on a few third-party market reports.

Despite reviewing numerous Keurig reports during this litigation,[3] ███████████████

███████████████████████████████████████████████████

---

[2] Ex. B [Expert Report of Bob Giacomelli], ¶¶ 2, 5-8.
[3] Ex. D [Wood 30(b)(6) 2/14/20 Dep.] at 286:25-287:11.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[4] ████████████████████████████████████████████████████
████████████████████████████████████

any change in demand for single serve portion packs.  *Id*. at 52:13-19.  In other words, despite introduction of brewers popular with whole bean and ground coffee consumers, he could not point to any evidence that customers switched from k-cups to whole bean coffee or ground coffee as a result of those brewers entering the market.

      **C.**      **Mr. Wood's Discussion Of Contracts Ignores Critical Distinctions Between the Products** ███████████████████████████████████████████████████
███

      Mr. Wood, who spent over 15 years negotiating, drafting, and executing Keurig agreements with various coffee industry participants, ██████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████    ███████████████████████    ██████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████
        ████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████



███████████████████████████████████████████████████

███████████████████████████████████████████████████

III.     **ARGUMENT**

       A.     **Mr. Wood's Industry Background — Only in Single-Serve Coffee — Does Not Fit With the Issue, Which Requires Consideration of the Interplay of Markets for Whole Bean, Ground Coffee, and Instant Coffee in Addition to Single-Serve Coffee.**

Mr. Wood's testimony fundamentally misses the mark in addressing the issue at hand — market definition, and whether certain coffee products are or are not reasonably interchangeable for the same use. *Eastman Kodak*, 504 U.S. at 482 ("the outer boundaries of a relevant market are determined by reasonable interchangeability of use."); *Brown Shoe Co.*, 370 U.S. at 325 ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."); *Blessing v. Sirius XM Radio Inc.*, No. 09 CV 10035 HB, 2011 WL 1194707, at *7 (S.D.N.Y. Mar. 29, 2011); *Allen–Myland, Inc. v. International Business Machines Corp.*, 33 F.3d 194, 206 (3d Cir.1994) ("Interchangeability implies that one product is roughly equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively.").

When a proposed industry expert's background does not match the issue on which they are rendering opinions, the areas of mismatch are proper grounds to exclude the expert opinion. *See Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F.Supp.2d 1145, 1154 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th Cir. 2008) (excluding expert testimony on a specialized category of insurance policies where, "[d]espite many years of experience in the insurance business" that would allow him to testify as an expert on some aspects of industry standards, the expert lacked the "particularized experience" necessary for qualification to testify as an expert on

the topic of the more specialized insurance policy); *Ralston v. Mortg. Invs. Grp.*, Inc., No. 08-536-JF PSG, 2011 WL 6002640, at *6 (N.D. Cal. Nov. 30, 2011) (partially excluding testimony and noting: "There is a marked distinction between years of professional practice resulting in knowledge and experience pertaining to the practiced industry, and experience that is sufficiently specific to a sub-practice within the industry."); *R.F.M.A.S. v. So*, No. 06 Civ. 13114, 2010 WL 4341331, at *19 (S.D.N.Y. Oct. 12, 2010) (excluding expert testimony in case involving infringement of jewelry designs where witnesses "[did] not draw on their areas of actual expertise in arriving at the[ir] conclusion ...); *Pecover v. Elec. Arts Inc*., No. C 08-2820 VRW, 2010 WL 8742757, at *6 (N.D. Cal. Dec. 21, 2010) (partially excluding opinions on factors driving market demand and noting: "Hamburger's experience in video game retail allowed her directly to observe trends in video game sales.  In order to reach her conclusion regarding the "factors that drive" these trends, however, Hamburger relies upon statistical analyses of market data, the interpretation and evaluation of which are outside of her expertise.  This opinion is accordingly unreliable."); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 475–76 (S.D.N.Y. 2010) (partially excluding testimony where industry expert's "general references to his experience, or alternatively, to his belief about the "right thing" to do not provide a reliable basis for his proposed testimony.").

In other words, while an industry expert's testimony is permissible on the areas of background that match the issue, the Court will exclude the areas of proposed testimony where the expert's background is an inadequate foundation for a reliable expert opinion.  *Pension Comm. of Univ. of Montreal Pension Plan*, 691 F. Supp. 2d at 475–76; *R.F.M.A.S.*, 2010 WL 4341331, at *19; *Pecover v. Elec. Arts Inc*., 2010 WL 8742757, at *6.  Likewise, courts will exclude an industry expert who lacks knowledge of a specific industry or fact pattern that is at issue in the litigation.

8

*See*, *e.g.*, *United States v. Second Chance Body Armor, Inc*., 289 F. Supp. 3d 145, 177 (D.D.C. 2018) (excluding industry expert who was "without any experience working in or studying the particular industry at issue—fibers manufactured for ballistic use."); *SEC v. Tourre*, 950 F.Supp.2d 666, 674 75 (S.D.N.Y. 2013) (excluding expert with expertise in "general area of structured finance," but no experience in particular industry of collateralized debt obligations).

As an example, in *Ralston v. Mortg. Invs. Grp., Inc*., No. 08-536-JF PSG, 2011 WL 6002640, at *5–6 (N.D. Cal. Nov. 30, 2011), the court noted that [u]nlike his opinions about the general practices of mortgage brokers, the court here cannot ascertain the reliability of D'Alonzo's extrapolations to the "typical" practices of other brokers in offering and explaining Pay Option ARMs."  The court therefore partially excluded industry expert's opinions because the expert's "experience and industry knowledge does not support reliable opinion testimony on the specific types of documents, examples, or verbal disclosures other brokers provide their clients when discussing a Pay Option ARM loan package."  *Id*.  Similarly, in *Pecover*, 2010 WL 8742757, at *6, the industry expert was allowed to opine on issues she observed in selling video games, but not larger industry trends that would only be observable from market analyses that she lacked expertise to perform.  Likewise, insurance industry experts have been excluded from insurance cases requiring specific knowledge relating to actuarial practices.  *See*, *e.g.*, *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co*., 112 F. Supp. 3d 122, 151-52 (S.D.N.Y. 2015); *Mason v. AmTrust Fin. Servs., Inc*., No. 19 CIV. 8364 (DLC), 2020 WL 7425254, at *5 (S.D.N.Y. Dec. 18, 2020). Similarly, a travel industry expert was excluded from testifying in a case requiring specific industry expertise as to the cruise ship industry.  *See Samuels v. Holland Am. Line-USA Inc*., 656 F.3d 948, 953 (9th Cir. 2011).

██████████████████████████████████████████████████████████

████████████████████████████████████████████ but that opinion is unreliable

because he has no experience in launching, marketing, selling, or pricing instant coffee, ground

coffee, or whole bean coffee to retailers or consumers.  Ex. A at 41:21-24; 42:16-20; 43:12-18,

44:2-11; 44:21-24; 79:6-11; 80:6-12, 81:13-82:9; Ex. C [Wood Report], ¶¶ 20, 34.

Applying the cases on industry experts, Mr. Wood should not be permitted to testify

regarding pricing, demand, and buyer behavior with respect to whole bean coffee, ground coffee,

and instant coffee as potential substitutes for single-serve coffee because he has no background in

the selling, demand for, or pricing of those products.  Mr. Wood's testimony on those issues would

be unreliable, and therefore is inadmissible.

### B.     Mr. Wood's Opinions On Market Definition Are Also Impermissible to the Extent He Shielded Himself From the Facts He Once Had Access to at Keurig.

Instead of relying upon his expertise, Mr. Wood parrots facts from counsel, while shielding

himself from evidence from Keurig's own production and testimony that is contrary.  Mr. Wood

has spent over 15 years working with pricing of single-serve portion packs, but circumscribed his

expert analysis by insulating himself from Keurig's detailed analyses of pricing and demand.  By

shielding himself from the facts most relevant to the issue, Mr. Wood generated an opinion that

ignores the factual record, and fails to deploy Mr. Wood's background — his MBA training.

An industry expert's testimony is inadmissible when they are working with a record

circumscribed by counsel that shields them from critical relevant facts.  For example, in

*R.F.M.A.S., Inc.* 748 F. Supp. 2d at 268–69, the court excluded two industry experts who did not

"draw on their areas of actual expertise in arriving at the conclusion" but instead "made logical

deductions based on the set of assumptions" litigants' counsel "directed them to employ and the

circumscribed universe of data available to them." Similarly, in another case, the court excluded

industry expert opinion that failed to connect the industry expert's experience with the facts of the case. *Nat'l Tr. Ins. Co. v. Columbia Nat'l Ins. Co*., No. 3:18-CV-1440-J-34JBT, 2020 WL 4284813, at \*2–4 (M.D. Fla. July 10, 2020), report and recommendation adopted, No. 3:18-CV-1440-J-34JBT, 2020 WL 4428469 (M.D. Fla. July 31, 2020) ("Where an expert witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

Few facts are more relevant to market definition that the pricing of the product at issue and its effects on possible substitutes that buyers might consider as alternatives for the same use case. A market is "properly defined … when a hypothetical profit-maximizing firm selling all of the product in that market could charge significantly more than a competitive price, *i.e.*, without losing so many sales to other products that its price became unprofitable."  *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 218 (S.D.N.Y. 2014); DOJ Horizontal Merger Guidelines § 4.1.1; *see also United States v. Archer–Daniels–Midland Co*., 866 F.2d 242, 248 (8th Cir.1988) (functionally interchangeable sweeteners were separate product markets because "a small change in the price of [one] would have little or no effect on the demand for [the other]"); *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc*., 275 F.3d 762, 767 (9th Cir. 1997) ("The determination of what constitutes the relevant product market hinges, therefore, on a determination of those products to which consumers will turn, given reasonable variations in price."); *F.T.C. v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1038 (D.C. Cir. 2008) (noting that in market definition analysis, "one asks whether a hypothetical monopolist controlling all suppliers in the proposed market could profit from a small price increase.").

Here Mr. Wood failed to connect his MBA experience to the facts of the case; he avoided any evidence of interplay of pricing, demand, as between whole bean, instant, ground, and single-serve portion pack coffee.  This omission is particularly troubling because Mr. Wood, acting as a designated expert for Keurig after already having testified five times as a fact witness, had access to any Keurig documents he wished for, including any of the ten million pages of documents Keurig produced in this litigation.  Ex. A at 35:19-36:15.  His expert report relies upon almost nothing from Keurig's production of internal business documents relating to the effects of increases in the price of single-serve portion packs on demand for whole bean coffee, ground coffee, and instant coffee.  Most of Mr. Wood's citations are to third party National Coffee Association (NCA) reports that include no data analysis of the actual prices of portion packs or ground coffee, whole bean coffee, or instant coffee. Ex. C, ¶ 70.  The level of generality in the NCA reports pales in comparison to much more nuanced and detailed Keurig information available from Keurig's production █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

          ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████ single-serve portion packs have no cross elasticity of demand with whole bean coffee or ground coffee and therefore the products are not in the same market. *Times–Picayune Pub. Co. v. United States*, 345 U.S. 594, 612 (1953) (noting relevant market must be drawn narrowly to exclude products whose cross-elasticities of demand are small; that is, a product should be excluded where only a limited number of buyers will purchase it upon a reasonable variation in price); *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.").

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ instant coffee, whole bean coffee, and ground coffee are simply not in the same market as single-serve coffee. ███████████████████████████████████████████████████

█████████████████████████████████████████ Mr. Wood ignored (and never addressed or

analyzed) the evidence that directly contradicted his conclusion that instant, whole bean, and ground coffee are in the same market as single-serve portion pack coffee. ██████████████

████████████████████████████████████████████████████████████████

███████

Likewise, Mr. Wood offers expert opinions that Keurig's contracts were not meant to exclude coffee systems from competition. ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████   ████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████

Because his analysis is unreliable and contrary to the facts available from his own memory and the records from his work at Keurig, Mr. Wood's market definition opinions are inadmissible.

## IV.  **CONCLUSION**

Mr. Wood's opinions are highly likely to cause jury confusion as they are merely arguments of counsel couched with the imprimatur of a Harvard MBA and former Keurig executive.  As a matter of expert opinion, Mr. Wood's opinions on packaged whole bean, ground coffee, and instant coffee are unreliable and lack foundation in the factual record.  Accordingly, Mr. Wood's market definition opinions should be excluded under the case law relating to inadmissible opinions of industry experts.

14

Dated: August 18, 2021                              Respectfully submitted,


                                    By:      */s/ Mario Moore*
                                             Daniel Johnson Jr. (CA Bar No. 57409)
                                             Mario Moore (CA Bar No. 231644)
                                             Robert G. Litts (CA Bar No. 205984)
                                             **DAN JOHNSON LAW GROUP, LLP**
                                             1350 Old Bayshore Highway, Suite 520,
                                             Burlingame, CA 94010
                                             Telephone: 415-604-4500
                                             Email: dan@danjohnsonlawgroup.com
                                             Email: mario@danjohnsonlawgroup.com
                                             Email: robert@danjohnsonlawgroup.com

                                             *Counsel for Plaintiff*
                                             *JBR, Inc. d/b/a Rogers Family Company*