**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | Case No. 1:14-md-2542 |
| This Document Relates To All Actions | **STIPULATIONS AND COUNTERSTATEMENTS** <br><br> <u>**REDACTED PUBLIC VERSION**</u> |

WHEREAS, on October 1, 2021, the Court directed the undersigned parties to stipulate to certain information as to each custodian at issue in (i) the Motion for Spoliation Sanctions filed by Plaintiffs TreeHouse Foods, Inc. Bay Valley Foods, LLC, Sturm Foods Inc. (together "TreeHouse"), McLane Company, Inc., and Direct Purchaser Plaintiffs (collectively, Plaintiffs) [ECF No. 1282] and (ii) Keurig's Motion for Spoliation Sanctions as to Plaintiffs TreeHouse and JBR, Inc. [ECF No. 1289], with citations to the relevant exhibits accompanying the Motions;

WHEREAS, the Court directed the parties to continue to confer as to the remaining categories of information requested in the August 5 Order and include additional stipulations of fact on which the parties agree with citations to the relevant exhibits accompanying the Motions; and

WHEREAS, to the extent the parties cannot stipulate to a fact requested in the August 5 Order, the parties are to set forth each parties' position as to that fact without argument.

IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, solely for the purposes of resolving the Motions:

I.      **Keurig's Proposed Stipulated Facts Related to Plaintiffs' Motion as to Keurig and Plaintiffs' Responses and Counterstatements of Fact**

**Plaintiffs' Position with Respect to Replies:**

Plaintiffs maintain that Keurig's inclusion of replies herein is inappropriate and in violation of the scope of the Court's Order, dated October 1, 2021, which states that, "[t]o the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument." ECF 1554 at 2. Keurig has already set forth its position as to each fact in its initial proposed stipulation of fact such that further replies exceed the scope of the Court's Order.   As such, Plaintiffs have not included replies to Keurig's responses at this time.   However, the lack of replies to Keurig's responses does not indicate that Plaintiffs agree with Keurig's responses.   Plaintiffs would be happy to provide any additional information the Court would like during oral argument or at the appropriate time if so requested by the Court.

**Keurig's Preliminary Statement:**

The Court requested that the parties attempt to stipulate to proposed facts bearing on the pending Motions, citing to the exhibits accompanying those motions.  ECF 1434, 1554.  Keurig has confined itself to the motions record in accordance with the Court's Orders.

As to facts to which the parties could not stipulate, the Court directed the parties to set forth "each parties' position as to that fact without argument." ECF 1554 (adopting Plaintiffs' proposal). Plaintiffs have nevertheless included significant argument in their responses to Keurig's proposed stipulated facts.  Plaintiffs have also gone outside the motions record to introduce documents and arguments not raised in their briefing.  Keurig asks the Court to strike or disregard these additional documents and arguments outside the motions record.

Keurig has provided its position as to certain facts on which the parties have not stipulated, consistent with the Court's October 1 Order.  Plaintiffs advised that they will object to Keurig providing its position to these facts, despite the language of the Orders permitting it.

A.    **Information Requested in the Court's October 1 Order [ECF No. 1554], Including (i) Dates of Employment; (ii) Title; and (iii) Date of Initial Receipt of a Preservation Notice for this Litigation;**

1.    The content of Keurig's preservation notices is not at issue in Plaintiffs' Motion.

    Plaintiffs' Response to Paragraph 1:  Stipulated.

Don Barberio

2.    Mr. Barberio worked for Keurig from June 1996 until June 2014.  He is the Former Vice President – At Home Sales.  Keurig Ex. 1 at 1 [ECF 1340-1].[1]

    Plaintiffs' Response to Paragraph 2:  Stipulated.

3.    Mr. Barberio initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

    Plaintiffs' Response to Paragraph 3:  Stipulated.

Will Billings

4.    Mr. Billings worked for Keurig from September 2005 until November 2015.  He is the Former Senior Director, Category.  Keurig Ex. 1 at 2 [ECF 1340-1].

    Plaintiffs' Response to Paragraph 4:  Stipulated.

5.    Mr. Billings initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

---

[1] For clarity, all citations to the record use the document's original pagination, rather than the pagination generated by the CM/ECF system and included in the header.

       <u>Plaintiffs' Response to Paragraph 5</u>:  Stipulated.

<u>Larry Blanford</u>

6.     Mr. Blanford worked for Keurig from May 2007 until March 2013.  He is the Former CEO of Green Mountain Coffee Roasters, Inc.  Keurig Ex. 1 at 3 [ECF 1340-1].

       <u>Plaintiffs' Response to Paragraph 6</u>:  Stipulated.

7.     Mr. Blanford was no longer working for Keurig when TreeHouse filed its Complaint and thus did not receive a preservation notice for this litigation.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

       <u>Plaintiffs' Response to Paragraph 7</u>: Plaintiffs stipulate to the fact that Mr. Blanford was no longer working for Keurig when TreeHouse filed its Complaint.  Plaintiffs stipulate to the fact that Mr. Blanford did not receive a preservation notice for this litigation.  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee.  ECF No. 41 at 8.  In addition, in its amended initial disclosures, Keurig stated that "[e]ach of the following current and former Keurig employees may only be contacted through counsel" and "are likely to have discoverable information that Keurig may use to support its defenses," including Mr. Blanford.  Pls. Ex. 43 at 3, ECF 1284-43.  Unlike former employees, Keurig set forth a separate section in its disclosures for "Third Parties."  *Id*. at 8.  Former employees

were also included in the category of "Party" for the purposes of calculating deposition hours. ECF No. 434 at 1.

Keurig's Position as to Paragraph 7:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

Dwight Brown

8.      Mr. Brown worked for Keurig from August 2009 until August 2014.  He is the Former Senior Vice President of Marketing.  Keurig Ex. 1 at 3 [ECF 1340-1].

Plaintiffs' Response to Paragraph 8:  Plaintiffs stipulate to the fact that Mr. Brown worked for Keurig from August 2009 until August 2014 but do not stipulate as to the fact that Mr. Brown was the Former Senior Vice President of Marketing.  Mr. Brown was the former Senior Vice President of the Marketing Center of Excellence and the former Vice President of Consumer Marketing.  Pls. Ex. 1 at 1-2, ECF No. 1287-1.

9.      Mr. Brown initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

Plaintiffs' Response to Paragraph 9:  Stipulated.

Susan Cote

10.      Ms. Cote worked for Keurig from January 2004 until March 2014.  She is the Former Senior Director, Category.  Keurig Ex. 1 at 5 [ECF 1340-1].

Plaintiffs' Response to Paragraph 10:  Plaintiffs stipulate to the fact that Ms. Cote worked for Keurig from January 2004 until March 2014.  Plaintiffs do not stipulate to the fact that Ms. Cote was the former Senior Director, Category at Keurig.  Ms. Cote was the former Senior Category Director of Specialty Coffee at Keurig.  Pls. Ex. 1 at 2, ECF No. 1287-1.

11.    Ms. Cote's employment ended in March 2014 and thus she did not receive a preservation notice for this litigation.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

Plaintiffs' Response to Paragraph 11:  Plaintiffs stipulate to the fact that Ms. Cote's employment ended in March 2014.  Plaintiffs also stipulate to the fact that Ms. Cote did not receive a preservation notice for this litigation.  Plaintiffs do not have sufficient knowledge and information to stipulate to the implication that Ms. Cote's employment ending was the reason that Ms. Cote did not receive a preservation notice for this litigation.  TreeHouse's Complaint in this litigation was filed on February 11, 2014, before Ms. Cote's employment with Keurig ended in March 2014.  ECF No. 2.  Plaintiffs also do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee.  ECF No. 41 at 8.  Former employees were also included in the category of "Party" for the purposes of calculating deposition hours.  ECF No. 434 at 1.

Keurig's Position as to Paragraph 11:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

Ken Crites

12.     Mr. Crites worked for Keurig from August 2003 until March 2013.  He is the Former Senior Director, Category.  Keurig Ex. 1 at 6 [ECF 1340-1].

Plaintiffs' Response to Paragraph 12:  Stipulated.

13.     Mr. Crites was no longer working for Keurig when TreeHouse filed its Complaint and thus did not receive a preservation notice for this litigation.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

Plaintiffs' Response to Paragraph 13:  Plaintiffs stipulate to the fact that Mr. Crites was no longer working for Keurig when TreeHouse filed its Complaint.  Plaintiffs stipulate to the fact that Mr. Crites did not receive a preservation notice for this litigation.  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee.  ECF No. 41 at 8.  In addition, in its amended initial disclosures, Keurig stated that "[e]ach of the following current and former Keurig employees may only be contacted through

counsel" and "are likely to have discoverable information that Keurig may use to support its defenses," including Mr. Crites. Pls. Ex. 43 at 4, ECF 1284-43. Unlike former employees, Keurig set forth a separate section in its disclosures for "Third Parties." *Id*. at 8. Former employees were also included in the category of "Party" for the purposes of calculating deposition hours. ECF No. 434 at 1.

<u>Keurig's Position as to Paragraph 13</u>: Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored. *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]"). Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

<u>Ron DiFabio</u>

14.    Mr. DiFabio worked for Keurig from September 2008 until March 2016. He is the Former Senior Vice President - At Home Sales. Keurig Ex. 1 at 7 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 14</u>: Stipulated.

15.    Mr. DiFabio initially received a preservation notice for this litigation on February 17, 2014. Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure Letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

<u>Plaintiffs' Response to Paragraph 15</u>: Stipulated.

<u>Suzanne DuLong</u>

16.    Ms. DuLong worked for Keurig from January 2010 until December 2016. She is the Former Vice President of Global Communications. Keurig Ex. 1 at 8 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 16</u>: Stipulated.

17.    Ms. DuLong initially received a preservation notice for this litigation on March 31, 2016.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure Letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).  Ms. DuLong was under a pre-existing litigation hold in connection with other matters.  *Id.*

Plaintiffs' Response to Paragraph 17:  Plaintiffs stipulate to the fact that Ms. DuLong initially received a preservation notice for this litigation on March 31, 2016.  Plaintiffs do not have sufficient knowledge or information to stipulate to the fact that Ms. DuLong was under a pre-existing litigation hold in connection with other matters or to the extent that it implies that the pre-existing litigation hold in connection with other matters covered the same subject matter and would ensure preservation of material relevant to this litigation.

Tom Ferguson

18.    Mr. Ferguson worked for Keurig from March 2012 until April 2016.  He is the Former Vice President of Retail Sales & Grocery.  Keurig Ex. 1 at 9 [ECF 1340-1].

Plaintiffs' Response to Paragraph 18:  Plaintiffs stipulate to the fact that Mr. Ferguson worked for Keurig from March 2012 until April 2016.  Plaintiffs do not stipulate to the fact that Mr. Ferguson is the former Vice President of Retail Sales & Grocery.  Mr. Ferguson was the former Senior Vice President of U.S. Hot Beverages and the former Senior Vice President of Sales, Grocery, Drug, Club.  Pls. Ex. 1 at 5, ECF No. 1287-1.

19.    Mr. Ferguson initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 19:  Stipulated.

Steve Ferreira

20.    Mr. Ferreira worked for Keurig from April 2004 until April 2016.  He is the Former Vice President, Finance.  Keurig Ex. 1 at 10 [ECF 1340-1].

Plaintiffs' Response to Paragraph 20:  Plaintiffs stipulate to the fact that Mr. Ferreira worked for Keurig from April 2004 until April 2016.  Plaintiffs do not stipulate to the fact that Mr. Ferreira is the former Vice President, Finance at Keurig.  Mr. Ferreira is the former Vice President of Finance, Business Analytics, Demand Planning & Strategy at Keurig.  Pls. Ex. 1 at 4, ECF No. 1287-1.

21.     Mr. Ferreira initially received a preservation notice for this litigation on February 16, 2015.  Pls. Ex. 1 [ECF 1287-1].  He was under a pre-existing litigation hold in connection with other matters.  Pls. Ex. 41 [ECF 1287-19] (August 7, 2018 Letter from W. Newton to S. Torpey).

Plaintiffs' Response to Paragraph 21:  Plaintiffs stipulate to the fact that Mr. Ferreira initially received a preservation notice for this litigation on February 16, 2015.  Plaintiffs do not have sufficient knowledge or information to stipulate to the fact that Mr. Ferreira was under a pre-existing litigation hold in connection with other matters or to the extent that it implies that the pre-existing litigation hold in connection with other matters covered the same subject matter and would ensure preservation of material relevant to this litigation.

Bruce Godfrey

22.     Mr. Godfrey worked for Keurig from September 2010 until April 2017.  He is the Former Director of Market Research.  Keurig Ex. 1 at 12 [ECF 1340-1].

Plaintiffs' Response to Paragraph 22:  Stipulated.

23.     Mr. Godfrey initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 23:  Stipulated.

Don Holly

24.     Mr. Holly worked for Keurig from July 2001 until October 2013.  He is the Former Vice President Beverage Quality.  Keurig Ex. 1 at 13 [ECF 1340-1].

Plaintiffs' Response to Paragraph 24:  Stipulated.

25.      Mr. Holly was no longer working for Keurig when TreeHouse filed its Complaint and thus did not receive a preservation notice for this litigation.  Pls. Exhibit G [ECF 1393-7] (D. Holly Dep. Tr. at 256:1-3); Keurig Ex. 38 [ECF 1340-38] (M. Baird February 12, 2020 email to Plaintiffs' counsel regarding the hard drive for Don Holly's Keurig-issued computer).

Plaintiffs' Response to Paragraph 25:  Plaintiffs stipulate to the fact that Mr. Holly was no longer working for Keurig when TreeHouse filed its Complaint.  Plaintiffs stipulate to the fact that Mr. Holly did not receive a preservation notice for this litigation.  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  See Pls. Ex. B (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee. ECF No. 41 at 8.  In addition, in its amended initial disclosures, Keurig stated that "[e]ach of the following current and former Keurig employees may only be contacted through counsel" and "are likely to have discoverable information that Keurig may use to support its defenses," including Mr. Holly.  Pls. Ex. 43 at 5, ECF 1284-43.  Unlike former employees, Keurig set forth a separate section in its disclosures for "Third Parties."  *Id*. at 8.  Former employees were also included in the category of "Party" for the purposes of calculating deposition hours.  ECF No. 434 at 1.

Keurig's Position as to Paragraph 25:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August

5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]")

Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

<u>Jimmy Huang</u>

26.     Mr. Huang worked for Keurig from January 2005 through the present.  He was a Senior Director of Engineering.  Keurig Ex. 1 at 14 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 26</u>:  Stipulated.

27.     Mr. Huang initially received a preservation notice for this litigation on April 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

<u>Plaintiffs' Response to Paragraph 27</u>:  Stipulated.

<u>Sherry Hurley</u>

28.     Ms. Hurley worked for Keurig from August 2011 until June 2018.  She is the Former CPFR Manager (Collaborative Planning, Forecasting and Replenishment).  Keurig Ex. 1 at 16 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 28</u>:  Stipulated.

29.     Ms. Hurley initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

<u>Plaintiffs' Response to Paragraph 29</u>:  Stipulated.

<u>Dave Manly</u>

30.     Mr. Manly worked for Keurig from December 2002 until September 2014.  He is the Former Senior Vice President of Innovation; Vice President and General Manager, Away From Home.  Keurig Ex. 1 at 16 [ECF 1340-1].  Mr. Manly subsequently worked as an independent contractor from September 2014 until July 2015, focusing on Keurig's cold-beverage appliance.

Keurig Ex. 8 [ECF 1340-8] (D. Manly Dep. Tr. 549:1-550:21); Keurig Ex. 1 at 17 n.2 [ECF 1340-1].

Plaintiffs' Response to Paragraph 30:  Plaintiffs stipulate to the fact that Mr. Manly worked for Keurig from December 2002 until September 2014.  Plaintiffs also stipulate to the fact that Mr. Manly is the Former Senior President of Innovation; Vice President and General Manager, Away From Home at Keurig.  Plaintiffs do not have sufficient knowledge and information to stipulate to the fact that Mr. Manly worked as an independent contractor from September 2014 until July 2015, focusing on Keurig's cold-beverage appliance.

31.     Mr. Manly initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 31:  Stipulated.

Bob McCall

32.     Mr. McCall worked for Keurig from June 2009 until May 2017.  He is the Former Senior Vice President - Engineering.  Keurig Ex. 1 at 18 [ECF 1340-1].

Plaintiffs' Response to Paragraph 32:  Stipulated.

33.     Mr. McCall initially received a preservation notice for this litigation on April 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 33:  Stipulated.

Joe Mueller

34.     Mr. Mueller worked for Keurig from October 2013 until March 2015.  He is the Former Vice President of Sales.  Keurig Ex. 1 at 19 [ECF 1340-1].

Plaintiffs' Response to Paragraph 34:  Stipulated.

35.     Mr. Mueller initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 35: Stipulated.

Tom Novak

36.     Mr. Novak worked for Keurig from November 2007 until May 2017.  He is the Former Senior Vice President – Beverage Research & Development.  Keurig Ex. 1 at 20 [ECF 1340-1].

Plaintiffs' Response to Paragraph 36: Stipulated.

37.     Mr. Novak initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 37: Stipulated.

Fran Rathke

38.     Ms. Rathke worked for Keurig from October 2003 until December 2015.  She is the Former Chief Financial Officer.  Keurig Ex. 1 at 21 [ECF 1340-1].

Plaintiffs' Response to Paragraph 38: Stipulated.

39.     Ms. Rathke initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 39: Stipulated.

Jim Shepard

40.     Mr. Shepard worked for Keurig from July 2005 until September 2016.  He is the Former Senior Director, Engineering.  Keurig Ex. 1 at 22 [ECF 1340-1].

Plaintiffs' Response to Paragraph 40: Stipulated.

41.     Mr. Shepard initially received a preservation notice for this litigation on April 17, 2014.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

Plaintiffs' Response to Paragraph 41: Stipulated.

Steve Smits

42.     Mr. Smits worked for Keurig from January 2012 until July 2013.  He was the Former Sales Vice President, At Home.  Keurig Ex. 1 at 23 [ECF 1340-1].

Plaintiffs' Response to Paragraph 42:  Stipulated.

43.     Mr. Smits was no longer working for Keurig when TreeHouse filed its Complaint and thus did not receive a preservation notice for this litigation. Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 43:  Plaintiffs stipulate to the fact that Mr. Smits was no longer working for Keurig when TreeHouse filed its Complaint.  Plaintiffs stipulate to the fact that Mr. Smits did not receive a preservation notice for this litigation.  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee.  ECF No. 41 at 8.  In addition, in its amended initial disclosures, Keurig stated that "[e]ach of the following current and former Keurig employees may only be contacted through counsel" and "are likely to have discoverable information that Keurig may use to support its defenses," including Mr. Smits.  Pls. Ex. 43 at 7, ECF 1284-43.  Unlike former employees, Keurig set forth a separate section in its disclosures for "Third Parties."  *Id*. at 8.  Former employees were also included in the category of "Party" for the purposes of calculating deposition hours.  ECF No. 434 at 1.

Keurig's Position as to Paragraph 43:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No.

15

1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August

5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Plaintiffs' argument that Keurig "had an obligation or ability to control the production of

documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

<u>Michelle Stacy</u>

44.    Ms. Stacy was employed by Keurig from November 2008 until March 2014.  She

is the Former President, Keurig, Inc.  Keurig Ex. 22 [ECF 1340-22] (M. Stacy Dep. Tr. at 8:14-

22); Pls. Ex 41 at 3 [ECF 1287-19] (W. Newton letter to Plaintiffs' counsel dated August 7, 2018);

Keurig Ex. 1 at 23 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 44</u>:  Stipulated.

45.    Ms. Stacy was no longer working for Keurig when TreeHouse filed its Complaint

and thus did not receive a preservation notice for this litigation.  Pls. Ex. 1 [ECF 1287-1].  Ms.

Stacy's departure from Keurig was announced in August 2013 and she transitioned her duties at

that time.  Keurig Ex. 1 at 23 n.3 [ECF 1340-1]; Keurig Ex. 22 [ECF 1340-22] (M. Stacy Dep. Tr.

at 8:14-22); Pls. Ex 41 at 3 [ECF 1287-19] (W. Newton letter to Plaintiffs' counsel dated August

7, 2018).

<u>Plaintiffs' Response to Paragraph 45</u>:  Plaintiffs stipulate that Ms. Stacy did not

receive a preservation notice for this litigation.  Plaintiffs do not stipulate to the fact that Ms. Stacy

was no longer working for Keurig when TreeHouse filed its Complaint.  As Stipulation No. 44

states, Ms. Stacy was employed by Keurig until March 2014 and TreeHouse filed its Complaint

on February 11, 2014.  Plaintiffs dispute the relevance of the fact that Ms. Stacy's departure from

Keurig was announced in August 2013 and that she transitioned her duties at that time.  Plaintiffs

do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the

production of documents of custodians who were still employed by Keurig.  *See* Pls. Ex. B, ECF

16

No. 1393-2 (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee.  ECF No. 41 at 8.  In addition, in its initial disclosures, Keurig stated that "[e]ach of the following current and former Keurig employees may only be contacted through counsel" and "are likely to have discoverable information that Keurig may use to support its defenses related to the allegations in the Complaints," including Ms. Stacy.  Nov. 19, 2021 Torpey Decl. Ex. I (Keurig Initial Disclosures at 4).  Unlike former employees, Keurig set forth a separate section in its disclosures for "Third Parties."  At that time, Keurig stated that it had not yet "identified which third parties it may rely on to support its defenses."  *Id.* at 5.  Former employees were also included in the category of "Party" for the purposes of calculating deposition hours.  ECF No. 434 at 1.

> Keurig's Position as to Paragraph 45:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' Response also includes a document outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

Chris Stevens

46.    Mr. Stevens worked for Keurig from February 1996 until April 2013.  He is the Former Vice President Corporate Relations & Customer Development.  Keurig Ex. 1 at 25 [ECF 1340-1].

Plaintiffs' Response to Paragraph 46:  Stipulated.

47.    Mr. Stevens was no longer working for Keurig when TreeHouse filed its Complaint and thus did not receive a preservation notice for this litigation.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 43 [ECF 1340-43] (Letter from Keurig Human Resources regarding Chris Stevens' retirement, dated August 13, 2012).

Plaintiffs' Response to Paragraph 47:  Plaintiffs stipulate to the fact that Mr. Stevens was no longer working for Keurig when TreeHouse filed its Complaint.  Plaintiffs stipulate to the fact that Mr. Stevens did not receive a preservation notice for this litigation.  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  See Pls. Ex. B., ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee.  ECF No. 41 at 8.  Former employees were also included in the category of "Party" for the purposes of calculating deposition hours.  ECF No. 434 at 1.

Keurig's Position as to Paragraph 47:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  See Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

Brad Tidwell

48.    Mr. Tidwell worked for Keurig from August 2013 until August 2015.  He is the Former Supply Chain Lead.  Keurig Ex. 1 at 26 [ECF 1340-1].

Plaintiffs' Response to Paragraph 48:  Stipulated.

49.    Mr. Tidwell was no longer working for Keurig when McLane filed its Complaint and thus did not receive a preservation notice for this litigation.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 26 [ECF 1340-1].

Plaintiffs' Response to Paragraph 49:  Plaintiffs stipulate that Mr. Tidwell did not receive a preservation notice for this litigation.  Plaintiffs do not otherwise stipulate to the fact as set forth by Keurig.  As Keurig acknowledges in Stipulation No. 48, Mr. Tidwell was working for Keurig when TreeHouse filed its complaint on February 11, 2014.  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation to issue a preservation notice to current Keurig employees; instead, Keurig certified that it had issued preservation holds to "all individuals reasonably identified as having information that may be potentially relevant to the" litigations, independent of whether or not they were a current employee.  ECF No. 41 at 8.  To the extent that Keurig implicitly disputes Mr. Tidwell's relevance to the TreeHouse litigation, Plaintiffs dispute that implication.

Keurig's Position as to Paragraph 49:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August

5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

<u>Ian Tinkler</u>

50.    Mr. Tinkler worked for Keurig from March 2005 until August 2015.  He is the Former Vice President, Research & Development / Brewer Engineering.  Keurig Ex. 1 at 27 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 50</u>:  Stipulated.

51.    Mr. Tinkler initially received a preservation notice for this litigation on April 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

<u>Plaintiffs' Response to Paragraph 51</u>:  Stipulated.

<u>Jon Wettstein</u>

52.    Mr. Wettstein worked for Keurig from April 1993 until May 2014.  He is the Former Vice President Operations.  Keurig Ex. 1 at 29 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 52</u>:  Stipulated.

53.    Mr. Wettstein initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

<u>Plaintiffs' Response to Paragraph 53</u>:  Stipulated.

<u>John Whoriskey</u>

54.    Mr. Whoriskey worked for Keurig from August 2002 until December 2015.  He is the Former Vice President, At Home; Head of U.S. Sales & Marketing.  Keurig Ex. 1 at 30 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 54</u>:  Stipulated.

55.     Mr. Whoriskey initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 [ECF 1287-1].

       Plaintiffs' Response to Paragraph 55: Stipulated.

Ben Yoder

56.     Mr. Yoder worked for Keurig from April 2011 through the present.  He was the Vice President Business Development.  Keurig Ex. 1 at 31 [ECF 1340-1].

       Plaintiffs' Response to Paragraph 56: Stipulated.

57.     Mr. Yoder initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 31 [ECF 1284-31] (Litigation Hold Disclosure letter dated November 15, 2018 from M. Baird to Plaintiffs' counsel).

       Plaintiffs' Response to Paragraph 57: Stipulated.

58.     Plaintiffs' Counter Statement to Keurig's Proposed Stipulated Facts:  Keurig has not provided the information requested in the Court's October 1 Order for Kevin Sullivan.

       Kevin Sullivan worked for Keurig from November 2003 until June 2016.  He is the former Chief Technology Officer at Keurig; Vice President of Engineering, New Product Development and R&D at Keurig.  Pls. Ex. 1 at 8-9, ECF No. 1287-1.

       Kevin Sullivan initially received a preservation notice for this litigation on February 17, 2014.  Pls. Ex. 1 at 8, ECF No. 1287-1.

       Keurig's Response to Plaintiffs' Counter Statement in Paragraph 58:   Stipulated as to Mr. Sullivan's title, dates of employment, and date of initial receipt of a preservation notice for this litigation.  Keurig did not include this information in the proposed stipulation because the Court's August 5, 2021 Order did not identify any category that concerns Mr. Sullivan.

59.     Plaintiffs' Counter Statement to Keurig's Proposed Stipulated Facts: Keurig has not provided the information requested in the Court's October 1 Order for Richard Sweeney.

Richard Sweeney worked for Keurig from January 1996 to December 2017.  He is the former Keurig Co-Founder, Advisor and former Vice President of Special Projects Product Supply at Keurig.  Pls. Ex. 1 at 98, ECF No. 1402-1.

Richard Sweeney initially received a preservation notice for this litigation on March 31, 2016, more than 2 years after TreeHouse filed its Complaint in this litigation.  Pls. Ex. 1659 at 2.

Keurig's Response to Plaintiffs' Counter Statement in Paragraph 59:  Stipulated as to Mr. Sweeney's title, dates of employment, and date of initial receipt of a preservation notice for this litigation.   Mr. Sweeney was under a pre-existing litigation hold in connection with other matters. Pls. Ex. 41 [ECF 1287-19] (August 7, 2018 Letter from W. Newton to S. Torpey).  Keurig did not include this information in the proposed stipulation because the Court's August 5, 2021 Order did not identify any category that concerns Mr. Sweeney.

**B.     For the Keurig custodians whom Plaintiffs contend Keurig failed to conduct (or insufficiently conducted) interviews (see ECF No. 1286 at 8), information concerning that custodian's dates of employment, title, receipt of preservation notice(s), and dates of interview(s);**

60.     Plaintiffs contend Keurig failed to conduct (or insufficiently conducted) interviews for eleven custodians:  Don Barberio, Larry Blanford, Dwight Brown, Ron DiFabio, Tom Ferguson, Steve Ferreira, Bruce Godfrey, Don Holly, Bob McCall, Michelle Stacy, and Ben Yoder.  Pls. Ex. 12 [ECF 1287-5].

Plaintiffs' Response to Paragraph 60:  Stipulated.

61.     Mr. Yoder was the only individual among those at issue in this portion of Plaintiffs' Motion who was still employed by Keurig when added as a document custodian.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 61:  Stipulated that Ben Yoder was still employed by Keurig when added as a document custodian.  Plaintiffs do not stipulate insofar as Keurig suggests it only had an obligation or ability to control the production of documents of custodians who were still employed by Keurig.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4 2017 W. Newton Email).

Keurig's Position as to Paragraph 61:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' argument that Keurig "had an obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

62.    The remaining 10 individuals were no longer employed by Keurig at the time that they were added as custodians.  Pls. Ex. 1 [ECF 1287-1]; Pls. Ex. 4 [ECF 1284-4] (Letter from S. Southall to Plaintiffs' counsel, dated December 11, 2019).

Plaintiffs' Response to Paragraph 62:  Stipulated that Don Barberio, Larry Blanford, Dwight Brown, Ron DiFabio, Tom Ferguson, Steve Ferreira, Bruce Godfrey, Don Holly, Bob McCall, and Michelle Stacy were not employed by Keurig when added as document custodians.  Stipulated that Don Barberio, Larry Blanford, Dwight Brown, Ron DiFabio, Tom Ferguson, Steve Ferreira, Bruce Godfrey, Don Holly, Bob McCall, and Michelle Stacy were all added as custodians.  Plaintiffs do not stipulate insofar as Keurig suggests it had no obligation or ability to control the production of documents of custodians who were no longer employed by Keurig.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4 2017 W. Newton Email).  Keurig disclosed Don Barberio, Larry Blanford, Dwight Brown, Ron DiFabio, Tom Ferguson, Steve Ferreira, Bruce

Godfrey, Don Holly, Bob McCall, Michelle Stacy, and Ben Yoder as "current and former Keurig employees … likely to have discoverable information that Keurig may use to support its defenses and counterclaims" and as individuals who "may only be contacted through counsel."  Pls. Ex. 43 at 2, ECF 1284-43.  In the Joint Electronic Discovery Submission No. 1 and Order, Keurig "agree[d] to ask each of their document custodians whether he or she maintains potentially responsive documents or data in any of the electronic or hard-copy sources listed above, whether at the custodian's office, home, or online."  ECF No. 41.  Judge Broderick so ordered the Stipulated ESI Protocol and Order on July 1, 2014.  *Id*. at 38.

   <u>Keurig's Position as to Paragraph 62</u>:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' argument that Keurig had an "obligation or ability to control the production of documents" in the possession of former employees is not supported by Plaintiffs' Exhibit B.

   63. Plaintiffs served third-party document subpoenas on certain former Keurig employees at issue in this portion of Plaintiffs' Motion.  Keurig Ex. 1 at 8, 11, & 18 [ECF 1340-1]; Pls. Ex. 24 [ECF 1284-24] (August 22, 2019 letter from S. Southall to D. Johnson).

   <u>Plaintiffs' Response to Paragraph 63</u>:  Stipulated that Plaintiffs served third-party document subpoenas on certain former Keurig employees at issue because contrary to Keurig's disclosures, the Stipulated ESI Protocol and Order, and the position Keurig took with respect to another former Keurig employee that Keurig's counsel did not represent, Keurig maintained that "[t]o the extent that former employees retained documents from their time at Keurig, these documents were no longer within the possession, custody or control of Keurig."  Pls. Ex. 4, ECF

No. 1284-4 (Dec. 11, 2019 S. Southall Ltr.); *but see* Nov. 19, 2021 Torpey Decl. Ex. H at 1

(Keurig's Initial Disclosures) ("Each of the following current and former Keurig employees may

only be contacted through counsel"); Pls. Ex. 43 at 2, ECF 1284-43 (same); *see also* Keurig Ex.

32 at 13, ECF No. 1340-32 (February 2012 Employment Agreement that required Mr. Blanford to

"safeguard all Documents and [] surrender to the Company at the time his employment terminates,

or at such earlier time or times as the Board or its designee may specify, all Documents then in the

Executive's possession or control," and that "all documents, records, tapes and other media of

every kind and description relating to the business, present or otherwise, of the Company or its

Affiliates and any copies, in whole or in part, thereof (the 'Documents'), whether or not prepared

by the Executive, shall be the sole and exclusive property of the Company and its Affiliates");

Keurig Ex. 33, ECF No. 1340-33 ██████████████████████████████ );

Keurig Ex. 36, ECF No. 1340-36 (same); Keurig Ex. 37, ECF 1340-37 (same).  Keurig further

took the position that it controlled a copy of a non-custodian former employee's data kept at home.

*See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).

   <u>Keurig's Position as to Paragraph 63</u>:  Plaintiffs' Response includes improper

argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No.

1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August

5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Plaintiffs' Response also includes a document outside the motions record in violation of the

Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must

contain citations to the relevant exhibit(s) accompanying the Motions.").  Plaintiffs' Exhibit B

does not support Plaintiffs' argument that "Keurig further took the position that it controlled a

copy of a non-custodian former employee's data kept at home."  Keurig set forth its position in the

letter submitted as Plaintiffs' Exhibit 4.  *See* Pls. Ex. 4 at 3 [ECF 1284-4].  Letter from S. Southall to Plaintiffs' counsel, dated December 11, 2019).

64.    Keurig conducted custodial interviews of all former employee custodians that it was able to contact.  Keurig informed Plaintiffs in November 2019 that it had conducted these interviews.  Pls. Ex. 2 [ECF 1284-2] (December 16, 2019 email from S. Southall to K. Lanski, *et al.*).  Keurig offered to "advise which of its former employee custodians that it has not been able to reach concerning discovery in this case if each Plaintiff group agrees to make the same disclosure."   Pls. Ex. 4 at 4 [ECF 1284-4] (Letter from S. Southall to Plaintiffs' counsel, dated December 11, 2019).  Plaintiffs did not make such disclosure.

Plaintiffs' Response to Paragraph 64:   Plaintiffs do not stipulate as to whether Keurig conducted custodial interviews of all former employee custodians that it was able to contact or to the degree to which Keurig attempted to contact former employee custodians based on lack of sufficient knowledge and information.  Stipulated that Keurig represented to TreeHouse in November 2019 that it had "conducted custodial interviews of the former employee custodians that [it had] been able to contact."  Stipulated that Keurig offered to "advise which of its former employee custodians that it has not been able to reach concerning discovery in this case if each Plaintiff group agrees to make the same disclosure."  Plaintiffs do not stipulate that Plaintiffs did not make such disclosures.  For example, in October 2018, at the time TreeHouse agreed to add Tom Rothers as a limited email custodian, TreeHouse disclosed that "we have not been able to reach Tom Rothers given his retirement in 2014, but expect our client will be willing to produce his email even if we cannot locate him."  Pls. Ex. 13, ECF No. 1347-13 (Oct. 4, 2018 S. Torpey Ltr.).

Keurig's Position as to Paragraph 64:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Moreover, Plaintiffs' Response concerns a single disclosure as to one employee; Plaintiffs did not agree to Keurig's offer to make a mutual disclosure.

Don Barberio

65.    Mr. Barberio stopped working for Keurig in 2014.  He was added as a custodian at Plaintiffs' request in October 2018, more than four years after he left Keurig.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 65:  Stipulated that Mr. Barberio stopped working for Keurig on June 27, 2014 and that he was added as a custodian at Plaintiffs' request on October 3, 2018.  Pls. Ex. 1 at 1, ECF No. 1287-1.  Mr. Barberio was the main sales lead for customers including ███████████████████.  Pls. Ex. A, ECF 1402-1.  In its complaint, TreeHouse alleged ███████████████ were affected by Keurig's conduct.  ECF No. 86 (TreeHouse's Amended and Supplemental Complaint at ¶¶ 501, 511-13, 521, 525-26).

Keurig's Position as to Paragraph 65:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

66.    Mr. Barberio testified he spoke with Keurig's outside counsel in the summer of 2019.  Pls. Ex. 16 [ECF 1284-16] (D. Barberio Dep. Tr. at 13:14-15:12).  He believed the initial contact was in June of 2019, and he again spoke with Keurig's outside counsel in the

Thanksgiving/Christmas time frame of 2019. Pls. Ex. C [ECF 1393-3] (D. Barberio Dep Tr. at 364:4-366:8).

Plaintiffs' Response to Paragraph 66: Stipulated that Mr. Barberio testified that he believed his initial contact with Keurig's outside counsel was in June of 2019, and that he had a second conversation with Keurig's counsel around Thanksgiving or Christmas of 2019 but Keurig's statement omits relevant facts. Plaintiffs further state that Mr. Barberio was asked by Keurig's counsel if he had any documents during the second conversation with Keurig's counsel around Thanksgiving or Christmas of 2019, more than five years after TreeHouse filed its Complaint and after Keurig indicated it had already "substantially completed its production of non-privileged documents from the files of the original 29 Agreed Custodians on January 4, 2019. Pls. Ex. C (D. Barberio Dep. Tr. at 364:4-366:8); ECF No. 2 (TreeHouse Complaint, dated February 11, 2014); Nov. 19, 2021 Torpey Decl., Ex. P (Feb. 18, 2019 Letter at 4).

Keurig's Position as to Paragraph 66: Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored. *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]"). Plaintiffs' Response also includes a document outside the motions record in violation of the Court's order and should be ignored. *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").

67.    Mr. Barberio testified at his January 2020 deposition that he returned his laptop to Keurig in 2014 and had no files from his work at Keurig. Keurig Ex. 17 [ECF 1340-17] (D. Barberio Dep. Tr. at 36:12-17; 38:16-18).

Plaintiffs' Response to Paragraph 67: Stipulated that Mr. Barberio testified at his deposition that he returned his laptop to Keurig (that has since been lost by Keurig) when he left the company in 2014 and did not have any files from his time at Keurig in his possession at that time. However, he further testified that he maintained notes regarding meetings with ████████ ████████████████████ "in a yellow binder" that was thrown out when he cleaned out his office at the end of his employment. Keurig Ex. 17, ECF No. 1340-17 (D. Barberio Dep. Tr. at 36:12-17; 38:16-18; Pls. Ex. C, ECF No. 1393-3 (Barberio Tr. 306:2-20).

Keurig's Position as to Paragraph 67: Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored. *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]"). Keurig incorporates its position as to Paragraphs 184 and 185.

Larry Blanford

68. Mr. Blanford was added as a custodian at Plaintiffs' request in October 2018, more than five years after he left Keurig. Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 3 [ECF 1340-1].

Plaintiffs' Response to Paragraph 68: Stipulated that Mr. Blanford left Keurig in December 2012 and was added as a custodian at Plaintiffs' request in October 2018. Pls. Ex. 1 at 1, ECF 1287-1.

69. Plaintiffs state in Plaintiffs' Ex. 12 [ECF 1287-5] that Mr. Blanford testified that "he had not been contacted by counsel regarding this litigation as late as July 2019 and did not even know that there was an ongoing litigation." But Plaintiffs have not provided Mr. Blanford's testimony as an exhibit (and cited the incorrect page/line for their statement). Keurig does not agree with Plaintiffs' interpretation of this testimony.

Plaintiffs' Response to Paragraph 69:  Plaintiffs state that Mr. Blanford testified that "he had not been contacted by counsel regarding this litigation as late as July 2019 and did not even know that there was an ongoing litigation."  Nov. 19, 2021 Torpey Decl. Ex. A (Blanford Tr. 103:18-21) ("Amazing to me, and before I even knew these suits were progressing—because when I left the company, I left the company.  But in July, which is before I was contacted by counsel . . .").[2]  This was more than five years after this litigation, including Plaintiffs' sham litigation claim, was filed.  ECF No. 2 (TreeHouse Complaint, dated February 11, 2014, at 33-35).  Keurig disclosed in its Objections and Responses to TreeHouse's First Set of Interrogatories, dated August 21, 2018, that Mr. Blanford made the ultimate decision to file the sham *Sturm* Litigation.  Pls. Ex. 52, ECF 1284-52 (Keurig's Response to Interrogatory No. 2).  Despite this, Keurig did not contact Mr. Blanford regarding the instant litigation until July 2019, nearly a year later.  Nov. 19, 2021 Torpey Decl. Ex, A (Blanford Tr. 103:18-21).  Plaintiffs further note that, although the Court ordered Keurig to provide the date of its interview for Mr. Blanford, Keurig has not provided the information requested.

Keurig's Position as to Paragraph 69:  Plaintiffs' Response includes a document outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Keurig has confined itself to the motions record, as ordered by the Court; the record does not include the interview date for Mr. Blanford.

70.    Mr. Blanford returned his Keurig-issued computer and documents in 2013 as required by his employment agreement dated February 1, 2012.  Keurig Ex. 32 [ECF 1340-32] (employment agreement requiring return of company property).

---

[2] Plaintiffs' Exhibit 12 incorrectly cited to the transcript of Mr. Blanford's deposition, which Keurig has in its possession, at 105:18-21.  The correct citation is to 103:18-21.

Plaintiffs' Response to Paragraph 70:  Plaintiffs do not stipulate as to whether Mr. Blanford returned his Keurig-issued computer and documents in 2013 based on lack of sufficient knowledge and information.

Dwight Brown

71.     Mr. Brown was added as a custodian at Plaintiffs' request in October 2018, more than four years after he left Keurig.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 3 [ECF 1340-1].

Plaintiffs' Response to Paragraph 71:  Stipulated that Mr. Brown left Keurig in August 2014 was added as a custodian at Plaintiffs' request in October 2018.  Pls. Ex. 1 at 1, ECF No. 1287-1.  Keurig included Mr. Brown, Former Senior VP of Marketing for the Center of Excellence / Asia-Pacific, in its Amended Initial Disclosures as an individual "likely to have discoverable information regarding the marketing of Keurig brewers and portion packs."  Pls. Ex. 43 at 3, ECF 1284-43.  TreeHouse's Complaint contains allegations regarding Keurig's marketing practices.  ECF No. 86 at ¶ 11, 379, 400, 416, 460, 477, 479, 491 (TreeHouse's Amended and Supplemental Complaint).

Keurig's Position as to Paragraph 71:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

72.     Mr. Brown testified that he spoke with Keurig's outside counsel in October 2019. Pls. Ex. D [ECF 1393-4] (D. Brown Tr. at 29:4-10).

Plaintiffs' Response to Paragraph 72:  Stipulated that Mr. Brown spoke with Keurig's outside counsel in October 2019, but Keurig's statement omits relevant facts.  Plaintiffs further state that Mr. Brown first learned about this litigation when he was contacted by Keurig's outside counsel in October 2019, more than five years after TreeHouse filed its Complaint.  Pls.

Ex. D, ECF 1393-4 (D. Brown Tr. at 29:4-10); ECF No. 2 (TreeHouse Complaint, dated February 11, 2014).

      <u>Keurig's Position as to Paragraph 72</u>:   Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

      73.    Mr. Brown returned his Keurig-issued computer and documents in 2014



. Keurig Ex. 33 [ECF 1340-33] (       ).  Mr. Brown confirmed in his deposition that he did not have any documents relevant to this litigation.  Keurig Ex. 11 [ECF 1340-11] (D. Brown Dep.  Tr. at 43:23-44:19).

      <u>Plaintiffs' Response to Paragraph 73</u>:  Stipulated ███████████ that Mr. Brown confirmed in his deposition that he did not have any documents in his possession relevant to the litigation as of October 2019.  Keurig Ex. 33 at 3, ECF 1340-33; Keurig Ex. 11, ECF 1340-11 (D. Brown Dep. Tr. at 43:23-44:19).  Plaintiffs do not stipulate as to whether Mr. Brown returned his Keurig-issued computer and documents in 2014 based on lack of sufficient knowledge and information.

      <u>Ron DiFabio</u>

      74.    Mr. DiFabio was added as a custodian at Plaintiffs' request in October 2018, more than two years after he left Keurig.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 7 [ECF 1340-1].

      <u>Plaintiffs' Response to Paragraph 74</u>:  Stipulated that Mr. DiFabio, who left Keurig in March 2016, was added as a custodian at Plaintiffs' request in October 2018.  Pls. Ex. 1 at 3, ECF No. 1287-1.  Mr. DiFabio had regular meetings with retailer customers, including, but not

limited to, ██████████████████████████████████. Pls. Ex.
A, ECF 1402-1.  TreeHouse's Complaint detailed the relevance of these customers.  ECF No. 86
(TreeHouse's Amended and Supplemental Complaint at ¶¶ 501-05, 508-10, 515, 521, 524-25, 531-
48).  The fact that Keurig knew Mr. DiFabio's relevance to the litigation in 2014 is demonstrated
by the fact that counsel spoke with Mr. DiFabio regarding the litigation in 2014.  Pls. Ex. 6, ECF
No. 1287-3 (R. DiFabio Dep. Tr. at 208:1-19).

Keurig's Position as to Paragraph 74:  Plaintiffs' Response includes improper
argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No.
1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August
5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

75.   Mr. DiFabio testified that he first spoke with counsel in 2014 and then spoke with
Keurig's outside counsel in early January 2020.  Pls. Ex. 6 [ECF 1287-3] (R. DiFabio Dep. Tr. at
208:1-19).

Plaintiffs' Response to Paragraph 75:  Stipulated that Mr. DiFabio testified that he
was first notified of this litigation in 2014, while he was still employed by Keurig, and that the
next time he was contacted by counsel relating to the litigation was January 2020.  Pls. Ex. 6, ECF
No. 1287-3 (R. DiFabio Dep. Tr. at 208:1-19).

76.   In October 2018, when Mr. DiFabio was added as a custodian, he was involved in
a separate litigation filed by Keurig relating to his non-compete agreement (preventing Keurig
from contacting him directly) and testified that he no longer possessed any Keurig documents.
Keurig Ex. 9 [ECF 1340-9] (R. DiFabio Dep. Tr. at 285:18-286:5).

Plaintiffs' Response to Paragraph 76:  Stipulated that Mr. DiFabio was added as a
custodian in October 2018 and was involved in a separate litigation filed by Keurig.  Plaintiffs do

not stipulate that Keurig was prevented from contacting Mr. DiFabio directly with respect to this separate litigation from the one relating to his alleged non-compete agreement, which is not at issue in this litigation, or that Keurig was prevented from contacting Mr. DiFabio through counsel in the other litigation to confirm that they could discuss with Mr. DiFabio his preservation obligations relating to this litigation.  Plaintiffs also do not stipulate that Mr. DiFabio testified that he no longer possessed any Keurig documents.  Mr. DiFabio testified that he turned hard copy documents he had in his possession over to lawyers for SharkNinja, who were involved in the separate non-compete litigation against Keurig, and that he believed the data was returned to Keurig.  Keurig Ex. 9, ECF No. 1340-9 (R. DiFabio Dep. Tr. at 285:18-286:5).  Keurig has never stated whether they reviewed or produced those materials in this litigation.

Keurig's Position as to Paragraph 76:  Plaintiffs' Response includes improper argument, including arguments raised for the first time, in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Tom Ferguson

77.    Mr. Ferguson was identified as a custodian in December 2017, about 20 months since he worked for Keurig.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 9 [ECF 1340-1].

Plaintiffs' Response to Paragraph 77:  Stipulated that Mr. Ferguson, who left Keurig in April 2016, was identified as a custodian by Keurig in December 2017.  Pls. Ex. 1, ECF No. 1287-1.

78.    Mr. Ferguson testified that he spoke with Keurig's outside counsel in connection with this case in October or November of 2019.  Pls. Ex. 7 [ECF 1284-7] (T. Ferguson Dep. Tr. at 451:12-16); Pls. Ex. E [ECF No. 1393-5].

Plaintiffs' Response to Paragraph 78: Stipulated that Mr. Ferguson first spoke with Keurig's outside counsel in connection with this case in October or November of 2019, but Keurig's statement omits relevant facts. Mr. Ferguson testified that he first spoke with Keurig's outside counsel after he had moved and potentially disposed of handwritten notes and documents. Pls. Ex. 7, ECF No. 1284-7 (Ferguson Tr. at 450:24-452:3).

Keurig's Position as to Paragraph 78: Keurig incorporates its position as to Paragraph 188.

79. Mr. Ferguson returned his Keurig-issued computer to Keurig when he left the company in 2016. Keurig Ex. 16 [ECF 1340-16] (T. Ferguson Dep. Tr. at 508:7-12).

Plaintiffs' Response to Paragraph 79: Stipulated.

Steve Ferreira

80. Mr. Ferreira was identified as a custodian in December 2017, more than 20 months since he worked for Keurig. Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 10 [ECF 1340-1].

Plaintiffs' Response to Paragraph 80: Stipulated that Mr. Ferreira, who left Keurig in February 2015, was identified as a custodian by Keurig in December 2017. Mr. Ferreira was included by Keurig in its Initial Disclosures as "likely to have discoverable information regarding brewer development / exploration." Nov. 19, 2021 Torpey Decl. Ex. H (Keurig's Initial Disclosures). TreeHouse's complaint discussed the importance of brewer development issues. ECF No. 86 (TreeHouse's Amended and Supplemental Complaint at ¶¶ 10-11, 398-431); ECF No. 2 (TreeHouse's Initial Complaint at ¶¶ 2, 24-25).

Keurig's Position as to Paragraph 80: Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored. See Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Plaintiffs' Response also includes a document outside the motions record in violation of the Court's order and should be ignored. *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").

81.     Mr. Ferreira was not asked at his deposition about his interview(s) with Keurig counsel.

        Plaintiffs' Response to Paragraph 81:  Stipulated.  Plaintiffs further note that, although the Court ordered Keurig to provide the date of its interview for Mr. Ferreira, Keurig has not provided the information requested.

        Keurig's Position as to Paragraph 81:  Keurig has confined itself to the motions record, as ordered by the Court; the record does not include the interview date for Mr. Ferreira.

82.     Mr. Ferreira testified that he provided three documents saved on his personal computer to Keurig's outside counsel a few weeks before his November 21, 2019 deposition in response to Plaintiffs' document subpoena.  Keurig Ex. 1 at 11 [ECF 1340-1]; Pls. Ex. F [ECF 1393-6] (S. Ferreira Dep. Tr. at 95:4-20).

        Plaintiffs' Response to Paragraph 82:  Stipulated.

83.     Mr. Ferreira returned his Keurig-issued computer and documents in 2016 ███

███████████████████████████     Keurig Ex. 36 [ECF 1340-36] (████████████████

███████████████████████).

        Plaintiffs' Response to Paragraph 83:  Stipulated that Mr. Ferreira ████████

████████████████████████████████████████████████████████████████

██████     Keurig Ex. 36, ECF No. 1340-36.  Plaintiffs do not stipulate as to whether Mr. Ferreira returned his Keurig-issued computer and documents by April 2016 based on lack of sufficient

knowledge and information.  Mr. Ferreira had four computers and hard drives during his time at Keurig.  Nov. 19, 2021 Torpey Decl. Ex. I (Pls. Dep. Ex. 1668).

        Keurig's Position as to Paragraph 83:  Plaintiffs' Response includes a document outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").

Bruce Godfrey

84.     Mr. Godfrey was identified as a custodian in December 2017, about eight months since he worked for Keurig.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 12 [ECF 1340-1].

        Plaintiffs' Response to Paragraph 84:  Stipulated that Mr. Godfrey, who left Keurig in April 2017, was identified by Keurig as a custodian in December 2017.

85.     Mr. Godfrey was not asked at his deposition about his interview(s) with Keurig counsel.

        Plaintiffs' Response to Paragraph 85:  Stipulated.  Plaintiffs further note that, although the Court ordered Keurig to provide the date of its interview for Mr. Godfrey, Keurig has not provided the information requested.

        Keurig's Position as to Paragraph 85:  Keurig has confined itself to the motions record, as ordered by the Court; the record does not include the interview date for Mr. Godfrey.

86.     Mr. Godfrey testified at his deposition that he returned his laptop to Keurig and "took nothing" when he left.  Keurig Ex. 23 [ECF 1340-23] (B. Godfrey Dep. Tr. at 47:17-48:1, 257:15-22).

        Plaintiffs' Response to Paragraph 86:  Stipulated.  Despite Mr. Godfrey's laptop being returned, Keurig was unable to locate any hard drives used by Mr. Godfrey.  Pls. Ex. A, ECF 1402-1.

87.     Mr. Godfrey returned his Keurig-issued computer and documents ████████

████████████████████████. Keurig Ex. 37 [ECF 1340-37] ████████████████

████████████████████).

Plaintiffs' Response to Paragraph 87:  Stipulated.

Don Holly

88.     Mr. Holly's employment with Keurig ended in 2013.  He was added as a limited

custodian for this case in 2020, following the Court's February 4, 2020 Order.  Pls. Ex. 1 [ECF

1287-1]; Keurig Ex. 1 at 13 [ECF 1340-1].

Plaintiffs' Response to Paragraph 88:  Stipulated.

89.     Mr. Holly testified that he was not contacted by Keurig's outside counsel relating

to his documents before he was added as a limited custodian.  Pls. Ex. G [ECF 1393-7] (D. Holly

Dep. Tr. at 256:4-12).

Plaintiffs' Response to Paragraph 89:  Plaintiffs do not stipulate to the fact as set

forth by Keurig.  Mr. Holly testified that he was never contacted by Keurig's outside counsel

relating to his preservation of documents related to this case and that he was never asked to provide

any documents that he might have related to this case.  Pls. Ex. G, ECF No. 1393-7 (Holly Tr. at

256:4-12).  Mr. Holly negotiated Keurig's agreements with cup component suppliers referenced

by name in TreeHouse's Complaint—████████████████████████████████████

████████████████████  ECF No. 1286 (Pls. Mot. at 22); ECF No. 86 (TreeHouse Am.

Complaint at ¶¶ 139-41, 261-78); ECF No. 2 at ¶¶ 188-206.  Plaintiffs further note that, although

the Court ordered Keurig to provide the date of its interview for Mr. Holly, Keurig has not provided

the information requested.

Keurig's Position as to Paragraph 89:  Keurig has confined itself to the motions

record, as ordered by the Court; the record does not include the interview date for Mr. Holly.

90.     Mr. Holly returned his Keurig-issued computer and documents at the end of his employment in 2013.  Keurig Ex. 21 [ECF 1340-21] (D. Holly Dep. Tr. at 258:16-19) ("When I left Green Mountain, one of the conditions of the agreement was that I not keep any documents related to my work at Green Mountain, and I have abided by that."); Keurig Ex. 1 at 14 [ECF 1340-1].

Plaintiffs' Response to Paragraph 90:  Stipulated that Mr. Holly testified that "When I left Green Mountain, one of the conditions of the agreement was that I not keep any documents related to my work at Green Mountain, and I have abided by that."  Plaintiffs do not stipulate as to the fact that Mr. Holly returned his Keurig-issued computer and documents at the end of his employment in 2013 based on lack of sufficient knowledge and information.

Bob McCall

91.     Mr. McCall was identified as a custodian in December, 2017, approximately 6 months since he worked for Keurig.  Pls. Ex. 1 [ECF 1287-1]; Keurig Ex. 1 at 18 [ECF 1340-1].

Plaintiffs' Response to Paragraph 91:  Stipulated.

92.     Mr. McCall was not asked at his deposition about his interview(s) with Keurig counsel.

Plaintiffs' Response to Paragraph 92:  Stipulated.  Plaintiffs further note that, although the Court ordered Keurig to provide the date of its interview for Mr. McCall, Keurig has not provided the information requested.

Keurig's Position as to Paragraph 92:  Keurig has confined itself to the motions record, as ordered by the Court; the record does not include the interview date for Mr. McCall.

93.     Mr. McCall was served with a Non-Party Subpoena, Subpoena to testify, and Document Subpoena on July 25, 2019.  Keurig Ex. 15 [ECF 1340-15].  He produced his personal

notebooks 21 days later on August 15, 2019.  Pls. Ex. 24 [ECF 1284-24] (Letter dated August 22, 2019 from S. Southall to D. Johnson regarding Keurig's discovery).

Plaintiffs' Response to Paragraph 93:  Stipulated that Mr. McCall was served with a Non-Party Subpoena, Subpoena to Testify, and Document Subpoena on July 25, 2019.  Plaintiffs do not stipulate to the remainder of the fact as set forth by Keurig.  Keurig's outside counsel produced 20 notebooks maintained by Mr. McCall during his employment with Keurig and containing "information responsive to Plaintiffs' document subpoena" on August 15, 2019.  Pls. Ex. 24, ECF No. 1284-24.  Keurig has taken the position that it controls "all documents, records, tapes and other media of every kind and description relating to the business, present or otherwise, of the Company or its Affiliates and any copies, in whole or in part, thereof (the 'Documents'), whether or not prepared by the Executive."  Keurig Ex. 32 at 13, ECF No. 1340-32 (February 2012 Employment Agreement between Keurig and Mr. Blanford); *see also* Keurig Ex. 33, ECF No. 1340-33 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Keurig Ex. 36, ECF No. 1340-36 (same); Keurig Ex. 37, ECF No. 1340-37 (same).  Keurig further took the position that it controlled a copy of a non-custodian former employee's data kept at home.  *See* Pls. Ex. B, ECF No. 1393-2 (Dec. 4, 2017 W. Newton Email).

Keurig's Position as to Paragraph 93:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' Exhibit B does not support Plaintiffs' argument that "Keurig further took the position that it controlled a copy of a non-custodian former employee's data kept at home."  Keurig set

forth its position in the letter submitted as Plaintiffs' Exhibit 4.  *See* Pls. Ex. 4 at 3 [ECF 1284-4]. (Letter from S. Southall to Plaintiffs' counsel, dated December 11, 2019).

Michelle Stacy

94.    Ms. Stacy was identified as custodian in December 2017, more than four years since she worked for Keurig.  Pls. Ex. 1 at 23 [ECF 1287-1]; Keurig Ex. 1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 94:  Stipulated that Ms. Stacy, who left Keurig in March 2014, was identified by Keurig as a custodian in December 2017.  Pls. Ex. 1, ECF 1287-1. TreeHouse has a sham litigation claim that was filed in February 2014.  ECF No. 2 (TreeHouse Complaint, dated February 11, 2014, at 33-35).  Keurig disclosed in its Objections and Responses to TreeHouse's First Set of Interrogatories, dated August 21, 2018, that Ms. Stacy was involved in the decision to file the sham *Sturm* Litigation.  Pls. Ex. 52, ECF 1284-52 (Keurig's Response to Interrogatory No. 2).  Ms. Stacy, former President of Keurig, was named in Keurig's Initial Disclosures as "likely to have discoverable information regarding Keurig's relationships with customers, suppliers, distributors, roasters and brands, as well as overall company strategies" in December 2017.  Nov. 19, 2021 Torpey Decl. Ex. H (Keurig's Initial Disclosures).  Despite this, Keurig did not contact Ms. Stacy regarding the instant litigation until November 2019, nearly two years later.  Pls. Ex. 5, ECF No. 1284-5 (M. Stacy Dep. Tr. at 15:15-21); Pls. Ex. H, ECF 1391-2.

Keurig's Position as to Paragraph 94:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]"). Plaintiffs' Response also includes a document outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").

41

95.     Ms. Stacy testified she spoke with Keurig's outside counsel regarding this litigation in November 2019.  Pls. Ex. 5 [ECF 1284-5] (M. Stacy Dep. Tr. at 15:15-21); Pls. Ex. H [ECF 1391-2].

Plaintiffs' Response to Paragraph 95:  Stipulated that Ms. Stacy testified that she first spoke with Keurig's outside counsel regarding this litigation in November 2019, more than five years after the TreeHouse complaint was filed.  Pls. Ex. 5, ECF No. 1284-5 (M. Stacy Dep. Tr. at 15:15-21); ECF No. 2 (TreeHouse Complaint, dated February 11, 2014).

Keurig's Position as to Paragraph 95:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

96.     Ms. Stacy returned her Keurig-issued computer and documents to Keurig in August 2013, when she stopped working for Keurig.  Keurig Ex. 42 [ECF 1340-42] ███████████████

██████████████████); Keurig Ex. 22 [ECF 1340-22] (M. Stacy Dep. Tr. at 16:9-12).  Ms. Stacy's departure from Keurig was announced in August 2013 and she transitioned her duties at that time.  *Id.* at 8:16-22; Pls. Ex. 41 at 3 [ECF 1287-19] (W. Newton letter to Plaintiffs' counsel dated August 7, 2018); Keurig Ex. 1 at 23 n.3 [ECF 1340-1].  Ms. Stacy confirmed that she retained "[o]nly documents that were in the public domain" and "left everything else at Keurig."  Keurig Ex. 22 [ECF 1340-22] (M. Stacy Dep. Tr. at 16:9-12).

Plaintiffs' Response to Paragraph 96:  Stipulated ████████████████████

████████████████████████ that Ms. Stacy testified that she left her Keurig-issued computer and documents behind when she left Keurig in March 2014.  Keurig Ex. 42, ECF No. 1340-42; Keurig Ex. 22, ECF No. 1340-22 (M. Stacy Dep. Tr. at 16:9-12).  Ms. Stacy

had four computers and hard drives during her time at Keurig.  Nov. 19, 2021 Torpey Decl. Ex. I (Pls. Dep. Ex. 1668).  Stipulated that Ms. Stacy's departure from Keurig was announced in August 2013 and she began to transition her duties at that time but Keurig's statement omits relevant facts. Ms. Stacy's employment continued until March 31, 2014.  Keurig Ex. 42, ECF No. 1340-42; Keurig Ex. 22, ECF No. 1340-22 (M. Stacy Dep. Tr. at 8:16-22).  Stipulated that Ms. Stacy testified that she retained "[o]nly documents that were in the public domain" and "left everything else at Keurig."  Keurig Ex. 22, ECF 1340-22 (M. Stacy Dep. Tr. at 16:9-12).  Plaintiffs do not stipulate that Ms. Stacy retained only documents that were in the public domain and left everything else at Keurig based on lack of sufficient knowledge and information.

> Keurig's Position as to Paragraph 96:  Plaintiffs' Response includes a document outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Further, Keurig's position as to Paragraph 96 is based on Ms. Stacy's sworn testimony, which Keurig cited and provided to the Court in Exhibit 22.

### Ben Yoder

97.     Mr. Yoder was added as a custodian in October 2018.  Pls. Ex. 1 at 31 [ECF 1287-1].

> Plaintiffs' Response to Paragraph 97:  Stipulated.

98.     Mr. Yoder was not asked at his deposition about his interview(s) with Keurig's outside counsel.

> Plaintiffs' Response to Paragraph 98:  Stipulated.  Plaintiffs further note that, although the Court ordered Keurig to provide the date of its interview for Mr. Yoder, Keurig has not provided the information requested.

Keurig's Position as to Paragraph 98:  Keurig has confined itself to the motions record, as ordered by the Court; the record does not include the interview date for Mr. Yoder.

**C.   For the Keurig computers and hard drives that Plaintiffs contend Keurig failed to preserve (*see* ECF No. 1286 at 9–10), information concerning the employee(s) whose documents were stored on those computers and hard drives, including the employee's dates of employment, title, receipt of preservation notice(s), date(s) of interview(s), documents that were stored on the computer or hard drive, and steps Keurig took to retrieve and produce information from the computers and hard drives**

99.    Keurig was unable to locate eight hard drives from eight custodians:  Don Barberio, Bruce Godfrey, Don Holly, Sherry Hurley, Joe Mueller, Steve Smits, Chris Stevens and Brad Tidwell.  Pls. Ex. 12 [ECF 1287-5].  In addition, Keurig retained a laptop once used by Mr. Wettstein that no longer had a hard drive.  Keurig Ex. 1 at 29 [ECF 1340-1]; Keurig Ex. 34 [ECF 1340-34] (W. Newton email to counsel for Plaintiffs, dated July 1, 2019 regarding encryption).

Plaintiffs' Response to Paragraph 99:  Plaintiffs stipulate to the fact that Keurig was unable to locate hard drives from Don Barberio, Bruce Godfrey, Don Holly, Sherry Hurley, Joe Mueller, Steve Smits, Chris Stevens and Brad Tidwell.  However, Plaintiffs do not stipulate that these were the only hard drives that Keurig was unable to locate.  Keurig was unable to locate **at least** nine hard drives from nine custodians:  Don Barberio, Bruce Godfrey, Don Holly, Sherry Hurley, Joe Mueller, Steve Smits, Chris Stevens, Brad Tidwell, **and** Jon Wettstein.  Pls. Ex. 12, ECF No. 1287-5; Pls. Ex. 17, ECF No. 1284-17; Nov. 19, 2021 Torpey Decl. Ex. I (Pls. Dep. Ex. 1668).  For eight of the nine custodians, Don Barberio, Bruce Godfrey, Don Holly, Sherry Hurley, Joe Mueller, Steve Smits, Chris Stevens, Brad Tidwell, Keurig was unable to produce **any** hard drives.  *Id*.  As Keurig's counsel acknowledged, "Keurig employees stored documents in various places—including . . . their hard drives."  Pls. Ex. 45, ECF No. 1284-45.  Plaintiffs stipulate to the fact that Keurig retained a laptop once used by Mr. Wettstein that no longer had a hard drive.

Keurig's Position as to Paragraph 99:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' Response also includes a document outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Moreover, Plaintiffs have not provided complete information related to counsel's statement.  *See* Keurig's position as to Paragraph 102.

100.    Keurig began collecting data from custodian devices when fact discovery began in the first quarter of 2018.  Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 258:5-18); Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

Plaintiffs' Response to Paragraph 100:  Plaintiffs do not stipulate as to the fact as set forth by Keurig for lack of sufficient information and knowledge and as beyond the scope of the Court's Orders.  The Court's Order, dated August 5, 2021, requested information related to the "steps Keurig took to retrieve and produce information from the computers and hard drives" which Plaintiffs contend Keurig failed to preserve.  Keurig has not provided the information requested. Furthermore, Plaintiffs point out that Keurig was required to produce documents related to certain topics in connection with expedited discovery in 2014, ECF No. 57, such that it should have become familiar with Keurig's lack of preservation protocols at that time even separate from its general obligation to supervise preservation generally and specifically in connection with the Stipulated ESI Protocol and Order ordered by Judge Broderick on July 1, 2014.  ECF No. 41.

Keurig's Position as to Paragraph 100:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Keurig's corporate representative, Mr. Campbell, testified extensively as to Keurig's efforts to retrieve and produce information from Keurig's computers and hard drives.  Keurig has confined itself to the motions record, as ordered by the Court.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Keurig does not agree with Plaintiffs' improper and argumentative statements regarding expedited discovery conducted in connection with the 2014 preliminary injunction proceedings.  The preliminary injunction proceedings occurred more than three years before fact discovery commenced and the parties reached an agreement on custodians.

101.    The parties do not agree as to whether unique and material documents would have been on any of these hard drives that could not be located.

Plaintiffs' Response to Paragraph 101:  Stipulated.

102.    Keurig produced responsive information stored on the hard drives (if any) from alternative sources, including custodian's email and network locations ███████████████████ ████████████████████████.  Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 113:18-114:24); Keurig Ex. 6 at 5 [ECF 1340-6] (Keurig Acceptable Use of Assets Corporate Policy).

Plaintiffs' Response to Paragraph 102:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Keurig's 30(b)(6) witness testified that data from the ████████████████ ██████████████████████.  Pls. Ex. I, ECF 1391-3 (Campbell Tr. 114:1-12).

As Keurig's counsel acknowledged, "Keurig employees stored documents in various places—including . . . their hard drives."  Pls. Ex. 45, ECF No. 1284-45.

Keurig's counsel further acknowledged that "Keurig instructed its employees not to save important documents to their hard drive … in part because computer hard drives were not backed up in the ordinary course of business. … Though employees were instructed to save important documents to their home folder or another network location, we understand that, on occasion, some employees may have saved documents to their hard drives.  Accordingly, Keurig collected and produced data from custodian's hard drives where it was available. … Not all could be imaged, as we discussed. Keurig did not locate hard drives used by Bruce Godfrey, Don Barberio, or Chris Stevens, as we discussed, as well as Richard Sweeney. … With respect to Mr. Barberio, we advised on our last call that his home share did not contain any documents."  In a footnote, Keurig further noted that "The home folders associated with Bob McCall, Jim Shepard, Kevin Sullivan, and Michelle Stacy also did not contain any documents." Pls. Ex. 11, ECF No. 1284-11.

<u>Keurig's Position as to Paragraph 102</u>:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Moreover, Plaintiffs have not provided the complete quotation of counsel's statement referenced by Plaintiffs in their second paragraph.  Keurig counsel stated:

> As we reminded you today, Keurig employees stored documents in various places—including their network home drive, one or more folders on the shared X or H drives and, sometimes, on their hard drives – though Keurig discouraged them from doing so. As we also explained, Keurig has produced back-ups of certain laptops or robust collections that were identified in one of the network locations. Further, it is our understanding that when an employee received a new computer,

the data from the prior computer was copied to the new device. Accordingly, we do not expect that the above devices, should they be imaged, will contain a substantial volume of new information (if any at all).

Pls.' Ex. 45 [ECF 1284-45].  Keurig employees were instructed to save documents to centralized

network locations, including an individual home share that was located on one of the Keurig

network drives.  Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 120:1-11).

Mr. Campbell testified that the "My Documents" location on employee computers was synced

with the home share, and that only the "desktop" location was not backed-up.  Mr. Campbell

explained that "in my experience, all of the users I work with are aware that that desktop is not a

preferred location because it's not backed up."  Pls. Ex. 10 [ECF 1287-4] (Keurig 30(b)(6)

(Campbell) Dep. Tr. at 120:1-16).  When a Keurig employee created documents, the default

storage location was the network home share—not the desktop.  Pls. Ex. 11 at 4-5 [ECF 1284-11]

(M. Baird letter to S. Torpey and S. Lehrman, dated May 13, 2019).  Keurig has set forth the

number of documents produced for Don Barberio, Bruce Godfrey, Don Holly, Sherry Hurley, Joe

Mueller, Steve Smits, Chris Stevens, and Brad Tidwell in Exhibit 1 to its opposition.

103.   Custodial files were collected from multiple sources, including custodians' home

shares, hard drives, One Drive for Business, Microsoft Exchange email, Office 365 email, and

CommVault.[3]  Keurig Ex. 1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 103:  Plaintiffs do not stipulate as to the fact as

set forth by Keurig.  Keurig misleadingly suggests that custodial files were collected for all

custodians from those sources, which is incorrect.  For example, Keurig did not produce any

documents from the home folders (the K:\ drive) of Don Barberio, Bob McCall, Jim Shepard,

---

[3] References to the number of Keurig-produced custodial files throughout this document were calculated from custodian metadata provided to Plaintiffs with Keurig's productions.  These numbers represent documents produced by Keurig following global de-duplication and a review for responsiveness and privilege in accordance with the parties' various agreements.

Kevin Sullivan, and Michelle Stacy.  Pls. Ex. 11, ECF No. 1284-11.  As set forth in Plaintiffs'

Motion, Keurig did not produce any hard drives for Don Barberio, Bruce Godfrey, Don Holly,

Sherry Hurley, Joe Mueller, Steve Smits, Chris Stevens, and Brad Tidwell.  Pls. Ex. 12, ECF No.

1287-5; Nov. 19, 2021 Torpey Decl. Ex. I (Pls. Dep. Ex. 1668).   As Keurig's counsel

acknowledged, "Keurig employees stored documents in various places—including . . . their hard

drives."  Pls. Ex. 45, ECF No. 1284-45.  The One Drive was not implemented until 2017 and thus

is irrelevant for the majority of the discovery period.  Pls. Ex. 11 at 5 n.6, ECF No. 1284-11.  In

addition, as for files produced from CommVault, Keurig did not retain metadata in its CommVault

email archive.  Pls. Ex. 41, ECF No. 1342-30.  Keurig's counsel manually assigned custodian

metadata values when producing emails stored in the archive, based on the individuals who were

copied on each document.  *Id*.  As a result, Plaintiffs are incapable of identifying the true universe

of documents in Keurig's productions which were sourced from any particular custodian's files.

*Id*.  Plaintiffs do not stipulate that files produced from CommVault are "custodial files."

　　　　Keurig's Position as to Paragraph 103:  Plaintiffs' Response includes improper

argument, including arguments raised for the first time, in violation of the Court's October 1 Order

and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot

otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each

parties' position as to that fact without argument[.]").  Plaintiffs' Response includes document

outside the motions record in violation of the Court's order and should be ignored.  *See* Order,

ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s)

accompanying the Motions.").  Keurig does not agree with Plaintiffs' new assertion that "[t]he

One Drive was not implemented until 2017 and thus is irrelevant for the majority of the discovery

period."  When Keurig transitioned employees to One Drive for Business in 2017, documents in

the home folder were moved to One Drive For Business.  Pls. Ex. 11 at 5, n.6 [ECF 1284-11] (M. Baird letter to S. Torpey and S. Lehrman, dated May 13, 2019).  Moreover, Plaintiffs have not provided complete information related to counsel's statement.  *See* Keurig's position as to Paragraph 102.

104.    Keurig also produced documents from shared folders used by Keurig custodians and other Keurig employees from the network location referred to as either the "shared drive" or the X: and H: drives.  Documents collected from shared folders were identified in Keurig's productions as "Keurig" files and are not included in custodian document totals unless the custodian maintained an identical document that was de-duplicated in accordance with the ESI Protocol.  Keurig Ex. 1 at 1 n.1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 104:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Keurig misleadingly suggests that custodial files were collected for all custodians from the shared drives, which is incorrect.  For example, Keurig did not produce any documents from shared folders for Don Barberio, Will Billings, Susan Cote, Ken Crites, Steven Ferreira, Tom Novak, Fran Rathke, Michelle Stacy (as opposed to an "███" who worked for Stacy), Chris Stevens, Richard Sweeney, and Jon Wettstein.  Pls. Ex. 11 at 5-6, ECF No. 1284-11.

Keurig's Position as to Paragraph 104:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Keurig collected documents from more than 14,700 shared folders located on its X: and H: drives.  Pls. Ex. 11 at 5-6 [ECF 1284-11] (M. Baird letter to S. Torpey and S. Lehrman, dated May 13, 2019) (discussing shared file production as of May 2019).  These folders were used by Keurig

custodians and other Keurig employees, even if those folders did not bear the name of custodians. *See, e.g.*, Keurig Ex. 35 [ECF 1340-35] (S. DuLong Dep. Tr. at 361:6-18) [ECF 1340-35] (DuLong testifying she saved documents in the "███████████" shared folder). Some shared folders were named after custodians (such as the "██████" folder on the X: drive), and Keurig collected and produced documents from those folders. Pls. Ex. 11 at 5, n.7 [ECF 1284-11] (M. Baird letter to S. Torpey and S. Lehrman, dated May 13, 2019). Keurig produced more than 146,000 documents from shared folders. Pls. Ex. 11 at 5-6 [ECF 1284-11] (production as of May 2019).

105.    Keurig also produced information collected from the files of other custodians that worked with these nine employees and, in one instance, agreed to add a new custodian. See below.

Plaintiffs' Response to Paragraph 105: Plaintiffs do not stipulate as to this fact based on lack of sufficient knowledge and information as to what Keurig is referring to without any citations. Plaintiffs stipulate to the fact that Mr. Travis was added as an additional custodian after Keurig disclosed that Mr. Barberio's hard drive was missing and that home folder (the K:\ drive) did not have any documents, and that Mr. Travis was Mr. Barberio's supervisor only until March 2012, after which Mr. Barberio reported to Mr. Ferguson. Pls. Ex. 16, ECF 1284-16 (Barberio Dep. 304:17-20). Plaintiffs state that there are eight other custodians who also had missing hard drives. As Keurig's counsel acknowledged, "Keurig employees stored documents in various places—including . . . their hard drives." Pls. Ex. 45, ECF No. 1284-45.

Keurig's Position as to Paragraph 105: Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored. *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Moreover, Plaintiffs have not provided complete information related to counsel's statement. *See* Keurig's position as to Paragraph 102.

Don Barberio

106.    Keurig produced 21,533 emails in which Mr. Barberio was identified as the original or duplicate custodian.  Documents produced from his files include communications regarding the meetings with TreeHouse's alleged lost customers identified in Pls. Ex. 12 [ECF 1287-5] (█████ ██████████████████████).

Plaintiffs' Response to Paragraph 106:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 11,444 documents (not just emails) in which Mr. Barberio was the original or duplicate custodian.  Pls. Ex. A, ECF No. 1402-1.  As noted above, Keurig did not retain metadata in its CommVault email archive.  Pls. Ex. 41, ECF No. 1342-30.  Keurig's counsel manually assigned custodian metadata values when producing emails stored in the archive, based on the individuals who were copied on each document.  *Id*.  As a result, Plaintiffs are incapable of identifying the true universe of documents in Keurig's productions which were sourced from any particular custodian's files.  *Id*.  Plaintiffs do not stipulate that files produced from CommVault are custodial files.

Keurig's Position as to Paragraph 106:  In the past, Plaintiffs have not included all four custodian fields in their searches and appear to have not updated their database with custodial overlay files to update custodian values, (Pls. Ex 11 [ECF 1284-11] (M. Baird letter to S. Torpey and S. Lehrman, dated May 13, 2019); Keurig Ex. 29 [ECF 1340-29] (M. Baird letter to Plaintiffs' counsel, dated Jan. 4, 2019 letter to counsel)), which may account for their not capturing all the document counts for a particular custodian.

107.    Keurig also agreed to add Mr. Barberio's supervisor through March 2012 (Jim Travis) as an additional custodian; Keurig produced 25,813 documents from Mr. Travis' custodial

files.  Pls. Ex. 11 [ECF 1284-11] (M. Baird letter to S. Torpey and S. Lehrman dated May 13, 2019); Keurig Ex. 1 at 1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 107:  Plaintiffs stipulate to the fact that Mr. Travis was added as an additional custodian, and that Mr. Travis was Mr. Barberio's supervisor until March 2012, after which Mr. Barberio reported to Mr. Ferguson.  Pls. Ex. 16, ECF No. 1284-16 (Barberio Dep. 304:17-20).  Plaintiffs do not stipulate that Keurig produced 25,813 documents from Mr. Travis' custodial files.  Plaintiffs have only identified 2,516 documents in which Mr. Travis was the original or duplicate custodian.

Keurig's Position as to Paragraph 107:  Keurig incorporates its position as to Paragraph 106.

108.   Keurig also produced 80,797 documents from March 2012 through Mr. Barberio's June 2014 retirement from the files of his other supervisor, Mr. Ferguson.  Keurig Ex. 1 at 1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 108:  Plaintiffs stipulate to the fact that Mr. Ferguson was Mr. Barberio's supervisor after March 2012.  Plaintiffs do not stipulate that Keurig produced 80,797 documents from Mr. Travis' custodial files from March 2012 through June 2014.  Plaintiffs have only identified 79,819 documents in which Mr. Ferguson was the original or duplicate custodian from March 1, 2012 to June 30, 2014.  Furthermore, Mr. Barberio testified that there were meetings that Mr. Ferguson did not attend, including with customers like ███████, in which cases it was "more than likely" that Mr. Barberio would just "give Tom [Ferguson] a call," instead of writing an email, such that the information would not be captured in email produced by either custodian.  Pls. Ex. 12, ECF No. 1287-5.

Plaintiffs further note that Mr. Ferguson's hard copy documents and handwritten notes were lost. Pls. Ex. 12, ECF No. 1287-5.

  Keurig's Position as to Paragraph 108: Keurig incorporates its position as to Paragraph 106.

Bruce Godfrey

  109. Keurig produced 109,594 documents from Mr. Godfrey's files, including 3,045 documents from his home share that span his entire employment during the relevant time frame. Pls. Ex 11 at 5 [ECF 1284-11] (M. Baird letter to S. Torpey and S. Lehrman, dated May 13, 2019); Keurig Ex. 1 at 12 [ECF 1340-1].

  Plaintiffs' Response to Paragraph 109: Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 108,841 documents in which Mr. Godfrey was the original or duplicate custodian. Plaintiffs have identified 3,045 documents from a source folder titled "████████████████████████"  Keurig's corporate representative testified that files saved onto custodians' desktop were not backed up.  Nov. 19, 2021 Torpey Decl. Ex. J (Campbell 30(b)(6) Tr. at 120:21-121:16).   As Keurig's counsel acknowledged, "Keurig employees stored documents in various places—including . . . their hard drives." Pls. Ex. 45, ECF No. 1284-45.

  Keurig's Position as to Paragraph 109:  Plaintiffs' Response includes a document outside the motions record in violation of the Court's order, does not support the statement in Paragraph 109, and should be ignored.  See Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Keurig incorporates its position as to Paragraph 106.  Moreover, Plaintiffs have not provided complete information related to counsel's statement.  See Keurig's position as to Paragraph 102.

110.    Keurig collected and produced the June 2016 memo cited by Plaintiffs.  Pls. Ex. 12 at 10-11 [ECF 1287-12].  Mr. Godfrey's home share included two versions of the June 2016 memo (produced at KGM02451734 and KGM02450293).  Keurig collected identical copies of these memos from the "███████" shared folder located on the Keurig X: drive.  Copies of the 2016 memo were also produced as attachments to Mr. Godfrey's emails.  (KGM02450279, KGM02451731, and KGM02463551).  Keurig Ex. 1 at 12 [ECF 1340-1].

Plaintiffs' Response to Paragraph 110:  Stipulated.  Plaintiffs note that only the final versions of the June 2016 memo are available, and any drafts or prior versions that might have been saved to his hard drive were not produced.

Keurig's Position as to Paragraph 110:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  See Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

111.    Keurig also collected the entire contents of the "███████" shared folder located on the Keurig X: drive as well as other shared folders that were utilized by Mr. Godfrey and the Consumer Insights Group.  Keurig Ex. 23 [ECF 1340-23] (B. Godfrey Dep. Tr. at 258:18-259:17) (testifying that his group created a "library" on the shared drive and tried "to put everything on that library from the recent years").  Keurig produced 3,416 documents from the "███████ ███████████████" shared folder and 274 documents from the "█████████████████" shared folder following de-duplication and a manual review for responsiveness.  Keurig Ex. 1 at 12 [ECF 1340-1].

Plaintiffs' Response to Paragraph 111:  Plaintiffs do not stipulate as to whether the "entire contents" of the "███████" shared folder, as well as other shared folders that were utilized

by Mr. Godfrey, were collected by Keurig based on lack of sufficient knowledge and information. Plaintiffs stipulate that Keurig produced 3,416 documents from the folder "████████████████████████████" and that 274 documents were produced from the folder ██████████████████"

Keurig's Position as to Paragraph 111:  Keurig incorporates its position as to Paragraph 106.

Don Holly

112.    After the Court added Mr. Holly as a limited custodian in February 2020, Keurig collected over 250,000 documents from Mr. Holly's email, home share, and archived email in CommVault.  Keurig Ex. 38 [ECF 1340-38] (M. Baird email to Plaintiffs' counsel dated February 23, 2020).  Keurig ultimately produced 288 Holly custodial documents that were responsive to the Court's Order.  Keurig Ex. 1 at 13 [ECF 1340-1].

Plaintiffs' Response to Paragraph 112:  Plaintiffs stipulate to the fact that Mr. Holly was added as a limited custodian by the Court in February 2020, and that Keurig produced 288 Holly custodial documents in Keurig Production Volume 97.  Plaintiffs do not stipulate as to whether Keurig collected over 250,000 documents from Mr. Holly's email, home share and archived email based on lack of sufficient knowledge and information.  In addition, Plaintiffs do not stipulate that files produced from CommVault are custodial files.  As noted above, Keurig did not retain metadata in its CommVault email archive.  Pls. Ex. 41, ECF No. 1342-30.  Keurig's counsel manually assigned custodian metadata values when producing emails stored in the archive, based on the individuals who were copied on each document.  *Id.*  As a result, Plaintiffs are incapable of identifying the true universe of documents in Keurig's productions which were sourced from any particular custodian's files.  *Id.*

Keurig's Position as to Paragraph 112:   Keurig incorporates its position as to Paragraph 106.

113.    In total, Keurig produced 8,921 documents in which Mr. Holly was identified as a custodian, including from sources collected and produced prior to the Court's February 2020 Order adding Mr. Holly as a limited custodian.  Keurig Ex. 1 at 14 [ECF 1340-1].

Plaintiffs' Response to Paragraph 113:  Plaintiffs do not stipulate to the fact as set forth by Keurig.  Plaintiffs have only identified 289 documents in which Mr. Holly was the original or duplicate custodian, including from documents produced prior to the Court's February 2020 Order adding Mr. Holly as a custodian.

Keurig's Position as to Paragraph 113:  Keurig provided a custodian overlay file with its production of documents pursuant to the Court's February 2020 Order adding Mr. Holly as a limited custodian.  Keurig's Ex. 38 [ECF 1340-38] (M. Baird email to Plaintiffs' counsel, dated February 23, 2020).  Keurig believes that the discrepancy in the parties' document counts (here and elsewhere) is likely due to the fact that Plaintiffs did not process the custodian overlay file.  Keurig incorporates its position as to Paragraph 106.

114.    Keurig produced Mr. Holly's email communications with Curwood, Phoenix Cups, and Winpak, consistent with the Court's February 4, 2020 Order.  [ECF 733] ("Keurig shall produce Don Holly's custodial documents regarding the negotiation of the agreements between Keurig and Curwood, Phoenix Cups, and Winpak").  Keurig Ex. 1 at 13 [ECF 1340-1].

Plaintiffs' Response to Paragraph 114:  Stipulated that Keurig produced some communications with Curwood, Phoenix Cups, and Winpak.  However, the communications Keurig produced are missing documents that contain damaging information to Keurig.  For example, the email that Grupo Phoenix sent to Keurig stating that ██████████████

was only produced from Phoenix's files, and not from Keurig.  Nov. 19, 2021 Torpey Decl. Ex. J (GPCS-000360); Pls. Ex. 53, ECF No. 1287-25 (GPCS-011056); Nov. 19, 2021 Torpey Decl. Ex. L (GPCS-011059); Nov. 19, 2021 Torpey Decl. Ex. M (GPCS-011062).  Plaintiffs do not stipulate as to whether Keurig's production is consistent with the Court's February 4, 2020 Order.

Keurig's Position as to Paragraph 114:  Plaintiffs' Response includes documents outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Moreover, Mr. Holly's employment ended in October 2013.  He was not a sender or recipient of the four Grupo Phoenix emails cited by Plaintiffs, which are dated November 2013 and August 2014.  The only two Keurig employees appearing on these emails cited by Plaintiffs (Peder Nilsson and William Karim) are not custodians in this litigation.

Sherry Hurley

115.    Ms. Hurley was added as a custodian for the McLane case.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 115:  Stipulated.

116.    Keurig produced 109,431 emails and attachments from Ms. Hurley's files in which she is identified as the original or duplicate custodian.  Keurig Ex. 1 at 16 [ECF 1340-1].

Plaintiffs' Response to Paragraph 116:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 85,808 documents in which Ms. Hurley was the original or duplicate custodian.

Keurig's Position as to Paragraph 116:   Keurig incorporates its position as to Paragraph 106.

117.     Keurig also produced files from Ms. Hurley's supervisor, Mr. Tidwell.  Keurig produced 44,863 documents Mr. Tidwell's custodial files, including 419 from his home share. Keurig Ex. 1 at 26-27 [ECF 1340-1].

    Plaintiffs' Response to Paragraph 117:  Plaintiffs stipulate to the fact that Mr. Tidwell is a supervisor of Ms. Hurley from at least April 2014 to July 2015.  Plaintiffs do not stipulate as to the fact that Keurig produced 44,863 documents from Mr. Tidwell's custodial files. Plaintiffs have only identified 36,627 documents in which Mr. Tidwell was the original or duplicate custodian. Plaintiffs have identified 419 documents from a source folder titled ███████ ███████"

    Keurig's Position as to Paragraph 117:  Keurig incorporates its position as to Paragraph 106.

118.     Ms. Hurley was not deposed.  Keurig Ex. 1 at 16 [ECF 1340-1].

    Plaintiffs' Response to Paragraph 118:  Stipulated.

Joe Mueller

119.     Mr. Mueller was added as a custodian for the McLane case.  Pls. Ex. 1 [ECF 1287-1].

    Plaintiffs' Response to Paragraph 119:  Stipulated.

120.     Keurig produced 34,301 emails in which Mr. Mueller was identified as the original or duplicate custodian over his 16-month employment.  Keurig Ex. 1 at 19 [ECF 1340-1].

    Plaintiffs' Response to Paragraph 120:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 18,139 documents in which Mr. Mueller was the original or duplicate custodian.

    Keurig's Position as to Paragraph 120:  Keurig incorporates its position as to Paragraph 106.

121.    Mr. Mueller reported to Mr. DiFabio, who is a custodian as well.  Pls. Ex. 47 [ECF 1284-47] (J. Mueller Dep. Tr. at 23:4-6).  Mr. DiFabio testified in his deposition that he and his direct reports (which would include Mr. Mueller) saved everything to the share drives, which were collected and produced from.  Keurig Ex. 9 [ECF 1340-9] (R. DiFabio Dep. Tr. at 196:12-14); Keurig Ex. 1 at 7 [ECF 1340-1].

    Plaintiffs' Response to Paragraph 121:  Plaintiffs stipulate to the fact that Mr. Mueller reported to Mr. DiFabio.  Plaintiffs do not stipulate as to whether Mr. DiFabio and his direct reports saved everything to the share drives, based on lack of sufficient knowledge and information.

    Steve Smits

122.    Mr. Smits was added as a custodian for the McLane case.  Pls. Ex. 1 [ECF 1287-1].

    Plaintiffs' Response to Paragraph 122:  Stipulated.

123.    Keurig produced 13,657 documents from Mr. Smits' custodial files, including 606 documents from his home share that spanned his entire 18-month employment.  Keurig Ex. 1 at 23 [ECF 1340-1].

    Plaintiffs' Response to Paragraph 123:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 8,561 documents in which Mr. Smits was the original or duplicate custodian.  Plaintiffs have identified 606 documents from the ████████ ████████████████████" folder.

    Keurig's Position as to Paragraph 123:  Keurig incorporates its position as to Paragraph 106.

Chris Stevens

124.    Keurig produced 59,230 documents from Mr. Stevens' custodial files, including 1,124 documents from Mr. Stevens' home share that span his active employment during the relevant time period.  Keurig Ex. 1 at 25 [ECF 1340-1].

Plaintiffs' Response to Paragraph 124:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 58,681 documents in which Mr. Stevens was the original or duplicate custodian.  Plaintiffs have identified 1,124 documents from the ██████ ███████████████████████" folder.

Keurig's Position as to Paragraph 124:  Keurig incorporates its position as to Paragraph 106.

125.    Mr. Stevens was not deposed.  Keurig Ex. 1 at 25 [ECF 1340-1].

Plaintiffs' Response to Paragraph 125:  Stipulated.

Brad Tidwell

126.    Mr. Tidwell was added as a custodian for the McLane case.  Pls. Ex. 1 [ECF 1287-1].

Plaintiffs' Response to Paragraph 126:  Stipulated.

127.    Keurig produced 44,863 documents from Mr. Tidwell's custodial files, including 419 documents from Mr. Tidwell's home share.  Keurig Ex. 1 at 26-27 [ECF 1340-1].

Plaintiffs' Response to Paragraph 127:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 36,627 documents in which Mr. Tidwell was the original or duplicate custodian.  Plaintiffs have identified 419 documents from the "██████ █████████" folder.

Keurig's Position as to Paragraph 127:  Keurig incorporates its position as to Paragraph 106.

<u>Jon Wettstein</u>

128.   Keurig preserved five hard drives from Mr. Wettstein's Keurig-issued computers, and decrypted and produced from four of them, including his last-in-time hard drive.  Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).  Keurig also retained a laptop once used by Mr. Wettstein that no longer had a hard drive.  Keurig Ex. 1 at 29 [ECF 1340-1]; Keurig Ex. 34 [ECF 1340-34] (W. Newton email to counsel for Plaintiffs, dated July 1, 2019 regarding encryption).

Plaintiffs' Response to Paragraph 128:  Plaintiffs do not stipulate as to the fact that Keurig "preserved" five hard drives, as Keurig did not produce documents from the fifth hard drive.  Plaintiffs do not stipulate that Keurig produced documents from Mr. Wettstein's "last-in-time hard drive," as Keurig testified that ████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████  Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr. at 34:22-36:7).  Plaintiffs stipulate that Keurig produced documents from four hard drives from Mr. Wettstein, and that Keurig did not produce documents from a laptop once used by Mr. Wettstein.

Keurig's Position as to Paragraph 128:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

129.   Keurig produced 61,272 documents from Mr. Wettstein's custodial files, including documents from the last-in-time hard drive that Mr. Wettstein was using at the end of his employment in May 2014.  Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659); Keurig Ex. 1 at 29 [ECF 1340-1].

Plaintiffs' Response to Paragraph 129:  Plaintiffs do not stipulate as to whether Keurig produced documents from the last-in-time hard drive of Mr. Wettstein based on lack of sufficient knowledge and information.  Keurig testified that ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████   Pls. Ex. 10, ECF No. 1287-4 (Keurig 30(b)(6) Campbell Dep Tr. at 34:22-36:7). Plaintiffs do not stipulate that Keurig produced 61,272 documents from Mr. Wettstein's custodial files.  Plaintiffs have only identified 53,613 documents in which Mr. Wettstein was the original or duplicate custodian.  In addition, Plaintiffs do not stipulate that files produced from CommVault are custodial files.  As noted above, Keurig did not retain metadata in its CommVault email archive.  Pls. Ex. 41, ECF No.1342-30.  Keurig's counsel manually assigned custodian metadata values when producing emails stored in the archive, based on the individuals who were copied on each document.  *Id*.  As a result, Plaintiffs are incapable of identifying the true universe of documents in Keurig's productions which were sourced from any particular custodian's files.  *Id*.

Keurig's Position as to Paragraph 129:  Plaintiffs' Exhibit 48 identifies documents produced from Mr. Wettstein's hard drives consistent with the duration of his employment.  Se Pls. Ex. 48 [ECF 1284-48].  Keurig incorporates its position as to Paragraph 106.

**D.   For the decryption database that is allegedly no longer accessible (see ECF No. 1286 at 10–11), information concerning the nature of the documents stored in the database, the dates the database was in operation, and steps Keurig took to retrieve and produce information from the decryption database**

130.  Plaintiffs' Counter Statement to Keurig's Proposed Stipulated Facts:  Keurig has not provided "information concerning the … steps Keurig took to retrace and produce information from the decryption database" as requested by the Court in its August 5, 2021 Order.  Keurig has provided no rebuttal to Plaintiffs' factual contention that Keurig did not contact custodians for

their log-in credentials or encryption key.  Keurig also has not provided any information suggesting that it took any steps to preserve encryption key records from the time TreeHouse filed its Complaint in this litigation on February 11, 2014 until 2018.

   <u>Keurig's Position on Plaintiffs' Counter Statement in Paragraph 130</u>:  Plaintiffs' Proposed Counter Statement includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  The McAfee decryption database does not contain documents or information that is responsive to any of Plaintiffs' document requests, such that Keurig would have "produced" that information.  Rather, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Pls. Ex. 10 [ECF 1287-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 124:5-25 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.").  Keurig has provided information relating to its steps to retrieve the encryption keys from the McAfee database.  *Id.* at 125:5-126:20. ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.").  Keurig was able to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *Id.* at 126:21-127:3.

Further, Keurig reached out to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *Id.* at 127:20-23.  Keurig has also provided information related to Keurig's production of documents and

information from the seven custodians for whom Keurig could not decrypt their McAfee hard drives. *Id.* at 127:8-19; Pls. Ex. 48 [ECF 1284-48] (Campbell Dep. Ex. 1659).

131.    Plaintiffs contend that Keurig let the ███████████████████████████████████,

resulting in seven hard drives that could not be decrypted.  ECF 1286 at 5-6 (Pls. Brief in Support of Motion).

Plaintiffs' Response to Paragraph 131:  Stipulated.

132.    Keurig was unable to decrypt seven McAfee-encrypted hard drives preserved from seven custodians:  Susan Cote, Ken Crites, Steve Ferreira, Dave Manly, Tom Novak, Ian Tinkler, and Jon Wettstein.  Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

Plaintiffs' Response to Paragraph 132:  Stipulated.

133.    Keurig utilized encryption software to ███████████████████████████████████████████████████████████████████████████████████  Keurig Ex.

6 at 5 [ECF 1340-6] (Keurig Acceptable Use of Assets Corporate Policy).

Plaintiffs' Response to Paragraph 133:  Stipulated.

134.    In 2009, Keurig was using McAfee encryption.  *Id.* at 122:4-12.

Plaintiffs' Response to Paragraph 134:  Plaintiffs do not stipulate to the fact Keurig was using McAfee encryption in 2009 to the extent Keurig suggests that Keurig only used McAfee encryption in 2009, and not in any other years.  ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████  Keurig Ex. 4, ECF No. 1340-4 (Keurig 30(b)(6) (Campbell Tr. 123:4-18)).  ███████████████████████████████████████████████████

████████████████████████████  Keurig Ex. No. 1340-4 (Campbell Tr. 123:4-18).

Keurig's Position as to Paragraph 134:  Keurig used McAfee encryption from approximately 2009 until 2012.  Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 122:4-12).

135.   Keurig transitioned employee computers to ███████████ between 2012 and 2013 and stopped using McAfee encryption.   Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 120-124).

Plaintiffs' Response to Paragraph 135:  Plaintiffs do not stipulate to the fact that Keurig transitioned employee computers to ███████████ between 2012 and 2013 and stopped using McAfee encryption to the extent that Keurig suggests that it switched existing employee computers from McAfee encryption to ███████████.  Keurig did not "████ ███████████████████████████████████████████████████████████ ███████████████████████."  Keurig Ex. 4, ECF No. 1340-4 (Campbell Tr. 123:4-18).

Keurig's Position as to Paragraph 135:  Keurig rolled out ███████████ to employees between 2012 and 2013; this process involved deploying new computers to employees with the ███████████.  Pls. Ex. 4, [ECF 1340-4] Keurig 30(b)(6) (K. Campbell) Dep. Tr. at 122:23-123:18).  When an employee receives a new computer, IT migrates the data from the employee's old computer to his new one.  *Id.* at 53:13-54:19 ("We do everything we can to take the data off from the damaged device and bring it onto the replacement device to help with continuity . . . If it's a PC upgrade, meaning their computer is slow, time to get a new one . . . it's the same situation from our perspective: We try to get all the data that they have on their old computer, if they have any at all, and bring it to the new computer.").

136.    By the time of discovery collection in 2018, employees who were familiar with the legacy McAfee system (by then six years obsolete) were no longer at Keurig.  Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 126).  Keurig undertook ██████████ ██████████ to collect documents for this case.  *Id.* at 127-129.

Plaintiffs' Response to Paragraph 136:  Plaintiffs stipulate to the fact that by the time Keurig says it engaged in discovery collection in 2018, employees who were familiar with the legacy McAfee system were no longer at Keurig.  Plaintiffs do not stipulate that the McAfee system was "by then six years obsolete."  Keurig did not ██████████████ ████████████████████████████████████████ ████████ Keurig Ex. 4, ECF No. 1340-4 (Campbell Tr. 123:4-18).  Of the seven custodians identified above as to whom Keurig stipulated it was unable to decrypt their McAfee-encrypted hard drives, six were using McAfee encrypted hard drives after the time.  TreeHouse filed its complaint on February 11, 2014, the latest date at which Keurig's preservation obligation with respect to the data on the McAfee encrypted computers arose—Susan Cote (left Keurig in March 2014), Steve Ferreira (left Keurig in April 2016), Dave Manly (left Keurig in September 2014), Tom Novak (left Keurig in May 2017), Ian Tinkler (left Keurig in August 2015), and Jon Wettstein (left Keurig in May 2014).  Keurig did not preserve the McAfee encrypted computers, despite the fact that on July 1, 2014, the parties agreed to "preserve potentially relevant electronically stored information … and take reasonable steps in good faith to prevent the loss, destruction, alteration, overwriting, deletion, shredding, incineration, or theft of any document or data the party knows, or reasonable should know, falls within the scope of Federal Rule of Civil Procedure 26(b)(1)."  ECF No. 41 at 4.  Plaintiffs do not stipulate as to the fact that Keurig undertook ██████████

██████████████   to collect documents for this case based on lack of sufficient knowledge and information.

Keurig's Position as to Paragraph 136: Susan Cote, Steve Ferreira, Dave Manly, Tom Novak, Ian Tinkler, and Jon Wettstein were all issued ██████████████ computers in or after 2012. *See* Keurig Ex. 1 at 5, 11, 17, 20, 27-28, 29 [ECF 1340-1]; Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659). Their old McAfee-encrypted drives were preserved by Keurig IT after these employees were issued ██████████████ drives. *Id.* When an employee receives a new computer, IT migrates the data from the employee's old computer to his new one. Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 53:13-55:13); see also, Keurig Ex. 8 [ECF 1340-8] (D. Manly Dep. Tr. at 548:11-16 ("Typically, if I was issued a new laptop, the IT person would take my laptop and upload everything in my current laptop to my new laptop and give it back to me fully loaded. And I would be able to operate from day 1 with everything I had before, but just with a -- a newer laptop and maybe newer software.") Keurig produced documents from ██████████████ drives of Susan Cote, Steve Ferreira, Dave Manly, Tom Novak, Ian Tinkler, and Jon Wettstein. *See* Keurig Ex. 1 at 5, 11, 17, 20, 27-28, 29 [ECF 1340-1]; Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

137.  Keurig gained access to the obsolete McAfee encryption server by April 2018. Pls. Ex. 17, T. Kiefer (D4) June 3, 2019 letter at 4.

Plaintiffs' Response to Paragraph 137: Plaintiffs do not stipulate to this fact based on lack of sufficient knowledge and information.

138.  As part of Keurig's efforts, Keurig ultimately unlocked numerous McAfee-encrypted drives and actively worked with McAfee in this effort. Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 127:20-128:8).

Plaintiffs' Response to Paragraph 138:  Plaintiffs do not stipulate to the fact that Keurig ultimately unlocked numerous McAfee encrypted drives because the statement is vague and incomplete.  As stipulated above, Keurig was unable to decrypt seven McAfee-encrypted hard drives preserved from seven custodians:  Susan Cote, Ken Crites, Steve Ferreira, Dave Manly, Tom Novak, Ian Tinkler, and Jon Wettstein.  Of these seven custodians, six were using McAfee encrypted hard drives after the time TreeHouse filed its complaint on February 11, 2014, the latest date at which Keurig's preservation obligation with respect to the data on the McAfee encrypted computers arose—Susan Cote (left Keurig in March 2014), Steve Ferreira (left Keurig in April 2016), Dave Manly (left Keurig in September 2014), Tom Novak (left Keurig in May 2017), Ian Tinkler (left Keurig in August 2015), and Jon Wettstein (left Keurig in May 2014).

Keurig's Position as to Paragraph 138:  Keurig incorporates its position as to Paragraph 136.

139.    Keurig was unable to decrypt one ████████████ drive preserved from one custodian: Ron DiFabio.  Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

Plaintiffs' Response to Paragraph 139:  Stipulated.

140.    Two other hard drives had an unknown encryption and could not be decrypted: Dwight Brown and Ron DiFabio.  Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

Plaintiffs' Response to Paragraph 140:  Plaintiffs stipulate to the fact that Dwight Brown and Ron DiFabio's hard drive could not be decrypted, but do not stipulate that they had an unknown encryption based on lack of sufficient information and knowledge.  As Keurig has stipulated above, counsel for Keurig spoke with and issued a litigation hold to both Ron DiFabio and Dwight Brown in 2014, acknowledging their relevance to this litigation, yet despite this did

not secure either of their encryption keys or log-in credentials to preserve their hard drives.  Pls. Ex. A at 12, 25, ECF No. 1402-1.

Keurig's Position as to Paragraph 140:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

141.    Keurig also collected and produced from dozens of ██████████████ drives, many of which had been out of use for years.  Keurig Ex. 1 at 7 [ECF 1340-1].

Plaintiffs' Response to Paragraph 141:  Plaintiffs do not stipulate to this fact based on a lack of sufficient information and knowledge.

142.    An encrypted hard drive cannot be accessed simply by putting it into a new Keurig computer.  Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 250:15-252: 25). The hard drive can still be imaged for collection and decrypted with a valid decryption key, which is the procedure Keurig used.  *Id*. at 253:19-254:9.

Plaintiffs' Response to Paragraph 142:  Plaintiffs do not stipulate to these facts based on a lack of sufficient information and knowledge.  Further, Plaintiffs do not stipulate to the fact that Keurig used the procedure of imaging the hard drive for collection and decrypted the hard drive with a valid decryption key as the statement is incomplete.  For the hard drives that Keurig could not image, Keurig failed to ask ████████████████ to try to decrypt these devices or ask custodians for valid keys or log-in credentials.  Keurig Ex. 4, ECF No. 1340-4 (Campbell Tr. at 248:18-21; 253:1-6).

Plaintiffs' Response to Paragraph 142:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No.

1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

143.    Keurig decrypted and produced documents from other hard drives used by the following custodians:  Susan Cote (three hard drives preserved; Keurig decrypted and produced documents from two of them); Ron DiFabio (five hard drives preserved; Keurig decrypted and produced documents from three of them); Steve Ferreira (four hard drives preserved; Keurig decrypted and produced document from three of them); Dave Manly (three hard drives preserved; Keurig decrypted and produced documents from two of them); Tom Novak (four hard drives preserved; Keurig decrypted and produced documents from three of them); Ian Tinkler (three hard drives preserved; Keurig decrypted and produced documents from two of them); and Jon Wettstein (five hard drives preserved; Keurig decrypted and produced documents from four of them).  Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

Plaintiffs' Response to Paragraph 143:  Plaintiffs stipulate to the fact that Keurig decrypted and produced documents from the following custodians: Susan Cote (Keurig decrypted and produced documents from two hard drives); Ron DiFabio (Keurig decrypted and produced documents from three hard drives); Steve Ferreira (Keurig decrypted and produced documents from three hard drives); Dave Manly (Keurig decrypted and produced documents from two hard drives); Tom Novak (Keurig decrypted and produced documents from three hard drives); Ian Tinkler (Keurig decrypted and produced documents from two hard drives); and Jon Wettstein (Keurig decrypted and produced documents from four hard drives).  Plaintiffs stipulate to the fact that Keurig was unable to decrypt and produce documents from the following custodians: Susan Cote (one of three hard drives); Ron DiFabio (two of the five hard drives); Steve Ferreira (one of four hard drives); Dave Manly (one of three hard drives); Tom Novak (one of four hard drives);

Ian Tinkler (two of three hard drives); and Jon Wettstein (four of five hard drives).  Plaintiffs do not stipulate to the fact that Keurig "preserved" hard drives that it could not produce documents from.

<u>Keurig's Position as to Paragraph 143</u>:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

144.   Keurig's productions included last-in-time computers for Susan Cote, Ron DiFabio, Steve Ferreira, Dave Manly, Ian Tinkler, and Jon Wettstein.  Keurig Ex. 1 at 5, 7, 10, 16, & 29 [ECF 1340-1]; Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

<u>Plaintiffs' Response to Paragraph 144</u>:  Plaintiffs do not stipulate to the fact that Keurig's production included last-in-time computers for Susan Cote, Steve Ferreira, and Dave Manly.  Plaintiffs also do not stipulate to the fact that Keurig's productions included last-in-time computers for Susan Cote, Ron DiFabio, Dave Manly, Ian Tinkler, and Jon Wettstein to the extent that Keurig suggests that data from the prior, lost hard drives were transferred to the last-in-time drives, based on a lack of knowledge and information.  Keurig testified that ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████   Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr. at 34:22-36:7).

<u>Keurig's Position as to Paragraph 144</u>:  Plaintiffs' Response constitutes improper argument in violation of the Court's October 1 Order and should be ignored.  See Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

When an employee receives a new computer, IT migrates the data from the employee's old computer to his new one.  Keurig Ex. 4, [ECF 1340-4] Keurig 30(b)(6) (Campbell) Dep. Tr. at 53:13-55:13); *see also* Keurig Ex. 8 [ECF 1340-8] (D. Manly Dep. Tr. at 548:11-16) ("Typically, if I was issued a new laptop, the IT person would take my laptop and upload everything in my current laptop to my new laptop and give it back to me fully loaded.  And I would be able to operate from day 1 with everything I had before, but just with a -- a newer laptop and maybe newer software.").  Plaintiffs' Exhibit 48 identifies documents produced from these custodian devices consistent with the duration of their employment.  *See* Pls. Ex. 48 [ECF 1284-48]; (Campbell Deposition Ex. 1659) *see also* Pls. Ex. 40 at [ECF 1284-40] (noting Ferreira's hard drive was used at end of his employment).

145.   Keurig produced responsive information stored on the hard drives (if any) from alternative sources, including custodian's email and network locations where Keurig instructed employees to save documents.  *See* Keurig Ex. 1 [ECF 1340-1] for the number of documents produced for each of these custodians.

Plaintiffs' Response to Paragraph 145:  Plaintiffs do not stipulate to the fact that Keurig produced responsive information stored on the hard drives (if any) from alternative sources, including custodian's email and network locations where Keurig instructed employees to save documents.  Keurig has admitted that its employees save documents to places in their hard drive, such as their desktop, where no backup copy of the document is created.  Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr. 120-121).

Keurig's Position as to Paragraph 145:  In the testimony cited by Plaintiffs, Mr. Campbell was referring to the "My Documents" location that is synched with the network location referred to as the "home share."  Mr. Campbell's stated: "I would say all of our employees store

files on their hard drive.  One place on their hard drive in particular is synched with a network storage folder, called My Documents, and that's where all of our users are encouraged, and I would say, as an IT person, should be storing their files.  I'm also aware that there's at least one other place, your desktop, where you could store a file, and in my experience, all of the users I work with are aware that that desktop is not a preferred location because it's not backed up.  So yes, I'm aware users save files to their hard drive.  All of them share saved files to My Documents, or they should.  And yes, they have the technical ability to save to their desktop, for example."  Pls. Ex. 10 [ECF 1287-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 120:1-16).  Keurig has set forth the number of documents produced for Dwight Brown, Susan Cote, Ken Crites, Ron DiFabio, Steve Ferreira, Dave Manly, Tom Novak, Ian Tinkler, and Jon Wettstein in Exhibit 1 to its opposition. Keurig Ex. 1 at 4, 5, 6, 7, 10-11, 16, 20, 27, 29 [ECF 1340-1].

146.    The parties do not agree as to whether unique and material documents would have been on any hard drive that could not be decrypted.

Plaintiffs' Response to Paragraph 146:  Stipulated.

147.    Plaintiffs chose not to depose Ms. Cote.  Keurig Ex. 1 at 5 [ECF 1340-1].

Plaintiffs' Response to Paragraph 147:  Plaintiffs do not stipulate to the fact that Plaintiffs chose not to depose Ms. Cote.  Plaintiffs likely would have deposed Ms. Cote if Plaintiffs had received a full production of her documents.  Ms. Cote was added as a custodian specifically to address a lack of documents relating ██████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████  Pls. MSJ at 5-23, ECF No. 1495; Pls. MSJ Ex. 28-29, ECF Nos. 1497-28; 1497-29.  The fact that Ms. Cote's production was incomplete due to Keurig's spoliation means that this deficiency was never cured.  Pls. Ex. 32 at

5, ECF No. 1287-11.  Had these documents been produced, Plaintiffs would have deposed Ms. Cote.

Keurig's Position as to Paragraph 147:  Plaintiffs' Response constitutes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

148.    Plaintiffs chose not to depose Mr. Novak.  Keurig Ex. 1 at 20 [ECF 1340-1].

Plaintiffs' Response to Paragraph 148:  Plaintiffs do not stipulate to the fact that Plaintiffs chose not to depose Mr. Novak.  Plaintiffs likely would have deposed Mr. Novak if Plaintiffs had received a full production of his documents.  In the declaration of Andrew Gross, Keurig's Former Science and Research Manager,  he stated  that Tom Novak explained that Keurig "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" Nov. 19, 2021 Torpey Decl. Ex. O, Andrew Gross Decl. ¶ 5.  The incomplete set of documents from Mr. Novak impaired Plaintiffs' ability to explore these issues at any potential deposition of Mr. Novak.

Keurig's Position as to Paragraph 148:  Plaintiffs' Response constitutes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' Response is also based on a document outside the motions record in violation of the

Court's order and should be ignored.  See Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").

> E.  **For the allegedly damaged computers of six custodians (*see* ECF No. 1286 at 12), information concerning the six employees, including the employee's dates of employment, title, receipt of preservation notices, date(s) of interview(s), and documents from these employees produced from other sources**

149.  Six hard drives from six custodians were physically damaged and could not be imaged using ordinary means:  Will Billings, Suzanne DuLong, Jimmy Huang, Fran Rathke, Jim Shepard, and Michelle Stacy.  ECF 1286 at 7 & n. 9 (Pls. Brief in Support of Motion).

Plaintiffs' Response to Paragraph 149:  Plaintiffs stipulate to the fact that six hard drives from custodians Will Billings, Suzanne DuLong, Jimmy Huang, Fran Rathke, Jim Shepard, and Michelle Stacy were physically damaged.  Plaintiffs' vendor suggested undertaking additional efforts to recover data from the hard drives of Michelle Stacy and Fran Rathke, which Keurig refused to undertake at their cost.  Keurig Ex. 31, ECF No. 1340-31.  Plaintiffs followed the vendor's suggestion at its own expense and was able to image the hard drives for Michelle Stacy and Fran Rathke that Keurig claimed could not be done.  *Id*.  Plaintiffs do not agree that Keurig exhausted "ordinary" methods to retrieve documents from the damaged hard drives.  Keurig Ex. 31, ECF No. 1340-31.

Keurig's Position as to Paragraph 149:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

150.  Keurig offered Plaintiffs to have their own vendor assess the damaged hard drives, and TreeHouse (on behalf of all Plaintiffs) accepted this offer with respect to five of the six damaged hard drives.  TreeHouse's outside vendor confirmed that these five drives analyzed could

not be accessed using ordinary means.  Pls. Ex. 40 [ECF 1284-40] (Billings, DuLong, Rathke, Shepard, and Stacy).  TreeHouse, McLane, and DPPs elected not to conduct any analysis of the Huang drive.  *Id.*  JBR requested to analyze the Huang drive only after the close of fact discovery and subsequently confirmed that this drive, too, could not be accessed using ordinary means. Keurig Ex. 1 at 15 [ECF 1340-1]; Keurig Ex. 40 [ECF 1340-40] (M. Moore July 8, 2020 email).

        Plaintiffs' Response to Paragraph 150:  Plaintiffs do not stipulate to the fact as set forth by Keurig.  Plaintiffs' vendor independently assessed the hard drive and concluded that it was damaged, and that additional expenses would be required to replace mechanical parts and attempt to retrieve data from the drive.  Plaintiffs and Keurig were unable to agree on who should bear the cost associated with additional repair efforts to retrieve data from the drive.  Keurig Ex. 31, ECF No. 1340-31.  Out of the five other hard drives, Plaintiffs undertook additional efforts to recover data from two hard drives belonging respectively to Michelle Stacy and Fran Rathke based on Plaintiffs' vendor's assessment of the likelihood of retrieving data from the damaged drives, and Plaintiffs' vendor was ultimately able to image those hard drives.  This was at Plaintiffs' expense, as Keurig indicated that it would not cover the associated costs.  Keurig Ex. 31, ECF No. 1340-31.  Plaintiffs do not agree that Keurig exhausted "ordinary" methods to retrieve documents from the damaged hard drives.  Keurig Ex. 31, ECF No. 1340-31.

        Keurig's Position as to Paragraph 150:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

    151.    After confirming that the five drives it analyzed could not be recovered using ordinary means, TreeHouse had its vendor use non-standard methods to access two drives, of Ms.

Stacy and Ms. Rathke.  Keurig Ex. 31 [ECF 1340-31] (K. Lanski email of Oct. 23, 2019).  No plaintiff took this step as to any of the other four damaged drives.

Plaintiffs' Response to Paragraph 151:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs' vendor suggested undertaking additional efforts to recover data from the hard drives of Michelle Stacy and Fran Rathke, which Keurig refused to incur costs for. Keurig Ex. 31, ECF No. 1340-31.  Plaintiffs followed the vendor's suggestion at its own expense and was able to image the hard drives for Michelle Stacy and Fran Rathke that Keurig claimed could not be done.  *Id*.  Plaintiffs do not agree that Keurig exhausted "standard" methods to retrieve documents from the damaged hard drives.  *Id*.

Keurig's Position as to Paragraph 151:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

152.    The parties do not agree as to whether unique and material documents would have been on any damaged hard drive.

Plaintiffs' Response to Paragraph 152:  Stipulated.  As noted above, Keurig's 30(b)(6) witness testified that data from the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮  Pls. Ex. I, ECF No. 1391-3 (Campbell Tr. 114:1-12).  Keurig's counsel also stated that Keurig's employees' computer hard drives were "not backed up."  Keurig Ex. 40, ECF No. 1340-40.

Keurig's Position as to Paragraph 152:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August

5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").
Keurig incorporates its position as to Paragraph 102.

<u>Will Billings</u>

153.    Keurig produced 105,424 documents from Mr. Billings' files, including 1,122
documents from his home share.  Keurig Ex. 1 at 2 [ECF 1340-1].

<u>Plaintiffs' Response to Paragraph 153</u>:  Plaintiffs do not stipulate to the fact as set
forth by Keurig.  Plaintiffs have only identified 80,802 documents in which Mr. Billings was the
original or duplicate custodian.  Plaintiffs have identified 1,122 documents from a source folder
listed as "███████████████████████████████████████████."

<u>Keurig's Position as to Paragraph 153</u>:  Keurig incorporates its position as to
Paragraph 106.

154.    Plaintiffs chose not to use non-standard methods to retrieve documents from the
damaged Billings hard drive.  Keurig Ex. 31 [ECF 1340-31] (K. Lanski October 23, 2019 email).

<u>Plaintiffs' Response to Paragraph 154</u>:  Plaintiffs stipulate to the fact that Plaintiffs
chose not to undertake additional efforts to recover data from the damaged Billings hard drive after
Keurig indicated that it would not cover the associated costs.  Keurig Ex. 31, ECF 1340-31.
Plaintiffs do not agree that Keurig exhausted "standard" methods to retrieve documents from the
damaged hard drives.  Keurig Ex. 31, ECF No. 1340-31.

<u>Keurig's Position as to Paragraph 154</u>:  Plaintiffs' Response includes improper
argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No.
1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August
5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

155.    Plaintiffs chose not to depose Mr. Billings.  Keurig Ex. 1 at 2 [ECF 1340-1].

Plaintiffs' Response to Paragraph 155:  Stipulated that Plaintiffs did not depose Mr. Billings.  Plaintiffs may have chosen to depose Mr. Billings if all of Mr. Billings' documents had been preserved and produced to serve as a basis for the deposition.

Keurig's Position as to Paragraph 155:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Suzanne DuLong

156.    Keurig produced 106,561 documents from Ms. DuLong's custodial files, including 804 documents produced from her home share.  Keurig also produced 4,369 documents from the "█████████████" shared folder used by Ms. DuLong, including 1,501 documents from the "███" folder that Ms. DuLong maintained.  Keurig Ex. 1 at 8-9 [ECF 1340-1].

Plaintiffs' Response to Paragraph 156:  Plaintiffs do not stipulate to the fact as set forth by Keurig.  Plaintiffs have only identified 84,465 documents in which Ms. DuLong was the original or duplicate custodian.  While Plaintiffs have identified 4,369 documents from the "██████████" folder, the custodian for those files is Keurig, not Ms. DuLong.  Plaintiffs have identified  1,504  documents  from  the  "█████████████████████"  subfolder.  In addition, Plaintiffs do not stipulate that any files produced from CommVault are "custodial files."  Keurig did not retain metadata in its CommVault email archive.  Pls. Ex. 41, ECF No. 1342-3.  Keurig's counsel manually assigned custodian metadata values when producing emails stored in the archive, based on the individuals who were copied on each document.  *Id*.  As a result, Plaintiffs are incapable of identifying the true universe of documents in Keurig's productions which were sourced from any particular custodian's files.  *Id*.

Keurig's Position as to Paragraph 156:  Keurig incorporates its position as to Paragraph 106.

157.    Ms. DuLong testified that she saved "[j]ust about everything" to the "███████ ███████" folder, which was collected and produced from, because "it was the way that my team members could access them."  Keurig Ex. 35 [ECF 1340-35] (S. DuLong Dep. Tr. at 360:8-361:18).

Plaintiffs' Response to Paragraph 157:  Plaintiffs stipulate to Ms. DuLong's testimony.  Plaintiffs do not stipulate as to the fact that all documents in the "███████ ███████" folder was produced based on lack of sufficient knowledge and information. Plaintiffs point out that Keurig's 30(b)(6) witness testified that data from the ███████ ███████.  Pls. Ex. I, ECF No. 1391-3 (Campbell Tr. 114:1-12). Keurig's counsel also stated that Keurig's employees' computer hard drives were "not backed up." Keurig Ex. 40, ECF No. 1340-40.

Keurig's Position as to Paragraph 157:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

158.    In addition, Ms. DuLong testified that prior to leaving Keurig, she saved everything on her computer hard drive to the "███" folder on the share drive, which was collected and produced, "so that members of [her] team who were going to assume [her] responsibilities had access to whatever [she] hadn't previously put on the share drives."  Keurig Ex. 35 [ECF 1340-35] (S. DuLong Dep. Tr. at 363:25-365:5).

<u>Plaintiffs' Response to Paragraph 158</u>:  Plaintiffs do not stipulate to this fact based on lack of sufficient knowledge and information.  Plaintiffs stipulate as to the extent of Ms. DuLong's testimony.  Plaintiffs do not stipulate as to whether "everything" from Ms. DuLong's hard drive was in fact saved onto the share drive, collected, and produced, based on lack of sufficient knowledge and information.  As Keurig acknowledged, Ms. DuLong stored documents on the hard drive of her laptop when travelling.  Keurig Ex. 34, ECF No. 1340-34.

<u>Keurig's Position as to Paragraph 158</u>:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Moreover, Plaintiffs have not provided complete information related to counsel's statement in Keurig Exhibit 34 [ECF 1340-34].  Keurig's counsel stated "Though Ms. DuLong would occasionally store documents on the hard drive of her laptop when travelling, she routinely copied those documents to the shared drives so they could be accessed by her team."  Keurig Ex. 34, [ECF No. 1340-34] (W. Newton email to counsel for Plaintiffs, dated July 1, 2019 regarding encryption); *see also* Plaintiffs' Response to Paragraph 201.

159.    Keurig preserved two hard drives from Ms. DuLong and decrypted and produced documents from one of them.  Keurig Ex. 1 at 8 [ECF 1340-1]; Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

<u>Plaintiffs' Response to Paragraph 159</u>:  Plaintiffs stipulate to the fact that Keurig produced documents from one of Ms. DuLong's hard drives.  Plaintiffs further note that the latest date of the documents produced from the non-damaged DuLong hard drive was January 20, 2011, but Ms. DuLong left Keurig more than five years later, on December 30, 2016.  Pls. Ex. A, ECF

No. 1402-1.  Plaintiffs dispute that Keurig "preserved" the drive from which they did not produce data.

> Keurig's Position as to Paragraph 159:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

160.    Plaintiffs chose not to use non-standard methods to retrieve documents from the damaged DuLong hard drive.  Keurig Ex. 31 [ECF 1340-31] (K. Lanski Oct. 23, 2019 email).

> Plaintiffs' Response to Paragraph 160:  Plaintiffs stipulate to the fact that Plaintiffs chose not to undertake additional efforts to recover data from the damaged DuLong hard drive after Keurig indicated that it would not cover the associated costs based on Plaintiffs' vendor's assessment of the likelihood or retrieving data from the damaged drive.  Keurig Ex. 31, ECF No. 1340-31.  Plaintiffs do not agree that Keurig exhausted "standard" methods to retrieve documents from the damaged hard drives.  *Id.*

> Keurig's Position as to Paragraph 160:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Jimmy Huang

161.    Keurig produced 85,388 documents from Mr. Huang's custodial files, including 1,592 documents collected from ██████████████████████████████████.  Keurig Ex. 1 at 14 [ECF 1340-1].

> Plaintiffs' Response to Paragraph 161:  Plaintiffs do not stipulate to the fact as set forth by Keurig.  Plaintiffs have only identified 84,388 documents in which Mr. Huang was the

original or duplicate custodian.  Plaintiffs have identified 1,592 documents from the "████████

████████████████████████       █████████████████████████████████████████

████████████████████████████"  In addition, Plaintiffs do not stipulate that any

files produced from CommVault are "custodial files."  Keurig did not retain metadata in its

CommVault email archive.  Pls. Ex. 41, ECF No. 1342-30.  Keurig's counsel manually assigned

custodian metadata values when producing emails stored in the archive, based on the individuals

who were copied on each document.  *Id*.  As a result, Plaintiffs are incapable of identifying the

true universe of documents in Keurig's productions which were sourced from any particular

custodian's files.  *Id*.

> <u>Keurig's Position as to Paragraph 161</u>:  Keurig incorporates its position as to
>
> Paragraph 106.

162.    Mr. Huang testified that anything saved to his Keurig-issued computer was

transferred to OneDrive, which was collected and produced.  Keurig Ex. 39 [ECF 1340-39] (Huang

Dep. Tr. at 33:20-34:7).

> <u>Plaintiffs' Response to Paragraph 162</u>:  Plaintiffs stipulate that Mr. Huang testified
>
> that the files from his computer "was probably transferred to the OneDrive."  Keurig Ex. 39, ECF
>
> No. 1340-39 (Huang Tr. at 34:5-6).  Plaintiffs do not stipulate as to the fact that all documents in
>
> Mr. Huang's hard drive were in fact transferred to OneDrive, or that all relevant documents from
>
> OneDrive was produced, based on lack of sufficient knowledge and information.  Plaintiffs point
>
> out that Keurig's 30(b)(6) witness testified that data from the ████████████████████████
>
> ████████████.  Pls. Ex. I, ECF No. 1391-3 (Campbell Tr. 114:1-12).  Keurig's counsel also
>
> stated that Keurig's employees' computer hard drives were "not backed up."  Keurig Ex. 40, ECF

1340-40.  As Keurig's counsel acknowledged, "Keurig employees stored documents in various places—including . . . their hard drives."  Pls. Ex. 45, ECF No. 1284-45.

Keurig's Position as to Paragraph 162:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Keurig produced 1,592 documents from Mr. Huang's OneDrive that span the entire relevant time period of 2009-2017.  Keurig Ex. 1 at 14 [ECF 1340-1].  Keurig's incorporates its position as to Paragraph 102.

163.    Keurig produced documents from the two computers Mr. Huang was actively using at the time of collection in 2018.  Keurig Ex. 1 at 15 [ECF 1340-1]; Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

Plaintiffs' Response to Paragraph 163:  Plaintiffs stipulate that Keurig produced documents from two hard drives for Mr. Huang.  Plaintiffs do not stipulate that the computers were those that "Mr. Huang was actively using at the time of collection," as Keurig testified that ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr. at 34:22-36:7).

Keurig's Position as to Paragraph 163:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

164.     Plaintiffs chose not to use non-standard methods to retrieve documents from the damaged Huang hard drive.  Keurig Ex. 31 [ECF 1340-31] (K. Lanski Oct. 23, 2019 email).

Plaintiffs' Response to Paragraph 164:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs' vendor did not assess the Huang hard drive based on Keurig's representation that the hard drive exhibits a clicking noise, which is indicative of a mechanical failure to the drive and further attempted access may cause damage to the platters containing data within.  Keurig Ex. 31, ECF No. 1340-31.  Plaintiffs do not stipulate to Keurig's characterization of undertaking additional efforts to recover data as a "non-standard method[]" as it is not supported, misleading, argumentative, and outside the scope of the Court's Order.  Plaintiffs do not agree that Keurig exhausted "standard" methods to retrieve documents from the damaged hard drives.  Keurig Ex. 31, ECF No. 1340-31.

Keurig's Position as to Paragraph 164:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Fran Rathke

165.     Keurig produced 108,070 documents from Ms. Rathke's custodial files, including 3,027 documents from her home share that spanned her entire employment during the relevant time period.  Keurig Ex. 1 at 21 [ECF 1340-1].

Plaintiffs' Response to Paragraph 165:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 107,125 documents in which Ms. Rathke was the original or duplicate custodian.  Plaintiffs have identified 3,026 documents with from "███████ ████████████████████████"  In addition, Plaintiffs do not stipulate that any files produced from CommVault are "custodial files."  Keurig did not retain metadata in its CommVault email archive.

Pls. Ex. 41, ECF No. 1342-30.  Keurig's counsel manually assigned custodian metadata values when producing emails stored in the archive, based on the individuals who were copied on each document.  *Id*.  As a result, Plaintiffs are incapable of identifying the true universe of documents in Keurig's productions which were sourced from any particular custodian's files.  *Id*.

Keurig's Position as to Paragraph 165:  Keurig incorporates its position as to Paragraph 106.

166.    Keurig preserved three hard drives for Ms. Rathke and produced documents from two of them, including her last-in-time hard drive that she used until her employment ended in December 2015.  Keurig Ex. 1 at 21 [ECF 1340-1]; Pls. Corrected Ex. A [ECF 1402-1].

Plaintiffs' Response to Paragraph 166:  Plaintiffs stipulate to the fact that Keurig produced documents from two of Ms. Rathke's hard drives.  Plaintiffs do not stipulate that one of the Rathke hard drives produced was "last-in-time."  At no time before Plaintiffs imaged Ms. Rathke's hard drive did Keurig represent to Plaintiffs that the hard drive from Ms. Rathke was the oldest hard drive.  Pls. Ex. A, ECF No. 1402-1.  Indeed, Keurig did not have ███████████████ ████████████████████████████████████ its basis for asserting that the drive that could not be imaged was the oldest hard drive is solely based on analysis of the documents produced from other hard drives.  Pls. Ex. I, ECF No. 1391-3 (Campbell Tr. 35:19-36:7); Pls. Ex. 48, ECF No. 1284-48.  Keurig testified that ████████████████████████████ ████████████████████████████████████████ ███████████████████████████ Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr. at 34:22-36:7).  Plaintiffs do not stipulate as to the fact that Keurig "preserved" Ms. Rathke's third hard drive, which was damaged.  Plaintiffs' vendor suggested sending Fran Rathke's hard drive to a data recovery center, which Keurig refused to

undertake at their cost.  Keurig Ex. 31, ECF No. 1340-31.  Plaintiffs followed the vendor's suggestion at its own expense and was able to image Ms. Rathke's third hard drive, which Keurig claimed could not be done.  *Id.*

          <u>Keurig's Position as to Paragraph 166</u>:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' Exhibit 48 identifies documents produced from Ms. Rathke's hard drives consistent with the duration of her employment.  *See* Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659).

        167.    Plaintiffs undertook additional efforts to recover data from the third and oldest Rathke hard drive, which resulted in the production of 11 documents.  Pls. Ex. 30 [ECF 1284-30].

          <u>Plaintiffs' Response to Paragraph 167</u>:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs' vendor suggested making an additional attempt to image Fran Rathke's hard drive, which Keurig refused to undertake at their cost.  Keurig Ex. 31, ECF No. 1340-31.  Plaintiffs followed the vendor's suggestion at their own expense and was able to image Ms. Rathke's third hard drive, which Keurig claimed could not be done.  *Id*.  Keurig fails to mention that at no time before Plaintiffs imaged Ms. Rathke's hard drive did Keurig represent to Plaintiffs that the hard drive from Ms. Rathke was the oldest hard drive.  Pls. Ex. A, ECF No. 1402-1.  Indeed, Keurig did not have ██████████████████████████████████ ██████████████████████ – its basis for asserting that the drive that could not be imaged was the oldest hard drive is solely based on analysis of the documents produced from other hard drives.  Pls. Ex. I, ECF No. 1391-3 (Campbell Tr. 35:19-36:7); Pls. Ex. 48, ECF No. 1284-48.  Keurig testified that

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████    Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr. at 34:22–

36:7).

Keurig's Position as to Paragraph 167:  Plaintiffs' Response includes improper

argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No.

1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August

5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

168.    Plaintiffs chose not to re-depose Ms. Rathke concerning any of the 11 documents.

Keurig Ex. 1 at 21 [ECF 1340-1].

Plaintiffs' Response to Paragraph 168:  Stipulated that Plaintiffs did not depose Ms.

Rathke again after her deposition on May 17, 2019.  Plaintiffs further state that Keurig learned that

it could not decrypt Ms. Rathke's hard drive at the latest in March 2018, when D4 was unable to

decrypt Ms. Rathke's hard drive.  Pls. Ex. 17, ECF No. 1284-17.  However, Keurig only notified

Plaintiffs for the first time on May 20, 2019 that Ms. Rathke's hard drive could not be decrypted.

Pls. Ex. 4,5, ECF No. 1284-45.  Notably, this was one day *after* Plaintiffs had already deposed

Ms. Rathke.

Keurig's Position as to Paragraph 168:  Plaintiffs' Response includes improper

argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No.

1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August

5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Jim Shepard

169.    Keurig produced 156,149 documents from Mr. Shepard's custodial files and also

produced the "████████" shared folder as well as other shared folders that were utilized by Mr.

Shepard.  Keurig Ex. 1 at 22 [ECF 1340-1]; Keurig Ex. 41 [ECF 1340-41] (M. Baird June 3, 2019 email).

Plaintiffs' Response to Paragraph 169:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 109,399 documents in which Mr. Shepard was the original or duplicate custodian.    Plaintiffs have identified 249 documents from "█████████████████████████████"  but the custodian for those documents is Keurig.  In addition, Plaintiffs do not stipulate that any files produced from CommVault are "custodial files."  Keurig did not retain metadata in its CommVault email archive.  Pls. Ex. 41, ECF No. 1342-30.    Keurig's counsel manually assigned custodian metadata values when producing emails stored in the archive, based on the individuals who were copied on each document.  *Id.*  As a result, Plaintiffs are incapable of identifying the true universe of documents in Keurig's productions which were sourced from any particular custodian's files.  *Id.*

Keurig's Position as to Paragraph 169:  Keurig incorporates its position as to Paragraph 106.

170.   Mr. Shepard personally produced over 2,200 responsive documents, ranging from January 2009 to the end of his employment, from an external hard drive to which Mr. Shepard had copied his entire Keurig-issued computer in September 2016, just before he left Keurig.  Keurig Ex. 1 at 22 [ECF 1340-1].

Plaintiffs' Response to Paragraph 170:  Plaintiffs stipulate to the fact that Keurig produced around 2,200 documents from Mr. Shepard's external hard drive.  Plaintiffs point out that out of the 2,200 documents Keurig produced from Mr. Shepard's external hard drive, only 57 were duplicative of Keurig's other document productions (or less than 3%).  Pls. Ex. A, ECF No. 1402-1.  Plaintiffs do not stipulate that the documents were Mr. Shepard's personal documents,

which is inconsistent with the position that Keurig has taken with the documents belonging to Mr. Gross, where Keurig argued that it had control over his documents even though Mr. Gross was an ex-employee whom Keurig did not represent.  Nov. 19, 2021 Torpey Decl., Ex. O (May 23, 2017 M. Baird Ltr.).

Keurig's Position as to Paragraph 170:  Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored.  *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").  Plaintiffs' Response also includes a document outside the motions record in violation of the Court's order and should be ignored.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").  Moreover, Plaintiffs have not provided complete information related to Mr. Gross.  Keurig set forth its position in the letter submitted as Plaintiffs' Exhibit 4.  *See* Pls. Ex. 4 at 3 [ECF 1284-4] (Letter from S. Southall to Plaintiffs' counsel, dated December 11, 2019).  Keurig does not agree with Plaintiffs' analysis of Mr. Shepard's files, which was raised for the first time in Plaintiffs' Reply, to which Keurig has not been able to respond.

171.    Plaintiffs chose not to use non-standard methods to retrieve documents from the damaged Shepard hard drive.  Keurig Ex. 31 [ECF 1340-31] (K. Lanski Oct. 23, 2019 email).

Plaintiffs' Response to Paragraph 171:  Plaintiffs stipulate to the fact that Plaintiffs chose not to undertake additional efforts to recover data from the damaged Shepard hard drive after Keurig indicated that it would not cover the associated costs.  Plaintiffs do not agree that Keurig exhausted "standard" methods to retrieve documents from the damaged Shephard hard drive.  Keurig Ex. 31, ECF No. 1340-31.

Keurig's Position as to Paragraph 171: Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored. *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

172.    Plaintiffs chose not to depose Mr. Shepard. Keurig Ex. 1 at 22 [ECF 1340-1].

Plaintiffs' Response to Paragraph 172: Stipulated that Plaintiffs chose not to depose Mr. Shepard. Plaintiffs may have chosen to depose Mr. Shepard if all of Mr. Shepard's relevant documents had been preserved and produced to serve as a basis for the deposition.

Keurig's Position as to Paragraph 172: Plaintiffs' Response includes improper argument in violation of the Court's October 1 Order and should be ignored. *See* Order, ECF No. 1554 at 2 ("To the extent that the parties cannot otherwise stipulate to a fact requested in the August 5 Order, the Stipulations shall set forth each parties' position as to that fact without argument[.]").

Michelle Stacy

173.    Keurig produced 125,477 documents from Ms. Stacy's custodial files, including documents from three Stacy hard drives imaged in 2018, including her last-in-time hard drive. Pls. Ex. 48 [ECF 1284-48] (Campbell Deposition Ex. 1659); Keurig Ex. 1 at 23 [ECF 1340-1].

Plaintiffs' Response to Paragraph 173: Plaintiffs do not stipulate to the fact as set forth by Keurig. Plaintiffs have only identified 107,922 documents in which Ms. Stacy was the original or duplicate custodian. In addition, Plaintiffs do not stipulate that any files produced from CommVault are "custodial files." Keurig did not retain metadata in its CommVault email archive. Pls. Ex. 41, ECF No. 1342-30. Keurig's counsel manually assigned custodian metadata values when producing emails stored in the archive, based on the individuals who were copied on each document. *Id*. As a result, Plaintiffs are incapable of identifying the true universe of documents in Keurig's productions which were sourced from any particular custodian's files. *Id*. In addition,

Plaintiffs do not stipulate that one of the Stacy hard drives produced was "last-in-time," as Keurig

testified that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████  Pls. Ex. 10, ECF No. 1287-4 (Campbell

Tr. at 34:22-36:7).

       <u>Keurig's Position as to Paragraph 173</u>:  Plaintiffs' Exhibit 48 identifies documents

produced from Ms. Stacy's devices consistent with the duration of her work for Keurig.  See Pls.

Ex. 48 [ECF 1284-48].  Keurig incorporates its position as to Paragraph 106.

       174.   Plaintiffs undertook additional efforts to recover data from a fourth hard drive,

resulting in the production of 4,641 email files that Keurig produced approximately 12 weeks

before Ms. Stacy's deposition.  Keurig Ex. 10 [ECF 1340-10] (M. Baird letter to counsel regarding

the production of Stacy documents dated December 20, 2019); Keurig Ex. 1 at 23-24 [ECF 1340-

1].

       <u>Plaintiffs' Response to Paragraph 174</u>:  Plaintiffs stipulate to the fact that Plaintiffs

were able to image a device for a fourth hard drive from Ms. Stacy, and that Keurig produced

4,641 email documents (4,648 documents total) from the damaged hard drive.  Plaintiffs note that

Plaintiffs' vendor suggested undertaking additional efforts to recover data from Ms. Stacy's hard

drive, but Keurig objected and refused to undertake at their cost.  Keurig Ex. 31, ECF No. 1340-

31.  Plaintiffs followed the vendor's suggestion at its own expense and was able to image Ms.

Stacy's hard drive.  *Id*.  The resulting production consisted of 4,648 documents in total, 3,778 of

which—or 81% of the total production volume—were unique, including "Daily Report" emails

and attachments that were not found elsewhere in Keurig's production.  Pls. Ex. A, ECF No. 1402-

1. These documents contain relevant information regarding Keurig's sales of brewers, K-Cups, and accessories from 2009 and 2010. *Id.*

Keurig's Position as to Paragraph 174: The "Daily Report" emails and attachments are automated emails sent by customer service to the entire Keurig Senior Management Team (among others) attaching reports of sales and shipment totals for the day. Pls. Ex. K, L, M [ECF 1391-4, -5, -6]. There is no commentary or discussion, just data extracted from Keurig's financial databases. *Id..* Plaintiffs raised this argument for the first time in their Reply, to which Keurig has not had the opportunity to respond.

175. Keurig and Plaintiffs disagree as to the import or duplicate nature of the Stacy email files produced in December 2019.

Plaintiffs' Response to Paragraph 175: Stipulated.

**F.     For the allegedly missing chain-of-custody information (*see* ECF No. 1286 at 12–13), information concerning for which employees' documents chain-of-custody information is not available, and whether documents from these employees were produced from other sources**

176. Plaintiffs' Counter Statement to Keurig's Proposed Stipulated Facts: Keurig has not provided information concerning for which employees' documents chain-of-custody information is not available as requested in the Court's August 5, 2021 Order.

Keurig's Response to Plaintiffs' Counter Statement in Paragraph 176: Plaintiffs' motion indicates that their claims related to "chain of custody" information pertain to the nine custodians for whom Keurig could not locate a hard drive. *See, e.g.*, Motion at 7 (alleging Keurig "knowingly destroyed records that would have identified the dates and times when (or whether) the missing custodian computers were collected"). Keurig had provided information concerning those employees in Section I.C. *Supra.*

177.   Plaintiffs' Counter Statement to Keurig's Proposed Stipulated Facts:  Keurig has

not provided information concerning whether documents from these employees were produced

from other sources as requested in the Court's August 5, 2021 Order.

Keurig's Position on Plaintiffs' Counter Statement in Paragraph 177:  Keurig

incorporates its position as to Paragraph 176.

178.   Plaintiffs contend that Keurig "destroyed" ███████████████████████

███████████████  ECF 1286 at 7-8 (Pls. Brief in Support of Motion).

Plaintiffs' Response to Paragraph 178:  Stipulated.

179.   █████████████████████████████████████████████

██████████████████████████████████████  Plaintiffs Ex. 10 [ECF 1287-4]

(Keurig 30(b)(6) (Campbell) Dep. Tr. at 63:16-18).

Plaintiffs' Response to Paragraph 179:  Stipulated.

180.   The Remedy IT ticketing system was "how we in IT like to receive our work."

Plaintiffs' Ex. 10 [ECF 1287-4](Keurig 30(b)(6) (Campbell) Dep. Tr. at 46: 1-2. ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████  Keurig Ex. 4 [ECF 1340-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. 217:5-

218:20).

Plaintiffs' Response to Paragraph 180:  Plaintiffs stipulate that the Remedy IT

ticketing system was "how we in IT [at Keurig] like to receive our work."  Plaintiffs also stipulate

that ████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████. Plaintiffs do not stipulate insofar as Keurig claims that this is

the only relevant function of the Remedy IT ticketing system.  The Remedy IT ticketing system also ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.  Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr.  46:25-47:3;  60:17-61:8).   The  chain-of-custody  information  provided  by  the Remedy ticketing system ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████.  Pls. Ex. 10, ECF No. 1287-4 (Campbell Tr. 46:25-47:3; 60:17-61:8).

Keurig's Position as to Paragraph 180:  Plaintiffs' statement that ████████ ████████████████████████████████ is not supported by the cited testimony.  Nor did Mr. Campbell testify that the Remedy ticketing system provided chain-of-custody information. Mr. Campbell discussed the new ticketing system that Keurig implemented in April 2019, and Campbell stated, "███████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████" Pls. Ex. 10 [ECF 1287-4] (Keurig 30(b)(6) (Campbell) Dep. Tr. at 62:1-9).

G.   **For the allegedly missing hard copy documents (see ECF No. 1286 at 13–15), information concerning the employees who created the hard copy documents, including title, dates of employment, receipt of preservation notice(s), date(s) of interview(s), and documents from these employees produced from other sources**

181.   Plaintiffs contend that there are missing hard copy documents as to three custodians:  Don Barberio, Tom Ferguson, and John Whoriskey.  Pls. Ex. 12 [ECF 1287-5].

Plaintiffs' Response to Paragraph 181:  Stipulated.

Don Barberio

182.    Plaintiffs contend that Mr. Barberio threw away hand-written notes from meetings

with █████████████████████████████. ECF 1286 at 10 (Pls. Brief in Support of Motion).

    Plaintiffs' Response to Paragraph 182: Stipulated.

183.    Mr. Barberio attended meetings with █████████ on July 17, 2013, with █████████

on November 7, 2013, with ██████ on February 11, 2014, and with ██████ in August 2013 and

November 2013.  Keurig Ex. 1 at 1 [ECF 1340-1].

    Plaintiffs' Response to Paragraph 183: Stipulated.

184.    Mr. Barberio testified that, if he took notes in any meeting, they were thrown away

shortly after the meeting.  Keurig Ex. 17 [ECF 1340-17] (D. Barberio Dep. Tr. at 390:13-391:16).

("[W]hat I wanted to say was I didn't hold onto them and throw them out the day I left . . . it was

notes at a meeting and after those notes were delivered to Tom verbally or e-mail, whatever, I

didn't hold onto them.").

    Plaintiffs' Response to Paragraph 184:  Plaintiffs stipulate that Mr. Barberio

testified that he did not hold onto his meeting notes with lost customers.  Mr. Barberio further

testified that he maintained notes, including meeting notes with customers including ████████

████████████████████ in a yellow binder in his office, which he threw out when he left

Keurig in June 2014.  Pls. Ex. C, ECF No. 1393-3 (Barberio Tr. 306:2-20).

    Keurig's Position as to Paragraph 184:  Mr. Barberio subsequently clarified the

testimony that Plaintiffs cite and explained that, if he took notes in any meeting, they were thrown

away shortly after the meeting.  Keurig Ex. 17 [ECF 1340-17] (D. Barberio Dep. Tr. at 381:13-

383:5).  Keurig quoted Mr. Barberio's testimony in Paragraph 184 and provided this testimony to

the Court in Keurig Ex. 17 [ECF 1340-17].  For the convenience of the Court, Keurig has set forth

the full testimony below:

Q.  And then any additional color from the meeting that was in your notebook --in your binder -- was thrown out at the end of your employment with Keurig, correct?

A.  No.  I think it was thrown out the next day, after the meeting.  I didn't hold on to scratches on a pad.

Q.  Uh-huh.  Do you recall any other laptops that you had in connection with your work at Keurig besides the one that you turned into Tom Ferguson and someone from HR?

A.   No.

MS. TORPEY:  Okay.  I have no more questions.

THE DEPONENT:  Thank you.

EXAMINATION BY MR. RUSS:

Q.  You just said to the extent you may have thrown out meeting notes they would have been thrown out the next day or soon thereafter?

A.  Let's put -- I just -- what I wanted to say was I didn't hold onto them and throw them out the day I left.

Q.   Okay.

A. It was -- it was notes at a meeting and after those notes were delivered to Tom verbally or e-mail, whatever, I didn't hold onto them.

*Id.* at 390:13-391:16.

185.    Mr. Barberio further testified that he "wasn't a big note taker, so I never had pages of notes" and that "anything that had any meat on the bone… would go to Tom Ferguson."  Keurig Ex. 17 [ECF 1340-17] (D. Barberio Dep. Tr. at 381:24-382:12).

<u>Plaintiffs' Response to Paragraph 185</u>:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Mr. Barberio testified that he kept notes from meetings with customers including ███████████████████████ in a "yellow binder" that he threw out when he cleaned out his office.  Pls. Ex. B, ECF No. 1402-1 (Barberio Tr. at 306:2-20).  Mr. Barberio testified that would sometimes communicate information to Mr. Ferguson over the phone rather

than in writing such that his notes would not have been preserved.  Keurig Ex. 17, ECF No. 1340-17 (D. Barberio Dep. Tr. at 387:4-25).

> Keurig's Position as to Paragraph 185:  Mr. Barberio subsequently clarified the testimony that Plaintiffs cite and explained that he "wasn't a big note taker."  Keurig Ex. 17 [ECF 1340-17] (D. Barberio Dep. Tr. at 381:24-25). Keurig quoted Mr. Barberio's testimony in Paragraph 185 and provided this testimony to the Court in Exhibit 17.  For the convenience of the Court, Keurig has set forth the full testimony below:

> Q.  Mr. Barberio, you know me as Peter Russ, counsel for Keurig and yourself at this deposition.  Earlier today, you, in response to certain questioning, indicated that you sometimes took notes on yellow legal pads.  Do you remember that testimony?

> A.  I do, yeah.

> Q.  Can you briefly describe your practice or protocol for note taking at the meetings in which you would take notes?

> A.  I wasn't -- I wasn't a big note taker, so I never had pages of notes.  The meetings -- a lot of meetings were long.  I doodled, like people are doing probably right now.  And if anything -- I mean anything that had any meat on the bone, I mean that was -- that would go to Tom Ferguson.  Tom would be waiting for me to walk out anyway.  So he would say, what were the meeting highlights?  So anything that would be a highlight from the meeting, Tom would have.

> Q.  So to the extent that your notes would contain anything material or as you just testified a highlight, was it your practice to convey through e-mail or other means that content to Mr. Ferguson?

> A.  Again, I wasn't a big note or  e-mail guy.  More than likely, when a meeting was over, I would give Tom a call.  Tom was working around the clock all the time, and I would call him up and tell him what the highlights were.  Sometimes he would say I'm on the road, so put it down in an e-mail and I would.  Anything that was big, material, would go to Tom.  Tom was really running this whole thing.

Keurig Ex. 17 [ECF 1340-17] (D. Barberio Dep. Tr. at 381:13-383:5).

186.    Keurig produced 21,533 emails in which Mr. Barberio is identified as the original or duplicate custodian.  Keurig Ex. 1 at 1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 186:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 11,444 documents (not just emails) in which Mr. Barberio was the original or duplicate custodian.  Pls. Ex. A, ECF No. 1402-1.

Keurig's Position as to Paragraph 186:  Keurig incorporates its position as to Paragraph 106.

187.  Documents produced from Mr. Barberio's files include communications regarding the meetings with ████████████████████████.  Keurig Ex. 1 at 1 [ECF 1340-1].

Plaintiffs' Response to Paragraph 187:  Plaintiffs stipulate to the fact that Mr. Barberio's files included some communications regarding meetings with ████████████████ ██████████████.  Plaintiffs do not stipulate to the fact that all relevant information and notes regarding meetings with ████████████████████████ were preserved in the documents produced from Mr. Barberio's files.  Mr. Barberio testified that he would make hard copy notes while attending meetings with customers but that he threw away these notes—including notes on any discussion of retailer concerns regarding the 2.0 Brewer—when he cleaned out his office in June 2014.  Pls. Ex. 16, ECF No. 1284-16 (Barberio Tr. at 306:2-20).

Keurig's Position as to Paragraph 187:  Keurig incorporates it responses to Paragraphs 184 and 185.

Tom Ferguson

188.  Mr. Ferguson testified that he could not recall whether he ever took a handwritten note at any retailer meeting.  Keurig Ex. 16 [ECF 1340-16] (T. Ferguson Dep. Tr. at 449:3-23).

Plaintiffs' Response to Paragraph 188:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Mr. Ferguson testified that it was very possible that he took handwritten notes at retailer meetings and that he believed that he did have notebooks going back in time.  Pls. Ex.

1, ECF No. 1402-1 (Ferguson Tr. 449:13-23).  Moreover, Mr. Barberio testified that he handed notepads to Mr. Ferguson, which were produced.  *Id.* (Barberio Tr. at 304:7-12).

Keurig's Position as to Paragraph 188:  Mr. Ferguson repeatedly testified that he could not recall whether he ever took a handwritten note at any retailer meeting.  *See* Ex. 16, [ECF 1340-16] (T. Ferguson Dep. Tr. at 449:3-5). ("Q. In your meetings with retailers, would you take notes? A. Not really, not that I can recall."); *id* at 449:9-12 ("Q. Did you take any notes -- A. I don't -- I don't -- Q. -- at retailer meetings? A. I don't remember."); *id* at 449:13-25 ("Q. You never took a single note, a single handwritten note in any retailer meeting? A. It's very possible. [objection] It's very possible. I just don't recall exactly whether or not I did or not."); *id* at 450:7-12 ("Q. But you had notes? [objection] A. Again, it's possible. I just don't recall whether or not I had specific notes at any given time.").  Further, Plaintiffs raise for the first time in their Reply a new claim that Mr. Barberio handed all of his notes to Mr. Ferguson when he left.

189.    Keurig produced 166,113 documents from Mr. Ferguson's custodial files.  Keurig Ex. 1 at 10 [ECF 1340-1].

Plaintiffs' Response to Paragraph 189:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 164,662 documents in which Mr. Ferguson was the original or duplicate custodian.

Keurig's Position as to Paragraph 189:  Keurig incorporates its position as to Paragraph 106.

John Whoriskey

190.    Mr. Whoriskey testified that he "never took notes," that needed to be saved and that any information worth retaining "would have ultimately been on my computer."  Keurig Ex. 18 [ECF 1340-18] (J. Whoriskey Dep. Tr.at 100:20-22); *see also id.* at 103:19-23 ("Q: [D]id you takes

notes on a notepad?   A. Not – not – I suppose I could have done that.   I don't recall specific situations where I'd be in meetings taking notes.").

Plaintiffs' Response to Paragraph 190:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Mr. Whoriskey testified that he would take notes at Roaster Advisory Council meetings on a notepad that he would then discard and further testified that his practice of discarding his notes continued through 2015.  Pls. Ex. P, ECF No. 1393-16 (Whoriskey Tr. 100:12-101:24). Mr. Whoriskey testified that he would take handwritten notes on a notepad and that this was a practice he had throughout the course of his employment at Keurig.  Pls. Ex. P, ECF No. 1393-16 (Whoriskey Tr. 101:23-102:6).

Keurig's Position as to Paragraph 190:  Plaintiffs raise for the first time in their Reply a new claim that Mr. Whoriskey took notes at Roaster Advisory Council meetings.  Keurig has not had an opportunity to respond to Plaintiffs' new argument.

191.   On the second day of his deposition, Mr. Whoriskey again testified that he would not take notes in customer meetings.  Keurig Ex. 18 [ECF 1340-18] (J. Whoriskey Dep. Tr. at 441:23-442:22).

Plaintiffs' Response to Paragraph 191:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Mr. Whoriskey testified that it was possible he would have taken notes in his meetings with Kroger, a Keurig customer.  Keurig Ex. 18, ECF No. 1340-18 (Whoriskey Tr. at 441:23-443:22).  Mr. Whoriskey testified that he would take handwritten notes on a notepad and that this was a practice he had throughout the course of his employment at Keurig.  Pls. Ex. P, ECF No. 1393-16 (Whoriskey Tr. 101:23-102:6).

Keurig's Position as to Paragraph 191: In the testimony cited by Plaintiffs, Mr. Whoriskey testified that he did not take notes at customer meetings, including in his meeting with Kroger. For the convenience of the Court, Keurig has set forth the full testimony below:

Q. Mr. Whoriskey, would you have taken notes ·in your meetings with Kroger?

A. Probably not.

Q. Is it possible?

A. I -- anything's possible, but I don't recall. I'm the senior executive sitting in that meeting. I'm not going to be taking notes about the meeting.

Q. Are you sure? I think you testified yesterday that there were instances in which you may have taken notes in customer meetings.

MS. NEWTON: Objection, form.

A. Normally, in sales -- like I'm the senior executive in that room. I've got a salesperson. I've got Tom Ferguson there. They're going to be doing the recap. You know, in those situations probably not.

Q. Would you have taken notes when you came out of a contentious meeting?

MS. NEWTON: Objection, form.

A. No.

Q. You wouldn't find that important enough to write down?

MS. NEWTON: Objection, form.

A. I just said no.

Q. Okay

A. No.

Keurig Ex. 18 [ECF 1340-18] (J. Whoriskey Dep. Tr. at 441:23-442:24).

192.    Keurig produced 447,746 documents from Mr. Whoriskey's custodial files. Keurig Ex. 1 at 30 [ECF 1340-1].

Plaintiffs' Response to Paragraph 192:  Plaintiffs do not stipulate as to the fact as set forth by Keurig.  Plaintiffs have only identified 446,413 documents in which Mr. Whoriskey was the original or duplicate custodian.

Keurig's Position as to Paragraph 192:  Keurig incorporates its position as to Paragraph 106.

**H.    The dates and content of any representation by Keurig's counsel to Plaintiffs' counsel concerning (a)–(f)**

193.    Pls. Ex. 41 [ECF 1287-19] is a letter dated August 7, 2018 from Wendy Newton, counsel for Keurig, to counsel for Plaintiffs regarding follow up to August 6, 2018 meet and confer regarding Keurig collection and production.

Plaintiffs' Response to Paragraph 193:  Plaintiffs stipulate to the fact that Pls. Ex. 41 [ECF 1287-19] is a letter dated August 7, 2018 from Wendy Newton, counsel for Keurig, to counsel for Plaintiffs.  In the letter dated August 7, 2018, Keurig's counsel stated that "We have now had an opportunity to review your concerns.  As we discussed yesterday, we have determined that there was an issue in the collection of archived custodian emails."  Pls. Ex. 41, ECF No. 1287-19.  In response to Plaintiffs' letter raising concerns about the productions for custodians including Kevin Sullivan, Michelle Stacy, Steve Ferreira, Tom Novak, Jimmy Huang, and others, Pls. Ex. 50, ECF No. 1287-24, Keurig represented on August 7, 2018 that "You have questioned the 'reliability of Keurig's preservation of potentially relevant information.'  As I advised in our call, I can assure you that Keurig has adequately preserved relevant ESI for this case."  Pls. Ex. 41, ECF No. 1287-19.  Rather than disclosing any issues relating to collection or processing of data from hard drives, aside from acknowledging the CommVault email issue, Keurig rebuffed Plaintiffs' concerns stating that "By way of example in response to your letter, the "extremely low volume" of documents from Michelle Stacy that you note for November 2013 - April 2015 is because she

was no longer actively working for Keurig during that period;" and that "Similarly, Dave Manly and Kevin Sullivan both worked on special assignments having nothing to do with the hot system toward the end of their tenure with Keurig. As such, the volume of responsive documents from their files during this time will be low." *Id.*

Keurig's Position as to Paragraph 193:  Keurig does not agree that Plaintiffs have set forth the complete contents of the letter.  Keurig respectfully refers the Court to Pls. Ex. 41 [ECF 1287-19] for the full and complete content.

194.    Pls. Ex. 33 [ECF 1287-12] is a letter dated August 27, 2018 from Wendelynne Newton, counsel for Keurig, to counsel for Plaintiffs regarding response to Treehouse August 14, 2018 letter requesting additional Keurig custodians.

Plaintiffs' Response to Paragraph 194:  Plaintiffs stipulate to the fact that Pls. Ex. 33 [ECF 1287-12] is a letter dated August 27, 2018 from Wendelynne Newton, counsel for Keurig, to counsel for Plaintiffs.  In the letter dated August 27, 2018, Keurig's counsel stated that "Keurig will agree to all but one of Plaintiffs' requested additional custodians."  Pls. Ex. 33, ECF No. 1287-12.

Keurig's Position as to Paragraph 194:  Keurig does not agree that Plaintiffs have set forth the complete contents of the letter.  Keurig respectfully refers the Court to Pls. Ex. 33 [ECF 1287 -12] for the full and complete content.

195.    Pls. Ex. 31 [ECF 1284-31] is a letter dated November 15, 2018 from Mackenzie Baird, counsel for Keurig, to counsel for Plaintiffs, regarding litigation hold disclosures – additional agreed custodians.

Plaintiffs' Response to Paragraph 195:  Stipulated.

196.    Keurig Ex. 5 [ECF 1340-5] is a letter dated November 21, 2018 from Wendy Newton, counsel for Keurig, to counsel for Plaintiffs regarding Keurig's collection and production efforts.

Plaintiffs' Response to Paragraph 196: Stipulated.  However, Keurig has not disclosed representations made in a letter from Mackenzie A. Baird, counsel for Keurig, to counsel for Plaintiffs regarding Keurig's collections and productions on February 18, 2019 in response to Plaintiffs' letter on February 4, 2019.  Nov. 19, 2021 Torpey Decl. Ex. P, Feb. 18, 2019 M. Baird Ltr.  In Plaintiffs' February 4, 2019 letter, Plaintiffs noted that "the volume of documents from custodians Don Barberio, former Vice President of At Home Sales, and Larry Blanford, the former President and CEO of Keurig … is quite low given their respective tenures at Keurig and their relevancy and importance to this litigation.  … Additionally, document volumes for a number of the initial 29 Agreed Custodians are lower than we would expect, including … Chris Stevens, … Tom Novak, Kevin Sullivan, and Michelle Stacy."  Pls. Ex. 20, ECF No. 1284-20.  In response, rather than disclosing any collection or processing issues relating to hard drives, Keurig stated on February 18, 2019, "Keurig substantially completed its production of non-privileged documents from the files of the original 29 Agreed Custodians on January 4, 2019 …."  Keurig further stated, "Your letter states that the volume of documents produced from the files of Larry Blanford and Don Barberio is 'quite low.' While we have no way of knowing what you believe to be 'quite low,' we note that Keurig has produced more than 18,000 documents with Mr. Blanford as a custodian. As for Mr. Barberio, Keurig has produced more than 11,000 documents for which he is a custodian. … [W]e do not expect to produce 'significant additional volumes of documents' from the files of either custodian give the already quite substantial productions for both individuals. … Unfortunately, we cannot respond to your additional questions without further detail or support for

106

Plaintiffs' statement that volumes for these nine custodians are 'lower than we would expect.'"

Nov. 19, 2021 Torpey Decl. Ex. P, Feb. 18, 2019 M. Baird Ltr.

Keurig's Position as to Paragraph 196:  Plaintiffs' Response is based on a document outside the motions record in violation of the Court's order and should be ignored.  See Order, ECF No. 1434 at 1 ("The Stipulation(s) . . . must contain citations to the relevant exhibit(s) accompanying the Motions.").

197.    Pls. Ex. 11 [ECF 1284-11] is a letter dated May 13, 2019 from Mackenzie Baird, counsel for Keurig, to Susannah Torpey and Shanna Lehrman, counsel for Plaintiffs, regarding Keurig's collection and production, including hard drives and other sources of ESI.

Plaintiffs' Response to Paragraph 197:  Plaintiffs stipulate to the fact that Pls. Ex. 11 [ECF 1284-11] is a letter dated May 13, 2019 from Mackenzie Baird, counsel for Keurig, to Susannah Torpey and Shanna Lehrman, counsel for Plaintiffs.  In the letter dated May 13, 2019, Keurig's counsel wrote that "With respect to Mr. Barberio, we found a single month … for which there are no emails with Mr. Barberio as a custodian in any custodian field."  Keurig further stated that, "Your April 15 letter asked us to explain why certain custodians were associated with few or no documents collected from Keurig-issued computers.  As explained in our recent meet and confers, Keurig instructed its employees not to save important documents to their hard drive … in part because computer hard drives were not backed up in the ordinary course of business. … Though employees were instructed to save important documents to their home folder or another network location, we understand that, on occasion, some employees may have saved documents to their hard drives.  Accordingly, Keurig collected and produced data from custodian's hard drives where it was available.  … Not all could be imaged, as we discussed. Keurig did not locate hard drives used by Bruce Godfrey, Don Barberio, or Chris Stevens, as we discussed, as well as Richard

Sweeney. … With respect to Mr. Barberio, we advised on our last call that his home share did not contain any documents."  In a footnote, Keurig further noted that "The home folders associated with Bob McCall, Jim Shepard, Kevin Sullivan, and Michelle Stacy also did not contain any documents."  Pls. Ex. 11, ECF 1284-11.  Keurig's counsel also wrote that "Keurig collected and produced data from custodian's hard drives where it was available… Not all could be imaged, as we discussed." *Id*.

Keurig's Position as to Paragraph 197:  Keurig does not agree that Plaintiffs have set forth the complete contents of the letter.  Keurig respectfully refers the Court to Pls. Ex. 11 [ECF 1284-11] for the full and complete content.

198.    Pls. Ex. 45 [ECF 1284-45] is an email exchange dated May 20, 2019 between Wendy Newton, counsel for Keurig, and Kelli Lanski, counsel for Plaintiffs, regarding Keurig's collection and production efforts.

Plaintiffs' Response to Paragraph 198:  Plaintiffs stipulate to the fact that Pls. Ex. 45 [ECF 1284-45] is an email exchange dated May 20, 2019 between Wendy Newton, counsel for Keurig, and Kelli Lanski, counsel for Plaintiffs.  In the email dated May 20, 2019, Keurig's counsel wrote "Keurig employees stored documents in various places—including their network home drive, one or more folders on the shared X or H drives and, sometimes, on their hard drives."  Pls. Ex. 45, ECF No. 1284-45.

Keurig's Position as to Paragraph 198:  Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange.  Keurig respectfully refers the Court to Pls. Ex. 45 [ECF 1284-45] for the full and complete content.  *See also* Keurig's position as to Paragraph 102.

199.    Keurig Ex. 41 [ECF 1340-41] is an email exchange dated June 3, 2019 between Mackenzie Baird, counsel for Keurig, and counsel for Plaintiffs regarding Jim Shepard's hard drive.

Plaintiffs' Response to Paragraph 199:  Plaintiffs stipulate to the fact that Keurig Ex. 41 [ECF 1340-41] is an email exchange dated June 3, 2019 between Mackenzie Baird, counsel for Keurig, and counsel for Plaintiffs.  In the email dated June 3, 2019, Keurig's counsel wrote "The hard drive from Mr. Shepard's Keurig-issued computer was physically damaged and could not be imaged. … … Consequently, the likelihood of additional unique and relevant ESI from Mr. Shepard's physically damaged hard drive is remote."  Keurig Ex. 41, ECF No. 1340-41.

Keurig's Position as to Paragraph 199:  Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange.  Keurig respectfully refers the Court to Keurig Ex. 41 [1340-41] for the full and complete content.

200.    Keurig Ex. 12 [ECF 1340-12] is a letter dated June 24, 2019 from Mackenzie Baird, counsel for Keurig, to counsel for Plaintiffs regarding the production of responsive non-privileged documents from the laptop associated with custodian Richard Sweeney in Keurig Production Volume 61.

Plaintiffs' Response to Paragraph 200:  Plaintiffs stipulate to the fact that Keurig Ex. 12 [ECF 1340-12] is a letter dated June 24, 2019 from Mackenzie Baird, counsel for Keurig, to counsel for Plaintiffs.  In the letter dated June 24, 2019, Keurig's counsel wrote "we are making available via secure file transfer Keurig's production of documents from the laptop that was located associated with custodian Richard Sweeney."  Keurig Ex. 12, ECF No. 1340-12.

Keurig's Position as to Paragraph 200:  Keurig does not agree that Plaintiffs have set forth the complete contents of the letter.  Keurig respectfully refers the Court to Keurig Ex. 12 [ECF 1340-12] for the full and complete content.

201.    Keurig Ex. 34 [ECF 1340-34] is an email exchange dated June 7 through July 1, 2019 between Wendy Newton, counsel for Keurig, and counsel for Plaintiffs regarding custodian hard drives.

Plaintiffs' Response to Paragraph 201:  Plaintiffs stipulate to the fact that Keurig Ex. 34 [ECF 1340-34] is an email exchange dated June 7 through July 1, 2019 between Wendy Newton, counsel for Keurig, and counsel for Plaintiffs.  In the email dated June 7, 2019, Keurig's counsel wrote that "Keurig has produced more than 2,850 documents from Mr. Manly's home folder… Keurig also produced documents from two of Mr. Manly's three devices… We believe the third device, which could not be decrypted, was an old laptop. . .As for Ms. DuLong, we collected and reviewed relevant portions of the "███████" folder on the Shared drive, which we understand was the location where she stored documents.  In total, we produced more than 4,300 documents from this folder…Though Ms. DuLong would occasionally store documents on the hard drive of her laptop when travelling, she routinely copied those documents to the shared drives so they could be accessed by her team. We explained that the second device could not be imaged and is currently located in D4's forensic lab in New York City."  Keurig Ex. 34, ECF No. 1340-34.

In the email dated June 10, 2019, Keurig's counsel stated that "we have not located Keurig's chain of custody records as you have requested."  *Id*.

In the email dated June 14, 2019, Keurig's counsel stated that "[t]here are three devices that have not been located. As we have repeated multiple times, Keurig has not identified records with respect to why they were not located." *Id.*

In the email dated July 1, 2019, Keurig's counsel stated that "[w]ith respect to Mr. Wettstein's laptop without a hard drive, D4 has no additional information beyond what is reflected in the June 3 letter. Mr. Wettstein had 6 devices, including the laptop that did not have a hard drive. Of these 6 devices, D4 imaged one laptop and three hard drives." *Id.*  In the same email, Keurig's counsel also stated that "[a]s to D4 and Keurig's efforts to decrypt certain devices…there are two levels of passwords, and the encryption/security system worked in connection with the TPM enabled based encryption in the devices, intended to add a level of security. Without the database with the keys, a user attempting to log in would be unable to obtain a new/different recovery key." *Id.*

Keurig's Position as to Paragraph 201:  Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange.  Keurig respectfully refers the Court to Keurig Ex. 34 [ECF 1340-34] for the full and complete content.

202.  Pls. Ex. 24 [ECF 1284-24] is a letter dated August 22, 2019 from Samantha Southall, counsel for Keurig, to Dan Johnson Jr., counsel for JBR, regarding Bob McCall.

Plaintiffs' Response to Paragraph 202:  Plaintiffs stipulate to the fact that Pls. Ex. 24 [ECF 1284-24] is a letter dated August 22, 2019 from Samantha Southall, counsel for Keurig, to Dan Johnson Jr., counsel for JBR.  In the letter dated August 22, 2019, Keurig's counsel wrote that "[w]hile preparing for Mr. McCall's deposition, we learned that Mr. McCall, in his personal capacity, created and maintained handwritten notebooks that contained information responsive to Plaintiffs' document subpoena… [T]he parties agreed to reschedule Mr. McCall's deposition for

a date shortly after the notebooks could be reviewed and produced with Bates numbers. . . To that end, Mr. McCall produced his personal notebooks on August 15, and his deposition is now scheduled for August 23." Pls. Ex. 24, ECF 1284-24.

Keurig's Position as to Paragraph 202: Keurig does not agree that Plaintiffs have set forth the complete contents of the letter. Keurig respectfully refers the Court to Pls. Ex. 24 [ECF 1284-24] for the full and complete content.

203. Pls. Ex. 40 [ECF 1284-40] is an email exchange dated September 13 to October 21, 2019, between Mackenzie Baird, counsel for Keurig, and Kelli Lanski, counsel for Plaintiffs, regarding device imaging.

Plaintiffs' Response to Paragraph 203: Plaintiffs stipulate to the fact that Pls. Ex. 40 [ECF 1284-40] is an email exchange dated September 13 to October 21, 2019, between Mackenzie Baird, counsel for Keurig, and Kelli Lanski, counsel for Plaintiffs. In an email dated October 21, 2019, Keurig's counsel stated that "[w]e disagree that further analysis of the Rathke or Stacy hard drives is warranted… To the extent Plaintiffs feel the need for such extraordinary efforts in light of the productions to date, discussed above, please confirm that plaintiffs will pay for all costs associated with any further analysis conducted by a data recovery center, irrespective of whether data is retrieved." Pls. Ex. 40, ECF No. 1284-40.

Keurig's Position as to Paragraph 203: Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange. Keurig respectfully refers the Court to Pls. Ex. 40 [ECF 1284-40] for the full and complete content.

204. Keurig Ex. 31 [ECF 1340-31] is an email exchange dated September 13 through October 23, 2019, between Kelli Lanski, counsel for TreeHouse, and counsel for Keurig regarding Plaintiffs' request to analyze certain hard drives.

Plaintiffs' Response to Paragraph 204:  Plaintiffs stipulate to the fact that Keurig Ex. 31 [ECF 1340-31] is an email exchange dated September 13 through October 23, 2019, between Kelli Lanski, counsel for TreeHouse, and counsel for Keurig.  In an email dated October 21, 2019, Keurig's counsel stated that "[w]e disagree that further analysis of the Rathke or Stacy hard drives is warranted… To the extent Plaintiffs feel the need for such extraordinary efforts in light of the productions to date, discussed above, please confirm that plaintiffs will pay for all costs associated with any further analysis conducted by a data recovery center, irrespective of whether data is retrieved."  Keurig Ex. 31, ECF No. 1340-31.

Keurig's Position as to Paragraph 204:  Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange.  Keurig respectfully refers the Court to Keurig Ex. 31 [ECF 1340-31] for the full and complete content.

205.   Pls. Ex. 4 [ECF 1284-4] is a letter dated December 11, 2019 from Samantha Southall, counsel for Keurig, to Susannah Torpey, counsel for Plaintiffs, regarding Keurig's response to Plaintiffs' December 5, 2019 letter and Plaintiffs' third-party subpoenas to former employee custodians.

Plaintiffs' Response to Paragraph 205:  Plaintiffs stipulate to the fact that Pls. Ex. 4 [ECF 1284-4] is a letter dated December 11, 2019 from Samantha Southall, counsel for Keurig, to Susannah Torpey, counsel for Plaintiffs.  In the letter dated December 11, 2019, Keurig's counsel stated that "[t]o the extent that former employees retained documents from their time at Keurig, these documents were no longer within the possession, custody or control of Keurig."  Pls. Ex. 4, ECF No. 1284-4.

Keurig's Position as to Paragraph 205:  Keurig does not agree that Plaintiffs have set forth the complete contents of the letter.  Keurig respectfully refers the Court to Pls. Ex. 4 [ECF 1284-4] for the full and complete content.

206.    Pls. Ex. 2 [ECF 1284-2] is an email exchange dated December 5, 2019 through December 16, 2019 between Kelli Lanski, counsel for Plaintiffs, and Samantha Southall, counsel for Keurig, regarding former employee custodians.

Plaintiffs' Response to Paragraph 206:  Plaintiffs stipulate to the fact that Pls. Ex. 2 [ECF 1284-2] is an email exchange dated December 5, 2019 through December 16, 2019 between Kelli Lanski, counsel for Plaintiffs, and Samantha Southall, counsel for Keurig.  In the email dated December 16, 2019, Keurig's counsel stated that "Keurig has conducted custodial interviews of the former employee custodians that we been able to contact."  Pls. Ex. 2, ECF No. 1284-2.

Keurig's Position as to Paragraph 206:  Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange.  Keurig respectfully refers the Court to Pls. Ex. 2 [ECF 1284-2] for the full and complete content.

207.    Pls. Ex. 30 [ECF 1284-30] is a letter dated December 13, 2019 from Matthew Pilsner, counsel for Keurig, to counsel for Plaintiffs, regarding Keurig Production Volume 86.

Plaintiffs' Response to Paragraph 207:  Plaintiffs stipulate to the fact that Pls. Ex. 30 [ECF 1284-30] is a letter dated December 13, 2019 from Matthew Pilsner, counsel for Keurig, to counsel for Plaintiffs.  In the letter dated December 13, 2019, Keurig's counsel stated that "this production also includes an additional 34 hard copy documents of Sean Cronican, as well 11 documents recovered by BIA from the additional hard drive of Fran Rathke."  Pls. Ex. 30, ECF No. 1284-30.

Keurig's Position as to Paragraph 207:  Keurig does not agree that Plaintiffs have set forth the complete contents of the letter..  Keurig respectfully refers the Court to Pls. Ex. 30 [ECF 1284-30] for the full and complete content.

208.    Keurig Ex. 10 [ECF 1340-10] is a letter dated December 20, 2019 from Mackenzie Baird, counsel for Keurig, to counsel for Plaintiffs regarding the production of responsive non-privileged documents from the additional hard drive of Michelle Stacy.

Plaintiffs' Response to Paragraph 208:  Plaintiffs stipulate to the fact that Keurig Ex. 10 [ECF 1340-10] is a letter dated December 20, 2019 from Mackenzie Baird, counsel for Keurig, to counsel for Plaintiffs.  In the letter dated December 20, 2019, Keurig's counsel stated that "we are producing today responsive non-privileged documents from the additional hard drive of Michelle Stacy recovered by BIA."  Keurig Ex. 10, ECF No. 1340-10.

Keurig's Position as to Paragraph 208:  Keurig does not agree that Plaintiffs have set forth the complete contents of the letter.  Keurig respectfully refers the Court to Keurig Ex. 10 [ECF 1340-10] for the full and complete content.

209.    Keurig Ex. 38 [ECF 1340-38] is an email dated February 23, 2020 from Mackenzie Baird, counsel for Keurig, to counsel for Plaintiffs regarding collection of document for Don Holly.

Plaintiffs' Response to Paragraph 209:  Plaintiffs stipulate to the fact that Keurig Ex. 38 [ECF 1340-38] is an email dated February 23, 2020 from Mackenzie Baird, counsel for Keurig, to counsel for Plaintiffs.  In the email dated February 23, 2020, Keurig's counsel stated that "[a]fter investigation, we have not identified any hard drives associated with Mr. Holly." Keurig Ex. 38, ECF No. 1340-38.

Keurig's Position as to Paragraph 209:  Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange.  Keurig respectfully refers the Court to Keurig Ex. 38 [ECF 1340-38] for the full and complete content.

210.    Keurig Ex. 40 [ECF 1340-40] is an email exchange dated May 12, 2020 through July 8, 2020 between Mario Moore, counsel for JBR, and Samantha Southall and Mackenzie Baird, counsel for Keurig, regarding the hard drive of Jimmy Huang.

Plaintiffs' Response to Paragraph 210:  Plaintiffs stipulate to the fact that Keurig Ex. 40 [ECF 1340-40] is an email exchange dated May 12, 2020 through July 8, 2020 between Mario Moore, counsel for JBR, and Samantha Southall and Mackenzie Baird, counsel for Keurig. In the email dated June 4, 2020, Keurig's counsel represented that "the forensic examiner retained by Keurig made several attempts to image [Mr. Huang's] hard drive… he observed "excessive clicking noises" that were indicative of possible physical damage… Keurig does not know how this device sustained physical damage."  Keurig Ex. 40, ECF No. 1340-40.  Keurig's counsel also stated that Keurig's employees' computer hard drives were "not backed up."  *Id*.

Keurig's Position as to Paragraph 210:  Keurig does not agree that Plaintiffs have set forth the complete contents of the email exchange.  Keurig respectfully refers the Court to Keurig Ex. 40 for the full and complete content.

211.    The above letters and emails appear in the motions record and are in addition to numerous meet & confers, other oral representations and other correspondence provided by Keurig's outside counsel to Plaintiffs' counsel throughout discovery.

Plaintiffs' Response to Paragraph 211:  Plaintiffs stipulate to the fact that there were additional meet & confers, oral representations and other correspondence.  Plaintiffs do not stipulate as to the fact that the above letters and emails represents all of the "dates and content of

any representation by Keurig's counsel to Plaintiffs' counsel" as requested by the Court's August 5, 2021 Order.

Plaintiffs' Exhibit 8 [ECF No. 1284-8] is an email exchange dated March 28, 2019 through April 8, 2019 between Mackenzie Baird, counsel for Keurig, and Shanna Lehrman, counsel for TreeHouse.  In the email dated April 8, 2019, Keurig's counsel stated that "Keurig has complied with its obligations under the December 12, 2018 Joint Stipulated Order Regarding Production Deadlines."  Pls. Ex. 8, ECF No. 1284-8.

Plaintiffs' Exhibit 9 [ECF 1284-9] is an email exchange dated April 30, 2018 through May 7, 2018 between Mackenzie Baird, counsel for Keurig, and Kelli Lanski, counsel for TreeHouse.  In the email dated May 7, 2018, Keurig's counsel stated "Keurig has complied with its obligations under the Preliminary Case Management Plan and Scheduling Order, including substantial production under Section 7(i) of the CMO."  Pls. Ex. 9, ECF No. 1284-9.

Plaintiffs' Exhibit 26 [ECF 1284-26] is an email exchange dated September 16, 2019 through September 16, 2019 between Mackenzie Baird, counsel for Keurig, and Aldo Badini, counsel for TreeHouse.  In the email dated September 16, 2019, Keurig's counsel stated "[w]e just learned of 21 handwritten notebooks that Ben Yoder has maintained since his employment with Keurig began in April of 2011.  Each is 96 pages.  We will need to review these for responsiveness and privilege and then produce them to you; that will not occur before Wednesday, the day his deposition is scheduled to begin."  Pls. Ex. 26, ECF No. 1284-26.  On September 23, 2019, five days after the date of Mr. Yoder's originally scheduled deposition and a week before the date of the rescheduled deposition, Keurig produced approximately 21 notebooks totaling over 7,000 pages of handwritten notes used by Mr. Yoder while conducting Keurig business that they had not previously produced.  Nov. 19, 2021 Torpey Decl., Ex. Q.

Plaintiffs' Exhibit 27 [ECF 1284-27] is an email exchange dated September 16, 2019 through September 17, 2019 between Mackenzie Baird, counsel for Keurig, and Aldo Badini, counsel for TreeHouse.  In the email dated September 17, 2019, Keurig's counsel stated "[a]s to additional hard copy documents, we have diligently sought hard copy documents from Keurig's custodians. In addition to Ben Yoder, we expect to produce additional hard copy documents from the files of Ian Tinkler, Mark Wood, Michelle Stacy, Steve Ferriera and Susan Cote. We plan to produce Tinkler documents this Friday, September 20, in advance of his deposition. We are assessing the documents of the others and will provide a target production date once we have one." Pls. Ex. 27, ECF No. 1284-27.

Keurig's Exhibit 29 [ECF 1340-29] is a letter dated January 4, 2019 from Mackenzie Baird, counsel for Keurig.  In the letter dated January 4, 2019, Keurig's counsel stated that "today's production marks the substantial completion of Keurig's production in accordance with the Scheduling Order."  Keurig's Ex. 29, ECF 1340-29.

Keurig's Position as to Paragraph 211: Keurig respectfully refers the Court to Pls. Ex. 8, 9, 21, 27 and Keurig's Ex. 29 for the full and complete content.

## II.   TreeHouse's Proposed Stipulated Facts Related to Keurig's Motion as to TreeHouse and Keurig's Responses and Counterstatements of Fact

## A.  Stipulated Facts Related to the Date(s), Content, and Format of Keurig's Announcements Concerning the 2.0 Brewer

In response to Your Honor's request for stipulated facts concerning the date(s), content, and format of Keurig's announcements concerning the 2.0 Brewer, August 5 Order at (ii)(a), the parties stipulate as follows:

1.     On September 10, 2013, during a Keurig "Investor Day" call, Akshay Jagdale, an analyst from KeyBanc Capital Markets, asked Keurig, "Along the lines of the consumer matters most, with the 2.0, if the consumer is using the unlicensed K-Cup, it sounds like that won't work.

So like a Maxwell and also Peet's, it won't work in the 2.0 because it doesn't have the interactive technology.  So how do you – how does that work with what you just said?"  In response, Kevin Hartley, Chief Innovation Officer of Keurig, stated, "We want all of the brands that we want in the system to be licensed partners, and we will grow and customize and personalize those brands that are in the system and then the partners in the Keurig Group.  We have actually not said what we're going to do with those that aren't.  But the simple fact is our machine will be able to read and customize and personalize and deliver perfection for the ones that are in the system.  And so we're not going to talk today about what happens to those that aren't.  We want to encourage all of those brands that we want in the system to come in and join us and be part of the innovation stream going forward."  In a follow-up question, Mr. Jagdale stated, "So it sounds like it hasn't been determined or you haven't disclosed what will happen for unlicensed thus far."  In response, Mr. Hartley of Keurig replied, "Correct."  THS Opp. Mot. Ex. 5, ECF No. 1342-5 at KGM03161226.

      **Keurig's Response:** Keurig stipulates that Plaintiffs have quoted the FactSet CallStreet transcript of the exchange between Akshay Jagdale and Kevin Hartley at the September 10, 2013 Investor Day event.

      2.      On October 29, 2013, Keurig's CEO Brian Kelley was quoted in a USA Today newspaper article as saying, "It's fair to say we're still deciding on exactly how we will handle the unlicensed pod."  KGM Mot. Ex. C, ECF No. 1298-3, at THS-003437801.

      **Keurig's Response:** Keurig stipulates that Mr. Kelley was quoted in a USA Today newspaper article dated October 29, 2013 as saying, "It's fair to say we're still deciding on exactly how we will handle the unlicensed pod."  For the avoidance of doubt, Keurig does not stipulate that Mr. Kelley made the statement on October 29, 2013.  Exhibit C to Keurig's Motion is not the USA Today article; it is a TreeHouse document purporting to quote the article.

3.      The October 29, 2013 USA Today quote attributed to Keurig's CEO Brian Kelley that, "It's fair to say we're still deciding on exactly how we will handle the unlicensed pod," was included in the November 15, 2013 TreeHouse presentation, entitled: "TreeHouse Strategic Planning for SSB Steering Group Update #1."   KGM Mot. Ex. C, ECF No. 1298-3, at THS-003437798, THS-003437801.

**Keurig's Response:** Keurig stipulates that the statement referenced in Statement 2  was included on slide 4 of TreeHouse's November 15, 2013 TreeHouse presentation.  The November 15, 2013 TreeHouse presentation also states that the "Current Understanding" was "Brewer has interactive technology with an anti-competitive feature to exclude unlicensed packs" (slide 3) and that "More information may be shared at GMCR Q4 and FY webcast on Wed, Nov 20" (slide 5).  KGM Mot. Ex. C, ECF No. 1298-3

4.      TreeHouse sent its first round of litigation hold notices to employees on February 4, 2014.  KGM Mot. Ex. R, ECF No. 1298-18.

**Stipulated.**

5.      On February 5, 2014, Keurig's CEO Brian Kelley stated in the Earnings Call for Q1 2014 that: "First on the introduction to the Keurig 2.0 and the transition.  We are hitting all of the necessary milestones and are currently on track to deliver Keurig 2.0 as planned later this year. …  We were pleased to unveil the system's new carafe functionality last week, making 2.0 the first Keurig brewer to brew both a single-cup and a full carafe.  …  We use proprietary interactive capabilities so that that the brewer can identify the inserted Keurig pack, whether it's a K-Cup, a Vue or a K-Carafe pack and brew it optimally every time.  …  Next, let me comment on our transition to our new interactive readable portion packs.  We achieved a significant milestone in January with the first customer shipments of our new interactive-enabled packs.  These new packs,

which incorporate new lid graphics and our proprietary interactive technology, are beginning to appear in stores.  We're transitioning to our new packs throughout our manufacturing system, and we anticipate being on track to completely transition retailer on-shelf inventory by late 2014." THS Opp. Mot. Ex. 8, ECF No. 1347-8 at pp. 5-6.

> **Keurig's Response:**  Keurig stipulates that Plaintiffs have accurately quoted portions of Mr. Kelley's introductory statements as transcribed by S&P Capital IQ.  Keurig does not stipulate that Plaintiffs have identified all announcements concerning the 2.0 Brewer made by Keurig between the September 10, 2013 Investor Day event and the February 5, 2014 Earnings Call.

## B. Stipulated Facts Related to the Date(s), Attendee(s), and General Subject Matter of Any Meetings or Calls Among the Project Charter Steering Group

In response to Your Honor's request for stipulated facts concerning the date(s), attendee(s), and general subject matter of any meetings or calls among the Project Charter Steering Group, August 5 Order at (ii)(b), the parties stipulate as follows:

1.      In a letter to the TreeHouse Board of Directors on October 24, 2013, Sam Reed, TreeHouse's CEO, stated that: "Project Charter has been initiated in order to mount a comprehensive defense agenda linking Foley & Lardner, the Law Department and the SSB team with outside technology and engineering consultants."  KGM Mot. Ex. A, ECF No. 1298-1 at THS-004143820.

> **Keurig's Response:**  Keurig stipulates, that the quoted language appears in the referenced document, but the paragraph, in full, states:

>> A strategic risk of similar magnitude is our defense of SSB as GMCR introduces its 2.0 technology, designed in part to block the usage of unlicensed K-Cups. This subject will be introduced in next week's roundtable with senior management. Project Charter has been initiated in order to mount a comprehensive defense agenda linking Foley & Lardner, the Law Department and the SSB team with

> outside technology and engineering consultants. This project group will be headed by a newcomer to THS, Bill Ford, an experienced strategist recently recruited from Boston Consulting Group.

KGM Mot. Ex. A, ECF No. 1298-1 at THS-004143820.  TreeHouse has claimed this paragraph in the October 24, 2013 letter is protected attorney work product prepared in anticipation of litigation.  KGM Mot. Ex. B, ECF No. 1298-2 (Privilege Log Entry for Ex. A).  TreeHouse produced it pursuant to the Rule 502(d) Order entered in this litigation.  KGM Mot. Ex. A., ECF No. 1298-1 at THS-001413820 ("Highly Confidential Produced Pursuant to Rule 502(d) Order"); *see also* KGM Reply Ex. BE, ECF No. 1388-1 (Letter from TreeHouse on 502(d) Production).

2.      In the same letter to the Board referencing Project Charter, Sam Reed also stated on October 24, 2013, that "We have established THS as the private label industry leader and, to date, have prevailed against GMCR's various legal actions."  KGM Mot. Ex. A, ECF No. 1298-1 at THS-004143817.

**Stipulated.**

3.      The first meeting to discuss the initiation of Project Charter was held on November 15, 2013.  KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437821.

**Keurig's Response:**  Keurig does not stipulate to this statement because TreeHouse participated in discussions related to Project Charter prior to the November 15, 2013 meeting. *E.g.*, KGM Mot. Ex. C, ECF No. 1298-1 at THS-003437821 ("Project Kicked Off" on 10/21/2013).  Keurig has limited its discussion of relevant meetings to the papers timely submitted in accordance with the Court-ordered briefing schedule on spoliation sanctions.  Keurig in filing that motion did not intend to identify a comprehensive list of all discussions related to Project Charter.

4.      The Project Charter Steering Group included Sam Reed, Chris Sliva, Tom O'Neill, and David Vermylen.  KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437820.

**Keurig's Response**:  Stipulated.   Additional individuals involved in Project Charter are identified in the same exhibit.  KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437820.

5.      The conference call invitation for the November 15, 2013 meeting, entitled "SSB Strategic Planning – Steering Group Check-in" was sent from Bill Ford to Tom O'Neill, Denise Ellison, Sam Reed, Craig Lemieux, Chris Sliva, Harry Overly, and Dennis Riordan, with copies to Todd LeBlanc, Andrew Vogel, David Vermylen, Loretta Tierney, Doris Hoffman, Erin Dillon, Sue McCallum, Ashley Kelnhofer, and Nichole Muhich.  Nov. 19, 2021 Torpey Decl. Ex. B, THS-004126314.

**Keurig's Response:**  Keurig does not  stipulate to this statement which is based on a document outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) … must contain citations to the relevant exhibit(s) accompanying the Motions.").  The cited document says the referenced individuals received the dial-in line for the conference call, but its text reflects that the November 15, 2013 meeting was largely conducted in person.  As the document cited shows, Mr. Lemieux and Mr. Vermylen were the only participants that intended to join by phone.  THS-004126314 ("Craig and David, I believe you are the only two joining by phone so I wanted to make sure that you had the materials that we will review in the meeting.").

6.      At that time, three "project update meetings" were planned between the November 15, 2013 meeting and the February 5, 2014 Board of Directors meeting.  KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437821.

**Keurig's Response.**  Keurig stipulates that the quoted language appears in the referenced document, but there were additional discussions related to Project Charter.  Exhibit C

at Slide 24 identifies continuous workstreams from October 2013 through February 2014 in connection with Project Charter.  The record reflects additional discussions among subgroups.  By way of example, KGM Mot. Ex. N, ECF No. 1298-14, reflects that there were SSB Roundtable Group Project Updates on January 9, 2014, Ex. N at Slide 15, and January 13, 2014, Ex. N at Slide 2.  KGM Mot. Ex. N further reflects a ███████ Kickoff meeting on January 16, 2014 as part of the Project Calendar and a meeting with the "OBA."  KGM Mot. Ex. N at Slide 3.  The OBA stands for the Open Brewer Alliance and was a group of unlicensed cup competitors that intended to collectively take action against Keurig.  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143885 (OBA is "Industry alliance currently forming in response to K2.0").

Keurig notes for clarity it has limited its discussion of relevant meetings to the motions record in accordance with the Court's Orders.  *See* Order, ECF No. 1434 at 1.  Keurig in filing that motion did not intend to identify a comprehensive list of all discussions related to Project Charter.

7.     The "Project Overview" for Project Charter is set forth on page 22 of the November 15, 2013 PowerPoint presentation, entitled "TreeHouse Strategic Planning for SSB Steering Group Updated #1" as follows:

**Project Charter**

**Introduction**:

- Given the extraordinary opportunity that single serve beverage (SSB) represents as well as the potential risks that are unlike those of our other lines of business, we need to take a strategic look at our business

**Project Goal**:

- Develop a holistic view and comprehensive long range strategy for the company in the single serve beverage (SSB) category

**Key questions to answer**:

- What is the outlook for SSB and what are the key trends?
- What is the actual threat from GMCR and what are the implications?
- What are our strategic options to respond to the threat from GMCR?
- Can we remain competitive as a fast-follower and if so, how?
- What is the external point of view for PL in SSB?

KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437818 – THS-003437819.

   **Stipulated.**

8. The November 15, 2013 PowerPoint presentation, entitled "TreeHouse Strategic Planning for SSB Steering Group Updated #1," lists "Next Steps," which include: "[f]inalize contracts via external counsel with technology providers to assess reverse engineering potential" to be headed by "Bill [Ford] and Foley [& Larder]."  KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437817.

   **Keurig's Response:**  Keurig does not stipulate that the list of next steps on the "Next Steps" slide constitutes a comprehensive list of actions taken by TreeHouse following the meeting.  The same presentation identifies a "3-Prong Defense Approach for GMCR Threat." KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437805.  The first step in that 3-Prong Defense is entitled "Legal Action" and the status is that it should be "assessed by our Law Department with external counsel."  *Id.*  Earlier in the same presentation, TreeHouse claims that the 2.0 Brewer announced by Keurig has "an anti-competitive feature to exclude unlicensed packs."  *Id.* at THS-003437800.

9. The only "Next Step" in the November 15, 2013 PowerPoint presentation, entitled "TreeHouse Strategic Planning for SSB Steering Group Updated #1," referencing Keurig states, "Model scenarios and financial implications for GMCR threat."  KGM Mot. Ex. C, ECF No. 1282-3 at THS-003437817.

**Keurig's Response:**  Keurig does not stipulate that the list of next steps on the "Next Steps" slide constitutes a comprehensive list of actions taken by TreeHouse following the meeting.  The same presentation identifies a "3-Prong Defense Approach for GMCR Threat." KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437805.  The first step in that 3-Prong Defense is entitled "Legal Action" and the status is that it should be "assessed by our Law Department with external counsel."  *Id.*  Earlier in the same presentation, TreeHouse claims that the 2.0 Brewer announced by Keurig has "an anti-competitive feature to exclude unlicensed packs."  *Id* .at THS-003437800.

10.     On December 18, 2013, "Project Charter" was replaced by the "Coffee Roundtable."  In a memorandum from Sam Reed on December 18, 2013, Mr. Reed wrote, "As discussed Monday morning, we are forming a cross functional team, including outside advisors, to formulate a Single Serve Beverage business plan that will enable us to continue to prosper in the wake of the Keurig 2.0 technology.  Our joint THS-BVF senior team has conferred and nominated a team of functional experts to form the core working group.  Additionally, I have selected a set of functional sponsors to provide executive oversight."  Nov. 19, 2021 Torpey Decl. Ex. C, THS-003297454 at 54-55.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a document outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.

To the extent this information is considered, the attachments to the cited email provide context.  An attachment to the cited email confirms that senior leadership at TreeHouse continued to discuss communications with customers and "legal and public market issues" in the months after the Project Charter kick off.  THS-003297457.

11.     The Coffee Roundtable Working Group members included Chris Sliva, Bill Ford, Marty Reynolds, Bob Baker, Keiran Kelly, Craig Lemieux, Tom Jarona, Jim Zhang, Adam Pawlick, Jo Osborn, Seth Weis, and PI Aquino.   The Coffee Roundtable Oversight Council included Sam Reed, David Vermylen, Brian Demos, Jeff Haye, Dan Donahue, Tom O'Neill, Dennis Riordan, Erik Kahler, Harry Walsh, Al Gambrel, and Dennis Riordan.  Nov. 19, 2021 Torpey Decl. Ex. C, THS-003297454.

   **Keurig's Response:**  Keurig does not stipulate to this statement which is based on a document outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  An attachment to the cited email Bates stamped THS-003297456 purports to identify the names of participants in the Coffee Roundtable Working Group by role.

12.     An "SSB Roundtable Group Project Update" was provided on January 13, 2014. KGM Mot. Ex. N, ECF No. 1298-14.  The only "Next Steps" for "Legal & PR/IR" in the January 13, 2014 SSB Roundtable Group Project Update was "On standby for any releases."  KGM Mot. Ex. N, ECF No. 1298-14 at Slide 15.

   **Keurig's Response:**   Keurig does not stipulate to this statement because Slide 2 of the SSB Roundtable Group Project Update lists the additional "Next Step" to "Schedule legal session on attorney-client communication."  *Id.* at Slide 2.

13.     TreeHouse sent its initial round of litigation hold notices to employees on February 4, 2014.  KGM Mot. Ex. R, ECF No. 1298-18.

   **Stipulated**.

14.     A Coffee Roundtable Update was provided in connection with the TreeHouse Board of Directors Meeting from February 5-6, 2014.  KGM Mot. Ex. M, ECF No. 1298-13.

   **Stipulated.**

15.     The Charter for the Coffee Roundtable was "To formulate a Single Serve Beverage business plan that will enable BVF to continue to prosper in the wake of the Keurig 2.0 technology."  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143882.

**Keurig's Response:**  Keurig stipulates that the quoted language appears in the document.  However, the Note on the slide Bates stamped THS-004143884 states that "Legal efforts are being managed separately and will be covered in a different session."  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143884.

16.     The Coffee Roundtable Update indicates that the law firm Foley & Lardner LLP had a "Primary Focus" on "IP monitoring."  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143885.

**Keurig's Response**:  Keurig has no basis on which to confirm or deny the scope of representation for Foley & Lardner LLP.

**C. Stipulated Facts Related to the Date(s), Content, Recipients, and Subject Matter of TreeHouse's Communications to Its Customers Concerning the 2.0 Brewer Before February 11, 2014.**

In response to Your Honor's request for stipulated facts concerning the date(s), content, recipients, and subject matter of TreeHouse's communications to its customers concerning the 2.0 Brewer before February 11, 2014, August 5 Order at (ii)(c), the parties stipulate as follows:

1.     After TreeHouse had already sent its initial round of litigation hold notices on February 4, 2014, KGM Mot. Ex. R, ECF No. 1298-18, a chart of TreeHouse customers was included in the February 5, 2014 Coffee Roundtable Update that included "View on K2.0?" and "Key Takeaways."  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

**Stipulated.**

2.     At some unidentified point before the February 5, 2014 Coffee Roundtable Update, an unidentified individual who may be a TreeHouse employee, a broker, or customer

representative indicated that he or she believed that at that time ██████ was ████████ ████████." KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

      **Keurig's Response:**   Keurig lacks information sufficient to stipulate to this statement. Further, to the extent that TreeHouse suggests that the quoted conversation happened between the time it implemented some holds the day before the meeting and the meeting, this is not accurate. As TreeHouse notes in Statement 4 below, the update for ██████ appeared in an earlier presentation dated January 13, 2014.

      3.    The "Key Takeaways" for ██████ does not make reference to the 2.0 brewer or identify a conversation regarding the 2.0 brewer at or around that time. KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

      **Keurig's Response:**   Keurig does not stipulate to this statement because the title of the slide is ████████████ and the slide contains a column entitled "View on K2.0?" KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886. The fact that TreeHouse reached out to key customers about the 2.0 Brewer is consistent with many documents confirming that this was TreeHouse's intention. KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437817 ("██████ ████████████████████████████████████████████ ██████.").

      4.    The January 13, 2014 "SSB Roundtable Group Project Update" had also previously noted that ██████ was ████████████████." KGM Mot. Ex. N, ECF No. 1298-14 at Slide 7.

      **Stipulated.**

      5.    At some unidentified point before the February 5, 2014 ████████, an unidentified individual who may be a TreeHouse employee, a broker, or customer

representative indicated that he or she believed that at that time ███████████████

███████████████████ ▌" KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

      **Keurig's Response.**    Keurig lacks information sufficient to stipulate to this statement.  Further, to the extent that TreeHouse suggests that the conversation happened between the time it implemented some holds the day before the meeting and the meeting, this is not accurate.  As TreeHouse notes in Statement 7 below, the update for ████████ appeared in an earlier presentation dated January 13, 2014.

      6.     The "Key Takeaways" for ██████████ does not make reference to the ████████████ ██████████████████████████████ at or around that time.  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

      **Keurig's Response:**  Keurig does not stipulate to this statement because the title of the slide is "██████████████████████ and the slide contains a column entitled "View on K2.0?"  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.  The fact that TreeHouse reached out to key customers about the 2.0 Brewer is consistent with many documents confirming that this was TreeHouse's intention.  KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437817 ("██████ ████████████████████████████████████████████████████████████████ ██████████.").

      7.     The January 13, 2014 "SSB Roundtable Group Project Update" had also previously noted that ██████████ was ██████████████████████████████████."  KGM Mot. Ex. N, ECF No. 1298-14 at Slide 7.

      **Stipulated.**

      8.     On January 29, 2014, Bill Ford emailed Keiran Kelly and Bob Baker in and email with the subject, "Customer Updates on K2.0" and asked, "████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████." Nov. 19, 2021 Torpey

Decl. Ex. D, THS-000826591-92 at 91 (Kelly Def. Ex. 22).

     **Keurig's Response.**  Keurig does not stipulate to this statement which is based on a document outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.

     9.    On January 29, 2014, Bob Baker forwarded Bill Ford's email to Keiran Kelly and Harry Overly, stating "████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ Nov. 19, 2021 Torpey Decl. Ex. D, THS-000826591-92 at 91 (Kelly Def. Ex. 22).

     **Keurig's Response.**  Keurig does not stipulate to this statement which is based on a document outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  Keurig does not stipulate that TreeHouse set forth the complete contents of the document.

     10.    On January 29, 2014, Keiran Kelly responded to Bob Baker, noting in part that "There was not much detailed discussion on 2.0 directly as both customers did see [it] as a major event and were staying the course." Nov. 19, 2021 Torpey Decl. Ex. D, THS-000826591-92 at 91 (Kelly Def. Ex. 22).

     **Keurig's Response.**  Keurig does not stipulate to this statement which is based on a document outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.

     Keurig also does not stipulate to this statement because the quoted email contains a significant typo:  The deposition testimony of the author of the email, Mr. Kelly, corrected the email.  Mr. Kelly testified:

Q. And is this e-mail -- does this e-mail have a typo in it?

A. Yes, it does.

Q. It's supposed to say "As both customers did not see it as a major event and were staying the course"?

A. Correct.

Keiran Kelly (TreeHouse) Dep. Tr. 138:2-8.  With this correction, reflected in bold, the quoted email would say: "There was not much detailed discussion on 2.0 directly as both customers did **not** see [it] as a major event and were staying the course."

11.     The February 5, 2014 Coffee Roundtable Update indicated that ▬▬▬▬



▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬."

KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

        **Stipulated.**

12.     On January 2, 2014, Harry Overly and Bob Baker of TreeHouse had a conference call with ▬▬▬▬ in which the "K2.0" brewer was discussed and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ KGM Mot. Ex. O, ECF No. 1298-15 at THS-003685043.

        **Keurig's Response.**  Keurig stipulates that the quoted language appears in the referenced email.  Keurig does not stipulate that TreeHouse set forth the complete contents of the document.  Keurig also does not stipulate (and has no basis to stipulate) as to the accuracy of the notes reflected in the email.

13.     "▬▬▬▬▬▬" from the January 2, 2014 call between TreeHouse and ▬▬▬ were further incorporated into the SSB Roundtable Group Project Update on January 13, 2014.  KGM Mot. Ex. N, ECF No. 1298-14 at Slide 12.

   **Keurig's Response:**  Keurig stipulates that the referenced document contains a slide entitled "███████████."  *Id.*  Keurig does not stipulate that the referenced document is a substitute for actual call notes.

  14.  The February 5, 2014 Coffee Roundtable Update indicated that at that time ███████

████████████████████████████████████████████████████████████

███████"  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

   **Stipulated.**

  15.  TreeHouse's productions contain contemporaneous notes from the call referenced with ██████ in the February 5, 2014 Coffee Roundtable Update.  KGM Mot. Ex. O, ECF No. 1298-15 at THS-003685043-44.

   **Keurig's Response:**  Keurig stipulates that the email included as KGM Mot. Ex. O includes notes dated January 3, 2014 from a call with ██████ purportedly held on January 2, 2014.  Keurig does not stipulate (and has no basis to stipulate) as to the accuracy of the notes or that the notes are admissible.  The referenced notes were sent to TreeHouse's legal department and senior executives in connection with Project Charter.  KGM Mot. Ex. O, ECF No. 1298-15 at THS-003685043-44 (recipients Mr. O'Neill and Ms. Osborn are lawyers).

  16.  At some unidentified point before the February 5, 2014 Coffee Roundtable Update, an unidentified individual who may be a TreeHouse employee, a broker, or customer representative indicated that he or she believed that at that time █████████████████████

███████"  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

   **Keurig's Response.**  Keurig lacks information sufficient to stipulate when any meeting with ████ on the 2.0 Brewer may have occurred.

17.     The "Key Takeaways" for ▮▮▮ does not make reference to the 2.0 brewer or identify a conversation regarding the 2.0 brewer.  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

**Keurig's Response:**  Keurig does not stipulate to this statement because the title of the slide is ▮▮▮▮▮▮▮▮▮ and the slide contains a column entitled "View on K2.0?"  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.  Other documents confirm that TreeHouse reached out to key customers about the 2.0 Brewer.  *See, e.g.,* KGM Mot. Ex. C, ECF No. 1298-3 at THS-003437817 ("Begin meeting with key customers to understand their reaction to and plans around the new technology.").

18.     The February 5, 2014 Coffee Roundtable Update indicated that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

**Stipulated**.

19.     In an email from January 3, 2014, Keiran Kelly sent an email to numerous other TreeHouse employees stating, among other things, that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  KGM Mot. Ex. O, ECF No. 1298-15 at THS-003685043.

**Keurig's Response:**  Keurig does not stipulate (and has no basis to stipulate) as to the accuracy of the notes reflected in the email or that the notes are admissible.  Keurig stipulates that the quoted language appears in the referenced email.  Keurig does not stipulate that TreeHouse set forth the complete contents of the email.

20.   "███████████" from the January 3, 2014 email from Keiran Kelly were further incorporated into the SSB Roundtable Group Project Update on January 13, 2014.  KGM Mot. Ex. N, ECF No. 1298-14 at Slide 13.

**Keurig's Response:**  Keurig does not stipulate that the referenced document fully or accurately incorporated the notes discussed in Statement 19 above.  Keurig also does not stipulate that the referenced document is a substitute for actual call notes.

21.   The February 5, 2014 Coffee Roundtable Update, indicated that at that time

███████████████████████████████████████████████████

█████████████████████"  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

**Stipulated**.

22.   TreeHouse's productions contain contemporaneous notes from the call referenced with ██████ in the February 5, 2014 Coffee Roundtable Update.  KGM Mot. Ex. O, ECF No. 1298-15 at THS-003685043.

**Keurig's Response:**  Keurig stipulates that the email included as KGM Mot. Ex. O includes notes dated January 3, 2014 from a call with ██████ held on an unknown date. Keurig does not stipulate (and has no basis to stipulate) as to the accuracy of the notes or that the notes are admissible.  The referenced notes were sent to TreeHouse's legal department and senior executives in connection with Project Charter.  KGM Mot. Ex. O ECF No. 1298-15 at THS-003685043-44 (recipients Mr. O'Neill and Ms. Osborn are lawyers).

23.   At some unidentified point before the February 5, 2014 Coffee Roundtable Update, an unidentified individual who may be a TreeHouse employee, a broker, or customer representative indicated that he or she believed that at that time ███████████████████

███████████████████████████████████████████."  KGM Mot. Ex. M, ECF No. 1298-13 at THS-004143886.

**Keurig's Response.**  Keurig lacks information sufficient to stipulate when any meeting with ██████ on the 2.0 Brewer may have occurred.

24.    TreeHouse produced at least 421 documents containing the domain ██████████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court. *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

25.    TreeHouse produced at least 572 documents containing the domains ██████ ██████████████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

26.    TreeHouse produced at least 233 documents containing the domain ████████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

27.    TreeHouse produced at least 215 documents containing the domain ██████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

28.    TreeHouse produced at least 178 documents containing the domain ███████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

29.    TreeHouse produced at least 191 documents containing the domain ███████ ███████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

30.    TreeHouse produced at least 39 documents containing the domain ██████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

31.    TreeHouse produced at least 46 documents containing the domain ███████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

32.     TreeHouse   produced   at   least   126   documents   containing   the   domain ███████████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

33.     TreeHouse produced at least 273 documents containing the domain ████████ between September 10, 2013 to February 11, 2014.

**Keurig's Response:**  Keurig does not stipulate to this statement which is based on a statistic outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1.  The statistic is also misleading and inaccurate.

## D. Stipulated Facts Related To The Dates And Recipients Of TreeHouse's Preservation Notice(s)

| THS Employee | Written Litigation Hold For This Case[4] | Citation |
|---|---|---|
| Aquino, Pi | 2/4/2014 | Available for in camera review[5] |
| Auge, Amy | 2/14/2018 | Available for in camera review |
| Baker, Robert | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1369; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Barajas, Christina | 2/14/2018 | Available for in camera review |

[4] In addition to the written litigation holds for this case, there were also litigation holds provided orally and written litigation holds from prior cases, including the *Sturm* Litigation.

[5] By party agreement, the parties only exchanged litigation hold dates for agreed upon custodians, which is why a number of the litigation hold recipients are not reflected in the parties' correspondence.  The parties further agreed that the content of the litigation holds was privileged.  TreeHouse can provide litigation holds to the Court for in camera review should that be of assistance to the Court.

| | | |
|---|---|---|
| Beerens, Amanda | 11/9/2014 | Available for in camera review |
| Bellin, Emily | 3/20/2017 | Available for in camera review |
| Bendoraitis, William | 8/16/2018 | Available for in camera review |
| Boettcher, Jenny | 11/9/2014 | Available for in camera review |
| Borchelt, Robin | 4/19/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1370; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Carey, Jeff | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1398; *see also* KGM Mot. Ex. Z, ECF No. 1298-26 |
| Christofferson, Ashley | 2/17/2017 | Available for in camera review |
| Clark, Judy | 3/1/2016 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1371; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Clayton, Shannon | 2/14/2018 | Available for in camera review |
| Connall, Kyle | 2/14/2018 | Available for in camera review |
| Cooney, Mike | 4/17/2014 | Available for in camera review |
| Crawford, Gretchen | 1/25/2017 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1372; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |

| | | |
|---|---|---|
| Davis, Trevor | 2/14/2018 | Available for in camera review |
| Demos, Brian | 2/14/2018 | Available for in camera review |
| DeRose, Nat | 2/17/2017 | Available for in camera review |
| Durkin, Michael | 3/20/2017 | Available for in camera review |
| Elkey, Kathy | 2/14/2018 | Available for in camera review |
| Ellioff, Cheryl | 2/14/2018 | Available for in camera review |
| Eloe, Travis | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1373; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Erickson, Drew | 2/14/2018 | Available for in camera review |
| Erlandson, Dean | 3/20/2017 | Available for in camera review |
| Finck, Chris | 2/17/2017 | Available for in camera review |
| Ford, William | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1374; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Foster, Steve | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1375; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Gollwitzer, Catherine | 8/16/2018 | Available for in camera review |

| | | |
|---|---|---|
| Haye, Jeff | 2/14/2018 | Available for in camera review |
| Isenberg, Josh | 4/19/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1376; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| James, Joey | 2/14/2018 | Available for in camera review |
| Jarona, Tom | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1377; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Kahler, Erik | 4/17/2014 | Available for in camera review |
| Katopis, Christopher | 2/14/2018 | Available for in camera review |
| Kelleher, Dennis | 3/20/2017 | Available for in camera review |
| Kelly, Keiran | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1378; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Kerbs, Gayle | 4/17/2014 | Available for in camera review |
| Kerr, Alex | 1/8/2018 | Available for in camera review |
| Klasmeier, Jeffrey | 2/17/2017 | Available for in camera review |
| Koplien, Bonnie | 11/6/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1379; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |

| | | |
|---|---|---|
| Kraehenbuehl, Barbara | 11/9/2014 | Available for in camera review |
| Krause, Jason | 3/20/2017 | Available for in camera review |
| LaCalamita, Michelle | 8/16/2018 | Available for in camera review |
| Lamirande, Pat | 2/17/2017 | Available for in camera review |
| Lemieux, Craig | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1380; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Letcher, Naomi | 2/14/2018 | Available for in camera review |
| Lettau, Sheri | 2/14/2018 | Available for in camera review |
| Loftus, Steve | 1/25/2017 | Available for in camera review |
| Martell, Teresa | 1/25/2017 | Available for in camera review |
| Maton, Ian | 2/14/2018 | Available for in camera review |
| Maus, Tara | 1/25/2017 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1381; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Mazzocchi, Randy | 4/17/2014 | Available for in camera review |
| McDavid, Jennifer | 2/17/2017 | Available for in camera review |
| McEniry, Patrick | 3/20/2017 | Available for in camera review |

| McGuire, Dave | 2/17/2017 | Available for in camera review |
|---|---|---|
| McMullan, Margie | 2/14/2018 | Available for in camera review |
| Mikkelson, Ben | 1/25/2017 | Available for in camera review |
| Molden, Doug | 11/7/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1382; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Moorhead, Bobby | 3/20/2017 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1399; *see also* KGM Mot. Ex. Z, ECF No. 1298-26 |
| Neyhard, Ken | 4/17/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1383; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| O'Neill, Tom | 2/4/2014 | Available for in camera review |
| Olson, David | 2/14/2018 | Available for in camera review |
| Osborn, Jo | 2/4/2014 | Available for in camera review |
| Overly, Harry | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1384; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Pawlick, Adam | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1385; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |

| | | |
|---|---|---|
| Peskie, Samantha | 2/4/2014 | Available for in camera review |
| Perry, Brian | 2/14/2018 | Available for in camera review |
| Persells, Jim | 1/25/2017 | Available for in camera review |
| Piec, Lauren | 8/16/2018 | Available for in camera review |
| Pollard, Greg | 1/25/2017 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1386; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Power, Sharon | 2/14/2018 | Available for in camera review |
| Rainey, Devin | 2/14/2018 | Available for in camera review |
| Reabe, Brad | 2/14/2018 | Available for in camera review |
| Reck, Sarah | 8/16/2018 | Available for in camera review |
| Reed, Sam K. | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1387; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Reynolds, Martin | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1388; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Riordan, Dennis | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1389; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |

| Ritcey, Bill | 4/17/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1390; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
|---|---|---|
| Rivers, Micki | 3/20/2017 | Available for in camera review |
| Romanello, Valerie | 2/14/2018 | Available for in camera review |
| Rothers, Tom | 2/14/2018 | Available for in camera review |
| Ruegger, Rob | 4/17/2014 | Available for in camera review |
| Sanders, Michelle | 1/25/2017 | Available for in camera review |
| Santana, Mauricio | 4/19/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1400; *see also* KGM Mot. Ex. Z, ECF No. 1298-26 |
| Sautter, Krystal | 12/11/2017 | Available for in camera review |
| Schachter, Gary | 4/17/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1391; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Sharpe, Rod | 8/16/2018 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1401; *see also* KGM Mot. Ex. Z, ECF No. 1298-26 |
| Sliva, Chris | 2/4/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1392; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |

| Soller, Laura | 1/25/2017 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1393; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
|---|---|---|
| Sonnenberg, Nancy | 4/17/2014 | Available for in camera review |
| Sowell, Josh | 2/14/2018 | Available for in camera review |
| Spoehr, Christa | 2/14/2018 | Available for in camera review |
| Spratlin, Adam | 1/25/2017 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1394; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Stanek, Michael | 4/19/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1395 |
| Strohm, Chris | 2/14/2018 | Available for in camera review |
| Treankler, Craig | 3/20/2017 | Available for in camera review |
| Trickey, Brice | 3/20/2017 | Available for in camera review |
| Van Allen-Daly, Christi | 2/17/2017 | Available for in camera review |
| Vander Boogaard, Laurie | 2/14/2018 | Available for in camera review |
| VanRees, Chris | 12/11/2017 | Available for in camera review |
| Veney, Tyra | 3/20/2017 | Available for in camera review |

| | | |
|---|---|---|
| Vermylen, David | 2/4/2014 | Available for in camera review |
| Vesely, Tim | 1/25/2017 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1396; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Vincent, Bill | 3/20/2017 | Available for in camera review |
| Walsh, Harry | 4/17/2014 | Nov. 19, 2021 Torpey Decl. Ex. E, THS's Response to Keurig's Amended RFA No. 1397; *see also* KGM Mot. Ex. R, ECF No. 1298-18 |
| Weis, Seth | 2/4/2014 | Available for in camera review |
| Weisberg, David | 2/14/2018 | Available for in camera review |
| Wesenick, Dan | 2/14/2018 | Available for in camera review |
| Wester, Richard | 2/14/2018 | Available for in camera review |
| White, Mike | 2/14/2018 | Available for in camera review |
| Williams, Sara | 3/20/2017 | Available for in camera review |
| Winter, James | 2/14/2018 | Available for in camera review |
| Winton, Jay | 1/25/2017 | Available for in camera review |
| Ziech, Roger | 2/17/2017 | Available for in camera review |
| Zhang, Jim | 2/4/2014 | Available for in camera review |

**Keurig's Response:**  Keurig stipulates that, for custodians in this litigation, the information provided above matches what TreeHouse has previously disclosed except as follows:

- **Robin Borchelt.**  Ms. Borchelt received a litigation hold on January 25, 2017. KGM Mot. Ex. R, ECF No. 1298-18.  On May 11, 2020, TreeHouse revised the date to April 19, 2014.  KGM Mot. Ex. AR, ECF No. 1298-44, at 3.

- **Tom Rothers.**  TreeHouse represented in its disclosure letter that "Tom Rothers retired in 2014; however, his data was preserved and non-privileged responsive documents will be produced pursuant to the parties' agreement" and did not indicate a litigation hold date.  KGM Mot. Ex. Z, ECF No. 1298-26, at 2.

- **Mauricio Santana.**  The cited material states that Mr. Santana received a litigation hold on January 25, 2017.  KGM Mot. Ex. R, ECF No. 1298-18.  On May 11, 2020, TreeHouse revised the date to April 19, 2014.  KGM Mot. Ex. AR, ECF No. 1298-44 at 3.

- **Michael Stanek.**  TreeHouse represented in its disclosure letter that Mr. Stanek received a litigation hold notice on September 10, 2014.  KGM Mot. Ex. R, ECF No. 1298-18.  TreeHouse has not previously disclosed that Mr. Stanek received a litigation hold notice on April 19, 2014.

Keurig objects to TreeHouse's offer to make certain holds "Available for in camera review."  Keurig has no basis on which to stipulate whether such information is accurate as it was disclosed for the first time in a draft of this Stipulation on November 9, 2021, and these materials are outside the motions record.  *See* Order, ECF No. 1434 at 1.

Further, Keurig lacks information sufficient to stipulate to TreeHouse's footnote 1, as it has no information on what may have been conveyed orally to unidentified custodians, nor has TreeHouse comprehensively identified custodians placed under hold in prior litigations ,as suggested by TreeHouse in the footnote.

**E.  Stipulated Facts Related To Custodians From Whom, Keurig Alleges, TreeHouse Failed To Properly Preserve And Produce Information**

In response to Your Honor's request for stipulated facts concerning the custodians from whom, Keurig alleges, TreeHouse failed to properly preserve and produce information, including the dates of employment, title, date of initial receipt of a preservation notice for this litigation, and

documents produced from other sources, August 5 Order at (ii)(e), October 1 Order, the parties stipulate as follows:

1.       Judy Clark worked for TreeHouse from September 2007 through December 2018. Ms. Clark's titles throughout this period included Senior Director Business Architecture; VP Supply Chain Planning; SAP Implementation Leader; Senior VP, Logistics and Consumer Solutions; Senior VP & General Manager, AFH Sales & Marketing; and Senior VP of Sales, AFH, Canada, Condiments, Meals.  Ms. Clark received a litigation hold notice on March 1, 2016.  KGM Mot. Ex. R, ECF No. 1298-18.

       **Keurig's Response:** Stipulated, but Ms. Clark also testified that her responsibilities included single-serve portion beverages beginning in fall 2014 through summer 2016.  Keurig Reply Ex. BH, ECF No. 1388-4 (Clark Dep. Tr. 13:4-18:19).

2.       TreeHouse has produced over 116,000 documents in which Ms. Clark was the primary or duplicate custodian.  Including, but not limited to Ms. Clark's documents, TreeHouse has produced approximately 30,000 documents referring to Office Coffee, Office Coffee Services, or OCS; 12,400 documents referring to ███████  8,300 documents referring to ███████; 6,000 documents referring to ███████.  THS Opp. Mot. at 19.  In addition, TreeHouse has produced files from Messrs. Schachter, Overly, Ritcey, Santana, and Ms. Borchelt, among others, related to the Away From Home Market.

       **Keurig's Response:** Keurig does not stipulate that TreeHouse produced over 116,000 documents from Ms. Clark's files.  Keurig has explained why TreeHouse's document counts are inaccurate.  *See* ECF No. 907; KGM Mot. at 14-16.  Keurig stipulates that TreeHouse produced documents from the listed custodians, but does not stipulate to the relevance of such productions.  *See* KGM Mot. at 14-16; KGM Reply at 4-5.

3.     Gretchen Crawford has worked for TreeHouse from June 2006 through the present. Ms. Crawford's titles throughout this period have included Supply Chain Manager, █████ Senior Manager, Customer Supply Chain ████████ Business Development Manager, East Coast; and Director of Retail Sales.  Ms. Crawford received a litigation hold notice on January 25, 2017.  KGM Mot. Ex. R, ECF No. 1298-18.

**Keurig's Response:** Stipulated, but Ms. Crawford also testified that she was sales lead for ████ and other East Coast retailers from 2012 through 2017.  KGM Mot. Ex. AB, ECF No. 1298-28 (Crawford Dep. Tr. at 34:1-21).

4.     TreeHouse produced over 82,000 documents in which Ms. Crawford was a primary or duplicate custodian.  Including, but not limited to Ms. Crawford's documents, specifically, for █████, TreeHouse produced 2,321 documents that include ██████ email domains ████████ ████████████████ which is almost 40% more than the 1,660 documents Keurig produced from the same domains.  In addition, TreeHouse has produced files from Messrs. Overly, Baker, Kelly, and Lemieux, all of whom had responsibilities relating to █████ and all of whom were issued litigation holds on Feb. 4, 2014 and deposed by Keurig.  THS Opp. Mot. at 13.

**Keurig's Response:** Keurig does not stipulate that TreeHouse produced over 82,000 documents from Ms. Crawford's files.  Keurig has explained why TreeHouse's document counts are inaccurate in its briefing.  *See* ECF No. 907; KGM Mot. at 11.  Keurig stipulates that TreeHouse produced documents from the listed custodians, but does not stipulate to the relevance of such productions.  *See* KGM Mot. at 11, KGM Reply at 4.

5.     Craig Lemieux worked for TreeHouse from March 2011 through December 2018. Mr. Lemieux's titles throughout this period included Executive Vice President / Chief Operating

Officer, Senior Vice President / General Manager – Sturm, and President of Beverages.  Mr. Lemieux received a litigation hold notice on Feb. 4, 2014.  KGM Mot. Ex. R, ECF No. 1298-18.

      **Keurig's Response:**  Keurig does not stipulate to this statement because Plaintiffs failed to include that Mr. Lemieux was Executive Vice President of Operations and Business Development at plaintiff Sturm Foods, Inc. before Sturm was acquired by TreeHouse in 2011. Keurig understands Mr. Lemieux was employed by Sturm beginning in 2008.  While at Sturm, Mr. Lemieux worked on development of Sturm's Keurig-compatible portion packs and testified that he was involved in the decision to develop portion packs.  KGM Mot. Ex. AO, ECF No. 1298-41 (Craig Lemieux Day 1, Dep. Tr. 24 :1-13).  TreeHouse's initial disclosures also identified Mr. Lemieux as an employee who may have information about TreeHouse's entry into the portion pack business.  KGM Mot. Ex. AN, ECF No. 1298-40 (TreeHouse's Initial Disclosures) at 3.

      6.     TreeHouse has produced over 132,000 documents in which Mr. Lemieux was the primary or duplicate custodian.  In addition, TreeHouse has produced files from Messrs. Reed, Vermylen, Overly, Reynolds, Jarona, and Ms. Peskie related to TreeHouse's entry into the single-serve business.  THS Opp. Mot. at 20.

      **Keurig's Response:**  Keurig does not stipulate that TreeHouse produced over 132,000 documents from Mr. Lemieux's files, and notes that this statistic is outside the motion record before the Court.  Keurig has explained why TreeHouse's document counts are inaccurate. ECF No. 907; KGM Mot. at 16-18.  Keurig stipulates that TreeHouse produced documents from the listed custodians, but does not stipulate to the relevance of such productions.  *See* KGM Mot. at 16-19; KGM Reply at 5-6.

7.      Bobby Moorhead has worked for TreeHouse from October 1995 through the present.  He is a Director of Sales/Team Leader – Private Brands.  Mr. Moorhead received a litigation hold notice on March 20, 2017.  KGM Mot. Ex. Z, ECF No. 1298-26.

      **Stipulated.**

8.      TreeHouse produced over 61,000 documents on which Mr. Moorhead is a primary or duplicate custodian.  KGM Mot. Ex. AR, ECF No. 1298-44 at 3.  In addition, TreeHouse has also produced files from Messrs. Overly and Baker, among others, related to ▮▮▮.  THS Opp. Mot. at 12.

      **Keurig's Response:**  Keurig does not stipulate that TreeHouse produced over 61,000 documents from Mr. Moorhead's files.  Keurig has explained why TreeHouse's document counts are inaccurate.  ECF No. 907; KGM Mot. at 12.  Keurig stipulates that TreeHouse produced documents from the listed custodians, but does not stipulate to the relevance of such productions. *See* KGM Mot. at 11-12; KGM Reply at 3-4.

9.      Tom Rothers worked for TreeHouse from July 1992 through October 2014.  He is a former Director of Retail Sales.  Mr. Rothers did not receive a litigation hold notice in this case as he retired from TreeHouse in 2014.  KGM Mot. Ex. Z, ECF No. 1298-26.

      **Keurig's Response:**  Keurig stipulates that Mr. Rothers worked for TreeHouse from July 1992 through October 2014 and that he is a former Director of Sales.  Keurig stipulates that Mr. Rothers did not receive a litigation hold notice in this case.  Keurig does not stipulate that his retirement caused him not to receive a hold notice, as Mr. Rothers retired eight months after TreeHouse filed its complaint in February 2014.

10.     TreeHouse produced over 25,000 documents on which Mr. Rothers is a primary or duplicate custodian.  TreeHouse produced Mr. Rothers' email, pursuant to agreement between the

parties.  THS Mot. Ex. 13, ECF No. 1347-13 ("To reiterate what we discussed on the call, we have not been able to reach Tom Rothers given his retirement in 2014, but expect our client will be willing to produce his email even if we cannot locate him."); *see also* THS Mot. Ex. 41, ECF No. 1342-30.  TreeHouse also reviewed files stored in shared drives for other documents related to Mr. Rothers.  KGM Mot. Ex. AG, ECF No. 1298-33.

> **Keurig's Response:**  Keurig does not stipulate that TreeHouse produced over 25,000 documents from Mr. Rothers' files.  Keurig has explained why TreeHouse's document counts are inaccurate.  ECF No. 907; KGM Mot. at 13-14 and Figure 4.  Further, Keurig does not stipulate that Statement 10 accurately reflects the parties' agreement on Mr. Rothers.  The last in time email on the subject memorializing the party's agreement confirms he was to be added as a full custodian.  Finally, TreeHouse states that it "reviewed files stored in shared dives" but does not state that any such documents were produced.

11.    Adam Spratlin has worked for TreeHouse from January 2012 through the present.  Mr. Spratlin's titles throughout this period have included Director of Engineering and Senior Director of Engineering.  Mr. Spratlin received a litigation hold on January 25, 2017.  KGM Mot. Ex. R, ECF No. 1298-18.

> **Keurig's Response:**  Stipulated.   Mr. Spratlin had primary responsibility for procuring filling machinery throughout the relevant period, including identifying suppliers, obtaining quotes, and negotiating prices.  KGM Mot. Ex. G, ECF No. 1298-7 (Spratlin Dep. Tr. 87:24-88:5, 123:11-124:18).  Mr. Spratlin was also involved in deciding to buy machines from ███████ exclusively over alternative potential machine suppliers.  *Id.* at 227:6-20.

12.      TreeHouse produced over 67,600 documents in which Mr. Spratlin was a primary or duplicate custodian.  In addition, TreeHouse has produced files from Messrs. Ken Neyhard, Craig Lemieux, Thomas Jarona, and Ms. Tara Maus related to procurement.

**Keurig's Response:** Keurig does not stipulate that TreeHouse produced over 67,600 documents from Mr. Spratlin's files.  Keurig has explained why TreeHouse's document counts are inaccurate.  ECF No. 907; KGM Mot. at 8 and Figure 1.  Additionally, Mr. Spratlin testified that he regularly deleted his sent emails until receiving a litigation hold in 2017.  KGM Mot. Ex. G, ECF No. 1298-7 (Spratlin Dep. Tr. 57:20-58:19).  Keurig stipulates that TreeHouse produced documents from the listed custodians, but does not stipulate to the relevance of such productions.  *See* KGM Mot. at 4-5, 8-10; KGM Reply at 3.

Keurig further responds that TreeHouse has not identified in Section E of this Stipulation all of the custodians for which Keurig contends TreeHouse failed to properly preserve and produce information.  In addition to the above, Keurig identified all custodians, in particular Sam Reed, TreeHouse's Chairman, who launched Project Charter; Chris Sliva, the President of Bay Valley Foods; and Bill Ford, the Director of Strategy responsible for coordinating and overseeing Project Charter, for the period of November 15, 2013 through February 4, 2014.  KGM Mot. at 6-8, 21; Keurig Reply at 3.

## F. Stipulated Facts Related To The Dates and Content of Any Representation by TreeHouse's Counsel to Keurig's Counsel Concerning (a)-(e).

In response to Your Honor's request for stipulated facts concerning the dates and content of any representation by TreeHouse's Counsel to Keurig's Counsel concerning the above, August 5 Order at (ii)(f), the parties stipulate as follows:

1.      On February 6, 2018, TreeHouse counsel Susannah P. Torpey sent a letter to Keurig counsel Leah Brannon, Larry Malm, Wendy Newton and Mackenzie Baird listing the initial dates

a written litigation hold notice for this litigation was issued for 29 agreed-upon custodians.  KGM Mot. Ex. R, ECF No. 1298-18.

> **Stipulated.**

2.      On November 15, 2018, TreeHouse counsel Susannah P. Torpey sent a letter to Keurig counsel Leah Brannon, Larry Malm, Wendy Newton and Mackenzie Baird listing the initial dates a written litigation hold notice for this litigation was issued for five additionally agreed-upon custodians.  KGM Mot. Ex. Z, ECF No. 1298-26.

> **Stipulated.**

3.      On January 17, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part stating that Mr. Spratlin's email referenced by Keurig was "sent months prior to the initiation of this lawsuit, suggesting nothing about preservation in connection with this case, and in any event, a version of that email was produced no fewer than nine times.  In total, TreeHouse produced over 56,000 documents from Mr. Spratlin's custodial files, covering the entire document discovery period."  THS Opp. Mot. Ex. 41, ECF No. 1342-30.

> **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter.  Keurig responded to TreeHouse's claims about Mr. Spratlin by letter from Joseph Kay to Kelli Lanski, dated February 27, 2020.  KGM Mot. Ex. AZ, ECF No. 1298-52.

4.      On April 14, 2020, TreeHouse counsel Johanna Hudgens sent an email to Keurig counsel Joseph M. Kay, stating that "[w]ith respect to our investigation of Mr. Spratlin's emails, we have now determined that there was a technical issue that impacted the processing of his emails. We have reprocessed his email to rectify the issue and are now in the process of reviewing his emails for reproduction.   We expect  to  produce  any  additional  responsive,  non-privileged

information by the end of the month.  While we do not expect the difference between production sets to be substantial or material, we note that the RA Jones email you reference, of which Keurig has various copies from other custodial files, will be part of that production."  KGM Mot. Ex. X, ECF No. 1298-24, Apr. 14, 2020 Hudgens Email.

      **Keurig's Response**:  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  The parties discussed TreeHouse's processing of Mr. Spratlin's email for nearly two months before TreeHouse made the representation in Statement 4.  Keurig identified irregularities in TreeHouse's productions based on deposition testimony offered by Mr. Spratlin.  KGM Mot. Ex. X, ECF No. 1298-24, at 5, 7-8, 10,-12, 16-17.

     5.     On May 11, 2020, TreeHouse counsel Johanna Hudgens sent an email to Keurig counsel Joseph M. Kay, stating that "[w]e have completed production from the sources we discussed during our call [regarding Mr. Spratlin's files]."  KGM Mot. Ex. X, ECF No. 1298-24, May 11, 2020 Hudgens Email.

      **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.

     6.     On May 11, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part stating that TreeHouse "had spoken to Mr. Spratlin at length after his deposition, confirmed the identity of the folders where he saved relevant documents, and conducted a linear review of those files.  We also identified a minor technical issue, the result of which is that some of his emails had inadvertently not yet been reviewed.  We promptly notified Keurig of that issue and worked diligently to review the files and make a production within days of realizing the error."  KGM Mot. Ex. AR, ECF No. 1298-44.

**Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced letter but does not stipulate to TreeHouse's characterization of the letter.  Keurig notes that the letter does not reflect extensive back and forth between the parties.  TreeHouse identified the collection error after denying that any problem existed for nearly two months,   KGM Mot. Ex. X, ECF No. 1298-24, at 5, 7-8, 10,-12, 16-17.

7.     On January 17, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part identifying Bob Baker, Vice President of Retail Sales and later Grocery & Dollar Sales, as an individual who supervised Gretchen Crawford.  THS Opp. Mot. Ex. 41, ECF No. 1342-30.

**Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced letter but does not stipulate to TreeHouse's characterization of the letter.  Keurig responded to TreeHouse's claims about Ms. Crawford by letter from Joseph Kay to Kelli Lanski, dated February 27, 2020.  KGM Mot. Ex. AZ, ECF No. 1298-52.

8.     On May 11, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part stating that "TreeHouse has produced over 1,454 documents including ▮▮▮▮▮▮▮ email domain.  This is over 40% more than Keurig, who produced just 1,012 documents including ▮▮▮▮▮ email domain.  Many of these communications were produced from Gretchen Crawford's files, a custodian you have focused on in your letters, dating back to her initial contact with ▮▮▮▮ … As you know, many TreeHouse employees had responsibilities relating to ▮▮▮▮ in addition to Ms. Crawford.  My January 17 letter identified several of those individuals."  KGM Mot. Ex. AR, ECF No. 1298-44.

**Keurig's Response**:  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter.  Keurig addressed TreeHouse's arguments at KGM Mot. at 11-12 & n.39.

9.      On October 4, 2018, TreeHouse counsel Susannah P. Torpey sent a letter to Keurig counsel Larry Malm, stating that "we are willing as a compromise to produce documents for Messrs. Carey, Moorhead, and Santana, as well as the relevant folder discussed for Mr. Sharpe." THS Opp. Mot. Ex. 13, ECF No. 1347-13.

**Keurig's Response**:  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter.

10.      On January 17, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part identifying Bob Baker, Vice President of Retail Sales and later Grocery & Dollar Sales, as an individual who supervised Bobby Moorhead.  THS Opp. Mot. Ex. 41, ECF No. 1342-30.

**Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter.  Keurig responded to TreeHouse's claims about Mr. Moorhead by letter from Joseph Kay to Kelli Lanski, dated February 27, 2020.   KGM Mot. Ex. AZ, ECF No. 1298-52.

11.      On May 11, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part stating that "TreeHouse has produced more than 61,000 documents for the years 2014-2017 and on which Mr. Moorhead is a primary or duplicate custodian."  KGM Mot. Ex. AR, ECF No. 1298-44.

**Keurig's Response**:  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter.  Keurig does not stipulate that TreeHouse has produced more than 61,000 documents from Mr. Moorhead's files.

12.    On October 4, 2018, TreeHouse counsel Susannah P. Torpey sent a letter to Keurig counsel Larry Malm, stating that "we have not been able to reach Tom Rothers given his retirement in 2014, but expect our client will be willing to produce his email even if we cannot locate him." THS Opp. Mot. Ex. 13, ECF No. 1347-13.

**Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter, but the referenced letter does not reflect the parties' final agreement.  Later correspondence confirmed that Mr. Rothers was added as a "full" custodian.  On October 8, 2018, the parties agreed to the following:  "We [Keurig] are adding the 12 you [TreeHouse] requested besides Degnan based on the understanding that you are adding the 4 full custodians (Carey, Moorhead, Santana, and Rothers) plus the targeted search of the other (Sharpe)."  KGM Mot. Ex. AF, ECF No. 1298-32.

13.    On July 18, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph Kay, stating that "Mr. Rothers was added at Keurig's request as a second-round custodian late last year.  Mr. Rothers retired in 2014, and he had responsibility for a number of product lines during his employment at TreeHouse, of which single-serve was merely a subset, so we would expect that he would have fewer emails than individuals with greater responsibility for single serve.  In addition, as a second-round custodian, Mr. Rothers' email collection was de-duplicated against the prior review and production set.  For the avoidance of doubt, please see attached for an overlay specifying the more than 20,000 documents in TreeHouse's productions on which Mr.

Rothers is a duplicate custodian."  KGM Mot. Ex. AG, ECF No. 1298-33, July 18, 2019 K. Lanski Email.

      **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig responded to TreeHouse's claim that it produced "more than 20,000 documents in TreeHouse's productions on which Mr. Rothers is a duplicate custodian" many times, including in KGM Mot. Ex. AG, ECF No. 1298-33 at 2.

      14.    On August 28, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph Kay, stating that "[p]er the parties' agreement, and as referenced in Susannah's October 4, 2018 letter to Keurig, we collected and produced files from Mr. Rothers' email."  KGM Mot. Ex. AG, ECF No. 1298-33, August 28, 2019 K. Lanski Email.

      **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig does not stipulate that the parties agreed that TreeHouse need only collect and produce "from Mr. Rothers' email."  Other correspondence confirms that Mr. Rothers was added as a "full" custodian as discussed in response to Statement 12.  Keurig has replied to similar statements by TreeHouse on other occasions, including in the immediate reply to the email TreeHouse excerpts above.  KGM Mot. Ex. AG, ECF No. 1298-33 at 10 ("You're mistaken that the parties agreed TreeHouse would produce only email from Mr. Rothers. Please see the attached email Larry sent to Susannah and others on October 8, which makes clear that Mr. Rothers is to be added as a full custodian.").

      15.    On September 9, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph Kay, stating that "[w]ith respect to Mr. Rothers, TreeHouse's agreement to 'produce his email' as reflected in Susannah's letter is clear; Larry's subsequent email does not change that, nor is any Keurig attorney authorized to make an agreement on TreeHouse's behalf.

TreeHouse satisfied its obligation to produce Mr. Rothers' email data, as per our agreement." KGM Mot. Ex. AG, ECF No. 1298-33, Sept. 9, 2019 K. Lanski Email.

> **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig does not stipulate that the parties agreed that TreeHouse need only collect and produce "Mr. Rothers' email data."  The referenced email between Ms. Torpey and Mr. Malm is the last email on the subject of Mr. Rothers' custodial collection before production, and states that he will be added as a "full custodian."  In exchange for TreeHouse's agreement on this point, Keurig agreed to add 12 additional custodians and to hold off on filing motions to compel with respect to other TreeHouse custodians that Keurig sought.  KGM Mot. Ex. AF, ECF No. 1298-33.

16.     On September 19, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Alan Freedman and Joseph Kay, stating that "[w]ith respect to Mr. Rothers, as we previously informed Keurig, we reviewed and produced his email data pursuant to the parties' agreement.  In addition, we have identified additional documents stored in TreeHouse's shared drives, which, despite the parties' prior agreement, we will now agree to review for responsiveness and privilege if you would like."  KGM Mot. Ex. AG, ECF No. 1298-33, Sept. 19, 2019 K. Lanski Email.

> **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig does not stipulate that the parties agreed that TreeHouse need only collect and produce Mr. Rothers' "email data."  Other correspondence confirms that Mr. Rothers was added as a "full" custodian as discussed in response to Statement 12.

17.     On September 30, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph M. Kay, stating that "[w]ith respect to Mr. Rothers, you continue to misrepresent the scope of TreeHouse's agreement, which was to produce his emails.  In addition to meeting our obligation pursuant to that prior agreement, we have now offered to review files stored in TreeHouse's shared drives and produce relevant, responsive documents, which we will do."  KGM Mot. Ex. AG, ECF No. 1298-33, Sept. 30, 2019 K. Lanski Email.

**Keurig's Response**:  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig does not stipulate that Mr. Rothers was only added as a custodian for email.  Other correspondence confirms that Mr. Rothers was added as a "full" custodian as discussed in response to Statement 12.  Further, to Keurig's knowledge, TreeHouse has not produced documents from any share drive associated with Mr. Rothers.  *E.g.* KGM Mot. Ex. AG at 7-8 (suggesting that TreeHouse would search share drives specific to Mr. Rothers).

18.     On October 1, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph M. Kay, stating that "custodians were heavily negotiated in this case, and TreeHouse did not agree to collect or produce documents from Mr. Rothers' computer."  KGM Mot. Ex. AG, ECF No. 1298-33, Oct. 1, 2019 K. Lanski Email.

**Keurig's Response**:  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig does not stipulate that TreeHouse "did not agree to collect or produce documents from Mr. Rothers' computer."  Other correspondence confirms that Mr. Rothers was added as a "full" custodian as discussed in response to Statement 12.

19.    On October 8, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph M. Kay, stating that TreeHouse "did not collect [Mr. Rother's computer] because we did not agree to collect it.  We did agree to produce his emails and produced over 20,000 documents on which he is a custodian."  KGM Mot. Ex. AG, ECF No. 1298-33, Oct. 8, 2019 K. Lanski Email.

**Keurig's Response**:  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig does not stipulate that Mr. Rothers was only added as a custodian for email.  Other correspondence confirms that Mr. Rothers was added as a "full" custodian as  discussed in response to Statement 12.  Keurig has responded to TreeHouse's claim that it "produced over 20,000 documents on which he is a custodian" many times, including in KGM Mot. Ex. AG, ECF No. 1298-33 at 2.

20.    On November 1, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph M. Kay, stating that TreeHouse "did not commit to collecting and producing anything beyond his emails.  In response to your more recent inquiries about Mr. Rothers, we have worked diligently to attempt to get in touch with him by phone, mail, and with the assistance of current TreeHouse personnel.  Unfortunately all of these efforts have been unsuccessful.  TreeHouse does not currently have a copy of his work-issued computer, and at this time, we have no additional information concerning Mr. Rothers' document storage practices while at TreeHouse."  KGM Mot. Ex. AG, ECF No. 1298-33, Nov. 1, 2019 K. Lanski Email.

**Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  However, in the month prior to sending the referenced email, TreeHouse represented that it did *not* lose Mr. Rothers' computer:  "We did not

lose or discard Mr. Rothers' computer; rather, we did not collect it because we did not agree to collect it."  KGM Mot. Ex. AG, ECF No. 1298-33, at 2.

21.     On January 17, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay.  TreeHouse counsel stated that, for Mr. Rothers, "TreeHouse was very clear at the time Keurig requested he be added as a custodian that he had retired back in 2014 and that we had not been able to get in touch with him despite several attempts … .  In spite of those discussions, Keurig accepted TreeHouse's offer to move forward with him as an email-only custodian."  In addition, TreeHouse counsel identified Bob Baker, Vice President of Retail Sales and later Grocery & Dollar Sales, as an individual who supervised Tom Rothers.  THS Opp. Mot. Ex. 41, ECF No. 1342-30.

     **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter.  Keurig responded to TreeHouse's claims about Mr. Rothers and Mr. Baker by letter from Joseph Kay to Kelli Lanski, dated February 27, 2020.  KGM Mot. Ex. AZ, ECF No. 1298-52.

22.     On January 17, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part identifying Sam Reed, TreeHouse's CEO, as an individual who Judy Clark reported to, and stating that "Ms. Clark was not responsible for single-serve beverages at the time the complaint was filed."  THS Opp. Mot. Ex. 41, ECF No. 1342-30.

     **Keurig's Response:** Keurig stipulates that TreeHouse sent the referenced letter but does not stipulate to TreeHouse's characterization of the letter.  Keurig responded to TreeHouse's claims about Mr. Reed by letter from Joseph Kay to Kelli Lanski, dated February 27, 2020.  KGM Mot. Ex. AZ, ECF No. 1298-52.

23.     On May 11, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part stating that "[Keurig's] February 27 letter refers to Judy Clark…whom Keurig deposed.  Keurig did not raise any preservation concerns with [Ms. Clark] at [Ms. Clark's] deposition[]."  KGM Mot. Ex. AR, ECF No. 1298-44.

     **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter.

24.     On October 8, 2019, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph M. Kay, stating that "[w]e have been clear about custodian…Lemieux… After collection and review of [his] computer[], we did not identify responsive, non-privileged documents for production."  KGM Mot. Ex. AG, ECF No. 1298-33.

     **Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.

25.     On May 11, 2020, TreeHouse counsel Kelli Lanski sent a letter to Keurig counsel Joseph M. Kay, in part stating that "Craig Lemieux has come up in several of your communications.  You suggest that his documents were not preserved because some documents in TreeHouse's productions dating from 2009-2013 were sent to or from him, but he was not listed as a custodian.  Your argument hinges on the incorrect belief that TreeHouse had a preservation obligation dating back to 2009.  As discussed above, you provide no support for that belief.  In any event, last month we notified you of a clerical issue relating to TreeHouse's metadata as soon as we identified it.  We produced a custodian overlay on Friday May 8, 2020.  Your March 3rd email about Mr. Lemieux suggested that TreeHouse could 'remedy' your concerns by making a production from the *Sturm* case.  That Keurig would make that suggestion months after the Court rejected Keurig's motion to compel the Sturm production is surprising to us.  Keurig had ample

opportunity to appeal that decision by Judge Pitman but chose not to; accordingly, it is the law of the case. Keurig is not entitled to TreeHouse's production from the *Sturm* case, and we do not appreciate Keurig's attempt to create an end run around that ruling. Moreover, in connection with the parties' negotiations concerning Keurig's responses to Plaintiffs' RFPs, Keurig took the position that the parties had no obligation to review documents collected in the *Sturm* case for potential production in this case and refused to do so in favor of conducting an entirely new collection here. Even though your claims do not have any merit, and even though you are not entitled to the *Sturm* production, in an effort to put this sideshow to rest, we have undertaken the burden to work with our client to begin to identify documents produced from Mr. Lemieux's files in the *Sturm* case. Our doing so is not a concession that the files are relevant and any production stemming from that case would be limited to documents sourced from Mr. Lemieux's files only. With that understanding, we would be willing to produce non-privileged documents from the *Sturm* case and sourced from Mr. Lemieux's files in exchange for Keurig's agreement that this issue has been resolved and that Keurig will not raise further preservation and/or spoliation concerns (or engage in motion practice) regarding Mr. Lemieux." KGM Mot. Ex. AR, ECF No. 1298-44.

**Keurig's Response:** Keurig stipulates that TreeHouse sent the referenced letter and that the quoted language appears in the letter. Keurig responded to the letter on May 13, 2020. KGM Mot. Ex. AS, ECF No. 1298-45. Additionally, Statement 25 does not reflect the parties' correspondence regarding Mr. Lemieux's files that predate this exchange. *E.g.*, KGM Mot. Ex. AS, ECF No. 1928-48 (discussing discrepancies in Mr. Lemieux productions). Finally, Keurig does not stipulate to Plaintiffs' characterization of Keurig's argument. Keurig explains its position with respect to Mr. Lemieux in KGM Mot. at 16-21.

26.     On May 13, 2020, TreeHouse counsel Kelli Lanski sent an email to Keurig counsel Joseph M. Kay, stating that "[a]s you know, Keurig lost its motion to compel TreeHouse to produce the *Sturm* documents and therefore has no rights concerning or entitlement to those documents. As stated in our letter, TreeHouse would be willing to agree to undertake the burden to identify, review, and produce documents sourced from Mr. Lemieux's files in the *Sturm* production in exchange for Keurig's agreement that this issue has been resolved and that Keurig will not raise further preservation and/or spoliation concerns (or engage in motion practice) regarding Mr. Lemieux. We understand that you have rejected the offer."  Nov. 19, 2021 Torpey Decl. Ex. F, May 13, 2020 K. Lanski Email.

**Keurig's Response:**  Keurig stipulates that TreeHouse sent the referenced email and that the quoted language appears in the email.  Keurig notes that this email was sent in response to the email referenced in Keurig's response to Statement 25.

III.    **JBR's Proposed Stipulated Facts Related to Keurig's Motion as to JBR and Keurig's Responses and Counterstatements of Fact**

**g. The attendees and subject matter of the January 31, 2014 meeting between JBR and Costco (see ECF No. 1290 at 27)**

Attendees of the January 31, 2014 meeting between JBR and Costco were Jim Rogers of JBR and Shannon Axthelm, Claudine Adamo, and Deirdre Bondarev of Costco.  Subject matter of the meeting related to Costco's plans for continuing to carry JBR's OneCup product in light of the impending launch of the 2.0 brewer, and JBR's plans for addressing how to sell OneCups in light of the anticipated compatibility issues with the Keurig 2.0 brewer, including any packaging clarifications to indicate OneCups were not 2.0 compatible.  In late 2013 and early 2014, (a) emails from Costco managers to portion pack sellers; (b) internal Costco communications; and

(c) external emails reflecting contemporaneous conversations between Costco managers and portion pack sellers reflect that that Costco had expressed concerns about carrying any unlicensed portion packs due to the expectation that they would be incompatible with the to-be-launched Keurig 2.0 brewer.  For example, contemporaneous emails produced by Costco show that Costco's category managers had concerns regarding the unlicensed portion packs of Peet's, JBR, Community Coffee, Cameron's Coffee, and others, and that Keurig was internally considering halting any new unlicensed portion pack introductions until the issue was resolved. Ultimately, Costco's solution for allowing JBR to continue to sell at Costco was to require JBR to put labeling on each box of OneCups indicating that they were not compatible with 2.0.

**Keurig's Response:**  Keurig stipulates that Jim Rogers of JBR and Shannon Axthelm attended the January 31, 2014 meeting.  Keurig lacks sufficient information to stipulate to the subject matter of the meeting because there is no document in the record before this Court, including those improperly cited by JBR outside the motions record below, that summarizes the discussion at the January 31, 2014 meeting.  JBR's First Amended Complaint summarizes the meeting as follows:

> Rogers was told that despite having prices lower than all other suppliers' Portion Packs — including Costco's Keurig-made private label — Costco would not be widening distribution for Rogers, or any other Competing Portion Pack supplier, until the Keurig 2.0 compatibility issue was resolved.  During this same meeting, Costco informed Rogers that it would be requiring Rogers to implement a design change to its Costco packaging to inform customers that Rogers' products were not compatible with the Keurig 2.0 Brewer. This packaging design will undoubtedly act as a scarlet letter branded on Rogers' products that leaves consumers with the impression that Rogers' product is somehow inferior and deters them from purchasing its products, even if those consumers do not own a 2.0 Brewer.

Am. Compl. ¶ 271, 14-cv-4242 (VSB) (SLC), ECF No. 83.  Keurig notes that even JBR no longer includes in its summary above the claim from its Amended Complaint that JBR was told it had "prices lower than all other suppliers' Portion Packs – including Keurig-made private label."

### h. A list of any documents JBR has produced concerning the January 31, 2014 meeting between JBR and Costco;

Exhibit H[6] lists over 20 documents JBR produced on April 30, 2018 concerning the subject matter of the January 31, 2014 meeting between JBR and Costco.

**Keurig's Response**:  Keurig does not stipulate to Exhibit H because the documents cited are outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) … must contain citations to the relevant exhibit(s) accompanying the Motions.").

Further, Keurig does not stipulate that the documents on Exhibit H concern the January 31, 2014 meeting because none reflect JBR's allegations about the meeting (Am. Compl. ¶ 271, 14-cv-4242 (VSB) (SLC), ECF No. 83):

- One of the documents is an email with JBR's competitor, Cameron's, about an exchange Cameron's supposedly had with Costco. Ex. 1 [ROG001077677].  Jim Rogers forwards the email to his brother Pete Rogers with the message: ██████████████████████ ████████████████████████████████████ ████████████████████████████████ *Id.*

- Twelve of the documents are copies of the same scheduling email with Costco from January 2014. Ex. 2 [ROG001261706], Ex. 3 [ROG001261718], Ex. 4 [ROG001261719],

---

[6] Cited exhibits are attached to the concurrently-filed Declaration of Mario Moore in Connection with Stipulation Regarding August 5, 2021 Order Items G, H, I, and J Concerning Keurig's Motion Against JBR (ECF No. 1289).

Ex. 5 [ROG001261721], Ex. 6 [ROG001261731], Ex. 7 [ROG001261736], Ex. 11 [ROG001360221], Ex. 13 [ROG001361249], Ex. 14 [ROG001361251], Ex. 15 [ROG001361254], Ex. 16 [ROG001361257], Ex. 18 [ROG001362637].

- Two of the emails are exact duplicates of the same thread with WDS Demos (not Costco) in January 2014, before any meeting, stating that Jim Rogers would be meeting with Costco in January 2014. Ex. 8 [ROG001261739], Ex. 12 [ROG001360224].

- Five of the documents are emails with Costco from February 2014, where JBR shared the details of TreeHouse's complaint. Ex. 9 [ROG001262177], Ex. 10 [ROG001262193], Ex. 17 [ROG001362039], Ex. 19 [ROG001897682], Ex. 20 [ROG001920702].

**i. A list of any documents Costco or any other party has produced concerning the January 31, 2014 meeting between JBR and Costco; and**

Exhibit I lists several documents Costco produced on June 12, 2020 (pursuant to subpoena) concerning the subject matter of the January 31, 2014 meeting between JBR and Costco.

**Keurig's Response:**  Keurig does not stipulate to Exhibit I because the documents cited are outside the motions record before the Court.  *See* Order, ECF No. 1434 at 1 ("The Stipulation(s) … must contain citations to the relevant exhibit(s) accompanying the Motions.").

Further, Keurig does not stipulate that the documents on Exhibit I concern the January 31, 2014 meeting because none of the three documents reflect JBR's allegations about the meeting.  Only one of the three documents discuss the meeting, and it says that when Ms. Axthelm was asked by another Costco employee what was said during the meeting, Ms. Axthelm replied that she will call the other employee. Ex. 21 [COSTCO_KEURIG_00000640].

**j. The dates and contents of any representations by JBR's counsel concerning (g)–(i).**

The dates and contents of any representations by JBR's counsel concerning (g)–(i) are as follows:

JBR's Amended Complaint filed on November 25, 2014 referenced the meeting at paragraph 271:

> 271. At a meeting between Rogers and Costco on January 31, 2014, Rogers was told that despite having prices lower than all other suppliers' Portion Packs – including Costco's Keurig-made private label – Costco would not be widening distribution for Rogers, or any other Competing Portion Pack supplier, until the Keurig 2.0 compatibility issue was resolved. During this same meeting, Costco informed Rogers that it would be requiring Rogers to implement a design change to its Costco packaging to inform customers that Rogers' products were not compatible with the Keurig 2.0 Brewer. This packaging design will undoubtedly act as a scarlet letter branded on Rogers' products that leaves consumers with the impression that Rogers' product is somehow inferior and deters them from purchasing its products, even if those consumers do not own a 2.0 Brewer.

JBR's First Amended Complaint was filed on December 8, 2014, and referenced the meeting at paragraph 271.

> 271. At a meeting between Rogers and Costco on January 31, 2014, Rogers was told that despite having prices lower than all other suppliers' Portion Packs – including Costco's Keurig-made private label – Costco would not be widening distribution for Rogers, or any other Competing Portion Pack supplier, until the Keurig 2.0 compatibility issue was resolved. During this same meeting, Costco informed Rogers that it would be requiring Rogers to implement a design change to its Costco packaging to inform customers that Rogers' products were not compatible with the Keurig 2.0 Brewer. This packaging design will undoubtedly act as a scarlet letter branded on Rogers' products that leaves consumers with the impression that Rogers' product is somehow inferior and deters them from purchasing its products, even if those consumers do not own a 2.0 Brewer.

Prior to the May and June 2021 spoliation briefing in this matter, there have been no direct representations made by JBR's counsel in discovery with the respect the January 31, 2014 meeting, or the documents produced by JBR or Costco concerning the meeting, as Keurig did not serve targeted discovery or correspond with JBR to inquire about specific communications or documents relating to that meeting.

**Keurig's Response:**  Keurig stipulates that JBR has accurately quoted its allegations in JBR's Amended Complaint and First Amended Complaint.  Keurig does not stipulate that "Keurig did not serve targeted discovery or correspond with JBR to inquire about specific communications or documents relating to that meeting."  For example, Keurig deposed Jim Rogers, who was the only attendee of the meeting from JBR, and asked him about the meeting.  Jim Rogers's testimony on the subject is described in Keurig's motion.  *See, e.g.*, KGM Mot. Ex. BA, ECF No. 1298-53 (Jim Rogers Dep. Tr. (Day 1) 200:9-16).  Neither JBR nor Keurig has identified a single document memorializing the content of Jim Rogers's supposed discussion with Costco, which is JBR's single largest customer.

Dated:  November 19, 2021

COUNSEL FOR DEFENDANT KEURIG GREEN MOUNTAIN, INC.:

**BUCHANAN INGERSOLL & ROONEY PC**

By: /s/Wendelynne J. Newton

    Wendelynne J. Newton
    Mackenzie A. Baird
    One Oxford Centre
    301 Grant Street, 20th Floor
    Pittsburgh, Pennsylvania 15219
    Telephone: (412) 562-8800
    wendelynne.newton@bipc.com
    mackenzie.baird@bipc.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

    Leah Brannon
    Carl Lawrence Malm
    2112 Pennsylvania Avenue, NW
    Washington, DC 20037
    Telephone: (202) 974-1959
    lbrannon@cgsh.com
    lmalm@cgsh.com

    Rahul Mukhi
    One Liberty Plaza
    New York, NY 10006
    Telephone:  (212) 225-2912
    rmukhi@cgsh.com

COUNSEL FOR DIRECT PURCHASER PLAINTIFFS:

**ROBINS KAPLAN LLP**

By: /s/William V. Reiss

    William V. Reiss
    David Rochelson
    399 Park Avenue
    Suite 3600
    New York, NY 10022
    Telephone: (212) 980-7400
    WReiss@robinskaplan.com
    DRochelson@robinskaplan.com

**MOTLEY RICE LLC**

    Michael M. Buchman
    Michelle C. Clerkin
    777 Third Avenue
    27th Floor
    New York, NY 10017
    Telephone: (212) 577-0050
    mbuchman@motleyrice.com
    mclerkin@motleyrice.com

**GRANT & EISENHOFER PA**

    Robert G. Eisler
    Deborah Elman
    485 Lexington Avenue
    29th Floor
    New York, NY 10017
    Telephone: (646) 722-8500
    reisler@gelaw.com
    delman@gelaw.com

COUNSEL FOR MCLANE COMPANY, INC.:

**ALSTON & BIRD LLP**

By: /s/Alexander G. Brown

    Steven L. Penaro
    90 Park Avenue
    15th Floor
    New York, NY 10016
    Telephone: (212) 210-9400
    steve.penaro@alston.com

    Alexander G. Brown
    James C. Grant
    Valarie C. Williams
    B. Parker Miller
    1201 West Peachtree Street
    Atlanta, GA 30309
    Telephone: (404) 881-7000
    alex.brown@alston.com
    jim.grant@alston.com
    valarie.williams@alston.com
    parker.miller@alston.com

COUNSEL FOR JBR, INC.:

**DAN JOHNSON LAW GROUP, LLP**

By: /s/Mario Moore

  Daniel Johnson, Jr.
  Mario Moore
  400 Oyster Point Blvd., Suite 321
  South San Francisco, CA 94080
  Telephone:  (415) 604-4500
  dan@danjohnsonlawgroup.com


COUNSEL FOR TREEHOUSE FOODS, INC., BAY VALLEY FOODS, LLC, AND STURM FOODS, INC.:

**WINSTON & STRAWN LLP**

By: /s/Susannah P. Torpey

  Aldo A. Badini
  Susannah P. Torpey
  200 Park Avenue
  New York, NY 10166-4193
  (212) 294-6700
  abadini@winston.com

  Dan K. Webb
  35 West Wacker Drive
  Chicago, IL 60601-9703
  (312) 558-5600
  dwebb@winston.com

  Diana Hughes Leiden
  333 South Grand Avenue
  Los Angeles, CA 90071-1543
  (213) 615-1700
  dhleiden@winston.com