**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542 |
|  | Master Docket No. 1:14-md-02542 (VSB) (SLC) |
| *This document concerns the TreeHouse, JBR, McLane, and DPP actions.* | <u>**REDACTED PUBLIC VERSION**</u> |
|  | **Oral Argument Requested** |

**KEURIG'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.      Keurig is Entitled to Summary Judgment on Liability on All Claims ............................... 1

      A.      All Antitrust Claims Fail for Lack of Harm to Competition ................................. 1

      B.      All Antitrust Claims Fail for Lack of Monopoly Power ....................................... 9

      C.      Plaintiffs' Antitrust Claims All Fail For Additional Reasons ..............................15

            1.      Product Design Claims Fail For Lack of Coercion ................................16

            2.      Keurig is Entitled to Summary Judgment on Exclusive Dealing..............18

            3.      Keurig Is Entitled to Summary Judgment on Conspiracy Claims ............23

            4.      Keurig is Entitled to Summary Judgment on Tying Claims....................29

            5.      Keurig is Entitled to Summary Judgment on Sham Litigation Claims .....31

            6.      Keurig is Entitled to Summary Judgment on Patent Misuse Claims ........33

            7.      Keurig is Entitled to Summary Judgment on Old Acquisitions Claims ....34

            8.      Keurig is Entitled to Summary Judgment on McLane's Grievances ........34

            9.      Keurig is Entitled to Summary Judgment on False Advertising Claims ...35

            10.      Keurig is Entitled to Summary Judgment on Lanham Act Claims ...........37

II.     Keurig is Entitled to Summary Judgment on All State Law Claims ...............................38

      A.      Competitor Plaintiffs' Tortious Interference Claims Fail....................................38

      B.      Competitor Plaintiffs' State Law Antitrust and False Advertising Claims Fail....39

      C.      DPPs' and McLane's Unjust Enrichment Claims Fail.........................................39

III.    Keurig is Entitled to Summary Judgment on Damages and Relief .................................40

      A.      Plaintiffs' Damages Estimates Are Unreliable ...................................................40

      B.      Competitors Cannot Prove the Amount of "Lost Sales" .....................................42

      C.      Competitor Plaintiffs' Future Damages Are Unduly Speculative........................44

      D.      Competitor Plaintiffs Are Not Entitled to Damages on Business Tort Claims .....45

      E.      TreeHouse's Damages for Costs Incurred Are Inflated ......................................45

      F.      Competitor Plaintiffs Do Not Dispute Binding Law Bars Unjust Enrichment .....45

      G.      Plaintiffs Are Not Entitled to Injunctive or Declaratory Relief ..........................46

IV.    Declarations from Undisclosed Witnesses Should Be Disregarded .................................47

CONCLUSION...............................................................................................................................50

# TABLE OF AUTHORITIES

## Cases

*2238 Victory Corp. v. Fjallraven USA Retail, LLC*,
   No. 19-cv-11733 (PKC), 2021 WL 76334 (S.D.N.Y. Jan. 8, 2021) ....................................24

*AD/SAT, A Div. of Skylight, Inc. v. Assoc. Press*,
   181 F.3d 216 (2d Cir. 1999) .........................................................................15, 25, 27

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) .........................................................................19

*Aktiebolag v. Kremers Urb. Dev. Co.*,
   Nos. 99 Civ. 8928 (BSJ), 99 Civ. 9888 (BSJ), 2001 WL 1807917 (S.D.N.Y.
   2001)..........................................................................................................34

*Allen v. Dairy Farmers of Am., Inc.*,
   748 F. Supp. 2d 323 (D. Vt. 2010) ..................................................................15

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
   592 F.3d 991 (9th Cir. 2010) ..........................................................................17

*Am. Express Travel Related Servs. Co. v. Visa USA*,
   No. 04 CIV.8697(BSJ), 2005 WL 1515399 (S.D.N.Y. June 23, 2005) ...............................18

*Amerinet, Inc. v. Xerox Corp.*,
   972 F.2d 1483 (8th Cir. 1992) .................................................................30, 42

*Anderson News, LLC v. American Media, Inc.*,
   899 F.3d 87 (2d Cir. 2018) ........................................................................2, 8

*Anheuser-Busch, Inc. v. Abrams*,
   520 N.E.2d 535 (N.Y. 1988) .........................................................................39

*Apotex Inc. v. Acorda Therapeautics, Inc.*,
   823 F.3d 51 (2d Cir. 2016) ....................................................................36, 38

*Applera Corp. v. MJ Research Inc.*,
   303 F. Supp. 2d 130 (D. Conn. 2004) .............................................................32

*Avaya Inc., RP v. Telecom Labs, Inc.*,
   838 F.3d 354 (3d Cir. 2016) ..........................................................................31

*B. Braun Med., Inc. v. Abbott Lab'ys*,
   124 F.3d 1419 (Fed. Cir. 1997) .......................................................................33

*B&H Med., LLC v. ABP Admin., Inc.,*
  Case No. 02-73615,  2004 WL 7347089 (E.D. Mich. 2004), *aff'd* 526 F.3d 257
  (6th Cir. 2008) .................................................................................................................4

*Balaklaw v. Lovell,*
  14 F.3d 793 (2d Cir. 1994) .............................................................................................3

*BanxCorp. v. Bankrate, Inc.,*
  847 F. App'x 116 (3d Cir. 2021) ...................................................................................13

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
  603 F.2d 263 (2d Cir. 1979) ...................................................................................17, 46

*Beyer Farms, Inc. v. Elmhurst Dairy, Inc.,*
  142 F. Supp. 2d 296 (E.D.N.Y. 2001), *aff'd* 35 F. App'x 29 (2d Cir. 2002) ........................24

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
  985 F. Supp. 2d 612 (S.D.N.Y. 2013) ...........................................................................3, 6

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
  509 U.S. 209 (1993) ....................................................................................................6, 23

*Burndy Corp. v. Teledyne Indus., Inc.,*
  748 F.2d 767 (2d Cir. 1984) ..........................................................................................46

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
  157 F.3d 1340 (Fed. Cir. 1998) ......................................................................................18

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ........................................33

*Cap. Imaging Assocs., PC v. Mohawk Valley Med. Assocs., Inc.,*
  996 F.2d 537 (2d Cir. 1993) .................................................................................*passim*

*Caruso Mgmt. Co. v. Int'l Council of Shopping Ctrs.*, 403 F. Supp. 3d 191 (2019) ...................21

*CDC Techs., Inc. v. IDEXX Lab'ys, Inc.,*
  7 F. Supp. 2d 119 (D. Conn. 1998), *aff'd*, 186 F.3d 74 (2d Cir. 1999) .........................*passim*

*Chi. Pro. Sports Ltd. P'ship v. NBA,*
  961 F.2d 667 (7th Cir. 1992) ...........................................................................................1

*City of Groton v. Conn. Light & Power Co.,*
  662 F.2d 921 (2d Cir. 1981) ..........................................................................................16

*Clorox Co. v. Sterling Winthrop, Inc.,*
  117 F.3d 50 (2d Cir. 1997) ..............................................................................................1

*CollegeNet, Inc. v. Common Application, Inc.,*
  355 F. Supp. 3d 926 (D. Or. 2018) ..............................................................................9, 11

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ...................................................................10

*Conwood Co., LP v. U.S. Tobacco Co.*,
   290 F.3d 768 (6th Cir. 2002) ....................................................................14

*Dial Corp. v. News Corp.*, 314 F.R.D. 108 (2015)..................................................41

*Dial Corp. v. News Corp.*,
   165 F. Supp. 3d 25 (S.D.N.Y. 2016) .................................................... 40, 41

*Discover Fin. Servs. v. VISA USA Inc.*, 582 F. Supp. 2d 501 (2008)..........................................43

*E&L Consulting, Ltd. v. Doman Indus. Ltd.*,
   472 F.3d 23 (2d Cir. 2006) .......................................................................30

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
   637 F.3d 435 (4th Cir. 2011) ...................................................................15

*Eatoni Ergonomics, Inc. v. Rsch in Motion Corp.*,
   486 F. App'x 186 (2d Cir. 2012) ...............................................................16

*Eatoni Ergonomics, Inc. v. Rsch in Motion Corp*,
   826 F. Supp. 2d 705 (S.D.N.Y. 2011) ........................................................16

*Eisai, Inc. v. Sanofi Aventis US, LLC*,
   821 F.3d 394 (3d Cir. 2016) .....................................................................37

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
   131 F. App'x 450 (5th Cir. 2005) ...............................................................8

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*,
   129 F.3d 240 (2d Cir. 1997) .....................................................................24

*Emigra Grp, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
   612 F. Supp. 2d 330 (S.D.N.Y. 2009) ........................................................10

*Energex Lighting Indus., Inc. v. N. Am. Philips Lighting Corp.*,
   765 F. Supp. 93 (S.D.N.Y. 1991).........................................................11, 22

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
   629 F.3d 1278 (Fed Cir. 2010) .................................................................32

*Ferguson v. Greater Pocatello Chamber of Com.*,
   848 F.2d 976 (9th Cir. 1988) ...................................................................19

*FTC v. AbbVie Inc.*,
   976 F.3d 327 (3d Cir. 2020) .....................................................................31

*FTC v. Staples, Inc.*,
    970 F. Supp. 1066 (D.C. Cir. 1997) .................................................................................9

*Gatt Commc'ns, Inc. v. PMC Assocs., LLC*,
    711 F.3d 68 (2d Cir. 2013) .............................................................................................7

*Gelita, LLC v. 133 Second Ave., LLC*,
    No. 651538/2012, 2014 WL 278408 (N.Y. Sup. Ct. Jan. 22, 2014) ......................................38

*Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*,
    386 F.3d 485 (2d Cir. 2004) ..............................................................................13, 14, 22

*Grossman v. Simply Nourish Pet Food Co.*,
    516 F. Supp. 3d 261 (E.D.N.Y. 2021) ..............................................................................40

*Grund v. Del. Charter Guarantee & Trust Co.*,
    788 F. Supp. 2d 226 (S.D.N.Y. 2011) ..............................................................................40

*Hack v. President & Fellows of Yale Coll.*,
    237 F.3d 81 (2d Cir. 2000) .........................................................................................12, 30

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
    423 F.3d 374 (3d Cir. 2005) ...........................................................................................12

*IMAF v. J.C. Penney Co.*,
    No. 86 CV 9080 (KMW), 1991 WL 66892 (S.D.N.Y. Apr. 24, 1991) ..................................39

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) .....................................................................................9, 11

*In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51 (2d Cir. 2012) ...................................................42

*Ind. Grocery Co. v. Super Valu Stores, Inc.*,
    684 F. Supp. 561 (S.D. Ind. 1988), *aff'd*, 864 F.2d 1409 (7th Cir. 1989).............................13

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
    Civil Action No. 15-108-RGA, 2016 WL 264909 (D. Del. Jan. 21, 2016) ..........................20

*It's My Party, Inc. v. Live Nation, Inc.*,
    811 F.3d 676 (4th Cir. 2016) ......................................................................................21, 30

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
    618 F. App'x 31 (2d Cir. 2015).....................................................................................6, 50

*Jefferson Par. Hosp. Dist. v. Hyde*, 466 U.S. 2 (1984)....................................................22, 23

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
    61 F.3d 123 (2d Cir. 1995) .....................................................................................2, 3, 18

*Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vt., Inc.*,
  845 F.2d 404 (2d. Cir. 1988) ............................................... 11

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  383 F. Supp. 3d 187 (S.D.N.Y. 2019) ................................ 18

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  Nos. 14-CV-4242, 14-MD-2542 (VSB), 14-MC-2542 (VSB), 2014 WL
  12778832 (S.D.N.Y. Sept. 19, 2014) ................................ 50

*Keurig, Inc. v. Sturm Foods, Inc.*,
  Civ. No. 10-841-SLR, 2012 WL 4049799 (D. Del. Sept. 13, 2012) .................... 31

*Kolon Indus., Inc. v. E.I. du Pont de Nemours & Co.*,
  Civil Action No. 3:11CV622, 2012 WL 1155218 (E.D. Va. Apr. 5, 2012) .................... 20

*Kramer v. Pollock-Krasner*,
  890 F. Supp. 250 (S.D.N.Y. 1995) ................................ 40

*Kronos, Inc. v. AVX Corp.*,
  612 N.E.2d 289 (N.Y. App. 1993) ................................ 45

*L.A. Land Co. v. Brunswick Corp.*,
  6 F.3d 1422 (9th Cir. 1993) ................................ 11

*Laumann v. Nat'l Hockey League*,
  907 F. Supp. 2d 465 (S.D.N.Y. 2012) ........................ 26, 29

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
  762 F.3d 1114 (10th Cir. 2014) ................................ 15

*LePage's Inc. v. 3M (Minn. Mining & Mfg. Co.)*,
  324 F.3d 141 (3d Cir. 2003) ................................ 44, 45

*Linzer Prods. Corp. v. Sekar*,
  499 F. Supp. 2d 540 (S.D.N.Y. 2007) ............................ 7

*Mahmud v. Kaufmann*,
  607 F. Supp. 2d 541 (S.D.N.Y. 2009) ............................ 6

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008) ................................ 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................*passim*

*Maxon Hyundai Mazda v. Carfax, Inc.*,
  726 F. App'x 66 (2d Cir. 2018) ................................ 3

*Maxon Hyundai Mazda v. Carfax, Inc.*,
  No. 13-cv-2680 (AJN), 2014 WL 4988268 (S.D.N.Y. Sept. 29, 2014) ................................19

*Mayor & City Council of Balt., MD v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013) ...........................................................................................26

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,
  937 F.3d 1056 (7th Cir. 2019) ........................................................................................39

*McWane, Inc. v. FTC*,
  783 F.3d 814 (11th Cir. 2015) ...................................................................................11, 18

*Merck Eprova AG v. Gnosis SPA*,
  760 F.3d 247 (2d Cir. 2014) ......................................................................................38, 46

*Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*,
  208 F.3d 655 (8th Cir. 2000) ..........................................................................................25

*Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*,
  358 F. App'x 643 (6th Cir. 2009) ....................................................................................44

*Murphy Tugboat Co. v. Crowley*,
  658 F.2d 1256 (9th Cir. 1981) ........................................................................................41

*Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd.*,
  838 F.3d 421 (3d Cir. 2016) ...........................................................................................17

*Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Lab'ys*,
  850 F.2d 904 (2d Cir. 1988) ...........................................................................................35

*Nathan v. Ohio State Univ.*,
  Civil Action 2:10-cv-872, 2012 WL 12985801 (S.D. Ohio Apr. 17, 2012) ........................48

*Negri v. Friedman*,
  1:14-cv-10233-GHW, 2017 WL 2389697 (S.D.N.Y. May 31, 2017)..................................40

*New York v. Actavis PLC*,
  787 F.3d 638 (2d. Cir. 2015) .............................................................................16, 17, 18

*Nobel Sci. Indus., Inc. v. Beckman Instruments, Inc.*,
  670 F. Supp. 1313 (D. Md. 1986), *aff'd*, 831 F.2d 537 (4th Cir. 1987) ..............................30

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)........................................................................................................32

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) .....................................................................................................2

*Omega Env't, Inc. v. Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997) ................................................................. 19, 20

*PepsiCo. Inc. v. Coca-Cola Co.*,
  315 F.3d 101 (2d Cir. 2002) ....................................................... 13, 21, 27, 28

*PepsiCo. Inc. v. Coca-Cola Co.*,
  No. 98 CIV. 3282(LAP), 1998 WL 547088 (S.D.N.Y. Aug. 27, 1998) ......................... 20, 21

*PepsiCo, Inc. v. Coca-Cola Co.*,
  114 F. Supp. 2d 243 (S.D.N.Y. 2000) ............................................................ 21

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
  11-CV-00726 (CBA) (RLM), 2014 WL 12769275 (E.D.N.Y. Sept. 17, 2014) .................... 44

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92 (2d Cir. 2000) ...................... 32, 33

*Procaps SA v. Patheon, Inc.*,
  845 F.3d 1072 (11th Cir. 2016) ................................................................. 4

*Reazin v. Blue Cross & Blue Shield of Kan., Inc.*,
  899 F.2d 951 (10th Cir. 1990) ............................................................... 9, 12

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) .................................................................. 14

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
  49 F. Supp. 3d 385 (S.D.N.Y. 2014) ........................................................ 36, 37

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
  638 F. App'x 43 (2d Cir. 2016) ................................................................ 36

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*,
  335 F.R.D. 1 (E.D.N.Y. 2020) .................................................................. 42

*River Light V, LP v. Lin & J Int'l, Inc.*,
  No. 13cv3669 (DLC), 2015 WL 3916271 (S.D.N.Y. June 25, 2015) ............................ 46

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
  992 F. Supp. 2d 213 (S.D.N.Y. 2013) .......................................................... 38

*Rosenman v. Facebook Inc.*,
  Case No. 21-CV-02108-LHK, 2021 WL 3829549 (N.D. Cal. 2021) ........................... 39

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*,
  28 F.3d 1379 (5th Cir. 1994) .................................................................. 30

*Savory Pie Guy, LLC v. Comtec Indus., Ltd.*,
  No. 14 CV 7527 (VB), 2016 WL 7471340 (S.D.N.Y. Dec. 28, 2016) ......................... 11

*SEC v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013) .................................................................37

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
    363 F.3d 1361 (Fed. Cir. 2004) .......................................................................32

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*,
    No. 97 Civ.5499(LAP), 2004 WL 691680 (S.D.N.Y. 2004)...........................6

*Sosa v. DirecTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ...............................................33

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)............................................................................................3

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ...................................................................1

*Starr v. Sony BMG Music Ent.*,
    592 F.3d 314 (2d Cir. 2010) ............................................................................26

*Sterling Merch., Inc. v. Nestle, SA*,
    656 F.3d 112 (1st Cir. 2011)...........................................................2, 4, 6, 20

*Sterling Merch., Inc. v. Nestle, SA*,
    724 F. Supp. 2d 245 (D.P.R. 2010) .................................................................20

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) .........................................................23, 31, 32, 49

*Suture Express, Inc. v. Owens & Minor Distrib., Inc.*,
    851 F.3d 1029 (10th Cir. 2017) ...........................................................2, 7, 10

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1967)..........................................................................................18

*Tenneco, Inc. v. FTC*, 689 F.2d 346 (2d Cir. 1982) .................................................21

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .......................................................................33

*Tops Markets, Inc. v. Quality Markets, Inc.*,
    142 F.3d 90 (2d Cir. 1998) ..........................................................................1, 10

*Toys 'R' Us, Inc. v. FTC*,
    221 F.3d 928 (7th Cir. 2000) ...........................................................................27

*Trendsettah USA, Inc. v. Swisher Int'l Inc.*,
    SACV14-01664 JVS (DFMx), 2016 WL 6822191 (C.D. Cal. Jan. 21, 2016)......................12

*Trucking Unlimited v. Cal. Motor Transp. Co.*,
    432 F.2d 755 (9th Cir. 1970) ................................................................33

*Turbon Int'l, Inc. v. Hewlett-Packard Co.*,
    769 F. Supp. 2d 262 (S.D.N.Y. 2001) ................................................36

*U.S. Football League v. Nat'l Football League*,
    842 F.2d 1335 (2d Cir. 1988) ....................................................... 40, 42

*U.S. Healthcare, Inc. v. Healthsource, Inc.*,
    986 F.2d 589 (1st Cir. 1993) ..............................................................24

*United States v. Am. Express Co.*, 838 F.3d 179 (2d Cir. 2016) ..................................2

*United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980) ....................................21

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015) ...............................................................27

*United States v. Dentsply Int'l, Inc.*,
    399 F.3d 181 (3d Cir. 2005) ...............................................................10

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956) ...........................................................................13

*United States v. Eastman Kodak Co.*,
    63 F.3d 95 (2d Cir. 1995) ...................................................................13

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ....................................................*passim*

*United States v. Syufy Enters.*,
    903 F.2d 659 (9th Cir. 1990) ..............................................................10

*United States v. Waste Mgmt., Inc.*,
    743 F.2d 976 (2d Cir. 1984) ...............................................................12

*Vargas v. Pfizer, Inc.*,
    352 F. App'x 458 (2d Cir. 2009) ........................................................22

*Vernon v. S. Cal. Edison Co.*,
    955 F.2d 1361 (9th Cir. 1992) ............................................................40

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ...............................................................15

*W. Parcel Express v. UPS*,
    190 F.3d 974 (9th Cir. 1999) ..............................................................15

*Will v. Comprehensive Acct. Corp.*,
  776 F.2d 665 (7th Cir. 1985) ............................................................12

*Winter Hill Frozen Foods & Servs., Inc. v. Haagen-Dazs Co.*,
  691 F. Supp. 539 (D. Mass. 1988) ......................................................4

*Xerox Corp. v. Media Scis., Inc.*,
  660 F.Supp. 2d 535 (S.D.N.Y. 2009) ....................................... 4, 13, 17

*Yankees Ent. & Sports Network, LLC v. Cablevision Sys. Corp.*,
  224 F. Supp. 2d 657 (S.D.N.Y. 2002) ...................................... 11, 14

*Yentsch v. Texaco, Inc.*,
  630 F.2d 46 (2d Cir. 1980) ..............................................................29

*Yowell v. Granite Operating Co.*,
  630 S.W.3d 566 (Tex. App. 2021) ....................................................39

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) ......................................................................44

## Federal Statutes

Fed. R. Civ. P. 11 ...........................................................................32

Fed. R. Civ. P. 26 ....................................................................42, 48

Fed. R. Civ. P. 37 ...........................................................................47

Fed. R. Evid. 701 ...........................................................................42

## PRELIMINARY STATEMENT

In 2014, Plaintiffs alleged that Keurig was monopolizing a market for portion packs compatible with Keurig brewers. Plaintiffs said that Keurig was excluding competitors, allowing it to reduce output and raise price. Plaintiffs tried for years to prove these claims and failed.

Following discovery and the passage of time, this case boils down to three simple, undisputed facts: (1) a dozen competitors entered the alleged market, (2) ███████████ ██████████████. Plaintiffs' Response to Keurig's Rule 56.1 Statement, ECF No. 1624, ¶¶ 9, 73-75, 79. Any one of these facts would compel summary judgment for Keurig, but together they make the path clear. The Court should grant Keurig's motion for summary judgment.

## ARGUMENT

Plaintiffs agree that summary judgment is "vital" in antitrust cases to shorten litigation and "avoid[] wasteful trials … that may have a chilling effect on pro-competitive market forces." Plaintiffs' Motion for Summary Judgment, ECF No. 1495 at 2 (quoting *Tops Markets v. Quality Markets*, 142 F.3d 90, 95 (2d Cir. 1998)).

## I.   Keurig is Entitled to Summary Judgment on Liability on All Claims

### A.   All Antitrust Claims Fail for Lack of Harm to Competition

"[T]he antitrust laws protect competition, not competitors." *Clorox v. Sterling*, 117 F.3d 50, 57 (2d Cir. 1997). An antitrust plaintiff must show that the defendant's actions "significantly harm competition as a whole," *id.*, through a reduction in output or an increase in market-wide prices. *Spinelli v. NFL*, 96 F. Supp. 3d 81, 108-09 (S.D.N.Y. 2015); *Chi. Prof'l Sports v. NBA*, 961 F.2d 667, 670 (7th Cir.1992) ("Only a reduction in output allows producers to raise price.").

Plaintiffs come nowhere close to meeting their burden. From 2012 when Keurig's short-filter patent expired through 2019, portion pack prices ████████████████████. ¶¶

8, 73, 79.[1] Keurig cited extensive precedent showing that these undisputed facts entitle it to summary judgment. Mot. at 14-23 (citing, e.g., *K.M.B. Warehouse v. Walker Mfg.*, 61 F.3d 123, 128 (2d Cir. 1995); *Anderson News v. Am. Media*, 899 F.3d 87, 114-16 (2d Cir. 2018)). Plaintiffs do not seriously engage with that law. Opp. at 32 n.135.

Instead, Plaintiffs argue that competition was harmed because, even though ███ ██████████████████, things could have been even better. Opp. at 31-33. Plaintiffs identify *no case* denying summary judgment on such a theory where prices decreased or output expanded. In fact, courts reject this argument. *See, e.g.*, *Suture Express v. Owens,* 851 F.3d 1029, 1044-46 (10th Cir. 2017) (summary judgment despite claim that but-for prices would be lower, because actual price decrease "reveals a [] market that is becoming more, not less, competitive"); *Sterling Merch. v. Nestle*, 656 F.3d 112, 119-120, 122 (1st Cir. 2011) (summary judgment where output increased and prices declined, despite claim that but-for prices would be lower). In *Ohio v. American Express*, the Supreme Court described an output increase of one-third as "dramatic[]" growth disproving "competitive injury." 138 S. Ct. 2274, 2287-88 (2018). Here, in roughly the same number of years, █████████. *American Express* affirmed the Second Circuit, which also found that there was no harm to competition because "industry-wide transaction volume has substantially *increased*" and "[t]his evidence of increased output is … indicative of a thriving market" with "*increased* rather than *decreased* competition." *U.S. v. American Express*, 838 F.3d 179, 205-06 (2d Cir. 2016). Plaintiffs' speculation that things could have been better fails as a matter of law. It also fails as contrary to the undisputed facts and Plaintiffs' concessions.

---

[1] Unless noted, paragraph citations ¶¶ 1-500 are to Keurig's 56.1 Statement (ECF No. 1624), and ¶¶ 908-2008 are to Keurig's Response to Plaintiffs' Additional Statements, filed with this brief.

    <u>Plaintiffs cannot show market-wide prices would be lower in the but-for world</u>.  Portion

pack prices ████████████ from 2012 to 2019.  ¶ 73 ("Undisputed").  Plaintiffs say private

label packs and "unlicensed" packs not manufactured by Keurig were priced competitively.

Opp. at 32 (arguing only that "Keurig's *branded* pricing" would decrease in the but-for world)

(emphasis by Plaintiffs); ¶¶ 461-62; Opp. at 102 (TreeHouse "charges competitive prices.");

ECF No. 1459 Ex. 2, Macartney (Day 1) Tr. 45:21-46:5 (same for JBR).  According to Plaintiffs,

in 2019 ████████████████████████████████████

████████████, were competitively priced.  ¶ 74; C-13, Murphy Rpt. Ex. 9.  But Plaintiffs

defined a *single market* that covers branded and private label packs, which by definition means if

the price of one rises above competitive levels, customers switch to the other.  Opp. at 32; ¶ 487.

Plaintiffs never explain how Keurig branded prices could be inflated when customers could

switch to the ███████ at competitive prices.  *Spectrum Sports v. McQuillan*, 506 U.S. 447,

456-57 (1993) (violation must be shown "in th[e] market" as a whole); *K.M.B. Warehouse*, 61

F.3d at 126, 128 (summary judgment where plaintiff failed to show "market-wide" harm); *Cap.

Imaging. v. Mohawk*, 996 F.2d 537, 543, 547 (2d Cir. 1993) (same); *Balaklaw v. Lovell*, 14 F.3d

793, 801-02 n.17 (2d Cir. 1994); *Maxon v. Carfax*, 726 F. App'x 66, 69 (2d Cir. 2018) (summary

judgment where prices increased only on some sales, not market-wide); *Bookhouse v. Amazon*,

985 F. Supp. 2d 612, 620-21 (S.D.N.Y. 2013) (rejecting claim of harm to prices of e-books

readable on Kindle but "no harm whatsoever" to other e-books because this was not harm to

"competition 'market-wide'").

    Plaintiffs say ████████████.  Opp. at 31-32.  But Plaintiffs cite no case

denying summary judgment based on an isolated price increase despite a market-wide price

decrease over a period of many years while the defendant was supposedly monopolizing the

market. *Xerox v. Media Scis.*, 660 F. Supp. 2d 535, 549-50 (S.D.N.Y. 2009) (summary judgment despite defendant's three price increases because that does not show supracompetitive pricing); *B&H Med. v. ABP*, 2004 WL 7347089, at *15, 19 (E.D. Mich. 2004), *aff'd*, 526 F.3d 257 (6th Cir. 2008) (summary judgment despite price increase, which "does not suffice to raise an issue of fact as to the purportedly anticompetitive effects"); *Winter Hill v. Haagen-Dazs*, 691 F. Supp. 539, 548 (D. Mass. 1988) ("isolated examples of price increases" are not anticompetitive effects). Plaintiffs accompany their ███████████████████████████████ ███████████████████████████████████████████. Opp. at 32. Plaintiffs' graph reflects ██████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████ while Keurig was allegedly monopolizing. ¶ 73.[2]

        Plaintiffs cannot show that output of packs would have ████████████ in the but-for world. At summary judgment, courts reject speculation about reduced output. *MLB Props. v. Salvino*, 542 F.3d 290, 309, 327 (2d Cir. 2008); *Procaps v. Patheon*, 845 F.3d 1072, 1084-87 (11th Cir. 2016) (rejecting claim that conduct reduced quantity where plaintiff "presented no evidence of an actual reduction in output"); *Sterling Merch.*, 656 F.3d at 119-20 (similar). Yet speculation is all Plaintiffs offer. *First*, Plaintiffs cite inadmissible testimony from employees of two small office distributors—both lacking foundation, one not timely disclosed—that they *might* have sold more portion packs if they were not Keurig Authorized Distributors. Opp. at 32-33 (saying nothing about who sales would be won from, or whether market-wide output would

---

[2] Plaintiffs also omit that ████████████████████████. D-56.1 Resp. ¶ 437. Plaintiffs question analyzing prices from 2012 on, but three of four plaintiffs seek damages from 2012 on, and Plaintiffs say 2012 is when the entry floodgates opened. "After Keurig's short-filter patent expired in late 2012, TreeHouse, Rogers, and other competitors entered the Compatible Cup market with filtered product." ¶ 8.

change); Keurig's Response to Plaintiffs' Rule 56.1 Statement, ECF No. 1569 ("D-56.1 Resp.") ¶¶ 495, 939.  *Second*, Plaintiffs suggest Keurig restricted sales of one type of *brewer* (Keurig-compatible brewers not made by Keurig) by one type of customer (Keurig Authorized Distributors).  Opp. at 18, 32.  But distributors could and did sell competing brewers.  ¶ 41 (undisputed that distributors sold other brewers, including non-Keurig single serve brewers); Pls.' 56.1 Ex. 207 (attaching contracts).  This does not show an anticompetitive reduction in output in the alleged single serve brewer market.  *Third*, Plaintiffs cite testimony from TreeHouse's damages expert, Dr. Stiroh, who *assumed* output was lower in calculating purported damages.  Opp. at 33 (citing ECF No. 1463 Ex. 4, Stiroh Rpt. ¶ 116).  An assumption is not evidence.  *Fourth*, Plaintiffs say Keurig's agreements with partner brands "constrained capacity" by specifying varieties of K-Cups to be manufactured.  Opp. at 35.  But specifying what products will be produced—a standard term in manufacturing contracts—does not limit the quantity sold. D-56.1 Resp. ¶¶ 913-21, 924-25; Keurig Opp. at 10-13.  *Fifth*, they say Keurig "limited the number of cups it would produce," citing a declaration of an undisclosed TreeHouse employee (served on the eve of their Opposition) claiming that ██████████████████████████ ███████████████  Opp. at 35.  That says nothing about market-wide output.

Plaintiffs cannot show decreased choice.  Plaintiffs do not dispute that a dozen competitors entered the alleged market.  ¶ 9.  Plaintiffs nevertheless argue that Keurig "decreased choice" of packs.  Opp. at 33-35.  But the undisputed facts show that this is false: options have expanded significantly.  ¶ 5 (variety expanded); ¶ 79 (output ████); ¶¶ 74, 273 (entrants' sales ██████████ ¶ 274 (competitors' sales grew quickly after entry); ECF No. 1467 Ex. 3, Sibley (Day 1) Tr. 225:21-226:7 (discussing TreeHouse expert Rao's data showing growth in variety from █████████████████████████████████████████); Keurig Opp.

at 10-13.  Plaintiffs cite no case denying summary judgment on a theory that options might have increased more in a but-for world, and this theory fails.  *Sterling Merch.*, 656 F.3d at 119-20, 122 (rejecting argument "purchasers would have been offered more choices" in but-for world).

Plaintiffs cannot show harm to competition in the market from a handful of "lost sales."
Plaintiffs say TreeHouse lost sales at ███████████████████████████████████████
███.  Opp. at 34-35.  But TreeHouse does not show output at these four customers decreased, it just says *TreeHouse* did not make the sale, which is not harm to overall competition.  *Brooke Grp. v. Brown & Williamson*, 509 U.S. 209, 224-25 (1993) ("It is axiomatic that the antitrust laws were passed for the protection of *competition*, not *competitors*" and whether competitors' sales were higher or lower is "of no moment to the antitrust laws if competition is not injured"); *compare* Opp. at 34-35 (████████████████████████████████████████), *with* ¶ 1656 (████████████████████████████████████████).  The law does not require that a particular competitor's product be available everywhere.  *Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 558 (S.D.N.Y. 2009) (summary judgment where patients were free to buy from plaintiff, even if that required travel); *Six West v. Sony*, 2004 WL 691680, at *9-10, 20 (S.D.N.Y. 2004) (summary judgment where 60% increase in movie screens showed competition "is not dwindling but is actually quite robust" even if consumers needed to travel to see a particular movie); *Bookhouse*, 985 F. Supp. 2d at 620-21 ("[C]onsumers' inability to buy the same product from a different seller … does no cognizable harm to competition as a whole.").

Plaintiffs cannot show a cost increase that harmed competition.  Plaintiffs say Keurig "raised rivals' costs" for unlicensed pack suppliers, Opp. at 36, but at summary judgment a party cannot just make assertions.  Plaintiffs do not claim *JBR* experienced increased costs.  And there are a dozen other unlicensed competitors, and Plaintiffs offer no evidence ████████████████

██████.  Mot. at 53.  Plaintiffs cite a conclusory assertion by a TreeHouse expert that █████████

████████████████████████████████████████████████████.  ¶ 492 (citing ECF No. 1467

Ex. 8, Sibley Reply Rpt. ¶ 208).  But Plaintiffs admit their experts "did not express an opinion"

as to whether Keurig's conduct raised the costs of other competitors.  ¶ 489.  TreeHouse alone

says its costs were possibly ████████████████████████ than Keurig's, ¶ 261, but also

says its *prices* were competitive and *would not decrease in the but-for world*, Opp. at 102, ██████

████████████████████████████████████████████.  This is not harm to

competition.  *Linzer v. Sekar*, 499 F. Supp. 2d 540, 555 (S.D.N.Y. 2007) (higher costs for some

competitors but not others shows "no harm to competition").

**TreeHouse and JBR lack antitrust injury.**  Competitor Plaintiffs cannot meet the

antitrust injury requirement, which "ensures that the harm claimed by the plaintiff corresponds to

the rationale for finding a violation of the antitrust laws in the first place." *Gatt Commc'ns v.*

*PMC*, 711 F.3d 68, 75-80 (2d Cir. 2013).  They say they survived a motion to dismiss, so they

should survive summary judgment.  Opp. at 37.  That ignores the different legal standards and

extensive case law granting summary judgment for defendants when plaintiffs that alleged

antitrust injury failed to support it at summary judgment.  *See, e.g.*, *Cap. Imaging*, 996 F.2d at

541, 546-47 (granting summary judgment on antitrust injury after having denied motion to

dismiss because plaintiff did not show harm to market-wide price, quality, or output, making

clear its "position is simply that it has been harmed as an individual competitor"); *Suture*

*Express*, 851 F.3d at 1037, 1045 (similar).

TreeHouse lacks antitrust injury because it says its "lost sales" would occur at the same

price in the but-for world.  Opp. at 32; Mot. at 17-21 (citing cases, which TreeHouse does not try

to distinguish, finding no antitrust injury when plaintiff claims lost sales but admits prices would

be the same).  TreeHouse's sales were "overwhelmingly" private label.  Opp. at 52; ¶¶ 108-09.

TreeHouse says *it* would have had more private label sales and Keurig fewer in the but-for

world.  But Plaintiffs concede that private label prices are competitive,  so customers would pay

the same price either way, and that is not harm to competition.  *Cap. Imaging*, 996 F.2d at 546-

47.  In a footnote, TreeHouse says it did not just lose private label sales, it also lost opportunities

to co-pack (co-manufacture) for non-private label brands.  Opp. at 38 n.164.  But TreeHouse also

says ███████████████████████████████████████████.  ECF No. 1463 Ex. 2,

Stiroh Reply Rpt. at 20 n.56.  TreeHouse's real complaint is that competition  forced it to ████

███████████████████.  Opp. at 25.  TreeHouse cannot show antitrust injury.

JBR cannot show antitrust injury because it cannot show that its claimed lost sales flow

from conduct by Keurig, as opposed to its own choices.  Mot. at 21-22 (citing cases, which JBR

does not attempt to distinguish).  JBR does not dispute that it lost business for many reasons not

attributable to Keurig, including  pricing  too high, ¶ 151, choosing  not to sell in Walmart's 5,000

retail stores until 2018, ¶ 153, choosing  not to co-pack for other coffee brands with one

exception, ¶ 29, refusing to bid for ████████████████████████████████████

██████████████████████████████, ¶¶ 152, 159, and ██████████████████████

██████, ¶¶ 145, 155.  *See El Aguila Food v. Gruma Corp.*, 131 F. App'x 450, 454-55 (5th Cir.

2005) (judgment for defendant given plaintiff's  "refusal even to seek shelf space in some retail

outlets").  This is fatal to JBR's claim.  *Anderson News*, 899 F.3d at 114-16 (plaintiffs  lacked

antitrust standing in light of losses unrelated to the challenged  conduct).

TreeHouse and JBR do not have antitrust injury as to sham litigation.  Plaintiffs  argue

that, if nothing else, they have standing as to sham litigation.  Opp. at 40-41.  The sham litigation

claims fail as a matter of law, as discussed below.  But TreeHouse and JBR also lack standing:

Discovery showed that ████████████████████████████████████████████████, thus did not harm competition.  Mot. at 72-73.  Rather than respond to the cases Keurig cited, Mot. at 72-73 (*Viacom*, *Huawei*, and *AstraZeneca*), Plaintiffs say Keurig cited none.  Opp. at 40 n.170. Plaintiffs also vaguely assert the litigation "clouded" their ability to sell, but provide no support. Opp. at 40-41 (relying on declarations by undisclosed witnesses and documents that either do not show TreeHouse or JBR lost business due to the lawsuits or are inadmissible hearsay).

### B.    All Antitrust Claims Fail for Lack of Monopoly Power

Plaintiffs' claims also fail because the undisputed facts preclude a finding of monopoly power.  Plaintiffs admit "a monopolist could not profitably raise prices or exclude competitors" without "barriers to entry."  Opp. at 14; *see also* Mot. at 23-26 (citing cases).  Yet Plaintiffs ask the Court to disregard the lack of barriers and focus on Keurig's share.  Opp. at 12.  Plaintiffs are wrong about Keurig's share, improperly counting partners' sales as "Keurig's" to inflate its share.  Mot. at 24-25.[3]  But, even setting that flaw aside, Plaintiffs' focus on "share" ignores the need for barriers that Plaintiffs and their cases acknowledge.  Opp. at 26 nn.113-14 (citing *CollegeNet v. Common App.*, 355 F. Supp. 3d 926, 959 (D. Or. 2018) ("mere showing" of high share insufficient without proof that rivals are "barred from entering"); *Image Tech. v. Kodak*, 125 F.3d 1195, 1208 (9th Cir. 1997) ("Even a 100% monopolist may not exploit its monopoly power in a market without entry barriers"); *FTC v. Staples*, 970 F. Supp. 1066, 1086 (D.C. Cir. 1997) (similar); *Reazin v. Blue Cross*, 899 F.2d 951, 968 (10th Cir. 1990) (similar)).

<u>Plaintiffs cannot show significant barriers to entry</u>.  It is undisputed that more than a dozen competitors entered single serve brewers and Keurig-compatible packs during the relevant

---

[3] Plaintiffs now admit their share calculations are invalid.  ¶ 444 (JBR does not count its co-pack partner's sales as JBR's share); Opp. at 64 ("Starbucks is not a distributor of *Keurig's* K-Cups" and its sales are not Keurig's); Macartney *Daubert* Opp., ECF No. 1531 at 4 n.9 (partner brand sales are *not* "Keurig's sales").

period.  ¶¶ 8-9, 64-66, 74, 273-274.  This precludes a finding of barriers.  *Tops Mkts.*, 142 F.3d at

99 (entry of one competitor showed lack of barriers); *U.S. v. Syufy*, 903 F.2d 659, 665-66 (entry

of competitor was "conclusive" proof of no barriers); *Concord Boat v. Brunswick*, 207 F.3d

1039, 1059 (8th Cir. 2000) (no significant barriers where one competitor "entered the market

recently").  In fact, there was so much entry in the real world that *even Plaintiffs* do not claim

there would be more in the but-for world.  Stiroh *Daubert* Opp., ECF No. 1538 at 19-21 (in but-

for world additional firms "are unlikely to enter"); ECF No. 1463 Ex. 2, Stiroh Reply Rpt. ¶¶

179-82 (█████████████████████████████████████████████████████████

███████████).  Plaintiffs' admission that there would not be more competitors in the but-for

world is fatal because it means *Keurig's conduct did not exclude competitors*.  Plaintiffs fail to

"rais[e] a genuine issue of fact as to the exclusion of competition … because [competitors]

ha[ve] not been excluded."  *Emigra Grp v. Fragomen*, 612 F. Supp. 2d 330, 362 (S.D.N.Y.

2009); *Suture Express*, 851 F.3d at 1041 (no barriers where competitors grew).

Plaintiffs try to distract attention from the lack of barriers by saying Keurig excluded

competitors from the "most efficient channel" for AFH sales and unidentified "major AH retail

sales channels."  Opp. at 16.  Alleging exclusion from particular channels is *not* an alternative to

proving a relevant market protected by significant barriers to entry.  Plaintiffs cite two cases not

to the contrary.  In *U.S. v. Dentsply*, the court found a market for sales of artificial teeth protected

by significant barriers to entry, 399 F.3d 181, 194, 196 (3d Cir. 2005) (noting "the stagnant, no

growth context of the artificial tooth field").  In *U.S. v. Microsoft*, the court found a market for

operating systems protected by barriers to entry.  253 F.3d 34, 51 (D.C. Cir. 2001).  *Microsoft*

recognized market share can be "misleading," and focused on significant "structural barrier[s]"

to entry in finding monopoly power.  *Id*. at 54-56; *id*. at 82 ("[A] firm cannot possess monopoly

power in a market unless that market is also protected by significant barriers to entry").

Plaintiffs make a few perfunctory claims of barriers, Opp. at 25-27, but courts reject the pretense that there are significant entry barriers where, as here, there has been significant entry. ¶¶ 9, 74, 273-274 (undisputed that a dozen firms entered and quickly expanded); *CDC Techs. v. IDEXX Lab'ys*, 7 F. Supp. 2d 119, 129 (D. Conn. 1998), *aff'd*, 186 F.3d 74 (2d Cir. 1999) (rejecting claim that exclusive agreements are a substantial barrier given that at least one competitor entered); *Savory Pie Guy v. Comtec Indus.*, 2016 WL 7471340, at *8-9 (S.D.N.Y. Dec. 28, 2016) (similar). Nor do courts find that capital costs are significant entry barriers where there is actual entry. *Energex v. N.A. Philips*, 765 F. Supp. 93, 97, 103 (S.D.N.Y. 1991) (expense of production machinery not a significant barrier where competitors had entered); *L.A. Land v. Brunswick*, 6 F.3d 1422, 1428 (9th Cir. 1993) (capital costs facing incumbents and entrants are not barriers). Plaintiffs say "network effects" are a recognized entry barrier, Opp. at 26, but cite nothing to support a finding that network effects are a barrier here. Mot. at 27 n.23; ¶ 483. "Simply invoking the phrase 'network effects' without pointing to more evidence does not suffice to carry plaintiffs' burden" to show barriers to entry." *Microsoft*, 253 F.3d at 83.

In summary, Plaintiffs' claim that substantial actual entry "does not preclude a finding of significant barriers," Opp. at 26 & n.113, is wrong. The cases Plaintiffs cite do not support a finding of significant barriers where more than a dozen competitors entered. *McWane v. FTC*, 783 F.3d 814, 830-32 (11th Cir. 2015) (one entrant); *Kelco v. Browning-Ferris*, 845 F.2d 404, 408-409 (2d Cir. 1988) (two entrants over 11 years); *Image Tech. Servs.*, 125 F.3d at 1208 (no discussion of actual entrants); *CollegeNet*, 355 F. Supp. 3d at 959 (denying motion to dismiss notwithstanding one entrant); *Yankees v. Cablevision*, 224 F. Supp. 2d 657, 673 (S.D.N.Y. 2002) (one entrant). In the only cases Plaintiffs cite with more than a couple of entrants, courts found

11

government regulations created barriers, and that is not relevant here. *Reazin*, 899 F.2d at 970-72 (Blue Cross was "chartered under special enabling legislation" and was "the only Medicare intermediary"); *Trendsettah v. Swisher*, 2016 WL 6822191, at *7 (C.D. Cal. Jan. 21, 2016) (evidence of "significant barriers to entry" in tobacco industry, including licensing). Plaintiffs say Keurig's cases are "not on point," Opp. at 14 n.53, but ignore the holdings, which match commonsense, that where there is substantial actual entry, there *are not significant barriers*.[4]

This same entry is fatal not just to Plaintiffs' claims of monopoly power under Section 2 of the Sherman Act, but to their claims of market power under Section 1 of the Sherman Act and Section 3 of the Clayton Act as well. Plaintiffs say Keurig has not moved for summary judgment on market power, Opp. at 11, but that is wrong. *See* Mot. at 33-34 ("Because there is no genuine dispute of fact as to entry barriers … Plaintiffs cannot show substantial market power."). Claims requiring market power fail without barriers to entry. *See, e.g.*, *U.S. v. Waste Mgmt.*, 743 F.2d 976, 983-84 (2d Cir. 1984) ("Ease of entry constrains" market power.); *Will v. Comprehensive*, 776 F.2d 665, 672 (7th Cir. 1985) ("[W]ithout a barrier there is no market power.").

Plaintiffs make a Hail Mary attempt to circumvent the lack of barriers by claiming they have "direct evidence" of monopoly. Opp. at 15-23. But this fails when the undisputed evidence shows no barriers. *Matsushita*, 475 U.S. at 591 n.15 ("without barriers to entry it would presumably be impossible to maintain supracompetitive prices"); *Harrison Aire v. Aerostar*, 423 F.3d 374, 381 (3d Cir. 2005) (direct evidence requires "supracompetitive pricing and high

---

[4] The Court need not look at the case law on aftermarkets because Plaintiffs cannot show barriers to entry in *any* relevant market. But the aftermarket case law underscores Plaintiffs' failure. Mot. at 29-30. A seller has no power over an aftermarket if, as here, consumers can choose among primary products. Plaintiffs say consumers could not make an *informed* brewer choice based on the implausible assertion that it is "impossible" to acquire portion pack price information. Opp. at 29. But it is undisputed that consumers have access to pack prices, ¶¶ 58, 72, and access is all that is needed. Mot. at 31 (citing cases on this, *e.g.*, *Hack v. Yale*, 237 F.3d 81, 87 (2d Cir. 2000), which Plaintiffs do not address).

barriers to entry"). And, far from supporting Plaintiffs, the "direct evidence" shows substantially

███████████████████████████. *BanxCorp. v. Bankrate*, 847 F. App'x 116, 120 (3d Cir. 2021)

(rejecting "direct evidence" including price increase where output increased). Courts regularly

reject claims of direct evidence of monopoly power. *See, e.g.*, *Microsoft*, 253 F.3d at 51 ("direct

proof is only rarely available"). In Plaintiffs' key case, *Geneva v. Barr*, 386 F.3d 485, 500 (2d

Cir. 2004), the court *rejected* claims of "direct evidence," finding high prices and exclusion of

rivals from 80% of the market to be "at best ambiguous." *See also PepsiCo v. Coca-Cola*, 315

F.3d 101, 108 (2d Cir. 2002) (rejecting "direct evidence" where plaintiff "was successful in

obtaining several accounts"). Plaintiffs' purported "direct evidence" also fails for other reasons:

    <u>Controlling one's own price is not monopoly</u>. Plaintiffs say Keurig set its own prices,

Opp. at 20-21, but setting one's own price is *not* power to control price in the relevant market.

*U.S. v. E.I. du Pont*, 351 U.S. 377, 393 (1956); *see also, e.g.*, *Ind. Grocery v. Super Valu*, 684 F.

Supp. 561, 579 (S.D. Ind. 1988), *aff'd*, 864 F.2d 1409 (7th Cir. 1989). Every firm must set the

price it charges. If this proved monopoly, every firm would be a monopolist. Nor is a price

increase proof of monopoly. *Xerox*, 660 F. Supp. 2d at 549 (three price increases not monopoly).

Plaintiffs say Keurig's ███████████████ relying on calculations by TreeHouse's Dr.

Sibley. Opp. at 25 & n.108; *id*. at 31. But Dr. Sibley and Dr. Stiroh both found Keurig's profit

margins ██████████████████████████████████████████████████████

████████████████████████████████████████[5]

    <u>Plaintiffs cannot show Keurig "controls" output when</u> ████████████████.

Plaintiffs repeat their argument that Keurig's manufacturing contracts defining varieties to be

---

[5] Plaintiffs also say in passing that Keurig "at times" earned profits on brewers. Opp. at 21-22. But it is undisputed Keurig sells brewers near cost. ¶ 71 (████████████████████████). That does not show monopoly either. *U.S. v. Kodak*, 63 F.3d 95, 108-09 (2d Cir. 1995).

manufactured restrict output.  Opp. at 20-21.  But specifying products to be manufactured does not limit quantity sold.  And showing monopoly power through control of output requires a showing of *reduced* output, which Plaintiffs cannot make.  ¶ 79 (undisputed that ██████████); Mot. at 23, 26-27; *Geneva*, 386 F.3d at 500 (requiring evidence of reduced output); *Rebel Oil v. Atl. Richfield*, 51 F.3d 1421, 1434 (9th Cir. 1995) (requiring evidence of reduced output and supracompetitive prices).

Claimed "competitive disadvantage" does not establish market power.  Plaintiffs say the dozen competitors that entered and grew quickly were at a "competitive disadvantage" with "small" collective sales of only ████████████████.  Opp. at 24.  This argument lacks legal and factual support.  Plaintiffs fail to identify *any* case finding monopoly power despite a dozen entrants on a theory that entrants were at a "disadvantage."  In *Conwood v. U.S. Tobacco*, 290 F.3d 768, 789-90 (6th Cir. 2002), the plaintiff's share grew "slightly" by 2.5% in nine years and there was no other entry.  Here, it is undisputed that ██████████████████████, ¶ 75, and there were many other entrants, ¶ 9; Mot. at 32-33.[6]  Plaintiffs also lack facts for this argument:  They cite TreeHouse's Dr. Sibley making conclusory statements, for instance that portion pack entrants have "been unable to counteract Keurig's dominance" and he ████████ ██████████████.  Opp. at 24 n.103 (citing ¶ 1162-64).  But Plaintiffs provide *no evidence* that a dozen competitors were less efficient due to the challenged conduct.  Mot. at 17.[7]

---

[6] Plaintiffs cite *Yankees v. Cablevision*, a motion to dismiss in a case where only one firm had entered.  Opp. at 24 n.101 (citing 224 F. Supp. 2d 657, 673 (S.D.N.Y. 2002)).  Plaintiffs say *Geneva* holds a "first-mover" advantage is unlawful, Opp. at 25 n.107, but *Geneva* held the antitrust laws have "not been applied to condemn the transient advantage inherent in being a first mover because to do so would stifle innovation," 386 F.3d at 501.  And Plaintiffs wander farther off, citing the Merger Guidelines, Opp. at 23-24 (§ 9, echoing § 3 of 1992 Guidelines) (future entry must be sufficient to offset effects of a merger).

[7] Plaintiffs use the word "scale," Opp. at 24, but do not actually claim TreeHouse or other pack competitors lack scale, offer no evidence from experts or otherwise about what minimum efficient scale is, and admit entrants supply private label packs to ████████████████████████.  ¶¶ 203-04.

<u>Plaintiffs cannot show barriers to expansion given undisputed expansion</u>. Plaintiffs'
alternative argument that there are barriers to expansion, Opp. at 14 n.54, 15 n.55, conflicts with
the undisputed facts and the law. ¶ 273 (unlicensed competitors expanded from ███████████
█████████████████████████████); ¶ 274 (unlicensed competitors' expanded quickly
after entry); *CDC Techs.* 7 F. Supp. 2d at 130–31, *aff'd*, 186 F.3d 74 (2d Cir. 1999) (no barriers
to expansion where plaintiff expanded); *W. Parcel Exp. v. UPS*, 190 F.3d 974, 976 (9th Cir.
1999) (no barriers to expansion where "market has actually expanded" and competitors entered).

**Attempted monopolization and monopoly leveraging.** The fact of entry is also fatal to
Plaintiffs' attempted monopoly and monopoly leveraging claims. Mot. at 34-36; *AD/SAT v.
Assoc. Press*, 181 F.3d 216, 229-30 (2d Cir. 1999) (summary judgment on attempted monopoly
in light of "low barriers to market entry"); *Virgin Atl. v. British Air*, 257 F.3d 256, 269 (2d Cir.
2001) ("practices presumptively should not be viewed as an attempt to monopolize when the
'practices have been ongoing'" yet rivals have profited and new entry has occurred). Plaintiffs'
cases do not hold otherwise. Opp. at 30 nn.127, 129 (citing *Lenox v. Medtronic*, 762 F.3d 1114,
1125-26 (10th Cir. 2014) (significant barriers including FDA regulations and only one entrant);
*E.I. du Pont v. Kolon*, 637 F.3d 435, 451 (4th Cir. 2011) (finding "numerous barriers to entry");
*Allen v. Dairy Farmers of Am.*, 748 F. Supp. 2d 323, 340-41 (D. Vt. 2010) (allowing claim past a
motion to dismiss for discovery on key issues including whether there were barriers to entry).

**C.      Plaintiffs' Antitrust Claims All Fail For Additional Reasons**

All antitrust claims fail for the reasons noted. The claims also fail for reasons specific to
each. Plaintiffs complain Keurig analyzes each claim independently, Opp. at 2, but the courts do
the same. *Eatoni v. RIM*, 486 F. App'x 186, 191 (2d Cir. 2012), *citing Groton v. Conn. Light*,
662 F.2d 921, 928-29 (2d Cir. 1981); *Eatoni v. RIM*, 826 F. Supp. 2d 705, 710 (S.D.N.Y. 2011).

### 1.     Product Design Claims Fail For Lack of Coercion

Product design violates the antitrust laws only where a monopolist "coerce[s] consumers" into buying its new product. *New York v. Actavis*, 787 F.3d 638, 653-55 (2d Cir. 2015) (where old product remains available "the free choice of consumers is preserved"). In this case, the Court was right to allow the market to work by denying a preliminary injunction against the launch of the 2.0 Brewer. Mot. at 38.  Consumers had a choice to buy a 1.0 brewer and were not coerced to buy the 2.0.  ¶ 286.  The record now shows that, in each and every year since 2014 when the 2.0 launched, ██████████████████████████████████████████ ███████████████████████████████.  ¶ 286.  It is also undisputed that at least five unlicensed manufacturers offered 1.0 brewers, selling half a million 1.0 brewers in 2014 alone. ¶¶ 287-88.  And it is undisputed that Keurig discontinued sales of the 2.0 Brewer by or before 2018.  ¶ 13.  This is dispositive of Plaintiffs' product design claims.  Plaintiffs respond to this undisputed and determinative evidence by quibbling about the number of different 1.0 models available, Opp. at 41 & n.175, but offer no explanation for why that is relevant.

Recognizing they cannot show consumers were coerced into buying the 2.0 Brewer as required to support their claims, Plaintiffs offer a barrage of misdirection.  Opp. at 41-47.  For example, Plaintiffs falsely say Keurig argues new products are "exempt from the antitrust laws." Opp. at 44.  In fact, Keurig argues, based on controlling law, that a new product cannot violate the antitrust laws where, as here, consumers are not coerced into buying it.  Mot. at 36-45. Plaintiffs next argue the 2.0 was not "better" than the 1.0.  Opp. at 47.  But, as the Second Circuit has explained, "the question of product quality has little meaning.  A product that commends itself to many users because [it is] superior in certain respects may be rendered unsatisfactory to others by flaws they considered fatal," and, if consumers are not coerced into buying it, it is up to the market to choose. *Berkey Photo v. Eastman Kodak*, 603 F.2d 263, 286-87 (2d Cir. 1979); *see*

*also Actavis*, 787 F. 3d at 652-53 ("The leading case in our circuit for § 2 liability based on product redesign is *Berkey Photo*"); *Allied Orthopedic v. Tyco Health Care*, 592 F.3d 991, 1002 (9th Cir. 2010) ("A monopolist's discontinuation of its old technology may violate § 2 if it effectively forces consumers to adopt its new technology") (citing *Berkey Photo*); Mot. at 38-42. Strikingly, in discussing product design, this time around Plaintiffs *do not mention Berkey Photo*, which *they* distinguished based on their allegations in opposing the motion to dismiss. *See* Mot. at 38-39 (noting Plaintiffs' argument on motion to dismiss that "in *Berkey*, consumers were allowed to choose between the competing systems" but here the 2.0 "would replace" the 1.0).[8]

Plaintiffs do not respond to controlling case law on product design because they have no response. Instead, they discuss a declaration by ███████████████████████ ████████████████████████████████████████████████████████ ████████████ Opp. at 44-45; ¶ 1025. Plaintiffs spend a full page on Keurig's supposed intent, yet do not address controlling law making it legally irrelevant. *Berkey Photo*, 603 F.2d at 286-87 (no violation where consumers "not compelled to purchase" new product); *Allied Orthopedic*, 592 F.3d at 1001 (claims of intent are insufficient to create a jury question); *K.M.B. Warehouse*, 61 F.3d at 130 (at summary judgment intent is not "sufficient to meet the adverse-effect requirement").[9] Plaintiffs cite two cases where a new product used a "pretext" to cover bad intent. Opp. at 45 n.191. But, in both, the old product was withdrawn. *C.R. Bard v. M3*

---

[8] Plaintiffs also fail to respond to Keurig's other product design cases, e.g.: *Allied Orthopedic*, 592 F.3d at 1002 (summary judgment on claims a monitor was designed to be incompatible with rivals' sensors for lack of evidence that defendant "force[d] consumers" to buy new product); *Xerox*, 660 F. Supp. 2d at 547-48 (summary judgment for defendant following changes to printer feed chute that made generic ink sticks not function); *Mylan v. Warner Chilcott*, 838 F.3d 421, 440 (3d Cir. 2016) (summary judgment for defendants for lack of consumer coercion because generic versions of old product remained on market).

[9] Plaintiffs also question Keurig's justifications for the 2.0 design. Opp. at 44. Keurig's justifications are not material to this motion given the lack of coercion, but have been briefed. Keurig Opp. at 50-59.

*Sys.*, 157 F.3d 1340, 1369, 1382 (Fed. Cir. 1998); *Actavis*, 787 F.3d at 654 (no violation when old product remained on market).  On the motion to dismiss, Plaintiffs said Keurig's cases finding for defendants for lack of coercion were summary judgment decisions.  JBR MTD Opp., ECF No. 253 at 9.  Discovery disproved coercion, ¶ 286, compelling summary judgment now.

### 2.    Keurig is Entitled to Summary Judgment on Exclusive Dealing

A plaintiff claiming exclusive dealing must show that exclusive contracts substantially foreclose competition.  *Tampa Elec. v. Nashville Coal*, 365 U.S. 320, 327 (1961); Mot. at 45-47.  Previously, this Court concluded that "[t]he extent to which competitors were excluded, and whether it is sufficient to support an antitrust claim, is fact-dependent and not properly disposed of on a motion to dismiss."  *In re Keurig*, 383 F. Supp. 3d 187, 236 (S.D.N.Y. 2019).  But, post-discovery, it is clear that competitors were not foreclosed:  Competitors grew quickly ██ ████.  ¶¶ 74-77, 128-29, 273-74.  Where competitors are not just selling but *growing*, there is no substantial foreclosure.  *CDC Techs.*, 186 F.3d at 80-81.  The cases Plaintiffs cite confirm this:  Exclusive dealing is illegal "only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal."  *Am. Express v. Visa*, 2005 WL 1515399, at *3 (S.D.N.Y. June 23, 2005) (cited Opp. at 48); *McWane v. FTC*, 783 F.3d at 838 (cited Opp. at 47-48) (asking if "challenged practices bar a substantial number of rivals").

**Retailers.**  Plaintiffs cannot show competitors were substantially foreclosed from selling Keurig-compatible portion packs.  Plaintiffs allege that Keurig had exclusive agreements with retailers locking them out of stores but, following discovery, it is now undisputed that Keurig's retail sales are ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████.  ¶ 56.  But these sales were not foreclosed at all: ██████████████████████

████████████████████████████████████████████████████████████. Mot. at 48-
49 (citing cases holding competition for short term contracts is not foreclosure, *e.g.*, *Ferguson v.*
*Greater Pocatello*, 848 F.2d 976, 982 (9th Cir. 1988) (summary judgment for lack of foreclosure
where rivals had opportunity to bid)); ¶¶ 196, 223, 456 (████████████████████████
████████████████); ¶ 59 (██████████████████████████████████████).
Moreover, even ████ is not substantial foreclosure. Opp. at 47; Mot. at 46 (discussing, *e.g.*, *CDC*
*Techs.,* 7 F. Supp. 2d at 129-30 (50% is not substantial foreclosure) and *Omega Environmental v.*
*Gilbarco*, 127 F.3d 1157, 1162 (9th Cir. 1997) (38% is not substantial foreclosure)).

Recognizing ████ is not substantial foreclosure, Plaintiffs propose two other numbers.
*First*, they cite the reply report of TreeHouse's Dr. Sibley, which says every portion pack that
Keurig or its co-packing partners sell to a retailer is "foreclosed" even if there is no contract with
the retailer. Opp. at 53 & n.217; Sibley Reply ¶ 466. This is not the law. An exclusive dealing
claim requires an exclusive deal. *See, e.g.*, *Aerotec v. Honeywell*, 836 F.3d 1171, 1181-82 (9th
Cir. 2016) ("in the absence of any exclusive requirements … [a] sale remains nonexclusive").
Dr. Sibley's idea of calling every sale "foreclosed" such that alleged market share is foreclosure
share has been tried and rejected. *See, e.g. Maxon Hyundai Mazda v. Carfax*, 2014 WL
4988268, at *14 (S.D.N.Y. Sept. 29, 2014) ("A firm can have a market share that exceeds the
amount of the market it has foreclosed with exclusive dealing agreements."). *Second*, Plaintiffs
point to the alleged share of ████████████████████████████████████. Opp. at
54 (citing Sibley Reply Rpt. at ¶ 465). They argue that ██████████████████████████
██████████████████████. This makes no sense. Starbucks being popular does not
*foreclose* JBR from selling San Francisco Bay packs or TreeHouse from selling its
"overwhelmingly" private label packs, and Plaintiffs do not claim otherwise.

**Distributors.** Plaintiffs say Keurig foreclosed the "AFH Market and Workplace/OCS channel." But Plaintiffs alleged two relevant markets: "Compatible Cups" and "Single Serve Brewers." Opp. at 12. Plaintiffs cannot show substantial foreclosure by claiming a segment of the market was "foreclosed." Mot. at 50; *Kolon v. E.I. du Pont*, 2012 WL 1155218, at *14 (E.D. Va. Apr. 5, 2012) (summary judgment for defendant on claim of foreclosure in subsegments); *Sterling Merch. v. Nestle*, 724 F. Supp. 2d 245, 252 n.3, 264 (D.P.R. 2010) (rejecting claim of foreclosure from segment as an "improper attempt to reformulate" markets); *Omega*, 127 F.3d at 1162 (plaintiffs' "focus on [a] subset of the relevant market is misplaced"); *Int'l Constr. v. Caterpillar*, 2016 WL 264909, at *8 (D. Del. Jan. 21, 2016) (similar). Plaintiffs say in *Sterling Merch.* only 27% of sales were foreclosed, but ignore the case's holding that foreclosure cannot be measured in a market segment. Opp. at 47 n.194. Plaintiffs note the contracts in *Omega* were short term/easily terminable, 127 F.3d at 1163-64, but do not say that distinguishes them from the distributor contracts. Opp. at 47 n.194 (citing nothing about distributor contracts); ¶ 52-53

██████████████████████████████████). Plaintiffs ignore Keurig's other cases rejecting "foreclosure" of a segment, and cite three other cases, none of which helps them. Opp. at 58 n.231. In *PepsiCo v. Coca-Cola*, a plaintiff alleged foreclosure of a market limited to a "single group of distributors" and survived a motion to dismiss, 1998 WL 547088, at *7-8 (S.D.N.Y. Aug. 27, 1998), but later *lost* summary judgment because it could not prove its narrow market. 114 F. Supp. 2d 243, 258 (S.D.N.Y. 2000); *see also PepsiCo*, 315 F.3d 101 (affirming denial of summary judgment given plaintiff's failure to prove a market limited to a group of distributors). *Tenneco* and *Siemens* have nothing to do with foreclosure. 689 F.2d 346 (2d Cir. 1982) (setting aside FTC divestiture order); 621 F.2d 499 (2d Cir. 1980) (declining to preliminarily enjoin acquisition). Plaintiffs also ignore the case law Keurig cited holding that

*distributor* exclusives are insufficient where, as here, *end customers* can be reached.  Mot. at 51
(*e.g. Ryko*; *CDC Techs.*); ¶¶ 48 (offices *can and do* buy Keurig-compatible packs online and at
retail stores; disputing only that "most or all" do), 1791.

An antitrust plaintiff must put forward "credible economic analysis" defining a relevant
market.  *Caruso v. Int'l Council*, 403 F. Supp. 3d 191, 207-08 (S.D.N.Y. 2019); *It's My Party v.
Live Nation*, 811 F.3d 676, 683 (4th Cir. 2016) (summary judgment when plaintiff failed to
satisfy market definition burden).  Three of four Plaintiffs admit ███████████████████
███████, ¶ 476, consistent with the undisputed fact that AFH customers can and do buy
brewers and packs at retail.  ¶¶ 48, 1791.  TreeHouse alone disagrees, claiming its expert, Dr.
Sibley, found "an AFH Market and OCS channel within that market."  Opp. at 57.  TreeHouse's
position keeps changing.  At his deposition, Dr. Sibley testified that he identified *only two
markets*—compatible cups and single serve brewers—and that he did not identify an AFH
market or a "workplace" market, which "would be the wrong market definition."[10]  ¶¶ 446-47.
TreeHouse revised this in errata months later.  Opp. at 57 n.227.  Now, it says both that the
"workplace" subchannel is *not* a "separate product market," ¶ 447, and that "[t]he well-defined
'WorkPlace channel' *is* the OCS market," Opp. at 57 n.227 (emphasis in original).  This new
claimed market is so ill-defined that it is not even clear whether TreeHouse is claiming separate
markets for AFH packs and AFH brewers, one market for AFH services that includes both packs
and brewers, or something else.  TreeHouse cannot escape summary judgment by repeatedly
changing its position, disagreeing with itself and other plaintiffs, and insisting a jury try to make

---

[10] TreeHouse says Dr. Sibley testified distribution channels are not the market because he did not "have
access to his report, which counsel repeatedly denied."  Opp. at 57 n.227.  That is false.  Dr. Sibley had
his report and looked at it when he testified on market definition.  ECF No. 1467 Ex. 3, Sibley (Day 1) Tr.
at 32:17-33:20 ("A.  I'm looking here at Page 78 of my report .... I've got my report right here.").

sense of it all. *Vargas v. Pfizer, Inc.*, 352 F. App'x 458, 460 (2d Cir. 2009) ("Plaintiffs cannot avoid summary judgment simply by submitting any expert evidence, particularly where that evidence is both internally and externally inconsistent.").

**Inputs**. JBR does not dispute it did not plead this claim and cannot pursue it. Mot. at 52. Other Plaintiffs fail as well: Competitors were not "depriv[ed] … of access" to inputs. *Jefferson Par. v. Hyde*, 466 U.S. 2, 45-46 (1984) (O'Connor, J., concurring). In fact, *so many* entered that Plaintiffs say no more would enter in the but-for world, ECF No. 1538 at 19-21; ¶¶ 264, 266-67, 273-74, showing inputs "could be obtained." *Energex*, 765 F. Supp. at 97. Plaintiffs cite *Geneva*, but the defendant there controlled the *sole* source of an essential input *competitors could not develop elsewhere*, and was able to "freeze competitors" out of the market. 386 F.3d at 509.

Recognizing entrants were not deprived of inputs, Plaintiffs switch and say a jury could find competitors were *delayed* in entering because they had to develop suppliers instead of freeriding on ones Keurig developed. Opp. at 61. But they do not claim JBR or a dozen other competitors were delayed. They say in a footnote TreeHouse was delayed. While they do not make this clear, the claim is that *Treehouse's instant coffee* launch was delayed. Opp. at 61 n.239; ¶ 266 (TreeHouse launched filtered coffee the day after Keurig's short-filter patent expired). This claimed delay is based on speculation on top of a single inadmissible declaration. Opp. at 61 n.239 (citing only ¶ 1211) (declaration of undisclosed witness saying obtaining components "contributed" to instant coffee delay but not identifying Keurig as the cause).[11]

---

[11] It is undisputed that the ███████████████████████████████. Consumers "significantly" preferred Green Mountain in blind testing. ¶¶ 263, 496. TreeHouse's President testified that, had he seen the final test results, he would *not* have allowed the product to launch as early as it did. ¶ 263 (citing Ex. A-128, David Vermylen (TreeHouse) Tr. 248:14-249:15). As the Seventh Circuit explained in a consumer lawsuit over the instant coffee, TreeHouse wanted to sell Keurig-compatible packs "once patent protection expired, but they jumped the gun" with an unfiltered pack "[t]hat is not the kind of premium product that Keurig customers expected, as Sturm's marketing surveys confirmed" and "[t]he public response … was awful." *Suchanek v. Sturm Foods*, 764 F.3d 750, 752-54 (7th Cir. 2014).

As a final variant on their input foreclosure claim, Plaintiffs say Keurig's agreements with brands foreclosed competitors. It is undisputed that there are *thousands* of coffee brands. ¶¶ 277-80. Plaintiffs allege ████████████████████████, ¶ 486, and cannot show substantial foreclosure of a "market that has not been defined." *Jefferson Par.*, 466 U.S. at 29. Plaintiffs have not shown brands are a necessary input at all, or that Keurig's contracts substantially foreclosed them from competing in any market, causing harm to competition.

TreeHouse says it lost a co-packing, or "co-manufacturing," deal for ██████, Opp. at 58-59, but it *also* says co-packing fees would be the same in the but-for world. ECF No. 1463 Ex. 2, Stiroh Reply Rpt. at 20 n.56. If Keurig won co-packing sales at competitive prices, there is no antitrust injury. *Brooke Grp.*, 509 U.S. at 224; *Capital Imaging v. Mohawk Valley*, 996 F.2d 537, 546 (2d Cir. 1993).[12] JBR concedes it ██████████████████████████████████████ ████████████████████████████████. ¶ 30.

As for brand *licensing*, it is undisputed TreeHouse made a strategic choice not to pursue these deals, in which a brand licenses another company to distribute and market its branded product: ██████████████████████████████████████████████ ██████████████████████████████ ¶ 100. JBR chose not to pursue brand licensing as it prefers to focus on "selling its own branded product." ¶ 157. Plaintiffs cannot show they were substantially foreclosed from an input they wanted—much less needed—in order to compete.

### 3.   Keurig Is Entitled to Summary Judgment on Conspiracy Claims

TreeHouse, JBR, and McLane (but not DPPs) claim Keurig orchestrated a nationwide

---

[12] In discussing its input foreclosure claim TreeHouse says it faced "capacity constraints caused by Keurig," but cites a document that does not support this, and ██████████████████████████ ██████████████████████. Opp. at 59. TreeHouse testified it was never capacity constrained. Ex. A-110, TreeHouse 30(b)(6) (Vermylen) Tr. 63:24-64:25 ("We were never capacity constrained.").

conspiracy and "thousands" of brands, distributors, retailers and suppliers are all in on it. Opp. 61-72. These claims fail. At summary judgment "antitrust law limits the range of permissible inferences" and "conduct as consistent with permissible competition as with illegal conspiracy" is insufficient. *Matsushita*, 475 U.S. at 588; Mot. at 56-61.

> Keurig's manufacturing and distribution agreements with partner brands are not a conspiracy. Keurig manufactures portion packs for partner brands like ████████████ ████████████████████████████████████████████████████████████████. Such manufacturing and distribution agreements are common vertical arrangements, not conspiracies. *Beyer v. Elmhurst*, 142 F. Supp. 2d 296, 302 (E.D.N.Y. 2001), *aff'd* 35 F. App'x 29 (2d Cir. 2002); *Elecs. Commc'ns v. Toshiba*, 129 F.3d 240, 243-44 (2d Cir. 1997); Mot. at 57-59; Keurig Opp. at 34, 6-24 (extensive explanation of these arrangements); *2238 Victory v. Fjallraven*, 2021 WL 76334, at *1, 5 (S.D.N.Y. Jan. 8, 2021). ████████████████████ ██████████████████████████████████████.

Plaintiffs next try to characterize Keurig's exclusive vertical manufacturing deals with partner brands as a "group boycott" of other manufacturers. Opp. at 63. Courts reject the attempt to transform exclusive vertical agreements into a group boycott. *U.S. Healthcare v. Healthsource*, 986 F.2d 589, 594 (1st Cir. 1993) (exclusive vertical deals are not a group boycott); *Minn. Ass'n v. Unity Hosp.*, 208 F.3d 655, 659-60 (8th Cir. 2000) (claim that exclusive vertical deals are a group boycott is "totally without merit"). A group boycott claim requires Plaintiffs to show that brands *agreed among themselves*. Keurig Opp. at 16-17 & n.17. Plaintiffs say one can infer an agreement among brands because it is in brands' interest to use Keurig only if the other brands do so. Opp. at 65-66. But Plaintiffs then promptly argue the opposite: brands wanted to use Keurig only if other brands did *not* do so. *Id*. at 67 (████████



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Plaintiffs' inconsistent speculation about brands' thinking is not adequate at summary judgment. Every brand deposed testified ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. ¶¶ 25, 31 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), 32, 238, 244, 333-34 (citing testimony); D-56.1 Resp. ¶¶ 96, 407; Ex. K-1, Conagra 30(b)(6) (Arnold) Tr. 152:6-154:1. Plaintiffs' only response is *another* declaration of an undisclosed TreeHouse employee, this one served during briefing of this motion, saying the declarant ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮. Opp. 66 at n.256. This does not suggest a brand conspiracy. *Matsushita*, 475 U.S. at 586, 597 n.21 ("conduct that is as consistent with permissible competition as with illegal conspiracy does not … support even an inference of conspiracy.").

Relabeling the same conduct a "hub-and-spoke conspiracy" adds nothing. Plaintiffs say Keurig, an entity at one level of the market structure (manufacturing), is the "hub," and has coordinated an agreement among competitors at a another level (brands), which are the "spokes." Opp. at 65-69. To survive summary judgment, Plaintiffs need evidence "tending to exclude the possibility that [spokes] acted independently" in choosing Keurig as their supplier. *AD/SAT*, 181 F.3d at 221, 235. Plaintiffs cite three motion to dismiss cases that are not to the contrary. Indeed, one dismissed the claims at the pleading stage, explaining that the alleged behavior "made perfect business sense." *Baltimore v. Citigroup*, 709 F.3d 129, 138 (2d Cir. 2013). Opp. at 65-67 (citing *Baltimore*; *Starr v. Sony BMG*, 592 F.3d 314, 327 (2d Cir. 2010); *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 486-87 (S.D.N.Y. 2012)).

Plaintiffs offer a flurry of tangents trying to draw attention away from the undisputed testimony and evidence showing brands acted independently. Plaintiffs cite: (i) a Smucker SEC filing saying if Keurig were unable to supply it, other firms might not sell "on commercially

reasonable terms," Opp. at 66 (citing D-56.1 Resp. ¶ 72), which does not show Smucker acting

against self-interest ████████████████████████████████████████

████████████████████████████████████████████████, Opp. at 66 and

¶ 1309, which is inadmissible hearsay and does not show brands conspiring but, rather, shows

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████     ████████

██████████████████████████████████████

      These tangents are not sufficient for Plaintiffs to proceed to trial on conspiracy claims.

*AD/SAT*, 181 F.3d at 235. Indeed, that this is Plaintiffs' "best" material shows they cannot

support any conspiracy claim much less the massive industry-wide one they have alleged.

Plaintiffs have *no evidence* of a hub-and-spoke conspiracy among the brands. For example, there

are no text messages between Steven Oakland at Smucker or his counterpart at Starbucks or

---

[13] Plaintiffs also digress about an ████████████████████████████████

███████████████████████████████████████████████

other brands about whether they should all use Keurig as a supplier.  *Cf. U.S. v. Apple*, 791 F.3d 290, 316-19 (2d Cir. 2015) (extensive communications among a group of publishers about whether to sign with Apple simultaneously supported finding a hub-and-spoke conspiracy); *Toys 'R' Us v. FTC*, 221 F.3d 928, 932, 936 (7th Cir. 2000) ("direct evidence of communications" among major toy manufacturers to restrict sales to warehouse clubs only "on the condition that their competitors do the same" supported finding a hub-and-spoke conspiracy); *PepsiCo*, 315 F.3d at 111 (*Toys 'R' Us* represents the "minimum evidentiary threshold" for a plaintiff to survive summary judgment on a hub-and-spoke claim in this circuit).  Plaintiffs cite nothing close to the evidence needed to infer a hub-and-spoke conspiracy here.

Competitor Plaintiffs lack standing to pursue conspiracy claims.  A conspiracy among competitors to raise prices benefits other competitors in the market.  *Matsushita*, 475 U.S. at 582-83; Mot. at 60.  If a conspiracy among brands actually elevated compatible pack prices, then *TreeHouse and JBR would have benefitted* on the ▇▇▇▇ of packs they sold.  *Matsushita*, 475 U.S. at 582-83.  TreeHouse says it suffered because it wanted to co-pack for ▇▇▇▇.  Opp. at 69-70.  But it says *tolling fees for co-packing would not change in the but-for world*, so there would be no harm to competition.  And Plaintiffs also claim the conspiracy involved Keurig *not* making packs for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  Opp. at 67.  But that means those brands would be available to partner with competitors.  The whole conspiracy theory is discombobulated but, breaking it down, competitors either benefitted (higher prices, more potential partners) or did not suffer antitrust injury (lost a co-pack sale at the same price Keurig charged).  Neither confers antitrust standing.  *Matsushita*, 475 U.S. at 582-83 (a competitor can *never* "recover damages for any conspiracy … to charge higher than competitive prices … [because competitors] stand to gain from any conspiracy to raise the

market price"); *Cap. Imaging*, 996 F.2d at 543, 546 (antitrust injury is lacking where plaintiff concedes customer prices "would remain the same").

Catchall conspiracy claim also fails.  Plaintiffs say "thousands" of non-parties entered conspiracies with Keurig, from distributors to retailers to suppliers.  Opp. at 70-71.  Plaintiffs say *all* of Keurig's agreements are horizontal and every partner is in on the conspiracy.  Opp. at 70-72.  This is a repackaging of Plaintiffs' failed exclusive dealing claims, with one embellishment: Plaintiffs focus on a single meeting that they say is "direct evidence" of an "agreement" between Keurig and distributors "to enforce the Loyalty Clause," Opp. at 71-72.  In the only meeting of its kind, ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Mot. at 60-61;

¶¶ 1230-31.  Plaintiffs splice together unconnected bits of that email and declare it an unlawful agreement.  *Id*.  ████████████████████████████████████████

█████████████████████████████████████████. *PepsiCo*, 315 F.3d at 110 (defendant's assurance to distributors "that the loyalty policy would be uniformly enforced" and encouragement to report violations was not evidence of a horizontal conspiracy).

Finally, Plaintiffs say Keurig has not put forth "procompetitive justification[s]" for "conspiracies."  Opp. at 63-65, 70.  But plaintiffs must show that the conduct happened and had an "actual adverse effect on competition as a whole" before justification is relevant.  *Laumann*, 907 F. Supp. 2d at 479 (cited by Opp. at 67); *see also* Keurig Opp. at 8-34 (discussing procompetitive reasons for challenged conduct).  Here Plaintiffs cannot show a "conspiracy" at all, and over the relevant period there has been substantial entry, ████████████████████

████████████████████.  Plaintiffs cannot meet their threshold burden.

### 4.      Keurig is Entitled to Summary Judgment on Tying Claims

Plaintiffs try unsuccessfully to reframe some of their claims as tying. Tying requires, among other things, "a tying and a tied product," evidence the seller "forced the buyer to accept the tied product" which was not available separately, market power in the tying product, and anticompetitive effects. *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56-59 (2d Cir. 1980). The elements are the same under the Sherman and Clayton Acts. Mot. at 61-62; Keurig Opp. at 38-39. Plaintiffs say there is some difference, but do not say what it is or why it matters. Opp. at 72 n.277. They do not deny market power is an element of tying under both statutes. *Id.* at 75.

Tying fails for lack of market power. Plaintiffs cannot show barriers to entry, thus cannot show market power. Plaintiffs say lack of barriers is "irrelevant," Opp. at 75 n.288, but cite *Microsoft*, which holds that a firm *cannot* have power in a market "unless that market is also protected by significant barriers to entry." 253 F.3d at 82. Plaintiffs falsely say Keurig concedes it has market power, but cite nothing. Opp. at 75. The undisputed facts preclude a finding of market power, and this alone is fatal to the tying claims. Mot. at 34, 64-65.

Technological tying claim fails. Plaintiffs do not dispute that their "2.0 Brewer was technologically tied to K-Cups" claim *is* their product design claim. Opp. at 75-76. It fails again as reframed. Plaintiffs do not say the 2.0 Brewer had market power, nor could they given that 1.0 brewers were available and ███████████████████████. ¶ 286. Plaintiffs also do not claim the 2.0 "tied" licensed K-Cups, nor could they; unlicensed packs worked in 2.0. ¶ 291.

Distributor tying claim fails. TreeHouse and JBR say Keurig's agreements with Keurig Authorized Distributors are ties, but concede brewers and K-Cups are available separately. ¶ 6 (no dispute except whether *commercial Keurig brewers* were separately available *before 2012*). Plaintiffs do not allege a market for "commercial brewers" much less that Keurig has market power therein. Plaintiffs say even though brewers and packs were available separately, buying a

package was more "efficient" than buying a la carte. ¶ 6; Opp. at 73-74.  But they do not show evidence of the bundled versus separate price, much less show separate pricing is prohibitive.  ¶ 50; Mot. at 63-65.  They cite evidence that ████████████████████████████, Opp. at 74 & n.284 (citing ¶ 935; D-56.1 Resp. ¶ 307), but that is not enough to avoid summary judgment. *Nobel Sci. v. Beckman*, 670 F. Supp. 1313, 1324-26 (D. Md. 1986), *aff'd*, 831 F.2d 537 (4th Cir. 1987) (summary judgment where tied "items could be bought separately"); *Amerinet v. Xerox*, 972 F.2d 1483, 1500 (8th Cir. 1992) (summary judgment where customers could buy "tying product" separately).  There is also no dispute that *end users* (offices) could and did buy brewers and packs separately.  ¶¶ 6, 48, 1791; *Taylor v. Hollymatic*, 28 F.3d 1379, 1383-85 (5th Cir. 1994) (judgment for defendant on tie limiting *dealer* because "consumers [can] purchase the two goods separately").  Exclusivity with a dealer is not tying, and courts grant summary judgment where a plaintiff tries to "strip the [tying] doctrine of its core element of coercion" by claiming a tie where some customers bought a "tied" good separately.  *It's My Party*, 811 F.3d at 684-87.

Tying claims fail for lack of competitive harm.  Plaintiffs say a tie is *per se* illegal and they "need not show anticompetitive effects." Opp. at 75.  That is wrong: The plaintiff must establish that tying results in anticompetitive effects.  *E&L Consulting v. Doman*, 472 F.3d 23, 32 (2d Cir. 2006); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86 (2d Cir. 2000); Keurig Opp. at 44-46.  Plaintiffs also cite no authority contradicting Keurig's cases showing that to prove antitrust injury they must prove that the package price under the tie exceeded the sum of the products' individual prices. Mot. at 65. They argue only that Keurig branded packs cost more than TreeHouse private label.  Opp. at 75 n.289.  They cannot show that the combined price of brewers and packs with the alleged tie was higher than it would be without the alleged tie.

### 5.    Keurig is Entitled to Summary Judgment on Sham Litigation Claims

Plaintiffs' sham litigation claims fail as a matter of law.  In *Sturm*, Keurig's nine non-patent claims survived summary judgment and led to a favorable settlement, ¶ 386-87, which means the case was not objectively baseless.  Mot. at 67.  Plaintiffs say a settlement is irrelevant, but the cases they cite disagree.  Opp. at 81 (citing, *e.g.*, *FTC v. AbbVie*, 976 F.3d 327, 367-68 (3d Cir. 2020) ("settlement on terms favorable to a plaintiff suggests a suit is not objectively baseless")).  Plaintiffs then say the settlement was "fraudulently induced," Opp. at 81, because one of six brewer models in which TreeHouse packs failed during testing was later recalled.  But the vast majority of TreeHouse pack failures (188 of 228) occurred in the five other brewers. ¶¶ 1432-34.  The testing was also used to support only one of nine claims, ¶ 1432, and TreeHouse does not say it was fraudulently induced to settle the eight others.  Baselessness turns on the suit as a whole, *Avaya v. Telecom*, 838 F.3d 354, 414 (3d Cir. 2016), and so the favorable settlement precludes a finding that *Sturm* was sham litigation.   Mot. at 66-67.[14]

Even were it not for the settlement, Plaintiffs' claim fails. They say Keurig was destined to lose *Sturm* based on "longstanding principles" of patent exhaustion, Opp. at 82, but ignore the uncertainty in how the principles applied.  In 2008, the Supreme Court announced a new test for patent exhaustion in *Quanta*, which Keurig reasonably argued should apply.  Mot. at 70.  Sturm and Rogers said the test did not apply, but the Supreme Court and Federal Circuit had not decided the issue.  *See* ¶ 405.  The Boston Patent Law Association amicus brief and Judge O'Malley's concurrence in *Sturm* confirm the case raised novel questions.  Mot. at 70-71. Plaintiffs say *Rogers* was baseless because Keurig "continued to press" the same theory as in

---

[14] TreeHouse also says Keurig's trademark claims were baseless because it made fair use of Keurig's brand, Opp. at 80, but the *Sturm* court denied TreeHouse's motion for summary judgment on fair use, disproving baselessness. *Keurig v. Sturm*, 2012 WL 4049799, at *11 (D. Del. Sept. 13, 2012).

*Sturm*, Opp. at 83, but Keurig withdrew the overlapping claim after the Federal Circuit decided *Sturm*, ¶ 401.   Neither company sought fees, ¶ 416, which Plaintiffs' experts agree is telling. Gajarsa *Daubert* Opp., ECF No. 1524 at 14-15.   Plaintiffs say they did not seek fees because the standard is different, but the fees standard they did not invoke is *less* demanding than the sham litigation standard.   Opp. at 83 n.312 (citing *Octane v. ICON*, 572 U.S. 545, 555 (2014)).

Plaintiffs attack Keurig's alleged subjective beliefs, but this is not relevant to objective baselessness.   ECF No. 1524 at 15-16.   TreeHouse says *Sturm* was filed before its packs were sold, Opp. at 77-79, but a plaintiff can sue on information and belief, Fed. R. Civ. P. 11(b)(3), and need not wait for a specific act of infringement.   ¶ 1444; *Sierra v. Advanced*, 363 F.3d 1361, 1378-79 (Fed. Cir. 2004).   TreeHouse also implies Keurig alleged Sturm packs failed in Keurig's brewers before doing testing, but Keurig did *not* initially allege that Sturm packs failed in brewers; it added this in an amended complaint after it had done testing.   ¶¶ 1426, 1444.

Recognizing neither *Sturm* nor *Rogers* was a sham, Plaintiffs concoct a new claim that even if neither was a sham, Keurig violated the antitrust laws by bringing a "series" of suits. Opp. at 76-77.   But two suits "do not implicate a test for 'a whole series of legal proceedings.'" *ERBE v. Canady*, 629 F.3d 1278, 1291-92 (Fed Cir. 2010); *Applera v. MJ Research*, 303 F. Supp. 2d 130, 133-34 (D. Conn. 2004) ("series" involves "indiscriminately filing 'huge volumes' of legal challenges" regardless of merit).   Plaintiffs' cases agree.   Opp. at 76.   *Primetime v. Nat'l Broad*. involved "thousands" of petitions "without regard to … the merits."   219 F.3d 92, 101 (2d Cir. 2000).   And *California Motor v. Trucking Unlimited* involved a conspiracy to challenge *all* applications.   404 U.S. 508, 509, 513 (1972); *Trucking Unlimited v. California Motor*, 432 F.2d 755, 762 (9th Cir. 1970) ("every application would be opposed … regardless of its merits").

Plaintiffs' "pattern" theory is not in their complaint, nor are the two cases (*Kraft* and *Touch*) they add to try to prop it up.[15]  In *Kraft*, the court denied Kraft leave to file for summary judgment, and Kraft paid Keurig $17 million to settle.  ¶ 1934.  Plaintiffs parrot Kraft's allegations of inequitable conduct, Opp. at 77.  That is not evidence of baselessness.  *Therasense. v. Becton*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011) (en banc) (Rader, J.) ("allegations of inequitable conduct are routinely brought on 'the slenderest grounds'" and appeared in "eighty percent of patent infringement cases").  As to *Touch*, Plaintiffs cite only an untimely declaration from ██████████████████████████████████████ ¶ 1989, which is neither admissible nor evidence that no reasonable litigant could expect to succeed.  Keurig Opp. at 90-103.

### 6.    Keurig is Entitled to Summary Judgment on Patent Misuse Claims

Patent misuse is a narrow equitable defense with limited relief: a declaration that the patent being asserted is unenforceable.  *Braun v. Abbott*, 124 F.3d 1419, 1427 (Fed. Cir. 1997).  Here, there is no patent being asserted, thus no misuse.  Mot. at 73-74.  Plaintiffs say brands paid Keurig "royalties," and cite cases saying a patent holder may not condition a patent license on royalties beyond the patent scope.  Opp. at 84 nn.316-17.  But *Plaintiffs identify no patent license*, Mot. at 74, and admit Keurig's royalties ████████████████████████████ ██████████████████████████████████████████████████ Plaintiffs also say they seek declaratory relief, Opp. at 85, but again no patent is being asserted.  Plaintiffs cite a single case they say holds that a patent misuse claim may be pursued even without enforcement of a

---

[15] Plaintiffs say Keurig sent letters to infringers, Opp. at 77, but offer no evidence they were baseless, and Plaintiffs' cases reject liability for pre-enforcement letters.  *Primetime*, 219 F.3d at 100; *Sosa v. DirecTV*, 437 F.3d 923, 937 (9th Cir. 2006).  Plaintiffs say Keurig admitted it would have taken legal action regardless of infringement.  Opp. at 77.  That misrepresents the cited testimony, which was that if there was no infringement, ██████████████████████████████████████████████████████████ ██████, and nowhere suggests that Keurig would have brought a patent lawsuit if there was no infringement.  ¶ 1450.  Plaintiffs also say one e-mail shows Keurig had ████████████████████████ Opp. at 76.  But the email discusses ████████████████████████.  ¶ 1418.

patent, Opp. at 84-85 n.319 (citing *Astra v. Kremers*, 2001 WL 1807917, at *1 (S.D.N.Y. 2001)), but that was a motion to dismiss opinion where the patent holder *was enforcing its patents*.

### 7.   Keurig is Entitled to Summary Judgment on Old Acquisitions Claims

DPPs and McLane say decade-old acquisitions "preclude[d] [] nascent competition," but point to no evidence any of these acquisitions substantially reduced competition.   There has been extensive entry since 2012, and it is pure speculation that the acquired roasters would have sold unlicensed packs at all.   Opp. at 87.   Plaintiffs try to shift the burden of proof onto Keurig based on a gross misreading of *Microsoft*, which holds that "the plaintiff, on whom the burden of proof of course rests, must demonstrate that the monopolist's conduct indeed has the requisite anticompetitive effect," 253 F.3d at 58, which Plaintiffs cannot do.   McLane also does not dispute that it *benefitted* from more brands of K-Cups being available but claims that this is "irrelevant."   Opp. at 87 n.333.   McLane is wrong.   *Matsushita*, 475 U.S. at 583 (plaintiff lacks standing where it "stand[s] to gain" from alleged conduct).

### 8.   Keurig is Entitled to Summary Judgment on McLane's Grievances

McLane concedes it does not bring antitrust claims for its business grievances, and notes them only to try to show Keurig's alleged monopoly.   Opp. at 87-88.   Keurig is thus entitled to summary judgment on the claims.   McLane fails to cite any case supporting its theory that these grievances—*e.g.*, ████████████████████████████████████████████████

████████████████████████████████████████████████

████████—show Keurig's monopoly power.   *See* Mot. at 77-79.   McLane says Keurig "blocked" it from expanding K-Cup sales which "offered market efficiencies," citing no support. Opp. at 89.   Retailers buying from Keurig instead of via McLane as a middleman does not show monopoly.   McLane says it was free to distribute unlicensed packs but Keurig reduced demand, Opp. at 88-89, but cites only expert opinions that do not analyze demand for unlicensed packs.

9.      **Keurig is Entitled to Summary Judgment on False Advertising Claims**

Plaintiffs cannot overcome the presumption against antitrust claims based on alleged

false advertising. *Nat'l Ass'n of Pharm. v. Ayerst*, 850 F.2d 904, 916 (2d Cir. 1988).

**Not False**: Falsity depends on context and the "overall message conveyed." Mot. at 80.

Yet Plaintiffs try to show falsity by stripping statements of context and distorting their meaning.

- **Quality, Safety, Performance**: The statements conveyed Keurig guarantees the quality
  of K-Cups, not other packs. Mot. App'x A at 1-3. Use of a "Keurig Brewed" logo to
  convey "Keurig quality" is puffery, Mot. at 80-81, and unlicensed packs had quality
  issues. ¶ 305. Plaintiffs say Keurig lacks data showing that it received more complaints
  on unlicensed packs vs. K-Cups, Opp. at 92, but that is irrelevant because Keurig did not
  make an advertising statement representing that its packs received fewer complaints.
  Keurig Opp. at 63, 65 n.56, 74. Plaintiffs say "consumers were satisfied" with unlicensed
  packs, Opp. at Ex. A p. 3-4, but that does not make the statements false. Unlicensed
  packs ███████████████████████████████████████. ¶¶ 1685, 1694.

- **Brewer Warranty**: The statements furthered the message that Keurig cannot guarantee
  products it does not make. Mot. App'x A at 4. Plaintiffs say Keurig always honored its
  warranty, Opp. at 92, but that does not render false the statement that harm caused by
  unlicensed packs "may not be covered" by the warranty. Mot. App'x A at 4. Plaintiffs
  never explain how competition was harmed if Keurig replaced more damaged brewers
  than necessary.

- **Plans for 1.0 Brewer**: Keurig planned for the 2.0 to replace the 1.0 brewer and its
  statements to that effect were true. Mot. App'x A at 5; ¶ 325.

- **2.0 Features**: Plaintiffs challenge various features of the 2.0 brewer, but none of the
  statements were false. Mot. App'x A at 6-7. The 2.0 offered hundreds of varieties. ¶ 5.
  It introduced the option to brew Vue and K-Cups, which Keurig addressed with a process
  that included ink authentication. ¶ 327. Plaintiffs dispute that the 2.0 could brew the
  beverage "perfectly," but TreeHouse like many coffee companies also claims it has the
  "perfect cup" and admits its own advertising is puffery. ¶¶ 303-04, 1698.

- **Compatibility**: The statements *informed* consumers—as the antitrust laws encourage—
  that the 2.0 was designed to work only with Keurig licensed packs. Mot. App'x A at 8-9;
  ¶ 329. Plaintiffs cite true statements to retailers in 2013 and 2014 before any unlicensed
  pack had shown 2.0 compatibility. ¶ 330. Plaintiffs say many competitors later made 2.0
  packs, ¶ 1677, but that does not make general statements about unlicensed packs false.
  Mot. at 81; *Turbon v. HP*, 769 F. Supp. 2d 262, 265-68 (S.D.N.Y. 2001) (plaintiff's claim
  *its* products worked did not render false a general statement that "after-market cartridges"
  did not work). The "Oops" message was not false: It did not appear with unlicensed
  packs adapted for the 2.0, ¶ 331, and packs designed for the 1.0 did *not* automatically
  work or work well in the 2.0 Brewer. ¶ 293 (undisputed TreeHouse made changes).

**Not Material.** Plaintiffs did not produce any reliable extrinsic evidence that specific misrepresentations influenced consumers' purchasing decisions. Mot. at 83; *Apotex v. Acorda*, 823 F.3d 51, 68 (2d Cir. 2016). To the contrary: retailers, distributors, brands, and consumers independently evaluate packs and brewers. Mot. at 81-82; ¶¶ 312-13, 493 (citing undisputed testimony from all six named direct purchaser plaintiffs). Plaintiffs say this is irrelevant, Opp. at 93, but these undisputed facts show consumers make purchasing decisions based on their own assessments. *Reed v. McGraw-Hill*, 638 F. App'x 43, 45-46 (2d Cir. 2016) (summary judgment where customers "conducted independent evaluations"). These facts also show the statements were not made to "buyers without knowledge" of the subject matter. Mot. at 83.

Plaintiffs try to dodge their burden to show altered purchasing decisions, arguing that a statement is material if it misrepresents an "inherent quality." Opp. at 89-90. That is not the law, Keurig Opp. at 67-68; *Apotex*, 823 F.3d at 63, and Plaintiffs fail even that wrong standard. They cite testimony saying that innovation and ███████████████████████████████ ███████████████████████████, D-56.1 Resp. ¶ 796, but that does not show any *statement* was material. *Cf. Reed v. McGraw-Hill*, 49 F. Supp. 3d 385, 419 (S.D.N.Y. 2014) (summary judgment for lack of materiality where "one customer" testified he was influenced by statement). Finally, Plaintiffs argue they lost customers, but do not identify any customer that decided not to purchase their packs due to a specific alleged misrepresentation. ¶¶ 228, 1672.

**Susceptible to Neutralization.** All statements were susceptible to neutralization by competitors. Mot. at 82; ¶¶ 110-14, 134, 137-38, 140, 308-09. Plaintiffs say *some* statements were made "privately," Opp. at 94, but do not deny they could counter even those. *Reed*, 49 F. Supp. 3d at 422 (summary judgment where plaintiff "knew about—and, therefore, could have countered"—statements); *Eisai v. Sanofi*, 821 F.3d 394, 407 n.40 (3d Cir. 2016) (plaintiff failed

to show it could not challenge statements by competitor in private meetings). Plaintiffs counter-advertised through ████████████████████████████████████████████████████. ¶¶ 110-13, 137-38, 140. Also, Plaintiffs point to only a few claimed private communications: a ████████████████████████████████████████████████, ¶¶ 1667-68, and Plaintiffs offer no evidence that any of them conveyed false statements.

**No Reliance**. Plaintiffs offer no evidence any specific misrepresentation was likely to induce reliance. Instead, they cite TreeHouse's Dr. Sibley, who says ██████████████████ ███████████████████████████████████████████████████ ECF No. 1467 Ex. 2, Sibley Rpt. ¶ 1103. Dr. Sibley bases this on nothing. "Inserting the word 'economically' … does not somehow transform … a finding of fact into an admissible opinion." *SEC v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013); Sibley *Daubert*, ECF No. 1466 at 3, 23-24.

**Not Prolonged**. Plaintiffs fail to show that any false statement persisted for a prolonged period. Plaintiffs say some statements continued for "over a decade," Opp. at 94, but that is a fiction based on webpages that are archived, not navigable by consumers, or non-existent, and not attributed to Keurig. Keurig Opp. at 64; D-56.1 Resp. ¶¶ 709-14 (citing, e.g., an undated, unauthenticated screenshot Plaintiffs say is from Amazon Canada in August 2021 showing a 2.0 brewer with the message "Currently unavailable"). In fact, Keurig stopped compatibility statements in 2015 and 2016. Keurig Opp. at 64; D-56.1 Resp. ¶ 735.

## 10.  Keurig is Entitled to Summary Judgment on Lanham Act Claims

The Lanham Act claims fail for lack of falsity, materiality, and proximately caused injury. Keurig Opp. at 61-62; *Apotex*, 823 F.3d at 67-68. No challenged statement was literally false. As for implied falsity, Plaintiffs must support that claim using reliable consumer surveys. Mot. at 83-84 (discussing cases). Here, Plaintiffs' experts tested five statements, ¶¶ 316, 320-21, but one was a news article (not commercial speech), ¶ 322, and the others fail because the

consumer surveys used were not reliable.  Mot. at 84.  Plaintiffs also fail to show materiality, citing no reliable extrinsic evidence that specific misrepresentations influenced consumer purchasing decisions.  JBR says the "Oops" screen is misleading, but its experts do not opine that it altered purchasing decisions.  ¶¶ 318-19.  Finally, Plaintiffs fail to show injury.  Mot. at 83; Keurig Opp. at 69.  They say Keurig willfully made false statements so they need not prove damages, Opp. at 93-94, but offer no evidence of willfulness.  Injury may only be presumed from literally false comparative statements that directly reference a specific competitor's products or where a plaintiff proves deliberate deception in a two-player market.  Opp. at 94 n.355; *Merck v. Gnosis*, 760 F.3d 247, 259-61 (2d Cir. 2014).  None of the at-issue statements meet those criteria.

## II.   Keurig is Entitled to Summary Judgment on All State Law Claims

### A.   Competitor Plaintiffs' Tortious Interference Claims Fail

TreeHouse's tortious interference with contract claim fails unless Unilever breached an agreement.  Mot. at 85-86; Opp. at 95-96.  It is undisputed there was no breach here.  ¶ 339 (undisputed that ███████████████████████████████).  TreeHouse pivots and raises a new argument that Unilever breached an implied "duty of good faith" prior to termination.  Opp. at 95-96 n.360.  TreeHouse "may not amend its cause of action in its brief opposing summary judgment."  *Roche v. Enzo*, 992 F. Supp. 2d 213, 219-20 (S.D.N.Y. 2013).  Further, Unilever did not deprive TreeHouse of "the benefits under their agreement"; to the contrary, ██████████████████████████.  Opp. at 96 n.360 (quoting *Gelita v. 133 Second Ave.*, 2014 WL 278408, at *2 (N.Y. Sup. Ct. 2014)); ¶¶ 340, 346. TreeHouse's argument that █████████████████████████████████████████ ███████████████—TreeHouse has no claim against Keurig in the first place because there was no breach.  Opp. at 95-96; *cf. IMAF v. J.C. Penney*, 1991 WL 66892, at *1-2, 4 (S.D.N.Y. Apr. 24, 1991) (summary judgment for defendant on tortious interference because "there was no

breach," regardless of settlement between contracting parties).

JBR's tortious interference with contract claim fails because ███████████ ███████████████, ¶¶ 350-351, which is dispositive.  Mot. at 88-89.  JBR cannot save its claim by ███████████████████████████ Opp. at 97 n.367; ¶¶ 1752, 1883.  Neither is an enforceable contract for the sale of portion packs. Mot. at 88-89.

### B. Competitor Plaintiffs' State Law Antitrust and False Advertising Claims Fail

TreeHouse and JBR argue that some of their state antitrust and false advertising claims do not hinge on the success of their federal claims.  Opp. at 97-98 & n.369.  They are wrong. Mot. at 90-92.  The Illinois Antitrust Act "requires harmonization with federal antitrust law." *McGarry v. Bankr. Mgmt.*, 937 F.3d 1056, 1062 (7th Cir. 2019).  New York's Donnelly Act "should generally be construed in light of Federal precedent." *Anheuser-Busch v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988).  Plaintiffs say the Donnelly Act can be applied differently where "warrant[ed]," but offer no rationale for doing so here. Opp. at 98 n.371.  Monopolization suits under California's Unfair Competition Law must prove a violation of federal antitrust law to establish unfairness.  *Rosenman v. Facebook*, 2021 WL 3829549, at *4 (N.D. Cal. 2021).

### C. DPPs' and McLane's Unjust Enrichment Claims Fail

Plaintiffs' unjust enrichment claims depend on Plaintiffs' antitrust claims, and fail for the same reasons. Mot. at 92-93; Opp. at 99.  Summary judgment is also appropriate against McLane because Texas does not recognize unjust enrichment as an action. *Yowell v. Granite*, 630 S.W.3d 566, 578 (Tex. App. 2021); Mot. at 92.  Texas law governs McLane's claim, as New York courts consider a plaintiff's residence and locus of the harm in determining which law governs unjust enrichment claims. *Grund v. Del. Charter*, 788 F. Supp. 2d 226, 251 n.9 (S.D.N.Y. 2011) (unjust enrichment governed by law of state in which plaintiff resides); *Negri v.*

39

*Friedman*, 2017 WL 2389697, at *4 (S.D.N.Y. May 31, 2017) (same). Nor do Plaintiffs dispute that summary judgment is warranted under New York law. *Grossman v. Simply Nourish*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) (dismissing unjust enrichment claim because it "duplicates … other claims"); *Kramer v. Pollock-Krasner*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995).

## III.   Keurig is Entitled to Summary Judgment on Damages and Relief

Keurig is separately entitled to summary judgment on damages and relief.

### A.   Plaintiffs' Damages Estimates Are Unreliable

To proceed to trial, Plaintiffs must have a non-speculative measure of the damages from the challenged conduct. *USFL v. NFL*, 842 F.2d 1335, 1378-79 (2d Cir. 1988); *Vernon v. S. Cal.*, 955 F.2d 1361, 1371-72 (9th Cir. 1992); Mot. at 94. Plaintiffs say *USFL* is a post-trial decision, but it lays out "the standard for proving the amount of damages at trial," Opp. at 101 n.387, and judgment is appropriate now because Plaintiffs cannot meet it. Plaintiffs say flaws in damages models can be addressed in *Daubert* motions. But courts *also* grant summary judgment due to unreliable damages models, Mot. at 94 & n.124, which Plaintiffs fail to address. Plaintiffs say they should be given "latitude" in proving the amount of damages. Opp. at 100 (citing *Dial v. News Corp.*, 165 F. Supp. 3d 25, 38 (S.D.N.Y. 2016)). In *Dial*, the court held that the plaintiff must give the jury a reasonable basis upon which to estimate the amount of its losses caused by other factors. *Id.* The defendant there said the plaintiffs' model "calculates generalized monopoly profits." *Id.* In contrast, here, Plaintiffs' models admittedly include and calculate things unrelated to the alleged conduct, like the value of Keurig's brand. Mot. at 97-103.

JBR says its damages are just based on the "growth of the market," but its model assumes JBR should have grown *at the same rate Keurig's revenue did*. ¶¶ 438-42. Using Keurig as the benchmark is nothing like *Dial*, which used "twenty benchmark firms selected … based on their capital intensity, growth, and size." 314 F.R.D. at 119. And JBR says Keurig's growth was

inflated by the challenged conduct, ¶ 442, making it an especially inappropriate benchmark.

TreeHouse does not deny its damages model is premised on ███████████ ████████████████. ¶¶ 464-65, 467-68. It defies economics to say TreeHouse ███████████████████████████████████████████████████████████████ ███████████. Mot. at 95-96; Stiroh *Daubert*, ECF No. 1462 at 12-21; Stiroh *Daubert* Reply, ECF No. 1610 at 5-9. Keurig lowering its pack prices would decrease—not increase— TreeHouse's sales of a substitute product. *See Murphy Tugboat v. Crowley*, 658 F.2d 1256, 1260-63 (9th Cir. 1981) (judgment notwithstanding the verdict for defendant where plaintiff's model ignored competitive response).

McLane says if Plaintiffs' allegations are true then even "the most powerful buyers" were affected—███████████████████████████████████. Opp. at 104. For this dubious assertion, McLane offers no citation. McLane must prove *its own* damages. It cannot assume buyers were affected equally, measure *average* damages, and recover based on the assumption ███████ is affected the same way as everyone else. Mot. at 96. Instead of trying to defend its damages model, McLane detours and claims it "lacked even the power" to resist when Keurig "struck" a provision in its form contract. Opp. at 104-05. ██████████████████ ████████████████████████████████████████████████[16]

DPPs admit they must calculate damages for individual class members, Opp. at 103, and do not deny their expert's model *cannot* do so. ¶¶ 470-71. That distinguishes this case from DPPs' cases where the model at issue could and would be used in the individual claims process. *See, e.g.*, *In re Restasis*, 335 F.R.D. 1, 30-32 (E.D.N.Y. 2020).

---

[16] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Recognizing their expert models are unreliable, Plaintiffs say they can prove damages with fact witnesses alone, Opp. at 101, but damages computations must be in initial disclosures, Fed. R. Civ. P. 26(a)(1)(A)(i) & (iii), and ███████████████████████████████████ ████████████████████████████████████████████ The one case Plaintiffs cite relies on an advisory committee note that "the owner or officer of a business [may] testify to the value or projected profits of the business." Fed. R. Evid. 701, Committee Notes to 2000 Amendment. But no Plaintiff disclosed such a witness, and their brief does not identify any such testimony because it does not exist. Keurig is entitled to summary judgment on damages.

## B.    Competitors Cannot Prove the Amount of "Lost Sales"

Competitor Plaintiffs cannot recover lost sales when challenged conduct is "one factor among many" that led to claimed losses. *Amerinet v. Xerox*, 972 F.2d 1483, 1494-98 (8th Cir. 1992) ("When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage. This is precisely the type of 'speculation or guesswork' not permitted for antitrust jury verdicts."). Plaintiffs ignore *Amerinet*'s holding on damages, and ignore other monopolization cases that consistently hold damages must "separate out the amount of losses caused by [unlawful acts] from the amount caused by other factors." *USFL*, 842 F.2d at 1377-79; Mot. at 97-103. They cite *Publication Paper*, saying *price-fixing* "constitutes strong evidence that the alleged agreement caused … price increases." 690 F.3d 51, 67 (2d Cir. 2012). This presumption does not apply here.

Plaintiffs' cases do not excuse them from showing the claimed *amount* of damages "flows from" the alleged conduct and was not "caused primarily by something other than the alleged antitrust violation." *Discover*, 582 F. Supp. 2d at 504-05 & n.4. TreeHouse fails to dispel "alternative explanations" for lost sales, like ███████████████. *Id.* at 505-06. For

42

example, ███████████████████████████████████████████████

████████████████████████████████   TreeHouse responds with hearsay

from a TreeHouse employee who said █████████████████████████████

█████████████████.  Opp. at 106; ¶ 1266.  Similarly, ████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████, ¶ 228.  TreeHouse

says ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████.  ¶¶ 235-38.

At ██████, TreeHouse admits ████████████████████████████████

█████████████████████████████████████.  ¶¶ 206-08.

TreeHouse says only that a declaration ████████████████████████ did not include

that fact.  Opp. at 107.  And TreeHouse's other "lost customers" also have obvious major causes,

Mot. at 98 n.129, to which TreeHouse does not respond.  Its damages model is unreliable.

JBR does not dispute it lost sales because it: ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████.  ¶¶ 145-48, 152-55, 157, 159-60.  JBR tries to

downplay ██████████████████████████████████████████████

██████████████, Opp. at 107-08, ████████████████████████████ Mot. at 102.

JBR also dismisses the report as about just ███████████████ Opp. at 107, which shows

chutzpah, as JBR argues losses ███████████ caused it to miss sales for the next 15 years.

### C.   Competitor Plaintiffs' Future Damages Are Unduly Speculative

Future damages cannot be speculative. *Zenith v. Hazeltine*, 401 U.S. 321, 339 (1971). Yet JBR requests massive damages through 2029 using "speculation and guesswork" to project ten years into the future the fortunes of the single-serve coffee business. ¶ 437; *Multimatic v. Faurecia*, 358 F. App'x 643, 654 (6th Cir. 2009) (rejecting similar ten-year prediction of industry fortunes); *Point 4 v. Tri-State*, 2014 WL 12769275, at *9 (E.D.N.Y. Sept. 17, 2014) (summary judgment for defendant where plaintiff "has not demonstrated that it could calculate lost profits [over the next ten years] without undue speculation"); Mot. at 103-05. JBR's future damages are based on its strange claim that in 2014 all "millennials" decided not to drink its coffee because of the 2.0 and will never reconsider, which is unsupported by any evidence. Mot. at 104; Opp. at 109 n.413. It is also contradicted by JBR's expert, and by its own argument that the period after the 2.0 launch was just ███████████ Opp. at 107; ECF No. 1459 Ex. 1, Macartney Rpt. ¶ 249 (███████████████████). JBR calculated damages through 2019 using Keurig's growth as a "benchmark." That showed claimed damages ███████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████. Opp. at 109-10; ¶¶ 429, 433-34. That is speculation on top of speculation. JBR defends its model by saying *LePage's v. 3M,* 324 F.3d 141, 165 (3d Cir. 2003), endorsed future damages, Opp. at 108-09, but in *LePage's*, the damages extended just one year after trial and were not calculated by using an unsupported number from a press release and assuming that loss of consumer sales at a moment in time five years in the past will cause increasing harm for a decade into the future.

TreeHouse's future damages model is also unreliable:  It assumes customers TreeHouse

"lost" would have stayed with TreeHouse through the end of its damages model in 2024 regardless of what happened in the marketplace. So, for example, TreeHouse says it lost

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████. Mot. at 105-106. TreeHouse's model is unreliable.

### D. Competitor Plaintiffs Are Not Entitled to Damages on Business Tort Claims

JBR has given up its tortious interference claim. It admits ████████████████████████

████████████████████████████████, ¶¶ 356-60, and it does not deny this precludes

damages. Mot. at 106. TreeHouse may seek damages only for harm it suffered. It does not

deny ████████████████████████████████████████████████

████████████████████████████████████████████████████████, Opp. at

110-11, but regardless of whether ███████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████. It did not suffer harm and Keurig is entitled to summary

judgment. *Kronos v. AVX*, 612 N.E.2d 289 (N.Y. App. 1993) ("actual economic loss" required).

### E. TreeHouse's Damages for Costs Incurred Are Inflated

TreeHouse says whether it could have mitigated ████████ is a "disputed issue[] of fact,"

yet does not identify a single fact requiring trial. Opp. at 111. It does not deny ██████████

████████████████████████████. ¶ 118. It ignores its failure to mitigate damages, Mot. at

108, and just says Keurig is "nit-picking," Opp. at 111, by asking it to mitigate.

### F. Competitor Plaintiffs Do Not Dispute Binding Law Bars Unjust Enrichment

Competitor Plaintiffs both demand unjust enrichment based on Keurig's alleged false

advertising. Opp. at 112. Unjust enrichment is "rarely granted" and "limited to situations in

which the defendant's profits represent unjust enrichment derived from diversion of business that

*clearly would otherwise have gone to the plaintiff.*" *Burndy v. Teledyne*, 748 F.2d 767, 772 (2d Cir. 1984) (emphasis added); Mot. at 109-10.  Plaintiffs' failure to address this binding on-point case is telling.  Competitor Plaintiffs cite three cases: (1) *Merck* carefully notes it applies to false advertising "where the parties are direct competitors *in a two-player market*," 760 F.3d at 262 (emphasis added), but there are more than a dozen competitors here, ¶ 9; (2) *River Light* involved willful infringement where the defendant tried to "sow confusion *between the two companies' products*," 2015 WL 3916271, at *6-7 (S.D.N.Y. June 25, 2015), but Plaintiffs concede that is not the case here, ¶¶ 364-65 (in but-for world, not all sales Keurig won would be diverted to either JBR or TreeHouse); and (3) *Coca Cola* does not mention unjust enrichment at all.  Opp. at 112 nn.420-22.  TreeHouse nonetheless demands 100% of the claimed unjust enrichment for itself.  JBR's damages model quietly concedes it is not entitled to 100% of the claimed unjust enrichment, allocating it by market share.  But that approach is not permitted by the law either. *Burndy*, 748 F.2d at 772-73;  Keurig Opp. at 80 n.69.

## G.    Plaintiffs Are Not Entitled to Injunctive or Declaratory Relief

In the final pages of their brief Plaintiffs reveal they want an injunction prohibiting Keurig from ever selling any brewer that "disadvantage[s]" or "treat[s] … differently" any competitor.  Opp. at 114-15.  This new and sweeping demand would favor competitors over consumers, contrary to the antitrust laws. *Berkey Photo*, 603 F.2d at 285 (courts must exercise "caution against [granting] a decree that might stifle future innovation").  Plaintiffs argue competitors "are precluded from entering," Opp. at 113-14, but Plaintiffs told the Court there was *so much entry* in the real world that, in the but-for world, "additional [entrants] … are unlikely" and even if they did enter would have no effect on prices.  ECF No. 1538 at 19-20.

## IV.     Declarations from Undisclosed Witnesses Should Be Disregarded

More than 100 lawyers entered appearances for Plaintiffs in this case. Discovery ran for years. Plaintiffs served more than 250 subpoenas on non-parties, which produced more than one million documents and sat for more than 300 hours of depositions. In total, parties and non-parties produced roughly *10 million documents*, and sat for *200 fact depositions* in this litigation. If there were evidence to support Plaintiffs' claims they would have it by now.

They do not, and they know it. Recognizing that the massive record does not support them proceeding to trial, Plaintiffs generated a "stack of declarations" by undisclosed witnesses, and made those declarations central to their opposition to summary judgment. Opp. at 2 & n.1 (arguing declarations are "sufficient to create a genuine material issue of disputed fact"). The declarations do not create any genuine issue of material fact. They are unreliable, untested, and untimely, and must be disregarded under Rule 37(c)(1).[17]  *See* Keurig Opp. Pt. IX.

Plaintiffs cite fifteen untimely declarations in their opposition, including nine cited in their motion, which Keurig has addressed. *Id.* The six added declarations are:

| Declarant | Date Produced | Location of Plaintiffs' Citations |
|---|---|---|
| Kenneth Noble, TreeHouse | May 11, 2020 | Opp. at 6 n.25; ¶¶ 85, 1730, 1933. |
| Michael DeMitri, DeMitri Chesapeake Sales | June 17, 2020 | Opp. at 16 n.66, 19 n.77, 50 n.204; ¶¶ 1141-42. |
| Robert Pontius, Albertson's Company | August 21, 2020 | Opp. at 40, 41 n.171, 52 n.211 & n.212, 83, 84 n.317; ¶¶ 1327, 1330, 1462. |
| Michele Rivers, TreeHouse | August 27, 2020 | Opp. at 61 n.239; ¶¶ 262, 265, 1211. |
| Jose Manuel Bartolini, TreeHouse | October 26, 2021 | Opp. at 4-5 n.15, 4 n.17, 13 n.48, 18 & n.74, 21, 33 n.139, 35 & n.145 & n.146, 58-59 n.233, 59 & n.234, 62 n.243, 64, 66 n.254 & n.256 & n.257, 69, 84 n.318, 115; ¶¶ 1152-53, 1185, 1812-25, 1838-39, 1939, 1997-2001. |

---

[17] Neither of the cases Plaintiffs cite, Opp. at 2 n.1, involves a court crediting declarants who were untimely disclosed. Courts routinely exclude such testimony. Keurig Opp. at 96-97 (citing cases).

| ███████████ | October 27, 2021 | Opp. at 4 n.15, 19 n.75, 34, 41 n.172, 77 n.292; ¶¶ 1878-79, 1989, 1993 |

Mr. Noble is the only Declarant who has ever appeared on Plaintiffs' disclosures, and he was added only 12 days before fact discovery closed. Ex. J-15 (TreeHouse Second Amended Initial Disclosures, dated May 8, 2020). That is inadequate notice. *See Nathan v. Ohio State*, 2012 WL 12985801, at *1, 3 (S.D. Ohio Apr. 17, 2012) (disclosures amended 9 days prior to the close of fact discovery violated Rule 26). TreeHouse agrees its disclosure came too late: when Keurig requested Mr. Noble's deposition the day after receiving his declaration—just *two business days after he was added to the initial disclosures*—TreeHouse counsel stated it was too late for a deposition. Ex. K-4, Email from Mr. Badini, dated May 13, 2020 (opposing deposition at "this late date"). If it was too late for Mr. Noble's deposition, as TreeHouse stated, then it was too late for Plaintiffs to disclose him. The same is true of all the declarants, who Plaintiffs *never* bothered to disclose, and just served surprise declarations from after discovery had ended.

Plaintiffs cannot show their violations were justified or harmless. Keurig objected to these untimely declarations a year and a half ago, and Plaintiffs provided no justification, much less a legally appropriate one. Keurig Opp. at 94-96. This weighs heavily in favor of preclusion. *Id*. The violations also caused substantial harm to Keurig, which was deprived of the opportunity to take evidence from the declarants and from others as to their testimony. Keurig Opp. at 96-98. Plaintiffs already had discovery on the topics in the untimely declarations.

**Mr. Noble**. Mr. Noble used to work for TreeHouse and talks about ██████████ ████████████████████████████████████████████████████████ █████████████████████████. ¶ 1933. But no Plaintiff has made any claim about the supply of ████████, making his declaration irrelevant. Mr. Noble also says TreeHouse's

████████████████████████████████████████████████████

████████████████████.  ¶¶ 1730-31

**Mr. DeMitri**.  Mr. DeMitri is a TreeHouse broker who says TreeHouse would have sold more packs to distributors  if distributors  did not have contracts with Keurig.  ¶¶ 1141-42. Plaintiffs  have had much discovery from AFH distributors  and brokers on AFH sales.  Keurig Opp. at 99-102 (discussing  AFH distributor  and broker testimony).

**Mr. Pontius**.  Mr. Pontius ███████████████████████████████████████████

██████████████████████████████████████████████████.  Pls.' 56.1 Ex. 978, ALB0000001, Robert Pontius (Albertson) Decl. ¶ 13.  The topic of *Sturm* was covered in discovery:  Ten retailer employees were deposed; ██████████████████████

██████████████.[18]  Mr. Pontius also says retailer switching costs ███████████████████ ¶¶ 1327, 1330.  Retailer switching, too, was covered in discovery.  ¶¶ 196, 223, 225, 227, 230-31.

**Ms. Rivers**.  Ms. Rivers works for TreeHouse. █████████████████████████

████████████████████.  ¶¶ 262, 265, 1211.  The parties explored this in discovery, and it is undisputed that ██████████████████████████████████████████

██████.  ¶ 263 (█████████████████████████████████████).

**Mr. Bartolini**.  Mr. Bartolini  is a TreeHouse employee who says █████████████

██████████████████████████████████████████.  ¶¶ 1152-53,  1812- 1825, 1838-39, 1997-2001.  This topic was covered during discovery. ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[18] Ex. K-5, Target 30(b)(6) (O'Connor) Dep. Tr. 213:23-215:12, 217:8-16; Ex. K-6, Staples 30(b)(6) (Scanlan) Tr. 164:15-165:3; Ex. K-7, Shannon Axthelm (Costco) Tr. 173:10-13; Ex. K-8, Office Depot 30(b)(6) (Davis) Tr. 200:20-202:2.

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████, a Keurig-compatible brewer

manufacturer. ¶¶ 1878-79, 1989, 1993. Plaintiffs say ███████████████████████

██████. *Id.* But it is undisputed that a dozen single serve brewer manufacturers entered while

this case has been pending, and that reality trumps ████████ declaration. Mot. at 26-29.

The undisputed facts preclude Plaintiffs' claims, and Plaintiffs cannot save their claims

with a stack of untimely declarations. The declarations are improper and prejudicial, and the

Court should disregard them. Keurig Opp. at 102-03.

## CONCLUSION

When this litigation began in 2014 it centered on Keurig's forthcoming 2.0 Brewer. The

2.0 Brewer has come and gone. *In re Keurig Green Mountain*, 2014 WL 12778832, at *5-6

(S.D.N.Y. Sept. 19, 2014) (finding it was "wholly uncertain" whether the 2.0 would be

successful at all, much less cause the imminent harm JBR claimed), *aff'd*, *JBR v. Keurig*, 618 F.

App'x 31 (2d Cir. 2015). Keurig has spent millions of dollars defending this case. TreeHouse

and JBR were not excluded. They ████████████████████████████████████████.

Other Keurig-compatible pack manufacturers entered and did the same. ████████████████

████████████████████████████ This is nowhere close to a viable antitrust case.

The Court should grant summary judgment to Keurig. Plaintiffs' summary judgment

motion, the class certification motion, and 14 *Daubert* motions should be denied as moot.

Dated: December 15, 2021

*/s/ Leah Brannon*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

**Leah Brannon**
**George S. Cary**
**Kenneth S. Reinker**
**Carl Lawrence Malm**
**Lisa M. Danzig**
gcary@cgsh.com
lbrannon@cgsh.com
kreinker@cgsh.com
lmalm@cgsh.com
ldanzig@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

**Rahul Mukhi**
rmukhi@cgsh.com
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000

*/s/ Wendelynne J. Newton*

BUCHANAN INGERSOLL & ROONEY PC

**Wendelynne J. Newton**
**Gretchen L. Jankowski**
**Mackenzie A. Baird**
wendelynne.newton@bipc.com
gretchen.jankowski@bipc.com
mackenzie.baird@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Telephone: 412-562-8800

*Attorneys for Defendant Keurig Green Mountain, Inc.*