WINSTON & STRAWN LLP

North America Europe Asia

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**ALDO A. BADINI**
Partner
212-294-4601
ABadini@winston.com

April 8, 2022

**VIA ECF**
Hon. Vernon S. Broderick
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:** *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, Case No. 1:14-md-02542-VSB
**Letter in Opposition to Certain Keurig and Third-Party Requests to Seal**

Dear Judge Broderick:

I represent Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse"), and I write on behalf of TreeHouse and Plaintiffs JBR, Inc. (d/b/a Rogers Family Company), McLane Company, Inc., and Direct Purchaser Plaintiffs (collectively, "Plaintiffs"). Plaintiffs write pursuant to this Court's orders and Individual Rule 5.B.iii in opposition to certain motions to seal various information filed in connection with the parties' summary judgment and *Daubert* briefing. *See* ECF Nos. 1436, 1583, 1689, 1717.[1]

Movants fail to carry their burden to overcome the presumption of public access to the judicial documents they request to seal.[2] Most of the material at issue is stale or merely reveals illegal, embarrassing, or reputationally harmful conduct.

For example, Keurig and Dunkin' Brands, Inc. ("Dunkin'") seek to seal evidence of their 2011 [redacted] While this is embarrassing and reputationally harmful, that is not a valid reason for sealing under Second Circuit law. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 n.5 (2d Cir. 2006); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982).[3] Additionally, document discovery in this case (with the

---

[1] In the interests of judicial efficiency, Plaintiffs respectfully submit this single, ten-page brief in opposition to Keurig's and third parties' ("Movants") motions to seal (identified by name and ECF number in Appendix F) rather than filing separate responses to the 72 pages (excluding exhibits) of the 20 motions to which Plaintiffs object, including 19 filed by 20 third parties (out of a total of 23 separate third party motions).

[2] Certain third parties have sought leave to seal documents that have not been submitted to the Court. Accordingly, any motion to unseal these documents is not ripe. Should any party seek to introduce such materials in the future and Keurig or any third party seek to seal them, Plaintiffs reserve their right to oppose such a motion.

[3] This Court has routinely denied sealing of evidence of salacious crimes. *See, e.g., Bronx Conservatory of Music, Inc. v. Kwoka*, No. 21-CV-1732, 2021 WL 2850632, at *3 (S.D.N.Y. July 8, 2021) (adverse publicity and reputational injury due to sexual harassment cannot justify sealing order); *Doe v. City of N.Y.*, No. 15-CV-117, 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) (privacy interest and potential harm to economic livelihood insufficient to seal assault allegations). It follows, *a fortiori*, that evidence of "mere" business offenses or crimes deserves no greater protection.

exception of certain transactional data) ended in 2017. This Court has specifically admonished against any attempt to seal such stale information in this very case. *See* Tr. of Apr. 5, 2019 Hr'g 7:3–11 (parties should view confidentiality with an eye toward whether "time has overtaken" issues and "they're no longer sensitive"). Similarly, Movants offer only vague business concerns in hopes of justifying their requests to seal, failing to set forth the requisite compelling reasons.

Plaintiffs do not object to Movants' requests to seal certain detailed, non-stale financial and strategic business information. However, Second Circuit law requires that the information discussed below and detailed in the attached appendices be made public.

## I. Legal Standards

The three-part standard governing requests to seal is undisputed. First, the Court determines whether it is a "judicial document"; second, the Court assesses the weight of the presumption of access to be given to the document; and third, the Court considers any "countervailing factors" or "higher values" that weigh against disclosure. *See Olson v. Major League Baseball*, --- F.4th ----, No. 20-1831-CV, 2022 WL 828748, at *20–21 (2d Cir. Mar. 21, 2022); *Lugosch*, 435 F.3d at 119–26.

As to the *first step*, the materials are "judicial documents." *See Lugosch*, 435 F.3d at 121, 126 (summary-judgment materials are judicial documents); *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 220–21 (S.D.N.Y. 2019) (same as to *Daubert* materials). *Second*, where the documents "directly affect an adjudication or are used to determine litigants' substantive legal rights"—as here, in the summary-judgment context—the "presumption of access is at its zenith, and thus can be overcome only by extraordinary circumstances."[4] *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (citations omitted). Such summary-judgment documents "*should not remain under seal absent the most compelling reasons*." *Lugosch*, 435 F.3d at 121 (emphasis added) (quoting *Joy*, 692 F.2d at 893); *Republic of Turkey*, 425 F. Supp. 3d at 220–21. *Third*, while a party may try to overcome the presumption of public access by demonstrating "higher values," sealing must be narrowly tailored and cannot be based on shielding disclosure of illegal conduct or avoiding reputational harm. As the Second Circuit has noted, the "desire of parties to shield prejudicial information contained in judicial records from competitors and the public . . . cannot be accommodated by courts without seriously undermining the tradition of an open judicial system." *Lugosch*, 435 F.3d at 123 n.5; *see also Joy*, 692 F.2d at 894 (reversing sealing of embarrassing information). The staleness of information further weighs against sealing. *See Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407, 2020 WL 3791865, at *8–9 (E.D.N.Y. July 7, 2020) (movant failed to specify how disclosing "business strategies that were formulated many years ago would result in any competitive harm"); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 256 (S.D.N.Y. 2009) (party failed to proffer "specific facts showing that disclosure of the specific fees" would be harmful "seven to fourteen years after the fact").

---

[4] Plaintiffs reserve the right to oppose any request to seal made at trial, where the presumption is even stronger.

## II. Argument

### A. *Movants Fail to Meet Their Burden to Seal Judicial Documents*

Movants' requests rely on vague generalizations rather than any particularized showing of concrete harm required to overcome the strong presumption of public access. *See In re Google Digit. Advert. Antitrust Litig.*, No. 21-CV-6841 (PKC), 2021 WL 4848758, at *3 (S.D.N.Y. Oct. 15, 2021) (denying motion to seal where vague descriptions failed to identify "concrete harms that outweigh the presumption of public access"); *In re SunEdison, Inc. Sec. Litig.*, No. 16-cv-7917, 2019 WL 126069, at *1–2 (S.D.N.Y. Jan. 7, 2019) (rejecting sealing based on failure to explain "why specific documents or information are sensitive or risk harm to any person or entity").

Keurig raises only general business concerns, *see, e.g.*, Mot. at 2–4, and its declarations likewise provide no specific reasoning and instead simply parrot Keurig's own words.[5] *See* Ex. D. These arguments do not set forth "higher values" that can overcome the presumption of public access, which can include the privacy interests of nonparties, law enforcement interests, and certain secret business information (such as trade secrets). *Lugosch*, 435 F.3d at 120; *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 117-CV-00598(BKS)(CFH), 2021 WL 776701, at *2 (N.D.N.Y. Mar. 1, 2021). The third-party requests for sealing suffer from a similar failure to make any particularized showing as required to shield First Amendment-protected material from the public.[6] *See In re Google*, 2021 WL 4848758, at *3; *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, No. 15 Civ. 211 (LGS), 2021 WL 1541385, at *2 (S.D.N.Y. Apr. 20, 2021); *Alcon Vision*, *LLC*, 2020 WL 3791865, at *8–9. These statements are precisely the "vague business concerns" that courts in the Second Circuit routinely reject as failing to justify sealing judicial documents.[7] *See In re Google*, 2021 WL 4848758, at *3; *see also Syntel Sterling*, 2021 WL 1541385, at *2; *Alcon Vision*, 2020 WL 3791865, at *8–9.

In addition to Movants' failure to carry their burden, their requests fail for reasons discussed below.

---

[5] Keurig's motion should be denied for another reason: Keurig simply lists in its Attachment 1 (ECF No. 1769) various "Bases for Sealing" for each document without specifying which basis applies to which material. *See, e.g.*, *In re Google*, 2021 WL 4848758, at *3 (denying motion to seal where the movant "vaguely described" purported harms).

[6] The requests that fail this standard in whole or in part are filed at ECF Numbers 1730, 1759, 1733, 1797, 1760, 1767, 1731, 1798, 1766, 1802, 1779, 1786, 1749, 1750, 1768, 1757, 1788, 1743, and 1772; *see also* Appendix F. By contrast, third party Winpak's submission is illustrative of the type of specific, detailed request to seal information that may be sufficient to outweigh the strong presumption of public access, *see* ECF No. 1761, and Plaintiffs therefore do not challenge Winpak's request to seal, or the requests set forth in three other third-party motions.

[7] Several third parties quote out of context language from cases to suggest that third parties' "privacy interests" somehow lessen the burden for third parties to overcome the presumption of access. Not so. The privacy interests at issue in those cases are information like medical data, personal financial data, and personal identifying information. *See, e.g.*, *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (discussing financial records of a wholly owned business, family affairs and illnesses).

1. ***Disclosure of Illegal, Embarrassing, and Reputationally Harmful Conduct or Information Is Not a Reason to Shield Judicial Documents From the Public***

In requesting to seal the information in Appendix A, Movants attempt to prevent the public from learning that they engaged in conduct that violates the antitrust laws, would be embarrassing, and, as to Keurig, is bad for its case. As noted above, this includes [redacted]. Keurig also seeks to hide that it knew its brewer monopoly created "[redacted]" for competitors or that it admitted that Keurig "[redacted]." And Sagentia, a company that consulted with Keurig over eight years ago,[8] does not want the public to know that it concluded that Keurig's attempts to lock out competition were "[redacted]." Movants argue that these damning discussions are protectable business "negotiations" or "strategic relationships." But a brief review of some examples reveals that the material at issue has no sensitive commercial information—it is simply potentially harmful to Movants' reputations.

***Keurig's and Dunkin's Group Boycott Agreement.*** Both Keurig and Dunkin' attempt to seal testimony of Keurig's former president, Michelle Stacy, admitting that Keurig and Dunkin' agreed to [redacted]. *See* ECF No. 1769, KGM Mot. to Seal ("Mot."), Attach. 1, at 52; ECF No. 1760, Ltr. Mot. to Maintain Dunkin' Donuts Exs. & Materials Under Seal ("Dunkin' Mot."), at 4; *see* Ex. E (excerpted testimony). Keurig requests to seal more than four and a half pages of that testimony, contending that it reflects "Financial information / related strategies + analyses" and "Contractual terms / related negotiations / strategic partnerships." *See* Mot. Attach. 1, at 52. Dunkin' says it "discusses Dunkin's confidential information regarding Dunkin's relationship with Keurig and how it affected other competitors." Dunkin' Mot. at 4. But the testimony is not relevant to "negotiations" or "strategic partnerships." *See* Ex. E. Instead, this is simply embarrassing and damning evidence of a conspiracy; but that does not warrant sealing. *See Doe*, 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) (privacy and economic harm do not justify sealing evidence of illegal conduct[9]).

***Keurig uses variety and output restrictions to control the "[redacted]" and "[redacted]."*** Keurig seeks to seal an entire document that exposes Keurig's maintenance of its monopoly power by controlling its competitors' SKUs, reducing output, and using the 2.0 Brewer's ironically named Consumer Benefit Technology ("CBT") to continue to do so. Specifically, Brian Kelley, Keurig's CEO, admitted that "[redacted]." *See* ECF

[8] *See* ECF No. 896-2, at 27:20–28:1, 41:9–19.

[9] Dunkin' and other third parties invoke the Protective Order, and certain third parties point to confidentiality provisions in contracts they seek to seal to justify sealing. Neither of these is a "higher value" that can outweigh the presumption of public access. *See, e.g.*, *Est. of Jackson v. Cnty. of Suffolk*, No. 2:12-cv-1455, 2019 WL 3253063, at *8 (E.D.N.Y. July 19, 2019); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471–72 (S.D.N.Y. 2017); *Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, No. 12-cv-3274, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012).

No. 1794-39 (KGM Ex. S066), at KGM03549907. While Keurig's asserted "Basis for Sealing" is that the material relates to "Financial information / related strategies + analyses," Mot. Attach. 1, at 49, there is no such specific sensitive information in this seven-year-old document. Keurig similarly seeks to seal its admission that Keurig "[redacted]." *See* ECF No. 1773-3 (KGM Ex. R003), at 3. While these admissions are embarrassing and may upset Keurig's partners, that is not a proper basis for sealing information that is central to the adjudication of Keurig's monopoly power, reduction of output, and harm to competition and consumers.

***Keurig admits to barriers to entry.*** Keurig seeks to seal a sentence from an expert report submitted by the Honorable James Ware (Ret.), quoting a document from a former Keurig consultant, Sagentia, recounting a Keurig admission that the markets at issue had significant barriers to entry. Specifically, the document notes that "[redacted]." *See* ECF No. 1775-45; ECF No. 1769 Attach. 1, at 16. Keurig's "Basis for Sealing" is that it relates to "Product development / modeling / testing / performance metrics" and that it is "Privileged / 502(d)" material. ECF No. 1769 Attach. 1, at 16. But there is no legitimate basis for sealing this admission, which directly contradicts a central argument made by Keurig in its summary-judgment papers, where it pretends that no barriers to entry exist. *See, e.g.*, ECF No. 1494, at 4, 23–29, 32–36. Nothing in this sentence discusses "Product development / modeling / testing [or] performance metrics." And the fact that Keurig has put this very material fact at issue further highlights why sealing would be an impermissible denial of public access to the summary-judgment record.[10]

***Sagentia admits Keurig's plans for the 2.0 Brewer were "[redacted]."*** A Sagentia email shows its recognition that Keurig's planned "[redacted]," that Keurig was [redacted], and that Sagentia thought it wise to "[redacted]." ECF No. 1752-9 (Sagentia Ex. I); *see also* ECF No. 1752-8 (Sagentia Ex. H). This document, again, is key to the public's understanding of the summary-judgment issues, contradicting Keurig's attempts to paint a false picture of a benign intent in launching the 2.0 Brewer, which its own third-party consultant recognized was "[redacted]."

Sagentia argues that the email reflects "internal business deliberations and strategy, mental impressions, and confidential information" related to "services it provided to Keurig." ECF No. 1750, at 4. The email contains no such "business deliberations," and the "mental impressions"

[10] Moreover, contrary to Keurig's sealing attempt, the fact that Keurig brewer patents were one of the barriers to entry is not confidential, as its patents and the role they played are a matter of public record. *See Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1371 (Fed. Cir. 2013) ("Keurig owns the '488 and '938 patents directed to brewers and methods of using them to make beverages."). And Keurig's assertion that this statement is "Privileged / 502(d)" material is frivolous. This quoted material is from an internal Sagentia memo. Sagentia does not claim this document is privileged. *See* ECF Nos. 1750, 1752-15. Nor is it stamped with a "502(d)" legend in either the Sagentia or the Keurig productions. *See* Ex. F, KGM10469992 to -96.

simply reveal the illegality of Keurig's plan. In any event, Sagentia makes no effort to explain how this email (or any of the other *fourteen* documents it seeks to seal in their entirety) would harm it in any way, especially in light of the fact that most of these are *a decade or more old* and Sagentia has not consulted for Keurig for eight years. *See* ECF Nos. 1752-2 to -15.[11]

***JAB seeks to hide Peet's*** [redacted]***, and Peet's seeks to hide facts harmful to Keurig.*** JAB, which owns Keurig and Peet's,[12] seeks to maintain under seal the fact that [redacted] on the basis that the acquisition "[redacted]." ECF No. 1783 Ex. A, JAB-KGM-MDL-00160951. But JAB makes no effort to explain the harm it would face with disclosure—JAB simply says that "it would provide competitors insight into [its] strategic approach to the coffee market." In any event, it makes no sense that disclosure of the letter would give the public insight into *JAB's* "strategic approach" when *the letter was sent not by JAB but by Peet's, in 2010, two years before Peet's was acquired by JAB.*[13] The possibility that disclosure of this letter, which candidly acknowledges Keurig's monopoly conduct, *written at a time before JAB owned Keurig*, may ruffle feathers within the vast JAB organization is not reason to seal it. Peet's attempts to seal numerous similar statements complaining about Keurig's actions, including how the 2.0 "[redacted]," suffer from similar defects. ECF No. 1791 Ex. A, PT-00023642 to -43.

In sum, as shown above, Movants attempt to prevent the public from learning that they engaged in conduct that would be embarrassing and, in some cases, violated the law.[14] But that is not an appropriate basis for keeping documents shielded from public view. Indeed, when merely prejudicial information is at stake, "*the greater the motivation a corporation has to shield its operations, the greater the public's need to know*." *Lugosch*, 435 F.3d at 123 n.5 (emphasis added).

### 2. *Most Information Requested to Be Sealed Is Stale*

Not only are the materials described above and specified in Appendix A not protectable because they are embarrassing but they also happen to be stale. As this Court has recognized, information that may once have been sensitive becomes less so as it ages. *See* Tr. of Apr. 5, 2019 Hr'g 7:3–11. And yet, as specified in the attached Appendix B, both Keurig and numerous third parties attempt to seal reams of information that is ***eight or more years old*** (in Keurig's case, even stretching back to ***2006***) without detailing how such disclosure could cause them any harm today.

---

[11] In relying upon previous sealing decisions by this Court, Sagentia ignores the explicit finding by Judge Cave that the documents then at issue were not "judicial documents." ECF No. 855, at 3. They are now and, as such, receive the highest presumption of public access.

[12] *See* Hanna Ziady, *The Owner of Peet's Coffee Presses Ahead With $2.2 Billion IPO*, Cnn.com (May 19, 2020), https://www.cnn.com/2020/05/19/business/jde-peets-ipo-europe/index.html ("JAB Holdings, the investment firm behind Peet's . . . will retain its majority stake, the company said. JAB . . . also owns Keurig Dr Pepper.").

[13] *See Peet's Coffee & Tea Going Private for $977.6M*, Boston.com (July 23, 2012), http://archive.boston.com/business/articles/2012/07/23/peets_coffee__tea_going_private_for_9776m/.

[14] Additional attempts to seal embarrassing or reputationally harmful information abounding in the materials sought to be sealed by Movants are identified in the attached Appendix A.

Courts reject such unsubstantiated requests. *See supra* p. 2; *In re Parmalat*, 258 F.R.D. at 256 (sealing information between seven and fourteen years old requires articulation of specific harm).[15]

### 3. *Keurig's Various Anticompetitive Agreements Are Not Confidential Because They Are Central to the Adjudication of This Case and Are Already Public*

Movants seek to redact numerous provisions of Keurig's agreements and seek to seal dozens of other agreements in their entirety. These requests should be denied for two additional reasons: (1) the provisions sought to be sealed are central to the adjudication of this case and (2) the content of those provisions has already been made public from the disclosure of their prior, standardized terms reaching back more than a decade. Accordingly, as discussed below and specified in Appendix C, Keurig's and third parties' attempts to shield essential evidence of Keurig's alleged anticompetitive conduct from the public should be rejected.

#### (1) The Exclusionary Clauses Are Central to Adjudication of This Case

Keurig's agreements with distributors, brands, and suppliers have been central to the antitrust allegations in this case and are featured in Plaintiffs' motion for summary judgment. As examples, the Loyalty Clause in KAD and KARD agreements form the basis of Plaintiffs' tying claims, *see* ECF No. 1495, at 42–51; Keurig's Boycott, Variety Restriction, Market Allocation, and Brand Non-Competition Clauses in Brand Competitor Agreements are the bases for several of Plaintiffs' Section 1 claims, including as to Group Boycotts and Concerted Refusals to Deal, *see id.* at 5–21, and Keurig's Supplier Non-Competition Clauses are central to Plaintiffs' exclusive-dealing claims, *see id.* at 23–35.[16]

In *Moroughan v. County of Suffolk*, the court held that concerns over disclosure of "the confidential and internal nature" of certain materials "is particularly weak" because it reflects "highly material portions of the underlying evidence in the record" relating to the adjudication of summary-judgment motions. No. 12CV0512JFBAKT, 2021 WL 280053, at *4 (E.D.N.Y. Jan. 24, 2021). The court stressed that sealing such information "would, to a significant extent, deprive the public of the ability to fully evaluate the Court's reasoning and ultimate decision," and that "the public has a strong interest in access to *all the evidence* surrounding those issues . . . in order to allow the public to make their own assessment of the parties' summary judgment arguments and

---

[15] Other courts agree. *See, e.g.*, *Zavala v. Wal-Mart Corp.*, 2007 U.S. Dist. LEXIS 67282 (D.N.J. Sept. 12, 2007) (declining to seal emails and invoices more than three years old); *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2018 U.S. Dist. LEXIS 234486 (D. Minn. June 20, 2018) (declining to seal nearly six-year-old emails).

[16] Keurig's exclusionary agreements with numerous retailers are also a feature of the parties' summary judgment briefing and are therefore judicial documents. *See, e.g.*, ECF No. 1773-1 at 47. But Keurig improperly seeks wholesale sealing of numerous retailer contracts containing exclusionary provisions (as shown in Appendix C) even though it does not seek to seal the fact that those exclusionary provisions are included in its agreements. *See, e.g.*, ECF No. 1773-3 (KGM Ex. R003), at 50 n.205, 51, 54; *see also* ECF No. 1564, at 55 (page from Plaintiffs' summary judgment opposition that Keurig did not seek to seal, discussing exclusivity with Meijer). Nor does Keurig seek to seal, for example, the fact that it "secured exclusivity . . . from Target, Walmart, Costco, Kohl's and Harris Teeter." ECF No. 1773-3 (KGM Ex. R003), at 51. As detailed in Appendix C, Keurig's attempt to broadly seal exclusionary provisions in retailer agreements should be rejected.

the Court's decision." *Id.*[17]

Because the contract terms here are likewise central to issues involving adjudication of the parties' claims, Keurig's attempts to seal these provisions in its contracts should be rejected.

**(2) The Provisions at Issue Are Standard and No Longer Confidential**

As the attached exhibits comparing provisions in Keurig's agreements demonstrate, Keurig has used the same provisions in its agreements for years. It is simply not true that Keurig drafts unique contracts with each entity with which it does business.[18] For example, Keurig has admitted that the Loyalty Clause has been a standard provision in every KAD and KARD agreement from 2009 to present. ECF No. 1495, at 43; PSUF 354–56. Yet Keurig attempts to seal the use of that clause in numerous agreements dated 2016 and later even though Keurig's standard KAD Agreement containing the loyalty clause had already been publicly filed as an attachment to TreeHouse's complaint in 2014. Ex. 5A to TreeHouse Am. & Supp. Compl. ("THS Am. Compl."), *TreeHouse Foods, Inc. v. Green Mountain Coffee Roasters, Inc.*, No. 14-cv-00905 (VSB) (S.D.N.Y. 2014), ECF No. 86-5. Inconsistently (and fatal to their overall position), neither Keurig nor Vistar seeks to seal the 2014 Vistar KAD/KARD Agreement, which was filed as Exhibit 182 in Support of Plaintiffs' Motion for Summary Judgment. Both Keurig and Vistar, however, seek to seal in its entirety the 2017 Vistar KAD/KARD Agreement, *which contains a virtually identical Loyalty Clause as the 2014 Agreement*. ECF No. 1769 Attach. 1, at 18 (Keurig); ECF No. 1743, at 1–2 & n.1 (Vistar); *see also* Ex. A (comparing Loyalty Provision language).

Keurig argues sealing is necessary to protect "Contractual terms / related negotiations / strategic partnerships," ECF No. 1769 Attach. 1, at 18, but its 30(b)(6) witness testified that the loyalty provision was standard and required and in all KAD agreements over time stretching back to 2009, rendering it stale. *See* ECF No. 1491 ¶ 356. Similarly, Vistar says the 2017 agreement "is the result of vigorous arms-length commercial negotiations between Vistar and Keurig," and that disclosure "would significantly harm Vistar's competitive standing" because purchasers and suppliers could use it to leverage "more favorable terms" and "obtain concessions." ECF No. 1743, at 2. Apart from the fact that these vague business concerns are routinely rejected as grounds to seal judicial documents, *see supra* p. 3, Exhibit A shows that nothing material has changed from the Loyalty Clause in the 2014 Vistar Agreement (which neither Keurig nor Vistar seeks to seal) to the 2017 version, hardly demonstrating vigorous negotiations.

The same goes for Keurig's attempts to seal language in its Brand Competitors and Licensees and in its Suppliers Agreements as demonstrated in the comparison charts in Exhibit B and Exhibit C, respectively. For example, Keurig improperly seeks to seal language from a Caribou Coffee agreement that was *publicly filed* seven and a half years ago as an attachment to

---

[17] *See also In re Google*, 2021 WL 4848758, at *3 (declining to seal material that gave "concrete detail" about claims).
[18] To the extent that pricing or other specific competitively sensitive terms are unique to each customer, Keurig may have an argument to redact those specific terms (assuming the agreements are not otherwise stale). But such an argument does not justify the sealing of wholesale agreements or standard terms.

TreeHouse's Amended and Supplemental Complaint in this case.[19] *Compare* Ex. 3 to THS Am. Compl., ECF No. 86-3, *with* ECF No. 1775-48 (KGM Ex. R102), at 3.

In sum, as demonstrated by comparing the language in historical agreements in Exhibits A, B, and C and as identified and detailed in Appendix C, Keurig's attempts to seal the exclusionary clauses in its contracts that are at the heart of this case must be denied. These clauses are essential evidence, and they not only are standard across Keurig agreements dating back to before 2009 but have largely been made public already. As the Second Circuit has observed, "however confidential [information] may have been beforehand, subsequent to publication it [is] confidential no longer." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). Accordingly, this Court should reject the suggestion that disclosure of this information will be competitively harmful.

**4. *Keurig Inappropriately Uses Rule 502(d) to Attempt to Shield Documents That Should Be Public***

Keurig relies on "Privileged / Rule 502(d)" in seeking to seal certain material. However, the materials detailed in Appendix D are not protectable on that ground. For example, Keurig seeks to seal excerpts from the Rule 30(b)(6) deposition of Mark Wood regarding public patents. *See* ECF No. 1794-22 (KGM Ex. R250) 64:23–65:23. This information is not confidential and therefore is not privileged.

**5. *Keurig's Aggregate and Generalized Pricing, Installed Base Measures, and Market Share Percentages Are Not Protectable***

Plaintiffs do not object to Keurig's or third parties' requests to seal detailed pricing, margin, sales, and cost information; legitimate strategic business information; or detailed bid and payment information to the extent such information is not stale. However, Keurig seeks to seal numerous instances of *aggregate* or *generalized* pricing references and sales figures, as well as "installed base" measures and certain market share percentages. For example, Keurig seeks to seal statements such as, "[redacted]," and, "[redacted]." *See* ECF No. 1773-3 (KGM Ex. R003), at 3, 20. These statements, however, do not even reveal Keurig's pricing but are instead central to the adjudication of this case in that they provide direct evidence of Keurig's monopoly power. Keurig fails to explain with the required specificity why aggregate pricing or generalized characterizations about pricing or sales information would be harmful. In such instances, Second Circuit courts reject attempts to seal such nonspecific information. *See, e.g.*, *Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-CV-6276 (AJN), 2018 WL 4759744 (S.D.N.Y. Sept. 30, 2018), *on denial of reconsideration*, No. 16-CV-6276 (AJN), 2019 WL 3858621 (S.D.N.Y. Aug. 16, 2019). The same goes for Keurig's request to seal "installed base" measures and its market share. First of all, Keurig's "installed base" (placed brewers) is information that it generally has publicly reported. *See, e.g.*, Ex. G. But further, this information is directly relevant to Keurig's dominant position in the market, and courts recognize the

---

[19] Any member of the public can download the Caribou agreement from the SEC website. *See* https://www.sec.gov/Archives/edgar/data/1332602/000119312512211920/d339022dex101 htm.

importance of making that information public, especially where, like here, the movant specifies no concrete harm that would come from its disclosure. *See, e.g.*, *In re Google*, 2021 WL 4848758, at *3 ("Given the nature of plaintiffs' [antitrust] claims, the right of public access to allegations going toward market share, revenue and competition outweighs the generalized harms identified."). Keurig's attempt to keep under seal this generalized information, identified in Appendix E, should be rejected.

### B. *To the Extent Any Sealing Is Appropriate, Redaction Is the Appropriate Measure Rather Than Wholesale Sealing*

When a court determines that "higher values" outweigh the strong presumption of public access to judicial documents like summary-judgment materials, redaction rather than wholesale permanent sealing is the appropriate procedure. *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (noting "[s]weeping protection of the documents containing defendants' confidential information should be avoided" and the "most appropriate remedy" is redaction); *see also Principal Nat'l Life Ins. Co. v. Coassin*, No. 3:13CV1520 JBA, 2015 WL 3466111, at *2 (D. Conn. June 1, 2015) (ordering narrow redaction instead of wholesale sealing). To the extent any of the documents that Keurig and third parties request to be sealed in their entirety contain any properly protectable information, the appropriate remedy is redaction, not wholesale sealing.

***

For all the above reasons, Plaintiffs request that the Keurig and third-party requests to seal as described herein be denied in part and the information detailed herein and in the attached appendices properly be made publicly available.

Respectfully submitted,

By: /s/ *Aldo A. Badini*
Aldo A. Badini
**Winston & Strawn LLP**
200 Park Avenue
New York, NY 10166
(212) 294-6700
abadini@winston.com

*Counsel for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc.*

cc: Counsel for All Parties (via ECF)
Counsel for Implicated Third Parties (via ECF)