**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>KEURIG GREEN MOUNTAIN SINGLE-<br>SERVE COFFEE ANTITRUST<br>LITIGATION<br><br>*This Document Relates to All Actions*. | MDL No. 2542<br><br>Master Docket No. 1:14-md-02542 (VSB) (SLC) |

**MEMORANDUM OF LAW IN SUPPORT OF KEURIG'S OBJECTIONS TO**
**MAGISTRATE JUDGE CAVE'S MARCH 28 ORDER**

## <u>TABLE OF CONTENTS</u>

I.    Introduction .................................................................................................................1

II.   Background ..................................................................................................................2

III.  Legal Standard ............................................................................................................5

IV.   Argument .....................................................................................................................5

      A.   The Opinion is Legally Erroneous in Allowing Plaintiffs to Present Evidence
           at Trial Regarding Spoliation ..............................................................................5

           1.   The Court's Inference of Prejudice Under Rule 37(e) for Messrs.
                Mueller and Ferreira Based Solely on a Perceived Gap in Their
                Custodial Files Does Not Justify Allowing Plaintiffs to Present Evidence
                of Loss at Trial ......................................................................................... 8

           2.   The Court Fails to Find Prejudice Sufficient to Permit Plaintiffs to
                Present Evidence at Trial Regarding Mr. Barberio's Lost Hard Drive and
                Handwritten Notes ................................................................................... 9

      B.   The Opinion Erred in Authorizing Certain Fees and Costs Without Identifying
           Any Legal Basis for Cost Shifting .....................................................................13

      C.   The Court Erred In Awarding Fees Because Keurig Took Reasonable Steps
           To Preserve Data And Did Not Violate the ESI Order ......................................16

           1.   Keurig Had No Obligation to Interview Former Employees Years Before
                They Were Added as Custodians .............................................................. 18

           2.   Keurig Took the Reasonable Steps Necessary Under the ESI Order To
                Preserve Hard Drives, Particularly Given Their Likely Duplicative
                Nature....................................................................................................... 20

           3.   The ESI Order Did Not Require Keurig to Issue Litigation Holds to the
                Six Former Employees .............................................................................. 21

           4.   The Court's Cost Awards Are Overbroad Under Either 37(b) or 37(e) ........... 22

V.    Conclusion .................................................................................................................23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alter v. Rocky Point Sch. Dist.*,
No. 13-1100 (JS) (AKT), 2014 WL 4966119 (E.D.N.Y. Sept. 30, 2014)................................8

*Bisesto v. Uher*,
No. 19-CV-1678 (KMK), 2019 WL 2537452 (S.D.N.Y. June 20, 2019) ..............................22

*Burns v. Medtronic, Inc.*,
No. 8:15-cv-2330-T-17TBM, 2017 WL 11633269 (M.D. Fla. Aug. 9, 2017).......................20

*Bursztein v. Best Buy Stores, L.P.*,
No. 20-cv-00076 (AT) (KHP), 2021 WL 1961645 (S.D.N.Y.  May 17, 2021) ......................6

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
No. 15-cv-2926 (DRH) (SIL), 2019 WL 5694256 (E.D.N.Y. July 22, 2019).........................9

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
No. 15-CV-2926 (DRH) (SIL), 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020).....................9

*Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*,
337 F.R.D. 47 (S.D.N.Y. 2020) ..........................................................................................16

*Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991)..............................................................................................13

*Europe v. Equinox Holdings, Inc.*,
No. 20-CV-7787 (JGK) (KHP), 2022 WL 832027 (S.D.N.Y. Mar. 21, 2022) .......................7

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*,
233 F.R.D. 338 (S.D.N.Y. 2005)  ........................................................................................21

*F.D.I.C. v. Horn*,
No. CV 12-5958 (DRH) (AKT), 2015 WL 1529824 (E.D.N.Y. Mar. 31, 2015)
........................................................................................................................................19

*Goodyear Tire & Rubber Co. v Haeger*,
137 S. Ct. 1178 (2017)...............................................................................................15, 23

*Karsch v. Blink Health Ltd.*,
No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125 (S.D.N.Y. June 20, 2019).......................6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
No. 14-MD-2542 (VSB), 2021 WL 621222 (S.D.N.Y. Feb. 16, 2021) ..............................1, 5

*Lawtone-Bowles v. U.S. Bank Nat'l Ass'n, As Trustee for Holders of MLMI Trust*
   *2002-AFC Asset-Backed Certificates, Series 2002-AFC1 (USBank)*,
   No. 19-CV-05786 (PMH), 2021 WL 1518329 (S.D.N.Y. Apr. 16, 2021) .............................22

*Leidig v. Buzzfeed, Inc.*,
   No. 16 Civ. 542 (VM) (GWG), 2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) ......................7

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   No. 15cv9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ......................6, 23

*Moody v. CSX Transp., Inc.*,
   271 F. Supp. 3d 410 (W.D.N.Y. 2017) ..................................................................................9

*Sachs v Matano*,
   No. 15-CV-6049 (JFB) (AKT), 2016 WL 4186708 (E.D.N.Y. Aug. 4, 2016).......................22

*Sachs v. Matano*,
   No. CV 15-6049 (JFB) (AKT), 2016 WL 4179792 (E.D.N.Y. July 15, 2016) ......................22

*Sekisui Am. Corp. v. Hart*,
   945 F. Supp. 2d 494 (S.D.N.Y. 2013)...................................................................................19

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ..........................................................................................17

**Statutes**

28 U.S.C. § 636(b)(1)(A) ..............................................................................................................5

Fed. R. Civ. P. 34 ........................................................................................................................21

Fed. R. Civ. P. 37 .................................................................................................................. *passim*

Fed. R. Civ. P. 72(a) .....................................................................................................................5

## I.    Introduction

Keurig files this objection to request reversal of portions of Magistrate Judge Cave's March 28 Sanctions Opinion & Order ("Op."), ECF No. 1806.  Keurig does not challenge the facts found in the Opinion for purposes of this objection.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2021 WL 621222, at *1 (S.D.N.Y. Feb. 16, 2021) (magistrate has broad discretion to determine the facts on a discovery motion).  Keurig brings this objection because the Opinion is contrary to law on certain subjects.

*First*, the Opinion erroneously awards a serious non-monetary sanction:  It permits moving Plaintiffs to present evidence to the jury and to approach Your Honor for a related jury instruction on Keurig's loss of three laptops and one set of handwritten notes.  The Court granted this serious sanction without finding prejudice sufficient to support it.  In a case with *millions of documents produced from Keurig alone*, hundreds of hours of deposition testimony from Keurig, and unfettered third-party discovery, this severe sanction introduces prejudice rather than curing it.  After years of fact discovery, nothing in the findings of the Court below supports the conclusion that Plaintiffs are unable to present their claims because of three lost laptops and a set of notes.  The non-monetary sanction should be reversed.

*Second*, the Court ordered Keurig to pay moving Plaintiffs' attorneys' fees and expert costs associated with Keurig's initial production of transactional data missing certain fields and incomplete email data from an archival system called CommVault.  The Opinion fails to identify any legal basis for these sanctions.  The sanctions cannot be for spoliation because Plaintiffs concede, and the Court explicitly found, that no data was lost in either case.  The Court also identified no court order that Keurig violated.  Keurig acknowledged and cured both issues, and the Court found as a matter of fact that the initial collection errors were not intentional.  Op. at 79-80.  Inadvertent errors happen in massive litigation.  Plaintiffs know this, as *they made similar*

*errors*.   Indeed, TreeHouse and McLane both supplemented their own transactional data *after* Keurig did so.[1]   There is no basis for sanctioning Keurig when it produced its supplemental data before Plaintiffs, and certainly no basis for awarding potentially all expert fees for a year.

*Third*, the Court imposed sanctions on Keurig under Rule 37(b) and 37(e) on three bases: (i) not issuing litigation holds to six *former* employees (though Keurig issued holds to more than 700 current employees); (ii) not interviewing 11 custodians soon enough (though Keurig did interview all 11 custodians); and (iii) not preserving certain hard drives (though it preserved and collected nearly 100 hard drives).   But neither the ESI Order nor the Federal Rules support sanctions under the circumstances.   In addition, the monetary sanctions are independently contrary to law because they exceed a remedy for any violation found.   The sanctions arguably include a broad windfall of moving Plaintiffs' fees for "efforts" to determine deficiencies and meeting and conferring on any Keurig custodial productions.

## II.   Background

TreeHouse, McLane, and the Direct Purchaser Plaintiffs moved for sweeping sanctions against Keurig, accusing it of discovery misconduct and spoliation of evidence.   Op. at 6.[2] Plaintiffs moved under Rule 37(e) for sanctions related to allegedly lost electronically stored information ("ESI") and under Rule 37(b) for alleged violations of the ESI Order, ECF No. 41.

The Court rejected the majority of Plaintiffs' claims.   The Court found that this was "not . . . a case in which Plaintiffs are bereft of evidence to support their claims," Op. at 43-44, nor one

---

[1] Plaintiffs' errors are not limited to data.   For example, McLane produced 115,000 documents two months *after* the substantial completion deadline, and TreeHouse produced 1,600 documents 16 months after the court-ordered substantial completion deadline and after the relevant custodian's deposition.   Op. at 79, 106.

[2] Plaintiff JBR did not join the motion.   For simplicity, Keurig often refers to the moving plaintiffs as "Plaintiffs" in this brief.

"in which the allegedly spoliating party exhibited persistent non-responsiveness . . . to discovery requests with no adequate explanation," *id.* at 69 (citations and quotation marks omitted). To the contrary, the Court found:

> Keurig: (i) issued litigation hold notices to over 700 custodians; (ii) collected documents from 54 Agreed Custodians as well as non-custodial sources agreed by the parties; (iii) produced 3.8 million documents equating to over 11 million pages; (iv) preserved and collected 99 hard drives, of which 93 were successfully imaged and over 70 were successfully decrypted; and (v) produced seven million pages of documents from prior litigations.

*Id.* at 43. The Court further found that, "[i]n addition, Plaintiffs deposed 23 of the 30 custodians whose information Keurig allegedly spoliated, served dozens of non-party subpoenas on Keurig's former employees and the customers and suppliers at issue in this litigation, and participated in dozens of meet-and-confers with Keurig as well as 17 discovery conferences with me (in addition to several more with Magistrate Judge Pitman)." *Id.* at 43-44. Overall, the Court found Keurig's efforts "may not have been perfect, but Keurig did endeavor to meet all its obligations as Plaintiffs inquired about perceived gaps for certain custodians, as Keurig and its vendor determined that hard drives were inaccessible, and as information was produced from alternative sources." *Id.* at 69 (internal citations omitted).

The Court analyzed the voluminous factual record and rejected Plaintiffs' claim that Keurig had an intent to deprive under Rule 37(e)(2), rejecting each of Plaintiffs' arguments on this point. Further, the Court found no intent to deprive based on Plaintiffs' allegation that Keurig exhibited a "pattern of spoliation," and instead found "no pattern in the custodians whose hard drives were lost or inaccessible, or whose emails or notes were not preserved, nor any evidence that Keurig selectively failed to preserve any ESI." *Id.* at 82. The Court therefore declined to award any of the preclusion orders or adverse inferences demanded by Plaintiffs.

3

Notwithstanding the findings summarized above, the Court awarded sanctions against Keurig under Rule 37(e)(1) for hard drive loss as to Steve Ferreira, Joe Mueller, and Don Barberio, and in the case of Mr. Barberio also handwritten notes that Plaintiffs claimed were not preserved. As a remedy, the Court authorized an award of fees and costs *and* permitted the presentation of evidence of loss at trial. For the remaining custodians that Plaintiffs challenged as having lost ESI, the Court ruled against Plaintiffs, most often finding no prejudice under Rule 37(e)(1) from any alleged loss due to overlapping and duplicative productions from the very same custodian.[3]

The Opinion further awarded reasonable fees and expenses caused by a violation of a court order or spoliation within the following categories:

(i)     Plaintiffs' efforts from May 7, 2018 to July 25, 2018 to determine deficiencies in Keurig's productions for Agreed Custodians;

(ii)    preparing for and participating in meet-and-confer communications and calls concerning Keurig's productions for the Agreed Custodians between July 25, 2018 and May 20, 2019;

(iii)   undertaking additional measures with respect to the hard drives for Rathke and Stacy that TreeHouse selected to send to its vendor;

(iv)   investigating discrepancies in Keurig's CommVault productions;

(v)    investigating discrepancies in Keurig's transactional data from February 7, 2019 until February 2020;

(vi)   Plaintiffs' experts' costs while working with Keurig's deficient transactional data between February 7, 2019 and February 2020; and

(vii)  preparing the Motion and presenting oral argument.

---

[3] As to Ms. Rathke and Ms. Stacy, the Court found that Plaintiffs were prejudiced only to the extent they incurred vendor costs for extraordinary efforts to recover data from their old hard drives. Op. at 61, 64, 68. Keurig does not appeal that ruling.

Keurig appeals Categories (i), (ii), (iv), (v), and (vi) of the fee award, as well as the Rule 37(e)(1) presentation remedy noted above.[4]  The Opinion is contrary to law in its award of these sanctions.

## III.    Legal Standard

A district court must overturn a magistrate judge's decision that is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed."  *In re Keurig Green Mountain*, 2021 WL 621222, at *1.

## IV.    Argument

As discussed below, the challenged portions of the Opinion are contrary to law because they fail to find the predicate elements for the challenged sanctions under Rule 37(e) for spoliation and Rule 37(b) for violating a Court order.

### A.    The Opinion is Legally Erroneous in Allowing Plaintiffs to Present Evidence at Trial Regarding Spoliation

Permitting a party to present evidence and argument to a jury regarding the loss of information is a "serious measure[]," available only as "necessary to cure prejudice found by the court."  Fed. R. Civ. P. 37 note (Committee Notes on Rules – 2015 Amendment).[5]  As the Court acknowledged, prejudice requires an affirmative showing by the moving party that the spoliated evidence was not available from "another source," Op. at 15, and would have been helpful to its case, *id*. at 18 ("The parties must: set forth, with . . . specificity, the materials which would have

---

[4] Keurig reserves the right to contest Plaintiffs' fee application, including to the extent the petition seeks to recover fees or expenses that are not reasonable, not "caused by" a violation of the ESI Order, or not necessary to remediate prejudice found by the Court.  *See* Op. at 86-88.

[5] For the reasons noted in Keurig's summary judgment motion, including the undisputed fact that more than a dozen competitors entered the alleged relevant market, Plaintiffs' claims should not reach a jury.

been helpful in prosecuting [their] claims . . . [T]he moving party must show that the lost information "was not only probative, but that it would affirmatively support the movant's claim.").

Presentation of evidence to a jury about spoliation is not available simply upon a showing of lost evidence. This serious sanction should be used only to rectify the type of prejudice that causes an "evidentiary imbalance" due to the spoliation. *See id.* at 89. Courts in this District permit presentation sanctions to correct situations where the "primary evidence" that a movant would otherwise rely on was lost and "could not be obtained through additional discovery" of a party or third-party. *Bursztein v. Best Buy Stores, L.P.*, 2021 WL 1961645, at *7-9 (S.D.N.Y. May 17, 2021) (granting presentation sanction when Best Buy lost both surveillance video showing the slip-and-fall incident giving rise to the litigation and internal reports showing it knew of hazard that tripped plaintiff). The cases cited in the Opinion are in accord. In *Lokai Holdings LLC v. Twin Tiger USA LLC* (Op. at 90), for example, the court permitted presentation only if the plaintiff could establish that sales data used for damages "was only available in the emails that were deleted" and not in other discovery that it *received or could have sought*. 2018 WL 1512055, at *14, 17 (S.D.N.Y. Mar. 12, 2018). In *Karsch v. Blink Health Ltd.* (Op. at 89), the court granted a presentation sanction as to lost emails that "could have resolved one of the more significant factual disputes between the parties" *and* the party sanctioned had made repeated false statements about the email loss.[6] 2019 WL 2708125, at *1, 10-11, 20, 27 (S.D.N.Y. June 20, 2019); *see also*

---

[6] Because the Court failed to find the requisite prejudice, the presentation and monetary sanctions were contrary to law. But the Opinion appears to reflect an additional error of law: The Court's factual findings here do *not* support its conclusion that this harsh sanction is appropriate to cure identified prejudice because of a credibility deficit surrounding the data loss created by a litigant's false statements. Op. at 89. The Court cites *Karsch* but *Karsch*'s statement was premised on a finding that the spoliating party repeatedly lied about the circumstances of the data loss. 2019 WL 2708125, at *10-11 (noting misstatements in interrogatories). To the contrary, here, the Court did *not* find that Keurig lied about data loss. Op. at 69 (finding that "Keurig did endeavor to meet all its obligations" and worked to produce material from the drives and locate "alternative sources").

*Europe v. Equinox Holdings, Inc.*, 2022 WL 832027, at *5 (S.D.N.Y. Mar. 21, 2022) (Op. at 89) (presentation sanction appropriate where defendant lost employment schedule forming basis of termination decision giving rise to the case); *Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, *9, 13-14 (S.D.N.Y. Dec. 19, 2017) (Op. at 89) (presentation sanction appropriate for "critical" evidence and which "very existence would have likely helped" establish defense).

Here, the Court imposed a presentation sanction after concluding that loss occurred as to Messrs. Barberio, Ferreira, and Mueller's hard drives and Mr. Barberio's notes, but without an appropriate finding of prejudice.

For two of the custodians (Ferreira and Mueller), the Court wholly skipped analyzing prejudice—as did Plaintiffs in their moving papers. The Court's only finding with respect to either custodian is the observation that there are purported gaps in Keurig's productions and the two custodians held relevant roles. But every spoliation argument involves missing evidence. Identifying missing evidence is insufficient for any sanction, and is certainly insufficient for the severe sanction of presenting evidence of loss to a jury. *See* Op. at 18. For the third custodian (Barberio), the Court purports to find prejudice based on the fact that Mr. Barberio was present at a handful of customer meetings. But Plaintiffs did not show how the loss of what was in his notes or hard drive "has prejudiced their ability to [prosecute] their case," *id*. at 118, much less show that discovery from Keurig, customers, and others could not cure this, and the Court made no such finding.[7] The Court erred in purporting to find prejudice at all, much less prejudice sufficient to

---

[7] Plaintiffs did not even request presentation as a remedy prior to making an untimely request in their reply brief (precluding Keurig from responding in writing) and then only in one sentence unsupported by any case law. ECF No. 1390 at 10.

support the serious sanction awarded.[8]

### 1. The Court's Inference of Prejudice Under Rule 37(e) for Messrs. Mueller and Ferreira Based Solely on a Perceived Gap in Their Custodial Files Does Not Justify Allowing Plaintiffs to Present Evidence of Loss at Trial

Under Rule 37(e), a finding that the loss of relevant evidence caused prejudice *cannot* "be grounded solely on the basis that some evidence in the custody of *key witnesses* no longer exists.'" Op. at 18 (quoting *Alter v. Rocky Point Sch. Dist.*, 2014 WL 4966119, at *12 (E.D.N.Y. Sept. 30, 2014)) (emphasis added). Yet that is what the Court found just pages later for Ferreira and Mueller. *See id.* at 52-53 ("Because of this nearly six-month gap in the documents Keurig produced for Ferreira, the Court finds that Plaintiffs have been prejudiced by Keurig's failure to preserve a valid encryption key for Ferreira's hard drive."); *id.* at 59 ("the Court finds that there is a gap in Keurig's production as to Mueller that has prejudiced Plaintiffs").[9] The only other finding with respect to Ferreira and Mueller is that they both had relevant roles. *Id.* at 52 ("In its Amended Initial Disclosures, Keurig designated Ferreira as having knowledge of development and expansion of the 2.0 Brewer."); *id.* at 59 ("Mueller reported to DiFabio and was responsible for all the interaction between Keurig and Walmart, one of the customers whom TreeHouse alleges it lost.") (citation omitted). But saying a witness is relevant – or even "key" – and had missing evidence is

---

[8] The Court's award of monetary sanctions under Rule 37(e)(1) is also contrary to law absent a finding of both loss and prejudice. *See* Fed. R. Civ. P. 37 note (Committee Notes on Rules – 2015 Amendment) (a court "may resort to (e)(1) measures only 'upon finding prejudice to another party from loss of the information.'").

[9] While Keurig's request for reversal turns on the Court's legal error, we note that the Court's factual finding of a six-month gap in Mr. Ferreira's documents around 2016 is wrong. It was based on a claim Plaintiffs improperly first raised in their Reply. Op. at 52-53. The untimely assertion is false: Keurig collected and de-duplicated documents from Mr. Ferreira for this time period. Moreover, this nonexistent gap in 2016 cannot be blamed on a "failure to preserve a valid encryption key" for a McAfee-encrypted hard drive because the Court found Keurig had stopped encrypting drives with McAfee by 2013, *id.* at 52-53; 25-26, and found that Keurig produced documents from Ferreira's later-in-time hard drives to which Keurig had migrated any older hard drive data. *Id.* at 36.

not close to sufficient under the law.  In a case with millions of documents and hundreds of hours of testimony, sanctions require the movant to "come forward with 'plausible, concrete suggestions as to what [the destroyed] evidence might have been'" and why alternative sources of evidence are insufficient.  *Id.* at 15 (quoting *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017)) (internal citations omitted).  Plaintiffs *did not provide this predicate element* in their moving papers, leaving the motions record empty of support.  *See, e.g.*, *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.,* 2019 WL 5694256, at *12 (E.D.N.Y. July 22, 2019), *report adopted,* 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020) (denying sanctions even *after* finding an intent to deprive where the movant did not "demonstrate that the information lost was significant" and could not "identify what information was lost").

Without any finding of what was purportedly lost on these two hard drives and why it was important to Plaintiffs' ability to prove their claims, the Court erred in allowing Plaintiffs to present evidence of loss to the jury.  *See* Fed. R. Civ. P. 37 note (Committee Notes on Rules – 2015 Amendment) (a court "may resort to (e)(1) measures only 'upon finding prejudice to another party from loss of the information.'").  This is a serious and prejudicial sanction and should be reversed.

### 2. The Court Fails to Find Prejudice Sufficient to Permit Plaintiffs to Present Evidence at Trial Regarding Mr. Barberio's Lost Hard Drive and Handwritten Notes

As to Mr. Barberio, the Court permitted Plaintiffs to present evidence to the jury on a lost laptop and notes.  Op. at 89.  The Court noted that Mr. Barberio attended meetings with Publix, Kroger, Giant Eagle, Wakefern, and Ahold about the 2.0 Brewer in late 2013 and early 2014.  Op. at 38-39.  But Plaintiffs have a massive amount of information about these meetings including from Keurig, which produced a robust record of evidence from each of these meetings.

Plaintiffs never denied that they could have deposed any of the customers or other attendees about the meetings, and they did so where they wished to develop the record.  This belies Plaintiffs'

conclusory assertion that a lost laptop or notes from Mr. Barberio would contain evidence needed to prove up their claims. Op. at 15-16 (prejudice is absent where "parties were able to obtain the same evidence from another source"); *cf.* at 117-18 (no prejudice where Keurig could have deposed other attendees at meeting). Instead of analyzing the full set of available evidence regarding the customer meetings including from deposition testimony, the files of other custodians, or the customer itself, as the Court did in evaluating Keurig's motions related to JBR's lost customer meeting notes, here the Court analyzed *only Mr. Barberio's production*. Because Plaintiffs did not argue and the Court did not find that alternative sources of information were unavailable, the legal conclusion of prejudice as to Mr. Barberio is contrary to law.

The conclusion of prejudice also fails for an independent reason: As the Court acknowledged, presenting evidence to the jury about spoliation is a serious sanction available only to remedy an "evidentiary imbalance" created by the loss. *See* Op. at 89. Here, the Court makes no finding of *any* legal claim brought by Plaintiffs as to which there is such an imbalance. The Court suggests the notes may have been relevant to Plaintiffs' assertion that Keurig told customers the 2.0 Brewer would not be compatible with customers' cups. *Id.* at 40. But it is *undisputed* that in late 2013 Keurig publicly announced that the 2.0 Brewer would work only with Keurig-licensed portion packs: There is extensive evidence that Keurig said this. The Court does not explain how lost notes would have been uniquely helpful to Plaintiffs' case. Elsewhere, including in evaluating Keurig's motion against JBR related to its lost customer meeting notes, the Court properly required a showing that missing evidence "impeded" the "ability to defend against [plaintiffs'] claims in this action." *Id.* at 116. Plaintiffs' evidence and the Court's findings do not come close to this required standard as to Mr. Barberio.

The Court made specific findings as to only one of the meetings Mr. Barberio attended, namely a meeting with Publix. *Id.* at 38-39. But the Court's factual finding that Mr. Barberio participated in a meeting with Publix's President on January 29, 2014 does not warrant presentation of evidence to a jury on spoliation. The Court found that a meeting occurred and assumed that Plaintiffs suffered prejudice without the requisite analysis of whether evidence regarding the meeting was relevant and uniquely important to Plaintiffs' ability to prove up any claim. The Court did not evaluate whether Plaintiffs asked (or had the opportunity and failed to ask) any attendee about the January 29 meeting.[10] *Cf. id.* at 117-18 (in denying Keurig's motion, holding that production of scheduling emails and ability to take depositions of a customer resolved concerns over lost customer meeting notes). Plaintiffs cannot represent that they lack other sources of information about the meetings.[11] This precludes a finding of prejudice. In addition, Publix stayed with its unlicensed pack supplier through the launch of the 2.0 Brewer, *which is unhelpful to Plaintiffs' claims* that Keurig's statements about 2.0 Brewer compatibility caused customers to switch suppliers, and indeed Plaintiffs *do not claim Publix as a lost customer*. A movant must show that lost evidence would likely "affirmatively support the movant's claim," *id.* at 18, but

---

[10] Plaintiffs deposed at least two Keurig attendees of the meeting, Mr. Ferguson and Mr. Barberio, but never chose to ask them a single question about the January 29 meeting. Plaintiffs also never subpoenaed Publix, its President, or Keurig's broker, who also attended the meeting.

[11] While Keurig's challenge is based on the Court's legal error, Keurig notes that the Court found that the "only record" of a discussion between Mr. Barberio and Publix's President on January 29 is a single email, Op. at 38, in reliance on an inaccurate statement to this effect by Plaintiffs. *See* Memorandum of Law in Support of Plaintiffs' Mot. for Spoliation Sanctions, ECF No. 1286 at 10 n.15. But the email that Plaintiffs cited as the only record, ECF No. 1287-14, does not mention that President Todd Jones attended the meeting, which is a detail Plaintiffs know only because that fact appears in other produced documents related to the meeting. While reversing the sanction as contrary to law would resolve the issue, Plaintiffs are otherwise obligated to remediate their misstatement: As they know, they received multiple documents related to the meeting including from Keurig's Mr. Ferguson who attended and sent an email to his boss the following day summarizing the takeaways from the meeting and next steps.

Plaintiffs made no such showing and the Court entered no such finding here, *cf. id.* at 117 (requiring Keurig to "affirmatively demonstrate[]" lost evidence supported claim).

The Opinion references four other retailers that Mr. Barberio met with about the 2.0 Brewer in late 2013 and early 2014 (Kroger, Giant Eagle, Wakefern, and Ahold), but offers no findings as to whether any lost notes were the only evidence of those meetings, much less whether the notes would affirmatively support Plaintiffs' claims. *Id.* at 38. The Court inferred it was "reasonable" that Mr. Barberio would save documents on his hard drive about the meetings and concluded prejudice. *Id*. at 45. This skips many important steps under the law. *Cf. id.* at 18. Plaintiffs *never represented to the Court that they lacked documents summarizing these meetings*, nor could they have done so.[12] Plaintiffs also did not claim they were unable to ask the customers about the meetings. In fact, Plaintiffs made a "conscious choice" not to depose any of these customers except Kroger. *Cf. id.* at 117-18 ("conscious choice" not to "elicit more detail" from a customer about a meeting precludes prejudice). As to Kroger, Plaintiffs worked with former Kroger employee Rossana Klawon to draft a declaration that includes a dozen paragraphs about the November 2013 meeting that Mr. Barberio attended along with a half dozen other Keurig employees.[13] Plaintiffs' ability to depose customers and other attendees precludes prejudice.

The Court's presentation sanctions are unsupported by the requisite prejudice and are contrary to law. These sanctions are severely prejudicial to Keurig and would generate further

---

[12] Plaintiffs could not make this representation because Keurig produced detailed meeting summaries and slide decks from the meetings at issue with Giant Eagle (July 17, 2013); Kroger (August 1, 2013, November 15, 2013); Wakefern (November 7, 2013); and Ahold (February 11, 2014).

[13] *Cf.* Op. at 101-102 ("Keurig deposed Kroger's representative and thus had the opportunity to hear directly from Kroger"). Plaintiffs could have sought documents and testimony from Kroger on the August 2013 meeting, but chose not to do so.

disputes about what could be presented as to what claim, what may be presented as an appropriate

counter, and the nature of any appropriate jury instruction.  These sanctions should be reversed.

**B.     The Opinion Erred in Authorizing Certain Fees and Costs Without Identifying Any Legal Basis for Cost Shifting**

The Court erroneously ordered Keurig to pay Plaintiffs' attorneys' fees and expert costs

related to supplemental productions of: (i) Keurig transactional data; and (ii) email data from an

archival email system called CommVault.  The Court notes that Plaintiffs did not move for

*spoliation sanctions* for either transactional data or the email archive because the information was

produced in full.  Op. at 27-28, 79-80.  Accordingly, this remedy cannot have been awarded under

Rule 37(e).

The Court appears to have imposed these sanctions under Rule 37(b) for violation of a

court order, but the Court did not identify the court order that was violated.  *See Daval Steel Prods.,*

*a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) (a Rule 37(b)

sanction "must relate to the particular claim to which the discovery order was addressed").  The

Court cited the ESI Order, Op. at 87-88, but there is no finding that Keurig's production of email

archive data or transactional data violated the ESI Order, and it did not.  The ESI Order requires

the parties to meet and confer on a production schedule, but does not set a production schedule.

ESI Order, Section VI.H.3, ECF No. 41.

The later-entered Preliminary Case Management Order set a deadline for "substantial

productions of all documents," ECF No. 354-1, ¶ 7(i) but Keurig complied with that order by

making a substantial production of more than 900,000 documents from its custodians in April

2018.  Further, Keurig complied with the deadline that was set for "substantial completion" of

document production, completing its production from CommVault by the end of October 2018.

Op. at 28 (finding that *all* CommVault productions were completed by October 31, 2018).  The first deadline for "substantial completion" was February 27, 2019.  ECF No. 354-1, ¶ 7(k).[14]

In sum, Keurig complied with the court-ordered deadlines, and the Court enters no finding otherwise.  The Court's entry of sanctions related to Plaintiffs' efforts to identify discrepancies in Keurig's CommVault productions without identifying a violation of a court order is contrary to law.  Keurig spent substantial effort identifying flaws in Plaintiffs' productions, but without a violation of a court order, there is no cost shifting.

Likewise, as to the transactional data, the Court identified no order violated and Keurig provided its supplemental data in advance of the Court-ordered deadline to complete data production.  Keurig believed that it fully and timely produced its transactional data before the February 28, 2019 deadline for *substantial* completion set by the Order Regarding Production Deadlines, ECF No. 484.  When Keurig learned that a technical error prevented certain additional data fields from being produced, Keurig reproduced data by the deadline set by the Court.[15]  Op. at 28.  The Court entered no finding that Keurig's prior data production was not substantially complete.  Moreover, the Order, ECF No. 484, has an explicit safe harbor providing that no violation occurs when, "due to technical or other unforeseen issue(s), production of limited numbers of documents must occur after an anticipated deadline, and such later productions as a result of those issue(s) should not be construed as a violation of this Order."  ECF No. 484 at 1 n.1.  The Court made no findings that Keurig violated the Order, ECF No. 484.  Keurig also incurred expense investigating TreeHouse's transactional data and identified discrepancies in that

---

[14] "Document production in response to the initial Requests for Production, subject to objections, shall be substantially completed no later than ninety (90) days before the close of fact discovery."

[15] Keurig completed its supplemental production of transactional data on March 19, 2020.  ECF No. 839, 887.

data.  Then, without advance notice, TreeHouse made a supplemental production of its own data *after* Keurig did so.  Op. at 28, n.12.  And McLane missed the Court-ordered deadline to produce its 2018-19 transactional data altogether.  *Id.*  There is no reason on these facts to award fees for investigating data discrepancies and a full year of expert expenses to just one side.

Plaintiffs argued during oral argument that, even if there was no spoliation and no court order violation, the Court should use its "inherent power" to award them money for investigating discrepancies, but the Court did not rely on this untimely argument.  *Id.* at 10, n.7, 86 (imposing sanctions under 37(b)(2)(C) and 37(e)(1)).  Nor would it have been proper to do so.  As the Opinion notes, sanctions awarded under the Court's inherent authority should be imposed only upon a "'particularized showing of bad faith' . . .  necessary to justify exercising that power."  *Id.* at 10 n.7.  Here, the Court found no bad faith.  Op. at 69 ("Keurig did endeavor to meet all its obligations.").  By its own explanation, none of the Court's sanctions follows from an exercise of inherent authority.  The fee awards based on Keurig supplementing data and email productions should be reversed because they are contrary to law.

In addition, the awards should be reversed because the remedies the Court issued appear to lack the requisite "causal connection" between whatever violation it found and Plaintiffs' fees.  *Goodyear Tire & Rubber Co. v Haeger*, 137 S. Ct. 1178, 1186-87 (2017) (finding limitation as a matter of due process).  Plaintiffs are only entitled to "compensatory" sanctions for expenses that "would not have [been] paid but for the misconduct."  *Id.* at 1186 & n.5 (Rule 37(b) and inherent sanctions powers have the same *causal* limitation).  Yet the Opinion errs in arguably awarding fees not just for Plaintiffs' incremental expenses related to investigating and rectifying an unidentified violation, but for time spent investigating *any* "discrepancies" in archival email productions completed by October 31, 2018 even if that investigation showed no violation.  Op. at

15

88.   The Opinion further errs in awarding one full year of "experts' costs while working with Keurig's deficient transactional data" not limited to incremental costs caused by a violation.  *Id*. When Keurig supplemented its transactional data, Plaintiffs' experts needed to *add data* to their models (just as Keurig did when TreeHouse supplemented its data afterwards).  Plaintiffs did not claim, nor did the Court find, that their experts' underlying algorithms, data cleaning work, and analysis of Keurig's systems were wasted because Keurig later made a supplemental production. The Opinion errs to the extent that it purports to compensate Plaintiffs for *one full year of expert work* untethered to incremental work caused by a violation of a court order.

### C.  The Court Erred In Awarding Fees Because Keurig Took Reasonable Steps To Preserve Data And Did Not Violate the ESI Order

With respect to monetary sanctions awarded under Rule 37(b) and 37(e), the Court found that Keurig violated the ESI Order and failed to take "reasonable steps" to preserve data by: (1) not more promptly interviewing eleven custodians; (2) not locating or decrypting certain hard drives; and (3) not distributing litigation holds to six former employees.[16]  Op. at 33, 42.  The Court erred in failing to consider principles of proportionality and concluding that Keurig failed to take reasonable steps to preserve data.

The legal context for these issues is important.  The Federal Rules and the ESI Order in this case require parties to take "reasonable steps" to preserve data when an obligation to preserve attaches.  *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y. 2020); ESI Order, Section VI.A, ECF No. 41.  A party must then "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of

---

[16] These former employees were Ken Crites, Don Holly, Steve Smits, and Chris Stevens, all of whom left Keurig before the first complaint was filed in February 2014; Susan Cote, who left in March 2014; and Brad Tidwell, who left in August 2015, before the McLane complaint was filed, and long before he was added as a custodian in May 2019 for purposes of the McLane case.  Op. at 30-31, 83 n.32.

relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003). This does not, however, mean that a party must "preserve every shred of paper, every e-mail or electronic document, and every backup tape." *Id.* at 217. Instead, Rule 37 recognizes that "'reasonable steps' to preserve suffice; it does not call for perfection." Fed. R. Civ. P. 37 note (Committee Notes on Rules – 2015 Amendment). Keurig's reasonable steps included suspending routine destruction processes, putting in place a sweeping litigation hold in this case, and packaging up and saving the ESI of departing employees. Op. at 24-28. In response to the suit, Keurig sent out 400 litigation hold notices to employees within six days of the first case, asking them to preserve all hard copy and electronic data that may be relevant to the litigation.[17] *Id.* at 30-31. These holds were an attempt to document Keurig's entire operations in real-time and on an ongoing, indefinite basis. And, as the Court found, Keurig then continued updating those holds and, in total, sent hold notices to more than 700 employees. *Id.* at 43.

The Court made no factual findings that it was awarding monetary sanctions because Keurig failed to suspend normal operations or that a different, more reasonable system was required. *Zubulake*, 220 F.R.D. at 217. To the contrary, the Court found that Keurig made affirmative efforts to stop the destruction of key data, including by maintaining a series of email archives from 2011 onward for the purpose of preventing the deletion of employee emails. Op. at 27-28. The Court also did not find that Keurig spoliated *any email* in this case, and Keurig affirmatively took steps to preserve other systems. Again, Keurig had policies in place that required employees to centralize important non-email data for the express purpose of avoiding

---

[17] TreeHouse issued 40 litigation holds throughout all of 2014. ECF No. 1632 at 138-148 (listing all holds). TreeHouse issued only 1 additional hold over the following two years. *Id.* In total, TreeHouse has issued only 99 litigation holds. *Id.* The Court credited those litigation holds in finding TreeHouse took reasonable steps to preserve. Op. at 99.

data loss.  Op. at 24-25.  Rather than save documents locally on laptop hard drives subject to the

risk of damage or theft, the Court found that Keurig instructed employees to save documents in

share drives and other network-based document storage drives.  Op. at 25.  The Court found in

nearly every case that Keurig produced tens of thousands of documents from alternative sources

*for the particular employee* whose files Plaintiffs claimed had been spoliated.  Op. at 73-74

("Keurig also produced tens of thousands of documents from alternative sources for each of the

custodians whose hard drives could not be decrypted."); *id.* at 46 (observing that Plaintiffs "offer

nothing more than speculation to support their assertion that unique documents existed on his hard

drive but were not produced").

In short, Keurig was reasonable in its efforts to preserve data for this litigation, and the

issues that the Court focused on at Plaintiffs' behest do not change that.

### 1.  Keurig Had No Obligation to Interview Employees Years Before They Were Added as Custodians

The Court erred in finding that Keurig violated the ESI Order and failed to take "reasonable

steps" by not interviewing eleven Keurig custodians when it first sent them hold notices years

before discovery commenced.  Op. at 33.  The ESI Order expressly limits interview obligations to

*document custodians*, stating that "the parties agree to ask each of their *document custodians*

whether he or she maintains potentially responsive documents or data in any of the electronic or

hard-copy sources listed above, whether at the custodian's office, home, or online."  *See* ESI Order,

Section VI.G, ECF No. 41 (emphasis added).  The ESI Order did not set a deadline for the parties

to interview custodians.  Op. at 70-71.  The Court erred in interpreting this silence as a requirement

that the interview occur "contemporaneous with the date the custodians received litigation hold

notices."  *Id*. at 70.  The Court acknowledged as a factual matter that the Keurig employees at issue

were not selected as custodians until years after they received hold notices, and after their departure from Keurig.  *Id*. at 4-5.

The legal implications of the Court's findings are impractical, as Keurig issued more than 700 litigation holds in this litigation.  It makes no sense to conclude that the ESI Order meant that Keurig *had an obligation to conduct 700 interviews contemporaneous with those hold notices*. Nor do the plain terms of the ESI Order require this because no document custodians were named until December 2017 at the earliest.  Keurig had no obligation under the ESI Order to interview before then.  Nor does case law impose that obligation.  The cases cited in the Opinion stand for the proposition that a company can be negligent for failing to implement document holds within the company when litigation is anticipated.  *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507-08 (S.D.N.Y. 2013) (Op. at 33) ("[N]o litigation hold was issued . . . until fifteen months after" notice of claim and party "took another six months" to notify IT.); *F.D.I.C. v. Horn*, 2015 WL 1529824, at *8 (E.D.N.Y. 2015) (Op. at 33) (finding that attorney should have anticipated litigation when his work for a client was under legal scrutiny).  Keurig implemented hundreds of holds within a week of being sued.  Moreover, even if Keurig had conducted 700 interviews as soon as the ESI Order was entered, that would not have prevented the loss of Mr. Barberio's notes, which the Court found were destroyed before the Order was entered.[18]  That Keurig did not conduct interviews contemporaneous with its hold notices was in full compliance with the ESI Order, and the Court's holding otherwise was contrary to law.

---

[18] The Court found Mr. Barberio had a notebook "that may have contained notes of meetings . . . but, despite having received a litigation hold notice in February 2014, threw the binder away when he cleaned out his office on his departure from Keurig in June 2014."  Op. at 38.  The ESI Order was entered in July 2014, ECF No. 41 (July 1, 2014).  Mr. Barberio was first named as a custodian four years later, in October 2018.

### 2.   Keurig Took the Reasonable Steps Necessary Under the ESI Order To Preserve Hard Drives, Particularly Given Their Likely Duplicative Nature

In the ESI Order, "[t]he parties agree[d] to search and produce responsive documents and data from all of the sources that are likely to contain non-duplicative responsive information."  ESI Order, Section VI.G, ECF No. 41.  As noted, the Court found that, under Keurig's company policy, its employees were instructed to save all documents to network drives, not to hard drives.  Op. at 24; *see also id.* at 69 ("In addition, the Court is not prepared to find that Keurig "acted unreasonably in assuming that its employees complied with [the] policy that instructed them to save documents to network drives rather than local hard drives, despite Plaintiffs' claim that employees frequently violated the policy.").  Keurig also had a practice of migrating any material on an old hard drive to a new hard drive when an employee upgraded laptops.  *Id.* at 25.  Thus, older hard drives were exceedingly unlikely to contain unique material.  Indeed, the Court repeatedly found that Keurig produced from duplicative and overlapping sources from the very same custodian.  *Id.* at 46 (Plaintiffs "offer nothing more than speculation to support their assertion that unique documents existed on [custodial] hard drive"); *id.* at 73-74 ("Keurig also produced tens of thousands of documents from alternative sources for each of the custodians whose hard drives could not be decrypted.").

Even though hard drives were *not likely* to contain non-duplicative responsive material, Keurig nonetheless placed 700 employees under hold and endeavored to preserve their hard drives. Just for the 54 individuals who were eventually selected as custodians, the Court found that Keurig preserved 99 hard drives.  *Id*. at 43.  Keurig complied with its ESI Order obligation, and there is no court order violation on which to justify Rule 37(b) sanctions.  *Accord Burns v. Medtronic, Inc.*, 2017 WL 11633269, at *4 (M.D. Fla. 2017) (no requirement to immediately seize and copy mobile devices or keep old devices indefinitely where data is transferred to new device upon upgrade).

### 3. The ESI Order Did Not Require Keurig to Issue Litigation Holds to the Six Former Employees

Consistent with their preservation obligations under the Federal Rules, in the ESI Order, the parties "certif[ied] that they have issued preservation or 'litigation hold' communications to all individuals reasonably identified as having information that may be potentially relevant to the Related Actions" and agreed to "take measures to identify additional individuals who may have potentially relevant [*sic*] to the Related Actions in accordance with applicable law and each party's ethical obligations." ESI Order, Section VI.C, ECF No. 41. In accordance with these representations, and as Judge Cave found, Keurig issued litigation hold communications to more than 400 employees within six days of TreeHouse filing its Complaint, and updated and expanded these holds over time to more than 700 individuals. Op. at 43-44. Plaintiffs *did not challenge Keurig's litigation holds* and did not proffer evidence that the six former employees at issue triggered the ESI Order hold obligation.[19] There is nothing in the sanctions record to suggest that Keurig had reason to anticipate that these former employees would have potentially relevant information in their possession and nothing permitted the Court to conclude that Keurig violated the ESI Order in not issuing litigation holds to these former employees.[20]

---

[19] Plaintiffs likely did not challenge Keurig's practice with respect to former employees because they, too, did not issue litigation holds to their own former employees. For example, the Court found that TreeHouse's Tom Rothers never received a litigation hold even though he worked at TreeHouse when it initiated this lawsuit. Op. at 101. Yet the Court found TreeHouse's preservation efforts *for Mr. Rothers were reasonable when TreeHouse tried and failed to contact him in 2019. Id.* at 102.

[20] The Court stated "[t]hat some of these custodians were no longer employees did not mitigate Keurig's preservation obligations." Op. at 32 (citing *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*). But that case interprets the scope of *Rule 34*, not a company's obligation to issue litigation holds to former employees. 233 F.R.D. 338, 341 (S.D.N.Y. 2005) ("Analyzing the practical ability of corporations to *obtain work-related documents from former employees*, courts insist that corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession.") (emphasis added). The duty recognized in *Asia Pulp & Paper Co.* is distinct from any duty to send a litigation hold communication, which is not supported by case law. And none of this creates an obligation in the *ESI Order*, and there is none.

Indeed, Plaintiffs never argued in their moving papers that Keurig failed to issue litigation holds to *any* employees, much less to former employees.  *See* ECF Nos. 1286, 1390.  Not until after briefing was complete did Plaintiffs raise this argument in a post-briefing stipulation of facts that Plaintiffs used to make new arguments in contravention of the Court's instructions.  *See* ECF No. 1632.  The Court stated that it "disregarded all portions of the Stipulations that constitute argument," and that Plaintiffs' extensive new argument in connection with the Stipulations "abused the Court's invitation to clarify and narrow the facts in dispute on the Motions."  Op. at 22-23.  The Court's decision to set aside Plaintiffs' improper new arguments is consistent with the law in this District.  *Id.* at 23-24 (citing *Lawtone-Bowles v. U.S. Bank Nat'l Ass'n*, 2021 WL 1518329, at *1 n.3 (S.D.N.Y. Apr. 16, 2021) ("'Local Civil Rule 6.1(b) does not contemplate the filing of a sur-reply.'") (quoting *Sachs v. Matano*, 2016 WL 4179792, at *2 n.5 (E.D.N.Y. July 15, 2016), *adopted by*, 2016 WL 4186708 (E.D.N.Y. Aug. 4, 2016)); *Bisesto v. Uher*, 2019 WL 2537452, at *2 (S.D.N.Y. June 20, 2019) (collecting cases).  Furthermore, in this case, Plaintiffs were prohibited from raising the untimely argument in their post-briefing submission because the deadline set by the Court's Case Management Scheduling Order ¶ 2(h) to move for sanctions "relating to known conduct" had passed months prior.  ECF No. 887.  Yet the Court then went on to adopt Plaintiffs' improper and untimely new argument made without any factual basis in the record or supporting case law.  Arguments must be timely raised to allow the non-moving party an opportunity to respond in writing.  The Court erred in awarding sanctions against Keurig based on untimely and unsupported argument in Plaintiffs' post-briefing submission that Keurig violated the ESI Order by not sending litigation holds to six former employees.

### 4.   The Court's Cost Awards Are Overbroad Under Either 37(b) or 37(e)

The Opinion states that Keurig must pay reasonable attorneys' fees and expenses to Plaintiffs for "Plaintiffs' efforts from May 7, 2018 to July 25, 2018 to determine deficiencies in

Keurig's productions for Agreed Custodians," for "preparing for and participating in meet-and-confer communications and calls concerning Keurig's productions for the Agreed Custodians between July 25, 2018 and May 20, 2019," and for "investigating discrepancies in Keurig's CommVault productions."  Op. at 87-88.  This is overbroad and contrary to law.  The "Agreed Custodians" are dozens of current or former employees—as to many of whom Plaintiffs never brought any claim of spoliation.  By law, an appropriate award *must* be limited to only those fees incurred because of the violation.  *See supra* at IV.B (discussing 37(b) causal requirement); *Lokai Holdings LLC*, 2018 WL 1512055, at *9 (Rule 37(e) permits fee-shifting for fees "caused by the spoliation"); Fed. R. Civ. P. 37(e)(1) (permitting relief "no[t] greater than necessary to cure prejudice").  Given the massive discovery permitted in this litigation, Plaintiffs launched inquests that imposed significant expense on Keurig but went nowhere.  There is no mechanism to reimburse Plaintiffs for raising non-meritorious challenges.  The only permissible remedy for a violation is reasonable costs *caused by* that violation.  *Haeger*, 137 S. Ct. at 1186-87 & n.5 (violation must be "but-for" cause of fees); Fed. R. Civ. P. 37 note (Committee Notes on Rules – 2015 Amendment) ("Once a finding of prejudice is made, the court is authorized to employ measures '*no greater than necessary* to cure the prejudice.'") (emphasis added).

## V.    Conclusion

Keurig respectfully requests that the Court reverse the portions of Magistrate Judge Cave's Sanctions Opinion set forth on pages 4-5, *supra*, because they are contrary to law.

Dated: April 11, 2022

*/s/ Wendelynne J. Newton*
**Wendelynne J. Newton**
**Mackenzie A. Baird**
*wendelynne.newton@bipc.com*
*mackenzie.baird@bipc.com*
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Telephone: 412-562-8800

**Leah Brannon**
**Carl Lawrence Malm**
*lbrannon@cgsh.com*
*lmalm@cgsh.com*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone:  202-974-1508
Facsimile:  202-974-1999

*Attorneys for Defendant Keurig Green Mountain, Inc.*