## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
                      :
                      :
                      :

In re: Keurig Green Mountain Single-Serve   :  Case No. 1:14-md-02542 (VSB) (SLC)
Coffee Antitrust Litigation                 :  MDL No. 2542
                      :
                      :
                      :

*This document concerns all related actions.*   :  Hon. Vernon S. Broderick
                           Hon. Sarah L. Cave
——————————————————— x

## MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT KEURIG GREEN MOUNTAIN'S MOTION AND OBJECTIONS TO MAGISTRATE JUDGE CAVE'S <u>MARCH 28 ORDER</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

**PRELIMINARY STATEMENT** ................................................................................. 1

**BACKGROUND**........................................................................................................... 3

    **I.**    **Procedural History**............................................................................... 3

    **II.**    **Undisputed Facts Regarding Keurig's Spoliation and Violations of Court Orders**............................................................................................ 4

        *A.*    *Keurig's Flawed Document Preservation Policy and Practices Facilitated the Spoliation of Evidence*..................................................... 4

        *B.*    *Keurig Failed to Preserve 25 Hard Drives from 23 Custodians* .............. 5

            *1.*    *Plaintiffs Were Prejudiced as to Don Barberio's Spoliated Hard Drive*................................................................................... 7

            *2.*    *Plaintiffs Were Prejudiced as to Joe Mueller's Spoliated Hard Drive*................................................................................... 9

            *3.*    *Plaintiffs Were Prejudiced as to Steve Ferreira's Spoliated Hard Drive*................................................................................. 10

        *C.*    *Keurig Failed to Adequately Preserve and Produce Hard Copy Documents*.............................................................................................. 10

        *D.*    *Keurig Failed to Comply with Court Orders* ......................................... 12

            *1.*    *Keurig Failed to Properly Issue Litigation Holds and Conduct Custodian Interviews*...................................................... 12

            *2.*    *Keurig Misrepresented its Substantial Completion of Production of Documents from Its CommVault System*............... 14

            *3.*    *Keurig Did Not Adequately Produce Its Transactional Data by the Court-Ordered Deadlines* ............................................. 14

        *E.*    *The Court Ordered Measured and Limited Remedies* ........................... 15

**LEGAL STANDARD**................................................................................................. 16

**ARGUMENT**............................................................................................................... 17

    **I.**    **It Was Not Clearly Erroneous for the Court to Apply a Conservative Standard Under Rule 37(e) in Favor of Keurig** ........................... 17

    **II.**    **Plaintiffs Are Entitled to All Awarded Sanctions Under Rule 37(b) Alone** .................................................................................................... 20

**CONCLUSION**........................................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ala. Aircraft Indus. V. Boeing Co.*,
  319 F.R.D. 730 (N.D. Ala. 2017) ......................................................................... 2

*Alter v. Rocky Point School Dist.*,
  No. 13-1100 (JS)(AKT) 2014 WL 4966119 (E.D.N.Y. Sept. 30, 2014) .............................. 17

*Berger v. New York City Police Dep't*,
  2016 WL 11706217 (S.D.N.Y. Mar. 29, 2016) .................................................... 21

*Charlestown Cap. Advisors, LLC v. Acero Junction*,
  337 F.R.D. 47 (S.D.N.Y. 2020) ....................................................................... 19

*Cordius Trust v. Kummerfeld*,
  2008 WL 113664 (S.D.N.Y. Jan. 11, 2008) ....................................................... 18

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
  No. 14-CV-1191 JLS (KSC), 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ..................... 2, 19

*Daval Steel Prod. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991) ........................................................................ 17

*Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*,
  304 F.R.D. 178 (S.D.N.Y. 2014) ................................................................... 2, 18

*E.E.O.C. v. Fry's Elecs., Inc.*,
  874 F. Supp. 2d 1042 (W.D.Wa. 2012) .............................................................. 2

*Europe v. Equinox Holdings, Inc.*,
  20-CV-7787 (JGK)(KHP) 2022 WL 832027 (S.D.N.Y. March 21, 2022) ....................... 17

*Hawley v. Mphasis Corp.*,
  302 F.R.D. 37 (S.D.N.Y. 2014) ..................................................................... 2, 19

*Herman v. City of New York*,
  334 F.R.D. 377 (E.D.N.Y. 2020) ................................................................... 21

*Hernandez v. Hacienda Mexicana Corp.*,
  2018 WL 6427639 (S.D.N.Y. Dec. 6, 2018) ..................................................... 21

*Karsch v. Blink Health Ltd.*,
  No. 17-CV-3880 (VM) (BCM) 2019 WL 2708125 (S.D.N.Y. June 20, 2019) ............. 18, 19

*Klipsch Grp., Inc. v. ePro E-Com. Ltd.*,
   880 F.3d 620 (2d Cir. 2018) ..................................................................................21, 22

*Kronisch v. U.S*,
   150 F.3d 112 (2d Cir. 1998) ..................................................................................17, 18

*Mali v. Fed. Ins. Co.*,
   720 F.3d 387 (2d Cir. 2013) ........................................................................................ 20

*Man Zhang v. City of New York*,
   No. 17 Civ. 5415 (JFK) (OTW), 2019 WL 3936767 (S.D.N.Y. Aug. 20, 2019) ................. 16

*Miller v. Thompson-Walk*,
   2019 WL 2150660 (W.D. Pa. May 17, 2019) ................................................................... 2

*Ottoson v. SMBC Leading & Fin., Inc.*,
   268 F. Supp. 3d 570 (S.D.N.Y. 2017) ..................................................................2, 19, 20

*Raymond v. City of New York*,
   No. 15-CV-6885-LTS-SLC, 2020 WL 3619014 (S.D.N.Y. July 2, 2020) .......................... 17

*Richard v. Dignean*,
   6:11-CV-06013 EAW, 2021 WL 5782106 (W.D.N.Y. Dec. 7, 2021) ................................ 21

*S. New England Telephone Co. v. Global NAPS Realty, Inc.*,
   624 F.3d 123 (2d Cir. 2010) ........................................................................... 12, 18, 19

*Sekisui Am. Corp. v. Hart*,
   945 F. Supp. 2d 494 (S.D.N.Y. 2013) ....................................................................20, 21

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
   328 F.R.D. 100 (S.D.N.Y. 2018) ..................................................................... 12, 18, 19

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999) ..................................................................................17, 18

*Yoo v. Actimize, Inc.*,
   No. 12 Civ. 8108(VSB), 2014 WL 1087974 (S.D.N.Y. Mar. 19, 2014) ..........................16, 17

**Other Authorities**

Fed. R. Civ. P. 37(b) ....................................................................................*passim*

Fed. R. Civ. P. 37(e) ....................................................................................*passim*

Plaintiffs[1] write in opposition to Defendant Keurig Green Mountain, Inc.'s ("Keurig's") objections to Judge Cave's April 11 Order, ECF No. 1806 (the "Order").

## PRELIMINARY STATEMENT

Beginning in April 2021, pursuant to a schedule adopted by the Court, Plaintiffs filed a motion for sanctions ("Plaintiffs' Motion"), with briefing completed by June 7, 2021.[2] Plaintiffs' Motion detailed years of failures to adhere to court orders and widespread spoliation by Keurig, focusing on five key categories: (i) Keurig's failure to conduct proper and timely custodian interviews; (ii) Keurig's unexplained loss of hard drives for nine custodians and inability to access hard drives for 15 custodians; (iii) Keurig's destruction of hard copy notes; (iv) Keurig's failure to timely collect and produce emails from its litigation hold repository, CommVault; and (v) Keurig's knowing production of materially incorrect transactional data, while failing to advise Plaintiffs and their experts that it was incorrect for months. Order at 6. Plaintiffs asked the Court for "a suitable preclusion order, an adverse inference, and attorneys' and expert fees and costs." Pls.' Mot. at 25.

On March 28, 2022, the Court issued a 120-page Order on both parties' motions, denying Keurig's Motions as to TreeHouse and JBR in full. Order at 119. The Court granted Plaintiffs' Motion in part and denied it in part, awarding Plaintiffs reasonable attorneys' fees and expenses across several categories and permitting Plaintiffs to present evidence at trial regarding Keurig's failure to preserve hard drives from three custodians and hard copy documents from one custodian. *Id*. In addition, the Court noted that Plaintiffs may also "request that Judge Broderick deliver a

---

[1] TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse"), McLane Company, Inc. ("McLane"), and Direct Purchaser Plaintiffs ("DPPs") (collectively, "Plaintiffs").

[2] Keurig also filed a motion for sanctions against TreeHouse and JBR ("Keurig's Motion"), which was denied. Order at 119. Keurig has not filed any objections to the denial of that motion.

jury instruction informing the jury that it may consider that evidence, along with all the other evidence in the case, in their deliberations." *Id.*

Given the amount of spoliation and sanctionable conduct by Keurig in this case, the Court's Order is conservative. Even where a relatively small number of entire devices (like hard drives) are spoliated, various courts in this District have concluded that it is reasonable to assume prejudice, without any further inquiry. Indeed, but for one case, *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, Plaintiffs are not aware of a decision in any District where more devices were spoliated than the number—25—found by the Court to be spoliated in this case. No. 14-CV-1191 JLS (KSC), 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019). And in *CrossFit, Inc.*, the relief granted was a directed verdict. *Id.* at *26.[3]

Here, the Court declined to entertain such a presumption of prejudice in favor of Plaintiffs even though the law provides that it was reasonable to apply such a presumption in their favor. Instead, the Court embarked on a detailed, custodian-by-custodian analysis, carefully parsing through all the extensive evidence to determine if the spoliated data may have been replaced from other sources. Keurig's objection to this approach finds no support in the facts or the law, and there is no basis for reversal, particularly under the governing standard, which requires the District Court to affirm the Order unless it is clearly erroneous or contrary to law. Keurig cannot, therefore, meet its burden on this motion and its objections to Magistrate Judge Cave's March 28 Order.

---

[3] Plaintiffs are aware of at least six other cases in which fewer devices were spoliated and an adverse inference was granted. *See Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178 (S.D.N.Y. 2014) (one hard drive spoliated); *Hawley v. Mphasis Corp.*, 302 F.R.D. 37 (S.D.N.Y. 2014) (two hard drives spoliated); *Ottoson v. SMBC Leading & Fin., Inc.*, 268 F. Supp. 3d 570 (S.D.N.Y. 2017) (emails deleted between two relevant individuals); *E.E.O.C. v. Fry's Elecs., Inc.*, 874 F. Supp. 2d 1042 (W.D.Wa. 2012) (two hard drives spoliated); *Ala. Aircraft Indus. V. Boeing Co.*, 319 F.R.D. 730 (N.D. Ala. 2017) (two CDs of ESI spoliated); *Miller v. Thompson-Walk*, 2019 WL 2150660 (W.D. Pa. May 17, 2019) (select email files and two computers spoliated).

## BACKGROUND

### I.    Procedural History

Following the parties' spoliation and sanctions briefings, at a conference on August 3, 2021, the Court asked the parties to jointly submit a "timeline . . . of the preservation notices laid against the key events" pertaining to the parties' pending motions.  ECF No. 1506 at 12:4-9.  Two days later, the Court issued an Order outlining a set of topics for a stipulated set of facts to be submitted by the parties.  ECF No. 1434.  Following further discussion between the parties and clarification from the Court, the Court issued an Order setting a November 19, 2021 deadline for the parties to submit their stipulated set of facts.  ECF No. 1554.  Parties timely filed the requested Stipulations.  ECF No. 1632.

Thereafter, the Court held a conference with the parties to discuss the Stipulations on November 24, 2021 and held an additional conference on December 16, 2021 to discuss the format of oral argument on the Motions.  ECF Nos. 1432, 1644, 1649, 1665.  Finally, on January 7, 2022, in advance of the oral argument, the Court submitted questions to the parties, advising that the parties should be prepared to address the questions during oral argument the following week.  ECF No. 1674.  One of the questions the Court asked Plaintiffs to be prepared to answer at oral argument was, "Do Plaintiffs ask that fees and costs be imposed on Keurig only, or Keurig's counsel as well?"  *Id*.[4]

On January 11 and 12, 2022, the Court heard nearly ten hours of oral argument on the parties' Motions via videoconference.  ECF Nos. 1432, 1699-1, 1699-2; ECF min. entries Jan. 11-12, 2022.  At the conclusion of the argument, the Court requested that the parties file the

---

[4] No similar question was asked of Keurig with respect to its motion against TreeHouse and JBR.  At the oral argument, Plaintiffs answered the Court's question by deferring to the discretion of the Court, depending on its assessment of the responsible part(ies).  ECF No. 1699-1, Jan 11, 2022 Hr'g Tr. at 98:16-99:5.

PowerPoint Presentations used during the hearing.  ECF No. 1699-2, Jan. 12, 2022 Hearing Tr., at 368:18-370:19.  The parties did so, filing a total of 248 pages of slides regarding Plaintiffs' Motion and an additional 215 pages of slides regarding Keurig's Motion.  ECF Nos. 1693-1, 1693-2, 1696-1, 1699-3, 1699-4, 1699-5.  The slides contained not only legal argument but also extensive recitations of the relevant facts and case law.  *Id*.  The Court's Order followed on March 28, 2022. Order at 120.

## II.  Undisputed Facts Regarding Keurig's Spoliation and Violations of Court Orders

Keurig has stated that it "does not challenge the facts found in the Opinion for purposes of this objection."  ECF No. 1817, Keurig's Objections to Magistrate Judge Cave's March 28 Order ("Mot.") at 1.  The following are the facts found by the Court, not disputed by Keurig, as to the massive spoliation Keurig is responsible for in this case.

### A.  *Keurig's Flawed Document Preservation Policy and Practices Facilitated the Spoliation of Evidence*

Keurig's policies and practices regarding document preservation were flawed and led to spoliation of evidence.  Keurig's Acceptable Use of Assets Corporate Policy confirms that local hard drives on employee computers are not backed up.  Order at 24; ECF No. 1340-6 at 5. Notwithstanding this lack of a backup procedure, the Keurig policy only told employees to "ensure that **critical** business files and data are stored on these [network storage] backed up drives" and it prohibited employees from storing "personal data" on shared networks.  ECF No. 1340-6 at 5 (emphasis added).  In other words, Keurig employees were free to store other business files not deemed as "critical" and data and undefined "personal data" on local hard drives, which were not

4

backed up.  *Id*.  While some Agreed Custodians[5] followed this instruction, others did not, instead keeping most or all business documents on their hard drives—sometimes "as a course of habit."  Order at 24-25.

Further, Keurig's 30(b)(6) representative confirmed the importance of local hard drives and how they contained non-duplicative documents, noting both that local hard drives are not backed up and that "***all*** of our employees store files on their hard drive" and may also save to their desktops, which are not backed up.  ECF No. 1635-6 (Campbell Tr. at 114:1-12; 119:21-120:16) (emphasis added).  Similarly, while Keurig employees were instructed to "return" all documents, devices, and media "relating in any way" to Keurig's business upon their departure from Keurig, not all employees followed this directive.  Order at 25.

### B.   *Keurig Failed to Preserve 25 Hard Drives from 23 Custodians*

The Court determined that Keurig "lost altogether" nine hard drives and was unable to access an additional 16 hard drives "for 23 Agreed Custodians whose files were required to be preserved and searched."  Order at 36.[6]  The Court found that "Keurig's failure to preserve this ESI [for a ***total of 25 hard drives***] was, at least, a negligent violation of the ESI Order under Rules 37(b)(2)(A) and a failure to take reasonable steps under Rule 37(e)."  *Id*. at 36-37.

Of the 25 hard drives that were lost or inaccessible by virtue of what the Court found was Keurig's "at least … negligent violation of the ESI Order," Order at 36, the Court found that the

---

[5] Agreed Custodians refers to all custodians for whom Keurig agreed to  collect, review, and produce responsive documents from electronic and hard copy sources, as described in the Order.  Order at 4-5 (citing ECF No. 1699-1 at 107).

[6] As noted in the Court's Order, with Keurig's consent, Plaintiffs sent two of these hard drives—those belonging to Fran Rathke and Michelle Stacy—to a data recovery center for further analysis. Order at 35. Ms. Rathke's hard drive yielded eleven unique documents and Ms. Stacy's yielded approximately 4,600 additional emails.  *Id*.  The Court awarded Plaintiffs fees and expenses associated with the additional measures taken to recover documents from these hard drives.  *Id*. at 118-19.  Keurig does not object to the Court's Order in this regard.  Mot. at n. 3.

loss or inaccessibility of hard drives for three custodians prejudiced Plaintiffs.  *Id*. at 90.  Her analysis "consider[ed] the 'full record' in determining prejudice and corresponding sanctions," and the Court explicitly took into account the preservation steps Keurig had taken as well as the additional discovery in this case, including:  the number of litigation hold notices Keurig sent out, the number of custodians for whom Keurig collected documents, the number of documents Keurig produced, the number of hard drives Keurig produced which were successfully imaged and decrypted, the number of depositions conducted, and the number of non-party subpoenas served on former Keurig employees and third parties.  *Id*. at 43.  Following this analysis, the Court examined each of the 23 Agreed Custodians for whom one or more hard drives were lost or inaccessible to make individual determinations of prejudice.  *Id*. at 44.

In addition to considering the available sources of documents produced relating to each of the 23 Agreed Custodians, the Court's analysis was based on a determination of whether significant documents were missing—not on the egregiousness of Keurig's misconduct in failing to produce the hard drives.  For example, although the Court found that "Keurig's failure to preserve [Bruce] Godfrey's hard drive represents a greater degree of negligence, given that he expressly turned in his laptop in April 2017, well after Keurig's preservation obligation arose," she determined that Plaintiffs were not prejudiced by his lost hard drive because the production from his network drive "spans his entire employment and included multiple copies" of a key June 2016 memo in which Mr. Godfrey expressed a negative opinion about the "so-called 'benefits' of the 2.0 Brewer."[7]  Order at 53-54.

---

[7] As the Director of Market Research, Mr. Godfrey is a key witness in this case, having repeatedly advised top Keurig management that the then-planned Keurig 2.0 Brewer was not perceived by consumers as providing any consumer benefit whatsoever. Pls.' Mot. at 4-5, 12-13, 21. He was "castigated" by the Keurig CEO for "question[ing] what we have already decided to do" with respect to launching the 2.0 Brewer with lockout technology. ECF No. 1287-6 at 1. Shortly after sending the June 2016 memorandum where he again, after the fact, questioned the benefits of the 2.0 Brewer, he was summarily fired and his laptop mysteriously disappeared. Order at 53. Notwithstanding these

In all, though the Court found that Keurig had been at least negligent in the spoliation with respect to 25 hard drives covering 23 Agreed Custodians, she ultimately concluded that the loss or inaccessibility of hard drives for only three of the 23 Agreed Custodians prejudiced Plaintiffs. Order at 90.

### 1. Plaintiffs Were Prejudiced as to Don Barberio's Spoliated Hard Drive

The first of these three is Mr. Don Barberio. Mr. Barberio, former Vice President of At-Home Sales, worked at Keurig for nearly twenty years, from June 1996 until June 2014, participating in meetings with key "customers whom TreeHouse alleges were lost to Keurig after the roll-out of the 2.0 Brewer, including Giant Eagle, Wakefern, Ahold, and Kroger." Order at 44. These four customers alone amount to over ███████, before trebling, of TreeHouse's claimed lost profit damages in this case, further demonstrating their importance. *See* Ex. 1, Expert Reply Report of Lauren Stiroh, Ph.D., at Exs. 8.A and 8.D.[8] Mr. Barberio, who was under a litigation hold when he left Keurig in June 2014, met with Tom Ferguson—former Keurig Vice President of US Hot Beverages and Senior Vice President, Sales for Grocery/Drug/Club—and an individual from Keurig's Human Resources department to return his phone and laptop upon his departure. Order at 44. As noted by the Court, "[d]espite Ferguson's presence when Barberio returned his devices and the litigation hold, Barberio's laptop was lost, which Keurig knew by January 2019." *Id*. Further, Mr. Barberio "testified that he did not use a share drive, and 'had no idea what a share drive' was." *Id*. Notably, "Keurig did not find or produce any documents from Barberio's share drive." *Id*.

---

egregious facts, the Court did not award any sanctions against Keurig on account of its conduct with respect to Mr. Godfrey's documents.

[8] All exhibits referenced herein are to the Declaration of Aldo Badini, dated April 25, 2022.

The Court noted that, while Keurig did produce a number of emails for Mr. Barberio and added his supervisor, Jim Travis, as a custodian, "Keurig produced essentially <u>no</u> non-email documents for Barberio."  Order. at 45 (emphasis in original).  Paired with his testimony that he did not know what a share drive was, the Court made the "reasonable inference that any documents he saved were saved to his hard drive only" and found that, "[g]iven his central role in meetings with Keurig's key customers about the 2.0 Brewer in late 2013 and early 2014 . . . Plaintiffs were prejudiced by Keurig's failure to preserve Barberio's hard drive."  *Id*. at 45.

In arguing that the finding of prejudice was clearly erroneous, Keurig misleadingly highlights a single example in the Court's opinion regarding a specific meeting that Mr. Barberio had with the retailer Publix.  Mot. at 11; Order at 38-39.[9]  However, this narrow focus ignores numerous references to Mr. Barberio's meetings with key customers like "Giant Eagle, Wakefern, Kroger, Ahold and others."  Order at 38, 40, 44.  It also ignores the Court's finding that during Mr. Barberio's meetings with customers in late 2013 and 2014 he uttered the statement "that the 2.0 Brewer would not be compatible with customers' cups," a statement that forms one of the bases for TreeHouse's Lanham Act claims.  Order at 40, 44.  It further ignores the fact that Keurig has repeatedly attempted to discredit and impeach the testimony of Ms. Klawon, a key former employee of Kroger by trying to suggest that TreeHouse did not lose the Kroger business because of anything that Keurig said or did.  *See, e.g.*, ECF No. 1494 at 101.  Obviously, the missing documents of Mr. Barberio would have been key to this inquiry and, based on the sworn testimony

---

[9] Keurig also points to what it calls an inaccuracy in the Court's factual findings regarding the number of documents produced relating to this meeting.  Mot. at n. 11.  To begin with, Keurig's comment contradicts its position earlier in its brief that it "does not challenge the facts found in the Opinion for purposes of this objection."  Mot. at 3.  In any event, putting aside the point that the alleged "inaccuracy" is immaterial to the Court's findings, Keurig also happens to be wrong.  Keurig does not attach any specific documents to its Motion, instead vaguely indicating the existence of "multiple documents related to the meeting."  Mot. at n. 11.  Keurig does not have any "record of the discussion during that meeting," as the Court indicated.  Order at 38.

of the Kroger buyer, Ms. Klawon, would likely have been prejudicial to Keurig, as Ms. Klawon swore that Keurig made statements to Kroger claiming that competitive cups were unsafe and caused damage to Keurig brewers.  *See* ECF No. 1495 at 84.

2.  *Plaintiffs Were Prejudiced as to Joe Mueller's Spoliated Hard Drive*

The second of the Agreed Custodians as to whom the Court found prejudice is Mr. Joe Mueller, who served as Senior Vice President of Sales for Keurig from October 2013 until March 2015 and "was responsible for all the interaction between" Keurig and Walmart, one of TreeHouse's alleged lost customers.  Order at 59.  Walmart alone amounts to over ████████ of TreeHouse's claimed lost profit damages in this case, before trebling.  *See* Ex. 1, Expert Reply Report of Lauren Stiroh, Ph.D., at Ex. 8.A.

Keurig itself has demonstrated the importance of Mr. Mueller's documents.  Keurig's Ron DiFabio testified that Keurig entered into its standard exclusive private label agreement with Walmart, but Mr. Mueller testified to the contrary.  ECF No. 1287-3, DiFabio Tr. at 247:1-249:7; ECF No. 1632 ¶ 99; ECF 1287-5; ECF 1466 at 5; ECF 1607 at 1-2.  Keurig has used Mr. Mueller's testimony in its summary judgment briefing to argue that there was no exclusive contract with Walmart.  ECF Nos. 1466, 1607.  Mr. Mueller's spoliated documents could likely have added clarity to this hotly disputed issue.

Keurig was unable to locate Mr. Mueller's hard drive and his network drive "contained no documents" despite the fact that "[Mr. Ron] DiFabio, to whom Mueller reported, testified that he and his direct reports saved everything to network drives."  Order at 59.  In short, no non-email documents whatsoever were produced for Mr. Mueller from any drive, local or shared.  *Id*.  Based on the fact that Keurig produced only emails for Mr. Mueller and produced no network drive documents, the Court found that "there is a gap in Keurig's production as to Mueller that has prejudiced Plaintiffs."  *Id*.

### 3.  *Plaintiffs Were Prejudiced as to Steve Ferreira's Spoliated Hard Drive*

Finally, the Court made a finding of prejudice regarding the spoliated hard drive of Mr. Steve Ferreira, Keurig's Vice President of Finance, Business Analytics, Demand Planning and Strategy from April 2004 until April 2016. Order at 52. In its Amended Initial Disclosures, Keurig stated that Mr. Ferreira had "knowledge of development and expansion of the 2.0 Brewer," *id*., which, as Keurig itself has claimed, is a key part of this case. *See, e.g.*, ECF No. 433 at 5; ECF No. 451 at 5.

By July 2018, TreeHouse had raised concerns regarding the deficiencies in Mr. Ferreira's production, and "[b]y September 2018, Keurig had determined that it was unable to decrypt one of Ferreira's hard drives, but did not disclose that fact to Plaintiffs until May 2019." Order at 52. The Court conducted a detailed review of the document productions from Mr. Ferreira's remaining hard drives and his network drive, noting that over 141,000 documents were produced from three of his four total hard drives, and only 141 documents were produced from his network drive. *Id.* This, of course, suggested he had a regular practice of storing documents on his local hard drive. Based on this comprehensive review of the documents produced from Mr. Ferreira's files, the Court found that the nearly six-month gap in which there were *no* documents produced from his files indicated that "Plaintiffs have been prejudiced by Keurig's failure to preserve a valid encryption key for Ferreira's hard drive." *Id*. at 52-53.

### C.  *Keurig Failed to Adequately Preserve and Produce Hard Copy Documents*

In addition to the spoliation of hard drives, Keurig repeatedly failed to collect and produce hard-copy documents from its custodians. As found by the Court, "Keurig's non-production of hard copy documents came to light in August 2019, when Plaintiffs were scheduled to take the deposition of Bob McCall, former Senior Vice President of Engineering at Keurig who was involved in the design and testing of the Keurig 2.0 Brewer and portion packs and whom Keurig

listed in its December 15, 2017 Initial Disclosures." Order at 37. "[S]hortly before his deposition was to occur, he produced 20 handwritten notebooks that Keurig had not previously produced, resulting in the adjournment of McCall's deposition." *Id*. This happened again a month later in September 2019, shortly before the deposition of Ben Yoder, Keurig's Vice President of Business Development. *Id*. at 38. Mr. Yoder's deposition "was adjourned when, two days before the scheduled date, Keurig informed Plaintiffs that it had learned of 21 handwritten notebooks in Yoder's possession that had not yet been produced." *Id*.

Following these incidents, Plaintiffs "demanded confirmation that Keurig had asked all custodians whether they possessed hard copy documents or notebooks," and "Keurig produced hard copy documents from five additional custodians." Order. at 38. At a September 23, 2019 conference, Judge Pitman admonished Keurig, stating that the notebooks were "documents that really should have been produced long ago had a search for responsive documents been done with the appropriate level of diligence." *Id*. (citing ECF No. 691 at 43).

Not all hard-copy documents could be recovered at such a late date. Don Barberio, Keurig's former Vice President of At-Home Sales, "testified that he kept a yellow binder that may have contained notes of meetings with Giant Eagle, Wakefern, Kroger, Ahold, and others, but, despite having received a litigation hold notice in February 2014, threw the binder away when he cleaned out his office on his departure from Keurig in June 2014," four months after TreeHouse commenced this litigation.[10] *Id*. at 38. The Court found that "Keurig failed to take reasonable

---

[10] In contrast to this specific identification of a particular missing yellow binder, in its own sanctions motion against TreeHouse alleging missing hard copy notes from TreeHouse custodians, Keurig offered only rank speculation that such notes had ever existed and had no answer as to whether any of the witnesses at issue were asked at their depositions about the existence of the alleged notes (which they were not). ECF No. 1699-1, Jan. 11, 2022 Hearing Tr. at 222:6-16.

steps to preserve relevant hard copy documents" for Mr. Barberio and that "identifiable, potentially responsive documents were lost." *Id*. at 40-41.[11]

### D. Keurig Failed to Comply with Court Orders

In addition, Keurig has repeatedly failed to comply with court orders, including with respect to its litigation holds and custodian interviews, its production of documents from its CommVault system, and its production of transactional data.[12]

#### 1. Keurig Failed to Properly Issue Litigation Holds and Conduct Custodian Interviews

Keurig failed to issue litigation hold notices to six Agreed Custodians, **five of whom were still at Keurig when TreeHouse filed its complaint in February of 2014**: Ken Crites, Don Holly, Steve Smits, Chris Stevens, Susan Cote, and Brad Tidwell.[13] Order at 30-31.[14] Keurig also failed to conduct timely custodial interviews of at least eleven custodians. *Id*. at 31, 33. Some of these Agreed Custodians, like Michelle Stacy, Keurig's former President, and Tom Ferguson, Keurig's

---

[11] This ruling was conservative given that three other custodians testified that they either threw out notes (John Whoriskey) or left documents at Keurig that were never produced (Suzanne DuLong and Ron DiFabio). Order at 39.

[12] Keurig also argues that "the Court did not identify the court order that was violated." Mot. at 13. This is not true. The Court clearly outlines the scheduling orders Keurig violated. Order at 5 (citing ECF Nos. 354-1 and 484). And the Court goes on to discuss in even more detail the orders violated with respect to Keurig's delayed CommVault productions. Order at 79 ("The week after the April 30, 2018 initial deadline for substantial production of documents, Keurig notified Plaintiffs that it had substantially completed its obligations. (ECF Nos. 354-1 at 3; 1284-9 at 2.) Three months later, in early August 2018, Keurig notified Plaintiffs that it had not gathered archived emails from CommVault for most of the initial 29 Agreed Custodians. (ECF No. 1287-19 at 3)").

[13] While Keurig now attempts to excuse its misconduct by pointing to the number of Keurig employees who *did* receive timely litigation holds, Mot. at 2, Keurig itself has acknowledged that "it does not follow that a hold issued to some key players could satisfy a duty to preserve information *uniquely possessed* by other key players." ECF No. 1384 at 6 (emphasis in original).

[14] Keurig argues that Plaintiffs did not raise this issue in a timely manner and that such arguments were improperly considered by the Court. Mot. at 22. However, Keurig cites no law to support its statement that "[a]rguments must be timely raised to allow the non-moving party an opportunity to respond in writing"—because the law does not support this premise. *Id*. The Court may consider the full record, including new points made at oral argument. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018); *S. New England Tel. Co. v. Global NAPS Realty, Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) ("The district court is free to consider the full record in the case in order to select the appropriate sanction.") (internal quotations omitted). Further, Keurig's counsel agreed that parties were free to make "any arguments you want to make" during oral arguments so this objection is waived. ECF No. 1649, Nov. 24, 2021 Hearing Tr. at 13:19-23; 20:22-21:4.

former Vice President of US Hot Beverages and Senior Vice President, Sales for Grocery/Drug/Club, testified that they were first contacted by Keurig's counsel "more than five years after this action commenced." *Id*. at 31.  Others, like Don Holly, "testified that Keurig's counsel did not contact him about preservation of documents at all." *Id*.  Keurig notably ignored and did not fully answer the Court's question as to when it first conducted interviews of all of its custodians.  ECF No. 1632 at ¶¶ 69, 81, 85, 89, 92, 97.

Keurig's recognition of its obligations to distribute litigation holds and conduct timely custodian interviews "is in fact memorialized in the ESI Order, pursuant to which Keurig committed to 'take reasonable steps' to preserve information and 'ask each of [its] document custodians' whether and where they maintained potentially responsive documents."  Order at 32 (citing ECF No. 41 at 4, 16).  Keurig's failure to comply with the ESI Order in this regard was laid bare when the Court asked the parties to provide, "[f]or the Keurig custodians whom Plaintiffs contend Keurig failed to conduct (or insufficiently conducted) interviews [to ensure the preservation of evidence] (see ECF No. 1286 at 8), information concerning that custodian's dates of employment, title, receipt of preservation notice(s), and dates of interviews."  ECF No. 1434. Keurig failed to answer the Court's question as to interview dates for six of the custodians at issue, forming part of the basis for the Court's ultimate holding that Keurig failed to timely interview all six of those custodians.  ECF No. 1632 at ¶¶ 69, 81, 85, 89, 92, 97; Order at 31, 33.  By failing to distribute litigation holds to six Agreed Custodians and timely interview eleven other Agreed Custodians, the Court found that Keurig had failed to comply with the ESI Order under Rule 37(b)(2)(A) and had failed to take "reasonable steps" to preserve ESI under Rule 37(e)).  Order at 83, 85.  Per the Court's Order, "Keurig's failure to interview custodians in a timely manner resulted in the loss of Barberio's hard copy notes and hard drive, which appeared to contain unique

discoverable information." *Id*. at 71.  The Court found that Keurig's failure to conduct timely interviews of its Agreed Custodians was negligent and, as to Mr. Barberio in particular, "perhaps grossly negligent." *Id*.  Although Keurig's litigation hold "cast a wide net[,] . . . Keurig sloppily implemented that litigation hold by not following up with certain of its custodians sooner to make sure that net was capturing what was required under the ESI Order," which "constitutes negligence." *Id*. at 71-72.

### 2. *Keurig Misrepresented its Substantial Completion of Production of Documents from Its CommVault System*

Between 2011 and 2016, Keurig archived email and server data from employees on litigation holds using a system called CommVault.  Order at 27-28.  Keurig represented to Plaintiffs that it had substantially completed its obligations the week after the April 30, 2018 deadline for substantial production of documents.  *Id*. at 79.  On August 6, 2018, following extensive investigation and inquiry by Plaintiffs, Keurig "discovered that the CommVault emails for most of the initial 29 Agreed Custodians were not collected, processed, or produced." *Id*. at 28; Pls.' Mot. at 13.  Remarkably, Keurig had not searched and produced emails from the very custodians who were the subject of litigation holds.  It took Keurig until October 31, 2018 to collect and produce these documents from CommVault.  *Id*.  Plaintiffs made significant efforts and inquiries to investigate these discrepancies in Keurig's CommVault productions.  Order at 88 (citing ECF No. 1287-10).

### 3. *Keurig Did Not Adequately Produce Its Transactional Data by the Court-Ordered Deadlines*

In fall 2019, after Plaintiffs had "already invested months of work and significant resources into analyzing Keurig's incorrect data," the parties learned that Keurig's transactional data production was missing data.  Order at 28.  Keurig's 30(b)(6) witness, Ms. Kristin Lemieux, testified that the amount of data missing was "significant" and "material."  ECF No. 1284-51 at 3.

14

Despite the fact that Keurig became aware of material deficiencies in the data by the fall 2019, Order at 28 (citing ECF No. 1284-51 at 3-4), it did not notify Plaintiffs or begin to correct the issue until after Plaintiffs had "raised issues about the completeness of Keurig's transactional data production" months later, in February 2020. *Id*. at 80.  Keurig was ordered to complete reproduction of its transactional data by March 19, 2020; this deadline was pushed back further to April 20, 2020.  ECF Nos. 839, 887.

Keurig suggests that its deficiencies in data production were no different than TreeHouse's supplemental productions of transactional data.  This is a red herring.  To begin with, Keurig did not move for sanctions based on late production of TreeHouse's transactional data—nor could they have.  Any delays in TreeHouse's production of transactional data were manufactured by Keurig. While Keurig's data had genuine material deficiencies which they knew of and failed to disclose for months, the so-called "late" transactional data produced by TreeHouse was, in fact, supplemental data provided in response to specific, narrow questions from Keurig requesting data outside of the basic transactional data parties had agreed upon.[15]

### E.   The Court Ordered Measured and Limited Remedies

In response to these findings of massive spoliation and violation of Court orders (none of which are disputed by Keurig), spanning multiple types of media (electronic and hard copy), the Court ordered limited, carefully constructed remedies.  The Court applied measured remedies under Rule 37(e)(1), ordering sanctions "no greater than necessary to cure the prejudice" to Plaintiffs.  Order at 86.  The Court further considered sanctions under Rule 37(b)(2)(A), which

---

[15] Furthermore, Keurig asked for this additional information in December 2019, more than 10 months after it received TreeHouse's primary transactional data production.  *See* Ex. 2, C. Amezcua Ltr., Dec. 8, 2019; Ex. 3, D. Hughes Leiden Ltr. re Prod. Vol. 19, Jan. 29, 2019.  TreeHouse responded promptly to Keurig's request, providing the additional data by March 19, 2020.  Ex. 4, M. Cui Ltr. re TreeHouse Data Production, March 19, 2020.

"expressly permits" sanctions including special jury instructions, preclusion, and adverse inference. *Id.*  The Court ultimately awarded expenses, including attorneys' fees, for a defined subset of time periods and activities under Rule 37(b)(2)(C) based on Keurig's failure to notify Plaintiffs of deficiencies in a timely manner, in violation of the ESI and scheduling orders. *Id.* at 86-88.  Additionally, the Court determined that Plaintiffs will be permitted to present evidence to the jury concerning: (i) Keurig's failure to preserve Mr. Barberio's hard copy notes; and (ii) the gaps caused by Keurig's failure to preserve hard drives for Mr. Barberio, Mr. Mueller, and Mr. Ferreira. *Id.* at 88-89.  The Court further noted that "this sanction does not encroach on Judge Broderick's authority to determine the scope of any spoliation evidence to be presented at trial and to craft any related jury instructions on a full evidentiary record," affirming Plaintiffs' ability to request a jury instruction informing the jury that it may consider evidence of Keurig's spoliation in making its decision. *Id.* at 89-90 (internal quotations omitted).

## LEGAL STANDARD

As Keurig has acknowledged in prior briefings, *see* ECF 854 at 3, the standard of review for a Magistrate Judge's discovery order is "highly deferential," affording magistrates "broad discretion in resolving discovery disputes" and "broad authority to impose discovery sanctions." *Yoo v. Actimize, Inc.*, No. 12 Civ. 8108(VSB), 2014 WL 1087974, at *1 (S.D.N.Y. Mar. 19, 2014) (Broderick, J.); Order at 8 (citing *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17 Civ. 4576 (GHW) (BCM), 2021 WL 1191527, at *4 (S.D.N.Y. March 30, 2021); *Man Zhang v. City of New York*, No. 17 Civ. 5415 (JFK) (OTW), 2019 WL 3936767, at *4 (S.D.N.Y. Aug. 20, 2019).

It is undisputed that "[a] district court must affirm such an order unless it is 'clearly erroneous or contrary to law.'"  *Yoo*, 2014 WL 1087974, at *1 (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)); *see also* Order at 9.  "A magistrate's ruling is contrary to law if it fail[s] to

apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *Yoo*, 2014 WL 1087974, at *1. Keurig, therefore, carries a "heavy burden" to show the Court has abused its discretion such that a reversal is warranted. *Id*.

District courts have broad discretion in crafting proper sanctions for spoliation. *Alter v. Rocky Point Sch. Dist.*, No. 13-1100 (JS)(AKT) 2014 WL 4966119, at *5 (E.D.N.Y. Sept. 30, 2014) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (collecting cases describing courts' "wide discretion" to select appropriate sanctions; *Europe v. Equinox Holdings, Inc.*, 20-CV-7787 (JGK)(KHP) 2022 WL 832027, at *3 (S.D.N.Y. March 21, 2022) (explaining that district courts have "broad discretion to fashion appropriate corrective measures"). A finding of prejudice is a factual determination well within the purview of a Magistrate Judge and cannot be overturned unless clearly erroneous or contrary to law. *Raymond v. City of New York*, No. 15-CV-6885-LTS-SLC, 2020 WL 3619014, at *3 (S.D.N.Y. July 2, 2020) (recounting the facts cited in the Magistrate Judge's finding of prejudice and holding that the finding was not clearly erroneous or contrary to law).

## **ARGUMENT**

### I.   **It Was Not Clearly Erroneous for the Court to Apply a Conservative Standard Under Rule 37(e) in Favor of Keurig**

Rule 37(e) "leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e)(1) adv. comm. n. to 2015 amend. Courts do not "hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence," because to do so "would subvert the . . . purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction." *Kronisch*

17

*v. U.S*, 150 F.3d 112, 128 (2d Cir. 1998). Once prejudice is determined, sanctions should be crafted to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West*, 167 F.3d at 779 (internal quotations omitted).

The Court made the factual determination that Plaintiffs successfully showed prejudice regarding the specific custodians for whom Plaintiffs are permitted to present evidence of spoliation to the jury. It is thus fully within the Court's discretion to award such a remedy. Indeed, when whole devices are spoliated, as the Court found was the case here, it is reasonable to assume prejudice. *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 181-82 (S.D.N.Y. 2014). When an unknowable amount of ESI of multiple custodians from numerous drives has been destroyed along with handwritten notes, such as Mr. Barberio's, the lost documents are presumed to be prejudicial. *Cordius Trust v. Kummerfeld*, 2008 WL 113664, at *4 (S.D.N.Y. Jan. 11, 2008) (awarding adverse inference). Data is considered "lost" where there is no backup copy or other source from which to retrieve a reliable, exact copy of the full set of spoliated data. *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM) 2019 WL 2708125, at *20 (S.D.N.Y. June 20, 2019).

The Court, in fact, took a more conservative approach than what was required by law: it reviewed each custodian with a lost or inaccessible hard drive on an individual basis to determine whether there were significant gaps in the record that prejudiced Plaintiffs.[16] *See supra* at 6. As

---

[16] The conservative nature of the Court's entire approach was also demonstrated by its decision not to consider, for purposes of its opinion, additional exhibits submitted by Plaintiffs in support of their motion, which were submitted in connection with the Court-Ordered stipulation but had not been previously provided with Plaintiffs' motion, ruling that this amounted in effect to an unauthorized sur-reply by Plaintiffs. Order at 24. Of course, it was within the Court's discretion under Second Circuit precedent to consider such material. *Syntel*, 328 F.R.D. at 120 (S.D.N.Y.

Keurig recognizes, the test under Rule 37(e) is whether "the missing evidence was unique—that is, not otherwise produced from other sources—and material." ECF No. 1384 at 8. Keurig further concedes that production gaps can be used to indicate prejudice. *Id*. at 9.[17] The Court carefully went through this analysis with respect to the three custodians at issue to determine Plaintiffs had been prejudiced by Keurig's spoliation. *See supra* at 7-10.

Thus, the remedies awarded by the Court are, if anything, ***conservative*** given the egregious spoliation at issue in this case. In the only case identified by parties in which ***more*** devices were spoliated, the injured party received a directed verdict. *CrossFit, Inc.*, 2019 WL 6527951. Here, the remedies are on par with those awarded in cases with significantly ***less*** spoliation. *See Karsch*, 2019 WL 2708125 (S.D.N.Y. June 20, 2019) (awarding attorneys' fees, permitting presentation of evidence to jury regarding spoliation, and allowing movant to seek a jury instruction when a server was destroyed resulting in some amount of data being lost, corrupted, or destroyed and three devices were lost); *Charlestown Cap. Advisors, LLC v. Acero Junction*, 337 F.R.D. 47 (S.D.N.Y. 2020) (awarding preclusion of certain testimony from sanctioned party regarding the subject at issue and allowing the movant to present evidence of spoliation to jury when one employee's emails were all deleted, despite the fact that a portion of those emails were recovered and produced); *Hawley v. Mphasis Corp.*, 302 F.R.D. 37 (S.D.N.Y. 2014) (granting adverse inference, awarding attorneys' fees, and re-opening discovery for deposition of relevant individual when two computer hard drives were deleted); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570

---

2018); *S. New England Tel. Co.*, 624 F.3d at 144 (2d Cir. 2010) ("The district court is free to consider the full record in the case in order to select the appropriate sanction.") (internal quotations omitted).

[17] In fact, when it came to Keurig's own motion for sanctions, it engaged in rank speculation of prejudice, relying on a novel "hockey stick" argument for prejudice, speculating that because more emails were produced for custodians in some years than in others (producing a "hockey stick"-shaped graph), there "must have been" spoliation in the years represented by the "ice" end of the "stick." ECF 1699-2, Jan. 12, 2022 Hr'g Tr. at 360:20-362:23.

(S.D.N.Y. 2017) (adverse inference instruction when emails were deleted between two relevant individuals). What the Court described as Keurig's negligence at a minimum with respect to numerous devices and custodians, and disregard of Court ordered obligations, justifies a presumption of relevance and prejudice, and could be sufficient to grant an adverse inference. *Id.*

## II.     Plaintiffs Are Entitled to All Awarded Sanctions Under Rule 37(b) Alone

Apart from Rule 37(e), all of the sanctions awarded to Plaintiffs are supportable under Rule 37(b) alone based on Keurig's violation of express court orders. As noted by the Court, "[w]hen determining the appropriate remedy for a violation of Rule 37(b), a court 'should impose the least harsh sanction' that will 'serve as an adequate remedy; the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal.'" Order at 19 (citing *Slovin v. Target Corp.*, No. 12 Civ. 863 (HB), 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013) and *Grammar v. Sharinn & Lipshie, P.C.*, No. 14 Civ. 6774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016)). The Court has a high degree of discretion in determining the nature of a jury instruction: a court may "simply [tell] the jury" that the evidence was destroyed or wrongfully withheld, or it may "add[] that the jury could, but need not, draw inferences" against the sanctioned party based on those facts, or it may instruct the jury that it "*should* draw [an] adverse inference" based on the facts. *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir. 2013) (emphasis in original; citing Fed. R. Civ. P. 37(b)(2)(A)). This Court has held that "each party should bear the risk of its own negligence" and an adverse inference may "provide[] the necessary mechanism for restoring the evidentiary balance." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 503 (S.D.N.Y. 2013) (Scheindlin, J.) ("The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible

for its loss.").[18]  As this Court has held, "[a] party is negligent even if the failure results from a pure heart and an empty head."  *Berger v. New York City Police Dep't*, 2016 WL 11706217, at *5 (S.D.N.Y. Mar. 29, 2016) (Broderick, J.) (internal quotations omitted).

Here, the Court chose a particularly mild form of a jury instruction as a sanction for Keurig's misconduct, which she distinguished from a more specific mandatory adverse inference.  Order at 88-89.  The Court concluded that Plaintiffs will be permitted to present evidence to the jury regarding Keurig's failures to preserve the data at issue, and that the jury would "be permitted to consider that evidence, along with the other evidence in the case, in evaluating Plaintiffs' claims and Keurig's defenses in their deliberations."  *Id*. at 89.  The Court did not direct that the jury must draw any particular inferences from the spoliation, even though the granting of such a sanction was plainly within the Court's discretion.  Keurig has failed to cite a single case, from any jurisdiction, where the award of a jury instruction was reversed as being too harsh a sanction.

The Court's determination that Keurig should pay certain expenses and attorneys' fees is also fully within her discretion.  In fact, following her determination that Keurig's failure to comply with court orders was not substantially justified, Second Circuit law *requires* the Court to award "reasonable expenses, including attorney's fees, caused by the failure" to comply with the court orders.  Fed. R. Civ. P. 37(b)(2)(C).  This is true even if documents and data were ultimately belatedly provided to Plaintiffs.  Under the text of Rule 37(b), it is unnecessary for Plaintiffs to show spoliation—Keurig's violation of the court orders is sufficient.  "[A] party that disregards its [discovery] obligations may create a reasonable suspicion that further investigation is warranted,

---

[18] While *Sekisui* was decided under the older version of Rule 37(e), the principle for which it is cited here has since been reaffirmed.  *See, e.g.*, *Hernandez v. Hacienda Mexicana Corp.*, 2018 WL 6427639, at *5 (S.D.N.Y. Dec. 6, 2018); *Herman v. City of New York*, 334 F.R.D. 377, 383 (E.D.N.Y. 2020); *Richard v. Dignean*, 6:11-CV-06013 EAW, 2021 WL 5782106, at *6 (W.D.N.Y. Dec. 7, 2021).

21

and thereby imposes costs on its adversary that would never have been incurred had the party complied with its obligations in the first instance," and an award of monetary sanctions compensates the adversary "for costs it should not have had to bear." *Klipsch Grp., Inc. v. ePro E-Com. Ltd.*, 880 F.3d 620, 634 (2d Cir. 2018).

Keurig now argues that, because the CommVault and transactional data productions were ultimately produced, they were not appropriately raised in a spoliation motion. Mot. at 1-2. To begin with, the court-ordered schedule pursuant to which Plaintiffs' motion was brought was not limited to simply "spoliation" motions. Instead, the schedule called for "[a]ll motions for spoliation *and sanctions relating to known conduct* to such date." ECF No. 1160 (emphasis added). Moreover, Keurig itself sought "an award of fees and costs" from TreeHouse to remedy alleged "discovery misconduct," without tying this to any specific spoliation or even alleging that TreeHouse had violated any discovery order. Keurig's Mot. at 22. It follows, *a fortiori*, that such an award is appropriate where, as the Court found, one or more discovery orders were violated by Keurig. *See* Order at 86-87.

Keurig's additional argument that Plaintiffs' reimbursement for expert fees will be overbroad is both misplaced and premature. Keurig is attempting to bypass the meet-and-confer process outlined by the Order and has instead jumped the gun, complaining to the Court of a perceived slight that does not exist. Without basis, Keurig inaccurately claims that Plaintiffs plan to seek reimbursement for all expert expenses incurred between February 7, 2019 and February 2020. Mot. at 1-2, 14-15. This is simply not the case. As allowed by the Order, Plaintiffs intend to seek *reasonable* experts' costs incurred specifically "while working with Keurig's deficient transactional data" during the specified date range. Order at 88, 119. Plaintiffs have already begun the process of conferring with their experts to determine what time was actually wasted during the

year in which they were working with materially deficient transactional data and have no intention of seeking unreasonable fees from Keurig.

In any event, Keurig's complaint is premature in that the Court has Ordered Plaintiffs to meet and confer with Keurig before June 1, 2022 to see if the parties can agree on the reimbursable amount of fees and costs. Order at 19. Plaintiffs are still in the process of calculating the amounts at issue and will approach Keurig in the near future. If Keurig agrees, then this is a non-issue; if Keurig does not, then it can take the issue up with Judge Cave, who will determine, at least in the first instance, whether Plaintiffs' fee and cost requests are reasonable.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court uphold the Order made in ECF No. 1806 and deny this motion in its entirety. Plaintiffs further request attorneys' fees and costs in connection with this motion.

Dated: April 25, 2022           Respectfully Submitted,
       New York, NY             WINSTON & STRAWN LLP

                        By:    /s/ Aldo A. Badini

                               Aldo A. Badini
                               abadini@winston.com
                               Susannah P. Torpey
                               storpey@winston.com
                               200 Park Avenue
                               New York, NY 10166-4193
                               (212) 294-6700
                               (212) 294-4700 (fax)

                               *Counsel for Plaintiffs TreeHouse
                               Foods, Inc., Bay Valley Foods, LLC
                               and Sturm Foods, Inc.*

                               Alexander G. Brown
                               James C. Grant
                               Valarie C. Williams

B. Parker Miller
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Phone: 404-881-7000
Fax: 404-881-7777
alex.brown@alston.com
jim.grant@alston.com
parker.miller@alston.com
valarie.williams@alston.com

Steven L. Penaro
ALSTON & BIRD LLP
90 Park Avenue
15th Floor
New York, NY 10016-1387
Phone: 212-210-9400
Fax: 212-210-9444
steve.penaro@alston.com

*Counsel for Plaintiff McLane Company, Inc.*

William V. Reiss
David B. Rochelson
Matthew J. Geyer
399 Park Avenue, Suite 3600
New York, NY 10022
(212) 980-7400
wreiss@robinskaplan.com
drochelson@robinskaplan.com
mgeyer@robinskaplan.com

Michael M. Buchman
Michelle C. Clerkin
Jacob O. Onile-Ere
MOTLEY RICE LLC
777 Third Avenue, 27th Floor
New York, NY 10017
(212) 577-0050
mbuchman@motleyrice.com
mclerkin@motleyrice.com
jonileere@motleyrice.com

Robert G. Eisler
Deborah Elman

24

Julia McGrath
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500
reisler@gelaw.com
delman@gelaw.com
jmcgrath@gelaw.com

*Counsel for Direct Purchaser Plaintiffs
and Interim Co-Lead Counsel for the
Proposed Direct Purchaser Plaintiff Class*