UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE- SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542 <br><br> Master Docket No. 1:14-md-02542 (VSB) (SLC) |
| *This document concerns the TreeHouse, McLane, and DPP actions.* | |

**REPLY BRIEF IN SUPPORT OF KEURIG GREEN MOUNTAIN INC.'S MOTION AND OBJECTIONS TO MAGISTRATE JUDGE CAVE'S MARCH 28 ORDER**

## **TABLE OF CONTENTS**

A.   The Presentation Sanction Is Legally Unsupported ........................................................ 1

    1.   No Finding of Prejudice Exists to Support the Presentation Sanction ................. 2

    2.   The Presentation Sanction Is Not "Conservative" ............................................... 5

B.   The Opinion Lacks Legal Basis for Cost Shifting of Attorneys' Fees and Expert Costs for Keurig's Supplemental Productions ..................................................... 6

C.   The Opinion's Monetary Sanctions Under Rule 37 Are Also Legal Error .................... 8

D.   Plaintiffs Concede that the Monetary Sanctions are Overbroad Under Rule 37 ......... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alter v. Rocky Point Sch. Dist.*,
  No. 13-1100 (JS) (AKT), 2014 WL 4966119 (E.D.N.Y. Sept. 30, 2014) ................................. 4

*Capricorn Mgmt. v. Gov't Emps.*,
  No. 15-cv-2926 (DRH) (SIL), 2019 WL 5694256 (E.D.N.Y. July 22, 2019) .......................... 4

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
  337 F.R.D. 47 (S.D.N.Y. 2020) ........................................................................................... 1, 6

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
  No. 14-CV-1191 JLS (KSC), 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ............................ 6

*Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*,
  304 F.R.D. 178 (S.D.N.Y. 2014) ............................................................................................ 6

*Goodyear Tire & Rubber Co. v Haeger*,
  137 S. Ct. 1178 (2017) ..................................................................................................... 7, 10

*Hawley v. Mphasis Corp.*,
  302 F.R.D. 37 (S.D.N.Y. 2014) .............................................................................................. 6

*Karsch v. Blink Health Ltd.*,
  No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125 (S.D.N.Y. June 20, 2019) ..................... 6

*Klipsch Grp., v. ePro E-Com.*,
  880 F.3d 620 (2d Cir. 2018) ................................................................................................... 8

*Mali v. Fed. Ins. Co.*,
  720 F.3d 387 (2d Cir. 2013) ................................................................................................... 6

*Ungar v. City of New York*,
  329 F.R.D. 8 (E.D.N.Y. 2018) ............................................................................................... 2

*Virginia Props., LLC v. T-Mobile Ne. LLC*,
  865 F.3d 110 (2d Cir. 2017) ................................................................................................... 7

**Statutes**

Fed. R. Civ. P. 37 ............................................................................................................... *passim*

Keurig objected to portions of Judge Cave's March 28 Sanctions Opinion & Order on legal grounds. The Opinion erroneously allowed Plaintiffs to seek to present evidence to a jury about lost data from three custodians. A presentation sanction is a serious measure that may be awarded only to correct an "evidentiary imbalance" caused by the loss of evidence that is unavailable elsewhere and supports the movant on a material issue. The Opinion found no evidentiary imbalance on any claim here. To the contrary, it found that Keurig and third parties produced extensive evidence on the relevant issues. The Opinion's monetary sanctions also lack legal support. The Opinion awarded these sanctions for productions of supplemental transactional data and email, but did not identify any court Order that the productions violated. And neither the ESI Order nor the Federal Rules support these sanctions. Plaintiffs' opposition does not engage with these legal errors.[1] This Court should reverse sanctions where, as here, they are contrary to law.

A. **The Presentation Sanction Is Legally Unsupported**

The Opinion erred in awarding presentation sanctions because it did not find prejudice sufficient to support the sanction. Permitting a party to present evidence to a jury regarding information loss is a "serious measure[]," available only as "necessary to cure prejudice found by the court." Fed. R. Civ. P. 37 note (Committee Notes on Rules – 2015 Amendment); *cf. Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61, 69 (S.D.N.Y. 2020)

---

[1] Plaintiffs instead claim "undisputed facts" that reflect their own allegations, not Judge Cave's findings. For example, the Opinion never found that Keurig's document preservation policy and practices were "flawed" or "facilitated the spoliation of evidence" as Plaintiffs claim. Resp. at 4. The Opinion found that Keurig instructed employees to save company documents on network drives and not to their local drives. Op. at 24. It also found that Keurig did not act unreasonably in believing its employees complied with this policy. *Id*. at 69. And Judge Cave firmly rejected Plaintiffs' misreading of Mr. Campbell's 30(b)(6) deposition testimony that Plaintiffs now present to Your Honor as a "fact[] found by the Court, not disputed by Keurig." *Compare* Resp. at 5 *with* ECF No. 1699-1, Hr'g Tr. at 185:23-186:8 ("Judge Cave: You're misreading it. The next line he says it's synced with the network storage folder. Don't misread it.").

(permitting "more serious measure[]" of presentation on loss of "highly relevant" emails from "crucial witness" to correct "evidentiary imbalance"); Opinion, ECF No. 1806 ("Op.") at 89.

Plaintiffs do not deny that the Opinion found no such imbalance to support the presentation sanction awarded. Plaintiffs instead argue that an "unknowable amount of ESI of multiple custodians from numerous drives has been destroyed along with handwritten notes."[2] ECF No. 1823 ("Resp.") at 18. But presentation of evidence to a jury about spoliation is not available based on allegations or even a showing of data loss. It requires an affirmative showing that specific lost information was not available from "another source," Op. at 15, *and* would have been helpful to movant's case, *id*. at 18 ("[T]he moving party must show that the lost information "was not only probative, but that it would affirmatively support the movant's claim."); *Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018) (information must be "not only probative, but . . . affirmatively support the movant's claim"). Plaintiffs do not dispute that they never made this showing, and this requires reversal of the presentation sanction.[3]

### 1. No Finding of Prejudice Exists to Support the Presentation Sanction

Plaintiffs do not identify any actual findings in the Opinion supporting the prejudice required for a presentation sanction. The Opinion found that the first custodian, Mr. Barberio, attended meetings with customers Publix, Kroger, Giant Eagle, Ahold, and Wakefern, but the Opinion makes specific findings as to only one, Publix. Further, the Opinion's discussion as to this single customer was based on Plaintiffs' misrepresentation to the Court that "no records are available of that meeting," ECF No. 1286 at 10 n.15, and the Court relied on that. Op. at 38-39.

---

[2] Plaintiffs repeatedly suggest that the loss of entire devices or numerous drives means that "it is reasonable to assume prejudice, without any further inquiry." Resp. at 2; *id.* at 18, 20. Yet Plaintiffs then acknowledge, as they must, that "the Court declined to entertain [ ] a presumption of prejudice in favor of Plaintiffs." *Id*.

[3] The presentation sanction should also be reversed for the reasons discussed in Part C.

That statement is demonstrably false.[4]  In any case, the Opinion does not make the additional findings necessary to show prejudice even as to Publix, nor could it:  Plaintiffs do not deny that information about Publix is likely to be *harmful* to their claims, because Publix stayed with an unlicensed pack supplier, and did not switch to buying portion packs from Keurig.  Plaintiffs also do not deny that they never subpoenaed Publix or asked any witness about this meeting.  As for the other customers with which Mr. Barberio met (Kroger, Giant Eagle, Wakefern, and Ahold) Plaintiffs likewise made no showing—and the Opinion makes no finding—that any lost documents from Mr. Barberio were the *only* evidence of those meetings.  Keurig's Brief and Objection, ECF No. 1817 ("Br.") at 6-7 (collecting cases) (permitting sanction where "primary evidence" is lost).  Indeed, Plaintiffs stipulated that Keurig produced communications regarding these meetings, ECF No. 1632 at 100, and do not dispute that Keurig produced detailed meeting summaries or slide decks from each of the meetings at issue, Br. at 12, n.12.  And Plaintiffs do not deny that they could have sought additional evidence about the meetings through depositions of Keurig and the customers.[5]

As to the other two custodians as to whom the Opinion awarded a presentation sanction, Messrs. Mueller and Ferreira, Plaintiffs do not dispute that the Opinion says even less:  Its *only* findings were that the two employees held relevant roles and there were gaps in Keurig's

---

[4] *See, e.g.*, Newton Decl. Ex. 1 (KGM00398502) (discussing Publix meeting); Newton Decl. Ex. 2 (KGM01777533) (same).  While the Court's findings on Publix are legally insufficient to support the sanction issued, Keurig includes these documents to correct Plaintiffs' misrepresentation (and the one made again to Your Honor) in light of Plaintiffs' refusal to do so themselves.  Resp. at 8, n.9.

[5] As the Opinion notes, the parties had ample opportunity to seek discovery of customers, and a former Kroger employee sat for a deposition.  Op. at 102.  Plaintiffs do not dispute that they made a "conscious choice" not to depose Wakefern, Ahold, Giant Eagle, or Publix.  *Cf.* Op. at 117-18 ("conscious choice" not to "elicit more detail" from customer about meeting precludes prejudice).  Plaintiffs make some inaccurate statements regarding Ms. Klawon's testimony, but do not deny that they worked with her to draft a declaration that includes dozens of paragraphs on the November 2013 meeting that Mr. Barberio attended.

3

productions—neither of which is sufficient under the law to find prejudice supporting sanctions. *See* Op. at 18 (quoting *Alter v. Rocky Point Sch. Dist.*, 2014 WL 4966119, at *12 (E.D.N.Y. Sept. 30, 2014)) (prejudice *cannot* "be grounded solely on the basis that some evidence in the custody of *key witnesses* no longer exists"); *Capricorn Mgmt. v. Gov't Emps.*, 2019 WL 5694256, at *12 (E.D.N.Y. July 22, 2019) (no sanctions after loss of nearly all emails "because Defendants have failed to show that the lost information was important or how they are prejudiced by such loss"). Plaintiffs note that Mr. Mueller worked with Walmart and speculate that his missing hard drive might have contained unique evidence about the relationship between Keurig and Walmart. Resp. at 9. But the Opinion contains no finding that missing evidence from Mr. Mueller was the only source of evidence regarding Keurig's relationship with Walmart, nor could it. There are extensive produced materials on this issue from both Keurig and Walmart, and Mr. Mueller and Walmart both sat for depositions. Keurig's Opp. Br. at 13 & nn.25-26 (ECF No. 1336).

As for Mr. Ferreira, the Opinion found a six-month gap in his documents around 2016 based on an inaccurate statement by Plaintiffs. *See* Br. at 8, n.9. There is no six-month gap attributable to the old hard drive. *See id.*; *see also* ECF No. 1340-31 at 6. Strikingly, Plaintiffs' brief makes the false statement that Keurig produced no documents whatsoever from Mr. Ferreira's files from this period.[6] *See* Resp. 10. As Plaintiffs are aware, Keurig produced 9,653 documents from Mr. Ferreira from this period. *See, e.g.*, Newton Decl., Ex. 3 (excerpt of Plaintiffs' deposition Exhibit 2174 produced at KGM04860235). Moreover, even setting this aside, Plaintiffs

---

[6] The Court also did not find that "over 141,000 documents were produced from three of [Ferreira's] four total hard drives" as Plaintiffs represent to Your Honor. *Compare* Resp. at 10 *with* Op. at 52 ("Keurig produced over 141,000 documents for Ferreira, *including from* three of his four hard drives") (emphasis added). Nor did the Court find that he "had a regular practice of storing documents on his local hard drive." Resp. at 10. In fact, of the "over 141,000 [Ferreira] documents" Keurig produced, only 112 came from his three hard drives.

4

did not satisfy their obligation to identify "what [the missing] evidence might have been" and why alternative sources of evidence were insufficient.

As to all three custodians, Plaintiffs failed to present facts supporting a finding of prejudice, and the Opinion contains no findings on this critical prerequisite to the presentation sanction. *See* Op. at 15 (noting legal standard). Further, Plaintiffs do not dispute that the Court made no finding of *any* legal claim brought by Plaintiffs as to which there is an evidentiary imbalance as required to support a *presentation* remedy. The Opinion erred in awarding this remedy. Fed. R. Civ. P. 37 note (Committee Notes on Rules – 2015 Amendment) (a court "may resort to (e)(1) measures only 'upon finding prejudice to another party from loss of the information'").

### 2. The Presentation Sanction Is Not "Conservative"

Plaintiffs argue that, setting the legal requirements aside, the presentation remedy is "conservative" in light of their allegations of other loss for *other* custodians. But the Court rejected those claims, finding no prejudice as to other custodians in light of overlapping and duplicative productions from the very same custodians. Rule 37(e) does not provide for a presentation remedy as a consolation prize where a moving party brings extensive claims of prejudice that the court rejects. The legal prerequisites actually need to be satisfied as to the particular claimed lost evidence – here from Messrs. Barberio, Ferreira, and Mueller. As Plaintiffs concede, Rule 37(e) turns on whether specific "documents were missing" and whether "the missing evidence was unique—that is, not otherwise produced from other sources—and material." Resp. at 6, 19.

Plaintiffs do not address Keurig's cases showing that courts award presentation sanctions only to correct situations where the "primary evidence" that a movant would rely on was lost and "could not be obtained through additional discovery" of a party or third-party. *See, e.g.*, Br. at 6-7 (collecting cases). And Plaintiffs' own authority supports Keurig: in each case that Plaintiffs cite from this District, the Court awarded presentation sanctions only to rectify identified prejudice

5

that caused an evidentiary imbalance on a material issue. *See Charlestown*, 337 F.R.D. at 60-65 (defendant deleted emails that "could have resolved various significant factual disputes between the parties"); *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *1, 10-11, 20, 27 (S.D.N.Y. June 20, 2019) (lost emails "could have resolved one of the more significant factual disputes between the parties" *and* the party sanctioned had made repeated false statements about the email loss); *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 53-56 (S.D.N.Y. 2014) (defendant acted with bad faith and failed to produce sales and commission records that would have supported plaintiff's claims); *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014) (hard drive "was the sole repository for the entire universe of electronic evidence in [plaintiff's] possession").[7] Nowhere do Plaintiffs suggest, much less show, that an evidentiary imbalance exists here—which is not surprising given the Court's absence of any such finding, and indeed contrary finding that Keurig produced millions of documents. Op. at 44. The presentation sanction is legally unsupported and unfairly prejudices Keurig

B. **The Opinion Lacks Legal Basis for Cost Shifting of Attorneys' Fees and Expert Costs for Keurig's Supplemental Productions**

The Opinion errs in imposing sanctions under Rule 37(b) for Keurig's supplemental transactional data and archival email production because Keurig did not violate any Court Order. Plaintiffs cite two scheduling orders mentioned in the Court's procedural history recitation as the purported basis of these sanctions. Resp. at 12, n.12. This is not what the Opinion says. Nowhere

---

[7] Plaintiffs cite *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019), but that case is off point. There, unlike here, the court found an intent to deprive when the defendant lost hundreds of devices and destroyed thousands of documents in "mass deletion events" in the midst of the litigation, including *after* it had already been sanctioned. *Id.* Indeed, the Opinion notes that Plaintiffs' reliance on this case is "incorrect." Op. at 84, n.33. Plaintiffs also rely on *Mali v. Fed. Ins. Co.*, but that case did not impose sanctions under Rule 37 even when it came out at trial that plaintiffs may have prejudiced defendants by inappropriately withholding a key photograph capable of resolving a material dispute about the value of destroyed property. 720 F.3d 387, 390-93 (2d Cir. 2013).

does the Court find that Keurig violated the scheduling orders suggested by Plaintiffs, or that any such violation was sanctionable.[8] Nor was Keurig's conduct a violation of those Orders for the reasons explained in Keurig's objections. Br. at 13-14. Keurig completed its productions from the CommVault email archive months before the substantial completion deadline set by the Court, and promptly supplemented its transactional data after learning of a technical error. *Id.* The Court specifically rejected Plaintiffs' claims that Keurig's supplemental productions amounted to bad faith and found that Plaintiffs also supplemented their productions after the deadlines that Plaintiffs now say were sanctionable to miss.[9]

      The monetary awards related to Keurig's supplemental productions must also be reversed under Supreme Court precedent that requires a casual nexus between a violation and sanctions awarded. *Goodyear Tire & Rubber Co. v Haeger*, 137 S. Ct. 1178, 1186-87 (2017) (finding limitation as a matter of due process, allowing only "compensatory" sanctions for expenses that "would not have [been] paid but for the misconduct"); *Virginia Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 114 (2d Cir. 2017) (vacating sanctions award). Here, there is no "causal connection" between whatever violation the Court found (it identified none) and the award of fees for Plaintiffs' time spent investigating *any* "discrepancies" in archival email productions and expert costs while working with Keurig's original production of transactional data.

      Plaintiffs do not address *Goodyear* at all and, instead, say the Court has discretion to award any sanctions upon a finding that "one or more discovery orders were violated." Resp. at 22. But

---

[8] The Opinion does not "go[ ] on to discuss in even more detail the orders violated with respect to Keurig's delayed CommVault production" as Plaintiffs say. Resp. at 12, n.12. In the cited passages, the Court *rejects* Plaintiffs' claim of an intent to deprive based on alleged delays in Keurig's productions. Op. at 79-80.

[9] Plaintiffs reference the Order Regarding Production Deadlines, ECF No. 484, but do not address its explicit safe harbor, which arises when "due to technical or other unforeseen issue(s), production of limited numbers of documents must occur after an anticipated deadline." ECF No. 484 at 1 n.1. Plaintiffs' claim that Keurig "knowing[ly]" made incomplete productions is devoid of any support, and is false.

7

this is not the law under Rule 37, and Judge Cave rejected Plaintiffs' invocation at oral argument of the Court's inherent authority to impose sanctions based on bad faith. Op. at 10, n.7, 86 (imposing sanctions only under 37(b)(2)(C) and 37(e)(1)). Plaintiffs' reliance on *Klipsch Grp., v. ePro E-Com.*, 880 F.3d 620 (2d Cir. 2018), is similarly misplaced. *Klipsch* "did not, in fact, rely on Rule 37 as the grounds for the monetary sanctions; instead, the sanctions were imposed under the court's inherent power to manage its own affairs" once it "found that [the defendant] had acted with the requisite bad faith." *Id.* at 632 & n.6. Here, by contrast, Judge Cave *found no bad faith*, Op. at 69 ("Keurig did endeavor to meet all its obligations"), and by its own explanation, none of the Court's sanctions flows from an exercise of inherent authority. *See id.* at 10, n.7. The fee awards based on Keurig's timely supplemental productions should be reversed because they are contrary to law.

### C. The Opinion's Monetary Sanctions Under Rule 37 Are Also Legal Error

The Opinion further erred in awarding fees to Plaintiffs for "identifying deficiencies" in Keurig's productions and communicating with Keurig over a year. The Court's basis for this sanction appears to be a finding that Keurig violated the ESI Order by not interviewing eleven custodians when they first received hold notices; not locating or decrypting certain hard drives; and not distributing litigation holds to six former employees. *See* Br. at 16-23. In a litigation with millions of documents produced by Keurig alone, the Opinion failed to appropriately weigh proportionality. Plaintiffs do not engage with this legal error at all, let alone rebut it.

*First*, as noted in Keurig's opening brief, the plain terms of the ESI Order limit interview obligations to *document custodians*, which were first named in December 2017. *See* ESI Order, Section VI.G, ECF No. 41 ("[T]he parties agree to ask each of their *document custodians* whether he or she maintains potentially responsive documents or data") (emphasis added). Plaintiffs do not dispute this. *See* Resp. at 13. Plaintiffs likewise do not dispute that the ESI Order did not set

8

a deadline for the parties to interview custodians. Op. at 70-71. The Opinion erred in interpreting this silence as a requirement that interviews occur "contemporaneous with the date the custodians received litigation hold notices." *Id.* at 70. That is not an accurate reading of ESI Order, and would have required Keurig to interview hundreds of employees years before custodians were selected. Plaintiffs do not respond to this.[10] Keurig had no obligation to interview all 700 employees who received hold notices years before any were added as custodians, and the Opinion's holding otherwise was contrary to law.

*Second*, Plaintiffs do not dispute that the Court erred in failing to consider principles of proportionality. They ignore the ESI Order, which provides that parties need only search and produce responsive documents from "sources that are likely to contain non-duplicative responsive information." ESI Order, Section VI.G, ECF No. 41. Plaintiffs also ignore the Court's findings that Keurig produced from duplicative and overlapping sources fr*om the very same custodian* (not to mention other sources on the same issue, for example files from other custodians and central files). Op. at 46 (Plaintiffs "offer nothing more than speculation to support their assertion that unique documents existed on [custodial] hard drive"); *id.* at 73-74 ("Keurig also produced tens of thousands of documents from alternative sources for each of the custodians whose hard drives could not be decrypted."). There is no court order violation on which to justify Rule 37(b) sanctions.

*Third*, Plaintiffs do not try to defend the erroneous ruling that the ESI Order required Keurig to issue litigation holds to six *former* employees.[11] This is not surprising—the case law

---

[10] Plaintiffs instead opt for distraction and accuse Keurig of "fail[ing]" to provide interview dates. Resp. at 13. But Keurig limited the stipulated facts to the record before the Court, as instructed. Indeed, Plaintiffs themselves have never disclosed interview dates for their own custodians.

[11] Plaintiffs state that five of the six employees were still at Keurig when TreeHouse filed its Complaint. *See* Resp. at 12. This is not true. *See* Op. at 30-31, 83 n.32.

9

cited in the Opinion imposes no such requirement as to former employees, Op. at 32-33, and Plaintiffs themselves did not issue litigation holds to their former employees, Br. at 21 & n.19. The Opinion found Keurig issued hold notices to more than 400 employees within six days of the first Complaint (and to another 300 employees over the course of the litigation). Op. at 30. This complied with the ESI Order requiring holds to be issued to individuals "*reasonably identified*" as having potentially relevant information. ESI Order, Section VI.C, ECF No. 41. The Opinion does not offer any finding that Keurig had reason to believe that the six individuals would have relevant information in their possession after leaving Keurig, and Plaintiffs offer nothing to defend the legally unsupported sanction.

### D. Plaintiffs Concede that the Monetary Sanctions are Overbroad Under Rule 37

Finally, Plaintiffs argue that Keurig should raise its objections in connection with their future fee application. Resp. at 22-23. But Keurig has objected to the sanctions because they are contrary to law, which among other things limits any award to reasonable fees incurred because of a violation. *See Haeger*, 137 S. Ct. at 1186-87 & n.5 (violation must be "but-for" cause of fees); Fed. R. Civ. P. 37(e)(1) (permitting relief "no greater than necessary to cure the prejudice"). The Opinion errs to the extent it orders Keurig to pay fees and expenses to Plaintiffs beyond fees incurred *due to* a specific violation found by the Court. Br. at 22-23. Plaintiffs spent time analyzing Keurig's productions for completeness just as Keurig spent time analyzing Plaintiffs' productions for completeness. Cost shifting, however, is permitted only to compensate expenses caused by a particular identified violation, not all investigation and challenges, including ones that, following expense incurred by the receiving party, show no violation. Any monetary sanctions reaching beyond a violation are contrary to law and must be reversed.

| | |
|---|---|
| Dated: May 2, 2022 | /s/ *Wendelynne J. Newton*<br>**Wendelynne J. Newton**<br>**Mackenzie A. Baird**<br>*wendelynne.newton@bipc.com*<br>*mackenzie.baird@bipc.com*<br>BUCHANAN INGERSOLL & ROONEY PC<br>Union Trust Building<br>501 Grant Street, Suite 200<br>Pittsburgh, PA 15219-4413<br>Telephone: 412-562-8800<br><br>**Leah Brannon**<br>**Carl Lawrence Malm**<br>*lbrannon@cgsh.com*<br>*lmalm@cgsh.com*<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>2112 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>Telephone:  202-974-1508<br>Facsimile:  202-974-1999<br><br>*Attorneys for Defendant Keurig Green Mountain, Inc.* |