UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | CIVIL ACTION NO.: 14 MD 2542 (VSB) (SLC) |
| WINN-DIXIE STORES, INC., and BI-LO HOLDING, LLC,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>-v-<br><br>KEURIG GREEN MOUNTAIN, INC., GREEN MOUNTAIN COFFEE ROASTERS, INC., and KEURIG, INCORPORATED,<br><br>　　　　　　　　　　　Defendants. | CIVIL ACTION NO. 21 Civ. 7504 (VSB)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is the letter-motion of Defendant Keurig[1] seeking an order compelling Plaintiff Winn-Dixie[2] to respond to certain requests for admission (the "RFAs"). (MDL ECF No. 1985 (the "Motion")).[3] Winn-Dixie opposes the Motion, principally on the ground that it does not have, and has no obligation to obtain, answers to the RFAs. (MDL ECF No. 1991 (the "Opposition")). For the reasons set forth below, the Motion is GRANTED.

---

[1] Keurig refers collectively to Defendants Keurig Green Mountain, Inc., Green Mountain Coffee Roasters, Inc., and Keurig Incorporated.
[2] Winn-Dixie refers collectively to Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holding, LLC.
[3] Citations to "MDL ECF No." refer to filings in No. 14 MD 2542, and citations to "ECF No." refer to filings in No. 21 Civ. 7504.

## II. BACKGROUND

### A. Factual Background

The Court presumes familiarity with the factual background of this MDL antitrust litigation, which has been set forth in numerous prior decisions of the Honorable Vernon S. Broderick and the undersigned. See, e.g., In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., 341 F.R.D. 474, 489 (S.D.N.Y. 2022) (the "Keurig Sanctions Decision"); In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., 383 F. Supp. 3d 187, 210–16 (S.D.N.Y. 2019) (the "Keurig MTD Decision").[4]

In this tag-along action, (see ECF No. 6), Winn-Dixie seeks damages and permanent injunctive relief against Keurig for "abus[ing] its monopoly power by . . . suppressing competition in the Single-Serve Brewer Market [] and the Compatible Cup Market [] in the United States[,]" in violation of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, and Sections 3, 4, and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 14, 15(a), and 26. (ECF No. 1 ¶¶ 1–3).[5] Winn-Dixie sues "on its own behalf and/or as the assignee of" C&S Wholesale Grocers, Inc. ("C&S"), which is "a grocery supply wholesaler that, during the relevant period, purchased Price-Fixed K-Cups directly from [Keurig] for resale to Winn-Dixie and has specifically and expressly assigned its antitrust claims arising out of those purchases to Winn-Dixie" (the "C&S Claims"). (ECF No. 1 ¶ 24; see id. ¶ 25). In assigning the C&S Claims to Winn-Dixie, "C&S agree[d] that it will cooperate and coordinate with [Winn-Dixie] to the extent feasible in order to provide reasonably-available discovery, information, and witnesses under its control as needed or demanded in litigating

---

[4] All internal quotation marks and citations are omitted from case citations unless otherwise noted.
[5] The Court employs the defined terms as used in Winn-Dixie's Complaint. (ECF No. 1).

2

and/or resolving any matter asserting or involving the claims[.]" (ECF No. 1875-1 at 8 (the "Assignment")).

B. **Procedural Background**

On August 6, 2021, Winn-Dixie filed its Complaint in the Eastern District of New York, and the action was subsequently transferred to this District as related to the MDL. (ECF Nos. 1; 6, 7). For several months, Winn-Dixie took no action to prosecute this action, prompting Judge Broderick on December 17, 2021 order Winn-Dixie to show cause why the action should not be dismissed for failure to prosecute. (ECF No. 13 (the "OTSC")). Prompted by the OTSC, Winn-Dixie served the Complaint on Keurig several days later, (ECF No. 15), and thereafter, Judge Broderick entered a case management plan setting deadlines for, inter alia, the close of fact discovery as June 17, 2022. (ECF No. 19 ¶ 9).[6] The fact discovery deadline was later extended to August 3, 2022, and then to September 16, 2022. (ECF Nos. 22 ¶ 9; 34 ¶ 9).

On June 8, 2022—less then two weeks before the fact discovery deadline—Winn-Dixie "agreed to consult with C&S regarding Keurig's [requests for production] and to identify all sources maintained by C&S that are likely to possess unique, relevant information[,]" and to "produce all unique, relevant information from these sources." (MDL ECF No. 1848-1 at 8). Shortly thereafter, however, Winn-Dixie vigorously opposed having to produce any documents or information related to the C&S Claims, resulting in multiple motions to compel by Keurig, and multiple Court orders directing Winn-Dixie to search for and produce documents from C&S. (See MDL ECF Nos. 1855 (ordering Winn-Dixie to speak with C&S); 1891 (ordering Winn-Dixie to search

---

[6] Judge Broderick coordinated the pretrial schedule in this action with the pretrial schedule in the related tag-along action, BJ's Wholesale Club, Inc. v. Keurig Green Mountain Inc., No. 21 Civ. 7493 (VSB) (S.D.N.Y.). (ECF Nos. 18; 19; 22; 34).

for C&S documents and produce C&S Rule 30(b)(6) witness); 1897 (ordering Winn-Dixie to provide Keurig with an "update on the collection and production of emails, transactional data, and document retention policies from C&S"); 1901 (ordering Winn-Dixie to produce C&S data, documents, and other information); see MDL ECF No. 1930-1 (timeline)).  Winn-Dixie represented to Keurig, and the Court, on numerous occasions that it had access to C&S personnel, documents, and data. (See, e.g., MDL ECF Nos. 1848 at 3; 1848-1 at 8; 1848-3; 1895 at 5, 9, 14; 1930-8 at 4; ECF Nos. 25 at 21, 23, 24; 31 at 8–9, 31–32).  Accordingly, on August 1, 2022, the Court directed Winn-Dixie to, inter alia, run search terms for certain C&S custodians identified by Winn-Dixie and produce a produce a Fed. R. Civ. P. 30(b)(6) witness from C&S to testify regarding certain topics.  (MDL ECF No. 1891 ¶¶ 1–2).  On August 26, 2022, the Court directed Winn-Dixie to produce transactional data, document retention policies from C&S, and emails collected from C&S custodians, and to respond to Keurig's questions regarding the collection and search of the C&S custodians' emails.  (MDL ECF No. 1901 ¶ 1–2).

Ultimately, Winn-Dixie did produce some C&S documents and transactional data. (See MDL ECF Nos. 1915-1 at 3; 1915-2; 1959-1; 1959-2; 1967).  Keurig also took the Rule 30(b)(6) depositions of two C&S representatives, neither of whom had much knowledge about the C&S Claims or documents relevant to the C&S Claims.  (MDL ECF Nos. 1930-4; 1930-6).  The alleged deficiencies in Winn-Dixie's productions concerning the C&S Claims are the basis of Keurig's pending motion to dismiss the C&S Claims pursuant to Federal Rules of Civil Procedure 37(b) and 41(b).  (MDL ECF No. 1930).

At issue in the Motion are Winn-Dixie's amended responses and objections to Keurig's RFAs.  (MDL ECF No. 1985-1 (the "Responses"); see MDL ECF No. 1985).  Specifically, RFA

Nos. 260, 262, 264, 266, 268, 270, 272, 274, 275, 279, 329–36, and 340–55 all seek an admission that C&S took certain actions or knew certain information. (MDL ECF No. 1985-1 at 10–29 (the "C&S RFAs"); see, e.g., id. at 10 ("Admit that C&S did not purchase Starbucks brand Portion Packs directly from Keurig.")). In the Responses to the C&S RFAs, Winn-Dixie lodges several general objections and then adds that Winn-Dixie "object[s] to this Request as seeking information outside of their possession or control because Keurig has obtained deposition testimony from C&S, a third party, over which [Winn-Dixie] has no control, and C&S documents." (See, e.g., MDL ECF No. 1985-1 at 11). On February 1, 2023, Winn-Dixie filed the Opposition, and on February 2, 2023, Keurig filed a reply in further support of the Motion. (MDL ECF Nos. 1991; 1993).

### III. DISCUSSION

#### A. Legal Standard

##### 1. Requests for Admission

Federal Rule of Civil Procedure 36 provides that "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1)(A)–(B). In responding to an RFA, "the answering party may admit or deny a request or 'state in detail why the answering party cannot truthfully admit or deny it.'" Rep. of Turkey v. Christie's, Inc., 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 36(a)(4). Rule 36 thus imposes on the responding party the "duty to make a reasonable inquiry to obtain information that assists a party to admit or deny a particular matter, or to state that the information readily available to the party is insufficient to enable the party to admit or deny the matter." Billups v. West, No. 95 Civ. 1146 (KMW) (HBP), 1997 WL

100798, at *11 (S.D.N.Y. Mar. 6, 1997).  The responding party must therefore "explain[] the reasonable efforts made to accurately respond to" the RFA.  Id.

"What constitutes reasonable inquiry and what material is readily obtainable is a relative matter that depends upon the facts of each case."  T. Rowe Price Small-Cap Fund v. Oppenheimer & Co., 174 F.R.D. 38, 43 (S.D.N.Y. 1997).  "[U]nder certain circumstances, parties may be required to inquire of third parties in order to properly respond to requests to admit[.]"  Id. (citing In re Gulf Oil/Cities Serv. Tender Offer Litig., No. 82 Civ. 5253 (MBM), 1990 WL 657537, at *3–4 (S.D.N.Y. May 2, 1990) (requiring party to consult non-parties' counsel "to the extent necessary to respond to the objected-to" RFAs seeking narrowly-targeted information, and the party and non-parties had "plainly parallel interests" and had been closely cooperating in conducting discovery in two related cases)); see Koumantaros v. City of Univ. of New York, No. 03 Civ. 10170 (GEL) (DFE), 2005 WL 2249751, at *2 (S.D.N.Y. Sept. 15, 2005) ("The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties, but not strangers.").  When a party must consult with a non-party to respond to RFAs, "[t]he operative words then are 'reasonable' and 'due diligence.'"  Gaul v. Chrysler Fin. Servs. Ams. LLC, No. 13 Civ. 433 (TJM) (RFT), 2014 WL 1513843, at *7 (N.D.N.Y. Apr. 16, 2014).

As this Court has recognized, "[a] request for admission pursuant to Federal Rule of Civil Procedure 36 is 'not a discovery device.'"  In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., No. 14 Md. 2542, 2020 WL 6290584, at *4 (S.D.N.Y. Oct. 27, 2020) (the "Keurig Discovery Order") (quoting T. Rowe Price, 174 F.R.D. at 42).  Instead, an RFA is "a procedure for obtaining admissions for the record of facts already known by the seeker."  Versatile Housewares v. SAS Grp., No. 09 Civ. 10182 (KMK) (PED), 2010 WL 11601225, at *1 (S.D.N.Y. July 15, 2010); see Rep.

6

of Turkey, 326 F.R.D. at 399 (explaining that RFAs "are used to establish admission of facts about which there is no real dispute").  Given the purpose of RFAs to narrow the issues for trial, "there is [a] strong disincentive to finding an undue burden [in responding] where the responding party can make the necessary inquiries without extraordinary expense or effort—i.e., if consultation with [a] third party is 'readily obtainable,' in the words of [R]ule 36(a)."  Al-Jundi v. Rockefeller, 91 F.R.D. 590, 594 (W.D.N.Y. 1981) ("The burden that movants in this case say would be imposed on them were they required to ascertain from other defendants or their counsel the truth or falsity of the various admission requests is not, without a greater showing than has been made, alone sufficient to support an objection.").

The party propounding a request for admission "may move for a judicial determination of the sufficiency of an answer or objection."  Keurig Discovery Order, 2020 WL 6290584, at *4.  If a court deems the answer unjustified or deficient under Rule 36, it "may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  A court has "substantial discretion under Rule 36 . . . to determine the propriety" of both the requests and the answers and objections.  Dubin v. E.F. Hutton Grp., 125 F.R.D. 372, 373 (S.D.N.Y. 1989).  Where a request "seek[s] information as to fundamental disagreement[s] at the heart of the lawsuit or [is] unduly burdensome, a court may excuse a party from responding to the request[]."  Rep. of Turkey, 326 F.R.D. at 399.  A court "may also impose a monetary sanction."  Billups, 1997 WL 100798, at *4.

  **2. Discovery Relating to Assigned Claims**

In J.P. Morgan Chase Bank v. Winnick, 228 F.R.D. 505 (S.D.N.Y. 2005), then-District Judge Gerard E. Lynch "held that the assignee of a claim in litigation has a duty to obtain and produce

the same documents and information to which the opposing parties would have been entitled had the assignors brought the claim themselves." Royal Park inv. SA/NV v. Deutsche Bank Nat'l Trust Co., 314 F.R.D. 341, 344 (S.D.N.Y. 2016). As Judge Lynch explained, "[i]t is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees [] free of the obligations that go with litigating a claim[,]" and "[i]t would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants." Winnick, 228 F.R.D. at 506, 507. "Numerous courts in this and other circuits have come to the same conclusion—both before and after Winnick." Royal Park, 314 F.R.D. at 344 (collecting cases and requiring assignee to produce documents from assignor's files).

### B. Application

In the Motion, Keurig argues that this Court's Orders requiring Winn-Dixie to conduct reasonable searches for and produce C&S's relevant documents establish Winn-Dixie's equal obligation to respond to the C&S RFAs. (MDL ECF No. 1985 at 2 (citing MDL ECF Nos. 1891; 1901)). Thus, Keurig asks the Court to order Winn-Dixie to respond to the C&S RFAs. (Id.). In the Opposition, Winn-Dixie acknowledges its obligation, "as C&S's assignee[,] to obtain discovery from C&S[,]" but argues that "it is an entirely different matter to ask Winn-Dixie to make bending [sic] evidentiary admissions regarding information regarding C&S and its business, including information unrelated to Winn-Dixie, for use at trial." (MDL ECF No. 1991 at 1). Thus, Winn-Dixie contends that, as an evidentiary matter, "the statements of an assignor"—C&S—"are not party admissions against an assignee"—Winn-Dixie. (Id. (quoting In re Cornfield, 365 F. Supp. 2d 271, 277 (E.D.N.Y. 2004)). Winn-Dixie argues in the alternative that the information Keurig seeks in

the C&S RFAs has "all been addressed by the C&S discovery" that Winn-Dixie has produced. (Id. at 2).[7]

As an initial matter, the Court finds—and Winn-Dixie does not seriously dispute—that the C&S RFAs seek straightforward admissions concerning the C&S Claims, such as confirmation that C&S did not purchase certain brands of Portion Packs "directly from Keurig[,]" did purchase Portion Packs from several other suppliers, or received a document preservation notice and subpoena, and are therefore appropriate requests for admission under Rule 36. (MDL ECF No. 1985-1 at 10–16, 24–25). See Keurig Discovery Order, 2020 WL 6290584, at *5 (holding that requests related to litigation hold notices were proper); Thalheim v. Eberheim, 124 F.R.D. 34, 35 (D. Conn. 1988) (explaining that in requests for admission, "the facts should be stated singly, so that the party called upon to make answers need not write an essay in reply").

The Court finds that, under the circumstances of this case, Winn-Dixie has an obligation to respond—not just object—to the C&S RFAs. First, as the assignee of the C&S Claims, "it is entirely reasonable to insist that [Winn'Dixie] consult [C&S] to the extent necessary to respond to the objected-to requests." In re Gulf Oil, 1990 WL 657537, at *3; see Winnick, 228 F.R.D. at 507. Indeed, the Assignment contractually obligates C&S to respond to Winn-Dixie's inquiries for the purpose of responding to the C&S RFAs. (MDL ECF No. 1875-1 at 8). Even if Winn-Dixie were correct that Judge Lynch's reference to Rule 36 in Winnick were "stray" or "incorrect," (MDL ECF No. 1991 at 2), the principle of Winnick remains: that "[i]t is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a [claim] free of the obligations that go

---

[7] Winn-Dixie also argues that Keurig failed to fulfill its meet and confer obligations, but the Court finds that the parties did confer (see MDL ECF. No. 1985 at 1 n.1), and that further conferring between the parties would not be productive. The Court therefore addresses the parties' substantive arguments.

with litigating a claim." 228 F.R.D at 506. C&S's obligations would have included responding to the C&S RFAs, and that obligation traveled with the assignment to Winn-Dixie. Rule 36 falls squarely within the range of Federal Rules of Civil Procedure concerning "Disclosures and Discovery," and serves the dual purposes of "facilitat[ing] proof with respect to issues that cannot be eliminated from the case, and . . . narrow[ing] the issues by eliminating those that can be." Fed. R. Civ. P. 36, Adv. Comm. Note 1970 amend. Furthermore, as noted above, "[n]umerous courts" have reached the same conclusion as Judge Lynch: that an assignee must fulfill "the obligations that come with the right to assert" the assigned claim. Royal Park, 314 F.R.D. at 344. As long as Winn-Dixie continues to seek to hold Keurig liable on the C&S Claims, it must respond to reasonable requests under the Federal Rules of Civil Procedure concerning those claims.

Second, as Winn-Dixie effectively concedes by pointing to the C&S discovery that Winn-Dixie itself has gathered and produced (MDL ECF No. 1991 at 2), it has access to information about the C&S Claims and could have made a reasonable inquiry to answer the C&S RFAs, but simply chose not to do so. A party cannot, however, simply "refus[e] to admit or deny a particular matter without explaining the reasonable efforts made to accurately respond." Billups, 1997 WL 100798, at *11; see Luck v. McMahon, No. 20-CV-00516 (VAB), 2021 WL 4248887, at *32 (D. Conn. Sept. 17, 2021) (requiring party who failed to state whether he made "reasonable inquiry" as required by Rule 36(a)(4) to revise responses); Friedman v. Prudential Life Ins. Co. of Amer., 589 F. Supp. 1017, 1021–22 (S.D.N.Y. 1984) (deeming insufficient RFA responses that contained "no statement of reasonable inquiry" because a party cannot "rely on its failure to make a reasonable inquiry as to the facts sought to be admitted to create a dispute as to the truth of those facts"). While it is hypothetically possible that C&S may fail or refuse to respond to Winn-

Dixie's inquiries about the C&S RFAs, Winn-Dixie must still make a reasonable effort and describe what that effort entailed.

Third, that Winn-Dixie may incur some "burden" in undertaking the reasonable inquiry that Rule 36(a)(4) requires is not "alone sufficient to support an objection." Al-Jundi, 91 F.R.D. at 594. Winn-Dixie does not seriously argue that it would be unduly burdensome to ask C&S the answers to the C&S RFAs, and given Winn-Dixie's demonstrated access to information from C&S to date, could not demonstrate that any such burden would "be undue in the light of all the circumstances." Id. In any event, the question of "who should properly bear the risks and burdens of discovery" on the C&S Claims squarely falls with Winn-Dixie. Winnick, 228 F.R.D. at 507; see Royal Park, 314 F.R.D. at 347 (holding that assignee, not adversary, appropriately bore burden of responding to requests for information about assignors).

Finally, the cases on which Winn-Dixie relies fail to change the Court's conclusion. (MDL ECF No. 1991 at 1–2). Not only does In re Cornfield predate Winnick, but it did not involve an assignment, and followed the reasoning of a Seventh Circuit decision to find that a decedent's statement about the cause of the accident in which he perished was neither an admission by the decedent's estate nor otherwise admissible under an alternative hearsay exemption or exception. 365 F. Supp. 2d at 277–78. Winn-Dixie's reliance on In re Patterson, where the bankruptcy court made the unremarkable statement "that an assignee takes the rights of his assignor, no more and no less . . . is a principle of substantive law, not one of evidence[,]" and did not cite, let alone distinguish, Winnick, is similarly misplaced. No. 04-32201 (DWS), 2007 WL 987306, at *2 (Bankr. E.D. Pa. Apr. 2, 2007). In any event, Winn-Dixie's reliance on these cases as reasons to exclude any responses to the C&S RFAs as an evidentiary matter is premature at

this stage of the case, given that Keurig has yet to (i) see those responses, much less (ii) decide to offer them as evidence in support of its defenses. Whether any of Winn-Dixie's responses to the C&S RFAs are admissible as evidence at trial will be a decision for the trial judge pursuant to the Federal Rules of Evidence, see Laureano v. City of New York, No. 17 Civ. 181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021) ("The Federal Rules of Evidence govern the admissibility of evidence at trial."), and does not provide a basis to excuse Winn-Dixie from its obligations to respond under Rule 36 at this time. As noted above, at a minimum, one of the purposes of the RFAs is to show which issues are not in dispute and can thus be eliminated from those that must be tried. See In re Gulf Oil, 1990 WL 657537, at *3 ("[P]laintiffs will obviously be required to obtain this information as part of their trial preparation if they are to meet [Defendant]'s assertion at trial that [the non-party] misrepresented its oil reserves during the tender offer period. It necessarily follows that it would not be unreasonable to require plaintiffs to obtain such data at this stage in order to serve the purpose embodied in Rule 36 of narrowing the scope of contested issues and proof at trial.").

### IV. CONCLUSION

For the reasons set forth above, the Motion is GRANTED and by **February 24, 2023**, Winn-Dixie must conduct the "reasonable inquiry" required by Rule 36(a)(4) and provide revised responses to the C&S RFAs.

The Clerk of Court is respectfully directed to close MDL ECF Nos. 1985 and 1986.

Dated:   New York, New York            SO ORDERED.
         February 10, 2023

                                       _____
                                       SARAH L. CAVE
                                       United States Magistrate Judge