

February 16, 2023

**VIA CM/ECF**

Hon. Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 518
New York, NY 10007

    **Re:** *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
       **MDL No. 2542**
       **Joint Letter on Sealing Issues Per Court Order of January 17, 2023 (ECF No. 1978)**

Dear Hon. Judge Broderick:

  We write on behalf of the parties and third parties whose motions to seal materials were either addressed by the Court's January 17, 2023 Opinion & Order ("Sealing Order") or are still pending before the Court, in accordance with the Court's directions in the Sealing Order.  *See* ECF No. 1978, at 48.  We provide in this joint letter (1) a report on the results of the "meet and confer" process ordered by the Court; (2) the Parties'[1] positions on a proposed plan for implementing any redactions approved by the Court for filing on the public docket; and (3) Plaintiffs'[2] request for sanctions directed to Keurig for failing to comply with the Sealing Order.

**(1)** **Results of the Court Ordered "Meet and Confer" Process**

  *Plaintiffs' Position:* Plaintiffs suggested that the most efficient way to comply with the "meet and confer" requirements of the Sealing Order would be for Parties and Third Parties[3] with pending motions to seal to review the Sealing Order and then indicate in a chart the requests to seal that they were still maintaining.  In this manner, the Court would have in one place a complete list of the sealing requests that continue to be at issue.  Keurig would not agree to this proposed method and demanded that its name be removed from Plaintiffs' communication to Third Parties.  Ex. JL-18 to the Declaration of Evan C. Miller, Esq. in Support of Joint Letter on Sealing Issues Per Court Order of January 17, 2023 (ECF No. 1978) ("Miller Decl.").

---

[1] The term "Parties" means Plaintiffs, as defined herein, and Defendant Keurig Green Mountain, Inc. ("Keurig").

[2] The term "Plaintiffs" means Plaintiffs TreeHouse Foods, Inc., Sturm Foods, Inc., Bay Valley Foods, LLC (collectively, "TreeHouse"), Plaintiff JBR, Inc. d/b/a Rogers Family Company ("JBR"), Plaintiff McLane Company, Inc., and the Direct Purchaser Plaintiffs.

[3] The term "Third Parties" means third parties who have a motion to seal materials either addressed by the Sealing Order or pending before the Court.  Specifically, the Third Parties are listed in section (1)(a)(ii) of this letter.

Plaintiffs therefore sent an email to all Third Parties (without Keurig's participation) on January 27, 2023, asking them to send to Plaintiffs by no later than February 7, 2023 information reflecting the particular requests to seal they were maintaining notwithstanding the Sealing Order. *See* Ex. JL-19 to Miller Decl. Furthermore, as set forth in the attached Declaration of Evan C. Miller, Esq., *see* Miller Decl., the Parties and Third Parties engaged in follow-up telephonic meet and confers and exchanged various correspondence to further comply with the Sealing Order.

As a result of this process, Keurig and most Third Parties maintained all of their requests to seal, and some Third Parties agreed to withdraw their requests to seal entirely or in part. We provide further details on these positions below.

**Keurig's Position:** Since the Court issued its Sealing Order, Keurig has worked closely with Plaintiffs and Third Parties.[4] Leading up to Plaintiffs' January 27 communication, Keurig maintained regular contact with Plaintiffs and hoped to reach agreement on a proposal for collecting Party and Third Party responses to the Sealing Order.

On January 26, Plaintiffs announced to Keurig their proposal that confidentiality designations be put into a chart form within one week of the email's distribution or be deemed withdrawn. Ex. JL-18 to Miller Decl.; Ex. JL-20 to Miller Decl. Keurig explained its position that this demand would be inefficient for the Court and for Third Parties, particularly if a party had no changes, but Plaintiffs refused to entertain other options. Ex. JL-18 to Miller Decl.; Ex. JL-20 to Miller Decl. Keurig could not support this demand, which conflicts with Rule 45 and the Court's Order.

The Order states that if any party "believes that a sealing request that they have made is mooted or no longer merited given the guidance and determinations in this Opinion & Order, they should raise that information as part of this letter." ECF 1978 at 48-49. It did not require Third Parties to chart their sealing requests using a predetermined template or risk wholesale waiver of confidentiality. Most third parties have also chosen to maintain their confidentiality designations.

    a.    ***Keurig and Third Parties Maintaining All Of Their Sealing Requests***

        i.    **Defendant Keurig**

**Plaintiffs' Position:** For the reasons detailed in Section (3) below, Keurig should be sanctioned for flouting the Sealing Order issued by this Court. Keurig refused to ***reconsider even one*** of its over 360[5] extraordinarily broad requests to seal. Apart from the fact that many of the sealing requests were frivolous to begin with, Keurig had no legal basis to ignore this Court's

---

[4] This includes an exchange of letters with Competitor Plaintiffs on January 30, February 2, February 3, February 7, and February 8 and meet and confers on January 23, January 26, and February 3. Keurig also participated in meet and confers with Third Parties on February 7, 10, 13, 14, and 15.

[5] This number is conservative. Keurig sought to seal 77 separate exhibits in their entirety. *See generally* ECF 1769. Several of these are comprised of multiple documents, such as compilations of agreements. *See, e.g.*, *id.* at 20-23 (referencing a single exhibit, Exhibit S017, which is a compilation of dozens of agreements). Moreover, Keurig sought to redact 287 different exhibits, some of them over 100 pages in length, with multiple redactions per page. *See, e.g.*, ECF 1773-4 (KGM Ex. R004).

Hon. Vernon S. Broderick, U.S.D.J.
February 16, 2023
Page **3** of **15**

explicit direction to use the Court's "guidance and determinations" in the Sealing Order to re-evaluate whether sealing requests previously made were "mooted or no longer merited." *See* ECF 1978, at 48-49. And, as detailed with examples below, the motivation for Keurig's refusal appears to be simply a desire to keep embarrassing and plainly illegal conduct out of the public eye. But this is not a basis for sealing. Moreover, Keurig proposed, for the first time on February 7, 2023— ***three weeks*** after the Sealing Order—that a Special Master be appointed to rule on outstanding sealing requests, but only on the conditions that Plaintiffs (a) agree to pay half the Special Master fees for doing the work that Keurig itself was ordered to do but ignored; and (b) relinquish their rights to oppose Keurig's pending Motion for Reconsideration of portions of this Court's Sealing Order. Ex. JL-23 to Miller Decl.; ECF 1989, 1990. In short, Keurig's conduct is unreasonable and sanctionable.

Plaintiffs repeatedly exhorted Keurig to comply with this Court's Sealing Order. On January 27, 2023, after Keurig refused to join in Plaintiffs proposed plan to report updated sealing requests to the Court in chart form, Plaintiffs asked Keurig to confirm that Keurig would at least notify the Court of sealing requests that it would withdraw after considering the holdings and reasoning of the Sealing Order. Ex. JL-20 to Miller Decl. Receiving no response, Plaintiffs followed up on February 1, 2023. *Id.*

Keurig finally responded on February 2, 2023, taking the position that the declarations it had previously submitted in March 2022 (ten months before the Sealing Order) in support of its motion to seal summary judgment and *Daubert* materials had "provided the required substantiation" for sealing all of the materials at issue. Ex. JL-21 to Miller Decl. Thus, Keurig refused to reconsider any of its requests to seal, despite being ordered to do so. *See id.*

Keurig confirmed this position in a telephonic meet and confer with Plaintiffs on the next day. Plaintiffs at that time provided examples to Keurig of its requests that did not meet the standard set forth in the Sealing Order. For instance, Plaintiffs observed that documents created prior to January 1, 2016 did not meet the high standard justifying sealing unless the requesting party had demonstrated with specific reasons why publication would result in cognizable harm, which Keurig had not done. Keurig refused to budge.

Keurig's intransigence is especially troubling in light of the fact that document discovery in this case ended as of ***December 31, 2017*** (with the exception of certain databases of transactional information), and, therefore, even the most recent documents at issue are over five years old.

Plaintiffs submit the following as just some examples of Keurig sealing requests that are not made with any good-faith legal or factual basis but to avoid public embarrassment and possible further legal liability:

- ***Keurig's and Dunkin's illegal*** ▬▬▬ ***agreement.*** Keurig maintains its request to seal testimony of Keurig's former president, Michelle Stacy, admitting that Keurig and Dunkin' (admitted competitors) entered into an agreement in February 2011 to ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* ECF 1769, Attach. 1, at 52; ECF 1811-7 (excerpted testimony); ECF 1781-54 (KGM Ex. S017, Part 47), at 25

(showing date of agreement). Specifically, Dunkin' agreed ▮▮▮▮▮▮▮▮▮▮ in exchange for Keurig's agreement ▮▮▮▮▮▮▮▮▮▮. ECF 1811-7 (excerpted testimony). This testimony about a 2011 agreement is not only stale, it is Keurig's admission of a ▮▮▮▮▮▮ in restraint of trade, so there is no legitimate basis for sealing. Rather, it is direct evidence supporting Plaintiffs' Sherman Section 1 antitrust claims and "is simply too relevant to this dispute to permit sealing." *See* Sealing Order at 16.

- ***Keurig's and Starbucks's illegal agreement to restrain unlicensed competition.*** Similarly, Keurig maintains its request to seal evidence of its illegal agreement with Starbucks to restrain competition from unlicensed brands. Specifically, the Keurig 2014 contract with Starbucks ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* ECF 1773-3, at 67; ECF 1773-4 ¶ 1392; ECF 1781-35 (KGM Ex. S017, Part 28) & ECF 1781-36 (KGM Ex. S017, Part 29), at KGM03139753 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Apart from the fact that this 2014 provision is stale,[6] it is clear from the record that this is not even the operative agreement between Keurig and Starbucks, as there is a 2016 agreement (also over which Keurig maintains its request to seal) in the record.[7] *See* ECF 1781-19 (KGM Ex. S017, Part 12), at 46 through ECF 1781-21 (KGM Ex. S017, Part 14), at 34. Moreover, the agreement is direct evidence of an illegal horizontal agreement among admitted competitors to thwart unlicensed competitive entry in violation of Section 1 of the Sherman Act.

- ***Keurig admitted to restricting variety and output to maintain its monopoly power.*** Keurig maintains its request to seal an entire document that exposes Keurig's maintenance of its monopoly power by controlling its competitors' product offerings (SKUs), reducing output, and using the 2.0 Brewer's ironically named Consumer Benefit Technology ("CBT") to do so. Specifically, Brian Kelley, Keurig's CEO, admitted (in a document dated August 25, 2015) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* ECF No. 1794-39 (KGM Ex. S066), at KGM03549907. There is no competitively sensitive information in this eight-year-old document about a brewer that Keurig has not sold for at least five years. Keurig similarly

---

[6] Keurig improperly maintains its requests to seal in their entirety additional agreements with Starbucks that include similar anticompetitive provisions and are even older. *See, e.g.*, ECF 1781-52 (KGM Ex. S017, Part 45), at 41; 1781-53 (KGM Ex. S017, Part 46), at 17-18 (Keurig-Starbucks agreement dated March 9, 2011 that provides ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

[7] Keurig nowhere avers that the 2014 agreement with Starbucks is the latest and current agreement. Nor could it, given the existence of the 2016 agreement and the fact that document discovery was cut off at the end of 2017, making Keurig's silence as to its later Starbucks agreements all the more telling. The staleness of all of these agreements and the conspicuous lack of any representation by Keurig that this term appears in the current agreement are additional reasons why Keurig's sealing request is baseless.

seeks to seal its admissions that it ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* ECF No. 1773-3 (KGM Ex. R003), at 3. This information is central to the adjudication of Plaintiffs' claims as to Keurig's monopoly power, reduction of output, and harm to competition and consumers. *See* Sealing Order at 16.

- ***Keurig admits to barriers to entry.*** Keurig maintains its request to seal a sentence from an expert report submitted by the Honorable James Ware (Ret.), quoting a document from a former Keurig consultant, Sagentia, recounting a Keurig admission that the markets at issue had significant barriers to entry. Specifically, the document notes that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* ECF No. 1775-45; ECF No. 1769 Attach. 1, at 16. There is no legitimate basis in law or fact for sealing this party admission, which directly contradicts a central argument made by Keurig in its summary-judgment papers, where it brazenly takes the position that no barriers to entry exist. *See, e.g.*, ECF No. 1494, at 4, 23–29, 32–36. Again, this reflects evidence that is too relevant to this case to permit sealing, even if it were confidential, which it is not. *See* Sealing Order at 16.

- ***Keurig's exclusivity, non-compete, and additional anticompetitive provisions in stale contracts.*** Keurig maintains its request to seal entire contracts containing highly relevant provisions, regardless of the date of those contracts and the importance of the provisions to Plaintiffs' Section 1 claims. For example, Keurig seeks wholesale sealing of compilations of KAD and KARD agreements and agreements with brands, suppliers, and retailers containing agreements dating back as far as ***2006***. *See* ECF 1775-51 through 1775-52 (KGM Ex. S004); ECF 1781-8 through 1781-59 & ECF 1782-47 through 1782-48 (KGM Ex. S017). These agreements contain: the Loyalty Clause in KAD and KARD agreements, which form the basis of Plaintiffs' tying claims, *see* ECF No. 1495, at 42–51; the Boycott, Variety Restriction, Market Allocation, and Brand Non-Competition Clauses in Brand Competitor Agreements, which are the bases for several of Plaintiffs' Section 1 claims, *see id.* at 5–21; and the Supplier Non-Competition Clauses, which are central to Plaintiffs' exclusive-dealing claims, *see id.* at 23–35. *See also, e.g.*, ECF 1775-48 (KGM Ex. R102) (seeking redaction of above-described provisions from manufacturing and KAD agreements stretching back to 2006). The anticompetitive provisions in Keurig's contracts undergird significant portions of the claims in this case. Even if they were confidential— which they are not, as explained in Plaintiffs' opposition to Keurig's motion to seal, ECF 1811—and even if they did not date back some ***sixteen years***, the details of Keurig's provisions "are an inextricable part of this case," and Keurig should not be permitted to ignore the Court's order to reconsider sealing this information (let alone attempt to shield "almost all of the salient details . . . from the public," *see* Sealing Order at 16-17). Furthermore, several of these provisions are publicly available, including those contained in the Caribou Coffee agreement that was publicly filed over eight years ago as an attachment to TreeHouse's Amended and Supplemental Complaint in this case. *Compare* Ex. 3 to THS Am. Compl., ECF No. 86-3, *with* ECF No. 1775-48 (KGM Ex. R102), at 3; *see also* ECF 1811; 1811-4 (comparing examples of Loyalty Clause language left unsealed



with identical Loyalty Clause language requested to be sealed); 1811-5 (comparing anticompetitive provisions in public Caribou Coffee agreement with nearly identical provisions requested to be sealed); 1811-6 (comparing language of unsealed supplier non-compete clause with nearly identical language of non-compete clause requested to be sealed).

The examples provided above reflect only a small portion of the inappropriate sealing requests that have been made by Keurig in an attempt to keep its anticompetitive conduct out of the public eye. A more comprehensive list of Keurig's overbroad and frivolous sealing requests can be found attached to Exhibit JL-22. *See* Ex. JL-22 to Miller Decl.

Rather than doing the work the Court Ordered it to do and reconsider its sealing requests in light of the Sealing Order, Keurig proposed on February 7 that the Parties should submit all pending requests to seal to a Special Master for decision.[8] Ex. JL-23 to Miller Decl. Keurig's proposal was conditioned on a number of unacceptable terms, including a prohibition on Plaintiffs opposing Keurig's pending motion for partial reconsideration; a fifty-fifty split of fees for the Special Master's work; and issuance of a "tentative ruling" on which Parties and Third Parties would have the opportunity to comment before submission of a Special Master report and recommendation to the Court. *Id.* at 2. Moreover, Keurig expressly stated that the Special Master report and recommendation would be "consistent with Fed. R. Civ. P. 53." *Id.* As a practical matter, given Keurig's history of dilatory conduct, this virtually ensures that these same issues will ultimately end up in the Court's lap in the guise of Rule 53(f) Objections, albeit with another long period of delay caused by Keurig's foot dragging.

**<u>Keurig's Position:</u>** Keurig expended extraordinary effort tailoring and supporting its sealing requests. As the Defendant, it has produced more documents in this litigation than any other party. Keurig spent hundreds of hours reviewing more than 4,000 separate documents for confidential information. Ultimately, Keurig limited its confidentiality claims to a small portion of the material in the record.[9] Keurig's sealing requests in the summary judgment and Daubert records are limited to appropriate material and carefully supported with detailed substantiation, including eight Declarations from senior Keurig executives and employees.[10] *See* ECF No. 1769.

---

[8] Keurig has accused Plaintiffs of refusing to reconsider their objections to Keurig's unsupportable requests to seal as part of the process set forth in the Sealing Order. Not only is this an attempt to improperly flip the burden under the law for sealing requests, but as Plaintiffs stated on several meet and confers attended by Keurig, Plaintiffs have reconsidered their objections to sealing requests set forth in their April 2022 opposition briefing (*see* ECF 1811), and Plaintiffs believe they are sound in light of the Sealing Order. Furthermore, as described below (*see infra* at p. 12), and as a result of Essendant and Staples's efforts to narrow their requests to seal as part of this process, Plaintiffs are not objecting to Essendant and Staples's new, narrowed requests. Plaintiffs have complied with the Sealing Order.

[9] The exact numbers are made difficult to quantify in light of Plaintiffs' practice of including multiple documents in "compilation exhibits," for example, 1,600 KAD agreements in a single compilation exhibit, ECF 1497, Ex. 207, as well as duplicate documents as exhibits throughout the record, including within the same compilation, *see id.*, or the same filing, ECF.1497, Exs. 28 & 37.

[10] The Declarations were from Ben Yoder, Keurig's Vice President of Coffee Partners & Private Label (ECF 1769-1); Phillip Drapeau, Keurig's Senior Vice President and General Manager of Away-from-Home Coffee Systems (ECF 1769-2); Peder Nilsson, Keurig's Vice President, Packaging Procurement (ECF 1769-3); Annie Oh, Keurig's Vice President of Keurig Experiences (ECF 1769-4); Guillaume Gratton, Keurig's Vice President of Finance, Coffee

In contrast, Competitor Plaintiffs made no such detailed showing nor did they submit any declarations in support of their confidentiality designations, almost all of which have now been resolved by the Court.

The Court's January 17 Order is asymmetric in this respect: While it resolved nearly all of Plaintiffs' confidentiality submissions taking into account whatever Plaintiffs submitted in support thereof, the Order did not resolve all pending confidentiality requests from Keurig and only touched on the requests from a few Third Parties. The Order also does not address Keurig's substantiation or declarations or reach any holding that these materials are insufficient to support Keurig's tailored sealing requests.

Competitor Plaintiffs have nonetheless demanded that Keurig withdraw all of its sealing requests covering (1) "pre-2016 documents and/or information," (2) exhibits containing "language/terms/descriptions of contracts," and (3) documents "listing Keurig's market share, growth rates, and price per cup." Ex. JL-22, Moore Jan. 30 Ltr. at 1-2. These demands are untethered from the law, including the Court's January 17 Order, and ignore the substantiation Keurig provided, including as to the pre-2016 material.[11]

The Court's Sealing Order takes an individualized approach to sealing requests, without drawing the bright lines Plaintiffs now insist on. It does not issue any rule that pre-2016 information is *per se* "stale and fundamentally inappropriate to seal," as Competitor Plaintiffs claim. Ex. JL-22, Moore Jan. 30 Ltr. at 1; Ex. JL-21, Malm Feb. 2 Ltr. at 2. *Compare* ECF 1978 at 20 (granting McLane's request to seal information from 2012 because McLane "specifically indicated that it will be harmed if these contract provisions are disclosed because competitors will be able to leverage these disclosures") *with* ECF 1978 at 32 (denying JBR's request to seal information from 2011 to 2019 because JBR "does not explain why some of this information that is more than a decade old is not stale"). Rather, it holds, consistent with established law, that requests to seal older information must be supported with more specificity. ECF No. 1978 at 7-8.

The Sealing Order also does not proscribe requests to seal portions of contracts: Instead, it cites *Encyclopedia Brown v. Home Box Off.*, 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998), to explain that requests to seal older agreements may be granted when those agreements are still commercially sensitive. ECF No. 1978 at 8. As this Court has noted, "[t]he need to protect sensitive commercial information from disclosure to competitors seeking an advantage" is an important interest meriting sealing. ECF 1978 at 5; *see also Home Box Off.*, 26 F. Supp. 2d at 614 ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit.").

In light of Competitor Plaintiffs' attempts to manufacture unnecessary controversy over sealing issues and impose burden on Third Parties, Keurig suggested the joint retention of a Special Master, Ex. JL-23, Malm Feb. 7 Ltr. at 2-3, who, as the Court explained, could issue a report and recommendation on outstanding sealing issues. ECF No. 1978 at 48.

---

Business Unit (ECF 1769-5); Jim Martin, Keurig's Quality Manager (ECF 1769-6); Jianming Huang, Keurig's Senior Director, Engineering (ECF 1769-7); and Switlana Wojcickyj, Keurig's Vice President of Products & Sustainable Solutions (ECF 1769-8).

[11] *See, e.g.*, Gratton Decl., ¶¶ 7-10.

Hon. Vernon S. Broderick, U.S.D.J.
February 16, 2023
Page **8** of **15**

Competitor Plaintiffs swiftly and loudly rejected any use of a Special Master.  *See* Ex. JL-26, Moore Feb. 8 Ltr. at 1-2.

### ii. Third parties

The following third parties have indicated to Plaintiffs that they continue to maintain all of their sealing requests in full.  We list the docket numbers for each third party's filing(s).

- **Grupo Phoenix Corporate Services, LLC ("Grupo Phoenix")** (ECF 1798, 1798-1);
    - Grupo Phoenix asked that the following be included in this letter:

        Grupo Phoenix Corporate Services, LLC ("Grupo Phoenix") continues to request sealing of its confidential and sensitive commercial information as set forth in its prior submission (Dkts. 1798 and 1798-1).  As the Court recognized in its Order & Opinion dated January 17, 2023, greater protection should be given to sensitive information of third parties such as Grupo Phoenix.

- **Flint Group, Inc.** (ECF 1731);
    - Flint Group asked that the following be included in this letter:

        Flint Group continues to request the sealing as set forth in its prior letter motion.

- **Dunkin' Brands, Inc. ("Dunkin'")** (ECF 1757, 1760, 1804, 1804-1);
    - Dunkin' asked that the following be included in this letter:

        Dunkin' intends to rely on its prior submissions to the Court (Docs. 1756, 1760, 1804, 1804-1) to support its requests to maintain its confidential and proprietary information under seal.  We note that the judge's January 17 Opinion and Order highlights the need to afford greater protection of such information to third parties such as Dunkin'.

- **JAB Holding Company, LLC and JAB Holding Company S.à.r.l. (collectively, "JAB")** (ECF 1766, 1783, 1783-1);
    - JAB asked that following be included in this letter:

        Non-party JAB Holding Company, LLC and Non-party JAB Holding Company S.à.r.l. (collectively, "Non-party JAB") respectfully submit that its motion to seal (ECF No. 1766) should be granted.  As detailed in that motion and accompanying Schedule A (ECF No. 1783), out of the nearly 100 instances in which Non-party JAB's confidential information was

implicated in the parties' summary judgment and *Daubert* filings, JAB only seeks to seal a small fraction of the most commercially sensitive materials. Non-party JAB's motion to seal includes a document-by-document analysis of those materials which it seeks to seal, and explains precisely how Non-party JAB will be harmed if the limited set of materials are publicly disclosed. Non-party JAB has satisfied its burden of demonstrating that the sealing of this narrow set of materials is "necessary to preserve higher values" and "narrowly tailored to achieve that aim," and thus overcomes both the common law and the First Amendment rights of access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006).

- **Peet's Coffee & Tea, Inc. ("Peet's")** (ECF 1786, 1791, 1791-1, 1791-2, 1791-3);
    - Peet's asked that the following be included in this letter:

    Non-party Peet's Coffee & Tea, Inc. ("Non-party Peet's") respectfully submits that its motion to seal (ECF No. 1786) should be granted. As detailed in that motion and accompanying Schedule A (ECF No. 1791), out of the nearly 300 instances in which Non-party Peet's confidential information was implicated in the parties' summary judgment and *Daubert* filings, Peet's only seeks to seal a small fraction of the most commercially sensitive materials. Non-party Peet's motion to seal includes a document-by-document analysis of those materials which it seeks to seal, and explains precisely how Non-party Peet's will be harmed if the limited set of materials are publicly disclosed. Non-party Peet's has satisfied its burden of demonstrating that the sealing of this narrow set of materials is "necessary to preserve higher values" and "narrowly tailored to achieve that aim," and thus overcomes both the common law and the First Amendment rights of access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006).

- **Microtrace Corporation** (ECF 1802);
    - Microtrace asked that the following be included in this letter:

    Microtrace continues to request that its confidential information contained in any pleadings, submissions, and court papers remain sealed as originally requested by Microtrace.

- **Office Depot, LLC** (ECF 1779, 1780, 1805);
    - Office Depot asked that the following be included in this letter:

    Office Depot relies on its prior submissions to the Court (ECF 1779, 1780, 1805) to support its request to maintain its confidential and proprietary

business information under seal. Office Depot notes that the Court's January 17 Opinion and Order discusses the need to afford greater protection to the confidential information of third parties such as Office Depot. ECF 1978 at 6–7, 11.

- **Rychiger North America Inc. d/b/a Rychiger NA ("Rychiger")** (ECF 1749);
    - Rychiger asked that the following be included in this letter:

    Rychiger maintains its requests to seal as set forth in its letter motion at ECF 1749.

- **Starbucks Corporation** (ECF 1757, 1758);
    - Starbucks asked that the following be included in this letter:

    Starbucks took great care to narrowly tailor its request to protect only its sensitive and proprietary business information. Starbucks motion is supported by a detailed factual declaration. Therefore, consistent with the Court's order, Starbucks stands on its pending motion to seal.

- **Vistar** (ECF 1743, 1745, 1747);
    - Vistar asked that the following be included in this letter:

    Of the nearly 800 documents it produced, third party Vistar seeks sealing only of a single commercial agreement containing sensitive and proprietary business information and an express confidentiality provision. Vistar supported its motion to seal with a detailed factual declaration. Consistent with the Court's order, Vistar maintains its pending motion to seal.

- **Winpak Portion Packaging Inc. and Winpak Heat Seal Packaging, Inc./Winpak Heat Seal Corporation ("Winpak")** (ECF 1761, 1803);

- **R.C. Bigelow Inc. ("Bigelow")** (ECF 1730);
    - Bigelow asked that the following be included in this letter:

    Bigelow continues to request the sealing as set forth in the prior letter motion.

- **Sagentia Ltd.** (ECF 1750, 1752, 1752-1 to -15);
    - Sagentia asked that the following be included in this letter:

    As Magistrate Judge Cave acknowledged in consideration of one of Sagentia's prior requests to keep certain confidential information sealed, throughout the case Sagentia "has narrowly-tailed its confidentiality designations [and] has engaged in good faith efforts to meet and confer with Plaintiffs regarding such designations." *See* ECF No. 855. Most recently, in

connection with Sagentia's letter motion to maintain the sealing of certain confidential material referenced by the parties in connection with the summary judgment and *Daubert* filings in this mater (ECF No. 1750), Sagentia further narrowed its designations and consented to the public filing of additional confidential material in view of the applicable legal standard. *See* ECF No. 1750, n. 1. Sagentia otherwise maintains its sealing requests set forth in its previous letter motion (ECF No. 1750).

- **The J.M. Smucker Co. ("Smucker")** (ECF 1768, 1768-1, 1768-2);
  - Smucker asked that the following be included in this letter:

  Non-Party The J.M. Smucker Co. ("Smucker") intends to rely on its prior submissions to the Court, including its detailed factual declaration (ECF 1768, 1768-1, and 1768-2), to support all of its requests to maintain its confidential and proprietary information under seal. Smucker notes that it asked the Court in its submissions to maintain under seal an excerpt from the expert report of Kevin Murphy. ECF 1768 at 4. Smucker understands that the Court denied Keurig's request to maintain that report under seal in its entirety. ECF 1978, at 14 (addressing ECF 1418-3). However, Smucker also understands that Keurig has asked the Court for partial reconsideration of that ruling. ECF 1990. Accordingly, if the Court decides to reconsider its ruling, at least as to the excerpt from the Murphy report subject to Smucker's request to seal, then Smucker will stand on its request to maintain that excerpt under seal. If the Court decides not to reconsider its ruling, then Smucker will withdraw that single request.

- **Walmart Inc./Sam's West, Inc.** (ECF 1772).
  - Walmart Inc. and Sam's West, Inc. (collectively, "Walmart") note that Walmart is aware that the Court denied Keurig's request to redact the documents filed at ECF 1410-17, 1410-18, and 1410-19, *see* ECF 1978, at 13-14, and that Keurig has asked the Court to reconsider its ruling as to those documents, *see* ECF 1990. Those documents were addressed in Walmart's request to seal, and in light of Keurig's motion for partial reconsideration and because the Court has not yet considered the justifications for sealing and/or redaction in Walmart's request to seal, Walmart intends to maintain its requests to seal and/or redact as to ECF 1410-17, 1410-18, and 1410-19.

With the exception of Winpak's requests to seal, which Plaintiffs did not oppose, *see* ECF 1811, at 3 n.6, Plaintiffs opposed the above requests to seal for the reasons set forth in their opposition papers filed April 8, 2022. *See generally* ECF 1811.

Hon. Vernon S. Broderick, U.S.D.J.
February 16, 2023
Page **12** of **15**

    b.    ***Third Parties That Are Maintaining Some Requests and Withdrawing Others***

- **Essendant Co. and Staples, Inc.**
  - Essendant Co. ("Essendant") and its affiliate Staples, Inc. ("Staples") previously filed requests to seal certain information included in the summary judgment and *Daubert* record. *See* ECF 1767, 1784, 1829, 1829-1. As part of the meet and confer process following the Court's Sealing Order, Essendant and Staples advised that they have reviewed their previous requests to seal and the Sealing Order and have narrowed their requests to seal as a result. Given the narrowed requests, certain outstanding requests at ECF 1767, 1784, 1829, and 1829-1 are moot. The updated, narrowed requests to seal, comprising only redactions (and no requests to seal entire documents) are described in the chart attached as Exhibit JL-1 to the Declaration of Evan C. Miller, Esq. Also attached as Exhibits JL-2 through JL-15 to the Declaration of Evan C. Miller, Esq. are the documents containing highlighting to demonstrate the particular information requested by Essendant and Staples to be sealed.[12] Plaintiffs reviewed Essendant and Staples' narrowed requests to seal and do not object.

    c.    ***Third Parties That Have Withdrawn Their Sealing Requests In Full***

The following Third Parties have indicated to Plaintiffs that they wish to withdraw their requests to seal in full: **Compass Group USA** (ECF 1733); **Community Coffee** (ECF 1759); and **Costco Wholesale Corporation** (ECF 1797). The Parties believe the Court has already addressed Community Coffee's requests to seal in the Sealing Order. *See* ECF 1978, at 47.

**(2)**     <u>**Parties' Positions on Proposed Plan for Reconciling and Implementing Redactions Ordered By the Court For Public Filing**</u>

The Parties could not agree on a proposed plan for reconciling and implementing redactions to be ultimately filed on the public docket. The Parties' separate proposals and positions thereon follow.

*<u>Plaintiffs' Position:</u>* Plaintiffs believe the Parties should have twenty-one (21) days following the Court's decision to apply redactions consistent with the Court's rulings. The party filing the particular document containing redactions would be responsible for applying redactions to that document and then filing a public version on the docket. So, for example, Plaintiffs would be responsible for applying redactions ordered by the Court to Plaintiffs' Rule 56.1 Statement in Support of Their Motion for Summary Judgment, and then filing the properly redacted document publicly.

---

[12] Essendant and Staples also submit the Declaration of Kevin Jones (attached to the Declaration of Evan C. Miller as Exhibit JL-16) and the Declaration of Marsha Rubin (attached to the Declaration of Evan C. Miller as Exhibit JL-17) in support of their narrowed requests to seal.

     Keurig's proposed process for reconciling redactions over the course of ***eight weeks*** is not only unnecessary, but will cause further delay in finally filing public materials. Moreover, the eight-week proposal is contrary to previous requests made to the Court regarding this process, in which the parties had requested three weeks to apply redactions and file redacted versions of summary judgment and *Daubert* materials. ECF No. 1715.

     ***Keurig's Position:*** Keurig proposes the following process for reconciling redactions post-decision:

- Three weeks after the Court's final ruling, the parties will exchange draft redactions with each other implementing the ruling. Each party shall be responsible for draft redactions in its own filings.

- These draft redactions will then be provided to third parties.

- During the two weeks after that, the parties and third parties will meet and confer to resolve any final issues.

- Filings will be made by the parties on a coordinated basis no later than eight weeks after the Court's final ruling.

     Keurig's proposal is reasonable: It will take time to conform redactions to the Court's order given the size of the record amassed over the course of this litigation and following many years of extended fact discovery. Allowing time to meet and confer and exchange draft redactions, including with Third Parties, is to everyone's advantage.

**(3)**     **Plaintiffs Believe Sanctions Are Appropriate For Keurig**

     ***Plaintiffs' Position:*** Keurig's refusal to comply with the Sealing Order constitutes sanctionable conduct, as does Keurig's repeated efforts to delay the resolution of this case, such as their proposal that Plaintiffs pay half the fees of a Special Master to do what Keurig was Ordered to do. *See S. New Eng. Tel. Co. v. Glob. NAPs Inc.,* 624 F.3d 123, 144-45 (2d Cir. 2010) (civil contempt sanctions appropriate for violation of court orders); *N.Y. State NOW v. Terry*, 732 F. Supp. 388, 398 (S.D.N.Y. 1990) (sanctions appropriate where "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply."); *see generally Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (court's inherent powers permit awarding costs and attorneys' fees against party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citation and internal quotation marks omitted).

     For Keurig, this conduct is nothing new. Indeed, Keurig has already been sanctioned in this case for failure to comply with the ESI (Electronically Stored Information) Order resulting in spoliation of significant evidence. *See* ECF 1806, at 33, 36, 42, 85-91. Plaintiffs warned of Keurig's abuse of the confidentiality designation process eighteen months ago, noting that "Plaintiffs vigorously object to the massive, inappropriate and abusive confidentiality designations

Hon. Vernon S. Broderick, U.S.D.J.
February 16, 2023
Page **14** of **15**

that have been made by Keurig for the duration of this litigation." ECF No. 1436, at 2-3. This process reveals that Keurig has maintained its course, despite warnings, refusing to comply with the Sealing Order and standing on requests to seal that the Sealing Order makes clear are unsupportable. To be sure, aside from certain transactional data, even the most recent documents at issue are over five years old and therefore stale as document discovery ended December 31, 2017. Sanctions are appropriate in response to such a pattern of impermissible conduct. *See, e.g.*, Order at 1-2, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-02843-VC (N.D. Cal. Feb. 9, 2023), Dkt. 1104 (sanctioning client and "its high-powered law firm" under the Court's inherent powers for "using delay, misdirection, and frivolous arguments to make litigation unfairly difficult and expensive for their opponents," and reflecting "a sustained, concerted, bad-faith effort to throw obstacle after obstacle in front of the plaintiffs . . . .").

Plaintiffs suggest that an appropriate sanction for this conduct is to deny all of Keurig's pending requests to seal. In addition, Plaintiffs request that their fees and costs incurred in responding to these unsupportable requests should be awarded.

***Keurig's Position:*** Plaintiffs' latest demand for sanctions is part of a long pattern. Competitor Plaintiffs have a history of miring this litigation in unnecessary distractions while simultaneously complaining about the time the litigation has taken. Competitor Plaintiffs informed Keurig that they intend to seek sanctions under the Court's inherent authority because Keurig does not agree with their interpretation of the Court's January 17 Order. Plaintiffs have not suggested that Keurig has acted in bad faith in maintaining its requests to seal, nor could they. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (bad-faith conduct is a prerequisite to imposition of sanctions under a Court's inherent powers). Indeed, Plaintiffs themselves described Keurig's remaining sealing requests as narrow in their brief submitted two days ago, *see* ECF No. 2005 at 2, and Keurig's pending requests are substantiated with eight Declarations.

The Court's Sealing Order has three requirements, and Keurig has complied with each. *See* ECF 1978 at 48. *First*, Keurig has met and conferred orally and by letter exchange with Competitor Plaintiffs and Third Parties, and it now submits this joint letter. *Second*, Keurig has outlined its position, including in this Joint Letter, regarding how the sealing and reconciliation process could be completed and even offered to help expedite this process through a Special Master, which offer Plaintiffs rejected. *Third*, after carefully considering the guidance and determinations in the Court's Sealing Order, Keurig has stated in this Joint Letter that it does not believe a sealing request it has made is mooted or no longer merited. Plaintiffs' demand for sanctions is meritless.

For years now, Competitor Plaintiffs have made threats of sanctions with casual frequency. They have even threatened Keurig with sanctions for making motions that Keurig has proceeded to make and win. *See, e.g.*, ECF No. 860 at 2 n.3 (threats by TreeHouse to seek sanctions in response to Keurig's request to reduce non-party deposition hours); ECF No. 877 at 3 n.6 (claiming TreeHouse is entitled to costs for opposing motion to limit non-party deposition hours); ECF No. 888 (finding good cause to limit non-party deposition hours).

Hon. Vernon S. Broderick, U.S.D.J.
February 16, 2023
Page **15** of **15**

      Using threats of sanctions as a routine tactic to try to intimidate an adversary is not appropriate professional behavior.  Sanctions—and threats of sanctions—must be exercised with restraint and discretion.  *See Chambers*, 501 U.S. at 44; *Nakash v. U.S. Dept. of Justice*, 708 F. Supp. 1354, 1370 (S.D.N.Y. 1988) ("[R]equests for sanctions must be treated seriously and controlled appropriately.").  Competitor Plaintiffs have exhibited neither restraint nor discretion here.  Their routine threatening of sanctions if they do not get their way should not be condoned. *Cf. Nakash*, 708 F. Supp. at 1370 (Rule 11 sanctions are not tactical devices to be used for strategic reasons); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y 2008) (Rule 11 sanctions are only for extraordinary circumstances and as a very last resort).  Plaintiffs should be told that this bullying behavior must end.

Respectfully submitted,

*/s/ Daniel Johnson Jr.*
Daniel Johnson Jr.

DAN JOHNSON LAW GROUP, LLP
dan@danjohnsonlawgroup.com
1350 Old Bayshore Highway, Suite 520
Burlingame, CA 94010
(415) 604-4500
*Counsel for Plaintiff*
JBR, Inc. d/b/a Rogers Family Company

cc:    Counsel for All Parties (via ECF)