UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | CIVIL ACTION NO.: 14 MD 2542 (VSB) (SLC) |
| WINN-DIXIE STORES, INC., and BI-LO HOLDING, LLC, | |
| Plaintiffs, | CIVIL ACTION NO. 21 Civ. 7504 (VSB) |
| -v- | **OPINION & ORDER** |
| KEURIG GREEN MOUNTAIN, INC., GREEN MOUNTAIN COFFEE ROASTERS, INC., and KEURIG, INCORPORATED, | |
| Defendants. | |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is the letter-motion of Defendant Keurig[1] seeking dismissal of the "C&S portion" of the claims that Plaintiff Winn-Dixie[2] asserts in this action.  (MDL ECF No. 1930 (the "Motion")).[3]  Invoking Federal Rules of Civil Procedure 37(b) and 41(b), Keurig argues that Winn-Dixie "made a mockery of the discovery process," justifying dismissal.  (Id. at 1).  Winn-Dixie opposes the Motion, arguing that Keurig has neither been deprived of any discovery nor

---

[1] Keurig refers collectively to Defendants Keurig Green Mountain, Inc., Green Mountain Coffee Roasters, Inc., and Keurig Incorporated.

[2] Winn-Dixie refers collectively to Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holding, LLC.

[3] Citations to "MDL ECF No." refer to filings in No. 14 MD 2542, and citations to "ECF No." refer to filings in No. 21 Civ. 7504.

prejudiced, and that the extreme sanction of dismissal is not warranted.  (MDL ECF No. 1939 (the "Opposition")).  For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Factual Background

The Court presumes familiarity with the factual background of this MDL antitrust litigation, which has been set forth in numerous prior decisions of the Honorable Vernon S. Broderick and the undersigned.  See, e.g., In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., Nos. 14 MD 2542 & 21 Civ. 7504 (VSB) (SLC), 2023 WL 1879521, at *1 (S.D.N.Y. Feb. 10, 2023) (the "RFA Decision"); In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., 341 F.R.D. 474, 489 (S.D.N.Y. 2022) (the "Keurig Sanctions Decision"); In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., 383 F. Supp. 3d 187, 210–16 (S.D.N.Y. 2019).[4]

In this tag-along action, (see ECF No. 6), Winn-Dixie seeks damages and permanent injunctive relief against Keurig for "abus[ing] its monopoly power by . . . suppressing competition in the Single-Serve Brewer Market [] and the Compatible Cup Market [] in the United States[,]" in violation of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, and Sections 3, 4, and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 14, 15(a), and 26.  (ECF No. 1 ¶¶ 1–3).[5]  Winn-Dixie sues "on its own behalf and/or as the assignee of" C&S Wholesale Grocers, Inc. ("C&S"), which is "a grocery supply wholesaler that, during the relevant period, purchased Price-Fixed K-Cups directly from [Keurig] for resale to Winn-Dixie and has specifically and expressly assigned

---

[4] All internal quotation marks and citations are omitted from case citations unless otherwise noted.
[5] The Court employs the defined terms as used in Winn-Dixie's Complaint.  (ECF No. 1).

its antitrust claims arising out of those purchases to Winn-Dixie" (the "C&S Claims"). (ECF No. 1 ¶ 24; see id. ¶ 25).  In assigning the C&S Claims to Winn-Dixie, "C&S agree[d] that it will cooperate and coordinate with [Winn-Dixie] to the extent feasible in order to provide reasonably-available discovery, information, and witnesses under its control as needed or demanded in litigating and/or resolving any matter asserting or involving the claims[.]"  (MDL ECF No. 1875-1 at 8 (the "Assignment")).

### B. Procedural Background

#### 1. Winn-Dixie's Complaint

On August 6, 2021, Winn-Dixie filed its Complaint in the Eastern District of New York, and the action was subsequently transferred to this District as related to the MDL.  (ECF Nos. 1; 6; 7). For several months following the transfer, Winn-Dixie took no action to prosecute this action, prompting Judge Broderick on December 17, 2021 to order Winn-Dixie to show cause why the action should not be dismissed for failure to prosecute.  (ECF No. 13 (the "OTSC")).  Prompted by the OTSC, Winn-Dixie served the Complaint on Keurig several days later (ECF No. 15), and, thereafter, Judge Broderick entered a case management plan setting deadlines for, inter alia, the close of fact discovery as June 17, 2022.  (ECF No. 19 ¶ 9; MDL ECF No. 1714 ¶ 9).[6]  The fact discovery deadline was later extended to August 3, 2022, August 19, 2022, and then to September 16, 2022.  (ECF Nos. 22 ¶ 9; 34 ¶ 9; MDL ECF Nos. 1838 ¶ 9; 1855 ¶ 4; 1894 ¶ 9).

---

[6] Judge Broderick has coordinated the pretrial schedule in this action with the pretrial schedule in the related tag-along action, BJ's Wholesale Club, Inc. v. Keurig Green Mountain Inc., No. 21 Civ. 7493 (VSB) (S.D.N.Y.).  (ECF Nos. 18; 19; 22; 34; 46; 49).

### 2. **Discovery Concerning the C&S Claims**[7]

On January 11, 2022, Keurig served document requests on Winn-Dixie seeking discovery concerning, <u>inter alia</u>, the C&S Claims (the "C&S Requests"), and Winn-Dixie agreed to confer with C&S and conduct a reasonable search for and produce documents responsive to the C&S Requests.  (MDL ECF Nos. 1848-3 at 2–3; 1862-5 at 19–20; 1930 at 1).  Over the course of March, April, May, and into June 2022, Keurig followed up with Winn-Dixie numerous times regarding the status of discovery concerning the C&S Claims.  (MDL ECF Nos. 1848-1 at 15–16, 22; 1848-4 at 2–3; 1848-5 at 3; 1862-1 at 5).  In early June, however, despite having had the C&S Requests for nearly five months, Winn-Dixie admitted that it had not yet discussed the C&S Requests with C&S, but "agreed to consult with C&S regarding [the C&S Requests] and to identify all sources maintained by C&S that are likely to possess unique, relevant information[,]" and to "produce all unique, relevant information from these sources."  (MDL ECF Nos. 1848 at 3; 1848-1 at 8).  On June 15, 2022, after Winn-Dixie admitted it had yet to speak with C&S about the C&S Requests, Keurig filed a motion to compel.  (MDL ECF Nos. 1848 (the "First MTC"); 1848-1 at 5).

On June 28, 2022, the Court held a conference, at the conclusion of which the Court ordered Winn-Dixie to discuss the C&S Requests with C&S and extended the fact discovery deadline to August 19, 2022.  (ECF Nos. 23; 25; MDL ECF No. 1855 (the "June 28 Order")).  Winn-Dixie represented to Keurig, and to the Court, on numerous occasions that it had access to C&S personnel, documents, and data.  (<u>See</u>, <u>e.g.</u>, MDL ECF Nos. 1848 at 3; 1848-1 at 8; 1895 at 5, 9, 14; 1930-8 at 4; ECF Nos. 25 at 21, 23, 24; 31 at 8–9, 31–32).

---

[7] Additional details regarding the Court's conferences and orders are set forth in the Discussion below. (<u>See</u> § III.B.2, <u>infra</u>).

Not until more than one week after the June 28, 2022 conference, however, did Winn-Dixie finally speak to C&S about the C&S Requests.  (MDL ECF No. 1863 at 1 (Winn-Dixie was "unable to get C&S to participate [in] a call on or by July 1")).  Winn-Dixie then changed tack and began to oppose producing any documents or information related to the C&S Claims, emphasizing that C&S had a "limited role" and "did not have any unique and relevant information relating to" Winn- Dixie's claims.  (MDL ECF No. 1863 at 1–2; see MDL ECF No. 1872 ¶ 2.a (requiring Winn-Dixie to "explain[] the basis for its assertion that Keurig is not entitled to discovery from C&S[.]")).  Keurig again moved to compel, leading to three conferences with the Court.  (MDL ECF Nos. 1862 (the "Second MTC"); 1873; 1891; 1895; ECF Nos. 31; 35).

During a conference on August 1, 2022, the Court, after reviewing the Assignment, found that "the anti-trust claims that [C&S] assigned to Winn-Dixie are limited to the products that [C&S] sold to Winn-Dixie[,]" and, therefore, the discovery Keurig could obtain would be limited to "unique" documents and information that C&S had concerning the products that C&S purchased on Winn-Dixie's behalf.  (MDL ECF No. 1939-1 at 11).  Following that conference, the Court ordered Winn-Dixie, inter alia, to run search terms for certain C&S custodians Winn-Dixie had identified and produce a Fed. R. Civ. P. 30(b)(6) witness from C&S to testify regarding certain topics.  (MDL ECF No. 1891 ¶¶ 1–2 (the "Aug. 1 Order")).  The Court also extended the fact discovery deadline, for the third time, to September 16, 2022.  (MDL ECF No. 1894 ¶ 9).  Winn-Dixie continued to drag its feet, however, necessitating additional conferences and Court orders requiring Winn-Dixie to provide Keurig with an "update on the collection and production of emails, transactional data, and document retention policies from C&S" (MDL ECF Nos. 1897 (the "Aug. 12 Order"); 1898), to produce C&S transactional data, document retention policies from

C&S, and emails collected from C&S custodians, and to respond to Keurig's questions regarding the collection and search of the C&S custodians' emails.  (MDL ECF No. 1901 ¶¶ 1–2 (the "Aug. 26 Order")).

On September 12, 2022, Winn-Dixie having yet to produce <u>any</u> documents in response to the C&S Requests, Keurig moved to dismiss the C&S Claims, which the Court denied without prejudice to renewal following the close of fact discovery, several days of which remained. (MDL ECF Nos. 1894 ¶ 9; 1908; 1909).  Finally, on September 13, 2022, Winn-Dixie began to produce some C&S documents and transactional data, which Winn-Dixie admitted "may not be complete."  (<u>See</u> MDL ECF Nos. 1915-1 at 3; 1915-2 at 5–6).

After the September 16, 2022 fact discovery deadline (MDL ECF No. 1894 ¶ 9), Keurig renewed its motion to strike the C&S Claims, and Winn-Dixie asked the Court for another "short extension" of fact discovery to produce additional discovery from C&S.  (MDL ECF Nos. 1915; 1917).  On September 21, 2022, the Court denied Keurig's request to strike the C&S Claims, but extended to September 30, 2022 Winn-Dixie's deadline to "produce all outstanding document discovery from C&S[,]" directed the parties to agree on a date for the Rule 30(b)(6) deposition of a C&S witness, and permitted Keurig, if it believed Winn-Dixie's responses to the C&S Requests deficient, to refile a motion for sanctions.  (MDL ECF No. 1919).  This was the <u>fourth</u> extension of time to accommodate Winn-Dixie's production delays.  On September 30, 2022, Winn-Dixie produced C&S transactional data for one year.  (MDL ECF No. 1930-1 at 2).

### 3.  <u>Winn-Dixie's Post-Deadline Productions</u>

On October 21, 2022, Keurig took Rule 30(b)(6) depositions of two C&S representatives, Bryan Granger ("Granger") and Daniel Fudger ("Fudger"), although neither knew much about the

C&S Claims or C&S's efforts to search for documents responsive to the C&S Requests. (MDL ECF Nos. 1930-4 at 4–5, 7–8, 20; 1930-6).  On November 17, 2022, Winn-Dixie produced updated C&S transactional data.  (MDL ECF Nos. 1944; 1955).

On December 13, 2022, the Court held a final conference with the parties about discovery concerning the C&S Claims, following which the Court ordered Winn-Dixie to: (1) produce by December 16, 2022 C&S's draft contract with Boston's Best Coffee (the "Draft Contract"), the first amendment to the Assignment (the "Amendment"), and the "notes" that Fudger referenced in his deposition (the "Notes"); and (2) confer with C&S to answer several questions regarding the C&S transactional data, produce corrected data if necessary, and explain multi-year gaps in the production of C&S's emails.  (ECF No. 1957 (the "Dec. 14 Order")).  On December 19, 2022— three days after the deadline had passed—Winn-Dixie produced the Draft Contract and the Notes but not the Amendment (MDL ECF No. 1959-1), and disclosed to Keurig that "up to six more years of emails [were] available for two custodians, which Winn-Dixie missed because it did not search by the custodians 'maiden names."  (MDL ECF No. 1959 at 1; see MDL ECF No. 1959-2 at 5).  On December 21, 2022, Winn-Dixie produced what it described as "the complete" transactional data the Court ordered in the Dec. 14 Order.  (MDL ECF No. 1967 at 2).  On December 29, 2022, Winn-Dixie produced additional emails for the two custodians.  (Id. at 1).

### 4.  The Motion

On November 4, 2022, Keurig filed the Motion.  (MDL ECF No. 1930).  On November 14, 2022, Winn-Dixie filed its Opposition to the Motion, and, on November 21, 2022, Keurig filed a reply.  (MDL ECF Nos. 1939; 1947).  That was not the end of the parties' submissions on the Motion, however.  On December 12, 2022, Winn-Dixie filed a supplemental letter and declaration

from its counsel, to which Keurig then responded.  (MDL ECF Nos. 1955; 1956; 1959).  On December 29, 2022, Winn-Dixie filed yet another letter, noting that it had recently produced additional emails and supplemented the production of C&S transactional data.  (MDL ECF No. 1967).  Needing the last word, Keurig filed a response reiterating that Winn-Dixie had been untruthful about conferring with C&S regarding the C&S Requests, and that Winn-Dixie's late-December 2022 productions contained "irrelevant documents from off-point custodians whose roles it misrepresented" and "problematic data."  (MDL ECF No. 1972-1).

**5.  The RFA Dispute**

Separately, Winn-Dixie served amended responses and objections to Keurig's requests for admission ("RFAs"), several of which sought admissions that C&S took certain actions or knew certain information (the "C&S RFAs").  (MDL ECF No. 1985-1 (the "Responses"); <u>see</u> MDL ECF No. 1985).  In the Responses, Winn-Dixie lodged several general objections and then added that Winn-Dixie "object[s] to this Request as seeking information outside of their possession or control because Keurig has obtained deposition testimony from C&S, a third party, over which [Winn-Dixie] has no control, and C&S documents."  (<u>See</u>, <u>e.g.</u>, MDL ECF No. 1985-1 at 11).  Keurig moved to compel Winn-Dixie to respond to the C&S RFAs (MDL ECF No. 1985).  On February 10, 2023, the Court granted that motion and ordered Winn-Dixie to "conduct the 'reasonable inquiry 'required by [Federal Rule of Civil Procedure] 36(a)(4) and provide revised responses to the C&S RFAs."  <u>RFA Decision</u>, 2023 WL 1879521, at *5.  Winn-Dixie's objections to the <u>RFA Decision</u>—and Keurig's response thereto—are pending before Judge Broderick.  (MDL ECF Nos. 2015; 2016; 2020).

8

### III. DISCUSSION

**A. Legal Standard**

    **1. The Court's Authority**

This action has been referred to me for general pretrial management pursuant to 28 U.S.C § 636(b) and Fed. R. Civ. P. 72(a).  (MDL ECF No. 419; MDL ECF min. entry Oct. 14, 2019). Accordingly, I have broad authority to impose discovery sanctions.  See Doubleline Cap. LP v. Odebrecht Fin., Ltd., No. 17 Civ. 4576 (GHW) (BCM), 2021 WL 1191527, at *4 (S.D.N.Y. Mar. 30, 2021); Man Zhang v. City of New York, No. 17 Civ. 5415 (JFK) (OTW), 2019 WL 3936767, at *4 (S.D.N.Y. Aug. 20, 2019).  Orders imposing discovery sanctions "are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), 'unless the sanction employed disposes of a claim.'"  Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2017 WL 3671036, at *16 (S.D.N.Y. July 18, 2017) (quoting Seena Int'l v. One Step Up, Ltd., No. 15 Civ. 1095 (PKC) (BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016)), adopted by, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).  "A magistrate judge's authority to order (rather than recommend) a discovery sanction does not depend on the relief requested, but rather depends on the 'sanction the magistrate judge actually imposes.'"  Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., 337 F.R.D. 47, 59 (S.D.N.Y. 2020) (quoting Joint Stock Co., 2017 WL 3671036, at *16).

Here, although Keurig seeks claim-dispositive sanctions—dismissal of the C&S Claims—the sanctions the Court determines are appropriate do not fully dispose of a claim or defense." Seena Int'l, 2016 WL 2865350, at *11.  Accordingly, under the referral for general pretrial supervision, it is appropriate for me to resolve the Motion "in the first instance[]" in this Opinion

and Order.  Lokai Holdings LLC v. Twin Tiger USA LLC, No. 15 Civ. 9363 (ALC) (DF), 2018 WL 1512055, at *7 (S.D.N.Y. Mar. 12, 2018).  If objections are filed, Judge Broderick would then review my ruling on a "clearly erroneous" or "contrary to law" standard.  Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A).

### 2.  Federal Rule of Civil Procedure 37(b)

"The discovery provisions of the Federal Rules of Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy."  Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991).  "It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention."  Id.  "When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate."  Id.; see Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (discussing availability of severe sanctions to penalize recalcitrant parties and deter others from similar conduct); Update Art, Inc. v. Modiin Publ., Ltd., 843 F.2d 67, 73 (2d Cir. 1988) (explaining that compliance with discovery orders is "necessary to the integrity of our judicial process").

When a party fails to comply with its court-ordered discovery obligations, the court supervising discovery is permitted to "issue further just orders," including, as relevant here, an order: "dismissing the action or proceeding in whole or in part . . . ."  Fed. R. Civ. P. 37(b)(2)(A)(v); see Karsch v. Blink Health Ltd., No. 17 Civ. 3880 (VM) (BCM), 2019 WL 2708125, at *14 (S.D.N.Y. June 20, 2019) (explaining that Rule 37(b) sanctions are appropriately imposed for non-compliance with court orders directing compliance with discovery requests).  An "evasive or

incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Likewise, "a false or misleading response to a court order requesting specified information must be treated as a violation of that order." Karsch, 2019 WL 2708125, at *14.

In addition to the sanctions authorized in Rule 37(b)(2)(A), pursuant to Rule 37(b)(2)(C), a court "must" award monetary sanctions "[i]nstead of or in addition to" an order of dismissal, Yang v. Greyhound Lines, Inc., No. 07 Civ. 6499 (CM), 2008 WL 3126188, at *2 (S.D.N.Y. July 14, 2008), unless the "failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); see Karsch, 2019 WL 2708125, at *26. As the Second Circuit has explained, "a party that disregards its [discovery] obligations may create a reasonable suspicion that further investigation is warranted, and thereby imposes costs on its adversary that would never been incurred had the party complied with its obligations in the first instance[,]" and an award of monetary sanctions compensates the adversary "for costs it should not have had to bear." Klipsch Grp., Inc. v. ePro E-Com. Ltd., 880 F.3d 620, 634 (2d Cir. 2018). An award of fees and costs must be limited to "reasonable" expenses "caused by" the malfeasant party. Fed. R. Civ. P. 37(b)(2)(C).

The purpose of these discovery sanctions is threefold: "(1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general." Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, 319 F.R.D. 122, 126 (S.D.N.Y. 2016). "Consistent with these purposes, any sanction imposed under Rule 37(b) must be 'just,' and its severity 'must be commensurate with the non-compliance.'" Karsch, 2019 WL 2708125, at *12 (quoting Joint Stock

_Co._, 2017 WL 3671036, at *21).  "A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2)[.]"  Daval Steel Prods., 951 F.2d at 1365 (collecting cases).  The Second Circuit has listed four factors for district courts to consider in exercising discretion under Rule 37(b)(2)(A): "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  S.N.E. Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010); accord Agiwal v. Mid Is. Mortgage Corp., 555 F.3d 298, 302 (2d Cir. 2009).  "[T]hese factors are not exclusive and they need not each be resolved against the sanctioned party."  Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., 328 F.R.D. 100, 120 (S.D.N.Y. 2018).  The Court may consider "the full record in the case in order to select the appropriate sanction."  S.N.E. Tel. Co., 624 F.3d at 144.

When determining the appropriate remedy for a violation of Rule 37(b), a court "should impose the least harsh sanction" that will "serve as an adequate remedy; the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal."  Slovin v. Target Corp., No. 12 Civ. 863 (HB), 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013); see Grammar v. Sharinn & Lipshie, P.C., No. 14 Civ. 6774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (explaining that courts "should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future").  Dismissal "is a 'drastic remedy 'generally to be used only when the district [court] has considered lesser alternatives."  S.N.E. Tel. Co., 624 F.3d at 144 (quoting John B. Hull., Inc. v. Waterbury Petro. Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)).

Despite the harshness of a dismissal sanction, the Second Circuit has emphasized that "discovery orders are meant to be followed," and that dismissal is justified on a finding "that the failure to comply with discovery orders was due to 'willfulness, bad faith, or any fault 'of the party sanctioned[.]" Id. (quoting Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986)). "Ultimately, 'it is always preferable for issues to be adjudicated on the merits, rather than pursuant to discovery sanctions.'" Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd., 330 F.R.D. 134, 139 (S.D.N.Y. 2019) (quoting Black v. Bowes, No. 05 Civ. 108 (GEL), 2006 WL 3771097, at *7 (S.D.N.Y. Dec. 21, 2006)).

### 3.   **Federal Rule of Civil Procedure 41(b)**

Rule 41(b) provides that, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  In evaluating a motion for dismissal under Rule 41(b), a court must consider five factors: (1) "the duration of the plaintiff's failure to comply with court orders," (2) "whether [it] received notice that further delay would result in dismissal," (3) "defendants 'prejudice from further delay," (4) "the efficacy of lesser sanctions," and (5) "the balance between 'alleviat[ing] court calendar congestion 'and protecting the plaintiff's right to due process."  Petties v. Smalls, No. 20 Civ. 4350 (ALC) (SLC), 2022 WL 18717422, at *2 (S.D.N.Y. Nov. 22, 2022) (quoting Caussade v. U.S., 293 F.R.D. 625, 629 (S.D.N.Y. 2013)), adopted by, 2023 WL 2024899 (S.D.N.Y. Feb. 15, 2023); accord Komatsu v. City of New York, No. 18 Civ. 3698 (LGS), 2021 WL 4427015, at *4 (S.D.N.Y. Sept. 27, 2021).  These factors parallel the Rule 37(b) factors and are appropriately considered together.  See Houghtaling v. Eaton, No. 22-638, 2023 WL 113840, at *1–2 (2d Cir. Jan. 5, 2023) (summary order) (analyzing "relevant factors" under Rule 37(b) and Rule 41(b) together); see also

Farmer v. Hyde Your Eyes Optical, Inc., No. 13 Civ. 6653 (GBD) (JLC), 2015 WL 2250592, at *13 ("There is substantial overlap between the factors commonly considered in deciding whether to dismiss an action under Rule 41(b) and to impose a sanction under Rule 37(b)(2)(A)."). "No single factor is generally dispositive." Baptiste v. Sommers, 768 F.3d 212, 216 (2d Cir. 2014).

### 4.   Discovery Relating to Assigned Claims[8]

In J.P. Morgan Chase Bank v. Winnick, 228 F.R.D. 505 (S.D.N.Y. 2005), then-District Judge Gerard E. Lynch "held that the assignee of a claim in litigation has a duty to obtain and produce the same documents and information to which the opposing parties would have been entitled had the assignors brought the claim themselves." Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co., 314 F.R.D. 341, 344 (S.D.N.Y. 2016).  As Judge Lynch explained, "[i]t is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees [] free of the obligations that go with litigating a claim[,]" and "[i]t would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants." Winnick, 228 F.R.D. at 506–07. "Numerous courts in this and other circuits have come to the same conclusion—both before and after Winnick." Deutsche Bank, 314 F.R.D. at 344 (collecting cases and requiring assignee to produce documents from assignor's files).

---

[8] See RFA Decision, 2023 WL 1879521, at *3.

B. __Application__

    1. __The Parties' Arguments__

        a. __Keurig's Arguments__

Keurig argues that Winn-Dixie failed to comply with its discovery obligations to produce information about the C&S Claims, noting that it was not until after two motions to compel and multiple conferences with and orders by the Court that Winn-Dixie "made its first, paltry production from C&S." (MDL ECF No. 1930 at 2; see MDL ECF Nos. 1855; 1862; 1879; 1891; 1901; 1930-2; 1930-3). Keurig asserts that, although the Court warned Winn-Dixie that it could be sanctioned if its productions regarding the C&S Claims remained deficient (see MDL ECF No. 1919), Winn-Dixie nevertheless made inaccurate representations to the Court and failed to produce "substantial responsive material" that C&S possessed. (MDL ECF No. 1930 at 2). Keurig argues that dismissal of the C&S Claims is an appropriate remedy for these discovery failures because: (1) for over nine months, Winn-Dixie failed to comply with the Court's orders to discuss the C&S Requests with C&S, produce C&S documents and data, and answer questions about its search for documents; (2) Winn-Dixie's noncompliance was willful; (3) the Court's orders and instructions during multiple conferences put Winn-Dixie on notice of its obligations and the potential for dismissal if it failed to produce discovery concerning the C&S Claims; (4) Keurig was prejudiced by not having "any meaningful opportunity during fact discovery to evaluate" the appropriateness of the C&S custodians and obtain document discovery from C&S; and (5) lesser alternatives would not remedy the prejudice to Keurig. (Id. at 5–7). Ultimately, Keurig contends that, "[a]fter three motions to compel, six Court conferences, and four extensions of time," dismissal is the only remedy for Winn-Dixie's failures. (Id. at 7).

### b.  Winn-Dixie's Arguments

Winn-Dixie contends that the Aug. 1 Order limited its document production obligations to running the agreed search terms against the emails for the C&S custodians, whom Winn-Dixie identified based on its own documents indicating which C&S employees were most involved in "Winn-Dixie's K Cup purchases through C&S."  (MDL ECF No. 1939 at 1–2).[9]  Winn-Dixie notes that Keurig did not object to the C&S custodians, nor identify alternative C&S custodians.  (Id. at 2).  Winn-Dixie also contends that Keurig failed to identify any defects in the C&S transactional data, and that it had no obligation to prepare Granger to testify as a Rule 30(b)(6) witness concerning the C&S transactional data, because Keurig had deleted that topic from the Rule 30(b)(6) notice.  (Id. at 3–4).  Winn-Dixie maintains that no sanctions are warranted because: (1) it complied with the Court's orders by completing the search and production of the C&S custodians 'emails, producing the transactional data, and producing two Rule 30(b)(6) witnesses for C&S; (2) September 30, 2022, not January 11, 2022, is the relevant date for determining the duration of any non-compliance; (3) it did not act willfully because it relied on C&S to respond to Keurig's C&S Requests; (4) the Court did not give Winn-Dixie notice that the C&S Claims could be dismissed as a result of deficient productions; (5) Keurig failed to follow up on questions about Winn-Dixie's production of C&S documents and data; (6) Keurig was not deprived of C&S discovery relevant to its defenses because Keurig has other sources of information; (7) Keurig has not been prejudiced; (8) C&S's testimony or documents do not bind Winn-Dixie; (9) the identity of C&S's K-Cup suppliers is irrelevant because "C&S did not have a choice which K Cup suppliers

---

[9] The three C&S custodians were Chris Berry ("Berry"), a buyer, Deanna Luopa ("Luopa"), a procurement supervisor, and Gina Stinchcomb Fritz ("Fritz"), an account executive.  (MDL ECF No. 1939 at 2).

to purchase from for Winn-Dixie[;]" (10) Fudger sufficiently testified about the Keurig 2.0 brewer;[10] and (11) Keurig has not shown that the circumstances here are one of the "extreme situations" in which dismissal is warranted. (Id. at 4–7). Ultimately, Winn-Dixie asserts that "C&S discovery was a hotly contested issue," but it was "resolved by the compromise of running Keurig's search terms against emails of three C&S custodians chosen by Winn-Dixie," to which Keurig did not object, followed by Winn-Dixie's production of emails, C&S data, and C&S Rule 30(b)(6) witnesses. (Id. at 7).

### 2. Winn-Dixie's Non-Compliance with the Court's Orders Warrants Sanctions Under Rule 37(b).

The two predicates to the imposition of sanctions under Rule 37(b) are (1) a "court order directing compliance with discovery requests," and (2) "non-compliance with that order[.]" Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp., No. 15 Civ. 3533 (CM) (BCM), 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017). The Court evaluates Winn-Dixie's compliance with the orders relating to discovery concerning the C&S Claims.

### a. The June 28 Order

Following a conference with the parties, the June 28 Order required Winn-Dixie, as to the C&S Requests, to speak to C&S "regarding whether C&S possesses unique and relevant information or documents and provide Keurig with an update on those discussions[.]" (MDL ECF No. 1855 ¶ 1.c). Winn-Dixie did speak to C&S, although not until more than one week later. (MDL ECF No. 1863 at 1). Winn-Dixie has not provided any credible explanation why it took nearly six months—from January 2022, when Keurig served the C&S Requests, to the first week in July

---

[10] See ECF No. 1 ¶ 18 (discussing the "2.0 K-Cup Brewer").

2022—to confer with C&S about the C&S Requests.  (See ECF No. 1848-1 at 8 (Winn-Dixie confirming on June 8, 2022 its agreement "to consult with C&S regarding [the C&S Requests] and to identify all sources maintained by C&S that are likely to possess unique, relevant information" and to "produce all unique, relevant information from these sources")).

Winn-Dixie technically complied with the Court's directive in the June 28 Order, albeit after the Court-ordered deadline, by discussing the C&S Requests with C&S.  The reality is, however, that it should not have taken a Court order for Winn-Dixie to begin to investigate whether C&S, on behalf of which Winn-Dixie was asserting the C&S Claims, had relevant information.  See Keurig Sanctions Decision, 341 F.R.D. at 502 (noting that "the Federal Rules of Civil Procedure obligate counsel to monitor compliance [with litigation hold notices] so that all sources of discoverable information are identified and searched."); Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (discussing counsel's obligations to oversee retention, collection, and production of relevant documents).  Thus, while Winn-Dixie ultimately complied with the substance of the June 28 Order, its failure to take steps, much sooner than five months after receiving the C&S Requests, to investigate what unique documents and information C&S had, and collect, review, and produce relevant documents, unnecessarily delayed the progress of this action.  Cf. Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc., No. 18 Civ. 12255 (MKV) (KHP), 2020 WL 5743518, at *3–5 (S.D.N.Y. Sept. 25, 2020) (imposing monetary sanctions on parties that unjustifiably delayed responding to document requests).

### b.  The Aug. 1 Order

In the Aug. 1 Order, following a conference with the parties, the Court set a deadline of August 5, 2022 for Winn-Dixie to apply search terms to the C&S custodians, provide the names

of the custodians to Keurig, and produce a copy of the May 10, 2013 contract between Winn-Dixie and C&S and any amendments (the "2013 Contract").  (MDL ECF No. 1891 ¶ 1).  The Court also ordered Winn-Dixie to produce a Rule 30(b)(6) witness from C&S "to testify regarding the topics at ECF No. 1879-3[,]" including "C&S's reasoning for its decision to assign its claims to Winn-Dixie," although the Court did not set a separate deadline for that deposition.  (Id. ¶ 2).  On August 5, 2022, Winn-Dixie reported that C&S applied the search terms to emails for one of the custodians (Berry), but did not locate any emails for the other two custodians (Fritz and Luopa).  (MDL ECF No. 1895 at 5–6).  In addition, C&S produced the 2013 Contract, initially without the amendments, which followed in a later production.  (Id. at 11).  Winn-Dixie did not, however, produce a Rule 30(b)(6) witness before the fact discovery deadline of September 16, 2022, and, consequently, Granger and Fudger were not deposed until October 21, 2022.  (MDL ECF Nos. 1894 ¶ 9; 1915-2 at 2–3; 1930-4; 1930-6; see MDL ECF No. 1917 at 2 (Winn-Dixie, in its September 20, 2022 request for an extension of the lapsed September 16 fact discovery deadline, noting that "C&S ha[d] [] identified its Rule 30(b)(6) witness and provided a date for his deposition – October 7, 2022")).  Accordingly, Winn-Dixie failed to comply with the requirement in the Aug. 1 Order to produce the C&S Rule 30(b)(6) witness(es) before the fact discovery deadline.

### c.  The Aug. 12 Order

In the Aug. 12 Order, following a conference with the parties, the Court set a deadline of August 16, 2022 for Winn-Dixie to produce documents from "broken families" Keurig had identified and update Keurig on the collection and production of emails, transactional data, and document retention policies from C&S.  (MDL ECF No. 1897 ¶ 2).  By August 26, 2022, Winn-Dixie

had produced the "broken families" documents, but had yet to receive from C&S, and thus had not produced, transactional data or document retention policies.  (MDL ECF No. 1902 at 3, 5–6).  By this point in time, Winn-Dixie also reported that C&S had located approximately 2,500 emails for the two remaining C&S custodians (Fritz and Luopa), but had not yet completed its review and delivery to Winn-Dixie for production to Keurig.  (Id. at 4–5).  Thus, Winn-Dixie substantially complied with the Aug. 12 Order.

### d.  The Aug. 26 Order

In the Aug. 26 Order, following a conference with the parties, the Court set a deadline of August 30, 2022 for Winn-Dixie to produce C&S's transactional data and document retention policies, and September 2, 2022 for Winn-Dixie to produce the C&S custodians 'emails and respond to Keurig's questions about the email collection.  (MDL ECF No. 1901 ¶¶ 1–2).  Winn-Dixie did not meet either of these deadlines.  (MDL ECF Nos. 1915 at 1; 1917 at 1–3).  Not until September 13, 2022—after Keurig moved to compel—did Winn-Dixie make a partial production of C&S emails and C&S transactional data for one year that Winn-Dixie acknowledged "might not be complete."  (MDL ECF Nos. 1915-1 at 3 (Winn-Dixie's counsel sending production "in light of the motion [Keurig] filed last night[]"); 1917 at 2 n.3, 3 n.8).  In addition, Winn-Dixie's production of C&S emails covered only two years of the relevant nine-year period and included many "blank" pages.  (MDL ECF Nos. 1915 at 2; 1915-2 at 5).  Not until November 17, 2022 did Winn-Dixie "provide[] updated C&S purchase data" to Keurig.  (MDL ECF Nos. 1944; 1955).  Thus, Winn-Dixie failed to comply with the document production deadlines in the Aug. 26 Order.

### e.  The Dec. 14 Order

Following a discovery conference with the parties, in the Dec. 14 Order, the Court set a deadline of December 16, 2022 for Winn-Dixie to produce the Draft Contract, the Amendment, and the Notes, and a deadline of December 19, 2022 for Winn-Dixie to respond to Keurig's questions about the productions of C&S's transactional data and custodians 'emails.  (MDL ECF No. 1957 ¶¶ 1–2).  On December 19, 2022—three days after the Court's deadline—Winn-Dixie produced the Draft Contract and the Notes, but not the Amendment, and "revealed that up to six more years of emails [were] available for" Fritz and Luopa.  (MDL ECF Nos. 1959 at 1; 1959-1; 1959-2 at 5).  In addition, on December 21, 2022, Winn-Dixie produced another set of C&S transactional data, although there appeared to be discrepancies between this data and C&S transactional data Winn-Dixie had previously produced.  (MDL ECF Nos. 1959 at 2; 1959-2 at 2, 4–5).  Not until December 22, 2022 did Winn-Dixie produce the Amendment, and not until December 29, 2022 did Winn-Dixie produce six years of additional emails for the C&S custodians. (MDL ECF No. 1967 at 1).  Keurig claims that about half these emails, however, were blank and many were irrelevant, and notes that Winn-Dixie acknowledged that the three C&S custodians were not the "most relevant."  (MDL ECF No. 1972-1 at 1).  Keurig asserts that, instead, Winn-Dixie should have used Fudger and two other C&S employees as custodians, or, at a minimum, spoken to C&S about which employees were most likely to have relevant information regarding portion packs.  (Id. at 1–2).

The Court finds that Winn-Dixie did not timely comply with the deadlines in the Dec. 14 Order, and its belated, post-fact discovery productions have further highlighted the deficiencies in Winn-Dixie's efforts throughout the fact discovery period.  First, while Winn-Dixie represented

to the Court that it spoke to C&S in early July 2022 about the C&S Requests, the fact that the production of emails for the C&S Custodians contained blank and largely irrelevant documents from lesser-involved C&S employees indicates that Winn-Dixie's conversation was neither robust nor meaningfully targeted to locate the C&S custodians most relevant to K Cups, the C&S Claims, or Keurig's defenses.   Second, Winn-Dixie's piecemeal and problematic productions of C&S transactional data reflect virtually no upfront effort to undertake a careful and complete collection of information about C&S's purchases of K Cups on Winn-Dixie's behalf.   Third, Winn-Dixie's productions, for whatever they were worth, arrived only after <u>seven</u> conferences with the Court, <u>four</u> motions by Keurig, and <u>four</u> extensions of time.   Winn-Dixie should have complied with its obvious obligations under the Federal Rules of Civil Procedure and the Local Rules of this Court without the need for this level of judicial supervision.  <u>See</u> <u>Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.</u>, No. 11 Civ. 2574 (CM) (JCF), 2012 WL 1123736, at *9 (S.D.N.Y. Apr. 4, 2012) (noting that both sets of Rules "encourage cooperation among counsel to efficiently resolve discovery disputes without intervention from the court"); <u>see also</u> <u>In re Weatherford Int'l Secs. Litig.</u>, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 5870329, at *1 (S.D.N.Y. Oct. 22, 2013) (in case where "multitude of discovery motions" had been filed, admonishing that "[c]ounsel should know that this is an unsuitable manner in which to conduct litigation").

*      *      *

In sum, the Court finds that Winn-Dixie failed to comply with the Aug. 1, Aug. 26, and Dec. 14 Orders, such that sanctions are appropriate.  <u>See</u> <u>Anhui Konka</u>, 2020 WL 5743518, at *4–5 (finding that Rule 37(b)(2) sanctions were appropriate where defendants failed to comply with discovery orders, necessitating multiple motions to compel and a court conference);

Shanghai Weiyi Int'l Trade Co., 2017 WL 2840279, at *13–16 (finding that Rule 37(b)(2) sanctions were appropriate where plaintiff failed to comply with discovery orders).

### 3.   Monetary Sanctions Are Warranted, Not Dismissal.

As set forth above, in exercising its discretion to impose the appropriate sanction under Rule 37, the Court is "guided by the following factors: '(1) the willfulness of the non-compliant party or the reason for its noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" Loc. Union No. 40 Int'l Ass'n of Bridge v. Car-Wi Constr., 88 F. Supp. 3d 250, 262 (S.D.N.Y. 2015) (quoting World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012)).  In addition, prejudice to Keurig "may also be a significant consideration, although not an absolute prerequisite." Royal Park, 319 F.R.D. at 126; accord S.N.E. Tel. Co., 624 F.3d at 147; Grammar, 2016 WL 525478, at *3 (noting that prejudice to moving party is "relevant, although the Second Circuit has emphasized that the absence of prejudice should not be accorded significant weight").  "[T]hese factors are not exclusive, and they need not each be resolved against" the sanctioned party for sanctions to be appropriate. S.N.E. Tel. Co., 624 F.3d at 144.  The Court considers each factor below, in the order most pertinent to the Motion.

#### a.   Willfulness of Noncompliance

"Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." Thompson v. Jamaica Hosp. Med. Ctr., No. 13 Civ. 1896 (RWS), 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015); accord Shanghai Weiyi Int'l, 2017

WL 2840279, at *12; <u>Davis v. Artuz</u>, No. 96 Civ. 7699 (GBD), 2001 WL 50887, at *3 (S.D.N.Y. Jan. 19, 2001).  Courts routinely find willful noncompliance, for example, "where a party has repeatedly failed to . . . produce documents in violation of the district court's orders." <u>Farmer</u>, 2015 WL 2250592, at *7 (finding willfulness where plaintiff failed to comply with two court orders requiring production of documents, failed to appear for deposition, and failed to appear at court conference); <u>see</u> <u>Grammar</u>, 2016 WL 525478, at *3 (finding willfulness where defendant inexplicably failed to comply with two court orders, "[g]iven the clarity and simplicity of the Court's orders and the absence of any indication that [] or the defendant's noncompliance is the result of factors beyond its control").

The Court's orders have been simple and clear, and Winn-Dixie has acknowledged that it understood them.  (MDL ECF Nos. 1891; 1901; 1930-3 at 4 ("I understand Your Honor's ruling."); 1957).  Unlike some other cases in which courts have found willfulness, <u>see</u>, <u>e.g.</u>, <u>Farmer</u>, 2015 WL 2250592, at *8 (finding "no evidence to suggest that [plaintiff's] noncompliance was due to factors outside his control"), the Court acknowledges that responding to the C&S Requests required Winn-Dixie to confer with and collect documents and information from C&S, which was not consistently prompt and cooperative.  (<u>See</u>, <u>e.g.</u>, MDL ECF Nos. 1895 at 10, 14; 1898 at 3–4; 1939-1 at 9).  Pursuant to the Assignment, however, C&S was obligated to cooperate with discovery requests relating to the C&S Claims, and Winn-Dixie represented that it was "getting cooperation[]" from C&S.  (MDL ECF Nos. 1875-1 at 8; 1898 at 10).

In addition, Winn-Dixie chose to assert the C&S Claims, which carried with it the obligation to produce discovery, even if that required regularly contacting C&S to ensure compliance with the Court's orders.  <u>See</u> <u>RFA Decision</u>, 2023 WL 1879521, at *3 (describing discovery obligations

relating to assigned claims). Instead, Winn-Dixie continued to hold fast to the view that, as assignee of the C&S Claims, it should not have any obligation to produce any discovery from C&S, the assignor, and continued to maintain that position notwithstanding the Court's rulings to the contrary. (See, e.g., MDL ECF No. 1895 at 8–9 ("[W]e need to have a 30(b)(6) deposition [of C&S]. C&S assigned its claims to Winn-Dixie and so . . . I don't know why you keep bringing this up when the Court has ruled[.]")). Winn-Dixie did not appeal the Aug. 1, Aug. 26, or Dec. 14 Orders to Judge Broderick, and the RFA Decision stands unless and until Judge Broderick agrees with Winn-Dixie's objections. Accordingly, Winn-Dixie was obligated to comply with the Court's orders, not ignore them, and its conduct weighs in favor of a finding of willfulness. See Maness v. Myers, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that the order is incorrect[,] the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); Agiwal, 555 F.3d at 302 ("[A]ll litigants . . . have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice."); McDonald v. Head Crim. Ct. Sup. Officer, 850 F.2d 121, 124 (2d Cir. 1988) ("An order issued by a court must be obeyed, even if it is later shown to be erroneous."); Davidson v. Dean, 204 F.R.D. 251, 258 (S.D.N.Y. 2001) ("The law is clear in this Circuit that 'discovery orders are meant to be followed.'") (quoting Bambu Sales, Inc. v. Ozak Trading, Inc., 59 F.3d 849, 853 (2d Cir. 1995)).

Overall, while the Court finds that Winn-Dixie's compliance with the Aug. 1, Aug. 26, and Dec. 14 Orders has been both "tardy and insufficient," Winn-Dixie nevertheless "did make some effort to provide the required discovery[,]" attended each of the Court's conferences, and raised some non-frivolous arguments in its Opposition to the Motion. Shanghai Weiyi Int'l, 2017 WL 2840279, at *17. Accordingly, the Court declines to characterize Winn-Dixie's discovery lapses

as "sufficiently 'willful' to justify the ultimate penalty" of dismissal.  Id.; cf. MCI WorldCom Commc'ns, Inc. v. Gamma Commc'ns Grp., Inc., 204 F.R.D. 259, 262 (S.D.N.Y. 2001) (striking answer where defendant "failed to respond in any way to this court's orders or discovery requests").

b.  <strong>Duration of Noncompliance</strong>

Courts "have found noncompliance for a period of several months sufficient to warrant dismissal or default."  Urbont v. Sony Music Entm't, No. 11 Civ. 4516 (NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) (granting default sanctions where defendant failed to participate in discovery for over one year and had not contacted plaintiff's counsel or the court in over six months); Rodriguez v. Oak Rm., No. 12 Civ. 2921 (PKC), 2012 WL 5305551, at *3 (S.D.N.Y. Oct. 23, 2012) (granting dismissal sanction where plaintiff's "noncompliance has persisted for months" and "materially and substantially frustrated the progress of [the] case[]").  Where the period of noncompliance was "relatively short[,]" lesser sanctions are appropriate.  3801 Beach Channel, Inc. v. Shvartzman, No. 05 Civ. 207 (CBA) (JO), 2007 WL 879668, at *6 (E.D.N.Y. Mar. 21, 2007) (finding that less than three months was "not a particularly long period of non-compliance" but awarding monetary sanctions against defendants who failed to comply with court orders to produce discovery).

The Court disagrees with Keurig that the operative starting point for determining the duration of Winn-Dixie's noncompliance is January 2022, when Keurig served the C&S Requests. (MDL ECF No. 1930 at 5).  Although it is true that it should not have taken multiple motions and Court conferences for Winn-Dixie to comply with its discovery obligations (see § III.B.2.a, supra), following the first conference with the parties on June 28, 2022, the Court did extend the initial

fact discovery deadline to August 19, 2022 (MDL ECF No. 1855), which is the appropriate starting

point.  See 3801 Beach Channel, Inc., 2007 WL 879668, at *4 (calculating period of noncompliance

from date of court's first order directing defendants to produce outstanding discovery).  Winn-

Dixie did not begin to produce discovery in response to the C&S Requests until September 13,

2022, did not produce Granger and Fudger until October 21, 2022, and continued producing

documents and transactional data until December 29, 2022.  (MDL ECF Nos. 1915-1; 1915-2;

1930-4; 1930-6; 1944; 1955; 1959-1; 1959-2; 1967).  The Court set shorter, interim deadlines,

although Winn-Dixie did not meet those, either.  (See §§ II.B, III.B.2, supra).  Accordingly, the

Court deems Winn-Dixie's delays of approximately five months in curing the deficient

productions in response to the C&S Requests as "sufficiently long to justify sanctions."  Farmer,

2015 WL 2250592, at *9.  By comparison to other cases, however, the Court deems Winn-Dixie's

period of noncompliance as "not [] particularly long[,]" which therefore weighs against imposing

the most severe sanction of dismissal.  3801 Beach Channel, Inc., 2007 WL 879668, at *4 (nearly

three-month period of non-compliance); cf. Battiste-Downie v. Covenant House, 471 F. App'x 78,

79 (2d Cir. 2012) (affirming dismissal as sanction after one year of noncompliance); Urbont, 2014

WL 6433347, at *4 (granting default sanction against defendant who refused to attend

deposition, failed to comply with court orders for more than one year, and "made no contact

with counsel or the Court for over six months[]").

### c.  Notice

"Courts are generally hesitant to impose terminating sanctions before warning the

offending litigant."  Grammar, 2016 WL 525478, at *4.  "[S]evere sanctions like dismissal or

default should be imposed only if the party has been warned that such a sanction will follow from

continued non-compliance and has nevertheless refused to comply." <u>Urbont</u>, 2014 WL 6433347, at *3.   The Second Circuit has explained, however, that parties do not have an "absolute entitlement to be 'warned 'that they disobey court orders at their peril," <u>Daval Steel Prods.</u>, 951 F.2d at 1366, particularly where, as here, the non-compliant party is represented by counsel.  <u>See Davidson</u>, 204 F.R.D. at 257 (noting that warning is "particularly important" where non-compliant party is <u>pro se</u>).

Before filing the Motion, Keurig not once but twice asked the Court to dismiss or strike the C&S Claims due to Winn-Dixie's discovery failures.  (MDL ECF Nos. 1908; 1915).  The Court denied both motions without prejudice to renewal, thus putting Winn-Dixie on notice that if it persisted in failing to comply with the Court's orders, Keurig would again move for the sanction of dismissal.  (MDL ECF Nos. 1909; 1919).  Thus, even absent an express warning of the risk of dismissal in one of the Court's orders, Winn-Dixie had adequate notice that if it failed to comply with the Court's orders, the Court would entertain Keurig's request for dismissal sanctions.  <u>See 3801 Beach Channel, Inc.</u>, 2007 WL 879668, at *4 (finding that non-compliant party had adequate notice where it was twice warned that if it failed to comply with discovery order, the court "would consider an application for [] sanctions"); <u>Davidson</u>, 204 F.R.D. at 258 (finding that letter from defendant's counsel threatening dismissal sanctions under Rule 37(b)(2) was sufficient to put plaintiff, who was represented by counsel at the time, on notice of potential dismissal sanctions).

### d.  Prejudice to Keurig

Prejudice to Keurig is "not an absolute prerequisite" to imposing sanctions on Winn-Dixie for its failure to comply with the Court's orders.  <u>Royal Park</u>, 319 F.R.D. at 126.  The Second Circuit and the Supreme Court "have consistently rejected the 'no harm, no foul 'standard for evaluating

discovery sanctions[.]"  <u>S.N.E. Tel.</u>, 624 F.3d at 148; <u>see id.</u> at 149 (noting that "Rule 37 sanctions

serve other functions unrelated to the prejudice suffered by individual litigants").

Even if Winn-Dixie's representation that C&S had no "unique" discovery concerning the

K Cups that C&S ordered at Winn-Dixie's direction were true (MDL ECF No. 1863 at 1–2)—a

representation belied by the productions of documents from C&S—the record reflects that

Keurig had to resort to multiple motions and Court conferences to drag each C&S document out

of Winn-Dixie and obtain Rule 30(b)(6) depositions of C&S witnesses, which, even then, were not

particularly illuminating.  (<u>See</u> § II.B.3, <u>supra</u>).  This is not what the Federal Rules of Civil Procedure

expect of parties and their counsel.  As the Second Circuit explained:

> [I]f parties are allowed to flout their obligations, choosing to wait to make a
> response until a trial court has lost patience with them, the effect will be to
> embroil trial judges in day-to-day supervision of discovery, a result directly
> contrary to the overall scheme of the federal discovery rules.  Moreover, . . .
> compulsion of performance in the particular case at hand is not the sole function
> of Rule 37 sanctions.  Under the deterrence principle of [<u>Nat'l Hockey League v.
> Metro. Hockey Club, Inc.</u>, 427 U.S. 639 (1976)], [a party's] hopelessly belated
> compliance should not be accorded great weight.  Any other conclusion would
> encourage dilatory tactics, and compliance with discovery orders would only come
> when the backs of counsel and the litigants were against the wall.

<u>Cine Forty-Second St. Theatre v. Allied Artists</u>, 602 F.2d 1062, 1068 (2d Cir. 1979).

While dispositive motion practice will reveal the extent to which Winn-Dixie is able to

substantiate the C&S Claims based on the discovery it produced, at a minimum, discovery by

motion practice imposed undue delays and costs, and therefore prejudiced Keurig.  <u>See</u> <u>3801</u>

<u>Beach Channel, Inc.</u>, 2007 WL 879668, at *5 (finding sanctions warranted where "defendants'

repeated failures to comply with the discovery process and [the court's] orders [] resulted in

significant prejudice to the plaintiffs," whose "ability to prosecute [the] action [was] hampered

by the delays").

### e.  **Efficacy of Lesser Sanctions**

"[T]he severity of sanction must be commensurate with the non-compliance." Shcherbakovskiy v. Da Capo El Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).  Thus, "[a] court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future."  Grammar, 2016 WL 525478, at *3.  A court is not, however, "required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record."  Shcherbakovskiy v. Seitz, 450 F. App'x 87, 88 (2d Cir. 2011).

The Court finds that an award of attorneys 'fees against Winn-Dixie and in favor of Keurig is warranted.  Winn-Dixie repeatedly and consciously failed to comply with three Court orders, indicating that lesser sanctions will not be effective.  Although the duration of noncompliance was approximately five months, Winn-Dixie "significantly thwarted" the progress of resolving Winn-Dixie's claims—particularly the C&S Claims—and Keurig's defenses thereto.  3801 Beach Channel, Inc., 2007 WL 879668, at *5.  The Court warned Winn-Dixie that it would consider a renewed motion for dismissal sanctions if the noncompliance continued.  (MDL ECF Nos. 1909; 1919).  See Davidson, 204 F.R.D. at 257 (listing facts showing that "plaintiff knew that he ran the risk of a litigation-ending sanction if the discovery [o]rders were ignored").  The Court reasonably expects that the monetary sanctions imposed on Winn-Dixie "will be sufficient to deter future misconduct."  Farmer, 2015 WL 2250592, at *14; see 3801 Beach Channel, Inc., 2007 WL 879668, at *6 (finding that monetary sanctions "will serve to effectuate the purpose of Rule 37 by facilitating compliance with future court orders, ensuring that the defendants do not benefit

from their non-compliance, and providing a general deterrent to future non-compliance with court orders").

The appropriate amount of the monetary sanctions is the sum of "the reasonable expenses, including attorney's fees, caused by the failure" by Winn-Dixie to comply with the Aug. 1, Aug. 26, and Dec. 14 Orders. See Fed. R. Civ. P. 37(b)(2)(C). Those expenses include the costs Keurig incurred for: (1) the First MTC (MDL ECF No. 1848); (2) the Second MTC (MDL ECF No. 1862); (3) the August 5, 2022, August 12, 2022, August 26, 2022, and December 13, 2022 conferences with the Court (MDL ECF Nos. 1895; 1898; 1930-9; 1977); (4) Keurig's September 13, 2022 motion to dismiss the C&S Claims (MDL ECF No. 1908); (5) Keurig's September 19, 2022 renewed motion to dismiss the C&S Claims (MDL ECF No. 1915); and (6) the Motion (MDL ECF No. 1930). See Anhui Konka, 2020 WL 5743518, at *4–5 (awarding attorneys 'fees and costs for motions to compel and court conferences); Williams v. Nat'l R.R. Pass. Corp. (Amtrak), No. 18 Civ. 7070 (DLC), 2019 WL 3423267, at *4 (S.D.N.Y. July 30, 2019) (awarding attorneys 'fees and costs moving party incurred to obtain court-ordered discovery from noncompliant party); Farmer, 2015 WL 2250592, at *14–15 (awarding attorneys 'fees and costs for motions to compel, meet and confer between parties, and court conferences). The Court orders the parties to meet and confer to reach an agreement on the amount of Keurig's attorneys 'fees and costs that fall within these instructions, and only if agreement is impossible will the Court entertain the possibility of a further conference and/or schedule for additional submissions. See Keurig Sanctions Decision, 341 F.R.D. at 542 (directing same).

To the extent that Keurig seeks dismissal of the C&S Claims, that request is denied at this time. See Shanghai Weiyi Int'l, 2017 WL 2840279, at *17–18 (finding that terminating sanctions

were not warranted but imposing preclusion and monetary sanctions); <u>Farmer</u>, 2015 WL 2250592, at *13 (finding that dismissal was not warranted where noncompliant party responded to sanctions motion, complied "albeit belatedly" with discovery orders, and agreed to be deposed); <u>3801 Beach Channel, Inc.</u>, 2007 WL 879668, at *6 (granting monetary sanctions but denying more severe sanctions)  This case is distinguishable from those in which courts have entered default judgments or dismissed claims as sanctions for parties that entirely failed to participate in discovery, appear at depositions, attend court conferences, or provide any justification for noncompliance.  Cf. <u>Agiwal</u>, 555 F.3d at 303 (affirming dismissal sanction against <u>pro se</u> plaintiff who did not respond to any discovery requests, was repeatedly warned of possibility of sanctions, including dismissal, and failed to comply with court orders after magistrate judge imposed lesser sanction); <u>Urbont</u>, 2014 WL 6433347, at *4 (entering default judgment against defendant who chose "not to cooperate with discovery" and failed to maintain contact with counsel or the court); <u>Rodriguez v. Oak Rm.</u>, No. 12 Civ. 2921 (PKC), 2012 WL 5305551, at *2 (S.D.N.Y. Oct. 23, 2012) (dismissing complaint where plaintiff did not respond to any discovery requests at all, without explanation or justification); <u>Abreu v. City of New York</u>, 208 F.R.D. 526, 530 (S.D.N.Y. 2002) (dismissing claims of plaintiff who did not respond to discovery requests, failed to comply with court orders, failed to meet and confer with defendants 'counsel, did not communicate with the court, and did not provide an explanation or justification for repeated noncompliance).  Further, "where plaintiffs have shown a renewed interest in prosecuting their claims following a period of dormancy," such as Winn-Dixie has shown here, "courts have found dismissal under Rule 41(b) to be unwarranted."  <u>Farmer</u>, 2015 WL 2250592, at *13 (collecting cases).

If the sanctions the Court has imposed in this Opinion and Order prove ineffective as the parties proceed through the remainder of pre-trial proceedings, however, Winn-Dixie is reminded that any further violations of a Court order will result in the recommendation to Judge Broderick that Winn-Dixie's claims be dismissed with prejudice pursuant to Rule 37(b)(2)(A)(v). See Farmer, 2015 WL 2250592, at *14 (imposing monetary sanctions and warning plaintiff of risk of dismissal for future noncompliance); 3801 Beach Channel, Inc., 2007 WL 879668, at *6 (same).

### IV. **CONCLUSION**

For the reasons set forth above, the Motion is GRANTED IN PART and DENIED IN PART as follows:

1. Keurig is entitled to recover reasonable attorneys' fees and expenses for: (1) the First MTC (MDL ECF No. 1848); (2) the Second MTC (MDL ECF No. 1862); (3) the August 5, 2022, August 12, 2022, August 26, 2022, and December 13, 2022 conferences with the Court (MDL ECF Nos. 1895; 1898; 1930-9; 1977); (4) Keurig's September 13, 2022 motion to dismiss the C&S Claims (MDL ECF No. 1908); (5) Keurig's September 19, 2022 renewed motion to dismiss the C&S Claims (MDL ECF No. 1915); and (6) the Motion (MDL ECF No. 1930).

2. The parties shall meet and confer and reach an agreement on Keurig's attorneys' fees and costs that fall within these instructions.  If they are unable to agree, by **May 22, 2023** Keurig may request a conference with the Court to discuss , or may propose, a schedule for filing an application for attorneys' fees and costs pursuant to this Opinion and Order.

3.  Keurig's requested sanction of dismissal of the C&S Claims is DENIED.


Dated:          New York, New York
                May 8, 2023

                                   SO ORDERED.


                                   **SARAH L. CAVE**
                                   **United States Magistrate Judge**