```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
IN RE:                                                :
                                                      :
KEURIG GREEN MOUNTAIN SINGLE-                         :
SERVE COFFEE ANTITRUST                                :     14-MD-2542 (VSB)
LITIGATION                                            :     14-MC-2542 (VSB)
                                                      :
This order relates to all cases                       :     OPINION & ORDER
                                                      :
------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

Parties and non-parties in this case have made extensive use of motions to seal or redact papers. This Opinion & Order sets out the next steps for deciding these motions. On January 17, 2023, I issued an order resolving 12 of the 37 sealing motions then pending. (Doc. 1978, the "Sealing Order.") Based on the Sealing Order, I directed the parties and non-parties to meet and confer to determine, based on the Sealing Order, if any of the pending motions should be withdrawn and if they could propose a mechanism for more efficiently deciding the remaining sealing motions.

In response, defendant Keurig Green Mountain, Inc. ("Keurig") moved for reconsideration of part of that order. (Doc. 1989.) The parties and non-parties also submitted a joint letter directed by the Sealing Order. (Doc. 2008, the "Joint Letter.") The Joint Letter, with minor exceptions, failed to productively advance the adjudication of the pending sealing orders. It also served as a vehicle for Plaintiffs to request sanctions against Keurig. (*Id.* 13–14.)

Given the lack of cooperation among the parties, the lack of productive movement on these motions, and the volume of materials that require review, this Opinion & Order proposes the appointment of a special master and sets out the terms under which parties and non-parties

shall have the opportunity to be heard on this appointment. I also address Keurig's motion for reconsideration and Plaintiffs' request for sanctions, both of which are DENIED. Finally, this Opinion & Order addresses the withdrawal of several sealing motions, as well as certain administrative issues.

I. **Background**

I assume familiarity with the background of this multidistrict litigation, which alleges antitrust violations against Keurig. The broader background of this case is recounted in my Opinion & Order of April 3, 2019. (Doc. 581.) This Opinion & Order addresses only the additional background relevant to Keurig's motion for reconsideration and the Joint Letter.

A. *Motion for Reconsideration*

Parties have made extensive use of motions to seal or redact materials in this case, subjecting thousands of pages of material to court review. On January 17, 2023, I entered the Sealing Order, which addressed 12 of 37 pending sealing motions. The Sealing Order itself spanned 48 pages and required the review of several thousand pages. Two components of the Sealing Order are relevant here. First, the Sealing Order denied two motions by Keurig to seal materials (the "Denied Motions"). The first of the Denied Motions sought to seal materials associated with Keurig's motion to exclude the report and testimony of Dr. Gary French ("Dr. French"), along with various supporting exhibits. (Doc. 1405.) In particular, Keurig sought to completely seal two volumes of Dr. French's deposition transcript, the expert report of Dr. Laila Haider ("Dr. Haider"), and an internal Keurig email. (*Id.* 1.) It also sought to partially redact several other deposition excerpts as well as excerpts from another expert report. (*Id.* 1–2.) The second of the Denied Motions concerned a motion to seal certain materials filed as part of Keurig's opposition to class certification and supporting exhibits. (Doc. 1416.) Specifically, Keurig sought to completely seal errata to the expert report of Dr. Haider, the expert report of Dr.

2

Kevin Murphy, and other discovery materials. (*Id.* 1.) It also sought partial redactions to a memorandum of law and various deposition excerpts. (*Id.* 2.) I denied both motions in the Sealing Order because neither motion was adequately substantiated given the strong presumption of public access to these materials. (Doc. 1978 at 13–15).

Keurig moved for reconsideration of my rulings on the Denied Motions on January 31, 2023. (Doc. 1989.) Plaintiffs opposed that motion on February 14, 2023, (Doc. 2005), and Keurig replied on February 21, 2023, (Doc. 2012). No other component of the Sealing Order has been challenged.

### B. *The Joint Letter*

The Sealing Order also ordered parties and non-parties with sealing requests to meet and confer and submit a joint letter proposing recommendations on how to facilitate the redaction, reconciliation, and filing of papers impacted by the Sealing Order and any subsequent orders on sealing. (Doc. 1978 at 48–49.) Because numerous sealing motions remained pending, the Sealing Order did not direct the immediate posting of material it covered as immediate filing could result in the disclosure of material subject to sealing or redaction. Instead, the Sealing Order directed that the filing of such material would not be required until a suitable process had been determined.

Given the number and scale of sealing requests still pending and the volume of material associated with these requests, the parties were also directed to confer and state if a mechanism like the appointment of a special master to review sealing requests would be beneficial. (*Id.* 48.) The Sealing Order also directed parties to state if, given the guidance in the Sealing Order, any of the remaining pending motions to seal were moot. (*Id.* 49.)

The parties submitted the Joint Letter on February 16, 2023. (Doc. 2008.)

Accompanying the 15-page Joint Letter were 259 pages of supporting exhibits, (Docs. 2009, 2009-1 to 2009-26), and a motion to seal portions of the Joint Letter and supporting exhibits. (Doc. 2007.)

Unfortunately, the Joint Letter resolved little. Three non-parties withdrew their requests to seal in full, and one non-party withdrew portions of their sealing request. (Doc. 2008 at 12.) Fifteen non-parties maintained their sealing requests in full and Plaintiffs renewed their opposition to all but one of these requests. (*Id.* 8–11.) Keurig also maintained all of its sealing requests. (*Id.* 6.) Plaintiffs and Keurig also offered radically different proposals for reconciling and implementing redactions from the Sealing Order and those that will be directed in subsequent orders. (*Compare id.* 12–13 (Plaintiffs) *with* 13 (Keurig)). As to the remaining orders, the Joint Letter touches only briefly on the question of expediting or simplifying the resolution of these motions by noting that the parties were unable to come to any agreement on a proposal to facilitate the adjudication of these motions. (*See, e.g.*, *id.* 6.) Finally, Plaintiffs request sanctions against Keurig for failing to comply with the Sealing Order. (*Id.* 13–14.)

**II. <u>Legal Standards</u>**

**A.** *Motions for Reconsideration*

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks omitted), and "can be granted 'only upon a showing of exceptional circumstances,'" *Kubicek v. Westchester Cnty.*, No. 08 Civ. 372 (ER), 2014 WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986)). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr.*,

652 F.3d 277, 288 (2d Cir. 2011) (internal quotation marks omitted).

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Tramp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). To succeed, the movant must carry the heavy burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Thus, "[r]econsideration should not be granted where the moving party seeks solely to relitigate an issue already decided; in addition, the moving party may not 'advance new facts, issues or arguments not previously presented to the Court.'" *Christoforou v. Cadman Plaza N., Inc.*, No. 04 Civ. 08403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. March 19, 2009) (quoting *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y.1999)); *see also Richard Feiner & Co. v. BMG Music Spain,* No. 01 CIV. 0937 (JSR), 2003 WL 21496812, at *1 (S.D.N.Y. June 27, 2003) (cleaned up) ("New arguments . . . are not to be considered [on a motion for reconsideration] unless there is some valid reason they could not have been previously advanced when the motion was originally argued.") The decision to grant or deny a motion for reconsideration is "addressed to the sound discretion of the district court." *Aczel v. Labonia,* 584 F.3d 52, 61 (2d Cir. 2009).

### B.     *Appointment of a Special Master*

Federal Rule of Civil Procedure 53(a)(1)(C) provides that a court may appoint a master in specific circumstances, including to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). Additionally, courts possess an inherent equitable power to appoint special masters. *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, No. 21 MC 100 (AKH), 2008 WL 793578, at *2 (S.D.N.Y. Mar. 24, 2008) (noting the inherent power of courts to appoint special masters); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-CV-8414 (KMW), 2019 WL 1284072, at *1 (S.D.N.Y. Mar. 20, 2019) (noting that the appointment of special masters is authorized under both Fed. R. Civ. P. 53 and the "Court's inherent equitable powers and authority"); *In re Search Warrant dated Nov. 5, 2021*, No. 21 MISC. 813 (AT), 2021 WL 5845146, at *1 (S.D.N.Y. Dec. 8, 2021) ("Courts in this district have appointed special masters . . . pursuant to their inherent and equitable powers and authority.") (cleaned up). The decision of whether to appoint a special master is committed to the discretion of the district court.[1] *See, e.g.*, *New York State Ass'n for Retarded Child. Inc. v. Carey*, 706 F.2d 956, 962 (2d Cir. 1983) (evaluating appointment of a special master under the abuse of discretion standard); *see also Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 36 (2d Cir. 1988) (noting the "broad discretion" afforded a court that appointed a "special property advisor"). In exercising this discretion, "the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3)

"[D]istrict courts with loaded dockets may rely on special masters to decide thorny

---

[1] Prior versions of Rule 53 restricted the use of special masters to exceptional conditions. However, "[u]nder Rule 53, as revised, special masters may now address pretrial and post-trial matters without a showing of exceptional conditions, so long as the circumstances of the appointment respect the conditions imposed by subsection (a)(1)(C)." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 719 n.7 (2d Cir. 2023).

things." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 719 (2d Cir. 2023). Courts have thus properly resorted to special masters where a task would require the review of thousands of pages of material. *See, e.g.*, *In re U.S. Dep't of Def.*, 848 F.2d 232, 236 (D.C. Cir. 1988) (approving the use of a special master where FOIA review involved the assessment of a "massive collection of 14,000 pages which must be sifted through"); *see also* Shira Scheindlin, *We Need Help: The Increasing Use of Special Masters in Federal Court*, 58 DePaul L. Rev. 479, 482 (2009) (noting that one appropriate use for a master is "reviewing vast numbers of documents in camera--sometimes in the tens of thousands of pages--to determine whether a privilege has been validly asserted or whether secret documents can be declassified").

Indeed, a special master has previously been appointed in this case to resolve a privilege dispute that involved a similarly voluminous set of materials. On March 7, 2019, Magistrate Judge Henry Pittman entered an order resolving a sample of 50 of documents over which Keurig claimed privilege. (Doc. 544.) As part of that order, Judge Pittman noted that "given the volume of documents that Keurig claims are privileged, it is not possible for me to conduct an *in camera* review of all the documents" and suggested that the parties attempt to agree on an order protecting these documents that would obviate the need for a special master. (*Id.* 7–8.) When the parties failed to agree, Judge Pitman appointed the Honorable Barbara S. Jones, United States District Judge (retired), as special master. (Doc. 569.)

Compensation for the special master is governed by Federal Rule of Procedure 53(g). Under Rule 53(b)(2)(E), the order appointing the special master must provide "the basis, terms, and procedure for fixing the master's compensation under Rule 53(g)." In determining the appropriate allocation of costs, "[t]he court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which

7

any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3). This allocation is committed to the district court's discretion. *Peterson v. Islamic Republic of Iran*, No. 10-CV-4518 (KBF), 2018 WL 4691221, at *20 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, No. 10-CV-4518 (KBF), 2018 WL 3546180 (S.D.N.Y. July 24, 2018) ("Under Rule 53, a court is vested with broad discretion to allocate the master's fees as it thinks best under the circumstances of the case."); *Chevron Corp. v. Donziger*, No. 1 CIV. 0691 (LAK), 2018 WL 1137119, at *18 (S.D.N.Y. Mar. 1, 2018), aff'd, 990 F.3d 191 (2d Cir. 2021) ("Rule[] 53(g)(3) . . . afford[s] district courts a modicum of discretion with respect to the imposition of expenses of special masters[.]")

Under this standard, courts have allocated costs among parties based on the degree to which their conduct occasioned the need for a special master. In *Donziger*, for example, the court allocated 85 percent of the special masters' costs to defendants because defendants were "significantly responsible for the reference" and the special masters were forced to deal with "last minute, frivolous or repetitive requests" by the defendants. 2018 WL 1137119, at *21. Similarly, in this case, Judge Pitman ordered that "[e]ach party shall bear that portion of the Special Master's fee that is proportional to the number of challenges on which that party is unsuccessful. For example, if plaintiffs prevail on 30 percent of challenges they make and are unsuccessful on 70 percent, plaintiffs will bear 70 percent and defendant will bear 30 percent of the Special Master's fee." (Doc. 569, at 1–2.)

Courts have also accepted recommendations from the special master on the proper allocation of fees. *See, e.g.*, *In re Search Warrant dated Nov. 5, 2021*, No. 21 MISC. 813 (AT), 2022 WL 500919, at *1 (S.D.N.Y. Feb. 18, 2022) (receiving a report and recommendation from the special master on the proper allocation of fees); *Donziger*, 2018 WL 1137119, at *19 (court

8

allocated fees after "request[ing] a recommendation from the special masters concerning the appropriate apportionment of the costs of their services, taking into account the nature and amount of the controversy and the extent to which any party was more responsible than others for the reference and for the need for their services.")

Alternatively, Fed. R. Civ. P. 53(g)(2)(B) permits compensation to be paid "from a fund or subject matter of the action within the court's control." Thus, in *Sec. & Exch. Comm'n v. Yin*, the special master was compensated from funds drawn from frozen accounts at issue in that case. No. 17-CV-972 (JPO), 2021 WL 2138541, at *1 (S.D.N.Y. May 26, 2021). Other courts have compensated special masters out of settlement funds. *See, e.g.*, *In re Emex Corp. Sec. Litig.*, No. 01 CIV. 4886 (SWK), 2004 WL 444538, at *2 (S.D.N.Y. Mar. 10, 2004).[2]

Such authority is particularly relevant when the work of a special master impacts non-parties as it is an unsettled whether fees can be assessed against such entities. *See Yin*, 2021 WL 2138541, at *1 (suggesting, without so holding, that the costs of a special master may not be assessed against non-parties) (citing *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 610 (D. Del. 2008)).

Prior to "appointing a master, the court must give the parties notice and an opportunity to be heard." Fed. R. Civ. P. 53(b)(1).

### III. **Discussion**

#### A. *Motion for Reconsideration*

Keurig requests that I vacate portions of the Sealing Order related to nine documents and address the sealing of these documents in the context of another pending motion. (Doc. 1990 at

---

[2] *In re Emex Corp. Sec. Litig.*, 2004 WL 444538, cites a prior version of the Federal Rules which provided at Fed. R. Civ. P. 53(h)(2)(B) that a special master may be compensated "from a fund or subject matter of the action within the court's control." This language is identical to the present language of Fed. R. Civ. P. 53(g)(2)(B).

1.) Keurig's motion for reconsideration is denied, but I will continue to hold the implementation of the Sealing Order in abeyance and provide the opportunity to reconcile subsequent decisions with the Sealing Order as appropriate.

Nothing in Keurig's papers suggests that the Sealing Order misconstrued the law. Rather, Keurig suggests that I overlooked changes in sealing procedures that took place after Keurig filed the Denied Motions, as well as an additional motion that Keurig filed after these new procedures were in place. (*Id.* 1–2.) The first of the Denied Motions was made on June 16, 2021. (Doc. 1406.) The second was made on July 9, 2021, (Doc. 1416). On August 12, 2021, about a month after the second Denied Motion, the parties "request[ed] a modification of [my] sealing procedures for forthcoming *Daubert* and summary judgment briefing, which will begin on August 18 and 25 respectively." (Doc. 1435 at 1.) I adopted the proposed modified procedure (the "Modified Procedure") the next day. (Doc. 1436.)

On March 18, 2022, Keurig filed a motion to seal materials in connection with certain summary judgment class certification, and *Daubert* motions. (Doc. 1769, the "Later Motion".) As relevant here, Keurig sought to redact portions of nine documents also referenced in the Denied Motions. (Doc. 1990 at 4.) The scope of sealing in the Later Motion and Denied Motions are not the same. Although they address the same documents, the sealing requests in the Later Motion are mostly narrower than those in the Denied Motions.[3] For example, while the Denied Motions sought to seal errata to the expert report of Laila Haider in full, (Doc. 1416 at 1), the Later Motion seeks to seal only excerpts of that report with the errata information already incorporated (Doc. 1769 at 9)[4]; (*see also* Doc. 2012 at 4, (noting that Keurig agrees that the

---

[3] Plaintiffs argue that in one case, Keurig's later requests are broader than their prior one. (Doc. 2005, 6 n.2.) For this Opinion & Order is it sufficient to note that all parties agree that the scope of relief across the Denied Motions and Later Motion is different and, in most cases, substantially narrower in the Later Motion.

[4] A chart cross-referencing the materials Keurig sought to seal in the Denied Motions with the ones in the Later

sealing requests are narrower in the Later Motion)).

The Denied Motions provided virtually no support for their proposed requests. (Doc. 1978 at 13–15.) Conversely, the Later Motion is supported by eight sworn declarations and provides more specific rationales for the various classes of documents it seeks to seal. (*See generally*, Docs. 1769, 1769-1–1769-8.)[5]

Keurig asserts that the Sealing Order overlooked the material in the Later Motion as well as the process set out in the Modified Procedure. (Doc. 1990 at 2–3.) However, by its terms, the Modified Procedure was expressly directed towards either "forthcoming Daubert and summary judgment briefing," (Doc. 1435 at 1), or other specifically identified motions such as a pending class certification reply, all of which would come after my approval of these procedures. (*Id.* 2.) The Denied Motions did not fall in the class of forthcoming motions or specifically identified motions referenced as subject to the Modified Procedure. Similarly, the Later Motion came about eight months after the later of the two Denied Motions. It did not reference the Denied Motions or suggest that its analysis should be retroactively applied to the Denied Motions. (*See generally* Doc. 1769.) Additionally, the scope of each of the motions were different as the Denied Motions sought to seal substantially more material than the more narrowly tailored Later Motion.

In light of these differences, I do not find that Keurig's motion meets the strict standard for reconsideration. The materials Keurig suggests I overlooked were filed after the Denied Motions, involve different relief, and did not reference the Denied Motions or request that I consider them in my analysis of the Denied Motions. Absent any request by Keurig to

---

Motion is in Keurig's opposition at Doc. 1990 at 4.

[5] I make no comment on whether this greater showing is sufficient to merit sealing, only to contrast it with the minimal support provided in the Denied Motions.

retroactively apply one set of pleadings to another, there is no basis for proffering later submitted material as overlooked facts. This would be true in a routine case and is particularly true here, since the docket for this multidistrict litigation stretches over nine years, more than two thousand docket entries, and tens of thousands of pages of material. It is not realistic to expect a court bereft of guidance from the parties to conduct the *sua sponte* reconciliation of this vast profusion of material that Keurig proposes, particularly if the request turns on the retroactive application of a subsequent request.

Accordingly, Keurig's motion to reconsider and vacate the Sealing Order is DENIED. However, in the interest of disposing of the pending sealing orders in a consistent fashion, I will continue to hold the implementation of the Sealing Order in abeyance until the resolution of the 27 sealing motions currently pending. If the sealing requests made in the Later Motion prove merited, and I note that Plaintiffs have opposed several of those requests, (*see* Doc. 1810), then I will entertain an application to modify the Sealing Order to ensure the consistent treatment of material across motions.

### B. *Appointment of a Special Master*

A special master now appears to be the only viable means of adjudicating the remaining sealing motions on a reasonable and efficient basis. Upon the filing of this Opinion & Order, there will be 27 sealing motions remaining as the parties have continued to file new sealing motions since the entry of the Sealing Order. Collectively, these motions implicate thousands of pages of material. It is not possible to determine with specificity how much material these requests implicate because some motions do not merely request sealing or redaction of information in a specific document; rather, they request that a certain class of information be

redacted in any document where it appears.[6]

For example, non-party Grupo Phoenix Corporate Services LLC, requests not only that certain contracts be sealed, but that "all portions of the Briefing Papers revealing or directly quoting the documents and lines of testimony identified . . . be redacted as well." (Doc. 1798 at 5.) This request would require inspection for this content in various documents, including "summary judgment, Daubert, and class-certification briefs and supporting declarations, exhibits, and expert reports" which Grupo Phoenix Corporate Services LLC has not specifically identified. (*Id.* 1.)

Cross-referencing tens of thousands of pages of material is not viable for either a district judge or a magistrate judge, particularly if this case is to be expeditiously advanced. *See, e.g.*, *In re U.S. Dep't of Def.*, 848 F.2d at 236. As the response to the Sealing Order demonstrates, dealing with sealing motions through multiple orders as time and judicial economy allow is likely to create inefficiencies as parties respond with reconsideration requests to reconcile various decisions, or hold them in abeyance pending other decisions and, invariably, to seal those additional motions. When offered an opportunity to propose a mechanism for simplifying this task in the Joint Letter, the parties and non-parties were, with minor exception, unable to do so.

Although I will withhold my final determination pending submissions from the parties, I am cognizant that I must consider how to prevent unnecessary expense or delay in the resolution of these sealing motions, *see* Fed. R. Civ. P. 53(a)(3), and a special master appears to be the only

---

[6] The failure to identify all redactions sought violates the requirement in my individual rules that redaction requests shall include "an unredacted copy of the document with the proposed redactions highlighted." Individual Rules & Practices in Civil Cases, Vernon S. Broderick, United States Civil Judge, Rule 5(b)(iii)(c) (Feb. 4, 2022), available at
https://www.nysd.uscourts.gov/sites/default/files/practice_documents/VSB%20Broderick%20Civil%20Rules%20version%2002.04.22.pdf. The failure to provide this also substantially increases the work associated with sealing requests because it requires that I first identify what material would be subject to sealing before applying the sealing legal analysis to them.

way to adjudicate these motions efficiently. Indeed, use of special master has already proven to be an efficient way to resolve a dispute in this multidistrict litigation in connection with the parties' privilege dispute involving a less voluminous array of documents.

Accordingly, pursuant to the notice requirement of Fed. R. Civ. P. 53(b)(1) and the order content requirements of Fed. R. Civ. P. 53(b)(2), I propose to enter an order appointing a special master on the following terms:

### 1. Duties

The duties of the special master shall be to draft a report and recommendation on all pending sealing motions.[7] The special master shall proceed in this task with all reasonable diligence. Fed. R. Civ. P. 53(b)(2). I may assign the special master additional duties in subsequent orders, upon notice to the parties and opportunity to be heard. I expect to extend the duties of the special master to any further sealing requests for papers and motions besides those made to Magistrate Judge Sarah L. Cave.

Within 14 days of appointment or as soon thereafter as schedules permit, the special master shall meet and confer with the parties and produce an order setting out a schedule for the resolution of these motions and the reconciliation of these requests with the prior determinations made by the Sealing Order.

The special master shall have all the authorities provided by Fed. R. Civ. P. 53(c).

### 2. Ex Parte Communications

The special master may communicate with me *ex parte* as the special master deems necessary.[8] The special master may communicate with the parties *ex parte* to obtain copies of

---

[7] As of the entry of this Order, this covers Docs. 1730, 1731, 1743, 1749, 1750, 1756, 1757, 1760, 1761, 1766, 1768, 1769, 1772, 1786, 1798, 1799, 1802, 1803, 1804, 1809, 1996, 2007, 2043, 2048, 2055, 2059, and the modified Essendant Co./Staples Inc. request described in Section III.C.2.

[8] In some circumstances, "ex parte communications with the parties should be discouraged or prohibited." Fed. R.

materials targeted for sealing.

### 3. Nature of Materials to Be Preserved

The special master shall file any order, report, or recommendation with the Court.

### 4. Filing Methods and Review Procedures

A party may file objections to—or a motion to adopt or modify—the special master's order, report, or recommendation no later than 21 days from the time that order, report, or recommendation is served.

Any order, report, or recommendation of the special master on non-dispositive motions, unless it involves a finding of fact or conclusion of law, will be deemed a ruling on a procedural matter. I will set aside a ruling on a procedural matter only where it is clearly erroneous or contrary to law.

Barring a stipulation of the parties with my consent setting some other standard of review, I will decide *de novo* all objections to findings of fact or conclusions of law made or recommended by the special master.

### 5. Compensation

The parties shall confer with the special master on compensation and expenses. The special master shall submit a proposal for my approval as to the procedures for paying the special master's compensation and expenses within a reasonable period after their appointment.

The Joint Letter suggests the compensation of the special master is likely to be a point of

---

Civ. P. 53 2003 Amendment Advisory Committee Note. However, a special master "may benefit from off-the-record exchanges with the court about logistical matters" and "may prove useful in other settings, as with in camera review of documents to resolve privilege questions." *Id.* Here, the special master will likely need to reach out to the parties to obtain copies of various documents and may seek clarification on the precise scope of materials to be sealed given the need to cross-reference materials across various sealing requests and documents. Forcing each of these communications to go through ECF will unnecessarily clutter the docket. Judge Pittman also permitted *ex parte* communication by the previous special master. (Doc. 569 at 1.)

contention. (*See, e.g.*, Doc. 2008 at 6) (noting that Keurig proposed, and Plaintiffs rejected, the equal division of special master fees). The question of the special master's compensation is further complicated by the fact that many sealing motions have been made by non-parties. In the interest of facilitating the parties' discussions with the special master on compensation, I offer the following preliminary observations.

When costs are authorized, courts have discretion in determining the proper allocation and award of special master fees. *Chevron Corp. v. Donziger*, 990 F.3d 191, 205 (2d Cir. 2021). Federal Rule of Civil Procedure 53(g)(2)(B) gives the court the ability to compensate a special master from funds under its control. Fed. R. Civ. P. 53(g)(2)(B). Courts have thus compensated special masters from settlement funds and frozen funds rather than direct payment by the parties. *See, e.g.*, *In re Emex Corp. Sec. Litig.*, 2004 WL 444538, at *2–3; *Yin*, 2021 WL 2138541, at *1; *see also Peterson v. Islamic Republic of Iran*, No. 1:01-CV-2094 (RCL), 2019 WL 805810, at *4 (D.D.C. Feb. 21, 2019) (permitting the compensation of special masters from a settlement fund created in a related case).

At this stage, no such settlement between Plaintiffs and Keurig has been proposed or considered. However, I recently approved the distribution of class settlement funds in a case brought by separate plaintiffs in this multidistrict litigation (the "Indirect Purchaser Plaintiffs"). (Doc. 2023.) That distribution approved the disbursal of unclaimed settlement funds (after a suitable interval) to a non-profit consumer protection organization, pursuant to the *cy pres* doctrine. (Doc. 1320 at 4–5; Doc. 2023 at 4.) If these funds may instead support the special master, reaching agreement on an appointment may be easier.

Accordingly, I shall direct the Indirect Purchaser Plaintiffs to file a letter discussing the viability and legality of modifying the disbursal order at Doc. 2023 to facilitate the compensation

of the special master from unused settlement funds.

If the use of unclaimed funds is not viable or if there are not sufficient funds to fully compensate the special master, I do not expect to approve compensation for the special master on an equal basis across all parties.  Most of the remaining sealing requests deal with summary judgment motions, *Daubert* motions, and other papers for which, as the Sealing Order notes, there is a strong presumption of public access under both the First Amendment and federal common law.  (*See* Doc. 1978 at 4, 10.)  The Sealing Order also demonstrated that many sealing motions could not survive the rigorous sealing test imposed by this Circuit's jurisprudence.  As more time elapses and the information that the parties seek to seal becomes increasingly stale, the challenge of demonstrating that sealing is appropriate will only increase.  (*See id.* 7–8) (collecting cases on sealing "stale" information).  Finally, Plaintiffs have opposed most of the remaining outstanding sealing requests.  (*See* Doc. 1810.)

A court must allocate payment for a special master based on, among other things "the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3).  Given the strong baseline presumption is that these documents should not be sealed, and that, at present, the parties do not uniformly agree on sealing, I expect, as with Judge Pittman's appointment order, to allocate payment based on how often a party successfully invokes the right that triggered the appointment of the special master. (Doc. 569 at 1–2).  To put it in more concrete terms, I expect the movants to bear the costs of sealing motions that prove to be without merit.  To the degree that compensation for non-party sealing requests may not be attributable to those parties, I expect that the relative ratio of successful to unsuccessful sealing requests may provide an appropriate guidepost for dividing costs associated with the review of non-party motions.

Pursuant to the requirements of Fed. R. Civ. P. 53(b)(1), parties and non-parties shall have an opportunity to be heard on whether to appoint a special master, and if the parties would make any modifications to the terms proposed in this Opinion & Order. Plaintiffs and Keurig shall also meet-and-confer to propose candidates for a special master. As the Honorable Barbara S. Jones (ret.) has previously served in the role, parties shall indicate if they would accept her reappointment, and shall propose a list of three alternative candidates.

### C. *Additional Matters*

#### 1. Withdrawn Motions

In the Joint Letter, non-parties Community Coffee, Compass Group USA, and Costco Wholesale Corporation request to withdraw their sealing requests. Community Coffee's sealing request was denied in the Sealing Order, so its withdrawal is now moot. (Doc. 1978 at 47.) The requests by Compass Group USA and Costco Wholesale Corporation to withdraw the motions at Docs. 1733 and 1797 are GRANTED.

#### 2. Modified Sealing Motions

Non-parties Essendant Co. ("Essendant") and its affiliate Staples, Inc. ("Staples") seek to withdraw several sealing motions and narrow their request based on the guidance provided in the Sealing Order. Plaintiffs do not object to this request. (Doc. 2008 at 12.) Specifically, Essendant and Staples wish to withdraw the motions at Docs. 1767, 1784, and 1828[9] as moot. These requests are GRANTED.

In lieu of these motions I or any special master appointed shall consider the modified request made by Essendant and Staples at Docs. 2009-1 to 2009-15 and described in the Joint Letter. (Doc. 2008 at 12.)

---

[9] This includes the supporting materials at Docs. 1829, 1829-1.

### 3. Sanctions

Plaintiffs request sanctions on the grounds that Keurig has failed to comply with the Sealing Order. (Doc. 2008, 13–14.) Sanctions against Keurig for purported violations of the Sealing Order are not appropriate. The Sealing Order directed the parties to redact or seal materials in compliance with its terms, to review and if necessary, modify their sealing requests in light of the determinations in the Sealing Order, and to submit a joint letter discussing mechanisms for facilitating the review of the remaining motions. Keurig has reviewed its requests and determined to maintain them. Later review by myself or a special master may determine that given the guidance in the Sealing Order, Keurig's decision was unfounded. That determination may factor into the allocation of the special master's costs should that become necessary. At this stage, however, Keurig has done what the Sealing Order directed, so sanctions are not appropriate.

### 4. Obtaining Documents

My review of the sealing requests and several other pending matters has revealed several instances where a particular document does not appear to have been filed on ECF or where, for whatever reason, it can no longer be located. Issuing orders to retrieve a document to the parties each time such circumstances arise is likely to be a poor use of my and the parties' time. Accordingly, I propose in such circumstances to email the party in possession of the relevant document directly, with Plaintiffs, Defendants, and non-parties copied on the email as necessary. If any party objects to this procedure, they may file a letter by June 16, 2023. Parties who do not object need not file a letter.

### IV. Conclusion

Keurig's motion for reconsideration is DENIED but a final determination on sealing will

be held in abeyance pending a final resolution of the remaining pending sealing orders in this case.

All parties and non-parties who wish to be heard on the appointment of a special master pursuant to Fed. R. Civ. P. 53(b)(1) shall submit a joint letter by June 27, 2023. Plaintiffs and Keurig shall submit a separate letter by June 20, 2023, proposing candidates for a special master in the event one is appointed. The Indirect Purchaser Plaintiffs shall submit a letter on the special master compensation considerations identified in Section III.B.5 by June 20, 2023.

The Clerk of Court is respectfully directed to terminate the motions at Docs. 1733, 1767, 1797, 1828, and 1989.

SO ORDERED.

Dated: June 13, 2023
New York, New York

_____
Vernon S. Broderick
United States District Judge