```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
IN RE:                                                     :
                                                           :
KEURIG GREEN MOUNTAIN SINGLE-                              :
SERVE COFFEE ANTITRUST                                     :    14-MD-2542 (VSB)
LITIGATION                                                 :    14-MC-2542 (VSB)
                                                           :
This order relates to all cases                            :    OPINION & ORDER
                                                           :
-----------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

      This order appoints a special master to resolve outstanding sealing motions. It also sets out the terms of the special master's appointment.

I. **Background**

      I assume familiarity with the general background of this case and address only the specific background necessary to this Opinion & Order. Additionally, most of the background associated with the use and resolution of sealing requests and orders in this multidistrict litigation can be found and is addressed in my orders at Docs. 1978 and 2061. On January 17, 2023, I entered an order addressing 12 of 37 sealing motions then-outstanding in this case (the "January 17 Order"). (Doc. 1978.) In the January 17 Order, I also directed the parties to file a joint letter stating if, given the guidance in the January 17 Order, any pending sealing motions were moot or no longer supportable. (*Id.* 48.) The January 17 Order also asked the parties to assess if it would make sense to appoint a special master to facilitate the adjudication of the remaining sealing motions. (*Id.*) The parties filed their joint letter on February 16, 2023. (Doc. 2008.)

      As I noted in my subsequent order of June 13, 2023 (the "June 13 Order"), this joint letter did little to facilitate the adjudication of outstanding sealing motions. (Doc. 2061 at 4.) Three

sealing requests were withdrawn, and one was narrowed, (*id.*), but that left 27 sealing motions pending, including new sealing requests made in the intervening period. (*Id.* 12.) Plaintiffs also used that letter to request sanctions against Keurig for alleged abuses of the sealing process. (Doc. 2008 at 13–14.)

As a result, I noted that "[a] special master now appears to be the only viable means of adjudicating the remaining sealing motions on a reasonable and efficient basis." (Doc. 2061 at 12.) I also set out the terms under which I expected to appoint that master. (*Id.* 14–18.) However, I stated that I would "withhold my final determination" on the appointment of a special master pending submissions from the parties pursuant to Fed. R. Civ. P. 53(b)(1). (*Id.* 13.) Parties and non-parties provided a joint submission with their views on the appointment of a special master on June 27, 2023. (Doc. 2073.) Additionally, a separate set of plaintiffs submitted a letter on the viability of using undistributed settlement funds to defray any costs associated with the appointment of a special master. (Doc. 2076.) Since the entry of June 13 Order, the total number of sealing motions has risen to 29. (Docs. 2068, 2082.)

On July 24, 2023, the Parties indicated that the Honorable Richard Holwell (ret.) would be available to serve as special master. (Doc. 2093.) Judge Holwell filed the affidavit required pursuant to Fed. R. Civ. P. 53(b)(3) on July 28, 2023. (Doc. 2098.)

**II.     Legal Standard**

Fed. R. Civ. P. 53(a)(1)(C) authorizes a district court to appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." The decision of whether to appoint a special master is committed to the discretion of the district court. *See, e.g.*, *New York State Ass'n for Retarded Child. Inc. v. Carey*, 706 F.2d 956, 962 (2d Cir. 1983) (evaluating appointment of a

special master under the abuse of discretion standard); *see also Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 36 (2d Cir. 1988) (noting the "broad discretion" afforded a court that appointed a "special property advisor").

As I noted in the June 13 Order, "[c]ourts have . . . properly resorted to special masters where a task would require the review of thousands of pages of material." (Doc. 2061 at 7 (citing *In re U.S. Dep't of Def.*, 848 F.2d 232, 236 (D.C. Cir. 1988)). However, "the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed. R. Civ. P. 53 (a)(3).

"Before appointing a master, the court must give the parties notice and an opportunity to be heard." Fed. R. Civ. P. 53 (b)(1). Courts in this District have permitted parties to be heard through written submissions, *Winfield v. City of New York*, No. 15CV05236LTSKHP, 2018 WL 2148435, at *9 (S.D.N.Y. May 10, 2018), and a combination of written submissions and conferences, *In re World Trade Ctr. Disaster Site*, No. 21 MC 100 (AKH), 2006 WL 3627760, at *3 (S.D.N.Y. Dec. 12, 2006).

Once parties have been heard, a special master candidate must file an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455. Fed. R. Civ. P. 53(b)(3). The court may issue the order appointing the special master thereafter so long as that order includes the contents set out in Fed. R. Civ. P. 53(b)(2).

"Before or after judgment, the court must fix the master's compensation on the basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an opportunity to be heard." Fed. R. Civ. P. 53(g)(1). Payment may be made by parties, Fed. R. Civ. P. 53(g)(2)(A), or "from a fund or subject matter of the action within the court's control." Fed. R. Civ. P. 53(g)(2)(B). "The court must allocate payment among the

parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits." Fed. R. Civ. P. 53(g)(3).

### III. Discussion

Having reviewed the parties' and non-parties' submissions[1], I find that appointing a special master is necessary to facilitate the efficient adjudication of this case. Keurig does not oppose the appointment of a special master, (Doc. 2073 at 3), nor do any non-parties, (*id.* 5–7). Other than plaintiff JBR, all Plaintiffs agree "there is no realistic alternative choice" to the appointment of a special master so long as it does not delay the adjudication of other matters in this action. (*Id.* 2.)

Only JBR opposes the appointment of a special master. (*Id.* 1–2.) It raises the concern that the appointment of a special master "will result in additional delays" and will be unnecessary because, as in some prior 2019 transactions, parties will revisit their sealing requests once pending *Daubert* and summary judgment motions have been decided. (*Id.* 1.) Other plaintiffs, while not opposing the appointment of the special master, similarly voiced concerns about the delays the appointment of a special master will impose on the adjudication of this action. (*Id.* 2.)

I cannot agree with JBR's assertion that a decision on these pending motions will allow the parties to "quickly and easily" agree to revisit their sealing requests. (*Id.*) I suggested in the January 17 Order that parties consider revisiting their sealing requests based on the guidance in that order. (Doc. 1978 at 48.) Only three non-parties withdrew their requests. Keurig, despite Plaintiffs' ongoing threat of sanctions, withdrew no requests. (*See generally* Doc. 2008.)

---

[1] No party or non-party has requested a conference or further oral argument on the issue. (Doc. 2073.)

Plaintiffs have also opposed 16 of the pending sealing requests. (*See generally* Docs. 1810, 1810-6.) Thus, whatever tractability the parties displayed in negotiating earlier requests cannot be counted on in the future. As I noted in my January 17 Order, a similarly intractable 2019 discovery dispute was ultimately resolved only with the intervention of a special master. (Doc. 2061 at 7.)

The other problem with this argument is that, even if the parties could agree on a set of redactions and sealing proposals, that agreement does not obviate the need for detailed judicial review. The common law and First Amendment rights of access at issue are rights held by the public to allow them "to understand and evaluate the actions of the courts." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013). Access is thus "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). Accordingly, to protect this public right, I must review sealing requests and enter on-the-record findings regardless of whether parties are able to agree on sealing requests. The holding in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), is instructive. There, a district court entered orders "that effectively ceded control of the sealing process to the parties themselves." *Id.* at 46. The Court of Appeals found this inappropriate and reiterated and confirmed the applicability of prior holdings stating that to seal documents, district courts must conduct individualized reviews of material to be sealed and justify any sealing with on-the-record findings. *Id.* 47–51. Thus, unless the parties agreed to withdraw all requests to seal or redact, I would still be obligated to review even agreed-on sealing requests. Prior such reviews, (*see, e.g.*, Doc. 1978), suggest to me that this effort will require an immense investment of judicial resources without a special master.

I am, however, sensitive to the issue of delay, but the appointment of the special master will speed, rather than delay the adjudication of this matter. To that end, as requested by the non-JBR Plaintiffs, I expect to continue to work on non-sealing matters while the special master's report is pending, including addressing filings that rely on and cite to documents for which sealing has been requested. I have also modified the order appointing the special master along the lines proposed by the non-JBR Plaintiffs, (Doc. 2073 at 2), by adding timelines for the preparation of the report and recommendation on outstanding sealing motions. *See* § IV.1.

Plaintiffs, Keurig, and non-parties disagree on how the special master should be compensated. Keurig proposes that the costs be split between itself and Plaintiffs. (Doc. 2073 at 4.) Plaintiffs propose that movants be required to bear the costs of motions that prove meritless. (*Id.*) Non-parties take no position save to note that that Fed. R. Civ. P. 55(g) does not permit the allocation of special master costs to non-parties. (*Id.* 5–7.)

I expect to determine the ultimate allocation of the special master's compensation only after I have received the special master's report on the merits of the sealing motions filed and after I have determined whether any funds may be employed under Fed. R. Civ. P. 55(g)(2)(B) to defray these costs. However, Fed. R. Civ. P. 55(g)(1) suggests that the order appointing a special master must provide at least an initial method for compensating the special master even if that method is ultimately altered. Accordingly, this order sets out the initial terms of the special master's payment in § IV.5.

Under Fed. R. Civ. P. 55(g)(2)(A), the special master's compensation must be borne "by a party or parties." Thus, non-parties may not be called upon to pay the special master's compensation. *See, e.g.*, *Sec. & Exch. Comm'n v. Yin*, No. 17-CV-972 (JPO), 2021 WL 2138541, at *1 (S.D.N.Y. May 26, 2021) ("Rule 53(g)(2)(A) permits the allocation of fees only

6

to 'a party or parties.'"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 610 (D. Del. 2008) ("[W]hen Fed. R. Civ. P. 53(h) expressly states that compensation must be paid by 'a party or parties,' it means just that and does not include nonparties.").[2]

In considering this allocation, a court must apportion payment for a special master based on, among other things "the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3). Thus, in the prior appointment of a special master in this case, Magistrate Judge Henry Pittman allocated payment based on how often a party successfully invoked the right that triggered the appointment of the special master. (Doc. 569 at 1–2).

### IV. Appointment

Given the foregoing, I hereby appoint the Honorable Richard Holwell (ret.) as special master. Judge Holwell has provided the affidavit required under Fed. R. Civ. P. 53(b)(3). (Doc. 2098.) The special master shall have the powers and duties set out in § IV of this Order.

#### 1. Duties

The duties of the special master shall be to draft a report and recommendation on all pending sealing motions (the "Sealing Report").[3] The special master shall proceed with this task with all reasonable diligence. Fed. R. Civ. P. 53(b)(2). In rendering the Sealing Report, the special master shall be guided by applicable law and prior determinations on sealing made in the January 17 Order. I may assign the special master additional duties in subsequent orders, upon

---

[2] Fed. R. Civ. P. 53(h) refers to a prior version of the Federal Rules governing the compensation of special masters, the text of which, in all relevant parts, is identical to that of the current Fed. R. Civ. P. 53(g).

[3] As of the entry of this Order, this covers Docs. 1730, 1731, 1743, 1749, 1750, 1756, 1757, 1760, 1761, 1766, 1768, 1769, 1772, 1786, 1798, 1799, 1802, 1803, 1804, 1809, 1996, 2007, 2043, 2048, 2055, 2059, 2062, 2068, 2082, and the modified Essendant Co./Staples Inc. request described in Doc. 2061 at § III.C.2. This list includes two sealing motions (Docs. 2062 and 2068) filed since my order proposing the appointment of a special master, because, as I noted in that Order "I expect to extend the duties of the special master to any further sealing requests for papers and motions besides those made to Magistrate Judge Sarah L. Cave." (Doc. 2061 at 14.)

notice to the parties and opportunity to be heard.

Within 14 days of appointment or as soon thereafter as schedules permit, the special master shall meet and confer with the parties and produce an order setting out a schedule for the resolution of these motions and the reconciliation of these requests with the prior determinations made in the January 17 Order. If possible, the parties and special master should endeavor to ensure that a report and recommendation addressing outstanding sealing motions is prepared within 60 days of the entry of this Order.

Within 14 days after the filing of the Sealing Report, the special master shall submit a report and recommendation proposing the allocation of the special master's compensation between parties (the "Compensation Report"). The Compensation Report shall also provide an assessment of what percentage of sealing requests made by parties (but not non-parties to this action) were meritorious[4] and, if possible, what sum of the special master's costs resulted from sealing requests made by non-parties versus parties. The special master shall solicit the opinion of parties and non-parties prior to the Compensation Report.

Plaintiffs have requested that the special master also assess the appropriateness of levying sanctions against Keurig for frivolous sealing requests. (Doc. 2073 at 4.) Requiring the special master to adjudicate sanctions requests, however, will increase the delay associated with the production of a report and recommendation and may impair the special master's ability to work effectively with the parties. Accordingly, the special master shall not address the question of

---

[4] The special master may use their discretion in determining this percentage with the understanding that this determination will invariably require some estimation and discretion. The special master is also not required to assess this percentage based solely on the number of motions at issue. For example, if there are two sealing motions, one of which seeks to seal 3 pages of material, all of which are merited, and one of seeks to seal 3000 pages of material, the vast majority of which are unmerited, the special master would not be required to set the percentages of merited and unmerited requests at 50 percent each. Rather, the special master may properly account for the fact that one motion improperly sought to seal a far larger amount of material.

8

sanctions. However, this does not limit the special master's ability to consider the "extent to which any party is more responsible than other parties for the reference to a master" in making a recommendation on the allocation of compensation pursuant to Fed. R. Civ. P. 53(g)(3). Furthermore, this does not otherwise limit the sanction authority provided to the special master pursuant to Fed. R. Civ. P. 53(c)(2).

The special master shall otherwise have all the authorities provided by Fed. R. Civ. P. 53(c).

### 2. Ex Parte Communications

The special master may communicate with me ex parte as the special master deems necessary.[5] The special master may communicate with the parties ex parte to obtain copies of materials targeted for sealing.

### 3. Nature of Materials to Be Preserved

The special master shall file any order, or report and recommendation with the Court.

### 4. Filing Methods and Review Procedures

A party may file objections to—or a motion to adopt or modify—the special master's order, report, or recommendation no later than 21 days from the time that order, report, or recommendation is served or filed, whichever is earlier.

Any order, report, or recommendation of the special master on non-dispositive motions, unless it involves a finding of fact or conclusion of law, will be deemed a ruling on a procedural

---

[5] In some circumstances, "ex parte communications with the parties should be discouraged or prohibited." Fed. R. Civ. P. 53 2003 Amendment Advisory Committee Note. However, a special master "may benefit from off-the-record exchanges with the court about logistical matters" and "may prove useful in other settings, as with in camera review of documents to resolve privilege questions." *Id.* Here, the special master will likely need to reach out to the parties to obtain copies of various documents and may seek clarification on the precise scope of materials to be sealed given the need to cross-reference materials across various sealing requests and documents. Forcing each of these communications to go through ECF will unnecessarily clutter the docket. Judge Pittman also permitted ex parte communication by the previous special master. (Doc. 569 at 1.)

matter. I will set aside a ruling on a procedural matter only where it is clearly erroneous or contrary to law. Fed. R. Civ. P. 53(f)(3).

Barring a stipulation of the parties with my consent setting some other standard of review, I will decide *de novo* all objections to findings of fact or conclusions of law made or recommended by the special master.

### 5. Compensation

Compensation for the special master shall be set as follows. First, any funds that are available to compensate the special master pursuant to Fed. R. Civ. P. 53(g)(2)(B) as funds "from a fund or subject matter of the action within the court's control" shall be applied to the cost of the special master's cost resulting from sealing motions made by non-parties.[6] Any remaining funds available pursuant to Fed. R. Civ. P. 53(g)(2)(B) shall be applied to costs resulting from the parties' sealing motions. If this allocation cannot be determined, then available funds shall be applied to the total outstanding balance.

In either case, Keurig and the Plaintiffs shall pay any outstanding costs based on what percentage of sealing requests were meritorious as set out in the Compensation Report.[7] Keurig shall bear the percentage of compensation associated with non-meritorious requests. Plaintiffs shall bear percentage of compensation associated with meritorious requests.[8]

---

[6] On March 15, 2023, I entered an order governing the distribution of funds in a separate set of cases in this multidistrict litigation. (Doc. 2023, the "Distribution Order.") I modified the Distribution Order with a further order entered on July 31, 2023. These modifications address an administrative issue with the Distribution Order and provide that, prior to distributing funds to parties other than those claimants authorized to receive money pursuant to the Distribution Order (*e.g.*, pursuant to the *cy pres* doctrine), plaintiffs whose settlement is governed by the Distribution Order shall file a letter indicating what portion of settlement funds are unclaimed and identifying any issues with defraying the costs of the special master with those funds pursuant to Fed. R. Civ. P. 53(g)(2)(B). (Doc. 2104.) These plaintiffs have indicated that they do not oppose the use of such unclaimed funds to defray the costs of the special master. (Doc. 2076.) Thus, while a process is in place to determine the availability of this funds, the amount of such funds available pursuant to this authority is currently unknown.

[7] Plaintiffs have no outstanding sealing motions, (Doc. 2073 at 4), so by this method, Plaintiffs only bear the cost of Keurig's meritorious motions and a portion of any non-party costs.

[8] To give a concrete example, consider a scenario in which the Compensation Report sets the percentage of

This compensation scheme is set out on an interim basis only and may be modified following the filing of the Compensation Report, and after providing parties with notice and an opportunity to be heard as provided for by Fed. R. Civ. P. 53(g)(1).

### V.     Conclusion

The Honorable Richard Holwell (ret.) is hereby appointed special master with the powers and duties set out in this Order.

SO ORDERED.

Dated: August 1, 2023
      New York, New York

*/s/ Vernon Broderick*
Vernon S. Broderick
United States District Judge

---

meritorious and unmeritorious funds at 50 percent each, special master costs associated with non-party sealing motions are $100, special master costs associated with party sealing motions are $100, and there are $50 in funds available pursuant to Fed. R. Civ. P. 53(g)(2)(B).  That $50 is first applied to the $100 in non-party costs, leaving $50 remaining and $150 (outstanding non-party costs plus $100 in party costs) overall.  Based on the 50 percent allocations in the Compensation Report, Plaintiffs and Keurig would then each be responsible for $75 of the special master's compensation.