UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION

*This Document Relates to:*

BJ'S WHOLESALE CLUB, INC.,

         Plaintiff,

    -against-

KEURIG GREEN MOUNTAIN, INC.,

         Defendant.

Case No. 1:14-md-02542-VSB

[Related Case No. 1:21-CV-7493]

## BJ'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS OF KEITH R. UGONE

  After concluding that Dr. Johnson's model was inherently unreliable, Dr. Ugone in his expert report further opined that damages were "overstated even within that flawed framework" and offered numerous "adjustments" to "claimed overcharges damages" in the case that the jury were to disagree with him that Dr. Johnson's model was wholly unreliable in the first instance. *See* ECF No. 2079, Ex. A Rebuttal Expert Report of Keith R. Ugone, Ph.D ("Ugone Rep."), at 8. Dr. Ugone concedes—as he must —that the results of these alternative adjustments are unreliable because they are the product of a model he deems unreliable. Daubert however requires that any and all testimony presented to the jury be reliable.

  Keurig cannot sidestep the import of Dr. Ugone's testimony for purposes of *Daubert* by misconstruing BJ's motion as directed to Dr. Ugone's failure to offer a competing damages model, by referring to his alternatives as "robustness checks," or by claiming that that BJ's is not clear about the problematic aspects of Dr. Ugone's testimony. Keurig necessarily offers no authority to

support the premise that *Daubert* allows an expert to have it both ways – i.e. testify that BJ's expert's model is wholly unreliable but then offer to the jury calculations to reduce damages from that model just in case the jury ultimately disagrees. That same premise was rejected in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2-3 (N.D. Cal. Jan. 23, 2017). BJ's Motion should be granted.

## ARGUMENT

BJ's Motion does not argue that Dr. Ugone had to construct his own alternative damages model, as Keurig suggests. *See* ECF No. 2115, Keurig's Mem. of Law in Opp. to BJ's and Winn-Dixie's Mots. to Exclude Certain Opinions of Keith R. Ugone, Ph.D. and Kevin Murphy, Ph.D. ("Opp."), at 2. BJ's moved to exclude Dr. Ugone's unreliable testimony because Dr. Ugone calculates adjustments to BJ's "claimed overcharge damages" which Dr. Ugone himself says lead to unreliable results but which he nevertheless intends to present to the jury. *See* ECF No. 2079, at 2-4.

Contrary to Keurig's characterization, Dr. Ugone's "adjustments" are not "robustness checks" designed to "poke holes" in Dr. Johnson's models. *See* Opp. at 2. As explained in Keurig's own authority, sensitivity and robustness testing is a procedure which asks whether a regression model is sensitive to small changes, such as producing contradictory or otherwise implausible results. *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 468 (S.D.N.Y. 2018). Here, Dr. Ugone is explicit that his "adjustments" to "claimed overcharge damages" are not meant to demonstrate the sensitivity of Dr. Johnson's model but instead offered as alternatives for "overstated" damages. Under the header, "Dr. Johnson's Claimed Damages are Overstated (Even Within His Flawed Framework)," Dr. Ugone's report explains that:

> Putting aside the fundamental flaws in Dr. Johnson's regression analysis and damages calculations (which render his damages opinions unreliable), BJ's claimed damages as presented by Dr. Johnson are overstated. For illustrative purposes, four examples are provided below. . . .

Id. ¶15 (emphasis added).  Dr. Ugone similarly admitted at his deposition that these alternatives are presented for purposes of damages in the case that the jury did not agree with him that Dr. Johnson's model was unreliable, not that these adjustments were robustness checks for purposes of showing the unreliability of the model.  *See* ECF 2079, Mem. of Law in Support of Mot. to Exclude Certain Opinions of Keith R. Ugone, Ph.D. in the BJ's Action ("BJ's Mot."), at 4 (citing Ugone Deposition (Ugone Dep.), 221:6-21 (explaining that adjustments were there if the jury were to agree with Dr. Johnson's model); *id.* (citing Ugone Dep. 222:15-23 (". . . if for some reason the trier of fact were to say, 'We do think Dr. Johnson's model is reliable,' within that framework I'm still staying you've got these adjustments you've got to make and this isn't all of them.  And the number would come down just from these four [adjustments] . . . .)); *see* id. (citing Ugone Dep. 221:6-21 (as to the adjusted damages: "the guidance I would give is that there's still problems with that number.  I think that is how I would describe it.")).

BJ's is not inconsistent in describing Dr. Ugone's opinions, as Keurig suggests.  *See* Opp., at 2.  Dr. Ugone necessarily tries to thread the needle between his opinion that Dr. Johnson's model is wholly unreliable on the one hand and that damages are overstated if you accept the model on the other by disclaiming his adjustments as producing reliable statements of damages.  *Id.*, at 3-4.  But that disclaimer cannot change the express and intended purpose of the adjustments as deductions to "claimed overcharge damages" or otherwise transform them into "robustness" checks.  As noted in the related actions, Keurig's emphasis on Dr. Ugone's disclamation of affirmative damages and characterization of his adjustments as "illustrative" are the same arguments as those previously rejected in *CRT*.  *See*  ECF No. 1603, at 4-5;  *In re CRT*, 2017 WL

-3-

10434367, at *2-3. As explained by the *CRT* court, because *Daubert* requires the exclusion of any and all unreliable testimony, the characterization of the opinion as a "critique" or rebuttal as distinct from an "affirmative opinion" is a distinction without difference. *Id.* at *2-3 (rejecting testimony of "illustrative" adjustments to damages from model experts characterized as unreliable); *see also Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 3d 314, 319-20 (S.D.N.Y. 2009) (excluding testimony where expert "concede[d] to be unreliable and inaccurate data").

Keurig's attempt to distinguish *CRT* on the basis that there were two experts in that case is misguided. *See* Opp., at 2. The point in *CRT* is not that one expert relied on another expert's work, but that one expert intended to offer alternate damages estimates based on an unreliable model, meaning the expert's damages testimony was unreliable under *Daubert*. *In re CRT*, 2017 WL 10434367, at *3. That here it is the same expert offering both opinions only makes the proposed testimony more cynical. Similarly, even if Dr. Ugone's adjustments could be recharacterized as "robustness checks" (and Keurig makes no attempt to explain how they could be), it does not matter. Keurig lacks any authority for the argument that the result of a robustness test could be offered as an unreliable adjustment to damages in the manner Dr. Ugone offers here. As explained in *CRT*, it is not the nomenclature or the posture of the opinion but whether the expert intends to present admittedly unreliable results to the jury that matters. *Id.* Here, Dr. Ugone has explained that he intends to present the admittedly unreliable results of his adjustments as deductions to overcharge damages because in the instance that the jury disagrees that Dr. Johnson's model is unreliable "[the jury] may want to do something with that." Mot. at 6 (citing Ugone Dep. 221:6-21). *Daubert* however exists to prevent an expert from providing scientifically unreliable

results to the jury in this manner. *Daubert*, 509 U.S. at 589 (court has a duty to keep "any and all" unreliable expert testimony outside the courtroom); *CRT*, 2017 WL 10434367, at *3.

Relatedly, Rule 402 of the Federal Rules of Evidence provides an independent ground to prevent Dr. Ugone's testimony, regardless of the rubric in which it is presented. Contrary to Keurig's assertion, BJ's does not argue that the problem with Dr. Ugone's testimony is that it is too complex to be understood by a jury. *See* Opp. at 3. Keurig avoids the actual argument made by BJ's, that by Dr. Ugone's own description his adjustments lack any real probative value such that the risk of misleading and confusing the jury to speculate as to damages substantially outweighs any value to the testimony. *See* ECF No. 2079, at 5, 6-7 (citing *United States v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995). The jury, if presented with testimony of adjustments to "overstated" damages the results of which however are unreliable for purposes of damages, necessarily would be confused and misled as to what to properly do with that information. As is *Kwong*, even assuming Dr. Ugone's testimony had any value to the trier of fact under Rule 702 of the Federal Rules of Evidence, that value is too low and the risk of misleading and confusing the jury too high to pass master under Rule 403. *Kwong*, 69 F.3d at 668. Moreover, Keurig's implicit argument, that changing Dr. Ugone's characterization of his adjustments from "claimed overcharge damages" to "robustness checks" eliminates the problem is misguided. Such a change would only make the problem worse and even more misleading to the jury if adjustments to damages were presented surreptitiously. It would also be unfairly prejudicial to BJ's as Dr. Ugone's express intent with the adjustments is for Dr. Ugone to circumvent *Daubert* and have it both ways – i.e. for the jury to use the unreliable results of his adjustments as alternative damages in the event that they reject Dr. Ugone's opinion that Dr. Johnson's model is wholly unreliable in the first instance.

## CONCLUSION

For the foregoing reasons, BJ's motion should be granted and Keurig's expert Dr. Ugone should be prevented from presenting the estimates provided in Table 21 of his expert report titled "Impact on BJ's Claimed Overcharge Damages From Individual and Combined Adjustments to Dr. Johnson's Flawed Framework."

Dated: September 11, 2023.

COUNSEL FOR PLAINTIFF
BJ'S WHOLESALE CLUB, INC.:

**CADWALADER, WICKERSHAM
& TAFT LLP**

By: */s/* Philip J. Iovieno
**Philip J. Iovieno**
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
philip.iovieno@cwt.com

**Gregory W. Langsdale
Kristen J. McAhren**
700 Sixth Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
greg.langsdale@cwt.com
kristen.mcahren@cwt.com