

NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

ALDO A. BADINI
Partner
(212) 294-4601
ABadini@winston.com

May 9, 2025

**VIA ECF**

Hon. Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 518
New York, NY 10007

Re:   *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542: Notice of Supplemental Authority

Dear Judge Broderick:

Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "Treehouse"), JBR, Inc. (d/b/a Rogers Family Company ("JBR"), McLane Company, Inc. ("McLane"), and Direct Purchaser Plaintiffs ("DPPs") (collectively, "Plaintiffs") submit *United States v. Google LLC,* No. 20-cv-108-LMB/JFA (E.D.Va. Apr. 17, 2025) (hereinafter "*Google*") (attached as Exhibit A) as supplemental authority relevant to Plaintiffs' Motion for Summary Judgment (ECF No. 2186) and Keurig's Motion for Summary Judgment (ECF No. 2275). Given the length of the decision, Plaintiffs highlight key points here and include detailed citations in the Appendix.

**Tying**

The court held that Google illegally tied together two separate products – DFP, a publisher ad server and AdX, an ad exchange, in violation of Section 1 of the Sherman Act. Ex. A at 90-98.[1] Various parts of the *Google* decision are relevant to the parties' summary judgment motions relating to Plaintiffs' tying claim that Keurig unlawfully conditioned purchase of the Keurig AFH Brewers upon the purchase of the Keurig K-Cups.

First, Google argued that there could be no illegal tie because the products were available separately, and thus "publishers who used ADX were free to use a publisher ad server other than DFP, and those that used DFP did not necessarily have to use AdX." *Id*. at 95. Keurig makes a similar argument here, arguing that KADs could purchase brewers and cups separately. *See* ECF No. 2284 (KGM Opp. to Pls. MSJ) at 42-43. The *Google* court rejected this "defense," finding liability where purchasing the tied products was "the only viable economic option" and where

---

[1] Note that Plaintiffs allege that the illegal tie at issue in this case violates not only Sherman Act Section 1 but also Section 3 of the Clayton Act which requires a lesser showing. *See* ECF No. 2186 (Pls. MSJ) at 44-46. It follows *a fortiori* from the *Google* decision that Plaintiffs are entitled to summary judgment on tying under that act as well.



200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

publishers "felt locked in" by what was akin to a "threat[] to stop selling needed products to its customers if they bought from a new market entrant offering a superior product for less money." Ex. A at 93-94. Similarly, here, Keurig's tie threatened to cut off the supply of brewers if KADs purchased less expensive compatible cups from its new competitors. *See* ECF No. 2222 (Pls. MSJ Reply) at 21. And there is overwhelming and undisputed evidence that agreeing to the Keurig tying arrangement was "the only viable option for distributors to sell Keurig Brewers and K-Cups." *Id*. 22 (citing PSUF 305-309, 935, 1411-12, 1946-47).

Second, the coercive nature of the tie at issue in *Google* was also illustrated by the fact that the publishers believed that but for the tie they "would have preferred to use a different publisher ad server," perhaps for less money. Ex. A at 94. Similarly, here, KAD distributors complained vociferously about the tie (ECF No. 2186 (Pls. MSJ) at 53), indicated they wanted to buy lower priced competitive cups (PSUF ¶¶70, 96) and Keurig rejected several alternatives (proposed by its own executives) to the "loyalty clause" that created the tie. *See* ECF No. 2222 (Pls. MSJ Reply) at 23 and n.66.

Third, the *Google* court noted that Google's own executives acknowledged the power of the tie. Ex. A at 93-94 (*e.g.* Google sell-side manager told his leadership that "AdX can serve as a tool to pull publishers onto DFP."). The same is true of Keurig's executives with respect to the tie at issue here. *See, e.g.* ECF No. 2222 (Pls. MSJ Reply) at 25 (Keurig's former National Director of Away From Home Field Sales admitted that, as of April 2016, "90 percent of offices that have a [single serve brewer] in their offices, 90 percent of them ***are tied to*** Keurig and licensed pods.") (citing PSUF 469) (emphasis added).

**Monopoly Power**

The *Google* court also held that Google possesses monopoly power in the publisher ad server for open-web display advertising market (Ex. A at 73-76), as well as the ad exchange for open-web display advertising market (*id*. at 76-84). In determining Google's monopoly power, the court noted that "Google's unparalleled scale in programmatic advertising has given it significant advantages over rival firms." Ex. A at 40; *see also id*. at 77 ("That market power has been fortified by high barriers to entry that resulted from Google's scale and network effects across the open-web display ecosystem."). Similarly, here, Plaintiffs noted that the web of agreements Keurig entered into at all levels of the distribution chain prevented competitors from developing the scale they needed to compete (ECF No. 2202 (Pls. Opp. to KGM MSJ) at 4, 24) and that the scale issue was one of many factors creating barriers to entry enabling Keurig to maintain its monopoly power. *Id*. at 15 n.55; 27; 50 n.208.

The *Google* court also gave weight to the views of industry participants relating to Google's market power, noting that DFP was perceived to be the "dominant" publisher ad server, "with some even referring to Google as having a monopoly in the publisher ad server market." Ex. A at 73. Similarly, here, Keurig's partners concluded that Keurig "has a monopoly on k-cup distribution," a "monopoly on single serve coffee brewing," and a "monopoly on Kcup production." ECF No. 2202 (Pls. Opp. to KGM MSJ) at 3 and n. 3 (citing PSUF 1064-1065, 1073-1074, 1077, 1085)



200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

(quoting Costco, Bigelow, Unilever, and Peet's).  Moreover, the court in *Google* held that the existence of competitors in the market did not diminish Google's monopoly because those competitors did not have the ability to constrain Google's pricing.  Ex. A at 78.  Here, Keurig's would-be competitors similarly cannot constrain Keurig's pricing. ECF No. 2202 (Pls. Opp. to KGM MSJ) at 3 and n. 10 (citing PSUF 1084 (Keurig "has a monopoly going on and, therefore, they can control pricing"), 1082 (Keurig is "monopolizing the K-cup industry" and "making it hard to purchase K-Cups at competitive prices"), 963 (There was "never … any negotiating on any price increase from Keurig.")).

As further evidence of Google's monopoly power, the *Google* court relied on the fact that Google was able profitably to increase price or degrade quality (including the quality of its DFP) without the risk of significant substitution.  Ex. A at 46.  The same was true of Keurig which increased prices beginning in 2010 when TreeHouse first entered the market (ECF No. 2202 (Pls. Opp. to KGM MSJ) at 31-23), and Keurig also decreased output, variety, consumer choice and quality (*id*. at 32-35), while still maintaining its monopoly shares (*id*. at 12-13 n.46 (citing, e.g., PSUF 909 (CEO: "we have 86% of the system), 910 (30(b)(6) confirming Keurig having "85% of SC brewer sales and 90%+ of installed base, which referred to "single-cup brewer sales")).

**Product Redesign**

Finally, Keurig argues that its product redesign of the 2.0 Brewer with the admitted intent to "close[] the system" and lock out competitive cups (ECF No. 2186 (Pls. MSJ) at 61-62, 76) was not anticompetitive because there allegedly was no "coercion" of consumers (ECF No. 2284 (KGM Opp. to Pls. MSJ at 46)).  This argument was belied by the extensive evidence of the conduct associated with the redesign, including the false statements to retailers and consumers about the capabilities of the 2.0 and what Keurig brewers would remain in the market after the 2.0 launch. ECF No. 2222 (Pls. MSJ Reply) at 31-33.  Notably, the *Google* court, in rejecting a similar claim from Google, quoted an opinion of this Court with approval.  Ex. A at 112, quoting *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 230 (S.D.N.Y. 2019) ("holding that product design combined with 'associated conduct,' including 'tying agreements' and 'product disparagement,' can be exclusionary because its 'overall effect' is 'to coerce consumers to purchase [the defendant's product] over [competitors' products], rather than to compete on the merits"); *see also* ECF No. 2186 (Pls. MSJ) at 80-86.

Respectfully submitted,

By:   /s/ *Aldo A. Badini*
Aldo A. Badini
abadini@winston.com
200 Park Avenue
New York, NY 10166



NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

(212) 294-6700
(212) 294-4700 (fax)

*Counsel for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc.*