UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
IN RE:                                                  :
                                                        :
KEURIG GREEN MOUNTAIN SINGLE-    :          14-MD-2542 (VSB)
SERVE COFFEE ANTITRUST                 :          14-MC-2542 (VSB)
LITIGATION                                         :
                                                        :          **OPINION & ORDER**
*This Document Relates to All Actions*      :
---------------------------------------------------------X

Appearances:

Daniel Johnson, Jr.
Mario Moore
Dan Johnson Law Group, LLP
San Francisco, CA

*Counsel for Plaintiff JBR, Inc.*

Leah Brannon
Carl Lawrence Malm
Alan B. Freedman
Rahul Mukhi
Cleary Gottlieb Steen & Hamilton LLP
Washington, DC & New York, NY

Wendelynne J. Newton
Mackenzie A. Baird
Buchanan Ingersoll & Rooney PC
Pittsburgh, PA

*Counsel for Defendant Keurig Green Mountain, Inc.*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff JBR, Inc. ("JBR") moves for reconsideration of the portion of my January 3, 2025 Opinion & Order excluding the damages testimony of its damages expert Dr. Gareth Macartney. In the alternative, JBR moves for leave to amend Dr. Macartney's damages report.

       Because I find that JBR has not identified matters or controlling decisions that I

overlooked and which would alter my original decision, the motion for reconsideration is DENIED.  However, since I find that there is good cause to grant JBR relief from the scheduling order, JBR's motion for leave to amend Dr. Macartney's damages report is GRANTED to the extent that such amended report is consistent with my Opinion & Order dated January 3, 2025.

## I.     Background and Procedural History

On January 3, 2025, I filed under seal an Opinion & Order ruling on the parties' nineteen Rule 702 motions, (Doc. 2366 ("O&O")), and I emailed a copy of the O&O to counsel for all parties that same day.  Later that day, I issued an order stating that I delayed filing the O&O on the public docket because the O&O referred to materials that were filed under seal.  (Doc. 2367.)  I instructed the parties to meet and confer regarding a timeline for the submission of any proposed redactions.  (*Id.*)  On January 27, 2025, the parties submitted a letter indicating that they agreed that the O&O could be filed publicly without redaction.  (Doc. 2370.)  On January 30, 2025, I instructed the Clerk of Court to unseal the O&O, (Doc. 2372), and the unredacted O&O, dated January 3, 2025, was filed on the public docket later that day, (Doc. 2375).

On January 15, 2025, JBR filed a motion for reconsideration of my O&O as it relates to Dr. Macartney's damages opinion, (Doc. 2368), and a memorandum of law in support, (Doc. 2369 ("JBR Mem.")).  On January 29, 2015, Defendant Keurig Green Mountain, Inc. ("Keurig") filed a memorandum of law in opposition to JBR's motion.  (Doc. 2371 ("Opp'n").)  JBR filed a reply on February 5, 2025.  (Doc. 2377 ("Reply").)

## II.    Legal Standard

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court."  *Regan v. Conway*, 768 F. Supp. 2d 401, 408 (E.D.N.Y. 2011) (citing *Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 132 (2d Cir. 1999)).  The standard for

reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); *see also* Loc. Civil Rule 6.3 (establishing that a motion for reconsideration must include a "memorandum setting forth concisely the matters or controlling decisions which the moving party believes the court has overlooked"). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (collecting cases). Generally, a party seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (internal quotation marks omitted).

### III. Motion for Reconsideration

The O&O found that Dr. Macartney's damages opinion contained too many methodological issues to be deemed reliable, requiring exclusion under Rule 702. (O&O at 31.) The two overarching concerns necessitating this conclusion were (i) Dr. Macartney's use of Keurig as the benchmark in his yardstick analysis, which created a strong risk of the model being tainted by anticompetitive conduct, comingling lawful and unlawful conduct, and yielding improperly favorable damages numbers to JBR; and (ii) Dr. Macartney's use of an extended damages period without adequate support for the length of and the end date for that period. (*Id.*) JBR challenges these concerns and conclusions.

First, JBR argues that Dr. Macartney has a reliable basis for his use of Keurig's licensed

portion pack sales to estimate 3.7% annual sales growth in the market.  (*See* JBR Mem. at 2–7.) JBR asserts that the O&O improperly relies on cases analyzing pricing overcharge analysis involving direct and indirect purchasers, when the benchmark at issue only relates to JBR's hypothetical sales in the single serve cup industry absent anticompetitive conduct, i.e. the lost-profits market share.  (*See id.* at 3.)  JBR's argument ignores the material point that a benchmark—even one simply measuring lost-profits market share—is only useful if it provides a meaningful metric against which to measure the change wrought by the allegedly anticompetitive conduct.  *See Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11-CV-6201, 2015 WL 539489, at *5 (S.D.N.Y. Feb. 10, 2015) ("[I]t is axiomatic that, when designing an experiment to test whether an observed result was caused by [a] given variable, the control or benchmark group must lack that variable.  That is the whole point of a control group.").  The case law cited by JBR does not draw any distinction between a benchmark utilized for a pricing overcharge analysis versus a lost-profits market share analysis.  Instead, the cited cases stand for the generic proposition that a plaintiff can use another business's sales as a benchmark to calculate lost-profits market share when the benchmark business is sufficiently similar to the plaintiff's business.  *See, e.g.*, *Dexon Comput. Inc. v. Cisco Sys., Inc.*, No. 22-CV-53, 2024 WL 2818883, at *7 (E.D. Tex. Jan. 12, 2024) (finding that expert had identified an "appropriate benchmark" by analyzing the plaintiff's success, its ability to sell products of other brands, and market-wide factors that might affect sales, in contrast to cases where the expert "made no effort to demonstrate the reasonable similarity of the plaintiffs' firms and the businesses whose earnings data he relied on as a benchmark" (internal quotation marks omitted)); *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 851 (5th Cir. 2015) (finding no abuse of discretion in district court permitting expert to testify about lost-profits market share when the benchmark was "as

4

nearly identical to [plaintiff] as possible"). Here, I found that JBR did not sufficiently demonstrate, for purposes of admitting Dr. Macartney's expert damages opinion, that Keurig was similarly situated to JBR or that Keurig would provide an accurate—and not unduly favorable—measure of damages. (O&O at 26–30.) Therefore, Keurig could not provide a meaningful benchmark of JBR's but-for profits.

Nor is there any "misconception" in the O&O, as JBR asserts, that Dr. Macartney was using only Keurig-labelled single serve cups,[1] as opposed to single serve cups owned and licensed by Keurig and bearing names such as Newman's Own Organic, Gevalia, Caribou, and more. (JBR Mem. at 4–5.) The O&O clearly acknowledges that Dr. Macartney's benchmark was single serve cups owned or licensed by Keurig, "including ones that do not bear the Keurig label."[2] (O&O at 26.)

JBR's remaining arguments about the propriety of Dr. Macartney's use of Keurig's owned and licensed single serve cups as a benchmark essentially ask me to revisit and reweigh case law and merits arguments that were presented to me in the *Daubert* briefing and considered in the O&O. (*See, e.g.*, JBR Mem. at 4 (arguing that the O&O "gave too little weight" to five cases, none of which is a new case or controlling case law and four of which were previously

---

[1] Although JBR uses the term "portion packs" to refer to single-serve coffee cup products in their briefing, I use the term "single serve cups," which is consistent with the language in the O&O.

[2] JBR further asserts that Keurig is speaking out of both sides of its mouth by arguing in its *Daubert* brief that all Keurig-licensed brands benefitted from Keurig's anticompetitive conduct and therefore cannot be used as a benchmark, while arguing in its summary judgment papers that Keurig-licensed brands provide meaningful competition to each other. (JBR Mem. at 2.) I note that an adversary's purportedly inconsistent positions are not a basis for reconsideration. In any event, JBR also makes arguably inconsistent arguments. JBR argued on the merits that Keurig's anticompetitive conduct impacted the prices of both Keurig-owned and Keurig-licensed brands, (*see, e.g.*, Doc. 1564 ("Keurig set, and continues to set, the price even for non-Keurig brands that it manufactures for sales in certain channels.")), only to assert in the instant motion that it is clear error to find that JBR cannot reliably measure their growth in a but-for world without the challenged conduct by reference to Keurig's annual revenue growth rate with the challenged conduct, (*see* JBR Mem. at 4–7). The fact that Keurig's allegedly anticompetitive conduct tainted the availability of unaffected benchmarks factored into my analysis, (*see* O&O at 27), but it does not warrant my giving JBR a pass for the basic methodological issues identified in the O&O.

cited in JBR's opposition to Keurig's motion to exclude Dr. Macartney's report).) A motion for reconsideration "is not a substitute for appeal, nor is it an opportunity to take a 'second bite at the apple.'" *Ong v. Chipotle Mexican Grill, Inc.*, 329 F.R.D. 43, 54 (S.D.N.Y. 2018) (citations omitted), *aff'd sub nom. Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020). JBR does not identify any intervening change of controlling law, new evidence, or clear error necessitating reconsideration. *See Beacon Assocs.*, 818 F. Supp. 2d at 701.

JBR's second argument fares no better. JBR asserts that forward projections of estimated damages, like Dr. Macartney's, are "entirely permissible so long as there is a basis in the evidence." (JBR Mem. at 7.) The O&O does not dispute this point. To the contrary, the O&O makes the same point, stating that "a model is not speculative simply because its projections run numerous years into the future so long as those projections are adequately supported." (O&O at 25.) Guided by this principle, the O&O found that there was not a sufficient basis in the evidence to support Dr. Macartney's projection of damages through 2029, given the arbitrariness of the end date and the concentration of relevant conduct prior to 2017. (*Id.* at 30.)

JBR argues that "the number of years in [Dr.] Macartney's future projection was not grounds for total exclusion of his damages opinion in its entirety." (JBR Mem. at 9.) This misconstrues the analysis in the O&O, which states that lack of support for Dr. Macartney's forward projections was one factor among others that, when considered in a totality-of-circumstances analysis, necessitated exclusion of Dr. Macartney's damages opinion. (*See* O&O at 31 ("This [flawed benchmark] issue is compounded by the use of a long damages period without adequate support for the end date of that period.").) Because the future projection issue was not the only concern supporting the exclusion of Dr. Macartney's damages opinion, JBR's suggestion that I permit Dr. Macartney to recalculate his damages numbers using real-world data

6

through 2024 is unavailing because it would not address the model's reliance on a flawed benchmark.

As with JBR's benchmark argument, JBR's future-projection argument recycles points I considered and rejected in the O&O. Indeed, all eleven cases cited in Section III.B of the motion for reconsideration were first presented to me in JBR's opposition to Keurig's motion to exclude Dr. Macartney's report. "Motions for reconsideration are not an opportunity to repackage rejected arguments in hopes of obtaining a more favorable result," *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059, 2021 WL 2843204, at *4 (E.D.N.Y. July 1, 2021), and thus I do not find that JBR's arguments meet the high bar necessary to grant the "extraordinary remedy" of a motion for reconsideration, *see Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks omitted).

## IV. Leave to Supplement

In the alternative, JBR argues that good cause exists for granting leave to amend Dr. Macartney's report. (JBR Mem. at 10–11.) I agree.

Expert discovery in this case has long been concluded, and although I can grant relief from the scheduling order, I can only do so for good cause. Fed. R. Civ. P. 16(b)(4). In addition, Rule 37 provides that failure to timely disclose expert testimony requires exclusion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, there is no question that JBR initially timely disclosed Dr. Macartney's damages opinion. However, the filing of a supplemental report now would be untimely. Although this is not a typical failure-to-disclose issue, the factors that courts consider in connection with Rule 37 are instructive in analyzing whether good cause exists. Courts consider "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness;

7

(3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (reviewing the district court's preclusion of an untimely expert report by analyzing the above-listed factors) (citing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir. 1988)); *see also RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-6449, 2023 WL 2838423, at *5 (E.D.N.Y. Apr. 7, 2023) ("In determining whether to preclude expert testimony, courts within the Second Circuit consider four factors, commonly known as the *Softel* factors").

The first factor, the party's explanation for its failure to comply with a discovery order, has limited salience here where the moving party did not violate a discovery order, but instead seeks leave to supplement after its expert's opinion has been excluded. Therefore, this factor is neutral.

The second factor, the importance of the precluded testimony, weighs heavily in favor of JBR. In *ZF Meritor, LLC v. Eaton Corp.*, the Third Circuit found that the district court had abused its discretion in disallowing an antitrust plaintiff to submit alternate damages calculations after the court excluded plaintiff's timely initial expert report on damages. 696 F.3d 254, 300 (3d Cir. 2012). The Third Circuit relied heavily on the importance of the testimony to the plaintiff, stating that "[e]xpert testimony is necessary to establish damages in an antitrust case," and as such, "without additional damages calculations, it is clear that Plaintiffs will be unable to pursue damages," even if "they won at the liability stage." *Id.* at 299; *cf. E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 117 (5th Cir. 1993) (finding that where "total exclusion of . . . expert testimony was tantamount to a dismissal of the [plaintiff's] claim," district court must

8

consider lesser sanctions).³ As expert testimony is critical to establishing damages in an antitrust case and Dr. Macartney is JBR's only damages expert, this factor weighs heavily in favor of granting leave to amend. *Compare Softel*, 118 F.3d at 962 (finding that the importance of precluded testimony was diminished where party had another expert witness who could testify on technical matters), *with Outley*, 837 F.2d at 590–91 (finding that precluded testimony was of critical importance where precluded witnesses were the only corroborating fact witnesses in a trial hinging on credibility issues).

The third factor, prejudice to the opposing party, could be viewed as significant since Keurig would have to prepare to meet the new testimony. This is a long-running multi-district litigation, expert discovery has been closed for a significant period, and the parties are understandably anxious to resolve the case. This factor cuts against granting JBR leave to revise Dr. Macartney's expert report. The final *Softel* factor, the availability of a continuance, largely tracks the third factor. Although there is no set trial date and a continuance is possible, it is far from ideal.

In sum, I must weigh the importance of a damages opinion to JBR against the prejudice to the other parties from further delay. Although the prejudice associated with delay is not trivial, the prejudice to JBR in stripping them of the opportunity to have a damages opinion is much more severe, as it would effectively render them unable to recover damages even if they won on liability. *See Outley*, 837 F.2d at 591 ("Because the evidence of [the precluded] witnesses was so important, only extreme misconduct on the part of the plaintiff or extreme prejudice suffered by the defendants would justify the extraordinary sanction of preclusion in

---

³ As an aside, damages awards also "foster[] competition and further[] the interests of the public by imposing a severe penalty (treble damages) for violation of the antitrust laws," and thus there is a public-policy interest in enabling damages awards for plaintiffs who successfully prove liability in antitrust cases. *ZF Meritor*, 696 F.3d at 300.

this case."); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. 11-05973, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013) (allowing plaintiff another opportunity to submit an expert report because "the court is loathe to leave [plaintiff] stripped of any damages expert testimony whatsoever"); *see also ZF Meritor*, 696 F.3d at 299 ("[P]erhaps the most important factor in this case is the critical nature of the evidence, and the consequences if permission to amend is denied."). I therefore find that there is good cause to grant JBR leave to amend Dr. Macartney's damages report.

### V.    Conclusion

For the reasons stated herein, JBR's motion for reconsideration is DENIED. JBR's motion for leave to amend Dr. Macartney's damages report is GRANTED. Any amended damages report should consider the issues raised in the O&O with regard to Dr. Macartney's damages report. The parties are directed to meet and confer and submit a joint letter to the Court by July 15, 2025, outlining a proposed schedule for submission of the amended report and any subsequent briefing. The Clerk of Court is directed to terminate the open motion at Document 2368.

SO ORDERED.

Dated:    June 30, 2025
         New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge