# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                        :
IN RE:                               :
KEURIG GREEN MOUNTAIN        :
SINGLE-SERVE COFFEE ANTITRUST   :
LITIGATION                  :        14-MD-2542 (VSB) (SLC)
                        :        14-MC-2542 (VSB) (SLC)
*This order relates to all cases.*    :
                        :        **<u>OPINION & ORDER</u>**
---------------------------------------------------------X

<u>Appearances</u>:

Aldo A. Badini
Susannah Torpey
Diana Hughes Leiden
Winston & Strawn LLP
New York, NY & Los Angeles, CA
*Counsel for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc.*

Alexander G. Brown
James C. Grant
Valarie C. Williams
B. Parker Miller
Steven L. Penaro
Alston & Bird LLP
Atlanta, GA & New York, NY
*Counsel for Plaintiff McLane Company, Inc.*

Michael M. Buchman
Motley Rice LLC
New York, NY

Robert G. Eisler
Grant & Eisenhofer P.A.
New York, NY

William V. Reiss
Robins Kaplan LLP
New York, NY
*Counsel for Direct Purchaser Plaintiffs and Interim Co-Lead Counsel for the Proposed Direct Purchaser Plaintiff Class*

1

Fred T. Isquith
Thomas H. Burt
Patrick Donovan
Wolf Haldenstein Adler Freeman & Herz, LLP
New York, NY

Robert N. Kaplan
Hae Sung Nam
Jason A. Uris
Kaplan Fox & Kilsheimer LLP
New York, NY

Bruce L. Simon
Pearson, Simon & Warshaw, LLP
San Francisco, CA
*Counsel for Indirect Purchaser Plaintiffs and Interim Co-Lead Counsel for the Proposed
Indirect Purchaser Plaintiff Class*

Daniel Johnson, Jr.
Mario Moore
Dan Johnson Law Group, LLP
San Francisco, CA
*Counsel for Plaintiff JBR, Inc.*

Patrick J. Ahern
Ahern and Associates, P.C.
Chicago, IL
*Counsel for Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holding, LLC*

Leah Brannon
Carl Lawrence Malm
Alan B. Freedman
Rahul Mukhi
Lev L. Dassin
George S. Cary
Cleary Gottlieb Steen & Hamilton LLP
Washington, DC & New York, NY

Wendelynne J. Newton
Mackenzie A. Baird
Buchanan Ingersoll & Rooney PC
Pittsburgh, PA
*Counsel for Defendant Keurig Green Mountain, Inc.*

2

VERNON S. BRODERICK, United States District Judge:

Before me are various pending motions objecting to:  (1) Magistrate Judge Henry Pitman's March 7, 2019 order concerning whether certain documents are privileged, (Doc. 544); (2) Magistrate Judge Sarah L. Cave's March 28, 2022 Opinion & Order regarding cross-motions for spoliation sanctions, (Doc. 1806); (3) Judge Cave's February 10, 2023 Opinion & Order regarding certain requests for admission, (Doc. 2004); and (4) Judge Cave's May 8, 2023 Opinion & Order regarding certain attorneys' fees, costs, and sanction requests, (Doc. 2038).  For the reasons that follow, Keurig's objections to Judge Pitman's March 2019 Order are SUSTAINED IN PART AND OVERRULED IN PART, Keurig's objections to Judge Cave's March 2022 Opinion & Order are SUSTAINED IN PART AND OVERRULED IN PART, Winn-Dixie's objection to Judge Cave's February 2023 Opinion & Order is OVERRULED, and Keurig's and Winn-Dixie's objections to Judge Cave's May 2023 Opinion & Order are OVERRULED.[1]

## I.    **Legal Standard**

When a party objects to a magistrate judge's non-dispositive order, the district court must review the objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  An order is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted).  A decision is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of

---

[1] I assume familiarity with the underlying facts and procedural history of this multidistrict litigation, which focuses on antitrust claims brought against Keurig Green Mountain, Inc. ("Keurig"), and is discussed in more detail in my Opinion & Order dated April 3, 2019, (Doc. 581).  Where additional background is necessary, I address it in the context of the specific motion being considered.

procedure." *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001) (internal quotation marks omitted).  A party may serve and file any objections to a magistrate judge's ruling on a non-dispositive matter within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(a).

## II.    Objections to March 2019 Order (Doc. 547)

### A.  *Background*

On March 7, 2019, Magistrate Judge Henry Pitman issued an order ("March 2019 Order") regarding 50 sample documents submitted by Keurig for in camera review stemming from the parties' dispute over Keurig's withholding of certain documents as privileged.  (*See* Doc. 544 ("Mar. 2019 Order") at 1.)  Judge Pitman's conclusions fall into three categories:  (1) privileged, (2) not privileged, and (3) privilege is "questionable" or "[n]ot clear."  (*See id.* at 4–6.)  Judge Pitman noted that Keurig seemed to assert attorney-client privilege for some documents "simply because an attorney was copied on the document."  (*Id.* at 7.)

On March 21, 2019, Keurig filed objections to the March 2019 Order.  (Doc. 547.)  On March 25, 2025, Keurig filed a supporting memorandum of law, which clarified that its objections related only to five specific documents.  (Doc. 550 ("Priv. Obj. Mem.").)  On April 4, 2019, Privilege Plaintiffs[2] filed an opposition brief, (Doc. 563 ("Priv. Obj. Opp'n")), and an accompanying declaration, (Doc. 564).  On April 11, 2019, Keurig filed a reply brief.  (Doc. 568 ("Priv. Obj. Reply").)

On January 27, 2023, I issued an order directing the parties to file a letter stating whether the issues in their objections are moot.  (Doc. 1987.)  On February 3, 2023, the parties filed a

---

[2] "Privilege Plaintiffs" refers to TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. (collectively, "TreeHouse"), the Direct Purchaser Plaintiffs ("DPPs"), the Indirect Purchaser Plaintiffs and JBR, Inc.

joint letter stating that Keurig's objections to three of the five documents were either withdrawn or moot because exact duplicates of the documents were produced.  (Doc. 1997 ("Priv. Ltr.").)

  **B.** *Discussion*

  "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  For the third prong, courts "consider whether the predominant purpose of the communication is to render or solicit legal advice."  *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) (collecting cases).  The predominant-purpose inquiry is to "be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."  *Id.* at 420–21.

  Keurig initially objected to "five specific privilege rulings" in the March 2019 Order.[3] (Priv. Obj. Mem. 2.)  The parties later clarified that Keurig's objections to three of the five documents no longer required a ruling because the objections were either withdrawn or moot because an exact duplicate had been already produced.  (*See* Priv. Ltr.)  I therefore address only the two remaining objections.

  The first document (KGM00322136–60) is a draft agreement that contains edits and comments from Keurig's in-house counsel Sean Murphy.  Although the March 2019 Order does not list which ruling corresponds with which document, Keurig states that the March 2019 Order held that this document was not privileged because there was "no legal advice sought or

---

[3] Keurig does not challenge Judge Pitman's rulings in the third category regarding documents where privilege is "questionable" or "not clear" because those documents are "not ripe for review" in their objections.  (Priv. Obj. Mem. 2.)

requested.  (Priv. Obj. Mem. 6 & n.3 (quoting Mar. 2019 Order at 5–6).)  Keurig objects and contends that Murphy's edits involve legal analysis as he notes or revises contractual language regarding the scope of the contract, the legal effect of an attachment, and termination rights.  (*Id.* at 7–8.)  Privilege Plaintiffs argue that Judge Pitman already considered and rejected Keurig's arguments, and that Keurig could not establish any clear error.  (Priv. Obj. Opp'n 7.)  The parties also dispute whether this privilege was waived when a "later version" of this document was sent to a third party.  (Priv. Ltr. at 2.)

I agree with Keurig.  The disputed document includes edits and comments from Murphy, including the scope of the contract's coverage of certain affiliates, the parties' expectations for a specific contractual obligation, and whether a provision regarding pricing contemplated potential price changes.  Because the edits do not concern merely commercial figures and extend to the contracting parties' rights and obligations, Murphy clearly made these comments in his role as an attorney.  It was clear error to hold that a document that clearly reflects an attorney's edits and comments about the legal effect of several provisions in a contract was not privileged.  The document at issue clearly shows an attorney's predominant purpose to render legal advice.  Further, I reject Privilege Plaintiffs' argument that Keurig waived privilege of this document because "a version of the document at issue" was already produced to Privilege Plaintiffs.  (Priv. Ltr. at 1.)  The parties have not provided a copy of the produced document, but it is of little consequence to my determination here.  On the one hand, if the produced document and the document at issue here are identical, then Privilege Plaintiffs already have a copy of the document, so it makes little difference to Privilege Plaintiffs.  On the other hand, if the two documents are not identical, then Keurig's production of a different document does not waive the

privilege for this document and Privilege Plaintiffs' argument fails.  Accordingly, I sustain Keurig's objections regarding this document and hold that KGM00322136–60 is privileged.

The second "document" (KGMPRIV-00000204–69) is actually several documents consisting of a cover email and four attachments.  According to Keurig, Judge Pitman held that the document was "[n]ot privileged," and explained:  "It appears that Sean Murphy (an attorney) had some comments on the draft agreement, but the document does not reveal the content of his comments.  Because the document does not reveal the content of counsel's communications, it is not privileged."  (Priv. Obj. Mem. 8 (quoting Mar. 2019 Order at 5).)  Keurig originally claimed that because each attachment contains attorney-client communication, the cover email is also privileged.  (*Id.* at 8–9.)  However, Keurig has since produced exact duplicates of the cover email and one of the attachments, and states that I "therefore no longer need[] to rule on the Objections to these two documents."  (Priv. Ltr. at 2.)  Therefore, Keurig's objections as to the cover email and one of the attachments (KGM-PRIV00000204–25) are moot.

Keurig's objections thus relate only to the three remaining attachments (KGM-PRIV00000226–69).  (Priv. Ltr. at 2.)  As an initial matter, I disagree with the parties' interpretation of Judge Pitman's ruling.  The March 2019 Order seems to hold only that the cover email was not privileged; it did not opine on whether the four attachments are privileged.  In any event, upon review, I find that that the three remaining documents are privileged because they all include Murphy's comments on a draft agreement or draft amendments to that agreement.  The remaining documents clearly indicate Murphy's edits and comments, which do not comport with the March 2019 Order's description that "the document does not reveal the content of [Murphy's] comments."  I therefore construe the March 7 Order to only have ruled on whether

the cover email was privileged. I hold that the remaining three attachments (KGM-PRIV00000226–69) are privileged because they reflect Murphy's edits and comments.

For these reasons, I SUSTAIN IN PART AND OVERRULE IN PART Keurig's objection to the March 2019 Order. Documents KGM00322136–60 and KGM-PRIV00000226–69 are privileged; the other documents involve objections that were withdrawn or are moot so I need not consider them.

### III.   Objections to March 2022 Opinion (Doc. 1816)

#### A.  *Background*

On March 28, 2022, Judge Sarah L. Cave issued an Opinion & Order ("March 2022 Opinion") regarding the parties' cross motions for sanctions related to alleged spoliation of relevant evidence. (Doc. 1806 ("Mar. 2022 Op.").) The March 2022 Opinion first granted in part and denied in part Rule 37 Plaintiffs'[4] motion for sanctions under Rules 37(b) and 37(e) of the Federal Rules of Civil Procedure. (*Id.* at 29–91.) The March 2022 Opinion then denied Keurig's motion as to Treehouse under Rule 37(e) because Treehouse's preservation efforts were reasonable and because Keurig failed to establish prejudice, (*id.* at 91–110), and denied Keurig's motion as to JBR, Inc. under Rule 37(e) for failure to establish prejudice, (*id.* at 110–18).

On April 11, 2022, Keurig filed objections to the March 2022 Opinion, (Doc. 1816), and an accompanying memorandum, (Doc. 1817 ("Spoliation Obj. Mem.")). On April 25, 2022, Rule 37 Plaintiffs filed an opposition brief, (Doc. 1825 ("Spoliation Obj. Opp'n")), and an accompanying declaration, (Doc. 1827). On May 2, 2022, Keurig filed a reply brief, (Doc. 1832 ("Spoliation Obj. Reply")), and an accompanying declaration, (Doc. 1833).

---

[4] "Rule 37 Plaintiffs" refers collectively to TreeHouse, McLane Company, Inc. ("McLane"), and DPPs.

8

### B. *Discussion*

#### 1. **Applicable Law**

Federal Rule of Civil Procedure 37 governs discovery sanctions. "Discovery sanctions under Federal Rule 37 are deterrents (specific and general) meant to punish a recalcitrant or evasive party." *In re Gravel*, 6 F.4th 503, 515 (2d Cir. 2021) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). "Federal Rule 37 protects more than the interest of a party in remedying or avoiding certain costs; it protects the interests of the parties, the court, and the public in a speedy and just resolution of the case." *Id.* As relevant here, Rule 37(b) provides for a party's failure to comply with discovery-related court orders, and Rule 37(e) provides for a party's failure to preserve electronically stored information ("ESI").

Rule 37(b) governs when a party fails to comply with a court order. Specifically, Rule 37(b)(2)(C) states that the court "must" award "reasonable expenses, including attorney's fees caused by the failure" to comply with court orders "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The Supreme Court has recognized that courts are required to find a "causal connection" between the party's violation and the court's sanction "before shifting fees." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 n.5 (2017).

Rule 37(e) gives courts discretion to issue sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Rule 37(e) contemplates two scenarios, only one of which is relevant here because the March 2022 Opinion did not impose sanctions under the second scenario, Rule 37(e)(2), after failing to find clear and convincing evidence of

9

Keurig's intent to deprive Plaintiffs of the disputed discovery's use.  (Mar. 2022 Op. 85.)
"[U]pon finding prejudice to another party from loss of the information," a court "may order
measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  "Rule 37(e)
'does not place a burden of proving or disproving prejudice on one party or the other.'"  *Kosher
Ski Tours Inc. v. Okemo Ltd. Liab. Co.*, No. 20-CV-9815, 2024 WL 3905742, at *2 (S.D.N.Y.
Aug. 22, 2024) (quoting Fed. R. Civ. P. 37(e)(1) adv. comm. note to 2015 amendment).  The
prejudice inquiry "necessarily includes an evaluation of the information's importance in the
litigation."  *Id.* (quoting Fed. R. Civ. P. 37(e)(1) adv. comm. note to 2015 amendment) (internal
quotation marks omitted).  Even still, "[t]he prejudiced party must not be held to too strict a
standard of proof regarding the likely contents of the destroyed or unavailable evidence, because
doing so would allow parties who have destroyed evidence to profit from that destruction."
*Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (internal
quotation marks omitted).  Notably, district courts are afforded "broad discretion" under Rule
37(e).  *Ungar v. City of New York*, No. 21-1384-CV, 2022 WL 10219749, at *3 (2d Cir. Oct. 18,
2022) (summary order).

## 2.  Analysis

Keurig objects to three aspects of Judge Cave's March 2022 Opinion.  (*See* Spoliation
Obj. Mem. 1–2.)  First, Keurig claims that the March 2022 Opinion erroneously authorized Rule
37 Plaintiffs to present certain evidence to the jury regarding spoliation under Rule 37(e)(1).  (*Id.*
at 5–13.)  Second, Keurig claims that the March 2022 Opinion erroneously awarded attorneys'
fees and expert costs due to Keurig's incomplete production of transactional and archived email
data under Rule 37(b).  (*Id.* at 13–16.)  Third, Keurig claims that the March 2022 Opinion
erroneously imposed sanctions based on Keurig's numerous failures to issue litigation holds to

six former employees, interview 11 custodians in a timely fashion, and preserve certain hard drives under either Rule 37(b) or Rule 37(e).  (*Id.* at 16–23.)  I address each in turn.

a.  <u>Presentation of Spoliation Evidence to the Jury</u>

The March 2022 Opinion authorized Rule 37 Plaintiffs to present evidence of spoliation to any jury in a future trial under Rule 37(e)(1) as a sanction for three reasons.  (Mar. 2022 Op. 88–90.)  First, the sanction helps reduce the "evidentiary imbalance" between the parties for Keurig's spoliation of relevant ESI and Barberio's hard copy notes.  (*Id.* at 89.)  Second, this sanction provides the jury with context of this imbalance, context that goes to the parties' credibility and other issues within the jury's fact-finding purview.  (*Id.*)  Third, this sanction does not encroach on a trial judge's authority during trial regarding this spoliation evidence and any related jury instructions.  (*Id.*)

Keurig objects to the March 2022 Opinion's purported failure to sufficiently address prejudice as it relates to spoliation related to custodians Don Barberio, Joe Mueller, and Steve Ferreira.  (Spoliation Obj. Mem. 7.)  I address each custodian below.

i.  *Don Barberio*

Judge Cave concluded that Rule 37 Plaintiffs were prejudiced by Keurig's failure to preserve and produce Don Barberio's laptop, given Barberio's role in meeting with important customers regarding the 2.0 Brewer.  (Mar. 2022 Op. 45.)  Barberio, former Vice President of At-Home Sales, met with customers who moved from Treehouse to Keurig after it released the 2.0 Brewer, and called or emailed Tom Ferguson, Senior Vice President of Sales for Grocery/Drug/Club, with updates with "meeting highlights."  (*Id.* at 31, 40, 44–45.)  Judge Cave made at least two factual findings before determining that there was prejudice.  First, Keurig lost Barberio's laptop, even though Barberio received a litigation hold notice on February 17, 2014

and turned in his laptop, in the presence of Ferguson and a Human Resources employee, when Barberio left Keurig in June 2014.  (*Id.* at 44.)  Second, Judge Cave inferred that, because Barberio did not know what a share drive was, "any documents he saved were saved to his hard drive only."  (*Id.* at 45.)   These two factual findings, as well as the fact that Barberio met key customers to discuss the 2.0 Brewer and communicated notable "highlights" to Ferguson, led Judge Cave to conclude that Rule 37 Plaintiffs were prejudiced by Keurig's failure to locate and produce the contents of Barberio's hard drive.  Even after acknowledging that Keurig produced more than 21,000 emails for Barberio, almost 81,000 emails for Ferguson, and over 25,000 documents from Barberio's supervisor Jim Travis, Judge Cave found that "Keurig produced essentially <u>no</u> non-email documents for Barberio."  (*Id.* at 45 (emphasis in original).)[5]

Keurig argues that Judge Cave's finding of prejudice as to Barberio is erroneous for two independent reasons.  First, Keurig argues that Judge Cave's failure to provide the requisite analysis of alternative sources of information for those documents, either from those key customers or other meeting attendees, is contrary to law.  (Spoliation Obj. Mem. 9–10.)  Keurig insists that Rule 37 Plaintiffs could have but failed to depose or collect documents from those customers, meeting attendees, or other custodians.  (*Id.*)  Second, Keurig argues that the March 2022 Opinion failed to find an "evidentiary imbalance" as to any legal claim, as required to permit evidence to go to the jury about spoliation.  (Spoliation Obj. Mem. 10.)  Keurig essentially argues that Barberio's notes are not helpful to Rule 37 Plaintiffs, either because they pertain to undisputed facts or are contrary to Rule 37 Plaintiffs' claims that the announcement of

---

[5] Although the March 2022 Opinion noted that Keurig failed to preserve and produce a yellow binder of Barberio's handwritten notes from customer meetings with "Giant Eagle, Wakefern, Kroger, Ahold, and others," (Spoliation Obj. Mem. 38, 40–41), it did not analyze whether Rule 37 Plaintiffs were prejudiced as a result.

the 2.0 Brewer resulted in lost customers, or that there are alternative sources of information about Barberio's customer meetings.  (*Id.* at 10–11.)  Both arguments fail.

Keurig's first argument fails because the March 2022 Opinion sufficiently addressed the issue of alternative sources of discovery.  A party's ability to obtain discovery materials from third parties "merely turns the question of prejudice from one of *kind* to one of *degree*."  *Coan v. Dunne*, 602 B.R. 429, 440 (D. Conn. 2019) (emphasis in original).  Judge Cave noted that among the over a hundred thousand emails for Barberio and Ferguson and documents for Travis that Keurig produced, essentially none were non-email documents for Barberio.  (Mar. 2022 Op. 45.) In doing so, Judge Cave implicitly stated that these other sources were insufficient to preclude a finding of prejudice.  Indeed, Judge Cave inferred that any and all non-email documents Barberio were saved only to his hard drive.  (*Id.*)  Moreover, even if other meeting attendees were deposed or had their documents collected, Rule 37 Plaintiffs would still be prejudiced by the absence of Barberio's meeting notes, especially in his personal analysis of what constituted meeting "highlights."  Only Barberio had copies of his notes, which he kept as hard copies or in his hard drive; Rule 37 Plaintiffs were prejudiced in Keurig's inability to preserve and produce them. Keurig cannot show that there was an alternative source "to obtain the same evidence" that demonstrate the lack of prejudice.  *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 25 (S.D.N.Y. 2010).

Keurig's second argument likewise is doomed because Keurig fails to cite any binding authority requiring that a court find an evidentiary imbalance for a specific legal claim before permitting the presentation of spoliation evidence to a jury.  (*See* Spoliation Obj. Mem. 10 ("[P]resenting evidence to the jury about spoliation is a serious sanction available only to remedy an 'evidentiary imbalance' created by the loss.").)  This argument—which is essentially a type of argument that Rule 37 Plaintiffs are not prejudiced from the spoliation of Barberio's hard copy

documents—is not persuasive. As an initial matter, Keurig fails to demonstrate that a court is required to make a finding of an evidentiary imbalance at all before permitting a party to present evidence of spoliation to a jury, let alone that the evidentiary imbalance must be tied to a particular legal claim. True, some courts have noted that a spoliation-evidence instruction, after presentation of such evidence to the jury, would help rectify an evidentiary imbalance. *See, e.g.*, *Linde v. Arab Bank, PLC*, 706 F.3d 92, 102 (2d Cir. 2013) ("The permissive inference instruction will, according to the District Court, help to rectify this evidentiary imbalance."); *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2025 WL 1344347, at *22 (S.D.N.Y. Jan. 17, 2025) (holding that spoliation evidence "will help 'rectify the evidentiary imbalance'" (quoting *Linde*, 706 F.3d at 102)). However, a court's description of an effect of a jury instruction does not turn it into a required finding prior to permitting that instruction. Keurig does not cite to any authority requiring courts to make a finding of evidentiary imbalance pegged to a specific legal claim prior to permitting presentation of spoliation evidence. Nor have I found any. This means that the March 2022 Opinion's purported failure to tie the evidentiary imbalance to a specific legal claim does not categorically render it clearly erroneous or contrary to law to have permitted Rule 37 Plaintiffs to present evidence of Keurig's failure to preserve Barberio's documents to the jury. In short, I do not have a "definite and firm conviction that a mistake has been committed" upon review of the "entire evidence" or that the March 2022 Opinion misapplied relevant law in its sanctions related to Barberio.

In contrast, an adverse-inference instruction may require a finding that there was an evidentiary imbalance. *See Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 291 (S.D.N.Y. 2009) ("[W]ithout some proof that the defendant's actions created an unfair evidentiary imbalance, an adverse inference is not appropriate."). Here, Judge Cave explicitly

declined to authorize sanctions of adverse inferences.  (Mar. 2022 Op. 90–91.)  No party objects to this part of the March 2022 Opinion.

In any event, Judge Cave noted that Keurig failed to preserve and produce a yellow binder of Barberio's handwritten notes from customer meetings with "Giant Eagle, Wakefern, Kroger, Ahold, and others."  (Mar. 2022 Op. 38.)  As an example, Judge Cave highlighted Barberio's meeting with Publix's president on January 29, 2014.  (*Id.*)  Keurig makes several arguments, including that Plaintiffs could have but failed to ask any attendees of that meeting for more information, and that any notes would have been "unhelpful to Plaintiffs' claims" because Publix decided to "stay[] with its unlicensed pack supplier through the launch of the 2.0 Brewer."  (Spoliation Obj. Mem. 11.)  With regard to the former argument, I have already addressed the issue of alternative sources of information.  *See supra* § III.B.2.a.i.  With regard to the latter argument, Keurig's argument is mere speculation.  The hard copy notes could have been helpful to Plaintiffs' claims, even if Publix as an entity eventually decided to stay with its current vendor.  Keurig fails to demonstrate evidence that leaves me with a "definite and firm conviction that a mistake has been committed."  *Gualandi*, 385 F.3d at 240 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395) (internal quotation marks omitted).

Accordingly, Keurig's objections as to Barberio are OVERRULED.

### ii.  *Joe Mueller and Steve Ferreira*

Keurig, citing *Alter v. Rocky Point School District*, No. 13-1100, 2014 WL 4966119, at *12 (E.D.N.Y. Sept. 30, 2014), claims that "[u]nder Rule 37(e), a finding that the loss of relevant evidence caused prejudice *cannot* be grounded solely on the basis that some evidence in the custody of *key witnesses* no longer exists."  (Spoliation Obj. Mem. 8 (emphases in original and

internal quotation marks omitted).)  Notably, Judge Cave cited and quoted the exact same

language.  (*See* Mar. 2022 Op. 18.)  I find some, but not all, of Keurig's arguments persuasive.

With regard to Joe Mueller, the March 2022 Opinion found that Rule 37 Plaintiffs were

prejudiced by Keurig's failure to locate Mueller's hard drive or produce any documents from

Mueller's network drive.  (Mar. 2022 Op. 59.)  Mueller, Keurig's Senior Vice President of Sales,

received a litigation hold notice on February 17, 2014.  (*Id.*)  Ron DiFabio, Mueller's supervisor

at Keurig, "testified that he and his direct reports," including Mueller, "saved everything to

network drives."  (*Id.*)  Despite this testimony, Keurig claimed that Mueller's network drive

"contained no documents."  (*Id.*)  Keurig's only production for Mueller were emails.  (*Id.*)  Judge

Cave concluded that there was a "gap in Keurig's production" that prejudiced Rule 37 Plaintiffs.

(*Id.*)

Keurig opposes Rule 37 Plaintiffs' argument that Mueller, who worked with Keurig's

customer Walmart, could have had documents relevant to the Keurig-Walmart relationship.

(Spoliation Obj. Reply 4.)  Keurig essentially argues that there is no prejudice because both

Mueller and Walmart were deposed and because Rule 37 Plaintiffs already received—and indeed

could have requested additional—productions regarding Walmart.  (*Id.*)  This argument is not

persuasive.  The existence and production of some Walmart-related documents do not necessarily

mean that all of Mueller's Walmart-related documents were duplicative.  Mueller's missing hard

drive could have contained documents unique to Mueller.  Rule 37 Plaintiffs "cannot prove the

specific contents of" the lost documents due to Keurig's failure to preserve and produce them,

and I "will not allow [Keurig] to benefit from its failure to do."  *Kosher Ski Tours Inc.*, 2024 WL

3905742, at *4.  Further, the fact that both Mueller and Walmart were deposed does not

necessarily eliminate all prejudice.  Their depositions could have gone differently if Mueller's

16

missing hard drive were located and produced, including by permitting the Rule 37 Plaintiffs to question Mueller and Walmart concerning unique documents from Mueller's hard drive. A witness's deposition testimony is subject to the limitations of that witness's memory, and unique documents from Mueller's hard drive could have refreshed his recollection or filled in the gaps in his memory. *See, e.g.*, *Shaholli v. 50 Front St. Enters., Inc.*, No. 17-CV-6076, 2018 WL 11630890, at *3–4 (E.D.N.Y. Dec. 18, 2018) (discussing discovery sanctions based on non-produced documents that could have "refresh[ed] [Plaintiffs'] respective recollections prior to being deposed"). In short, Keurig's arguments may somewhat mitigate the degree of Rule 37 Plaintiffs' prejudice, but they do not establish that the March 2022 Opinion was clearly erroneous or contrary to law as to Mueller in finding such prejudice.

With regard to Steve Ferreira, the March 2022 Opinion found that Rule 37 Plaintiffs were prejudiced by Keurig's failure to preserve and produce an encryption key for Ferreira's hard drive. (Mar. 2022 Op. 52–53.) Ferreira, Keurig's Vice President of Finance, Business Analytics, Demand Planning and Strategy, received a litigation hold notice on February 16, 2015, and indeed was "under a pre-existing litigation hold relating to other matters." (*Id.* at 52.) TreeHouse flagged to Keurig potential production deficiencies related to Ferreira in July 2018. (*Id.*) However, it was not until May 2019 when Keurig first disclosed to Rule 37 Plaintiffs that Keurig was unable to decrypt one of Ferreira's hard drives, even though Keurig had made such a determination months earlier in September 2018. (*Id.*) Judge Cave noted that over 141,000 documents for Ferreira were produced, including from three hard drives, 141 documents from his network drive, and three documents from his home computer. (*Id.*) Judge Cave concluded that due to the six-month gap in document production—between the October 2015 date of the latest

document on his hard drive, and the date of his last day at Keurig in April 2016—Rule 37 Plaintiffs were prejudiced.  (*Id.* at 52–53.)

Keurig correctly notes that Rule 37 Plaintiffs fail to identify or even suggest what documents Ferreira's missing hard drive would have contained and how it would support Rule 37 Plaintiffs' claims.  (Spoliation Obj. Reply 4–5.)  Although Rule 37 Plaintiffs need not show any "smoking gun," they must still show that the existing evidence plausibly suggests that the missing hard drive would support their claims.  *See Karsch v. Blink Health Ltd.*, No. 17-CV-3880, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (internal quotation marks omitted).  Because they have failed to do so, it is difficult to evaluate the missing "'information's importance in the litigation.'"  *Castro v. Smith*, No. 16-CV-8147, 2023 WL 5371311, at *10 (S.D.N.Y. Aug. 22, 2023) (quoting Fed. R. Civ. P. 37(e) adv. comm. note to 2015 amendment).  Unlike Mueller, who was tied to an important customer, Walmart, the findings related to Ferreira are more limited and warrant a different outcome here.

Moreover, Rule 37 Plaintiffs misstate the March 2022 Opinion's findings—Judge Cave did not find that the more than 141,000 documents were produced from three hard drives, and instead found that 141,000 documents were produced overall, some of which were from hard drives.  (Mar. 2022 Op. 52.)  Keurig claims that "only 112 [documents] came from [Ferreira's] three hard drives," (Spoliation Obj. Reply 4 n.6), further suggesting Rule 37 Plaintiffs' inability to demonstrate the significance of Ferreira's missing hard drive.[6]

---

[6] Keurig argues that the March 2022 Opinion's factual finding of a six-month gap in document production was based on Rule 37 Plaintiffs' false assertions.  (Spoliation Obj. Mem. 8 n.9.)  Keurig claims that it collected and de-duplicated documents during that six-month time period.  (*Id.*)  Because I sustain Keurig's objections on other grounds, I need not resolve whether Keurig had indeed failed to produce any documents from Ferreira's hard drive for six months.

Accordingly, Keurig's objections as to Mueller are OVERRULED, but Keurig's objections as to Ferreira are SUSTAINED. Rule 37 Plaintiffs will not be permitted to present evidence of spoliation as to Ferreira.

### b. Attorneys' Fees and Costs

Under the Preliminary Case Management Plan and Scheduling Order (the "Scheduling Order"), the parties had to complete "substantial productions of all documents" for Agreed Custodians[7] by April 30, 2018. (*See* Mar. 2022 Op. 5; Doc. 354-1 (Scheduling Order).) On December 12, 2018, Magistrate Judge Pitman so ordered the parties' joint stipulation and proposed order regarding production deadlines (the "Production Deadline Order"), which extended the substantial-production deadline for Agreed Custodians from April 30, 2018 to January 4, 2019. (Doc. 484 ("Prod. Deadline Order") at 1.) That order also set a deadline of February 28, 2019 for Keurig, among others, "to substantially complete production of non-privileged documents . . . in response to requests for production served on August 31, 2016." (*Id.* at 2.)

Keurig claims that the March 2022 Opinion erroneously awarded Rule 37 Plaintiffs attorneys' fees and expert costs due to Keurig's incomplete production of transactional data and archived email data under the email system CommVault for some Agreed Custodians.[8] (Spoliation Obj. Mem. 13–16.) Keurig argues that Judge Cave appears to have imposed these sanctions under Rule 37(b), but failed to identify which court order was violated. (*Id.* at 13.)

---

[7] "Agreed Custodians" refers to Keurig's fifty-four custodians that the parties agreed upon. (*See* Mar. 2022 Op. 5 n.5; Doc. 1287 ¶ 1.)

[8] Keurig does not object to the March 2022 Opinion's award of attorneys' fees and expenses in the other categories: (1) "Plaintiffs' efforts from May 7, 2018 to July 25, 2018 to determine deficiencies in Keurig's productions for Agreed Custodians"; (2) "preparing for and participating in meet-and-confer communications and calls concerning Keurig's productions for the Agreed Custodians between July 25, 2018 and May 20, 2019"; (3) "undertaking additional measures with respect to the hard drives for [Fran] Rathke and [Michelle] Stacy that TreeHouse selected to send to its vendor"; and (4) "preparing the Motion and presenting oral argument."

###### i.  *Archived CommVault Emails*

A week after the April 30, 2018 deadline for "substantial productions of all documents" for Agreed Custodians had passed, "Keurig notified [Rule 37] Plaintiffs that it had substantially completed its obligations."  (Mar. 2022 Op. 79.)  However, roughly three months later, in August 2018, Keurig notified Plaintiffs that it had not collected certain archived emails "for most of the initial 29 Agreed Custodians."  (*Id.*)  Keurig had not collected and produced the CommVault documents until October 2018, approximately five months after the deadline for substantial production.  (*Id.*)

The initial April 30, 2018 deadline was later extended to January 4, 2019 pursuant to a joint stipulation and court order dated December 12, 2018.  (Mar. 2022 Op. 5.)  The deadline to respond to TreeHouse's subpoenas regarding Keurig's former employees was January 11, 2019. (*See id*.)  Judge Cave recognized that "Plaintiffs incurred not only the expense of investigating the deficiencies but also of continued efforts to confirm the nature, scope, and volume of information that was not preserved," as well as expenses associated "with identifying where possible gaps in Keurig's production remained."  (*Id.* at 87.)

Keurig claims that it complied with the Scheduling Order because it timely made a "substantial production of more than 900,000 documents from its custodians."  (Spoliation Obj. Mem. 13–14.)  However, Keurig's fails to show how the volume of documents alone, even if it is high, constitutes a "substantial production" in compliance with the Scheduling Order.  Rule 37 Plaintiffs correctly emphasize that "Keurig had not searched and produced emails from the very custodians who were the subject of litigation holds."  (Spoliation Obj. Opp'n 14.)  Keurig does not dispute that it only discovered that it had not collected the custodial emails in August 2018 after Plaintiffs had already engaged in "extensive investigation and inquiry."  (*Id.*)  Although I

20

recognize that the March 2022 Opinion did not explicitly invoke the Scheduling Order as the
basis for awarding attorneys' fees and expenses under Rule 37(b), it is clear that Judge Cave was
referring to it.  (*See* Mar. 2022 Op. 86–87 ("Keurig represented on May 7, 2018 that it had
substantially completed its production for the Agreed Custodians.").)[9]

Keurig also argues that there is no "causal connection" between its violation and the fee
awards.  (Spoliation Obj. Mem. 15–16.)  Keurig opposes as overbroad the fee award "for time
spent investigating *any* 'discrepancies' in archival email productions completed by October 31,
2018 even if that investigation showed no violation."  (*Id.* at 15 (emphasis in original).)  Keurig's
argument fails because the March 2022 Opinion establishes the requisite causal connection.
Keurig essentially asks for a retrospective analysis such that Rule 37 Plaintiffs' efforts should be
compensated only if a violation was subsequently identified.  However, Keurig's violation may
not have been identified at all, but for Rule 37 Plaintiffs' investigatory efforts.  In fact, Keurig's
violations of its discovery obligations, despite its own declaration of compliance, led Rule 37
Plaintiffs to investigate other potential violations.  I find that Judge Cave sufficiently established
the causal connection between her sanctions and Keurig's violations.

Finally, to the extent that Keurig claims the fee award is unreasonable, that claim is
rejected.  Judge Cave did not award any specific monetary amount and instead stated that a
"precise determination of reimbursable attorneys' fees and expenses would follow Plaintiffs'
submission of a fee application with supporting documentation."  (Mar. 2022 Op. 87.)

---

[9] Keurig emphasizes that Judge Cave "*rejects* Plaintiffs' claim of an intent to deprive based on alleged delays in
Keurig's production" in support of the argument that the March 2022 Opinion did not discuss which court-order was
violated.  (Spoliation Obj. Reply 7 n.8 (emphasis in original).)  However, Judge Cave's conclusion that Rule 37
Plaintiffs had failed to show an intent to deprive, as required for a harsher sanction under Rule 37(e)(2), is not alone
sufficient to show that Keurig substantially complied with the Scheduling Order under Rule 37(b)(2)(A).

Accordingly, Keurig's objection regarding the attorneys' fees and expenses in connection with the CommVault emails is OVERRULED.

### ii. *Transactional Data*[10]

Judge Cave found that "[i]n the Fall of 2019, the parties discovered that a 'material' amount of data was missing from Keurig's transactional data production." (Mar. 2022 Op. 28.) By then, "Plaintiffs had already invested months of work and significant resources into analyzing Keurig's incorrect data." (*Id.* (internal quotation marks omitted).) In February 2020, Plaintiffs flagged for Keurig the deficient production of transactional data, and Keurig "subsequently determined that rows of data were in fact missing." (*Id.* at 80.) Pursuant to a court order, Keurig reproduced this data, including the missing data, by March 17, 2020. (*Id.*) Judge Cave then "extended the expert discovery deadline to mitigate any prejudice." (*Id.*) The March 2022 Opinion awarded attorneys' fees and expenses to Rule 37 Plaintiffs for their efforts "investigating discrepancies in Keurig's transactional data from February 7, 2019 until February 2020," and for "Plaintiffs' experts' costs while working with Keurig's deficient transactional data between February 7, 2019 and February 2020." (*Id.* at 88.)

Keurig first argues that the March 2022 Opinion did not identify any court-order that was allegedly violated and that Keurig had substantially completed its productions related to transactional data. (Spoliation Obj. Mem. 14.) Keurig, again, leans on the February 28, 2019 deadline for substantial completion, and insists that "it fully and timely produced its transactional data" by that date, and also "completed its supplemental production of transactional data on March 19, 2020." (*Id.* at 14 & n.15.) Keurig also cites a subsequent scheduling order's safe-

---

[10] "Transactional data" means "financial data on sales of portion packs and brewers, which typically includes, among other things, quantity, price, product information, and customer information." (Mar. 2022 Op. 28 n.11.)

harbor provision governing technical or unforeseen issues.  (*Id.* at 14 (citing Prod. Deadline Order 1 n.1).)  Finally, Keurig argues that there is no "causal connection" between Keurig's violations and the fee award of one year of experts' costs.  (*Id.* at 16.)  According to Keurig, Rule 37 Plaintiffs' experts only needed to add data to their existing models, so Keurig should not be responsible for a full year of expert work that is "untethered to incremental work caused by a violation of a court order."  (*Id.*)  Keurig's arguments fail.[11]

At the March 4, 2020 hearing before Judge Cave, Rule 37 Plaintiffs represented that they were told in February 2019 that Keurig had completed production of transactional data. (Doc. 843 at 9:8-10.)  Plaintiffs flagged potential production deficiencies to Keurig "as early as August this summer of 2019" and again in November of 2019, but Keurig did not acknowledge the deficiency until February of 2020.  (*Id.* at 10:6-13.)  Keurig accordingly supplemented its production of transactional data.  Counsel for indirect purchaser plaintiffs confirmed that Keurig's new productions involved more than simply inputting new data into Plaintiffs' experts' existing models of analysis and instead would require verification of already analyzed data.  (*Id.* at 17:25-18:17.)  Judge Cave clearly agreed with Plaintiffs' arguments because she awarded "Plaintiffs' experts' costs while working with Keurig's deficient transactional data between February 7, 2019 and February 2020."  (Mar. 2022 Op. 88.)  In other words, Judge Cave already considered and rejected Keurig's arguments that the prior work done by Plaintiffs' experts were accurate and that new analysis from Keurig's supplemental production was merely "incremental work."  Judge Cave's fee award sufficiently explains the causal connection to Keurig's violations.  Finally, Judge Cave did not find that Keurig's belated production was the result of a

---

[11] Keurig also points the finger at TreeHouse for allegedly violating discovery orders, as evident in TreeHouse's own supplemental production.  (Spoliation Obj. Mem. 14–15.)  Treehouse's purported discovery violations is irrelevant, because such alleged violations do not vindicate or justify Keurig's own violations.  Moreover, Judge Cave denied Keurig's motion for sanctions as to TreeHouse.  (*See* Mar. 2022 Op. 109–110.)

technical issue, and therefore did not err in not discussing any safe-harbor provision. It is clear that Judge Cave found that Keurig's production of transactional data was materially deficient in violation of the Production Deadline Order's deadline of February 28, 2019 for substantial completion.

In short, because Keurig failed to substantially complete production of transactional data in a timely manner despite Keurig's representation to Plaintiffs that it had done so, Judge Cave awarded expert fees for Plaintiffs' experts' prior work. Keurig does not cite to any binding case law that requires a Rule 37 sanction to explicitly identify what discovery order was violated, even if it can be inferred from the opinion and order, such that the March 2022 Opinion is contrary to law. Nor has Keurig demonstrated evidence that leaves me with a "definite and firm conviction that a mistake has been committed." *Gualandi*, 385 F.3d at 240 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395) (internal quotation marks omitted).

Accordingly, Keurig's objections to the March 2022 Opinion's award of attorneys' fees and expert costs due to Keurig's incomplete production of transactional data and archived email data are OVERRULED.

    c.   <u>Sanctions Based on Litigation Holds, Interviews, and Preservation of Hard Drives</u>

The March 2022 Opinion found that Keurig's failure to issue litigation holds to six former employees and to interview eleven custodians were violations of the ESI Order[12] under Rule 37(b)(2)(A) and amounted to a failure to take "reasonable steps" to preserve ESI under Rule 37(e). (Mar. 2022 Op. 33.) The March 2022 Opinion also found that Keurig failed to

---

[12] "ESI Order" refers to the joint electronic discovery submission and order, dated July 1, 2014. (Doc. 41.)

preserve relevant hard copy documents for Barberio, as required by the ESI Order, under Rule
37(b)(2)(A). (*Id.* at 42.)

Keurig objects and argues that it took reasonable steps to preserve data and therefore the
March 2022 Opinion erroneously imposed sanctions under either Rule 37(b) or Rule 37(e).
(Spoliation Obj. Mem. 16.) Keurig notes its efforts "suspending routine destruction processes,
putting in place a sweeping litigation hold in this case, and packaging up and saving the ESI of
departing employees," and sending out litigation hold notices "to more than 700 employees."
(*Id.* at 17.) Keurig also emphasizes the fact that the March 2022 Opinion did not find that Keurig
"failed to suspend normal operations or that a different, more reasonable system was required,"
or "spoliated *any email* in this case." (*Id.* (emphasis in original).)

### i.   *Custodian Interviews*

The ESI Order had required the parties "to ask each of their document custodians whether
he or she maintains potentially responsive documents or data in any of the electronic or hard-
copy sources listed above, whether at the custodian's office, home, or online." (Doc. 41 at 16.)
The March 2022 Opinion found that Keurig failed to timely interview 11 custodians "to
determine whether they had any relevant documents" under Rule 37(b) and Rule 37(e). (Mar.
2022 Op. 31–33.) As examples, Michelle Stacy, Keurig's former President, testified that she was
first contacted by Keurig's counsel around October or November 2019, which was "more than
five years after this action commenced," and Don Holly, former Vice President of Beverage
Quality, testified—which Keurig disputes—that he was not contacted by Keurig's counsel to
preserve any documents. (*Id.* at 31.) Even after acknowledging that the ESI Order did not
impose an explicit deadline to interview these custodians, Judge Cave noted that Keurig failed to
even ask seven custodians whether they had relevant documents until months after the

substantial-completion deadline of January 4, 2019.  (*Id.* at 32.)  One of these custodians was Barberio, and Judge Cave explicitly connected Keurig's failure to timely interview Barberio with the loss of his hard copy notes and hard drive.  (*Id.* at 32, 70–71.)

Keurig's objection does not differentiate the seven custodians Judge Cave referenced from the four custodians that she did not.  In other words, Keurig does not argue that the related sanction was erroneously imposed because Judge Cave failed to find specifically that the remaining four custodians were not timely interviewed.  Rather, Keurig raises objections for all 11 custodians and argues that it was not obligated to interview Keurig employees before they became document custodians, who were first named in "December 2017 at the earliest." (Spoliation Obj. Mem. 18–19.)  Keurig highlights the fact that the ESI Order does not require the parties to interview custodians by a specific deadline.  (*Id.* at 18.)

I do not find that the March 2022 Opinion was clearly erroneous or contrary to law in finding that Keurig violated Rule 37(b) and Rule 37(e) by failing to timely interview document custodians.  Keurig makes much of Judge Cave's note that the custodians should have been questioned at a time contemporaneous with the date the custodians received litigation hold notices, emphasizing the impractical implications that Keurig would be obligated to conduct 700 interviews of all individuals who received hold notices.  (Spoliation Obj. Mem. 19.)  Although the March 2022 Opinion uses the term "interview," Keurig mischaracterizes the ESI Order. Under the ESI Order, the parties agreed merely to "ask" the document custodians whether they had potentially responsive documents.  (Doc. 41 at 16.)

It is neither clearly erroneous nor contrary to law that Judge Cave found Keurig at fault for failing to even "ask" the 11 custodians whether they had any responsive documents until several months after the January 4, 2019 deadline.  True, it was possible that those custodians did

not have any potentially responsive documents.  However, it was also possible that they had voluminous tranches of unique, unproduced documents such that Keurig could not be said to have substantially completed production by the deadline.  The point is that Keurig could not have known what responsive documents, if any, the custodians had because Keurig did not bother to ask.  Keurig failed to ask agreed-upon custodians whether they had responsive documents at all until several months after the January 2019 deadline.  Whenever the "deadline" was, Keurig first asking these custodians late in 2019 was too late.  Even assuming that the March 2022 Opinion was erroneous in requiring Keurig to "ask" the document custodians contemporaneously with issuing the litigation hold notices, Judge Cave clearly found that the custodians were not asked until late in 2019, in violation of the January 2019 deadline.  The same reasoning applies for Judge Cave's finding that Keurig "failed to take reasonable steps to preserve" ESI in violation of Rule 37(e).  The reasonable step would have been to "ask" each document custodian whether they had potentially relevant documents well before the substantial-completion deadline.  Keurig has not carried the "heavy burden" required to overturn a magistrate judge's non-dispositive order.  *Kumaran v. Vision Fin. Markets, LLC*, No. 20-CV-3871, 2022 WL 17540669, at *2 (S.D.N.Y. Dec. 6, 2022) (quoting *McFarlane v. First Unum Life Ins. Co.*, 2017 WL 4564928, at *2 (S.D.N.Y. Oct. 12, 2017)) (internal quotation marks omitted).

### ii.  *Hard Drives*

Judge Cave found that "[a]ltogether, 16 hard drives, although preserved, were inaccessible, and nine hard drives were lost altogether for 23 Agreed Custodians whose files were required to be preserved and searched."  (Mar. 2022 Op. 36.)  Judge Cave concluded that Keurig failed to preserve related ESI in violation of the ESI Order under Rule 37(b) and failed to take reasonable steps under Rule 37(e).  (*Id.* at 36–37.)

Keurig argues that it took reasonable steps to preserve hard drives.  (Spoliation Obj. Mem. 20.)  Keurig first highlights its corporate policy, (*id.* at 20), which instructed employees "to save company documents not to their local drives . . . which were not backed up, but rather on network or 'share' drives . . . which were backed up," (Mar. 2022 Op. 24).  Keurig next emphasizes its practice of migrating data from an old hard drive to a new one whenever employees received upgraded laptops, which meant that older hard drives were unlikely to contain non-duplicative material.  (Spoliation Obj. Mem. 20.)  Keurig contends that, despite neither the corporate policy nor the corporate practice requiring such actions, Keurig preserved 99 hard drives and therefore could not be said to have violated the ESI Order or have failed to have taken reasonable steps for ESI production.  (*Id.*)

I disagree.  I do not find that the March 2022 Opinion was clearly erroneous or contrary to law in finding that Keurig violated Rule 37(b) and Rule 37(e) by failing to preserve and produce these hard drives.  Keurig cites only one case from the Middle District of Florida, (Spoliation Obj. Mem. 20), in support of the argument that Rule 37(e) does not require a party to "immediately clone [old phones] or to maintain the old phones once custodians upgraded to new phones," *Burns v. Medtronic, Inc.*, No. 15-CV-2330, 2017 WL 11633269, at *4 (M.D. Fla. Aug. 9, 2017).  This non-binding authority is insufficient to sustain Keurig's objections.  With regard to the 16 hard drives that were preserved but not accessible, Judge Cave found that they were physically damaged or could not be digitally unencrypted to be reviewable by the parties.  (Mar. 2022 Op. 35–36.)  With regard to the nine hard drives lost altogether, Judge Cave noted that the majority of custodians whose hard drives were lost "had received preservation notices."  (*Id.* at 36.)  Judge Cave also found that Keurig failed to "take any steps when this action commenced to determine which devices Keurig had issued to an individual were under litigation hold."  (*Id.* at

34 (internal quotation marks omitted and alterations adopted).)  Nor did Keurig's IT department

"check storage locations of devices to locate and collect any drives [that] were under litigation

hold."  (*Id.*)  The fact that Judge Cave acknowledged the steps that Keurig took in preserving

over 90 hard drives does not negate her finding that Keurig's failure to preserve other hard drives

violated Rule 37(b) and Rule 37(e).

### iii.  *Litigation Holds*

Pursuant to the ESI Order, the parties "certif[ied] that they ha[d] issued preservation or

'litigation hold' communications to all individuals reasonably identified as having information

that may be potentially relevant to the Related Actions."  (Doc. 41 at 8.)  The parties affirmed

their obligation "to take measures to identify additional individuals who may have potentially

relevant [*sic*] to the Related Actions in accordance with applicable law and each party's ethical

obligations."  (*Id.*)

The March 2022 Opinion recognized that Keurig issued litigation hold notices to over

400 employees within a week of TreeHouse filing its complaint in February 2014, and 300

additional people afterwards.  (Mar. 2022 Op. 2, 30.)  However, Judge Cave found that Keurig

failed to issue litigation hold notices to six custodians as required by the ESI Order under Rule

37(b) and the general discovery obligations under Rule 37(e).  (*See* Mar. 2022 Op. 30–33.)

These six custodians were four people who left Keurig before TreeHouse's complaint was filed

in February 2014 (Ken Crites, Don Holly, Steve Smits, and Chris Stevens), one person who left

in March 2014 (Susan Cote), and one who left in August 2015 before McLane's complaint was

filed (Brad Tidwell).  (*See id.* at 2, 30–31.)  Judge Cave emphasized that a company's discovery

obligations extend to documents related to former employees.  (*Id.* at 32–33.)

Keurig disputes that the ESI Order actually required Keurig to issue litigation holds to six former employees. (Spoliation Obj. Mem. 21.) Keurig claims that it complied with its preservation obligations by "tak[ing] measures to identify additional individuals who may have potentially relevant [sic] to the Related Actions in accordance with applicable law and each party's ethical obligations" by issuing litigation holds to more than 700 people. (*Id.*) Keurig also notes that Plaintiffs neither challenged those litigation holds nor argued that those six former employees should have received litigation holds. (*Id.*) Keurig contends that the March 2022 Opinion presented no finding that any of the six individuals were "reasonably identified" as having potentially relevant information, as required by the ESI Order. (Spoliation Obj. Reply 10.)

I disagree. As an initial matter, the March 2022 Opinion found that Keurig's discovery obligations extended to former employees. (Mar. 2022 Op. 32–33.) Judge Cave noted that "Keurig asserted that documents in the custody of former employees 'were no longer within the possession, custody or control of Keurig.'" (*Id.* at 33.) The applicable Federal Rule of Civil Procedure here is Rule 34, which governs the production of documents, ESI, and tangible things. *See generally* Fed. R. Civ. P. 34. Under Rule 34, "corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession." *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005). Keurig highlights the fact that *Asia Pulp* involved Rule 34, and argues that the March 2022 Opinion's requirement of litigation hold notices to former employees "is not supported by case law." (Spoliation Obj. Mem. 21 n.20.) However, that is not the legal standard regarding objections to a Report & Recommendation. Keurig fails to demonstrate that Judge Cave failed to apply or misapplied relevant case law. Indeed, Judge Cave cited multiple cases

30

imposing discovery sanctions under Rule 37.  *See, e.g.*, *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507 (S.D.N.Y. 2013) (finding party grossly negligent for taking six months to direct its IT vendor to preserve documents based on a litigation hold, which led to the destruction of "the ESI of *at least* two significant former [] employees") (emphasis in original); *F.D.I.C. v. Horn*, No. CV 12-5958, 2015 WL 1529824, at *8 (E.D.N.Y. Mar. 31, 2015) (holding that party was required to preserve potentially relevant documents from former employees).  Keurig accordingly fails to show that the March 2022 Opinion was contrary to law.

Nor do Keurig's arguments leave me "with the definite and firm conviction that a mistake has been committed" based on my review of "the entire evidence." *Gualandi*, 385 F.3d at 240 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395) (internal quotation marks omitted).  True, Judge Cave may not have explicitly explained why each custodian was "reasonably identified" to have potentially relevant information.  However, my review of the entire record, including Judge Cave's discussion of the six custodians and their connection with the claims in this action[13], do not show that it was clearly erroneous to have found that Keurig should have issued them litigation hold notices.

Accordingly, Keurig's objections to the March 2022 Opinion's sanctions based on litigation holds, interviews, and hard drives are OVERRULED.

---

[13] Crites was the Senior Category Director.  (Mar. 2022 Op. 49–50.)  Holly was the Vice President of Beverage Quality and designated by Keurig "as a person with information about Keurig's supplier relationships and the quality of K-cups."  (*Id.* at 54.)  Smits was Vice President of At-Home Sales, and was identified by Keurig "as having discoverable information about Keurig's relationships with WalMart, Sam's Club, and McLane and the sale of the Keurig 2.0 Brewer and K-cups."  (*Id.* at 62.)  Stevens was Vice President for Corporate Relations and Customer Development.  (*Id.* at 65.)  Cote was the Senior Category Director for Specialty Coffee.  (*Id.* at 48.)  Tidwell was the Supply Chain Lead and designated by Keurig "as having discoverable information about the company's supply chain and McLane."  (*Id.* at 65–66.)

31

#### iv. *Breadth of Fee Awards*

Judge Cave awarded costs for, among other things, "Plaintiffs' efforts from May 7, 2018 to July 25, 2018 to determine deficiencies in Keurig's productions for Agreed Custodians"; "preparing for and participating in meet-and-confer communications and calls concerning Keurig's productions for the Agreed Custodians between July 25, 2018 and May 20, 2019"; and "investigating discrepancies in Keurig's CommVault productions." (Mar. 2022 Op. 87–88.) She did so after explicitly stating her intent not to impose "every expense related to document discovery, or even every expense related to Keurig's violations of the ESI Order," given Rule 37(b)(2)(C)'s limitations for "reasonable" expenses and Rule 37(e)(1)'s required tailoring to the specific prejudice found. (*Id.* at 87.) Indeed, Judge Cave did not impose any specific monetary amount and instead stated that "a precise determination of reimbursable attorneys' fees and expenses would follow Plaintiffs' submission of a fee application with supporting documentation." (*Id.*)

Keurig unpersuasively argues that the March 2022 Opinion's fee awards for Plaintiffs' investigatory efforts are overbroad under either Rules 37(b) or 37(e). (Spoliation Obj. Mem. 22–23.) The March 2022 Opinion was neither clearly erroneous nor contrary to law in reserving judgment on specific fee awards. Once Plaintiffs submit specific requests for attorneys' fees and expenses, Keurig can raise arguments related to specific work performed with regard to Rule 37's requirements regarding causal connections and tailoring to prejudice. However, at this juncture, no specific requests or awards have been made.

For these reasons, Keurig's objections to Judge Cave's March 2022 Opinion are SUSTAINED IN PART AND OVERRULED IN PART.

32

## IV.    Objections to February 2023 Opinion (Doc. 2015)

### A. *Background*

On August 6, 2021, Winn-Dixie[14] filed a complaint asserting claims against Defendants under the Sherman and Clayton Antitrust Acts. *See* Compl., *Winn-Dixie Stores, Inc. v. Keurig Green Mountain, Inc.*, No. 21-CV-7504 (S.D.N.Y. Aug. 6, 2021), ECF No. 1. Winn-Dixie's action is "on its own behalf and/or as the assignee of" C&S Wholesale Grocers, Inc. ("C&S"), a grocery wholesaler which "purchased Price-Fixed K-Cups directly from [Keurig] for resale to Winn-Dixie and has specifically and expressly assigned its antitrust claims arising out of those purchased to Winn-Dixie." *See id.* ¶¶ 24–25; (*see also* Doc. 2004 ("Feb. 2023 Op.") at 2).

During discovery proceedings overseen by Judge Cave, Keurig moved for Winn-Dixie to respond to certain requests for admissions ("RFAs"), each of which sought "admission[s] that C&S took certain actions or knew certain information." (Feb. 2023 Op. 5.) Judge Cave granted the motion, reasoning that the subject matter of the requests was appropriate under Rule 36, that Winn-Dixie "could have made a reasonable inquiry" regarding the information necessary to respond to the requests, and that the requests were not unduly burdensome. (*See id.* at 8–12.) Judge Cave rejected Winn-Dixie's argument that Keurig could not obtain RFAs based on information from C&S as the assignor of Winn-Dixie's claims. (*See id.*)

On February 24, 2023, Winn-Dixie filed an objection to the February 2023 Opinion, (Doc. 2015), along with a supporting memorandum of law, (Doc. 2016 ("RFA Obj. Mem.")). On March 10, 2023, Keurig filed an opposition brief. (Doc. 2020 ("RFA Obj. Opp'n").) Winn-Dixie did not reply or request an extension of time to do so.

---

[14] "Winn-Dixie" refers to Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC, consistent with Judge Cave's February 2023 Opinion. (Doc. 2004 at 1 n.2.)

33

## B. *Discussion*

"Requests for admission are governed by Rule 36 of the Federal Rules of Civil Procedure, which provides in relevant part as follows: 'A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents.'" *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 36(a)(1)). "Rule 36 is not a discovery device." *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997). Rather, the "function" of RFAs "is to define and limit the matters in controversy between the parties." Charles Alan Wright & Arthur R. Miller, 8B FEDERAL PRACTICE & PROCEDURE ("Wright & Miller") § 2252 (3d ed. 2025). "The rule is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry." *Id*. A party responding to an RFA may either: (1) admit to the request, (2) deny the request, or (3) "state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). If the "reason for failing to admit or deny" is "lack of knowledge or information," the party must state "that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id*.

In general, "the assignee of a claim in litigation has a duty to obtain and produce the same documents and information to which the opposing parties would have been entitled had the assignors brought the claim themselves." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 344 (S.D.N.Y. 2016) (citing *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 506–07 (S.D.N.Y. 2005)); *see also Natta v. Hogan*, 392 F.2d 686, 691 (10th Cir. 1968)

34

(finding that a non-party assignee is "the real party in interest and may not hide behind its assignors" under Rule 34). As then-District Judge Gerard E. Lynch stated in *JPMorgan Chase Bank v. Winnick*, it would be "both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim." 228 F.R.D. at 506. Further, "[i]t would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants." *Id*. at 507. "Numerous courts in this and other circuits have come to the same conclusion—both before and after *Winnick*." *See Royal Park*, 314 F.R.D. at 344 (collecting cases).

Here, Winn-Dixie does not appear to dispute that the subject matter of Keurig's RFA's are "straightforward admissions concerning the C&S Claims," and are "appropriate requests for admission under Rule 36." (Feb. 2023 Op. 9; *see generally* RFA Obj. Mem. (not disputing RFAs on this ground).)[15] Winn-Dixie also does not dispute that the contract assigning the C&S Claims to Winn-Dixie "obligates C&S to respond to Winn-Dixie's inquiries for the purpose of responding to the C&S RFAs." (Feb. 2023 Op. 9 (citing Doc. 1875-1 at 8).) In other words, the RFAs seek information regarding "matters within the scope of Rule 26(b)(1)," and the contractual arrangement provides the means by which Winn-Dixie may make "reasonable inquiry" to C&S to obtain this information. Fed. R. Civ. P. 36(a)(4); *see also T. Rowe Price*, 174 F.R.D. at 43 (explaining that "parties may be required to inquire of third parties in order to properly respond to requests to admit" when such efforts are "reasonable" and the information sought is "readily obtainable" (internal quotation marks omitted)). Judge Cave was therefore

---

[15] Winn-Dixie does assert that the subject matter of the RFAs "have all been addressed by the C&S discovery." (RFA Obj. Mem. 3.) If that is so, then Winn-Dixie's response to the RFA must either admit it, deny it, or state "that [Winn-Dixie] has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4).

correct to conclude that "[a]s long as Winn-Dixie continues to seek to hold Keurig liable on the

C&S Claims, it must respond to reasonable requests under the Federal Rules of Civil Procedure

concerning those claims."  (Feb. 2023 Op. 10.)  Indeed, Winn-Dixie has responded to other RFAs

using information from C&S, and C&S executives have been deposed in this action as well.  (*See*

*id*. at 4.)

Winn-Dixie's arguments to the contrary are without merit.  First, Winn-Dixie stresses that

because C&S is not an "opposing party" within the meaning of Federal Rule of Evidence

801(d)(2), its statements are not admissible under that rule, and thus Winn-Dixie has no

obligation to respond to RFAs that would be based on such inadmissible evidence.  (*See* RFA

Obj. Mem. 2.)  This is not a valid basis for objection.  Federal Rule of Civil Procedure 36

authorizes RFAs "to admit . . . the truth of any matters within the scope of Rule 26(b)(1)."  Fed.

R. Civ. P. 36(a)(1).  In turn, Rule 26(b)(1) provides that "[i]nformation within this scope of

discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Thus, the text of Rules 36 and 26 clearly contemplate that responses to RFAs may be based on

inadmissible material.  I note that a response to an RFA is "subject to all pertinent objections to

admissibility that may be interposed at the trial."  Wright & Miller § 2264.  Thus, rather than

object to the RFAs, the proper procedure is for Winn-Dixie to respond with either an admission,

denial, or explanation for why it cannot admit or deny the RFA.  *See* Fed. R. Civ. P. 36(a)(4).

Winn-Dixie may then invoke its admissibility argument should Keurig offer the response to an

RFA at trial.  However, it is improper to object at this stage of the case on that basis now.

Second, Winn-Dixie argues that "the *Winnick* principle"—that the assignee of a claim

takes the assignor's discovery obligations—"does not apply to [RFAs]," because "Rule 36 is not

a discovery device."  (RFA Obj. Mem. 3 (internal quotation marks omitted).)  The notion that

36

RFAs are not to be used to conduct "discovery" refers to the fact that Rule 36 is meant to "establish admission of facts about which there is no real dispute," whereas "the basic purpose of discovery is to elicit facts and information and to obtain production of documents." *Republic of Turkey*, 326 F.R.D. at 399 (quoting 7 *Moore's Federal Practice* § 36.02[1] (3d ed. 2013)) (internal quotation marks omitted). Thus, "where requests for admission are not designed to identify and eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit . . . a court may excuse a party from responding to the requests." *Id*. This functional distinction does not mean that there is an exception to Rule 36 for assigned claims.[16] As discussed, "[n]umerous courts in this and other circuits have come to the same conclusion" that claim assignees are obligated "to obtain and produce the same documents and information to which the opposing parties would have been entitled had the assignors brought the claim themselves." *Royal Park*, 314 F.R.D. at 344 (collecting cases). Winn-Dixie, citing *Winnick*, claims that the assignee-discovery rules apply only to "documents, information, and witness testimony," not to RFAs. (RFA Obj. Mem. 3 (quoting *Winnick*, 228 F.R.D. at 507).) I reject this contention—RFAs are simply another way to get at the "information" contained in discovery material, provided there is no "real dispute" about the facts. *Republic of Turkey*, 326 F.R.D. at 399 (quoting 7 *Moore's Federal Practice* § 36.02[1] (3d ed. 2013)) (internal quotation marks omitted).

Accordingly, Winn-Dixie's objection to Judge Cave's thorough and well-reasoned February 2023 Opinion is OVERRULED.

---

[16] Contrary to Winn-Dixie's argument, (*see* RFA Obj. Mem. 2–3), the reference in *Winnick* to Rule 36 as part of "discovery," 228 F.R.D. at 507, is consistent with the structure of the Federal Rules of Civil Procedure, which places Rule 36 within Title V, governing Disclosures and Discovery.

## V.   Objections to May 2023 Opinion (Docs. 2044, 2049)

### A.  *Background*

On February 15, 2022, I entered a case management plan and scheduling order setting a

deadline of June 17, 2022 for the parties to complete fact discovery on Winn-Dixie's claims

against Keurig.  (Doc. 1714 ¶ 9.)  As discussed *supra* § IV.A., Magistrate Judge Cave oversaw

discovery proceedings on Winn-Dixie's claims.  (*See also* Doc. 2038 ("May 2023") Op. 4–7.)

Discovery on these claims involved numerous extensions; Keurig also moved, among other

things, to enforce Winn-Dixe's discovery obligations and for dismissal of the C&S Claims.  (*See*

*id.*; Docs. 1908, 1915.)  Judge Cave denied these motions without prejudice to renewal following

the close of fact discovery.  (*See* Docs. 1909, 1919.)  On November 4, 2022, Keurig requested

that the C&S Claims be dismissed for Winn-Dixie's failure to comply with its discovery

obligations.  (Doc. 1930.)

Judge Cave resolved Keurig's motion to dismiss in an Opinion & Order dated May 8,

2023.  (*See* May 2023 Op.)  First, Judge Cave found that Winn-Dixie failed to timely comply

with her orders dated August 1, August 26, and December 14, 2022.  (*Id*. at 18–23.)  Next,

applying the pertinent sanctions factors, Judge Cave found:  (a) Winn-Dixie was not "sufficiently

willful" in its noncompliance "to justify the ultimate penalty of dismissal"; (b) Winn-Dixie was

noncompliant over a period of five months, a sufficiently lengthy period to warrant sanctions;

(c) Winn-Dixie was on notice that its noncompliance could lead to sanctions; and (d) Keurig was

prejudiced by Winn-Dixie's noncompliance because it had to resort to motion practice to enforce

Winn-Dixie's discovery obligations.  (*Id*. at 23–29 (internal quotation marks omitted).)  Judge

Cave ultimately concluded that attorneys' fees were the least harsh sanction to remedy Winn-

Dixie's noncompliance, and that dismissal was unwarranted as a sanction because Winn-Dixie

belatedly complied in part with the Court's orders and "show[ed] a renewed interest in prosecuting their claims." (*Id.* at 25, 30–33.)

Keurig filed an objection to Judge Cave's May 2023 Opinion on May 22, 2023, (Doc. 2044), along with a memorandum of law, (Doc. 2045 ("Keurig May 2023 Obj. Mem")), arguing that Judge Cave erred in declining to dismiss the claims in their entirety. Winn-Dixie filed an objection to the Opinion the same day in the form of a memorandum, (Doc. 2049 ("WD May 2023 Obj. Mem.")), arguing Judge Cave erred in finding it had not timely complied with her orders. Keurig filed an opposition brief to Winn-Dixie's objection on June 5, 2023. (Doc. 2056 ("Opp'n WD May 2023 Obj. Mem.").) On June 12, 2023, Winn-Dixie filed a brief in support of its objection and in opposition to Keurig's objection. (Doc. 2060 ("WD May 2023 Obj. Reply").) On June 19, 2023, Keurig filed a reply in support of its objection. (Doc. 2069 ("Keurig May 2023 Obj. Reply").)[17]

### B. *Discussion*

At the outset, I note that "[a] magistrate judge's resolution of discovery disputes deserves substantial deference." *Dubai Islamic Bank v. Citibank, N.A.*, 211 F. Supp. 2d 447, 449 (S.D.N.Y. 2001). Judge Cave's May 2023 Opinion imposing "[m]onetary sanctions" is a "nondispositive" order that I review "under the clearly erroneous or contrary to law standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (internal quotation marks omitted); *see also supra* § I. I next address each party's objections in turn, concluding that neither has demonstrated any error, let alone clear error, in Judge Cave's May 2023 Opinion.

---

[17] The parties' unopposed requests to redact portions of their objection pleadings from public viewing, (*see* Docs. 2043, 2048, 2055, 2059, 2068), are GRANTED as consistent with Judge Cave's prior ruling on the matter, (*see* Doc. 1945), and the caselaw governing redaction and sealing of similar confidential discovery information. *See, e.g.*, *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 21-CV-11003, 2022 WL 890184, at *3 (S.D.N.Y. Mar. 25, 2022); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-CV-211, 2021 WL 2935963, at *2 (S.D.N.Y. July 13, 2021).

### 1. Winn-Dixie's Objection (Doc. 2049)

Winn-Dixie's objects to Judge Cave's finding that it failed to timely comply with her orders dated August 1, August 26, and December 14, 2022, (the "August 1 Order," "August 26 Order," and "December 14 Order," respectively). (*See generally* WD May 2023 Obj. Mem.) I disagree.

As a general matter, Judge Cave is in a better position than I am to evaluate Winn-Dixie's compliance with her own orders. By my count, Judge Cave held no fewer than seven conferences with the parties in order to move discovery along: one in June 2022; one in July 2022; four in August 2022; and one in December 2022. (*See* Docs. 1855, 1872, 1891, 1895, 1897, 1901, 1957.) Because Judge Cave "personally oversaw the[] [discovery] efforts and adjudicated the parties' disputes," she is in the "best position" to determine whether Winn-Dixie's actions violated the letter or spirit of her orders. *City of Almaty v. Ablyazov*, No. 15-CV-5345, 2021 WL 4846366, at *3 (S.D.N.Y. Oct. 18, 2021). I am mindful of this, and the "substantial deference" owed to Judge Cave's conclusions, in reviewing Winn-Dixie's objections. *Dubai Islamic Bank*, 211 F. Supp. 2d at 449.

#### a. August 1, 2022 Order

Judge Cave found that Winn-Dixie did not comply with her August 1 Order because it did not locate any emails from two C&S custodians and did not produce a Rule 30(b)(6) witness for deposition before the applicable September 16, 2022 deadline to complete fact discovery. (May 2023 Op. 19.) Winn-Dixie first claims this finding is error because the August 1 Order did not contain a deadline to produce the deposition witnesses. (WD May 2023 Obj. Mem. 2–3.) However, at the time of the August 1 Order, the operative case management plan and scheduling order set September 16, 2022 as the deadline to complete fact discovery. (Doc. 1894 ¶ 9.) Winn-

Dixie did not seek an extension of the fact discovery deadline until September 20, 2022—after the fact discovery deadline had already passed.  (*See* Doc. 1917.)  The fact that Judge Cave eventually granted this extension, (Doc. 1919), does not change the fact that Winn-Dixie did not comply with the September 16 deadline or request an extension of time to do so before it passed. I do not find clear error in Judge Cave's determination that belatedly requesting an extension indicated noncompliance with her August 1 Order.

Winn-Dixie also continues to press its arguments that discovery from C&S was not its responsibility as an assignee of C&S's claims, and that existing Winn-Dixie productions covered anything in discovery from C&S.  (*See* WD May 2023 Obj. Mem. 3–8.)  I reject these arguments for the reasons discussed *supra* § IV.B.

### b.  August 26, 2022 Order

Judge Cave concluded that Winn-Dixie did not comply with her August 26 Order because it did not produce certain C&S-transactional data and document-retention policies by the August 30, 2022 deadline, and did not produce certain C&S custodians' emails or respond to Keurig's questions about them by the September 2, 2022 deadline.  (May 2023 Op. 20.)  Winn-Dixie's objection centers on its belated extension request of these deadlines and that it eventually made more fulsome productions responsive to these discovery requests.  (WD May 2023 Obj. Mem. 8–10.)  As discussed, requesting an extension after the date for compliance has passed is not compliance with the August 26 Order.  Similarly, eventually producing responsive documents does not change the fact that Winn-Dixie did not meet the original deadline.  Judge Cave did not err in finding noncompliance with the August 26 Order.

41

c.   December 14, 2022 Order

Judge Cave found that Winn-Dixie did not comply with her December 14 Order because it did not comply with the Order's deadlines to produce certain documents by December 16, 2022 or to respond to questions from Keurig regarding other productions by December 19, 2022. (May 2023 Op. 21–22.)  Although Winn-Dixie objects to Judge Cave's characterization of its eventual productions as "deficien[t]," (*id*. at 21), it does not contest that it did not timely comply with the deadlines in the December 14 Order, (*see* WD May 2023 Obj. Mem. 10–15). Regardless of the quality of Winn-Dixie's eventual productions, the fact remains that failure to obey a discovery deadline is noncompliance.  Judge Cave did not err in so finding.

In sum, Winn-Dixie did not comply with multiple discovery deadlines, and Judge Cave found much of Winn-Dixie's eventual productions deficient.  It was not error, let alone clear error, for Judge Cave to find that Winn-Dixie's untimely responses violated her orders.  *See, e.g.*, *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 546–47 (S.D.N.Y. 2018) ("Plaintiff's untimely disclosure . . . is a clear violation of the federal discovery rules.").

For these reasons, Winn-Dixie's objection to the May 2023 Opinion is OVERRULED.

**2.   Keurig's Objection (Doc. 2044)**

Keurig asserts that Judge Cave's May 2023 Opinion erred in:  (a) concluding that Winn-Dixie's noncompliance only prejudiced Keurig by "impos[ing] undue delays and costs," (May 2023 Op. 29), rather than also prejudicing Keurig by "depriv[ing] [it] of evidence it was entitled to receive and use for its defense" against Winn-Dixie's C&S Claims, (Keurig May 2023 Obj. Mem. 5); and (b) declining to order a sanction of dismissal of Winn-Dixie's C&S Claims, (*id*. at 7–10).

42

It is true that Federal Rule of Civil Procedure 37(b)(2) authorizes dismissal of claims as sanctions for failing to comply with discovery orders.  *See, e.g.*, *Park v. Kim*, 91 F.4th 610, 612–13 (2d Cir. 2024) (discussing dismissal in such circumstances).  Additionally, Keurig is correct that discovery is "not a one-way street" for plaintiffs to obtain information; rather it is "a mechanism for defendants to accumulate evidence to defend themselves and to test the evidence of their opponents."  (Keurig May 2023 Obj. Mem. 5 (quoting *Fioranelli v. CBS Broad., Inc.*, No. 15-CV-952, 2019 WL 1059993, at *5 (S.D.N.Y. Mar. 6, 2019) (internal quotation marks omitted)).)  I also agree with Keurig that much of Winn-Dixie's conduct indicates the sort of "continual[] and willful[] fail[ures] to respond to and comply with . . . discovery orders" that in analogous cases can justify dismissal under Rule 37.  *Park*, 91 F.4th at 613.

However, the question before me in reviewing objections to Judge Cave's May 2023 Opinion is not whether I might order dismissal in the first instance; rather, it is whether Judge Cave committed clear error in declining to dismiss Winn-Dixie's C&S Claims.  *See, e.g.*, *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (explaining that, in reviewing a non-dispositive order, "a magistrate judge's findings should not be rejected merely because the court would have decided the matter differently") (citation modified); *see also Kumaran*, 2022 WL 17540669, at *6 (same).

I find that Keurig has failed to meet its "heavy burden" to show clear error in Judge Cave's decision.  *Kumaran*, 2022 WL 17540669, at *6.  Judge Cave applied the correct four-factor test governing Rule 37 sanctions, noted that the purposes of discovery sanctions include remedying and "deter[ring] noncompliance," and concluded that monetary sanctions were the least harsh remedy adequate to serve these purposes.  (May 2023 Op. 23–33.)  Keurig is incorrect that Judge Cave "presumed that [the] absence of C&S discovery would hurt Winn-

43

Dixie only." (Keurig May 2023 Obj. Mem. 5.)  Rather, Judge Cave recognized that the

discovery Winn-Dixie eventually produced was "not particularly illuminating," and noted in any

event that Keurig was "prejudiced" by "undue delays and costs." (May 2023 Op. 29.)  I also

note that none of the cases Keurig cites in support of its argument that I should reverse Judge

Cave's decision, (Keurig May 2023 Obj. Mem. 7–10), involve a district or appellate court

finding clear error with a decision below to impose sanctions other than dismissal.  *See Nat'l

Hockey League*, 427 U.S. at 643 (holding that a "District Judge did not abuse his discretion in

finding bad faith . . . and concluding that the extreme sanction of dismissal was appropriate,"

thus reversing contrary appellate decision); *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298,

303 (2d Cir. 2009) ("The record before us reveals no abuse of discretion by the District Court in

affirming [the] Magistrate Judge['s] [] recommendation of dismissal."); *Martin v. City of New

York*, No. 09-CV-2280, 2010 WL 1948597, at *2–4 (S.D.N.Y. May 11, 2010) (dismissing case

for discovery noncompliance and failure to prosecute at the District, rather than Magistrate Judge

level); *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208–14 (S.D.N.Y. 2002) (same, solely for

discovery noncompliance); *Park v. Kim*, No. 20-CV-2636, 2022 WL 4229258, at *3–11

(E.D.N.Y. Apr. 25, 2022) (dismissing case at the Magistrate Judge level for discovery

noncompliance and failure to prosecute), *report and recommendation adopted*, 2022 WL

3643966 (E.D.N.Y. Aug. 24, 2022), *aff'd*, 91 F.4th 610 (2d Cir. 2024).

Ultimately, Judge Cave was in the "best position" to exercise the discretion inherent to

any imposition of discovery sanctions.  *City of Almaty*, 2021 WL 4846366, at *3.  Keurig has not

demonstrated the clear error necessary to disturb that exercise of discretion.  Its objection is

therefore OVERRULED.

## VI.    Conclusion

For the reasons that follow, Keurig's objections to Judge Pitman's March 2019 Order are SUSTAINED IN PART AND OVERRULED IN PART, Keurig's objections to Judge Cave's March 2022 Opinion are SUSTAINED IN PART AND OVERRULED IN PART, Winn-Dixie's objection to Judge Cave's February 2023 Opinion is OVERRULED, and Keurig's and Winn-Dixie's objections to Judge Cave's May 2023 Opinion are OVERRULED.

Due to potential references to sealed filings and information[18], this Opinion & Order is being issued temporarily under seal. Within 30 days of this Opinion & Order, the parties are directed to submit any proposed redactions to this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the pending motions at Documents 547, 1816, 2015, 2043, 2044, 2048, 2049, 2055, 2059, 2068.

The Clerk of Court is also respectfully directed to make this Opinion & Order available only to the parties and the Court.

SO ORDERED.

Dated: July 31, 2025
New York, New York

Vernon S. Broderick
United States District Judge

---

[18] For example, the parties' joint letter filed on February 3, 2023, (Doc. 1997), the March 2022 Opinion, (Doc. 1806), Keurig's letter filed on November 4, 2022, (Doc. 1930), and Keurig's and Winn-Dixie's respective objections to Judge Cave's May 2023 Opinion, (*see* Docs. 2045, 2049, 2056, 2060, 2069), are viewable only to the parties and the Court.