**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542 |
| | Master Docket No. 1:14-md-02542 (VSB) (SLC) |
| *This Document Relates to*: | Related Case Nos. 1:21-cv-7504; 1:21-cv-7493 |
| BJ'S WHOLESALE CLUB, INC., | |
| Plaintiff, | **REDACTED PUBLIC VERSION** |
| against- | |
| KEURIG GREEN MOUNTAIN, INC., | |
| Defendant. | |
| AND | |
| WINN-DIXIE STORES, INC.;  and BI-LO HOLDING, LLC, | |
| Plaintiff, | |
| against- | |
| KEURIG GREEN MOUNTAIN, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF KEURIG'S MOTION FOR SUMMARY**
**JUDGMENT IN THE *BJ'S* AND *WINN-DIXIE* ACTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 1

LEGAL STANDARD.............................................................................................................. 8

ARGUMENT ......................................................................................................................... 9

I.   Plaintiffs' Federal Antitrust Claims Fail as a Matter of Law. .............................................. 11

    A.   Claims Fail For Lack of Harm to Competition. ................................................. 11

    B.   Claims Fail For Lack of Monopoly Power. ....................................................... 12

    C.   Claims Fail For Additional Reasons.................................................................. 16

    1.   Product Design Claims Fail For Lack of Coercion. ......................................... 17

    2.   Exclusive Dealing Claims Fail For Lack of Substantial Foreclosure............................. 18

    3.   Tying Claims Fail Because Brewers and Portion Packs Were Sold Separately............. 20

    4.   Sham Litigation Claims Fail Because Prior Suits Were Not Baseless. ......................... 20

    5.   Advertising Claims Fail As a Matter of Law. ................................................. 21

II.  Plaintiffs' State Law Claims Fail for the Same Reasons as Their Federal Claims................ 22

III. The Court Should Grant Summary Judgment Against Winn-Dixie's Claim for Damages Based on Purchases From Starbucks and Smucker. ................................................. 23

CONCLUSION...................................................................................................................... 23

**TABLE OF AUTHORITIES**

**Cases**

*AD/SAT v. Assoc. Press*,
  181 F.3d 216 (2d Cir. 1999)................................................................................................15

*Allied Orthopedic v. Tyco Health Care Grp.*,
  592 F.3d 991 (9th Cir. 2010) ........................................................................................ 17-18

*Amerinet v. Xerox*,
  972 F.2d 1483 (8th Cir. 1992) ..........................................................................................20

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986).............................................................................................................9

*Apple iPod iTunes Antitrust Litig.*,
  No. C 05-00037, 2009 WL 10678940 (N.D. Cal. Oct. 30, 2009)..........................................18

*Barr Labs. v. Abbott Labs.*,
  978 F.2d 98 (3d Cir. 1992)..................................................................................................15

*Berkey Photo v. Eastman Kodak*,
  603 F.2d 263 (2d Cir. 1979)................................................................................................17

*Burlington Coat Factory v. Esprit De Corp.*,
  769 F.2d 919 (2d Cir. 1985).................................................................................................9

*Capital Imaging v. Mohawk Valley*,
  996 F.2d 537 (2d Cir. 1993)........................................................................................... 10-12

*CDC Techs. v. IDEXX Lab'ys*,
  7 F. Supp. 2d 119 (D. Conn. 1998), *aff'd*, 186 F.3d 74 (2d Cir. 1999) ...................................15

*CDC Techs. v. IDEXX Labs.*,
  186 F.3d 74 (2d Cir. 1999)............................................................................................ 18-19

*Charych v. Siriusware*,
  790 F. App'x 299 (2d Cir. 2019) .........................................................................................20

*City of New York v. Grp. Health*,
  No. 06 Civ. 13122, 2010 WL 2132246 (S.D.N.Y. May 11, 2010), *aff'd*, 649 F.3d 151
  (2d Cir. 2011)....................................................................................................................18

*Clorox Co. v. Sterling Winthrop*,
  117 F.3d 50 (2d Cir. 1997)...................................................................................................10, 22

*Davis v. Avvo*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018).........................................................................................21

*Emigra Grp. v. Fragomen*,
  612 F. Supp. 2d 330 (S.D.N.Y. 2009).....................................................................................11, 14

*Empire Volkswagen v. World-Wide Volkswagen*,
  814 F.2d 90 (2d Cir. 1987)............................................................................................................10

*Foremost Pro Color v. Eastman Kodak*,
  703 F.2d 534 (9th Cir. 1983) ................................................................................................. 17-18

*Gatt Commc'ns v. PMC Assocs.*,
  711 F.3d 68 (2d Cir. 2013).....................................................................................................10, 22

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)......................................................................................................................23

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  No. 14-MD-2542, 2014 WL 12778832 (S.D.N.Y. Sept. 19, 2014), *aff'd, JBR v.
  Keurig Green Mountain*, 618 F. App'x 31 (2d Cir. 2015).........................................................2

*In re Wireless Tel. Servs. Antitrust Litig.*,
  385 F. Supp. 2d 403 (S.D.N.Y. 2005)..........................................................................................20

*K.M.B. Warehouse v. Walker Mfg.*,
  61 F.3d 123 (2d Cir. 1995)............................................................................................................10

*Los Angeles Land v. Brunswick*,
  6 F.3d 1422 (9th Cir. 1993) .........................................................................................................13

*Matsushita Elec. Indus. v. Zenith Radio*,
  475 U.S. 574 (1986)........................................................................................................................9

*Muy v. IBM*,
  No. 4:19cv14, 2019 WL 8161749 (N.D. Fla. Nov. 25, 2019) ....................................................23

*Nat'l Ass'n of Pharm. v. Ayerst Labs.*,
  850 F.2d 904 (2d Cir. 1988)..........................................................................................................21

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)............................................................................................ 17-18

*Nobel Sci. Indus. v. Beckman Instruments*,
    670 F. Supp. 1313 (D. Md. 1986), *aff'd*, 831 F.2d 537 (4th Cir. 1987) ..................................20

*nSight v. PeopleSoft*,
    No. C-04-3836, 2005 WL 3299164 (N.D. Cal. 2005) ............................................................16

*Ohio v. American Express*,
    138 S. Ct. 2274 (2018)..........................................................................................................13

*PepsiCo v. Coca-Cola*,
    315 F.3d 101 (2d Cir. 2002)............................................................................................ *passim*

*Princo Corp. v. Int'l Trade Comm'n*,
    616 F.3d 1318 (Fed. Cir. 2010)..............................................................................................21

*Professional Real Est. Inv. v. Columbia Pictures*,
    508 U.S. 49 (1993)........................................................................................................... 20-21

*Reed Constr. Data v. McGraw-Hill*,
    638 F. App'x 43 (2d Cir. 2016) ..............................................................................................21

*RSA Media v. AK Media Group*,
    260 F.3d 10 (1st Cir. 2001)....................................................................................................22

*Savory Pie Guy v. Comtec Indus.*,
    No. 14 CV 7527, 2016 WL 7471340 (S.D.N.Y. Dec. 28, 2016)............................9, 11, 14, 16

*Simon v. KeySpan*,
    694 F.3d 196 (2d Cir. 2012)...................................................................................................23

*Spectrum Sports v. McQuillan*,
    506 U.S. 447 (1993)...............................................................................................................15

*Sterling Merch. v. Nestle S.A.*,
    656 F.3d 112 (1st Cir. 2011)..............................................................................................10, 12

*Suchanek v. Sturm Foods*,
    764 F.3d 750 (7th Cir. 2014) ...................................................................................................1

*Susser v. Carvel*,
    332 F.2d 505 (2d Cir. 1964)...................................................................................................19

*Suzuki of W. Mass. v. Outdoor Sports Expo*,
  126 F. Supp. 2d 40 (D. Mass. 2001) ................................................................22

*Tampa Elec. v. Nashville Coal*,
  365 U.S. 320 (1961)..........................................................................................19

*Tenneco v. FTC*,
  689 F.2d 346 (2d Cir. 1982)..............................................................................19

*Tops Markets v. Quality Markets*,
  142 F.3d 90 (2d Cir. 1998)................................................................. 9, 11, 13-14

*U.S. v. Siemens*,
  621 F.2d 499 (2d Cir. 1980)..............................................................................19

*Verizon v. Trinko*,
  540 U.S. 398 (2004)...................................................................................... 15-16

*Wright v. Undercover Officer #84*,
  No. 15-CV-4498, 2018 WL 4042101 (S.D.N.Y. Aug. 22, 2018).............................9

*Yentsch v. Texaco*,
  630 F.2d 46 (2d Cir. 1980)................................................................................20

**Statutes**

Clayton Act, 15 U.S.C. § 14 ................................................................... 9-10, 16

Mass. Gen Laws ch. 93A § 1 et seq.....................................................................10, 22

Sherman Act, 15 U.S.C. §§ 1, 2............................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................................8

## PRELIMINARY STATEMENT

Winn-Dixie and BJ's are large retailers that sued Keurig seven years after this multidistrict litigation began. Their cases illustrate why this litigation fails. They claim that Keurig is a monopolist that dominates a market for portion packs compatible with Keurig coffee brewers. They allege that Keurig blocked entry into that purported market, depriving them of any choice of supplier and unlawfully raising price.

But it is now undisputed that Plaintiffs had many Keurig-compatible portion pack suppliers competing for space on their shelves. In fact, Winn-Dixie had so many choices that it excluded Keurig—the alleged monopolist—from even offering a bid to supply its private label portion packs because it had so many other options that it preferred. Over the relevant period, Winn-Dixie bought portion packs from at least 15 different suppliers, and BJ's selected from more than 20 suppliers. In the end, three simple, undisputed facts preclude Plaintiffs' claims: (1) more than a dozen competitors entered the allegedly monopolized market; (2) prices for portion packs decreased; and (3) output tripled.

Under well-settled law, a plaintiff bringing monopolization claims must show that the defendant has monopoly power in a market protected by significant barriers to entry and that its actions harmed competition by restricting output and raising price. In light of the undisputed facts, Plaintiffs cannot establish *any* of these elements, much less all of them as required.

Summary judgment is favored in antitrust cases, and the undisputed facts compel it here. It is time for this litigation to end.

## STATEMENT OF FACTS

**Keurig** introduced its first brewing system in 1998, offering an innovative, easy-to-use coffee brewing system consisting of a brewer and compatible single-serve portion packs. (¶ 1); *Suchanek v. Sturm Foods*, 764 F.3d 750, 752 (7th Cir. 2014). Over the years, Keurig invested

1

heavily in improving the system and marketing its benefits.  (¶ 2)  For years, Keurig had patent protection on the filters inside of its portion packs, which it branded as K-Cup packs.  (¶ 3)  In 2012, however, Keurig's short filter patent expired, (¶ 4) and, as Walmart put it, "everybody and their brother" started selling Keurig-compatible packs.  (¶ 5)  These competitors included MDL plaintiffs TreeHouse and JBR as well as *many* other portion pack competitors that have not filed antitrust lawsuits, including Trilliant, Mother Parkers, Massimo Zanetti Beverages, Barrie House, Cameron's, and Westrock, to name just a few.

In 2014, Keurig launched its 2.0 Brewer, and several plaintiffs initiated this MDL.  One plaintiff sought a preliminary injunction to block the sale of the 2.0 Brewer, which it said would "lock out" competitors' packs.  This Court denied the motion, finding that it was "wholly uncertain" whether the 2.0 would be successful at all, much less cause imminent harm.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2014 WL 12778832, at *5-6 (S.D.N.Y. Sept. 19, 2014), *aff'd*, *JBR v. Keurig Green Mountain*, 618 F. App'x 31 (2d Cir. 2015).  The facts are now in, and the Court was right: competitors "hacked" the new brewer and were not locked out, (¶ 6) and the 2.0 Brewer was not a commercial success and was discontinued.  (¶ 7).

**Winn-Dixie** is one of the largest supermarket chains in the Southeast United States. (¶ 8).  Winn-Dixie files a lot of antitrust cases.  It has sued its suppliers of milk, eggs, various types of meat (beef, turkey, tunafish), potatoes and other grocery products.[1]  In the present case,

---

[1] *See, e.g., In re: Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD) (S.D. Cal.); *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, No. 5:15-cv-06480-TON (E.D. Pa.); *Winn-Dixie Stores, Inc. v. S. Milk, Inc.*, No. 3:15-cv-1143-J-39PDB (M.D. Fla.); *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (N.D. Ill.); *In re Cattle & Beef Antitrust Litig.*, No. 0:20-cv-01319 (D. Minn.); *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn.); *Winn-Dixie Stores, Inc. v. United Potato Growers of Am., Inc.*, No. 4:16-cv-00155 (D. Idaho); *In re: Processed Egg Products Antitrust Litig.*, No. 2:08-md-02002 (E.D. Pa.).

2

Winn-Dixie purports to bring claims that accrued to it and claims assigned to it by C&S Wholesale Grocers.  Compl. ¶¶ 1, 24-25, Case No. 1:21-cv-7504, ECF No. 1.

Winn-Dixie began selling Keurig-compatible portion packs in 2010.  (¶ 9)  By 2012, when Keurig's short filter patent expired, Winn-Dixie had *"a lot" of compatible pack suppliers* seeking space on its shelves.  (¶ 10)  It regularly reviewed its portion pack choices and adjusted its assortment.  (¶ 11)  As it explained, it had far more Keurig-compatible pack options than it could fit on its shelves.  It had "to take something out to put something in," and regularly turned down suppliers because it had no room for their products.  (¶¶ 12, 13)

Winn-Dixie has a team of professional buyers trained to negotiate with suppliers.  (¶ 14) Over the relevant period, its team secured decreasing prices from portion pack suppliers.  (¶¶ 15, 16, 17)

In November 2012, just two months after Keurig's short filter patent expired, Winn-Dixie launched Keurig-compatible packs under its private label brand, Winn & Lovett.  (¶ 18)  It chose TreeHouse – another plaintiff in this litigation – as its sole supplier of these packs.  (¶ 19)

In 2014, Keurig approached Winn-Dixie about potentially manufacturing private label packs for it, but Winn-Dixie turned Keurig away.  (¶ 20)  Later in 2014, Winn-Dixie started a selection process to evaluate a range of options for its Winn & Lovett packs, and **eleven different suppliers**, including Keurig, participated in the first round.  (¶ 21)  This is summed up in the bottom row of the Winn-Dixie ordinary course presentation excerpted and highlighted below, and included in full in Exhibit 26.

3

## Results

| | Massimo Zanetti | Hometown | Mother Parkers | GESOL | Coffee Bean Int'l | L & K | CLR | Cameron's | West Rock | Distant Lands | Trilliant | Bay Valley | Green Mountain |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mainstream Ground – Large Can | X | X | X | X | X | | | | | | | | |
| Mainstream Ground – Small Can | X | X | X | X | X | | | | | | | | |
| Mainstream Brick | X | X | X | X | | X | X | | | | | | |
| Instant | X | X | X | X | | | | | | | | | |
| Specialty – Single Origin | X | X | X | X | X | X | X | X | X | X | X | | |
| Specialty – Flavor Blends | X | X | X | X | X | X | X | X | X | X | X | | |
| Single Cup | X | X | X | | | X | X | X | X | X | X | X | X |

• Mother Parker's cannot do Hazelnut 29.2 oz can
• All single cup suppliers are Keurig 2.0 compliant

Brooke Rice Ex. 0006B, at 5

There is no coffee category in which Winn-Dixie had *more* suppliers competing for its business than Keurig-compatible portion packs. For instance, in mainstream coffee, Winn-Dixie had five suppliers vying for its business, compared to 11 in portion packs ("Single Cup" in the document). In fact, Winn-Dixie had so many Keurig-compatible pack options that it did not want to go to the effort of evaluating them all in depth. It therefore cut the field from 11 suppliers down to six to evaluate further. As shown in the same document, excerpted and highlighted again below, **Keurig was not even one of the six Keurig-compatible pack suppliers that Winn-Dixie chose to consider in depth**. (¶ 22)

4



Brooke Rice Ex. 0006B, at 1

Brooke Rice Ex. 0006B, at 8

Brooke Rice Ex. 0006B, at 9

Winn-Dixie decided to continue using TreeHouse (Bay Valley) as its sole private label pack supplier from 2014 to 2016.  (¶ 23)  Then, in 2016, it revisited the issue and selected Barrie House (Hometown Coffee), another non-Keurig manufacturer, to replace TreeHouse.  (¶ 24) Switching from TreeHouse to Barrie House reduced Winn-Dixie's private label portion pack costs by approximately 26%.  (¶ 25)  Winn-Dixie also found that Barrie House's packs were higher quality than TreeHouse's products.  (¶ 26)

Winn-Dixie has been selling private label portion packs for more than a decade now, and Keurig, the alleged monopolist, has *never* supplied these packs.  (¶ 27)  Keurig does sell branded portion packs to Winn-Dixie but, looking at *all* of Winn-Dixie's purchases including branded and private label portion packs, it bought from at least *15 different unlicensed suppliers* over the relevant period.  (¶ 28)  Its purchase data shows that, in 2019, it bought 48% of its total packs from unlicensed suppliers, and 38% from other competitors like Kraft and Smucker that have Keurig manufacture their cups but sell their own packs to retailers and compete for space on the shelf.  (¶ 29)  Winn-Dixie bought *less than 14% of its Keurig-compatible portion packs from*

5

*Keurig*.  (¶ 30)  The image below from a current Winn-Dixie store aisle is illustrative of what the company has admitted:  It buys from *many* suppliers other than Keurig.

**Winn-Dixie Coffee Aisle: Illustrative Brands by Manufacturer & Seller**



Yet Winn-Dixie filed a federal lawsuit alleging that it had no choice but Keurig.

**<u>BJ's Wholesale Club</u>** is a warehouse club that operates more than 230 stores and makes nearly $20 billion in annual revenue.  (¶ 31)  BJ's club store model involves offering a limited range of options within a product category but selling each at high volume.  (¶ 32)  This approach helps BJ's negotiate lower costs from its suppliers and allows it to offer lower prices to its members, who pay an annual membership fee and expect to find low prices at BJ's in return. (¶¶ 33, 34, 35)  Whereas a supermarket like Winn-Dixie carries hundreds of portion pack varieties, BJ's typically carries 20 or fewer varieties, also called Stock Keeping Units (SKUs). (¶¶ 36, 32).

6

As a result of BJ's "limited SKU" model, there were hundreds of portion pack options that BJ's chose not to carry.  BJ's has explained that the portion pack segment was ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (¶ 37)

BJ's used its limited set of SKUs as a tactic to press its suppliers for their very lowest prices if they wanted a chance for one of the limited slots available.  For example, BJ's told ▮▮▮▮ that it would eliminate Keurig's Decaf K-Cup packs from its shelves and give space to ▮▮▮ if ▮▮▮▮ lowered its prices substantially.  (¶ 38) ▮▮▮▮ lowered its prices as requested, and BJ's cut the Keurig SKU.  *Id.*  More broadly, even if a supplier's packs made it onto BJ's shelves, BJ's would monitor sales performance closely and routinely "replac[ed] low-performers with better-performing" options.  (¶ 39)

BJ's "regularly interacted and negotiated with" at least 20 suppliers of Keurig-compatible portion packs.  (¶ 40)  BJ's hired the Boston Consulting Group to help its professional buyers sort through its many Keurig-compatible pack supply options and press its suppliers to compete to lower prices even further.  (¶¶ 41, 42, 43, 45)  Over the relevant time period, BJ's successfully secured decreasing portion pack prices.  (¶¶ 45, 46, 47)  In fact, BJ's obtained average pack prices even lower than the prices paid by Winn-Dixie.  (¶¶ 48, 49)  And BJ's experienced **"tremendous growth"** in its portion pack sales volume over the relevant period.  (¶ 50)

BJ's chose to use Keurig when it launched its own private label Wellsley Farms portion packs in 2014.  (¶ 51)  In 2015, the first full year of sales, Keurig sold 42 million Wellsley Farms packs to BJ's, and this volume more than doubled the following year.  (¶ 52)  The Wellsley Farms packs proved so popular that BJ's swapped out national brand packs to make more room for its own brand.  (¶ 53)  In 2016, BJ's held an auction in which ▮▮▮ suppliers competed to

supply even more varieties of Wellsley Farms portion packs.  (¶ 54)  In the five-year period from 2014 to 2019, the price that BJ's paid to Keurig for private label packs decreased by ▮.  (¶ 55)

**Procedural History.**  This multidistrict litigation began in 2014 when a portion pack competitor, TreeHouse, filed suit against Keurig.  *See* TreeHouse Compl., Case No. 1:14-cv-00905, ECF No. 2 (later amended).  Soon after, many copycat complaints were filed, including by a second portion pack competitor, JBR, and by purported class plaintiffs.  The cases were coordinated in this court.  ECF No. 1 (JPML transfer order).  After years of discovery, in 2021 the parties briefed class certification, summary judgment, and *Daubert* motions.  *See, e.g.,* ECF No. 1494 (Keurig's motion for summary judgment).

Seven years after the MDL began, just before motions for summary judgment were filed in the original set of cases, BJ's and Winn-Dixie filed their tag-along complaints, which were transferred to this MDL in September 2021.  Winn-Dixie Compl., Case No. 1:21-cv-04454, ECF No. 1 ("Winn-Dixie Compl."); BJ's Compl., Case No. 1:21-cv-04288, ECF No. 1 ("BJ's Compl.").  These two late-filed cases have proceeded through fact and expert discovery.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where, as here, the non-movant bears the burden of proof at trial, the "burden on the moving party may be discharged by 'showing'—that is pointing out to the district court— that there is an absence of evidence to support" one or more elements of the nonmovant's claims. *PepsiCo v. Coca-Cola*, 315 F.3d 101, 105, 107-08 (2d Cir. 2002) (quotation omitted) (affirming summary judgment for antitrust defendant based on **absence of evidence** supporting key elements of plaintiff's claims).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  Specifically, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *see also Burlington Coat Factory v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985).  "[A] party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial.'" *Wright v. Undercover Officer #84*, 2018 WL 4042101, at *3 (S.D.N.Y. Aug. 22, 2018) (Broderick, J.) (quoting *Burlington Coat*, 769 F.2d at 924).  "If the [plaintiff's] evidence is merely colorable . . . or is not significantly probative" that is insufficient to defeat summary judgment for the defendant.  *Anderson*, 477 U.S. at 249-50; *Tops Markets v. Quality Markets*, 142 F.3d 90, 95 (2d Cir. 1998) (any inferences in nonmovant's favor "must be reasonable in light of competing inferences of acceptable conduct").

**Summary judgment is "particularly favored" in antitrust cases** in order to avoid chilling procompetitive market forces.  *PepsiCo*, 315 F.3d at 104; *Savory Pie Guy v. Comtec Indus.*, 2016 WL 7471340, at *5 (S.D.N.Y. Dec. 28, 2016) (same).  Indeed, MDL Plaintiffs have acknowledged this point, and agree that **summary judgment is not just favored but "vital" in antitrust cases**.  ECF No. 1495 at 2; ECF No. 2040 (Winn-Dixie and BJ's adopting MDL plaintiffs' motion); *see also Tops Markets*, 142 F.3d at 95 (citing *Matsushita*, 475 U.S. at 588) (summary judgment in antitrust cases "avoid[s] wasteful trials").

## ARGUMENT

Plaintiffs allege that Keurig excluded unlicensed portion packs from the market in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, the Clayton Act, *id*. § 14, and the laws of Florida and Massachusetts.  All of Plaintiffs' claims fail as a matter of law.

Plaintiffs' monopolization claims are the heart of this case.  To prove monopolization in

9

violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, a plaintiff must show: (i) anticompetitive conduct; (ii) that creates or maintains monopoly power in a properly defined relevant market; and (iii) causes harm to overall competition resulting in antitrust injury to the plaintiff. *PepsiCo*, 315 F.3d at 105; *Clorox Co. v. Sterling Winthrop*, 117 F.3d 50, 57, 61 (2d Cir. 1997); *see also Gatt Commc'ns v. PMC Assocs.*, 711 F.3d 68, 75-78 (2d Cir. 2013). Plaintiffs also allege that Keurig entered illegal exclusive dealing agreements in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14, which likewise require a showing of anticompetive agreements that caused harm to overall competition in the market. *K.M.B. Warehouse v. Walker Mfg.,* 61 F.3d 123, 127-28 (2d Cir. 1995) (Sherman Act Section 1); *Empire Volkswagen v. World-Wide Volkswagen*, 814 F.2d 90, 97 (2d Cir. 1987) (Clayton Act Section 3). Finally, BJ's alleges a Massachusetts Consumer Protection claim under Mass. Gen Laws ch. 93A § 1 et seq., and Winn-Dixie alleges a claim for Florida unjust enrichment. These state claims are derivative of the federal antitrust claims.

All of Plaintiffs' claims fail as a matter of law. *First*, Plaintiffs cannot show harm to overall competition because it is undisputed that prices decreased and output expanded substantially. *Second*, Plaintiffs cannot show that Keurig has monopoly power in a market protected by significant barriers to entry because it is undisputed that more than a dozen competitors entered the alleged market. *Third*, Plaintiffs cannot show that Keurig's conduct was anticompetitive. Any one of these failures is fatal to Plaintiffs' claims and requires summary judgment for Keurig. *K.M.B. Warehouse*, 61 F.3d at 128 (summary judgment for defendant where prices had fallen); *Sterling Merch. v. Nestle S.A.*, 656 F.3d 112, 119-22 (1st Cir. 2011) (summary judgment for defendants where plaintiff could not show "market has suffered a reduction in output or an increase in consumer prices"); *Capital Imaging v. Mohawk Valley*, 996

10

F.2d 537, 539 (2d Cir. 1993) (summary judgment for defendant where plaintiff "has not shown that defendants' activities have had any adverse impact on price, quality, or output"); *Tops Markets*, 142 F.3d at 99 (summary judgment for the defendant in light of entry by a single competitor); *Savory Pie Guy*, 2016 WL 7471340, at *8-9 (summary judgment for defendant in light of evidence of entry); *Emigra Grp. v. Fragomen*, 612 F. Supp. 2d 330, 361-62 (S.D.N.Y. 2009) (summary judgment for defendant given lack of entry barriers).

## I.    Plaintiffs' Federal Antitrust Claims Fail as a Matter of Law.

### A.    Claims Fail For Lack of Harm to Competition.

"Antitrust law is not intended to be as available as an over-the-counter cold remedy, because were its heavy power brought into play too readily it would not safeguard competition, but destroy it." *Capital Imaging*, 996 F.2d at 539.  Accordingly, an antitrust plaintiff must show "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Id.* at 543.  Plaintiffs cannot make this showing here.

Winn-Dixie and BJ's alleged in their complaints that marketwide output decreased and prices increased.  *See, e.g.*, Winn-Dixie Compl. ¶ 19; BJ's Compl. ¶ 20.  But it is now undisputed that retail prices actually ***decreased by 20 percent*** and ***overall portion pack output tripled***. (¶¶ 56, 57)

11



Murphy Report Fig. 2

It is also undisputed that these same trends played out at Winn-Dixie's and BJ's. Winn-Dixie paid decreasing prices for Keurig-compatible portion packs, (¶ 49) and its sales volume increased seven fold. (¶ 58) BJ's also paid decreasing prices and sold increasing volumes of Keurig-compatible portion packs. (¶¶ 48, 59)

These undisputed facts preclude a finding of harm to competition, and Keurig is thus entitled to summary judgment. *Sterling Merch.*, 656 F.3d at 119-22 (summary judgment for defendants where plaintiff argued there would have been even more competition absent challenged conduct, because plaintiff still "ha[d] not shown the market has suffered a reduction in output or an increase in consumer prices"); *Capital Imaging*, 996 F.2d at 547.

## B.    Claims Fail For Lack of Monopoly Power.

Plaintiffs' claims independently fail because they cannot show monopoly power. Plaintiffs argue that Keurig has high market share in a Keurig-compatible portion packs market, and they define "Keurig" to include companies like Kraft and Smucker, for which Keurig manufactures cups, but which compete against Keurig and others for space on retail shelves.

12

Even without reaching Plaintiffs' erroneous definitions of the relevant market and of "Keurig," their share argument still fails to establish monopoly power. As a matter of law, market power is the "the ability to raise price profitably by *restricting output.*" *Ohio v. American Express*, 138 S. Ct. 2274, 2287-88 (2018) (emphasis in original); *PepsiCo*, 315 F.3d at 107. This requires that the market be protected by significant barriers to entry. *See, e.g.*, *Tops Markets*, 142 F.3d at 99 (summary judgment for defendant where "relative ease of competitive entry" precluded monopoly power); *Los Angeles Land v. Brunswick*, 6 F.3d 1422, 1425 (9th Cir. 1993) (even a "100% market share does not demonstrate that [defendant] had the power to control prices or exclude competition in the absence of any evidence that it could prevent entry of other market participants").

Plaintiffs cannot show significant barriers to entry here. It is undisputed that ***more than a dozen competitors*** entered the alleged relevant market. (¶ 60) These entrants expanded from selling 300 million compatible packs in 2012 when Keurig's short filter patent expired to selling around ***2.5 billion compatible portion packs per year*** by 2017. (¶ 61). Plaintiffs cannot pretend that these entrants and the billions of Keurig-compatible portion packs they sold do not exist. In fact, evidence from Winn-Dixie and BJ's only further illustrates how successful these entrants have been. Winn-Dixie bought portion packs from at least 15 unlicensed suppliers. (¶ 28) In 2019, the most recent year for which it produced data, Winn-Dixie chose to buy approximately half of its total portion packs from unlicensed suppliers, and bought less than 14% of its Keurig-compatible packs from Keurig. (¶¶ 29, 30) Winn-Dixie has used unlicensed suppliers to produce its private label portion packs for the past ***decade***. (¶ 62) These unlicensed packs have been its highest-selling portion packs by both units and dollars sold. (¶¶ 63, 64) Keurig, the alleged monopolist, has ***never*** supplied these packs to Winn-Dixie. (¶ 27) As noted, Winn-

13

Dixie had eleven firms compete to supply private label packs to it in 2014, (¶ 21) and had so many options that it did not even allow Keurig to advance to the second round. (¶ 22)

BJ's "regularly interacted and negotiated with" **at least 20 suppliers** for Keurig-compatible portion packs. (¶ 40) BJ's demanded very low prices. As JBR told BJ's in a contemporaneous email declining to bid for BJ's private label business, JBR was not interested in participating in BJ's "lowball auction." (¶ 65), Exhibit 50.

> We will not produce "me too" products, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ So, under your current requirements, ▮▮▮▮▮▮
> If you are interested in a truly innovative product that is superior in quality, lower in price, and 100% compostable, we would love to talk to you.
> Sincerely,
> Jim Rogers
> SVP
> Rogers Family Co.

Even so, BJ's had more pack suppliers willing to bid than it wished to consider in depth. Like Winn-Dixie, BJ's opted to eliminate multiple suppliers before conducting its taste test, in order to avoid "palate fatigue" from sampling all of the different Keurig-compatible pack options presented. (¶ 66)

Plaintiffs cannot show that Keurig has a monopoly in a market protected by significant barriers to entry when a dozen firms entered that purported market. Plaintiffs baldly alleged in their complaints that they were "deprived" of any choice of Keurig-compatible pack suppliers, but the undisputed facts firmly contradict this: Plaintiffs had **so many choices** that both retailers eliminated options before conducting taste tests. Because Plaintiffs cannot show significant barriers to entry, Keurig is entitled to summary judgment. *Tops Markets*, 142 F.3d at 99 (summary judgment for the defendant where successful entry by a single competitor "itself refutes any inference of the existence of monopoly power that might be drawn from [defendant's] market share."); *Savory Pie Guy*, 2016 WL 7471340, at *9 (summary judgment for defendant where evidence of entry prevented "the conclusion that defendant can control prices or exclude competition"); *Emigra Grp.*, 612 F. Supp. 2d at 362 (summary judgment for defendant

14

because "lack of barriers to entry … require[s] the conclusion that [plaintiff] had failed to raise a genuine issue of material fact as to [monopoly power]"); *CDC Techs. v. IDEXX Labs.*, 7 F. Supp. 2d 119, 130-31 (D. Conn. 1998) (summary judgment for defendant where there was no evidence of monopoly power because there were no substantial barriers to entry), *aff'd*, 186 F.3d 74 (2d Cir. 1999).

Winn-Dixie and BJ's make a related allegation, also under Section 2 of the Sherman Act, that Keurig *attempted* to monopolize a Keurig-compatible packs market. Winn-Dixie Compl. ¶¶ 246-56; BJ's Compl. ¶¶ 262-72. These claims fail for the same reason: "To state an attempted monopolization claim, a plaintiff must establish . . . 'a dangerous probability of achieving monopoly power.'" *PepsiCo*, 315 F.3d at 105, 109 (*quoting Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993)) (summary judgment for defendant because plaintiff failed to establish that defendant "has monopoly power or a dangerous probability of achieving it"). Relabeling the claims as "monopoly leveraging," as Plaintiffs attempt to do, likewise does not "dispense[] with a requirement that there be a 'dangerous probability of success'" that the defendant will monopolize the market. *Verizon v. Trinko*, 540 U.S. 398, 415 n.4 (2004).

Plaintiffs cannot prove a "dangerous probability" of monopolization here because, without significant barriers to entry, there cannot be *either* monopoly power or a dangerous probability of obtaining it. *See e.g.*, *AD/SAT v. Assoc. Press*, 181 F.3d 216, 229-30 (2d Cir. 1999) (summary judgment for defendant on attempted monopolization claim in light of "low barriers to market entry" that precluded plaintiff from proving "an essential element of its attempted monopolization claim," namely that there is a "dangerous probability" that the defendant "will achieve monopoly power"); *Barr Labs. v. Abbott Labs.*, 978 F.2d 98, 113-15 (3d Cir. 1992) (summary judgment for defendant on attempted monopolization claim where

15

"continued entry" defeated allegations of "high barriers to entry" and defendant thus had "no reasonable probability of success in any attempt to monopolize"); *Savory Pie Guy*, 2016 WL 7471340, at *11 (summary judgment for defendant on attempted monopolization claim because "a jury could not reasonably find there was a dangerous probability that defendant would monopolize the market" given that "at least one competitor—InLine Pie—was able to enter the market"); *nSight v. PeopleSoft*, 2005 WL 3299164, at *1 (N.D. Cal. 2005) ("Even where a defendant has a high market share, a dangerous probability of achieving monopoly power cannot exist in the absence of barriers to new entry or expansion.").

Finally, Plaintiffs try to relabel their Sherman Act Section 2 exclusive dealing claims as also being claims under Sherman Act Section 1 and Clayton Act Section 3. These relabeled claims also fail because Plaintiffs cannot show substantial market power given the lack of barriers to entry. ECF No. 1495 at 34 n.20 (MDL plaintiffs acknowledging that exclusive dealing claims require "a showing of significant market power"); ECF No. 2037 ¶ 1 (Winn-Dixie and BJ's joining).

### C.    Claims Fail For Additional Reasons.

While the Court need not reach the issue in light of the fatal flaws discussed above, Plaintiffs' claims also independently fail for reasons specific to each claim. As the Supreme Court has explained, "[t]o safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*" *Trinko*, 540 U.S. at 407. Plaintiffs assert that the following conduct was anticompetitive: (i) the 2.0 Brewer's design; (ii) alleged exclusive contracts; (iii) alleged tying of brewers and portion packs; (iv) purported sham litigation; and (v) certain Keurig advertising. Under controlling case law, Plaintiffs cannot show that *any* of the challenged conduct is anticompetitive.

16

### 1.    Product Design Claims Fail For Lack of Coercion.

Plaintiffs allege that Keurig's 2.0 Brewer was anticompetitive because it was designed to work with only Keurig licensed portion packs.  "As a general rule, courts are properly very skeptical about claims that competition has been harmed by a dominant firm's product design changes."  *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 652 (2d Cir. 2015); *see also Foremost Pro Color v. Eastman Kodak*, 703 F.2d 534, 544-45 (9th Cir. 1983).

Here, Plaintiffs' product design claims fail for many reasons.

First, as a matter of law, a new product cannot violate the antitrust laws if consumers are free to choose or reject it.  *Actavis*, 787 F.3d at 653-54.  In *Actavis*, the Second Circuit held that the defendant's "hard switch" of patients to its new drug by removing the old one from the market coerced consumers in violation of Sherman Act Section 2.  But, where a defendant launches a new product *without* removing its old one from the market "the free choice of consumers is preserved" and consumers can choose the product they want.  *Id.* at 654-55 (quoting *Berkey Photo v. Eastman Kodak*, 603 F.2d 263, 287 (2d Cir. 1979)).

Keurig's 2.0 Brewer gave consumers the option of a new brewer.  The 2.0 launch did not cause 1.0 brewers to stop working – anyone who owned a 1.0 brewer could keep using it. Keurig's 2.0 portion packs were "backwards compatible" and worked in Keurig 1.0 brewers. (¶ 67)  And consumers who wanted a new brewer were not forced to buy the 2.0, because **many other brewer options**, including the Keurig 1.0 brewer, remained available for purchase.  (¶ 68). Plaintiffs' product design claims thus fail as a matter of law.  *Actavis*, 787 F.3d at 653-54; *Berkey Photo*, 603 F.2d at 287; *Allied Orthopedic v. Tyco Health Care Grp.*, 592 F.3d 991, 1002 (9th Cir. 2010) (summary judgment for defendant because "Plaintiffs have provided no evidence that [defendant] used its monopoly power to force consumers . . . to adopt its new OxiMax technology.").  Plaintiffs' "technological tying" claims fail for the same reason: there was no

coercion of consumers to buy the 2.0 Brewer.  *Cf. Foremost*, 703 F.2d at 542-43 (dismissing technological tying claim); *Apple iPod iTunes Antitrust Litig.*, 2009 WL 10678940, at *5-6 (N.D. Cal. Oct. 30, 2009) (judgment for defendant because "consumers remained free at all times to purchase one or the other [of allegedly technologically tied products] without purchasing both").

Second, Plaintiffs' product design claims independently fail because the 2.0 Brewer did not lock out competitors.  While the 2.0 was being sold, it is undisputed that consumers could use unlicensed packs in the 2.0 Brewer.  (¶¶ 6, 7).

Third, Plaintiffs' product design claims independently fail because Plaintiffs do not claim Keurig has monopoly power in brewers in the first place.  Their expert did not define a brewer market at all, much less opine that Keurig has a brewer monopoly.[2]  *Actavis*, 787 F.3d at 651 (to prevail on a product design claim, plaintiff must prove "the defendant possessed monopoly power in the relevant market"); *Allied Orthopedic*, 592 F.3d at 1002 (summary judgment for defendant on product design claim where alleged market was competitive).

### 2.    Exclusive Dealing Claims Fail For Lack of Substantial Foreclosure.

Plaintiffs next claim that Keurig used exclusive contracts, and that this was anticompetitive conduct.  But exclusive sales contracts are "presumptively legal," *CDC Techs. v. IDEXX Labs.*, 186 F.3d 74, 80 (2d Cir. 1999), and cannot violate the antitrust laws unless they

---

[2] Plaintiffs' expert Dr. Leitzinger has not identified any brewer market as a relevant market and therefore BJ's and Winn-Dixie have abandoned this claim.  *City of New York v. Grp. Health*, 2010 WL 2132246, at *5 (S.D.N.Y. May 11, 2010) (granting summary judgment for defendant and rejecting plaintiff's alleged market definition where it was not supported by its own expert), *aff'd*, 649 F.3d 151 (2d Cir. 2011);  Ex. 29, Leitzinger (Mar. 17, 2023) Tr. 47:15-48:7 ("Q. And you did not identify a market for Keurig-compatible brewers; correct? A. Correct, I did not identify a brewer product market as being relevant for purposes of the analysis of the claims in this case. Q. You did not identify any brewer market? A. Correct. Q. And you didn't calculate Keurig's market share in any brewer market? A. Yes, that's – that's also correct. Q. You've not formed an opinion that there are barriers to entry into any brewer market? A. No, I have not. Q. You've not formed an opinion that Keurig has monopoly power in any brewer market? [Objection] A. I have not offered an opinion that Keurig has market power as to brewers.").

"foreclose competition in a substantial share of the line of commerce affected." *Tampa Elec. v. Nashville Coal*, 365 U.S. 320, 327 (1961). Winn-Dixie itself did not enter into any exclusive contracts with Keurig. (¶ 69) BJ's never had an exclusive contract with Keurig for branded products and, when BJ's wanted a non-exclusive private label contract with Keurig, it got one. (¶¶ 70, 71) To the extent Plaintiffs are suggesting that Keurig had exclusive contracts to obtain certain inputs for Keurig-compatible packs, like plastic cups or foil lids or brands, those claims fail because it is undisputed that more than a dozen unlicensed suppliers secured all the inputs they needed to enter and therefore were not foreclosed from the market. (¶¶ 60, 28, 40). *CDC Techs.*, 186 F.3d at 80-81 (summary judgment for defendant on exclusive dealing claims where competitors experienced a "sales increase[]"); *Susser v. Carvel*, 332 F.2d 505, 517-18 (2d Cir. 1964) (summary judgment warranted because "plaintiffs failed to prove that [competitors] were foreclosed from alternate sources of supply.") Plaintiffs cannot establish that competitors were unable to enter. (¶ 72)

Plaintiffs also attack several Keurig acquistions from more than a decade ago, but there are no facts supporting Plaintiffs' speculative theory that any of these transactions substantially reduced competition. Again, among other flaws, Plaintiffs do not dispute that more than a dozen unlicensed pack suppliers entered so they cannot show that the acquired brands (*e.g.*, Diedrich) were uniquely situated to possibly enter and deconcentrate the alleged market. *U.S. v. Siemens*, 621 F.2d 499, 509 (2d Cir. 1980); *see also, e.g., Tenneco v. FTC*, 689 F.2d 346, 352, 354 (2d Cir. 1982); *cf.* ECF No. 1538 at 20 (TreeHouse noting that, in light of extensive real world entry, any additional entrants would be "unlikely to have had an incremental effect on prices").

19

### 3. Tying Claims Fail Because Brewers and Portion Packs Were Sold Separately.

Plaintiffs' tying claims fail because it is undisputed that brewers and packs were sold separately. Tying claims require, among other things, evidence that the seller "forced the buyer to accept the tied product" along with the tying product, which was not available for purhcase separately. *Yentsch v. Texaco*, 630 F.2d 46, 56-59 (2d Cir. 1980) (judgment for defendant on tying claim where there was insufficient evidence of tying product market power); *Charych v. Siriusware*, 790 F. App'x 299, 303 (2d Cir. 2019) (similar under Sherman Act Section 2). Here, it is undisputed that **Winn-Dixie bought portion packs but did not buy Keurig brewers at all**. (¶ 73) BJ's bought brewers and packs, but did so using two independent buying teams that separately purchased the two different products. (¶ 74) *Nobel Sci. Indus. v. Beckman Instruments*, 670 F. Supp. 1313, 1325 (D. Md. 1986), *aff'd*, 831 F.2d 537 (4th Cir. 1987) (summary judgment for defendant on tying claim where "the items could be bought separately" from the defendant or other suppliers); *Amerinet v. Xerox*, 972 F.2d 1483, 1500-01 (8th Cir. 1992) (summary judgment for defendant on tying claim where customers could buy alleged tying product separately). The tying claims also fail for multiple additional reasons including lack of market power in the purported tying good, i.e., brewers. *See, e.g.*, *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 417-23 (S.D.N.Y. 2005) (summary judgment for defendant given absence of evidence of market power in tying good); *supra* note 2.

### 4. Sham Litigation Claims Fail Because Prior Suits Were Not Baseless.

Plaintiffs claim that Keurig filed sham lawsuits against TreeHouse and JBR more than a decade ago. These claims fail for several reasons, including because the two suits were not objectively baseless. *Professional Real Est. Inv. v. Columbia Pictures*, 508 U.S. 49, 60, 64-65 (1993) ("*PRE*"). Keurig obtained a favorable result on all of the non-patent claims. (¶¶ 75, 76,

20

77).  Although some of Keurig's claims in those two suits were ultimately unsuccessful, *even a total loss* does not make litigation "objectively baseless."  *PRE*, 508 U.S. at 60 n.5.  "[T]here is nothing that prevents a litigant from attempting to prevail on a novel litigation strategy in different courts, as Keurig did."  ECF No. 1243 (Broderick, J.).  Plaintiffs' tacked-on "patent misuse" claims fail because patent misuse can arise only when patents are actively being asserted against the party raising the patent misuse defense, *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329, 1331-32 (Fed. Cir. 2010), and Keurig is not asserting any patents against any plaintiff here.

### 5.    Advertising Claims Fail As a Matter of Law.

Plaintiffs attack some of Keurig's advertising as a purported violation of the antitrust laws.  *See, e.g.,* Winn-Dixie Compl. ¶ 191; BJ's Compl. ¶ 202 (alleging Keurig said unlicensed pack quality is inferior to Keurig's K-Cup packs).  As a threshold matter, there is a presumption against antitrust claims based on advertising.  *Nat'l Ass'n of Pharm. v. Ayerst Labs.*, 850 F.2d 904, 916 (2d Cir. 1988).  Plaintiffs must show, among other strict requirements, that the challenged statements were clearly false, clearly material, and made for prolonged periods, and that customers reasonably relied on the statements in making purchasing decisions.  *Id.; see also Reed Constr. Data v. McGraw-Hill*, 638 F. App'x 43, 46 (2d Cir. 2016).  Plaintiffs cannot establish any of these elements, including statements that were false.  *Davis v. Avvo*, 345 F. Supp. 3d 534, 541-42 (S.D.N.Y. 2018) (claims with "no definite meaning," are puffery).  The claims also fail because BJ's and Winn-Dixie cannot show that they relied on the statements.  To the contrary, as they have acknowledged, "a lot of suppliers believe they have the best coffee," and Plaintiffs have admitted that they do not rely on marketing claims by salespeople. (¶ 78) Instead, Plaintiffs conduct their own evaluations, and form their own opinions of Keurig-compatible packs.  (¶¶ 79, 80, 81)

* * *

In summary, Plaintiffs' federal antitrust claims require them to show: (i) harm to competition; (ii) that results from monopoly power in a market guarded by significant barriers to entry; *and* (iii) that was caused by anticompetitive conduct. *PepsiCo*, 315 F.3d at 105, 107-08; *Clorox*, 117 F.3d at 57, 61; *see also Gatt Commc'ns*, 711 F.3d at 75-78. Plaintiffs cannot show *any* of these elements: They cannot show harm to competition where it is undisputed that output expanded and price decreased; they cannot show monopoly power in a market guarded by significant barriers to entry where it is undisputed that more than a dozen competitors entered; and they cannot show anticompetitive conduct under controlling law governing each type of conduct challenged (*e.g.*, the product design claims fail because it is undisputed that the old product remained on the market; the tying claims fail because it is undisputed that brewers and packs are sold separately). The Court should grant summary judgment to Keurig on all of Plaintiffs' federal claims.

## II. Plaintiffs' State Law Claims Fail for the Same Reasons as Their Federal Claims.

BJ's Massachusetts Consumer Protection claim, Mass. Gen Laws ch. 93A § 1 et seq., and Winn-Dixie's Florida unjust enrichment claim are derivative of their antitrust claims and fail for the same reasons. BJ's unfair competition claim that "Keurig's anticompetitive conduct" caused it to pay "more for K-Cups," BJ's Compl. ¶ 287, is a rehash of its antitrust claim. *RSA Media v. AK Media Group*, 260 F.3d 10, 16 (1st Cir. 2001) (Massachusetts 93A claims "perish along with their antitrust hosts"); *Suzuki of W. Mass. v. Outdoor Sports Expo*, 126 F. Supp. 2d 40, 50 (D. Mass. 2001) (summary judgment on antitrust and Massachusetts 93A claims where "plaintiff [made] no unique arguments related to his [unfair competition] claim"). And Winn-Dixie's unjust enrichment claim that Keurig obtained "unlawful overcharges and monopoly profits . . . through charging supra-competitive and artificially inflated prices for K-Cups," Winn-Dixie

22

.

¶¶ 271-72, is also a rehash of its antitrust claim and fails for the same reasons. *Muy v. IBM*, 2019 WL 8161749, at *3 (N.D. Fla. Nov. 25, 2019) (plaintiff alleging unjust enrichment under Florida law "must have another 'actionable wrong' independent from the unjust enrichment claim").

### III. The Court Should Grant Summary Judgment Against Winn-Dixie's Claim for Damages Based on Purchases From Starbucks and Smucker.

For the reasons discussed above, Keurig is entitled to summary judgment on liability on all claims. Keurig is separately entitled to summary judgment on damages as to Winn-Dixie's attempt to claim damages on purchases of portion packs from Starbucks and Smucker. Ex. 17, Asher Rpt. ¶ 9 ("Counsel has requested that I calculate overcharge damages to Winn-Dixie on its purchases of Keurig K-Cups and the K-Cups of Other Suppliers, specifically Starbucks and J.M. Smucker."). Winn-Dixie, through its assignor, C&S Wholesale Grocers, purchased "Starbucks from Starbucks" and "Smucker from Smucker" – that is, it did not purchase either of these groups of portion packs *from Keurig*. (¶ 82) As such, the purported damages are indirect and not recoverable. *See, e.g.*, *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977) (barring antitrust recovery for indirect purchases); *Simon v. KeySpan*, 694 F.3d 196, 201 (2d Cir. 2012) (same).

### CONCLUSION

For the foregoing reasons, Keurig requests summary judgment on all Plaintiffs' claims.

Dated: June 13, 2023

*/s/ Leah Brannon*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
**Kenneth S. Reinker**
**Carl Lawrence Malm**
**Zach Tschida**
lbrannon@cgsh.com
kreinker@cgsh.com
lmalm@cgsh.com
ztschida@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone:  202-974-1500

**Rahul Mukhi**
rmukhi@cgsh.com
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000

*/s/ Wendelynne J. Newton*
BUCHANAN INGERSOLL & ROONEY PC
**Wendelynne J. Newton**
**Gretchen L. Jankowski**
**Mackenzie A. Baird**
wendelynne.newton@bipc.com
gretchen.jankowski@bipc.com
mackenzie.baird@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Telephone: 412-562-8800

*Attorneys for Defendant Keurig Green Mountain, Inc.*

24