**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542 |
| | Docket No. 1:14-md-02542 (VSB) (SLC) |
| *This Document Relates to*: | Related Case Nos. 1:21-cv-7504; 1:21-cv-7493 |
| BJ'S WHOLESALE CLUB, INC., | |
| Plaintiff, | **REDACTED PUBLIC VERSION** |
| against- | |
| KEURIG GREEN MOUNTAIN, INC., | |
| Defendant. | |
| AND | |
| WINN-DIXIE STORES, INC.; and BI-LO HOLDING, LLC, | |
| Plaintiff, | |
| against- | |
| KEURIG GREEN MOUNTAIN, INC., | |
| Defendant. | |

**KEURIG'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT IN THE *BJ'S* AND *WINN-DIXIE* ACTIONS**

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 1

I.    Plaintiffs' Federal Antitrust Claims Fail as a Matter of Law............................................. 1

   A.    Claims Fail For Lack of Harm to Competition.............................................. 1

   B.    Claims Fail For Lack of Monopoly Power. .................................................. 3

   C.    Claims Fail For Lack of Anticompetitive Conduct. ...................................... 6

II.    Plaintiffs' State Law Claims Fail For the Same Reasons.................................................. 8

III.    Winn-Dixie Cannot Pursue Damages For Indirect Purchases. ....................................... 9

IV.    The Court Should Not Consider Plaintiffs' Improper Incorporation By Reference. ..... 10

CONCLUSION........................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*AD/SAT v. Associated Press*,
  181 F.3d 216 (2d Cir. 1999).................................................................................10

*Bailey v. Allgas*,
  284 F.3d 1237 (11th Cir. 2002) ..............................................................................7

*Brooke Grp. v. Brown & Williamson*,
  509 U.S. 209 (1993).................................................................................................4

*Capital Imaging v. Mohawk Valley*,
  996 F.2d 537 (2d Cir. 1993)....................................................................................1

*City of Groton v. Connecticut Power & Light*,
  662 F.2d 921 (2d Cir. 1981).....................................................................................6

*City of New York v. Grp. Health*,
  2010 WL 2132246 (S.D.N.Y. May 11, 2010), *aff'd*, 649 F.3d 151 (2d Cir. 2011)...............6-8

*Dickson v. Microsoft*,
  309 F.3d 193 (4th Cir. 2002) ...................................................................................9

*Eatoni v. RIM*,
  486 F. App'x 186 (2d Cir. 2012) .............................................................................6

*Geneva Pharms v. Barr Labs*,
  386 F.3d 485 (2d Cir. 2004).....................................................................................4

*H.L. Hayden v. Siemens*,
  672 F. Supp. 724 (S.D.N.Y. 1987)..........................................................................10

*Illinois Brick v. Illinois*,
  431 U.S. 720 (1977).................................................................................................9

*In re AXA*,
  595 F. Supp. 3d 196 (S.D.N.Y. 2022).....................................................................10

*In re Keurig*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019)...................................................................................5

*Matsushita v. Zenith Radio*,
   475 U.S. 574 (1986)..............................................................................................................10

*Mazda v. Carfax*,
   2016 WL 7231941 (S.D.N.Y. Dec. 9, 2016), *aff'd sub nom.*, 726 F. App'x 66 (2d Cir.
   2018) ......................................................................................................................................7

*PepsiCo v. Coca-Cola*,
   315 F.3d 101 (2d Cir. 2002).................................................................................................1

*Prof'l Real Est. Inv. v. Columbia Pictures*,
   508 U.S. 49 (1993)................................................................................................................8

*Reazin v. Blue Cross & Blue Shield*,
   899 F.2d 951 (10th Cir. 1990) .............................................................................................5

*RSA Media v. AK Media*,
   260 F.3d 10 (1st Cir. 2001)..................................................................................................9

*Sterling Merch. v. Nestle*,
   656 F.3d 112 (1st Cir. 2011).............................................................................................1, 3

*Suzuki v. Outdoor Sports*,
   126 F. Supp. 2d 40 (D. Mass. 2001) ....................................................................................9

*Tops Markets v. Quality Markets*,
   142 F.3d 90 (2d Cir. 1998)...................................................................................................4

*Trendsettah USA v. Swisher*,
   2016 WL 6822191 (C.D. Cal. Jan. 21, 2016) ......................................................................5

*United States v. Dentsply*,
   399 F.3d 181 (3d Cir. 2005).................................................................................................5

*Wright v. Ernst & Young*,
   152 F.3d 169 (2d Cir. 1998).................................................................................................10

*Xerox v. Media Sciences*,
　　660 F. Supp. 2d 535 (S.D.N.Y. 2009)........................................................................................3

## ARGUMENT

There is no genuine dispute of material fact in this case.  The complaints allege that Keurig violated the antitrust laws by locking its competitors out of the market, raising prices, and restricting output.  But Plaintiffs now admit that many competitors entered the alleged market, prices fell, and output expanded.  (¶¶ 56, 57, 60)  In light of the undisputed facts, Plaintiffs cannot show multiple elements of their claims, including harm to competition and monopoly power.  *PepsiCo v. Coca-Cola*, 315 F.3d 101, 105, 107-08 (2d Cir. 2002).  Summary judgment is favored in antitrust cases, and the Court should grant summary judgment to Keurig here.

### I.  Plaintiffs' Federal Antitrust Claims Fail as a Matter of Law.

#### A.    Claims Fail For Lack of Harm to Competition.

Plaintiffs acknowledge that, over the relevant period (2012 to 2019), portion pack prices decreased by 20% and output tripled.  (¶¶ 56, 57)[1]  Under settled law Plaintiffs cannot show harm to competition, and this compels summary judgment for Keurig.  Mot. at 10-12.  Plaintiffs argue that, if you set aside the big picture and focus on just the right snapshot in time, prices might be flat or sales might decline at one retailer's stores.  But the **antitrust laws focus on the big picture**—overall competition—and there is no material dispute about that picture here.

Instead, Plaintiffs raise immaterial quibbles.  For example, Winn-Dixie argues that, at some point within the relevant period, the prices it paid were "steady" before continuing their decline.  Opp. at 9.  But it is undisputed that prices declined over the full period, and this is fatal. *Capital Imaging v. Mohawk Valley*, 996 F.2d 537, 539 (2d Cir. 1993) (plaintiff must show "adverse impact on price"); *Sterling Merch. v. Nestle*, 656 F.3d 112, 122 n.4 (1st Cir. 2011) (showing prices "remained relatively constant" is insufficient).  Moreover, using accurate math,

---

[1] Citations to (¶) reference Keurig's Reply in support of ECF No. 2064.  Citations to (P¶) reference Keurig's Response to Plaintiffs' Counter-Statement, ECF No. 2100.

even during Winn-Dixie's chosen snapshot in time, its prices decreased by about 8%.  (¶ 49)

Plaintiffsdo not dispute that the prices they paid for portion packs followed industry trends, decreasing over the relevant period.  (¶¶ 48, 49)  BJ's argues that for one product it bought Keurig increased its box size and price.  Opp. at 5.  But this is neither relevant nor accurately presented:  Keurig switched to a 100-count box for BJ's private label in 2015, but (1) this was done at BJ's demand; (2) the cost per cup did *not* increase; and (3) BJ's described the new box as a "Huge win" for BJ's.  (P¶ 2027)  Plaintiffs also argue that perhaps they paid less over time in part because private label pack prices decreased.  Opp. at 9-10.  But Plaintiffs allege a single Keurig-compatible packs market in which private label and national brands compete, (P¶ 2032) and it is undisputed that prices in the alleged market decreased.  (¶ 57)  Plaintiffs' expert likewise acknowledged the market-wide price decrease, and testified that pricing to BJ's and Winn-Dixie was not relevant to overall competition in any case.  (¶¶ 48, 49, 57)

Plaintiffsfurther acknowledge that their Keurig-compatible pack sales volume increased over the period.  (¶¶ 58, 59)  Winn-Dixie says its sales "declined" in 2015 and 2017, Opp. at 8, two years in which it closed many stores.  (¶ 58)  BJ's says that in one year its sales decreased by 1.7%, Opp. at 8, which its records show was caused by BJ's decision to pursue higher profit margins.  (¶ 59)  These snapshots are irrelevant.  Plaintiffs concede that their own and—more important—**market-wide output increased dramatically over the relevant period**.  (¶ 56)

Finally, Plaintiffs make a few other meritless arguments in an effort to avoid summary judgment for lack of harm to competition.  For example, they assert that their damages experts "found evidence of harm."  Opp. at 14.  But Plaintiffs' damages experts admitted that, as directed

by counsel, they *assumed* evidence of harm and attempted to calculate damages on that basis.[2]

Telling an expert to assume a proposition is not "evidence."  Winn-Dixie also makes some deep

in the weeds irrelevant arguments about whether Keurig liked one of its shelf displays or once

decreased funding for one promotional campaign, but even Winn-Dixie does not claim that these

points affected market-wide competition.  Opp. at 6-7.[3]

In short, Plaintiffs identify no monopolization case that proceeded to trial with facts like

those here, including decreasing prices and expanding output.  To the contrary, courts reject

efforts to evade summary judgment by distracting attention away from overall competition.  For

example, in *Sterling*, the court granted summary judgment for the defendant where consumer

prices were "lower in 2007 than they were in 2001" despite evidence that the defendant

"increased prices by 15 percent to some of its retailers."  656 F.3d at 122, n.4.  Similarly, in

*Xerox v. Media Sciences*, the court granted summary judgment to the defendant in light of

"substantial uncontested evidence that … prices have decreased" over a seven-year period

despite evidence that defendant raised prices to the market three times within that period.  660

F. Supp. 2d 535, 549-50 (S.D.N.Y. 2009).  Plaintiffs cannot show harm to competition and are

therefore not entitled to a trial.  Mot. at 11-12.

**B.    Claims Fail For Lack of Monopoly Power.**

Plaintiffs' claims independently fail because Plaintiffs cannot show the required element

of monopoly power.  It is now undisputed that numerous competitors successfully entered the

alleged market.  (¶ 60)  Plaintiffs cannot establish that there are significant barriers precluding

---

[2] Keurig Ex. 58, Asher Tr. 42:17-45:5 (Winn-Dixie expert testifying counsel asked him to assume "Winn-Dixie can prove its case at trial"); Keurig Ex. 59, Johnson Tr. 24:15-25:18 ("Q. Are you offering an opinion that any particular form of conduct was or was not anticompetitive?  [Objection] A. No.").

[3] (P¶¶ 2036, 2037, 2038, 2039); Keurig Ex. 60, Sturgill (Winn-Dixie) Tr. 70:4-10 ("Q. Suppliers couldn't force Winn Dixie to put their product in any particular spot? A. No, definitely not.").

entry, and thus cannot show monopoly power. *Tops Markets v. Quality Markets*, 142 F.3d 90, 99 (2d Cir. 1998); Mot. at 12-16.

Plaintiffs do not dispute that ***more than a dozen portion pack competitors entered*** the alleged market and expanded their sales. (¶¶ 60, 61)  Plaintiffs argue that, even though these entrants sold billions of portion packs, perhaps they might have sold even more in a but-for world. Opp. at 4.  But the volume of competitors' sales is not the focus of the antitrust laws. *Brooke Grp. v. Brown & Williamson*, 509 U.S. 209, 224-25 (1993).  These firms entered and grew dramatically.  As Plaintiffs' expert put it, unlicensed manufacturers "all succeeded in getting the inputs they needed."  Keurig Ex. 61, Leitzinger (Apr. 2, 2021) Tr. 126:1-6.  And Plaintiffs themselves worked with these entrants:  BJ's identified a long list of suppliers with which it negotiated.  (¶ 40)  Plaintiffs' brief misleadingly suggests these suppliers were "Keurig and its partners," Opp. at 11, but it is undisputed that ***at least 20 of these suppliers*** are unlicensed.  (¶ 40)  Winn-Dixie, for its part, argues that while it bought packs from ***at least 14 unlicensed suppliers***, it chose to buy more packs from some than others.  Opp. at 9.  This is truly beside the point.  The material facts are that many suppliers entered and expanded their sales, (¶¶ 60, 61), and Plaintiffs cannot show that significant barriers precluded entry.

Plaintiffs ask the Court to ignore all the entry and just look at purported market share. But ease of entry cannot be ignored.  Mot. at 12-16; *Tops Markets*, 142 F.3d at 99 (entry by competitors "refutes any inference of the existence of monopoly power that might be drawn from [defendant's] market share.").  Plaintiffs cite *Geneva Pharms v. Barr Labs*, Opp. at 16, for the proposition that entry can be ignored, but the case does not support this assertion:  There, the court held market share can only be considered "*in conjunction with* other characteristics, such as … barriers to entry."  386 F.3d 485, 500-01 (2d Cir. 2004) (emphasis added).  Plaintiffs also

4

cite other, out-of-Circuit cases, but none suggests that the court may ignore ease of entry.  *U.S. v. Dentsply*, 399 F.3d 181, 194, 196 (3d Cir. 2005) (noting lack of entry into "the stagnant, no growth" market); *Reazin v. Blue Cross & Blue Shield*, 899 F.2d 951, 971-73 (10th Cir. 1990) (market had government-created barriers); *Trendsettah USA v. Swisher*, 2016 WL 6822191, at *6-7 (C.D. Cal. Jan. 21, 2016) (court found evidence of "significant barriers to entry").

Plaintiffs also claim this Court "previously held" that "entry 'by at least a dozen competitors'" is not relevant, Opp. at 15, but this, too, is wrong:  In its Motion to Dismiss Order, the Court noted that the "extent to which competitors were excluded" is "fact-dependent" and not appropriate to resolve on a motion to dismiss.  *In re Keurig*, 383 F. Supp. 3d 187, 237 (S.D.N.Y. 2019).  Years of discovery later, Plaintiffs have identified *no competitor* that was excluded and it is undisputed that more than a dozen unlicensed competitors entered.  (¶ 60)

Finally, Plaintiffs argue that Keurig had "control" over some brands because it manufactured portion packs for them, and Plaintiffs label this "direct evidence" of monopoly power.  Opp. at 17.  But Plaintiffs cite no case holding that manufacturing a product for a brand is direct evidence of monopoly power.  Moreover, while there is no need for the Court to reach the issue, the brands that use Keurig for manufacturing compete aggressively with Keurig and others for space on retail shelves, and retailers like BJ's and Winn-Dixie play licensed brands off of one another.  *See, e.g.*, (P¶¶ 2035, 2014, 2026); Keurig Ex. 33, O'Brien (BJ's) Tr. 110:5-14 ("Q. So BJ's offered to eliminate [Keurig's] Green Mountain Decaf K-Cup to give ███████ exclusivity as the only decaf K-Cup SKU? [Objection] A. Yes."); (¶¶ 17, 38, 45, 46, 47)[4]

---

[4] BJ's raises two other immaterial and inaccurate arguments.  Opp. at 4.  First, it says Keurig "hesitated" to change a Kraft SKU from 84-count to 100-count, but Keurig made this change.  (P¶ 2026)  And BJ's complains it ██████████████████████████████████████ but that is not a restriction on output, and the SKUs were on the market for consumers to buy if they wished.  (P¶ 2028)

In sum, the undisputed evidence shows many suppliers successfully entered the alleged market. Plaintiffs had far more portion pack options than they could carry, and had to discontinue products to make room for new ones. (¶¶ 11-13, 37, 39, 50, 52-53) This is far from a market "deprived of choice" due to a Keurig monopoly as alleged in Plaintiffs' complaints.

### C.    Claims Fail For Lack of Anticompetitive Conduct.

Plaintiffs' claims fail for a third independent reason: the undisputed facts preclude a showing that the challenged conduct is anticompetitive. Plaintiffs complain that Keurig analyzes each type of challenged conduct under controlling law, Opp. at 18, but that is precisely what the law requires: Conduct that is "not independently anti-competitive" is "not cumulatively anticompetitive either." *Eatoni v. RIM*, 486 F. App'x 186, 191 (2d Cir. 2012); *City of Groton v. Connecticut Power & Light*, 662 F.2d 921, 928-29 (2d Cir. 1981) ("[W]e reject the notion that if there is a fraction of validity to each of the basic claims and the sum of the fractions is one or more, the plaintiffs have proved a violation of section 1 or section 2 of the Sherman Act.").

***Brewer Product Design***. Plaintiffs challenge the design of the 2.0 Brewer, but it is undisputed that Keurig's 1.0 brewers and other brewers remained on the market at all times. (¶ 68) Consumers were not coerced to buy the 2.0 Brewer, and this precludes Plaintiffs' product design claim. Mot. at 17. BJ's argues that *within its stores* there was a brief period when it did not carry the 1.0 brewer. Opp. at 19. That was BJ's choice, (P¶¶ 2016, 2017) and it is undisputed that 1.0 brewers remained widely available. The product design challenge also fails for lack of evidence that Keurig had a brewer monopoly. Mot. at 18. Plaintiffs do not dispute this element is required, but argue that Keurig has not moved for summary judgment in its own favor on market definition. Opp. at 19 n.5. But *Plaintiffs* must support each element of their claim, and their expert did not identify a "brewer market" at all, much less one in which Keurig has monopoly power. Mot. at 18 n.2; *City of New York v. Grp. Health*, 2010 WL 2132246, at *5

6

(S.D.N.Y. May 11, 2010) (rejecting plaintiff's market definition that was not supported by its own expert), *aff'd*, 649 F.3d 151 (2d Cir. 2011); *Bailey v. Allgas*, 284 F.3d 1237, 1246 (11th Cir. 2002) ("Construction of the relevant market ... must be based on expert testimony.").

*Exclusive Dealing*.  Winn-Dixie and BJ's argue that they bought a high share of packs from Keurig.  Opp. 20.  But, under established law, that does not create substantial foreclosure.  Buying from one supplier does not mean all other suppliers were "foreclosed."  Foreclosure requires (among other things) exclusive contracts locking up a substantial portion of the overall market.  Mot. at 18-19; *Mazda v. Carfax*, 2016 WL 7231941, at *5 (S.D.N.Y. Dec. 9, 2016) (granting summary judgment for lack of substantial foreclosure), *aff'd sub nom.*, 726 F. App'x 66 (2d Cir. 2018).[5]  Plaintiffs do not deny these points:  Winn-Dixie did not have any agreement with Keurig that prevented it from stocking any portion pack.  (¶ 69)  And BJ's had no exclusivity as to national brand packs, which are more than ▮ of its purchases.  (¶¶ 70, 71); Keurig Ex. 4, Murphy Rpt. Ex. 27 (summarizing BJ's portion pack purchases) .

*Tying*.  The undisputed facts also preclude Plaintiffs' tying claims.  BJ's admits it bought packs and brewers separately, and Winn-Dixie admits it did not buy brewers at all.  (¶¶ 73, 74)  Plaintiffs admit Keurig did not "tie" anything sold to them, but they argue that Keurig "ties" brewers and packs sold to *office distributors*.  Opp. at 20.  There are many critical flaws in this claim, including that Plaintiffs do not allege it in their Complaints.  *Cf.* BJ's Compl. ¶¶ 232, 265; Winn-Dixie Compl. ¶¶ 215, 249.  And Plaintiffs do not explain how this alleged tying would harm Plaintiffs.  Plaintiffs do not buy from office distributors.  Indeed, if distributors charged higher prices for portion packs as a result of alleged tying that would *benefit* a competing sales

---

[5] Plaintiffs do not dispute that their claims based on old acquisitions fail.  Mot. at 19.

channel like BJ's, which sells to offices. (¶ 57)  Plaintiffs also cannot show Keurig has market power in the purported tying good, brewers.  Mot. at 20.[6]  *Grp. Health*, 2010 WL 2132246, at *5.

    ***Sham Litigation***.  The sham litigation claim fails as a matter of law because the litigation at issue was not objectively baseless.  Mot. at 20-21; (¶¶ 75-77); *Prof'l Real Est. Inv. v. Columbia Pictures*, 508 U.S. 49, 60, 65 (1993).  Winn-Dixie's claim that the litigation delayed its private label launch is thus legally irrelevant as well as inaccurate.  Opp. at 21.  Winn-Dixie launched its private label in November 2012 promptly after Keurig's short filter patent expired and while the challenged litigation was ongoing.  (P¶ 2047)  Plaintiffs do not dispute that their patent misuse claims fail because Keurig is not asserting patents against them.  Mot. at 21.

    ***Advertising***.  Antitrust claims based on advertising are strongly disfavored.  Mot. at 21.  Plaintiffs identify no evidence that the challenged statements were "clearly false" or "clearly material," much less that they affected overall competition as required to support a claim.  *Id.*  Winn-Dixie says that at some point in 2014 Keurig told its buyer that the 2.0 Brewer worked only with Keurig licensed packs.  Opp. at 7.  But Winn-Dixie admits that its buyer checked unlicensed packs in the brewer and they ***did not work***.  Opp. at 7; (P¶ 2040)  There is no dispute that this statement was true when made.  BJ's also points to an even earlier statement about the 2.0 Brewer in December 2013, Opp. at 4-5, but again this statement was true because no competitor had yet hacked the brewer.  (P¶¶ 2009, 2013, 2020)

## II.  Plaintiffs' State Law Claims Fail For the Same Reasons.

    BJ's agrees that a Massachusetts 93A claim that is derivative of antitrust claims must "perish along with [the] antitrust hosts," but argues that a Massachusetts law claim could

---

[6] Plaintiffs concede they have not shown a tying good market, Opp. at 20, but say they only need a tying "product" not a "market."  This is plainly wrong: market power in the tying good market is a core element of a tying claim, and Plaintiffs cannot establish it.  Mot. at 20; Keurig Ex. 62, Leitzinger (Mar. 17, 2023) Tr. 48:5-7 (conceding he has "not offered an opinion that Keurig has market power as to brewers").

potentially be broader than the antitrust laws.  Opp. at 21-22.  But BJ's fails to articulate *why* its

claim is broader, and why conduct that does not violate federal antitrust law nonetheless violates

Massachusetts law.  BJ's simply asserts a violation of Massachusetts law, citing one paragraph of

its complaint, which states:  "BJ's purchased K-Cups directly from Keurig."  BJ's Compl. ¶ 4.

In short, BJ's state law claim repeats its antitrust claims, and the claims fail together.  *RSA Media

v. AK Media*, 260 F.3d 10, 16 (1st Cir. 2001) (summary judgment for defendant where plaintiff

"has not made any unique arguments" as to its 93A claim); *Suzuki v. Outdoor Sports*, 126 F.

Supp. 2d 40, 50 (D. Mass. 2001) (same).  Winn-Dixie's unjust enrichment claim likewise fails as

derivative of its failed antitrust claims.  Winn-Dixie says Keurig offered "no authority" for this

point, but Keurig did cite authority, and Winn-Dixie ignored it.  Mot. at 23 (citing *Muy v. IBM*,

2019 WL 8161749, at *3 (N.D. Fla. Nov. 25, 2019)).  Winn-Dixie' unjust enrichment claim fails.

### III. Winn-Dixie Cannot Pursue Damages For Indirect Purchases.

Winn-Dixie admits it seeks damages *from Keurig* for packs it bought from Starbucks and

Smucker.  Opp. at 23 ("Winn-Dixie is a direct purchaser from Starbucks and Smucker.").  These

purchases are not recoverable from Keurig.  *Illinois Brick v. Illinois*, 431 U.S. 720, 736 (1977).

Winn-Dixie says that Starbucks and Smucker had exclusive deals with Keurig, but does

not suggest that this creates joint and several liability and it does not.  *E.g., Dickson v. Microsoft*,

309 F.3d 193, 215 (4th Cir. 2002) (no "exclusive dealing" exception to *Illinois Brick* rule).[7]

Winn-Dixie argues it can recover for these purchases because Starbucks and Smucker

supposedly "were co-conspirators."  Opp. at 23-24.  There are at least two fatal flaws with this

theory.  First, Winn-Dixie does not allege such a conspiracy in its complaint.  In fact, Winn-

Dixie *removed* conspiracy claims when it copied and repurposed McLane's complaint as its own,

---

[7] Indeed, if having an exclusive deal with Keurig created joint and several liability then BJ's would be jointly and severally liable for all damages in this case, which is not Plaintiffs' position.

9

and cannot add claims through its opposition brief. *Wright v. Ernst & Young*, 152 F.3d 169, 178 (2d Cir. 1998).[8]  Second, the only scraps of evidence it cites as supposedly showing conspiracy are consistent with lawful conduct and thus insufficient to withstand summary judgment. *Matsushita v. Zenith Radio*, 475 U.S. 574, 588 (1986) ("conduct as consistent with permissible competition as with illegal conspiracy" is insufficient to survive summary judgment).[9]

## IV. The Court Should Not Consider Plaintiffs' Improper Incorporation By Reference.

Finally, in opposing Keurig's 23-page brief in support of its motion, Plaintiffs file a 25-page opposition brief and then also purport to "incorporate by reference" more than ***57 pages*** of argument from other plaintiffs' briefing.  Plaintiffs vaguely assert that the prior briefing "demonstrates numerous genuine issues of material fact."  Opp. at 16; *see also id.* at 2-3.  These conclusory "incorporated" arguments should not be considered.  Broderick, J. Standing Order ¶ 4.B (opposition briefs limited to 25 pages unless prior permission has been granted); *In re AXA*, 595 F. Supp. 3d 196, 229 n.26 (S.D.N.Y. 2022) (declining to consider cross-referenced prior briefing, which would be an "end run" around page limits).[10]

## CONCLUSION

For the foregoing reasons, Keurig requests summary judgment on all Plaintiffs' claims.

---

[8] *Compare* McLane Compl. ¶¶ 156, 185, 285-350 *with* WD Compl. ¶¶ 232-278 (omitting conspiracy claims); *cf.* WD Compl. ¶ 227 (copying error where Winn-Dixie refers to itself as "McLane").

[9] Winn-Dixie points to P¶¶ 2044, 2045, 2046 and ECF No. 1495 ¶¶ 89-91, but these communications are consistent with the manufacturing relationship.  *H.L. Hayden v. Siemens*, 672 F. Supp. 724, 737 (S.D.N.Y. 1987); *AD/SAT v. Associated Press*, 181 F.3d 216, 235 (2d Cir. 1999) (summary judgment for defendant because conduct was consistent with "legitimate, independent business interests").

[10] In the alternative, Appendix A is a table of the "incorporated" arguments and Keurig's responses.

Dated: August 29, 2023

/s/ Leah Brannon
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
**Kenneth S. Reinker**
**Carl Lawrence Malm**
**Zach Tschida**
lbrannon@cgsh.com
kreinker@cgsh.com
lmalm@cgsh.com
ztschida@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone:  202-974-1500

**Rahul Mukhi**
rmukhi@cgsh.com
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000

/s/ Wendelynne J. Newton
BUCHANAN INGERSOLL & ROONEY PC
**Wendelynne J. Newton**
**Gretchen L. Jankowski**
**Mackenzie A. Baird**
wendelynne.newton@bipc.com
gretchen.jankowski@bipc.com
mackenzie.baird@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Telephone: 412-562-8800

*Attorneys for Defendant Keurig Green Mountain, Inc.*

11