**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE SERVE COFFEE ANTITRUST LITIGATION | Case No. 1:14-md-02542 (VRB) (SLC)<br>MDL No. 2542<br><br>Hon. Vernon S. Broderick<br><br>*This document concerns the McLane action 1:19-cv-00325* |

# OPPOSITION TO KEURIG'S MOTION TO EXCLUDE AND DISMISS MCLANE'S DAMAGES

# CONTENTS

**BACKGROUND** ........ 2

**ARGUMENT** ........ 4

I. The Court Should Deny Keurig's Motion to Exclude McLane's Damages as Procedurally Improper. ........ 4

II. Keurig's Motion to Exclude Dr. Johnson's Damages Model is Premature and Deficient on the Merits. ........ 8

III. Keurig's Motion For Summary Judgment on McLane's Damages Should be Denied on Procedural and Substantive Grounds. ........ 13

A. McLane Presented Sufficient Evidence at Summary Judgment that Keurig's Anticompetitive Conduct Caused an Antitrust Injury. ........ 14

B. Summary Judgment is not the Appropriate Remedy Even if the Court were to Determine at this Time that Some Type of Disaggregation is Necessary to Make Dr. Johnson's Model Admissible. ........ 16

**CONCLUSION** ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonjorno v. Kaiser Aluminum & Chem. Corp.*,
752 F.2d 802 (3d Cir. 1984)....................10

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2022 WL 1720468 (N.D. Ill. May 27, 2022) ....................9, 14

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019)....................5

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)....................14

*Children's Broad. Corp. v. Walt Disney Co.*,
245 F.3d 1008 (8th Cir. 2001) ....................6

*City of Groton v. Connecticut Light & Power Co*.,
662 F.2d 921 (2d Cir. 1981)....................9

*City of Vernon v. S. Cal. Edison Co*,
955 F.2d 1361 (9th Cir. 1992) ....................6, 16

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................9

*Corp. v. News Corp*.,
165 F. Supp. 3d 25 (S.D.N.Y. 2016)....................16

*Furry Puppet Studio Inc. v. Fall Out Boy*,
No. 19-CV-2345 (LJL), 2020 WL 4978080 (S.D.N.Y. Feb. 24, 2020)....................4

*Image Tech. Servs. v. Eastman Kodak Co*.,
125 F.3d 1195 (9th Cir. 1997) ....................6

*Ingevity Corp. v. BASF Corp.*,
166 F.4th 1324 (Fed. Cir. 2026) ....................10, 12

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003)....................10, 11

*MCI Commc'ns Corp. v. AT&T*,
708 F.2d 1081 (7th Cir. 1983) ....................6, 11

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
184 F.R.D. 245 (S.D.N.Y. 1999) ....................7

*Pak v. Albany Med Health Sys.*,
No. 1:23-CV-378, 2026 WL 2838183 (N.D.N.Y. Sep. 22, 2026) ....................8

*Princeton Digital Image Corp. v. Off. Depot Inc.*,
No. CV 13-239-LPS, 2017 WL 3573812 (D. Del. Aug. 17, 2017) ....................5

*In re Publ'n Paper Antitrust Litig.*,
690 F.3d 51 (2d Cir. 2012) ....................15

*Sanderson v. Leg Apparel LLC*,
No. 1:19-CV-8423-GHW, 2023 WL 4053131 (S.D.N.Y. June 16, 2023) ....................4

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
622 F. Supp. 3d 22 (E.D. Pa. 2022) ....................10

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020) ....................9

*Tatintsian v. Vorotyntsev*,
No. 1:16-CV-7203-GHW, 2024 WL 4467557 (S.D.N.Y. Oct. 9, 2024) ....................6

*U.S. Football League v. Nat'l Football League*,
842 F.2d 1335 (2d Cir.1988) ....................15

*Valassis Commc'ns, Inc. v. News Corp.*,
No. 17-CV-7378 (PKC), 2020 WL 6257071 (S.D.N.Y. Oct. 23, 2020) ....................5

*Weiner v. Snapple Beverage Corp.*,
No. 07-CV-8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ....................17

*Wood v. Mike Bloomberg 2020, Inc.*,
No. 20-CV-2489-LTS-GWG, 2025 WL 1696535 (S.D.N.Y. June 17, 2025) ....................6

**Statutes**

Sherman Act Sections 1 ....................1

Sherman Act Section 2 ....................1, 9, 10, 11, 14

**Other Authorities**

Local Rule 6.3 ....................7

Individual Rule 6(b) ....................5

Federal Rule of Civil Procedure 26(a)(3) ....................7

Federal Rule of Civil Procedure 26(e)(2) .....................................................................................7, 8

Keurig's unending attempts to delay this trial must end. Keurig's Motion to Exclude and Dismiss Certain Damages ("Motion") is procedurally and substantively defective and should be denied. Procedurally, the Motion is either an impermissible new *Daubert* motion, an out-of-time motion to reconsider the Court's prior *Daubert* order, an unauthorized second summary judgment motion, or an unsupported motion for reconsideration of the prior summary judgment motion. Regardless of whatever Keurig calls it, the Motion is a filing intended to summarily end McLane Company's ("McLane") claims.[1] Beyond the procedural defects, the Motion is substantively wrong. Keurig is not entitled to escape liability for monopolization and conspiracy claims that this Court has determined are headed to trial merely because summary judgment was granted regarding certain aspects of the conduct underlying McLane's claims.

Plaintiffs gathered sufficient evidence to prove at trial that Keurig violated Sections 1 and 2 of the Sherman Act, entering into a web of exclusive dealing agreements that monopolized the single-serve coffee cup market. As the Court's scheduling order and the Federal Rules recognize, McLane is entitled to use this time between the resolution of dispositive motions and pretrial proceedings to review and adjust its expert evidence to reflect new information that was previously unavailable, in this case the Court's findings in the Summary Judgment Order. Ultimately, though, Keurig's motion misses the mark for a fundamental reason: it is the jury's role to determine if the damages asserted by McLane are due to Keurig's anticompetitive conduct. Keurig's vaguely styled and impermissibly filed motion must be denied.

[1] One could also read the motion as a premature Motion in Limine.

# BACKGROUND

In its October 2020 Amended Scheduling Order, Magistrate Judge Cave purposefully staged expert discovery, class certification, and the briefing schedules for *Daubert* and summary judgment motions. *See* ECF No. 1160. In doing so, Judge Cave made clear that "[t]he entry of [the] Case Management Plan and Scheduling Order, and the dates provided [t]herein, are without prejudice to Plaintiffs' and Counterclaim-Plaintiff's right to seek leave of Court to update their damages calculations ***to the time of trial***." *Id.* ¶ 9 (emphasis added).

Pursuant to the governing scheduling order, Keurig challenged McLane's claim to damages twice—once through a *Daubert* motion and once at summary judgment. The Court denied Keurig's arguments each time. First, in August of 2021, Keurig filed a *Daubert* motion, arguing that the Court should exclude McLane's expert report and testimony offered by Dr. Phillip Johnson. ECF No. 1454 ("Keurig Daubert"). Keurig argued, in part, that the Dr. Johnson's report did "not distinguish between price elevation caused by lawful factors as compared to price elevation caused by the alleged conduct." *Id.* at 3. Keurig argued that Dr. Johnson failed to account for factors that could affect price, such as "the value that consumers place on buying genuine Keurig K-Cups for their Keurig brewers, K-Cups' different cup design, and K-Cups' quality." *Id.* at 6.

On January 3, 2025, in a detailed opinion, the Court rejected Keurig's *Daubert* challenge, finding that "Dr. Johnson's model sufficiently disaggregates lawful conduct from unlawful conduct in his damages analysis." ECF No. 2375 at 63 ("Daubert Order"). The Court noted that Dr. Johnson did the precise thing at issue here: he used a regression model to measure damages and "disentangle[] the effect of the alleged anticompetitive conduct from the effects of other factors that affect price differences." *Id.* at 63–64 (citing Doc. 1455, Ex. 2 ¶ 102 ("Johnson Report")).

The Court noted that Keurig's opposition relied on cases featuring "numerous systemic issues including the failure to identify specific data that would be used to formulate the opinion or the methodology that the expert would use to formulate his opinion." *Id.* at 64 (citing *Weiner v. Snapple Beverage Corp.*, No. 07-CV-8742, 2010 WL 3119452, at *7 (S.D.N.Y. Aug. 5, 2010)). The Court saw no such "systemic issues" in Dr. Johnson's report. Dr. Johnson's model, and the variables used to disaggregate lawful from unlawful conduct, met the threshold for admissibility. *Id.* "Any issues with his method for not further disaggregating lawful and unlawful conduct," the Court held, "go to weight of his opinions." *Id.*

Keurig's August 2021 motion for summary judgment took a different approach to damages. Keurig argued that Plaintiffs failed to show harm to competition. ECF No. 1494 at 14 ("Keurig MSJ"). Keurig stated that competitive portion pack manufactures entered the market, increasing portion pack output and decreasing price. *Id.* at 15. The Court rejected Keurig's argument in its September 18, 2026 Summary Judgment Order. Keurig, the Court held, "paint[ed] a rosy picture of the single-serve portion cup coffee market." Summary Judgment Order at 27 ("SJ Order"). The Court found that Plaintiffs "raised, with the support of competent material evidence in the record, a genuine dispute as to whether they suffered injury as a result of Keurig's Roaster Agreements . . . among other allegedly anticompetitive conduct," including reduced output and raised supracompetitive prices. *Id.* at 33. Furthermore, the Court found that Keurig ignored that Plaintiffs presented evidence of injury to competition through reduction in consumer quality and reduction in innovation. *Id.* at 34–36.

Keurig's motion for summary judgment also attacked McLane's claim to damages specifically. Keurig argued that McLane simply asserted "business grievances," not antitrust injuries. Keurig MSJ at 77. Again, the Court rejected Keurig's argument. McLane presented a

cognizable claim as a direct purchaser of K-Cups. SJ Order at 107. The Court reiterated that trial, not summary judgment, was the time to challenge the amount of damages McLane can recover from Keurig's anticompetitive conduct. *Id.* at 108 (citing *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

Keurig's current Motion renews its attack on McLane's damages, now arguing that the Court's partial grant of summary judgment in its favor renders Dr. Johnson's damages model inadmissible.

## ARGUMENT

### I. THE COURT SHOULD DENY KEURIG'S MOTION TO EXCLUDE MCLANE'S DAMAGES AS PROCEDURALLY IMPROPER.

Keurig styles its Motion as one "to exclude and dismiss damages based on lawful conduct, or in the alternative to request reconsideration of Keurig's motion for summary judgment as to damages." Motion at 1. Whether viewed as a *Daubert* motion, a motion to reconsider the prior *Daubert* motion, a motion in limine, or a motion to reconsider the Court's Summary Judgment Order, the Motion is procedurally improper and, as JBR has already argued, *see* ECF No. 2572, should be struck accordingly.

First, the motion is late. The Motion reads as a hybrid motion for summary judgment with a *Daubert* challenge. But *Daubert* motions were due on August 18, 2021. ECF No. 1160 ¶ 6(d). And motions for summary judgment were due on August 25, 2021. *See* ECF No. 1433 (altering the Court's briefing schedule on dispositive motions). Courts routinely reject motions that are filed out-of-time or not otherwise authorized by the governing scheduling order. *Sanderson v. Leg Apparel LLC*, No. 1:19-CV-8423-GHW, 2023 WL 4053131, at *1 (S.D.N.Y. June 16, 2023) ("Plaintiff's motion is plainly untimely and can be denied for that reason alone."); *see also Furry Puppet Studio Inc. v. Fall Out Boy*, No. 19-CV-2345 (LJL), 2020 WL 4978080, at *1 (S.D.N.Y.

Feb. 24, 2020) (noting "a scheduling order is an order just like any other order of the Court."). Litigants are entitled to know and understand the rules, including the sequence of filings. Keurig's flagrant disregard for this Court's process is reason enough to reject the Motion.[2]

Second, if Keurig intends the Motion to be a second *Daubert* motion against McLane's expert, it violated the Court's scheduling order by failing to seek leave of court beforehand. *See* ECF No. 1160 ¶ 6(g) ("Except by leave of court, each expert witness shall be subject to only one *Daubert* motion."). And, to the extent that the Motion is one in limine, the Court's Individual Rules require such motions to be filed with the joint pretrial order, which has yet to occur. *See* Individual Rule 6(b). Indeed, the Parties have yet to even meet and confer to propose a schedule for pre-trial exchanges pursuant to the Court's June 9, 2026 order. *See* ECF No. 2476.

Ignoring procedure to consider a *Daubert* or in limine challenge now would waste judicial resources and prejudice McLane. McLane has the right to assess in detail the Court's 134-page Summary Judgment Order and, should it choose, move for leave to supplement its expert report. This is uncontroversial. *See*, *e.g.*, *Valassis Commc'ns, Inc. v. News Corp*., No. 17-CV-7378 (PKC), 2020 WL 6257071, at *1 (S.D.N.Y. Oct. 23, 2020) (noting that a plaintiff "was free, if it chose, to move to modify or supplement its expert's disclosure" to allow the expert to "disaggregate the effect of defendants' lawful pricing"); *Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239-LPS, 2017 WL 3573812, at *2 (D. Del. Aug. 17, 2017) (after a summary judgment ruling finding that defendant could not collect affirmative fees, the court

[2] Keurig's Motion disregards more than just the Court's scheduling order. Keurig's publicly filed Motion publicized the contents of a sealed motion in clear violation of this Court's order. While McLane does not seek to seal any portion of the Order, no party is entitled to disclose the contents of a sealed order until the Court unseals the order. *Brown v. Maxwell*, 929 F.3d 41, 46, 51 (2d Cir. 2019) (agreement of parties on confidentiality issues must still defer to the duty of the Court to ultimately decide on what may or may not become public). Whether this was a mistake or an attempt to front run the public order, we cannot say.

allowed defendant's expert to draft a supplemental report disaggregating affirmative fees from its other damages). In fact, the cases cited by Keurig contemplate revisions to damages estimates after a summary judgment ruling, or in the case of a trial, a remand to reconsider damages. *See, e.g.*, *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1174 (7th Cir. 1983) (remanding for new trial on the question of damages only); *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1019 (8th Cir. 2001) (affirming district court's order for new trial on damages); *Image Tech. Servs. v. Eastman Kodak Co*., 125 F.3d 1195, 1224 (9th Cir. 1997) (same); *City of Vernon v. S. Cal. Edison Co*, 955 F.2d 1361, 1372 (9th Cir. 1992) (noting in granting summary judgment that plaintiff refused to amend its expert report). Keurig should not be permitted to deny McLane's opportunity to present expert evidence to the jury with a procedurally defective, premature motion to exclude Dr. Johnson's report.

Third, Keurig's Motion cannot properly be construed as a motion to reconsider the Court's Summary Judgment Order. *See* Motion at 3. "[T]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Tatintsian v. Vorotyntsev*, No. 1:16-CV-7203-GHW, 2024 WL 4467557, at *1 (S.D.N.Y. Oct. 9, 2024). As such, movants must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.*; *Wood v. Mike Bloomberg 2020, Inc.*, No. 20-CV-2489-LTS-GWG, 2025 WL 1696535, at *1 (S.D.N.Y. June 17, 2025). Keurig cannot meet this standard. Clearly, Keurig presents no new evidence to the Court. McLane disclosed Dr. Johnson's report, as well as the facts upon which it relies, to Keurig in 2021—before Keurig moved to exclude Dr. Johnson's report under *Daubert* or moved to dismiss McLane's claim to damages on summary judgment. And McLane has yet to make any amendments to that report.

Furthermore, Keurig failed to raise disaggregation as a basis for attacking McLane's damages on summary judgment. While Keurig cited a purported failure to "distinguish between price elevation caused by lawful factors" as a means of excluding Johnson's report in its *Daubert* motion, Keurig Daubert at 3, it chose to forego that argument at summary judgment, instead challenging McLane's estimate of damages based on prices Walmart negotiated, Keurig MSJ at 96. This was despite the fact that Keurig moved for summary judgment on separate, discrete conduct underlying Dr. Johnson's report, opening the possibility that Keurig would win on some, but not all, of its claims. Keurig's decision to forego challenging disaggregation at summary judgment has two important effects. One, there was no holding in the Summary Judgment Order for the Court to reconsider. Two, Keurig *waived* the basis for dismissing McLane's claims by not raising the argument in its brief. *See* Local Rule 6.3 (requiring movants to set forth "the matters or controlling decisions which the moving party believes the court has overlooked"); *Mina Inv. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 250 (S.D.N.Y. 1999) ("[A] party may not 'advance new facts, issues or arguments not previously presented to the court.'") (quoting *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.*, 768 F. Supp. 115, 116 (S.D.N.Y.1991)).

Keurig has clearly flouted procedure to seek summary judgment on McLane's claim to damages and/or exclusion of Dr. Johnson's report. This procedural gamesmanship matters. The Court issued clear deadlines, and the parties are entitled to rely on those deadlines rather than spending time responding to inappropriate and unsupported motions filed in violation of the Court's orders and rules. Furthermore, considering and ruling on Keurig's Motion now would disrupt the orderly process the Court set as the parties proceed to trial. In addition to the provisions in the scheduling order regarding updating damages calculations, Rule 26(e)(2) gives parties the ability to disclose any additions or changes to an expert report up until the time Rule 26(a)(3)

pretrial disclosures are due. Fed. R. Civ. P. 26(e)(2). Yet Keurig attempts to preempt that schedule and dismiss McLane's entire case before any changes to the expert report are due. The Court should deny Keurig's motion accordingly and allow the parties to approach pre-trial proceedings methodically as envisioned. *See Pak v. Albany Med Health Sys.*, No. 1:23-CV-378 (DNH/DJS), 2026 WL 2838183, at *12 (N.D.N.Y. Sep. 22, 2026) ("The Uniform Pretrial Scheduling Order contemplates that motions *in limine* will be filed in advance of the Final Pretrial Conference absent leave of Court. Defendant's motion will therefore be denied without prejudice to renewal."); *see also Reed v. Edmonds*, No. 05 CIV. 5906 SHS/HBP, 2006 WL 435453, at *1 (S.D.N.Y. Feb. 22, 2006) ("Motions *in limine* are most frequently addressed . . . shortly before the commencement of trial.")

## II. KEURIG'S MOTION TO EXCLUDE DR. JOHNSON'S DAMAGES MODEL IS PREMATURE AND DEFICIENT ON THE MERITS.

To the extent that the Court interprets the Motion as one in limine, Keurig's attempt to exclude McLane's expert evidence, including the damages model, is incorrect on the merits. Even if McLane were to forego supplementing or adjusting its damages calculation, dismissal of Dr. Johnson's report is not warranted. In arguing otherwise, Keurig mistakes *conduct* for *claims*. That error is fatal to its attempt to exclude Dr. Johnson's report.

The root of Keurig's mistake is its assertion that the Court found certain conduct "lawful." That is wrong. The Court's Summary Judgment Order found that discrete conduct, such as Keurig's patent litigation and false statements about its competitors, standing alone, did not constitute an antitrust claim. But that *conduct* can (and does) continue to support McLane's antitrust *claims* and is therefore admissible at trial. As TreeHouse points out in its opposition to the Motion, the Court relied upon 2.0 Brewer-related conduct in the SJ Order when considering

whether TreeHouse's damages were the result of competition on the merits or anticompetitive behavior.

Turning to McLane's claims, McLane alleges damages from Keurig's "multifaceted campaign to unlawfully dominate and exclude competition in the Compatible Cup Market," McLane AC ¶ 123. With respect to its monopolization claim, that campaign consisted of various acts, including: coercing manufacturers, distributors, and retailers through anticompetitive agreements; conspiring with competitor roasters; eliminating competitors through acquisitions; leveraging the 2.0 Brewer to further restrain competition; and making false, material representations to deter business from competitor compatible cup makers. *Id.* ¶ 288. McLane pled that the scheme central to its *claim* was made of combined *conduct*, *some of which* "themselves constitute individual antitrust violations on a stand-alone basis," but nonetheless "*together* . . . support a broader monopolization claim." *Id.* ¶ 289 (emphasis added). Of this conduct, McLane pleads two injuries: "(i) Keurig's ability to charge supracompetitive prices for K-Cups; and (ii) the reduced output and availability of consumers' preferred Compatible Cups." *Id.* ¶ 290.[3]

Even accepting Keurig's framing, it is axiomatic that lawful conduct can comprise a Section 2 claim, so long as all conduct within a monopolistic scheme has a "synergistic" effect. *City of Groton v. Connecticut Light & Power Co*., 662 F.2d 921, 928 (2d Cir. 1981); *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 270 (3d Cir. 2020) ("[W]e look at "all the acts taken together [to determine whether they] show the willful acquisition

[3] McLane's theory of liability therefore continues to match the theory of harm outlined in Dr. Johnson's report. As such, *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013), and its progeny are inapposite here. *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 1720468, at *10 (N.D. Ill. May 27, 2022) ("*Comcast* does not impose a requirement to 'disaggregate lawful and unlawful conduct," so much as the case "requires an expert's theory of harm to match the plaintiff's.").

or maintenance of a monopoly.") (quoting *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 813 (3d Cir. 1984)). And damages need not be disaggregated between that conduct, whether "lawful" or not when considered in isolation. *See LePage's Inc. v. 3M*, 324 F.3d 141, 166 (3d Cir. 2003) (finding the defendant's "actions, taken as a whole, were found to violate § 2, thus making the disaggregation [of lawful conduct] . . . to be unnecessary, if not impossible."); *Ingevity Corp.*, 166 F.4th at 1340 ("[T]he jury could reasonably credit Dr. Mathur's testimony that disaggregating damages caused by lawful versus unlawful conduct was impossible, given that the same exclusionary practices simultaneously affected price, access, and customer choice."); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 622 F. Supp. 3d 22, 86 (E.D. Pa. 2022) ("Having determined that the individual exclusionary acts need not be separated in order to find that the entire alleged scheme could be anticompetitive and therefore illegal, I need not require that Plaintiffs' experts disaggregate the effects of the various kinds of conduct that Plaintiffs assert are anticompetitive."); *Bonjorno*, 752 F.2d at 813 ("When the antitrust injury is of an indivisible nature, and the jury properly found that that injury was caused by the defendants' monopolization . . . , and when the plaintiffs' proof of damages does not require distinguishing the various acts by the defendants, then it is unnecessary to segregate the damages according to the specific causes."). This makes sense. Requiring otherwise "would result in the untenable proposition that just because a defendant engaged in various actions or business decisions that, considered in isolation, may potentially be legal, the antitrust laws cannot touch a defendant's attempt to use the cumulative effect of these actions/decisions to constrain the market and preclude competition." *In re Suboxone Antitrust Litig.*, 622 F. Supp. 3d at 62.

*MCI Communication Corporation v. Am. Tel. & Tel. Co.* does not compel a different result. There, the plaintiff established liability for only seven of the twenty-two counts of alleged

monopolization. 708 F.2d 1081, 1163 (7th Cir. 1983). Of the counts plaintiffs lost, allegations of predatory pricing played "a significant role" and was MCI's "case-in-chief." *Id.* at 1164. ("The predatory pricing allegations play such a significant role in MCI's case that failure to establish either the Telpak or the Hi-Lo allegations mandates re-examination of any damages which may have been predicated on what has been held to be *lawful* pricing.").

*MCI* is a case on the far end of the spectrum, where the court found that most of the conduct alleged did not support an antitrust claim and the dismissed conduct was the central conduct. This is a much different case. Here, the Court found that the remaining conduct is sufficient to support McLane's claim of monopolization, attempted monopolization, monopoly leveraging, and conspiracy claims. Keurig makes no meaningful argument, nor can they, that the remaining, actionable conduct is somehow ancillary to conduct which the Court found insufficient to support standalone claims. More precisely, Keurig has presented no evidence or argument that any of the dismissed conduct was the "central competitive reality….and [the] important focus of the case," that drove Dr. Johnson's model to find damages. *MCI*, 708 F.2d at 1164.[4]

Moreover, antitrust plaintiffs are afforded considerable leeway in proving damages. For example, disaggregation in damages models is not required in schemes where lawful and unlawful behavior are so intertwined as to make disaggregation infeasible or impossible. *See LePage's Inc. v. 3M*, 324 F.3d 141, 166 (3d Cir. 2003) (finding the defendant's "actions, taken as a whole, were found to violate § 2, thus making the disaggregation [of lawful conduct] . . . to be unnecessary, if not impossible."). In such situations, courts have held that the perpetrator "bear[s] the risk of the

[4] Note also that *MCI* is a lost profits case where the entirety of the lost profits were attributed to the illegal acts "despite the presence of significant other factors." *Id.* at 1162.

uncertainty which [its] own wrong has created." *Ingevity Corp. v. BASF Corp.*, 166 F.4th 1324, 1340 (Fed. Cir. 2026) (quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946)).

Nor do courts disregard or otherwise reduce an expert's damages calculation if evidence shows that, despite lawful conduct being aggregated in a model, the anticompetitive conduct was nonetheless "a material and but-for cause of the alleged injuries." *US Airways, Inc.*, 2022 WL 1140291, at *2 ("If US Airways can prove that this other monopolizing conduct . . . was a material and but-for cause of the alleged injuries, there is no 'disaggregation' issue and the jury may award damages consistent with Dr. Abrantes-Metz's damages estimates."). "In other words, if an antitrust plaintiff alleges that the defendant engaged in unlawful acts A, B, C, and D, and acts C and D are later rejected as a basis of liability, it does not automatically follow that the damage award must be reduced." *Nat'l Farmers' Org., Inc.*, 850 F.2d at 1307 (cited by *US Airways, Inc.*, 2022 WL 1140291, at *2). "Rather, if acts A and B support the entire damage award, it must be sustained." *Id.*

Here, Dr. Johnson determined that, to the extent that Keurig was effective in maintaining its monopoly power over K-Cups, the effects would be observed as an elevation of prices above competitive levels. Johnson Report ¶ 99. As such, Dr. Johnson's model estimates the price differences reflecting the monopoly power exercised by Keurig. His expert evidence establishes that Keurig's conduct is empirically observable. Now that the Court has ruled that some of Keurig's conduct is not actionable on a standalone basis, Dr. Johnson will need to determine whether to adjust his calculations to account for those findings. For example, certain conduct, such as the misrepresentations related to the 2.0 brewer, was considered as conduct that contributed to Keurig's ability to enter into exclusive agreements with roasters and retailers—not as a mechanism in itself that would have contributed to price differences. *See* Johnson Report ¶ 90; ECF No. 2263-

3 ¶¶ 57–61 (Leitzinger Report). Thus, there may be no need to disaggregate the effects of that conduct because it was not considered a distinct anticompetitive act independently giving rise to damages. *See Nat'l Farmers' Org., Inc.*, 850 F.2d at 1307; *US Airways, Inc.*, 2022 WL 1140291, at *2. It is telling that Keurig's Motion omits that McLane's expert evidence already includes an empirical analysis of the relative contributions of the different exclusivity arrangements which gave rise to the market foreclosure at the center of McLane's damages analysis. *See* ECF No. 2263-4, fig. 7 (Leitzinger Reply Report). Keurig's assertion that McLane has not or cannot determine the relative impact of the actionable conduct is unsupported by the existing record. Pursuant to the governing scheduling order, McLane will decide during the course of pre-trial proceedings whether to supplement its expert evidence in light of the Court's ruling.

## III. KEURIG'S MOTION FOR SUMMARY JUDGMENT ON MCLANE'S DAMAGES SHOULD BE DENIED ON PROCEDURAL AND SUBSTANTIVE GROUNDS.

Putting aside the Motion's violation of the scheduling order and other procedural defects, Keurig is wrong to suggest that Dr. Johnson's failure to disaggregate the impact of certain conduct warrants summary judgment of McLane's extensive remaining claim to damages. First, summary judgment on damages fails for the same reasons, set out above, that a motion to exclude Dr. Johnson's model fails. Furthermore, the Court has already held that McLane made a showing of antitrust injury and a causal connection to anticompetitive conduct sufficient to survive summary judgment. The issue of the amount of damages to McLane caused by Keurig's unlawful conduct is one for the jury. Keurig's attempt to have the Court determine that the damages are zero should fail.

### A. McLane Presented Sufficient Evidence at Summary Judgment that Keurig's Anticompetitive Conduct Caused an Antitrust Injury.

Keurig offers no basis for the Court to dismiss McLane's claim to damages as a matter of law. The vast majority of McLane's case survived summary judgment. The Court found that McLane presented sufficient evidence to present a genuine issue of material fact as to whether Keurig is liable for monopolization, attempted monopolization, monopoly leveraging, and conspiracy claims. The Court did not dismiss *any* of McLane's antitrust claims.[5] The Court recognized that that Keurig's Roaster Agreements suppressed "potential entrants," such as Starbucks, Dunkin', Joffrey's, and Smucker, "into the market for single-serve coffee cups" in violation of Section 1. SJ Order at 49–50. And a jury could find that Keurig violated Section 2 of the Sherman Act though exclusive dealing agreements with suppliers, distributors, and roasters. *Id*. at 75–81. And all of this conduct is accounted for in Dr. Johnson's damages calculation. *See* Johnson Report ¶¶ 16–19, 20–27, 39–43.

The Court further found a genuine issue of material fact as to whether that conduct caused an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Specifically, the Court held that Plaintiffs "raised, with the support of competent material evidence in the record, a genuine dispute as to whether they suffered injury as a result of Keurig's Roaster Agreements . . . among other allegedly anticompetitive conduct," including reduced output and raised supracompetitive prices. *Id*. at 33.[6] And the Court again made clear

---

[5] The Court did dismiss McLane's unjust enrichment claim. *See* SJ Order at 125–26.

[6] The Court also recognized Plaintiffs' evidence of reduction in consumer quality and reduction in innovation. *Id.* at 34–36.

that McLane, as a direct purchaser, can collect the entirety of the overcharge stemming from the alleged supracompetitive prices. *Id.* at 107, 127.

McLane also provided sufficient evidence to establish a causal connection between Keurig's anticompetitive conduct and McLane's antitrust injuries. As the Court noted in its Summary Judgment Order, Plaintiffs need not show that their injuries were solely caused by Keurig's anticompetitive conduct. SJ Order at 103. This is in line with the Second Circuit precedent. *In re Publ'n Paper Antitrust Litig*., 690 F.3d 51, 66 (2d Cir. 2012) ("[A] plaintiff need not exhaust all possible alternative sources of injury in fulfilling [its] burden of proving compensable injury.") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 114 n. 9 (1969)). "[A]n antitrust defendant's unlawful conduct need not be the ***sole*** cause of the plaintiffs' alleged injuries." *Id.* "[T]o prove a 'causal connection' between the defendant's unlawful conduct and the plaintiff's injury, the plaintiff need only 'demonstrate that [the defendant's] conduct was a substantial or materially contributing factor' in producing that injury." *Id*. (quoting *Litton Sys., Inc. v. AT & T Co.,* 700 F.2d 785, 823 n. 49 (2d Cir.1983)) (citing *U.S. Football League v. Nat'l Football League,* 842 F.2d 1335, 1377 (2d Cir.1988)). This makes sense. "[W]here damages have been shown to be attributable to the defendant's wrongful conduct, but are uncertain in amount, the defendant bears the risk of those uncertainties." *U.S. Football League*, 842 F.2d at 1379. Keurig does not (and cannot) present evidence or new law justifying reconsideration of these findings.

Moreover, McLane is entitled to have a jury determine the amount of damages caused by Keurig's unlawful conduct. In its Daubert Order, the Court found sufficient Dr. Johnson's efforts to identify and disaggregate lawful conduct from his model. The Court held that "[a]ny issues with [Dr. Johnson's] method for not ***further*** disaggregating lawful and unlawful conduct go to

weight of his opinions" at trial. Daubert Order at 64 (emphasis added). Other courts have allowed the same. *See*, *e.g.*, *Dial Corp. v. News Corp*., 165 F. Supp. 3d 25, 38 (S.D.N.Y. 2016) ("[W]hether some, all, or none of [the defendant's] conduct is anticompetitive is precisely the question of fact that a jury will decide" and "*it will be Plaintiffs' burden to demonstrate to the jury that its requested damages flow from conduct the jury finds anticompetitive*.") (emphasis added).

**B. Summary Judgment is not the Appropriate Remedy Even if the Court were to Determine at this Time that Some Type of Disaggregation is Necessary to Make Dr. Johnson's Model Admissible.**

To the extent the court determines this issue needs to be decided now, summary judgment is an inappropriate and extreme measure. As set out above, the schedule already contemplates an ability to amend damages calculations. The only cases Keurig cites that have granted summary judgment based, in part, on failure to disaggregate lawful conduct are easily distinguishable. In those cases, the lack of disaggregation was only one of many flaws in the plaintiffs' claims.

In *City of Vernon v. Southern California Edison Company*, for example, the court repeatedly emphasized that the damages model itself was defective, calling it "deeply flawed," "at best, seriously flawed," and "the handmaiden" of the plaintiff's "equally flawed theory" of liability. 955 F.2d at 1371–72. Indeed, it found that the "deficiencies in that study undermine[]d [plaintiff's] whole case." *Id.* at 1371. Moreover, while the *Vernon* court found that plaintiff "did not attempt or offer to make corrections" to its expert's report—and the expert himself admitted that plaintiff "would not or could not do so." *Id.* at 1372.

The plaintiffs' claims in *Argus, Inc. v. Eastman Kodak Co.*, were similarly flawed from the start. 612 F. Supp. 904 (S.D.N.Y. 1985), *aff'd*, 801 F.2d 38 (2d Cir. 1986). To start, the Court noted fundamental deficiencies in the plaintiffs' case. They not only failed to establish standing, *id.* at 914–18, they also showed no causation between the alleged anticompetitive act and the purported injury, *id.* at 919–20. Compounding these fatal inadequacies, the plaintiffs attempted to

base damages on "speculative and unfounded assumptions" and "conclusory statements of management. . . not on [their expert's] independent evaluation of the facts." *Id.* at 926. As a result, the court found that the alleged damages, which include the collapse of an entire photographic distribution business, were "far removed from Kodak's refusal to disclose a flash device for one camera." *Id.* In contrast, this court found Dr. Johnson's model reliable, instead noting that *Keurig's* proposed revisions to the model would result in undue speculation. *See* Daubert Order at 72–75. Unlike the plaintiffs in *Argus,* McLane has proposed a damages theory consisting of "just and reasonable estimates" that "meet the minimum standard of rationality." *Argus*, 612 F. Supp at 927.[7]

Keurig's reliance on *Orgler Homes, Inc. v. Chicago Regional Council of Carpenters*, fares no better. *See* Motion at 8. In that case, the Court dismissed at summary judgment plaintiff's claim that a union's conduct amounted to unfair labor practices on the basis that the plaintiff could not prove damages. *Orgler Homes, Inc.*, 2008 WL 11627846, at *16. Again, the expert's methodology suffered numerous flaws in its underlying methodology to show the impact of union activity on plaintiff's ability to sell houses, including conflicting evidence of what entity was selling the houses, what houses were actually sold before and after the union's alleged unlawful conduct, and whether the expert report reflected the suggestion that the housing market was in decline at the time. *Id.* While aggregation was one of the reasons justifying excluding the expert's report, the Court noted that the expert assumed "***all*** of the Union's conduct was illegal." *Id.*

[7] This Court has noted Keurig's citation to these types of inappositive cases before. Take Keurig's use of *Weiner v. Snapple Beverage Corp.* in its attempt to exclude Dr. Johnson's testimony. No. 07-CV-8742, 2010 WL 3119452, at *7 (S.D.N.Y. Aug. 5, 2010). In line with the above cases, the Court found *Weiner* "inapposite" because of "numerous systemic issues[,] including the failure to identify specific data that would be used to formulate the opinion or the methodology the expert would use to formulate his opinion." Daubert Order at 64.

(emphasis added). The expert there did not attempt to identify conduct associated with the plaintiff's harm. The same cannot be said here. Dr. Johnson's model does not assume that all of Keurig's conduct was unlawful. The report accounts for specific conduct that, together, supports McLane's theory of liability: that Keurig monopolized the Compatible Cup Market through a multifaceted, broad scheme.

The Court should reject Keurig's bleated attempt to dismiss McLane's claim to damages on summary judgment.

## CONCLUSION

For the reasons stated above, the Court should deny Keurig's Motion to Exclude and Dismiss Certain Damages. A decision on the issues raised by Keurig in this brief is not ripe for adjudication at this time. As set out in the Court's prior order, the parties are required to meet and confer regarding a pre-trial schedule to be submitted to the Court. The parties can negotiate a date by which any party seeking to supplement or amend their expert evidence must request leave of the Court to make such disclosure. Alternatively, and perhaps most efficiently, the Court could rule now that such supplementation of expert evidence will be permitted in light of the Summary Judgment Order and instruct the parties to negotiate an appropriate deadline to exchange supplemental expert evidence as part of the pre-trial order. Regardless of approach, Keurig's motion should be denied.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Valarie C. Williams*

Valarie C. Williams (*Pro Hac Vice*)
B. Parker Miller (*Pro Hac Vice*)
Alexander G. Brown (*Pro Hac Vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Phone: 404-881-7000

Fax: 404-881-7777
valarie.williams@alston.com
alex.brown@alston.com
parker.miller@alston.com

Steven L. Penaro
ALSTON & BIRD LLP
90 Park Avenue
15th Floor
New York, NY 10016-1387
Phone: 212-210-9400
Fax: 212-210-9444
steve.penaro@alston.com

*Counsel for Plaintiff McLane Company, Inc.*

**LOCAL RULE 7.1(c) CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff McLane Company, Inc. certifies that this brief contains 5,737 words, which complies with the applicable word limit.

Dated: October 16, 2026

*/s/ Valarie C. Williams*