**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542<br><br>Master Docket No. 1:14-md-02542 (VSB) (SLC) |
| TREEHOUSE FOODS, INC., BAY VALLEY FOODS, LLC, and STURM FOODS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant.<br><br>AND<br><br>JBR, INC. (D/B/A ROGERS FAMILY COMPANY),<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant/Counterclaim Plaintiff.<br><br>AND<br><br>MCLANE COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | **Oral Argument Requested**<br><br>*This Document Relates to*<br>*No. 1:14-cv-00905 (VSB) (SLC)*<br>*No. 1:14-cv-04242 (VSB) (SLC)*<br>*No. 1:19-cv-00325 (VSB) (SLC)* |

**MEMORANDUM OF LAW IN SUPPORT OF KEURIG'S MOTION TO EXCLUDE AND DISMISS CERTAIN TREEHOUSE, JBR, AND MCLANE DAMAGES**

## TABLE OF CONTENTS


I. The Court has a continuing duty to ensure that expert testimony assists the jury and is not misleading .......... 1

II. Expert testimony regarding "damages" from lawful conduct is misleading and should be excluded .......... 2

III. TreeHouse's claimed damages from lawful conduct should be excluded. .......... 6

- A. Dr. Stiroh's lost profit damages include sales lost for lawful reasons. .......... 6
- B. Dr. Stiroh's damages for excess costs include costs that flow from lawful conduct. 8

IV. JBR's and McLane's antitrust damages models estimate a lump sum of purported "damages" from lawful and unlawful conduct and should therefore be excluded .......... 8

V. Certain Lanham Act damages models also cannot disaggregate damages for lawful and allegedly unlawful statements and should be excluded .......... 10

- A. Dr. Macartney's model offers no means of distinguishing between damages from lawful and allegedly unlawful statements .......... 10
- B. Dr. Rao's Lanham Act damages for compatibility statements likewise fail to distinguish injury from lawful versus allegedly unlawful statements. .......... 11

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**Cases**

*Argus, Inc. v. Eastman Kodak Co.*,
612 F. Supp. 904 (S.D.N.Y. 1985), *aff'd*, 801 F.2d 38 (2d Cir. 1986)....... 3

*Behrend v. Comcast Corp.*,
264 F.R.D. 150 (E.D. Pa. 2010)....... 5

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979)....... 2

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
627 F. Supp. 2d 384 (D.N.J 2009)....... 5, 10, 11

*Children's Broad. Corp. v. Walt Disney Co.*,
245 F.3d 1008 (8th Cir. 2001)....... 9

*City of Vernon v. S. Cal. Edison Co.*,
955 F.2d 1361 (9th Cir. 1992)....... 3

*Colvin v. Keen*,
900 F.3d 63 (2d Cir. 2018)....... 2

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....... 4, 5, 9

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000)....... 4

*Golden Unicorn, Inc. v. Audible, Inc.*,
682 F. Supp. 3d 368 (S.D.N.Y. 2023)....... 3

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997)....... 4, 9

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
305 F.3d 368 (5th Cir. 2002)....... 5-6

*Litton Sys., Inc. v. AT&T*,
700 F.2d 785 (2d Cir. 1983)....... 4

*Mahaska Bottling, Inc. v. PepsiCo, Inc.*,
441 F. Supp. 3d 745 (S.D. Iowa 2019)........................................................................ 4

*Malletier v. Dooney & Bourke, Inc.*,
525 F.Supp.2d 558 (S.D.N.Y.2007)............................................................................ 4

*MCI Commc'ns Corp. v. AT&T*,
708 F.2d 1081 (7th Cir. 1983) .............................................................................*passim*

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)....................................................................................... 2, 3

*Orgler Homes, Inc. v. Chicago Reg'l Council of Carpenters*,
2008 WL 11627846 (N.D. Ill. Sept. 30, 2008)............................................................ 9

*Phoenix v. Amonette*,
95 F.4th 852 (4th Cir. 2024)......................................................................................... 2

*Polyzen, Inc. v. Radiadyne, LLC*,
2016 WL 5360576 (E.D.N.C. Sept. 23, 2016), *aff'd*, 726 Fed. Appx. 819 (Fed. Cir. 2018).......................................................................................................................... 4

*Prepaid Wireless Servs., Inc. v. Sw. Bell Wireless, Inc.*,
2002 WL 34367328 (S.D. Tex. July 23, 2002) .........................................................4-5

*Schoolcraft v. City of New York*,
298 F.R.D. 134 (S.D.N.Y. 2014) ................................................................................ 2

*Smith v. Royal Caribbean Cruises, Ltd.*,
620 F. App'x 727 (11th Cir. 2015)............................................................................... 2

*USFL v. NFL*,
842 F.2d 1335 (2d Cir. 1988) ..................................................................................... 2

**Court Rules**

Fed. R. Evid. 403.......................................................................................................... 3

Fed. R. Evid. 702.......................................................................................................... 3

On September 18, this Court granted summary judgment to Keurig on liability as to core claims in this case. Yet Plaintiffs' damages estimates still measure "harm" from conduct that this Court has held to be lawful. Plaintiffs' models include purported damages from the design of Keurig's 2.0 brewer, standard private label supply agreements, prior intellectual property litigation, routine commercial speech, and other now-rejected claims. Under controlling law, Plaintiffs may not present to a jury damages estimates based on lawful conduct. Keurig brings this motion to exclude and dismiss damages based on lawful conduct, or in the alternative to request reconsideration of Keurig's motion for summary judgment as to damages.

Plaintiffs' proffered expert testimony reflects damages for lawful conduct in slightly different but equally impermissible ways:

- TreeHouse's antitrust damages expert (Dr. Lauren Stiroh) disclosed opinions as to which of TreeHouse's purported lost sales resulted from particular conduct. The Court should exclude Dr. Stiroh's now-impermissible testimony related to purported damages from conduct as to which the Court granted Keurig's motion for summary judgment.

- JBR's and McLane's damages experts (Dr. Gareth Macartney and Dr. Phillip Johnson) chose to proffer damages models that do not and cannot distinguish between the effects of conduct held to be lawful and conduct remaining in the case. Under controlling law, the Court should therefore exclude those models in their entirety.

- JBR's Lanham Act damages model (Dr. Gareth Macartney), and the portion of TreeHouse's Lanham Act damages model related to compatibility statements (Dr. Mohan Rao), should be excluded for this same reason: they do not and cannot distinguish purported damages due to lawful conduct.

Each of these models includes damages that cannot be awarded in light of the Court's summary judgment decision and should be excluded and dismissed accordingly.

## I. The Court has a continuing duty to ensure that expert testimony assists the jury and is not misleading.

Courts have a continuing duty to ensure that expert testimony is reliable and not misleading. ECF No. 2375 at 120 ("Expert Order") (explaining that courts permit parties to

renew Rule 702 arguments that depend on summary judgment determinations after a summary judgment decision is issued); *see also Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (judges exercise "more control over experts than over lay witnesses" because juries give expert testimony "unique weight"). This duty extends to gatekeeping as to damages in particular. Damages testimony must provide the jury with a non-speculative and "reasonable basis upon which to estimate the amount of its losses caused by" challenged conduct rather than "lawful factors." *USFL v. NFL*, 842 F.2d 1335, 1378-79 (2d Cir. 1988).

To the extent the Court reconsiders a prior decision, it has broad discretion to grant reconsideration, *Colvin v. Keen*, 900 F.3d 63, 74 (2d Cir. 2018) (district court "acted well within its discretion to reconsider" its prior summary judgment ruling "by which it avoided burdening itself and the parties with an unnecessary trial"), including based on changes in law or new facts, *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014). Changes supporting reconsideration include rulings that change the scope of claims in the case. *Phoenix v. Amonette*, 95 F.4th 852, 857 (4th Cir. 2024) (affirming district court's reconsideration of prior summary judgment decision in light of *Daubert* ruling); *Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 729, 731 (11th Cir. 2015) (same).

## II. Expert testimony regarding "damages" from lawful conduct is misleading and should be excluded.

As this Court has noted, "[i]t is essential that damages reflect only the losses directly attributable to unlawful competition." Expert Order at 23 (quoting *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1161 (7th Cir. 1983)); *see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 297 (2d Cir. 1979) (similar). To be presented to a jury as non-speculative and avoid misleading the jurors, a model "needs to avoid accounting for lawful acts and acts where

the associated cause of action has been dismissed." Expert Order at 36-37 (emphasis added). Conversely, a model that reflects an aggregate damages number including the impact of conduct dismissed from the case must be excluded because "the jury [is] left with no way to adjust the amount of damages to reflect lawful competition." *MCI*, 708 F.2d at 1163. Courts are therefore "particularly on-guard against a damages benchmark that strongly risks commingling lawful and unlawful conduct." Expert Order at 29 n.11.

Where Plaintiffs proffer expert testimony on damages that reflect the effect of lawful conduct, courts exclude that testimony under Federal Rules of Evidence 702 and 403. *Nimely*, 414 F.3d at 397. In *Golden Unicorn, Inc. v. Audible, Inc.*, for example, the court excluded plaintiffs' damages model pursuant to Rule 702 following summary judgment on liability because the model "d[id] not correspond to Plaintiffs' sole remaining claim" after summary judgment. 682 F. Supp. 3d 368, 380 (S.D.N.Y. 2023).

Courts also grant summary judgment as to damages where purported damages reflect the impact of lawful conduct. *See, e.g.*, *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371-72 (9th Cir. 1992) (affirming summary judgment for defendant on damages where, among other things, defendant won summary judgment as to liability on horizontal group boycott claims, yet damages model "failed to segregate the losses, if any, caused by acts which were not antitrust violations"); *Argus, Inc. v. Eastman Kodak Co.*, 612 F. Supp. 904, 923-24, 926-27 (S.D.N.Y. 1985) (granting summary judgment based in part on damages model that failed to disaggregate effects of lawful conduct and explaining that "only damages which are the certain result of the wrong can be recovered"), *aff'd*, 801 F.2d 38 (2d Cir. 1986).

If a plaintiff's damages model is modular and some claims are dismissed, courts have simply excluded experts from testifying about damages amounts flowing from dismissed claims.

*See, e.g.*, *Polyzen, Inc. v. Radiadyne, LLC*, 2016 WL 5360576, at *12 (E.D.N.C. Sept. 23, 2016) (preventing plaintiff's expert from testifying about damages for claims that did not survive summary judgment), *aff'd*, 726 Fed. App'x 819 (Fed. Cir. 2018); *Mahaska Bottling, Inc. v. PepsiCo, Inc.*, 441 F. Supp. 3d 745, 750, 754-55 (S.D. Iowa 2019) (excluding experts' damages testimony related to claims dismissed on summary judgment); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 572 (S.D.N.Y. 2007) (adopting recommendation to exclude expert testimony concerning unrecoverable damages).

But, if the plaintiff has elected to present a model that does not permit disaggregation, then when some claims are dismissed the model is "inadequate," Expert Order at 23 (citing *Litton Sys., Inc. v. AT&T*, 700 F.2d 785, 825 (2d Cir. 1983)), and must be excluded in its entirety. *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (damages model that included damages for three dismissed theories of liability could not establish damages for any plaintiff and therefore could not be used to establish class-wide damages); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (judgment for defendant where the "expert opinion should not have been admitted because it did not … separate lawful from unlawful conduct"); *MCI*, 708 F.2d at 1163 (rejecting model that did not adjust the level of damages "depending on which acts of [defendant] were held to be legal and which illegal"); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1224 (9th Cir. 1997) ("When a § 2 monopolization claim has been dismissed or adjudicated against a plaintiff, damages attributable to that claim must be disaggregated."); *Polyzen*, 2016 WL 5360576, at *12 (excluding "damages calculations … based on assumptions regarding [plaintiff's] success on all of its claims that are no longer viable in light of this court's summary judgment ruling"); *Prepaid Wireless Servs., Inc. v. Sw. Bell*

*Wireless, Inc.*, 2002 WL 34367328, at *5 (S.D. Tex. July 23, 2002) (excluding damages model that failed to disaggregate antitrust claims that were dismissed through summary judgment).

In *Comcast*, the Supreme Court rejected a purported class in an antitrust case based on just such a model. 569 U.S. at 33. Specifically, the plaintiffs in *Comcast* estimated damages using a benchmark that was meant to approximate a world in which four theories of antitrust impact did not occur, but the district court found that there was insufficient evidence to support three of the four theories. *Id.* at 36; *see also Behrend v. Comcast Corp.*, 264 F.R.D. 150, 165, 176, 181 (E.D. Pa. 2010). The Supreme Court therefore rejected the plaintiffs' damages model in its entirety. The Court started with the "unremarkable premise" that plaintiffs are entitled to damages based only on successful theories of antitrust harm. *Comcast*, 569 U.S. at 35. The Court further explained that, while damages calculations need not be exact, they "must be consistent with [plaintiffs'] liability case." *Id.* Because the expert's model "d[id] not even attempt" to limit its damages calculation to the only remaining claim in the case, the model could "[]not possibly" provide an adequate damages estimate. *Id.*

Courts' refusal to allow experts to present misleading "damages" numbers based on lawful conduct holds true as to Lanham Act damages as well. For example, in *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, a plaintiff's expert calculated combined damages for alleged Lanham Act violations assuming that all of the challenged statements were false. 627 F. Supp. 2d 384, 444 (D.N.J. 2009). The court held that this was not a problem if all statements were held to be unlawful, but the expert's choice not to disaggregate became a problem if challenges to some statements failed. *Id.* At that point, the expert's choice not to provide a model that disaggregated effects was "fatal to the validity of his calculations." *Id.*; *see also IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376-77 (5th Cir. 2002) (affirming exclusion of

damages model that calculated only the effect of the "combination" of all challenged statements, some of which were later deemed nonactionable).

In the present case, the Court held that core conduct Plaintiffs challenged was lawful. ECF No. 2552 ("Summ. J. Order"). The Court has not yet had the opportunity to evaluate how that ruling affects Plaintiffs' experts' damages models, and it is appropriate for the Court to do so now in light of the Summary Judgment Order.

## III. TreeHouse's claimed damages from lawful conduct should be excluded.

### A. Dr. Stiroh's lost profit damages include sales lost for lawful reasons.

To estimate damages, TreeHouse's expert, Dr. Stiroh: (1) identified specific sales TreeHouse purportedly lost to customers in the At-Home segment as a result of challenged conduct; (2) determined what TreeHouse's share of the At-Home segment allegedly would have been if it had made those "lost sales"[1]; (3) calculated the additional profits TreeHouse would have earned in the At-Home segment with the higher share estimated based on Steps 1 and 2; and (4) repeated Step 3 for the Away-from-Home segment using the results from Steps 1 and 2.

The appendix to Dr. Stiroh's report explains that, for Step 1, she performed a customer-by-customer analysis as to why sales were lost. She groups "lost" At-Home sales into four categories:

1. "Lost Sales Due to the Sham Litigation"
2. "Lost Sales Due to Capacity Constraints to Fulfil Orders in 2014 … related to Keurig's exclusive agreements with suppliers"

[1] Dr. Stiroh also makes other assumptions, including that the segments would have been larger but for the alleged conduct. Keurig addressed that in its prior *Daubert* briefing, ECF No. 2267 at 12-25, and it does not affect this motion.

3. "Lost Sales from Customers that Stopped Promoting TreeHouse's Products … due to the launch of the 2.0 brewer"

4. "Lost Sales Due to the Introduction of the 2.0 brewer."

ECF No. 2268-4, App. 1.

Only one of these four categories of purported "lost At-Home sales" remains following summary judgment. This Court has dismissed TreeHouse's claims based on purported sham litigation (category 1) and the 2.0 brewer (categories 3 and 4). Summ. J. Order at 87, 92, 96. TreeHouse's damages model therefore must "avoid accounting for [them]." Expert Order at 36-37. Dr. Stiroh's second category, lost sales due to capacity constraints in 2014, remains in the case. Summ. J. Order at 78. The rest of Dr. Stiroh's At-Home damages are attributable to lawful conduct and must be excluded.[2]

This correction of purported At-Home ("AH") lost customers flows through to Dr. Stiroh's claimed Away-from-Home ("AFH") damages as well. Dr. Stiroh used TreeHouse's claimed but-for AH share to estimate its purported but-for AFH sales. ECF No. 2268-4, Stiroh Rpt. ¶ 131 (TreeHouse "would have captured as much of the but-for AFH market segment as it

---

[2] As to the last section in Dr. Stiroh's appendix, ECF No. 2268-4, Stiroh Rpt., App. 1, § 6, which speculates about "other potential losses," Dr. Stiroh described these during her deposition as sales where she did not have a "reasonable basis to connect the [potential] lost sale[s] with the conduct at issue" in the case, ECF No. 2268-1, Stiroh Tr. at 157:16-23, but speculated that at least two-thirds of those "potential" lost sales were attributable to private label contracts, ECF No. 2268-4, Stiroh Rpt., Ex. 6.D. TreeHouse's claims as to those retailer contracts did not survive summary judgment. As to the alternative Amazon benchmark in Dr. Stiroh's reply report, *see* ECF No. 2268-2, Stiroh Reply Rpt. ¶¶ 116-18, that model is invalid for the same reasons that JBR's benchmark model is invalid, as described in Section IV *infra*. And Dr. Stiroh's fifth methodology changes only estimated total segment size, not Dr. Stiroh's assessment of lost customers, *see* ECF No. 2268-2, Stiroh Reply Rpt. ¶ 191, so it suffers from the same problems affecting Dr. Stiroh's baseline model.

would have of the but-for AH market segment").[3] Keurig does not agree with this methodology but, setting that aside, applying her own damages methodology Dr. Stiroh's AFH damages must be limited to the increment in share generated by her category 2 customers now that the Court has found the conduct in categories 1, 3, and 4 was lawful.

### B. Dr. Stiroh's damages for excess costs include costs that flow from lawful conduct.

Dr. Stiroh separately estimated damages due to increased costs that TreeHouse supposedly paid because of challenged conduct. Of the $90.8 million she estimated in cost damages, $67.5 million is the cost of taggant ink—a 2.0-related cost—and $5.9 million is from Keurig's patent litigation, but these claims have been dismissed. ECF No. 2268-4, Stiroh Rpt., tbl. 17. Dr. Stiroh should be prohibited from testifying to anything beyond the remaining $17.4 million of purported cost damages.

## IV. JBR's and McLane's antitrust damages models estimate a lump sum of purported "damages" from lawful and unlawful conduct and should therefore be excluded.

Dr. Macartney and Dr. Johnson elected to present models that calculate damages for *all* of the allegedly anticompetitive conduct mixed together, including conduct that has now been excluded from the case. *See, e.g.*, Freedman Decl., Ex. 1, Macartney 2026 Tr. at 153:22-24 (included damages from "the exclusive relationships that Keurig had with certain retailers that excluded companies like Rogers"); ECF No. 2256-2, Johnson (McLane) Rpt. ¶¶ 78-90 (assuming liability for 2.0 development, acquisitions of roasters, agreements with retailers, and patent

---

[3] That same problem arises under Dr. Stiroh's alternative methodologies for calculating Away-From-Home damages: all rely on TreeHouse's purported At-Home damages. ECF No. 2268-4, Stiroh Rpt. ¶ 156 (second methodology assumes "TreeHouse would have been able to translate its AH sales success into AFH sales in a similar manner"); *id.* ¶ 159 (third methodology "us[es] TreeHouse's but-for AH unit sales as the inputs").

infringement litigation when calculating damages); ECF No. 2256-1, Johnson (McLane) Tr. at 58:25-59:7 (estimated overcharges from "the collection" of alleged conduct).

Neither model provides any means of separating out the damages attributable to the different types of conduct that were the subject of summary judgment. Both experts confirmed this at their depositions. *See, e.g.*, Freedman Decl., Ex. 1, Macartney 2026 Tr. at 56:13-23 (explaining that model measures impact of "everything that [Keurig] was doing in the marketplace," including statements about the 2.0 Brewer); ECF No. 2256-1, Johnson (McLane) Tr. at 58:25-59:7 (conceding he did "not break [the conduct in the complaint] down into individual elements").

These models exhibit the same fundamental problem as the model in *Comcast*: there was no way of "rationally separat[ing] … damages from those losses … which are caused by the purely lawful competitive actions of Defendant." Expert Order at 97 (quoting *MCI*, 708 F.2d at 1168); *Comcast*, 569 U.S. at 36-37. This is a critical flaw: a damages model must be informed by a liability case. *MCI*, 708 F.2d at 1161; *see also Image Tech. Servs.*, 125 F.3d at 1224; *Comcast*, 569 U.S. at 38 (valid damages model must translate "the legal theory of the harmful event into an analysis of the economic impact of that event"). Because Drs. Macartney and Johnson did not provide any way for the jury to determine damages consistent with plaintiffs' remaining theories of liability, their models are invalid and must be excluded. *Orgler Homes, Inc. v. Chicago Reg'l Council of Carpenters*, 2008 WL 11627846, at *16 (N.D. Ill. Sept. 30, 2008) ("damages model [that] threatens to ensnare and attribute damages to lawful conduct[] … is impermissible"); *see also Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001) (affirming exclusion of expert testimony where "[o]nly three counts from the

original complaint survived summary judgment, but [the expert's] damages theory remained the same").

## V. Certain Lanham Act damages models also cannot disaggregate damages for lawful and allegedly unlawful statements and should be excluded.

### A. Dr. Macartney's model offers no means of distinguishing between damages from lawful and allegedly unlawful statements.

Dr. Macartney's false advertising damages assume that if Keurig made any of the challenged statements to a partner, then that must be why the partner opted to work with Keurig. *See, e.g.*, ECF No. 2260-1, Macartney Initial Rpt., App. A, no. 9 (demanding Lanham Act damages for BJ's because Keurig said the 2.0 used "proprietary technology"); *id.* no. 11 (demanding Lanham Act damages for Meijer because TreeHouse was unable to prove to Meijer its pods would work in the 2.0).[4] This approach is impermissible now that the Court has held that 15 of the 32 challenged statements are lawful. Summ. J. Order § F. Dr. Macartney's model does not say which partners chose Keurig because of the allegedly unlawful statements rather than the lawful statements.

Dr. Macartney's model thus suffers from the same flaw identified in *Bracco Diagnostics*.[5] 627 F. Supp. 2d at 444. There, the court rejected a Lanham Act damages model because plaintiff's expert "did not attempt to break down the injury to Bracco by particular ads." *Id.* Likewise, here Dr. Macartney's Lanham Act damages model provides no basis for the jury to calculate damages based only on actionable statements, leaving them to resort to impermissible "speculation or guesswork." *MCI*, 708 F.2d at 1162-63.

---

[4] Dr. Macartney incorporated the Lanham Act methodology from his initial report into his amended report. ECF No. 2451-3, Macartney Corrected Am. Rpt., ¶ 46.

[5] Dr. Macartney's model also relies on his antitrust damages calculation, ECF No. 2260-1, Macartney Initial Rpt., ¶ 270, which, as described in Section IV *supra*, should be excluded.

**B. Dr. Rao's Lanham Act damages for compatibility statements likewise fail to distinguish injury from lawful versus allegedly unlawful statements.**

The portion of Dr. Rao's Lanham Act model that calculates damages for TreeHouse based on Keurig's statements about the compatibility of unlicensed pods suffers from the same fatal flaw. Dr. Rao based his calculations on a survey by another expert that asked whether Keurig 2.0 brewer owners made purchasing decisions based on compatibility concerns. ECF No. 1448-30, Rao Rpt. ¶ 89. But Dr. Rao did not identify which particular statements caused those owners to make their purchasing decisions. Like Dr. Macartney, he calculated damages assuming Keurig would be liable for all challenged statements, which the Summary Judgment Order has now clarified is not the case. Summ J. Order § F. Because Dr. Rao's model cannot disentangle "damages" from lawful conduct, it should be excluded. *See, e.g.*, *Bracco Diagnostics*, 627 F. Supp. 2d at 444 (Lanham Act damages model invalid if it cannot disentangle damages attributable to statements court has deemed lawful).

**CONCLUSION**

For the foregoing reasons, Keurig respectfully requests that the Court exclude TreeHouse's expert testimony as to claimed damages as described above, exclude JBR's and McLane's antitrust damages models, exclude JBR's Lanham Act damages model, exclude TreeHouse's Lanham Act damages expert testimony related to compatibility statements, and dismiss the corresponding damages claims.

Dated: October 2, 2026

*/s/ Leah Brannon*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
**Kenneth S. Reinker**
**Carl Lawrence Malm**
**Alan B. Freedman**
lbrannon@cgsh.com
kreinker@cgsh.com
lmalm@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1508

**Rahul Mukhi**
rmukhi@cgsh.com
One Liberty Plaza
New York, NY 10006
(212) 225-2000

BUCHANAN INGERSOLL & ROONEY PC
**Wendelynne J. Newton**
**Mackenzie A. Baird**
wendelynne.newton@bipc.com
mackenzie.baird@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
(412) 562-8932

*Attorneys for Defendant/Counterclaim Plaintiff Keurig Green Mountain, Inc.*

**Local Rule 7.1(c) Certificate of Compliance**

The undersigned, counsel of record for Keurig Green Mountain, Inc., certifies that this brief contains 3,417 words, which complies with the applicable word limit.

Dated: October 2, 2026

*/s/ Leah Brannon*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
lbrannon@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1508
*Attorney for Defendant/Counterclaim Plaintiff*
*Keurig Green Mountain, Inc.*