**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542<br><br>Master Docket No. 1:14-md-02542 (VSB) (SLC) |
| TREEHOUSE FOODS, INC., BAY VALLEY FOODS, LLC, and STURM FOODS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | **Oral Argument Requested**<br><br>*This Document Relates to No. 1:14-cv-00905 (VSB) (SLC)* |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF KEURIG'S MOTION TO EXCLUDE AND DISMISS CERTAIN TREEHOUSE DAMAGES**

**TABLE OF CONTENTS**

I. TreeHouse's antitrust damages expert created a modular damages model to allow damages to be excluded if some theories of harm fail. .... 1

II. TreeHouse's "alternative" model based on Amazon sales fails to disaggregate damages caused by dismissed claims and so must be excluded entirely. .... 4

III. TreeHouse's Lanham Act damages model fails because it does not disaggregate. .... 5

IV. TreeHouse's procedural arguments fail. .... 6

CONCLUSION .... 10

# TABLE OF AUTHORITIES

## Cases

*Acumen v. Gen. Sec.*,
769 F.3d 135 (2d Cir. 2014)....................3

*Allegheny Cnty. v. EPA*,
732 F.2d 1167 (3d Cir. 1984)....................4

*Allen v. City of New York*,
466 F. Supp. 2d 545 (S.D.N.Y. 2006)....................8

*Bingham v. Zolt*,
66 F.3d 553 (2d Cir. 1995)....................4

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1998) ....................2

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
627 F. Supp. 2d 384 (D.N.J. 2009) ....................5

*Clift v. BNSF Ry. Co.*,
2015 WL 4656151 (E.D. Wash. Aug. 5, 2015), *aff'd*, 726 F. App'x 643 (9th Cir. 2018) .................... 6-7

*Colvin v. Keen*,
900 F.3d 63 (2d Cir. 2018)....................7

*Comcast v. Behrend*,
569 U.S. 27 (2013).................... 1, 2-3, 10

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) .................... 7-8

*Dusablon v. Gibbs*,
2025 WL 3527090 (S.D.N.Y. Dec. 9, 2025) ....................8

*Henderson v. Metro. Bank & Tr. Co.*,
502 F. Supp. 2d 372 (S.D.N.Y. 2007)....................6

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) ....................4

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003)....................4

*Lewis v. FMC Corp.*,
786 F. Supp. 2d 690 (W.D.N.Y. 2011)....................9

*Lin v. District of Columbia*,
47 F.4th 828 (D.C. Cir. 2022)....................7

*MCI Commc'ns Corp. v. AT&T*,
708 F.2d 1081 (7th Cir. 1983)....................7, 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*,
937 F. Supp. 276 (S.D.N.Y. 1996)....................8

*Perelman v. Visa USA, Inc.*,
2026 WL 2640862 (S.D.N.Y. Sept. 8, 2026)....................6

*Phoenix v. Amonette*,
95 F.4th 852 (4th Cir. 2024)....................7

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
2004 WL 345551 (S.D.N.Y. Feb. 23, 2004)....................9

*Schoolcraft v. City of New York*,
298 F.R.D. 134 (S.D.N.Y. 2014)....................6

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995)....................6

*Smith v. Royal Caribbean*,
620 F. App'x 727 (11th Cir. 2015)....................6

*United States v. Dentsply Int'l, Inc.*,
399 F.3d 181 (3d Cir. 2005)....................4

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)....................6

In opposing Keurig's motion to exclude damages TreeHouse argues that it should be able to pursue damages based on theories of harm that the Court has rejected. ECF No. 2609 ("Opp.") at 9-11, 21-25. TreeHouse is wrong. Under controlling law, and as this Court has already held, damages may not be "premised on a dismissed theory of harm." ECF No. 2366 ("Expert Order") at 28; *see also id.* at 24 n.7, 36-37. TreeHouse also objects to Keurig raising this argument now, but Keurig brought its motion promptly after the Court's September 18 order dismissing these theories of harm. *See* ECF No. 2552 ("Summ. J. Order").

The rule excluding damages for dismissed theories of harm is easy to apply. TreeHouse's primary damages expert offered a modular damages model that links lost sales to theories of harm, making it straightforward to exclude damages based on rejected theories. And TreeHouse's Lanham Act damages expert's model cannot disaggregate damages from dismissed theories of harm, so under controlling law that model must be excluded entirely. *See, e.g.*, *Comcast v. Behrend*, 569 U.S. 27, 38 (2013) (damages model that includes dismissed theories of harm is invalid because a model must translate "the legal theory of the harmful event into an analysis of the economic impact of that event"). Nothing in TreeHouse's brief changes these conclusions, which are the necessary result of the Court's September 18 order.

## I. TreeHouse's antitrust damages expert created a modular damages model to allow damages to be excluded if some theories of harm fail.

TreeHouse's antitrust damages expert, Dr. Lauren Stiroh, offered a "lost customer" damages model. ECF No. 2562 ("Mot.") at 6. In Appendix 1 of her report, Dr. Stiroh detailed which "At-Home" sales were purportedly lost because of alleged sham litigation, customers not promoting TreeHouse's products or switching to Keurig due to the introduction of the 2.0 Brewer, and capacity constraints in 2014 due to supplier contracts. *Id.* at 6-7; *see also* ECF No. 2268-4, Stiroh Rpt., App'x 1 at 2-3 (identifying sales lost to customers that "stopped promoting

TreeHouse products due to the launch of the 2.0 brewer"). The Court has now dismissed claims based on purported sham litigation and the introduction of the 2.0 Brewer. Summ. J. Order at 87, 96, 97. TreeHouse is not entitled to damages from the dismissed theories. That reflects basic causation principles that a plaintiff may only seek damages for losses caused by illegal conduct. Expert Order at 28.

Dr. Stiroh explained during her deposition that her model allows for the exact relief Keurig seeks: The "damage assessment . . . is capable of being disaggregated, and so individual damages that come from specific conduct for which Keurig is not ultimately held liable can be carved out." ECF No. 2268-1, Stiroh Tr. at 291:9-14. Dr. Stiroh explained that her Appendix 1 provides a "roadmap for how the model can be disaggregated if some of the conduct at issue is not found to be anticompetitive." *Id.* at 299:17-19. She even illustrated using the introduction of the 2.0 Brewer as an example: "I can adjust my model to include . . . or exclude, for example, certain customers where I have a link to the customer that is connected with the—the redesign of the 2.0." *Id.* at 292:24-293:4. Because the Court found the challenged litigation and the introduction of the 2.0 Brewer not to be anticompetitive, the model should be modified to exclude "lost customers" attributed to these theories as Dr. Stiroh detailed.

In TreeHouse's response brief, it tries to walk back Dr. Stiroh's report and testimony and explains that it wants to keep pursuing the same sweeping damages despite the dismissal of multiple theories. *See* Opp. at 9-11. But it is "hard to take seriously" the argument that damages are unchanged after some theories of harm are dismissed. *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (Posner, C.J.). *Comcast* makes clear that a damages model must translate "the legal theory of the harmful event into an

analysis of the economic impact *of that event*." 569 U.S. at 38 (emphasis removed). When some theories are rejected, the plaintiff can no longer claim damages for them. *Id.* at 35-38**.**

TreeHouse's argument otherwise is not just contrary to controlling law and its expert's report and testimony, it also fails as a matter of logic. To take one example, TreeHouse is continuing to challenge a supposed supply constraint that it claims prevented it from making sales to certain customers in 2014. *See* ECF No. 2268-4, Stiroh Rpt., App'x 1 at 2; Mot. at 6-7. But TreeHouse cannot use an alleged 2014 supply constraint theory to demand treble damages for customers that it allegedly lost in 2011 due to pending intellectual property litigation. This Court held that the litigation did not violate the antitrust laws and noted that Plaintiffs had identified not "even a scintilla of evidence" that the litigation was "objectively baseless or designed to harass JBR and Sturm." Summ. J. Order at 96. TreeHouse cannot keep seeking treble damages for customers "lost" due to lawful litigation.

Likewise, TreeHouse cannot continue seeking treble damages based on customers that Dr. Stiroh found were lost due to the introduction of the 2.0 Brewer because that theory, too, has been dismissed. A plaintiff bringing a product design claim must show, among other requirements, that the defendant coerced consumers into buying the new product, but here the undisputed "facts revealed during discovery indicate that consumers were not coerced into buying the 2.0 Brewer." Summ. J. Order at 87.

Dr. Stiroh created her modular damages model precisely so that damages could be adjusted downward if claims were rejected. In an effort to avoid this result, TreeHouse cites *Acumen v. General Security*, 769 F.3d 135 (2d Cir. 2014). Opp. at 10-11. But the court there simply noted that damages for breach of contract did not depend on why the contract was breached. *Acumen*, 769 F.3d at 143. Here, Dr. Stiroh identified which theories led to which lost

customers, resulting in modular damages. TreeHouse's other cases also support excluding damages for dismissed theories because the "amount of damages depends on the extent of the injury suffered." *Bingham v. Zolt*, 66 F. 3d 553, 564 (2d Cir. 1995); *Image Tech. Servs.*, 125 F.3d at 1224 (where a defendant is not liable for some acts, "damages . . . must be disaggregated").[1] TreeHouse cannot walk away from Dr. Stiroh's modular damages model now just because it does not like the model's results.

TreeHouse argues that its "Away-from-Home" damages should not change because it has surviving theories of harm related to these sales. Opp. at 22-23. But Dr. Stiroh's calculation of TreeHouse's Away-from-Home share is based on TreeHouse's At-Home share, and her calculation of TreeHouse's At-Home share is based on the "lost customer" analysis. Mot. at 6-8. The removal from the "lost customer" analysis of customers lost based on dismissed theories of harms reduces TreeHouse's sales in At-Home and thus reduces its At-Home share. That in turn reduces TreeHouse's Away-from-Home share.

## II. TreeHouse's "alternative" model based on Amazon sales fails to disaggregate damages caused by dismissed claims and so must be excluded entirely.

TreeHouse does not deny that its "alternative" Amazon benchmark model fails. Instead, in a footnote, TreeHouse asserts that Keurig did not sufficiently challenge this benchmark "in its motion for summary judgment." Opp. at 23 n.21. But TreeHouse does not explain why Keurig cannot raise objections to the Amazon benchmark now under Federal Rules of Evidence 702 and

---

[1] TreeHouse cites three cases for points irrelevant to its argument. Opp. at 10-11 (*LePage's Inc. v. 3M*, 324 F.3d 141, 157 (3d Cir. 2003) (some conduct can be assessed under Section 1 or Section 2 of the Sherman Act); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 197 (3d Cir. 2005) ("different theories may be presented to establish a cause of action"); and *Allegheny County v. EPA*, 732 F.2d 1167, 1172-73 (3d Cir. 1984) (similar)). None of these cases supports seeking damages for dismissed theories of harm.

403, and in the alternative seek reconsideration of summary judgment on damages based on new facts in the Court's September 18 order.[2] The model should be excluded for the reasons detailed in Keurig's opening brief, Mot. at 10, which TreeHouse does not dispute.

## III. TreeHouse's Lanham Act damages model fails because it does not disaggregate.

TreeHouse concedes that its Lanham Act damages expert, Dr. Mohan Rao, chose *not* to provide a modular compatibility-statement damages model. Opp. at 24. Instead, he purports to measure the *overall effect* of Keurig's compatibility-related statements, including ones that were dismissed. Summ. J. Order § IV.F (multiple challenged statements were not anticompetitive). TreeHouse admits that Dr. Rao cannot disaggregate damages because he relied on a survey that did not measure the effect of any individual statement. Opp. at 24. But that is the model's downfall: Because Dr. Rao chose to measure the effect of the statements in the aggregate, his model cannot separate out the effects of statements that have been dismissed from the case. And, because the model is *not* limited to damages from theories remaining in the case, it must be excluded. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 444 (D.N.J. 2009) (Lanham Act damages model must be able to disentangle effects of damages court has deemed lawful). TreeHouse argues that *Bracco* is inapplicable here because the theory at issue there was rejected at a bench trial, Opp. at 23 n.25, but TreeHouse offers no explanation for why a court's ruling at a bench trial should be treated any differently than a ruling at summary judgment. The Lanham Act does not authorize damages for lawful statements.

---

[2] Further, Keurig *did* challenge the Amazon benchmark in prior filings. *See* ECF No. 2267, Stiroh *Daubert* Mot., at 11; ECF No. 2269, Stiroh *Daubert* Reply, at 10; ECF No. 2275 ("Keurig Summ. J. Mot.") at 95-96, 98-102 (challenging TreeHouse's damages generally).

## IV. TreeHouse's procedural arguments fail.

TreeHouse argues that Keurig challenged its damages for failure to disaggregate before. Opp. at 3-4. Keurig did challenge TreeHouse's damages models for failure to disaggregate the effect of TreeHouse's own decisions, such as its choice not to lower prices. Keurig Summ. J. Mot. at 98-102. The Court held that there were material issues of fact as to whether sales were lost due to TreeHouse's choices or the challenged reasons identified by Dr. Stiroh. Summ. J. Order at 101-05. But the Court also held that a number of the challenged reasons Dr. Stiroh identified are not actionable. *See, e.g.*, Summ. J. Order at 87, 96, 97. Keurig could not argue for exclusion of damages based on this liability decision before it was issued on September 18, and Keurig brought this motion promptly afterward on October 2.

Second Circuit cases, including cases cited by TreeHouse, make clear that parties may seek reconsideration of prior decisions, including summary judgment, based on new facts not available when the motion was originally briefed. *Virgin Atl. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("the availability of new evidence" can justify reconsideration); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration appropriate when movant identifies "matters . . . that might reasonably be expected to alter the conclusion reached by the court"); *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376, 379 (S.D.N.Y. 2007) (allowing reconsideration based on new facts); *Perelman v. Visa USA, Inc.*, 2026 WL 2640862, at *1 (S.D.N.Y. Sept. 8, 2026) ("Reconsideration is also justified [by] . . . the availability of new evidence"); *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014); (similar); *see also Phoenix v. Amonette*, 95 F.4th 852, 857 (4th Cir. 2024) (affirming district court's reconsideration of summary judgment following *Daubert* ruling); *Smith v. Royal Caribbean*, 620 F. App'x 727, 729, 731 (11th Cir. 2015) (same); *Clift v. BNSF Ry. Co.*, 2015 WL

4656151, at *5 (E.D. Wash. Aug. 5, 2015) (motion for reconsideration may be justified by "new facts or new law that were not reasonably available to the moving party at the time the motion was originally briefed"), *aff'd*, 726 F. App'x 643 (9th Cir. 2018). This Court has also affirmed this point. ECF No. 2061, Reconsideration of Sealing Order, at 5 (same); ECF No. 2389 ("Reconsideration of Macartney *Daubert* Op.") at 2-3 (same).

In *Lin v. District of Columbia*, the district court encountered a similar situation: On summary judgment, it separately evaluated plaintiffs' claims, but its decision on the first claim "laid the legal groundwork" for reconsidering the remaining claims. 47 F.4th 828, 838-39 (D.C. Cir. 2022). The district court held that its summary judgment decision on one part of the case was a basis for reconsidering summary judgment on a second part of the case, and the D.C. Circuit affirmed. *Id.* Similarly, this Court's Order on summary judgment on liability is a new fact that warrants reconsideration of summary judgment on damages.

This Court has also explained that a party may renew a *Daubert* motion following summary judgment if that decision affects the *Daubert* analysis. Expert Order at 120-21 (collecting cases). Because a damages model may not be "premised on a dismissed theory of harm," Expert Order at 28, it is appropriate for the Court to reconsider its *Daubert* decision now.

Contrary to TreeHouse's suggestion, Opp. at 14-15, none of Keurig's cases holds that a plaintiff may present a damages model that includes rejected theories of harm. Rather, the cases hold that a plaintiff is *not* entitled to present damages that reflect dismissed theories. *See, e.g.*, *Colvin v. Keen*, 900 F.3d 63, 74 (2d Cir. 2018) (it is "altogether appropriate for the court to change its ruling" rather than allow a trial with an invalid damages model); *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1161 (7th Cir. 1983) ("It is essential . . . that damages reflect only the losses directly attributable to unlawful competition."); *Concord Boat Corp. v.*

*Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (judgment for defendant where the "expert opinion should not have been admitted because it did not . . . separate lawful from unlawful conduct").

**Keurig's motion is not premature.** After saying that Keurig's motion is too late, TreeHouse says the motion is too early and should be filed as a motion in limine closer to trial. Opp. at 8. But, as this Court has explained, "expert testimony is critical to establishing damages in an antitrust case," and "total exclusion of expert testimony [may be] tantamount to a dismissal of the plaintiff's claim." Reconsideration of Macartney *Daubert* Op. at 8-9. Accordingly, these motions are routinely resolved earlier than TreeHouse suggests. *See, e.g.*, *Dusablon v. Gibbs*, 2025 WL 3527090, at *1 (S.D.N.Y. Dec. 9, 2025) (grouping *Daubert* motions with "dispositive" motions). Indeed, all of Keurig's *Daubert* motions have invoked Rules 403 and 702, *see* Expert Order at 1, and no plaintiff has previously suggested they were premature. The case on which TreeHouse relies is not to the contrary: It merely recognizes that *Daubert* motions are a form of motion in limine; it does not say that they cannot be resolved until the eve of trial. *See Allen v. City of New York*, 466 F. Supp. 2d 545, 547-48 (S.D.N.Y. 2006).

**Keurig's motion was sufficiently specific.** TreeHouse argues that Keurig was not specific enough in identifying which damages should be excluded. Opp. at 7-8, 23 n.21. But the case TreeHouse cites holds that a motion is insufficiently detailed when it "does not specify which evidence should be excluded or which parties intend to offer such evidence." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). In contrast, Keurig's motion was clear: Dr. Stiroh is not entitled to testify about damages based on customers lost due to the introduction of the 2.0 Brewer or patent litigation or use those as a base for claiming "Away-from-Home" damages, Mot. at 6-8; she is not allowed to assert

damages from increased costs due to the taggant ink or patent litigation, *id.* at 8; she is not allowed to proffer her alternative "Amazon model," *id.* at 7 n.2; all damages that Dr. Rao calculated based on Keurig's compatibility-related statements must be excluded, *id.* at 11; and the corresponding damages claims must be dismissed, *id.*

**TreeHouse's desire to add more recent years to its damages model does not save its damages based on dismissed theories of harm.** TreeHouse argues that it wants to update its damages demand before trial. Opp. at 6-7. But the Scheduling Order TreeHouse cites allows it to seek the Court's permission to update its damages numbers *to account for sales through the date of trial*. ECF No. 1152 ¶ 10. It does *not* allow TreeHouse to proffer a different damages model or keep pursuing damages for dismissed theories. Nor does Rule 26(e)(2) authorize a new model. *See Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011) (Rule 26(e)(2) does not give an expert "license to amend or rework an expert report to avoid summary judgment"); *see also Point Prods. A.G. v. Sony Music Ent., Inc.*, 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (striking amended expert testimony that offered a new approach "to fill a significant and logical gap in the first report"). Adding data for recent years will not fix the problems with the models, which improperly include damages for dismissed theories.

**TreeHouse's views as to the admissibility of vaguely defined swaths of evidence are irrelevant to this motion.** TreeHouse also argues at length about its views as to the admissibility of various vaguely defined types of evidence. Opp. at 7-21. TreeHouse seems to be arguing that the Court's order granting summary judgment to Keurig on multiple theories of harm did not narrow the scope of the case at all. These arguments are wrong, difficult to follow, and, critically, not relevant to this motion. Keurig reserves all rights to challenge admissibility of particular evidence at an appropriate time. This motion, however, seeks to apply a critical legal

rule on damages: A plaintiff may not seek damages for lawful conduct, full stop. *See, e.g.*, *Comcast*, 569 U.S. at 35; *MCI*, 708 F.2d at 1161 (plaintiff is entitled to only those damages "directly attributable to unlawful competition").

**TreeHouse's request for a briefing schedule makes no sense.** Finally, TreeHouse asks the Court to set a schedule for more briefing on Keurig's motion. Opp. at 25. But TreeHouse rejected an offer from Keurig on a briefing schedule and asked the Court for the timing and word count it wanted, which the Court endorsed. ECF Nos. 2577, 2581. TreeHouse then proceeded to file an individual 25-page brief in response to Keurig's single 10-page opening brief addressed to three plaintiffs' damages models. TreeHouse has already sought and obtained the relief it seeks and had every opportunity to respond to Keurig's arguments.

## CONCLUSION

For these reasons and those discussed in its opening brief, Keurig respectfully requests that the Court exclude TreeHouse's expert testimony as to claimed damages as described above and dismiss the corresponding damages claims.

Dated: October 30, 2026

*<u>/s/ Leah Brannon</u>*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
**Kenneth S. Reinker**
**Carl Lawrence Malm**
**Alan B. Freedman**
lbrannon@cgsh.com
kreinker@cgsh.com
lmalm@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1508

**Rahul Mukhi**
rmukhi@cgsh.com
One Liberty Plaza
New York, NY 10006
(212) 225-2000

BUCHANAN INGERSOLL & ROONEY PC
**Wendelynne J. Newton**
**Mackenzie A. Baird**
wendelynne.newton@bipc.com
mackenzie.baird@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
(412) 562-8932

*Attorneys for Defendant Keurig Green Mountain, Inc.*

**Local Rule 7.1(c) Certificate of Compliance**

The undersigned, counsel of record for Keurig Green Mountain, Inc., certifies that this brief contains 3,064 words, which complies with the Court-ordered word limit. ECF No. 2590.

Dated: October 30, 2026

*/s/ Leah Brannon*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
lbrannon@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1508
*Attorney for Defendant Keurig Green Mountain, Inc.*