**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION | MDL No. 2542<br><br>Master Docket No. 1:14-md-02542 (VSB) (SLC) |
| MCLANE COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | **Oral Argument Requested**<br><br>*This Document Relates to No. 1:19-cv-00325 (VSB) (SLC)* |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF KEURIG'S MOTION TO EXCLUDE AND DISMISS MCLANE DAMAGES**

# TABLE OF CONTENTS


I. McLane's damages model should be excluded because it includes "damages" for dismissed theories of harm ........ 1

II. McLane's various attempts to excuse its failure to disaggregate damages fail. ........ 5

III. Keurig's Motion is authorized by multiple rules. ........ 8

IV. McLane is not entitled to a do over. ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) .......... 2-3

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1998) .......... 1, 6

*Bonjorno v. Kaiser Aluminum & Chem. Corp.*,
752 F.2d 802 (3d Cir. 1984) .......... 4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 3

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... *passim*

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) .......... 7

*Dial Corp. v. News Corp.*,
165 F. Supp. 3d 25 (S.D.N.Y. 2016) .......... 8

*Dusablon v. Gibbs*,
2025 WL 3527090 (S.D.N.Y. Dec. 9, 2025) .......... 10

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
131 F. App'x 450 (5th Cir. 2005) .......... 8

*Furry Puppet Studio v. Fall Out Boy*,
2020 WL 4978080 (S.D.N.Y. Feb. 24, 2020) .......... 8

*Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*,
344 F.3d 753 (8th Cir. 2003) .......... 4, 7

*In re Broiler Chicken Antitrust Litig.*,
2022 WL 1720468 (N.D. Ill. May 27, 2022) .......... 5

*In re Publ'n Paper Antitrust Litig.*,
690 F.3d 51 (2d Cir. 2012) .......... 8

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
421 F. Supp. 3d 12 (E.D. Pa. 2019), *aff'd sub nom.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020)..............................4

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
622 F. Supp. 3d 22 (E.D. Pa. 2022)..............................5

*In re Wholesale Grocery Prods. Antitrust Litig.*,
946 F.3d 995 (8th Cir. 2019)..............................7-8

*Ingevity Corp. v. BASF Corp.*,
166 F.4th 1324 (Fed. Cir. 2026)..............................6

*LePage's Inc. v. 3M*,
1999 WL 346223 (E.D. Pa. May 14, 1999)..............................4

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003)..............................4

*Lin v. District of Columbia*,
47 F.4th 828 (D.C. Cir. 2022)..............................9

*MCI Commc'ns Corp. v. AT&T*,
708 F.2d 1081 (7th Cir. 1983)..............................2, 5, 7

*Mirkin v. XOOM Energy, LLC*,
2024 WL 4143376 (E.D.N.Y. Sept. 11, 2024)..............................10

*Nat'l Farmers' Org. v. Associated Milk Producers, Inc.*,
850 F.2d 1286 (8th Cir. 1988), *amended,* 878 F.2d 1118 (8th Cir. 1989)..............................7

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
2004 WL 345551 (S.D.N.Y. Feb. 23, 2004)..............................10

*Reed v. Edmonds*,
2006 WL 435453 (S.D.N.Y. Feb. 22, 2006)..............................10

*US Airways, Inc. v. Sabre Holdings Corp.*,
2022 WL 1140291 (S.D.N.Y. Apr. 18, 2022)..............................7

*USFL v. NFL*,
842 F.2d 1335 (2d Cir. 1988)..............................5, 7

McLane does not deny that its damages model seeks damages for dismissed theories of harm, but it argues that this is harmless. ECF No. 2611 ("Opp.") at 1, 8. Under well-established law, however, a plaintiff may not pursue a damages model that includes "harm" from dismissed theories. ECF No. 2366 ("Expert Order") at 28; *Comcast Corp. v. Behrend*, 569 U.S. 27, 36-38 (2013) (model that reflects damages from dismissed theory is invalid). McLane's damages should be excluded.

McLane also argues that it is "entitled" to fix its flawed model. Opp. at 1. McLane is mistaken. It cites no precedent providing a do-over right for plaintiffs to develop new damages models following summary judgment. McLane filed its lawsuit against Keurig in 2019, more than seven years ago. McLane received millions of documents, massive volumes of data, and years of time for fact and expert discovery. McLane is in no way "entitled" to rewind and redo expert discovery to develop a new damages model following summary judgment.

Finally, McLane argues that the Court should not reach the merits of Keurig's motion to exclude damages based on the Court's September 18 order on summary judgment because the motion comes too late. But Keurig filed this motion promptly following the Court's order. Under controlling law, because McLane's damages model includes damages for dismissed theories of harm, it should be excluded.

## I. McLane's damages model should be excluded because it includes "damages" for dismissed theories of harm.

McLane acknowledges that a plaintiff's damages model must match its theory of liability. Opp. at 9 n.3 (citing *Comcast*, 569 U.S. at 36). McLane's theories were narrowed substantially on summary judgment, but McLane argues that its damages model still works fine. Opp. at 8. That is wrong. *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (Posner, C.J.) (explaining that it is "hard to take seriously" the argument

that damages are unchanged after some theories of harm are dismissed). McLane's expert, Dr. Phillip Johnson, measured harm based on Keurig's introduction of the 2.0 brewer, associated advertising, purported sham litigation, roaster acquisitions, supplier contracts, distributor contracts, retailer contracts, and contracts with coffee brands. ECF No. 2256-2 ("Johnson (McLane) Rpt."), § III; ECF No. 2256-1 ("Johnson (McLane) Tr.") at 58:25-59:7 (model estimated overcharges from "the collection" of alleged conduct).

The Court dismissed more than half of those theories. ECF No. 2606 ("Summ. J. Order") at 133 (dismissing claims based on the 2.0 brewer, associated advertising, purported sham litigation, roaster acquisitions, and retailer contracts). McLane's damages model thus includes multiple theories of harm that have now been rejected, which makes the model invalid. *See* Expert Order at 23 ("It is essential that damages reflect only the losses directly attributable to unlawful competition."); *Comcast*, 569 U.S. at 36; *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1161 (7th Cir. 1983) (same).

McLane tries to avoid this conclusion by arguing that its various theories generally relate to monopolization under Section 2 of the Sherman Act, so regardless of which theories dropped away, it can still pursue all of its original claimed damages. Opp. at 12-13. But the antitrust laws do not prohibit monopolies, they prohibit the maintenance of monopoly power *through anticompetitive conduct*. And, as the Second Circuit has explained, this is an important distinction when it comes to damages: The "measure of damages" is limited to "the price increment *caused by the anticompetitive conduct*." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 297 (2d Cir. 1979) (emphasis added). The Second Circuit specifically rejected the argument McLane makes here, "what may be called the competitive price theory—that a purchaser may recover for the entire excess of the monopolist's price over that which would

prevail in a competitive market." *Id.* As the Second Circuit explained, the appropriate rule is the "wrongful conduct rule" under which damages are limited to the price increment caused by *unlawful* conduct. *Id.* "Were the law otherwise, it would establish an unnecessary and unwarranted trigger mechanism" for a plaintiff to recover the full difference between monopoly prices and competitive prices despite lawful bases for that monopoly power. *Id.* at 297-98.

Ignoring this clear rule, McLane argues that it should be able to pursue damages for theories this Court dismissed. Opp. at 8 (citing nothing); *id.* at 9 (asserting a "synergistic" effect between lawful and unlawful conduct).[1] This not only ignores controlling law, it also fails as a matter of logic. To take an example, McLane has long challenged intellectual property litigation that Keurig pursued in 2011 but, on summary judgment, the Court found no support for Plaintiffs' assertion that the litigation was a sham, and noted that Plaintiffs had identified not "even a scintilla of evidence" that the litigation was "objectively baseless or designed to harass JBR and Sturm." Summ. J. Order at 96.

McLane cannot continue demanding treble damages under the antitrust laws based on the 2011 litigation: That is what summary judgment means. As the Supreme Court has explained, summary judgment is "an integral part of the Federal Rules as a whole" and plays a critical role in preventing factually insufficient theories from heading to trial with the "attendant unwarranted consumption of public and private resources," and safeguarding "the rights of persons opposing claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The same rule applies across all of the theories on which the Court granted summary judgment to Keurig. Summ J. Order at 133

[1] McLane's references to the admissibility of evidence at trial are not relevant to this motion, and Keurig reserves all rights to challenge admissibility of particular evidence at an appropriate time.

(stating that plaintiffs may not proceed to trial on their theories regarding the introduction of the 2.0 Brewer, sham litigation, roaster acquisitions, and other claims).

McLane tries to avoid this result, but Dr. Johnson identified specific conduct that supposedly affected different types of customers at different times yet he chose to measure the effects collectively. McLane seems to be suggesting that it would have been hard for Dr. Johnson to create a modular damages model and link theories of harm to associated claimed damages. Opp. at 11-12. But TreeHouse's expert, Dr. Stiroh, did exactly that. ECF No. 2562 ("Mot.") at 6-7. Dr. Johnson chose to lump everything together in a single aggregated model, and the law must be applied to that model now. ECF No. 2255, Johnson *Daubert* Mot., at 3-4.

None of the cases McLane cites allows it to pursue damages for dismissed theories of harm. Opp. at 9-10. In *City of Groton v. Connecticut Light & Power Co.*, the Second Circuit "reject[ed] the notion that if there is a fraction of validity to each of the basic claims" they can somehow be summed. 662 F.2d 921, 928 (2d Cir. 1981). As to McLane's out-of-circuit cases, in *LePage's*, decided well before *Comcast*, no claims were dismissed on summary judgment. *LePage's Inc. v. 3M*, 1999 WL 346223 (E.D. Pa. May 14, 1999). In *Bonjorno v. Kaiser Aluminum*, another Third Circuit case that predates *Comcast*, the court held that because the plaintiff went out of business because of the defendant's unlawful conduct, disaggregation was impossible and unnecessary. 752 F.2d 802, 813 (3d Cir. 1984). In *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, also before *Comcast*, the court made clear that the burden is on the plaintiff to "differentiate between damages caused by the alleged misconduct and lawful" causes. 344 F.3d 753, 761-62 (8th Cir. 2003). The district court in *In re Suboxone* distinguished the case as "unlike . . . *Comcast*" because *all* of the alleged conduct was found to be anticompetitive and no theories of harm were rejected. 421 F. Supp. 3d 12, 36, 38 (E.D. Pa. 2019), *aff'd*, 967 F.3d

264 (3d Cir. 2020); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 622 F. Supp. 3d 22, 86 (E.D. Pa. 2022) (court had "already found" that all of the alleged conduct was anticompetitive). Likewise, in *In re Broiler Chicken Antitrust Litigation*, the court considered whether the expert's model "account[ed] for market factors like corn prices and the recession," not whether it accounted for dismissed claims. 2022 WL 1720468, at *10 (N.D. Ill. May 27, 2022). None of McLane's cases allow it to pursue damages for dismissed theories.

## II. McLane's various attempts to excuse its failure to disaggregate damages fail.

McLane offers a number of reasons why the Court should overlook its failure to disaggregate damages, but none has merit.

First, McLane argues that it need not account for lawful conduct because plaintiffs are afforded "leeway" in proving the amount of damages. Opp. at 11. The Second Circuit is clear, however, that "[w]hatever latitude is afforded antitrust plaintiffs as to proof of damages" is "limited" and damages must be tied to *unlawful* acts. *USFL v. NFL*, 842 F.2d 1335, 1378-79 (2d Cir. 1988). In *USFL* the Second Circuit relied on *MCI*, in which the court rejected the damages model for failing to disaggregate damages to isolate harm from unlawful conduct. *Id.* (citing *MCI*, 708 F.2d at 1092-93, 1161-64). McLane argues that *MCI* is distinguishable because the defendant was found liable on only 7 out of 22 theories. Opp. at 10-11. But the fundamental principle that a plaintiff may recover damages only for harm caused by *unlawful* acts does not require courts to count theories or engage in a guessing game about how important dismissed theories are: As the Supreme Court subsequently clarified in *Comcast*, if a plaintiff pursues four theories of harm and chooses to offer a damages model with aggregated damages across all four theories, that methodology "might have been sound" in a case where "all four of those alleged" theories of harm were proved out. *Comcast*, 569 U.S. at 36. But, if all four theories do not hold,

then the plaintiff has not provided a "methodology that identifies damages" that are the result of the wrong found. *Id.* at 37. To paraphrase the Supreme Court, with multiple theories over different categories of customers over different time periods, the permutations of which harm was caused by which theories "are nearly endless." *Id.* at 38. Further, McLane *did* have many and important theories dismissed here: Dr. Johnson's report appears to have calculated aggregated damages from nine theories (introduction of the 2.0 brewer, associated advertising, purported sham litigation, roaster acquisitions, supplier contracts, distributor contracts, retailer contracts, and coffee brand contracts (counted two ways)). Johnson (McLane) Rpt., § III. More than half of those theories have now been dismissed. Summ. J. Order at 133-34. And McLane has admitted that the dismissed theories were important ones: Dr. Johnson testified that now-dismissed theories like the introduction of the 2.0 brewer were "certainly . . . important" to his model. Johnson (McLane) Tr. 283:22-23.

McLane cites *Ingevity Corp. v. BASF Corp.*, for the proposition that where lawful and unlawful conduct are so intertwined that disaggregation is *impossible*, disaggregation is not required. 166 F.4th 1324, 1340 (Fed. Cir. 2026). But again, TreeHouse's expert managed to disaggregate, confirming that it is possible to link damages to different types of conduct that allegedly occurred at different times and related to different customers. Mot. at 6-7. McLane's assertion that it is "entitled" to adjust its model to disaggregate damages, Opp. at 1, 5, further confirms that disaggregation was not *impossible*, Dr. Johnson just chose not to do it.

Finally, McLane argues that the dismissal of more than half of its theories of harm is irrelevant because the remaining theories now account for the entirety of the damages it seeks. Opp. at 12. This argument is "hard to take seriously." *Blue Cross & Blue Shield*, 152 F.3d at 594 (Posner, C.J.). McLane has spent years arguing that the introduction of the 2.0 brewer, alleged

exclusive contracts with retailers, and other now-dismissed conduct all caused damages. Its new claim that the dismissed theories were actually all harmless is not plausible. McLane cites *National Farmers' Org. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1307 (8th Cir. 1988), *amended,* 878 F.2d 1118 (8th Cir. 1989), but the court there remanded, explaining that plaintiffs could not recover for lawful acts. *Id.* at 1306-07. McLane also ignores the Eighth Circuit's subsequent decisions in *Group Health Plan*, which confirmed that *Farmers* did not relieve a plaintiff of its duty to limit damages to those caused by unlawful conduct, 344 F.3d at 761-62, and *Concord Boat*, which confirmed the requirement for experts to separate the effect of lawful from unlawful conduct, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000). Lest there be any doubt, *Comcast* has since foreclosed the notion that the theories of harm remaining after dismissal can result in the same damages as that before dismissal. 569 U.S. at 36-37. McLane's reliance on *US Airways* is likewise misplaced. Opp. at 12. In that case, there was no finding that underlying conduct included in the model was lawful. *US Airways, Inc. v. Sabre Holdings Corp.*, 2022 WL 1140291, at *2 (S.D.N.Y. Apr. 18, 2022).

McLane argues that its failure to disaggregate does not warrant summary judgment against it on damages because some of its theories survived summary judgment on liability. Opp. at 14-15. But, again, proof of the *amount* of damages is an independent element of a claim, and a damages model that measures "harm" from lawful and unlawful conduct together on an aggregated basis leaves a jury with no reasonable basis to award damages and thus cannot be presented to a jury. *USFL*, 842 F.2d at 1378-79; *see also MCI*, 708 F.2d at 1162-63; *Comcast*, 569 U.S. at 38; *Concord Boat*, 207 F.3d at1055 (plaintiff must be able to support amount of damages to bring valid antitrust claim for damages); *In re Wholesale Grocery Prods. Antitrust*

*Litig.*, 946 F.3d 995, 1003-04 (8th Cir. 2019) (same); *El Aguila Food Prods., Inc. v. Gruma Corp.*, 131 F. App'x 450, 452 (5th Cir. 2005) (similar).

None of McLane's cases hold otherwise. In *In re Publication Paper Antitrust Litig.*, the question was whether the plaintiff had established a causal connection between its claimed injuries and the unlawful conduct; dismissed theories were not at issue. 690 F.3d 51, 65-66 (2d Cir. 2012). Similarly, in *Dial Corp. v. News Corp.*, the jury could still find liability as to all claims—no damages for dismissed claims were presented. 165 F. Supp. 3d 25, 38 (S.D.N.Y. 2016). McLane has no legal basis to seek damages for dismissed theories of harm here.

## III. Keurig's Motion is authorized by multiple rules.

McLane argues that, to the extent Keurig seeks reconsideration of summary judgment, its motion is late because it was filed after the deadline to file "[o]pening summary judgment briefs." *See* Opp. at 4 (citing ECF No. 1433). This is silly. Keurig filed within the 14-day window for reconsideration. *Compare* Mot. (filed October 2, 2026) *with* Summ. J. Order (filed September 18, 2026). McLane cites *Sanderson v. Leg Apparel LLC*, which simply confirms that a party has 14 days to seek reconsideration. Opp. at 4 (citing *Sanderson*, 2023 WL 4053131, at *1 (S.D.N.Y. June 16, 2023)) (motion for reconsideration filed 60 days – not 14 – after the decision on which the party sought reconsideration). McLane also cites the even-further-off-point *Furry Puppet Studio Inc. v. Fall Out Boy*, where the court declined to extend *fact discovery* because the parties made no showing of diligence or prejudice. 2020 WL 4978080, at

*1(S.D.N.Y. Feb. 24, 2020); Opp. at 4.[2]

McLane argues Keurig did not identify any new facts supporting reconsideration. Opp. at 6. Keurig clearly stated that the Court's summary judgment decision is a new fact warranting reconsideration, Mot. at 2, 6, and McLane does not dispute that, s*ee* Opp. at 1. In *Lin v. District of Columbia*, the district court encountered a similar situation: On summary judgment, it had separately evaluated plaintiffs' claims, but its decision on one claim "laid the legal groundwork" for reconsidering the remaining claims. 47 F.4th 828, 838-39 (D.C. Cir. 2022). The district court held that its own summary judgment decision on one part of the case was a basis for reconsidering its summary judgment decision on a second part of the case, and the D.C. Circuit affirmed that decision. *Id.* Similarly, this Court's summary judgment decision on liability is a new fact that warrants this motion seeking reconsideration of summary judgment on damages.

McLane next argues that, to the extent Keurig seeks reconsideration of summary judgment on damages, Keurig waived its argument that McLane's model fails to disaggregate damages. Opp. at 7. But Keurig could not have made its current motion to exclude damages based on dismissed claims before the September 18 order dismissing the claims. And McLane admits that Keurig made the disaggregation argument on *Daubert*, Opp. at 7, and Keurig's summary judgment motion incorporated its *Daubert* motion, ECF No. 1498 at 94 n.124.

Keurig's motion is independently authorized as a renewed *Daubert* motion. Expert Order at 120-21 (collecting cases and explaining that courts permit *Daubert* arguments that depend on summary judgment determinations after a summary judgment decision is issued); Mot. at 1-2. This Court has explained that, when *Daubert* motions turn on legal questions addressed on

---

[2] McLane's reference to JBR's Motion to Strike, Opp. at 4, is insufficient to incorporate the arguments in a motion it did not join, and JBR's motion fails for the reasons described in Keurig's Opposition, ECF No. 2615.

summary judgment, courts permit parties to renew *Daubert* motions based on the results of summary judgment. Expert Order at 120. McLane claims a second *Daubert* motion requires leave of court, Opp. at 5, but Keurig is simply renewing its prior motion based on new facts.

McLane also argues that the motion is a premature motion in limine. Opp. at 8. But all of Keurig's *Daubert* motions have invoked these rules, *see* Expert Order at 1, and no plaintiff has previously suggested they were premature. Motions challenging experts' damages models under Rules 403 and 702 are resolved earlier than McLane suggests. *See Dusablon v. Gibbs*, 2025 WL 3527090, at *1 (S.D.N.Y. Dec. 9, 2025) (grouping such motions with "dispositive" motions). McLane relies on *Reed v. Edmonds*, but the court there said the motion to exclude was premature because summary judgment had not yet occurred and could result in the motion being unnecessary. 2006 WL 435453, at *1 (S.D.N.Y. Feb. 22, 2006).

## IV. McLane is not entitled to a do over.

McLane asserts that it *might* redo its model, Opp. at 5, 7-8, and is "entitled" to do so. *Id.* at 1. McLane cites Rule 26 allowing it to update its model to reflect additional data. *Id.* at 7-8. But supplementing an existing data set with new data under Rule 26 is not the same as creating an entirely new damages model, and courts have rejected this tactic before. *See Point Prods. A.G. v. Sony Music Ent., Inc.*, 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (rejecting new expert affidavits submitted under Rule 26 as a "revisionist theory never before offered in this ten year old case"); *Mirkin v. XOOM Energy, LLC*, 2024 WL 4143376, at *7 (E.D.N.Y. Sept. 11, 2024) ("Rule 26(e) is not a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." (cleaned up)). McLane also argues that Keurig cited cases in which courts allowed a new trial based on flawed damages models and cites two unpublished cases where courts allowed supplemental reports after

summary judgment. Opp. at 6. But, here, McLane was fully on notice that it should provide a modular damages model, another plaintiff in this litigation did so, and McLane chose not to do that, but instead chose to gamble by putting all of its theories of harm in a single basket. This type of gamble should not be rewarded with a do over post-summary judgment. Indeed, allowing McLane to develop a new model now would create an incentive for plaintiffs to use aggregated models and wait until after summary judgment to redo the model to attribute all damages to any theories that survive summary judgment, adding burden and prolonging litigation.

## CONCLUSION

For the foregoing reasons, Keurig respectfully asks this Court to exclude McLane's damages model, and, regardless of whether it excludes the model, dismiss the corresponding damages claim.

Dated: October 30, 2026

*/s/ Leah Brannon*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
**Kenneth S. Reinker**
**Carl Lawrence Malm**
**Alan B. Freedman**
lbrannon@cgsh.com
kreinker@cgsh.com
lmalm@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1508

**Rahul Mukhi**
rmukhi@cgsh.com
One Liberty Plaza
New York, NY 10006
(212) 225-2000

BUCHANAN INGERSOLL & ROONEY PC
**Wendelynne J. Newton**
**Mackenzie A. Baird**
wendelynne.newton@bipc.com
mackenzie.baird@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
(412) 562-8932

*Attorneys for Defendant Keurig Green Mountain, Inc.*

**Local Rule 7.1(c) Certificate of Compliance**

The undersigned, counsel of record for Keurig Green Mountain, Inc., certifies that this brief contains 3,380 words, which complies with the applicable word limit.

Dated: October 30, 2026

*/s/ Leah Brannon*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
lbrannon@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1508
*Attorney for Defendant Keurig Green Mountain, Inc.*