**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation<br><br>*This document concerns all related actions.* | Case No. 1:14-md-02542 (VSB)<br>MDL No. 2542<br><br>Hon. Vernon S. Broderick<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**REDACTED PUBLIC VERSION** |

# TREEHOUSE'S STATEMENT IN OPPOSITION TO KEURIG'S MOTION TO EXCLUDE AND DISMISS CERTAIN TREEHOUSE, JBR, AND MCLANE DAMAGES

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ... 1

BACKGROUND ... 2

LEGAL STANDARDS ... 4

ARGUMENT ... 5

I. However Construed, Keurig's Motion is Procedurally Defective ... 5

A. As a Motion for Reconsideration, Keurig's Motion Fails To Demonstrate Any Basis for the Court To Consider Granting this "Extraordinary Remedy" ... 5

B. As a *Daubert* Motion, Keurig's Motion Fails For Untimeliness and Failure To Seek Leave ... 6

C. As a Motion in Limine, Keurig's Motion Fails for Being Deficient and Premature ... 7

II. Even if the Court Were to Reach the Merits, Keurig's Motion Fails ... 9

A. Keurig Misrepresents the Summary Judgment Opinion and Its Findings ... 9

B. Keurig Ignores TreeHouse's Triable Claims ... 9

1. Monopolization, Attempted Monopolization, and Monopoly Leveraging Claims (Counts 1, 3, and 7) ... 11

2. Conspiracy, Concerted Refusal to Deal, and Group Boycotts Claim (Count 9) ... 15

3. State Tortious Interference with Business Relations and Expectancy Claims (Counts 16 & 19) ... 16

4. Evidence Regarding Keurig's Conduct Is Also Admissible To Show Purpose, Character, and Intent ... 17

C. Keurig's Renewed Attacks on TreeHouse's Damages Lack Merit ... 21

CONCLUSION ... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*10x Genomics, Inc. v. Vizgen, Inc.*,
681 F. Supp. 3d 252 (D. Del. 2023)....................19

*Acumen Re Management Corp. v. General Security National Insurance Co.*,
769 F.3d 135 (2d Cir. 2014)....................11

*Alexander v. Nat'l Farmers Org.*,
687 F.2d 1173 (8th Cir. 1982)....................18, 19

*Allegheny Cnty. Sanitary Auth. v. EPA*,
732 F.2d 1167 (3d Cir. 1984)....................11

*Allen v. City of New York*,
466 F. Supp. 2d 545 (S.D.N.Y. 2006)....................7

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010)....................14

*Am. Tobacco Co. v. United States*,
328 U.S. 781 (1946)....................12

*Argus v. Eastman Kodak*,
612 F. Supp. 904 (S.D.N.Y. 1985)....................21

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985)....................18

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979)....................12, 14, 15

*Bingham v. Zolt*,
66 F. 3d 553 (2d Cir. 1995)....................11

*Bracco Diagnostics v. Amersham Health*,
627 F. Supp. 2d 384 (D.N.J. 2009)....................15, 23

*In re Brand Name Prescription Drugs Antitrust Litig.*,
186 F.3d 781 (7th Cir. 1999)....................19

*Chicago Bd. of Trade v. United States*,
246 U.S. 231 (1918)....................17

*Children's Broad. Corp. v. Walt Disney Co.*,
245 F.3d 1008 (8th Cir. 2001) ....................15

*City of Vernon v. S. Cal. Edison*,
955 F.2d 1361 (9th Cir. 1992) ....................21

*Concord Boat v. Brunswick*,
207 F.3d 1039 (8th Cir. 2000) ....................15

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962)....................11, 12

*In re General Motors LLC Ignition Switch Litigation*,
2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) ....................16, 18

*Golden Unicorn v. Audible*,
682 F. Supp. 3d 368 (S.D.N.Y. 2023)....................21

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp*.,
50 N.Y.2d 183 (1980) ....................16

*Hart v. RCI Hosp. Holdings, Inc.*,
90 F. Supp. 3d 250 (S.D.N.Y. 2015)....................4

*In re HIV Antitrust Litigation*,
656 F. Supp. 3d 963 (N.D. Cal. 2023) ....................12

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
249 F. Supp. 2d 622 (E.D. Pa. 2003) ....................19

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) ....................10, 15

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
383 F. Supp. 3d 187 (S.D.N.Y. 2019)....................18

*Kobe, Inc. v. Dempsey Pump Co.*,
198 F. 2d 416 (10th Cir. 1952) ....................19

*LePage's, Inc. v. 3M*,
324 F. 3d 141 (3d Cir. 2003)....................10

*Lewis v. FMC Corp.*,
786 F. Supp. 2d 690 (S.D.N.Y. 2011)....................6

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F. 2d 1081 (7th Cir. 1983) ....................15

*Microsoft Mobile Inc. v. InterDigital, Inc.*,
2016 WL 1464545 (D. Del. Apr. 13, 2016)....................19

*Mylan Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
2026 WL 201152 (W.D. Pa., Jan. 27, 2026)....................13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*,
937 F. Supp. 276 (S.D.N.Y. 1996)....................8, 23

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
472 U.S. 284 (1985)....................15

*PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*,
530 F. Supp. 3d 301 (S.D.N.Y. 2021)....................18

*In re Photochromic Lens Antitrust Litig.*,
2011 WL 4914997 (M.D. Fla. Oct. 14, 2011) ....................10

*Plaintiff Funding Holding*, *LLC v. Blue Ocean Partners LLC*,
2024 WL 3524497 (S.D.N.Y. July 24, 2024) ....................16

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995)....................4

*Sulmeyer v. Seven-Up Co.*,
411 F. Supp. 635 (S.D.N.Y. 1976)....................19

*Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*,
305 F.3d 1124 (10th Cir. 2002) ....................19

*U.S. v. Dentsply Int'l, Inc.*,
399 F.3d 181 (3d Cir. 2005)....................5, 10, 11, 12

*U.S. v. Goodale*,
831 F.Supp. 2d 804 (D. Vt. 2011)....................4

*U.S. v. Live Nation Ent., Inc.*,
2026 WL 512461 (S.D.N.Y. Feb. 24, 2026)....................4

*U.S. v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) (en banc)....................17

*U.S. v. Pugh*,
162 F. Supp. 3d 97 (E.D.N.Y. 2016) ....................4

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965)....................18

*U.S. Football League v. NFL*,
842 F.2d 1335 (2d Cir. 1988)....................15

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)....................4

*Wilder v. World of Boxing LLC*,
220 F. Supp. 3d 473 (S.D.N.Y. 2016)....................4, 7, 10

**Statutes**

15 U.S.C. § 1....................10

15 U.S.C. § 2....................10, 12, 14

**Other Authorities**

Fed. R. Civ. P. 26(a)(3)....................6

Fed. R. Civ. P. 26(e)....................6

Fed. R. Civ. P. 26(e)(2)....................6

Fed. R. Evid. 702....................1, 4

*Individual Rules & Practices in Civil Cases of Hon. Vernon S. Broderick*, Rule
6.A-B (rev. Oct. 29, 2025)....................8

Restatement (Second) of Torts § 768....................16

## PRELIMINARY STATEMENT

Keurig's Motion directed to this Court's decision on the parties' cross-motions for summary judgment, ECF No. 2552 ("Summary Judgment Opinion" or "SJ Op."), seeks to exclude damages based on purportedly "lawful conduct" or, in the alternative, reconsideration of the Court's opinion. ECF No. 2562 ("Motion" or "Mot.") at 5. Keurig fundamentally mischaracterizes what the Court did in a desperate effort to avoid the inevitable judgment day for its years of monopolistic conduct further fueled by its anticompetitive agreements with the country's largest coffee brands, suppliers, and distributors and by its statements to consumers about its products and competitive products that the Court has now found were literally false. Far from finding Keurig's behavior "lawful," the Court credited compelling and damning evidence supporting TreeHouse's monopolization, conspiracy, and tortious interference claims proceeding to trial, subjecting Keurig to the risk of billions of dollars in damages and the dismantling of its illegal business model.

However styled, Keurig's Motion is procedurally defective. The Motion also fails on the merits. Procedurally, Keurig's Motion disregards applicable rules and this Court's Orders. As a motion for reconsideration, Keurig does not even attempt to satisfy the standard applicable to the "extraordinary remedy" of reconsideration. As for Keurig's reliance on Rule 702, this Court has twice rejected (on *Daubert* and summary judgment) Keurig's attacks on the damages models of TreeHouse's experts. The deadline for *Daubert* motions has passed, and Keurig failed to seek the required leave of Court for its filing. Keurig's Motion also ignores the rules and Court Orders contemplating that TreeHouse's damages experts will supplement their opinions prior to trial to reflect the Summary Judgment Opinion and the fact that Keurig's anticompetitive conduct continues. As a premature motion in limine, the Motion contravenes this Court's Order of June 9, 2026, *see* ECF No. 2476 ("June 9 Order"), and this Court's Individual Rules. The June 9 Order

required the parties to meet and confer on a timetable for pretrial exchanges and a joint pretrial order, which would include motions in limine.[1] Instead of accepting TreeHouse's invitations to discuss such a schedule, Keurig has to date failed to meaningfully engage in such discussions.

Substantively, Keurig's Motion is likewise defective. Contrary to Keurig's assertion, this Court nowhere found that "core conduct Plaintiffs challenged was lawful." Mot. at 6, 10. The Court's dismissal of one claim or rejection of a legal theory for one purpose does not mean that related conduct, and corresponding damages, are no longer viable in connection with other claims or theories. Indeed, even for a dismissed claim, the same conduct may support damages recoverable under one of TreeHouse's triable claims. Similarly, even if certain conduct, standing alone, could not support liability under a particular claim, the law provides that it may still be relevant and support recovery as part of the totality of evidence for that claim or another. For example, the damages Keurig seeks to exclude may be found by a jury to be recoverable based on TreeHouse's triable monopolization (Count 1), attempted monopolization (Count 7), monopoly leveraging (Count 3), concerted refusals to deal and group boycotts (Count 9), and tortious interference with business relations and expectancy claims (Counts 16, 19). *See* Section II.B, *infra*. By failing even to address these claims, Keurig has failed to meet its burden to justify exclusion of evidence or TreeHouse's damages.

## BACKGROUND

This lawsuit has exposed Keurig's anticompetitive conduct, including its entry into thousands of exclusionary agreements with major industry players. The Court found that Plaintiffs "proffered sufficient evidence to tend to suggest that Keurig's behavior reduced output and raised

[1] As contemplated by the Court's Individual Rules, TreeHouse also intends to file a pretrial brief along with the joint pretrial order. This brief will offer further helpful context to the Court regarding TreeHouse's triable claims and associated damages.

prices" and evidence of "injury to competition through reduction in consumer quality and reduction in innovation." SJ Op. at 27, 33–34. The Court further observed that "Keurig's market share has remained remarkably durable … maintaining market shares upwards of seventy-five percent throughout the past decade." *Id.* at 41.

Now Keurig recycles twice-rejected arguments to exclude the opinions offered by TreeHouse's damages experts Dr. Lauren Stiroh and Dr. Mohan Rao. Keurig first tried to exclude their damages models by way of *Daubert* motions, ECF Nos. 1440, 1462, which the Court denied. *See* ECF No. 2375 ("*Daubert* Op."). Keurig also moved for summary judgment on Plaintiffs' damages models as based on purported "profit losses that are not limited to those *caused by* unlawful conduct." ECF No. 2275 ("Keurig MSJ") at 97. Keurig challenged Dr. Stiroh's damages model's "lost customer" analysis, arguing that the model "makes no effort to disentangle lawful factors in customer decisionmaking from allegedly unlawful ones." *Id.* at 101. The Court rejected these arguments, holding that "Plaintiffs raise disputed fact issues concerning whether their lost sales are attributable, ***at least in part***, to Defendant's exclusionary conduct" and whether TreeHouse "lost customers due to Keurig's anticompetitive conduct." SJ Op. at 101–05 (citations omitted) (emphasis added). The Court expressly found that TreeHouse "met this burden" by "set[ting] forth facts that tend to preclude an inference of permissible conduct" and "proffering material evidence that … customers were lost as a result of Keurig's conduct." *Id.*; *see also e.g.*, *id.* at 104 ("Plaintiffs cite deposition testimony from Walmart showing that Walmart chose Keurig for reasons related to the alleged anticompetitive scheme, internal documents tying Keurig's conduct to lost sales to Community Coffee, and other evidence showing that Keurig's anticompetitive behavior factored into Kroger's decision to make the switch.") (internal citations omitted); *id.* at 103 (crediting evidence that lost sales were attributable, at least in part, to Keurig's

"exclusionary conduct" and quoting evidence relating to Topco, Office Depot, and Target).

Keurig should not now be permitted to challenge, yet again, this Court's articulation of the governing legal standards for causation and damages and its findings that TreeHouse met them.

**LEGAL STANDARDS**

This Court has acknowledged the exceptional circumstances required for reconsideration. *See*, *e.g.*, ECF No. 2516 at 3; ECF No. 2061 at 4–5; ECF No. 2389 at 7. As has Keurig. *See*, *e.g.*, ECF No. 2371 at 1. The standard for such a motion "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (movant carries the burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice") (internal citations omitted).

For *Daubert* motions, this Court set forth the applicable standards in rejecting Keurig's previous attempts to exclude the TreeHouse damages models. *See Daubert* Op. at 2–8. "Once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence." Fed. R. Evid. 702 Advisory Committee cmt, 2023.

On a motion in limine, the movant "has the burden of establishing that the evidence is not admissible *for any purpose*." *Wilder v. World of Boxing LLC*, 220 F. Supp. 3d 473, 478–79 (S.D.N.Y. 2016) (emphasis added) (quoting *U.S. v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016) and *U.S. v. Goodale*, 831 F. Supp. 2d 804, 808 (D. Vt. 2011)); *see also U.S. v. Live Nation Ent., Inc.*, 2026 WL 512461, at *1 (S.D.N.Y. Feb. 24, 2026) ("Evidence should not be excluded … unless such evidence is clearly inadmissible on all potential grounds.") (quoting *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 258 (S.D.N.Y. 2015)).

# ARGUMENT

## I. HOWEVER CONSTRUED, KEURIG'S MOTION IS PROCEDURALLY DEFECTIVE

### A. As a Motion for Reconsideration, Keurig's Motion Fails To Demonstrate Any Basis for the Court To Consider Granting this "Extraordinary Remedy"

Keurig fails to identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" as the case law requires.

Nor could Keurig make that showing. Keurig's Motion is premised on conflating discrete *legal theories* with *economic* injury and *damages*. As courts routinely hold, "different theories may be presented to establish a cause of action" and "[a] court's refusal to accept one theory rather than another neither undermines the claim as a whole, nor the judgment applying one of the theories." *U.S. v. Dentsply Int'l, Inc.*, 399 F.3d 181, 197 (3d Cir. 2005); Section II.B, *infra*. The Court's Summary Judgment Opinion is consistent with this well-settled principle. Indeed, each lost customer the Court identified when crediting specific evidence of triable anticompetitive conduct supporting damages was discussed by Dr. Stiroh in the sections of her report Keurig now argues should be excluded.[2] Keurig cannot usurp the role of the jury by insisting, contrary to the Summary Judgment Opinion, that none of TreeHouse's lost At-Home sales were "attributable, ***at least in part***, to Defendant's allegedly exclusionary conduct." SJ Op. at 103 (emphasis added).

In short, the Court's treatment of a product redesign theory and sham litigation claim does not diminish the relevance of related conduct to TreeHouse's triable claims and legal theories. The Summary Judgment Opinion that Keurig says changed the landscape *rejected* many of the same arguments Keurig again makes here. That Keurig simply disagrees with the result is not a basis

[2] *Compare*, *e.g.*, SJ Op. at 103–04 (crediting support for triable damages for lost sales from Walmart, Community Coffee, Kroger, Topco, Office Depot, and Target), *with* ECF No. 2268-4, Stiroh Rep, Appendix 1 at 3 (discussing Walmart, Kroger, and Community Coffee); *id.* at 1 (discussing Topco); *id.* at 7–8 (discussing Office Depot and Target); *and* Mot. at 7 (arguing the "rest of Dr. Stiroh's At-Home damages are attributable to lawful conduct and must be excluded" besides "Dr. Stiroh's second category, lost sales due to capacity constraints").

for reconsideration.

### B. As a *Daubert* Motion, Keurig's Motion Fails For Untimeliness and Failure To Seek Leave

As a *Daubert* motion, Keurig's Motion also repeats many of the same arguments Keurig has previously made when unsuccessfully challenging Drs. Stiroh and Rao and their damages models.[3] Keurig's Motion is also untimely because the parties' Scheduling Order required that all *Daubert* motions be filed more than four years ago. ECF No. 1152 ("Scheduling Order") ¶ 5(f).

Apart from the lack of merit to Keurig's recycled arguments, Keurig has disregarded the Court's Orders by failing to seek leave to file another *Daubert* motion. The language in this Court's Order that Keurig relies on emphasizes that leave of Court is required. *Daubert* Op. at 120 (courts may grant "*leave to renew* in the event that subsequent rulings merit such renewal") (emphasis added).[4] The Scheduling Order, too, expressly prohibits subjecting an expert witness to more than one *Daubert* motion "[e]xcept by leave of court." Scheduling Order ¶ 5(g).

In any event, leave to relitigate *Daubert* should be denied because it disregards the procedures contemplated by the Federal Rules and the Scheduling Order. Rule 26(e) provides that expert witnesses have a duty to supplement their reports and testimony when "new information renders the earlier report incomplete or inaccurate." *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (S.D.N.Y. 2011) (citing Fed. R. Civ. P. 26(e)). Any such supplements are due "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). The

[3] In its decision, the Court observed that "Dr. Stiroh has adequately explained her model and accounted for the factors courts traditionally require to meet the necessary standard of reliability" and "Dr. Rao has sufficient expertise to provide expert opinions on consumer surveys, particularly as part of using them as inputs as part of economic damages calculations." *Daubert* Op. at 62, 82.

[4] Further, the only window that this Court left open for renewal of Keurig's *Daubert* motions has nothing to do with the Plaintiffs or issues in the present motion. Rather, the Court indicated that Keurig could renew its motion on one narrow ground related to Winn-Dixie expert Dr. Asher's opinion on Starbucks and Smucker-based damages. *See Daubert* Op. at 121.

Scheduling Order likewise provides the "right to seek leave of Court[5] to update [Plaintiffs'] damages calculations to the time of trial."[6] Scheduling Order ¶ 10. Keurig's Motion seeks to short-circuit this obligation and right to supplement.[7]

### C. As a Motion in Limine, Keurig's Motion Fails for Being Deficient and Premature

Based on the relief sought,[8] Keurig's Motion closely resembles a motion in limine. *Allen v. City of New York*, 466 F. Supp. 2d 545, 547 (S.D.N.Y. 2006) (motion to exclude portion of expert report analyzed as motion in limine). But Keurig does not even attempt to carry its burden of establishing that the evidence it seeks to exclude is "not admissible for *any purpose*." *Wilder*, 220 F. Supp. 3d at 478–79 (emphasis added). This burden is impossible to carry without identifying the specific evidence to be excluded and analyzing the elements of TreeHouse's triable claims, which Keurig makes no attempt to do.

Keurig vaguely asserts that only one of Dr. Stiroh's categories of lost customers "remains in the case" and that the "rest of Dr. Stiroh's At-Home Damages are attributable to *lawful conduct* and must be excluded." Mot. at 11 (emphasis added). And in the process, Keurig misquotes language in a section heading of Dr. Stiroh's report.[9] Similarly, Keurig devotes one paragraph to

---

[5] TreeHouse intended to seek such leave in a joint submission of a proposed pretrial schedule to the Court, but Keurig has to date frustrated this intention. To the extent required earlier, TreeHouse hereby seeks such leave.

[6] Keurig's Motion rests on the false premise that the number resulting from a reliable damages model must be fixed in amber at the moment of disclosure. That is not the law. This Court has recognized that "courts routinely permit experts to model various damages scenarios based on facts to be proven at trial." *Daubert* Op. at 60.

[7] For example, Dr. Stiroh's damages analysis may be updated to reflect the ongoing anticompetitive conduct which she assumed, for purposes of her report, would cease five years ago. *See* ECF No. 2268-4, Stiroh Rep. ¶ 6(vi).

[8] Keurig asks the Court to "***exclude*** TreeHouse's expert testimony as to claimed damages … ***exclude*** TreeHouse's Lanham Act damages expert testimony related to compatibility statements, and dismiss the corresponding damages claims." Mot. at 11 (emphasis added).

[9] As to one category of lost customers that Keurig argues is no longer in the case, Keurig relies on a section heading of Dr. Stiroh's report which it quotes as saying "Lost Sales from Customers that Stopped Promoting TreeHouse's Products … due to the launch of the 2.0 brewer." The words after the ellipsis are not in the heading. *See* ECF No. 2268-4, Stiroh Rep., Appendix 1 at 2.

the argument that "Dr. Rao's Lanham Act damages for compatibility statements likewise fail to distinguish injury from lawful versus allegedly unlawful statements." *Id.* Keurig cannot carry its burden on this basis. *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (denying a motion in limine for lacking "the necessary specificity with respect to the evidence to be excluded or the purported reason for the introduction of such evidence").

Keurig's Motion also fails for being premature. Notwithstanding our requests,[10] Keurig has not yet met and conferred with TreeHouse on a schedule for the parties' joint pretrial order, including the deadline for motions in limine. *See* June 9 Order at 1. Despite this, Keurig has preemptively filed this Motion. When Plaintiffs brought a motion to exclude the testimony of proposed expert Hon. Arthur J. Gajarsa eight months before such motions were due ("Gajarsa Motion"), Keurig argued that the timing would cause "disruption in responding to this particular motion early." ECF No. 1227 at 1–2. The Court noted that it went "without saying that it is severely prejudicial to Defendant to require Defendant to submit its response in opposition a full eight months sooner than provided for in the scheduling order," and gave Keurig until the originally scheduled deadline to respond. ECF No. 1232 at 2. If this Motion is not denied outright, TreeHouse respectfully asks the Court to do the same here, by extending TreeHouse's deadline to further respond until the date set in a Court-approved scheduling order. The Court should deny Keurig's Motion for violating the Court's Order that the parties first agree on a schedule for pretrial filings and this Court's Individual Rules providing that motions in limine are to be filed with the joint pretrial order. *Id.*; *Individual Rules & Practices in Civil Cases of Hon. Vernon S. Broderick*, Rule 6.A–B (rev. Oct. 29, 2025).

---

[10] *See* Declaration of Lauren E. Duxstad filed contemporaneously with this brief.

## II. EVEN IF THE COURT WERE TO REACH THE MERITS, KEURIG'S MOTION FAILS

Given the procedural defects with Keurig's Motion, requiring a full response on the merits to Keurig's motion now is inappropriate and prejudicial, as this Court concluded with respect to Keurig responding to the Gajarsa Motion early. Nonetheless TreeHouse here highlights a few of the reasons why the Motion should also be denied on the merits.

### A. Keurig Misrepresents the Summary Judgment Opinion and Its Findings

Keurig's entire Motion rests on a single, faulty premise: that the Court found "that core conduct Plaintiffs challenged was lawful." Mot. at 6. The Court did no such thing, much less hold that evidence of such conduct is inadmissible or irrelevant to TreeHouse's numerous triable claims (which Keurig's Motion ignores) and attendant recoverable damages.

### B. Keurig Ignores TreeHouse's Triable Claims

Notwithstanding the Court's Opinion with respect to TreeHouse's 2.0 Brewer product redesign theory[11] and sham litigation claim, conduct related to those issues remains relevant to TreeHouse's triable claims and recoverable damages thereon: monopolization, attempted monopolization, monopoly leveraging, conspiracy, concerted refusals to deal and group boycotts, and tortious interference with business relations and expectancy. Indeed, the Court's Opinion explicitly credited evidence relating to these issues when holding that TreeHouse raised "fact issues concerning whether their lost sales are attributable, *at least in part*, to Defendant's allegedly exclusionary conduct." *See*, *e.g.*, SJ Op. at 103 (emphasis added) (evidence of "Target

---

[11] Significantly, TreeHouse's Amended Complaint does not assert a standalone "product redesign" claim so no such claim could have been dismissed as to TreeHouse. Rather, the conduct relating to the 2.0 Brewer is referenced as one of many factors in support of other claims, such as monopolization. Indeed, Keurig's motion for summary judgment identified only *two paragraphs* in TreeHouse's Amended Complaint, relating to monopolization and tying, that dealt with product redesign. *See* Keurig MSJ at 50, n. 25 (citing "TreeHouse Compl. ¶ 572(g)"); *id.* at 82, n. 78 (citing "TreeHouse Compl. ¶ 618").

'recommend[ing] NOT [to] pursue Sturm pods in view of the relatively high patent infringement risk'"). Remarkably, Keurig's Motion fails even to argue—much less demonstrate—that the evidence and damages at issue are not related to these claims, which remain for trial. Nor does Keurig even argue that any of the damages it seeks to exclude could not have been caused "at least in part" by conduct that is indisputably part of triable claims. This failure is fatal. Keurig therefore cannot carry its burden to show that the challenged evidence or expert testimony is inadmissible for any purpose or that the associated damages are not recoverable. *Wilder*, 220 F. Supp. 3d at 478.

As Keurig's own authority confirms, the dismissal of one theory does not wipe away damages from the same conduct under another theory. *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1223 (9th Cir. 1997) (rejecting argument that failure to alter damages study after withdrawal of tying and conspiracy claims invalidated the study because those claims "alleged a different legal theory for the same harm that the jury found at trial: exclusionary conduct leading to … monopolization.").

This Court has repeatedly cited authority standing for this exact proposition. *See, e.g.*, *Dentsply*, 399 F.3d at 197 (reversing refusal to find liability on monopolization claim based on evidence presented in support of conspiracy claim); *LePage's, Inc. v. 3M*, 324 F.3d 141, 156 (3d Cir. 2003) (rejecting argument that evidence for other antitrust claims could not be relevant to monopolization claim because the "law is to the contrary."); SJ Op. at 42, 66 (citing *Dentsply*); SJ Op. at 70 (citing *LePage's*).[12] As another example, in *Acumen Re Management Corp. v. General*

[12] *See also, e.g.*, *In re Photochromic Lens Antitrust Litig.*, 2011 WL 4914997, at *3 n.10 (M.D. Fla. Oct. 14, 2011) (relying on *LePage's* for the principle that "exclusivity arrangements that may not, standing alone, give rise to claims under § 1 of the Sherman Act … may nonetheless be relevant to claims under § 2 of the Sherman Act," and on *Dentsply* for the principle that a "finding of no liability under stricter standards of § 3 of the Clayton Act did not preclude application of evidence of exclusive dealing to support claim under § 2 of the Sherman Act").

*Security National Insurance Co.*, where four of five theories of liability were resolved against the plaintiff, the Second Circuit observed that this did not defeat the plaintiff's damages case where one harm was alleged: "If [plaintiff] wins on any of its theories, *it is entitled to the same quantum of damages, and it does not matter whether it succeeds on one theory or five*." 769 F.3d 135, 143 (2d Cir. 2014) (emphasis added). As the Second Circuit has instructed, "[w]hether or not a defendant is liable to a plaintiff under one or many theories of liability *does not affect the damages award*." *Bingham v. Zolt*, 66 F. 3d 553, 564 (2d Cir. 1995) (emphasis added); *Allegheny Cnty. Sanitary Auth. v. EPA*, 732 F.2d 1167, 1172–73 (3d Cir. 1984) (different theories may be presented to establish a cause of action and a court's refusal to accept one theory rather than another neither undermines the claim as a whole, nor the judgment applying one of the theories) (followed by *Dentsply*).

### ***1. Monopolization, Attempted Monopolization, and Monopoly Leveraging Claims (Counts 1, 3, and 7)***

TreeHouse's Amended Complaint features monopolization, attempted monopolization, and monopoly leveraging claims that remain for trial, which, under the law, encompass a broad range of conduct, including conduct relating to Keurig's 2.0 Brewers. *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 706–07 (1962). The Summary Judgment Opinion does not preclude TreeHouse from using the 2.0 Brewer evidence and evidence related to Keurig's lawsuit against Sturm in *Keurig, Inc. v. Sturm Foods, Inc.*, No. 1:10-cv-00841-SLR (D. Del.) (the "Sturm Litigation") in support of these claims, and consequently, in support of related damages, as demonstrated by the Court's crediting of evidence relating to such conduct in denying Keurig's motion for summary judgment. *See*, *e.g.*, SJ Op. at 103–05.

While Keurig seeks to immunize its conduct broadly relating to the 2.0 Brewer, the Court expressly found that Plaintiffs "raised a genuine dispute of material fact concerning whether

Keurig had monopoly power in the brewer market," such that the Court further "necessarily f[ound] that [Keurig] is not entitled to summary judgment on Plaintiffs' attempted monopolization and monopoly leveraging claims," in addition to monopolization. SJ Op. at 44–45, 47 n.21. TreeHouse's leveraging claim expressly relates to Keurig "leveraging its monopoly power in the Single-Serve Brewer Market to unlawfully maintain monopoly power in the Portion Pack and Compatible Cup Markets." Case No. 1:14-cv-00905-VSB (S.D.N.Y.), ECF No. 86 ("Amended Compl.") ¶ 588.

Even if one assumed, counterfactually, that this Court somehow held that certain 2.0 Brewer-related conduct was in and of itself "lawful," that would not preclude consideration of that conduct by a jury in its deliberations. It is well settled that "[b]ehavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist." *Dentsply*, 399 F.3d at 187; *Berkey Photo, Inc. v. Eastman Kodak Co*., 603 F.2d 263, 274–75 (2d Cir. 1979) (monopolist conduct may violate Section 2, even when "in the hands of a smaller market participant it might be considered harmless"). It is likewise "well settled that acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme." *Cont'l Ore*, 370 U.S. at 707; *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946) (acts done to give effect to an unlawful scheme "may be in themselves wholly innocent acts," yet "if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition"). If the jury concludes that Keurig is a monopolist, as the jury is likely to do, it is entitled to evaluate all of Keurig's conduct through this lens.

Significantly, courts have applied these principles in the product redesign context. *See, e.g.*, *In re HIV Antitrust Litig.*, 656 F. Supp. 3d 963, 974–80 (N.D. Cal. 2023) (granting summary

judgment on product hop theory for lack of coercion but reserving judgment on whether underlying conduct would be admissible as evidence to support surviving antitrust claims); *Mylan Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2026 WL 201152, at *21 (W.D. Pa., Jan. 27, 2026) (product hop not anticompetitive standing alone nonetheless found to "worsen[] the picture" when viewed in light of other practices).

The anticompetitive acts Keurig engaged in squarely address the 2.0 Brewer conduct Keurig falsely claims the Court has deemed "lawful." This is illustrated by this Court's own reliance on 2.0 Brewer-related evidence. For example, in considering whether TreeHouse's damages were the result of anticompetitive behavior, the Court referenced "internal documents tying Keurig's conduct to lost sales to Community Coffee." SJ Op. at 104. The underlying evidence indicates that 2.0 Brewer compatibility concerns allowed Keurig to coerce Community Coffee to switch. ECF No. 1568 ("Plaintiffs' Rule 56.1 Response") ¶¶ 1648–51. The Court cited similar evidence for Walmart and Kroger. *See* SJ Op. at 104 (citing ECF No. 1564 ("TreeHouse's Opp. to Keurig's MSJ") at 106). In its summary judgment opposition, for example, TreeHouse highlighted that, "[a]s Kroger's buyer stated, '[b]ecause Keurig's monopoly of the brewer market was so strong, we had no choice [but] to move our private label business to Keurig, or we would risk watching our private label … program fall apart entirely.'" TreeHouse's Opp. to Keurig's MSJ at 16 (quoting Plaintiffs' Rule 56.1 Response ¶ 975). Keurig threatened to lock its competitors out of the Compatible Cup market with its new 2.0 Brewer, identifying the lockout as the "dominant strategy" for "negotiation leverage" in a strategy to achieve "system non-compete[s]." *See, e.g.*, Plaintiffs' Rule 56.1 Response ¶¶ 1341, 1880. This shows how Keurig used the 2.0 Brewer in connection with exclusionary conduct relevant to TreeHouse's monopolization claims. As this Court recognized, "a monopolist in one market may not use its

market power in one industry as a lever to distort competition in another, even if 'competition in the leveraged market may not be destroyed but merely distorted.'" SJ Op. at 60 (quoting *Berkey Photo*, 603 F.2d at 276); *see also Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 999–1000 (9th Cir. 2010) (lawful redesign does not preclude Section 2 liability where the monopolist "abuses or leverages its monopoly power in some other way when introducing the product").

The same principle holds for evidence related to the Sturm Litigation. While this Court may have dismissed a sham litigation *claim*, that does not mean the related *conduct* is irrelevant to other claims remaining in the case. For example, the Court cites to Plaintiffs' evidence documenting retailer reactions to the Sturm Litigation—specifically, Topco declining to move forward because it was "worried about the lawsuit," Office Depot being "very interested in how Green Mountain will react" and saying that it "would like to stay abrea[st] of litigation issues" as it was "concerned about being drawn into a legal battle," and Target deciding it would "NOT pursue Sturm pods in view of the relatively high patent infringement risk." SJ Op. at 103 (citing to Plaintiffs' Rule 56.1 Response ¶¶ 1526–28, 1530, 1538, 1543). The Court also found that Plaintiffs "proffer[ed] material evidence that…customers were lost as a result of Keurig's conduct," citing again to retailer reactions to the Sturm Litigation. SJ Op. at 103 (citing Plaintiffs' Rule 56.1 Response ¶¶ 1526–54, 1557–62). Keurig cannot reconcile its assertion that this conduct was held to be "lawful" with the Court's own reliance on this type of evidence in connection with TreeHouse's monopolization claims.

It is no surprise, therefore, that Keurig fails to cite a single monopolization case where damages were curtailed after summary judgment in response to a motion like this one. Rather, if a plaintiff's experts have survived summary judgment and *Daubert*, as here, courts permit

plaintiffs to present their damages at trial, as Keurig's own cases demonstrate. *See, e.g.*, *Berkey Photo*, 603 F.2d at 296–99, 304–06, 309 (no pre-trial reduction of damages or exclusion of damages); *U.S. Football League v. NFL*, 842 F.2d 1335, 1350, 1376–79 (2d Cir. 1988) (same); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1162–68, 1174 (7th Cir. 1983) (same); *Image Tech. Servs.*, 125 F.3d at 1221, 1224 (same); *Concord Boat v. Brunswick*, 207 F.3d 1039, 1055–57 (8th Cir. 2000) (same); *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018–19 (8th Cir. 2001) (same); *Bracco Diagnostics v. Amersham Health*, 627 F. Supp. 2d 384, 443–44 (D.N.J. 2009) (same).

### *2. Conspiracy, Concerted Refusal to Deal, and Group Boycotts Claim (Count 9)*

TreeHouse's claim alleging Keurig's participation in a group boycott is an independent basis for the admissibility and recoverability of damages associated with TreeHouse's lost customers. In addition to the upstream boycott concerning Keurig's agreements with roasters, which the Court ruled will proceed to trial, *see* SJ Op. at 57-59, 133, this claim also reaches Keurig's downstream "concerted refusal to deal agreements with … retailers," Am. Compl. ¶ 634, which Keurig conspicuously did not address in their summary judgment briefing. While these retailers were customers of Keurig, they are also *competitors* that sought to sell their own private label K-Cups alongside those of Keurig to consumers. *See, e.g.*, Plaintiffs' 56.1 Response ¶ 366, Ex. 520, KGM03150235 (private label agreement between Keurig and Target setting retail prices for private label K-Cups based on Keurig-brand K-Cups sold by Keurig to Target for ultimate sale to consumers).

As Keurig failed to challenge this claim as to retailers, these agreements also remain subject to per se, as well as rule of reason, scrutiny. *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985) (group boycotts may be per se unlawful where "joint efforts

by a firm or firms disadvantage competitors by either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle"). As a result, TreeHouse is entitled to present evidence to the jury concerning how Keurig's agreements with these retailers constitute unlawful concerted refusals to deal/group boycotts, and the corresponding damages concerning TreeHouse's lost retail customers.

#### ***3. State Tortious Interference with Business Relations and Expectancy Claims (Counts 16 & 19)***

With respect to TreeHouse's tortious interference with business relations and expectancy claims, the Court acknowledged that liability turns on whether Keurig "used dishonest, unfair, or improper means" to interfere with TreeHouse's business relationships. SJ Op. at 120–21 (citing *Plaintiff Funding Holding*, *LLC v. Blue Ocean Partners LLC*, 2024 WL 3524497, at *7 (S.D.N.Y. July 24, 2024)). Whether a competitor acted improperly depends, in part, on whether it used "wrongful means" in its interference. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190–91 n.3 (1980) (citing Restatement (Second) of Torts § 768). "Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Id.*

This Court has held that protected, non-sham conduct protected under *Noerr* is nonetheless admissible as evidence to support state law tort claims. For example, the *In re General Motors LLC Ignition Switch Litigation* court denied a motion in limine to exclude evidence of admittedly protected petitioning conduct where such conduct was relevant to a state law tort claim. 2015 WL 8130449, at *2 (S.D.N.Y. Dec. 3, 2015) (Furman, J.). Keurig does not cite, much less attempt to distinguish this and similar authority, which is fatal to its attempt to exclude Sturm Litigation

related conduct.[13]

TreeHouse has put forth material evidence that Keurig's conduct relating to the 2.0 Brewer was anticompetitive—including the publication of statements that the Court has now held to be literally false and statements that Keurig has otherwise admitted to be false. This evidence, among other evidence, such as the conduct surrounding the Sturm Litigation, enables a jury to conclude that Keurig used "dishonest, unfair, or improper means" instead of competing on the merits. This Court agreed, holding that Keurig's "conclusory references to competition on the merits cannot warrant summary judgment given the evidence put forward by TreeHouse that Keurig's exclusionary conduct interfered with TreeHouse's future business prospects." SJ Op. at 121; *see*, *e.g.*, Plaintiffs' Rule 56.1 Response ¶ 131 ("We need to convince all retailers that this is a reality[.] 2.0 is going to replace 1.0 brewers[.] [W]e are taking all 1.0 brewers out of the line by Spring 2015!"); *id.* ¶ 1886 ("Keurig's corporate witness, Dave Manly, testified that, as of the date of Keurig's presentation to Wakefern in February 2014, the slide presented to Wakefern indicating that 'By Spring 2015 ALL Keurig 1.0 brewers will be replaced by Keurig 2.0 brewers' was inaccurate when presented, and he confirmed in his testimony on behalf of Keurig that 'this slide is wrong.'"); *see* Section II.B.1, *supra*.

#### ***4. Evidence Regarding Keurig's Conduct Is Also Admissible To Show Purpose, Character, and Intent***

Evidence relating to the 2.0 Brewer redesign and the Sturm Litigation is also admissible to show purpose, character, and intent. *See, e.g.*, *U.S. v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) (en banc) (evidence of intent behind monopolist's conduct is relevant to understanding its likely effects) (citing *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918)

[13] *See also* Section II.B.4 and in particular footnote 14, *infra*.

(“knowledge of intent may help the court to interpret facts and to predict consequences”)); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 231 (S.D.N.Y. 2019) (“While Keurig argues to the contrary, the Supreme Court has made clear that ‘intent is … relevant to the question whether the challenged conduct is fairly characterized as ‘exclusionary’ or anticompetitive.’”) (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 603 (1985)).

For example, with respect to the 2.0 Brewer, the Court referenced that a former Keurig employee testified that the “new Keurig 2.0 [B]rewer with its lock-out technology was developed solely for the purpose of locking out competition.” SJ Op. at 81. And the Court recounted that a Keurig consultant warned that [redacted] *Id.* at 12. This evidence is relevant to Keurig’s specific intent to monopolize.

The same is true for the Sturm Litigation evidence. In *Pennington*, the Supreme Court observed that even where petitioning conduct cannot support liability, “[i]t would of course still be within the province of the trial judge to admit this evidence …, *which for some reason [is] barred from forming the basis for a suit* … if it tends reasonably to show the purpose and character of the particular transactions under scrutiny.” *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 n.3 (1965) (citation omitted) (emphasis added); *In re Gen. Motors*, 2015 WL 8130449, at *2 (denying motion to exclude otherwise lawful protected petitioning conduct when relevant to tort claims); *PharmacyChecker.com, LLC v. Nat’l Ass’n of Bds. of Pharmacy*, 530 F. Supp. 3d 301, 338–39 (S.D.N.Y. 2021) (immune conduct admitted “to show the purpose and character of the particular transactions under scrutiny”); *Alexander v. Nat’l Farmers Org.*, 687 F.2d 1173, 1196 (8th Cir. 1982) (explaining that evidence of protected lobbying “may be

considered" in support of claims for conspiracy to monopolize because it showed defendants "acting in concert with the specific intent to block [plaintiff] from competing.").[14]

Courts have applied this principle to admit evidence relating to non-sham litigation if presented as part of a broader monopolization scheme. *See Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952) (although infringement suit was not brought in bad faith, the suit and related notices to customers, "though lawful in [themselves]," could be "considered with the entire monopolistic scheme which preceded them"); *Sulmeyer v. Seven-Up Co.*, 411 F. Supp. 635, 644 (S.D.N.Y. 1976) (if patent enforcement proceedings are part of a purposeful drive to preserve a monopoly, the fact that the claim is not baseless will not preclude a finding of an antitrust violation); *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 655–56 (E.D. Pa. 2003) (admission of evidence of patent enforcement action not improper even where the action was not a sham where there was claim that it was part of an overall scheme to use the patent to violate antitrust laws); *Microsoft Mobile Inc. v. InterDigital, Inc.*, 2016 WL 1464545, at *3 (D. Del. Apr. 13, 2016) ("litigation conduct may be included as part of the overall scheme regardless of whether it is sham litigation"); *10x Genomics, Inc. v. Vizgen, Inc.*, 681 F. Supp. 3d 252, 268–69 (D. Del. 2023) (rejecting argument that "litigation conduct cannot form part of the scheme unless it is a sham").

Keurig's conduct related to the Sturm Litigation is relevant to the intent and exclusionary character of Keurig's overall course of dealing. To take a single example: to exclude the first

[14] Other Circuit courts have repeatedly applied this rule. *See, e.g.*, *Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1137–38 (10th Cir. 2002) (affirming admission of protected regulatory statements in monopolization trial to show the "purpose" of defendant's exclusionary conduct); *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1196 (8th Cir. 1982) (exempt conduct, "[w]hile not illegal because of the [*Noerr-Pennington*] exemption, . . . does have evidentiary value as to the purpose and concerted character of [defendants'] contemporaneous nonexempt activities"); *In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 789 (7th Cir. 1999) (district court "erred in treating the [*Noerr-Pennington*] doctrine as a rule of evidence;" "there is no blanket rule of inadmissibility").

competitors' cups set to challenge its "government-sanctioned monopoly," SJ Op. at 27, Keurig filed suit in October 2010 and sought a preliminary injunction to take TreeHouse cups off the market based on alleged safety concerns. In support, Keurig filed a sworn declaration representing that Keurig's tests had shown TreeHouse's cups were unsafe. Plaintiffs' Rule 56.1 Response ¶ 1430. That declaration was false. This Court has already decided that the Keurig statement that "Sturm pods do not work safely or effectively" was literally false, *see* SJ Op. at 19, and Keurig's public statements to that effect—repeated to Keurig and TreeHouse customers—are relevant to Keurig's anticompetitive scheme. What Keurig knew but did not disclose—to the Court, TreeHouse, customers, or consumers—was that for at least eight months before those statements were made, Keurig had been receiving reports of "hot water, coffee, and coffee grounds spraying out of" Keurig's B31 "Mini Plus" brewer used to test the allegedly unsafe Sturm cups. Plaintiffs' Rule 56.1 Response ¶¶ 1429, 1432, 1474. This brewer was not recalled by Keurig until late 2014—more than four years after the first consumer injuries—for posing a burn hazard. *Id.* ¶ 1435. And as Keurig's own admissions confirm,[15] when Keurig publicly attacked the quality of the Sturm cups, Keurig did not have any Sturm cups in its possession, and so could not have tested them, such that Keurig had no factual basis to assert that there was any safety or quality problem with TreeHouse's cups.[16] Similarly, as to the patent claims, Keurig's files are replete with admissions

---

[15] Keurig's own 30(b)(6) witness admitted that Keurig "had no evidence showing there was a quality problem with TreeHouse's cups when it filed its lawsuit," Plaintiffs' Rule 56.1 Response ¶ 1425, and Keurig conceded: "we would not have had a factual basis prior to that [testing]." ECF No. 2279-15, Keurig 30(b)(6) Dep. Tr. (Wood) 40:14–19.

[16] The Court remarked in its Summary Judgment Opinion that arguments related to the lack of basis underlying Keurig's non-patent claims "would have been appropriately made before a jury or finder of fact in the *Sturm* litigation." SJ Op. at 94. But this ignores the undisputed facts that Keurig's fraud kept everyone in the dark, never disclosing those incidents to the court or Sturm. *See* Plaintiffs' Rule 56.1 Response ¶¶ 1429-1432, 1474-1475. The Sturm Litigation settled in 2013 and the defect did not become public until after Keurig settled with the Consumer Product Safety Commission over the hazard in late 2014. *Id.* ¶ 1473. TreeHouse had no way of discovering these facts at the relevant time and it was injured by Keurig's fraud by, among other things, entering into a settlement without knowing this material information. For these reasons and others, TreeHouse respectfully believes the Court's dismissal of the sham litigation claim was in error and reserves all rights.

that Keurig had no patent covering the unfiltered cups like the Sturm cups at issue.[17] This evidence is admissible with respect to TreeHouse's separate monopolization, attempted monopolization and monopoly leveraging claims, TreeHouse's conspiracy, concerted refusal to deal, and group boycotts claim, and bears on the wrongful-means element of TreeHouse's tortious interference with business and expectancy claims and on causation, given that retailers paused or declined TreeHouse business because of the litigation and associated conduct.

### C. Keurig's Renewed Attacks on TreeHouse's Damages Lack Merit

Citing the proposition that "[i]t is essential that damages reflect only the losses directly attributable to unlawful competition," Mot. at 2, Keurig seeks to exclude damages estimates based on purportedly "lawful conduct."[18] But neither of the damages estimates put forward by TreeHouse's experts Dr. Stiroh and Dr. Rao violate this principle. Keurig's argument boils down to the (mistaken) notion that the Court found all conduct broadly relating to the 2.0 Brewer and Sturm Litigation "lawful," so any related damages are no longer viable.[19] But the Court made no such finding. In finding that Dr. Stiroh's damages model survives summary judgment, the Court expressly relied on evidence concerning customers and resulting damages in Dr. Stiroh's category 1 that relate to the Sturm Litigation conduct Keurig now seeks to exclude. SJ Op. at 103–04. For

---

[17] By March 2009, Keurig knew "there is no patent protection for non-filtered products like Hot Chocolate," and it was aware as early as January 2009 that "there is no utility patent protection for the portion pack." Plaintiffs' Rule 56.1 Response ¶¶ 1441, 1494. In September 2010, Keurig's Chief Financial Officer wrote that "[w]ithout more evidence," such as samples of TreeHouse's packs, "there is very little we should do at this point." *Id.* Response ¶ 1516. Keurig sued anyway, without more evidence. *Id.* ¶ 1517 (citing ECF No. 2279-15, Keurig 30(b)(6) Dep. Tr. (Wood) at 39:12–22, 49:21–50:3, 128:3–5).

[18] We note that, although Keurig seeks to exclude the damages of JBR and McLane entirely, it makes no such motion with respect to TreeHouse. *See* Mot. at 8–10; ECF No. 2583, Keurig Opp. to JBR Remand Mot. at 4.

[19] Keurig's authorities on this point, Mot. at 3, are inapposite. *See, e.g.*, *Golden Unicorn v. Audible*, 682 F. Supp. 3d 368, 380 (S.D.N.Y. 2023) (excluding damages model that did "not correspond to Plaintiffs' sole remaining claim"); *City of Vernon v. S. Cal. Edison*, 955 F.2d 1361, 1371–72 (9th Cir. 1992) (expert admitted he "would not or could not" disaggregate conduct and plaintiff offered no corrections); *Argus v. Eastman Kodak*, 612 F. Supp. 904, 926–27 (S.D.N.Y. 1985) (granting summary judgment based on "speculatory and conclusory" damages model that did not identify a single lost customer).

example, in holding that Plaintiffs had proffered "material evidence" that customers were lost as a result of Keurig's anticompetitive conduct rather than competition on the merits, the Court pointed to evidence associated with several customers, including, Harris Teeter, Hy-Vee, Topco, Winn Dixie, and others. This evidence supports the conclusion that their decision to pause or decline TreeHouse's business, was due, at least in part, to conduct relating to the Sturm Litigation.[20]

The same is true for the damages associated with customers in Dr. Stiroh's categories 3 and 4, which identify customers associated with evidence from which a jury may conclude that the customers stopped promoting TreeHouse's products due to Keurig's conduct, including in some instances conduct broadly relating in part to the 2.0 Brewer. ECF No. 2268-4 ("Stiroh Rep."), Appendix 1. The Court similarly cited evidence from these customers in denying Keurig's bid for summary judgment on TreeHouse's damages. SJ Op. at 103–04 (discussing, among other things, TreeHouse's "material evidence" that customers such as Walmart, Hy-Vee, Meijer, Community Coffee, and others explicitly mentioned in connection with categories 3 and 4 of Dr. Stiroh's report "were lost as a result of Keurig's conduct").

Keurig's attack on Dr. Stiroh's Away-from-Home damages and cost damages also fails. Keurig does not dispute, nor could it, that TreeHouse's triable claims—including those related to Keurig's exclusive contracts with roasters and distributors—implicate the Away-From-Home-segment. Instead, Keurig argues that its critiques of Dr. Stiroh's At-Home damages "flow[] through" to Dr. Stiroh's Away-from-Home damages as well. But for the reasons explained above, Keurig is wrong as to TreeHouse's At-Home damages, and so its "flow through" argument fails as well. At most, Keurig's argument identifies discrete line items that, depending on the jury's findings, can be addressed through jury instructions and a verdict form; it provides no basis to

[20] *See* SJ Op. at 105 (citing Plaintiffs' Rule 56.1 Response ¶¶ 1526–54, 1557–62).

exclude anything.[21]

In sum, Keurig fails to carry its burden of showing that a jury could not reasonably conclude that damages associated with customers Dr. Stiroh references in one or more of the categories Keurig challenges were caused, at least in part, by the extensive anticompetitive conduct at issue in connection with TreeHouse's triable claims and theories.[22] Consistent with Dr. Stiroh's disaggregated customer-by-customer damages model, the proper course is to let the jury hear the evidence, determine which conduct was unlawful, and permit the jury to render an appropriate verdict.[23]

Keurig's challenges to Dr. Rao's model also lack merit.[24] Keurig similarly argues that "Dr. Rao's Lanham Act damages for compatibility statements fail to distinguish between injury from lawful versus allegedly unlawful statements," but that is incorrect.[25] Mot. at 11. Dr. Rao based his analysis in part on the survey of another expert, Mr. Poret,[26] who explored whether the 2.0

---

[21] Keurig also asserts that Dr. Stiroh's "Other Potential Losses" category should be excluded because Dr. Stiroh purportedly speculated that those lost sales were attributable to private label contracts and "TreeHouse's claims as to those retailer contracts did not survive summary judgment." Mot. at 7 n.2. Further, Keurig asserts that the alternative Amazon benchmark in Dr. Stiroh's reply report is invalid "for the same reasons that JBR's benchmark model is invalid." *Id.* These arguments fail. On the former, Keurig cannot carry its burden to exclude expert evidence with these broad and conclusory assertions, without specifying the evidence it seeks to exclude and showing its inadmissibility for all potential purposes. *Nat'l Union* Fire, 937 F. Supp. at 287. On the latter, Keurig did not challenge Dr. Stiroh's Amazon benchmark in its motion for summary judgment, meaning that model remains fully intact.

[22] Keurig also conspicuously fails to address the fact that its spoliation of critical documents relating to its interactions with key lost customers including Walmart, Kroger and Ahold entitle it to a jury instruction informing the jury that it may consider such evidence, along with all the other evidence in the case, in their deliberations.

[23] As Keurig concedes, Dr. Stiroh "identified specific sales" and "performed a customer-by-customer analysis as to why sales were lost." *Id.* at 6. Keurig is also aware from Dr. Stiroh's deposition that her model can be adjusted to pull out lost customers not attributable to anticompetitive conduct. *See* ECF No. 2268-1, L. Stiroh Tr. 292:24–293:22.

[24] Keurig's Motion does not challenge Dr. Rao's damages estimates with respect to a second category of statements that the Court held to be literally false—those relating to the safety and performance of Competitive Cups. Thus, any argument against those damages calculations is waived.

[25] Keurig cites only one case in support of its argument: *Bracco Diagnostics v. Amersham Health*, 627 F. Supp. 2d 384, 443–444 (D.N.J. 2009). But *Bracco* addressed the expert's damages calculations *after a bench trial*, on a full evidentiary record, and after the court had made findings as to what conduct was lawful and unlawful.

[26] Apart from the Poret survey, Dr. Rao's report made clear that his estimates were also based on two other sources: the record as a whole and Keurig's own documents. *See, e.g.*, ECF No. 2198-50, Rao Rep. ¶ 4, Tab 2. Keurig's bid

Brewer owners made purchasing decisions based on compatibility concerns. Mot. at 11. Mr. Poret's survey elicited responses by consumers who indicated that they had not purchased Competitive Cups, at least in part, because they heard that the 2.0 Brewer "work[s] only with Keurig-brand or Keurig licensed Portion Packs," or that Competitive Cups "would not brew well or safely"—both statements that remain triable, and which Dr. Rao explained are "two elements of the same issue related to compatibility." ECF No. 2248-31, Rao Reply Rep. Tab 8A n.[E]; ECF No. 2248-32, Rao Tr. 169:3–17, 171:1–12, 177:25–178:19. Keurig presents no evidence that Mr. Poret tested, or that Dr. Rao relied upon, any compatibility statements held not to form the basis of a triable Lanham Act claim and there is thus no basis for an assertion that Dr. Rao's damages assessment is based on any lawful conduct.[27]

Keurig also asserts that Dr. Rao "calculated damages assuming Keurig would be liable for all challenged statements." Mot. at 11. Keurig is wrong and cites nothing in support. *Id.* Dr. Rao's analysis relied in part on data from Mr. Poret's admissible survey showing that significant percentages of current or past Keurig 2.0 Brewer owners did not purchase Competitive Cups at least in part due to a concern that they would not work, or would not brew well or safely, in the 2.0 Brewer. ECF No. 2198-50, Rao Rep. ¶ 91. Mr. Poret did not test specific false or misleading statements and was not required to do so. *See Daubert* Op. at 41–42 (noting that Mr. Poret's report "addressed the broader question of why consumers had not purchased competitor's single-serve cups, and not only the effect of the allegedly false or misleading statements made by Keurig in their advertising campaign"). While Keurig also faults Dr. Rao (and by implication, Mr. Poret)

---

to strike Dr. Rao's damages should also be rejected because Keurig fails to criticize these two additional sources of his damages estimates.

[27] TreeHouse respectfully disagrees with the Court's conclusion that TreeHouse was not entitled to summary judgment on liability with respect to Keurig's statements notwithstanding its showing of literal falsity. For purposes of this opposition, however, TreeHouse of course accepts the Court's ruling.

for purportedly failing to "identify which particular statements caused those owners to make their purchasing decisions," Mot. at 11, this is simply a belated attempt to reargue Keurig's rejected *Daubert* motion as to the Poret survey and Dr. Rao's reliance on it. *See Daubert* Op. at 42 ("Since Mr. Poret utilized survey methodology that is well accepted in the survey field, I find that the failure to use the allegedly false or misleading statements in the Poret Survey does not render it inadmissible.").

## CONCLUSION

In conclusion, TreeHouse respectfully asks the Court to deny this Motion outright on procedural grounds or on the merits, or alternatively, order that TreeHouse's opposition to Keurig's Motion is not due until an appropriate deadline set in connection with the parties' pretrial order and related exchanges.

Dated: October 16, 2026
New York, New York

Respectfully submitted,
**WINSTON TAYLOR LLP**

By: */s/ Aldo A. Badini*

Aldo A. Badini
Aldo.Badini@winstontaylor.com
Susannah P. Torpey
Susannah.Torpey@winstontaylor.com
Lauren E. Duxstad
Lauren.Duxstad@winstontaylor.com
Ashley E. Latham
Ashley.Latham@winstontaylor.com
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
(212) 294-4700 (fax)

Dan K. Webb
Dan.Webb@winstontaylor.com
Matthew R. DalSanto
Matthew.DalSanto@winstontaylor.com
James F. Herbison
James.Herbison@winstontaylor.com
**WINSTON TAYLOR LLP**
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600

Diana L. Hughes
Diana.Leiden@winstontaylor.com
**WINSTON TAYLOR LLP**
333 South Grand Avenue
Los Angeles, CA 90071
(213) 615-1700

*Counsel for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC and Sturm Foods, Inc.*

## LOCAL RULE 7.1(c) CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs TreeHouse Foods, Inc., Bay Valley Foods, LLC, and Sturm Foods, Inc. certifies that this brief contains 8,739 words, which complies with the applicable word limit.

*/s/ Aldo A. Badini*